# EXHIBIT A

JANETTE WIPPER (#275264)
  Chief Counsel
  Janette.Wipper@dfeh.ca.gov
SIRITHON THANASOMBAT (#270201)
  Senior Staff Counsel
  Siri.Thanasombat@dfeh.ca.gov
JEANETTE HAWN (#307235)
  Staff Counsel
  Jeanette.Hawn@dfeh.ca.gov
CALIFORNIA DEPARTMENT OF FAIR
  EMPLOYMENT AND HOUSING
2218 Kausen Drive, Suite 100
Elk Grove, CA  95758
Telephone:  (916) 478-7251
Facsimile:  (888) 382-5293

Attorneys for Plaintiff,
California Department of Fair Employment and Housing

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, an agency of the State of California,<br><br>                                   Plaintiff,<br><br>                  vs.<br><br>CISCO SYSTEMS, INC., a California Corporation; SUNDAR IYER, an individual; RAMANA KOMPELLA, an individual,<br><br>                                   Defendant**s**. | Case No.<br><br>**CIVIL RIGHTS - EMPLOYMENT DISCRIMINATION**<br><br>**DEMAND FOR JURY TRIAL** |

The California Department of Fair Employment and Housing (DFEH) brings this action against Cisco Systems, Inc. (Cisco) to remedy workplace discrimination, harassment, and retaliation violations at its San Jose, California corporate headquarters under Title VII of the Civil Rights Act of 1964 § 701 *et seq.*, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII), and the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq.* (FEHA). Specifically, Cisco engaged in unlawful employment practices on the bases of religion, ancestry, national origin/ethnicity, and race/color against

-1-

Complainant John Doe,[1] and after Doe opposed such unlawful practices, Cisco retaliated against him. Cisco also failed to take all reasonable steps to prevent such unlawful practices in its workplace, as required under FEHA.

**INTRODUCTION**

1.      John Doe is Dalit Indian, a population once known as the "Untouchables," who are the most disadvantaged people under India's centuries-old caste system.[2] As a strict Hindu social and religious hierarchy, India's caste system defines a person's status based on their religion, ancestry, national origin/ethnicity, and race/color—or the caste into which they are born—and will remain until death.[3] At the bottom of the Indian hierarchy is the Dalit, typically the darkest complexion caste, who were traditionally subject to "untouchability" practices which segregated them by social custom and legal mandate. Although *de jure* segregation ended in India, lower caste persons like Dalits continue to face *de facto* segregation and discrimination in all spheres.[4] Not only do Dalits endure the most severe inequality and unfair treatment in both the public and private sectors, they are often targets of hate violence and torture. Of India's approximately 1.3 billion people, about 200 million are Dalits.[5]

2.      Unlike Doe, most Indian immigrants in the United States are from upper castes. For example, in 2003, only 1.5 percent of Indian immigrants in the United States were Dalits or members of

---

[1] Because of the stigma and potential threats of violence associated with a person's status as Dalit, DFEH uses a fictitious name for Complainant to protect his privacy and protect him from further discrimination, harassment, or retaliation based on his caste and related characteristics. Through the DFEH's administrative process, Defendants have been made aware of Doe's legal name.

[2] Complainant John Doe is Dalit because of his religion, ancestry, national origin/ethnicity, and race/color. The caste to which someone belongs is immutable and determines their social status in traditional Indian culture. Social stratification and discrimination based on caste persists in India and among those living outside India, including in America. Encyclopedia Britannica, *India: Caste* (June 24, 2020), https://www.britannica.com/place/India/Caste (last visited June 29, 2020).

[3] Smita Narula, Human Rights Watch, *Caste Discrimination: A Global Concern,* Background: "Untouchability" and Segregation (2001), https://www.hrw.org/reports/2001/globalcaste/caste0801-03.htm#P133_16342 (last visited June 29, 2020).

[4] Human Rights Watch & Center for Human Rights and Global Justice at New York University School of Law, *Hidden Apartheid: Caste Discrimination against India's "Untouchables,"* at 45 (2007), https://www.hrw.org/reports/2007/india0207/india0207webwcover.pdf.

[5] Office of the Registrar General & Census Commissioner, India, Ministry of Home Affairs, Government of India, *2011 Primary Census Abstract*, https://censusindia.gov.in/pca/default.aspx.

-2-

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

lower castes.[6] More than 90 percent were from high or dominant castes. Similarly, upon information and belief, the same is true of the Indian employees in Cisco's workforce in San Jose, California.

