1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MICHAEL NEWMAN, State Bar No. 222993
   Senior Assistant Attorney General
3  WILLIAM H. DOWNER, State Bar No. 257644
   CHEROKEE DM MELTON, State Bar No. 243265
4  Supervising Deputy Attorneys General
   *CARLY J. MUNSON, State Bar No. 254598
5  SOPHIA CARRILLO, State Bar No. 326428
   Deputy Attorneys General
6    300 South Spring Street, Suite 1702
     Los Angeles, CA  90013-1230
7    Telephone:  (213) 269-6370
     Fax:  (916) 731-2129
8    E-mail:  Carly.Munson@doj.ca.gov
   *Attorneys for Defendant Kevin Kish, Director of*
9  *California Civil Rights Department*

10

IN THE UNITED STATES DISTRICT COURT

11

FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13

14

| | |
|---|---|
| 15  **HINDU AMERICAN FOUNDATION, INC.,** **a Florida Not-For-Profit Corporation,** | Case No. 2:22-CV-01656-DAD-JDP |
| 16 | |
| 17                              Plaintiff, | **NOTICE OF MOTION AND MOTION** |
| 18               v. | **TO DISMISS PURSUANT TO RULE** **12(b)(1) AND 12(b)(6); MEMORANDUM** **OF POINTS AND AUTHORITIES IN** |
| 19  **KEVIN KISH, an individual, in his official** | **SUPPORT OF MOTION TO DISMISS** |
| 20  **capacity as Director of the California Civil** **Rights Department; and Does 1-50,** **inclusive,** | Date:            June 6, 2023 Time:            1:30 p.m. |
| 21                             Defendants. | Judge:          Hon. Dale A. Drozd Action Filed:   September 20, 2022 |
| 22 | |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Notice of Motion to Dismiss ................................................................................................ 1

Introduction ........................................................................................................................ 3

Background ......................................................................................................................... 4

    I.      The Parties ..................................................................................................... 4

    II.     The Department's Ongoing Efforts to Remedy Workplace Discrimination and Harassment Against Dalit Indians at Cisco ................................... 5

Legal Standard ................................................................................................................... 7

Argument ........................................................................................................................... 7

    I.      Plaintiff's Complaint Must Be Dismissed Because It Has Not and Cannot Establish Standing to Pursue this Litigation .............................................. 8

          A.    Plaintiff does not allege and cannot establish that it has individual members who have standing to bring this suit against the Department (First *Hunt* Prong) ................................................ 8

              1.    Plaintiff is not a membership organization ................................... 9

              2.    Plaintiff fails to allege or show any "member" has suffered injury in fact ..................................................................... 10

              3.    Plaintiff's generalized grievance is not redressable .................... 13

          B.    Plaintiff has not established that this legal action is germane to its purpose (Second *Hunt* Prong) ................................................. 14

          C.    Plaintiff cannot establish associational standing because its suit requires involvement of its "members" (Third *Hunt* Prong) .................. 15

    II.     Plaintiff's Complaint Must Be Dismissed Because It Fails to State a Claim Upon Which Relief Can Be Granted .............................................. 17

          A.    Plaintiff fails to state a claim for relief under the Free Exercise Clause .......................................................................... 17

          B.    Plaintiff fails to state a claim for relief under the Due Process Clause .......................................................................... 20

          C.    Plaintiff fails to state a claim for relief under the Equal Protection Clause .......................................................................... 22

Conclusion ......................................................................................................................... 25

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4
5
*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...........................................................................7, 11, 18, 19

6
*Assoc. of Am. Med. Coll. v. United States*
    217 F.3d 770 (9th Cir. 2000) ..................................................................... 7

7
8
*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't
    of Transp.*
    713 F.3d 1187 (9th Cir. 2013) ................................................................... 9

9

10
*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990) ................................................................... 21

11
12
*Barren v. Harrington*
    152 F.3d 1193 (9th Cir. 1998) ................................................................. 22

13
*Bd. of Regents v. Roth*
    408 U.S. 564 (1972) ............................................................................... 21

14

15
*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................... 18

16
17
*Board of Education v. Allen*
    392 U.S. 236 (1968) ............................................................................... 11

18
*California Parents for Equalization of Educational Materials v. Torlakson*
    267 F. Supp. 3d 1218 (N.D. Cal. 2017) ................................................... 22

19

20
*California v. Texas*
    141 S. Ct. 2104 (2021) ........................................................................... 13

21
22
*Carrico v. City and Cty. of San Francisco*
    656 F.3d 1002 (9th Cir. 2011) ................................................................. 18

23
*Cholla Ready Mix, Inc. v. Civish*
    382 F.3d 969 (9th Cir. 2004) ................................................................... 17

24

25
*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) ............................................................................... 10

26
*Dep't of Fair Emp't & Hous. v. Law Sch. Admissions Council, Inc.*
    941 F. Supp. 2d 1159 (N.D. Cal. 2013) ............................................. 22, 25

27

28

1

## **TABLE OF AUTHORITIES**
### (continued)

2

**Page**

3

*Espinoza v. Mont. Dep't of Revenue*
   __U.S. __, 140 S. Ct. 2246 (2020).................................................................... 20

4

5

*Fields v. Palmdale School Dist.*
   447 F.3d 1187 (9th Cir. 2006) ....................................................................... 22

6

*Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*
   471 F.3d 1100 (9th Cir. 2006) ......................................................................... 9

7

8

*Glanton ex rel. v. AdvancePCS Inc.*
   465 F.3d 1123 (9th Cir. 2006) ....................................................................... 10

9

*Harris v. City of Santa Monica*
   56 Cal. 4th 203 (2013) ..................................................................................... 5

10

11

*Harris v. McRae*
   448 U.S. 297 (1980)...................................................................15, 16, 17, 18

12

13

*Hunt v. Washington State Apple Advertising Commission*
   432 U.S. 333 (1977)................................................................................. *passim*

14

*Ingraham v. Wright*
   430 U.S. 651 (1977)....................................................................................... 21

15

16

*Jones v. Williams*
   791 F.3d 1023 (9th Cir. 2015) ................................................................. 17, 18

17

18

*Kokkonen v. Guardian Life Ins. Co.*
   511 U.S. 375 (1994)......................................................................................... 7

19

*Krottner v. Starbucks Corp.*
   628 F.3d 1139 (9th Cir. 2010) ....................................................................... 12

20

21

*Lam v. City and Cty. of San Francisco*
   868 F. Supp. 2d 928 (N.D. Cal. 2012) ..................................................... 16, 23

22

23

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992)...................................................................................... 8, 13

24

*Mason v. Adams Cnty. Recorder*
   901 F.3d 753 (6th Cir. 2018) ......................................................................... 12

25

26

*Mathews v. Eldridge*
   424 U.S. 319 (1976)....................................................................................... 21

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

*New Hampshire Motor Transport Ass'n v. Rowe*
448 F.3d 66 (1st Cir. 2006) ................................................................. 16

*New York State Club Ass'n, Inc. v. City of N.Y.*
487 U.S. 1 (1988) ................................................................................. 8

*Pers. Adm'r of Mass. v. Feeney*
442 U.S. 256 (1979) ....................................................................... 16, 23

*Portman v. Cnty. of Santa Clara*
995 F.2d 898 (9th Cir. 1993) .......................................................... 12, 21

*Rogers v. Lodge*
458 U.S. 613 (1982) ........................................................................... 23

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*
44 F.4th 867 (9th Cir. 2022) .......................................................... 11, 20

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004) ............................................................. 7

*Savage v. Glendale Union High Sch.*
343 F.3d 1036 (9th Cir. 2003) ............................................................. 7

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*
806 F.2d 1393 (9th Cir. 1986) ........................................................... 18

*Serbian Eastern Orthodox Diocese v. Milivojevich*
426 U.S. 696 (1976) ........................................................................... 20

