1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MICHAEL NEWMAN, State Bar No. 222993
   Senior Assistant Attorney General
3  WILLIAM H. DOWNER, State Bar No. 257644
   CHEROKEE DM MELTON, State Bar No. 243265
4  Supervising Deputy Attorneys General
   CARLY J. MUNSON, State Bar No. 254598
5  SOPHIA A. CARRILLO, State Bar No. 326428
   Deputy Attorneys General
6   300 South Spring Street, Suite 1702
    Los Angeles, CA  90013-1230
7   Telephone:  (213) 269-6370
    Fax:  (916) 731-2129
8   E-mail:  Carly.Munson@doj.ca.gov
   *Attorneys for Kevin Kish, Director of*
9  *California Civil Rights Department*

10                IN THE UNITED STATES DISTRICT COURT

11             FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13

14

15  **HINDU AMERICAN FOUNDATION, INC.,**      2:22-CV-01656-DAD-JDP
    **a Florida Not-For-Profit Corporation,**
16                                            **DECLARATION OF SOPHIA A.**
                                    Plaintiff, **CARRILLO IN SUPPORT OF REQUEST**
17                                            **FOR JUDICIAL NOTICE**
         v.
18

19  **KEVIN KISH, an individual, in his official**   Date:         June 6, 2023
    **capacity as Director of the California Civil** Time:         1:30 p.m.
20  **Rights Department; and Does 1-50,**             Judge:        Hon. Dale A. Drozd
    **inclusive,**                                    Action Filed: September 20, 2022
21
                                   Defendants.
22

23

24

25  I, Sophia A. Carrillo, declare as follows:

26        1.    I am an attorney admitted to practice before the courts of the State of California and

27  before this Court.  I am a Deputy Attorney General with the Office of the Attorney General,

28
                                              1
    _____
    Decl. of Sophia A. Carrillo in Support of Request for Judicial Notice (2:22-CV-01656-DAD-JDP)

which represents Defendant Kevin Kish in his official capacity as the Director of the California

Civil Rights Department (the "Department") in the above-captioned matter.

2.     I make this declaration in support of Director Kish's concurrently filed Motion to

Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6).  If called as a witness, I would and could

competently testify to the facts stated herein, all of which are within my personal knowledge.

3.     The Department filed a lawsuit against Cisco Systems, Inc. and two of its supervisors

(collectively, "Cisco") in Santa Clara County Superior Court on or around October 16, 2020

(*CRD v. Cisco Systems, Inc., et al.*, Case No. 20-cv-372366), alleging violations of the California

Fair Employment and Housing Act.  A true and correct copy of the Department's complaint

against Cisco is attached hereto as **Exhibit A**.

4.     Plaintiff Hindu American Foundation has moved to intervene in the Department's

pending lawsuit against Cisco in Santa Clara County Superior Court.  A true and correct copy of

the Plaintiff's Motion to Intervene and [Proposed] Complaint in Intervention, which were filed on

or around January 7, 2021, are attached hereto as **Exhibit B**.

5.     On January 16, 2023, I visited the Internal Revenue Service ("IRS") public

government website to locate the Hindu American Foundation's recent publicly filed tax

documents.  To find these documents, I utilized the tool "Tax Exempt Organization Search,

available at https://apps.irs.gov/app/eos/details/.  I selected the database entitled "Copies of

Returns (990, 990-EZ, 990-PF, 990-T)" and searched by organization name.  This search

produced the Hindu American Foundation's public Form 990 Filings.  I reviewed the three most

recent filings, including the Form 990 for Tax Year 2019, which is signed by the Hindu American

Foundation's Chief Financial Officer and Senior Director, Sheetal Shah, and dated February 23,

2020.  A true and correct copy of the Hindu American Foundation's Form 990 for Tax Year 2019

as I obtained it from the IRS's website is attached hereto as **Exhibit C**.

6.     On January 16, 2023, I also reviewed the Hindu American Foundation's filing for

Tax Year 2020, which is signed by the Hindu American Foundation's Chief Financial Officer and

Managing Director, Sheetal Shah, and dated February 15, 2021.  A true and correct copy of the

2

1  Hindu American Foundation's Form 990 for Tax Year 2020 as I obtained it from the IRS's

2  website is attached hereto as **Exhibit D**.

3      7.    On January 16, 2023, I also reviewed the Hindu American Foundation's filing for

4  Tax Year 2021, which is the most recent year available.  The Form 990 for Tax Year 2021 is

5  signed by the Hindu American Foundation's Chief Financial Officer, Sheetal Shah, and dated

6  February 16, 2022.  A true and correct copy of the Hindu American Foundation's Form 990 for

7  Tax Year 2021 as I obtained it from the IRS's website is attached hereto as **Exhibit E**.

8

9  I declare under penalty of perjury under the laws of the United States of America that the

10 foregoing is true and correct, and this declaration was executed at Santa Monica, California this

11 6th day of February, 2023.

12                                         /s/Sophia A. Carrillo
                                           SOPHIA A. CARRILLO
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# Exhibit A

E-FILED
10/16/2020 12:16 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV372366
Reviewed By: D Harris

JANETTE WIPPER (#275264)
MELANIE L. PROCTOR (#228971)
SIRITHON THANASOMBAT (#270201)
JEANETTE HAWN (#307235)
CALIFORNIA DEPARTMENT OF FAIR
  EMPLOYMENT AND HOUSING
2218 Kausen Drive, Suite 100
Elk Grove, CA  95758
Telephone:  (916) 478-7251
Facsimile:   (888) 382-5293

Attorneys for Plaintiff,
California Department of Fair Employment and Housing          (Fee Exempt, Gov. Code, § 6103)

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, an agency of the State of California,<br><br>Plaintiff,<br><br>vs.<br><br>CISCO SYSTEMS, INC., a California Corporation; SUNDAR IYER, an individual; RAMANA KOMPELLA, an individual,<br><br>Defendants. | Case No.  20CV372366<br><br>**CIVIL RIGHTS - EMPLOYMENT DISCRIMINATION**<br><br>**DEMAND FOR JURY TRIAL** |

The California Department of Fair Employment and Housing (DFEH) brings this action against Cisco Systems, Inc. (Cisco) to remedy workplace discrimination, harassment, and retaliation violations at its San Jose, California corporate headquarters under the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq*. (FEHA). Specifically, Cisco engaged in unlawful employment practices on the bases of religion, ancestry, national origin/ethnicity, and race/color against Complainant John Doe,[1] and after Doe opposed such unlawful practices, Cisco retaliated against him.

---

[1] Because of the stigma and potential threats of violence associated with a person's status as Dalit, DFEH uses a fictitious name for Complainant to protect his privacy and protect him from further discrimination, harassment, or retaliation based on his caste and related characteristics. Through the DFEH's administrative process, Defendants have been made aware of Doe's legal name.

Cisco also failed to take all reasonable steps to prevent such unlawful practices in its workplace, as required under FEHA.

## **INTRODUCTION**

1.        John Doe is Dalit Indian, a population once known as the "Untouchables," who are the most disadvantaged people under India's centuries-old caste system.[2] As a strict Hindu social and religious hierarchy, India's caste system defines a person's status based on their religion, ancestry, national origin/ethnicity, and race/color—or the caste into which they are born—and will remain until death.[3] At the bottom of the Indian hierarchy is the Dalit, typically the darkest complexion caste, who were traditionally subject to "untouchability" practices which segregated them by social custom and legal mandate. Although *de jure* segregation ended in India, lower caste persons like Dalits continue to face *de facto* segregation and discrimination in all spheres.[4] Not only do Dalits endure the most severe inequality and unfair treatment in both the public and private sectors, they are often targets of hate violence and torture. Of India's approximately 1.3 billion people, about 200 million are Dalits.[5]

2.        Unlike Doe, most Indian immigrants in the United States are from upper castes. For example, in 2003, only 1.5 percent of Indian immigrants in the United States were Dalits or members of lower castes.[6] More than 90 percent were from high or dominant castes. Similarly, upon information and belief, the same is true of the Indian employees in Cisco's workforce in San Jose, California.

---

[2] Complainant John Doe is Dalit because of his religion, ancestry, national origin/ethnicity, and race/color. The caste to which someone belongs is immutable and determines their social status in traditional Indian culture. Social stratification and discrimination based on caste persists in India and among those living outside India, including in America. Encyclopedia Britannica, *India: Caste* (June 24, 2020), https://www.britannica.com/place/India/Caste (last visited June 29, 2020).

[3] Smita Narula, Human Rights Watch, *Caste Discrimination: A Global Concern,* Background: "Untouchability" and Segregation (2001), https://www.hrw.org/reports/2001/globalcaste/caste0801-03.htm#P133_16342 (last visited June 29, 2020).

[4] Human Rights Watch & Center for Human Rights and Global Justice at New York University School of Law, *Hidden Apartheid: Caste Discrimination against India's "Untouchables,"* at 45 (2007), https://www.hrw.org/reports/2007/india0207/india0207webwcover.pdf.

[5] Office of the Registrar General & Census Commissioner, India, Ministry of Home Affairs, Government of India, *2011 Primary Census Abstract*, https://censusindia.gov.in/pca/default.aspx.

[6] Tinku Ray, *The US isn't safe from the trauma of caste bias*, The World (Mar. 08, 2019, 9:00 AM), https://www.pri.org/stories/2019-03-08/us-isn-t-safe-trauma-caste-bias.

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

3.      As alleged below, at Cisco's San Jose headquarters, Doe worked with a team of entirely Indian employees. The team members grew-up in India and immigrated as adults to the United States. Except for Doe, the entire team are also from the high castes in India. As beneficiaries of the caste system, Doe's higher caste supervisors and co-workers imported the discriminatory system's practices into their team and Cisco's workplace.

4.      Doe's supervisors and co-workers, Defendants Sundar Iyer and Ramana Kompella, are from India's highest castes. Because both knew Doe is Dalit, they had certain expectations for him at Cisco. Doe was expected to accept a caste hierarchy within the workplace where Doe held the lowest status within the team and, as a result, received less pay, fewer opportunities, and other inferior terms and conditions of employment because of his religion, ancestry, national origin/ethnicity, and race/color. They also expected him to endure a hostile work environment. When Doe unexpectedly opposed the unlawful practices, contrary to the traditional order between the Dalit and higher castes, Defendants retaliated against him. Worse yet, Cisco failed to even acknowledge the unlawful nature of the conduct, nor did it take any steps necessary to prevent such discrimination, harassment, and retaliation from continuing in its workplace.

5.      Not only did Cisco disregard Doe, but also its own workforce. For decades, similar to Doe's team, Cisco's technical workforce has been—and continues to be—predominantly South Asian Indian. According to the 2017 EEO-1 Establishment Report (EEO-1 Report), for example, Cisco has a significant overrepresentation of Asian employees compared to other companies in the communications, equipment and manufacturing industry (NAICS 3342) in the same geographic area, which is statistically significant at nearly 30 standard deviations.[7] Such overrepresentation is also present in management and professional job categories. In addition to Cisco's direct workforce, Cisco also employs a significant

---

[7] 2017 EEO-1 Report for Cisco Systems, Inc. at 170 West Tasman Drive in San Jose, California. Because Cisco is a federal contractor and employs 50 or more employees in California and the United States, Cisco is required to file an Employer Information Report EEO-1, also known as the EEO-1 Report. The EEO-1 Report requires employers to report employment data for all employees categorized by sex, race/ethnicity, and job category. EEOC, *EEO-1 Instruction Booklet*, https://www.eeoc.gov/employers/eeo-1-survey/eeo-1-instruction-booklet (last visited June 23, 2020).

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

number of South Asian Indian workers through Indian-owned consulting firms.[8] When combining its direct employees and consultants together, Cisco is among the top five H-1B visa users in the United States.[9] Over 70 percent of these H1-B workers come from India.[10] Outside of San Jose, Cisco's second largest workforce is in India.

6.      Although Cisco has employed a predominantly South Asian Indian workforce for decades, Cisco was—and continues to be—wholly unprepared to prevent, remedy, or deter the unlawful conduct against Doe or similarly situated lower caste workers. Cisco failed to take any steps whatsoever to prevent ". . . inequalities associated with [c]aste status, ritual purity, and social exclusion [from] becom[ing] embedded . . ." into its workplace, which is a documented problem for ". . . American mainstream institutions that have significant South Asian immigrant populations."[11] A 2018 survey of South Asians in the U.S. found that 67% of Dalits reported being treated unfairly at their American workplaces because of their caste and related characteristics.[12] However, few South Asian employees raised concerns to their American employers, because they believe "their concerns will not be given weight" or will lead to "negative consequences to their career."[13] This is precisely what happened to Doe at Cisco.

---

[8] Joshua Brustein, *Cisco, Google benefit from Indian firms' use of H-1B program*, The Economic Times (June 6, 2017, 8:31 PM), https://economictimes.indiatimes.com/tech/ites/cisco-google-benefit-from-indian-firms-use-of-h-1b-program/articleshow/59020625.cms.

[9] Laura D. Francis & Jasmine Ye Han, *Deloitte Top Participant in H-1B Foreign Worker Program—By Far*, Bloomberg Law (Feb. 4, 2020, 2:30 AM), https://news.bloomberglaw.com/daily-labor-report/deloitte-top-participant-in-h-1b-foreign-worker-program-by-far.

[10] U.S. Citizenship and Immigration Services, *Characteristics of H-1B Specialty Occupation Workers: Fiscal Year 2019 Annual Report to Congress October 1, 2018 – September 30, 2019*, at 7 (Mar. 5, 2020), https://www.uscis.gov/sites/default/files/reports-studies/Characteristics_of_Specialty_Occupation_Workers_H-1B_Fiscal_Year_2019.pdf

[11] Maari Zwick-Maitreyi et al., Equality Labs, *Caste in the United States: A Survey of Caste Among South Asian Americans*, 16 (2018) https://static1.squarespace.com/static/58347d04bebafbb1e66df84c/t/5d9b4f9afbaef569c0a5c132/1570459664518/Caste_report_2018.pdf.

[12] *Id.* at 20.

[13] *Ibid.*

**JURISDICTION AND VENUE**

8.     This action is authorized and instituted pursuant to California Government Code sections 12930 (f) and (h), and 12965(a).

9.     The employment practices alleged to be unlawful were and are now being committed within the County of Santa Clara in the State of California, which is within the jurisdiction of the Superior Court of the County of Santa Clara. (Cal. Gov't Code § 12965, subd. (a).)

10.     Plaintiff has standing to bring this suit and has complied with all statutory prerequisites to maintain FEHA claims.

11.     John Doe filed a pre-complaint inquiry with DFEH on or about April 20, 2018, and a verified administrative complaint against Defendant Cisco on or about July 30, 2018. The charge was dually filed with the Equal Employment Opportunity Commission (EEOC). DFEH properly served the administrative complaint on Defendant Cisco on or about August 7, 2018. On or around October 9, 2018, Doe filed an amended administrative complaint against Defendants Cisco, Iyer, and Kompella. The amended administrative complaint was properly served on all named responding parties on or about October 9, 2018.

12.     DFEH investigated Doe's dually filed EEOC-DFEH charge and complaint pursuant to California Government Code sections 12930(f) and 12963.

13.     Pursuant to Cal. Gov't Code § 12965(a), the DFEH convened a mandatory dispute resolution session on or about February 11, 2020. Settlement discussions were unsuccessful. The DFEH and Defendants entered consecutive tolling agreements to toll the statutory deadline for DFEH to file a civil action to June 30, 2020.

14.     On or about June 30, 2020, DFEH filed a civil rights complaint in the United States District Court for the Northern District of California. On or about October 16, 2020, DFEH voluntarily dismissed the federal civil rights action pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.

15.     DFEH files this state court action pursuant to the FEHA, California Government Code sections 12930, subdivisions (f)(1), (h), and 12965, subdivision (a), and 28 U.S.C. section 1367,

-5-

subdivision (d). All conditions precedent to the institution of this lawsuit have been fulfilled. The amount of damages sought by this complaint exceeds the minimum jurisdictional limits of this Court.

## PARTIES

**Plaintiff California Department of Fair Employment and Housing**

16.     Plaintiff DFEH is the agency of the State of California charged with the administration, interpretation, investigation, and enforcement of the FEHA, and is expressly authorized to bring this action by California Government Code sections 12930, subdivisions (f), (h), and 12965, subdivision (a).

17.     Complainant John Doe is the person claiming to be aggrieved on whose behalf the DFEH files this civil action. (Cal. Gov't Code, §§ 12965, subd. (a), 12930, subd. (f), (h).)

18.     At all relevant times, Complainant Doe was, and remains, an "employee" of Defendant Cisco within the meaning of FEHA. (Cal. Gov't Code, §§ 12926, subd. (c)-(d), 12940, subd. (a), (j), (k).) On or around October 2015 to November 2018, Doe worked as a Principal Engineer with Cisco in Santa Clara County, California. Since on or about December 2018, Doe has worked as a Principal Engineer with Cisco in Santa Clara County, California.

19.     At all relevant times, Complainant Doe was, and remains, a "person" within the meaning of the FEHA. (Cal. Gov't Code, §§ 12925, subd. (d), 12940, subd. (h).)

**Defendant Cisco Systems, Inc.**

20.     Defendant Cisco (EEO-1 reporting number N14137) is a leading global high-tech firm founded in 1984. The company designs, manufactures, sells, and supports equipment for internet-based networking. It has approximately 75,900 employees worldwide and is publicly traded on NASDAQ. The firm's EEO-1 reports places it in the communications equipment manufacturing industry (NAICS 3342). Within California, Cisco employs at least 18,281 employees at 19 establishments in 6 different metropolitan areas, including the corporate headquarters in San Jose.

21.     At all relevant times, Defendant Cisco has continuously been and is now a California Corporation doing business in the State of California and the Cities of San Jose and Milpitas in Santa Clara County and has continuously had at least fifteen employees.

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

22.     At all relevant times, Defendant Cisco has continuously been an employer engaged in an industry affecting commerce within the meaning of California Government Code, section 12926, subdivision (d).

23.     At all relevant times, Cisco contracted with and received federal and state funds from the United States and California governments.

**Defendant Sundar Iyer**

24.     At all relevant times, Defendant Sundar Iyer was employed by Cisco as a "supervisor" within the meaning of FEHA. (Cal. Gov't Code, § 12926, subd. (t).) DFEH is informed and believes that Iyer was a Distinguished Engineer with Cisco. Public records indicate Iyer resided in Palo Alto, California at the time of the events alleged herein.

25.     At all relevant times, Defendant Iyer was the agent of Defendant Cisco and was acting within the scope and authority of such agency, and Defendant Iyer is jointly and severally responsible and liable to Complainant Doe for the damages alleged.

**Defendant Ramana Kompella**

26.     At all relevant times, Defendant Ramana Kompella was employed by Cisco as a "supervisor" within the meaning of the FEHA. (Cal. Gov't Code, § 12926, subd. (t).) DFEH is informed and believes that Kompella was a Principal Engineer with Cisco. Public records indicate Kompella resided in Cupertino, California at the time of the events alleged herein.

27.     At all relevant times, Defendant Kompella was the agent of Defendant Cisco and was acting within the scope and authority of such agency, and Defendant Kompella is jointly and severally responsible and liable to Complainant Doe for the damages alleged.

## **STATEMENT OF CLAIMS**

28.     Beginning in the November 1, 2016, Defendants Cisco, Iyer, and Kompella engaged in unlawful employment practices, in violation of California Government Code, section § 12940 subdivisions (a), (j), (h), and (k). These practices include but are not limited to the practices described below.

29.     Complainant Doe's ancestry, national origin/ethnicity, and race/color is Dalit Indian. Doe has a darker complexion relative to other persons of non-Dalit Indian descent. Doe's religion is Hindu. As a Dalit, he also is known as being from the Untouchable or Scheduled Caste.

30.     Doe has over 20 years of experience in the software development lifecycle process at startups and established companies. In or around September 2015, Iyer recruited and hired Doe as a Principal Engineer for Cisco because of his expertise and experience. As the head of the Cisco team, Iyer hired and supervised Doe, having the authority to control his day-to-day assignments, discipline, discharge, direct, and transfer Doe. Upon information and belief, Iyer is Brahmin.

31.     In or around October 2016, two of Doe's colleagues told Doe that Iyer informed them that Doe was from the "Scheduled Caste" (Dalit) and enrolled in the Indian Institute of Technology (IIT) through affirmative action. Iyer was aware of Doe's caste because they attended IIT at the same time.

32.     In or around November 1, 2016, Doe confronted Iyer about disclosing Doe's caste to other Cisco employees. Iyer asked Doe who claimed he made such a comment. After Doe shared the names of his colleagues, Iyer denied the comment and stated Doe's colleagues were not telling the truth.

33.     In or around November 21, 2016, Doe contacted Cisco's human resources (HR) and Employee Relations to file a discrimination complaint against Iyer.

34.     Six days after Doe's first contact with Cisco's HR and employee relations, Iyer told Doe he was taking away Doe's role as lead on two technologies.

35.     On or around November 28, 2016, Iyer promoted two of Doe's colleagues to head engineering roles, one of whom was Defendant Kompella. Kompella was made Head of Southbound Engineering. Upon information and belief, Kompella is Brahmin or at least of a higher caste than Dalit. With this new title, Defendant Kompella received a raise of approximately 15% or more. As the Head of Southbound Engineering, Kompella had the ability to direct the day-to-day assignments and recommend employment actions for those on his team, including Doe.

36.     On or around November 28, 2016, Iyer also removed team members from the third technology Doe was working on  and did not formally integrate the third technology into either team headed by the two new Heads of Engineering. As a result of these changes, Doe's role was reduced to that of a system  architect as an independent contributor, and he was isolated from all his colleagues.

-8-

37.     On or around December 8, 2016, Doe submitted a written complaint about Iyer's disclosure of Doe's caste, Doe's complaint to Iyer, and Iyer's retaliatory employment actions, including the sudden changes to Doe's job duties. He also complained that Iyer made discriminatory comments to a colleague and about a job applicant because of the applicant's religion (Muslim).

38.     Cisco's Employee Relations Manager, Brenda Davis, conducted the investigation into Doe's December 2016 complaint. Davis' internal investigation notes revealed that Iyer admitted that he told Doe's colleagues that Doe was not on the "main list." Among those from India, it is commonly known that students not on the main list are admitted to IIT through an affirmative action program designed for those from the "Scheduled Castes" or those outside the caste system. Therefore, stating that someone is not on the "main list" effectively reveals their caste. Despite this, Davis took no further action and failed to even contact relevant witnesses or Doe.

39.     Cisco Employee Relations staff, including Davis, also indicated that caste discrimination was not unlawful. As a result, Davis did not recommend any corrective action against Iyer. Iyer also admitted that he made a joke about Doe's co-worker's religion and talked about an applicant's Muslim-related appearance. Still, Davis did not recommend any corrective action. On or around February 2, 2017, Davis closed her investigation finding all of Doe's complaints were unsubstantiated.

40.     Iyer's retaliatory efforts continued. He further isolated Doe from the team when he disparaged Doe to  other employees, misrepresented that Doe did not perform his job adequately, and told Doe's team members that they should avoid working with him.

41.     On or around March 2, 2017, Doe sought review of Davis' investigation findings. After repeated attempts to have Cisco review Davis' findings, HR official Tara Powell finally reopened the investigation on or around April 25, 2017. Powell re-interviewed one of the employees to whom Iyer made the comment about Doe's caste in or around October 2015. The employee stated that he learned about Doe's caste but refused to tell Powell how he knew, noting that he did not want to say anything about Iyer because they had known each other for a long time. He also stated that he thought Doe was being treated unfairly and that he was very technically able but was being excluded at work. Powell did not attempt to contact for an interview the other employee who witnessed Iyer's disclosure of Doe's caste. Two additional witnesses told Powell that they feared losing their jobs or otherwise being

1    retaliated against for speaking out against Iyer. One of those employees also told Powell that he thought

2    Doe was very competent and asked appropriate questions, but that Iyer was setting Doe up to push him

3    out of the company.

4    　　　　42.　　Powell's investigation also uncovered a spreadsheet that showed anticipated yearly

5    raises, bonuses, and restricted stock unit awards that Iyer had promised Doe. These raises, bonuses, and

6    awards never materialized when promised. But Powell also found that four out of the eight other team

7    members received raises in or around October 2016.

8    　　　　43.　　In or around August 2017, Powell concluded she could not substantiate any caste-based

9    or related discrimination or retaliation against Doe. Powell, however, determined that Iyer mocked

10   another employee's religion, and thus violated Cisco's Code of Conduct. Still, no immediate corrective

11   action was taken.

12   　　　　44.　　Despite Doe's repeated attempts to bring the caste-based and related discrimination,

13   harassment, and retaliation to Defendant Cisco's attention in 2016 and 2017, Cisco failed to recognize

14   casteism as a form of unlawful religion-, ancestry-, national origin/ethnicity-, and race/color-based

15   discrimination or harassment under state or federal law and failed to conduct a thorough investigation.

16   While the investigation confirmed Doe was increasingly isolated and treated unfairly by Iyer and

17   Kompella, Cisco failed to take timely and appropriate corrective action. Moreover, Cisco's training was

18   deficient in that it did not adequately train managerial employees on workplace discrimination,

19   harassment, and retaliation, nor did the company prevent, deter, remedy, or monitor casteism in its

20   workforce.

21   　　　　45.　　On or around February 26, 2018, Kompella became the Interim Head of Engineering for

22   Cisco's team after Iyer stepped down. In his new role, Kompella supervised Doe and continued to

23   discriminate, harass, and retaliate against Doe by, for example, giving him assignments that were

24   impossible to complete under the circumstances. Kompella also began requiring Doe to submit weekly

25   status reports to him and Senior Vice President/General Manager Tom Edsall.

26   　　　　46.　　On or around May 21, 2018, Rajeev Gupta took over from Kompella and became the

27   Director of Engineering. In that role, Gupta supervised Doe.

28

-10-

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

47.     Two months later, in or around July 2018, Doe applied for the position of Director of Research and Development Operations with Gupta. According to Gupta's interview notes, he ranked Doe as "below average" in six out of eight categories and as "meeting requirements" in the remaining two categories. But Gupta's assessment of Doe was improperly influenced by Iyer's retaliatory employment actions. Gupta specifically cited Doe's lead role being taken away and his job reduced to that of an independent contributor in November 2016. Gupta's notes also reflected Iyer's retaliatory criticisms about Doe's work product, social skills, and insubordination. Doe did not get the position.

48.     The effect of the unlawful employment practices complained of above was to deprive Doe of equal employment opportunities, and otherwise adversely affect his status as employees, because of religion, ancestry, national origin/ethnicity, and race/color.

49.     The unlawful employment practices complained of above were intentional.

50.     The unlawful employment practices complained of above were done with malice or with reckless indifference to Doe's  federally and state-protected civil rights.

**FIRST CAUSE OF ACTION**
**Violation of FEHA: Discrimination on the Basis of Religion, Ancestry, National Origin/Ethnicity, and Race/Color**
**(Cal. Gov't Code, § 12940, subd. (a))**
**Against Defendant Cisco**

51.     The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

52.     The FEHA guarantees all employees a workplace free from unlawful discrimination and harassment based on the employee's religion, ancestry, national origin/ethnicity, and race/color. (Cal. Gov't Code, § 12940, subd. (a.).)

53.     As alleged above, Cisco discriminated against Doe by subjecting him to disparate terms and conditions of employment based on his religion, ancestry, national origin/ethnicity, and race/color. Among other actions, Cisco reassigned Doe's job duties and isolated him from his colleagues, denied him a raise, denied him work opportunities that would have led to a raise, denied him a promotion to the Head of Engineering, and denied him a promotion to the Director of Research and Development Operations.

54.     Cisco subjected Doe to discriminatory comments and conduct because of his religion, ancestry, national origin/ethnicity, and race/color

-11-

55.     The alleged discriminatory comments and conduct constitute unlawful discrimination for which Defendant Cisco is liable under California Government Code section 12940, subdivision (a).

56.     As a direct result of these unlawful employment practices, Doe suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

57.     As a direct result of these unlawful employment practices, Doe suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

58.     Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

59.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

60.     Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

**SECOND CAUSE OF ACTION**
**Violation of FEHA: Harassment on the Basis of Religion, Ancestry, National Origin/Ethnicity, and Race/Color**
**(Cal. Gov't Code, § 12940, subd. (j))**
**Against All Defendants**

61.     The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

62.     The FEHA prohibits harassment based on the employee's protected characteristics including, but not limited to, their caste, which includes religion, ancestry, national origin/ethnicity, and race/color. (Cal. Gov't Code, § 12940, subd. (j).) Employers are liable for the harassment of their supervisors. (*Id.*, subd. (j)(1).) Employees and supervisors are liable for their own harassing conduct. (*Id.*, subd. (j)(3).)

-12-

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

63.     As alleged above, as supervisors for Cisco's team, Defendants Iyer and Kompella subjected Doe to offensive comments and other misconduct based on his caste, which includes his religion, ancestry, national origin/ethnicity, and race/color, so severe or pervasive that it created a hostile work environment. Among other things, Iyer and Kompella's comments and conduct include revealing Doe's caste to his colleagues, disparaging him to the team, isolating him from the rest of the team, reducing his role to that of an independent contributor, giving him assignments that were impossible to complete under the circumstances, and requiring him to submit weekly status reports. Such a work environment where a stigmatizing personal characteristic such as caste is publicized and used to subjugate an individual in order to maintain a centuries-old hierarchy is hostile, intimidating, offensive, oppressive, and abusive. Other employees corroborated that Doe was isolated from the rest of the team and that Iyer and Kompella were responsible for it. These were observations Cisco was made aware of during its internal investigations. As evidenced by Doe's repeated internal complaints, he in fact considered the work environment to be hostile, intimidating, offensive, oppressive, and abusive.

64.     As supervisors for Cisco, Defendants Iyer and Kompella subjected Doe to offensive comments and other misconduct based on his caste, which includes his religion, ancestry, national origin/ethnicity, and race/color, so severe or pervasive that it created a hostile work environment.

65.     Defendants Iyer and Kompella are individually liable for their own harassing conduct in violation of the FEHA.

66.     Because Defendants Iyer and Kompella were supervisors within the meaning of the FEHA, Defendant Cisco is liable for their harassing conduct. Defendant Cisco knew or should have known of the conduct as a result of Doe's internal complaints and is liable for its failure to take immediate and appropriate corrective action.

67.     As a direct result of these unlawful employment practices, Doe suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

68.     As a direct result of these unlawful employment practices, Doe suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

-13-

69.     Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

70.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

71.     Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

### THIRD CAUSE OF ACTION
**Violation of FEHA: Retaliation**
**(Cal. Gov't Code, § 12940, subd. (h))**
**Against Defendant Cisco**

72.     The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

73.     California law also guarantees each employees' right to a workplace and business environment free from unlawful retaliation because the employee opposed discriminatory or harassing practices that are unlawful under the FEHA. Employers are liable for the retaliatory conduct of supervisors. (Cal. Gov. Code, § 12940, subd. (h).)

74.     As alleged above, as supervisors for Cisco, Defendants Iyer and Kompella retaliated against Doe for opposing their discriminatory and harassing conduct by confronting Iyer and filing internal discrimination complaints. Among other things, Doe engaged in protected activity by confronting Iyer about disclosing his caste to colleagues and by repeatedly trying to bring the caste-based and related discrimination and harassment to Cisco's attention. Immediately afterwards, Iyer and Kompella subjected Doe to adverse employment actions including reassigning his job duties, isolating him from colleagues, giving him assignments that were impossible to complete under the circumstances, denying him work opportunities that could have led to a raise, denying him a raise, and denying him promotions. Cisco aided the retaliation.

-14-

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

75.     As supervisors for Cisco, Defendants Iyer and Kompella retaliated against Doe for opposing their discriminatory and harassing conduct by confronting Iyer and filing internal discrimination complaints and Cisco aided the retaliation.

76.     Defendant Cisco is liable for the retaliatory conduct of Defendants Iyer and Kompella.

77.     As a direct result of these unlawful employment practices, Doe suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

78.     As a direct result of these unlawful employment practices, Doe suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

79.     Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

80.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

81.     Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

**FOURTH CAUSE OF ACTION**
**Violation of FEHA: Failure to Take All Reasonable Steps to Prevent Discrimination, Harassment, and Retaliation**
**(Cal. Gov't Code, § 12940, subd. (k))**
**Against Defendant Cisco**

82.     The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

83.     California Government Code section 12940(k) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring. Employers have the affirmative duty to take all reasonable steps to prevent and promptly correct discriminatory, harassing, and retaliatory conduct.

(Cal. Code Regs. tit. 2, § 11023, subd. (a).) Cisco's conduct, as described above, constitutes a failure to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation in violation of California Government Code section 12940, subdivision (k).

84.     An actionable claim for violation of California Government Code section 12940(k) on behalf of a complainant exists when an underlying claim of discrimination, harassment, or retaliation is established. (Cal. Code Regs. tit. 2, § 11023, subd. (a)(2).)

85.     As alleged above, Defendant Cisco failed to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring within its South Asian Indian workforce. Among other things, Defendant Cisco failed to develop anti-discrimination and anti-harassment policies and practices that recognize and prohibit caste discrimination as a form of unlawful discrimination under state and federal law. Defendant Cisco also failed to provide appropriate training to managers, supervisors employees, human resources, and employee relations personnel on how to identify, investigate, remediate, and prevent caste-based discrimination and harassment, or retaliation against employees or persons who oppose discriminatory and harassing practices that are unlawful under  the FEHA.

86.     Defendant Cisco failed to prevent discrimination and harassment by its managers and supervisors against Doe because of his caste.

87.     Defendant Cisco failed to prevent retaliation by its managers and supervisors against Doe because he opposed discriminatory and harassing practices that are unlawful under the FEHA.

88.     As a direct result of Cisco's failures, Doe was subjected to unlawful discrimination, harassment, and retaliation by Cisco's managers and supervisors, suffering economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

89.     As a direct result of Cisco's failures, Doe was subjected to unlawful discrimination, harassment, and retaliation by Cisco's managers and supervisors, suffering emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

90.     Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Doe and in conscious disregard of his rights.

91.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

92.     Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

93.     Plaintiff DFEH also seeks monetary relief for Cisco's failure to take all reasonable steps to prevent harassment from occurring.

**FIFTH CAUSE OF ACTION**
**Violation of FEHA: Failure to Take All Reasonable Steps to Prevent Discrimination, Harassment, and Retaliation**
**(Cal. Gov't Code, § 12940, subd. (k); Cal. Code Regs. tit. 2, § 11023, subd. (a)(3))**
**On behalf of DFEH; Against Defendant Cisco**

94.     The DFEH incorporates and realleges all previous allegations as if fully set forth herein.

95.     In an exercise of the DFEH's police powers, the DFEH may independently seek additional remedies for a violation of Cal. Gov't Code § 12940(k). (Cal. Code Regs. tit. 2, § 11023, subd. (a)(3).) As the agency of the State of California charged with the administration, interpretation, investigation, and enforcement of FEHA, the DFEH brings this claim in the name of the DFEH on behalf of all Indian persons who are or are perceived to be Dalit, of lower castes, or who fall outside the caste system, who are employed by or may seek employment with Cisco in the future.

96.     As alleged above, Defendant Cisco failed to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring within its South Asian Indian workforce. Among other things, Defendant Cisco failed to develop anti-discrimination and anti-harassment policies and practices that recognize and prohibit caste discrimination as a form of unlawful discrimination under state and federal law. Defendant Cisco also failed to provide appropriate training to managers, supervisors employees, human resources, and employee relations personnel on how to identify, investigate, remediate, and prevent caste-based discrimination and harassment, or retaliation against

-17-

*Cal. Dept. Fair Empl. & Hous. v. Cisco Systems, Inc., et al.*
Civil Rights Complaint – Employment Discrimination

employees or persons who oppose discriminatory and harassing practices that are unlawful under the FEHA.

97.     Cisco's failure to take any reasonable steps to prevent, deter, remedy, or monitor casteism and related violations in its workforce exposes a significant portion of its South Asian Indian workforce to the risk of discrimination, harassment, and retaliation on the basis of their caste and related characteristics.

98.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Doe and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

99.     Plaintiff DFEH lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

## **PRAYER FOR RELIEF**

WHEREFORE, the DFEH respectfully requests that this Court:

1.     Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination and harassment based on religion, ancestry, national origin/ethnicity, and race/color.

2.     Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in retaliation.

3.     Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for individuals regardless of their religion, ancestry, national origin/ethnicity, and race/color, and that eradicate the effects of their past and present unlawful employment practices

4.      Order Defendants to make Doe whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other injunctive relief necessary to eradicate the effects of Defendants' unlawful employment practices.

5.      Order Defendants to make Doe whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein, in amounts to be determined at trial.

6.      Order Defendants to make Doe whole, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of herein, including losses such as emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

7.      Order Defendants to pay Doe punitive damages for their malicious and/or reckless conduct described herein, in amounts to be determined at trial.

8.      Grant such further relief as the Court deems necessary and proper in the public interest.

9.      Award the DFEH its costs of this action, including reasonable attorneys' fees, as provided by statute.

## **JURY TRIAL DEMAND**

The DFEH requests a jury trial on all questions of fact raised by its complaint.


