Timothy C. Travelstead, Esq. (SBN 215260)
  *t.travelstead@narayantravelstead.com*
Scott C. Ku, Esq. (SBN 314970)
  *s.ku@narayantravelstead.com*
NARAYAN TRAVELSTEAD P.C.
7901 Stoneridge Drive, Suite 230
Pleasanton, CA 94588
Telephone: (650) 403-0150

Attorneys for Plaintiff
HINDU AMERICAN FOUNDATION

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDU AMERICAN FOUNDATION, INC., a Florida Not For Profit Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KEVIN KISH, an individual, in his official capacity as Director of the California Civil Rights Department; and DOES 1 - 50, inclusive,<br><br>Defendants. | Case No. 2-22-cv-01656-DAD-JDP<br><br>**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**<br><br>Date:      September 19, 2023<br>Time:     1:30 p.m.<br>Judge:    Hon. Dale A. Drozd<br>Dept.:    Courtroom 4, 15th Floor<br><br><br>Date Action Filed:  September 20, 2022 |

## <u>TABLE OF CONTENTS</u>

I.  **INTRODUCTION** ............................................................................................. **5**

II. **DISCUSSION** ................................................................................................ **7**

    A.  **The Hindu American Foundation Has Standing To Bring These Claims.** ...... **7**

        *1.  The Hindu American Foundation Has Direct Standing To Bring First and Fourteenth Amendment Claims Based On Its Own Injury.* ............. **7**

            a)  CRD's Actions Have Caused Concrete Injury to The Hindu American Foundation ..................................................................... 8

            b)  CRD's Actions Caused HAF's Injury and Favorable Actions by this Court Will Redress that Injury. ................................................ 9

        *2.  The Hindu American Foundation Has Associational Standing To Bring First and Fourteenth Amendment Claims Based Injury To Its Members* ...................................................................................... **10**

            a)  The Hindu American Foundation Has a Personal Stake in Representing Hindu Americans, Satisfying the Membership Requirements for Associational Standing in the Ninth Circuit. ... 10

            b)  Preventing Governmental Abuse and Stigmatization of Hindus and Hindu Religious Beliefs Are Directly Germane to the Hindu American Foundation's Purpose. ........................... 12

            c)  This Case Does Not Require Involvement of HAF's Members. .. 14

    B.  **Complaint States a Free Exercise Claim Against Defendant Because Of California Civil Rights Department's Spiritual and Legal Defamation of Hindu Beliefs.** ................................................................................... 16

    C.  **Complaint States a Fourteenth Amendment Due Process Claim Based on the CRD's Standardless and Contradictory Fair Employment and Housing Act Position that Makes It Both Illegal to Engage in "Caste Discrimination" and Illegal Not to Accommodate "Caste Discrimination".** ................................................................................... 19

    D.  **U.S. Supreme Court Precedent Clearly Holds that Using Religious Classifications as the Basis for Government Action Violates the Equal Protection Clause.** ............................................................................... 21

III. **CONCLUSION** ............................................................................................. **23**

## TABLE OF AUTHORITIES

### Cases

*Advoc. Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003) ............................................. 10, 14

*Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021)................................... 9

*Barren v. Harrington*, 152. F.3d. 1193 (9th Cir. 1998( .............................................. 20

*Braunfeld v. Brown*, 366 U.S. 599 (1961) (opinion of Warren, C.J.)............................. 19

*Catholic League for Religious & Civ. Rights v. City & County of San Francisco, 624 F.3d 1043*
    *(9th Cir. 2009)* ................................................................................... 7, 10, 13

*Cent. Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002) .................. 14

*Gillette v. United States*, 401 U.S. 437, 91 S. Ct. 828 (1971)......................................... 19

*Groff v. DeJoy*, __ U.S. __ (June 29, 2023, Slip Opinion, p. 20........................................ 16

*Harris v. McRae*, 448 U.S. 297 (1980) ....................................................................... 14, 15

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC, 565 U.S. 171 (2012)*............... 17

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333  (1977).............................. 14

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94 (1952) ................. 17

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).............................................. 20

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) .................................................... 6, 8

*McDaniel v. Paty*, 435 U.S. 618 (1978)........................................................................... 21

*Oregon Advocacy*, 322 F.3d at 1111 .............................................................................. 10

*Our Lady of Guadalupe Sch. v. Morrissey-Berru* (2020) ___U.S.___ [140 S.Ct. 2049, 2060, 207
    L.Ed.2d 870, 881] ................................................................................................ 17

*Sherbert v. Verner*, 374 U.S. 398 (1963) ..................................................................... 19

*Summers v. Adams*, No. 3:08-2265-CMC, 2008 U.S. Dist. LEXIS 103729, at *28-30 (D.S.C.
    Dec. 23, 2008)...................................................................................................... 10

*Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005)...................................... 20

*United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544 (1996)......... 14

*United States v. Armstrong*, 517 U.S. 456 ..................................................................... 21

*United States v. Williams*, 553 U. S. 285 (2008) ......................................................... 18