3.      As alleged below, at Cisco's San Jose headquarters, Doe worked with a team of entirely Indian employees. The team members grew-up in India and immigrated as adults to the United States. Except for Doe, the entire team are also from the high castes in India. As beneficiaries of the caste system, Doe's higher caste supervisors and co-workers imported the discriminatory system's practices into their team and Cisco's workplace.

4.      Doe's supervisors and co-workers, Defendants Sundar Iyer and Ramana Kompella, are from India's highest castes. Because both knew Doe is Dalit, they had certain expectations for him at Cisco. Doe was expected to accept a caste hierarchy within the workplace where Doe held the lowest status within the team and, as a result, received less pay, fewer opportunities, and other inferior terms and conditions of employment because of his religion, ancestry, national origin/ethnicity, and race/color. They also expected him to endure a hostile work environment. When Doe unexpectedly opposed the unlawful practices, contrary to the traditional order between the Dalit and higher castes, Defendants retaliated against him. Worse yet, Cisco failed to even acknowledge the unlawful nature of the conduct, nor did it take any steps necessary to prevent such discrimination, harassment, and retaliation from continuing in its workplace.

5.      Not only did Cisco disregard Doe, but also its own workforce. For decades, similar to Doe's team, Cisco's technical workforce has been—and continues to be—predominantly South Asian Indian. According to the 2017 EEO-1 Establishment Report (EEO-1 Report), for example, Cisco has a significant overrepresentation of Asian employees compared to other companies in the communications, equipment and manufacturing industry (NAICS 3342) in the same geographic area, which is statistically significant at nearly 30 standard deviations.[7] Such overrepresentation is also present in management and

---

[6] Tinku Ray, *The US isn't safe from the trauma of caste bias*, The World (Mar. 08, 2019, 9:00 AM), https://www.pri.org/stories/2019-03-08/us-isn-t-safe-trauma-caste-bias.

[7] 2017 EEO-1 Report for Cisco Systems, Inc. at 170 West Tasman Drive in San Jose, California. Because Cisco is a federal contractor and employs 50 or more employees in California and the United States, Cisco is required to file an Employer Information Report EEO-1, also known as the EEO-1 Report. The EEO-1 Report requires employers to report employment data for all employees categorized

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

professional job categories. In addition to Cisco's direct workforce, Cisco also employs a significant number of South Asian Indian workers through Indian-owned consulting firms.[8] When combining its direct employees and consultants together, Cisco is among the top five H-1B visa users in the United States.[9] Over 70 percent of these H1-B workers come from India.[10] Outside of San Jose, Cisco's second largest workforce is in India.

6.    Although Cisco has employed a predominantly South Asian Indian workforce for decades, Cisco was—and continues to be—wholly unprepared to prevent, remedy, or deter the unlawful conduct against Doe or similarly situated lower caste workers. Cisco failed to take any steps whatsoever to prevent ". . . inequalities associated with [c]aste status, ritual purity, and social exclusion [from] becom[ing] embedded . . ." into its workplace, which is a documented problem for ". . . American mainstream institutions that have significant South Asian immigrant populations."[11] A 2018 survey of South Asians in the U.S. found that 67% of Dalits reported being treated unfairly at their American workplaces because of their caste and related characteristics.[12] However, few South Asian employees raised concerns to their American employers, because they believe "their concerns will not be given weight" or will lead to "negative consequences to their career."[13] This is precisely what happened to Doe at Cisco.

---

by sex, race/ethnicity, and job category. EEOC, *EEO-1 Instruction Booklet*, https://www.eeoc.gov/employers/eeo-1-survey/eeo-1-instruction-booklet (last visited June 23, 2020).

[8] Joshua Brustein, *Cisco, Google benefit from Indian firms' use of H-1B program*, The Economic Times (June 6, 2017, 8:31 PM), https://economictimes.indiatimes.com/tech/ites/cisco-google-benefit-from-indian-firms-use-of-h-1b-program/articleshow/59020625.cms.

[9] Laura D. Francis & Jasmine Ye Han, *Deloitte Top Participant in H-1B Foreign Worker Program—By Far*, Bloomberg Law (Feb. 4, 2020, 2:30 AM), https://news.bloomberglaw.com/daily-labor-report/deloitte-top-participant-in-h-1b-foreign-worker-program-by-far.