*Sierra Club v. Morton*
405 U.S. 727 (1972) ............................................................................. 7

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) ........................................................................... 10

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) ............................................................. 18

*Summers v. Earth Island Institute*
555 U.S. 488 (2009) ........................................................................... 11

*TransUnion LLC v. Ramirez*
___ U.S. ___, 141 S. Ct. 2190 (2021) .............................................. 8, 12

**<u>TABLE OF AUTHORITIES</u>**
(continued)

**<u>Page</u>**

*U.S. v. Armstrong*
    517 U.S. 456 (1996).............................................................................. 24

*U.S. v. Bourgeois*
    964 F.2d 935 (9th Cir. 1992) ......................................................... 24, 25

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*
    517 U.S. 544 (1996)....................................................................... 14, 15

*United States v. Ritchie*
    342 F.3d 903 (9th Cir. 2003) ................................................................ 7

*West v. Atkins*
    487 U.S. 42 (1988) .............................................................................. 21

*Western Mining Council v. Watt*
    643 F.2d 618 (9th Cir.1981) ....................................................9, 10, 17

*White v. Lee*
    227 F.3d 1214 (9th Cir. 2000) .............................................................. 7

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*
    5 F.4th 997 (9th Cir. 2021) ................................................................. 10

**STATUTES**

United States Code Title 42 § 1983 ............................................... 3, 17

Cal. Gov't Code
    § 11135 ................................................................................................ 5
    §§ 12900-12999 ........................................................................ *passim*
    § 12920 ...............................................................................3, 4, 14, 25
    § 12921 ................................................................................................ 4
    § 12926(t) ............................................................................................ 5
    § 12930 ................................................................................................ 4
    § 12930(f) ............................................................................................ 4
    § 12930(f)(1) ....................................................................................... 4
    § 12940 .............................................................................................. 14
    § 12940(j) ............................................................................................ 5
    § 12948 ................................................................................................ 4
    § 12960 .............................................................................................. 14

# TABLE OF AUTHORITIES
### (continued)

**Page**

§ 12961 ................................................................................................................ 14
§ 12963.7 ............................................................................................................. 22
§ 12965 .......................................................................................................... 3, 4, 14
§ 12965(a)(5)(A) .................................................................................................. 22
§ 12965(d) ........................................................................................................... 22

**CONSTITUTIONAL PROVISIONS**

U.S. Const.
Amend. I ................................................................................................ 3, 11, 15, 17
Amend. V ............................................................................................................ 24
Amend. XIV ................................................................................................... *passim*
Art. III, § 2 ........................................................................................................... 8

**COURT RULES**

Federal Rules of Civil Procedure
Rule 12(b)(1) ............................................................................................ 1, 4, 7, 25
Rule 12(b)(6) ................................................................................................. *passim*

**TO THE COURT AND TO THE PLAINTIFF'S COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 6, 2023, at 1:30 p.m., or as soon thereafter as the Court may hear this matter, Defendant Kevin Kish, Director of the California Civil Rights Department, will and hereby does move to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) on the grounds that the Hindu American Foundation lacks standing to pursue this matter, and Rule 12(b)(6) on the grounds that the complaint fails to state a claim upon which relief can be granted.  Pursuant to the Court's Standing Order in Civil Cases, the hearing will be held by Zoom.

The parties agreed to a briefing schedule for this Motion to Dismiss in November 2022 and submitted that schedule to the Court.  (ECF No. 6.)  Counsel for the parties then met and conferred by videoconference for nearly two hours on January 30, 2023, to discuss the substance of this Motion to Dismiss under Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state viable claims.  (Declaration of Carly J. Munson in Support of Motion to Dismiss ¶ 4).  Counsel have subsequently communicated by email and have been unable to reach an agreement as to the issues presented herein.  (*Id.* ¶ 5).  Defendant Kish certifies, through counsel, that meet and confer efforts have been exhausted and accordingly refers this matter to the Court for resolution.

This motion is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities; the accompanying Request for Judicial Notice; the accompanying Declarations of Carly J. Munson and Sophia A. Carrillo, counsel for Defendant Kish, and the exhibits thereto; all pleadings and papers on file in this action; and such other matters as the Court may deem appropriate.

/

/

/

/

/

/

1

1  Dated:  February 6, 2023                              Respectfully submitted,

2                                                         ROB BONTA
                                                          Attorney General of California
3                                                         MICHAEL NEWMAN
                                                          Senior Assistant Attorney General
4                                                         WILLIAM H. DOWNER
                                                          CHEROKEE DM MELTON
5                                                         Supervising Deputy Attorneys General

6
                                                          /s/ Carly J. Munson _____
7
                                                          CARLY J. MUNSON
8                                                         SOPHIA A. CARRILLO
                                                          Deputy Attorneys General
9                                                         *Attorneys for Defendant Kevin Kish,*
                                                          *Director of the California Civil Rights*
10                                                        *Department*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

It is "the public policy of [California] that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed, color, national origin, [or] ancestry," among other characteristics.  Cal. Gov't Code § 12920 (2022).[1]  Accordingly, the Legislature has authorized the California Civil Rights Department ("CRD" or the "Department")[2] to investigate and remediate discriminatory conduct that violates the Fair Employment and Housing Act ("FEHA").  *See* Gov't Code §§ 12900-12999.  The Department exercised this statutory authority in October 2020 by initiating a FEHA enforcement action in state court against Cisco Systems, Inc. ("Cisco") for discrimination, harassment, and retaliation against an employee based on his status as a Dalit Indian—the lowest classification in India's caste system.  (*See* Decl. of Sophia Carrillo in Supp. of Defendant Kish's Req. for Judicial Notice ("RJN"), Exhibit A, CRD Employment Discrimination Complaint Against Cisco Systems[3]; *see also* Gov't Code § 12965).

In response to the Department's state lawsuit against Cisco, Plaintiff Hindu American Foundation ("HAF") filed this federal action against the Department's Director under section 1983 of Title 42 of the United States Code ("Section 1983"), alleging that the Department's suit violates the U.S. Constitution's Free Exercise Clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment by linking the practice of caste discrimination to Hinduism.  Through this suit, Plaintiff seeks to have this Court declare the Department's state suit against Cisco unconstitutional and enjoin the Department from pursuing certain types of future employment discrimination actions, in contravention of its statutory mandate.[4]  *See, e.g.*, Gov't Code § 12930(f)(1). Plaintiff's suit lacks merit and should be

---

[1] Unless otherwise noted, all references are to current California state laws and regulations.
[2] The Civil Rights Department was formerly known as the Department of Fair Employment and Housing or DFEH.
[3] Plaintiff's Exhibit A to its complaint is a previous lawsuit filed by the Department against Cisco in federal court in June 2020 (*see* Case No. 5:20-cv-04374, ECF No. 1).  The Department voluntarily dismissed this federal suit in October 2020 (*see* RJN, Exh. A ¶ 14), prior to filing the suit currently pending in state court.  For the Court's convenience, Defendant Kish has provided the pending state complaint against Cisco as Exhibit A to his concurrently filed Request for Judicial Notice.
[4] Plaintiff's suit does not assert that the FEHA itself is unconstitutional on its face or as applied.

dismissed.

First, Federal Rule of Civil Procedure 12(b)(1) requires dismissal because Plaintiff does not have standing to assert its purported claims.  This is no mere technicality that can be addressed by amendment because Plaintiff relies on a theory of associational standing, but Plaintiff is not a membership organization.  Without members, Plaintiff cannot sue on behalf of any group, particularly one as large and diverse as all Hindu Americans.  Second, Plaintiff's complaint must be dismissed pursuant to Rule 12(b)(6) because it does not state a claim upon which relief can be granted.  Plaintiff's complaint is devoid of any allegations of specific, individual experiences of harm caused by the Department's action against Cisco for violating the FEHA; the few generalized allegations Plaintiff does make are clearly cast in hypothetical and speculative terms that are insufficient to meet the pleading standard.  Plaintiff omits key elements from its bare recitation of claims under the Free Exercise and Equal Protection Clauses; its claim under the Due Process Clause lacks any cognizable legal theory.  In the absence standing and any viable legal claims, Plaintiff's suit must be dismissed without leave to amend.