Dated: October 16, 2020                      CALIFORNIA DEPARTMENT OF FAIR
                                             EMPLOYMENT AND HOUSING



                                             By:  _Melanie J. Proctor_
                                                  MELANIE L. PROCTOR
                                                  Assistant Chief Counsel
                                                  Counsel for Plaintiffs

# Exhibit B

1  Timothy C. Travelstead, Esq. (SBN 215260)
   S.D. Narayan, Esq. (SBN 130964)
2  Scott C. Ku, Esq. (SBN 314970)
   NARAYAN TRAVELSTEAD P.C.
3  7901 Stoneridge Dr., Suite 230
   Pleasanton, CA 94588
4  Telephone: (650) 403-0150

5  Attorneys for HINDU AMERICAN FOUNDATION

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 1/7/2021 2:47 PM
Reviewed By: Y. Chavez
Case #20CV372366
Envelope: 5597151**

6

7              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8          IN AND FOR THE COUNTY OF SANTA CLARA, UNLIMITED JURISDICTION

9

10  CALIFORNIA DEPARTMENT OF FAIR          Case No. 20CV372366
    EMPLOYMENT AND HOUSING, an agency
11  of the State of California,

12                    Plaintiff,           **MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF HINDU
13  vs.                                    AMERICAN FOUNDATION'S MOTION
                                           FOR LEAVE TO INTERVENE**
14
    CISCO SYSTEMS, INC., a California
15  Corporation; SUNDAR IYER, an individual;   Date:
    RAMANA KOMPELLA, an individual.           Time:
16                                             Dept.:

17                    Defendants.

18                                         Date Action Filed:   October 16, 2020
                                           Trial Date:          None
19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 1

II.     BACKGROUND ........................................................................................... 2

    A.    Hinduism Teaches the Inherent Equal Value of All Persons........................... 2

    B.    The State of California's Colonial View of Hinduism is Inaccurate ................ 3

    C.    This Court is Not the Forum to Define Hinduism ............................................ 3

III.    DISCUSSION ............................................................................................... 4

    A.    Mandatory Intervention .................................................................................. 4

        1.    Legal Standards............................................................................... 4

        2.    Hindu American Foundation Has Significant Protectable Interests -
             Its Constitutional Rights. ................................................................. 5

            a)    First Amendment Right to Free Exercise of Religion ................... 5

            b)    Procedural Due Process Rights....................................................... 6

        3.    California's Action Will Significantly Impair Those Rights..................... 8

        4.    Existing Parties Are Not Representing the Constitutional Interests
             of Hindu Americans........................................................................ 9

        5.    Motion is Timely........................................................................... 10

    B.    Permissive Intervention ................................................................................ 10

        1.    Legal Standards............................................................................. 11

        2.    HAF's Free Exercise Rights Establish Common Legal Questions
             Sufficient to Support Permissive Intervention........................................... 11

IV.     CONCLUSION ........................................................................................... 11

i

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN
FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**
(HA-001)

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Allen v. California Water & Tel. Co.* (1947) 31 Cal.2d 104 .......................................................... 10

*Arakaki v. Cayetano* (9th Cir. 2003) 324 F.3d 1078 ................................................................... 5, 9

*Braunfeld* v. *Brown* (1961) 366 U.S. 599 ................................................................................... 5, 8

*California v. Tahoe Reg'l Planning Agency* (9th Cir. 1986) 792 F.2d 775 .................................... 9

*Cantwell v. Connecticut* (1940) 310 U.S. 296 ............................................................................... 5

*Carlsbad Police Officers Assn. v. City of Carlsbad* (2020) 49 Cal.App.5th 135 ................ 4, 5, 11

*Catello v. I.T.T. General Controls* (1984) 152 Cal.App.3d 1009 .................................................. 5

*Chamness v. Bowen* (9th Cir. 2013) 722 F.3d 1110 ...................................................................... 5

*County of Orange v. Air California* (9th Cir. 1986) 799 F.2d 535 .............................................. 10

*Donnelly v. Glickman* (9th Cir. 1998) 159 F.3d 405 .................................................................... 5

*Espinoza v. Mont. Dep't of Revenue* (2020) ___U.S.___ ............................................................. 6

*FCC v. Fox TV Stations, Inc.* (2012) 567 U.S. 239 ....................................................................... 6

*Gillette v. United States* (1971) 401 U.S. 437 ............................................................................... 5

*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540 ....................................... 11

*League of United Latin Am. Citizens v. Wilson* (9th Cir. 1997) 131 F.3d 1297 ......................... 10

*Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250 ................. 4

*Sagebrush Rebellion, Inc. v. Watt* (9th Cir. 1983) 713 F.2d 525 .................................................. 5

*SEC v. Flight Transportation Corp.* (8th Cir. 1983) 699 F.2d 943 ............................................... 8

*SEC v. Navin* (N.D. Cal. 1995) 166 F.R.D. 435 ............................................................................ 8

*Serbian E. Orthodox Diocese v. Milivojevich* (1976) 426 U.S. 696 .............................................. 1

*Sherbert* v. *Verner* (1963) 374 U.S. 398 ...................................................................................... 5

*Sierra Club v. United States EPA* (9th Cir. 1993) 995 F.2d 1478 ................................................ 8

*Starks v. Vortex Indus., Inc.starks* (2020) 53 Cal.App.5th 1113 ................................ 10

*Trinity Lutheran Church of Columbia, Inc. v. Comer* (2017) 582 U.S.___ .................................. 6

*United States v. City of Los Angeles* (9th Cir. 2002) 288 F.3d 391 ........................ 9

*United States v. Williams* (2008) 553 U. S. 285 ........................ 6

**Statutes**

California Civil Code § 51 ........................ 7

California Government Code § 11135 ........................ 7

California Government Code § 12940 ........................ 7

Code of Civil Procedure § 387 ........................ 4, 10, 11

**Constitutional Provisions**

U.S. Constitution, 1st Amendment ........................ 5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**

(HA-001)

I.   **INTRODUCTION**

The Hindu American Foundation (HAF), the largest and most respected Hindu educational and advocacy association in North America, moves to intervene in this action to protect the religious freedoms of Hindu Americans, and all Americans of faith, from the unconstitutional efforts of the State of California to decide the scope and nature of Hindu religious teachings and practices. The California Department of Fair Employment and Housing (DFEH) bases its case against Cisco Systems, Inc. on its assertion that the caste system is "a strict Hindu social and religious hierarchy," and therefore an integral part of Hindu teachings and practices.

HAF's position in this dispute is clear — a caste system is in no way a legitimate part of Hindu beliefs, teachings or practices. HAF vehemently opposes all types of caste-based discrimination; and takes great exception to the State of California defaming and demeaning all of Hinduism by attempting to connect a caste system to the Hindu religion. Worse, California has not simply stated that the caste system is an inherent part of Hinduism, it has filed a lawsuit that depends on that assertion to be a legally-accepted fact in order to establish its claim; it is axiomatic that a practice unconnected to religion cannot serve as the basis for a religious-discrimination claim. Therefore, California is asserting, for its religious discrimination claim to survive, that caste-discrimination is an inherent part of Hinduism. In doing so, California ventures into territory the First Amendment expressly prohibits.

California does what the First Amendment says it cannot, assert a government right to resolve questions of religious doctrine. Preventing the government from establishing religious doctrines or interfering with religious practices is as old a principle as the Republic itself. As American courts have recognized since the earliest days of our Constitution, those principles require a clear and unambiguous prohibition on any "civil determination of religious doctrine." (*Serbian E. Orthodox Diocese v. Milivojevich* (1976) 426 U.S. 696, 708-09, 96 S. Ct. 2372, 2380.) For that reason, HAF does not seek to intervene in this litigation to hold a debate with California or the Court over what does or does not constitute Hinduism or Hindu belief, because the First Amendment bars California and this Court from having that debate.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**
(HA-001)

The wisdom of that principle is reinforced by the complete lack of any objective evidence, law or context in the State of California's assertion. Caste has no legal, social, or cultural definition in the United States, and is not an observable or objectively determinable trait or characteristic. The State of California has not provided any definition or workable method to determine anyone's caste other than its assumption that Hindus of South Asian decent must identify as part of a specific caste and must ascribe to a religious and social hierarchy and engage in discrimination based on caste as an "inherent" part of their religious beliefs and practices.

As a result, the State of California's attempt to violate the First Amendment rights of all Hindu-Americans also leads to a violation of their due process rights and would likely lead employers to actively discriminate against Hindu and South Asian Americans in order to avoid the undefined maze of legal uncertainty that would be California's caste-discrimination bar. Hindus would effectively lose their due process rights by a state government wrongly labeling part of their religion as inherently illegal and discriminatory, regardless of the actual tenets of Hinduism and regardless of the evidence or facts of a particular case.

Stopping caste-based discrimination is a worthy goal that directly furthers Hinduism's belief in the equality of the divine essence of all people. But wrongly tying Hindu beliefs to the abhorrent practice of caste-discrimination undermines that goal, violates the First Amendment rights of all Hindu-Americans, and can only lead to a denial of due process to Americans based on their religious affiliation.

The Hindu American Foundation intervenes in this case to protect Hindu-Americans from California's effort to unconstitutionally undermine its member's religion by attempting to define Hindu beliefs.

## II.     __BACKGROUND__

### A.     __Hinduism Teaches the Inherent Equal Value of All Persons.__

As the world's oldest religion, with over 1.2 billion adherents, Hinduism represents a broad, pluralistic family of traditions. Its diversity is bound together by certain ancient, core teachings, not a single spiritual leader or book.

The core of Hinduism lies in its belief that the divine is equally present in all, and that this divinity is reflected in: the ultimate, eternal, omnipresent reality; the immortal, individual

soul; and reincarnation. That divinity leads Hindus to understand the purpose of human life as a quest for: (i) goodness or societal well-being (Dharma); (ii) material prosperity and security (Artha); (iii) mental and physical happiness (Kama); and (iv) wholeness or spiritual freedom (Moksha).

As a result of this shared divinity, Hinduism asserts a moral obligation (Dharma) to ensure that one's thoughts, words, and actions (Karma) uphold values like truth, non-injury, compassion, equanimity, generosity, and equal regard in order to honor the divine in all. Developed over millennia through the meditations, experiences, and faith of its sages, teachers, lay leaders, and practitioners, Hinduism represents a broad and diverse faith, with each of the over 1.2 billion Hindus experiencing its wisdom based on their own understanding of its precepts.

## B.     The State of California's Colonial View of Hinduism is Inaccurate

California's claims about Hinduism stem not from this deep and diverse history in the precept of the equal and divine value of all, but rather in the misinformed and misrepresentative assertions about Hinduism by Western European colonial occupation. Looking for tools to control the indigenous population that greatly outnumbered it, British colonial occupation defined Hinduism not based on the Hindu peoples' own understandings of Hinduism's precepts and practices, but rather on the British's own 18th and 19th century belief in their superiority over non-white, non-Christian peoples outside of Europe. British colonial government latched onto existing non-uniform, highly localized social and cultural divisions within India to devise a four-fold pan-Indian caste system to use to control the occupied. The caste system as defined by the State of California is merely a reflection of this British-created administrative tool and the scientific racism that was in vogue at the time. It is not based on any common understanding among Hindus of their own beliefs and traditions.

## C.     This Court is Not the Forum to Define Hinduism

Regardless of the source of the State of California's misunderstandings about Hindu beliefs and practices, this Court and this case are not the forums for that debate. Just as Catholics are free to define Catholicism and Muslims are free to define Islam, it is for Hindus alone to

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**
(HA-001)

define Hinduism, and the State of California cannot, as it seeks to here, adopt a legal definition of Hinduism that incorrectly includes caste, a caste system and caste-based discrimination. The State of California is attempting to define Hinduism against the beliefs of an overwhelming number of its own adherents, in direct violation of the constitutional right to the free exercise of religion. It is attempting to chain Hinduism to a discriminatory practice abhorred by and rejected by the vast majority of Hindu Americans.

And in doing so, the State of California is violating the First Amendment and due process rights of all Hindu Americans.

### III.   DISCUSSION

HAF moves to intervene in this action to protect the religious freedoms of Hindu Americans, and all Americans of faith, from the unconstitutional efforts of the State of California to decide the scope and nature of Hindu religious teachings and practices. HAF may intervene as a matter of right because the disposition of this action not only impedes its interest, but also impedes the interests of all Hindu Americans, to freely exercise Hinduism, guaranteed by the First Amendment in addition to their procedural due process. California's action will significantly impair those rights. And no existing parties can appropriately represent HAF's interests here. Attached to this motion is a copy of HAF's proposed Complaint in Intervention. (Declaration of Hindu American Foundation, "HAF Decl.,"  ¶ 3, Exh. 1.)

**A.   Mandatory Intervention**

***1.   Legal Standards***

A nonparty to a lawsuit may intervene as a matter of right where "[a] provision of law confers an unconditional right to intervene" or where "the disposition of the action may impair or impede that person's ability to protect" its interest raised by the action. (Code Civ Proc. § 387 subd. (d)(1); see also *Carlsbad Police Officers Assn. v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 148 ("*Carlsbad*"); *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1269.) Where intervention is granted, "'[t]he intervener becomes a party to the action, with all of the same procedural rights and remedies of the original parties." (*Carlsbad, supra,* 49 Cal.App.5th at 148-149; quoting *Catello v. I.T.T. General Controls* (1984) 152

Cal.App.3d 1009, 1013–1014.) California's standards for mandatory intervention mirror the federal rules on mandatory intervention, and California courts "may look to authorities construing the parallel federal rule for guidance." (*Carlsbad*, *supra* 49 Cal.App.5th at 151.)

To establish the right to intervene in the absence of express statutory authority to do so, a nonparty must show: "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. (*Chamness v. Bowen* (9th Cir. 2013) 722 F.3d 1110, 1121; *Sagebrush Rebellion, Inc. v. Watt* (9th Cir. 1983) 713 F.2d 525, 527.)

A motion to intervene "traditionally receives liberal construction in favor of applicants for intervention." (*Arakaki v. Cayetano* (9th Cir. 2003) 324 F.3d 1078, 1083; citing *Donnelly v. Glickman* (9th Cir. 1998) 159 F.3d 405, 409.) Courts are guided primarily by practical and equitable considerations. (*Id.*)

### 2. Hindu American Foundation Has Significant Protectable Interests - Its Constitutional Rights.

#### a) First Amendment Right to Free Exercise of Religion

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." (U.S. Const., 1st Amend.) "To be sure, the Free Exercise Clause bars 'governmental regulation of religious *beliefs.*'" (*Gillette v. United States* (1971) 401 U.S. 437, 462, 91 S. Ct. 828, 842; quoting *Sherbert* v. *Verner* (1963) 374 U.S. 398, 402.) "If the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect." (*Braunfeld* v. *Brown* (1961) 366 U.S. 599, 607 (opinion of Warren, C. J.); quoted in *Sherbert, supra,* 374 U.S. at 402.) Neither federal nor state governments can interfere with Americans' free-exercise rights. (*Cantwell v. Connecticut* (1940) 310 U.S. 296.)

California's Complaint directly violates these principles by seeking a legal conclusion that caste and a caste system are inherent to Hindu teachings and practice, and its usage

presumptively discriminatory. In the Complaint the Department of Fair Employment and Housing expressly claims that the caste system is "a strict Hindu social and religious hierarchy." (Complaint ¶ 1, p. 2.) The Complaint clearly asserts, and bases its claims, that the caste system is a Hindu "religious" hierarchy.

Laws violate the Free-Exercise Clause of the First Amendment when they "impose special disabilities on the basis of religious status." (*Espinoza v. Mont. Dep't of Revenue* (2020) ___U.S.___ [140 S.Ct. 2246, 2254-2255, 207 L.Ed.2d 679, 689-690]; citing *Trinity Lutheran Church of Columbia, Inc. v. Comer* (2017) 582 U.S.___ [137 S.Ct. 2012, 2016, 198 L.Ed.2d 551, 555]; see also *Cantwell v. Connecticut* (1940) 310 U. S. 296, 303.)

Here, California seeks to do exactly what the Supreme Court has barred, imposing a special disability on an entire religion by wrongly defining its beliefs and then labeling those beliefs as inherently and illegally discriminatory. In fact, just the opposite is true. As HAF has consistently maintained, the idea of a social and religious hierarchy or a caste system is antagonistic to Hindu teachings; every person's divine essence is entitled to equal dignity, worth and respect.

But HAF does not seek to intervene in this litigation to hold a debate with California or the Court over what does or does not constitute Hinduism or Hindu belief, because the First Amendment precludes either from taking a position on such a question. Under the Constitution, defining the Hindu religion is a right reserved for Hindus, not the State of California. California's attempt to define the Hindu religion in violation of that right is what is at issue in this case and shows HAF has significant protectable interest in this litigation. (HAF Decl., ¶¶ 2, 4.)

        b)    Procedural Due Process Rights

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." (*FCC v. Fox TV Stations, Inc.* (2012) 567 U.S. 239, 253.) A statute or regulation violates procedural due-process rights where it "is so standardless that it authorizes or encourages seriously discriminatory enforcement." (*United States v. Williams* (2008) 553 U. S. 285, 304.) A law qualifies as

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**
(HA-001)

unconstitutionally vague not because it is difficult to prove, but where "it is unclear as to what fact must be proved." (*Id.*, at 306.).

Indeed, the State of California's position is so standardless that it would actually require the very discrimination that it seeks to ban. FEHA requires employers to accommodate religious beliefs. (Gov. Code § 12940 subd. (*l*) (1).) California wants to establish, as a legally-binding principle of law, that caste discrimination is a religious belief under Hinduism. Must an employer then accommodate requests for caste discrimination from employees as a religious accommodation?

California would doubtless answer no, because FEHA states that employers are not required to accommodate religious beliefs "under this subdivision if it would result in a violation of this part or any other law prohibiting discrimination or protecting civil rights." (Gov. Code § 12940 subd. (*l*)(3).)

But caste discrimination is not barred by any part of any other California law or regulation. The Fair Employment and Housing Act prohibits discrimination based on: "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status." (Gov. Code § 12940 subd. (a).) Similar categories are listed in California's other civil rights statutes. (See Gov. Code §§ 11135, 12940; Civ. Code § 51.) Nowhere does FEHA, its regulations, or any other provision of California law bar caste discrimination.

In seeking to declare caste an inherent part of Hindu beliefs, employers would be required to accommodate an employee's request not to work with someone the employee believes to be of the "wrong" caste. An employer would have to accommodate an employee's request not to be supervised by, or to supervise, persons perceived to be of the wrong caste, even where no other employee identifies with that or any caste or has any personal belief in the caste system. California would actually require employers to engage in the very discrimination that it seeks to prevent.

In fact, the only consistent factor the DFEH seeks to identify with caste is that it is an inherent part of Hinduism. That this "authorizes or encourages seriously discriminatory

7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**

enforcement" against Hindus and Americans of South Asian descent is self-evident. Without any context outside of its asserted connection to Hinduism, the DFEH has provided no meaning or definition of caste and would set up a legal structure that actually requires the discrimination it seeks to prevent.

### 3.     California's Action Will Significantly Impair Those Rights

It is self-evident that California's attempts to define Hinduism will significantly impair the free-exercise and due-process rights of HAF and of all Hindu Americans. (HAF Decl., ¶ 5.) A protectable interest is significantly impaired, for intervention purposes, where "[a] judicial decision that would 'as a practical matter' foreclose the would-be intervenor's interest." (*SEC v. Navin* (N.D. Cal. 1995) 166 F.R.D. 435, 440; citing *Sierra Club v. United States EPA* (9th Cir. 1993) 995 F.2d 1478, 1486; *SEC v. Flight Transportation Corp.* (8th Cir. 1983) 699 F.2d 943, 948.)

California asks this Court to define Hinduism as a religion that believes in caste, a caste-based system, and caste-based discrimination as a matter of law. California asks this Court to hold that caste-based discrimination is a Hindu practice, and that Hindu religious beliefs and practices should legally be associated with inequality, bigotry, and discrimination.

This would do expressly what the U.S. Supreme Court says the First Amendment prohibits. It would use the Fair Employment and Housing Act "to discriminate invidiously between religions, . . . even though the burden may be characterized as being only indirect." (*Braunfeld* v. *Brown* (1960) 366 U.S. 599, 607 (opinion of Warren, C. J.).) Worse, it would discriminate against Hinduism by ruling that it stands for a proposition the overwhelming majority of its adherents believe it actually abhors and expressly condemns, in direct violation of free-exercise rights of Hindu Americans.

Characterizing caste-based discrimination as a religious practice would defame Hinduism, categorize it as an inherently discriminatory religion based on a government decree about what constitutes Hindu beliefs. It would require employers to engage in caste-based discrimination in the name of accommodating religious beliefs that are not part of Hinduism. And it would lead to the widespread discrimination against hiring Hindu and South-Asian

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**
(HA-001)

Americans, as employers simply avoid the legally contradictory quagmire that the DFEH's assertions would put them in.

### 4. *Existing Parties Are Not Representing the Constitutional Interests of Hindu Americans*

No parties can appropriately represent HAF's interests here. (HAF Decl., ¶¶ 6-7.) The Court relies on three factors when considering whether an intervenor's interests are already adequately represented in the case: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." (*Arakaki v. Cayetano* (9th Cir. 2003) 324 F.3d 1078, 1086; see also *California v. Tahoe Reg'l Planning Agency* (9th Cir. 1986) 792 F.2d 775, 778.)

None of the existing parties are in a position to assert HAF's arguments here, because the DFEH position is antagonistic to HAF's, and none have standing to assert its arguments, or the incentive to do so. (HAF Decl., ¶ 6.) As a governmental entity antagonistic to HAF and its constituents' rights, the DFEH cannot adequately represent HAF's interests here. (*United States v. City of Los Angeles* (9th Cir. 2002) 288 F.3d 391, 401-402.) The DFEH is seeking to legally define the beliefs and practices of Hinduism, in direct violation of the First Amendment. It cannot adequately represent the interests it is seeking to violate.

Nor can the other parties. Cisco is not a religious institution or entity, and none of the other defendants have the position or authority to represent the broad Hindu American community. (HAF Decl., ¶ 6.) As such, none of the parties have an interest or have standing to protect against the harm California is attempting to inflict here, to violate the free exercise rights of Hindu Americans. None of the parties have interests aligned with those of Hindu Americans.

Cisco's interest is to defend the claim that its supervisors violated the Fair Employment and Housing Act. Because they are not a religious entity, they cannot do so by invoking religious freedoms under the U.S. Constitution. While they may have a motive to argue that caste-based discrimination is not protected under law, they have no incentive or standing to assert the First Amendment or due process rights of Hindu Americans.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**
(HA-001)

The individual defendants likewise cannot represent those interests. Neither have the position, authority or role to represent the broad, Hindu American community. Rather, their incentive is focused on arguing that caste-based discrimination is not identified as a protected characteristic under law.

Without HAF's intervention on the religious-freedom question, the State of California will be effectively unopposed in its efforts to violate the religious freedoms of Hindu Americans. (HAF Decl., ¶ 7.)

### 5.   *Motion is Timely*

HAF's motion is timely. To determine whether a motion is timely, the Court looks to three factors "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." (*Starks v. Vortex Indus., Inc.starks* (2020) 53 Cal.App.5th 1113, 1126; *League of United Latin Am. Citizens v. Wilson* (9th Cir. 1997) 131 F.3d 1297, 1302; quoting *County of Orange v. Air California* (9th Cir. 1986) 799 F.2d 535, 537; *Allen v. California Water & Tel. Co.* (1947) 31 Cal.2d 104 [permits intervention at any time before trial].)

The case is in its early stages, all parties have not yet appeared in the matter, and the initial Case Management Conference has not yet taken place. There will be no prejudice to the other parties as a result of this intervention because the litigation is still in a preliminary stage. This motion was filed with minimal delay as soon as the case became known to HAF.

Because the standards for mandatory intervention have been satisfied here, and because HAF has a significant constitutional interest in preventing California from violating its free exercise rights, HAF respectfully asks the Court to grant its Motion for mandatory intervention.

### B.   <u>Permissive Intervention</u>

Alternatively, HAF asks the Court to permit it to intervene permissively under Code of Civil Procedure section 387 subdivision (d)(2). HAF's interest in protecting its and its constituents' free exercise rights shares common questions of law and fact with the claims asserted by California. California's claim that the caste system is a "social and religious Hindu hierarchy" requires a finding by the Court that the caste system is a Hindu belief and practice. HAF's claim is that California's very attempt to assert that position violates Hindu Americans'

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**
(HA-001)

First Amendment Rights. Because of the shared legal questions involved, HAF asks the Court, in its discretion, to permit intervention here.

### 1.    *Legal Standards*

Under Section 387 subdivision (d)(2), a party may be permitted to intervene, in the sound discretion of the Court, when the intervenor "is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties." (Code Civ. Proc. § 387 subd. (d)(2); *Carlsbad, supra,* 49 Cal.App.5th at 148.) Permissive intervention is analyzed based on whether the case would, "as a practical matter impair or impede [the interveners'] ability to protect" its interest." (*Carlsbad, supra*, 49 Cal.App.5th at 149; quoting *Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 554.)

### 2.    *HAF's Free Exercise Rights Establish Common Legal Questions Sufficient to Support Permissive Intervention*

California asserts that caste-based discrimination is a violation of the Fair Employment and Housing Act's prohibition against discrimination on the basis of religion, race, ancestry, ethnic origin, and skin color. HAF asserts that the DFEH characterizing the caste system and caste discrimination as Hindu beliefs and practices violates the First Amendment rights of Hindu Americans. The positions, therefore present a clear and common question for the Court — does it violate the Free Exercise Clause of the First Amendment for the State of California to base a religious discrimination claim on what it asserts are the "inherent" precepts and practices of the Hindu religion, in spite of the core tenets of that very religion itself.

## IV.    <u>CONCLUSION</u>

Through this lawsuit, the State of California is attempting to establish, as a matter of law, the precepts and practices of Hinduism. The First and Fourteenth Amendments prevent California from doing so. Indeed, the attempt would actually end up requiring the very discrimination that the State seeks to prevent. For if it considers caste discrimination to be an inherent part of Hinduism, against the beliefs and practices of the Hindu religion itself, the Fair Employment and Housing Act would actually require employers to accommodate employees that engage in caste-based discrimination. To stop California from defaming Hinduism, ascribing to it an abhorrent practice that is anathema to its own teachings, and actually requiring the very

11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**

(HA-001)

discrimination it seeks to prevent, the Hindu American Foundation respectfully asks the Court to grant its motion to intervene.


Dated:  January 7, 2021                          NARAYAN TRAVELSTEAD P.C.



                                                 _____
                                                 Timothy C. Travelstead
                                                 S.D. Narayan
                                                 Scott C. Ku
                                                 Attorneys for HINDU AMERICAN
                                                 FOUNDATION

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**
(HA-001)

1  Timothy C. Travelstead, Esq. (SBN 215260)
   S.D. Narayan, Esq. (SBN 130964)
2  Scott C. Ku, Esq. (SBN 314970)
   NARAYAN TRAVELSTEAD P.C.
3  7901 Stoneridge Dr., Suite 230
   Pleasanton, CA 94588
4  Telephone: (650) 403-0150

5  Attorneys for HINDU AMERICAN FOUNDATION

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 1/7/2021 2:47 PM
Reviewed By: Y. Chavez
Case #20CV372366
Envelope: 5597151**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA, UNLIMITED JURISDICTION

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, an agency of the State of California,<br><br>          Plaintiff,<br><br>vs.<br><br>CISCO SYSTEMS, INC., a California Corporation; SUNDAR IYER, an individual; RAMANA KOMPELLA, an individual.<br><br>          Defendants. | Case No. 20CV372366<br><br>**DECLARATION OF HINDU AMERICAN FOUNDATION IN SUPPORT OF MOTION TO INTERVENE**<br><br>Date:<br>Time:<br>Dept.:<br><br>Date Action Filed:     October 16, 2020<br>Trial Date:              None |

We, Suhag A. Shukla, Esq. and Samir Kalra, Esq., being first duly sworn, state based on personal knowledge:

1.       We are duly authorized representatives of Hindu American Foundation (HAF), a non-profit advocacy organization headquartered in Washington D.C. and incorporated in the State of Florida seeking to intervene in the action entitled *California Department of Fair Employment and Housing v. Cisco Systems, Inc. et al.*;

2.       HAF represents the interests of Hindu Americans and has constituent supporters across the United States, a significant number of whom are California residents;

3.       HAF seeks to intervene in the above entitled action under California Code of Civil Procedure section 387.  Attached hereto as **Exhibit 1** is a true and correct copy of HAF's Proposed Complaint in Intervention.

4.        HAF has an interest in the subject matter involved in the above entitled action in that it seeks to protect its and its constituents' due process rights and constitutional rights under the First Amendment to freely exercise religion. California's attempt to define the Hindu religion is in direct violation of U.S. Supreme Court holdings and the First Amendment's Free-Exercise Clause;

5.       Unless HAF is allowed to intervene in the above entitled action, California's attempts to define Hinduism will significantly impair the free-exercise and due-process rights of HAF and all Hindu Americans, and discriminate against the Hindu religion by ruling that it stands for a proposition that the overwhelming majority of its adherents believe it actually abhors and expressly condemns;

6.       HAF's interests in the above entitled litigation are not being adequately represented by the parties involved in the action, and no parties can appropriately represent HAF's interests here. The DFEH's position is antagonistic to HAF's. Cisco is not a religious institution or entity and none of the other defendants have authority to represent the broad Hindu American community, as such, none of the parties have an interest or have standing to protect against the harm California is attempting to inflict here.

7.       Without HAF's intervention on the religious-freedom question, the State of California will be effectively unopposed in its efforts to violate the religious freedoms of all Hindu Americans.

**DECLARATION OF HINDU AMERICAN FOUNDATION IN SUPPORT OF MOTION TO INTERVENE**
(HA-001)

1       We declare under penalty of perjury under the laws of the State of California that the

2  above is true and correct. Executed on January 7, 2021, at Fremont, California.

3

4

5

6  Suhag A. Shukla, Esq.

7

8

9  Samir Kalra, Esq.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF HINDU AMERICAN FOUNDATION IN SUPPORT OF MOTION TO INTERVENE**
(HA-001)

# EXHIBIT 1

1  Timothy C. Travelstead, Esq. (SBN 215260)
   S.D. Narayan, Esq. (SBN 130964)
2  Scott C. Ku, Esq. (SBN 314970)
   NARAYAN TRAVELSTEAD P.C.
3  7901 Stoneridge Dr., Suite 230
   Pleasanton, CA 94588
4  Telephone: (650) 403-0150

5  Attorneys for Proposed Cross-Plaintiff Intervenor
   HINDU AMERICAN FOUNDATION
6

7
              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
8
9       IN AND FOR THE COUNTY OF SANTA CLARA, UNLIMITED JURISDICTION

10
11 | CALIFORNIA DEPARTMENT OF FAIR          | Case No. 20CV372366
   | EMPLOYMENT AND HOUSING, an agency      |
12 | of the State of California,            |
   |                                        | **[PROPOSED] HINDU AMERICAN**
13 |          Plaintiff,                    | **FOUNDATION COMPLAINT IN**
   |                                        | **INTERVENTION**
14 | vs.                                    |
15 | CISCO SYSTEMS, INC., a California      | Date:
16 | Corporation; SUNDAR IYER, an individual;| Time:
   | RAMANA KOMPELLA, an individual.        | Dept.:
17 |                                        |
18 |          Defendants,                   | Date Action Filed:   October 16, 2020
   |                                        | Trial Date:          None
19 | HINDU AMERICAN FOUNDATION,             |
20 |          Cross-Plaintiff Intervenor.   |

21
22
23
24
25
26
27
28

By leave of Court, the Hindu American Foundation (HAF) hereby intervenes in this matter as a Cross-Plaintiff seeking declaratory and injunctive relief against the California Department of Fair Employment and Housing (DFEH) for violating the First Amendment and Due Process rights of Hindu Americans.

## I.     **INTRODUCTION**

1.     The Hindu American Foundation (HAF), the largest and most respected Hindu educational and advocacy association in North America, acts to protect the religious freedoms of Hindu Americans, and all Americans of faith, from the unconstitutional efforts of the State of California to decide the scope and nature of Hindu religious teachings and practices.  In this case, the DFEH claims that caste-based discrimination is religious discrimination because the caste system is "a strict Hindu social and religious hierarchy," and therefore an integral part of Hindu teachings and practices.

2.     As HAF has consistently maintained throughout its history, a caste system is in no way a legitimate part of Hindu beliefs, teachings or practices.  HAF vehemently opposes all types of caste-based discrimination; and takes great exception to the State of California defaming and demeaning all of Hinduism by attempting to connect a caste system to the Hindu religion.

3.     Worse, California defames Hinduism by doing what the U.S. Constitution says it cannot, assert a government right to resolve questions of religious doctrine.  Preventing the government from establishing religious doctrines or interfering with religious practices is as old a principle as the Republic itself.  As American courts have recognized since the earliest days of our Constitution, those principles require a clear and unambiguous prohibition on any "civil determination of religious doctrine."  (*Serbian E. Orthodox Diocese v. Milivojevich* (1976) 426 U.S. 696, 708-09, 96 S. Ct. 2372, 2380.)

4.     For that reason, HAF does not seek to intervene in this litigation to hold a debate with California or the Court over what does or does not constitute Hinduism or Hindu belief and practice, because the First Amendment bars California and this Court from having that debate.

5.     The wisdom of that principle is reinforced by the complete lack of any objective evidence, law or context in the State of California's assertion.  Caste has no legal, social, or

cultural definition in the United States, and is not an observable or objectively determinable trait or characteristic.  The State of California has not provided any definition or workable method to determine anyone's caste other than its assumption that Hindus of South Asian decent must identify as part of a specific caste and must engage in discrimination based on caste as an "inherent" part of their religious beliefs and practices.

6.     As a result, the State of California's attempt to violate the First Amendment rights of all Hindu-Americans also leads to a violation of their due process rights and would likely lead employers to actively discriminate against Hindu and South Asian Americans in order to avoid the undefined maze of legal uncertainty that would be California's caste-discrimination bar. Hindus would effectively lose their due process rights by a state government wrongly labeling part of their religion as inherently illegal and discriminatory, regardless of the actual tenets of Hinduism and regardless of the evidence or facts of a particular case.

7.     Stopping caste-based discrimination is a worthy goal that directly furthers Hinduism's belief in the equality of the divine essence of all people.  But wrongly tying Hindu beliefs and practices to the abhorrent practice of caste-discrimination undermines that goal, violates the First Amendment rights of all Hindu-Americans, and can only lead to a denial of due process to Americans based on their religious affiliation.

8.     The Hindu American Foundation intervenes in this case to protect Hindu Americans from California's effort to unconstitutionally undermine its members' religion by attempting to define Hindu beliefs and practices.

## II.    FACTUAL BACKGROUND

9.     Established in 2003, the Hindu American Foundation is the nation's largest Hindu education and advocacy organization.  As a non-partisan group that is not affiliated with any other religious or political organization, HAF works with a wide range of people and groups that are committed to promoting dignity, mutual respect, and pluralism, working across all *sampradaya* (Hindu religious traditions) regardless of race, color, national origin, citizenship, caste, gender, sexual orientation, age and/or disability.

***Hinduism Teaches the Inherent Equal Value of All Persons.***

10.    As the world's oldest religion with over 1.2 billion adherents, Hinduism represents a broad, pluralistic family of traditions.  Its diversity is bound together by certain ancient, core teachings, not a single spiritual authority or book.

11.    The core of Hinduism lies in its assertion that the divine is equally present in all, and that this divinity is reflected in: the ultimate, eternal, omnipresent reality; the immortal, individual soul; and through reincarnation.  This divinity leads Hindus to understand the purpose of human life as a quest for: (i) goodness or societal well-being (Dharma); (ii) material prosperity and security (Artha); (iii) mental and physical happiness (Kama); and (iv) wholeness or spiritual freedom (Moksha).

12.    As a result of this shared divinity, Hinduism asserts a moral obligation (Dharma) to ensure that one's thoughts, words, and actions (Karma) uphold values like truth, non-injury, compassion, equanimity, generosity, and equal regard in order to honor the divine in all. Developed over millennia through the meditations, experiences, and spiritual practices of its sages, teachers, lay leaders, and practitioners, Hinduism represents a broad and diverse faith, with each of the over 1.2 billion Hindus' experiencing its wisdom based on their own understanding of its precepts.

***The DFEH's Colonial View of Hinduism is Inaccurate***

13.    The DFEH's Complaint makes claims about Hinduism not from this deep and diverse history in the precept of the equal and divine value of all, but rather in the misinformed and misrepresentative assertions about Hinduism by Western European colonial occupation. Looking for tools to control the indigenous population that greatly outnumbered it, British colonial occupation defined Hinduism not based on the Hindu peoples' own understandings of Hinduism's precepts and practices, but rather on the British's own 18th and 19th century belief in their superiority over non-white, non-Christian peoples outside of Europe.

14.    The British colonial government latched onto existing, non-uniform, highly localized social and cultural divisions within India and combined it with then-prevailing racist theories to devise a four-fold pan-Indian caste system to use to control the occupied.  And the

**[PROPOSED] HINDU AMERICAN FOUNDATION'S COMPLAINT IN INTERVENTION**
(HA-001)

British-created system reflected their own 19th century views on race, with -- the upper castes consisting of light-skinned, "more evolved" Caucasians or Indo-Europeans who, after invading the Indian subcontinent, relegated the indigenous, "inferior", and "less evolved" darker-skinned people to the lower castes.

15.     California's view of the caste system is rooted in this British-created tool of colonial control, a tool arising out of 19th Century British racist imperialism.  It is not based on any universal understanding among Hindus about their own beliefs and traditions.

### DFEH Has No Role in Defining Hinduism

16.     Regardless of the source of the State of California's misunderstandings about Hindu beliefs and practices, this Court and this case are not the forums for that debate.  Just as Catholics are free to define Catholicism and Muslims are free to define Islam, it is for Hindus alone to define Hinduism, and the State of California cannot, as it seeks to here, adopt a legal definition of Hinduism that incorrectly includes caste, a caste system and caste-based discrimination. The State of California is attempting to define Hinduism against the beliefs of an overwhelming number of its own adherents, in direct violation of the constitutional right to the free exercise of religion.  It is attempting to chain Hinduism to a discriminatory practice abhorred by and rejected by the vast majority of Hindu Americans.

17.     And in doing so, the State of California is violating the First Amendment and due process rights of all Hindu Americans.

### The DFEH's Approach Undermines Efforts to End Caste-Based Discrimination

18.     By wrongly attempting to define Hinduism to include caste, the DFEH would actually require the very discrimination that it seeks to ban.  The California Fair Employment and Housing Act (FEHA) requires employers to accommodate religious beliefs.  (Gov. Code § 12940 subd. (*l*)(1).)  In this case, the DFEH asserts, as a legally-binding principle of law necessary to their religious discrimination claim, that caste discrimination is a religious belief under Hinduism.  Must an employer then accommodate requests for caste discrimination from employees as a religious accommodation?

**[PROPOSED] HINDU AMERICAN FOUNDATION'S COMPLAINT IN INTERVENTION**
(HA-001)

19.     California would doubtless answer no, because FEHA states that employers are not required to accommodate religious beliefs "under this subdivision if it would result in a violation of this part or any other law prohibiting discrimination or protecting civil rights." (Gov. Code § 12940 subd. (*l*)(3).)