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982) ................................................................................................................ 6, 8

*Vasquez v. Los Angeles Cnty*, 487 F.3d 1246 (9th Cir. 2007) ........................................ 7

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ................ 10

*Wayte v. U.S.*, 470 U.S. 598 (1985) ................................................................................ 21

## **Statutes**

42 U.S.C. § 1983 ......................................................................................................... 5, 22

42 U.S.C. § 2000BB-1 ...................................................................................................... 16

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

# I.   <u>INTRODUCTION</u>

Defendant's Motion to Dismiss is a study in distraction.  Reading his description of the enforcement action the California Civil Rights Department ("CRD") filed in Santa Clara County Superior Court (Case No. 20-CV-372366, the "State Action")[1], you would be hard-pressed to believe the case had any connection to religion.  It characterizes its efforts as a normal part of its mandate to "safeguard the right and opportunity of all persons to seek…employment without discrimination or abridgement on account of race, religious creed" or any of the other categories listed in the Fair Employment and Housing Act.  (Defendant's Motion to Dismiss ("Motion"), p. 3:3-5.)

It fails to mention that the State Action engages in the very discrimination the CRD is charged with preventing, discrimination based on religious creed.  Worse, it engages in that discrimination based on a wrong and misguided fallacy about Hinduism, thereby promoting the very misinformation that leads to anti-Hindu discrimination in society generally.

Defendant's Motion suggests that the CRD has filed a cause of action for caste discrimination against Cisco.  But it has not.  Rather, it has brought a claim for discrimination and harassment "on the Basis of Religion, Ancestry, National Origin/Ethnicity, and Race/Color". (Complaint, Exh. A ["State Action Complaint"], p. 11:14-15; 12:19-20 [titles given to First and Second Causes of Action].)

And that is the crux of the entire case.  The CRD included a claim that caste discrimination was a form of religious discrimination based on its wrongheaded contention that caste is "a strict Hindu social and religious hierarchy," that the individual defendants and other employees of Indian origin "imported the discriminatory system's practices into their team and Cisco's workplace," and that Cisco was liable for caste-based discrimination because it "failed to recognize casteism as a form of unlawful religion-, ancestry-, national-origin/ethnicity- and

---

[1] The CRD, formerly known as the Department of Fair Employment and Housing, first filed its action in the Northern District of California in June 2020 (Case No.:20-cv-04374-EJD) before dismissing that action and refiling it in Santa Clara County Superior Court.

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

race/color-based discrimination."  (State Action Complaint, ¶ 1, 3, 44; p. 2:5-6,3:4-5, 1-:13-15.)

The Hindu American Foundation ("HAF") has not filed this action to decide whether or not caste discrimination, properly understood as having nothing to do with Hindu religious teachings, is or is not prohibited by the Fair Employment and Housing Act.  And in a footnote, Defendant asserts that HAF's suit "does not assert that the FEHA itself is unconstitutional on its face or as applied."  (Motion, p. 3, fn. 3.)  This is partially true.  HAF does not claim that the FEHA is unconstitutional on its face, and has not filed this action to determine whether or not applying it to prohibit caste discrimination is unconstitutional, but it does contest that the CRD's enforcement position, as revealed in the State Action, is an unconstitutional application of the FEHA to the extent it relies on the wrong and defamatory assertion that Hindu religious beliefs require adherence to a "strict social and religious hierarchy" and that, therefore, caste discrimination is religious discrimination based on a misrepresentation of Hindu beliefs.

It very much objects to the CRD's gross mischaracterization of Hinduism as requiring caste discrimination, and very much objects to adopting enforcement positions based on this gross and unconstitutional misrepresentation that perpetuates damaging stereotypes about Hindu teachings.  It very much objects to the CRD's enforcement position as a violation of its Free Exercise, Due Process, and Equal Protection rights under the First and Fourteenth Amendments to the U.S. Constitution.

The Hindu American Foundation has actively defended the rights of Hindu Americans throughout the country, is directly harmed by the CRD's unconstitutional actions, and has standing to assert those claims under 42 U.S.C. § 1983.  Its complaint completely and accurately states those claims, and Defendant's attempts to avoid that reality by simply ignoring the clear and concise statement of those claims in the Complaint is without merit.

The Hindu American Foundation has both direct and associational standing to assert these claims and has included all the allegations to establish its claims here.  It, therefore, respectfully asks the Court to deny the Motion and order Defendant to respond to these claims rather than trying to avoid answering for its unconstitutional conduct through meritless

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

jurisdictional arguments.

## II.   DISCUSSION

### A.   The Hindu American Foundation Has Standing To Bring These Claims.

In the moving papers Defendant devotes nearly ten (10) pages of argument attempting to convince the Court that HAF lacks associational standing to bring this action.  (Motion at 8:4-17:11).  The argument lacks merit.  Standing is not determined by boxes checked on tax forms, but rather whether HAF has direct or associational standing to bring the claims it raises.  Here, it has both.