[10] U.S. Citizenship and Immigration Services, *Characteristics of H-1B Specialty Occupation Workers: Fiscal Year 2019 Annual Report to Congress October 1, 2018 – September 30, 2019*, at 7 (Mar. 5, 2020), https://www.uscis.gov/sites/default/files/reports-studies/Characteristics_of_Specialty_Occupation_Workers_H-1B_Fiscal_Year_2019.pdf

[11] Maari Zwick-Maitreyi et al., Equality Labs, *Caste in the United States: A Survey of Caste Among South Asian Americans*, 16 (2018) https://static1.squarespace.com/static/58347d04bebafbb1e66df84c/t/5d9b4f9afbaef569c0a5c132/1570459664518/Caste_report_2018.pdf.

[12] *Id.* at 20.

[13] *Ibid.*

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

## JURISDICTION AND VENUE

7.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1367(a). This action is authorized and instituted pursuant to Title VII, 42 U.S.C. § 2000e-5(f)(3), and the Civil Rights Act of 1991 § 102, 42 U.S.C. § 1981a.

8.     This Court has supplemental jurisdiction over Plaintiff's state law claims under the FEHA pursuant to 28 U.S.C. § 1367. These claims constitute the same case and controversy raised in the claims under federal law. This action is also authorized and instituted pursuant to Cal. Gov't Code §§ 12930 (f) and (h), 12965(a).

9.     The employment practices alleged to be unlawful were and are now being committed within the County of Santa Clara in the State of California, which is within the jurisdiction of the United States District Court for the Northern District of California. Venue is therefore proper in the United States District Court for the Northern District of California. 28 U.S.C. § 1391(b)(1)-(2); 42 U.S.C. Section 2000e-5(f)(3); Cal. Gov't Code § 12965(a).

10.    Plaintiff has standing to bring this suit and has complied with all statutory prerequisites to maintain Title VII and FEHA claims.

11.    John Doe filed a pre-complaint inquiry with DFEH on or about April 20, 2018, and a verified administrative complaint against Defendant Cisco on or about July 30, 2018. The charge was dually filed with the Equal Employment Opportunity Commission (EEOC). DFEH properly served the administrative complaint on Defendant Cisco on or about August 7, 2018. On or around October 9, 2018, Doe filed an amended administrative complaint against Defendants Cisco, Iyer, and Kompella. The amended administrative complaint was properly served on all named responding parties on or about October 9, 2018.

12.    DFEH investigated Doe's dually filed EEOC-DFEH charge and complaint pursuant to Cal. Gov't Code §§ 12930(f) and 12963; Title VII, 42 U.S.C. § 2000e-8(b); and the EEOC-DFEH Worksharing Agreement.

13.    Pursuant to Cal. Gov't Code § 12965(a), the DFEH convened a mandatory dispute resolution session on or about February 11, 2020. Settlement discussions were unsuccessful. The DFEH and Defendants entered consecutive tolling agreements to toll the statutory deadline for DFEH to file a

-5-

civil action to June 30, 2020. The EEOC issued a right to sue letter regarding the Complainant's federal claims on June 29, 2020, and DFEH files this action pursuant to the FEHA, Cal. Gov't Code §§ 12930(f)(1), (h), 12965(a); Title VII, 42 U.S.C. § 2000e-8(b); and the EEOC-DFEH Worksharing Agreement. All conditions precedent to the institution of this lawsuit have been fulfilled. The amount of damages sought by this complaint exceeds the minimum jurisdictional limits of this Court.

## INTRADISTRICT ASSIGNMENT

14.    This action is appropriate for assignment to the San Jose Division of this Court as the alleged unlawful practices were and are now being committed in Santa Clara County, which is within the jurisdiction of the San Jose Division.

## PARTIES

**Plaintiff California Department of Fair Employment and Housing**

15.    Plaintiff DFEH is the agency of the State of California charged with the administration, interpretation, investigation, and enforcement of the FEHA and Title VII, and is expressly authorized to bring this action by Cal. Gov't Code §§ 12930(f), (h), and 12965(a); and 42 U.S.C. § 2000e-5(f)(3).

16.    Complainant John Doe is the person claiming to be aggrieved on whose behalf the DFEH files this civil action. Cal. Gov't Code §§ 12965(a), 12930(f) & (h); 42 U.S.C. §2000e(l).

17.    At all relevant times, Complainant Doe was, and remains, an "employee" of Defendant Cisco within the meaning of Title VII and FEHA. 42 U.S.C. §§ 2000e(f), 2000e-2(a), 2000e-3(a); Cal. Gov't Code §§ 12926(c)-(d); 12940(a), (j), (k). On or around October 2015 to November 2018, Doe worked as a Principal Engineer with Cisco in Santa Clara County, California. Since on or about December 2018, Doe has worked as a Principal Engineer with Cisco in Santa Clara County, California.

18.    At all relevant times, Complainant Doe was, and remains, a "person" within the meaning of the FEHA. Cal. Gov't Code §§ 12925(d), 12940(h).