## BACKGROUND

### I.   THE PARTIES

Defendant Kevin Kish is the Department's Director.  The Department is a state agency charged with enforcing California's civil rights laws, including the FEHA, which the Legislature has declared to be "an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of [California]."  Gov't Code § 12920.  The FEHA empowers the Department to receive, investigate, conciliate, and litigate complaints that allege violations of the laws that are within the broad scope of its jurisdiction.  Gov't Code §§ 12930(f), 12965.  The central purpose of the FEHA is to prevent, eliminate, and remedy discrimination in employment, housing, and other aspects of daily living.  Gov't Code §§ 12920-12921, 12930 & 12948 (incorporating the Unruh Civil Rights Act, the Ralph Civil Rights Act, and Government Code § 11135 into the FEHA and CRD's enforcement authority); *see also Harris v. City of Santa Monica*, 56 Cal. 4th 203, 223-224 (2013).

Plaintiff describes itself as the largest Hindu "educational and advocacy institution" in the nation.  (Complaint ("Compl.") ¶ 1).  However, Plaintiff's complaint does not allege facts showing that it is a membership organization, nor that any of its members have been threatened or face imminent threat of being directly affected by the Department's pending FEHA action against Cisco.  Moreover, as discussed below, Plaintiff's publicly available tax records indicate that it is not organized as a membership organization.  (*See, e.g.*, RJN, Exhs. C-E, Plaintiff's Internal Revenue Service (IRS) Forms 990 for the Tax Years 2019, 2020, and 2021; *see also* HAF, https://www.hinduamerican.org, *passim*).  Plaintiff is a 501(c) nonprofit organization headquartered in Washington, DC.  (*See* RJN, Exhs. C at 1, D at 1, and E at 1).

## II.   THE DEPARTMENT'S ONGOING EFFORTS TO REMEDY WORKPLACE DISCRIMINATION AND HARASSMENT AGAINST DALIT INDIANS AT CISCO

After receiving and investigating a complaint by one of Cisco's workers, the Department filed an employment discrimination action against Cisco and two of its individual supervisors[5] (hereinafter "Cisco") in Santa Clara County Superior Court in October 2020.[6]  (*See* RJN, Exh. A ¶¶ 11-15).  The Department's lawsuit, which is still pending[7], alleges that Cisco engaged in unlawful employment practices against this worker (referred to by the fictitious name "John Doe") by subjecting him to disparate terms and conditions of employment based on his status as a Dalit Indian[8] in violation of the FEHA.  (RJN, Exh. A ¶¶ 51-60).  For example, the suit alleges that Cisco reassigned Doe's job duties and isolated him from his other colleagues, denied him a raise, denied him work opportunities that would have led to a raise, and denied him two promotions.  (*Id.* ¶ 53).  In addition, the suit alleges that Cisco has violated the FEHA by subjecting Doe to offensive comments and other misconduct, including publicizing his caste, that

---

[5] Supervisors can be held individually liable for harassment under the FEHA.  *See* Gov't Code §§ 12926(t), 12940(j).

[6] Plaintiff has also sought to intervene in the Department's suit against Cisco in state court.  (*See* RJN, Exh. B, HAF Mot. to Intervene and [Proposed] Complaint in Intervention).  The allegations raised in this federal complaint—that the Department conflates or improperly attributes the caste system to Hinduism—are virtually identical to those Plaintiff raises in its pending motion to intervene.  (*See id.*, *passim*).

[7] The Department and Cisco will attend private mediation on May 2, 2023.  (*See* Case No. 20-cv-372366, Case Management Conference Statements by the Department and Cisco dated January 30, 2023).

[8] Doe immigrated to the U.S. from India, where Dalits, also referred to as the "untouchables," are at the bottom of the caste hierarchy.  (*See* RJN, Exh. A ¶¶ 1-3).

amount to a hostile work environment, and by failing to take action in response to Doe's repeated internal complaints about these behaviors. (*Id.* ¶¶ 61-71). Finally, it alleges that Cisco has violated the FEHA by retaliating against Doe and failing to take all reasonable steps to prevent discrimination, harassment, and retaliation. (*Id.* ¶¶ 72-99). The Department alleges that Doe has suffered this discrimination, harassment, and retaliation based on his status as a Dalit Indian, which is presented as an identity affiliated with his race, color, ancestry, national origin, and ethnicity, as well as his religion. (*See, e.g.*, *id.* at 2, fn. 2, ¶¶ 1, 4, 48, 53-54, 62-64).

The Department seeks compensatory and punitive damages for Doe, including back pay, as well as injunctive relief to eradicate "discrimination and harassment based on religion, ancestry, national origin/ethnicity, and race/color" against Dalit Indians at Cisco. (RJN, Exh. A at 18-19). The Department also seeks changes to Cisco's "policies, practices, and programs that provide equal employment opportunities for individuals regardless of their religion, ancestry, national origin/ethnicity, and race/color" to eradicate the effects of Cisco's "past and present unlawful employment practices." (*Id.*).

The Department makes just one specific statement about Hinduism in its 19-page complaint against Cisco. (*See* RJN, Exh. A ¶¶ 1, 29). Paraphrasing a finding from a Human Rights Watch report, the complaint alleges: "As a strict Hindu social and religious hierarchy, India's caste system defines a person's status based on their religion, ancestry, national origin/ethnicity, and race/color—or the caste into which they are born—and will remain until death." (*Id.* ¶ 1 (citing to 13 Human Rights Watch, *Caste Discrimination: A Global Concern, A Report by Human Rights Watch for the United Nations World Conference Against Racism, Racial Discrimination, Xenophobia, and Related Intolerance* (Durban, South Africa, Sept. 2001) 5-24)).[9] The only other reference to Hinduism is in identifying Doe's religion. (*Id.* ¶ 29). The Department's complaint links Doe's caste status to multiple identity vectors, not just religion. (*Id.* at 2, fn. 2, ¶¶ 1, 4, 48, 53-54, 62-64).

---

[9] This report is available at https://www.hrw.org/reports/2001/globalcaste/caste0801.pdf.

6

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." A Rule 12(b)(1) motion can challenge the sufficiency of the pleadings to establish jurisdiction (facial attack), or a lack of any factual support for the subject matter jurisdiction regardless of the pleading's sufficiency (factual attack). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing to *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a factual attack, courts need not presume the truthfulness of the plaintiff's allegations. *Id.* Rather, courts may review evidence beyond the complaint. *Id.* (citing to *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003); *see also Assoc. of Am. Med. Coll. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). Plaintiff, rather than the moving party, has the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Once the moving party has properly presented extrinsic evidence to the court, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air*, 373 F.3d at 1039 (quoting *Savage*, 343 F.3d at 1039 n. 2).

Rule 12(b)(6), in turn, requires a complaint to be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is "plausible" if a plaintiff pleads facts which "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Id.* In ruling on a motion to dismiss, the court may consider documents referenced in the complaint as well as matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**ARGUMENT**

Plaintiff's claims must be dismissed pursuant to Rule 12(b)(1) because it lacks standing to pursue this matter. *See Sierra Club v. Morton*, 405 U.S. 727, 731-732 (1972) (holding that standing to sue means that "a party has sufficient stake in an otherwise justiciable controversy to

7

1   obtain judicial resolution of that controversy."); U.S. Const. art. III, § 2.  Moreover, even if

2   Plaintiff could establish standing—and it cannot—the lawsuit should be dismissed under Rule

3   12(b)(6) because Plaintiff has failed to state a viable claim for relief.