20.     But caste discrimination is not barred by any part of any other California law or regulation.  The Fair Employment and Housing Act prohibits discrimination based on: "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status."  (Gov. Code § 12940 subd. (a).)  Similar categories are listed in California's other civil rights statutes.  (See Gov. Code §§ 11135, 12940; Civ. Code § 51.)  Nowhere does FEHA, its regulations, or any other provision of California law bar caste discrimination.

21.     In seeking to declare caste an inherent part of Hindu beliefs, employers might arguably be required to accommodate an employee's request not to work with someone the employee believes to be of the "wrong" caste.  An employer might also arguably have to accommodate an employee's request not to be supervised by, or to supervise, persons perceived to be of the "wrong" caste, even where no other employee identifies with that or any caste or has any personal belief in a caste system.  California would actually seem to encourage and possibly even require, employers to engage in the very discrimination that it seeks to prevent.

## FIRST CLAIM FOR RELIEF

### Civil Rights Violations

42 U.S.C. § 1983

22.     HAF incorporates the preceding paragraphs as if they were repeated in full herein.

23.     HAF has associational standing to bring this claim on behalf of its Hindu American members.

**[PROPOSED] HINDU AMERICAN FOUNDATION'S COMPLAINT IN INTERVENTION**
(HA-001)

24. HAF seeks relief under 42 U.S.C. § 1983, which prohibits any person, under color of law, from depriving others of their rights, privileged or immunities secured by the Constitution of the United States.

25. In filing this action, the California Department of Fair Employment and Housing has acted under color of state law.

26. Under the First Amendment to the United States Constitution, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." (U.S. Const., 1st Amend.) "To be sure, the Free Exercise Clause bars 'governmental regulation of religious *beliefs.*'" (*Gillette v. United States* (1971) 401 U.S. 437, 462, 91 S. Ct. 828, 842; quoting *Sherbert* v. *Verner* (1963) 374 U.S. 398, 402.) "If the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect." (*Braunfeld* v. *Brown* (1961) 366 U.S. 599, 607 (opinion of Warren, C. J.); quoted in *Sherbert, supra,* 374 U.S. at 402.) Neither federal nor state governments can interfere with Americans' free-exercise rights. (*Cantwell v. Connecticut* (1940) 310 U.S. 296.)

27. Laws violate the Free-Exercise Clause of the First Amendment when they "impose special disabilities on the basis of religious status." (*Espinoza v. Mont. Dep't of Revenue* (2020) ___U.S.___ [140 S.Ct. 2246, 2254-2255, 207 L.Ed.2d 679, 689-690]; citing *Trinity Lutheran Church of Columbia, Inc. v. Comer* (2017) 582 U.S.___ [137 S.Ct. 2012, 2016, 198 L.Ed.2d 551, 555]; see also *Cantwell v. Connecticut* (1940) 310 U. S. 296, 303.)

28. By acting under color of state law to wrongly define Hindu beliefs and practices to include the abhorrent practice of caste discrimination, the California Department of Fair Employment and Housing has violated the Free-Exercise rights of Hindu Americans by seeking to legally define their religious beliefs and by imposing special disabilities on the basis of religion by wrongly claiming that Hindus believe in a discriminatory caste.

29. As a result, HAF prays for the judgement and relief set forth below.

**[PROPOSED] HINDU AMERICAN FOUNDATION'S COMPLAINT IN INTERVENTION**
(HA-001)

## **SECOND CLAIM FOR RELIEF**

### **Unruh Civil Rights Act**

Cal. Civ. Code § 51 et seq.

30.     HAF incorporates the preceding paragraphs as if they were repeated in full herein.

31.     The Unruh Civil Rights Act holds all persons within California are free and equal, and "no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever" within the jurisdiction of California.  (Cal. Civ. Code § 51(b).)

32.     Under the Unruh Civil Rights Act,

> Whenever there is reasonable cause to believe that any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section, and that conduct is of that nature and is intended to deny the full exercise of those rights… any person aggrieved by the conduct may bring a civil action in the appropriate court by filing with it a complaint.

33.     The DFEH has intentionally filed the Complaint in this action that specifically and wrongly asserts that caste discrimination is an inherent belief and practice of the Hindu religion, in violation of the Unruh Civil Rights Act.

34.     To protect the religious freedom of Hindu Americans, HAF respectfully asks the Court to issue a preliminary and permanent injunction to prevent the DFEH from bringing any action or adopting any rule or regulation that seeks to define or establish the extent and nature of Hindu beliefs and practices or that seeks to associate, as a legal premise to a claim, that a caste system is "a strict Hindu…religious hierarchy,"

35.     As a result, HAF prays for the judgement and relief set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, HAF respectfully requests that the Court enter judgment that:

1.      Declares that the DFEH, through the actions described above, has violated the First Amendment and Due Process rights of Hindu Americans.

2.      Declares that the DFEH has violated the California Unruh Civil Rights Act by taking an action under color of law to discriminate against Hindu American's by wrongly and unconstitutionally defining Hindu beliefs and practices as including a caste system.

3.      Enjoins the DFEH from engaging in any act or practice that seeks to define Hinduism as including a caste system or any other belief or practice.

4.      Enjoins the DFEH from bringing any religious discrimination action based on the premise that Hindu belief and practice includes a caste system.

5.      Awards attorneys' fees and costs incurred for the prosecution of this matter as provided by law.

6.      Grants such other additional relief as the Court deems just and proper.


Dated:  January 7, 2021                    NARAYAN TRAVELSTEAD, P.C.



                                           _____
                                           Timothy C. Travelstead
                                           S.D. Narayan
                                           Scott C. Ku
                                           Attorney for Cross-Plaintiff in Intervention
                                           Hindu American Foundation

Exhibit C

Form **990**

Department of the Treasury
Internal Revenue Service

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

▶ Do not enter social security numbers on this form as it may be made public.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No 1545-0047

**2018**

Open to Public Inspection

**A** For the 2018 calendar year, or tax year beginning **JAN 1, 2019** and ending **JUN 30, 2019**

| B Check if applicable | C Name of organization | | D Employer identification number |
|---|---|---|---|
| ☐ Address change | **HINDU AMERICAN FOUNDATION, INC.** | | |
| ☐ Name change | Doing business as | | **68-0551525** |
| ☐ Initial return | Number and street (or P.O box if mail is not delivered to street address) | Room/suite | E Telephone number |
| ☐ Final return/terminated | **910 17TH ST. NW** | **316A** | **202-223-8222** |
| ☐ Amended return | City or town, state or province, country, and ZIP or foreign postal code | | G Gross receipts $ **1,405,374.** |
| ☐ Application pending | **WASHINGTON, DC 20006-2601** | | |
| | F Name and address of principal officer **SHEETAL SHAH** | | H(a) Is this a group return for subordinates? ☐ Yes ☒ No |
| | **SAME AS C ABOVE** | | H(b) Are all subordinates included? ☐ Yes ☐ No |

**I** Tax-exempt status: ☒ 501(c)(3) ☐ 501(c) ( )◀ (insert no.) ☐ 4947(a)(1) or ☐ 527
If "No," attach a list (see instructions)

**J** Website: ▶ **WWW.HAFSITE.ORG**
H(c) Group exemption number ▶

**K** Form of organization: ☒ Corporation ☐ Trust ☐ Association ☐ Other ▶ | **L** Year of formation **2003** | **M** State of legal domicile **FL**

### Part I    Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities **THE HINDU AMERICAN FOUNDATION (HAF) IS AN ADVOCACY ORGANIZATION FOR THE HINDU AMERICAN COMMUNITY.**

2 Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| 3 Number of voting members of the governing body (Part VI, line 1a) | | **3** | **6** |
| 4 Number of independent voting members of the governing body (Part VI, line 1b) | | **4** | **6** |
| 5 Total number of individuals employed in calendar year 2018 (Part V, line 2a) | | **5** | **14** |
| 6 Total number of volunteers (estimate if necessary) | | **6** | **50** |
| 7 a Total unrelated business revenue from Part VIII, column (C), line 12 | | **7a** | **0.** |
| b Net unrelated business taxable income from Form 990 T, line 38 | | **7b** | **0.** |

**Revenue**

| | Prior Year | Current Year |
|---|---|---|
| 8 Contributions and grants (Part VIII, line 1h) | 1,294,009. | 301,419. |
| 9 Program service revenue (Part VIII, line 2g) | 0. | 0. |
| 10 Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 108,356. | 51,056. |
| 11 Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | -49,892. | -20,962. |
| 12 Total revenue - add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 1,352,473. | 331,513. |

**Expenses**

| | | |
|---|---|---|
| 13 Grants and similar amounts paid (Part IX, column (A), lines 1-3) | 94,124. | 37,180. |
| 14 Benefits paid to or for members (Part IX, column (A), line 4) | 0. | 0. |
| 15 Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 930,489. | 517,515. |
| 16a Professional fundraising fees (Part IX, column (A), line 11e) | 0. | 0. |
| b Total fundraising expenses (Part IX, column (D), line 25) ▶ **91,696.** | | |
| 17 Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | 481,332. | 191,180. |
| 18 Total expenses Add lines 13-17 (must equal Part IX, column (A), line 25) | 1,505,945. | 745,875. |
| 19 Revenue less expenses Subtract line 18 from line 12 | -153,472. | -414,362. |

**Net Assets or Fund Balances**

| | Beginning of Current Year | End of Year |
|---|---|---|
| 20 Total assets (Part X, line 16) | 3,082,660. | 2,793,463. |
| 21 Total liabilities (Part X, line 26) | 31,379. | 40,184. |
| 22 Net assets or fund balances Subtract line 21 from line 20 | 3,051,281. | 2,753,279. |

### Part II    Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ▶ Signature of officer | 2/23/2020 Date |
|---|---|---|
| | ▶ **SHEETAL SHAH, CFO/SENIOR DIRECTOR** | |
| | Type or print name and title | |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | **GLENN MILLER, CPA** | | 2/18/2020 | | P00086726 |
| | Firm's name ▶ **WEGNER CPAS, LLP** | | | Firm's EIN ▶ **39-0974031** | |
| | Firm's address ▶ **419 N LEE ST** **ALEXANDRIA, VA 22314-2301** | | | Phone no. **703-519-0990** | |

May the IRS discuss this return with the preparer shown above? (see instructions) ☒ Yes ☐ No

832001 12-31-18    LHA **For Paperwork Reduction Act Notice, see the separate instructions.**    Form **990** (2018)

**SEE SCHEDULE O FOR ORGANIZATION MISSION STATEMENT CONTINUATION**

RECEIVED
MAR 16 2020
OGDEN, UT
IRS-OSC

SCANNED MAR 1 2021

Form 990 (2018)        HINDU AMERICAN FOUNDATION, INC.                68-0551525      Page **2**

| Part III | Statement of Program Service Accomplishments |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III ............................ ☒

**1**  Briefly describe the organization's mission
THE HINDU AMERICAN FOUNDATION (HAF) IS AN ADVOCACY ORGANIZATION FOR
THE HINDU AMERICAN COMMUNITY.  THE FOUNDATION EDUCATES THE PUBLIC
ABOUT HINDUISM, SPEAKS OUT ABOUT ISSUES AFFECTING HINDUS WORLDWIDE,
AND BUILDS BRIDGES WITH INSTITUTIONS AND INDIVIDUALS WHOSE WORK ALIGNS

**2**  Did the organization undertake any significant program services during the year which were not listed on the
prior Form 990 or 990-EZ? ................................................................   ☐ Yes  ☒ No
If "Yes," describe these new services on Schedule O

**3**  Did the organization cease conducting, or make significant changes in how it conducts, any program services?   ☐ Yes  ☒ No
If "Yes," describe these changes on Schedule O

**4**  Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses.
Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and
revenue, if any, for each program service reported

**4a** (Code _____ ) (Expenses $ _____197,973. __ including grants of $ _____0. __ ) (Revenue $ _____0. __ )
POLICY -  PROMOTE POLICIES THAT ENSURE THE WELL-BEING OF HINDUS
WORLDWIDE AND BENEFIT ALL PEOPLE AND THE PLANET. 1. ADVOCATE FOR
POLICIES THAT SECURE THE WELL-BEING OF HINDUS IN THE US. 2. ADVOCATE
FOR POLICIES THAT SECURE THE HUMAN RIGHTS OF HINDUS AROUND THE WORLD
AND PROMOTE PEACE, PROSPERITY AND PLURALISM IN INDIA, THE SPIRITUAL
HOMELAND OF HINDUS. 3. ADVOCATE FOR SOLUTIONS ALIGNED WITH OR INSPIRED
BY HINDU TEACHINGS FOR THE BENEFIT OF ALL PEOPLE AND THE PLANET.

**4b** (Code _____ ) (Expenses $ _____172,206. __ including grants of $ _____0. __ ) (Revenue $ _____0. __ )
EDUCATION -  IMPROVE THE UNDERSTANDING OF HINDUISM AND HINDUS 1. WORK
TOWARDS AN EQUITABLE AND ACCURATE PORTRAYAL OF HINDUISM IN K-12
TEXTBOOKS AND IN CLASSROOMS. 2. PROMOTE A BALANCED UNDERSTANDING OF
HINDUISM AS A LIVED TRADITION IN ACADEMIA. 3. IMPROVE NARRATIVES ABOUT
HINDUS AND HINDUISM IN MEDIA.

**4c** (Code _____ ) (Expenses $ _____138,402. __ including grants of $ _____37,180. __ ) (Revenue $ _____0. __ )
COMMUNITY - EMPOWER HINDU AMERICAN COMMUNITIES AND PARTNER
INSTITUTIONS. 1. ENHANCE THE WELL-BEING, SAFETY, AND SECURITY OF HINDU
COMMUNITIES AND INSTITUTIONS. 2. BUILD A CULTURE OF ADVOCACY. 3.
PROMOTE THE RECOGNITION OF HINDUISM AND HINDU CONTRIBUTIONS.

**4d** Other program services (Describe in Schedule O )
(Expenses $ _____ including grants of $ _____ ) (Revenue $ _____ )
**4e** Total program service expenses ▶ _____508,581. __

Form **990** (2018)

832002 12-31-18

3

ABCDEFID

Form 990 (2018)　　HINDU AMERICAN FOUNDATION, INC.　　68-0551525　　Page **3**

| Part IV | Checklist of Required Schedules | | | |
|---|---|---|---|---|
| | | | Yes | No |
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | 1 | X | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors?* | 2 | X | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | 3 | | X |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | 4 | X | |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | 5 | | X |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* | 6 | | X |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | 7 | | X |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* | 8 | | X |
| 9 | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability, serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | 9 | | X |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* | 10 | X | |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* | 11a | X | |
| b | Did the organization report an amount for investments - other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | 11b | | X |
| c | Did the organization report an amount for investments - program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | 11c | | X |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | 11d | | X |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | X | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | 11f | | X |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | 12a | X | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | 12b | | X |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | 13 | | X |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | | X |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | 14b | | X |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | 15 | | X |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | 16 | | X |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* | 17 | | X |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | 18 | X | |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | 19 | | X |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | 20a | | X |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | 21 | X | |

832003 12-31-18　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Form **990** (2018)

4

13530204 788028 14080.3AU01　　　2018.05040 HINDU AMERICAN FOUNDATION,　14080_32

Form 990 (2018)    HINDU AMERICAN FOUNDATION, INC.    68-0551525    Page **4**

| Part IV | Checklist of Required Schedules *(continued)* |

|  |  |  | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | X | |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | | X |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K If "No," go to line 25a* | 24a | | X |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* | 25a | | X |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* | 25b | | X |
| 26 | Did the organization report any amount on Part X, line 5, 6, or 22 for receivables from or payables to any current or former officers, directors, trustees, key employees, highest compensated employees, or disqualified persons? *If "Yes," complete Schedule L, Part II* | 26 | | X |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* | 27 | | X |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions) | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* | 28a | | X |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* | 28b | | X |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* | 28c | | X |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | X |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | X |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | X |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | X |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301 7701-2 and 301 7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | X |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | | X |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | X |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | X |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | X |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O | 38 | X | |

| Part V | Statements Regarding Other IRS Filings and Tax Compliance |

Check if Schedule O contains a response or note to any line in this Part V ☐

|  |  |  |  | Yes | No |
|---|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096 Enter -0- if not applicable | 1a | 18 | | |
| b | Enter the number of Forms W-2G included in line 1a Enter -0- if not applicable | 1b | 0 | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | 1c | | |

832004 12-31-18

Form **990** (2018)

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,    14080_32

Form 990 (2018)        HINDU AMERICAN FOUNDATION, INC.                    68-0551525      Page **5**

| Part V | Statements Regarding Other IRS Filings and Tax Compliance *(continued)* | | | | |
|---|---|---|---|---|---|
| | | | | Yes | No |
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | **2a** | 14 | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | | **2b** | X | |
| | Note. If the sum of lines 1a and 2a is greater than 250, you may be required to *e-file* (see instructions) | | | | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | | **3a** | | X |
| b | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* | | **3b** | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | **4a** | | X |
| b | If "Yes," enter the name of the foreign country ▶ | | | | |
| | See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | **5a** | | X |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | **5b** | | X |
| c | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? | | **5c** | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | **6a** | | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | **6b** | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | **7a** | | X |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | **7b** | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | **7c** | | X |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | **7d** | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | **7e** | | X |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | **7f** | | X |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | **7g** | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | **7h** | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | **8** | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | | **9a** | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | **9b** | | |
| 10 | **Section 501(c)(7) organizations.** Enter | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | **10a** | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | | |
| 11 | **Section 501(c)(12) organizations.** Enter | | | | |
| a | Gross income from members or shareholders | **11a** | | | |
| b | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) | **11b** | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | **12a** | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year | **12b** | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? | | **13a** | | |
| | Note. See the instructions for additional information the organization must report on Schedule O | | | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | **13b** | | | |
| c | Enter the amount of reserves on hand | **13c** | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | **14a** | | X |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | **14b** | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? | | **15** | | X |
| | If "Yes," see instructions and file Form 4720, Schedule N | | | | |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? | | **16** | | X |
| | If "Yes," complete Form 4720, Schedule O | | | | |

Form **990** (2018)

832005 12-31-18

6

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,   14080_32

Form 990 (2018)    HINDU AMERICAN FOUNDATION, INC.                    68-0551525    Page **6**

| **Part VI** | **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O  See instructions* |

Check if Schedule O contains a response or note to any line in this Part VI ........................................ ☒

## Section A. Governing Body and Management

|  |  |  | Yes | No |
|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year .... | **1a** | 6 | | |
|  | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent | **1b** | 6 | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | **2** | | X | |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, or trustees, or key employees to a management company or other person? | **3** | | | X |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | **4** | | | X |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? | **5** | | | X |
| **6** | Did the organization have members or stockholders? | **6** | | | X |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | **7a** | | | X |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | **7b** | | | X |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | |
| **a** | The governing body? | **8a** | | X | |
| **b** | Each committee with authority to act on behalf of the governing body? | **8b** | | X | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | **9** | | | X |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code )*

|  |  |  | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? | **10a** | | X | |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | X | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | **11a** | | X | |
| **b** | Describe in Schedule O the process, if any, used by the organization to review this Form 990 | | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | **12a** | | X | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | | X | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* | **12c** | | X | |
| **13** | Did the organization have a written whistleblower policy? | **13** | | X | |
| **14** | Did the organization have a written document retention and destruction policy? | **14** | | X | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | | |
| **a** | The organization's CEO, Executive Director, or top management official | **15a** | | X | |
| **b** | Other officers or key employees of the organization | **15b** | | X | |
|  | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions) | | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | **16a** | | | X |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | **16b** | | | |

## Section C. Disclosure

**17** List the states with which a copy of this Form 990 is required to be filed ▶ CA,IL,MD,MA,MI,NJ,NY,PA,VA,WA,DC,FL

**18** Section 6104 requires an organization to make its Forms 1023 (1024 or 1024-A if applicable), 990, and 990-T (Section 501(c)(3)s only) available for public inspection  Indicate how you made these available  Check all that apply
  ☒ Own website  ☐ Another's website  ☒ Upon request  ☐ Other *(explain in Schedule O)*

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year

**20** State the name, address, and telephone number of the person who possesses the organization's books and records ▶
  SHEETAL SHAH - 202-223-8222
  910 17TH ST. NW, NO. 316A, WASHINGTON, DC  20006-2601

832006  12-31-18                                                                 Form **990** (2018)

7

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Form 990 (2018)　　　　HINDU AMERICAN FOUNDATION, INC.　　　　68-0551525　　Page **7**

| **Part VII** | **Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VII ☐

Section A.　Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees

**1a** Complete this table for all persons required to be listed  Report compensation for the calendar year ending with or within the organization's tax year

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation
Enter -0- in columns (D), (E), and (F) if no compensation was paid

● List all of the organization's **current** key employees, if any  See instructions for definition of "key employee "

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received report-
able compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations

● List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of
reportable compensation from the organization and any related organizations

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization,
more than $10,000 of reportable compensation from the organization and any related organizations

List persons in the following order  individual trustees or directors, institutional trustees, officers, key employees, highest compensated employees,
and former such persons

☒ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee

| (A)<br>Name and Title | (B)<br>Average<br>hours per<br>week<br>(list any<br>hours for<br>related<br>organizations<br>below<br>line) | (C)<br>Position<br>(do not check more than one<br>box, unless person is both an<br>officer and a director/trustee) | | | | | | (D)<br>Reportable<br>compensation<br>from<br>the<br>organization<br>(W-2/1099-MISC) | (E)<br>Reportable<br>compensation<br>from related<br>organizations<br>(W-2/1099-MISC) | (F)<br>Estimated<br>amount of<br>other<br>compensation<br>from the<br>organization<br>and related<br>organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) MIHIR MEGHANI<br>PRESIDENT | 3.00 | X | | X | | | | 0. | 0. | 0. |
| (2) RISHI BHUTADA<br>TREASURER | 1.00 | X | | X | | | | 0. | 0. | 0. |
| (3) ASEEM SHUKLA<br>VICE PRESIDENT | 1.00 | X | | X | | | | 0. | 0. | 0. |
| (4) RAJIV PANDIT<br>SECRETARY | 1.00 | X | | X | | | | 0. | 0. | 0. |
| (5) ARJUN BHAGAT<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (6) PAWAN DESHPANDE<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (7) SHEETAL SHAH<br>CFO | 34.00 | | | X | | | | 0. | 0. | 0. |
| (8) SUHAG SHUKLA<br>EXECUTIVE DIRECTOR | 48.00 | | | X | | | | 0. | 0. | 0. |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

832007  12-31-18　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Form **990** (2018)

8

Form 990 (2018)            HINDU AMERICAN FOUNDATION, INC.            68-0551525    Page **8**

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |
|---|---|

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| **1b** Sub-total | | | | | | | ▶ | | 0. | 0. | 0. |
| **c** Total from continuation sheets to Part VII, Section A | | | | | | | ▶ | | 0. | 0. | 0. |
| **d** Total (add lines 1b and 1c) | | | | | | | ▶ | | 0. | 0. | 0. |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable
compensation from the organization ▶                                                                                      0

|  |  | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any **former** officer, director, or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* | 3 | | X |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* | 4 | | X |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* | 5 | | X |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from
the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address          NONE | (B) Description of services | (C) Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than
$100,000 of compensation from the organization ▶                    0

Form **990** (2018)

Form 990 (2018)      HINDU AMERICAN FOUNDATION, INC.                    68-0551525      Page **9**

| Part VIII | Statement of Revenue |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VIII ☐

| | | | (A)<br>Total revenue | (B)<br>Related or<br>exempt function<br>revenue | (C)<br>Unrelated<br>business<br>revenue | (D)<br>Revenue excluded<br>from tax under<br>sections<br>512 - 514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | 1 a Federated campaigns | 1a | | | | |
| | b Membership dues | 1b | | | | |
| | c Fundraising events | 1c | 161,601. | | | |
| | d Related organizations | 1d | | | | |
| | e Government grants (contributions) | 1e | | | | |
| | f All other contributions, gifts, grants, and<br>similar amounts not included above | 1f | 139,818. | | | |
| | g Noncash contributions included in lines 1a-1f $ | | | | | |
| | h **Total.** Add lines 1a-1f ▶ | | 301,419. | | | |
| **Program Service Revenue** | 2 a | Business Code | | | | |
| | b | | | | | |
| | c | | | | | |
| | d | | | | | |
| | e | | | | | |
| | f All other program service revenue | | | | | |
| | g **Total.** Add lines 2a-2f ▶ | | | | | |
| | 3 Investment income (including dividends, interest, and<br>other similar amounts) ▶ | | 21,584. | | | 21,584. |
| | 4 Income from investment of tax-exempt bond proceeds ▶ | | | | | |
| | 5 Royalties ▶ | | | | | |
| | | (i) Real | (ii) Personal | | | | |
| | 6 a Gross rents | | | | | | |
| | b Less rental expenses | | | | | | |
| | c Rental income or (loss) | | | | | | |
| | d Net rental income or (loss) ▶ | | | | | |
| | | (i) Securities | (ii) Other | | | | |
| | 7 a Gross amount from sales of<br>assets other than inventory | 1,071,805. | | | | | |
| | b Less cost or other basis<br>and sales expenses | 1,042,333. | | | | | |
| | c Gain or (loss) | 29,472. | | | | | |
| | d Net gain or (loss) ▶ | | 29,472. | | | 29,472. |
| **Other Revenue** | 8 a Gross income from fundraising events (not<br>including $ 161,601. of<br>contributions reported on line 1c) See<br>Part IV, line 18 a | 10,566. | | | | |
| | b Less direct expenses b | 31,528. | | | | |
| | c Net income or (loss) from fundraising events ▶ | | -20,962. | | | -20,962. |
| | 9 a Gross income from gaming activities See<br>Part IV, line 19 a | | | | | |
| | b Less direct expenses b | | | | | |
| | c Net income or (loss) from gaming activities ▶ | | | | | |
| | 10 a Gross sales of inventory, less returns<br>and allowances a | | | | | |
| | b Less cost of goods sold b | | | | | |
| | c Net income or (loss) from sales of inventory ▶ | | | | | |
| | Miscellaneous Revenue | Business Code | | | | |
| | 11 a | | | | | |
| | b | | | | | |
| | c | | | | | |
| | d All other revenue | | | | | |
| | e **Total.** Add lines 11a-11d ▶ | | | | | |
| | 12 **Total revenue** See instructions ▶ | | 331,513. | 0. | 0. | 30,094. |

832009 12-31-18                                                                                               Form **990** (2018)

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,   14080_32

Form 990 (2018)     HINDU AMERICAN FOUNDATION, INC.           68-0551525   Page **10**

**Part IX** | **Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns  All other organizations must complete column (A)

Check if Schedule O contains a response or note to any line in this Part IX ........................ ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A)<br>Total expenses | (B)<br>Program service<br>expenses | (C)<br>Management and<br>general expenses | (D)<br>Fundraising<br>expenses |
|---|---|---|---|---|
| 1   Grants and other assistance to domestic organizations and domestic governments  See Part IV, line 21 | 30,680. | 30,680. | | |
| 2   Grants and other assistance to domestic individuals  See Part IV, line 22 | 6,500. | 6,500. | | |
| 3   Grants and other assistance to foreign organizations, foreign governments, and foreign individuals  See Part IV, lines 15 and 16 | | | | |
| 4   Benefits paid to or for members | | | | |
| 5   Compensation of current officers, directors, trustees, and key employees | 77,792. | 56,124. | 11,078. | 10,590. |
| 6   Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| 7   Other salaries and wages | 384,028. | 277,062. | 54,687. | 52,279. |
| 8   Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | | | | |
| 9   Other employee benefits | 18,808. | 12,601. | 4,061. | 2,146. |
| 10  Payroll taxes | 36,887. | 26,312. | 5,417. | 5,158. |
| 11  Fees for services (non-employees) | | | | |
|  a    Management | | | | |
|  b    Legal | 10,857. | | 10,857. | |
|  c    Accounting | 17,760. | | 17,760. | |
|  d    Lobbying | | | | |
|  e    Professional fundraising services. See Part IV, line 17 | | | | |
|  f    Investment management fees | 5,793. | | 5,793. | |
|  g    Other  (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Sch O ) | 29,617. | 16,828. | 7,853. | 4,936. |
| 12  Advertising and promotion | 1,399. | | | 1,399. |
| 13  Office expenses | 20,247. | 9,505. | 2,474. | 8,268. |
| 14  Information technology | 582. | 524. | | 58. |
| 15  Royalties | | | | |
| 16  Occupancy | 30,303. | 20,401. | 7,297. | 2,605. |
| 17  Travel | 40,236. | 29,327. | 10,225. | 684. |
| 18  Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| 19  Conferences, conventions, and meetings | 13,168. | 9,915. | 2,353. | 900. |
| 20  Interest | | | | |
| 21  Payments to affiliates | | | | |
| 22  Depreciation, depletion, and amortization | 3,108. | 1,896. | 1,212. | |
| 23  Insurance | 1,592. | | 1,592. | |
| 24  Other expenses  Itemize expenses not covered above (List miscellaneous expenses in line 24e  If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
|  a    DUES AND SUBSCRIPTIONS | 16,518. | 10,906. | 2,939. | 2,673. |
|  b    _____ | | | | |
|  c    _____ | | | | |
|  d    _____ | | | | |
|  e    All other expenses | | | | |
| 25  Total functional expenses  Add lines 1 through 24e | 745,875. | 508,581. | 145,598. | 91,696. |
| 26  Joint costs  Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation.<br>Check here ▶ ☐  if following SOP 98-2 (ASC 958-720) | | | | |

832010  12-31-18

Form **990** (2018)

11

Form 990 (2018)          HINDU AMERICAN FOUNDATION, INC.                    68-0551525   Page **11**

| Part X | Balance Sheet |
|---|---|

Check if Schedule O contains a response or note to any line in this Part X ..................... ☐

| | | | **(A)** Beginning of year | | **(B)** End of year |
|---|---|---|---|---|---|
| Assets | 1 | Cash - non-interest-bearing | 342,322. | 1 | 136,076. |
| | 2 | Savings and temporary cash investments | 345,278. | 2 | 240,617. |
| | 3 | Pledges and grants receivable, net | 582,814. | 3 | 495,156. |
| | 4 | Accounts receivable, net | | 4 | |
| | 5 | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees  Complete Part II of Schedule L | | 5 | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instr)  Complete Part II of Sch L | | 6 | |
| | 7 | Notes and loans receivable, net | | 7 | |
| | 8 | Inventories for sale or use | | 8 | |
| | 9 | Prepaid expenses and deferred charges | 5,528. | 9 | 23,009. |
| | 10a | Land, buildings, and equipment  cost or other basis  Complete Part VI of Schedule D   10a   42,788. | | | |
| | b | Less accumulated depreciation   10b   25,843. | 19,127. | 10c | 16,945. |
| | 11 | Investments - publicly traded securities | 1,728,272. | 11 | 1,818,367. |
| | 12 | Investments - other securities  See Part IV, line 11 | | 12 | |
| | 13 | Investments - program-related  See Part IV, line 11 | | 13 | |
| | 14 | Intangible assets | | 14 | |
| | 15 | Other assets  See Part IV, line 11 | 59,319. | 15 | 63,293. |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 34) | 3,082,660. | 16 | 2,793,463. |
| Liabilities | 17 | Accounts payable and accrued expenses | 9,668. | 17 | 16,631. |
| | 18 | Grants payable | | 18 | |
| | 19 | Deferred revenue | | 19 | |
| | 20 | Tax-exempt bond liabilities | | 20 | |
| | 21 | Escrow or custodial account liability  Complete Part IV of Schedule D | | 21 | |
| | 22 | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons  Complete Part II of Schedule L | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | 23 | |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24)  Complete Part X of Schedule D | 21,711. | 25 | 23,553. |
| | 26 | **Total liabilities.** Add lines 17 through 25 | 31,379. | 26 | 40,184. |
| Net Assets or Fund Balances | | Organizations that follow SFAS 117 (ASC 958), check here ▶ [X] and complete lines 27 through 29, and lines 33 and 34. | | | |
| | 27 | Unrestricted net assets | 2,635,398. | 27 | 2,281,396. |
| | 28 | Temporarily restricted net assets | 415,883. | 28 | 471,883. |
| | 29 | Permanently restricted net assets | | 29 | |
| | | Organizations that do not follow SFAS 117 (ASC 958), check here ▶☐ and complete lines 30 through 34. | | | |
| | 30 | Capital stock or trust principal, or current funds | | 30 | |
| | 31 | Paid-in or capital surplus, or land, building, or equipment fund | | 31 | |
| | 32 | Retained earnings, endowment, accumulated income, or other funds | | 32 | |
| | 33 | Total net assets or fund balances | 3,051,281. | 33 | 2,753,279. |
| | 34 | Total liabilities and net assets/fund balances | 3,082,660. | 34 | 2,793,463. |

Form **990** (2018)

832011  12-31-18

Form 990 (2018)  **HINDU AMERICAN FOUNDATION, INC.**  68-0551525  Page **12**

| | Part XI | Reconciliation of Net Assets | | |
|---|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part XI  ☒

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 331,513. |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 745,875. |
| 3 | Revenue less expenses  Subtract line 2 from line 1 | 3 | -414,362. |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) | 4 | 3,051,281. |
| 5 | Net unrealized gains (losses) on investments | 5 | 112,386. |
| 6 | Donated services and use of facilities | 6 | |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 3,974. |
| 10 | Net assets or fund balances at end of year  Combine lines 3 through 9 (must equal Part X, line 33, column (B)) | 10 | 2,753,279. |

| | Part XII | Financial Statements and Reporting |
|---|---|---|

Check if Schedule O contains a response or note to any line in this Part XII  ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990  ☐ Cash  ☒ Accrual  ☐ Other _____ | | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | 2a | | X |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both | | | |
| | ☐ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | 2b | X | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both | | | |
| | ☒ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | 2c | X | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | 3a | | X |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits | 3b | | |

Form **990** (2018)

832012 12-31-18

13

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,   14080_32

| SCHEDULE A | **Public Charity Status and Public Support** | OMB No 1545-0047 |
|---|---|---|
| (Form 990 or 990-EZ) | Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust. | **2018** |
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 990 or Form 990-EZ. ▶ Go to www.irs.gov/Form990 for instructions and the latest information. | Open to Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION, INC. | 68-0551525 |

**Part I** | **Reason for Public Charity Status** (All organizations must complete this part ) See instructions

The organization is not a private foundation because it is  (For lines 1 through 12, check only one box )

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990 or 990-EZ) )

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state _____

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv). (Complete Part II )**

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☒ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi). (Complete Part II )**

8 ☐ A community trust described in **section 170(b)(1)(A)(vi). (Complete Part II )**

9 ☐ An agricultural research organization described in **section 170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land-grant college of agriculture (see instructions)  Enter the name, city, and state of the college or university _____

10 ☐ An organization that normally receives  (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions - subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975 See **section 509(a)(2). (Complete Part III )**

11 ☐ An organization organized and operated exclusively to test for public safety  See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2)** See **section 509(a)(3).** Check the box in lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization  **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s)  **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions)  **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated  The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions)  **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization

f   Enter the number of supported organizations _____

g   Provide the following information about the supported organization(s)

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1 10 above (see instructions)) | (iv) Is the organization listed in your governing document? Yes | No | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **Total** | | | | | | |

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.**  832021 10-11-18   Schedule A (Form 990 or 990-EZ) 2018

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule A (Form 990 or 990-EZ) 2018 HINDU AMERICAN FOUNDATION, INC.     68-0551525  Page 2

| **Part II** | **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)** |

(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III If the organization fails to qualify under the tests listed below, please complete Part III )

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2014 | (b) 2015 | (c) 2016 | (d) 2017 | (e) 2018 | (f) Total |
|---|---|---|---|---|---|---|
| 1   Gifts, grants, contributions, and membership fees received (Do not include any "unusual grants ") | 1318114. | 1502696. | 1288294. | 1294009. | 301,419. | 5704532. |
| 2   Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3   The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 4   **Total.** Add lines 1 through 3 | 1318114. | 1502696. | 1288294. | 1294009. | 301,419. | 5704532. |
| 5   The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | 627,994. |
| 6   **Public support.** Subtract line 5 from line 4 | | | | | | 5076538. |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2014 | (b) 2015 | (c) 2016 | (d) 2017 | (e) 2018 | (f) Total |
|---|---|---|---|---|---|---|
| 7   Amounts from line 4 | 1318114. | 1502696. | 1288294. | 1294009. | 301,419. | 5704532. |
| 8   Gross income from interest, dividends, payments received on securities loans, rents, royalties, and income from similar sources | 29,045. | 31,296. | 39,188. | 49,098. | 21,584. | 170,211. |
| 9   Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | |
| 10  Other income Do not include gain or loss from the sale of capital assets (Explain in Part VI ) | | 22,654. | | | | 22,654. |
| 11  **Total support.** Add lines 7 through 10 | | | | | | 5897397. |
| 12  Gross receipts from related activities, etc (see instructions) | | | | | 12 | |

13  **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** ........................................................... ▶ ☐

## Section C. Computation of Public Support Percentage

| 14  Public support percentage for 2018 (line 6, column (f) divided by line 11, column (f)) | 14 | 86.08 % |
|---|---|---|
| 15  Public support percentage from 2017 Schedule A, Part II, line 14 | 15 | 82.46 % |

16a **33 1/3% support test - 2018.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ............................................. ▶ ☒

b **33 1/3% support test - 2017.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization ............................................. ▶ ☐

17a **10% -facts-and-circumstances test - 2018.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and circumstances" test The organization qualifies as a publicly supported organization ............................................. ▶ ☐

b **10% -facts-and-circumstances test - 2017.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test The organization qualifies as a publicly supported organization ............................................. ▶ ☐

18  **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions ............................................. ▶ ☐

**Schedule A (Form 990 or 990-EZ) 2018**

832022 10-11-18

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule A (Form 990 or 990-EZ) 2018  HINDU AMERICAN FOUNDATION, INC.              68-0551525  Page **3**

| **Part III** | **Support Schedule for Organizations Described in Section 509(a)(2)** |

(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II  If the organization fails to qualify under the tests listed below, please complete Part II )