The California Civil Rights Department's ("CRD") denigration of the Hindu religion and blanketly racist statements about people of Indian origin and to the corresponding psychologically damaging and spiritually deflating impact on HAF's leadership, staff and membership represents the precise type of concrete injury which gives HAF standing to bring the claims here.  HAF has standing both directly because of the injury to itself and associationally based on the injuries it inflicts on its members and the Hindu American community.

#### 1.   The Hindu American Foundation Has Direct Standing To Bring First and Fourteenth Amendment Claims Based On Its Own Injury.

The constitutional requirement of standing has three elements: (1) the plaintiff must have suffered an injury-in-fact – that is, a concrete and particularized invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical; (2) the injury must be causally connected - that is, fairly traceable - to the challenged action of the defendant and not the result of the independent action of a third party not before the court; and (3) it must be likely and not merely speculative that the injury will be redressed by a favorable decision by the court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555 , 560-61 (1992); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-476 (1982).

a)     CRD's Actions Have Caused Concrete Injury to The Hindu American Foundation.

Because of the nature of the religious rights embodied in the Free Exercise clause, injury in religious freedom cases does not need to involve physical or financial injuries, but rather the freedom the amendment grants the people to be free from the spiritual and mental suffering that government denial of that religious freedom involves. *Vasquez v. Los Angeles Cnty*, 487 F.3d 1246, 1250 (9th Cir. 2007).

The Ninth Circuit has clearly described this very standard in *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 624 F.3d 1043 (9th Cir. 2009) (en banc).  There, the Ninth Circuit addressed the question of whether a San Francisco city resolution denouncing a Vatican order not to place adoptive children with same-sex couples was forbidden under the Establishment Clause of the First Amendment.  The Court found the psychological consequence produced by the government's condemnation of a person's religion is a concrete harm sufficient to establish standing to sue for an Establishment Clause claim. *Id*. at 1053.  By alleging that the challenged resolution conveyed a government message of disapproval and hostility that denigrates its religious beliefs, treats the Catholic League as an outsider, and chills and curtails government access, the Catholic League sufficiently established the concrete injury required to give it standing to pursue its claims. *Id*. 1053.

The *Catholic League* Court reasoned that its decision was consistent with prior United States Supreme Court decisions where standing was established in cases involving prayer at a football game, a creche in a county courthouse or public parks, the Ten Commandments displayed on the grounds of a state capital or at a courthouse, a cross display at a national park, school prayer, a moment of silence at school, Bible reading at public school and a religious invocation at a graduation.  *Id*. at 1049-1050 (citations omitted).

The *Catholic League* Court also reasoned that its decision was consistent with prior Ninth Circuit decisions involving the display of crosses on government land, removing a cross from a city seal, discipling physicians who performed surgery without blood transfusions in a lawsuit by Jehovah's witnesses, including the words "under God" in the Pledge of Allegiance and

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

contracting with the Boy Scouts to administer a city recreational facility. *Id.* at 1050 (citations omitted). Importantly, in all of these cases the harm to the plaintiffs was spiritual or psychological harm. *Id.* at 1050.

This is precisely the concrete harm present here. HAF alleges the CRD is denigrating its Hindu religion by pursuing enforcement actions under the California Fair Employment and Housing Act ("FEHA") based on the defamatory assertion that a caste system and caste-based discrimination are integral parts of Hindu teachings and practices. The CRD declares the caste system to be "a strict Hindu social and religious hierarchy," which requires discrimination by "social custom and legal mandate." (Complaint – Introduction, p. 2:5-10). HAF alleges further that it has consistently maintained throughout its history, a caste system or discrimination on its basis are in no way a legitimate part of Hindu beliefs, teachings, or practices. (Id. at 2:11-13). Perhaps most importantly HAF alleges that it vehemently opposes all types of discrimination; and takes great exception to the State of California defaming and demeaning all of Hinduism by attempting to conflate a discriminatory caste system with the Hindu religion. (Id. at 2:14-16).

HAF has suffered concrete injury because of the CRD's actions under established U.S. Supreme Court and Ninth Circuit precedent.

        b)     <u>CRD's Actions Caused HAF's Injury and Favorable Actions by this Court Will Redress that Injury.</u>

HAF also satisfies the two remaining elements required to establish direct standing, e.g. the injury must be causally connected - that is, fairly traceable - to the challenged action of the defendant and not the result of the independent action of a third party not before the court; and it must be likely and not merely speculative that the injury will be redressed by a favorable decision by the court. *Lujan, supra,* 504 U.S. 555, 560-61; *Valley Forge Christian Coll., supra*, 454 U.S. 464, 475-76.