**Defendant Cisco Systems, Inc.**

19.    Defendant Cisco (EEO-1 reporting number N14137) is a leading global high-tech firm founded in 1984. The company designs, manufactures, sells, and supports equipment for internet-based networking. It has approximately 75,900 employees worldwide and is publicly traded on NASDAQ. The

-6-

firm's EEO-1 reports places it in the communications equipment manufacturing industry (NAICS 3342). Within California, Cisco employs at least 18,281 employees at 19 establishments in 6 different metropolitan areas, including the corporate headquarters in San Jose.

20.    At all relevant times, Defendant Cisco has continuously been and is now a California Corporation doing business in the State of California and the Cities of San Jose and Milpitas in Santa Clara County and has continuously had at least fifteen employees.

21.    At all relevant times, Defendant Cisco has continuously been an employer engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b), (g), and (h), and Cal. Gov't Code § 12926(d).

22.    At all relevant times, Cisco contracted with and received federal and state funds from the United States and California governments.

**Defendant Sundar Iyer**

23.    At all relevant times, Defendant Sundar Iyer was employed by Cisco as a "supervisor" within the meaning of FEHA. Cal. Gov't Code § 12926(t). DFEH is informed and believes that Iyer was a Distinguished Engineer with Cisco. Public records indicate Iyer resided in Palo Alto, California at the time of the events alleged herein.

24.    At all relevant times, Defendant Iyer was the agent of Defendant Cisco and was acting within the scope and authority of such agency, and Defendant Iyer is jointly and severally responsible and liable to Complainant Doe for the damages alleged.

**Defendant Ramana Kompella**

25.    At all relevant times, Defendant Ramana Kompella was employed by Cisco as a "supervisor" within the meaning of the FEHA. Cal. Gov't Code § 12926(t). DFEH is informed and believes that Kompella was a Principal Engineer with Cisco. Public records indicate Kompella resided in Cupertino, California at the time of the events alleged herein.

26.    At all relevant times, Defendant Kompella was the agent of Defendant Cisco and was acting within the scope and authority of such agency, and Defendant Kompella is jointly and severally responsible and liable to Complainant Doe for the damages alleged.

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

## STATEMENT OF CLAIMS

27. Beginning in the November 1, 2016, Defendants Cisco, Iyer, and Kompella engaged in unlawful employment practices, in violation of 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), and Cal. Gov't Code § 12940(a), (j), (h), and (k). These practices include but are not limited to the practices described below.

28. Complainant Doe's ancestry, national origin/ethnicity, and race/color is Dalit Indian. Doe has a darker complexion relative to other persons of non-Dalit Indian descent. Doe's religion is Hindu. As a Dalit, he also is known as being from the Untouchable or Scheduled Caste.

29. Doe has over 20 years of experience in the software development lifecycle process at startups and established companies. In or around September 2015, Iyer recruited and hired Doe as a Principal Engineer for Cisco because of his expertise and experience. As the head of the Cisco team, Iyer hired and supervised Doe, having the authority to control his day-to-day assignments, discipline, discharge, direct, and transfer Doe. Upon information and belief, Iyer is Brahmin.

30. In or around October 2016, two of Doe's colleagues told Doe that Iyer informed them that Doe was from the "Scheduled Caste" (Dalit) and enrolled in the Indian Institute of Technology (IIT) through affirmative action. Iyer was aware of Doe's caste because they attended IIT at the same time.

31. In or around November 1, 2016, Doe confronted Iyer about disclosing Doe's caste to other Cisco employees. Iyer asked Doe who claimed he made such a comment. After Doe shared the names of his colleagues, Iyer denied the comment and stated Doe's colleagues were not telling the truth.

32. In or around November 21, 2016, Doe contacted Cisco's human resources (HR) and Employee Relations to file a discrimination complaint against Iyer.

33. Six days after Doe's first contact with Cisco's HR and employee relations, Iyer told Doe he was taking away Doe's role as lead on two technologies.

34. On or around November 28, 2016, Iyer promoted two of Doe's colleagues to head engineering roles, one of whom was Defendant Kompella. Kompella was made Head of Southbound Engineering. Upon information and belief, Kompella is Brahmin or at least of a higher caste than Dalit. With this new title, Defendant Kompella received a raise of approximately 15% or more. As the Head of

-8-

Southbound Engineering, Kompella had the ability to direct the day-to-day assignments and recommend employment actions for those on his team, including Doe.