4   **I.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE IT HAS NOT AND CANNOT
        ESTABLISH STANDING TO PURSUE THIS LITIGATION**

5

6       Plaintiff asserts that it has associational standing to bring this case on behalf of its members.

7   (Compl. ¶¶ 24, 32, 43).  But, Plaintiff has not alleged and cannot demonstrate facts to establish

8   associational standing to sue CRD.  To proceed under associational standing, a plaintiff must

9   establish the following elements: (1) the organization's members have individual standing; (2) the

10  issues are germane to the organization's purpose; and (3) neither the claim nor the requested relief

11  requires individual participation.  *Hunt v. Washington State Apple Advertising Commission*, 432

12  U.S. 333, 342-43 (1977).  Plaintiff fails to allege facts establishing any of these elements—nor

13  could it.  HAF is not a membership organization.  Without standing—the "essential and

14  unchanging part of the case-or-controversy requirement of Article III"—Plaintiff's lawsuit must

15  be dismissed.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *TransUnion LLC v.*

16  *Ramirez*, ___ U.S. ___, 141 S. Ct. 2190, 2203 (2021).

17      **A.    Plaintiff does not allege and cannot establish that it has individual
            members who have standing to bring this suit against the Department
            (First *Hunt* Prong)**

18

19      The first *Hunt* prong requires an organizational plaintiff to establish that its members have

20  standing to sue in their own right.  *Hunt*, 432 U.S. at 342-343.  The purpose of the first *Hunt*

21  prong is "simply to weed out plaintiffs who try to bring cases, which could not otherwise be

22  brought, by manufacturing allegations of standing that lack any real foundation."  *New York State*

23  *Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 9 (1988).  Standing requires that individual members

24  have suffered "injury in fact"—an invasion of a legally protected interest that is: (a) concrete and

25  particularized; and (b) actual or imminent, and not conjectural or hypothetical—that is caused by

26  defendant's conduct.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  Moreover, it

27  must be likely that the injury will be addressed by a favorable decision.  *Id.* at 561.

28

### 1.   Plaintiff is not a membership organization

Plaintiff fails to allege any specific facts identifying at least one member who has suffered or would suffer harm as a result of the Department's FEHA lawsuit against Cisco.  Associational standing is reserved for membership organizations that "express the[ ] collective views and protect the[ ] collective interests" of their members.  *Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1106 (9th Cir. 2006).  Absent members with specific injuries caused by the Department's enforcement of California's employment discrimination laws, Plaintiff lacks associational standing, and its displeasure with the Department's suit against Cisco is not redressable by this Court.  *See Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (associational standing requires "specific allegations establishing that at least one *identified member* had suffered or would suffer harm").

Although Plaintiff alleges broadly that it sues "on behalf of its members" (Compl. ¶¶ 24, 32, 43), it offers no specific factual allegations showing that it has members at all, let alone that at least some of those members have been harmed by the Department's enforcement action against Cisco.  (*See* Compl., *passim*).  For example, Plaintiff does not state who its members are, how they become or remain members, how many members it has, or how many members face any injuries alleged in this suit.  (*See id.*).  Nor does Plaintiff explain how it communicates with or receives input from its members (for example, how members vote or provide guidance on organizational activities and priorities) such that Plaintiff could reasonably speak on behalf of its members' interests, particularly when purporting to speak on behalf of a group as large and diverse as *all* Hindu Americans, whether nationally or throughout California.  (*See id.*).  Accordingly, Plaintiff's claim that it has standing "on behalf of its members" is a mere legal conclusion lacking any factual basis and this Court need not accept it as true.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981), *cert. den.*, 454 U.S. 1031, (1981).

Moreover, publicly available information only further confirms that Plaintiff is *not* a membership organization.  For example, Plaintiff's tax filings, which are made public by the IRS, confirm that it is not a membership organization.  (*See* RJN at 2-4; Carrillo Decl. ¶¶ 5-7, Exhs. C-

9

E).  Notably, in each of the past three tax years, Plaintiff has unequivocally indicated that *they are not a membership organization*, and have not received or collected any income from membership dues or the equivalent.  (*See* RJN, Exhs. C at 3, 6, 9; D at 3, 6, 9; and E at 3, 6, 9).[10]  Plaintiff similarly states that its mission involves only general advocacy efforts, with no mention of membership activities.  (*See, e.g.*, RJN, Exh. E at 2 ("[HAF] is an advocacy organization for the Hindu American community.  [HAF] educates the public about Hinduism, speaks out about issues affecting Hindus worldwide, and builds bridges with institutions and individuals whose work aligns with HAF's objectives. . . .Through its advocacy efforts, HAF promotes dignity, mutual respect, and pluralism in order to ensure the well-being of Hindus and for all people and the planet to thrive.")).

Because Plaintiff does not have members, it cannot allege that one of its members has or will imminently suffer an injury in fact as a result of the Department's employment discrimination action against Cisco.  Dismissal is required because allowing Plaintiff's suit to proceed without a single specific member injury would "turn the associational standing case law on its head—fatally undermining any limitation the requirement of concrete injury places on constitutional standing."  *Glanton ex rel. v. AdvancePCS Inc.,* 465 F.3d 1123, 1125-26 (9th Cir. 2006).  For this reason alone, Plaintiff cannot establish associational standing.

### 2.  Plaintiff fails to allege or show any "member" has suffered injury in fact

Because Plaintiff has failed to allege facts showing it has any members, it also cannot show that its members have suffered an injury in fact.  A cognizable injury in fact is a "concrete" and "particularized" injury that is "real and not abstract."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  To allege anticipated future harms, an organization's members must be facing specific and "certainly impending" injuries.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)

---

[10] Critically, in Part VI of the IRS Form 990, Question 6 asks: "Did the organization have members or stockholders?"  Plaintiff has said "no" for the past three tax years.  (RJN, Exhs. C at 6, D at 6, E at 6).  Similarly, Question 5 of the IRS Form 990 under Section IV, *Checklist of Required Schedules*, asks: "Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19?"  Plaintiff has checked the box "no" for the past three tax years.  (*Id.*, Exhs. C at 3, D at 3, E at 3).  And in response to Question 1b under Section VIII, *Statement of Revenue*, Plaintiff lists no income under the category "Membership Dues."  (*Id.*, Exhs. C at 9, D at 9, E at 9).

(finding no standing for alleged illegal future action by third parties); *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1014–15 (9th Cir. 2021) (rejecting standing hinging on the "unreasonable response of third parties" as too attenuated).  Merely speculating that it is "certainly possible—perhaps even likely—that one member will meet the criteria for standing" is insufficient.  *Summers v. Earth Island Institute*, 555 U.S. 488, 498-499 (2009).

The crux of Plaintiff's complaint stems from its disagreement with the Department's assertions about the caste system in its state complaint against Cisco.[11]  (*See* RJN, Exh. A ¶ 1; *supra* at 5-6).  Plaintiff alleges the Department's reference to this report is injurious because it "wrongly t[ies] Hindu beliefs and practices to the abhorrent practice of caste-discrimination [and] undermines that goal."  (Compl. at 3:11-12).  But the complaint does not allege any specific actual or imminent harm to anyone resulting from that statement, let alone to any particular member or members.  Without specific and plausible allegations that the assertions made in the Department's lawsuit against Cisco have caused or will cause injury in fact to Plaintiff's members (*see, e.g.*, Compl. ¶¶ 18-19, 21-22, 38), Plaintiff has not met the pleading standard for actual injury as to any of its three claims.  *See Iqbal*, 556 U.S. at 678.