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2014 | (b) 2015 | (c) 2016 | (d) 2017 | (e) 2018 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received  (Do not include any "unusual grants ") | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year | | | | | | |
| **c** Add lines 7a and 7b | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6 ) | | | | | | |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2014 | (b) 2015 | (c) 2016 | (d) 2017 | (e) 2018 | (f) Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6 | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties, and income from similar sources | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975 | | | | | | |
| **c** Add lines 10a and 10b | | | | | | |
| **11** Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on | | | | | | |
| **12** Other income  Do not include gain or loss from the sale of capital assets (Explain in Part VI ) | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12 ) | | | | | | |

**14** **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** ..................................................................................................................................... ▶ ☐

## Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| **15** Public support percentage for **2018** (line 8, column (f), divided by line 13, column (f)) | **15** | % |
| **16** Public support percentage from 2017 Schedule A, Part III, line 15 | **16** | % |

## Section D. Computation of Investment Income Percentage

| | | |
|---|---|---|
| **17** Investment income percentage for **2018** (line 10c, column (f), divided by line 13, column (f)) | **17** | % |
| **18** Investment income percentage from **2017** Schedule A, Part III, line 17 | **18** | % |

**19a** **33 1/3% support tests - 2018.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ........................ ▶ ☐

  **b** **33 1/3% support tests - 2017.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3%, and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization ................... ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions .................... ▶ ☐

832023  10-11-18

Schedule A (Form 990 or 990-EZ) 2018

16

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,   14080_32

Schedule A (Form 990 or 990-EZ) 2018 HINDU AMERICAN FOUNDATION, INC.            68-0551525 Page 4

| Part IV | Supporting Organizations |

(Complete only if you checked a box in line 12 on Part I If you checked 12a of Part I, complete Sections A and B If you checked 12b of Part I, complete Sections A and C If you checked 12c of Part I, complete Sections A, D, and E If you checked 12d of Part I, complete Sections A and D, and complete Part V )

**Section A. All Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? If "No," describe in **Part VI** how the supported organizations are designated If designated by class or purpose, describe the designation If historic and continuing relationship, explain **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2) **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? If "Yes," answer (b) and (c) below **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? If "Yes," describe in **Part VI** when and how the organization made the determination **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? If "Yes," and if you checked 12a or 12b in Part I, answer (b) and (c) below **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? If "Yes," answer (b) and (c) below (if applicable) Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed, (ii) the reasons for each such action, (iii) the authority under the organization's organizing document authorizing such action, and (iv) how the action was accomplished (such as by amendment to the organizing document) **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? If "Yes," provide detail in **Part VI.** **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (as defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ) **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ) **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? If "Yes," provide detail in **Part VI.** **9a** | | |
| **b** | Did one or more disqualified persons (as defined in line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? If "Yes," provide detail in **Part VI.** **9b** | | |
| **c** | Did a disqualified person (as defined in line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? If "Yes," provide detail in **Part VI.** **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? If "Yes," answer 10b below **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? (Use Schedule C, Form 4720, to determine whether the organization had excess business holdings ) **10b** | | |

832024 10-11-18                                                                    Schedule A (Form 990 or 990-EZ) 2018

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,    14080_32

Schedule A (Form 990 or 990-EZ) 2018  HINDU AMERICAN FOUNDATION, INC.                    68-0551525  Page 5

| **Part IV** | **Supporting Organizations** *(continued)* |
|---|---|

|  |  | Yes | No |
|---|---|---|---|
| 11 | Has the organization accepted a gift or contribution from any of the following persons? | | |
| a | A person who directly or indirectly controls, either alone or together with persons described in (b) and (c) below, the governing body of a supported organization? | | |
| | | **11a** | |
| b | A family member of a person described in (a) above? | **11b** | |
| c | A 35% controlled entity of a person described in (a) or (b) above? *If "Yes" to a, b, or c, provide detail in* **Part VI.** | **11c** | |

### Section B. Type I Supporting Organizations

|  |  | Yes | No |
|---|---|---|---|
| 1 | Did the directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in* **Part VI** *how the supported organization(s) effectively operated, supervised, or controlled the organization's activities  If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year* | **1** | |
| 2 | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in* **Part VI** *how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised, or controlled the supporting organization* | **2** | |

### Section C. Type II Supporting Organizations

|  |  | Yes | No |
|---|---|---|---|
| 1 | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in* **Part VI** *how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s)* | **1** | |

### Section D. All Type III Supporting Organizations

|  |  | Yes | No |
|---|---|---|---|
| 1 | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | |
| 2 | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in* **Part VI** *how the organization maintained a close and continuous working relationship with the supported organization(s)* | **2** | |
| 3 | By reason of the relationship described in (2), did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in* **Part VI** *the role the organization's supported organizations played in this regard* | **3** | |

### Section E. Type III Functionally Integrated Supporting Organizations

| 1 | Check the box next to the method that the organization used to satisfy the Integral Part Test during the year*(see instructions)*. | | | |
|---|---|---|---|---|
| a | ☐ The organization satisfied the Activities Test  *Complete* **line 2** *below* | | | |
| b | ☐ The organization is the parent of each of its supported organizations  *Complete* **line 3** *below* | | | |
| c | ☐ The organization supported a governmental entity  *Describe in* **Part VI** *how you supported a government entity (see instructions)* | | | |

|  |  | Yes | No |
|---|---|---|---|
| 2 | **Activities Test  Answer (a) and (b) below.** | | |
| a | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in* **Part VI** *identify those supported organizations and explain* how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities | **2a** | |
| b | Did the activities described in (a) constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in* **Part VI** *the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement* | **2b** | |
| 3 | **Parent of Supported Organizations  Answer (a) and (b) below.** | | |
| a | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *Provide details in* **Part VI.** | **3a** | |
| b | Did the organization exercise a substantial degree of direction over the policies, programs, and activities of each of its supported organizations? *If "Yes," describe in* **Part VI** *the role played by the organization in this regard* | **3b** | |

832025 10-11-18                                                                                    Schedule A (Form 990 or 990-EZ) 2018

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule A (Form 990 or 990-EZ) 2018 HINDU AMERICAN FOUNDATION, INC.            68-0551525  Page 6

| Part V | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations |
|---|---|

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov 20, 1970 (explain in Part VI ) **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E

| Section A - Adjusted Net Income | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6, and 7 from line 4) | 8 | | |

| Section B - Minimum Asset Amount | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year) | | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | Total (add lines 1a, 1b, and 1c) | 1d | | |
| e | Discount claimed for blockage or other factors (explain in detail in **Part VI**) | | | |
| 2 | Acquisition indebtedness applicable to non-exempt-use assets | 2 | | |
| 3 | Subtract line 2 from line 1d | 3 | | |
| 4 | Cash deemed held for exempt use  Enter 1-1/2% of line 3 (for greater amount, see instructions) | 4 | | |
| 5 | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 | Multiply line 5 by  035 | 6 | | |
| 7 | Recoveries of prior-year distributions | 7 | | |
| 8 | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| Section C - Distributable Amount | | | Current Year |
|---|---|---|---|
| 1 | Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | |
| 2 | Enter 85% of line 1 | 2 | | |
| 3 | Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | |
| 4 | Enter greater of line 2 or line 3 | 4 | | |
| 5 | Income tax imposed in prior year | 5 | | |
| 6 | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | |

7 ☐ Check here if the current year is the organization's first as a non-functionally integrated Type III supporting organization (see instructions)

**Schedule A (Form 990 or 990-EZ) 2018**

832026 10-11-18

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule A (Form 990 or 990-EZ) 2018  HINDU AMERICAN FOUNDATION, INC.                    68-0551525  Page **7**

| **Part V** | **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** *(continued)* | | |
|---|---|---|---|

| Section D - Distributions | | | Current Year |
|---|---|---|---|
| 1 | Amounts paid to supported organizations to accomplish exempt purposes | | |
| 2 | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | | |
| 3 | Administrative expenses paid to accomplish exempt purposes of supported organizations | | |
| 4 | Amounts paid to acquire exempt-use assets | | |
| 5 | Qualified set-aside amounts (prior IRS approval required) | | |
| 6 | Other distributions (describe in **Part VI**) See instructions | | |
| 7 | **Total annual distributions.** Add lines 1 through 6 | | |
| 8 | Distributions to attentive supported organizations to which the organization is responsive (provide details in **Part VI**) See instructions | | |
| 9 | Distributable amount for 2018 from Section C, line 6 | | |
| 10 | Line 8 amount divided by line 9 amount | | |

| Section E - Distribution Allocations (see instructions) | (i) Excess Distributions | (ii) Underdistributions Pre-2018 | (iii) Distributable Amount for 2018 |
|---|---|---|---|
| 1 | Distributable amount for 2018 from Section C, line 6 | | | |
| 2 | Underdistributions, if any, for years prior to 2018 (reasonable cause required· explain in **Part VI**) See instructions | | | |
| 3 | Excess distributions carryover, if any, to 2018 | | | |
| a | From 2013 | | | |
| b | From 2014 | | | |
| c | From 2015 | | | |
| d | From 2016 | | | |
| e | From 2017 | | | |
| f | **Total** of lines 3a through e | | | |
| g | Applied to underdistributions of prior years | | | |
| h | Applied to 2018 distributable amount | | | |
| i | Carryover from 2013 not applied (see instructions) | | | |
| j | Remainder  Subtract lines 3g, 3h, and 3i from 3f | | | |
| 4 | Distributions for 2018 from Section D, line 7            $ | | | |
| a | Applied to underdistributions of prior years | | | |
| b | Applied to 2018 distributable amount | | | |
| c | Remainder  Subtract lines 4a and 4b from 4 | | | |
| 5 | Remaining underdistributions for years prior to 2018, if any  Subtract lines 3g and 4a from line 2  For result greater than zero, explain in **Part VI.** See instructions | | | |
| 6 | Remaining underdistributions for 2018  Subtract lines 3h and 4b from line 1  For result greater than zero, explain in **Part VI**  See instructions | | | |
| 7 | **Excess distributions carryover to 2019.** Add lines 3j and 4c | | | |
| 8 | Breakdown of line 7 | | | |
| a | Excess from 2014 | | | |
| b | Excess from 2015 | | | |
| c | Excess from 2016 | | | |
| d | Excess from 2017 | | | |
| e | Excess from 2018 | | | |

Schedule A (Form 990 or 990-EZ) 2018

832027  10-11-18

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule A (Form 990 or 990-EZ) 2018 HINDU AMERICAN FOUNDATION, INC.          68-0551525 Page 8

| Part VI | Supplemental Information. Provide the explanations required by Part II, line 10, Part II, line 17a or 17b, Part III, line 12, |
| | Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c, Part IV, Section B, lines 1 and 2, Part IV, Section C, line 1, Part IV, Section D, lines 2 and 3, Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b, Part V, line 1, Part V, Section B, line 1e, Part V, Section D, lines 5, 6, and 8, and Part V, Section E, lines 2, 5, and 6  Also complete this part for any additional information (See instructions ) |

SCHEDULE A, PART II:

THE 2018 COLUMN ON SCHEDULE A, PART II REPRESENTS THE SHORT TAX YEAR

BEGINNING JANUARY 1, 2019 AND ENDING JUNE 30, 2019.

832028  10-11-18                                                          Schedule A (Form 990 or 990-EZ) 2018

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

| SCHEDULE C | **Political Campaign and Lobbying Activities** | OMB No 1545-0047 |
|---|---|---|
| (Form 990 or 990-EZ) | For Organizations Exempt From Income Tax Under section 501(c) and section 527 | **2018** |
| | ▶ Complete if the organization is described below.  ▶ Attach to Form 990 or Form 990-EZ. | |
| Department of the Treasury Internal Revenue Service | ▶ Go to www.irs.gov/Form990 for instructions and the latest information. | Open to Public Inspection |

If the organization answered "Yes," on Form 990, Part IV, line 3, or Form 990-EZ, Part V, line 46 (Political Campaign Activities), then

- Section 501(c)(3) organizations  Complete Parts I-A and B  Do not complete Part I-C
- Section 501(c) (other than section 501(c)(3)) organizations  Complete Parts I-A and C below  Do not complete Part I-B
- Section 527 organizations  Complete Part I-A only

If the organization answered "Yes," on Form 990, Part IV, line 4, or Form 990-EZ, Part VI, line 47 (Lobbying Activities), then

- Section 501(c)(3) organizations that have filed Form 5768 (election under section 501(h))  Complete Part II-A  Do not complete Part II-B
- Section 501(c)(3) organizations that have NOT filed Form 5768 (election under section 501(h))  Complete Part II-B  Do not complete Part II-A

If the organization answered "Yes," on Form 990, Part IV, line 5 (Proxy Tax) (see separate instructions) or Form 990-EZ, Part V, line 35c (Proxy Tax) (see separate instructions), then

- Section 501(c)(4), (5), or (6) organizations  Complete Part III

| Name of organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION, INC. | 68-0551525 |

**Part I-A** | **Complete if the organization is exempt under section 501(c) or is a section 527 organization.**

| | | | |
|---|---|---|---|
| 1 | Provide a description of the organization's direct and indirect political campaign activities in Part IV | | |
| 2 | Political campaign activity expenditures | ▶ $ | _____ |
| 3 | Volunteer hours for political campaign activities | | _____ |

**Part I-B** | **Complete if the organization is exempt under section 501(c)(3).**

| | | | |
|---|---|---|---|
| 1 | Enter the amount of any excise tax incurred by the organization under section 4955 | ▶ $ | _____ |
| 2 | Enter the amount of any excise tax incurred by organization managers under section 4955 | ▶ $ | _____ |
| 3 | If the organization incurred a section 4955 tax, did it file Form 4720 for this year? | | ☐ Yes   ☐ No |
| 4a | Was a correction made? | | ☐ Yes   ☐ No |
| b | If "Yes," describe in Part IV | | |

**Part I-C** | **Complete if the organization is exempt under section 501(c), except section 501(c)(3).**

| | | | |
|---|---|---|---|
| 1 | Enter the amount directly expended by the filing organization for section 527 exempt function activities | ▶ $ | _____ |
| 2 | Enter the amount of the filing organization's funds contributed to other organizations for section 527 exempt function activities | ▶ $ | _____ |
| 3 | Total exempt function expenditures  Add lines 1 and 2  Enter here and on Form 1120-POL, line 17b | ▶ $ | _____ |
| 4 | Did the filing organization file **Form 1120-POL** for this year? | | ☐ Yes   ☐ No |
| 5 | Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments  For each organization listed, enter the amount paid from the filing organization's funds  Also enter the amount of political contributions received that were promptly and directly delivered to a separate political organization, such as a separate segregated fund or a political action committee (PAC)  If additional space is needed, provide information in Part IV | | |

| (a) Name | (b) Address | (c) EIN | (d) Amount paid from filing organization's funds  If none, enter -0- | (e) Amount of political contributions received and promptly and directly delivered to a separate political organization  If none, enter -0- |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | |
|---|---|---|
| For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ. | | Schedule C (Form 990 or 990-EZ) 2018 |

LHA

832041 11-08-18

27

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,   14080_32

Schedule C (Form 990 or 990-EZ) 2018 HINDU AMERICAN FOUNDATION, INC.    68-0551525  Page 2

| Part II-A | Complete if the organization is exempt under section 501(c)(3) and filed Form 5768 (election under section 501(h)). |

A Check ▶ ☐ if the filing organization belongs to an affiliated group (and list in Part IV each affiliated group member's name, address, EIN, expenses, and share of excess lobbying expenditures)

B Check ▶ ☐ if the filing organization checked box A and "limited control" provisions apply

| Limits on Lobbying Expenditures (The term "expenditures" means amounts paid or incurred.) | (a) Filing organization's totals | (b) Affiliated group totals |
|---|---|---|
| **1a** Total lobbying expenditures to influence public opinion (grass roots lobbying) | 1,000. | |
| **b** Total lobbying expenditures to influence a legislative body (direct lobbying) | 2,000. | |
| **c** Total lobbying expenditures (add lines 1a and 1b) | 3,000. | |
| **d** Other exempt purpose expenditures | 742,875. | |
| **e** Total exempt purpose expenditures (add lines 1c and 1d) | 745,875. | |
| **f** Lobbying nontaxable amount  Enter the amount from the following table in both columns | 136,881. | |

| If the amount on line 1e, column (a) or (b) is: | The lobbying nontaxable amount is: |
|---|---|
| Not over $500,000 | 20% of the amount on line 1e |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000 |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000 |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000 |
| Over $17,000,000 | $1,000,000 |

| | | |
|---|---|---|
| **g** Grassroots nontaxable amount (enter 25% of line 1f) | 34,220. | |
| **h** Subtract line 1g from line 1a  If zero or less, enter -0- | 0. | |
| **i** Subtract line 1f from line 1c  If zero or less, enter -0- | 0. | |
| **j** If there is an amount other than zero on either line 1h or line 1i, did the organization file Form 4720 reporting section 4911 tax for this year? | | ☐ Yes  ☐ No |

**4-Year Averaging Period Under Section 501(h)**
(Some organizations that made a section 501(h) election do not have to complete all of the five columns below.
See the separate instructions for lines 2a through 2f.)

Lobbying Expenditures During 4-Year Averaging Period

| Calendar year (or fiscal year beginning in) | (a) 2015 | (b) 2016 | (c) 2017 | (d) 2018 | (e) Total |
|---|---|---|---|---|---|
| **2a** Lobbying nontaxable amount | 205,673. | 203,939. | 225,297. | 136,881. | 771,790. |
| **b** Lobbying ceiling amount (150% of line 2a, column(e)) | | | | | 1,157,685. |
| **c** Total lobbying expenditures | 762. | 1,275. | 4,118. | 3,000. | 9,155. |
| **d** Grassroots nontaxable amount | 51,418. | 50,985. | 56,324. | 34,220. | 192,947. |
| **e** Grassroots ceiling amount (150% of line 2d, column (e)) | | | | | 289,421. |
| **f** Grassroots lobbying expenditures | 312. | 133. | 1,293. | 1,000. | 2,738. |

Schedule C (Form 990 or 990-EZ) 2018

832042 11-08-18

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule C (Form 990 or 990-EZ) 2018  HINDU AMERICAN FOUNDATION, INC.                    68-0551525  Page 3

**Part II-B**  Complete if the organization is exempt under section 501(c)(3) and has NOT filed Form 5768 (election under section 501(h)).

| For each "Yes," response on lines 1a through 1i below, provide in Part IV a detailed description of the lobbying activity | | (a) | | (b) |
|---|---|---|---|---|
| | | Yes | No | Amount |
| 1 | During the year, did the filing organization attempt to influence foreign, national, state, or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of | | | |
| a | Volunteers? | | | |
| b | Paid staff or management (include compensation in expenses reported on lines 1c through 1i)? | | | |
| c | Media advertisements? | | | |
| d | Mailings to members, legislators, or the public? | | | |
| e | Publications, or published or broadcast statements? | | | |
| f | Grants to other organizations for lobbying purposes? | | | |
| g | Direct contact with legislators, their staffs, government officials, or a legislative body? | | | |
| h | Rallies, demonstrations, seminars, conventions, speeches, lectures, or any similar means? | | | |
| i | Other activities? | | | |
| j | Total  Add lines 1c through 1i | | | |
| 2a | Did the activities in line 1 cause the organization to be not described in section 501(c)(3)? | | | |
| b | If "Yes," enter the amount of any tax incurred under section 4912 | | | |
| c | If "Yes," enter the amount of any tax incurred by organization managers under section 4912 | | | |
| d | If the filing organization incurred a section 4912 tax, did it file Form 4720 for this year? | | | |

**Part III-A**  Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6).

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Were substantially all (90% or more) dues received nondeductible by members? | 1 | | |
| 2 | Did the organization make only in-house lobbying expenditures of $2,000 or less? | 2 | | |
| 3 | Did the organization agree to carry over lobbying and political campaign activity expenditures from the prior year? | 3 | | |

**Part III-B**  Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6) and if either (a) BOTH Part III-A, lines 1 and 2, are answered "No," OR (b) Part III-A, line 3, is answered "Yes."

| 1 | Dues, assessments and similar amounts from members | 1 | |
|---|---|---|---|
| 2 | Section 162(e) nondeductible lobbying and political expenditures (do not include amounts of political expenses for which the section 527(f) tax was paid). | | |
| a | Current year | 2a | |
| b | Carryover from last year | 2b | |
| c | Total | 2c | |
| 3 | Aggregate amount reported in section 6033(e)(1)(A) notices of nondeductible section 162(e) dues | 3 | |
| 4 | If notices were sent and the amount on line 2c exceeds the amount on line 3, what portion of the excess does the organization agree to carryover to the reasonable estimate of nondeductible lobbying and political expenditure next year? | 4 | |
| 5 | Taxable amount of lobbying and political expenditures (see instructions) | 5 | |

**Part IV**  Supplemental Information

Provide the descriptions required for Part I-A, line 1, Part I-B, line 4, Part I-C, line 5, Part II-A (affiliated group list), Part II-A, lines 1 and 2 (see instructions), and Part II-B, line 1  Also, complete this part for any additional information

SCHEDULE C, PART II-A:

THE 2018 COLUMN ON SCHEDULE C, PART II-A REPRESENTS THE SHORT TAX YEAR

BEGINNING JANUARY 1, 2019 AND ENDING JUNE 30, 2019.

**SCHEDULE D**
(Form 990)

Department of the Treasury
Internal Revenue Service

## Supplemental Financial Statements

▶ Complete if the organization answered "Yes" on Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2018**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION, INC. | 68-0551525 |

**Part I** | **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.** Complete if the organization answered "Yes" on Form 990, Part IV, line 6

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

**Part II** | **Conservation Easements.** Complete if the organization answered "Yes" on Form 990, Part IV, line 7

1 Purpose(s) of conservation easements held by the organization (check all that apply)
☐ Preservation of land for public use (e g , recreation or education)  ☐ Preservation of a historically important land area
☐ Protection of natural habitat  ☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year

| | | Held at the End of the Tax Year |
|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶

4 Number of states where property subject to conservation easement is located ▶ _____

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
▶ _____

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
▶ $ _____

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements

**Part III** | **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 8

1a If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items

b If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $ _____

(ii) Assets included in Form 990, Part X ▶ $ _____

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items

a Revenue included on Form 990, Part VIII, line 1 ▶ $ _____

b Assets included in Form 990, Part X ▶ $ _____

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 990.** Schedule D (Form 990) 2018

832051 10-29-18

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule D (Form 990) 2018   **HINDU AMERICAN FOUNDATION, INC.**     68-0551525  Page **2**

| Part III | Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets *(continued)* |
|---|---|

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply)

**a** ☐ Public exhibition      **d** ☐ Loan or exchange programs

**b** ☐ Scholarly research      **e** ☐ Other _____

**c** ☐ Preservation for future generations

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII

**5** During the year, did the organization solicit or receive donations of art, historical treasures, or other similar assets
to be sold to raise funds rather than to be maintained as part of the organization's collection?      ☐ Yes    ☐ No

| Part IV | Escrow and Custodial Arrangements. Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21 |
|---|---|

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included
on Form 990, Part X?      ☐ Yes    ☐ No

**b** If "Yes," explain the arrangement in Part XIII and complete the following table

| | | Amount |
|---|---|---|
| **c** Beginning balance | **1c** | |
| **d** Additions during the year | **1d** | |
| **e** Distributions during the year | **1e** | |
| **f** Ending balance | **1f** | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability?    ☐ Yes    ☐ No

**b** If "Yes," explain the arrangement in Part XIII Check here if the explanation has been provided on Part XIII    ☐

| Part V | Endowment Funds. Complete if the organization answered "Yes" on Form 990, Part IV, line 10 |
|---|---|

| | | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|---|
| **1a** | Beginning of year balance | 1,200,000. | | | | |
| **b** | Contributions | | 1,200,000. | | | |
| **c** | Net investment earnings, gains, and losses | | | | | |
| **d** | Grants or scholarships | | | | | |
| **e** | Other expenditures for facilities and programs | | | | | |
| **f** | Administrative expenses | | | | | |
| **g** | End of year balance | 1,200,000. | 1,200,000. | | | |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as

**a** Board designated or quasi-endowment ▶   100.00   %

**b** Permanent endowment ▶ _____ %

**c** Temporarily restricted endowment ▶ _____ %

The percentages on lines 2a, 2b, and 2c should equal 100%

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization

|  |  | Yes | No |
|---|---|---|---|
| by **(i)** unrelated organizations | **3a(i)** | | X |
| **(ii)** related organizations | **3a(ii)** | | X |
| **b** If "Yes" on line 3a(ii), are the related organizations listed as required on Schedule R? | **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds

| Part VI | Land, Buildings, and Equipment. |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11a  See Form 990, Part X, line 10

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| **1a** Land | | | | |
| **b** Buildings | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment | | 30,954. | 16,309. | 14,645. |
| **e** Other | | 11,834. | 9,534. | 2,300. |
| **Total.** Add lines 1a through 1e *(Column (d) must equal Form 990, Part X, column (B), line 10c )* ▶ | | | | 16,945. |

Schedule D (Form 990) 2018

832052 10-29-18

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule D (Form 990) 2018      HINDU AMERICAN FOUNDATION, INC.              68-0551525  Page **3**

## Part VII | Investments - Other Securities.

Complete if the organization answered "Yes" on Form 990, Part IV, line 11b  See Form 990, Part X, line 12

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation  Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives | | |
| **(2)** Closely-held equity interests | | |
| **(3)** Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total** (Col. (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | |

## Part VIII | Investments - Program Related.

Complete if the organization answered "Yes" on Form 990, Part IV, line 11c  See Form 990, Part X, line 13

| (a) Description of investment | (b) Book value | (c) Method of valuation  Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total** (Col (b) must equal Form 990, Part X, col (B) line 13.) ▶ | | |

## Part IX | Other Assets.

Complete if the organization answered "Yes" on Form 990, Part IV, line 11d  See Form 990, Part X, line 15

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** (Column (b) must equal Form 990, Part X, col (B) line 15.) ▶ | |

## Part X | Other Liabilities.

Complete if the organization answered "Yes" on Form 990, Part IV, line 11e or 11f  See Form 990, Part X, line 25

| **1.** (a) Description of liability | (b) Book value |
|---|---|
| (1) Federal income taxes | |
| (2) DEFERRED RENT LIABILITY | 23,553. |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** (Column (b) must equal Form 990, Part X, col (B) line 25.) ▶ | 23,553. |

2.  Liability for uncertain tax positions  In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740)  Check here if the text of the footnote has been provided in Part XIII ☐

Schedule D (Form 990) 2018

832053  10-29-18

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule D (Form 990) 2018       HINDU AMERICAN FOUNDATION, INC.             68-0551525   Page **4**

| **Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.** | | | | |
|---|---|---|---|---|---|
| | Complete if the organization answered "Yes" on Form 990, Part IV, line 12a | | | | |
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | 473,608. |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12 | | | | |
| a | Net unrealized gains (losses) on investments | 2a | 112,386. | | |
| b | Donated services and use of facilities | 2b | | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII) | 2d | 3,974. | | |
| e | Add lines 2a through 2d | | | 2e | 116,360. |
| 3 | Subtract line 2e from line 1 | | | 3 | 357,248. |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line 1 | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | 5,793. | | |
| b | Other (Describe in Part XIII) | 4b | -31,528. | | |
| c | Add lines 4a and 4b | | | 4c | -25,735. |
| 5 | Total revenue Add lines 3 and 4c. *(This must equal Form 990, Part I, line 12)* | | | 5 | 331,513. |

| **Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.** | | | | |
|---|---|---|---|---|---|
| | Complete if the organization answered "Yes" on Form 990, Part IV, line 12a | | | | |
| 1 | Total expenses and losses per audited financial statements | | | 1 | 771,610. |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25 | | | | |
| a | Donated services and use of facilities | 2a | | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII) | 2d | 31,528. | | |
| e | Add lines 2a through 2d | | | 2e | 31,528. |
| 3 | Subtract line 2e from line 1 | | | 3 | 740,082. |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line 1 | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | 5,793. | | |
| b | Other (Describe in Part XIII) | 4b | | | |
| c | Add lines 4a and 4b | | | 4c | 5,793. |
| 5 | Total expenses Add lines 3 and 4c. *(This must equal Form 990, Part I, line 18)* | | | 5 | 745,875. |

| **Part XIII** | **Supplemental Information.** |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9, Part III, lines 1a and 4, Part IV, lines 1b and 2b, Part V, line 4, Part X, line 2, Part XI, lines 2d and 4b, and Part XII, lines 2d and 4b Also complete this part to provide any additional information

PART V, LINE 4:

THE PURPOSE OF THE FUND IS TO GENERATE INCOME TO ENSURE THE LONG TERM

FINANCIAL HEALTH AND

VIABILITY OF THE HAF. NO INCOME OR PRINCIPAL FROM THE FUND SHALL BE USED

FOR ANY PURPOSE THAT

WOULD BE INCONSISTENT WITH THE HAF'S STANDING AS A CHARITABLE

NOT-FOR-PROFIT INSTITUTION UNDER THE

LAWS OF THE STATE OF FLORIDA AND SPECIFICALLY UNDER 501(C)(3) OF THE

INTERNAL REVENUE CODE. NO

FUNDS SHALL BE USED DIRECTLY OR INDIRECTLY FOR THE BENEFIT OF ANY

INDIVIDUAL PERSON, INCLUDING BUT NOT LIMITED TO ANY EMPLOYEE OR BOARD

MEMBER OF HAF.

832054 10-29-18                                                                Schedule D (Form 990) 2018

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,   14080_32

Schedule D (Form 990) 2018     HINDU AMERICAN FOUNDATION, INC.     68-0551525  Page 5
| Part XIII | Supplemental Information (continued)

PART XI, LINE 2D - OTHER ADJUSTMENTS:

CHANGE IN BENEFICIAL INTEREST IN ASSETS HELD BY HINDU

HERITAGE ENDOWMENT                                                          3,974.


PART XI, LINE 4B - OTHER ADJUSTMENTS:

DIRECT EXPENSES REPORTED ON FORM 990, PART VIII, LINE 8B        -31,528.


PART XII, LINE 2D - OTHER ADJUSTMENTS:

DIRECT EXPENSES REPORTED ON FORM 990, PART VIII, LINE 8B         31,528.


SCHEDULE D, PART V:

THE CURRENT YEAR COLUMN ON SCHEDULE D, PART V REPRESENTS THE SHORT TAX

YEAR BEGINNING JANUARY 1, 2019 AND ENDING JUNE 30, 2019.

Schedule D (Form 990) 2018

832055  10-29-18

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,   14080_32

**SCHEDULE G**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

**Supplemental Information Regarding Fundraising or Gaming Activities**

Complete if the organization answered "Yes" on Form 990, Part IV, line 17, 18, or 19, or if the organization entered more than $15,000 on Form 990-EZ, line 6a.

▶ Attach to Form 990 or Form 990-EZ.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No 1545-0047

**2018**

Open to Public Inspection

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION, INC. | 68-0551525 |

**Part I**  **Fundraising Activities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 17  Form 990-EZ filers are not required to complete this part

1  Indicate whether the organization raised funds through any of the following activities  Check all that apply

a ☐ Mail solicitations
b ☐ Internet and email solicitations
c ☐ Phone solicitations
d ☐ In-person solicitations
e ☐ Solicitation of non-government grants
f ☐ Solicitation of government grants
g ☐ Special fundraising events

2 a  Did the organization have a written or oral agreement with any individual (including officers, directors, trustees, or key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services?   ☐ Yes  ☐ No

b  If "Yes," list the 10 highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be compensated at least $5,000 by the organization

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? | | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| | | Yes | No | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Total | | | ▶ | | | |

3  List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration or licensing

_____
_____
_____
_____
_____
_____
_____
_____
_____

LHA  For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.    Schedule G (Form 990 or 990-EZ) 2018

832081  10-03-18

Schedule G (Form 990 or 990-EZ) 2018 HINDU AMERICAN FOUNDATION, INC.     68-0551525 Page **2**

| **Part II** | **Fundraising Events.** Complete if the organization answered "Yes" on Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b  List events with gross receipts greater than $5,000 |

|  |  | (a) Event #1 HOUSTON GALA (event type) | (b) Event #2 TRIVALLEY (event type) | (c) Other events NONE (total number) | (d) Total events (add col (a) through col (c)) |
|---|---|---|---|---|---|
| Revenue | 1 Gross receipts | 145,583. | 26,584. |  | 172,167. |
|  | 2 Less  Contributions | 137,718. | 23,883. |  | 161,601. |
|  | 3 Gross income (line 1 minus line 2) | 7,865. | 2,701. |  | 10,566. |
| Direct Expenses | 4 Cash prizes |  |  |  |  |
|  | 5 Noncash prizes | 1,835. | 644. |  | 2,479. |
|  | 6 Rent/facility costs | 1,620. | 3,063. |  | 4,683. |
|  | 7 Food and beverages | 7,044. | 3,258. |  | 10,302. |
|  | 8 Entertainment | 3,256. | 2,000. |  | 5,256. |
|  | 9 Other direct expenses | 4,514. | 4,294. |  | 8,808. |
|  | 10 Direct expense summary  Add lines 4 through 9 in column (d) | | | ▶ | 31,528. |
|  | 11 Net income summary  Subtract line 10 from line 3, column (d) | | | ▶ | -20,962. |

| **Part III** | **Gaming.** Complete if the organization answered "Yes" on Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a |

|  |  | (a) Bingo | (b) Pull tabs/instant bingo/progressive bingo | (c) Other gaming | (d) Total gaming (add col (a) through col (c)) |
|---|---|---|---|---|---|
| Revenue | 1 Gross revenue |  |  |  |  |
| Direct Expenses | 2 Cash prizes |  |  |  |  |
|  | 3 Noncash prizes |  |  |  |  |
|  | 4 Rent/facility costs |  |  |  |  |
|  | 5 Other direct expenses |  |  |  |  |
|  | 6 Volunteer labor | ☐ Yes_____ % ☐ No | ☐ Yes_____ % ☐ No | ☐ Yes_____ % ☐ No |  |
|  | 7 Direct expense summary  Add lines 2 through 5 in column (d) | | | ▶ |  |
|  | 8 Net gaming income summary  Subtract line 7 from line 1, column (d) | | | ▶ |  |

9 Enter the state(s) in which the organization conducts gaming activities _____

a Is the organization licensed to conduct gaming activities in each of these states? ☐ Yes ☐ No

b If "No," explain _____

10a Were any of the organization's gaming licenses revoked, suspended, or terminated during the tax year? ☐ Yes ☐ No

b If "Yes," explain _____

832082 10-03-18

Schedule G (Form 990 or 990-EZ) 2018

13530204 788028 14080.3AU01    2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule G (Form 990 or 990-EZ) 2018 HINDU AMERICAN FOUNDATION, INC.                68-0551525 Page **3**

| | | |
|---|---|---|
| **11** | Does the organization conduct gaming activities with nonmembers? | ☐ Yes ☐ No |
| **12** | Is the organization a grantor, beneficiary or trustee of a trust, or a member of a partnership or other entity formed to administer charitable gaming? | ☐ Yes ☐ No |
| **13** | Indicate the percentage of gaming activity conducted in | |

a The organization's facility .......................................................................................................... **13a** _____ %

b An outside facility ..................................................................................................................... **13b** _____ %

**14** Enter the name and address of the person who prepares the organization's gaming/special events books and records

Name ▶ _____

Address ▶ _____

**15a** Does the organization have a contract with a third party from whom the organization receives gaming revenue? .................... ☐ Yes ☐ No

b If "Yes," enter the amount of gaming revenue received by the organization ▶ $ _____ and the amount
of gaming revenue retained by the third party ▶ $ _____

c If "Yes," enter name and address of the third party

Name ▶ _____

Address ▶ _____

**16** Gaming manager information

Name ▶ _____

Gaming manager compensation ▶ $ _____

Description of services provided ▶ _____

_____

_____

☐ Director/officer          ☐ Employee          ☐ Independent contractor

**17** Mandatory distributions

a Is the organization required under state law to make charitable distributions from the gaming proceeds to
retain the state gaming license? ...................................................................................................... ☐ Yes ☐ No

b Enter the amount of distributions required under state law to be distributed to other exempt organizations or spent in the
organization's own exempt activities during the tax year ▶ $

| **Part IV** | **Supplemental Information.** Provide the explanations required by Part I, line 2b, columns (iii) and (v), and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable  Also provide any additional information  See instructions |
|---|---|

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

832083 10-03-18                                                         Schedule G (Form 990 or 990-EZ) 2018

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Schedule G (Form 990 or 990-EZ)    HINDU AMERICAN FOUNDATION, INC.                68-0551525  Page 4

| Part IV | Supplemental Information *(continued)* |
|---------|-----------------------------------------|

Schedule G (Form 990 or 990-EZ)

832084  04-01-18

| SCHEDULE I<br>(Form 990)<br><br>Department of the Treasury<br>Internal Revenue Service | **Grants and Other Assistance to Organizations,<br>Governments, and Individuals in the United States**<br>Complete if the organization answered "Yes" on Form 990, Part IV, line 21 or 22.<br>▶ Attach to Form 990.<br>▶ Go to www.irs.gov/Form990 for the latest information. | OMB No 1545-0047<br>**2018**<br>Open to Public Inspection |
|---|---|---|

| Name of the organization<br>HINDU AMERICAN FOUNDATION, INC. | Employer identification number<br>68-0551525 |
|---|---|

**Part I** General Information on Grants and Assistance

1  Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance?  ☐ Yes  ☒ No

2  Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States

**Part II** Grants and Other Assistance to Domestic Organizations and Domestic Governments. Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000  Part II can be duplicated if additional space is needed

| 1 (a) Name and address of organization or government | (b) EIN | (c) IRC section (if applicable) | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of noncash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| WASHINGTON INTERN STUDENT HOUSING<br>237 MASSACHUSETTS AVE. NE<br>WASHINGTON, DC 20002 | 68-0641322 | | 30,100. | 0. | | | INTERN HOUSING |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

2  Enter total number of section 501(c)(3) and government organizations listed in the line 1 table  ▶  0.

3  Enter total number of other organizations listed in the line 1 table  ▶  1.

LHA  For Paperwork Reduction Act Notice, see the Instructions for Form 990.  Schedule I (Form 990) (2018)

832101 11-02-18

Schedule I (Form 990) (2018)     HINDU AMERICAN FOUNDATION, INC.                                    68-0551525            Page 2

| Part III | Grants and Other Assistance to Domestic Individuals. Complete if the organization answered "Yes" on Form 990, Part IV, line 22 |

Part III can be duplicated if additional space is needed

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| CONGRESSIONAL INTERNSHIP - HOUSING AND STIPEND | 3 | 1,500. | 0. | | |
| ACADEMIC GRANT | 1 | 5,000. | 0. | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Part IV | Supplemental Information. Provide the information required in Part I, line 2, Part III, column (b), and any other additional information |

PART I, LINE 2:

HAF CONTINUES TO MONITOR AND OVERSEE GRANTEES (BOTH INDIVIDUALS AND

ORGANIZATIONS) AND REQUIRES THEM TO PROVIDE REPORTS ON THE PROGRESS THEY

HAVE MADE TOWARDS ACHIEVING GRANT GOALS AND OBJECTIVES AND A DESCRIPTION OF

ACTIVITIES AND EVALUATION CRITERIA. IN ADDITION, GRANTEES MUST PROVIDE AN

ONGOING ACCOUNTING OF HOW THE GRANT FUNDS ARE UTILIZED TO ACCOMPLISH

PROJECT OBJECTIVES, INCLUDING A DETAILED EXPLANATION OF ALL EXPENSES AND

PURCHASES MADE IN CONNECTION WITH THE GRANT FUNDS. HAF ALSO REQUIRES

ORGANIZATIONAL GRANTEES TO OPEN THEIR ACCOUNTING BOOKS TO INSPECTION AND TO

Schedule I (Form 990)     HINDU AMERICAN FOUNDATION, INC.     68-0551525  Page **2**

| Part IV | Supplemental Information |
|---|---|

PROVIDE SITE ACCESS, IF APPLICABLE, UPON REQUEST, AND RETAINS THE POWER TO

WITHHOLD FUNDS IF REPORTS ARE NOT PROVIDED OR FUNDS ARE NOT BEING USED FOR

THEIR INTENDED PURPOSE.