As outlined in the declarations accompanying this Opposition, HAF is directly harmed by the actions. The CRD's defamatory and unconstitutional actions against Hindu teachings and

practices have directly affected HAF and the three board members, four staff members, three National Leadership Council members, four Advisory Committee members, 815 donors, 5,000 HAF newsletter recipients, and half dozen Hindu scholars that work with HAF and live and work in California.  (Declaration of Suhag Shukla ("Shukla Decl."), ¶ 4-11, p. 2:16-3:17.)[2]

These harms, and the harms inflicted on all Hindu Americans and people of South Asian decent that are presumed to be practicing Hindus, is clearly traceable to CRD's denigration of the Hindu Religion, the enforcement actions it is currently prosecuting against a California employer (Cisco) and California residents based on the CRD's defamatory assertions that Hindu employees followed a "Hindu strict social and religious hierarchy."  (Complaint at ¶¶ 9-12; see also Exhibit "A" attached thereto).

Finally, because HAF seeks declaratory and injunctive relief as remedies for the Defendant's wrongdoing (State Action Complaint – Prayer at ¶¶ 1-4), the injury will be redressed by a favorable decision of the Court.

**2.     *The Hindu American Foundation Has Associational Standing To Bring First and Fourteenth Amendment Claims Based Injury To Its Members***

Defendant spends much of the motion arguing that HAF does not have associational standing to bring the claim.  This argument misunderstands the requirements for associational standing and disregards clear Ninth Circuit precedent.

a)     <u>The Hindu American Foundation Has a Personal Stake in Representing Hindu Americans, Satisfying the Membership Requirements for Associational Standing in the Ninth Circuit.</u>

Technical membership structures are not required to satisfy the requirements for associational standing.  Rather, an organization satisfies the *Hunt* requirements for associational standing where "the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'"  *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (*quoting Or. Advoc. Ctr. v.*

---

[2] HAF anticipates filing a Motion for Leave to Amend the Complaint to add additional individual plaintiffs as parties to this action, including HAF Board Members, employees, and donors.

*Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003); *further quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)).

"The ultimate consideration when determining whether an organization has associational standing is whether it has a 'personal stake in the outcome of the controversy.'" *Id.; quoting Oregon Advocacy*, 322 F.3d at 1111 (citation omitted). This very issue has previously been litigated in South Carolina District Court in a case challenging a South Carolina law authorizing license plates to include "I believe" language. HAF challenged the statute under the First Amendment's Establishment Clause. *Summers v. Adams*, No. 3:08-2265-CMC, 2008 U.S. Dist. LEXIS 103729, at *28-30 (D.S.C. Dec. 23, 2008). The Court ruled that HAF had standing to assert its claims. *Id. at* *30.

HAF represents the interests of Hindu Americans throughout the United States, including those working at Cisco, as alleged in the State Action by the CRD itself. By filing the State Action, the CRD has harmed those interests, directly affecting the California-based Hindu Americans that HAF represents. It has a clear and undeniable "personal stake" in the outcome of the controversy, and therefore has standing to assert these claims here.

HAF Board members, employees, Leadership and Advisory Council members, donors, newsletter readers and scholars residing in California have been directly harmed by the CRD's actions, requiring significant redeployment of HAF resources and personally subjecting them to the emotional and spiritual injuries of CRD's gross mischaracterization of Hindu teachings. (Shukla Decl., ¶ 4-11, p.2-3.)

Defendant spends much of the Motion arguing that The Hindu American Foundation cannot have associational standing because it is not technical membership organization. For this proposition, it looks to HAF's Form 990 tax filings with the IRS. These tax filings have no bearing on whether an organization qualifies as a "membership organization" for standing purposes, and Defendant cites no case that so holds.

Indeed, in *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 624 F.3d 1043 (9th Cir. 2009), the Court found that direct and associational standing

for the Catholic League even though the Catholic League is a 501(c)(3) organization, not an 501(c)(4) organization that collects membership dues.  (See Request for Judicial Notice, Exh. A [Catholic League's 2019 Form 990 showing it is a 501(c)(3) organization, not a 501(c)(4) organization that collects membership dues and that it is not a technical membership organization].)

Defendant does not cite a single case where a court even discussed, must less analyzed, Form 990 responses in relation to associational standing, and counsel for HAF's nationwide search for such authority found none.  This is not surprising, since the IRS is not concerned with associational standing's concepts of membership, but rather which provisions of the tax code an organization's tax-exempt status falls under.

The Catholic League's Form 990 answers the membership questions precisely the same way that The Hindu American Foundation's Form 990 does.  Associational standing's concept of membership simply is not a rigid tax-form based concept.

HAF represents the interests of Hindu Americans in California and across the nation.  It has already been found to have associational standing to represent the religious-freedom interests of Hindu Americans, and it has the personal stake in the outcome of the claims here required under Ninth Circuit precedent to establish standing to bring this action.  Defendant's standing arguments simply have no merit.

> b)   <u>Preventing Governmental Abuse and Stigmatization of Hindus and Hindu Religious Beliefs Are Directly Germane to the Hindu American Foundation's Purpose.</u>

Defendant argues that HAF lacks standing because the lawsuit is not germane to its purpose.  Nothing could be further from the truth.  Preventing governmental attacks on the religious freedoms of Hindu Americans, and establishing the right to all faiths to define for themselves the scope of their own religious beliefs, is central to the Hindu American Foundation's mission and purpose.