35.    On or around November 28, 2016, Iyer also removed team members from the third technology Doe was working on  and did not formally integrate the third technology into either team headed by the two new Heads of Engineering. As a result of these changes, Doe's role was reduced to that of a system  architect as an independent contributor, and he was isolated from all his colleagues.

36.    On or around December 8, 2016, Doe submitted a written complaint about Iyer's disclosure of Doe's caste, Doe's complaint to Iyer, and Iyer's retaliatory employment actions, including the sudden changes to Doe's job duties. He also complained that Iyer made discriminatory comments to a colleague and about a job applicant because of the applicant's religion (Muslim).

37.    Cisco's Employee Relations Manager, Brenda Davis, conducted the investigation into Doe's December 2016 complaint. Davis' internal investigation notes revealed that Iyer admitted that he told Doe's colleagues that Doe was not on the "main list." Among those from India, it is commonly known that students not on the main list are admitted to IIT through an affirmative action program designed for those from the "Scheduled Castes" or those outside the caste system. Therefore, stating that someone is not on the "main list" effectively reveals their caste. Despite this, Davis took no further action and failed to even contact relevant witnesses or Doe.

38.    Cisco Employee Relations staff, including Davis, also indicated that caste discrimination was not unlawful. As a result, Davis did not recommend any corrective action against Iyer. Iyer also admitted that he made a joke about Doe's co-worker's religion and talked about an applicant's Muslim-related appearance. Still, Davis did not recommend any corrective action. On or around February 2, 2017, Davis closed her investigation finding all of Doe's complaints were unsubstantiated.

39.    Iyer's retaliatory efforts continued. He further isolated Doe from the team when he disparaged Doe to  other employees, misrepresented that Doe did not perform his job adequately, and told Doe's team members that they should avoid working with him.

40.    On or around March 2, 2017, Doe sought review of Davis' investigation findings. After repeated attempts to have Cisco review Davis' findings, HR official Tara Powell finally reopened the investigation on or around April 25, 2017. Powell re-interviewed one of the employees to whom Iyer

-9-

made the comment about Doe's caste in or around October 2015. The employee stated that he learned about Doe's caste but refused to tell Powell how he knew, noting that he did not want to say anything about Iyer because they had known each other for a long time. He also stated that he thought Doe was being treated unfairly and that he was very technically able but was being excluded at work. Powell did not attempt to contact for an interview the other employee who witnessed Iyer's disclosure of Doe's caste. Two additional witnesses told Powell that they feared losing their jobs or otherwise being retaliated against for speaking out against Iyer. One of those employees also told Powell that he thought Doe was very competent and asked appropriate questions, but that Iyer was setting Doe up to push him out of the company.

41.     Powell's investigation also uncovered a spreadsheet that showed anticipated yearly raises, bonuses, and restricted stock unit awards that Iyer had promised Doe. These raises, bonuses, and awards never materialized when promised. But Powell also found that four out of the eight other team members received raises in or around October 2016.

42.     In or around August 2017, Powell concluded she could not substantiate any caste-based or related discrimination or retaliation against Doe. Powell, however, determined that Iyer mocked another employee's religion, and thus violated Cisco's Code of Conduct. Still, no immediate corrective action was taken.

43.     Despite Doe's repeated attempts to bring the caste-based and related discrimination, harassment, and retaliation to Defendant Cisco's attention in 2016 and 2017, Cisco failed to recognize casteism as a form of unlawful religion-, ancestry-, national origin/ethnicity-, and race/color-based discrimination or harassment under state or federal law and failed to conduct a thorough investigation. While the investigation confirmed Doe was increasingly isolated and treated unfairly by Iyer and Kompella, Cisco failed to take timely and appropriate corrective action. Moreover, Cisco's training was deficient in that it did not adequately train managerial employees on workplace discrimination, harassment, and retaliation, nor did the company prevent, deter, remedy, or monitor casteism in its workforce.

44.     On or around February 26, 2018, Kompella became the Interim Head of Engineering for Cisco's team after Iyer stepped down. In his new role, Kompella supervised Doe and continued to

discriminate, harass, and retaliate against Doe by, for example, giving him assignments that were impossible to complete under the circumstances. Kompella also began requiring Doe to submit weekly status reports to him and Senior Vice President/General Manager Tom Edsall.

45.     On or around May 21, 2018, Rajeev Gupta took over from Kompella and became the Director of Engineering. In that role, Gupta supervised Doe.