Plaintiff asserts that the Department violated the rights of Hindu Americans as guaranteed by the First Amendment by inaccurately asserting "that caste, a caste system and caste-based discrimination are an inherent part of Hindu religious belief and practice."  (Compl. ¶ 26).  To establish a violation of the Free Exercise Clause, a plaintiff must prove that a government action had a coercive effect on their practice of religion.  *See, e.g.*, *Board of Education v. Allen*, 392 U.S. 236, 249 (1968) (finding no free exercise violation since the plaintiffs had "not contended that the [statute in question] in any way coerce[d] them as individuals in the practice of their religion."); *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 890 (9th Cir. 2022) (requiring when the challenged government action is neither regulatory, proscriptive or compulsory, alleging a subjective chilling effect on free exercise rights is not sufficient to constitute a substantial burden).

---

[11] As discussed above, the Department references a Human Rights Watch report that refers to Hinduism when describing India's caste system.  (*See* RJN, Exh. A ¶ 1).

11

But here, in addition to misstating the Department's complaint,[12] Plaintiff fails to articulate any particularized injury to a member—or even to Hindu Americans at large.  Erroneously defining or characterizing a religion, as Plaintiff alleges happened here, does not have a coercive effect on an adherent's ability to practice their religion, because it does not constrain the practice of religion.  In any event, even if Plaintiff had members and revised this suit to allege that the Department's statements in its pending FEHA suit caused Plaintiff's members to feel insulted or aggrieved by having their religion mischaracterized, such "feelings" are not a concrete injury. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021); *see also Mason v. Adams Cnty. Recorder*, 901 F.3d 753, 757 (6th Cir. 2018) (feelings of "discomfort" or "resentment" are not concrete, cognizable injuries).

Similarly, Plaintiff has not identified any concrete injury connected to its procedural due process or equal protection claims under the Fourteenth Amendment.  To establish injury in fact for either of these claims, plaintiffs need to show their members were deprived a liberty or property interest as a result of CRD's lawsuit or the assertions it makes about caste.  *See Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *see also* Section II.B, *infra*.  But the only injuries to which Plaintiff alludes are hypothetical and speculative: that the Department's civil rights enforcement effort against Cisco "might" have the opposite effect and encourage discrimination.  (Compl. ¶ 21.)  For example, Plaintiff speculates that "employers *might* arguably be required to accommodate an employee's request not to work with someone the employee believes to be of the 'wrong' caste" or "*might* also arguably by required to accommodate an employee's request not to work with someone the employee believes to be of the 'wrong' caste."[13]  (*Id*., emphasis added).  Plaintiff's alleged hypothetical future harms fail as "the extreme generality of the complaint makes it impossible to say that [Plaintiff] ha[s] made factual averments sufficient if true to demonstrate injury in fact."  *Krottner v. Starbucks Corp.*, 628 F.3d

---

[12] The Department's complaint against Cisco does not allege that either a caste system or caste-based discrimination are inherent in Hinduism.  (*See* RJN, Exh. A, *passim*; *see also infra* at 19-20).

[13] As discussed below, the Department's employment discrimination suit against Cisco seeks to *end* discrimination against Dalit Indians, which it asserts violates the FEHA.  (*See supra* at 6, *infra* at 19-20; *see also* RJN, Exh. A, *passim*).  Accordingly, it is implausible that the Department's suit would result in an outcome that requires employers to entertain caste-based accommodation requests in the manner described by Plaintiff.

1139, 1143 (9th Cir. 2010).

In sum, Plaintiff has not identified that it has any members who have suffered or risk suffering any injuries in fact.  Plaintiff's generalized grievance about the Department's FEHA action against Cisco for specific discrimination against a Dalit Indian worker does not amount to an injury because it is neither particularized nor certainly impending.

### 3.     Plaintiff's generalized grievance is not redressable

Finally, to establish standing, "it must be it must be 'likely,' as opposed to merely 'speculative,' that the [plaintiff's] injury will be 'redressed by a favorable decision.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-561 (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38, 43 (1976)).  A remedy must "operate with respect to specific parties," not "in the abstract" giving way to a highly attenuated chain of possibilities.  *California v. Texas*, 141 S. Ct. 2104, 2115 (2021).  Plaintiff has not met this standard.

The substance of the relief Plaintiff seeks is abstract and far exceeds the parties and facts at hand.[14]  Without identifying a single, tangible injury, Plaintiff seeks sweeping declaratory and injunctive relief.  It first asks this Court to effectively declare that the Department's suit to end caste-based discrimination at Cisco, currently pending in state court, is unconstitutional.  (Compl. at 12).  It then asks this Court to enjoin the Department from "engaging in *any act or practice* that seeks to define Hinduism as including a caste system or any other belief or practice" and "bringing *any religious discrimination action* based on the premise that Hindu beliefs and practice includes a caste system."[15]  (*Id.*, emphasis added).  Plaintiff further asks this Court to enjoin the Department from "ascribing religious or moral beliefs or practices to persons or groups who expressly disclaim any such beliefs or practices," a request that, on its face, exceeds even all Hindu Americans and is so overbroad and vague as to be meaningless.[16]  (*Id.*).  Taken in sum,

---

[14] Plaintiff is not a party to the underlying lawsuit between the Department and Cisco, and neither Plaintiff nor all Hindu Americans are subject to the Department's targeted efforts to remediate discrimination at Cisco.  Further, Plaintiff seeks only relief against the Department itself, which is not a party to this action.

[15] As discussed herein and evidenced by the Department's complaint against Cisco, the Department's lawsuit neither seeks to define Hinduism in any way nor is premised on the idea that a caste system is inherent to Hinduism.  (*See* RJN, Exh. A, *passim*).

[16] Like the prior two requests, this request is so broad it is unclear what such an injunction would

13

Plaintiff seems intent on halting not only the pending state-court action against Cisco, but *any* future enforcement action by the Department related to discrimination based on caste status and *all* civil rights enforcement actions concerning a religious or sociological feature.  (*See id.*). Plaintiff's requested relief would, in effect, bar the Department from performing aspects of its mandatory statutory duties to address civil rights violations throughout California in perpetuity. *See, e.g.*, Gov't Code §§ 12920, 12940, 12960-61, and 12965.  Such universal restraint is not a viable form of redress to Plaintiff's disagreement with the Department's suit against Cisco.

### B.   Plaintiff has not established that this legal action is germane to its purpose (Second *Hunt* Prong)

Plaintiff must also show that representing its members in this way is germane to its organizational purpose.  *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. at pp. 342-43.  Plaintiff fails to do so.

Germaneness can be demonstrated by showing that the association or organization is "the defendant's natural adversary."  *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.,* 517 U.S. 544, 556 (1996).  However, the facts as pled in Plaintiffs' complaint show that, far from being natural adversaries, Plaintiff and the Department share objectives, including opposing discrimination.  Plaintiff describes itself as a Hindu education and advocacy organization that "works with a wide range of people and groups that are committed to promoting dignity, mutual respect, and pluralism, working across all sampradaya (Hindu religious traditions) regardless of race, color, national origin, citizenship, ancestry, gender, sexual orientation, age, and/or disability."  (Compl. ¶ 5).  In addition, Plaintiff avers that it "vehemently opposes all types of discrimination" (*Id.* at 2:14) and that "stopping caste-based discrimination is a worthy goal that directly furthers Hinduism's belief in the equal and divine essence of all people" (*Id.* at 3:11-12). The Department's goals are similar.  It is a state agency charged with advancing the rights of all Californians to be free from discrimination.  (*See* RJN, Exh. A ¶¶ 16, 51-52, 61-62, 72-73, 82-83, 94-95).  The Department's lawsuit, which is aimed at ending discrimination against Dalit Indian

---

entail.  In any case, Plaintiff has not shown even a single instance in which the Department has "ascribed religious or moral beliefs or practices" to anyone, let alone to an individual who has been injured by such actions and is member of Plaintiff.

workers at Cisco, shares these same objectives rather than contravenes them.  (*See* RJN, Exh. A).