832291
04-01-18

Schedule I (Form 990)

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,   14080_32

**SCHEDULE O**
**(Form 990 or 990-EZ)**

Department of the Treasury
Internal Revenue Service

**Supplemental Information to Form 990 or 990-EZ**
Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.
▶ Attach to Form 990 or 990-EZ.
▶ Go to www.irs.gov/Form990 for the latest information.

OMB No. 1545-0047

**2018**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION, INC. | 68-0551525 |

FORM 990, PART I, LINE 1, DESCRIPTION OF ORGANIZATION MISSION:

THE FOUNDATION EDUCATES THE PUBLIC ABOUT HINDUISM, SPEAKS OUT ABOUT

ISSUES AFFECTING HINDUS WORLDWIDE, AND BUILDS BRIDGES WITH INSTITUTIONS

AND INDIVIDUALS WHOSE WORK ALIGNS WITH HAF'S OBJECTIVES. HAF'S THREE

AREAS OF FOCUS ARE EDUCATION, POLICY, AND COMMUNITY. THROUGH ITS

ADVOCACY EFFORTS, HAF PROMOTES DIGNITY, MUTUAL RESPECT, AND PLURALISM

IN ORDER TO ENSURE THE WELL-BEING OF HINDUS AND FOR ALL PEOPLE AND THE

PLANET TO THRIVE.

FORM 990, PART III, LINE 1, DESCRIPTION OF ORGANIZATION MISSION:

WITH HAF'S OBJECTIVES. HAF'S THREE AREAS OF FOCUS ARE EDUCATION,

POLICY, AND COMMUNITY. THROUGH ITS ADVOCACY EFFORTS, HAF PROMOTES

DIGNITY, MUTUAL RESPECT, AND PLURALISM IN ORDER TO ENSURE THE

WELL-BEING OF HINDUS AND FOR ALL PEOPLE AND THE PLANET TO THRIVE.

FORM 990, PART VI, SECTION A, LINE 2:

ASEEM AND SUHAG SHUKLA HAVE A FAMILY RELATIONSHIP.

FORM 990, PART VI, SECTION B, LINE 11B:

HAF'S BOARD OF DIRECTORS REVIEWS THE FORM 990 AND VOTES ON SUBMISSION OF

THE FORM TO THE INTERNAL REVENUE SERVICE. FORMS 990 ARE SIGNED BY EITHER

THE EXECUTIVE DIRECTOR OR THE TREASRUER OF THE ORGANIZATION.

FORM 990, PART VI, SECTION B, LINE 12C:

THE CONFLICT OF INTEREST POLICY IS REVIEWED AT LEAST ANNUALLY BY THE

DIRECTORS.  ALL DIRECTORS AND OFFICERS ARE REQUIRED TO COMPLETE AND SIGN A

Schedule O (Form 990 or 990-EZ) (2018)                                                                         Page 2

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION, INC. | 68-0551525 |

CONFLICT OF INTEREST STATEMENT ANNUALLY.  A DIRECTOR OR OFFICER WITH A

CONFLICT OF INTEREST IS PROHIBITED FROM PARTICIPATING IN DELIBERATIONS AND

DECISIONS REGARDING THE TRANSACTION.


FORM 990, PART VI, SECTION B, LINE 15:

COMPENSATION IS DETERMINED BY THE BOARD BASED UPON INDUSTRY STANDARDS AND

COMPARABILITY DATA.


FORM 990, PART VI, SECTION C, LINE 19:

THE ORGANIZATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND

FINANCIAL STATEMENTS ARE AVAILABLE UPON REQUEST. THE FORM 990 IS AVAILABLE

ON THE ORGANIZATION'S WEBSITE.


FORM 990, PART XI, LINE 9, CHANGES IN NET ASSETS:

CHANGE IN BENEFICIAL INTEREST IN ASSETS HELD BY HINDU

HERITAGE ENDOWMENT                                                                      3,974.


832212  10-10-18                                              Schedule O (Form 990 or 990-EZ) (2018)

13530204 788028 14080.3AU01     2018.05040 HINDU AMERICAN FOUNDATION,  14080_32

Exhibit D

Form **990**

# Return of Organization Exempt From Income Tax

OMB No. 1545-0047

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

**2019**

► Do not enter social security numbers on this form as it may be made public.

Department of the Treasury
Internal Revenue Service

► **Go to** *www.irs.gov/Form990* for instructions and the latest information.

**Open to Public Inspection**

**A** For the 2019 calendar year, or tax year beginning 07-01-2019 , and ending 06-30-2020

| B Check if applicable: | C Name of organization HINDU AMERICAN FOUNDATION INC | D Employer identification number |
|---|---|---|
| ☐ Address change | | 68-0551525 |
| ☐ Name change | Doing business as | |
| ☐ Initial return | | |
| ☐ Final return/terminated | Number and street (or P.O. box if mail is not delivered to street address) Room/suite 910 17TH ST NW NO 316A | E Telephone number (202) 223-8222 |
| ☐ Amended return | | |
| ☐ Application pending | City or town, state or province, country, and ZIP or foreign postal code WASHINGTON, DC 200062601 | G Gross receipts $ 2,655,456 |

| F Name and address of principal officer: SHEETAL SHAH 910 17TH ST NW NO 316A WASHINGTON, DC 200062601 | H(a) Is this a group return for subordinates? ☐ Yes ☒ No |
|---|---|
| | H(b) Are all subordinates included? ☐ Yes ☐ No If "No," attach a list. (see instructions) |

**I** Tax-exempt status: ☒ 501(c)(3) ☐ 501(c) ( ) (insert no.) ☐ 4947(a)(1) or ☐ 527

**J** Website: ► WWW.HINDUAMERICAN.ORG

H(c) Group exemption number ►

**K** Form of organization: ☒ Corporation ☐ Trust ☐ Association ☐ Other ► | **L** Year of formation: 2003 | **M** State of legal domicile: FL

## Part I | Summary

| | |
|---|---|
| **1** Briefly describe the organization's mission or most significant activities: PROMOTING DIGNITY, MUTUAL RESPECT, AND PLURALISM IN ORDER TO ENSURE THE WELL-BEING OF HINDUS AND FOR ALL PEOPLE AND THE PLANET TO THRIVE. | |

Activities & Governance

| | | | |
|---|---|---|---|
| **2** Check this box ► ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | | | |
| **3** Number of voting members of the governing body (Part VI, line 1a) . . . . . . . | **3** | 5 | |
| **4** Number of independent voting members of the governing body (Part VI, line 1b) . . . . | **4** | 5 | |
| **5** Total number of individuals employed in calendar year 2019 (Part V, line 2a) . . . . | **5** | 13 | |
| **6** Total number of volunteers (estimate if necessary) . . . . . . . . . . . | **6** | 50 | |
| **7a** Total unrelated business revenue from Part VIII, column (C), line 12 . . . . . . | **7a** | 0 | |
| **b** Net unrelated business taxable income from Form 990-T, line 39 . . . . . . . | **7b** | 0 | |

Revenue

| | Prior Year | Current Year |
|---|---|---|
| **8** Contributions and grants (Part VIII, line 1h) . . . . . . . | 301,419 | 1,810,819 |
| **9** Program service revenue (Part VIII, line 2g) . . . . . . . | 0 | 0 |
| **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d) . . . | 51,056 | 262,842 |
| **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | -20,962 | 6,563 |
| **12** Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 331,513 | 2,080,224 |

Expenses

| | | |
|---|---|---|
| **13** Grants and similar amounts paid (Part IX, column (A), lines 1–3) . . . | 37,180 | 49,901 |
| **14** Benefits paid to or for members (Part IX, column (A), line 4) . . . . | 0 | 0 |
| **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 517,515 | 999,225 |
| **16a** Professional fundraising fees (Part IX, column (A), line 11e) . . . . | 0 | 0 |
| **b** Total fundraising expenses (Part IX, column (D), line 25) ►211,890 | | |
| **17** Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) . . . | 191,180 | 388,591 |
| **18** Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 745,875 | 1,437,717 |
| **19** Revenue less expenses. Subtract line 18 from line 12 . . . . . . | -414,362 | 642,507 |

Net Assets or Fund Balances

| | Beginning of Current Year | End of Year |
|---|---|---|
| **20** Total assets (Part X, line 16) . . . . . . . . . . . | 2,793,463 | 3,393,637 |
| **21** Total liabilities (Part X, line 26) . . . . . . . . . . | 40,184 | 220,734 |
| **22** Net assets or fund balances. Subtract line 21 from line 20 . . . . | 2,753,279 | 3,172,903 |

## Part II | Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ****** Signature of officer | 2021-02-15 Date |
|---|---|---|
| | SHEETAL SHAH CFO/MANAGING DIRECTOR Type or print name and title | |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN P00086726 |
|---|---|---|---|---|---|
| | Firm's name ► WEGNER CPAS LLP | | | Firm's EIN ► 39-0974031 | |
| | Firm's address ►419 N LEE ST ALEXANDRIA, VA 223142301 | | | Phone no. (703) 519-0990 | |

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . . . . ☒ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions. | Cat. No. 11282Y | Form **990** (2019)

| Part III | **Statement of Program Service Accomplishments** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . . . . . . ☑

**1**   Briefly describe the organization's mission:

THE HINDU AMERICAN FOUNDATION (HAF) IS AN ADVOCACY ORGANIZATION FOR THE HINDU AMERICAN COMMUNITY. THE FOUNDATION EDUCATES THE PUBLIC ABOUT HINDUISM, SPEAKS OUT ABOUT ISSUES AFFECTING HINDUS WORLDWIDE, AND BUILDS BRIDGES WITH INSTITUTIONS AND INDIVIDUALS WHOSE WORK ALIGNS WITH HAF'S OBJECTIVES. HAF'S THREE AREAS OF FOCUS ARE EDUCATION, POLICY, AND COMMUNITY. THROUGH ITS ADVOCACY EFFORTS, HAF PROMOTES DIGNITY, MUTUAL RESPECT, AND PLURALISM IN ORDER TO ENSURE THE WELL-BEING OF HINDUS AND FOR ALL PEOPLE AND THE PLANET TO THRIVE.

**2**   Did the organization undertake any significant program services during the year which were not listed on

the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ **Yes**   ☑ **No**

If "Yes," describe these new services on Schedule O.

**3**   Did the organization cease conducting, or make significant changes in how it conducts, any program

services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ **Yes**   ☑ **No**

If "Yes," describe these changes on Schedule O.

**4**   Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

| **4a** | (Code: | ) (Expenses \$ | 410,724 | including grants of \$ | 0 ) (Revenue \$ | 0 ) |
|---|---|---|---|---|---|---|
| | See Additional Data | | | | | |

| **4b** | (Code: | ) (Expenses \$ | 252,894 | including grants of \$ | 49,901 ) (Revenue \$ | 0 ) |
|---|---|---|---|---|---|---|
| | See Additional Data | | | | | |

| **4c** | (Code: | ) (Expenses \$ | 251,966 | including grants of \$ | 0 ) (Revenue \$ | 0 ) |
|---|---|---|---|---|---|---|
| | See Additional Data | | | | | |

| **4d** | Other program services (Describe in Schedule O.) | | | |
|---|---|---|---|---|
| | (Expenses \$ | including grants of \$ | ) (Revenue \$ | ) |

| **4e** | Total program service expenses ▶ | 915,584 | |
|---|---|---|---|

Form 990 (2019)                                                                                      Page **3**

| Part IV | Checklist of Required Schedules |
|---------|-------------------------------|

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 95 of 196

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* 🌀 | **1** | Yes | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? 🌀 | **2** | Yes | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* 🌀 | **3** | | No |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* 🌀 | **4** | Yes | |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* 🌀 | **5** | | No |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,*Part I 🌀 | **6** | | No |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* 🌀 | **7** | | No |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* 🌀 | **8** | | No |
| 9 | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* 🌀 | **9** | | No |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | **10** | Yes | |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI.* 🌀 | **11a** | Yes | |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* 🌀 | **11b** | | No |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* 🌀 | **11c** | | No |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* 🌀 | **11d** | | No |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* 🌀 | **11e** | Yes | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* 🌀 | **11f** | | No |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* 🌀 | **12a** | Yes | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* 🌀 | **12b** | | No |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | **14a** | | No |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* 🌀 | **14b** | Yes | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* 🌀 | **15** | Yes | |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* 🌀 | **16** | | No |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I*(see instructions) 🌀 | **17** | | No |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* 🌀 | **18** | Yes | |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* 🌀 | **19** | | No |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | **20a** | | No |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* 🌀 | **21** | Yes | |

| Part IV | **Checklist of Required Schedules** *(continued)* |

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 96 of 196

| | | | Yes | No |
|---|---|---|---|---|
| **22** | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . . . | **22** | Yes | |
| **23** | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . . . . . . . . . | **23** | | No |
| **24a** | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . . . . . . . . . . . . . | **24a** | | No |
| **b** | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . | **24b** | | |
| **c** | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . . . . . . | **24c** | | |
| **d** | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . | **24d** | | |
| **25a** | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . | **25a** | | No |
| **b** | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . . . . . . | **25b** | | No |
| **26** | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* . . . . . . . . . . | **26** | | No |
| **27** | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . . | **27** | | No |
| **28** | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| **a** | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . | **28a** | | No |
| **b** | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* . . . . . | **28b** | | No |
| **c** | A 35% controlled entity of one or more individuals and/or organizations described in lines 28a or 28b? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . . . | **28c** | | No |
| **29** | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . | **29** | | No |
| **30** | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . . . . . . | **30** | | No |
| **31** | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | **31** | | No |
| **32** | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . . . . . . . . . . | **32** | | No |
| **33** | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . . . . . | **33** | | No |
| **34** | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . . . . . . . . . | **34** | | No |
| **35a** | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | No |
| **b** | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . . . | **35b** | | |
| **36** | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . . . . . . | **36** | | No |
| **37** | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* . . . | **37** | | No |
| **38** | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. . . . . . . . . . . . . . . . | **38** | Yes | |

| Part V | **Statements Regarding Other IRS Filings and Tax Compliance** |

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . □

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable . . | **1a** | 24 | | |
| **b** | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable . . | **1b** | 0 | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . . . . . . . . | | **1c** | | | |

Form 990 (2019)                                                                                                          Page **5**

| Part V | **Statements Regarding Other IRS Filings and Tax Compliance** *(continued)* | | | | |
|---|---|---|---|---|---|

| | | | | Yes | No |
|---|---|---|---|---|---|
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . . . . . . . . . . . . . . . . . **2a** | 13 | | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | | **2b** | Yes | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . | | **3a** | | No |
| **b** | If "Yes," has it filed a Form 990-T for this year?*If "No" to line 3b, provide an explanation in Schedule O* . . . | | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . | | **4a** | | No |
| **b** | If "Yes," enter the name of the foreign country: ▶ _____ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . | | **5a** | | No |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | **5b** | | No |
| **c** | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . . | | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . | | **6a** | | No |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . | | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . | | **7a** | | No |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . | | **7b** | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . | | **7c** | | No |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year . . . . . **7d** | | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | **7e** | | No |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . | | **7f** | | No |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . . . . . . . . . . . . . . . . . | | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? . . . . . . . . . . . . . . . . | | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? . . . | | **8** | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966? . . . . . . | | **9a** | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? . . . | | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 . . . **10a** | | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities **10b** | | | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | | |
| **a** | Gross income from members or shareholders . . . . . . . . **11a** | | | | |
| **b** | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . . **11b** | | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. **12b** | | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? . . . . . . **Note.** See the instructions for additional information the organization must report on Schedule O. | | **13a** | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . **13b** | | | | |
| **c** | Enter the amount of reserves on hand **13c** | | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . | | **14a** | | No |
| **b** | If "Yes," has it filed a Form 720 to report these payments?*If "No," provide an explanation in Schedule O* . . | | **14b** | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? . . . . . . . . . . . . . . If "Yes," see instructions and file Form 4720, Schedule N. | | **15** | | No |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? . . If "Yes," complete Form 4720, Schedule O. | | **16** | | No |

Form **990** (2019)

| Part VI | **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.* |

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . ☑

### Section A. Governing Body and Management

|  |  |  |  | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year | **1a** | 5 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent | **1b** | 5 | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . | | **2** | Yes | |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? . | | **3** | | No |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . | | **4** | | No |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? . | | **5** | | No |
| **6** | Did the organization have members or stockholders? . . . . . . . . . . . . . . | | **6** | | No |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . | | **7a** | | No |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . . . | | **7b** | | No |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | |
| **a** | The governing body? . . . . . . . . . . . . . . . . . . . | | **8a** | Yes | |
| **b** | Each committee with authority to act on behalf of the governing body? . . . . . . . . | | **8b** | Yes | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? If "Yes," provide the names and addresses in Schedule O . . . . . . . | | **9** | | No |

### Section B. Policies (*This Section B requests information about policies not required by the Internal Revenue Code.*)

|  |  |  | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . | **10a** | Yes | |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | Yes | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . . . . . . . . . . . . . . . . . . . . . . | **11a** | Yes | |
| **b** | Describe in Schedule O the process, if any, used by the organization to review this Form 990. . . . . . | | | |
| **12a** | Did the organization have a written conflict of interest policy? If "No," go to line 13 . . . . . . . | **12a** | Yes | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . . . . | **12b** | Yes | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? If "Yes," describe in Schedule O how this was done . . . . . . . . . . . . . . . | **12c** | Yes | |
| **13** | Did the organization have a written whistleblower policy? . . . . . . . . . . . | **13** | Yes | |
| **14** | Did the organization have a written document retention and destruction policy? . . . . . . . . | **14** | Yes | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** | The organization's CEO, Executive Director, or top management official . . . . . . . . . | **15a** | Yes | |
| **b** | Other officers or key employees of the organization . . . . . . . . . . . . | **15b** | Yes | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . | **16a** | | No |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . . | **16b** | | |

### Section C. Disclosure

**17** List the states with which a copy of this Form 990 is required to be filed▶

CA , IL , MD , MA , MI , NJ , NY , PA , VA , WA , DC , FL

**18** Section 6104 requires an organization to make its Form 1023 (or 1024-A if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☑ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
▶SHEETAL SHAH   910 17TH ST NW NO 316A   WASHINGTON, DC 200062601 (202) 223-8222

Form 990 (2019)

| Part VII | Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors |

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

● List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

● List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) MIHIR MEGHANI<br>.................<br>PRESIDENT | 3.00<br>............. | X | | X | | | | 0 | 0 | 0 |
| (2) RISHI BHUTADA<br>.................<br>TREASURER | 1.00<br>............. | X | | X | | | | 0 | 0 | 0 |
| (3) ASEEM SHUKLA<br>.................<br>VICE PRESIDENT (THRU 02/2020) | 1.00<br>............. | X | | X | | | | 0 | 0 | 0 |
| (4) RAJIV PANDIT<br>.................<br>SECRETARY | 1.00<br>............. | X | | X | | | | 0 | 0 | 0 |
| (5) ARJUN BHAGAT<br>.................<br>DIRECTOR | 1.00<br>............. | X | | | | | | 0 | 0 | 0 |
| (6) PAWAN DESHPANDE<br>.................<br>DIRECTOR (THRU 03/2020) | 1.00<br>............. | X | | | | | | 0 | 0 | 0 |
| (7) SWAMINATHAN VENKATARAMAN<br>.................<br>DIRECTOR (BEGIN 03/20) | 1.00<br>............. | X | | | | | | 0 | 0 | 0 |
| (8) SHEETAL SHAH<br>.................<br>CFO/MANAGING DIRECTOR | 48.00<br>............. | | | X | | | | 65,462 | 0 | 0 |
| (9) SUHAG SHUKLA<br>.................<br>EXECUTIVE DIRECTOR | 48.00<br>............. | | | X | | | | 93,200 | 0 | 0 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 100 of 196

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |

| (A)<br>Name and title | (B)<br>Average<br>hours per<br>week (list<br>any hours<br>for related<br>organizations<br>below dotted<br>line) | (C)<br>Position (do not check more<br>than one box, unless person<br>is both an officer and a<br>director/trustee) | | | | | | (D)<br>Reportable<br>compensation<br>from the<br>organization<br>(W-2/1099-<br>MISC) | (E)<br>Reportable<br>compensation<br>from related<br>organizations<br>(W-2/1099-<br>MISC) | (F)<br>Estimated<br>amount of other<br>compensation<br>from the<br>organization and<br>related<br>organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b Sub-Total** . . . . . . . . . . ▶ | | | | | | | | | | |
| **c Total from continuation sheets to Part VII, Section A** . . . . ▶ | | | | | | | | | | |
| **d Total (add lines 1b and 1c)** . . . . . . . . . . ▶ | | | | | | | | 158,662 | 0 | 0 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 0

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . **3** | | No |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . **4** | | No |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . . **5** | | No |

### Section B. Independent Contractors

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 0

| Part VIII | Statement of Revenue |

Case 2:22-cv-00155-DAD-JDP · Document 1 · Filed 02/06/23 · Page 101 of 196·

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . ☐

| | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1a** Federated campaigns . . | **1a** | | | | |
| | **b** Membership dues . . | **1b** | | | | |
| | **c** Fundraising events . . | **1c** | 1,208,554 | | | |
| | **d** Related organizations . | **1d** | | | | |
| | **e** Government grants (contributions) | **1e** | | | | |
| | **f** All other contributions, gifts, grants, and similar amounts not included above | **1f** | 602,265 | | | |
| | **g** Noncash contributions included in lines 1a - 1f:$ | **1g** | | | | |
| | **h Total.** Add lines 1a-1f . . . . . . . ▶ | | 1,810,819 | | | |
| **Program Service Revenue** | **2a** | Business Code | | | | |
| | **b** | | | | | |
| | **c** | | | | | |
| | **d** | | | | | |
| | **e** | | | | | |
| | **f** All other program service revenue. | | | | | |
| | **g Total.** Add lines 2a–2f. . . . . ▶ | | | | | |
| **Other Revenue** | **3** Investment income (including dividends, interest, and other similar amounts) . . . . . . ▶ | | 37,729 | | | 37,729 |
| | **4** Income from investment of tax-exempt bond proceeds ▶ | | | | | |
| | **5** Royalties . . . . . . . . ▶ | | | | | |
| | | (i) Real | (ii) Personal | | | | |
| | **6a** Gross rents **6a** | | | | | | |
| | **b** Less: rental expenses **6b** | | | | | | |
| | **c** Rental income or (loss) **6c** | | | | | | |
| | **d** Net rental income or (loss) . . . . . ▶ | | | | | |
| | | (i) Securities | (ii) Other | | | | |
| | **7a** Gross amount from sales of assets other than inventory **7a** | 723,422 | | | | | |
| | **b** Less: cost or other basis and sales expenses **7b** | 498,309 | | | | | |
| | **c** Gain or (loss) **7c** | 225,113 | | | | | |
| | **d** Net gain or (loss) . . . . . . . ▶ | | 225,113 | | | 225,113 |
| | **8a** Gross income from fundraising events (not including $ 1,208,554 of contributions reported on line 1c). See Part IV, line 18 . . . **8a** | 83,486 | | | | |
| | **b** Less: direct expenses . . . **8b** | 76,923 | | | | |
| | **c** Net income or (loss) from fundraising events . . ▶ | | 6,563 | | | 6,563 |
| | **9a** Gross income from gaming activities. See Part IV, line 19 . . . **9a** | | | | | |
| | **b** Less: direct expenses . . . **9b** | | | | | |
| | **c** Net income or (loss) from gaming activities . . ▶ | | | | | |
| | **10a** Gross sales of inventory, less returns and allowances . . **10a** | | | | | |
| | **b** Less: cost of goods sold . . **10b** | | | | | |
| | **c** Net income or (loss) from sales of inventory . . ▶ | | | | | |
| | Miscellaneous Revenue | Business Code | | | | |
| | **11a** | | | | | |
| | **b** | | | | | |
| | **c** | | | | | |
| | **d** All other revenue . . . . | | | | | |
| | **e Total.** Add lines 11a–11d . . . . . ▶ | | | | | |
| | **12 Total revenue.** See instructions . . . . . ▶ | | 2,080,224 | 0 | 0 | 269,405 |

| Part IX | **Statement of Functional Expenses** |

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 102 of 196

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | **(A)** Total expenses | **(B)** Program service expenses | **(C)** Management and general expenses | **(D)** Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 . . . . . | 10,801 | 10,801 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 . . . . . . . . . . . | 7,100 | 7,100 | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. . . . . . . . . . . . . . . | 32,000 | 32,000 | | |
| **4** Benefits paid to or for members . . . . . . . | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . . . . . . . . | 172,525 | 129,394 | 34,505 | 8,626 |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . . . . . . | | | | |
| **7** Other salaries and wages . . . . . . . . . | 722,395 | 486,990 | 111,877 | 123,528 |
| **8** Pension plan accruals and contributions (include section 401 (k) and 403(b) employer contributions) . . . . . | | | | |
| **9** Other employee benefits . . . . . . . . . | 33,745 | 23,242 | 5,520 | 4,983 |
| **10** Payroll taxes . . . . . . . . . . . . | 70,560 | 48,598 | 11,542 | 10,420 |
| **11** Fees for services (non-employees): | | | | |
| **a** Management . . . . . . . . . | | | | |
| **b** Legal . . . . . . . . . . . . . | | | | |
| **c** Accounting . . . . . . . . . . . . | 31,399 | | 31,399 | |
| **d** Lobbying . . . . . . . . . . . . | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | | | | |
| **f** Investment management fees . . . . . . . | 13,013 | | 13,013 | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 67,180 | 16,857 | 44,237 | 6,086 |
| **12** Advertising and promotion . . . . . | 9,735 | | | 9,735 |
| **13** Office expenses . . . . . . . . . | 66,227 | 29,159 | 13,913 | 23,155 |
| **14** Information technology . . . . . . . | 36,114 | 29,296 | 133 | 6,685 |
| **15** Royalties . . . | | | | |
| **16** Occupancy . . . . . . . . . . | 60,943 | 31,754 | 16,058 | 13,131 |
| **17** Travel . . . . . . . . . . . . | 45,774 | 32,795 | 8,639 | 4,340 |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials . | | | | |
| **19** Conferences, conventions, and meetings . . . . . | 7,081 | 3,661 | 3,273 | 147 |
| **20** Interest . . . . . . . . . . . . | | | | |
| **21** Payments to affiliates . . . . . . . . | | | | |
| **22** Depreciation, depletion, and amortization . . | 6,362 | 4,149 | 2,213 | |
| **23** Insurance . . . | 4,487 | | 4,487 | |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** DUES AND SUBSCRIPTIONS | 40,276 | 29,788 | 9,434 | 1,054 |
| **b** | | | | |
| **c** | | | | |
| **d** | | | | |
| **e** All other expenses | | | | |
| **25 Total functional expenses.** Add lines 1 through 24e | 1,437,717 | 915,584 | 310,243 | 211,890 |
| **26 Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

| Part X | **Balance Sheet** |
|---|---|

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 103 of 196

Check if Schedule O contains a response or note to any line in this Part X . . . . . . . . ☐

| | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|
| **Assets** | **1** | Cash—non-interest-bearing . . . . . . . . | 136,076 | **1** | 350,504 |
| | **2** | Savings and temporary cash investments . . . . . . . | 240,617 | **2** | 1,317,011 |
| | **3** | Pledges and grants receivable, net . . . . . . | 495,156 | **3** | 431,223 |
| | **4** | Accounts receivable, net . . . . . . . . | | **4** | |
| | **5** | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons . . . . . . | | **5** | |
| | **6** | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) . . . | | **6** | |
| | **7** | Notes and loans receivable, net . . . . . . . . | | **7** | |
| | **8** | Inventories for sale or use . . . . . . . | | **8** | |
| | **9** | Prepaid expenses and deferred charges . . . . . . | 23,009 | **9** | 17,497 |
| | **10a** | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D 　**10a**　47,054 | | | |
| | **b** | Less: accumulated depreciation 　**10b**　32,205 | 16,945 | **10c** | 14,849 |
| | **11** | Investments—publicly traded securities . | 1,818,367 | **11** | 1,200,409 |
| | **12** | Investments—other securities. See Part IV, line 11 . . . . | | **12** | |
| | **13** | Investments—program-related. See Part IV, line 11 . . | | **13** | |
| | **14** | Intangible assets . . . . . . . . . . | | **14** | |
| | **15** | Other assets. See Part IV, line 11 . . . . . . . . | 63,293 | **15** | 62,144 |
| | **16** | **Total assets.** Add lines 1 through 15 (must equal line 34) . . . | 2,793,463 | **16** | 3,393,637 |
| **Liabilities** | **17** | Accounts payable and accrued expenses . . . . . | 16,631 | **17** | 6,208 |
| | **18** | Grants payable . . . | | **18** | |
| | **19** | Deferred revenue . . . . . . . . . | | **19** | |
| | **20** | Tax-exempt bond liabilities . . . . . . . | | **20** | |
| | **21** | Escrow or custodial account liability. Complete Part IV of Schedule D | | **21** | |
| | **22** | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons . . . . . . . | | **22** | |
| | **23** | Secured mortgages and notes payable to unrelated third parties . . | | **23** | |
| | **24** | Unsecured notes and loans payable to unrelated third parties . . | 0 | **24** | 189,032 |
| | **25** | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | 23,553 | **25** | 25,494 |
| | **26** | **Total liabilities.** Add lines 17 through 25 . . | 40,184 | **26** | 220,734 |
| **Net Assets or Fund Balances** | | **Organizations that follow FASB ASC 958, check here ▶ ☑ and complete lines 27, 28, 32, and 33.** | | | |
| | **27** | Net assets without donor restrictions . . . . . . . | 2,281,396 | **27** | 2,748,281 |
| | **28** | Net assets with donor restrictions . . . . . . . | 471,883 | **28** | 424,622 |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | |
| | **29** | Capital stock or trust principal, or current funds . . . . . | | **29** | |
| | **30** | Paid-in or capital surplus, or land, building or equipment fund . . . | | **30** | |
| | **31** | Retained earnings, endowment, accumulated income, or other funds . | | **31** | |
| | **32** | Total net assets or fund balances . . . . . . . | 2,753,279 | **32** | 3,172,903 |
| | **33** | Total liabilities and net assets/fund balances . . . . . . . | 2,793,463 | **33** | 3,393,637 |

| Part XI | **Reconcilliation of Net Assets** |

Case 2:22-cv-01656-DAD-JDP Document 13-1 Filed 02/06/23 Page 104 of 196

Check if Schedule O contains a response or note to any line in this Part XI ☑

| | | | | |
|---|---|---|---|---:|
| **1** | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . . . . . . | **1** | | 2,080,224 |
| **2** | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . . . . . | **2** | | 1,437,717 |
| **3** | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . . . . . . | **3** | | 642,507 |
| **4** | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . | **4** | | 2,753,279 |
| **5** | Net unrealized gains (losses) on investments . . . . . . . . . . . . . . . . . | **5** | | -221,734 |
| **6** | Donated services and use of facilities . . . . . . . . . . . . . . . . . . | **6** | | |
| **7** | Investment expenses . . . . . . . . . . . . . . . . . . . . . . . | **7** | | |
| **8** | Prior period adjustments . . . . . . . . . . . . . . . . . . . . . . | **8** | | |
| **9** | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . . . . | **9** | | -1,149 |
| **10** | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 33, column (B)) | **10** | | 3,172,903 |

| Part XII | **Financial Statements and Reporting** |

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . . . □

| | | Yes | No |
|---|---|---|---|
| **1** Accounting method used to prepare the Form 990: □ Cash ☑ Accrual □ Other _____ | | | |
| If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | | |
| **2a** Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | No |
| If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | | |
| □ Separate basis □ Consolidated basis □ Both consolidated and separate basis | | | |
| **b** Were the organization's financial statements audited by an independent accountant? | **2b** | Yes | |
| If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | | |
| ☑ Separate basis □ Consolidated basis □ Both consolidated and separate basis | | | |
| **c** If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | Yes | |
| If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| **3a** As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | **3a** | | No |
| **b** If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | **3b** | | |

# Additional Data

**Software ID:**

**Software Version:**

**EIN:**  68-0551525

**Name:**  HINDU AMERICAN FOUNDATION INC

Form 990 (2019)

## Form 990, Part III, Line 4a:

POLICY - PROMOTE POLICIES THAT ENSURE THE WELL-BEING OF HINDUS WORLDWIDE AND BENEFIT ALL PEOPLE AND THE PLANET. 1. ADVOCATE FOR POLICIES THAT SECURE THE WELL-BEING OF HINDUS IN THE US. 2. ADVOCATE FOR POLICIES THAT SECURE THE HUMAN RIGHTS OF HINDUS AROUND THE WORLD AND PROMOTE PEACE, PROSPERITY AND PLURALISM IN INDIA, THE SPIRITUAL HOMELAND OF HINDUS. 3. ADVOCATE FOR SOLUTIONS ALIGNED WITH OR INSPIRED BY HINDU TEACHINGS FOR THE BENEFIT OF ALL PEOPLE AND THE PLANET.

**Form 990, Part III, Line 4b:**

COMMUNITY - EMPOWER HINDU AMERICAN COMMUNITIES AND PARTNER INSTITUTIONS. 1. ENHANCE THE WELL-BEING, SAFETY, AND SECURITY OF HINDU COMMUNITIES AND INSTITUTIONS. 2. BUILD A CULTURE OF ADVOCACY. 3. PROMOTE THE RECOGNITION OF HINDUISM AND HINDU CONTRIBUTIONS.

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 106 of 196

**Form 990, Part III, Line 4c:**

EDUCATION - IMPROVE THE UNDERSTANDING OF HINDUISM AND HINDUS 1. WORK TOWARDS AN EQUITABLE AND ACCURATE PORTRAYAL OF HINDUISM IN K-12 TEXTBOOKS AND IN CLASSROOMS. 2. PROMOTE A BALANCED UNDERSTANDING OF HINDUISM AS A LIVED TRADITION IN ACADEMIA. 3. IMPROVE NARRATIVES ABOUT HINDUS AND HINDUISM IN MEDIA.

| SCHEDULE A | Public Charity Status and Public Support | OMB No. 1545-0047 |
|---|---|---|

**SCHEDULE A**
(Form 990 or 990EZ)

**Public Charity Status and Public Support**

Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.
► **Attach to Form 990 or Form 990-EZ.**
► **Go to www.irs.gov/Form990 for instructions and the latest information.**

**2019**

**Open to Public Inspection**

Department of the Treasury
Internal Revenue Service

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION INC | 68-0551525 |

## Part I | Reason for Public Charity Status (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1. ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2. ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990 or 990-EZ).)

3. ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4. ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5. ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170 (b)(1)(A)(iv).** (Complete Part II.)

6. ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7. ☑ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8. ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

9. ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10. ☐ An organization that normally receives: (1) more than 331/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 331/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11. ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12. ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box in lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a. ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b. ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c. ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d. ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e. ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f. Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . _____

g. Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1-10 above (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | **Yes** | **No** | | |
| | | | | | | |
| | | | | | | |
| **Total** | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.       Cat. No. 11285F       **Schedule A (Form 990 or 990-EZ) 2019**

**Part II**    **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III.
If the organization failed to qualify under the tests listed below, please complete Part III.)