To support his misguided assertion, Defendant offers no argument or evidence beyond the claim that, because Hinduism is a diverse faith, "its membership would naturally include a

diversity of viewpoints on caste discrimination in the United States."  (Motion, p. 15:20-22.).
For this, Defendant cites to the State Action Complaint, where the CRD (formerly DFEH)
brought suit on behalf of a "Dalit Indian" who claimed to be a victim of caste discrimination.
That people discriminate against others on the basis of caste is unfortunate and wrong.

But HAF did not file this lawsuit to debate whether or not there are diverse views on
caste discrimination among people who happen to be Hindu; it brought the case because caste
discrimination is not part of Hindu teachings, yet the CRD claims the exact opposite, claiming
that caste discrimination is a strict Hindu religious hierarchy, and therefore that Hindu teaching
requires its followers to engage in caste discrimination that it contends violates the California
Fair Employment and Housing Act.

The fact that Indian-Americans experience discrimination on the basis of race, ethnicity,
and even perceived caste is something to combat and overcome.  For the California State
government to wrongly associate it with Hinduism is ignorant, unconstitutional, and makes the
problem worse.

Indeed, the very fact that Defendant argues that the complaint against caste
discrimination shows that Hindu beliefs have a diverse view of caste is the very reason why this
lawsuit is needed.  Hinduism does not have a diverse view of caste.  "[A]s HAF has consistently
maintained throughout its history, a caste system or discrimination on its basis are in no way a
legitimate part of Hindu beliefs, teachings, or practices."

Preventing the State of California from perpetuating this harmful and inaccurate
stereotype of Hindu teachings is squarely within HAF's mission.  As stated on its website, HAF
works "directly with educators and journalists to ensure accurate understanding of Hindus and
Hinduism" and works "with policymakers and key stakeholders to champion issues of concern to
Hindu Americans, ***including defending civil and human rights*** and protecting all living beings."
(https://www.hinduamerican.org/about; accessed June 27, 2023, emphasis added.)

Any examination of Defendant's argument quickly shows its fallacy.  Consider the
following analogy.  Catholic Americans hold a diverse views on racial equality.  But that fact

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

does not make racism an inherent part of the Catholic faith, and it does not prevent Catholic organizations and groups from having standing to bring a civil rights action against any governmental entity that slanders Catholicism by claiming racism is an inherent part of Catholic teachings.  See generally *Catholic League for Religious & Civ. Rights v. City & County of San Francisco* (9th Cir. 2009) 624 F.3d 1043 (Catholic League had standing to bring Establishment Clause claims against San Francisco based on its characterizations of the Catholic church's teachings on homosexuality).

Even this misses what is the essential harm occurring here.  The State of California has no constitutional role in defining Hindu beliefs.  It is for Hindus and Hindus alone to define those beliefs, not the State or Federal Government.  The harm is particularly egregious where, as here, the State of California does not simply slander Hinduism by claiming it requires its adherents to engage in the very discrimination that Hinduism stands against but brings legal actions against citizens based on the premise of that slander.  It claims that caste discrimination is illegal religious discrimination because of its mischaracterization of Hindu teachings.  And it has failed to rectify that mischaracterization for years after being told of their inaccuracy and harm.

HAF exists to combat just such actions, and this case is directly germane to HAF and the members of the Hindu American community.

### c)   This Case Does Not Require Involvement of HAF's Members.

Defendant argues that associational standing is not appropriate here under the third *Hunt*, prong because participation of individual members is necessary to the adjudication of the claims. It is not.  The claims here are not based on an individual decision or practice affecting certain members or interfering with a subset of the Hindu American community in California.  Rather, it is based on a blanket mischaracterization and slander against Hindu beliefs, followed by a legal assertion by the government that those beliefs require all Hindus to violate the Fair Employment and Housing Act.

"The third prong of *Hunt*, which requires that associations have standing only when 'neither the claim asserted nor the relief requested requires the participation of individual

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

members in the lawsuit,' [citation], is one such prudential, as opposed to constitutional, requirement of standing." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1113 (9th Cir. 2003) *quoting Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *and citing United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 557 (1996). "[T]he third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *United Food, supra*, 517 U.S. at 557; *see also Cent. Delta Water Agency v. United States*, 306 F.3d 938, 951 n.9 (9th Cir. 2002) (noting that unlike the first two *Hunt* factors, "the third factor is 'merely prudential,' and designed to promote efficiency in adjudication").

Here, there is no prudential need for the participation of individual members. In this case, the CRD has mischaracterized Hindu beliefs as requiring a strict caste hierarchy and caste-based oppression and then declared that that strict caste hierarchy and oppression violates the Fair Employment and Housing Act. No participation of individual members is needed to show whether labeling all Hindus as inherently guilty of violating the Fair Employment and Housing Act constitutes a violation of the Free Exercise Clause.