46.     Two months later, in or around July 2018, Doe applied for the position of Director of Research and Development Operations with Gupta. According to Gupta's interview notes, he ranked Doe as "below average" in six out of eight categories and as "meeting requirements" in the remaining two categories. But Gupta's assessment of Doe was improperly influenced by Iyer's retaliatory employment actions. Gupta specifically cited Doe's lead role being taken away and his job reduced to that of an independent contributor in November 2016. Gupta's notes also reflected Iyer's retaliatory criticisms about Doe's work product, social skills, and insubordination. Doe did not get the position.

47.     The effect of the unlawful employment practices complained of above was to deprive Doe of equal employment opportunities, and otherwise adversely affect his status as employees, because of religion, ancestry, national origin/ethnicity, and race/color.

48.     The unlawful employment practices complained of above were intentional.

49.     The unlawful employment practices complained of above were done with malice or with reckless indifference to Doe's  federally and state-protected civil rights.

**FIRST CAUSE OF ACTION**
**Violation of Title VII: Discrimination on the Basis of Religion, Ancestry, National Origin/Ethnicity, and Race/Color**
**(42 U.S.C. § 2000e-2(a))**
**Against Defendant Cisco**

50.     The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

51.     Title VII provides it is an unlawful employment practice for an employer to discriminate against an employee with respect to his compensation, terms, conditions, or privileges of employment, or to limit, segregate or classify the employee in any way that would deprive or tend to deprive him of employment opportunities or otherwise adversely affect his employment status on the basis of his religion, ancestry, national origin/ethnicity, and race/color. 42 U.S.C. § 2000e-2(a).

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

52. As alleged above, Cisco discriminated against Doe by subjecting him to disparate terms and conditions of employment based on his religion, ancestry, national origin/ethnicity, and race/color. Among other actions, Cisco reassigned Doe's job duties and isolated him from his colleagues, denied him a raise, denied him work opportunities that would have led to a raise, denied him a promotion to the Head of Engineering, and denied him a promotion to the Director of Research and Development Operations.

53. The alleged discriminatory comments and conduct constitute unlawful discrimination for which Defendant Cisco is liable under 42 U.S.C. § 2000e-2(a).

54. As a direct result of these unlawful employment practices, Doe suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

55. As a direct result of these unlawful employment practices, Doe suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

56. Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

57. Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, unlawful employment discrimination described herein unless it is enjoined pursuant Title VII. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of Title VII, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

58. Plaintiff lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

///

///

///

///

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

## SECOND CAUSE OF ACTION
### Violation of Title VII: Harassment on the Basis of Religion, Ancestry, National Origin/Ethnicity, and Race/Color
### (42 U.S.C. § 2000e-2(a))
### Against Defendant Cisco

59.     The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

60.     Title VII prohibits harassment as a form of discrimination when it creates a hostile work environment. Employers are liable for the harassment of their supervisors. 42 U.S.C. § 2000e-2(a).

61.     As alleged above, as supervisors for Cisco's team, Defendants Iyer and Kompella subjected Doe to offensive comments and other misconduct based on his caste, which includes his religion, ancestry, national origin/ethnicity, and race/color, so severe or pervasive that it created a hostile work environment. Among other things, Iyer and Kompella's comments and conduct include revealing Doe's caste to his colleagues, disparaging him to the team, isolating him from the rest of the team, reducing his role to that of an independent contributor, giving him assignments that were impossible to complete under the circumstances, and requiring him to submit weekly status reports. Such a work environment where a stigmatizing personal characteristic such as caste is publicized and used to subjugate an individual in order to maintain a centuries-old hierarchy is hostile, intimidating, offensive, oppressive, and abusive. Other employees corroborated that Doe was isolated from the rest of the team and that Iyer and Kompella were responsible for it. These were observations Cisco was made aware of during its internal investigations. As evidenced by Doe's repeated internal complaints, he in fact considered the work environment to be hostile, intimidating, offensive, oppressive, and abusive.

62.     As a direct result of these unlawful employment practices, Doe suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

63.     As a direct result of these unlawful employment practices, Doe suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

64.     Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

65.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, unlawful employment discrimination described herein unless it is enjoined pursuant to Title VII. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of Title VII, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

66.     Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive  relief as prayed for herein.

**THIRD CAUSE OF ACTION**
**Violation of Title VII: Retaliation**
**(42 U.S.C. § 2000e-3(a))**
**Against Defendant Cisco**

67.     The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

68.     Title VII prohibits employers from discriminating against an employee because the employee opposed any practice made unlawful by Title VII. Employers are liable for the retaliatory conduct of their supervisors. *Id.* § 2000e-3(a).