In applying the second *Hunt* prong, courts also consider whether the civil action will address the needs of the Plaintiff's members.  *See United Food and Commercial Workers Union*, 517 U.S. at 555-556 ("*Hunt's* second prong . . . demand[s] that an association plaintiff be organized for a purpose germane to the subject of its member's claim raises an assurance that the association's litigators will themselves have a stake in the resolution of the dispute.").  In the absence of members, Plaintiff cannot demonstrate such a stake.  Moreover, at least some Hindu Americans residing in California—for example, those who are Dalit Indians employed by Cisco, including the Department's complainant John Doe—will have interests that conflict with Plaintiff's purpose in this lawsuit as they will benefit from the Department's efforts to prevent and redress discrimination against workers based on their perceived or actual status as Dalit Indians.

Finally, courts look to the unity or diversity of views within an organization.  A diversity of opinion within an organization's own members destroys associational standing.  *See, e.g.*, *Harris v. McRae*, 448 U.S. 297, 321 (1980) (rejecting a religious group's associational standing challenge to the Hyde Amendment because the group held a diversity of views on abortion).  Plaintiff admits in its complaint that "Hinduism represents a broad and diverse faith, with each of the over 1.2 billion Hindus' [sic] understanding its wisdom based on their own study, practice, and experience of its precepts."  (Compl. ¶ 8).  Thus, even assuming Plaintiff could represent all Hindu Americans, by its own admission, its membership would naturally include a diversity of viewpoints on caste discrimination in United States.  Indeed, it was one such individual's complaint to the Department that catalyzed the pending suit in the first instance.  (*See* RJN, Exh. A ¶¶ 1-15).

Accordingly, Plaintiff's action against the Department does not benefit all Hindu Americans and is not germane to its stated mission and purpose.

**C.  Plaintiff cannot establish associational standing because its suit requires involvement of its "members" (Third *Hunt* Prong)**

Plaintiff's assertion of associational standing also fails because Plaintiff's claims and

15

requested relief necessarily require individual participation by its members.

First, Plaintiff's claim under the Free Exercise Clause of the First Amendment requires individual "member" participation as "it is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion." *Harris v. McRae*, 448 U.S. 297, 321 (1980). Because Plaintiff's complaint fails to establish that it is a membership organization and tenders no factual allegations showing how the Department's FEHA suit against Cisco has coerced even one individual "member," it has failed to satisfy the third *Hunt* prong as to its free exercise claim. Moreover, where there may be a diversity of views within a purported "membership"—as there likely is among Hindu Americans regarding the Department's lawsuit—the "participation of individual members [of an organization] is *essential* to a proper understanding a resolution of their free exercise claims." *Id.*, emphasis added. Thus, the likely diversity of viewpoints within Plaintiff's "membership" (assuming there was one) also destroys Plaintiff's associational standing to raise its purported free exercise claim.

Second, as discussed in Sections II.B and II.C, below, Plaintiff's claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment are presented in such a conclusory and speculative fashion that they cannot stand without the participation of Plaintiff's individual "members." *New Hampshire Motor Transport Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006), aff'd, 552 U.S. 364, 128 S. Ct. 989 (2008) (Although the participation of an association's individual members may be unnecessary where the association seeks only injunctive and declaratory relief, this is not true where a complaint is so vague as to require a "sufficiently fact-intensive inquiry" into individualized member's situations to establish the claims.). For example, Plaintiff fails to allege a deprivation of a property or liberty interest and the resulting injury to its "members," which are necessary to support its due process claim. *See Lam v. City and Cty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 F. App'x 641 (9th Cir. 2014). Plaintiff similarly fails to show differential treatment of similarly situated individuals so that the Court may properly consider whether Plaintiff's "members" and injuries are similarly situated and represent unequal applications of the law as a result of the Department's suit against Cisco. *See, e.g., Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979) (listing

the four pleading requirements for equal protection claims).

Instead, as addressed below, Plaintiff's allegations are so vague that it has not adequately alleged an injury or cognizable constitutional interest as required in a Section 1983 action. Plaintiff's claims are mere legal conclusions lacking any specific factual basis, and therefore the Court need not accept them as true. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981), *cert. den.*, 454 U.S. 1031 (1981). Accordingly, Plaintiff cannot proceed with this action in the absence of individual members. Without such individual members' contributions, Plaintiff could not establish specific denials or immediate risk of denials of due process to prove its Fourteenth Amendment claim and therefore fails the third *Hunt* prong.

In sum, because Plaintiff has not met any of the three *Hunt* prongs, it lacks associational standing to bring this suit. Plaintiff's complaint must be dismissed.

## II.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Section 1983 does not create distinct substantive rights, but provides a remedy when rights secured by federal law or the United States Constitution are deprived under color of state law. *See* 42 U.S.C. § 1983; *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004). Plaintiff's complaint alleges three constitutional claims under Section 1983. Each fails to state a claim upon which relief can be granted.

### A.   Plaintiff fails to state a claim for relief under the Free Exercise Clause

Plaintiff claims that the Department has violated its members' rights under the Free Exercise Clause of the First Amendment. (Compl. ¶¶ 23-30). To establish a viable free exercise claim a plaintiff must show that a government action substantially burdened or had a coercive effect on their practice of religion. *See Harris v. McRae*, 448 U.S. at 321 (1980) (quoting *Abington School Dist. v. Schempp*, 374 U.S. 203, 223 (1963) (organizational plaintiff must demonstrate coercive effect against the practice of individual member's religions); *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989) (plaintiff must show that the government action in question substantially burdens the person's practice of their

17

religion).  "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones*, 791 F.3d at 1031-32 (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).  A plaintiff must describe specific experiences and injuries caused by the government's actions, particularly where an organization attempts to bring those claims on behalf of a membership with potentially diverse viewpoints.  *Harris v. McRae*, 448 U.S. at 321 (1980).  Plaintiff has not pled a viable claim under the Free Exercise Clause for multiple reasons.

First, Plaintiff's complaint does not allege any facts showing that the Department's actions have coerced anyone into doing something inimical to their religious convictions or otherwise prevented them from being able to practice their religion.  Indeed, it is implausible that a lawsuit seeking to end caste-based discrimination at Cisco could prevent any individual Hindu Americans—let alone all Hindu Americans or all Hindu Americans in California—from practicing their religion.  Accordingly, Plaintiff has not pled facts sufficient to show that the Department's actions have coerced or substantially burdened its members' ability to practice their religion.  And, because Plaintiff is not a membership organization, this defect cannot be cured by amendment.  *See* Section I.A, *supra* at 8-14; *see also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (Court should deny a party leave to amend when it can allege no "other facts consistent with the challenged pleading" that could "cure the deficiency."); *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (Court should dismiss a party's claim without leave to amend where amendment would be futile.).

Second, any allegations Plaintiff does make are clearly cast in hypothetical and speculative terms that are insufficient to meet the pleading standard.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above a speculative level.").  Although facts are typically accepted as true for the purposes of determining plausibility under Rule 12(b)(6), the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at

18

678.  This Court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Plaintiff's complaint is rife with such conclusions and conjecture.

For example, Plaintiff questions whether the Department's enforcement action against Cisco could result in employers having to "accommodate requests for caste discrimination from employees as a religious accommodation."  (Compl. ¶ 18).  It posits that a hypothetical employer "*might arguably* be required to accommodate" a hypothetical employee's "request not to work with someone the employee believes to be of the 'wrong' caste."  (Compl. ¶ 21, emphasis added). It further speculates that this hypothetical employer "*might also arguably* have to accommodate an employee's request not to be supervised by, or to supervise, persons perceived to be of the 'wrong' caste" even where the hypothetical employee does not identify with a caste.  (*Id*.). Plaintiff's use of "might" alone proves that this is pure speculation about hypothetical future events—and its speculation is misguided, at best.  The Department's employment discrimination suit against Cisco seeks to *end* discrimination against Dalit Indians, which it asserts violates the FEHA.  (*See* RJN, Exh. A, *passim*).  Plaintiff's allegations that the Department's suit would result in an outcome that requires employers to entertain caste-based accommodation requests in the manner described by Plaintiff are simply implausible.  In fact, the Department's complaint seeks no such relief.[17]  (*See* RJN, Exh. A at 18-19).