Case 2:22-cv-01658-DAD-JDP   Document 10-1   Filed 02/06/23   Page 109 of 196

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2015 | (b) 2016 | (c) 2017 | (d) 2018 | (e) 2019 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") . . | 1,502,696 | 1,288,294 | 1,294,009 | 301,419 | 1,809,819 | 6,196,237 |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . . | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| **4** **Total.** Add lines 1 through 3 | 1,502,696 | 1,288,294 | 1,294,009 | 301,419 | 1,809,819 | 6,196,237 |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) . . | | | | | | 467,632 |
| **6** **Public support.** Subtract line 5 from line 4. | | | | | | 5,728,605 |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2015 | (b) 2016 | (c) 2017 | (d) 2018 | (e) 2019 | (f) Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4. . | 1,502,696 | 1,288,294 | 1,294,009 | 301,419 | 1,809,819 | 6,196,237 |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . . | 31,296 | 39,188 | 49,098 | 21,584 | 37,729 | 178,895 |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on. . | | | | | | |
| **10** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). . | 22,654 | | | | | 22,654 |
| **11** **Total support.** Add lines 7 through 10 | | | | | | 6,397,786 |

| **12** Gross receipts from related activities, etc. (see instructions) . . . . . . . . . . . . . . . | **12** | |
|---|---|---|

**13 First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization,
check this box and **stop here** . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

### Section C. Computation of Public Support Percentage

| **14** Public support percentage for 2019 (line 6, column (f) divided by line 11, column (f)) . . . . . . . . . | **14** | 89.540 % |
|---|---|---|
| **15** Public support percentage for 2018 Schedule A, Part II, line 14 . . . . . . . . . . . . . . . | **15** | 86.080 % |

**16a 33 1/3% support test—2019.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box
and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . ▶ ☑

   **b 33 1/3% support test—2018.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this
box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . ▶ ☐

**17a 10%-facts-and-circumstances test—2019.** If the organization did not check a box on line 13, 16a, or 16b, and line 14
is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain
in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported
organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

   **b 10%-facts-and-circumstances test—2018.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line
15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.**
Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly
supported organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**18 Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see
instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**Part III**   **Support Schedule for Organizations Described in Section 509(a)(2)**
     (Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 110 of 196

### Section A. Public Support

| Calendar year<br>(or fiscal year beginning in) ▶ | (a) 2015 | (b) 2016 | (c) 2017 | (d) 2018 | (e) 2019 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . . | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| **c** Add lines 7a and 7b. . | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6.) | | | | | | |

### Section B. Total Support

| Calendar year<br>(or fiscal year beginning in) ▶ | (a) 2015 | (b) 2016 | (c) 2017 | (d) 2018 | (e) 2019 | (f) Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. . . | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| **c** Add lines 10a and 10b. | | | | | | |
| **11** Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.) . . | | | | | | |

**14** **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

### Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| **15** Public support percentage for 2019 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | **15** | |
| **16** Public support percentage from 2018 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . . | **16** | |

### Section D. Computation of Investment Income Percentage

| | | |
|---|---|---|
| **17** Investment income percentage for **2019** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | |
| **18** Investment income percentage from **2018** Schedule A, Part III, line 17 . . . . . . . . . . . . . | **18** | |

**19a** **33 1/3% support tests—2019.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not

more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . ▶ ☐

**b** **33 1/3% support tests—2018.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is

not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐

**Part IV** **Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked 12a of Part I, complete Sections A and B. If you checked 12b of Part I, complete Sections A and C. If you checked 12c of Part I, complete Sections A, D, and E. If you checked 12d of Part I, complete Sections A and D, and complete Part V.)

Case 2:22-cv-01056-DAD-JDP   Document 10-1   Filed 02/06/23   Page 111 of 196

**Section A. All Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in Part VI how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | | |
| | **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509 (a)(1) or (2)? *If "Yes," explain in Part VI how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | | |
| | **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer (b) and (c) below.* | | |
| | **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in Part VI when and how the organization made the determination.* | | |
| | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in Part VI what controls the organization put in place to ensure such use.* | | |
| | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked 12a or 12b in Part I, answer (b) and (c) below.* | | |
| | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in Part VI how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | | |
| | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in Part VI what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | | |
| | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer (b) and (c) below (if applicable). Also, provide detail in Part VI, including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | | |
| | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | | |
| | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | | |
| | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in Part VI.* | | |
| | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ) .* | | |
| | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ).* | | |
| | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in Part VI.* | | |
| | **9a** | | |
| **b** | Did one or more disqualified persons (as defined in line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in Part VI.* | | |
| | **9b** | | |
| **c** | Did a disqualified person (as defined in line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in Part VI.* | | |
| | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | | |
| | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | | |
| | **10b** | | |

**Part IV** **Supporting Organizations** (continued)

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 112 of 196

| | | Yes | No |
|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described in (b) and (c) below, the governing body of a supported organization? **11a** | | | |
| **b** | A family member of a person described in (a) above? **11b** | | | |
| **c** | A 35% controlled entity of a person described in (a) or (b) above? *If "Yes" to a, b, or c, provide detail in **Part VI**.* **11c** | | | |

### Section B. Type I Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| **1** | Did the directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* **1** | | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* **2** | | | |

### Section C. Type II Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in **Part VI** how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* **1** | | | |

### Section D. All Type III Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? **1** | | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization (s) or (ii) serving on the governing body of a supported organization? *If "No," explain in **Part VI** how the organization maintained a close and continuous working relationship with the supported organization(s).* **2** | | | |
| **3** | By reason of the relationship described in (2), did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in **Part VI** the role the organization's supported organizations played in this regard.* **3** | | | |

### Section E. Type III Functionally-Integrated Supporting Organizations

**1** Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

**a** ☐ The organization satisfied the Activities Test. Complete **line 2** below.

**b** ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.

**c** ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

**2** Activities Test. **Answer (a) and (b) below.**

| | | Yes | No |
|---|---|---|---|
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in **Part VI** **identify those supported organizations and explain** how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* **2a** | | | |
| **b** | Did the activities described in (a) constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* **2b** | | | |

**3** Parent of Supported Organizations. **Answer (a) and (b) below.**

| | | Yes | No |
|---|---|---|---|
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *Provide details in **Part VI**.* **3a** | | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in **Part VI**. the role played by the organization in this regard.* **3b** | | | |

## Part V  Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 (explain in Part VI). See instructions. All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 113 of 196

| Section A - Adjusted Net Income | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| Section B - Minimum Asset Amount | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| e | **Discount** claimed for blockage or other factors (explain in detail in Part VI): | | | |
| 2 | Acquisition indebtedness applicable to non-exempt use assets | 2 | | |
| 3 | Subtract line 2 from line 1d | 3 | | |
| 4 | Cash deemed held for exempt use. Enter 1-1/2% of line 3 (for greater amount, see instructions). | 4 | | |
| 5 | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 | Multiply line 5 by .035 | 6 | | |
| 7 | Recoveries of prior-year distributions | 7 | | |
| 8 | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| Section C - Distributable Amount | | | Current Year |
|---|---|---|---|
| 1 | Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | |
| 2 | Enter 85% of line 1 | 2 | | |
| 3 | Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | |
| 4 | Enter greater of line 2 or line 3 | 4 | | |
| 5 | Income tax imposed in prior year | 5 | | |
| 6 | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | |

7 ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Part V** Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations (continued)

Section D – Distributions Case 1:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 114 of 196 Current Year

| | | |
|---|---|---|
| **1** Amounts paid to supported organizations to accomplish exempt purposes | | |
| **2** Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | | |
| **3** Administrative expenses paid to accomplish exempt purposes of supported organizations | | |
| **4** Amounts paid to acquire exempt-use assets | | |
| **5** Qualified set-aside amounts (prior IRS approval required) | | |
| **6** Other distributions (describe in **Part VI**). See instructions | | |
| **7** **Total annual distributions.** Add lines 1 through 6. | | |
| **8** Distributions to attentive supported organizations to which the organization is responsive (provide details in **Part VI**). See instructions | | |
| **9** Distributable amount for 2019 from Section C, line 6 | | |
| **10** Line 8 amount divided by Line 9 amount | | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** Excess Distributions | **(ii)** Underdistributions Pre-2019 | **(iii)** Distributable Amount for 2019 |
|---|---|---|---|
| **1** Distributable amount for 2019 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2019 (reasonable cause required-- explain in **Part VI**). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2019: | | | |
| **a** From 2014. . . . . . . . | | | |
| **b** From 2015. . . . . . . . | | | |
| **c** From 2016. . . . . . . . | | | |
| **d** From 2017. . . . . . . . | | | |
| **e** From 2018. . . . . . . . | | | |
| **f Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2019 distributable amount | | | |
| **i** Carryover from 2014 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from 3f. | | | |
| **4** Distributions for 2019 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2019 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from 4. | | | |
| **5** Remaining underdistributions for years prior to 2019, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, explain in **Part VI**. See instructions. | | | |
| **6** Remaining underdistributions for 2019. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, explain in **Part VI**. See instructions. | | | |
| **7** **Excess distributions carryover to 2020.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2015. . . . . . | | | |
| **b** Excess from 2016. . . . . . | | | |
| **c** Excess from 2017. . . . . . | | | |
| **d** Excess from 2018. . . . . . | | | |
| **e** Excess from 2019. . . . . . | | | |

| **Part VI** | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions). |

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 115 of 196

---

**Facts And Circumstances Test**

---

**990 Schedule A, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| SCHEDULE A, PART II: | THE 2018 COLUMN ON SCHEDULE A, PART II REPRESENTS THE SHORT TAX YEAR BEGINNING JANUARY 1, 2019 AND ENDING JUNE 30, 2019. |

| **SCHEDULE C** | **Political Campaign and Lobbying Activities** | OMB No. 1545-0047 |
|---|---|---|

**(Form 990 or 990-EZ)**

**For Organizations Exempt From Income Tax Under section 501(c) and section 527**

**2019**

▶Complete if the organization is described below. ▶Attach to Form 990 or Form 990-EZ.
▶Go to *www.irs.gov/Form990* for instructions and the latest information.

Department of the Treasury
Internal Revenue Service

**Open to Public Inspection**

**If the organization answered "Yes" on Form 990, Part IV, Line 3, or Form 990-EZ, Part V, line 46 (Political Campaign Activities), then**

- Section 501(c)(3) organizations: Complete Parts I-A and B. Do not complete Part I-C.
- Section 501(c) (other than section 501(c)(3)) organizations: Complete Parts I-A and C below. Do not complete Part I-B.
- Section 527 organizations: Complete Part I-A only.

**If the organization answered "Yes" on Form 990, Part IV, Line 4, or Form 990-EZ, Part VI, line 47 (Lobbying Activities), then**

- Section 501(c)(3) organizations that have filed Form 5768 (election under section 501(h)): Complete Part II-A. Do not complete Part II-B.
- Section 501(c)(3) organizations that have NOT filed Form 5768 (election under section 501(h)): Complete Part II-B. Do not complete Part II-A.

**If the organization answered "Yes" on Form 990, Part IV, Line 5 (Proxy Tax) (see separate instructions) or Form 990-EZ, Part V, line 35c (Proxy Tax) (see separate instructions), then**

- Section 501(c)(4), (5), or (6) organizations: Complete Part III.

| Name of the organization<br>HINDU AMERICAN FOUNDATION INC | Employer identification number |
|---|---|
| | 68-0551525 |

| **Part I-A** | **Complete if the organization is exempt under section 501(c) or is a section 527 organization.** |
|---|---|

| 1 | Provide a description of the organization's direct and indirect political campaign activities in Part IV (see instructions for definition of "political campaign activities") | |
|---|---|---|
| 2 | Political campaign activity expenditures (see instructions) ................................................... ▶ | $ _____ |
| 3 | Volunteer hours for political campaign activities (see instructions) ................................................... | |

| **Part I-B** | **Complete if the organization is exempt under section 501(c)(3).** |
|---|---|

| 1 | Enter the amount of any excise tax incurred by the organization under section 4955 ............................... ▶ | $ _____ |
|---|---|---|
| 2 | Enter the amount of any excise tax incurred by organization managers under section 4955 ....................... ▶ | $ _____ |
| 3 | If the organization incurred a section 4955 tax, did it file Form 4720 for this year? ......................................... | ☐ Yes ☐ No |
| 4a | Was a correction made? ................................................................ | ☐ Yes ☐ No |
| b | If "Yes," describe in Part IV. | |

| **Part I-C** | **Complete if the organization is exempt under section 501(c), except section 501(c)(3).** |
|---|---|

| 1 | Enter the amount directly expended by the filing organization for section 527 exempt function activities ..... ▶ | $ _____ |
|---|---|---|
| 2 | Enter the amount of the filing organization's funds contributed to other organizations for section 527 exempt function activities ................................................................ ▶ | $ _____ |
| 3 | Total exempt function expenditures. Add lines 1 and 2. Enter here and on Form 1120-POL, line 17b.......... ▶ | $ _____ |
| 4 | Did the filing organization file **Form 1120-POL** for this year? ................................................................ | ☐ Yes ☐ No |

5 Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments. For each organization listed, enter the amount paid from the filing organization's funds. Also enter the amount of political contributions received that were promptly and directly delivered to a separate political organization, such as a separate segregated fund or a political action committee (PAC). If additional space is needed, provide information in Part IV.

| **(a)** Name | **(b)** Address | **(c)** EIN | **(d)** Amount paid from filing organization's funds. If none, enter -0-. | **(e)** Amount of political contributions received and promptly and directly delivered to a separate political organization. If none, enter -0-. |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |

**Part II-A** **Complete if the organization is exempt under section 501(c)(3) and filed Form 5768 (election under**

Case 2:20-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 117 of 196

section 501(h)).

**A**  Check  ▶  ☐  if the filing organization belongs to an affiliated group (and list in Part IV each affiliated group member's name, address, EIN, expenses, and share of excess lobbying expenditures).

**B**  Check  ▶  ☐  if the filing organization checked box A and "limited control" provisions apply.

| **Limits on Lobbying Expenditures**<br>(The term "expenditures" means amounts paid or incurred.) | **(a)** Filing organization's totals | **(b)** Affiliated group totals |
|---|---|---|
| **1a**  Total lobbying expenditures to influence public opinion (grass roots lobbying) ..................... | 785 | |
| **b**  Total lobbying expenditures to influence a legislative body (direct lobbying) ....................... | 744 | |
| **c**  Total lobbying expenditures (add lines 1a and 1b) ............................................ | 1,529 | |
| **d**  Other exempt purpose expenditures ............................................................ | 1,436,188 | |
| **e**  Total exempt purpose expenditures (add lines 1c and 1d) .................................... | 1,437,717 | |
| **f**  Lobbying nontaxable amount. Enter the amount from the following table in both columns. | 218,772 | |

| If the amount on line 1e, column (a) or (b) is: | The lobbying nontaxable amount is: |
|---|---|
| Not over $500,000 | 20% of the amount on line 1e. |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000. |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000. |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000. |
| Over $17,000,000 | $1,000,000. |

| | | |
|---|---|---|
| **g**  Grassroots nontaxable amount (enter 25% of line 1f) ................................................ | 54,693 | |
| **h**  Subtract line 1g from line 1a. If zero or less, enter -0-. .............................................. | 0 | |
| **i**  Subtract line 1f from line 1c. If zero or less, enter -0-. .............................................. | 0 | |

**j**  If there is an amount other than zero on either line 1h or line 1i, did the organization file Form 4720 reporting section 4911 tax for this year? .....................................................................................................    ☐ **Yes**  ☐ **No**

## 4-Year Averaging Period Under Section 501(h)
**(Some organizations that made a section 501(h) election do not have to complete all of the five columns below. See the separate instructions for lines 2a through 2f.)**

### Lobbying Expenditures During 4-Year Averaging Period

| Calendar year (or fiscal year beginning in) | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** Total |
|---|---|---|---|---|---|
| **2a**  Lobbying nontaxable amount | 203,939 | 225,297 | 136,881 | 218,772 | 784,889 |
| **b**  Lobbying ceiling amount (150% of line 2a, column(e)) | | | | | 1,177,334 |
| **c**  Total lobbying expenditures | 1,275 | 4,118 | 3,000 | 1,529 | 9,922 |
| **d**  Grassroots nontaxable amount | 50,985 | 56,324 | 34,220 | 54,693 | 196,222 |
| **e**  Grassroots ceiling amount (150% of line 2d, column (e)) | | | | | 294,333 |
| **f**  Grassroots lobbying expenditures | 133 | 1,293 | 1,000 | 785 | 3,211 |

**Part II-B** Complete if the organization is exempt under section 501(c)(3) and has NOT filed Form 5768 (election under section 501(h)).

Case 2:22-cv-01065-DAD-JDP Document 10-1 Filed 02/06/20 Page 118 of 196

| | | (a) | | (b) |
|---|---|---|---|---|
| For each "Yes" response on lines 1a through 1i below, provide in Part IV a detailed description of the lobbying activity. | | Yes | No | Amount |
| **1** | During the year, did the filing organization attempt to influence foreign, national, state or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of: | | | |
| **a** | Volunteers? ......................................................................................... | | | |
| **b** | Paid staff or management (include compensation in expenses reported on lines 1c through 1i)? ........ | | | |
| **c** | Media advertisements? ............................................................................ | | | |
| **d** | Mailings to members, legislators, or the public? ............................................ | | | |
| **e** | Publications, or published or broadcast statements? ......................................... | | | |
| **f** | Grants to other organizations for lobbying purposes? ....................................... | | | |
| **g** | Direct contact with legislators, their staffs, government officials, or a legislative body? ...... | | | |
| **h** | Rallies, demonstrations, seminars, conventions, speeches, lectures, or any similar means? ........ | | | |
| **i** | Other activities? ................................................................................. | | | |
| **j** | Total. Add lines 1c through 1i ................................................................. | | | |
| **2a** | Did the activities in line 1 cause the organization to be not described in section 501(c)(3)? ..... | | | |
| **b** | If "Yes," enter the amount of any tax incurred under section 4912 ......................... | | | |
| **c** | If "Yes," enter the amount of any tax incurred by organization managers under section 4912 ........ | | | |
| **d** | If the filing organization incurred a section 4912 tax, did it file Form 4720 for this year? ....... | | | |

**Part III-A** Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6).

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were substantially all (90% or more) dues received nondeductible by members? .............................. | **1** | | |
| **2** | Did the organization make only in-house lobbying expenditures of $2,000 or less? ........................... | **2** | | |
| **3** | Did the organization agree to carry over lobbying and political expenditures from the prior year? ................... | **3** | | |

**Part III-B** Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6) and if either (a) BOTH Part III-A, lines 1 and 2, are answered "No" OR (b) Part III-A, line 3, is answered "Yes."

| | | | |
|---|---|---|---|
| **1** | Dues, assessments and similar amounts from members ..................................................... | **1** | |
| **2** | Section 162(e) nondeductible lobbying and political expenditures **(do not include amounts of political expenses for which the section 527(f) tax was paid).** | | |
| **a** | Current year ................................................................................................ | **2a** | |
| **b** | Carryover from last year .................................................................................... | **2b** | |
| **c** | Total ...................................................................................................... | **2c** | |
| **3** | Aggregate amount reported in section 6033(e)(1)(A) notices of nondeductible section 162(e) dues . | **3** | |
| **4** | If notices were sent and the amount on line 2c exceeds the amount on line 3, what portion of the excess does the organization agree to carryover to the reasonable estimate of nondeductible lobbying and political expenditure next year? .......................................................................................... | **4** | |
| **5** | Taxable amount of lobbying and political expenditures (see instructions) ......................................... | **5** | |

**Part IV**    **Supplemental Information**

Provide the descriptions required for Part I-A, line 1; Part I-B, line 4; Part I-C, line 5; Part II-A (affiliated group list); Part II-A, lines 1 and 2 (see instructions), and Part II-B, line 1. Also, complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| SCHEDULE C, PART II-A: | THE 2018 COLUMN ON SCHEDULE C, PART II-A REPRESENTS THE SHORT TAX YEAR BEGINNING JANUARY 1, 2019 AND ENDING JUNE 30, 2019. |

# SCHEDULE D
**(Form 990)**

Case 2:22-cv-01658-DAD-JDP Document 16-1 Filed 02/06/23 Page 119 of 196

OMB No. 1545-0047

## Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

**2019**

Department of the Treasury
Internal Revenue Service

**Open to Public Inspection**

| Name of the organization<br>HINDU AMERICAN FOUNDATION INC | Employer identification number<br>68-0551525 |
|---|---|

## Part I — Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.
Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | **(a)** Donor advised funds | **(b)** Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . . . . | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year . . . . . . . . | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . . . . . . . . ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

## Part II — Conservation Easements.
Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)  ☐ Preservation of an historically important land area

☐ Protection of natural habitat  ☐ Preservation of a certified historic structure

☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | **Held at the End of the Year** |
|---|---|---|
| a | Total number of conservation easements . . . . . . . . . . . . . . . . . | 2a |  |
| b | Total acreage restricted by conservation easements . . . . . . . . . . . . . . . | 2b |  |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . . | 2c |  |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register . . . | 2d |  |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ _____

4 Number of states where property subject to conservation easement is located ▶ _____

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? . . . . . . . . . . . ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
▶ _____

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
▶ $ _____

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

## Part III — Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . ▶ $ _____

(ii) Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . ▶ $ _____

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items:

a Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . ▶ $ _____

b Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . ▶ $ _____

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 120 of 196

## Part III   Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets *(continued)*

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

**a** ☐ Public exhibition

**b** ☐ Scholarly research

**c** ☐ Preservation for future generations

**d** ☐ Loan or exchange programs

**e** ☐ Other ........................................................

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?. . .   ☐ Yes   ☐ No

## Part IV   Escrow and Custodial Arrangements.

Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X?. . . . . . . . . . . . . . . . . .   ☐ Yes   ☐ No

**b** If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| **c** Beginning balance . . . . . . . . . . | **1c** | |
| **d** Additions during the year . . . . . . . . . . | **1d** | |
| **e** Distributions during the year . . . . . . . . . . | **1e** | |
| **f** Ending balance . . . . . . . . . . | **1f** | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ Yes   ☐ No

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

## Part V   Endowment Funds.

Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . . | 1,200,000 | 1,200,000 | | | |
| **b** Contributions . . . | | | 1,200,000 | | |
| **c** Net investment earnings, gains, and losses | | | | | |
| **d** Grants or scholarships . . . | | | | | |
| **e** Other expenditures for facilities and programs . . . | | | | | |
| **f** Administrative expenses . . . | | | | | |
| **g** End of year balance . . . . . . | 1,200,000 | 1,200,000 | 1,200,000 | | |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment ▶   100.000 %

**b** Permanent endowment ▶   0 %

**c** Temporarily restricted endowment ▶   0 %

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** unrelated organizations . . . . . . . . . . . . . . . | **3a(i)** | | No |
| **(ii)** related organizations . . . . . . . . . . . . . . . | **3a(ii)** | | No |
| **b** If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . . . | **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

## Part VI   Land, Buildings, and Equipment.

Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . | | | | |
| **b** Buildings . . . . . | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment . . . . . | | 35,220 | 21,793 | 13,427 |
| **e** Other . . . . . . . | | 11,834 | 10,412 | 1,422 |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . . ▶ | | | | 14,849 |

Case 2:21-cv-01620-DAD-JDP Document 10-1 Filed 02/06/23 Page 121 of 196

## Part VII   Investments—Other Securities.

Complete if the organization answered 'Yes' on Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives   .   .   .   .   .   .   .   . | | |
| **(2)** Closely-held equity interests   .   .   .   .   .   .   . | | |
| **(3)** Other _____ | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | | |

## Part VIII   Investments—Program Related.

Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** | | |
| **(2)** | | |
| **(3)** | | |
| **(4)** | | |
| **(5)** | | |
| **(6)** | | |
| **(7)** | | |
| **(8)** | | |
| **(9)** | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

## Part IX   Other Assets.

Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| **(1)** | |
| **(2)** | |
| **(3)** | |
| **(4)** | |
| **(5)** | |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)*   .   .   .   .   .   .   .   .   .   .   ▶ | |

## Part X   Other Liabilities.

Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| **1.** (a) Description of liability | (b) Book value |
|---|---|
| **(1)** Federal income taxes | |
| **(2)** | |
| **(3)** | |
| **(4)** | |
| **(5)** | |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)*   ▶ | 25,494 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII   ☐

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 122 of 196

| **Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.** Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a. | | | | | |
|---|---|---|---|---|---|---|
| **1** | Total revenue, gains, and other support per audited financial statements . . . . . . . . | | | **1** | | 1,921,251 |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | | |
| **a** | Net unrealized gains (losses) on investments . . . . . | **2a** | -221,734 | | | |
| **b** | Donated services and use of facilities . . . . . . . . . | **2b** | | | | |
| **c** | Recoveries of prior year grants . . . . . . . . . . . | **2c** | | | | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . . . . . | **2d** | -14,162 | | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . . . . . . . | | | **2e** | | -235,896 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . . . . . . . . | | | **3** | | 2,157,147 |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . | **4a** | | | | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . . . . . | **4b** | -76,923 | | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . . . . . . . | | | **4c** | | -76,923 |
| **5** | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) . . . . . . . | | | **5** | | 2,080,224 |

| **Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.** Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a. | | | | | |
|---|---|---|---|---|---|---|
| **1** | Total expenses and losses per audited financial statements . . . . . . . . . . . . | | | **1** | | 1,501,627 |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | | |
| **a** | Donated services and use of facilities . . . . . . . . . | **2a** | | | | |
| **b** | Prior year adjustments . . . . . . . . . . . . . | **2b** | | | | |
| **c** | Other losses . . . . . . . . . . . . . . . . | **2c** | | | | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . . . . . | **2d** | 76,923 | | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . . . . . . . | | | **2e** | | 76,923 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . . . . . . . . | | | **3** | | 1,424,704 |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line **1**: | | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . . | **4a** | 13,013 | | | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . . . . . | **4b** | | | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . . . . . . . | | | **4c** | | 13,013 |
| **5** | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) . . . . . . . | | | **5** | | 1,437,717 |

| **Part XIII** | **Supplemental Information** |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| See Additional Data Table | |
| | |
| | |
| | |
| | |
| | |

**Part XIII** **Supplemental Information** *(continued)*

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 123 of 196

| Return Reference | Explanation |
| --- | --- |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# Additional Data

**Software ID:**
**Software Version:**
**EIN:** 68-0551525
**Name:** HINDU AMERICAN FOUNDATION INC

## Supplemental Information

| Return Reference | Explanation |
|---|---|
| PART V, LINE 4: | THE PURPOSE OF THE FUND IS TO GENERATE INCOME TO ENSURE THE LONG TERM FINANCIAL HEALTH AND VIABILITY OF THE HAF. NO INCOME OR PRINCIPAL FROM THE FUND SHALL BE USED FOR ANY PURPOSE THAT WOULD BE INCONSISTENT WITH THE HAF'S STANDING AS A CHARITABLE NOT-FOR-PROFIT INSTITUTION UNDER THE LAWS OF THE STATE OF FLORIDA AND SPECIFICALLY UNDER 501(C)(3) OF THE INTERNAL REVENUE CODE. NO FUNDS SHALL BE USED DIRECTLY OR INDIRECTLY FOR THE BENEFIT OF ANY INDIVIDUAL PERSON, INCLUDING BUT NOT LIMITED TO ANY EMPLOYEE OR BOARD MEMBER OF HAF. |

**Supplemental Information**

| Return Reference | Explanation |
|---|---|
| PART XI, LINE 2G - OTHER ADJUSTMENTS: | CHANGE IN BENEFICIAL INTEREST IN ASSETS HELD BY CINCI HERITAGE ENDOWMENT -1,049. INVESTMENT MANAGEMENT FEES REPORTED ON FORM 990, PART IX, LINE 11F -13,013. |

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 125 of 196

**Supplemental Information**

| Return Reference | Explanation |
|---|---|
| PART XI, LINE 4B - OTHER ADJUSTMENTS: | DIRECT EXPENSES REPORTED ON FORM 990, PART VIII, LINE 9B - 76,923. |

## Supplemental Information

| Return Reference | Explanation |
|---|---|
| PART XII, LINE 2D OTHER ADJUSTMENTS: | DIRECT EXPENSES REPORTED ON FORM 990, PART VIII, LINE 9B 76,623. |

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 127 of 196

**Supplemental Information**

| Return Reference | Explanation |
|---|---|
| SCHEDULE D, PART V | THE PRIOR YEAR COLUMN ON SCHEDULE D, PART V REPRESENTS THE SHORT TAX YEAR BEGINNING JANUARY 1, 2019 AND ENDING JUNE 30, 2019. |

Case 2:22-cv-01656-DAD-JDP   Document 10.1   Filed 02/06/23   Page 128 of 196

| SCHEDULE F | **Statement of Activities Outside the United States** | | OMB No. 1545-0047 |
| (Form 990) | | | **2019** |

► Complete if the organization answered "Yes" to Form 990, Part IV, line 14b, 15, or 16.

► Attach to Form 990.

► Go to *www.irs.gov/Form990* for instructions and the latest information.

Department of the Treasury
Internal Revenue Service

**Open to Public Inspection**

| Name of the organization | **Employer identification number** |
| HINDU AMERICAN FOUNDATION INC | |
| | 68-0551525 |

**Part I**  **General Information on Activities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 14b.

**1**  **For grantmakers.** Does the organization maintain records to substantiate the amount of its grants and other assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance?   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   ☑ **Yes**   ☐ **No**

**2**  **For grantmakers.** Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the United States.

**3**  Activites per Region. (The following Part I, line 3 table can be duplicated if additional space is needed.)

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in the region | (d) Activities conducted in region (by type) (such as, fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in the region | (f) Total expenditures for and investments in the region |
|---|---|---|---|---|---|
| SOUTH ASIA | 0 | 0 | PROGRAM SERVICES | COMMUNITY RELATIONS | 32,000 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **3a** Sub-total .   .   .   . | 0 | 0 | | | 32,000 |
| **b** Total from continuation sheets to Part I .   .   . | 0 | 0 | | | 0 |
| **c Totals** (add lines 3a and 3b) | 0 | 0 | | | 32,000 |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**  Cat. No. 50082W  **Schedule F (Form 990) 2019**

**Part II** **Grants and Other Assistance to Organizations or Entities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

Case 2:22-cv-01656-DAD-JDP　Document 10-1　Filed 02/06/23　Page 130 of 196

| 1 | **(a)** Name of organization | **(b)** IRS code section and EIN (if applicable) | **(c)** Region | **(d)** Purpose of grant | **(e)** Amount of cash grant | **(f)** Manner of cash disbursement | **(g)** Amount of noncash assistance | **(h)** Description of noncash assistance | **(i)** Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| | | | SOUTH ASIA | GRANT FOR MEDICAL SERVICES TO PAKISTANI HINDU REFUGEES | 26,000 | WIRE TRANSFER | | | |
| | | | SOUTH ASIA | FOOD ASSISTANCE DURING COVID FOR PAKISTANI HINDUS | 6,000 | WIRE TRANSFER | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

2　Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-
　exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . . . . . . ▶ _____

3　Enter total number of other organizations or entities . . . . . . . . . . . . . . . . . . . . . ▶ _____

**Part III** | **Grants and Other Assistance to Individuals Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 16.
Part III can be duplicated if additional space is needed.

Case 2:21-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 131 of 196

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of noncash assistance | (g) Description of noncash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Part IV**    **Foreign Forms**

Case 2:22-cv-01656-DAD-JDP    Document 10-1    Filed 02/06/23    Page 132 of 196

1   Was the organization a U.S. transferor of property to a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see Instructions for Form 926)*   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☑ No

2   Did the organization have an interest in a foreign trust during the tax year? *If "Yes," the organization may be required to separately file Form 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see Instructions for Forms 3520 and 3520-A; don't file with Form 990)*   . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☑ No

3   Did the organization have an ownership interest in a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations. (see Instructions for Form 5471)*   . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☑ No

4   Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? *If "Yes," the organization may be required to file Form 8621, Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund. (see Instructions for Form 8621)* .    ☐ Yes    ☑ No

5   Did the organization have an ownership interest in a foreign partnership during the tax year? *If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons with Respect to Certain Foreign Partnerships (see Instructions for Form 8865)*   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☑ No

6   Did the organization have any operations in or related to any boycotting countries during the tax year? *If "Yes," the organization may be required to separately file Form 5713, International Boycott Report (see Instructions for Form 5713; don't file with Form 990).*   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ☐ Yes    ☑ No

**Part V**　　**Supplemental Information**

Provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information. See instructions.

**990 Schedule F, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| PART I, LINE 2: | GRANTS ARE MADE BASED UPON BOARD APPROVAL OF GRANTEE'S TRACK RECORD AND APPLICATION AND STATED USE OF FUNDS. MONITORING IS DONE BY REVIEWING PROGRESS REPORTS. |

Case 2:22-cv-01656-DAD-JDP　Document 10-1　Filed 02/06/23　Page 133 of 196

# 990 Schedule F, Supplemental Information

| Return Reference | Explanation |
|---|---|
| PART III ACCOUNTING METHOD: | |

**SCHEDULE G**
**(Form 990 or 990-EZ)**

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 135 of 196

# Supplemental Information Regarding Fundraising or Gaming Activities

Complete if the organization answered "Yes" on Form 990, Part IV, lines 17, 18, or 19, or if the
organization entered more than $15,000 on Form 990-EZ, line 6a.
▶ **Attach to Form 990 or Form 990-EZ.**
▶Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

**2019**

Department of the Treasury
Internal Revenue Service

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION INC | 68-0551525 |

**Part I** **Fundraising Activities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 17.
Form 990-EZ filers are not required to complete this part.

**1** Indicate whether the organization raised funds through any of the following activities. Check all that apply.

**a** ☐ Mail solicitations

**b** ☐ Internet and email solicitations

**c** ☐ Phone solicitations

**d** ☐ In-person solicitations

**e** ☐ Solicitation of non-government grants

**f** ☐ Solicitation of government grants

**g** ☐ Special fundraising events

**2a** Did the organization have a written or oral agreement with any individual (including officers, directors, trustees
or key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services? ☐ **Yes** ☐ **No**

**b** If "Yes," list the 10 highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is
to be compensated at least $5,000 by the organization.

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? | | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col. (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| | | **Yes** | **No** | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Total** . . . . . . . . . . . . . . . ▶ | | | | | | |

**3** List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration or
licensing.

------------------------------------------------------------

------------------------------------------------------------

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 50083H **Schedule G (Form 990 or 990-EZ) 2019**

Case 2:22-cv-01656-JAD-JDP   Document 10-1   Filed 02/06/23   Page 136 of 196

**Part II**　**Fundraising Events.** Complete if the organization answered "Yes" on Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000.

| | | **(a)**Event #1<br>**SILICON VALLEY GALA**<br>(event type) | **(b)** Event #2<br>**JUNE 2020 VIRTUAL GALA**<br>(event type) | **(c)**Other events<br>**5**<br>(total number) | **(d)** Total events (add col. **(a)** through col. **(c)**) |
|---|---|---|---|---|---|
| **Revenue** | **1** Gross receipts . . . . . | 469,095 | 360,191 | 462,754 | 1,292,040 |
| | **2** Less: Contributions . . . . | 450,890 | 360,191 | 397,473 | 1,208,554 |
| | **3** Gross income (line 1 minus line 2) | 18,205 | | 65,281 | 83,486 |
| **Direct Expenses** | **4** Cash prizes . . . . . | | | | |
| | **5** Noncash prizes . . . . | 565 | | 3,579 | 4,144 |
| | **6** Rent/facility costs . . . | 10,562 | | 15,383 | 25,945 |
| | **7** Food and beverages . . . | 7,376 | | 16,892 | 24,268 |
| | **8** Entertainment . . . . | 2,000 | | 5,000 | 7,000 |
| | **9** Other direct expenses . . . | 5,600 | 686 | 9,280 | 15,566 |
| | **10** Direct expense summary. Add lines 4 through 9 in column (d) . . . . . . . . . ▶ | | | | 76,923 |
| | **11** Net income summary. Subtract line 10 from line 3, column (d) . . . . . . . . ▶ | | | | 6,563 |

**Part III**　**Gaming.** Complete if the organization answered "Yes" on Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a.

| | | **(a)** Bingo | **(b)** Pull tabs/Instant bingo/progressive bingo | **(c)** Other gaming | **(d)** Total gaming (add col.**(a)** through col.**(c)**) |
|---|---|---|---|---|---|
| **Revenue** | **1** Gross revenue . . . . . | | | | |
| **Direct Expenses** | **2** Cash prizes . . . . . | | | | |
| | **3** Noncash prizes . . . . | | | | |
| | **4** Rent/facility costs . . . | | | | |
| | **5** Other direct expenses . . . | | | | |
| | **6** Volunteer labor . . . . | ☐ **Yes**_____% <br> ☐ **No** | ☐ **Yes**_____% <br> ☐ **No** | ☐ **Yes**_____% <br> ☐ **No** | |
| | **7** Direct expense summary. Add lines 2 through 5 in column (d) . . . . . . . . ▶ | | | | |
| | **8** Net gaming income summary. Subtract line 7 from line 1, column (d) . . . . . . . ▶ | | | | |

**9**　Enter the state(s) in which the organization conducts gaming activities:_____

**a**　Is the organization licensed to conduct gaming activities in each of these states? . . . . . . . . ☐ **Yes** ☐ **No**

**b**　If "No," explain: _____

**10a**　Were any of the organization's gaming licenses revoked, suspended or terminated during the tax year? . . . ☐ **Yes** ☐ **No**

**b**　If "Yes," explain: _____

Case 2:22-cv-01656-DAD-JDP Document 16-1 Filed 02/06/23 Page 137 of 196

**11** Does the organization conduct gaming activities with nonmembers? . . . . . . . . . . . . ☐ Yes ☐ No

**12** Is the organization a grantor, beneficiary or trustee of a trust or a member of a partnership or other entity formed to administer charitable gaming? . . . . . . . . . . . . . . . . ☐ Yes ☐ No

**13** Indicate the percentage of gaming activity conducted in:

**a** The organization's facility . . . . . . . . . . . . . . . . **13a** %

**b** An outside facility . . . . . . . . . . . . . . . . . **13b** %

**14** Enter the name and address of the person who prepares the organization's gaming/special events books and records:

Name ▶ --------------------------------------------------------------------------------

Address ▶ --------------------------------------------------------------------------------

**15a** Does the organization have a contract with a third party from whom the organization receives gaming revenue? . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

**b** If "Yes," enter the amount of gaming revenue received by the organization ▶ $ _____ and the amount of gaming revenue retained by the third party ▶ $ _____ .