Defendant's reliance on *Harris v. McRae*, 448 U.S. 297 (1980), is inapposite. There, the initial plaintiffs in the case sought to enjoin the federal Hyde Amendment, which prohibited the use of federal funds in the Medicaid program to pay for abortion services. After the district court initially enjoined the Hyde Amendment, the Second Circuit Court vacated the ruling and remanded the case.

Only on remand did the organizational plaintiffs become involved. The District Court permitted the Women's Division of the Board of Global Ministries of the United Methodist Church ("Women's Division") to intervene in the case. The Women's Division "concedes that 'the permissibility, advisability and/or necessity of abortion according to circumstance is a matter about which there is diversity of view within . . . our membership, and is a determination which must be ultimately and absolutely entrusted to the conscience of the individual before

15

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

God.'"  *Harris v. McRae*, 448 U.S. 297, 321 (1980).

Therefore, the *Harris* case required the participation of individual members because the Women's Division stated that it required it, not because free exercise cases necessarily require it. The Women's Division stated the issue was left to every person's individual conscience.

That is not true here.  In this case, the CRD has taken a blanket position that mischaracterizes Hindu belief and practice and then labels all Hindus, especially those employees of Indian origin at Cisco, as inherently discriminatory in violation of FEHA based on that mischaracterization.  No involvement of individual members is needed to determine whether these actions violate the Free Exercise Clause.[3]

**B.**  **Complaint States a Free Exercise Claim Against Defendant Because Of California Civil Rights Department's Spiritual and Legal Defamation of Hindu Beliefs.**

Defendant next argues that HAF fails to state a Free Exercise claim against him because it has not shown that "the Department's actions have coerced anyone into doing something inimical to their religious convictions or otherwise prevented them from being able to practice their religion."  (Motion, p. 18:9-11.).

The California State Case shows exactly that.  The State of California sued two individual defendants based on their presumed Hindu beliefs, claiming that it was their Hindu beliefs that required them to engage in caste discrimination that the Department claimed violated the Fair Employment and Housing Act.  The State of California has taken a legal position and based a cause of action against these individuals that claims Hindu teachings and practices require them to engage in illegal religious, ancestral, and ethnic discrimination.

If the CRD's complaint did not depend on its assertion that caste discrimination is an inherent part of Hinduism, there would be no basis for a religious discrimination claim at all.  In the State Action Complaint, the CRD claimed caste discrimination was a "strict Hindu social and

---

[3] HAF anticipates filing a Motion for Leave to Amend the Complaint to add additional individual plaintiffs as parties to this action, including HAF Board Members, employees, and donors.  To the extent the Court finds involvement of individuals affected by the CRD's unconstitutional actions is prudent here, this amended complaint will resolve the issue.

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

religious hierarchy," that "Doe's higher caste supervisors and co-workers imported the discriminatory system's practices into their team and Cisco's workplace," and named two of those supervisors as named, individual defendants in the case.  (State Action Complaint ¶ 1, p. 2:6-7; ¶ 3, p. 3:6-7.)  Suing individual people based on their Hindu faith, all because of the CRD's wrong and defamatory belief that caste discrimination is a strict Hindu "religious hierarchy," is directly preventing Hindu's from practicing their religion free from punishment by the State of California for perceived teachings and practices that Hinduism does not even stand for.

Defendant's two additional arguments fare no better.  Defendant claims the harms posed by the CRD's actions are too "conclusory and speculative."  They are not.  The CRD has directly named two people of perceived Hindu faith as defendants, while asserting as its position of law that Hinduism is a strict religious hierarchy that requires its adherents to engage in caste discrimination, something the CRD claims is banned under the Fair Employment and Housing Act.  This is not speculation; it is a restatement of the claims directly asserted by the CRD in the State Court action.  HAF has identified the specific impact the CRD's decision has on HAF and its staff, employees, donors and supporters in California.  The harms are not speculative.

Nor are the legal contradictions created by the CRD's wrongful assertions speculative.  Both state and federal law requires employers to accommodate religious practices.  (See Cal. Gov. Code § 12940(l)(1) [FEHA duty to accommodate an employee's "religious belief or observance"]; 42 U.S.C. § 2000BB-1 [Religious Freedom Restoration Act]; *Groff v. DeJoy*, __ U.S. __ (June 29, 2023, Slip Opinion, p. 20 ["bias or hostility to a religious practice or a religious accommodation" cannot provide a defense for employers' obligation to accommodate employee religious practices].)

In filing the State Court Action, the CRD has asserted that caste discrimination is a religious practice of Hinduism.  That both disparages all Hindus and imposes an obligation on employers to accommodate what the CRD recognizes as a religious practice, and that therefore employers must facilitate caste separation in the workplace, the very conduct that the CRD says

is discriminatory.  Indeed, the individual defendants in the State Court Action could raise this specific argument to defend against the CRD's claims, a defense buttressed today with the U.S. Supreme Court's ruling in *Groff v. DeJoy.*

Defendant argues there is no actionable harm here because "the Department does not seek or attempt to legally define Hinduism in the underlying state court action."  (Motion, p. 19:21-23.).  If that were true, the CRD would not have directly defined Hindu belief in the State Action Complaint, and would have amended that Complaint to remove all references to Hinduism once HAF pointed out its defamatory statements.  But the CRD did include the statements, and has made no effort to amend the complaint to remove them in the more than two years since HAF sought to intervene in that action.