69.     As alleged above, as supervisors for Cisco, Defendants Iyer and Kompella retaliated against Doe for opposing their discriminatory and harassing conduct by confronting Iyer and filing internal discrimination complaints. Among other things, Doe engaged in protected activity by confronting Iyer about disclosing his caste to colleagues and by repeatedly trying to bring the caste-based and related discrimination and harassment to Cisco's attention. Immediately afterwards, Iyer and Kompella subjected Doe to adverse employment actions including reassigning his job duties, isolating him from colleagues, giving him assignments that were impossible to complete under the circumstances, denying him work opportunities that could have led to a raise, denying him a raise, and denying him promotions. Cisco aided the retaliation.

70.     As a direct result of these unlawful employment practices, Doe suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

-14-

71.    As a direct result of these unlawful employment practices, Doe suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

72.    Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

73.    Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, unlawful employment discrimination described herein unless it is enjoined pursuant to Title VII. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of Title VII, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

74.    Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

### FOURTH CAUSE OF ACTION
**Violation of FEHA: Discrimination on the Basis of Religion, Ancestry, National Origin/Ethnicity, and Race/Color**
**(Cal. Gov't Code § 12940(a))**
**Against Defendant Cisco**

75.    The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

76.    The FEHA guarantees all employees a workplace free from unlawful discrimination and harassment based on the employee's religion, ancestry, national origin/ethnicity, and race/color. Cal. Gov't Code § 12940(a).

77.    Cisco subjected Doe to discriminatory comments and conduct because of his religion, ancestry, national origin/ethnicity, and race/color, as alleged above and in the First Cause of Action.

78.    The alleged discriminatory comments and conduct constitute unlawful discrimination for which Defendant Cisco is liable under Cal. Gov't Code § 12940(a).

79.    As a direct result of these unlawful employment practices, Doe suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

80. As a direct result of these unlawful employment practices, Doe suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

81. Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

82. Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

83. Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

**FIFTH CAUSE OF ACTION**
**Violation of FEHA: Harassment on the Basis of Religion, Ancestry, National Origin/Ethnicity, and Race/Color**
**(Cal. Gov't Code § 12940(j))**
**Against All Defendants**

84. The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

85. The FEHA prohibits harassment based on the employee's protected characteristics including, but not limited to, their caste, which includes religion, ancestry, national origin/ethnicity, and race/color. Cal. Gov't Code § 12940(j). Employers are liable for the harassment of their supervisors. *Id.* (j)(1). Employees and supervisors are liable for their own harassing conduct. *Id.* (j)(3).

86. As supervisors for Cisco, Defendants Iyer and Kompella subjected Doe to offensive comments and other misconduct based on his caste, which includes his religion, ancestry, national origin/ethnicity, and race/color, so severe or pervasive that it created a hostile work environment, as alleged above and in the Second Cause of Action.

87. Defendants Iyer and Kompella are individually liable for their own harassing conduct in violation of the FEHA.

88.    Because Defendants Iyer and Kompella were supervisors within the meaning of the FEHA, Defendant Cisco is liable for their harassing conduct. Defendant Cisco knew or should have known of the conduct as a result of Doe's internal complaints and is liable for its failure to take immediate and appropriate corrective action.

89.    As a direct result of these unlawful employment practices, Doe suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

90.    As a direct result of these unlawful employment practices, Doe suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

91.    Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

92.    Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

93.    Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

**SIXTH CAUSE OF ACTION**
**Violation of FEHA: Retaliation**
**(Cal. Gov't Code § 12940(h))**
**Against Defendant Cisco**

94.    The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

95.    California law also guarantees each employees' right to a workplace and business environment free from unlawful retaliation because the employee opposed discriminatory or harassing practices that are unlawful under the FEHA. Employers are liable for the retaliatory conduct of supervisors. *Id.* § 12940(h).

-17-

96.     As supervisors for Cisco, Defendants Iyer and Kompella retaliated against Doe for opposing their discriminatory and harassing conduct by confronting Iyer and filing internal discrimination complaints and Cisco aided the retaliation, as alleged above and in the Third Cause of Action.

97.     Defendant Cisco is liable for the retaliatory conduct of Defendants Iyer and Kompella.

98.     As a direct result of these unlawful employment practices, Doe suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

99.     As a direct result of these unlawful employment practices, Doe suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

100.    Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

101.    Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

102.    Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

**SEVENTH CAUSE OF ACTION**
**Violation of FEHA: Failure to Take All Reasonable Steps to Prevent Discrimination, Harassment, and Retaliation**
**(Cal. Gov't Code § 12940(k))**
**Against Defendant Cisco**

103.    The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

104.    California Government Code section 12940(k) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring. Employers have the affirmative duty to take

-18-

all reasonable steps to prevent and promptly correct discriminatory, harassing, and retaliatory conduct. Cal. Code Regs. tit. 2, § 11023(a). Cisco's conduct, as described above, constitutes a failure to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation in violation of Cal. Gov't Code § 12940(k).