Finally, Plaintiff's conclusory statements about the purpose or outcome of the Department's enforcement action against Cisco cannot be used to reasonably infer that the Department has substantially burdened anyone's exercise of their religion.  *See Iqbal*, 556 U.S. at 678.  <u>First</u>, contrary to Plaintiff's assertion, the Department does not seek or attempt to legally define Hinduism in the underlying state court litigation.  (*Compare* Compl. ¶¶ 13, 14, 16, 18, 21, 22, 29 *with* RJN, Exh. A, *passim*).  Rather, the Department seeks to prevent Cisco from engaging in caste-based employment discrimination and to remediate any harms caused by such unlawful practices.  (*See id*. at 18-19).  Apart from noting that John Doe is Hindu, the Department's

---

[17] Indeed, the Santa Clara County Superior Court does not have jurisdiction to enter an enforceable order against any employer that is not a party to the suit before it.

complaint makes only allegation about Hinduism, when paraphrasing a Human Rights Watch report.  (*See* RJN, Exh. A ¶¶ 1, 29).  <u>Second</u>, Plaintiff provides no legal authority for asserting that a state action that "defines" a religion necessarily violates the Free Exercise Clause.[18]  On the contrary, even if HAF's characterization of the Department's state court complaint were accurate (it is not), erroneously defining or characterizing a religion in a pleading is not regulatory, proscriptive, or compulsory, and thus does not have an unlawful coercive effect on an adherent's ability to practice their religion.  *See, e.g.*, *Sabra*, 44 F.4th 867, 890 (9th Cir. 2022) (when the challenged government action is neither regulatory, proscriptive or compulsory, alleging a subjective chilling effect on free exercise rights is not sufficient to constitute a substantial burden).[19]

Plaintiff has not alleged that the Department's actions have substantially burdened or had a coercive effect upon any individual's practice of their religion, and has not pled a viable claim under the Free Exercise Clause.  As it is clear that Plaintiff's claim cannot be saved by any amendment, its claim should be dismissed without leave to amend.

---

[18] The case law cited by Plaintiff is inapposite.  Plaintiff cites to *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976) for the principle that the U.S. Constitution prohibits "*any* 'civil determination of religious doctrine.'"  (Compl. at 2:17-23, emphasis added).  This overstates the case's reach.  In *Serbian Eastern Orthodox Diocese*, the Supreme Court overturned the Illinois Supreme Court's attempt to reinstate a bishop who had been suspended from the church, holding that civil courts could not substitute their judgments for those espoused by a religious tribunal in such matters.  426 U.S. at 709 ("[T]he First . . . Amendment[] mandate[s] that civil courts shall not disturb the *decisions of the highest ecclesiastical tribunal within a church of hierarchical polity*, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them.").  This matter involves no such tribunal or determination and does not seek to compel anyone to observe Hinduism in any particular way.

[19] Although Plaintiff cites to *Espinoza v. Mont. Dep't of Revenue* for the proposition that laws violate the Free Exercise Clause when they "impose special disabilities on the basis of religious status," (Compl. ¶ 28), it provides no factual allegations that plausibly establish that the Department's suit against Cisco creates such a burden.  *See Espinoza v. Mont. Dep't of Revenue*, __U.S. __, 140 S. Ct. 2246, 2254-2255 (2020).  On the contrary, the Department's suit seeks to ensure that Cisco's workers are afforded their rights as guaranteed by the FEHA *regardless* of their religion, ancestry, national origin/ethnicity, and race/color.  (*See, e.g.*, RJN, Exh. A at 18-19).  The state court does not have the jurisdiction to order relief against entities and individuals who are not party to the lawsuit.  Accordingly, if successful, the Department's suit will affect only the Cisco defendants.  The Department does not seek and could not obtain relief that would affect or change the conditions of any non-party individual Hindu American, let alone all Hindu Americans.

20

**B.     Plaintiff fails to state a claim for relief under the Due Process Clause**

Plaintiff also fails to state a viable claim for relief under the Due Process Clause.  The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const., amend. XIV.  "A [S]ection 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process."  *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *see also Bd. of Regents v. Roth*, 408 U.S. 564 (1972); *West v. Atkins*, 487 U.S. 42 (1988).  Before determining whether proper process was afforded, courts must first assess the nature of the liberty or property interests allegedly deprived.  *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("[R]esolution of . . . whether the administrative procedures provided . . . are constitutionally sufficient requires analysis of the . . . private interests that are affected.").  The range of interests protected by procedural due process are not infinite; rather, "due process is required only when a decision of the state implicates an interest within the protection of the Fourteenth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977) (citing *Roth*, 408 U.S. at 570-571).

Dismissal under Rule 12(b)(6) is appropriate where a complaint lacks a cognizable legal theory or facts sufficient to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Here, Plaintiff has not alleged facts sufficient to show a deprivation of any of its member's property or liberty interests, let alone one traceable to the Department's lawsuit against Cisco, beyond its own vague and conclusory allegations.  Plaintiff does not define or specify what protected liberty or property interests it seeks to protect, nor the source of those rights.  (*See* Compl. ¶¶31-41).  Nor does Plaintiff allege how the Department's lawsuit against Cisco has deprived Plaintiff of those interests.  Plaintiff does allege that laws "must give fair notice of conduct that is forbidden or required," but identifies no law that has

1    failed to do so.[20, 21]   (Compl. ¶ 33, citing *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253

2    (2012)).

3           Further, Plaintiff has not provided any authority for the proposition that a state agency's

4    initiation of a lawsuit in accordance with its statutory authority could ever give rise to a

5    procedural due process violation.  To the contrary, the Department's enforcement action against

6    Cisco, which is pending in state court, affords ample "process" to test and evaluate the rights and

7    interests of the parties.[22]  And the Department's actions in its suit against Cisco are squarely

8    within its statutory mandates.  Among other things, the FEHA charges CRD with the duty to

9    "endeavor to eliminate [] unlawful employment practice[s]," including by "bring[ing] a civil

10   action in the name of the department, acting in the public interest, on behalf of the person

11   claiming to be aggrieved."  Gov't Code §§ 12963.7, 12965(a)(5)(A).  The Department "'is a

12   public prosecutor testing a public right,' when it pursues civil litigation to enforce statutes within

13   its jurisdiction."  *Dep't of Fair Emp't & Hous. v. Law Sch. Admissions Council, Inc.*, 941 F.

14   Supp. 2d 1159, 1168 (N.D. Cal. 2013) (quoting *State Pers. Bd. v. Fair Emp't & Hous. Comm'n*,

15   39 Cal. 3d 422, 444 (1985)).  It may seek a wide range of relief, including remedies beyond the

16   interests of the aggrieved party to "'vindicate' what it considers to be 'the public interest in

17   preventing … discrimination.'"  *Id.*; *see also* Gov't Code § 12965(d) (authorizing any other relief

18   that, in the judgment of the court, will effectuate the purposes of the FEHA.

19

20           [20] If Plaintiff is attempting to assert that the FEHA itself denies hypothetical persons procedural
21   due process of law, then Plaintiff's claim must still be dismissed as it has alleged insufficient facts to state
     that claim and, in any case, Defendant Kish does not enact or amend the FEHA.
             [21] Plaintiff also alleges that laws and regulations cannot be "so standardless that [they] authorize[]
22   or encourage[] seriously discriminatory enforcement," but again points to no law or regulation lacking
     sufficient standards.  (Compl. ¶ 33, citing *United States v. Williams*, 553 U.S. 285, 304 (2008)).  Further, it
23   is unclear how *U.S. v. Williams*, which addresses the so-called "void for vagueness" standard within the
     criminal law context, pertains to this matter at all.
24           [22] State and local governments have been afforded latitude when carrying out their mandated
     activities in the broad public interest in other contexts, even where recognized liberty and property
25   interests are implicated.  *See, e.g.*, *Fields v. Palmdale School Dist.*, 447 F.3d 1187, 1191 (9th Cir. 2006)
     (holding that the due process rights of parents to make decisions regarding their children's education does
26   not entitle individual parents to enjoin school boards from providing information the boards determine to be
     appropriate in connection with the performance of their educational functions); *California Parents for*
27   *Equalization of Educational Materials v. Torlakson*, 267 F. Supp. 3d 1218 (N.D. Cal. 2017) (Hindu
     American parents and parent advocacy organization lacked due process right to direct how California
28   public schools teach their children, including content related to Hinduism).

22

Given the vague and attenuated nature of Plaintiff's allegations, it is very difficult, if not impossible, to evaluate what level of process must be provided, and whether such process has been denied.  Plaintiff has not stated a viable claim for relief under the Due Process Clause.

### C.   Plaintiff fails to state a claim for relief under the Equal Protection Clause

To state a Section 1983 claim for a violation of the Equal Protection Clause, a plaintiff "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," and that plaintiff was treated differently from persons similarly situated.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing to *Washington v. Davis*, 426 U.S. 229, 239-240 (1976)).  A plaintiff may satisfy this showing by alleging four separate elements: (1) the plaintiff was treated differently from persons similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) the defendant acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification.  *Lam v. City and Cty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 F. App'x 641 (9th Cir. 2014) (citing to *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Plaintiff fails to clearly and satisfactorily allege *any* of the four required elements to plead a viable equal protection claim.  For example, Plaintiff's complaint does not identify who is allegedly being treated differently from other similarly situated individuals.  Even viewing the complaint in the most favorable light and assuming that Plaintiff means to allege that Hindu Americans are somehow treated differently, there are no indicators of who Plaintiff has identified as receiving different treatment, nor what that treatment might be.  This is insufficient to establish a claim under the Equal Protection Clause.

Critically, Plaintiff also has not demonstrated that Defendant Kish, acting in his official capacity as the Department's Director, has acted with discriminatory intent or purpose in any way. (*See* Compl., *passim*).  In the equal protection context, this is the "fundamental question." *Lam*, 868 F. Supp. 2d at 951.  Discriminatory purpose "implies more than intent as volition or . . . awareness of consequences.  [] It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects

23

1   upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. at 279 (internal citation

2   omitted).  "[D]etermining the existence of a discriminatory purpose demands a sensitive inquiry

3   into such circumstantial and direct evidence of intent as may be available." *Rogers v. Lodge*, 458

4   U.S. 613, 618 (1982) (quoting *Arlington Heights v. Metropolitan Housing Development Corp.*,

5   429 U.S. 252, 266, (1977); citing *Washington v. Davis*, 426 U.S. 229, 242 (1976)).  As evidenced

6   by the Department's complaint at issue, its actions are intended to *stop* and to remedy unlawful

7   discrimination against Cisco's workers.  (*See* RJN, Exh. A, *passim*).  Plaintiff simply cannot

8   establish the required discriminatory intent.

9        In any case, courts are properly hesitant to review matters that fall within prosecutorial

10   discretion, such as the Department's charging strategy in the underlying Cisco suit.  *See U.S. v.*

11   *Armstrong*, 517 U.S. 456, 465 (1996) (citing *Wayte v. U.S.*, 470 U.S. 598, 608 (1985)).  For

12   example, in reviewing selective prosecution claims under the Fifth Amendment, courts draw on

13   equal protection analysis and require criminal defendants to provide clear evidence that a

14   "prosecutorial policy 'had a discriminatory effect and was motivated by a discriminatory

15   purpose.'" *Id.* (quoting *Wayte*, 470 U.S. at 608).  To establish such a discriminatory effect, the

16   defendant must show that similarly situated individuals of a different race or religion, as relevant

17   to the claim, were *not* prosecuted.  *Id.*  As discussed above, Plaintiff has not made such a factual

18   showing.  And if courts are hesitant to review prosecutorial charging discretion in matters

19   involving criminal defendants—with real and immediate liberty interests at stake—they should be

20   even more reticent where, as here, the plaintiff seeking to review and restrain a government

21   enforcement action is neither a party to the underlying litigation nor subject to its remedies.[23]

22        Reticence is further warranted because Plaintiff's claim, like a selective prosecution claim,

23   "asks a court to exercise judicial power over a 'special province'" of the executive branch.  *Id.* at

24   464 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)).  Prosecutors enjoy the

25   "presum[ption] that they have properly discharged their official duties," absent "clear evidence to

26   the contrary" because they are acting under constitutional authority.  *Id.* (quoting *U.S. v.*

27   _____

28   [23] In fact, Plaintiff does not complain of being the target of any enforcement actions by the
Department.  (*See* Compl., *passim*).

1   *Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926)).  And courts are ill-equipped to review

2   prosecutorial charging decisions.  *Id.* at 465 (quoting *Wayte*, 470 U.S. at 607) ("[F]actors such as

3   the strength of the case, the prosecution's general deterrence value, the [g]overnment's

4   enforcement priorities, and the case's relationship to the [g]overnment's overall enforcement plan

5   are not readily susceptible to the kind of analysis the courts are competent to undertake."); *accord*

6   *U.S. v. Bourgeois*, 964 F.2d 935, 939-40 (9th Cir. 1992).  Moreover, examining prosecutorial

7   decisions risks "delay[ing] proceedings," "chill[ing] enforcement," and "undermin[ing]

8   prosecutorial effectiveness."  *Id.*  These policy considerations are equally present here.

9       As discussed above, the Department is charged with enforcing California's civil rights laws,

10  including the FEHA, which the Legislature has declared to be "an exercise of the police power of

11  the state for the protection of the welfare, health, and peace of the people of [California]."  Gov't

12  Code § 12920.  Accordingly, courts have acknowledged that, like criminal prosecutors, the

13  Department "'is a public prosecutor testing a public right,' when it pursues civil litigation to

14  enforce statutes within its jurisdiction."  *Dep't of Fair Emp't & Hous. v. Law Sch. Admissions*

15  *Council, Inc.*, 941 F. Supp. 2d 1159, 1168 (N.D. Cal. 2013) (quoting *State Pers. Bd. v. Fair*

16  *Emp't & Hous. Comm'n*, 39 Cal. 3d 422, 444 (1985)).  Thus, even if Plaintiff could craft

17  plausible equal protection allegations—and it cannot—this matter and the remedy that Plaintiff

18  seeks are not well-suited for judicial review.

19      In sum, Plaintiff has not stated a viable claim for relief under the Equal Protection Clause, a

20  defect that cannot be reasonably remedied.

21                              **CONCLUSION**

22      For the reasons discussed above, Defendant Kish respectfully asks that this Court dismiss

23  Plaintiff's complaint in its entirety and without prejudice pursuant to Rule 12(b)(1) or, in the

24  alternative, dismiss Plaintiff's complaint with prejudice and without leave to amend pursuant to

25  Rule 12(b)(6).

26  /

27  /

28  /

Dated:  February 6, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
MICHAEL NEWMAN
Senior Assistant Attorney General
WILLIAM H. DOWNER
CHEROKEE DM MELTON
Supervising Deputy Attorneys General

/s/ Carly J. Munson

CARLY J. MUNSON
SOPHIA A. CARRILLO
Deputy Attorneys General
*Attorneys for Director Kevin Kish*

NOTICE OF MOTION AND MOTION TO DISMISS (2:22-CV-01656)