**c** If "Yes," enter name and address of the third party:

Name ▶ --------------------------------------------------------------------------------

Address ▶ --------------------------------------------------------------------------------

**16** Gaming manager information:

Name ▶ --------------------------------------------------------------------------------

Gaming manager compensation ▶ $---------------------------------------------

Description of services provided ▶ --------------------------------------------------------------------------------

☐ Director/officer ☐ Employee ☐ Independent contractor

**17** Mandatory distributions:

**a** Is the organization required under state law to make charitable distributions from the gaming proceeds to retain the state gaming license? . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

**b** Enter the amount of distributions required under state law distributed to other exempt organizations or spent in the organization's own exempt activities during the tax year ▶ $

| **Part IV** | **Supplemental Information.** Provide the explanations required by Part I, line 2b, columns (iii) and (v); and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable. Also provide any additional information. See instructions. |
|---|---|
| Return Reference | Explanation |

**Note: To capture the full content of this document, please select landscape mode (11" x 8.5") when printing.**

| Schedule I (Form 990) | Grants and Other Assistance to Organizations, Governments and Individuals in the United States | OMB No. 1545-0047 |
|---|---|---|
| | Complete if the organization answered "Yes," on Form 990, Part IV, line 21 or 22. ▶ Attach to Form 990. ▶ Go to *www.irs.gov/Form990* for the latest information. | **2019** |
| Department of the Treasury Internal Revenue Service | | Open to Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION INC | 68-0551525 |

## Part I  General Information on Grants and Assistance

**1** Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . . . □ Yes ☑ No

**2** Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

## Part II  Grants and Other Assistance to Domestic Organizations and Domestic Governments. Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| (a) Name and address of organization or government | (b) EIN | (c) IRC section (if applicable) | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of noncash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) BAPS SWAMINARAYAN SANSTHA 81 SUTTONS LANE PISCATAWAY, NJ 08854 | 26-1530694 | 501(C)(3) | 5,500 | | | | GRANT TO HOST CAPITOL HILL DIWALI CELEBRATION |

**2** Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . . . . . . . . . . . . ▶ 1

**3** Enter total number of other organizations listed in the line 1 table . . . . . . . . . . . . . . . . . . ▶ 0

| For Paperwork Reduction Act Notice, see the Instructions for Form 990. | Cat. No. 50055P | Schedule I (Form 990) 2019 |
|---|---|---|

**Part III**   **Grants and Other Assistance to Domestic Individuals.** Complete if the organization answered "Yes" on Form 990, Part IV, line 22.

Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of noncash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| (1)<br>CONGRESSIONAL INTERNSHIP - HOUSING AND STIPEND | 11 | 7,100 | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |

**Part IV**   **Supplemental Information.** Provide the information required in Part I, line 2; Part III, column (b); and any other additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 2: | HAF CONTINUES TO MONITOR AND OVERSEE GRANTEES (BOTH INDIVIDUALS AND ORGANIZATIONS) AND REQUIRES THEM TO PROVIDE REPORTS ON THE PROGRESS THEY HAVE MADE TOWARDS ACHIEVING GRANT GOALS AND OBJECTIVES AND A DESCRIPTION OF ACTIVITIES AND EVALUATION CRITERIA. IN ADDITION, GRANTEES MUST PROVIDE AN ONGOING ACCOUNTING OF HOW THE GRANT FUNDS ARE UTILIZED TO ACCOMPLISH PROJECT OBJECTIVES, INCLUDING A DETAILED EXPLANATION OF ALL EXPENSES AND PURCHASES MADE IN CONNECTION WITH THE GRANT FUNDS. HAF ALSO REQUIRES ORGANIZATIONAL GRANTEES TO OPEN THEIR ACCOUNTING BOOKS TO INSPECTION AND TO PROVIDE SITE ACCESS, IF APPLICABLE, UPON REQUEST, AND RETAINS THE POWER TO WITHHOLD FUNDS IF REPORTS ARE NOT PROVIDED OR FUNDS ARE NOT BEING USED FOR THEIR INTENDED PURPOSE. |

**SCHEDULE O**
**(Form 990 or 990-EZ)**

Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.**
▶ **Attach to Form 990 or 990-EZ.**
▶ **Go to _www.irs.gov/Form990_ for the latest information.**

OMB No. 1545-0047

**2019**

**Open to Public
Inspection**

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 140 of 196

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION INC | 68-0551525 |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 2 | ASEEM AND SUHAG SHUKLA HAVE A FAMILY RELATIONSHIP. |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 11B | HAF'S BOARD OF DIRECTORS REVIEWS THE FORM 990 AND VOTES ON SUBMISSION OF THE FORM TO THE INTERNAL REVENUE SERVICE. FORMS 990 ARE SIGNED BY EITHER THE EXECUTIVE DIRECTOR OR THE TREASRUER OF THE ORGANIZATION. |

# 990 Schedule O, Supplemental Information

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 12C | THE CONFLICT OF INTEREST POLICY IS REVIEWED AT LEAST ANNUALLY BY THE DIRECTORS. ALL DIRECTORS AND OFFICERS ARE REQUIRED TO COMPLETE AND SIGN A CONFLICT OF INTEREST STATEMENT ANNUALLY. A DIRECTOR OR OFFICER WITH A CONFLICT OF INTEREST IS PROHIBITED FROM PARTICIPATING IN DELIBERATIONS AND DECISIONS REGARDING THE TRANSACTION. |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 15 | COMPENSATION IS DETERMINED BY THE BOARD BASED UPON INDUSTRY STANDARDS AND COMPARABILITY DATA. |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS ARE AVAILABLE UPON REQUEST. THE FORM 990 IS AVAILABLE ON THE ORGANIZATION'S WEBSITE. |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART XI, LINE 9: | CHANGE IN BENEFICIAL INTEREST IN ASSETS HELD BY HINDU HERITAGE ENDOWMENT -1,149. |

# Exhibit E

Form **990**

OMB No. 1545-0047

# Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

**2020**

▶ Do not enter social security numbers on this form as it may be made public.

Department of the Treasury
Internal Revenue Service

▶ **Go to** *www.irs.gov/Form990* for instructions and the latest information.

**Open to Public Inspection**

**A** For the 2020 calendar year, or tax year beginning 07-01-2020 , and ending 06-30-2021

| **B** Check if applicable: | **C** Name of organization | **D** Employer identification number |
|---|---|---|
| ☑ Address change | HINDU AMERICAN FOUNDATION INC | 68-0551525 |
| ☐ Name change | | |
| ☐ Initial return | Doing business as | |
| ☐ Final return/terminated | | |
| ☐ Amended return | Number and street (or P.O. box if mail is not delivered to street address)   Room/suite | **E** Telephone number |
| ☐ Application pending | 910 17TH ST NW NO 315 | (202) 223-8222 |
| | City or town, state or province, country, and ZIP or foreign postal code | |
| | WASHINGTON, DC  200062601 | **G** Gross receipts $ 3,068,313 |

| **F** Name and address of principal officer: | **H(a)** Is this a group return for subordinates? | ☐ Yes ☑ No |
|---|---|---|
| SHEETAL SHAH | **H(b)** Are all subordinates included? | ☐ Yes ☐ No |
| 910 17TH ST NW NO 315 | | |
| Washington, DC  200062601 | If "No," attach a list. (see instructions) | |

**I** Tax-exempt status: ☑ 501(c)(3)   ☐ 501(c) ( ) ◀ (insert no.)   ☐ 4947(a)(1) or   ☐ 527

**H(c)** Group exemption number ▶

**J** Website: ▶ WWW.HINDUAMERICAN.ORG

**K** Form of organization: ☑ Corporation   ☐ Trust   ☐ Association   ☐ Other ▶

**L** Year of formation: 2003   **M** State of legal domicile: FL

## Part I   Summary

| | | |
|---|---|---|
| **Activities & Governance** | **1** Briefly describe the organization's mission or most significant activities: PROMOTING DIGNITY, MUTUAL RESPECT, AND PLURALISM IN ORDER TO ENSURE THE WELL-BEING OF HINDUS AND FOR ALL PEOPLE AND THE PLANET TO THRIVE. | |
| | **2** Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | |
| | **3** Number of voting members of the governing body (Part VI, line 1a) . . . . . . . | **3** | 5 |
| | **4** Number of independent voting members of the governing body (Part VI, line 1b) . . . . | **4** | 5 |
| | **5** Total number of individuals employed in calendar year 2020 (Part V, line 2a) . . . . . | **5** | 13 |
| | **6** Total number of volunteers (estimate if necessary) . . . . . . . . . . . | **6** | 50 |
| | **7a** Total unrelated business revenue from Part VIII, column (C), line 12 . . . . . . | **7a** | 0 |
| | **b** Net unrelated business taxable income from Form 990-T, line 39 . . . . . . . . | **7b** | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| **Revenue** | **8** Contributions and grants (Part VIII, line 1h) . . . . . . | 1,810,819 | 2,010,673 |
| | **9** Program service revenue (Part VIII, line 2g) . . . . . . | 0 | 0 |
| | **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d ) . . | 262,842 | 67,655 |
| | **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 6,563 | -4,661 |
| | **12** Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 2,080,224 | 2,073,667 |
| **Expenses** | **13** Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) . | 49,901 | 23,817 |
| | **14** Benefits paid to or for members (Part IX, column (A), line 4) . . . | 0 | 0 |
| | **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 999,225 | 1,106,754 |
| | **16a** Professional fundraising fees (Part IX, column (A), line 11e) . . . . | 0 | 0 |
| | **b** Total fundraising expenses (Part IX, column (D), line 25) ▶178,085 | | |
| | **17** Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) . . . | 388,591 | 509,067 |
| | **18** Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 1,437,717 | 1,639,638 |
| | **19** Revenue less expenses. Subtract line 18 from line 12 . . . . . . | 642,507 | 434,029 |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| **Net Assets or Fund Balances** | **20** Total assets (Part X, line 16) . . . . . . . . . . | 3,393,637 | 4,217,262 |
| | **21** Total liabilities (Part X, line 26) . . . . . . . . . . | 220,734 | 223,149 |
| | **22** Net assets or fund balances. Subtract line 21 from line 20 . . | 3,172,903 | 3,994,113 |

## Part II   Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| **Sign Here** | ****** Signature of officer | 2022-02-16 Date |
|---|---|---|
| | SHEETAL SHAH CFO Type or print name and title | |

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN P00086726 |
|---|---|---|---|---|---|
| | Firm's name ▶ WEGNER CPAS LLP | | | Firm's EIN ▶ 39-0974031 | |
| | Firm's address ▶ 419 N LEE ST ALEXANDRIA, VA  223142301 | | | Phone no. (703) 519-0990 | |

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . . . . . . ☑ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.   Cat. No. 11282Y   Form **990** (2020)

| Part III | **Statement of Program Service Accomplishments** |
|---|---|

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 148 of 196 ☑

1  Briefly describe the organization's mission:

THE HINDU AMERICAN FOUNDATION (HAF) IS AN ADVOCACY ORGANIZATION FOR THE HINDU AMERICAN COMMUNITY. THE FOUNDATION EDUCATES THE PUBLIC ABOUT HINDUISM, SPEAKS OUT ABOUT ISSUES AFFECTING HINDUS WORLDWIDE, AND BUILDS BRIDGES WITH INSTITUTIONS AND INDIVIDUALS WHOSE WORK ALIGNS WITH HAF'S OBJECTIVES. HAF'S THREE AREAS OF FOCUS ARE EDUCATION, POLICY, AND COMMUNITY. THROUGH ITS ADVOCACY EFFORTS, HAF PROMOTES DIGNITY, MUTUAL RESPECT, AND PLURALISM IN ORDER TO ENSURE THE WELL-BEING OF HINDUS AND FOR ALL PEOPLE AND THE PLANET TO THRIVE.

**2**  Did the organization undertake any significant program services during the year which were not listed on

the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these new services on Schedule O.

**3**  Did the organization cease conducting, or make significant changes in how it conducts, any program

services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these changes on Schedule O.

**4**  Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

| **4a** | (Code: | ) (Expenses $ | 358,250 | including grants of $ | | ) (Revenue $ | | ) |
|---|---|---|---|---|---|---|---|---|
| | See Additional Data | | | | | | | |

| **4b** | (Code: | ) (Expenses $ | 352,888 | including grants of $ | | ) (Revenue $ | | ) |
|---|---|---|---|---|---|---|---|---|
| | See Additional Data | | | | | | | |

| **4c** | (Code: | ) (Expenses $ | 291,535 | including grants of $ | | 23,817 ) (Revenue $ | | ) |
|---|---|---|---|---|---|---|---|---|
| | See Additional Data | | | | | | | |

| **4d** | Other program services (Describe in Schedule O.) | | | | | |
|---|---|---|---|---|---|---|
| | (Expenses $ | | including grants of $ | | ) (Revenue $ | ) |

| **4e** | Total program service expenses ▶ | 1,002,673 |
|---|---|---|

| Part IV | Checklist of Required Schedules |

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 149 of 196

|  |  | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | **1** | Yes | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? | **2** | Yes | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | **3** | | No |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | **4** | Yes | |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | **5** | | No |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,* Part I | **6** | | No |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | **7** | | No |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | **8** | | No |
| 9 | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | **9** | | No |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | **10** | Yes | |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | **11a** | Yes | |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | **11b** | | No |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | **11c** | | No |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | **11d** | | No |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | Yes | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | | No |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | **12a** | Yes | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | | |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | **14a** | | No |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | **14b** | Yes | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | **15** | Yes | |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | **16** | | No |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* (see instructions) | **17** | | No |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | **18** | Yes | |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | **19** | | No |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | **20a** | | No |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | **21** | | No |

| Part IV | **Checklist of Required Schedules** *(continued)* | | | |
|---|---|---|---|---|

| | | | **Yes** | **No** |
|---|---|---|---|---|
| **22** | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . . | **22** | | No |
| **23** | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . . . . . . | **23** | | No |
| **24a** | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . . . . . . . . | **24a** | | No |
| **b** | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . | **24b** | | |
| **c** | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . . . . . | **24c** | | |
| **d** | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . | **24d** | | |
| **25a** | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* . . . . | **25a** | | |
| **b** | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . . . . . . . . | **25b** | | No |
| **26** | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* . . . . . . . . . | **26** | | No |
| **27** | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . . . . . . . . . . . . . . . . . . . | **27** | | No |
| **28** | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| **a** | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . | **28a** | | No |
| **b** | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* . . . . | **28b** | | No |
| **c** | A 35% controlled entity of one or more individuals and/or organizations described in lines 28a or 28b? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . | **28c** | | No |
| **29** | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . | **29** | | No |
| **30** | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . . . . . | **30** | | No |
| **31** | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | **31** | | No |
| **32** | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . . . . . . . . | **32** | | No |
| **33** | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . . . | **33** | | No |
| **34** | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . . . . . . . | **34** | | No |
| **35a** | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | No |
| **b** | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . . | **35b** | | |
| **36** | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . . . . . | **36** | | No |
| **37** | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* . . | **37** | | No |
| **38** | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. . . . . . . . . . . . . . . | **38** | Yes | |

| Part V | **Statements Regarding Other IRS Filings and Tax Compliance** | | | |
|---|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . ☐

| | | | **Yes** | **No** |
|---|---|---|---|---|
| **1a** | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable . . | **1a** | 12 | | |
| **b** | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable . | **1b** | 0 | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . . . . . . | | **1c** | | |

Form 990 (2020)

| Part V | Statements Regarding Other IRS Filings and Tax Compliance *(continued)* |

Case 2:22-cv-01650-DAD-JDP Document 10-1 Filed 02/06/23 Page 151 of 196

| | | | | Yes | No |
|---|---|---|---|---|---|
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return . . . . . . . . . . . . . . . . . . . . . **2a** | | 13 | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | **2b** | | Yes | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? . . . | **3a** | | | No |
| **b** | If "Yes," has it filed a Form 990-T for this year?*If "No" to line 3b, provide an explanation in Schedule O* . . . | **3b** | | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . | **4a** | | | No |
| **b** | If "Yes," enter the name of the foreign country: ▶ _____ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? . . | **5a** | | | No |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | **5b** | | | No |
| **c** | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? . . . . . . . . . . . . | **5c** | | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? . . . | **6a** | | | No |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . | **6b** | | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? . . . . . . . . . . . . . . . . . | **7a** | | | No |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? . . . . . | **7b** | | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? . . . . . . . . . . . . . . . . . . . . . . | **7c** | | | No |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year . . . . . **7d** | | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | **7e** | | | No |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? . . | **7f** | | | No |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? . . . . . . . . . . . . . . . . . . . . . | **7g** | | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? . . . . . . . . . . . . . . . . . . . . . | **7h** | | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? . . . . . . | **8** | | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966? . . . . . . . | **9a** | | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? . . . | **9b** | | | |
| 10 | **Section 501(c)(7) organizations.** Enter: | | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 . . . **10a** | | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities **10b** | | | | |
| 11 | **Section 501(c)(12) organizations.** Enter: | | | | |
| **a** | Gross income from members or shareholders . . . . . . . . . **11a** | | | | |
| **b** | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . **11b** | | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | **12a** | | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. **12b** | | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? . . . . . . . . **Note.** See the instructions for additional information the organization must report on Schedule O. | **13a** | | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans . . . . . **13b** | | | | |
| **c** | Enter the amount of reserves on hand **13c** | | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? . . . . . . | **14a** | | | No |
| **b** | If "Yes," has it filed a Form 720 to report these payments?*If "No," provide an explanation in Schedule O* . . | **14b** | | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? . . . . . . . . . . . . . . . If "Yes," see instructions and file Form 4720, Schedule N. | **15** | | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? . . If "Yes," complete Form 4720, Schedule O. | **16** | | | No |

| Part VI | Governance, Management, and Disclosure *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.* |
|---------|---|

Case 3:22-cv-01032-JPB  Document 14  Filed 02/06/23  Page 152 of 196

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . . . . . ☑

### Section A. Governing Body and Management

|  |  |  |  | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year | **1a** | 5 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent | **1b** | 5 | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . . . | | | **2** | | No |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? . | | | **3** | | No |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . | | | **4** | | No |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? . | | | **5** | | No |
| **6** | Did the organization have members or stockholders? . . . . . . . . . . . . . . | | | **6** | | No |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . . . . . . . . | | | **7a** | | No |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . . . . . . . . | | | **7b** | | No |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | | |
| **a** | The governing body? . . . . . . . . . . . . . . . . . . . . | | | **8a** | Yes | |
| **b** | Each committee with authority to act on behalf of the governing body? . . . . . . . . . | | | **8b** | Yes | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* . . . . . . . | | | **9** | | No |

### Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

|  |  | Yes | No |
|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . . | **10a** | Yes | |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | Yes | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? . . . . . . . . . . . . . . . . . . . . . . . | **11a** | Yes | |
| **b** | Describe in Schedule O the process, if any, used by the organization to review this Form 990. . . . . . | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* . . . . . . . . | **12a** | Yes | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? . . . . . . . . . . . . . . . . . . . . . . . . | **12b** | Yes | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* . . . . . . . . . . . . . . . . . . . | **12c** | Yes | |
| **13** | Did the organization have a written whistleblower policy? . . . . . . . . . . . . . | **13** | Yes | |
| **14** | Did the organization have a written document retention and destruction policy? . . . . . . . . | **14** | Yes | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** | The organization's CEO, Executive Director, or top management official . . . . . . . . . . | **15a** | Yes | |
| **b** | Other officers or key employees of the organization . . . . . . . . . . . . . . | **15b** | Yes | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . . . . . . . | **16a** | | No |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . . . . . . . . . | **16b** | | |

### Section C. Disclosure

**17** List the states with which a copy of this Form 990 is required to be filed▶

CA , IL , MD , MA , MI , NJ , NY , PA , VA , WA , DC , FL

**18** Section 6104 requires an organization to make its Form 1023 (or 1024-A if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☑ Own website  ☐ Another's website  ☑ Upon request  ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
▶SHEETAL SHAH   910 17TH ST NW NO 315   WASHINGTON, DC 200062601 (202) 223-8222

**Part VII** **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 153 of 196

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . □

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

● List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

● List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See instructions for the order in which to list the persons above.

□ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) MIHIR MEGHANI<br>................<br>PRESIDENT | 3.00 | X | | X | | | | 0 | 0 | 0 |
| (2) RISHI BHUTADA<br>................<br>TREASURER | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (3) RAJIV PANDIT<br>................<br>SECRETARY | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (4) ARJUN BHAGAT<br>................<br>DIRECTOR | 1.00 | X | | | | | | 0 | 0 | 0 |
| (5) SWAMINATHAN VENKATARAMAN<br>................<br>DIRECTOR | 1.00 | X | | | | | | 0 | 0 | 0 |
| (6) SHEETAL SHAH<br>................<br>CFO | 48.00 | | | X | | | | 93,373 | 0 | 0 |
| (7) SUHAG SHUKLA<br>................<br>EXECUTIVE DIRECTOR | 48.00 | | | X | | | | 98,200 | 0 | 0 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 154 of 196

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |
|---|---|

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b Sub-Total** . . . . . . . . . . . . . ▶ | | | | | | | | | | |
| **c Total from continuation sheets to Part VII, Section A** . . . . ▶ | | | | | | | | | | |
| **d Total (add lines 1b and 1c)** . . . . . . . . . . ▶ | | | | | | | | 191,573 | 0 | 0 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 0

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? If "Yes," complete Schedule J for such individual . . . . . . . . . . . . . . . . . . **3** | | No |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? If "Yes," complete Schedule J for such individual . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4** | | No |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? If "Yes," complete Schedule J for such person . . . . . . . . . **5** | | No |

### Section B. Independent Contractors

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 0

| Part VIII | **Statement of Revenue** |

Case 2:22-cv-00155-DAO-JCP · Document 11 · Filed 02/06/23 · Page 155 of 196

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . ☐

|  |  |  | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1a** Federated campaigns . . | **1a** |  |  |  |  |
|  | **b** Membership dues . . | **1b** |  |  |  |  |
|  | **c** Fundraising events . . | **1c** | 239,180 |  |  |  |
|  | **d** Related organizations | **1d** |  |  |  |  |
|  | **e** Government grants (contributions) | **1e** | 189,032 |  |  |  |
|  | **f** All other contributions, gifts, grants, and similar amounts not included above | **1f** | 1,582,461 |  |  |  |
|  | **g** Noncash contributions included in lines 1a - 1f:$ | **1g** |  |  |  |  |
|  | **h Total.** Add lines 1a-1f . . . . . . . ▶ |  | 2,010,673 |  |  |  |
| **Program Service Revenue** | **2a** | Business Code |  |  |  |  |
|  | **b** |  |  |  |  |  |
|  | **c** |  |  |  |  |  |
|  | **d** |  |  |  |  |  |
|  | **e** |  |  |  |  |  |
|  | **f** All other program service revenue. |  |  |  |  |  |
|  | **g Total.** Add lines 2a–2f. . . . . ▶ |  |  |  |  |  |
| **Other Revenue** | **3** Investment income (including dividends, interest, and other similar amounts) . . . . . . ▶ |  | 34,330 |  |  | 34,330 |
|  | **4** Income from investment of tax-exempt bond proceeds ▶ |  |  |  |  |  |
|  | **5** Royalties . . . . . . . . . . . . ▶ |  |  |  |  |  |
|  |  | (i) Real | (ii) Personal |  |  |  |  |
|  | **6a** Gross rents | **6a** |  |  |  |  |  |
|  | **b** Less: rental expenses | **6b** |  |  |  |  |  |
|  | **c** Rental income or (loss) | **6c** |  |  |  |  |  |
|  | **d** Net rental income or (loss) . . . . . . ▶ |  |  |  |  |  |
|  |  | (i) Securities | (ii) Other |  |  |  |  |
|  | **7a** Gross amount from sales of assets other than inventory | **7a** | 1,020,310 |  |  |  |  |
|  | **b** Less: cost or other basis and sales expenses | **7b** | 986,985 |  |  |  |  |
|  | **c** Gain or (loss) | **7c** | 33,325 |  |  |  |  |
|  | **d** Net gain or (loss) . . . . . . . . ▶ |  | 33,325 |  |  | 33,325 |
|  | **8a** Gross income from fundraising events (not including $ 239,180 of contributions reported on line 1c). See Part IV, line 18 . . . . | **8a** | 3,000 |  |  |  |
|  | **b** Less: direct expenses . . . | **8b** | 7,661 |  |  |  |
|  | **c** Net income or (loss) from fundraising events . . ▶ |  | -4,661 |  |  | -4,661 |
|  | **9a** Gross income from gaming activities. See Part IV, line 19 . . . | **9a** |  |  |  |  |
|  | **b** Less: direct expenses . . . | **9b** |  |  |  |  |
|  | **c** Net income or (loss) from gaming activities . . ▶ |  |  |  |  |  |
|  | **10a** Gross sales of inventory, less returns and allowances . . | **10a** |  |  |  |  |
|  | **b** Less: cost of goods sold . . | **10b** |  |  |  |  |
|  | **c** Net income or (loss) from sales of inventory . . ▶ |  |  |  |  |  |
|  | Miscellaneous Revenue | Business Code |  |  |  |  |
|  | **11a** |  |  |  |  |  |
|  | **b** |  |  |  |  |  |
|  | **c** |  |  |  |  |  |
|  | **d** All other revenue . . . . . |  |  |  |  |  |
|  | **e Total.** Add lines 11a–11d . . . . . . ▶ |  |  |  |  |  |
|  | **12 Total revenue.** See instructions . . . . . ▶ |  | 2,073,667 | 0 | 0 | 62,994 |

| Part IX | Statement of Functional Expenses |

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 156 of 196

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 . . . . . | 12,516 | 12,516 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 . . . . . . . . . . . | 1,301 | 1,301 | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. . . . . . . . . . . . . . . | 10,000 | 10,000 | | |
| **4** Benefits paid to or for members . . . . . . . . | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . . . . . . . . . | 202,836 | 146,042 | 28,397 | 28,397 |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . . . . . | | | | |
| **7** Other salaries and wages . . . . . . . . . | 774,243 | 555,629 | 111,634 | 106,980 |
| **8** Pension plan accruals and contributions (include section 401 (k) and 403(b) employer contributions) . . . . . | | | | |
| **9** Other employee benefits . . . . . . . . | 54,457 | 46,416 | 7,981 | 60 |
| **10** Payroll taxes . . . . . . . . . . . | 75,218 | 52,766 | 11,849 | 10,603 |
| **11** Fees for services (non-employees): | | | | |
| **a** Management . . . . . . . . . | | | | |
| **b** Legal . . . . . . . . . . . . | 166,731 | 41,323 | 125,408 | |
| **c** Accounting . . . . . . . . . . . | 28,739 | | 28,639 | 100 |
| **d** Lobbying . . . . . . . . . . . | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | | | | |
| **f** Investment management fees . . . . . . | 14,951 | | 14,951 | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 135,678 | 70,308 | 59,398 | 5,972 |
| **12** Advertising and promotion . . . . . | 775 | | | 775 |
| **13** Office expenses . . . . . . . . . | 31,930 | 16,065 | 13,230 | 2,635 |
| **14** Information technology . . . . . . . | 3,822 | 2,995 | 33 | 794 |
| **15** Royalties . . . | | | | |
| **16** Occupancy . . . . . . . . . . | 61,868 | 30,615 | 15,946 | 15,307 |
| **17** Travel . . . . . . . . . . . | 9,477 | 3,163 | 6,198 | 116 |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials . | | | | |
| **19** Conferences, conventions, and meetings . . . . . | 309 | | 309 | |
| **20** Interest . . . . . . . . . . . | | | | |
| **21** Payments to affiliates . . . . . . . . | | | | |
| **22** Depreciation, depletion, and amortization . . | 7,943 | 7,026 | 917 | |
| **23** Insurance . . . . | 6,039 | | 6,039 | |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** DUES AND SUBSCRIPTIONS | 40,805 | 6,508 | 27,951 | 6,346 |
| **b** | | | | |
| **c** | | | | |
| **d** | | | | |
| **e** All other expenses | | | | |
| **25** **Total functional expenses.** Add lines 1 through 24e | 1,639,638 | 1,002,673 | 458,880 | 178,085 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

**Part X** Balance Sheet

Case 2:22-cv-01656-DAD-JDP · Document 10-1 · Filed 02/06/23 · Page 157 of 196

Check if Schedule O contains a response or note to any line in this Part X . . . . . . . . ☐

| | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|
| **Assets** | 1 | Cash—non-interest-bearing . . . . . . . . . | 350,504 | 1 | 320,972 |
| | 2 | Savings and temporary cash investments . . . . . . . | 1,317,011 | 2 | 1,156,878 |
| | 3 | Pledges and grants receivable, net . . . . . . . | 431,223 | 3 | 285,774 |
| | 4 | Accounts receivable, net . . . . . . . . | | 4 | |
| | 5 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons . . . . . . | | 5 | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) . . . . | | 6 | |
| | 7 | Notes and loans receivable, net . . . . . . . | | 7 | |
| | 8 | Inventories for sale or use . . . . . . . | | 8 | |
| | 9 | Prepaid expenses and deferred charges . . . . . . | 17,497 | 9 | 26,634 |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D **10a** 71,266 | | | |
| | b | Less: accumulated depreciation **10b** 40,147 | 14,849 | 10c | 31,119 |
| | 11 | Investments—publicly traded securities . | 1,200,409 | 11 | 2,320,852 |
| | 12 | Investments—other securities. See Part IV, line 11 . . . . | | 12 | |
| | 13 | Investments—program-related. See Part IV, line 11 . . | | 13 | |
| | 14 | Intangible assets . . . . . . . . . . | | 14 | |
| | 15 | Other assets. See Part IV, line 11 . . . . . . . . | 62,144 | 15 | 75,033 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) . . . | 3,393,637 | 16 | 4,217,262 |
| **Liabilities** | 17 | Accounts payable and accrued expenses . . . . . | 6,208 | 17 | 9,075 |
| | 18 | Grants payable . . . . | | 18 | |
| | 19 | Deferred revenue . . . . . . . . | | 19 | |
| | 20 | Tax-exempt bond liabilities . . . . . . . . | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons . . . . . . . . . | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties . . | | 23 | |
| | 24 | Unsecured notes and loans payable to unrelated third parties . . | 189,032 | 24 | 189,032 |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | 25,494 | 25 | 25,042 |
| | 26 | **Total liabilities.** Add lines 17 through 25 . . | 220,734 | 26 | 223,149 |
| **Net Assets or Fund Balances** | | **Organizations that follow FASB ASC 958, check here ▶ ☑ and complete lines 27, 28, 32, and 33.** | | | |
| | 27 | Net assets without donor restrictions . . . . . . . . | 2,748,281 | 27 | 3,708,339 |
| | 28 | Net assets with donor restrictions . . . . . . . . | 424,622 | 28 | 285,774 |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | |
| | 29 | Capital stock or trust principal, or current funds . . . . . | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund . . . | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds . . | | 31 | |
| | 32 | Total net assets or fund balances . . . . . . . . | 3,172,903 | 32 | 3,994,113 |
| | 33 | Total liabilities and net assets/fund balances . . . . . . . | 3,393,637 | 33 | 4,217,262 |

| Part XI | **Reconcilliation of Net Assets** |

Case 2:22-cv-01656-DAD-JDP Document 13-1 Filed 02/06/23 Page 158 of 196 ☑

| | | | | |
|---|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . . . . . | **1** | | 2,073,667 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . . . . | **2** | | 1,639,638 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . . . . . | **3** | | 434,029 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) . . | **4** | | 3,172,903 |
| 5 | Net unrealized gains (losses) on investments . . . . . . . . . . . . . . . . | **5** | | 374,291 |
| 6 | Donated services and use of facilities . . . . . . . . . . . . . . . . . . | **6** | | |
| 7 | Investment expenses . . . . . . . . . . . . . . . . . . . . . . . | **7** | | |
| 8 | Prior period adjustments . . . . . . . . . . . . . . . . . . . . . . | **8** | | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . . . | **9** | | 12,890 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | **10** | | 3,994,113 |

| Part XII | **Financial Statements and Reporting** |

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . . . . . . . . □

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: □ Cash ☑ Accrual □ Other _____ | | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | **2a** | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | | |
| | □ Separate basis □ Consolidated basis □ Both consolidated and separate basis | | | |
| **b** | Were the organization's financial statements audited by an independent accountant? | **2b** | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | | |
| | ☑ Separate basis □ Consolidated basis □ Both consolidated and separate basis | | | |
| **c** | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | **2c** | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | **3a** | | No |
| **b** | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | **3b** | | |

# Additional Data

**Software ID:**

**Software Version:**

**EIN:** 68-0551525

**Name:** HINDU AMERICAN FOUNDATION INC

Form 990 (2020)

**Form 990, Part III, Line 4a:**

EDUCATION - IMPROVE THE UNDERSTANDING OF HINDUISM AND HINDUS 1. WORK TOWARDS AN EQUITABLE AND ACCURATE PORTRAYAL OF HINDUISM IN K-12 TEXTBOOKS AND IN CLASSROOMS. 2. PROMOTE A BALANCED UNDERSTANDING OF HINDUISM AS A LIVED TRADITION IN ACADEMIA. 3. IMPROVE NARRATIVES ABOUT HINDUS AND HINDUISM IN MEDIA.

**Form 990, Part III, Line 4b:**

POLICY - PROMOTE POLICIES THAT ENSURE THE WELL-BEING OF HINDUS WORLDWIDE AND BENEFIT ALL PEOPLE AND THE PLANET. 1. ADVOCATE FOR POLICIES THAT SECURE THE WELL-BEING OF HINDUS IN THE US. 2. ADVOCATE FOR POLICIES THAT SECURE THE HUMAN RIGHTS OF HINDUS AROUND THE WORLD AND PROMOTE PEACE, PROSPERITY AND PLURALISM IN INDIA, THE SPIRITUAL HOME OF HINDUS. 3. ADVOCATE FOR SOLUTIONS ALIGNED WITH OR INSPIRED BY HINDU TEACHINGS FOR THE BENEFIT OF ALL PEOPLE AND THE PLANET.

**Form 990, Part III, Line 4c:**

COMMUNITY - EMPOWER HINDU AMERICAN COMMUNITIES AND PARTNER INSTITUTIONS. 1. ENHANCE THE WELL-BEING, SAFETY, AND SECURITY OF HINDU COMMUNITIES AND INSTITUTIONS. 2. BUILD A CULTURE OF ADVOCACY. 3. PROMOTE THE RECOGNITION OF HINDUISM AND HINDU CONTRIBUTIONS.

| **SCHEDULE A** | **Public Charity Status and Public Support** | OMB No. 1545-0047 |
|---|---|---|

**(Form 990 or 990EZ)**

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 162 of 196

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**

▶ **Attach to Form 990 or Form 990-EZ.**

▶ **Go to** *www.irs.gov/Form990* **for instructions and the latest information.**

**2020**

**Open to Public Inspection**

Department of the Treasury
Internal Revenue Service

| **Name of the organization** | **Employer identification number** |
|---|---|
| HINDU AMERICAN FOUNDATION INC | 68-0551525 |

**Part I**    **Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990 or 990-EZ).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170 (b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☑ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 331/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 331/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box in lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f   Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . _____

g   Provide the following information about the supported organization(s).

| **(i)** Name of supported organization | **(ii)** EIN | **(iii)** Type of organization (described on lines 1- 10 above (see instructions)) | **(iv)** Is the organization listed in your governing document? | | **(v)** Amount of monetary support (see instructions) | **(vi)** Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | **Yes** | **No** | | |
| | | | | | | |
| | | | | | | |
| **Total** | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.      Cat. No. 11285F      **Schedule A (Form 990 or 990-EZ) 2020**

**Part II**  **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III.
If the organization failed to qualify under the tests listed below, please complete Part III.)

Case 2:22-cv-01658-DAD-JDP   Document 10-1   Filed 02/06/23   Page 163 of 196

## Section A. Public Support

| Calendar year<br>(or fiscal year beginning in) ▶ | (a) 2016 | (b) 2017 | (c) 2018 | (d) 2019 | (e) 2020 | (f) Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") . . | 1,288,294 | 1,294,009 | 301,419 | 1,810,819 | 2,010,673 | 6,705,214 |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . . | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| **4 Total.** Add lines 1 through 3 | 1,288,294 | 1,294,009 | 301,419 | 1,810,819 | 2,010,673 | 6,705,214 |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) . . | | | | | | 491,923 |
| **6 Public support.** Subtract line 5 from line 4. | | | | | | 6,213,291 |

## Section B. Total Support

| Calendar year<br>(or fiscal year beginning in) ▶ | (a) 2016 | (b) 2017 | (c) 2018 | (d) 2019 | (e) 2020 | (f) Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4. . | 1,288,294 | 1,294,009 | 301,419 | 1,810,819 | 2,010,673 | 6,705,214 |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . . | 39,188 | 49,098 | 21,584 | 37,729 | 34,330 | 181,929 |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on. . | | | | | | |
| **10** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). . | | | | | | |
| **11 Total support.** Add lines 7 through 10 | | | | | | 6,887,143 |

| **12** Gross receipts from related activities, etc. (see instructions) . . . . . . . . . . . . . . . | **12** | |
|---|---|---|

**13** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check

this box and **stop here** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

## Section C. Computation of Public Support Percentage

| **14** Public support percentage for 2020 (line 6, column (f) divided by line 11, column (f)) . . . . . . . . . | **14** | 90.220 % |
|---|---|---|
| **15** Public support percentage for 2019 Schedule A, Part II, line 14 . . . . . . . . . . . . . . . | **15** | 89.540 % |

**16a 33 1/3% support test—2020.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box

and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . . ▶ ☑

 **b** **33 1/3% support test—2019.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this

box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . ▶ ☐

**17a 10%-facts-and-circumstances test—2020.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported

organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

 **b** **10%-facts-and-circumstances test—2019.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly

supported organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see

instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

| **Part III** | **Support Schedule for Organizations Described in Section 509(a)(2)** |
|---|---|

(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 164 of 196

### Section A. Public Support

| **Calendar year**<br>(or fiscal year beginning in) ▶ | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** 2020 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . . | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| **c** Add lines 7a and 7b. . | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6.) | | | | | | |

### Section B. Total Support

| **Calendar year**<br>(or fiscal year beginning in) ▶ | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** 2020 | **(f)** Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. . . . | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| **c** Add lines 10a and 10b. | | | | | | |
| **11** Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.) . . | | | | | | |

**14** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

### Section C. Computation of Public Support Percentage

| | | | |
|---|---|---|---|
| **15** Public support percentage for 2020 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | **15** | |
| **16** Public support percentage from 2019 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . . | **16** | |

### Section D. Computation of Investment Income Percentage

| | | | |
|---|---|---|---|
| **17** Investment income percentage for **2020** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | |
| **18** Investment income percentage from **2019** Schedule A, Part III, line 17 . . . . . . . . . . . . . | **18** | |

**19a** **331/3% support tests—2020.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here**. The organization qualifies as a publicly supported organization . . . . . . . ▶ ☐

  **b** **33 1/3% support tests—2019.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here**. The organization qualifies as a publicly supported organization . . . . ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . . ▶ ☐

## Part IV Supporting Organizations

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

### Section A. All Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509 (a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use.* **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI**, including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI**.* **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ) .* **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ).* **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI**.* **9a** | | |
| **b** | Did one or more disqualified persons (as defined in line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI**.* **9b** | | |
| **c** | Did a disqualified person (as defined in line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI**.* **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* **10b** | | |

Case 2:22-cv-01856-DAD-JDP Document 10-1 Filed 02/06/23 Page 165 of 196

**Part IV** **Supporting Organizations** (continued)

| | | Yes | No |
|---|---|---|---|
| 11 | Has the organization accepted a gift or contribution from any of the following persons? | | |
| a | A person who directly or indirectly controls, either alone or together with persons described in lines 11b and 11c below, the governing body of a supported organization? | | |
| | **11a** | | |
| b | A family member of a person described in 11a above? **11b** | | |
| c | A 35% controlled entity of a person described in line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in **Part VI**.* **11c** | | |

### Section B. Type I Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| 1 | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* **1** | | |
| 2 | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* **2** | | |

### Section C. Type II Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| 1 | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in **Part VI** how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* **1** | | |

### Section D. All Type III Supporting Organizations

| | | Yes | No |
|---|---|---|---|
| 1 | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? **1** | | |
| 2 | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization (s) or (ii) serving on the governing body of a supported organization? *If "No," explain in **Part VI** how the organization maintained a close and continuous working relationship with the supported organization(s).* **2** | | |
| 3 | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in **Part VI** the role the organization's supported organizations played in this regard.* **3** | | |

### Section E. Type III Functionally-Integrated Supporting Organizations

1   Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

a ☐    The organization satisfied the Activities Test. Complete **line 2** below.

b ☐    The organization is the parent of each of its supported organizations. Complete **line 3** below.

c ☐    The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

2   Activities Test. **Answer lines 2a and 2b below.**

| | | Yes | No |
|---|---|---|---|
| a | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in **Part VI identify those supported organizations and explain** how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* **2a** | | |
| b | Did the activities described in line 2a constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* **2b** | | |

3   Parent of Supported Organizations. **Answer lines 3a and 3b below.**

| | | Yes | No |
|---|---|---|---|
| a | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *If "Yes" or "No" provide details in **Part VI**.* **3a** | | |
| b | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in **Part VI**. the role played by the organization in this regard.* **3b** | | |

## Part V   Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations

**1** ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 (*explain in Part VI*). **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

Case 2:22-cv-01656-DAD-JDP   Document 10   Filed 02/06/23   Page 167 of 196

| Section A - Adjusted Net Income | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| **1** Net short-term capital gain | **1** | | |
| **2** Recoveries of prior-year distributions | **2** | | |
| **3** Other gross income (see instructions) | **3** | | |
| **4** Add lines 1 through 3 | **4** | | |
| **5** Depreciation and depletion | **5** | | |
| **6** Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | **6** | | |
| **7** Other expenses (see instructions) | **7** | | |
| **8** **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | **8** | | |

| Section B - Minimum Asset Amount | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|
| **1** Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | **1** | | |
| **a** Average monthly value of securities | **1a** | | |
| **b** Average monthly cash balances | **1b** | | |
| **c** Fair market value of other non-exempt-use assets | **1c** | | |
| **d** **Total** (add lines 1a, 1b, and 1c) | **1d** | | |
| **e** **Discount** claimed for blockage or other factors (*explain in detail in **Part VI***): | | | |
| **2** Acquisition indebtedness applicable to non-exempt use assets | **2** | | |
| **3** Subtract line 2 from line 1d | **3** | | |
| **4** Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | **4** | | |
| **5** Net value of non-exempt-use assets (subtract line 4 from line 3) | **5** | | |
| **6** Multiply line 5 by 0.035 | **6** | | |
| **7** Recoveries of prior-year distributions | **7** | | |
| **8** **Minimum Asset Amount** (add line 7 to line 6) | **8** | | |

| Section C - Distributable Amount | | | Current Year |
|---|---|---|---|
| **1** Adjusted net income for prior year (from Section A, line 8, Column A) | **1** | | |
| **2** Enter 85% of line 1 | **2** | | |
| **3** Minimum asset amount for prior year (from Section B, line 8, Column A) | **3** | | |
| **4** Enter greater of line 2 or line 3 | **4** | | |
| **5** Income tax imposed in prior year | **5** | | |
| **6** **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | **6** | | |

**7** ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

| **Part V** | Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations | (continued) |
|---|---|---|

**Section D Distributions** Case 1:22-cv-01656-DAD-JDP　Document 10-1　Filed 02/06/23　Page 168 of 196 **Current Year**

| | | | |
|---|---|---|---|
| **1** | Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** | Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** | Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** | Amounts paid to acquire exempt-use assets | **4** | |
| **5** | Qualified set-aside amounts (*prior IRS approval required - provide details in **Part VI***) | **5** | |
| **6** | Other distributions (*describe in **Part VI***). See instructions | **6** | |
| **7** | **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** | Distributions to attentive supported organizations to which the organization is responsive (*provide details in **Part VI***). See instructions | **8** | |
| **9** | Distributable amount for 2020 from Section C, line 6 | **9** | |
| **10** | Line 8 amount divided by Line 9 amount | **10** | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** Excess Distributions | **(ii)** Underdistributions Pre-2020 | **(iii)** Distributable Amount for 2020 |
|---|---|---|---|
| **1** Distributable amount for 2020 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2020 (reasonable cause required-- *explain in **Part VI***). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2020: | | | |
| **a** From 2015. . . . . . . . | | | |
| **b** From 2016. . . . . . . . | | | |
| **c** From 2017. . . . . . . . | | | |
| **d** From 2018. . . . . . . . | | | |
| **e** From 2019. . . . . . . . | | | |
| **f** **Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2020 distributable amount | | | |
| **i** Carryover from 2015 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2020 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2020 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2020, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in **Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2020. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in **Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2021.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2016. . . . . . | | | |
| **b** Excess from 2017. . . . . . | | | |
| **c** Excess from 2018. . . . . . | | | |
| **d** Excess from 2019. . . . . . | | | |
| **e** Excess from 2020. . . . . . | | | |

**Schedule A (Form 990 or 990-EZ)** (2020)

| Part VI | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a, and 3b; Part V, line 1; Part V, Section B, line 1e; Part V, Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions). |

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 169 of 196

|  |
|--|
| **Facts And Circumstances Test** |
|  |

**990 Schedule A, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| SCHEDULE A, PART II: | THE 2018 COLUMN ON SCHEDULE A, PART II REPRESENTS THE SHORT TAX YEAR BEGINNING JANUARY 1, 2019 AND ENDING JUNE 30, 2019. |

**SCHEDULE C**
**(Form 990 or 990-EZ)**

Department of the Treasury
Internal Revenue Service

# Political Campaign and Lobbying Activities

OMB No. 1545-0047

**For Organizations Exempt From Income Tax Under section 501(c) and section 527**

►Complete if the organization is described below. ►Attach to Form 990 or Form 990-EZ.
►Go to *www.irs.gov/Form990* for instructions and the latest information.

**2020**

**Open to Public
Inspection**

**If the organization answered "Yes" on Form 990, Part IV, Line 3, or Form 990-EZ, Part V, line 46 (Political Campaign Activities), then**
- Section 501(c)(3) organizations: Complete Parts I-A and B. Do not complete Part I-C.
- Section 501(c) (other than section 501(c)(3)) organizations: Complete Parts I-A and C below. Do not complete Part I-B.
- Section 527 organizations: Complete Part I-A only.

**If the organization answered "Yes" on Form 990, Part IV, Line 4, or Form 990-EZ, Part VI, line 47 (Lobbying Activities), then**
- Section 501(c)(3) organizations that have filed Form 5768 (election under section 501(h)): Complete Part II-A. Do not complete Part II-B.
- Section 501(c)(3) organizations that have NOT filed Form 5768 (election under section 501(h)): Complete Part II-B. Do not complete Part II-A.

**If the organization answered "Yes" on Form 990, Part IV, Line 5 (Proxy Tax) (see separate instructions) or Form 990-EZ, Part V, line 35c (Proxy Tax) (see separate instructions), then**
- Section 501(c)(4), (5), or (6) organizations: Complete Part III.

| Name of the organization<br>HINDU AMERICAN FOUNDATION INC | Employer identification number |
|---|---|
| | 68-0551525 |

| **Part I-A** | **Complete if the organization is exempt under section 501(c) or is a section 527 organization.** |
|---|---|

**1** Provide a description of the organization's direct and indirect political campaign activities in Part IV (see instructions for definition of "political campaign activities")

**2** Political campaign activity expenditures (see instructions) .......................................... ► $ _____

**3** Volunteer hours for political campaign activities (see instructions) ..................................................... _____

| **Part I-B** | **Complete if the organization is exempt under section 501(c)(3).** |
|---|---|

**1** Enter the amount of any excise tax incurred by the organization under section 4955 ............................... ► $ _____

**2** Enter the amount of any excise tax incurred by organization managers under section 4955 ....................... ► $ _____

**3** If the organization incurred a section 4955 tax, did it file Form 4720 for this year? ......................................... ☐ **Yes** ☐ **No**

**4a** Was a correction made? ................................................................ ☐ **Yes** ☐ **No**

**b** If "Yes," describe in Part IV.

| **Part I-C** | **Complete if the organization is exempt under section 501(c), except section 501(c)(3).** |
|---|---|

**1** Enter the amount directly expended by the filing organization for section 527 exempt function activities ..... ► $ _____

**2** Enter the amount of the filing organization's funds contributed to other organizations for section 527 exempt function activities .................................................................................... ► $ _____

**3** Total exempt function expenditures. Add lines 1 and 2. Enter here and on Form 1120-POL, line 17b.......... ► $ _____

**4** Did the filing organization file **Form 1120-POL** for this year? ................................................................ ☐ **Yes** ☐ **No**

**5** Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments. For each organization listed, enter the amount paid from the filing organization's funds. Also enter the amount of political contributions received that were promptly and directly delivered to a separate political organization, such as a separate segregated fund or a political action committee (PAC). If additional space is needed, provide information in Part IV.

| | **(a)** Name | **(b)** Address | **(c)** EIN | **(d)** Amount paid from filing organization's funds. If none, enter -0-. | **(e)** Amount of political contributions received and promptly and directly delivered to a separate political organization. If none, enter -0-. |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |

**Part II-A**　Complete if the organization is exempt under section 501(c)(3) and filed Form 5768 (election under

section 501(h)).

**A**　Check　▶ ☐　if the filing organization belongs to an affiliated group (and list in Part IV each affiliated group member's name, address, EIN, expenses, and share of excess lobbying expenditures).

**B**　Check　▶ ☐　if the filing organization checked box A and "limited control" provisions apply.

| Limits on Lobbying Expenditures<br>(The term "expenditures" means amounts paid or incurred.) | | (a) Filing organization's totals | (b) Affiliated group totals |
|---|---|---|---|
| **1a** Total lobbying expenditures to influence public opinion (grass roots lobbying) ..................... | | 10,800 | |
| **b** Total lobbying expenditures to influence a legislative body (direct lobbying) ........................ | | 10,233 | |
| **c** Total lobbying expenditures (add lines 1a and 1b) ............................................................ | | 21,033 | |
| **d** Other exempt purpose expenditures .............................................................................. | | 1,618,605 | |
| **e** Total exempt purpose expenditures (add lines 1c and 1d) .................................................. | | 1,639,638 | |
| **f** Lobbying nontaxable amount. Enter the amount from the following table in both columns. | | 231,982 | |

| If the amount on line 1e, column (a) or (b) is: | The lobbying nontaxable amount is: |
|---|---|
| Not over $500,000 | 20% of the amount on line 1e. |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000. |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000. |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000. |
| Over $17,000,000 | $1,000,000. |

| | | | |
|---|---|---|---|
| **g** Grassroots nontaxable amount (enter 25% of line 1f) ................................................. | | 57,996 | |
| **h** Subtract line 1g from line 1a. If zero or less, enter -0-. ............................................... | | 0 | |
| **i** Subtract line 1f from line 1c. If zero or less, enter -0-. ............................................... | | 0 | |

**j**　If there is an amount other than zero on either line 1h or line 1i, did the organization file Form 4720 reporting section 4911 tax for this year? ...................................................................................................　☐ **Yes** ☐ **No**

### 4-Year Averaging Period Under Section 501(h)
**(Some organizations that made a section 501(h) election do not have to complete all of the five columns below. See the separate instructions for lines 2a through 2f.)**

| Lobbying Expenditures During 4-Year Averaging Period | | | | | |
|---|---|---|---|---|---|
| Calendar year (or fiscal year beginning in) | (a) 2017 | (b) 2018 | (c) 2019 | (d) 2020 | (e) Total |
| **2a** Lobbying nontaxable amount | 225,297 | 136,881 | 218,772 | 231,982 | 812,932 |
| **b** Lobbying ceiling amount<br>(150% of line 2a, column(e)) | | | | | 1,219,398 |
| **c** Total lobbying expenditures | 4,118 | 3,000 | 1,529 | 21,033 | 29,680 |
| **d** Grassroots nontaxable amount | 56,324 | 34,220 | 54,693 | 57,996 | 203,233 |
| **e** Grassroots ceiling amount<br>(150% of line 2d, column (e)) | | | | | 304,850 |
| **f** Grassroots lobbying expenditures | 1,293 | 1,000 | 785 | 10,800 | 13,878 |

**Part II-B** Complete if the organization is exempt under section 501(c)(3) and has NOT filed
Form 5768 (election under section 501(h)).

| | | (a) | | (b) |
|---|---|---|---|---|
| For each "Yes" response on lines 1a through 1i below, provide in Part IV a detailed description of the lobbying activity. | | Yes | No | Amount |
| **1** | During the year, did the filing organization attempt to influence foreign, national, state or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of: | | | |
| **a** | Volunteers? ........................................................................................................ | | | |
| **b** | Paid staff or management (include compensation in expenses reported on lines 1c through 1i)? ........ | | | |
| **c** | Media advertisements? ........................................................................................ | | | |
| **d** | Mailings to members, legislators, or the public? ........................................................... | | | |
| **e** | Publications, or published or broadcast statements? ...................................................... | | | |
| **f** | Grants to other organizations for lobbying purposes? ..................................................... | | | |
| **g** | Direct contact with legislators, their staffs, government officials, or a legislative body? ...................... | | | |
| **h** | Rallies, demonstrations, seminars, conventions, speeches, lectures, or any similar means? .................. | | | |
| **i** | Other activities? .................................................................................................. | | | |
| **j** | Total. Add lines 1c through 1i ................................................................................. | | | |
| **2a** | Did the activities in line 1 cause the organization to be not described in section 501(c)(3)? ..... | | | |
| **b** | If "Yes," enter the amount of any tax incurred under section 4912 ......................................... | | | |
| **c** | If "Yes," enter the amount of any tax incurred by organization managers under section 4912 .................. | | | |
| **d** | If the filing organization incurred a section 4912 tax, did it file Form 4720 for this year? ........................ | | | |

**Part III-A** Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6).

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were substantially all (90% or more) dues received nondeductible by members? ............................................. | **1** | | |
| **2** | Did the organization make only in-house lobbying expenditures of $2,000 or less? ........................................... | **2** | | |
| **3** | Did the organization agree to carry over lobbying and political expenditures from the prior year? .................................. | **3** | | |

**Part III-B** Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6)
and if either (a) BOTH Part III-A, lines 1 and 2, are answered "No" OR (b) Part III-A, line 3, is
answered "Yes."

| | | | |
|---|---|---|---|
| **1** | Dues, assessments and similar amounts from members ...................................................................... | **1** | |
| **2** | Section 162(e) nondeductible lobbying and political expenditures **(do not include amounts of political expenses for which the section 527(f) tax was paid).** | | |
| **a** | Current year ...................................................................................................................... | **2a** | |
| **b** | Carryover from last year ...................................................................................................... | **2b** | |
| **c** | Total ............................................................................................................................... | **2c** | |
| **3** | Aggregate amount reported in section 6033(e)(1)(A) notices of nondeductible section 162(e) dues . | **3** | |
| **4** | If notices were sent and the amount on line 2c exceeds the amount on line 3, what portion of the excess does the organization agree to carryover to the reasonable estimate of nondeductible lobbying and political expenditure next year? ...................................................................................................................... | **4** | |
| **5** | Taxable amount of lobbying and political expenditures (see instructions) .......................................... | **5** | |

**Part IV** **Supplemental Information**

Provide the descriptions required for Part I-A, line 1; Part I-B, line 4; Part I-C, line 5; Part II-A (affiliated group list); Part II-A, lines 1 and 2 (see instructions), and Part II-B, line 1. Also, complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| SCHEDULE C, PART II-A: | THE 2018 COLUMN ON SCHEDULE C, PART II-A REPRESENTS THE SHORT TAX YEAR BEGINNING JANUARY 1, 2019 AND ENDING JUNE 30, 2019. |

Case 2:22-cv-01656-DMD-JDK Document 10-1 Filed 02/06/23 Page 172 of 196

**SCHEDULE D**
**(Form 990)**

Case 2:22-cv-01658-DAD-JDP Document 16-1 Filed 02/06/23 Page 173 of 196

# Supplemental Financial Statements

OMB No. 1545-0047

**2020**

▶ Complete if the organization answered "Yes," on Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

Department of the Treasury
Internal Revenue Service

**Open to Public
Inspection**

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION INC | 68-0551525 |

## Part I — Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.
Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | **(a)** Donor advised funds | **(b)** Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . . . . | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year . . . . . . . . | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

## Part II — Conservation Easements.
Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)   ☐ Preservation of an historically important land area

☐ Protection of natural habitat   ☐ Preservation of a certified historic structure

☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | **Held at the End of the Year** |
|---|---|---|---|
| a | Total number of conservation easements . . . . . . . . . . . . . . . | **2a** | |
| b | Total acreage restricted by conservation easements . . . . . . . . . . . . . | **2b** | |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . . | **2c** | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register . . . | **2d** | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ _____

4 Number of states where property subject to conservation easement is located ▶ _____

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? . . . . . . . . . . . ☐ **Yes** ☐ **No**

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
▶ _____

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
▶ $ _____

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

## Part III — Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . ▶ $ _____

(ii) Assets included in Form 990, Part X . . . . . . . . . . . . . . . ▶ $ _____

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . . ▶ $ _____

b Assets included in Form 990, Part X . . . . . . . . . . . . . . . . ▶ $ _____

| For Paperwork Reduction Act Notice, see the Instructions for Form 990. | Cat. No. 52283D | Schedule D (Form 990) 2020 |

| **Part III** | Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets *(continued)* |

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 174 of 196

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

**a** ☐ Public exhibition

**b** ☐ Scholarly research

**c** ☐ Preservation for future generations

**d** ☐ Loan or exchange programs

**e** ☐ Other ...................

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?. . . ☐ Yes ☐ No

| **Part IV** | Escrow and Custodial Arrangements. |

Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

**b** If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| **c** Beginning balance . . . . . . . . . . . . . . | **1c** | |
| **d** Additions during the year . . . . . . . . . . . | **1d** | |
| **e** Distributions during the year . . . . . . . . . | **1e** | |
| **f** Ending balance . . . . . . . . . . . . . . . | **1f** | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ Yes ☐ No

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

| **Part V** | Endowment Funds. |

Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . . | 1,200,000 | 1,200,000 | 1,200,000 | | |
| **b** Contributions . . . | | | | 1,200,000 | |
| **c** Net investment earnings, gains, and losses | | | | | |
| **d** Grants or scholarships . . . | | | | | |
| **e** Other expenditures for facilities and programs . . . | | | | | |
| **f** Administrative expenses . . . | | | | | |
| **g** End of year balance . . . . . . | 1,200,000 | 1,200,000 | 1,200,000 | 1,200,000 | |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment ▶ 100.000 %

**b** Permanent endowment ▶ 0 %

**c** Term endowment ▶ 0 %

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** Unrelated organizations . . . . . . . . . . . . . . . . . | **3a(i)** | | No |
| **(ii)** Related organizations . . . . . . . . . . . . . . . . | **3a(ii)** | | No |
| **b** If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? . . . . . . . . . . | **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

| **Part VI** | Land, Buildings, and Equipment. |

Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . | | | | |
| **b** Buildings . . . . . | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment . . . . . | | 59,432 | 29,385 | 30,047 |
| **e** Other . . . . . . | | 11,834 | 10,762 | 1,072 |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . ▶ | | | | 31,119 |

Case 2:22-cv-15527-DAP-JDR Document 10-1 Filed 02/06/23 Page 175 of 196

| **Part VII** | Investments—Other Securities. |
|---|---|

Complete if the organization answered 'Yes' on Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives . . . . . . . . . | | |
| **(2)** Closely-held equity interests . . . . . . . | | |
| **(3)** Other _____ | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| (I) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | | |

| **Part VIII** | Investments—Program Related. |
|---|---|

Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** | | |
| **(2)** | | |
| **(3)** | | |
| **(4)** | | |
| **(5)** | | |
| **(6)** | | |
| **(7)** | | |
| **(8)** | | |
| **(9)** | | |
| **(10)** | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

| **Part IX** | Other Assets. |
|---|---|

Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| **(1)** | |
| **(2)** | |
| **(3)** | |
| **(4)** | |
| **(5)** | |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **(10)** | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* . . . . . . . . . . . ▶ | |

| **Part X** | Other Liabilities. |
|---|---|

Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| 1. | (a) Description of liability | (b) Book value |
|---|---|---|
| **(1)** Federal income taxes | | |
| **(2)** DEFERRED RENT LIABILITY | | 25,042 |
| **(2)** | | |
| **(3)** | | |
| **(4)** | | |
| **(5)** | | |
| **(6)** | | |
| **(7)** | | |
| **(8)** | | |
| **(9)** | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* ▶ | | 25,042 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☐

| **Part XI** | Reconciliation of Revenue per Audited Financial Statements With Revenue per Return. Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a. | | | |
|---|---|---|---|---|
| **1** | Total revenue, gains, and other support per audited financial statements . . . . . . . | | **1** | | 2,453,558 |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| **a** | Net unrealized gains (losses) on investments . . . . . | **2a** | 374,291 | | |
| **b** | Donated services and use of facilities . . . . . . . . . | **2b** | | | |
| **c** | Recoveries of prior year grants . . . . . . . . . . | **2c** | | | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . . . . | **2d** | 12,890 | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . . . . . . | | | **2e** | 387,181 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . . . . . . . . | | | **3** | 2,066,377 |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . | **4a** | 14,951 | | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . . . . | **4b** | -7,661 | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . . . . . . | | | **4c** | 7,290 |
| **5** | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) . . . . . . . | | | **5** | 2,073,667 |

| **Part XII** | Reconciliation of Expenses per Audited Financial Statements With Expenses per Return. Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a. | | | |
|---|---|---|---|---|
| **1** | Total expenses and losses per audited financial statements . . . . . . . . . . . | | **1** | | 1,632,348 |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| **a** | Donated services and use of facilities . . . . . . . . . | **2a** | | | |
| **b** | Prior year adjustments . . . . . . . . . . . . . | **2b** | | | |
| **c** | Other losses . . . . . . . . . . . . . . . | **2c** | | | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . . . . | **2d** | 7,661 | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . . . . . . | | | **2e** | 7,661 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . . . . . . . . | | | **3** | 1,624,687 |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line **1**: | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . . . | **4a** | 14,951 | | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . . . . | **4b** | | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . . . . . . | | | **4c** | 14,951 |
| **5** | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) . . . . . . . | | | **5** | 1,639,638 |

| **Part XIII** | **Supplemental Information** |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| See Additional Data Table | |
| | |
| | |
| | |
| | |
| | |

**Part XIII** **Supplemental Information** *(continued)*

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 177 of 196

| Return Reference | Explanation |
| --- | --- |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# Additional Data

**Software ID:**
**Software Version:**
**EIN:**  68-0551525
**Name:**  HINDU AMERICAN FOUNDATION INC

**Supplemental Information**

| Return Reference | Explanation |
|---|---|
| PART V, LINE 4: | THE PURPOSE OF THE FUND IS TO GENERATE INCOME TO ENSURE THE LONG TERM FINANCIAL HEALTH AND VIABILITY OF THE HAF. NO INCOME OR PRINCIPAL FROM THE FUND SHALL BE USED FOR ANY PURPOSE THAT WOULD BE INCONSISTENT WITH THE HAF'S STANDING AS A CHARITABLE NOT-FOR-PROFIT INSTITUTION UNDER THE LAWS OF THE STATE OF FLORIDA AND SPECIFICALLY UNDER 501(C)(3) OF THE INTERNAL REVENUE CODE. NO FUNDS SHALL BE USED DIRECTLY OR INDIRECTLY FOR THE BENEFIT OF ANY INDIVIDUAL PERSON, INCLUDING BUT NOT LIMITED TO ANY EMPLOYEE OR BOARD MEMBER OF HAF. |

**Supplemental Information**

| Return Reference | Explanation |
|---|---|
| PART XI, LINE 2D OTHER ADJUSTMENTS: | CHANGE IN BENEFICIAL INTEREST IN ASSETS HELD BY KING'S HERITAGE ENDOWMENT 12,890. |

**Supplemental Information**

| Return Reference | Explanation |
|---|---|
| PART XI, LINE 4B - OTHER ADJUSTMENTS: | DIRECT EXPENSES REPORTED ON FORM 990, PART VIII, LINE 9B -7,663. |

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 180 of 196

**Supplemental Information**

| Return Reference | Explanation |
|---|---|
| PART XII, LINE 2D - OTHER ADJUSTMENTS: | DIRECT EXPENSES REPORTED ON FORM 990, PART VIII, LINE 9B $7,661. |

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 181 of 196

**Supplemental Information**

| Return Reference | Explanation |
|---|---|
| SCHEDULE D, PART V | THE "TWO YEARS BACK" COLUMN ON SCHEDULE D, PART V REPRESENTS THE SHORT TAX YEAR BEGINNING JANUARY 1, 2019 AND ENDING JUNE 30, 2019. |

Case 2:22-cv-01656-DAD-JDP Document 10.1 Filed 02/06/23 Page 182 of 196

**SCHEDULE F
(Form 990)**

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 183 of 196

# Statement of Activities Outside the United States

OMB No. 1545-0047

**2020**

► Complete if the organization answered "Yes" to Form 990, Part IV, line 14b, 15, or 16.

► Attach to Form 990.

► Go to *www.irs.gov/Form990* for instructions and the latest information.

Department of the Treasury
Internal Revenue Service

**Open to Public
Inspection**

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION INC | 68-0551525 |

**Part I**  **General Information on Activities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 14b.

**1** **For grantmakers.** Does the organization maintain records to substantiate the amount of its grants and other assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☑ **Yes** ☐ **No**

**2** **For grantmakers.** Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the United States.

**3** Activites per Region. (The following Part I, line 3 table can be duplicated if additional space is needed.)

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in the region | (d) Activities conducted in region (by type) (such as, fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in the region | (f) Total expenditures for and investments in the region |
|---|---|---|---|---|---|
| SOUTH ASIA - AFGHANISTAN, BANGLADESH, BHUTAN, INDIA, MALDIVES, NEPAL, | 0 | 0 | PROGRAM SERVICES | COMMUNITY RELATIONS | 10,000 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **3a** Sub-total . . . . . | 0 | 0 | | | 10,000 |
| **b** Total from continuation sheets to Part I . . . | 0 | 0 | | | 0 |
| **c Totals** (add lines 3a and 3b) | 0 | 0 | | | 10,000 |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**      Cat. No. 50082W      **Schedule F (Form 990) 2020**

**Part II**    **Grants and Other Assistance to Organizations or Entities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 184 of 196

| 1 | **(a)** Name of organization | **(b)** IRS code section and EIN (if applicable) | **(c)** Region | **(d)** Purpose of grant | **(e)** Amount of cash grant | **(f)** Manner of cash disbursement | **(g)** Amount of noncash assistance | **(h)** Description of noncash assistance | **(i)** Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| | | | SOUTH ASIA - AFGHANISTAN, BANGLADESH, BHUTAN, INDIA, MALDIVES, NEPAL, | GRANT FOR MEDICAL SERVICES TO PAKISTANI HINDU REFUGEES | 10,000 | WIRE TRANSFER | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

2 Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . . . . . . ▶     1

3 Enter total number of other organizations or entities . . . . . . . . . . . . . . . . . . . ▶     0

**Part III**  **Grants and Other Assistance to Individuals Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 16.

Part III can be duplicated if additional space is needed.

Case 2.21-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 185 of 196

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of noncash assistance | (g) Description of noncash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Part IV** **Foreign Forms**

Case 2:22-cv-01656-DAD-JDP  Document 10-1  Filed 02/06/23  Page 186 of 196

1   Was the organization a U.S. transferor of property to a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see Instructions for Form 926)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☑ No

2   Did the organization have an interest in a foreign trust during the tax year? *If "Yes," the organization may be required to separately file Form 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see Instructions for Forms 3520 and 3520-A; don't file with Form 990)* . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☑ No

3   Did the organization have an ownership interest in a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations. (see Instructions for Form 5471)* . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☑ No

4   Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? *If "Yes," the organization may be required to file Form 8621, Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund. (see Instructions for Form 8621)* .   ☐ Yes   ☑ No

5   Did the organization have an ownership interest in a foreign partnership during the tax year? *If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons with Respect to Certain Foreign Partnerships (see Instructions for Form 8865)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☑ No

6   Did the organization have any operations in or related to any boycotting countries during the tax year? *If "Yes," the organization may be required to separately file Form 5713, International Boycott Report (see Instructions for Form 5713; don't file with Form 990).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes   ☑ No

**Part V** | **Supplemental Information**

Provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information. See instructions.

**990 Schedule F, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| PART I, LINE 2: | GRANTS ARE MADE BASED UPON BOARD APPROVAL OF GRANTEE'S TRACK RECORD AND APPLICATION AND STATED USE OF FUNDS. MONITORING IS DONE BY REVIEWING PROGRESS REPORTS. |

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 187 of 196

# 990 Schedule F, Supplemental Information

| Return Reference | Explanation |
|---|---|
| PART III ACCOUNTING METHOD: | |

| **SCHEDULE G** | **Supplemental Information Regarding** | OMB No. 1545-0047 |
|---|---|---|
| **(Form 990 or 990-EZ)** | **Fundraising or Gaming Activities** | **2020** |

Case 2:22-cv-01656-DAD-JDP   Document 10-1   Filed 02/06/23   Page 189 of 196

**Complete if the organization answered "Yes" on Form 990, Part IV, lines 17, 18, or 19, or if the organization entered more than $15,000 on Form 990-EZ, line 6a.**

▶**Attach to Form 990 or Form 990-EZ.**

Department of the Treasury
Internal Revenue Service

▶**Go to www.irs.gov/Form990 for instructions and the latest information.**

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION INC | |
| | 68-0551525 |

---

**Part I**    **Fundraising Activities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 17.
Form 990-EZ filers are not required to complete this part.

**1**   Indicate whether the organization raised funds through any of the following activities. Check all that apply.

**a** ☐ Mail solicitations                      **e** ☐ Solicitation of non-government grants

**b** ☐ Internet and email solicitations          **f** ☐ Solicitation of government grants

**c** ☐ Phone solicitations                   **g** ☐ Special fundraising events

**d** ☐ In-person solicitations

**2a**   Did the organization have a written or oral agreement with any individual (including officers, directors, trustees or key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services?   ☐ **Yes** ☐ **No**

**b**   If "Yes," list the 10 highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be compensated at least $5,000 by the organization.

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? | | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col. (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| | | **Yes** | **No** | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **Total** . . . . . . . . . . . . . ▶ | | | | | | |

**3**   List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration or licensing.

..................................................................................................................

..................................................................................................................

---

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.**        Cat. No. 50083H        **Schedule G (Form 990 or 990-EZ) 2020**

**Case 2:22-cv-01656-JAD-JDP   Document 10-1   Filed 02/06/23   Page 190 of 196**

**Part II**    **Fundraising Events.** Complete if the organization answered "Yes" on Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000.

| | | (a)Event #1 YEAR END GALA (event type) | (b) Event #2 EDUCATION GALA (event type) | (c)Other events 3 (total number) | (d) Total events (add col. (a) through col. (c)) |
|---|---|---|---|---|---|
| Revenue | 1 Gross receipts . . . . . | 129,000 | 66,211 | 46,969 | 242,180 |
| | 2 Less: Contributions . . . . | 129,000 | 63,211 | 46,969 | 239,180 |
| | 3 Gross income (line 1 minus line 2) | | 3,000 | | 3,000 |
| Direct Expenses | 4 Cash prizes . . . . . | | | | |
| | 5 Noncash prizes . . . . | 280 | | | 280 |
| | 6 Rent/facility costs . . . . | | | | |
| | 7 Food and beverages . . . | | | | |
| | 8 Entertainment . . . . . | 1,800 | 199 | 2,000 | 3,999 |
| | 9 Other direct expenses . . . | 332 | 267 | 2,783 | 3,382 |
| | 10 Direct expense summary. Add lines 4 through 9 in column (d) . . . . . . . . ▶ | | | | 7,661 |
| | 11 Net income summary. Subtract line 10 from line 3, column (d) . . . . . . . . . ▶ | | | | -4,661 |

**Part III**    **Gaming.** Complete if the organization answered "Yes" on Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a.

| | | (a) Bingo | (b) Pull tabs/Instant bingo/progressive bingo | (c) Other gaming | (d) Total gaming (add col.(a) through col.(c)) |
|---|---|---|---|---|---|
| Revenue | 1 Gross revenue . . . . . | | | | |
| Direct Expenses | 2 Cash prizes . . . . . | | | | |
| | 3 Noncash prizes . . . . | | | | |
| | 4 Rent/facility costs . . . . | | | | |
| | 5 Other direct expenses . . . | | | | |
| | 6 Volunteer labor . . . . | ☐ Yes _____% ☐ No | ☐ Yes _____% ☐ No | ☐ Yes _____% ☐ No | |
| | 7 Direct expense summary. Add lines 2 through 5 in column (d) . . . . . . . . ▶ | | | | |
| | 8 Net gaming income summary. Subtract line 7 from line 1, column (d) . . . . . . . . ▶ | | | | |

9   Enter the state(s) in which the organization conducts gaming activities:_____

  a   Is the organization licensed to conduct gaming activities in each of these states? . . . . . . . . ☐ Yes ☐ No

  b   If "No," explain: _____

10a   Were any of the organization's gaming licenses revoked, suspended or terminated during the tax year? . . . ☐ Yes ☐ No

  b   If "Yes," explain: _____

Case 2:22-cv-01656-DAD-JDP Document 10-1 Filed 02/06/23 Page 191 of 196

**11** Does the organization conduct gaming activities with nonmembers?   ☐ Yes  ☐ No

**12** Is the organization a grantor, beneficiary or trustee of a trust or a member of a partnership or other entity formed to administer charitable gaming?   ☐ Yes  ☐ No

**13** Indicate the percentage of gaming activity conducted in:

**a** The organization's facility   | **13a** | %

**b** An outside facility   | **13b** | %

**14** Enter the name and address of the person who prepares the organization's gaming/special events books and records:

Name ▶ ----------------------------------------------------------------------------------------------------------------------

Address ▶ -------------------------------------------------------------------------------------------------------------------

**15a** Does the organization have a contract with a third party from whom the organization receives gaming revenue?   ☐ Yes  ☐ No

**b** If "Yes," enter the amount of gaming revenue received by the organization ▶ $ _____ and the amount of gaming revenue retained by the third party ▶ $ _____ .

**c** If "Yes," enter name and address of the third party:

Name ▶ ----------------------------------------------------------------------------------------------------------------------

Address ▶ -------------------------------------------------------------------------------------------------------------------

**16** Gaming manager information:

Name ▶ ----------------------------------------------------------------------------------------------------------------------

Gaming manager compensation ▶ $-----------------------------------------------

Description of services provided ▶ -----------------------------------------------------------------------------------------

☐ Director/officer      ☐ Employee      ☐ Independent contractor

**17** Mandatory distributions:

**a** Is the organization required under state law to make charitable distributions from the gaming proceeds to retain the state gaming license?   ☐ Yes  ☐ No

**b** Enter the amount of distributions required under state law distributed to other exempt organizations or spent in the organization's own exempt activities during the tax year ▶ $

| **Part IV** | **Supplemental Information.** Provide the explanations required by Part I, line 2b, columns (iii) and (v); and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable. Also provide any additional information. See instructions. |

| Return Reference | Explanation |

**SCHEDULE O**
**(Form 990 or 990-EZ)**

Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

Complete to provide information for responses to specific questions on
Form 990 or 990-EZ or to provide any additional information.
▶ Attach to Form 990 or 990-EZ.
▶ Go to *www.irs.gov/Form990* for the latest information.

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

Case 2:22-cv-01656-DAD-JDP    Document 10-1    Filed 02/06/23    Page 192 of 196

| Name of the organization | Employer identification number |
|---|---|
| HINDU AMERICAN FOUNDATION INC | 68-0551525 |

## 990 Schedule O, Supplemental Information

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 11B | HAF'S BOARD OF DIRECTORS REVIEWS THE FORM 990 AND VOTES ON SUBMISSION OF THE FORM TO THE INTERNAL REVENUE SERVICE. FORMS 990 ARE SIGNED BY EITHER THE EXECUTIVE DIRECTOR OR THE TREASRUER OF THE ORGANIZATION. |

# 990 Schedule O, Supplemental Information

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 12C | THE CONFLICT OF INTEREST POLICY IS REVIEWED AT LEAST ANNUALLY BY THE DIRECTORS. ALL DIRECTORS AND OFFICERS ARE REQUIRED TO COMPLETE AND SIGN A CONFLICT OF INTEREST STATEMENT ANNUALLY. A DIRECTOR OR OFFICER WITH A CONFLICT OF INTEREST IS PROHIBITED FROM PARTICIPATING IN DELIBERATIONS AND DECISIONS REGARDING THE TRANSACTION. |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 15 | COMPENSATION IS DETERMINED BY THE BOARD BASED UPON INDUSTRY STANDARDS AND COMPARABILITY DATA. |

# 990 Schedule O, Supplemental Information

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION'S GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS ARE AVAILABLE UPON REQUEST. THE FORM 990 IS AVAILABLE ON THE ORGANIZATION'S WEBSITE. |

# 990 Schedule O, Supplemental Information

| Return Reference | Explanation |
|---|---|
| FORM 990, PART XI, LINE 9: | CHANGE IN BENEFICIAL INTEREST IN ASSETS HELD BY HINDU HERITAGE ENDOWMENT 12,890. |