Finally, in footnotes, Defendant argues that the First Amendment does not prohibit the government from defining religious doctrine.  (Motion, p. 20, fn. 18-19.).  Caselaw clearly establishes that neither state nor federal governments may define religious practices contrary to the religious adherents themselves, and Defendant's unconvincing attempts to distinguish the *Serbia* case do nothing to change this.  As recently as 2020, the U.S. Supreme Court affirmed that very principle in *Our Lady of Guadalupe Sch. v. Morrissey-Berru* (2020) ___U.S.___ [140 S.Ct. 2049, 2060, 207 L.Ed.2d 870, 881].  "Among other things, the Religion Clauses protect the right of churches and other religious institutions to decide matters 'of faith and doctrine' without government intrusion.  [citations]  State interference in that sphere would obviously violate the free exercise of religion, and any attempt by government to dictate or even to influence such matters would constitute one of the central attributes of an establishment of religion.  The First Amendment outlaws such intrusion." *Id*. (*quoting Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC (2012) 565 U.S. 171,* 186; *further quoting Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church* (1952) 344 U.S. 94, 116.)

Also in the footnotes, Defendant further argues there are no facts to show that the CRD imposed "special disabilities on the basis of religion."  The mere fact that the State of California has wrongly labeled all Hindus as necessarily engaging in illegal caste discrimination through

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

the State Court Action clearly imposes "special disabilities on the basis of religious status." Indeed, the burden on religion need not be direct or heavy to support such a claim.

**C.  Complaint States a Fourteenth Amendment Due Process Claim Based on the CRD's Standardless and Contradictory Fair Employment and Housing Act Position that Makes It Both Illegal to Engage in "Caste Discrimination" and Illegal Not to Accommodate "Caste Discrimination".**

Defendant argues that the Complaint does not state a "cognizable legal theory" for its Due Process claims against Defendant.  On the contrary, it expressly states a clear and cognizable legal theory that Defendant simply ignores in its opposition.

In the Complaint, HAF clearly stated its due process claims.  "[T]he CRD has violated the procedural due-process rights of all Americans by adopting the interpretation and enforcement of the California Fair Employment and Housing Act that 'is so standardless that it would authorize or encourage seriously discriminatory enforcement.'"  (Complaint ¶ 40, p. 11:3-6; *quoting United States v. Williams*, 553 U. S. 285, 304 (2008).)

By claiming that FEHA bars caste discrimination without providing any definition in statute or regulation that states that caste discrimination is prohibited, without any statute or regulation that defines caste discrimination, without any definition of caste at all, the CRD has adopted an interpretation of the Fair Employment and Housing Act that is standardless that citizens have no way to know who is protected, what conduct is prohibited, or what evidence is necessary to establish or defend against such a claim.

Defendant further claims HAF "does not define or specify what protected liberty or property interests it seeks to protect, nor the source of those rights."  (Motion, p. 21:20-22.).  On the contrary, the Complaint could not be more clear.  HAF seeks to protect the religious liberty rights of Hindu Americans against unconstitutional intrusion by Defendant.  It is difficult to imagine a more fundamental liberty interest than the free exercise of religion, and impossible to identify a more concrete source for those rights than the First Amendment to the U.S. Constitution.

Moreover, Defendant's interpretation of the Fair Employment and Housing Act, as it asserts against Cisco in the State Action, creates statutorily conflicting requirements for employers and Hindu employees alike.  According to Defendant, employers must not engage in "caste discrimination."  But since the CRD wrongly claims caste discrimination is a religious practice of Hinduism, FEHA would also require employers to accommodate anyone wishing to engage in "caste discrimination" or who refuses to work with people the employee considers to be of the "wrong" caste.  Defendant's enforcement position contains mutually contradictory requirements for Hindu employers, employees,  and supervisors, making compliance with the law as the CRD sees it impossible.

Defendant claims that its actions cannot constitute a due process violation because it is simply using its statutory authority to file an enforcement action against Cisco under the Fair Employment and Housing Act.  But it does so by adopting an interpretation and enforcement policy in direct violation of the First and Fourteenth Amendments.  The CRD does not have the authority to violate the Free Exercise and Due Process rights of Hindu Americans by subjecting them to standardless and contradictory legal standards that make it impossible for them to avoid enforcement actions and civil litigation based on the CRD's unconstitutional enforcement positions.

"To be sure, the Free Exercise Clause bars 'governmental regulation of religious beliefs.'"  *Gillette v. United States*, 401 U.S. 437, 462, 91 S. Ct. 828, 842 (1971); *quoting Sherbert v. Verner*, 374 U.S. 398, 402 (1963).  "If the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect." *Braunfeld v. Brown*, 366 U.S. 599, 607 (1961) (opinion of Warren, C. J.); *quoted in Sherbert, supra*, 374 U.S. at 402.

"The First Amendment declares that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof.  The Fourteenth Amendment

has rendered the legislatures of the states as incompetent as Congress to enact such laws." *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

HAF has stated a clear and actionable Due Process claim under the Fourteenth amendment to the U.S. Constitution's Free Exercise of Religion clause.

**D.**   **U.S. Supreme Court Precedent Clearly Holds that Using Religious Classifications as the Basis for Government Action Violates the Equal Protection Clause.**

Defendant argues the Complaint does not satisfy any of the requirements to state an Equal Protection claim against the CRD.  On the contrary, even a cursory reading of the Complaint shows the exact opposite to be true.  HAF has satisfied all of the elements.  First, it identified different treatment of a suspect class satisfying the first two elements of *Barren v. Harrington*, 152. F3d. 1193, 1194 (9th Cir. 1998).  The CRD singled out Hindu Americans from all non-Hindu Americans, claiming religious teachings and practices require Hindus to violate the Fair Employment and Housing Act.

A plaintiff states a Section 1983 claim based on equal protection where it alleges "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005), *quoting Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citation and quotation marks omitted).

The Complaint here does exactly that.  The CRD intentionally filed the State Action against Cisco and intentionally claimed caste discrimination is a strict religious hierarchy under Hinduism.  The CRD singled out Hinduism from all other religious, cultural, or ethnic groups that practice or espouse caste discrimination.

And it did it with full knowledge of what it was doing.  After HAF filed its Motion to Intervene in the State Action, the CRD did not amend or clarify its complaint or allegations even after HAF raised it.  Rather, the CRD filed an ex parte application demonstrating its intention to oppose the intervention rather than amend its complaint, showing it is, and was, a conscious and intentional action to discriminate against Hindu Americans based on nothing other than their

21

membership in a protected class, their practice of the Hindu faith.  The "government may not use religion as a basis of classification for the imposition of duties, penalties, privileges or benefits. State power is no more to be used so as to handicap religions than it is to favor them." *McDaniel v. Paty*, 435 U.S. 618, 639 (1978) (Justice Brennan concurring opinion).

Defendant argues that HAF does not have an Equal Protection Clause claim here because "courts are properly hesitant to review matters that fall within prosecutorial discretion," citing standards laid out in criminal selective-prosecution matters challenging the criminal proceeding under the Fifth Amendment.  (Motion, p. 24:9-10.)

This case has nothing to do with prosecutorial discretion.  The CRD did not bring a criminal charge against Cisco, nor could it, as the CRD does not have the authority to bring criminal charges against anyone.  None of the cases or laws cited by Defendant suggest that the CRD enjoys some deferential treatment for its civil enforcement actions based on the standards that apply to district attorneys pursuing criminal charges.

But even if it did, prosecutorial discretion has no application here.  The cases cited by Defendant are criminal selective prosecution cases.  *See United States v. Armstrong*, 517 U.S. 456 (selective prosecution argument in criminal drug possession and arms possession case); *Wayte v. U.S.*, 470 U.S. 598 (1985) (selective prosecution argument by criminal defendant charged with failing to register for the draft).  Selective prosecution claims involve the government bringing legitimate charges against a defendant based on a protected classification where the prosecutor elects not to bring those same charges under similar circumstances against possible defendants that are not part of the classification.  Thus, in a selective-prosecution case, the challenged conduct is the prosecutor's selection of which legitimate cases to bring before the court, not whether the charges themselves are legitimate or constitutional.

In contrast, HAF here argues the charges themselves violate the Equal Protection Clause of the Fourteenth Amendment because the CRD is adopting an interpretation of Hinduism and the California Fair Employment and Housing Act that unconstitutionally burdens Hindu

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)

Americans based only on the fact that they are Hindu.  Selective prosecution is not at issue here, as neither criminal prosecutors nor the CRD have discretion to bring unconstitutional claims.

### III.   <u>CONCLUSION</u>

HAF has standing to bring these claims based on the specific harms Defendant's unconstitutional actions, based both on the direct harm caused to HAF and the associational harm caused to the members of the Hindu-American community throughout California.  It has clearly stated causes of action under 42 U.S.C. § 1983 based on the CRD's violation of the Free Exercise, Due Process, and Equal Protection clauses of the First and Fourteenth Amendments to the U.S. Constitution.

HAF respectfully asks the Court to deny the Motion.

Dated: June 29, 2023                                Respectfully Submitted,


<u>/s/ Timothy C. Travelstead</u>
Timothy C. Travelstead, Esq.
Scott C. Ku, Esq.
Attorneys for Plaintiff
HINDU AMERICAN FOUNDATION

**PLAINTIFF HINDU AMERICAN FOUNDATION'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**
(2:22-CV-01656-DAD-JDP)