105.    An actionable claim for violation of California Government Code section 12940(k) on behalf of a complainant exists when an underlying claim of discrimination, harassment, or retaliation is established. Cal. Code Regs. tit. 2, § 11023(a)(2).

106.    As alleged above, Defendant Cisco failed to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring within its South Asian Indian workforce. Among other things, Defendant Cisco failed to develop anti-discrimination and anti-harassment policies and practices that recognize and prohibit caste discrimination as a form of unlawful discrimination under state and federal law. Defendant Cisco also failed to provide appropriate training to managers, supervisors employees, human resources, and employee relations personnel on how to identify, investigate, remediate, and prevent caste-based discrimination and harassment, or retaliation against employees or persons who oppose discriminatory and harassing practices that are unlawful under the FEHA.

107.    Defendant Cisco failed to prevent discrimination and harassment by its managers and supervisors against Doe because of his caste.

108.    Defendant Cisco failed to prevent retaliation by its managers and supervisors against Doe because he opposed discriminatory and harassing practices that are unlawful under the FEHA.

109.    As a direct result of Cisco's failures, Doe was subjected to unlawful discrimination, harassment, and retaliation by Cisco's managers and supervisors, suffering economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

110.    As a direct result of Cisco's failures, Doe was subjected to unlawful discrimination, harassment, and retaliation by Cisco's managers and supervisors, suffering emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

111. Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

112. Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

113. Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

**EIGHTH CAUSE OF ACTION**
**Violation of FEHA: Failure to Take All Reasonable Steps to Prevent Discrimination, Harassment, and Retaliation**
**(Cal. Gov't Code § 12940(k))**
**Against Defendant Cisco**

114. The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

115. In an exercise of the DFEH's police powers, the DFEH may independently seek additional remedies for a violation of Cal. Gov't Code § 12940(k). Cal. Code Regs. tit. 2, § 11023(a)(3). As the agency of the State of California charged with the administration, interpretation, investigation, and enforcement of FEHA, the DFEH brings this claim in the name of the DFEH on behalf of all Indian persons who are or are perceived to be Dalit, of lower castes, or who fall outside the caste system, who are employed by or may seek employment with Cisco in the future.

116. As alleged above, Defendant Cisco failed to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring within its South Asian Indian workforce. Among other things, Defendant Cisco failed to develop anti-discrimination and anti-harassment policies and practices that recognize and prohibit caste discrimination as a form of unlawful discrimination under state and federal law. Defendant Cisco also failed to provide appropriate training to managers, supervisors employees, human resources, and employee relations personnel on how to identify, investigate, remediate, and prevent caste-based discrimination and harassment, or retaliation against

-20-

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

employees or persons who oppose discriminatory and harassing practices that are unlawful under the FEHA.

117.    Cisco's failure to take any reasonable steps to prevent, deter, remedy, or monitor casteism and related violations in its workforce exposes a significant portion of its South Asian Indian workforce to the risk of discrimination, harassment, and retaliation on the basis of their caste and related characteristics.

118.    Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

119.    Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

**PRAYER FOR RELIEF**

WHEREFORE, the DFEH respectfully requests that this Court:

1.    Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination and harassment based on religion, ancestry, national origin/ethnicity, and race/color.

2.    Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in retaliation.

3.    Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for individuals regardless of their religion, ancestry, national origin/ethnicity, and race/color, and that eradicate the effects of their past and present unlawful employment practices

4.      Order Defendants to make Doe whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other injunctive relief necessary to eradicate the effects of Defendants' unlawful employment practices.

5.      Order Defendants to make Doe whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein, in amounts to be determined at trial.

6.      Order Defendants to make Doe whole, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of herein, including losses such as emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

7.      Order Defendants to pay Doe punitive damages for their malicious and/or reckless conduct described herein, in amounts to be determined at trial.

8.      Grant such further relief as the Court deems necessary and proper in the public interest.

9.      Award the DFEH its costs of this action, including reasonable attorneys' fees, as provided by statute.

## JURY TRIAL DEMAND

The DFEH requests a jury trial on all questions of fact raised by its complaint.

Dated: June 30, 2020

CALIFORNIA DEPARTMENT OF FAIR
EMPLOYMENT AND HOUSING


By:    _____
JEANETTE HAWN
Staff Counsel
Attorneys for the DFEH

-22-

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination