Timothy C. Travelstead, Esq. (SBN 215260)
   *t.travelstead@narayantravelstead.com*
Scott C. Ku, Esq. (SBN 314970)
   *s.ku@narayantravelstead.com*
NARAYAN TRAVELSTEAD P.C.
7901 Stoneridge Drive, Suite 230
Pleasanton, CA 94588
Telephone: (650) 403-0150

Attorneys for Plaintiff
HINDU AMERICAN FOUNDATION

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDU AMERICAN FOUNDATION, INC., a Florida Not For Profit Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KEVIN KISH, an individual, in his official capacity as Director of the California Civil Rights Department; and DOES 1 - 50, inclusive,<br><br>Defendants. | Case No. 2-22-cv-01656-DAD-JDP<br><br>**DECLARATION OF TIMOTHY C. TRAVELSTEAD IN SUPPORT OF PLAINTIFF HINDU AMERICAN FOUNDATION'S REQUEST FOR JUDICIAL NOTICE**<br><br>Date:      September 19, 2023<br>Time:     1:30 p.m.<br>Judge:    Hon. Dale A. Drozd<br>Dept.:     Courtroom 4, 15th Floor<br><br><br>Date Action Filed:  September 20, 2022 |

1
**DECLARATION OF TIMOTHY C. TRAVELSTEAD IN SUPPORT OF PLAINTIFF HINDU AMERICAN FOUNDATION'S REQUEST FOR JUDICIAL NOTICE**
(2:22-CV-01656-DAD-JDP)

I, Timothy C. Travelstead, declare as follows:

1. I am an attorney at law licensed by the State of California and admitted to practice before the courts of the State of California and before this court. I am a shareholder at Narayan Travelstead, P.C., the firm-of-record for Plaintiff Hindu American Foundation and make this declaration in support of Plaintiff's Request for Judicial Notice in support of its Opposition to Defendant's Motion to Dismiss. I state the following based on personal knowledge.

2. On June 28, 2023, I visited the Internal Revenue Service ("IRS") public government website to locate the Catholic League for Religious & Civil Rights' publicly filed tax documents and the IRS instructions for its Form 990. To find these documents, I used the tool "Tax Exempt Organization Search, available at https://apps.irs.gov/app/eos/. This search produced the Catholic League for Religious & Civil Rights' public Form 990 filings. A true and correctly copy of The Catholic League for Religious & Civil Rights' Form 990 for Tax Year 2019 as I obtained it from the IRS's website is attached hereto as **Exhibit A.**

3. I also searched for an downloaded the 2019 and 2022 IRS Form 990 Instructions, available directly from the IRS's website (https://www.irs.gov/pub/irs-prior/i990--2019.pdf & https://www.irs.gov/pub/irs-pdf/i990.pdf), which aid in explaining IRS Form 990. A true and correct copy of those instructions are attached hereto as **Exhibit B** and **Exhibit C.**

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on June 29, 2023, at Pleasanton, California.

/s/Timothy C. Travelstead
TIMOTHY C. TRAVELSTEAD

**DECLARATION OF TIMOTHY C. TRAVELSTEAD IN SUPPORT OF PLAINTIFF HINDU AMERICAN FOUNDATION'S REQUEST FOR JUDICIAL NOTICE**
(2:22-CV-01656-DAD-JDP)

# EXHIBIT A

| efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | | DLN: 93493289012400 |
|---|---|---|---|

Form **990**

**Return of Organization Exempt From Income Tax**

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

▶ Do not enter social security numbers on this form as it may be made public.

▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2019**

Open to Public Inspection

Department of the Treasury
Internal Revenue Service

**A** For the 2019 calendar year, or tax year beginning 01-01-2019 , and ending 12-31-2019

| **B** Check if applicable: | **C** Name of organization CATH LEAGUE FOR RELIGIOUS & CIVIL RIGHTS | **D** Employer identification number |
|---|---|---|
| ☐ Address change | | 23-7279981 |
| ☐ Name change | Doing business as | |
| ☐ Initial return | | |
| ☐ Final return/terminated | Number and street (or P.O. box if mail is not delivered to street address) Room/suite 450 SEVENTH AVE | **E** Telephone number |
| ☐ Amended return | | |
| ☐ Application pending | City or town, state or province, country, and ZIP or foreign postal code NEW YORK, NY 10123 | **G** Gross receipts $ 3,544,759 |

| **F** Name and address of principal officer: WILLIAM DONOHUE | **H(a)** Is this a group return for subordinates? ☐ Yes ☑ No |
|---|---|
| | **H(b)** Are all subordinates included? ☐ Yes ☐ No If "No," attach a list. (see instructions) |

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J** Website: ▶ WWW.CATHOLICLEAGUE.ORG

**H(c)** Group exemption number ▶

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶ | **L** Year of formation: 1973 | **M** State of legal domicile: CA

## Part I Summary

**1** Briefly describe the organization's mission or most significant activities:
THE CATHOLIC LEAGUE WORKS TO SAFEGUARD BOTH THE RELIGIOUS FREEDOM RIGHTS AND THE FREE SPEECH RIGHTS OF CATHOLICS WHENEVER AND WHEREVER THEY ARE THREATENED.

**2** Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| **3** Number of voting members of the governing body (Part VI, line 1a) | | **3** | 13 |
| **4** Number of independent voting members of the governing body (Part VI, line 1b) | | **4** | 11 |
| **5** Total number of individuals employed in calendar year 2019 (Part V, line 2a) | | **5** | 12 |
| **6** Total number of volunteers (estimate if necessary) | | **6** | |
| **7a** Total unrelated business revenue from Part VIII, column (C), line 12 | | **7a** | 0 |
| **b** Net unrelated business taxable income from Form 990-T, line 39 | | **7b** | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| **8** Contributions and grants (Part VIII, line 1h) | | 2,692,722 | 2,687,906 |
| **9** Program service revenue (Part VIII, line 2g) | | | 0 |
| **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d) | | 677,514 | 850,305 |
| **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | | 2,035 | 6,548 |
| **12** Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | | 3,372,271 | 3,544,759 |
| **13** Grants and similar amounts paid (Part IX, column (A), lines 1–3) | | | 0 |
| **14** Benefits paid to or for members (Part IX, column (A), line 4) | | | 0 |
| **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | | 1,748,906 | 2,222,722 |
| **16a** Professional fundraising fees (Part IX, column (A), line 11e) | | | 0 |
| **b** Total fundraising expenses (Part IX, column (D), line 25) ▶539,747 | | | |
| **17** Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | | 1,270,612 | 1,116,469 |
| **18** Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | | 3,019,518 | 3,339,191 |
| **19** Revenue less expenses. Subtract line 18 from line 12 | | 352,753 | 205,568 |

| | | Beginning of Current Year | End of Year |
|---|---|---|---|
| **20** Total assets (Part X, line 16) | | 43,488,610 | 50,243,889 |
| **21** Total liabilities (Part X, line 26) | | 37,722 | 32,869 |
| **22** Net assets or fund balances. Subtract line 21 from line 20 | | 43,450,888 | 50,211,020 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| Sign Here | ****** Signature of officer | 2020-08-14 Date |
|---|---|---|
| | WILLIAM DONOHUE PRESIDENT Type or print name and title | |

| Paid Preparer Use Only | Print/Type preparer's name | Preparer's signature | Date 2020-08-14 | Check ☑ if self-employed | PTIN P00768893 |
|---|---|---|---|---|---|
| | Firm's name ▶ ROBERT ROSARIO | | | Firm's EIN ▶ | |
| | Firm's address ▶ 64 HUNTER RD FAIRFIELD, CT 06824 | | | Phone no. (203) 254-2704 | |

May the IRS discuss this return with the preparer shown above? (see instructions) ☑ Yes ☐ No

**For Paperwork Reduction Act Notice, see the separate instructions.** Cat. No. 11282Y Form **990** (2019)

Form 990 (2019)        Page **2**

| **Part III** | **Statement of Program Service Accomplishments** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III · · · · · · · · · · · · · □

**1**   Briefly describe the organization's mission:

THE CATHOLIC LEAGUE WORKS TO SAFEGUARD BOTH THE RELIGIOUS FREEDOM RIGHTS AND THE FREE SPEECH RIGHTS OF CATHOLICS WHENEVER AND WHEREVER THEY ARE THREATENED.

**2**   Did the organization undertake any significant program services during the year which were not listed on
the prior Form 990 or 990-EZ? · · · · · · · · · · · · · · · · · □ Yes ☑ No
If "Yes," describe these new services on Schedule O.

**3**   Did the organization cease conducting, or make significant changes in how it conducts, any program
services? · · · · · · · · · · · · · · · · · · · · · □ Yes ☑ No
If "Yes," describe these changes on Schedule O.

**4**   Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses.
Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total
expenses, and revenue, if any, for each program service reported.

**4a**   (Code:     ) (Expenses $    2,028,019   including grants of $       ) (Revenue $       )
See Additional Data

**4b**   (Code:     ) (Expenses $       including grants of $       ) (Revenue $       )

**4c**   (Code:     ) (Expenses $       including grants of $       ) (Revenue $       )

**4d**   Other program services (Describe in Schedule O.)
(Expenses $       including grants of $       ) (Revenue $       )

**4e**   **Total program service expenses ▶**     2,028,019

Form **990** (2019)

**Part IV**    Checklist of Required Schedules

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* 🐾 | **1** | Yes | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? 🐾 . . . | **2** | Yes | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | **3** | | No |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . . . . | **4** | | No |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* . . | **5** | | No |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* | **6** | | No |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . . . | **7** | | No |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* | **8** | | No |
| **9** | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | **9** | | No |
| **10** | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* 🐾 . . . . . . | **10** | Yes | |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI.* 🐾 | **11a** | Yes | |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* 🐾 . . . . . . . | **11b** | Yes | |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . . . . . . | **11c** | | No |
| **d** | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . . . . . . . . . | **11d** | | No |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | | No |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | | No |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* 🐾 . . . . . . . . . . . . . . . . . . | **12a** | Yes | |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | | No |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? . . . . . | **14a** | | No |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | **14b** | | No |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . . . . . . . . | **15** | | No |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* . . . . . . . . . | **16** | | No |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* (see instructions) . . . . . . | **17** | | No |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . . . . . | **18** | | No |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . . . . . . . . | **19** | | No |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . . | **20a** | | No |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | **21** | | No |

| Part IV | Checklist of Required Schedules *(continued)* | | | |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| **22** | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . . . | **22** | | No |
| **23** | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **23** | Yes | |
| **24a** | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . . . . . . . . | **24a** | | No |
| **b** | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . . | **24b** | | |
| **c** | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . | **24c** | | |
| **d** | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . . | **24d** | | |
| **25a** | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I . . . . | **25a** | | No |
| **b** | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I . . . . . . . . . . . . . . . . . . . | **25b** | | No |
| **26** | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* . . . . . . . . . . | **26** | | No |
| **27** | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,Part III* . . . . . . . . . . . . . . . . . . . . . . . . | **27** | | No |
| **28** | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| **a** | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . | **28a** | | No |
| **b** | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* . . . | **28b** | | No |
| **c** | A 35% controlled entity of one or more individuals and/or organizations described in lines 28a or 28b? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . | **28c** | | No |
| **29** | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* . . | **29** | | No |
| **30** | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . | **30** | | No |
| **31** | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | **31** | | No |
| **32** | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . . . . | **32** | | No |
| **33** | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . | **33** | | No |
| **34** | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . . . | **34** | | No |
| **35a** | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | |
| **b** | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . . | **35b** | | |
| **36** | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . | **36** | | No |
| **37** | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* . . | **37** | | No |
| **38** | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. . . . . . . . . . . . . . | **38** | Yes | |

| Part V | **Statements Regarding Other IRS Filings and Tax Compliance** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . ☐

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable . . | **1a** | 0 | | |
| **b** | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable . | **1b** | 0 | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . . . . | | | **1c** | | |

| Part V | Statements Regarding Other IRS Filings and Tax Compliance | | | |
|---|---|---|---|---|

| | | | | Yes | No |
|---|---|---|---|---|---|
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | **2a** | 12 | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | **2b** | | Yes | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | **3a** | | | No |
| b | If "Yes," has it filed a Form 990-T for this year?*If "No" to line 3b, provide an explanation in Schedule O* | **3b** | | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | **4a** | | | No |
| b | If "Yes," enter the name of the foreign country: ▶ _____ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | **5a** | | | No |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | **5b** | | | No |
| c | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | **5c** | | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | **6a** | | | No |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | **6b** | | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | **7a** | | | No |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | **7b** | | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | **7c** | | | No |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | **7d** | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | **7e** | | | No |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | **7f** | | | No |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | **7g** | | | No |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | **7h** | | | No |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | **8** | | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | **9a** | | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | **9b** | | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | **10a** | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | | |
| a | Gross income from members or shareholders | **11a** | | | |
| b | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) | **11b** | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | **12a** | | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | **12b** | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | **13a** | | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | **13b** | | | |
| c | Enter the amount of reserves on hand | **13c** | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? | **14a** | | | No |
| b | If "Yes," has it filed a Form 720 to report these payments?*If "No," provide an explanation in Schedule O* | **14b** | | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see instructions and file Form 4720, Schedule N. | **15** | | | No |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | **16** | | | No |

| Part VI | Governance, Management, and Disclosure *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.* | |
|---|---|---|

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . . . . ☑

## Section A. Governing Body and Management

| | | | | Yes | No |
|---|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year | 1a | 13 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent | 1b | 11 | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? . . . . . . . . . . . . . . | 2 | | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? . | 3 | | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? . | 4 | | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? . | 5 | | | No |
| 6 | Did the organization have members or stockholders? . . . . . . . . . . . . | 6 | | | No |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | 7a | | | No |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | 7b | | | No |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | |
| a | The governing body? . . . . . . . . . . . . . . . . . . . . | 8a | | Yes | |
| b | Each committee with authority to act on behalf of the governing body? . . . . . . . . | 8b | | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? If "Yes," provide the names and addresses in Schedule O . . . . . | 9 | | | No |

## Section B. Policies (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? . . . . . . . . . . . | 10a | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | Yes | |
| b | Describe in Schedule O the process, if any, used by the organization to review this Form 990. . . . . | | | |
| 12a | Did the organization have a written conflict of interest policy? If "No," go to line 13 . . . . . . . | 12a | Yes | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | 12b | Yes | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? If "Yes," describe in Schedule O how this was done | 12c | Yes | |
| 13 | Did the organization have a written whistleblower policy? . . . . . . . . . . . | 13 | Yes | |
| 14 | Did the organization have a written document retention and destruction policy? . . . . . . . | 14 | Yes | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official . . . . . . . . | 15a | Yes | |
| b | Other officers or key employees of the organization . . . . . . . . . . . . | 15b | Yes | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | 16a | | No |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | 16b | | |

## Section C. Disclosure

17  List the states with which a copy of this Form 990 is required to be filed▶
CA , CT , IL , MA , MN , NJ , NY , PA , VA

18  Section 6104 requires an organization to make its Form 1023 (or 1024-A if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website  ☐ Another's website  ☑ Upon request  ☐ Other (explain in Schedule O)

19  Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

20  State the name, address, and telephone number of the person who possesses the organization's books and records:
▶WILLIAM DONOHUE   450 SEVENTH AVE   NEW YORK, NY 10123 (212) 371-3191

| Part VII | Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors |
|---|---|

Case 1:20-cv-01580-7AU-JDP   Document 16-1   Filed 06/29/23   Page 10 of 249

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . □

| Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees |
|---|

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

● List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

● List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See instructions for the order in which to list the persons above.

□ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) WILLIAM DONOHUE<br>PRESIDENT | 65.00<br>0.00 | X | | X | | | | 990,044 | 0 | 63,083 |
| (2) BERNADETTE BRADY-EGAN<br>VICE PRESIDENT | 55.00<br>0.00 | X | | X | | | | 289,682 | 0 | 48,724 |
| (3) WALTER KNYSZ JR<br>CHAIRMAN | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (4) ALAN CHESKEY<br>SECRETARY | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (5) ERIN MERSINO<br>BD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (6) RAYMOND ARROYO<br>BD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (7) FRANCIS SCHROEDER<br>BD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (8) DEAL HUDSON<br>BD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (9) JOE THOMPSON<br>BD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (10) THEODORE VARGAS<br>BD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (11) RICHARD WALAWENDER<br>BD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (12) ANTHONY OBOYLE<br>BD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (13) VINCENT SANZONE<br>BD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

Form 990 (2019)                                                                                     Page **8**

| Part VII | **Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)* |
|---|---|

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **1b Sub-Total** . . . . . . . . ▶ | | | | | | | | | | |
| **c Total from continuation sheets to Part VII, Section A** . . . . ▶ | | | | | | | | | | |
| **d Total (add lines 1b and 1c)** . . . . . . . . ▶ | | | | | | | | 1,279,726 | 0 | 111,807 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 2

| | | | Yes | No |
|---|---|---|---|---|
| **3** | Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . | **3** | | No |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . . . | **4** | Yes | |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . . . | **5** | | No |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶

Form **990** (2019)

**Part VIII** **Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII

| | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1a** Federated campaigns | **1a** | | | | |
| | **b** Membership dues | **1b** | | | | |
| | **c** Fundraising events | **1c** | | | | |
| | **d** Related organizations | **1d** | | | | |
| | **e** Government grants (contributions) | **1e** | | | | |
| | **f** All other contributions, gifts, grants, and similar amounts not included above | **1f** | 2,687,906 | | | |
| | **g** Noncash contributions included in lines 1a - 1f:$ | **1g** | | | | |
| | **h Total.** Add lines 1a-1f . . . . . ▶ | | 2,687,906 | | | |
| **Program Service Revenue** | **2a** | Business Code | | | | |
| | **b** | | | | | |
| | **c** | | | | | |
| | **d** | | | | | |
| | **e** | | | | | |
| | **f** All other program service revenue. | | | | | |
| | **g Total.** Add lines 2a-2f. . . . . ▶ | | | | | |
| **Other Revenue** | **3** Investment income (including dividends, interest, and other similar amounts) . . . . . ▶ | | 850,305 | | | 850,305 |
| | **4** Income from investment of tax-exempt bond proceeds ▶ | | | | | |
| | **5** Royalties . . . . . . . . ▶ | | | | | |
| | | (i) Real | (ii) Personal | | | | |
| | **6a** Gross rents | **6a** | | | | |
| | **b** Less: rental expenses | **6b** | | | | |
| | **c** Rental income or (loss) | **6c** | | | | |
| | **d** Net rental income or (loss) . . . . . ▶ | | | | | |
| | | (i) Securities | (ii) Other | | | | |
| | **7a** Gross amount from sales of assets other than inventory | **7a** | | | | |
| | **b** Less: cost or other basis and sales expenses | **7b** | | | | |
| | **c** Gain or (loss) | **7c** | | | | |
| | **d** Net gain or (loss) . . . . . . ▶ | | | | | |
| | **8a** Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 . | **8a** | | | | |
| | **b** Less: direct expenses | **8b** | | | | |
| | **c** Net income or (loss) from fundraising events . ▶ | | | | | |
| | **9a** Gross income from gaming activities. See Part IV, line 19 . | **9a** | | | | |
| | **b** Less: direct expenses | **9b** | | | | |
| | **c** Net income or (loss) from gaming activities . ▶ | | | | | |
| | **10a** Gross sales of inventory, less returns and allowances | **10a** | 6,548 | | | |
| | **b** Less: cost of goods sold | **10b** | | | | |
| | **c** Net income or (loss) from sales of inventory . ▶ | | 6,548 | | 6,548 | |
| | Miscellaneous Revenue | Business Code | | | | |
| | **11a** | | | | | |
| | **b** | | | | | |
| | **c** | | | | | |
| | **d** All other revenue | | | | | |
| | **e Total.** Add lines 11a-11d . . . . . ▶ | | | | | |
| | **12 Total revenue.** See instructions . . . ▶ | | 3,544,759 | 6,548 | 0 | 850,305 |

| Part IX | Statement of Functional Expenses |

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . . ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | **(A)** Total expenses | **(B)** Program service expenses | **(C)** Management and general expenses | **(D)** Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 . . . . | | | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 . . . . . . . . . . . | | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. . . . . . . . . . . . . . . . | | | | |
| **4** Benefits paid to or for members . . . . . . | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . . . . . . . . . | 1,279,726 | 986,379 | 229,361 | 63,986 |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . . . . . | | | | |
| **7** Other salaries and wages . . . . . . . . | 599,743 | 290,354 | 244,851 | 64,538 |
| **8** Pension plan accruals and contributions (include section 401 (k) and 403(b) employer contributions) . . . . | 104,103 | 70,594 | 27,080 | 6,429 |
| **9** Other employee benefits . . . . . . . . | 150,687 | 59,364 | 71,696 | 19,627 |
| **10** Payroll taxes . . . . . . . . . . . . | 88,463 | 60,094 | 22,320 | 6,049 |
| **11** Fees for services (non-employees): | | | | |
| **a** Management . . . . . . . . . . . . | | | | |
| **b** Legal . . . . . . . . . . . . . . | | | | |
| **c** Accounting . . . . . . . . . . . . | | | | |
| **d** Lobbying . . . . . . . . . . . . . | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | | | | |
| **f** Investment management fees . . . . . . . | | | | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | | | | |
| **12** Advertising and promotion . . . . . | 19,791 | 19,791 | | |
| **13** Office expenses . . . . . . . . . | 91,797 | 46,043 | 41,119 | 4,635 |
| **14** Information technology . . . . . . . . | | | | |
| **15** Royalties . . . . . . . . . . . . | | | | |
| **16** Occupancy . . . . . . . . . . . . | 294,156 | 199,822 | 74,219 | 20,115 |
| **17** Travel . . . . . . . . . . . . . | 11,465 | 7,788 | 2,893 | 784 |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| **19** Conferences, conventions, and meetings . . . | | | | |
| **20** Interest . . . . . . . . . . . . . | | | | |
| **21** Payments to affiliates . . . . . . . . . | | | | |
| **22** Depreciation, depletion, and amortization . . . | | | | |
| **23** Insurance . . . . . | 25,340 | | 25,340 | |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** SEE ATTACHED STATEMENT | 673,920 | 287,790 | 32,546 | 353,584 |
| **b** | | | | |
| **c** | | | | |
| **d** | | | | |
| **e** All other expenses | | | | |
| **25** **Total functional expenses.** Add lines 1 through 24e | 3,339,191 | 2,028,019 | 771,425 | 539,747 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

Form 990 (2019)                                                                      Page **11**

**Part X**   **Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . ☐

| | | | (A)<br>Beginning of year | | (B)<br>End of year |
|---|---|---|---|---|---|
| **Assets** | 1 | Cash—non-interest-bearing . . . . . . | 393,160 | 1 | 516,249 |
| | 2 | Savings and temporary cash investments . . . | | 2 | |
| | 3 | Pledges and grants receivable, net . . . . | | 3 | |
| | 4 | Accounts receivable, net . . . . . . . | 37,653 | 4 | 37,254 |
| | 5 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons . . . | | 5 | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) . . . | | 6 | |
| | 7 | Notes and loans receivable, net . . . . . . | | 7 | |
| | 8 | Inventories for sale or use . . . . . . . | | 8 | |
| | 9 | Prepaid expenses and deferred charges . . . | | 9 | |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D **10a** 184,841 | | | |
| | b | Less: accumulated depreciation **10b** 184,841 | | 10c | |
| | 11 | Investments—publicly traded securities . | | 11 | |
| | 12 | Investments—other securities. See Part IV, line 11 . . . . . | 43,000,916 | 12 | 49,608,835 |
| | 13 | Investments—program-related. See Part IV, line 11 . . | | 13 | |
| | 14 | Intangible assets . . . . . . . . | | 14 | |
| | 15 | Other assets. See Part IV, line 11 . . . . | 56,881 | 15 | 81,551 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 34) . . . | 43,488,610 | 16 | 50,243,889 |
| **Liabilities** | 17 | Accounts payable and accrued expenses . . . . | 37,722 | 17 | 32,869 |
| | 18 | Grants payable . . . | | 18 | |
| | 19 | Deferred revenue . . . . | | 19 | |
| | 20 | Tax-exempt bond liabilities . . . . . . | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons . . . | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties . . | | 23 | |
| | 24 | Unsecured notes and loans payable to unrelated third parties . . | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | 25 | |
| | 26 | **Total liabilities.** Add lines 17 through 25 . . | 37,722 | 26 | 32,869 |
| **Net Assets or Fund Balances** | | **Organizations that follow FASB ASC 958, check here ▶ ☑ and complete lines 27, 28, 32, and 33.** | | | |
| | 27 | Net assets without donor restrictions . . . . . | 43,450,888 | 27 | 50,211,020 |
| | 28 | Net assets with donor restrictions . . . . . | | 28 | |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | |
| | 29 | Capital stock or trust principal, or current funds . . . . | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund . . . | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds . | | 31 | |
| | 32 | Total net assets or fund balances . . . . . | 43,450,888 | 32 | 50,211,020 |
| | 33 | Total liabilities and net assets/fund balances . . . . . . . | 43,488,610 | 33 | 50,243,889 |

Form **990** (2019)

Form 990 (2019)                                                                                                    Page **12**

| | **Part XI** | **Reconcilliation of Net Assets** | | |
|---|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . ☐

| | | | |
|---|---|---|---|
| **1** | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . | **1** | 3,544,759 |
| **2** | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . | **2** | 3,339,191 |
| **3** | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . | **3** | 205,568 |
| **4** | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) . . | **4** | 43,450,888 |
| **5** | Net unrealized gains (losses) on investments . . . . . . . . . | **5** | 6,554,564 |
| **6** | Donated services and use of facilities . . . . . . . . . . | **6** | |
| **7** | Investment expenses . . . . . . . . . . . . . . | **7** | |
| **8** | Prior period adjustments . . . . . . . . . . . . . | **8** | |
| **9** | Other changes in net assets or fund balances (explain in Schedule O) . . . . . . . | **9** | 0 |
| **10** | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 33, column (B)) | **10** | 50,211,020 |

| | **Part XII** | **Financial Statements and Reporting** | | |
|---|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . ☐

| | | **Yes** | **No** |
|---|---|---|---|
| **1** | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other _____ <br> If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | |
| **2a** | Were the organization's financial statements compiled or reviewed by an independent accountant? | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: <br> ☐ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | | |
| **b** | Were the organization's financial statements audited by an independent accountant? | | Yes |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: <br> ☑ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | | |
| **c** | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | | Yes |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | |
| **3a** | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | | |
| **b** | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | | |

Form **990** (2019)

**Additional Data**

|  |  |
|--:|:--|
| **Software ID:** |  |
| **Software Version:** |  |
| **EIN:** | 23-7279981 |
| **Name:** | CATH LEAGUE FOR RELIGIOUS & CIVIL RIGHTS |

Form 990 (2019)

**Form 990, Part III, Line 4a:**

THE PROMOTION, FOSTERING, ENCOURAGEMENT, STIMULATION AND PROTECTION OF CIVIL AND RELIGIOUS RIGHTS THROUGH LEAGUE PROGRAMS AND ACTIVITIES, AND NEWSLETTER PUBLICATION FOR DISTRIBUTION TO LEAGUE MEMBERS. THE NEWSLETTER DETAILS CURRENT DEVELOPMENTS OF INTEREST TO CATHOLIC LEAGUE CAUSES. THE LEAGUE MONITORS MEDIA COVERAGE AND EDUCATES AND INFORMS MEMBERS OF THEIR CONSTITUTIONAL RIGHTS.

| **efile GRAPHIC print - DO NOT PROCESS** | **As Filed Data -** | **DLN: 93493289012400** |
| --- | --- | --- |

| **SCHEDULE A**<br>**(Form 990 or 990EZ)**<br><br>Department of the Treasury<br>Internal Revenue Service | **Public Charity Status and Public Support**<br>Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.<br>▶ **Attach to Form 990 or Form 990-EZ.**<br>▶ Go to *www.irs.gov/Form990* for instructions and the latest information. | OMB No. 1545-0047<br>**2019**<br>**Open to Public Inspection** |

| **Name of the organization**<br>CATH LEAGUE FOR RELIGIOUS & CIVIL RIGHTS | **Employer identification number**<br>23-7279981 |
| --- | --- |

| **Part I** | **Reason for Public Charity Status** (All organizations must complete this part.) See instructions. |
| --- | --- |

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

**1** ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

**2** ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990 or 990-EZ).)

**3** ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

**4** ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

**5** ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170 (b)(1)(A)(iv).** (Complete Part II.)

**6** ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

**7** ☑ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

**8** ☐ A community trust described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

**9** ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

**10** ☐ An organization that normally receives: (1) more than 331/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 331/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

**11** ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

**12** ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box in lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

**a** ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

**b** ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

**c** ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

**d** ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

**e** ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

**f** Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . _____

**g** Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
| --- | --- | --- | --- | --- | --- | --- |
| | | | **Yes** | **No** | | |
| | | | | | | |
| **Total** | | | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.      Cat. No. 11285F      **Schedule A (Form 990 or 990-EZ) 2019**

Schedule A (Form 990 or 990-EZ) 2019

Page **2**

## Part II   Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)

(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

### Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | **(a)** 2015 | **(b)** 2016 | **(c)** 2017 | **(d)** 2018 | **(e)** 2019 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") . . | 2,965,825 | 2,811,954 | 3,016,170 | 2,694,757 | 2,694,454 | 14,183,160 |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . . | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| **4** **Total.** Add lines 1 through 3 | 2,965,825 | 2,811,954 | 3,016,170 | 2,694,757 | 2,694,454 | 14,183,160 |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) . . | | | | | | |
| **6** **Public support.** Subtract line 5 from line 4. | | | | | | 14,183,160 |

### Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | **(a)** 2015 | **(b)** 2016 | **(c)** 2017 | **(d)** 2018 | **(e)** 2019 | **(f)** Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4. . | 2,965,825 | 2,811,954 | 3,016,170 | 2,694,757 | 2,694,454 | 14,183,160 |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . . | 532,291 | 555,669 | 601,115 | 677,514 | 850,305 | 3,216,894 |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on. . | | | | | | |
| **10** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). . | | | | | | |
| **11** **Total support.** Add lines 7 through 10 | | | | | | 17,400,054 |

| | | | |
|---|---|---|---|
| **12** Gross receipts from related activities, etc. (see instructions) . . . . . . . . . . . . . . . . . | | **12** | |

**13** **First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

### Section C. Computation of Public Support Percentage

| | | |
|---|---|---|
| **14** Public support percentage for 2019 (line 6, column (f) divided by line 11, column (f)) . . . . . . . | **14** | 81.510 % |
| **15** Public support percentage for 2018 Schedule A, Part II, line 14 . . . . . . . . . . . . . | **15** | 83.190 % |

**16a** **33 1/3% support test—2019.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . ▶ ☑

**b** **33 1/3% support test—2018.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . ▶ ☐

**17a** **10%-facts-and-circumstances test—2019.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**b** **10%-facts-and-circumstances test—2018.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**Schedule A (Form 990 or 990-EZ) 2019**

Schedule A (Form 990 or 990-EZ) 2019 | Page **3**

| **Part III** | **Support Schedule for Organizations Described in Section 509(a)(2)** |

(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

### Section A. Public Support

| **Calendar year**<br>**(or fiscal year beginning in)** ▶ | **(a)** 2015 | **(b)** 2016 | **(c)** 2017 | **(d)** 2018 | **(e)** 2019 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . . | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| **c** Add lines 7a and 7b. . | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6.) | | | | | | |

### Section B. Total Support

| **Calendar year**<br>**(or fiscal year beginning in)** ▶ | **(a)** 2015 | **(b)** 2016 | **(c)** 2017 | **(d)** 2018 | **(e)** 2019 | **(f)** Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. . . | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| **c** Add lines 10a and 10b. | | | | | | |
| **11** Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.) . . | | | | | | |

**14 First five years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

### Section C. Computation of Public Support Percentage

| **15** | Public support percentage for 2019 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | **15** | |
| **16** | Public support percentage from 2018 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . | **16** | |

### Section D. Computation of Investment Income Percentage

| **17** | Investment income percentage for **2019** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | |
| **18** | Investment income percentage from 2018 Schedule A, Part III, line 17 . . . . . . . . . . . . . . | **18** | |

**19a 331/3% support tests—2019.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . ▶ ☐

**b 33 1/3% support tests—2018.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

**20 Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐

**Schedule A (Form 990 or 990-EZ) 2019**

Schedule A (Form 990 or 990-EZ) 2019                                                         Page **4**

**Part IV**   **Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked 12a of Part I, complete Sections A and B. If you checked 12b of Part I, complete Sections A and C. If you checked 12c of Part I, complete Sections A, D, and E. If you checked 12d of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain. **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509 (a)(1) or (2)? If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2). **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? If "Yes," answer (b) and (c) below. **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? If "Yes," describe in **Part VI** when and how the organization made the determination. **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use. **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? If "Yes" and if you checked 12a or 12b in Part I, answer (b) and (c) below. **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations. **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes. **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? If "Yes," answer (b) and (c) below (if applicable). Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document). **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? If "Yes," provide detail in **Part VI.** **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ). **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ). **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? If "Yes," provide detail in **Part VI.** **9a** | | |
| **b** | Did one or more disqualified persons (as defined in line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? If "Yes," provide detail in **Part VI.** **9b** | | |
| **c** | Did a disqualified person (as defined in line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? If "Yes," provide detail in **Part VI.** **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? If "Yes," answer line 10b below. **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? (Use Schedule C, Form 4720, to determine whether the organization had excess business holdings). **10b** | | |

Schedule A (Form 990 or 990-EZ) 2019 | Page **5**

**Part IV**  **Supporting Organizations** (continued)

| | | Yes | No |
|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described in (b) and (c) below, the governing body of a supported organization? | | |
| | | **11a** | |
| **b** | A family member of a person described in (a) above? | **11b** | |
| **c** | A 35% controlled entity of a person described in (a) or (b) above? *If "Yes" to a, b, or c, provide detail in **Part VI**.* | **11c** | |

**Section B. Type I Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Did the directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | | |
| | | **1** | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | | |
| | | **2** | |

**Section C. Type II Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in **Part VI** how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | | |
| | | **1** | |

**Section D. All Type III Supporting Organizations**

| | | Yes | No |
|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | | |
| | | **1** | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization (s) or (ii) serving on the governing body of a supported organization? *If "No," explain in **Part VI** how the organization maintained a close and continuous working relationship with the supported organization(s).* | | |
| | | **2** | |
| **3** | By reason of the relationship described in (2), did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in **Part VI** the role the organization's supported organizations played in this regard.* | | |
| | | **3** | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

**1** Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

**a** ☐ The organization satisfied the Activities Test. Complete **line 2** below.

**b** ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.

**c** ☐ The organization supported a governmental entity. Describe in *Part VI* how you supported a government entity (see instructions)

**2** Activities Test. **Answer (a) and (b) below.**

| | | Yes | No |
|---|---|---|---|
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in **Part VI identify those supported organizations and explain** how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | | |
| | | **2a** | |
| **b** | Did the activities described in (a) constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | | |
| | | **2b** | |

**3** Parent of Supported Organizations. **Answer (a) and (b) below.**

| | | Yes | No |
|---|---|---|---|
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *Provide details in **Part VI**.* | **3a** | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in **Part VI.** the role played by the organization in this regard.* | **3b** | |

Schedule A (Form 990 or 990-EZ) 2019 — Page **6**

| **Part V** | **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** |

**1** ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 (explain in Part VI). **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| **1** | Net short-term capital gain | **1** | | |
| **2** | Recoveries of prior-year distributions | **2** | | |
| **3** | Other gross income (see instructions) | **3** | | |
| **4** | Add lines 1 through 3 | **4** | | |
| **5** | Depreciation and depletion | **5** | | |
| **6** | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | **6** | | |
| **7** | Other expenses (see instructions) | **7** | | |
| **8** | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | **8** | | |
| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
| **1** | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | **1** | | |
| **a** | Average monthly value of securities | **1a** | | |
| **b** | Average monthly cash balances | **1b** | | |
| **c** | Fair market value of other non-exempt-use assets | **1c** | | |
| **d** | **Total** (add lines 1a, 1b, and 1c) | **1d** | | |
| **e** | **Discount** claimed for blockage or other factors (explain in detail in Part VI): | | | |
| **2** | Acquisition indebtedness applicable to non-exempt use assets | **2** | | |
| **3** | Subtract line 2 from line 1d | **3** | | |
| **4** | Cash deemed held for exempt use. Enter 1-1/2% of line 3 (for greater amount, see instructions). | **4** | | |
| **5** | Net value of non-exempt-use assets (subtract line 4 from line 3) | **5** | | |
| **6** | Multiply line 5 by .035 | **6** | | |
| **7** | Recoveries of prior-year distributions | **7** | | |
| **8** | **Minimum Asset Amount** (add line 7 to line 6) | **8** | | |
| | **Section C - Distributable Amount** | | | Current Year |
| **1** | Adjusted net income for prior year (from Section A, line 8, Column A) | **1** | | |
| **2** | Enter 85% of line 1 | **2** | | |
| **3** | Minimum asset amount for prior year (from Section B, line 8, Column A) | **3** | | |
| **4** | Enter greater of line 2 or line 3 | **4** | | |
| **5** | Income tax imposed in prior year | **5** | | |
| **6** | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | **6** | | |

**7** ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Schedule A (Form 990 or 990-EZ) 2019**

Schedule A (Form 990 or 990-EZ) 2019        Page **7**

**Part V**   **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations**   (continued)

| Section D - Distributions | Current Year |
|---|---|
| 1   Amounts paid to supported organizations to accomplish exempt purposes | |
| 2   Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | |
| 3   Administrative expenses paid to accomplish exempt purposes of supported organizations | |
| 4   Amounts paid to acquire exempt-use assets | |
| 5   Qualified set-aside amounts (prior IRS approval required) | |
| 6   Other distributions (describe in **Part VI**). See instructions | |
| 7   **Total annual distributions.** Add lines 1 through 6. | |
| 8   Distributions to attentive supported organizations to which the organization is responsive (provide details in **Part VI**). See instructions | |
| 9   Distributable amount for 2019 from Section C, line 6 | |
| 10   Line 8 amount divided by Line 9 amount | |

| Section E - Distribution Allocations (see instructions) | (i) Excess Distributions | (ii) Underdistributions Pre-2019 | (iii) Distributable Amount for 2019 |
|---|---|---|---|
| 1   Distributable amount for 2019 from Section C, line 6 | | | |
| 2   Underdistributions, if any, for years prior to 2019 (reasonable cause required-- explain in **Part VI**). See instructions. | | | |
| 3   Excess distributions carryover, if any, to 2019: | | | |
| a   From 2014. . . . . . . | | | |
| b   From 2015. . . . . . . | | | |
| c   From 2016. . . . . . . | | | |
| d   From 2017. . . . . . . | | | |
| e   From 2018. . . . . . . | | | |
| f   **Total** of lines 3a through e | | | |
| g   Applied to underdistributions of prior years | | | |
| h   Applied to 2019 distributable amount | | | |
| i   Carryover from 2014 not applied (see instructions) | | | |
| j   Remainder. Subtract lines 3g, 3h, and 3i from 3f. | | | |
| 4   Distributions for 2019 from Section D, line 7: $ | | | |
| a   Applied to underdistributions of prior years | | | |
| b   Applied to 2019 distributable amount | | | |
| c   Remainder. Subtract lines 4a and 4b from 4. | | | |
| 5   Remaining underdistributions for years prior to 2019, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, explain in **Part VI**. See instructions. | | | |
| 6   Remaining underdistributions for 2019. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, explain in **Part VI**. See instructions. | | | |
| 7   **Excess distributions carryover to 2020.** Add lines 3j and 4c. | | | |
| 8   Breakdown of line 7: | | | |
| a   Excess from 2015. . . . . | | | |
| b   Excess from 2016. . . . . | | | |
| c   Excess from 2017. . . . . | | | |
| d   Excess from 2018. . . . . | | | |
| e   Excess from 2019. . . . . | | | |

Schedule A (Form 990 or 990-EZ) (2019)

**Additional Data**

| | |
|---:|:---|
| **Software ID:** | |
| **Software Version:** | |
| **EIN:** | 23-7279981 |
| **Name:** | CATH LEAGUE FOR RELIGIOUS & CIVIL RIGHTS |

Schedule A (Form 990 or 990-EZ) 2019                                                                                                       Page **8**

| **Part VI** | **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions). |
|---|---|

| Facts And Circumstances Test |
|---|
| |

| **efile GRAPHIC print - DO NOT PROCESS** | **As Filed Data -** | DLN: 93493289012400 |

## SCHEDULE C
**(Form 990 or 990-EZ)**

Department of the Treasury
Internal Revenue Service

## Political Campaign and Lobbying Activities

**For Organizations Exempt From Income Tax Under section 501(c) and section 527**

▶Complete if the organization is described below. ▶Attach to Form 990 or Form 990-EZ.
▶Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

# 2019

**Open to Public Inspection**

**If the organization answered "Yes" on Form 990, Part IV, Line 3, or Form 990-EZ, Part V, line 46 (Political Campaign Activities), then**
- Section 501(c)(3) organizations: Complete Parts I-A and B. Do not complete Part I-C.
- Section 501(c) (other than section 501(c)(3)) organizations: Complete Parts I-A and C below. Do not complete Part I-B.
- Section 527 organizations: Complete Part I-A only.

**If the organization answered "Yes" on Form 990, Part IV, Line 4, or Form 990-EZ, Part VI, line 47 (Lobbying Activities), then**
- Section 501(c)(3) organizations that have filed Form 5768 (election under section 501(h)): Complete Part II-A. Do not complete Part II-B.
- Section 501(c)(3) organizations that have NOT filed Form 5768 (election under section 501(h)): Complete Part II-B. Do not complete Part II-A.

**If the organization answered "Yes" on Form 990, Part IV, Line 5 (Proxy Tax) (see separate instructions) or Form 990-EZ, Part V, line 35c (Proxy Tax) (see separate instructions), then**
- Section 501(c)(4), (5), or (6) organizations: Complete Part III.

| Name of the organization | Employer identification number |
|---|---|
| CATH LEAGUE FOR RELIGIOUS & CIVIL RIGHTS | 23-7279981 |

### Part I-A  Complete if the organization is exempt under section 501(c) or is a section 527 organization.

1   Provide a description of the organization's direct and indirect political campaign activities in Part IV (see instructions for definition of "political campaign activities")

2   Political campaign activity expenditures (see instructions) .................................................. ▶   $ _____

3   Volunteer hours for political campaign activities (see instructions) ......................................   _____

### Part I-B  Complete if the organization is exempt under section 501(c)(3).

1   Enter the amount of any excise tax incurred by the organization under section 4955 .............................. ▶   $ _____

2   Enter the amount of any excise tax incurred by organization managers under section 4955 ....................... ▶   $ _____

3   If the organization incurred a section 4955 tax, did it file Form 4720 for this year? .........................   ☐ Yes  ☐ No

4a   Was a correction made? ...................................................................................   ☐ Yes  ☐ No

b   If "Yes," describe in Part IV.

### Part I-C  Complete if the organization is exempt under section 501(c), except section 501(c)(3).

1   Enter the amount directly expended by the filing organization for section 527 exempt function activities ..... ▶   $ _____

2   Enter the amount of the filing organization's funds contributed to other organizations for section 527 exempt function activities .........................................................................................   $ _____

3   Total exempt function expenditures. Add lines 1 and 2. Enter here and on Form 1120-POL, line 17b.......... ▶   $ _____

4   Did the filing organization file **Form 1120-POL** for this year? ..................................................   ☐ Yes  ☐ No

5   Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments. For each organization listed, enter the amount paid from the filing organization's funds. Also enter the amount of political contributions received that were promptly and directly delivered to a separate political organization, such as a separate segregated fund or a political action committee (PAC). If additional space is needed, provide information in Part IV.

| | **(a)** Name | **(b)** Address | **(c)** EIN | **(d)** Amount paid from filing organization's funds. If none, enter -0-. | **(e)** Amount of political contributions received and promptly and directly delivered to a separate political organization. If none, enter -0-. |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |

For Paperwork Reduction Act Notice, see the instructions for Form 990 or 990-EZ.      Cat. No. 50084S      **Schedule C (Form 990 or 990-EZ) 2019**

Schedule C (Form 990 or 990-EZ) 2019                Page **2**

**Part II-A**  **Complete if the organization is exempt under section 501(c)(3) and filed Form 5768 (election under section 501(h)).**

**A**  Check ▶ ☐ if the filing organization belongs to an affiliated group (and list in Part IV each affiliated group member's name, address, EIN, expenses, and share of excess lobbying expenditures).

**B**  Check ▶ ☐ if the filing organization checked box A and "limited control" provisions apply.

| | | **(a)** Filing organization's totals | **(b)** Affiliated group totals |
|---|---|---|---|
| | **Limits on Lobbying Expenditures** (The term "expenditures" means amounts paid or incurred.) | | |
| **1a** | Total lobbying expenditures to influence public opinion (grass roots lobbying) ...................... | | |
| **b** | Total lobbying expenditures to influence a legislative body (direct lobbying) ....................... | | |
| **c** | Total lobbying expenditures (add lines 1a and 1b) ............................................ | | |
| **d** | Other exempt purpose expenditures ........................................................ | | |
| **e** | Total exempt purpose expenditures (add lines 1c and 1d) ...................................... | | |
| **f** | Lobbying nontaxable amount. Enter the amount from the following table in both columns. | | |

| If the amount on line 1e, column (a) or (b) is: | The lobbying nontaxable amount is: |
|---|---|
| Not over $500,000 | 20% of the amount on line 1e. |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000. |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000. |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000. |
| Over $17,000,000 | $1,000,000. |

| | | | |
|---|---|---|---|
| **g** | Grassroots nontaxable amount (enter 25% of line 1f) ................................. | | |
| **h** | Subtract line 1g from line 1a. If zero or less, enter -0-. ................................ | | |
| **i** | Subtract line 1f from line 1c. If zero or less, enter -0-. ................................ | | |
| **j** | If there is an amount other than zero on either line 1h or line 1i, did the organization file Form 4720 reporting section 4911 tax for this year? ...................................................................... | | ☐ **Yes** ☐ **No** |

**4-Year Averaging Period Under Section 501(h)**
**(Some organizations that made a section 501(h) election do not have to complete all of the five columns below. See the separate instructions for lines 2a through 2f.)**

| **Lobbying Expenditures During 4-Year Averaging Period** | | | | | |
|---|---|---|---|---|---|
| Calendar year (or fiscal year beginning in) | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** Total |
| **2a**  Lobbying nontaxable amount | | | | | |
| **b**  Lobbying ceiling amount (150% of line 2a, column(e)) | | | | | |
| **c**  Total lobbying expenditures | | | | | |
| **d**  Grassroots nontaxable amount | | | | | |
| **e**  Grassroots ceiling amount (150% of line 2d, column (e)) | | | | | |
| **f**  Grassroots lobbying expenditures | | | | | |

**Schedule C (Form 990 or 990-EZ) 2019**

Schedule C (Form 990 or 990-EZ) 2019          Page **3**

| Part II-B | Complete if the organization is exempt under section 501(c)(3) and has NOT filed Form 5768 (election under section 501(h)). |
|---|---|

| | | (a) | | (b) |
|---|---|:---:|:---:|:---:|
| *For each "Yes" response on lines 1a through 1i below, provide in Part IV a detailed description of the lobbying activity.* | | Yes | No | Amount |
| **1** | During the year, did the filing organization attempt to influence foreign, national, state or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of: | | | |
| **a** | Volunteers? ............................................................................................... | | No | |
| **b** | Paid staff or management (include compensation in expenses reported on lines 1c through 1i)? ........ | | No | |
| **c** | Media advertisements? ................................................................................... | | No | |
| **d** | Mailings to members, legislators, or the public? ......................................................... | | No | |
| **e** | Publications, or published or broadcast statements? ..................................................... | | No | |
| **f** | Grants to other organizations for lobbying purposes? .................................................... | | No | |
| **g** | Direct contact with legislators, their staffs, government officials, or a legislative body? ...................... | | No | |
| **h** | Rallies, demonstrations, seminars, conventions, speeches, lectures, or any similar means? ................. | | No | |
| **i** | Other activities? ......................................................................................... | | No | |
| **j** | Total. Add lines 1c through 1i ........................................................................... | | | |
| **2a** | Did the activities in line 1 cause the organization to be not described in section 501(c)(3)? ..... | | No | |
| **b** | If "Yes," enter the amount of any tax incurred under section 4912 .......................................... | | | |
| **c** | If "Yes," enter the amount of any tax incurred by organization managers under section 4912 .................. | | | |
| **d** | If the filing organization incurred a section 4912 tax, did it file Form 4720 for this year? ...................... | | | |

| Part III-A | Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6). |
|---|---|

| | | | Yes | No |
|---|---|:---:|:---:|:---:|
| **1** | Were substantially all (90% or more) dues received nondeductible by members? ............................................. | **1** | | |
| **2** | Did the organization make only in-house lobbying expenditures of $2,000 or less? ......................................... | **2** | | |
| **3** | Did the organization agree to carry over lobbying and political expenditures from the prior year? ................................ | **3** | | |

| Part III-B | Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6) and if either (a) BOTH Part III-A, lines 1 and 2, are answered "No" OR (b) Part III-A, line 3, is answered "Yes." |
|---|---|

| | | | |
|---|---|:---:|:---:|
| **1** | Dues, assessments and similar amounts from members ................................................................ | **1** | |
| **2** | Section 162(e) nondeductible lobbying and political expenditures (**do not include amounts of political expenses for which the section 527(f) tax was paid**). | | |
| **a** | Current year ......................................................................................................... | **2a** | |
| **b** | Carryover from last year ............................................................................................. | **2b** | |
| **c** | Total ................................................................................................................ | **2c** | |
| **3** | Aggregate amount reported in section 6033(e)(1)(A) notices of nondeductible section 162(e) dues . | **3** | |
| **4** | If notices were sent and the amount on line 2c exceeds the amount on line 3, what portion of the excess does the organization agree to carryover to the reasonable estimate of nondeductible lobbying and political expenditure next year? ........................................................................................... | **4** | |
| **5** | Taxable amount of lobbying and political expenditures (see instructions) ......................................... | **5** | |

| Part IV | Supplemental Information |
|---|---|

Provide the descriptions required for Part I-A, line 1; Part I-B, line 4; Part I-C, line 5; Part II-A (affiliated group list); Part II-A, lines 1 and 2 (see instructions), and Part II-B, line 1. Also, complete this part for any additional information.

| Return Reference | Explanation |
|---|---|

OMB No. 1545-0047

**SCHEDULE D**
(Form 990)

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

► **Complete if the organization answered "Yes," on Form 990,**
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
► **Attach to Form 990.**
► **Go to www.irs.gov/Form990 for instructions and the latest information.**

**2019**

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| CATH LEAGUE FOR RELIGIOUS & CIVIL RIGHTS | 23-7279981 |

## Part I — Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.
Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . . . . | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year . . . . . | | |

5  Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . . . . . . . . . . ☐ Yes ☐ No

6  Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

## Part II — Conservation Easements.
Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1  Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)  ☐ Preservation of an historically important land area

☐ Protection of natural habitat  ☐ Preservation of a certified historic structure

☐ Preservation of open space

2  Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | Held at the End of the Year |
|---|---|---|
| a | Total number of conservation easements . . . . . . . . . . . . . . . | 2a | |
| b | Total acreage restricted by conservation easements . . . . . . . . . . | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . . | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register . . . | 2d | |

3  Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ► _____

4  Number of states where property subject to conservation easement is located ► _____

5  Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? . . . . . . . . . . . . . . ☐ Yes ☐ No

6  Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
► _____

7  Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
► $ _____

8  Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

9  In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

## Part III — Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a  If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b  If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . . ► $ _____

(ii) Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . . ► $ _____

2  If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items:

a  Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . . . . . . . ► $ _____

b  Assets included in Form 990, Part X . . . . . . . . . . . . . . . . . . . . . ► $ _____

| **Part III** | **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)* |
|---|---|

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

**a** ☐ Public exhibition

**b** ☐ Scholarly research

**c** ☐ Preservation for future generations

**d** ☐ Loan or exchange programs

**e** ☐ Other ...........................................................................................................

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?. . .  ☐ **Yes**  ☐ **No**

| **Part IV** | **Escrow and Custodial Arrangements.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . . . . . . . . . . . . . .  ☐ **Yes**  ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII and complete the following table:

|  |  | Amount |
|---|---|---|
| **c** Beginning balance . . . . . . . . . | **1c** |  |
| **d** Additions during the year . . . . . . | **1d** |  |
| **e** Distributions during the year . . . . . | **1e** |  |
| **f** Ending balance . . . . . . . . . . | **1f** |  |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . .  ☐ **Yes**  ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

| **Part V** | **Endowment Funds.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

|  | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance . . . . | 25,964,213 | 26,991,413 | 23,683,347 | 22,159,707 | 21,869,287 |
| **b** Contributions . . . | | | | | 293,351 |
| **c** Net investment earnings, gains, and losses | 4,828,227 | -1,027,200 | 3,308,066 | 1,703,640 | -2,931 |
| **d** Grants or scholarships . . . | | | | | |
| **e** Other expenditures for facilities and programs . . . | | | | | |
| **f** Administrative expenses . . . | | | | | |
| **g** End of year balance . . . . . | 30,792,440 | 25,964,213 | 26,991,413 | 23,863,347 | 22,159,707 |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment ▶ 100.000 %

**b** Permanent endowment ▶ ...............................

**c** Temporarily restricted endowment ▶ ...............................

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

|  | Yes | No |
|---|---|---|
| **(i)** unrelated organizations . . . . . . . . . . . . . . . **3a(i)** | | No |
| **(ii)** related organizations . . . . . . . . . . . . . . . **3a(ii)** | | No |
| **b** If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? . . **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

| **Part VI** | **Land, Buildings, and Equipment.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . | | | | |
| **b** Buildings . . . . . | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment . . . . | | | | |
| **e** Other . . . . . . | | 184,841 | 184,841 | |

**Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* . . ▶

Case 2:19-cv-10653-AJDP   Document 16-1   Filed 06/29/23   Page 30 of 249

**Part VII**   **Investments—Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b.See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives   .   .   .   .   .   .   .   . | | |
| **(2)** Closely-held equity interests   .   .   .   .   .   . | | |
| **(3)** Other _____ | | |
| (A) CHRISTIAN BROTHERS INVESTMENTS | 47,791,750 | F |
| (B) UNITED PARCEL SERVICE | 1,804,831 | F |
| (C) SHERWIN WILLIAMS | 12,254 | F |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** (Column (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | 49,608,835 | |

**Part VIII**   **Investments—Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** | | |
| **(2)** | | |
| **(3)** | | |
| **(4)** | | |
| **(5)** | | |
| **(6)** | | |
| **(7)** | | |
| **(8)** | | |
| **(9)** | | |
| **Total.** (Column (b) must equal Form 990, Part X, col.(B) line 13.) ▶ | | |

**Part IX**   **Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| **(1)** SECURITY DEPOSIT | 52,499 |
| **(2)** FEDERAL TAX WITHHELD | 194 |
| **(3)** PREPAID EXPENSE | 6,484 |
| **(4)** BOOK INVENTORY | 12,374 |
| **(5)** PREPAID PROFESSIONAL FEES | 10,000 |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **Total.** (Column (b) must equal Form 990, Part X, col.(B) line 15.)   .   .   .   .   .   .   .   .   .   . ▶ | 81,551 |

**Part X**   **Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| **1.** (a) Description of liability | (b) Book value |
|---|---|
| **(1)** Federal income taxes | |
| **(2)** | |
| **(3)** | |
| **(4)** | |
| **(5)** | |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **Total.** (Column (b) must equal Form 990, Part X, col.(B) line 25.) ▶ | |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☐

Schedule D (Form 990) 2019 — Page **4**

**Part XI** — **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.** Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | |
|---|---|---|---|---|
| **1** | Total revenue, gains, and other support per audited financial statements . . . . . . | | **1** | 9,946,613 |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | |
| **a** | Net unrealized gains (losses) on investments . . . . | **2a** 6,401,854 | | |
| **b** | Donated services and use of facilities . . . . . . . | **2b** | | |
| **c** | Recoveries of prior year grants . . . . . . . . | **2c** | | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . | **2d** | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . . . | | **2e** | 6,401,854 |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . | | **3** | 3,544,759 |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . | **4b** | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . . | | **4c** | |
| **5** | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) . . . . . . . | | **5** | 3,544,759 |

**Part XII** — **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.** Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | |
|---|---|---|---|---|
| **1** | Total expenses and losses per audited financial statements . . . . . . . . . | | **1** | 3,339,191 |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | |
| **a** | Donated services and use of facilities . . . . . . | **2a** | | |
| **b** | Prior year adjustments . . . . . . . . . . | **2b** | | |
| **c** | Other losses . . . . . . . . . . . . . | **2c** | | |
| **d** | Other (Describe in Part XIII.) . . . . . . . . | **2d** | | |
| **e** | Add lines **2a** through **2d** . . . . . . . . . . | | **2e** | |
| **3** | Subtract line **2e** from line **1** . . . . . . . . . . | | **3** | 3,339,191 |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line **1**: | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b . . | **4a** | | |
| **b** | Other (Describe in Part XIII.) . . . . . . . . | **4b** | | |
| **c** | Add lines **4a** and **4b** . . . . . . . . . . . | | **4c** | |
| **5** | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) . . . . . . | | **5** | 3,339,191 |

**Part XIII** — **Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| | |

Schedule D (Form 990) 2019

Schedule D (Form 990) 2019

| Part XIII | Supplemental Information *(continued)* |
|-----------|----------------------------------------|
| Return Reference | Explanation |

**Schedule D (Form 990) 2019**

| efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493289012400 |
|---|---|---|

**Schedule J**
(Form 990)

Department of the Treasury
Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

**2019**

**Open to Public Inspection**

Name of the organization
CATH LEAGUE FOR RELIGIOUS & CIVIL RIGHTS

Employer identification number
23-7279981

| **Part I** | **Questions Regarding Compensation** |
|---|---|

|  |  | Yes | No |
|---|---|---|---|
| **1a** | Check the appropiate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items. | | |

☐ First-class or charter travel      ☐ Housing allowance or residence for personal use
☐ Travel for companions      ☐ Payments for business use of personal residence
☐ Tax idemnification and gross-up payments      ☐ Health or social club dues or initiation fees
☐ Discretionary spending account      ☐ Personal services (e.g., maid, chauffeur, chef)

|  |  |  | Yes | No |
|---|---|---|---|---|
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? . . | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III. | | | |

☐ Compensation committee      ☑ Written employment contract
☐ Independent compensation consultant      ☑ Compensation survey or study
☑ Form 990 of other organizations      ☑ Approval by the board or compensation committee

|  |  |  | Yes | No |
|---|---|---|---|---|
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? . . . . . . . . . . . | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? . . . . . | **4b** | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? . . . . . | **4c** | | No |
| | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . . . | **5a** | | No |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . | **5b** | | No |
| | If "Yes," on line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . . . | **6a** | | No |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . | **6b** | | No |
| | If "Yes," on line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III . . . . . . . . . . | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III . . . . . . . . . . . . . . . . . . . . . . . | **8** | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? . . . . . . . . . . . . . . . . . . | **9** | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990.      Cat. No. 50053T      **Schedule J (Form 990) 2019**

**Part II** **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note:** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D), and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2 and/or 1099-MISC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column (B) reported as deferred on prior Form 990 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| 1 WILLIAM DONOHUE PRESIDENT | (i) | 990,044 | ----- | 54,004 | 9,079 | ----- | 1,053,127 | ----- |
| | (ii) | ----- | ----- | ----- | ----- | ----- | ----- | ----- |
| 2 BERNADETTE BRADY-EGAN VICE PRESIDENT | (i) | 289,682 | ----- | 28,968 | ----- | 19,756 | 338,406 | ----- |
| | (ii) | ----- | ----- | ----- | ----- | ----- | ----- | ----- |

Schedule J (Form 990) 2019

**Page 3**

**Part III**  **Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|

Schedule J (Form 990) 2019

| efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493289012400 |
|---|---|---|

| | | OMB No. 1545-0047 |
|---|---|---|
| **SCHEDULE O**<br>(Form 990 or 990-EZ) | **Supplemental Information to Form 990 or 990-EZ**<br>Complete to provide information for responses to specific questions on<br>Form 990 or 990-EZ or to provide any additional information.<br>▶ Attach to Form 990 or 990-EZ.<br>▶ Go to *www.irs.gov/Form990* for the latest information. | **2019** |
| Department of the Treasury<br>Internal Revenue Service | | **Open to Public Inspection** |

| Name of the organization<br>CATH LEAGUE FOR RELIGIOUS & CIVIL RIGHTS | Employer identification number<br>23-7279981 |
|---|---|

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| Unrelated business income explanation Part V line 3b | THE LEAGUE DID NOT HAVE ANY UNRELATED BUSINESS INCOME IN 2019 |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| Form 990 governing body review Part VI line 11 | FORM 990 IS SUBMITED TO THE LEAGUES COMPTROLLER, AS WELL AS ITS PRESIDENT AND VICE-PRESIDENT, FOR REVIEW. UPON REVIEW AND ACCEPTANCE BY THESE INDIVIDUALS, THE FORM 990 IS SIGNED BY THE LEAGUES PRESIDENT AND SENT TO THE IRS. |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| Conflict of interest policy compliance Part VI line 12c | THE DIRECTORS SIGN AN ANUUAL CONFLICT OF INTEREST POLICY |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| CEO executive director top management comp Part VI line 15a | A COMPENSATION COMMITTEE EXISTS, WITHIN THE BOARD OF DIRECTORS. THIS COMMITTEE COMPARES THE SALARIES OF OTHER TOP MANAGEMENT OFFICIALS AT OTHER NONPROFIT ORGANZATIONS. PERFORMANCE AND OTHER FACTORS ARE EVALUATED PRIOR TO A DECISION BEING MADE. MINUTES OF THE COMPENSATION COMMITTEE ARE MAINTAINED. THE DECISIONS MADE BY THIS COMMITTEE ARE PRESENTED TO THE INDEPENDENT MEMBERS OF THE LEAGUES BOARD OF DIRECTORS FOR SUBSEQUENT APPROVAL |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| Other officer or key employee compensation Part VI line 15b | THE BOARD OF DIRECTORS REVIEW COMPENSATION LEVELS AT COMPARABLE ORGANIZATIONS. THOSE COMPENSATION LEVELS ARE TAKEN INTO CONSIDERATION FOR THE PRESIDENT AND VICE PRESIDENT. THE APRROVAL OF THESE SALARIES IS MADE BY THE BOARD OF DIRECTORS, AND IS PROPERLY DOCUMENTED |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| Governing documents etc available to public Part VI line 19 | THE ORGANIZATION MAKES ITS EXEMPTION APPPLICATION, FINANCIAL STATEMENTS, AND FORM 990 AVAILABLE TO THE PUBLIC UPON REQUEST. THE LEAGUE DOES NOT MAKE AVAILABLE COPIES OF ITS GOVERNING DOCUMENTS. |

**990 Schedule O, Supplemental Information**

| Return Reference | Explanation |
|---|---|
| Explanation of other changes in net assets or fund balances Part XI line 9 | OTHER CHANGE IN NET ASSETS REPRESENTS THE UNREALIZED GAIN/(LOSS)ON INVESTMENTS WHICH ARE CARRIED AT MARKET VALUE |

EXHIBIT B

# 2019

Department of the Treasury
**Internal Revenue Service**

# Instructions for Form 990 Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**
**(For use with 2019 Form 990 (Rev. January 2020))**

Section references are to the Internal Revenue Code unless otherwise noted.

## Contents

| Contents | Page |
|---|---|
| Purpose of Form | 2 |
| Phone Help | 2 |
| Email Subscription | 2 |
| General Instructions | 2 |
|   A. Who Must File | 2 |
|   B. Organizations Not Required To File Form 990 or 990-EZ | 4 |
|   C. Sequencing List To Complete the Form and Schedules | 4 |
|   D. Accounting Periods and Methods | 5 |
|   E. When, Where, and How To File | 6 |
|   F. Extension of Time To File | 6 |
|   G. Amended Return/Final Return | 6 |
|   H. Failure-to-File Penalties | 7 |
|   I. Group Return | 7 |
|   J. Requirements for a Properly Completed Form 990 | 7 |
| Specific Instructions | 8 |
|   Heading. Items A–M | 8 |
|   Part I. Summary | 10 |
|   Part II. Signature Block | 10 |
|   Part III. Statement of Program Service Accomplishments | 11 |
|   Part IV. Checklist of Required Schedules | 12 |
|   Part V. Statements Regarding Other IRS Filings and Tax Compliance | 15 |
|   Part VI. Governance, Management, and Disclosure | 19 |
|   Part VII. Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors | 26 |
|   Part VIII. Statement of Revenue | 38 |
|   Part IX. Statement of Functional Expenses | 43 |
|   Part X. Balance Sheet | 48 |
|   Part XI. Reconciliation of Net Assets | 51 |
|   Part XII. Financial Statements and Reporting | 51 |
| Business Activity Codes | 53 |
| Glossary | 54 |

| Contents | Page |
|---|---|
| Appendix of Special Instructions to Form 990 Contents | 76 |
| Appendix A. Exempt Organizations Reference Chart | 77 |
| Appendix B. How To Determine Whether an Organization's Gross Receipts Are Normally $50,000 (or $5,000) or Less | 78 |
| Appendix C. Special Gross Receipts Tests for Determining Exempt Status of Section 501(c)(7) and 501(c)(15) Organizations | 78 |
| Appendix D. Public Inspection of Returns | 79 |
| Appendix E. Group Returns—Reporting Information on Behalf of the Group | 83 |
| Appendix F. Disregarded Entities and Joint Ventures—Inclusion of Activities and Items | 84 |
| Appendix G. Section 4958 Excess Benefit Transactions | 86 |
| Appendix H. Forms and Publications To File or Use | 91 |
| Appendix I. Use of Form 990 or 990-EZ To Satisfy State Reporting Requirements | 93 |
| Appendix J. Contributions | 94 |
| Index | 98 |

## Future Developments

For the latest information about developments related to Form 990 and its instructions, such as legislation enacted after they were published, go to *IRS.gov/Form990*.

## What's New

**Required electronic filing by exempt organizations.** For tax years beginning on or after July 2, 2019, section 3101 of P.L. 116-25 requires that returns by exempt organizations be filed electronically. If you are filing Form 990 for a tax year beginning on or after July 2, 2019, you must file the return electronically. Limited exceptions apply. See *When, Where, and How To File,* later, for more information.

Electronic filing requirements have not changed for Form 990 filers with tax years beginning before July 2, 2019 (which includes calendar year 2019 Forms 990). Required electronic filing for calendar year filers will apply for tax years beginning in 2020 and later.

## Reminders

**Excise tax on executive compensation, Part V.** New section 4960 imposes an excise tax on an organization that pays to any

Cat. No. 11283J

covered employee more than $1 million in remuneration or pays an excess parachute payment during the year starting in 2018. See section 4960 and Form 4720, Return of Certain Excise Taxes Under Chapters 41 and 42 of the Internal Revenue Code, and IRS Notice 2019-09, for more information.

**Excise tax on net investment income of certain colleges and universities, Part V.** New section 4968 imposes an excise tax on the net investment income of certain private colleges and universities. See section 4968 and Form 4720, Return of Certain Excise Taxes Under Chapters 41 and 42 of the Internal Revenue Code, and the interim guidance listed in IRS Notice 2019-09, for more information.

**FASB changes, Part X.** Instructions to Form 990 reflect the financial statement reporting changes under the Accounting Standards Update (ASU) 2016-14 (ASU 2016-14), Presentation of Financial Statements of Not-for-Profit Entities, issued by the Financial Accounting Standards Board (FASB). ASU 2016-14 changes the way not-for-profit organizations classify net assets.

## Purpose of Form

Forms 990 and 990-EZ are used by tax-exempt organizations, nonexempt charitable trusts, and section 527 political organizations to provide the IRS with the information required by section 6033.

An organization's completed Form 990 or 990-EZ, and a section 501(c)(3) organization's Form 990-T, Exempt Organization Business Income Tax Return, generally are available for public inspection as required by section 6104. Schedule B (Form 990, 990-EZ, or 990-PF), Schedule of Contributors, is available for public inspection for section 527 organizations filing Form 990 or 990-EZ. For other organizations that file Form 990 or Form 990-EZ, parts of Schedule B (Form 990, 990-EZ, or 990-PF), can be open to public inspection. See *Appendix D* and the Instructions for Schedule B (Form 990, 990-EZ, or 990-PF) for more details.

Some members of the public rely on Form 990 or Form 990-EZ as their primary or sole source of information about a particular organization. How the public perceives an organization in such cases can be determined by information presented on its return.

## Phone Help

If you have questions and/or need help completing Form 990, please call 877-829-5500. This toll-free telephone service is available Monday through Friday.

## Email Subscription

The IRS has established a subscription-based email service for tax professionals and representatives of tax-exempt organizations. Subscribers will receive periodic updates from the IRS regarding exempt organization tax law and regulations, available services, and other information. To subscribe, visit *IRS.gov/Charities-&-Non-Profits/Subscribe-to-Exempt-Organization-Update*.

# General Instructions

## Overview of Form 990

**Note.** Terms in **bold** are defined in the *Glossary* of the Instructions for Form 990.

 *Certain Form 990 filers must file electronically. See General Instructions, Section E. When, Where, and How to File, later, for who must file electronically.*

Form 990 is an annual information return required to be filed with the IRS by most organizations exempt from income tax under

section 501(a), and certain political organizations and **nonexempt charitable trusts**. Parts I through XII of the form must be completed by all filing organizations and require reporting on the organization's exempt and other activities, finances, governance, compliance with certain federal tax filings and requirements, and **compensation** paid to certain persons. Additional schedules are required to be completed depending upon the activities and type of the organization. By completing Part IV, the organization determines which schedules are required. The entire completed Form 990 filed with the IRS, except for certain contributor information on Schedule B (Form 990, 990-EZ, or 990-PF), is required to be made available to the public by the IRS and the filing organization (see *Appendix D. Public Inspection of Returns*), and can be required to be filed with state governments to satisfy state reporting requirements. See *Appendix I. Use of Form 990 and 990-EZ to Satisfy State Reporting Requirements*.

 *Reminder: Don't Include Social Security Numbers on Publicly Disclosed Forms. Because the filing organization and the IRS are required to publicly disclose the organization's annual information returns, social security numbers shouldn't be included on this form. By law, with limited exceptions, neither the organization nor the IRS may remove that information before making the form publicly available. Documents subject to disclosure include statements and attachments filed with the form. For more information, see Appendix D. Public Inspection of Returns.*

**Helpful hints.** The following hints can help you more efficiently review these instructions and complete the form.
• See *General Instructions, Section C. Sequencing List to Complete the Form and Schedules*, later, which provides guidance on the recommended order for completing the form and applicable statements.
• Throughout these instructions, "the organization" and the "filing organization" both refer to the organization filing Form 990.
• Unless otherwise specified, information should be provided for the organization's tax year. For instance, an organization should answer "Yes" to a question asking whether it conducted a certain type of activity only if it conducted that activity during the tax year.
• The examples appearing throughout the instructions on Form 990 are illustrative only. They are for the purpose of completing this form and aren't all-inclusive.
• Instructions to the Form 990 schedules are published separately from these instructions.

 *Organizations that have $1,000 or more for the tax year of total gross income from all **unrelated trades or businesses** must file Form 990-T, to report and pay tax on the resulting UBTI, in addition to any required Form 990, 990-EZ, or 990-N.*

## A. Who Must File

Most organizations exempt from income tax under section 501(a) must file an annual information return (Form 990 or 990-EZ) or submit an annual electronic notice (Form 990-N), depending upon the organization's **gross receipts** and **total assets**.

 *An organization may not file a "consolidated" Form 990 to aggregate information from another organization that has a different **EIN**, unless it is filing a **group return** and reporting information from a **subordinate organization** or organizations, reporting information from a **joint venture** or **disregarded entity** (see Appendices E and F, later), or as otherwise provided for in the Code, regulations, or official IRS guidance. A parent-exempt organization of a section 501(c)(2) title-holding company may file a consolidated Form 990-T with*

*the section 501(c)(2) organization, but not a consolidated Form 990.*

Form 990 must be filed by an organization exempt from income tax under section 501(a) (including an organization that hasn't applied for recognition of exemption) if it has either (1) gross receipts greater than or equal to $200,000 or (2) total assets greater than or equal to $500,000 at the end of the tax year (with exceptions described below for organizations eligible to submit Form 990-N or for certain organizations described in *Section B. Organizations Not Required to File Form 990 or 990-EZ*, later). This includes:
• Organizations described in section 501(c)(3) (other than **private foundations**), and
• Organizations described in other 501(c) subsections (other than black lung benefit trusts).

Gross receipts are the total amounts the organization received from all sources during its tax year, without subtracting any costs or expenses. See *Appendix B* for a discussion of gross receipts.

For purposes of Form 990 reporting, the term *section 501(c)(3)* includes organizations exempt under sections 501(e) and (f) (cooperative service organizations), 501(j) (amateur sports organizations), 501(k) (child care organizations), and 501(n) (charitable risk pools). In addition, any organization described in one of these sections is also subject to section 4958 if it obtains a determination letter from the IRS stating that it is described in section 501(c)(3).

**Form 990-N.** If an organization normally has gross receipts of $50,000 or less, it must submit Form 990-N, Electronic Notice (e-Postcard) for Tax-Exempt Organizations Not Required To File Form 990 or 990-EZ, if it chooses not to file Form 990 or Form 990-EZ (with exceptions described below for certain section 509(a)(3) **supporting organizations** and for certain organizations described in *Section B. Organizations Not Required To File Form 990 or 990-EZ*, later). See *Appendix B* for a discussion of gross receipts.

**Form 990-EZ.** If an organization has **gross receipts** less than $200,000 and **total assets** at the end of the tax year less than $500,000, it can choose to file Form 990-EZ, Short Form Return of Organization Exempt From Income Tax, instead of Form 990. See the Instructions for Form 990-EZ for more information. See the special rules below regarding **controlling organizations** under section 512(b)(13) and **sponsoring organizations** of **donor advised funds**.

If an organization eligible to submit the Form 990-N or file the Form 990-EZ chooses to file the Form 990, it must file a complete return.

**Foreign and U.S. possession organizations. Foreign organizations** as well as **U.S. possession** organizations are what are **domestic organizations** must file Form 990 or 990-EZ unless specifically excepted under *Section B. Organizations Not Required To File Form 990 or 990-EZ*, later. Report amounts in U.S. dollars and state what conversion rate the organization uses. Combine amounts from inside and outside the United States and report the total for each item. All information must be written in English.

**Sponsoring organizations of donor advised funds.** If required to file an annual information return for the year, **sponsoring organizations** of **donor advised funds** must file Form 990 and not Form 990-EZ.

**Controlling organizations described in section 512(b)(13).** A **controlling organization** of one or more **controlled entities**, as described in section 512(b)(13), must file Form 990 and not Form 990-EZ if it is required to file an annual information return for the year and if there was any transfer of funds between the controlling organization and any controlled entity during the year.

**Section 509(a)(3) supporting organizations.** A section 509(a)(3) **supporting organization** must file Form 990 or 990-EZ, even if its gross receipts are normally $50,000 or less, and even if it is described in Rev. Proc. 96-10, 1996-1 C.B. 577, or is an affiliate of a governmental unit described in Rev. Proc. 95-48, unless it qualifies as one of the following:

1. An integrated auxiliary of a **church** described in Regulations section 1.6033-2(h),

2. The exclusively religious activities of a **religious order**, or

3. An organization, the gross receipts of which are normally not more than $5,000, that supports a section 501(c)(3) religious organization.

If the organization is described in (3) but not in (1) or (2), then it must submit Form 990-N unless it voluntarily files Form 990 or 990-EZ.

**Section 501(c)(7) and 501(c)(15) organizations.** Section 501(c)(7) and 501(c)(15) organizations apply the same **gross receipts** test as other organizations to determine whether they must file Form 990, but use a different definition of gross receipts to determine whether they qualify as tax-exempt for the tax year. See *Appendix C* for more information.

**Section 527 political organizations.** A tax-exempt political organization must file Form 990 or 990-EZ if it had $25,000 or more in gross receipts during its tax year, even if its gross receipts are normally $50,000 or less, unless it meets one of the exceptions for *certain political organizations* under *Section B. Organizations Not Required To File Form 990 or 990-EZ*, later. A qualified state or local political organization must file Form 990 or 990-EZ only if it has gross receipts of $100,000 or more. Political organizations aren't required to submit Form 990-N.

**Section 4947(a)(1) nonexempt charitable trusts.** A **nonexempt charitable trust** described under section 4947(a)(1) (if it isn't treated as a private foundation) is required to file Form 990 or 990-EZ, unless excepted under *Section B. Organizations Not Required To File Form 990 or 990-EZ*, later. Such a trust is treated like an exempt section 501(c)(3) organization for purposes of completing the form. Section 4947(a)(1) trusts must complete all sections of the Form 990 and schedules that section 501(c)(3) organizations must complete. All references to an section 501(c)(3) organization in the Form 990, schedules, and instructions include a section 4947(a)(1) trust (for instance, such a trust must complete Schedule A (Form 990 or 990-EZ)), unless otherwise specified. If such a trust doesn't have any taxable income under Subtitle A of the Code, it can file Form 990 or 990-EZ to meet its section 6012 filing requirement and doesn't have to file Form 1041, U.S. Income Tax Return for Estates and Trusts.

**Returns when exempt status not yet established.** An organization is required to file Form 990 under these instructions if the organization claims exempt status under section 501(a) but hasn't established such exempt status by filing Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code, Form 1023-EZ, Streamlined Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code, Form 1024, Application for Recognition of Exemption Under Section 501(a), or Form 1024-A, Application for Recognition of Exemption under Section 501(c)(4) of the Internal Revenue Code, and receiving an IRS determination letter recognizing tax-exempt status. In such a case, the organization must check the "Application pending" checkbox on Form 990, Item B, Heading, page 1 (whether or not a Form 1023, 1023-EZ, 1024, or 1024-A, has been filed) to indicate that Form 990 is being filed in the belief that the organization is exempt under section 501(a), but that the IRS hasn't yet recognized such exemption.

To be recognized as exempt retroactive to the date of its organization or formation, an organization claiming tax-exempt status under section 501(c) (other than 501(c)(29)) generally must file an application for recognition of exemption (Form 1023, 1023-EZ, 1024, or 1024-A) within 27 months of the end of the month in which it was legally organized or formed.

 *An organization that has filed a letter application for recognition of exemption as a qualified nonprofit health insurance issuer under section 501(c)(29), or plans to do so, but hasn't yet received an IRS determination letter recognizing exempt status, must check the "Application pending" checkbox on the Form 990, Heading, Item B.*

# B. Organizations Not Required To File Form 990 or 990-EZ

An organization doesn't have to file Form 990 or 990-EZ even if it has at least $200,000 of **gross receipts** for the tax year or $500,000 of **total assets** at the end of the tax year if it is described below (except for section 509(a)(3) supporting organizations, which are described earlier). See *Section A. Who Must File* to determine if the organization can file Form 990-EZ instead of Form 990. An organization described in paragraph 10, 11, or 13 of this Section B is required to submit Form 990-N unless it voluntarily files Form 990, 990-EZ, or 990-BL, as applicable.

**Certain religious organizations.**

1. A **church**, an interchurch organization of local units of a church, a convention or association of churches, or an integrated auxiliary of a church as described in Regulations section 1.6033-2(h) (such as a men's or women's organization, religious school, mission society, or youth group).

2. A church-affiliated organization that is exclusively engaged in managing funds or maintaining retirement programs and is described in Rev. Proc. 96-10, 1996-1 C.B. 577. But see the filing requirements for section 509(a)(3) supporting organizations in *A. Who Must File.*

3. A school below college level affiliated with a church or operated by a **religious order** described in Regulations section 1.6033-2(g)(1)(vii).

4. A mission society sponsored by, or affiliated with, one or more churches or church denominations, if more than half of the society's activities are conducted in, or directed at, persons in foreign countries.

5. An exclusively religious activity of any **religious order** described in Rev. Proc. 91-20, 1991-1 C.B. 524.

**Certain governmental organizations.**

6. A state institution whose income is excluded from gross income under section 115.

7. A **governmental unit** or affiliate of a governmental unit described in Rev. Proc. 95-48, 1995-2 C.B. 418. But see the filing requirements for section 509(a)(3) supporting organizations in *A. Who Must File.*

8. An organization described in section 501(c)(1). A section 501(c)(1) organization is a corporation organized under an Act of Congress that is an instrumentality of the United States, and exempt from federal income taxes.

**Certain political organizations.**

9. A political organization that is:
- A state or local committee of a political party;
- A political committee of a state or local candidate;
- A caucus or association of state or local officials; or
- Required to report under the Federal Election Campaign Act of 1971 as a political committee (as defined in section 301(4) of such Act).

**Certain organizations with limited gross receipts.**

10. An organization whose **gross receipts** are normally $50,000 or less. Such organizations generally are required to submit Form 990-N if they choose not to file Form 990 or Form 990-EZ. To determine what an organization's gross receipts "normally" are, see *Appendix B. How To Determine Whether an Organization's Gross Receipts Are Normally $50,000 (or $5,000) or Less.*

11. **Foreign organizations** and organizations located in **U.S. possessions**, whose **gross receipts** from sources within the United States are normally $50,000 or less and which didn't engage in significant activity in the United States (other than investment activity). Such organizations, if they claim U.S. tax exemption or are recognized by the IRS as tax-exempt, generally are required to submit Form 990-N if they choose not to file Form 990 or Form 990-EZ.

If a foreign organization or U.S. possession organization is required to file Form 990 or Form 990-EZ, then its worldwide gross receipts, as well as assets, are taken into account in determining whether it qualifies to file Form 990-EZ.

**Certain organizations that file different kinds of annual information returns.**

12. A private foundation (including a private operating foundation) exempt under section 501(c)(3) and described in section 509(a). Use Form 990-PF, Return of Private Foundation. Also use Form 990-PF for a taxable private foundation, a section 4947(a)(1) **nonexempt charitable trust** treated as a private foundation, and a private foundation terminating its status by becoming a **public charity** under section 507(b)(1)(B) (for tax years within its 60-month termination period). If the organization successfully terminates, then it files Form 990 or 990-EZ in its final year of termination.

13. A black lung benefit trust described in section 501(c)(21). Use Form 990-BL, Information and Initial Excise Tax Return for Black Lung Benefit Trusts and Certain Related Persons.

14. A religious or apostolic organization described in section 501(d). Use Form 1065, U.S. Return of Partnership Income.

15. A stock bonus, pension, or profit-sharing trust that qualifies under section 401. Use Form 5500, Annual Return/Report of Employee Benefit Plan.

 *Subordinate organizations in a group exemption which are included in a group return filed by the central organization for the tax year shouldn't file a separate Form 990, Form 990-EZ, or Form 990–N for the tax year.*

# C. Sequencing List To Complete the Form and Schedules

You may find the following list helpful. It limits jumping from one part of the form to another to make a calculation or determination needed to complete an earlier part. Certain later parts of the form must first be completed in order to complete earlier parts. In general, first complete the **core form**, and then complete alphabetically Schedules A–N, and Schedule R, except as provided below. Schedule O (Form 990 or 990-EZ), Supplemental Information to Form 990, should be completed as the core form and schedules are completed. Note that all organizations filing Form 990 must file Schedule O.

 *A public charity described in section 170(b)(1)(A)(iv), 170(b)(1)(A)(vi), or 509(a)(2) that isn't within its initial 5 years of existence should first complete Part II or III of Schedule A (Form 990 or 990-EZ) to ensure that it continues to qualify as a public charity for the tax year. If it fails to qualify as a public charity, then it must file Form 990-PF rather than Form*

990 or Form 990-EZ, and check the box for "Initial return of a former public charity" on page 1 of Form 990-PF.

1. Complete Items A through F and H(a) through M in the Heading of Form 990, on page 1.

2. See the instructions for definitions of **related organization** and **control** and determine the organization's related organizations required to be listed on Schedule R (Form 990).

3. Determine the organization's officers, directors, trustees, key employees, and five highest compensated employees required to be listed on Form 990, Part VII, Section A.

4. Complete Parts VIII, IX, and X of Form 990.

5. Complete Item G in the Heading section of Form 990, on page 1.

6. Complete Parts III, V, VII, XI, and XII of Form 990.

7. See the Instructions for Schedule L (Form 990 or 990-EZ), Transactions With Interested Persons, and complete Schedule L (Form 990 or 990-EZ) (if required).

8. Complete Part VI of Form 990. Transactions reported on Schedule L (Form 990 or 990-EZ) are relevant to determining independence of **members of the governing body** under Form 990, Part VI, line 1b.

9. Complete Part I of Form 990 based on information derived from other parts of the form.

10. Complete Part IV of Form 990 to determine which schedules must be completed by the organization.

11. Complete Schedule O (Form 990 or 990-EZ) and any other applicable schedules (for "Yes" boxes that were checked in Part IV). Use Schedule O (Form 990 or 990-EZ) to provide required supplemental information and other narrative explanations for questions on the core Form 990. For questions on Form 990 schedules, use the narrative part of each schedule to provide supplemental information.

12. Complete Part II, *Signature Block*, of Form 990.

# D. Accounting Periods and Methods

These are the accounting periods covered under the law.

## Accounting Periods

**Calendar year.** Use the 2019 Form 990 to report on the 2019 calendar year accounting period. A calendar year accounting period begins on January 1 and ends on December 31.

**Fiscal year.** If the organization has established a fiscal year accounting period, use the 2019 Form 990 to report on the organization's fiscal year that began in 2019 and ended 12 months later. A fiscal year accounting period should normally coincide with the natural operating cycle of the organization. Be certain to indicate in Item A of the Heading of Form 990 the date the organization's fiscal year began in 2019 and the date the fiscal year ended in 2020.

**Short period.** A short accounting period is a period of less than 12 months, which exists when an organization first commences operations, changes its accounting period, or terminates. If the organization's short year began in 2019, and ended before December 31, 2019 (not on or after December 31, 2019), it may use either 2018 Form 990 or 2019 Form 990 to file for the short year. The 2019 form also may be used for a short period beginning in 2020 and ending before December 31, 2020 (not on or after December 31, 2020). When doing so, provide the information for designated years listed on the return, other than the tax year being reported, as if they were updated on the 2020 form. For example, provide the information on Schedule A, Part II, for the tax years 2016–2020, rather than for tax years 2015–2019. A short period return can't be filed electronically unless it

is an initial return for which the "Initial return" box is checked in Item B of the Heading or a final return for which the "Final return/terminated" box is checked in Item B of the Heading.

**Accounting period change.** If the organization changes its accounting period, it must file a Form 990 for the short period resulting from the change. Write "Change of Accounting Period" at the top of this short-period return.

If the organization has previously changed its annual accounting period at any time within the 10-calendar-year period that includes the beginning of the **short period** resulting from the current change in accounting period, and it had a Form 990-series filing requirement or income tax return filing requirement at any time during that 10-year period, it must also file a Form 1128, Application To Adopt, Change, or Retain a Tax Year, with the short-period return. See Rev. Proc. 85-58, 1985-2 C.B. 740.

If an organization that submits Form 990-N changes its accounting period, it must report this change on Form 990, Form 990-EZ, or Form 1128, or by sending a letter to Internal Revenue Service, 1973 Rulon White Blvd., Ogden, UT 84201.

## Accounting Methods

Unless instructed otherwise, the organization generally should use the same accounting method on the return (including the Form 990 and all schedules) to report revenue and expenses that it regularly uses to keep its books and records. To be acceptable for Form 990 reporting purposes, however, the method of accounting must clearly reflect income.

**Accounting method change.** Generally, the organization must file Form 3115, Application for Change in Accounting Method, to change its accounting method. An exception applies where a section 501(c) organization changes its accounting method to comply with the Financial Accounting Standards Board (FASB) Accounting Standards Codification 958, Not-for-Profit Entities (**ASC 958**). See Notice 96-30, 1996-1 C.B. 378. An organization that makes a change in accounting method, regardless of whether it files Form 3115, must report any adjustment required by section 481(a) in Parts VIII through XI and on Schedule D (Form 990), Supplemental Financial Statements, Parts XI and XII, as applicable.

**State reporting.** Many states that accept Form 990 in place of their own forms require that all amounts be reported based on the accrual method of accounting. If the organization prepares Form 990 for state reporting purposes, it can file an identical return with the IRS even though the return doesn't agree with the books of account, unless the way one or more items are reported on the state return conflicts with the instructions for preparing Form 990 for filing with the IRS.

*Example 1.* The organization maintains its books on the cash receipts and disbursements method of accounting but prepares a Form 990 return for the state based on the accrual method. It could use that return for reporting to the IRS.

*Example 2.* A state reporting requirement requires the organization to report certain revenue, expense, or balance sheet items differently from the way it normally accounts for them on its books. A Form 990 prepared for that state is acceptable for the IRS reporting purposes if the state reporting requirement doesn't conflict with the Instructions for Form 990.

An organization should keep a reconciliation of any differences between its books of account and the Form 990 that is filed. Organizations with audited financial statements are required to provide such reconciliations on Schedule D (Form 990), Parts XI through XII.

 *See Pub. 538, Accounting Periods and Methods, and the Instructions for Forms 1128 and 3115, about reporting changes to accounting periods and methods.*

# E. When, Where, and How To File

File Form 990 by the 15th day of the 5th month after the organization's accounting period ends (May 15th for a calendar-year filer). If the due date falls on a Saturday, Sunday, or legal holiday, file on the next business day. A business day is any day that isn't a Saturday, Sunday, or legal holiday.

If the organization is liquidated, dissolved, or terminated, file the return by the 15th day of the 5th month after liquidation, dissolution, or termination.

If the return isn't filed by the due date (including any extension granted), explain in a separate attachment, giving the reasons for not filing on time.

Send the return to:

Department of the Treasury
Internal Revenue Service Center
Ogden, UT 84201-0027

**Foreign and U.S. possession organizations.** If the organization's principal business, office, or agency is located in a foreign country or **U.S. possession**, send the return to:

Department of the Treasury
Internal Revenue Service Center
P.O. Box 409101
Ogden, UT 84409

**Private delivery services.** Tax-exempt organizations can use certain private delivery services (PDS) designated by the IRS to meet the "timely mailing as timely filing" rule for tax returns. Go to *IRS.gov/PDS* for the current list of designated services.

The PDS can tell you how to get written proof of the mailing date.

For the IRS mailing address to use if you're using PDS, go to *IRS.gov/PDSstreetAddresses.*

 *Private delivery services can't deliver items to P.O. boxes. You must use the U.S. Postal Service to mail any item to an IRS P.O. box address.*

**Electronic filing for tax years beginning before July 2, 2019.** The organization can file Form 990 and related forms, schedules, and attachments electronically. However, if an organization files at least 250 returns of any type during the calendar year ending with or within the organization's **tax year** and has **total assets** of $10 million or more at the end of the tax year, it must file Form 990 electronically. "Returns" for this purpose include information returns (for example, Forms W-2 and Forms 1099), income tax returns, employment tax returns (including quarterly Forms 941, Employer's Quarterly Federal Tax Return), and excise tax returns.

If an organization is required to file a return electronically but doesn't, the organization is considered not to have filed its return, even if a paper return is submitted, unless it is reporting a name change, in which case it must file by paper and attach the documents described in *Specific Instructions, Item B. Checkboxes,* later. See Regulations section 301.6033-4 for more information on mandatory electronic filing of Form 990.

For additional information on the electronic filing requirement, visit *IRS.gov/Filing.*

For tax years beginning before July 2, 2019, the IRS may waive the requirements to file electronically in cases of undue hardship. For information on filing a waiver, see Notice 2010-13, 2010-4 I.R.B. 327, available at *IRS.gov/irb/2010-04_IRB/ar14.html.*

**Electronic filing for tax years beginning on or after July 2, 2019.** If you are filing a 2019 Form 990 for a tax year beginning on or after July 2, 2019, you are required to file electronically unless one or more of the following exceptions apply.

1.   The name of the organization has changed, the new name is entered on Form 990, and the "Name change" box is checked in Item B.

2.   Form 990 is for a short period because of an accounting period change. This does not apply if (a) the short period is an initial return and the "Initial return" box is checked in Item B; or (b) the short period is for a final return, and the "Final return/ terminated" box is checked in Item B.

3.   An application for exemption is pending, and the "Application pending" box is checked in Item B.

4.   Form 990 is being filed before the end of the tax year. This does not apply if the return is a final return, and the "Final return/terminated" box is checked in Item B.

5.   You attempted to file Form 990 electronically, but the return was rejected (even after you contacted your e-file provider).

For exceptions 1 through 4 above, file a paper Form 990. For exception 5, file a paper Form 990 as prescribed in section 5.7 of Publication 4163, Modernized e-File (MeF) Information for Authorized IRS e-File Providers for Business Returns.

For additional information on the electronic filing requirement, visit *IRS.gov/Filing.*

# F. Extension of Time To File

Use Form 8868, Application for Automatic Extension of Time To File an Exempt Organization Return, to request an automatic extension of time to file.

# G. Amended Return/Final Return

To amend the organization's return for any year, file a new return including any required schedules. Use the version of Form 990 applicable to the year being amended. The amended return must provide all the information called for by the form and instructions, not just the new or corrected information. Check the "Amended return" box in Item B of the Heading of the return on page 1 of the form. Also, enter in Schedule O (Form 990 or 990-EZ) which parts and schedules of the Form 990 were amended and describe the amendments.

The organization can file an amended return at any time to change or add to the information reported on a previously filed return for the same period. It must make the amended return available for inspection for 3 years from the date of filing or 3 years from the date the original return was due, whichever is later.

If the organization needs a complete copy of its previously filed return, it can file Form 4506, Request for Copy of Tax Return.

If the return is a final return, the organization must check the "Final return/terminated" box in Item B of the Heading on page 1 of the form, and complete Schedule N (Form 990 or 990-EZ), Liquidation, Termination, Dissolution, or Significant Disposition of Assets.

**Amended returns and state filing considerations.** State law may require that the organization send a copy of an amended Form 990 return (or information provided to the IRS supplementing the return) to the state with which it filed a copy of Form 990 to meet that state's reporting requirement. A state may require an organization to file an amended Form 990 to satisfy

state reporting requirements, even if the original return was accepted by the IRS.

## H. Failure-to-File Penalties

**Against the organization.**  Under section 6652(c)(1)(A), a penalty of $20 a day, not to exceed the lesser of $10,500 or 5% of the **gross receipts** of the organization for the year, can be charged when a return is filed late, unless the organization shows that the late filing was due to reasonable cause. Organizations with annual **gross receipts** exceeding $1,067,000 are subject to a penalty of $105 for each day failure continues (with a maximum penalty for any one return of $53,000). The penalty applies on each day after the due date that the return isn't filed.

Tax-exempt organizations that are required to file electronically but don't are deemed to have failed to file the return. This is true even if a paper return is submitted, unless the organization files by paper to report a name change.

The penalty also can be charged if the organization files an incomplete return, such as by failing to complete a required line item or a required part of a schedule. To avoid penalties and having to supply missing information later:
- Complete all applicable line items,
- Unless instructed to skip a line, answer each question on the return,
- Make an entry (including a zero when appropriate) on all lines requiring an amount or other information to be reported, and
- Provide required explanations as instructed.

Also, this penalty can be imposed if the organization's return contains incorrect information. For example, an organization that reports contributions net of related fundraising expenses can be subject to this penalty.

Use of a paid preparer doesn't relieve the organization of its responsibility to file a complete and accurate return.

**Against responsible person(s).**  If the organization doesn't file a complete return or doesn't furnish correct information, the IRS will send the organization a letter that includes a fixed time to fulfill these requirements. After that period expires, the person failing to comply will be charged a penalty of $10 a day. The maximum penalty on all persons for failures for any one return shall not exceed $5,000.

There are also penalties (fines and imprisonment) for willfully not filing returns and for filing fraudulent returns and statements with the IRS (see sections 7203, 7206, and 7207). States can impose additional penalties for failure to meet their separate filing requirements.

**Automatic revocation for nonfiling for three consecutive years.**  The law requires most tax-exempt organizations, other than churches, to file an annual Form 990, 990-EZ, or 990-PF with the IRS, or to submit a Form 990-N e-Postcard to the IRS. If an organization fails to file an annual return or submit a notice as required for 3 consecutive years, its tax-exempt status is automatically revoked on and after the due date for filing its third annual return or notice. Organizations that lose their tax-exempt status may need to file income tax returns and pay income tax, but may apply for reinstatement of exemption. For details, go to *IRS.gov/EO*.

## I. Group Return

A central, parent, or similar organization can file a **group return** on Form 990 for two or more subordinate or local organizations that are:
- Affiliated with the central organization at the time its tax year ends,
- Subject to the central organization's general supervision or control,
- Exempt from tax under a **group exemption** letter that is still in effect, and
- Using the same tax year as the central organization.

The central organization can't use a Form 990-EZ for the group return.

A **subordinate organization** may choose to file a separate annual information return instead of being included in the group return.

If the **central organization** is required to file a return for itself, it must file a separate return and can't be included in the group return. See Regulations section 1.6033-2(d)(1). See *Section B. Organizations Not Required To File Form 990 or 990-EZ,* earlier, for a list of organizations not required to file.

Every year, each subordinate organization must authorize the central organization in writing to include it in the group return and must declare, under penalties of perjury, that the authorization and the information it submits to be included in the group return are true and complete.

The central organization should send the annual information update required to maintain a group exemption ruling (a separate requirement from the annual return) to:

Department of the Treasury
Internal Revenue Service Center
Ogden, UT 84201-0027

For special instructions regarding answering certain Form 990 questions about parts or schedules in the context of a group return, see *Appendix E. Group Returns–Reporting Information on Behalf of the Group.*

## J. Requirements for a Properly Completed Form 990

All organizations filing Form 990 must complete Parts I through XII, Schedule O (Form 990 or 990-EZ), and any schedules for which a "Yes" response is indicated in Part IV. If an organization isn't required to file Form 990 but chooses to do so, it must file a complete return and provide all of the information requested, including the required schedules.

**Public inspection.**  In general, all information the organization reports on or with its Form 990, including schedules and attachments, will be available for public inspection. Note, however, the special rules for Schedule B (Form 990, 990-EZ, or 990-PF), Schedule of Contributors, a required schedule for certain organizations that file Form 990. Make sure the forms and schedules are clear enough to photocopy legibly. For more information on public inspection requirements, see *Appendix D. Public Inspection of Returns*, and Pub. 557, Tax-Exempt Status for Your Organization.

**Signature.**  A Form 990 isn't complete without a proper signature. For details, see the instructions for *Part II, Signature Block*, later.

**Recordkeeping.**  The organization's records should be kept for as long as they may be needed for the administration of any provision of the Internal Revenue Code. Usually, records that support an item of income, deduction, or credit must be kept for a minimum of 3 years from the date the return is due or filed, whichever is later. Keep records that verify the organization's basis in property for as long as they are needed to figure the basis of the original or replacement property. Applicable law and an organization's policies can require that the organization retain records longer than 3 years. Form 990, Part VI, line 14, asks whether the organization has a document retention and destruction policy.

The organization also should keep copies of any returns it has filed. They help in preparing future returns and in making computations when filing an amended return.

**Rounding off to whole dollars.** The organization must round off cents to whole dollars on the returns and schedules, unless otherwise noted for particular questions. To round, drop amounts under 50 cents and increase amounts from 50 to 99 cents to the next dollar. For example, $1.49 becomes $1 and $2.50 becomes $3. If the organization has to add two or more amounts to figure the amount to enter on a line, include cents when adding the amounts and round off only the total.

**Completing all lines.** Make an entry (including -0- when appropriate) on all lines requiring an amount or other information to be reported. Don't leave any applicable lines blank, unless expressly instructed to skip that line. If answering a line is predicated on a "Yes" answer to the preceding line, and if the organization's answer to the preceding line was "No," then leave the "If Yes" line blank.

All filers must file Schedule O (Form 990 or 990-EZ). Certain questions require all filers to provide an explanation in Schedule O (Form 990 or 990-EZ). In general, answers can be explained or supplemented in Schedule O (Form 990 or 990-EZ) if the allotted space in the form or other schedule is insufficient, or if a "Yes" or "No" answer is required but the organization wishes to explain its answer.

Missing or incomplete parts of the form and/or required schedules may result in the IRS contacting you to obtain the missing information. Failure to supply the information may result in a penalty being assessed to your account. For tips on filing complete returns, go to *IRS.gov/Charities*.

**Reporting proper amounts.** Some lines request information reported on other forms filed by the organization (such as Forms W-2, 1099, and 990-T). If the organization is aware that the amount actually reported on the other form is incorrect, it must report on Form 990 the information that should have been reported on the other form (in addition to filing an amended form with the proper amount).

In general, don't report negative numbers, but use -0- instead of a negative number, unless the instructions otherwise provide. Report revenue and expenses separately and don't net related items, unless otherwise provided.

**Inclusion of activities and items of disregarded entities and joint ventures.** An organization must report on its Form 990 all of the revenues, expenses, assets, liabilities, and net assets or funds of which it is the sole member, and must report on its Form 990 its share of all such items of a **joint venture** or other investment or arrangement treated as a partnership for federal income tax purposes. This includes passive investments. In addition, the organization generally must report activities of a disregarded entity or a **joint venture** on the appropriate parts or schedules of Form 990. For special instructions about the treatment of disregarded entities and joint ventures for various parts of the form, see *Appendix F. Disregarded Entities and Joint Ventures—Inclusion of Activities and Items.*

**Reporting information from third parties.** Some lines request information that the organization may need to obtain from third parties, such as compensation paid by **related organizations**; family and business relationships between **officers, directors, trustees, key employees,** and certain businesses they own or control; the organization's share of the income and assets of a partnership or joint venture in which it has an ownership interest; and certain transactions between the organization and interested persons. The organization should make reasonable efforts to obtain this information. If it is unable to obtain certain information by the due date for filing the return,

it should file Form(s) 8868 to request a filing extension. See *Section F. Extension of Time To File,* earlier. If the organization is unable to obtain this information by the extended due date after making reasonable efforts, and isn't certain of the answer to a particular question, it may make a reasonable estimate, where applicable, and explain in Schedule O.

## Assembling Form 990, Schedules, and Attachments

Before filing Form 990, assemble the package of forms, schedules, and attachments in the following order.

1. **Core form** with Parts I through XII completed, filed in numerical order.

2. Schedules, completed as applicable, filed in alphabetical order (see Form 990, Part IV, for required schedules). All pages of a required schedule must be submitted by Form 990 paper filers, even if the filer is only required to complete certain parts but not all of the schedule.

3. Attachments, completed as applicable. These include (a) name change amendment to organizing document required by Item B under *Heading;* (b) list of **subordinate organizations** included in a **group return** required by Item H under *Heading;* (c) articles of merger or dissolution, resolutions, and plans of liquidation or merger required by Schedule N (Form 990 or 990-EZ); (d) reasonable cause explanation for a late-filed return; and (e) for **hospital organizations** only, a copy of the most recent **audited financial statements**.

Don't attach materials not authorized in the instructions or not otherwise authorized by the IRS.

 *To facilitate the processing of your return, don't password protect or encrypt PDF attachments. Password protecting or encrypting a PDF file that is attached to an e-filed return prevents the IRS from opening the attachment.*

# Specific Instructions

# Heading. Items A–M

Complete items A through M.

**Item A. Accounting period.** File the 2019 return for calendar year 2019 and fiscal years that began in 2019 and ended in 2020. For a fiscal year return, fill in the tax year space at the top of page 1. See *General Instructions, Section D. Accounting Periods and Methods,* earlier, for additional information about accounting periods.

**Item B. Checkboxes.** The following checkboxes are under Item B.

*Address change.* Check this box if the organization changed its address and hasn't reported the change on its most recently filed Form 990, 990-EZ, 990-N, or 8822-B or in correspondence to the IRS.

 *If a change in address occurs after the return is filed, use Form 8822-B, Change of Address or Responsible Party—Business, to notify the IRS of the new address.*

*Name change.* Check this box if the organization changed its legal name (not its "doing business as" name) and if the organization hasn't reported the change on its most recently filed Form 990 or 990-EZ or in correspondence to the IRS. If the organization changed its name, file Form 990 by paper and attach the following documents:

| IF the organization is . . . | THEN attach . . . |
|---|---|
| A corporation | A copy of the amendment to the articles of incorporation and proof of filing with the appropriate state authority. |
| A trust | A copy of the amendment to the trust instrument, or a resolution to amend the trust instrument, showing the effective date of the change of name and signed by at least one trustee. |
| An unincorporated association | A copy of the amendment to the articles of association, constitution, or other organizing document, showing the effective date of the change of name and signed by at least two officers, trustees, or members. |

**Initial return.** Check this box if this is the first time the organization is filing a Form 990 and it hasn't previously filed a Form 990-EZ, 990-PF, 990-T, or 990-N.

**Final return/terminated.** Check this box if the organization has terminated its existence or ceased to be a section 501(a) or section 527 organization and is filing its final return as an exempt organization or section 4947(a)(1) trust. For example, an organization should check this box when it has ceased operations and dissolved, merged into another organization, or has had its exemption revoked by the IRS. An organization that checks this box because it has liquidated, terminated, or dissolved during the tax year must also attach Schedule N (Form 990 or 990-EZ).

 *An organization must support any claim to have liquidated, terminated, dissolved, or merged by attaching a certified copy of its articles of dissolution or merger approved by the appropriate state authority. If a certified copy of its articles of dissolution or merger isn't available, the organization must submit a copy of a resolution or resolutions of its governing body approving plans of liquidation, termination, dissolution, or merger.*

**Amended return.** Check this box if the organization previously filed a return with the IRS for the same tax year and is now filing another return for the same tax year to amend the previously filed return. Enter on Schedule O (Form 990 or 990-EZ) the parts and schedules of the Form 990 that were amended and describe the amendments. See *General Instructions, Section G. Amended Return/Final Return,* earlier, for more information.

**Application pending.** Check this box if the organization either has filed a Form 1023, 1023-EZ, 1024, or 1024-A, with the IRS and is awaiting a response, or claims tax-exempt status under section 501(a) but hasn't filed Form 1023, 1023-EZ, 1024, or 1024-A, to be recognized by the IRS as tax-exempt. If this box is checked, the organization must complete all parts of Form 990 and any required schedules. An organization that is required to file an annual information return (Form 990 or Form 990-EZ) or submit an annual electronic notice (Form 990-N) for a tax year (see *General Instructions, Section A. Who Must File,* earlier) must do so even if it hasn't yet filed a Form 1023, 1023-EZ, 1024, or 1024-A with the IRS, if it claims tax-exempt status.

To qualify for tax exemption retroactive to the date of its organization or formation, an organization claiming tax-exempt status under section 501(c) (other than 501(c)(29)) generally must file an application for recognition of exemption (Form 1023, 1023-EZ, 1024, or 1024-A) within 27 months of the end of the month in which it was legally organized or formed.

**Item C. Name and address.** Enter the organization's legal name on the "Name of organization" line. If the organization

operates under a name different from its legal name, enter the alternate name on the "Doing Business As" (DBA) line. If multiple DBA names won't fit on the line, enter one on the line and enter the others on Schedule O (Form 990 or 990-EZ).

If the organization receives its mail in care of a third party (such as an accountant or an attorney), enter on the street address line "C/O" followed by the third party's name and street address or P.O. box.

Include the suite, room, or other unit number after the street address. If the Post Office doesn't deliver mail to the street address and the organization has a P.O. box, enter the box number instead of the street address.

For foreign addresses, enter the information in the following order: city or town, state or province, the name of the country, and the postal code. Don't abbreviate the country name.

If a change of address occurs after the return is filed, use Form 8822-B, Change of Address or Responsible Party—Business, to notify the IRS of the new address.

**Item D. Employer identification number (EIN).** Each organization (including a subordinate of a central organization) must have its own EIN. Use the **EIN** provided to the organization for filing its Form 990 and federal tax returns. An organization should never use the EIN issued to another organization, even if the organizations are related. The organization must have only one EIN. If it has more than one and hasn't been advised which to use, notify:

Department of the Treasury
Internal Revenue Service Center
Ogden, UT 84201-0027

State the numbers the organization has, the name and address to which each EIN was assigned, and the address of the organization's principal office. The IRS will advise the organization which number to use.

 *A **subordinate organization** that files a separate Form 990 instead of being included in a group return must use its own EIN, and not that of the **central organization**.*

 *A section 501(c)(9) voluntary employees' beneficiary association must use its own EIN and not the EIN of its sponsor.*

**Item E. Telephone number.** Enter a telephone number of the organization that members of the public and government personnel can use during normal business hours to obtain information about the organization's finances and activities. If the organization doesn't have a telephone number, enter the telephone number of an organization official who can provide such information.

**Item F. Name and address of principal officer.** The address provided must be a complete mailing address to enable the IRS to communicate with the organization's current (as of the date this return is filed) **principal officer**, if necessary. If the officer prefers to be contacted at the organization's address listed in Item C, enter "same as C above." For purposes of this item, "principal officer" means an **officer** of the organization who, regardless of title, has ultimate responsibility for implementing the decisions of the organization's **governing body**, or for supervising the management, administration, or operation of the organization.

 *If a change in responsible party occurs after the return is filed, use Form 8822-B, Change of Address or Responsible Party—Business, to notify the IRS of the new responsible party.*

**Item G. Gross receipts.** On Form 990, Part VIII, column A, add line 6b (both columns (i) and (ii)), line 7b (both columns (i) and (ii)), line 8b, line 9b, line 10b, and line 12, and enter the total here. See the exceptions from filing Form 990 based on **gross receipts** and **total assets** as described in *General Instructions, Sections A and B,* earlier.

**Item H. Group returns.** If the organization answers "No" to line H(a), it shouldn't check a box in line H(b). If the organization answers "Yes" on line H(a) but "No" to line H(b), attach a list (not on Schedule O (Form 990 or 990-EZ)) showing the name, address, and **EIN** of each local or **subordinate organization** included in the **group return**. Additionally, attach a list (not on Schedule O) showing the name, address, and EIN of each subordinate organization not included in the group return. See Regulations section 1.6033-2(d)(2)(ii). If the organization answers "Yes" on line H(a) and "Yes" to line H(b), attach a list (not on Schedule O) showing the name, address, and EIN of each subordinate organization included in the group return. See Regulations section 1.6033-2(d)(2)(ii). A central or subordinate organization filing an individual return should not attach such a list. Enter on line H(c) the four-digit group exemption number (GEN) if the organization is filing a group return, or if the organization is a central or subordinate organization in a **group exemption** and is filing a separate return. Don't confuse the four-digit GEN number with the nine-digit EIN number reported on Item D of the form's Heading. A **central organization** filing a group return must not report its own EIN in Item D, but report the special EIN issued for use with the group return.

If attaching a list:
- Enter the form number ("Form 990") and tax year,
- Enter the group exemption name and **EIN**,
- Enter the four-digit group exemption number (GEN), and
- Use the same size paper as the form.

**Item I. Tax-exempt status.** Check the applicable box. If the organization is exempt under section 501(c) (other than section 501(c)(3)), check the second box and insert the appropriate subsection number within the parentheses (for example, "4" for a 501(c)(4) organization).

**Item J. Website.** Enter the organization's current address for its primary website, as of the date of filing this return. If the organization doesn't maintain a website, enter "N/A" (not applicable).

**Item K. Form of organization.** Check the box describing the organization's legal entity form or status under state law in its state of legal domicile. These include corporations, trusts, unincorporated associations, and other entities (for example, partnerships and limited liability companies).

**Item L. Year of formation.** Enter the year in which the organization was legally created under state or foreign law. If a corporation, enter the year of incorporation.

**Item M. State of legal domicile.** For a corporation, enter the state of incorporation (country of incorporation for a foreign corporation formed outside the United States). For a trust or other entity, enter the state whose law governs the organization's internal affairs (or the foreign country whose law governs for a foreign organization other than a corporation).

# Part I. Summary

 *Because Part I generally reports information reported elsewhere on the form, **complete Part I after the other parts of the form are completed.** See* General Instructions, Section C. Sequencing List to Complete the Form and Schedules, *earlier.*

Complete lines 3–5 and 7–22 by using applicable references made in Part I to other items.

**Line 1.** Describe the organization's mission or its most significant activities for the year, whichever the organization wishes to highlight, on the summary page.

**Line 2.** Check this box if the organization answered "Yes," on Part IV, line 31 or 32, and complete Schedule N (Form 990 or 990-EZ), Part I or Part II.

**Line 6.** Enter the number of **volunteers**, full-time and part-time, including volunteer members of the organization's governing body, who provided volunteer services to the organization during the reporting year. Organizations that don't keep track of this information in their books and records or report this information elsewhere (such as in annual reports or grant proposals) can provide a reasonable estimate, and can use any reasonable basis for determining this estimate. Organizations can, but aren't required to, provide an explanation on Schedule O (Form 990 or 990-EZ) of how this number was determined, the number of hours those volunteers served during the tax year, and the types of services or benefits provided by the organization's volunteers.

**Line 7b.** If the organization isn't required to file a Form 990-T for the tax year, enter "0." If the organization hasn't yet filed Form 990-T for the tax year, provide an estimate of the amount it expects to report on Form 990-T, line 39, when it is filed.

**Lines 8–19.** If this is an initial return, or if the organization filed Form 990-EZ or 990-PF in the prior year, leave the "Prior Year" column blank. Use the same lines from the 2018 Form 990 to determine what to report for prior year revenue and expense amounts.

**Line 16a.** Enter the total of (i) the fees for professional fundraising services reported in Part IX, column (A), line 11e, and (ii) the portion of the amount reported in Part IX, column (A), lines 5 and 6, that comprises fees for professional fundraising services paid to officers, directors, trustees, key employees, and disqualified persons, whether or not such persons are employees of the organization. Exclude the latter amount from Part I, line 15.

# Part II. Signature Block

The return must be signed by the current president, vice president, treasurer, assistant treasurer, chief accounting officer, or other corporate officer (such as a tax officer) who is authorized to sign as of the date this return is filed. A receiver, trustee, or assignee must sign any return he or she files for a corporation or association. See Regulations section 1.6012-3(b)(4). For a trust, the authorized trustee(s) must sign. The definition of "officer" for purposes of Part II is different from the definition of **officer** (see *Glossary*) used to determine which officers to report elsewhere on the form and schedules, and from the definition of **principal officer** for purposes of the Form 990 *Heading* (see *Glossary*).

## Paid Preparer

Generally, anyone who is paid to prepare the return must sign the return, list the preparer's taxpayer identification number (PTIN), and fill in the other blanks in the *Paid Preparer Use Only* area. An employee of the filing organization isn't a paid preparer.

The paid preparer must:
- Sign the return in the space provided for the preparer's signature,
- Enter the preparer information, including the preparer's PTIN, and
- Give a copy of the return to the organization.

Any paid preparer can apply for and obtain a PTIN online at *IRS.gov/PTIN* or by filing Form W-12, IRS Paid Preparer Tax Identification Number (PTIN) Application and Renewal.

 *Enter the paid preparer's PTIN, not his or her social security number (SSN), in the "PTIN" box in the paid preparer's block. The IRS won't redact the paid preparer's SSN if such SSN is entered on the paid preparer's block. Because Form 990 is a publicly disclosable document, any information entered in this block will be publicly disclosed (see* Appendix D*). For more information about applying for a PTIN online, visit the IRS website at* IRS.gov/Taxpros*.*

**Note.** A paid preparer may sign original or amended returns by rubber stamp, mechanical device, or computer software program.

### Paid Preparer Authorization

On the last line of Part II, check "Yes" if the IRS can contact the paid preparer who signed the return to discuss the return. This authorization applies only to the individual whose signature appears in the *Paid Preparer Use Only* section of Form 990. It doesn't apply to the firm, if any, shown in that section.

By checking "Yes," to this box, the organization is authorizing the IRS to contact the paid preparer to answer any questions that arise during the processing of the return. The organization is also authorizing the paid preparer to:

- Give the IRS any information missing from the return,
- Call the IRS for information about processing the return, and
- Respond to certain IRS notices about math errors, offsets, and return preparation.

The organization isn't authorizing the paid preparer to bind the organization to anything or otherwise represent the organization before the IRS.

The authorization will automatically end no later than the due date (excluding extensions) for filing of the organization's 2020 Form 990. If the organization wants to expand the paid preparer's authorization or revoke it before it ends, see Pub. 947, Practice Before the IRS and Power of Attorney.

Check "No" if the IRS should contact the organization or its principal officer listed in Item F of the *Heading* rather than the paid preparer.

## Part III. Statement of Program Service Accomplishments

Check the box in the heading of Part III if Schedule O (Form 990 or 990-EZ) contains any information pertaining to this part. Part III requires reporting regarding the organization's program service accomplishments. A program service is an activity of an organization that accomplishes its exempt purpose. Examples of program service accomplishments can include:

- A section 501(c)(3) organization's charitable activities such as a hospital's provision of charity care under its charity care policy, a college's provision of higher education to students under a degree program, a disaster relief organization's provision of grants or assistance to victims of a natural disaster, or a nursing home's provision of rehabilitation services to residents;
- A section 501(c)(5) labor union's conduct of collective bargaining on behalf of its members;
- A section 501(c)(6) business league's conduct of meetings for members to discuss business issues; or
- A section 501(c)(7) social club's operation of recreational and dining facilities for its members.

Don't report a fundraising activity as a program service accomplishment unless it is substantially related to the accomplishment of the organization's exempt purposes (other than by raising funds).

**Line 1.** Describe the organization's mission as articulated in its mission statement or as otherwise adopted by the organization's **governing body**, if applicable. If the organization doesn't have a mission that has been adopted or ratified by its **governing body**, enter "None."

**Line 2.** Answer "Yes," if the organization undertook any new significant program services prior to the end of the **tax year** that it didn't describe in a prior year's Form 990 or 990-EZ. Describe these items on Schedule O (Form 990 or 990-EZ). If any are among the activities described on Form 990, Part III, line 4, the organization can reference the detailed description on line 4. If the organization has never filed a Form 990 or 990-EZ, answer "No."

**Line 3.** Answer "Yes," if the organization made any significant changes prior to the end of the **tax year** in how it conducts its program services to further its exempt purposes, or if the organization ceased conducting significant program services that had been conducted in a prior year. Describe these items on Schedule O (Form 990 or 990-EZ).

 *An organization must report new, significant program services, or significant changes in how it conducts program services on its Form 990, Part III, rather than in a letter to IRS Exempt Organizations Determinations ("EO Determinations"). EO Determinations no longer issues letters confirming the tax-exempt status of organizations that report such new services or significant changes.*

**Lines 4a–4c.** All organizations must describe their accomplishments for each of their three largest program services, as measured by total expenses incurred (not including donated services or the donated use of materials, equipment, or facilities). If there were three or fewer of such activities, describe each program service activity. The organization can report on Schedule O (Form 990 or 990-EZ) additional activities that it considers of comparable or greater importance, although smaller in terms of expenses incurred (such as activities conducted with **volunteer** labor).

*Code.* For the 2019 tax year, leave this blank.

*Expenses and grants.* For each program service reported on lines 4a–4c, section 501(c)(3) and 501(c)(4) organizations must enter total expenses included on Part IX, column (B), line 25, and total grants and allocations (if any) included within such total expenses that were reported on Part IX, on column (B), lines 1–3. For all other organizations, entering these amounts is optional.

*Revenue.* For each program service, section 501(c)(3) and 501(c)(4) organizations must report any revenue derived directly from the activity, such as fees for services or from the sale of goods that directly relate to the listed activity. This revenue includes program service revenue reported on Part VIII, column (A), line 2, and includes other amounts reported on Part VIII, lines 3–11, as related or exempt function revenue. Also include **unrelated business income** from a business that exploits an exempt function, such as advertising in a journal. For this purpose, charitable contributions and grants (including the charitable contribution portion, if any, of membership dues) reported on Part VIII, line 1, aren't considered revenue derived from program services. For organizations other than section 501(c)(3) and 501(c)(4) organizations, entering these amounts is optional.

*Description of program services.* For each program service reported, include the following.

- Describe program service accomplishments through specific measurements such as clients served, days of care provided, number of sessions or events held, or publications issued.
- Describe the activity's objective, for both this time period and the longer-term goal, if the output is intangible, such as in a research activity.

- Give reasonable estimates for any statistical information if exact figures aren't readily available. Indicate that this information is estimated.
- Be clear, concise, and complete in the description. Use Schedule O (Form 990 or 990-EZ) if additional space is needed.

*Donated services or use of equipment, materials, or facilities.* The organization can report the amount of any donated services, or use of materials, equipment, or facilities it received or used in connection with a specific program service, on the lines for the narrative description of the appropriate program service. However, don't include these amounts in revenue, expenses, or grants reported on Part III, lines 4a–4e, even if prepared according to **generally accepted accounting principles**.

*Public interest law firm.* A public interest law firm exempt under section 501(c)(3) or section 501(c)(4) must include a list of all the cases in litigation or that have been litigated during the year. For each case:
- Describe the matter in dispute,
- Explain how the litigation will benefit the public generally, and
- Enter the fees sought and recovered.

See Rev. Proc. 92-59, 1992-2 C.B. 411.

**Line 4d. Other program services.** Enter on Schedule O (Form 990 or 990-EZ) the organization's other program services. The detailed description required for the three largest program services need not be provided for these other program services. Section 501(c)(3) and 501(c)(4) organizations must report on line 4d their total revenues reported on Part VIII, column (A), line 2, and their total expenses (including grants) reported on Part IX, column (B), that are attributable to these other program services, and must report on Part III, line 4e, their total program service expenses from Part III, lines 4a–4d. For all other organizations, entering these amounts is optional. The organization may report the non-contribution portion of membership dues on line 4d or allocate that portion among lines 4a–4c.

# Part IV. Checklist of Required Schedules

For each "Yes" answer to a question on Form 990, Part IV, complete the applicable schedule (or part or line of the schedule). See the *Glossary* and instructions for the pertinent schedules for definitions of terms and explanations that are relevant to questions in this part.

The organization isn't required to answer "Yes" on a question on Form 990, Part IV, or complete the schedule (or part of a schedule) to which the question is directed if the organization isn't required to provide any information in the schedule (or part of the schedule). Thus, a minimum dollar threshold for reporting information on a schedule may be relevant in determining whether the organization must answer "Yes" on a question on Form 990, Part IV.

All pages of a required schedule should be filed by Form 990 paper filers, even if the filer is only required to complete certain parts but not all of the schedule.

**Line 1.** Answer "Yes," if the organization is a section 501(c)(3) organization that isn't a **private foundation**. Answer "Yes," if the organization claims section 501(c)(3) status but hasn't yet filed a Form 1023 or Form 1023-EZ application or received a determination letter recognizing its section 501(c)(3) status. All other organizations answer "No."

**Line 2.** Answer "Yes," if any of the following are satisfied.
- A section 501(c)(3) organization met the 33⅓% support test of the regulations under sections 509(a)(1) and 170(b)(1)(A)(vi), checks the box on Schedule A (Form 990 or 990-EZ), Part II, line 13, 16a, or 16b, and received from any one contributor,

during the year, **contributions** of the greater of $5,000 (in money or property) or 2% of the amount on Form 990, Part VIII, line 1h. An organization filing Schedule B can limit the contributors it reports on Schedule B using this greater-than-$5,000/2% threshold only if it checks the box on Schedule A (Form 990 or 990-EZ), Part II, line 13, 16a, or 16b.
- A section 501(c)(3) organization didn't meet the 33⅓% support test of the regulations under sections 509(a)(1)/170(b)(1)(A)(vi), and received during the year **contributions** of $5,000 or more from any one contributor.
- A section 501(c)(7), 501(c)(8), or 501(c)(10) organization received, during the year (a) **contributions** of any amount for use *exclusively* for religious, charitable, scientific, literary, or educational purposes, or the prevention of cruelty to children or animals, or (b) contributions of $5,000 or more not exclusively for such purposes from any one contributor.
- Any other organization that received, during the year, contributions of $5,000 or more from any one contributor.

 *Don't attach substitutes for Schedule B. Parts I, II, and III of Schedule B (Form 990, 990-EZ, or 990-PF) may be photocopied as needed to provide adequate space for listing all contributors.*

**Line 3.** All organizations must answer this question, even if they aren't subject to a prohibition against **political campaign activities**. Answer "Yes," whether the activity was conducted directly or indirectly through a **disregarded entity** or a **joint venture** or other arrangement treated as a partnership for federal income tax purposes and in which the organization is an owner.

**Line 4.** Complete only if the organization is a section 501(c)(3) organization. Other organizations leave this line blank. Answer "Yes," if the organization engaged in **lobbying activities** or had a section 501(h) election in effect during the **tax year**. All section 501(c)(3) organizations that had a section 501(h) election in effect during the tax year must complete Schedule C (Form 990 or 990-EZ), Part II-A, whether or not they engaged in lobbying activities during the tax year.

**Line 5.** Answer "Yes" only if the organization is a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19, 1998-1 C.B. 547. Other organizations answer "No."

**Line 6.** Answer "Yes," if the organization maintained at any time during the organization's tax year a **donor advised fund** or another similar fund or account (that is, any account over which the donor or a person appointed by the donor had advisory privileges over the use or investment of any portion of the account, but which isn't a **donor advised fund**). Examples of other similar funds or accounts include, but aren't limited to, the types of funds or accounts described as exceptions to the *Glossary* definition of a **donor advised fund**.

**Line 7.** Answer "Yes," if the organization received or held any **conservation easement** at any time during the year, regardless of how the organization acquired the easement or whether a charitable deduction was claimed by a donor of the easement.

**Line 8.** Answer "Yes," if at any time during the year the organization maintained **collections of works of art, historical treasures, and other similar assets** as described in ASC 958-360-45, whether or not the organization reported revenue and assets related to such collections in its financial statements.

 *Organizations that answer "Yes" on line 8 often will answer "Yes" on Part IV, line 30, which addresses current-year **noncash contributions** of such items.*

**Line 9.** Answer "Yes," if at any time during the organization's tax year the organization (1) had an **escrow or custodial account**, (2) provided **credit counseling services** and/or **debt management plan services**, such as credit repair or debt negotiations, or (3) acted as an agent, trustee, custodian, or other intermediary for contributions or other assets not included in Part X.

**Line 10.** Answer "Yes," if the organization, a **related organization**, or an organization formed and maintained exclusively to further one or more exempt purposes of the organization (such as a foundation formed and maintained exclusively to hold **endowment** funds to provide scholarships and other funds for a college or university described within section 501(c)(3)), held assets in **donor-restricted endowment funds**, **board designated (quasi)**, or **endowment** funds at any time during the year, whether or not the organization follows **ASC 958**, or reports **endowment fund** in Part X, line 31. See the instructions for Schedule D (Form 990), Part V, for the definitions of these types of endowment funds.

**Line 11.** Answer "Yes," if the organization reported an amount for land, buildings, equipment, or leasehold improvements, on Part X, line 10; an amount for other liabilities on Part X, line 25; or if its financial statements for the tax year included a footnote that addresses its liability for uncertain tax positions under FIN 48 (FASB ASC 740) (including a statement that the organization had no liability for uncertain tax positions). Also, answer "Yes," if the organization reported in Part X an amount for investments-other securities, investments-program related, or other assets, on any of line 12,13, or 15, that is 5% or more of the total assets reported on Part X, line 16.

**Line 12a.** Answer "Yes," if the organization received separate, independent **audited financial statements** for the year for which it is completing this return, or if the organization is reporting for a short year that is included in, but not identical to, the period for which the audited financial statements were obtained. All other organizations answer "No." Answer "No" if the organization was included in consolidated audited financial statements, unless the organization also received separate audited financial statements.

An accountant's **compilation** or **review of financial statements** isn't considered to be an audit and doesn't produce audited financial statements. If the organization answers "No," but has prepared, for the year for which it is completing this return, a financial statement that wasn't audited, the organization can (but isn't required to) provide the reconciliations contained on Schedule D (Form 990), Parts XI-XII.

**Line b.** Answer "Yes," if the organization was included in consolidated, independent **audited financial statements** for the year for which it is completing this return. All other organizations answer "No." Answer "Yes," if the organization is reporting for a short year that is included in, but not identical to, the period for which the audited financial statements were obtained.

**Line 13.** Answer "Yes," if the organization checked the box on Schedule A (Form 990 or 990-EZ), Part I, line 2, indicating that it is a **school**.

**Lines 14a–14b.** Answer "Yes" on line 14a if the organization maintained an office, or had employees or agents, or independent contractors outside the **United States**. Answer "Yes," on line 14b if the organization had aggregate revenue or expenses of more than $10,000 from or attributable to grantmaking, **fundraising activities**, business, investment, and program service activities outside the **United States**, or if the book value of the organization's aggregate investments in foreign partnerships, foreign corporations, and other foreign entities was $100,000 or more at any time during the **tax year**.

In the case of indirect investments made through investment entities, the extent to which revenue or expenses are taken into account in determining whether the $10,000 threshold is exceeded will depend upon whether the investment entity is treated as a partnership or corporation for U.S. tax purposes. For example, an organization with an interest in a foreign partnership would need to take into account its share of the partnership's revenue and expenses in determining whether the $10,000 threshold is exceeded. An organization with an investment in a foreign corporation would need to take into account dividends it receives from the corporation, but wouldn't need to take into account or report any portion of the revenues, expenses, or expenditures of a foreign corporation in which it holds an investment, provided that the corporation is treated as a separate corporation for U.S. tax purposes.

**Line 15.** Answer "Yes," if the organization reported on Part IX, column (A), line 3, more than $5,000 of **grants and other assistance** to any **foreign organization** or entity (including a **foreign government**), or to a **domestic organization** or **domestic individual** for the purpose of providing grants or other assistance to a designated **foreign organization** or organizations.

**Line 16.** Answer "Yes," if the organization reported on Part IX, column (A), line 3, more than $5,000 of aggregate **grants and other assistance** to **foreign individuals**, or to **domestic organizations** or **domestic individuals** for the purpose of providing grants or other assistance to a designated foreign individual or individuals.

**Lines 17–19.** Answer "Yes" on line 17 if the total amount reported for **professional fundraising services** in Part IX (line 11e, plus the portion of the line 6 amount attributable to professional fundraising services) exceeds $15,000.

Answer "Yes" on line 18 if the sum of the amounts reported on lines 1c and 8a of Form 990, Part VIII, exceeds $15,000. An organization that answers "No" should consider whether to complete Schedule G (Form 990 or 990-EZ) in order to report its **fundraising activities** or **gaming** activities for state or other reporting purposes.

**Line 20a.** Answer "Yes," if the organization, directly or indirectly through a **disregarded entity** or **joint venture** treated as a partnership for federal income tax purposes, operated one or more **hospital facilities** at any time during the **tax year**. Except in the case of a **group return**, don't include hospital facilities operated by another organization that is treated as a separate taxable or tax-exempt corporation for federal income tax purposes. For group returns, answer "Yes" if any subordinate included in the group return operated such a hospital facility.

**Line 20b.** If the organization operated one or more **hospital facilities** at any time during the **tax year**, then it must attach a copy of its most recent **audited financial statements**. If the organization was included in consolidated audited financial statements but not separate audited financial statements for the tax year, then it must attach a copy of the consolidated financial statements, including details of consolidation (whether or not audited).

**Line 21.** Answer "Yes," if the organization reported on Part IX, column (A), line 1, more than $5,000 of **grants and other assistance** to any **domestic organization**, or to any domestic government. For instance, answer "No" if the organization made a $4,000 grant to each of two domestic organizations and no other grants. Don't report grants or other assistance provided to domestic organizations or domestic governments for the purpose of providing grants or other assistance to designated **foreign organizations** or **foreign individuals**.

**Line 22.** Answer "Yes," if the organization reported on Part IX, column (A), line 2, more than $5,000 of aggregate **grants and**

**other assistance** to or for **domestic individuals**. Don't report grants or other assistance provided to or for domestic individuals for the purpose of providing grants or other assistance to designated **foreign organizations** or **foreign individuals**.

**Line 23.** Answer "Yes," if the organization:
• Listed in Part VII a *former* **officer**, **director**, **trustee**, **key employee**, or **highest compensated employee**; or
• Reported for any person listed in Part VII more than $150,000 of **reportable compensation** and other **compensation**.

Also answer "Yes," if, under the circumstances described in the instructions to Part VII, Section A, line 5, the filing organization had knowledge that any person listed in Part VII, Section A, received or accrued **compensation** from an **unrelated organization** for services rendered to the filing organization.

**Line 24.** Lines 24a–24d involve questions regarding **tax-exempt bonds**. All organizations must answer "Yes" or "No" on line 24a. Those organizations that answer "Yes" on line 24a must also answer lines 24b through 24d and complete Schedule K (Form 990), Supplemental Information on Tax-Exempt Bonds. Those that answer "No" to line 24a can skip to line 25a.

*Line 24a.* Answer "Yes" and complete Schedule K (Form 990) for each **tax-exempt bond** issued by or for the benefit of the organization after December 31, 2002 (including refunding bonds) with an outstanding principal amount of more than $100,000 as of the last day of the organization's tax year. For this purpose, bonds that have been legally defeased, and as a result are no longer treated as a liability of the organization, aren't considered outstanding.

*Line 24b.* For purposes of line 24b, the organization need not include the following as investments of proceeds.
• Any investment of proceeds relating to a reasonably required reserve or replacement fund as described in section 148(d).
• Any investment of proceeds properly characterized as replacement proceeds as defined in Regulations section 1.148-1(b).
• Any investment of net proceeds relating to a **refunding escrow** as defined in Regulations section 1.148-1(b). Temporary period exceptions are described in section 148(c) and Regulations section 1.148-2(e). For example, there is a 3-year temporary period applicable to proceeds spent on expenditures for capital projects and a 13-month temporary period applicable to proceeds spent on working capital expenditures.

*Line 24c.* For purposes of line 24c, the organization is treated as maintaining an escrow account if such account is maintained by a trustee for **tax-exempt bonds** issued for the benefit of the organization.

*Line 24d.* Answer "Yes," if the organization has received a letter ruling that its obligations were issued on behalf of a state or local **governmental unit**; meets the conditions for issuing **tax-exempt bonds** as set forth in Rev. Rul. 63-20, 1963-1 C.B. 24 (see Rev. Proc. 82-26, 1982-1 C.B. 476); or is a constituted authority organized by a state or local governmental unit to issue tax-exempt bonds in order to further public purposes (see Rev. Rul. 57-187, 1957-1 C.B. 65). Also answer "Yes," if the organization has outstanding qualified scholarship funding bonds under section 150(d) or bonds of a qualified volunteer fire department under section 150(e).

**Lines 25a–25b.** Complete lines 25a and 25b only if the organization is a section 501(c)(3), 501(c)(4), or 501(c)(29) organization. If the organization isn't described in section 501(c)(3), 501(c)(4), or 501(c)(29), skip lines 25a and 25b and leave them blank. On line 25b, answer "Yes," if the organization became aware, prior to filing this return, that it engaged in an **excess benefit transaction** with a **disqualified person** in a

prior year, and if the transaction hasn't been reported on any of the organization's prior Forms 990 or 990-EZ.

 *An **excess benefit transaction** can have serious implications for the **disqualified person** that entered into the transaction with the organization, any **organization managers** that knowingly approved of the transaction, and the organization itself. A section 501(c)(3), 501(c)(4), or 501(c)(29) organization that becomes aware that it may have engaged in an **excess benefit transaction** should obtain competent advice regarding section 4958, pursue correction of any excess benefit, and take other appropriate steps to protect its interests with regard to such transaction and the potential impact it could have on the organization's continued exempt status. See Appendix G. Section 4958 Excess Benefit Transactions, for a discussion of section 4958,* Schedule L (Form 990 or 990-EZ), Transactions With Interested Persons, Part I, and Form 4720, Schedule I, *regarding reporting of excess benefit transactions.*

**Lines 26–28.** Lines 26 through 28 ask questions about loans and other receivables and payables between the organization and certain interested persons, and certain direct and indirect business transactions between the organization and governance and management officials of the organization or their associated businesses or **family members**. All organizations must answer these questions. The organization should review carefully the Instructions for Schedule L (Form 990 or 990-EZ), Parts II–IV, before answering these questions and completing Schedule L (Form 990 or 990-EZ).

**Line 29.** The organization is required to answer "Yes" on line 29 if it received during the year more than $25,000 in **fair market value (FMV)** of donations, gifts, grants, or other **contributions** of property other than cash, regardless of the manner received (such as for use in a charity auction). Don't include **contributions** of services or use of facilities.

**Line 30.** The organization is required to answer "Yes" on line 30 if during the year it received as a donation, gift, grant, or other **contribution**:
• Any **work of art**, **historical treasure**, historical artifact, scientific specimen, archeological artifact, or similar asset, including a fractional interest, regardless of amount or whether the organization maintains collections of such items; or
• Any **qualified conservation contributions** regardless of whether the contributor claimed a charitable contribution deduction for such **contribution**.

See the Instructions for Schedule M (Form 990), Noncash Contributions, for definitions of these terms.

**Lines 31–32.** The organization must answer "Yes," if it liquidated, terminated, dissolved, ceased operations, or engaged in a **significant disposition of net assets** during the year. See the Instructions for Schedule N (Form 990 or 990-EZ) for definitions and explanations of these terms and transactions or events, and a description of articles of dissolution and other information that must be filed with Form 990.

Note that a significant disposition of net assets may result from either an expansion or contraction of operations. Organizations that answer "Yes" on either of these questions must also check the box in Part I, line 2, and complete Schedule N (Form 990 or 990-EZ), Part I or Part II.

**Lines 33–34.** The organization is required to report on Schedule R (Form 990), Related Organizations and Unrelated Partnerships, certain information regarding ownership or control of, and transactions with, its **disregarded entities** and tax-exempt and taxable **related organizations**. An organization that answers "Yes" on line 33 or 34 must enter its disregarded

entities and related organizations on Schedule R (Form 990) and provide specified information regarding such organizations.

Report disregarded entities on Schedule R, Part I; related tax-exempt organizations on Part II; related organizations taxable as partnerships on Part III; and any related organizations taxable as C or S corporations or trusts on Part IV.

**Lines 35a–35b.** If an organization was a **controlled entity** of the filing organization under section 512(b)(13) during the **tax year**, the filing organization must answer "Yes" on line 35a. It must answer "Yes" on line 35b and complete Schedule R, Part V, line 2, if it either (1) received or accrued from its controlled entity any interest, annuities, royalties, or rent, regardless of amount, during the tax year; or (2) engaged in another type of transaction (see Schedule R for a list of transactions) with the controlled entity, if the amounts involved during the tax year for that type of transaction exceeded $50,000. See the *Glossary* and the Instructions for Schedule R (Form 990).

Controlled entities are a subset of **related organizations**. Answer "No" to line 35a if the organization had no related organizations during the tax year. If the answer to line 35a is "No," leave line 35b blank.

**Line 36.** Complete line 36 only if the organization is a section 501(c)(3) organization and engaged in a transaction over $50,000 during the **tax year** with a **related organization** that was tax-exempt under a section other than section 501(c)(3). All other organizations leave this line blank and go to line 37. See the Instructions for Schedule R (Form 990) for more information on what needs to be reported on Schedule R (Form 990), Part V, line 2.

**Line 37.** Answer "Yes," if at any time during the year the organization conducted more than 5% of its activities, measured by total gross revenue for the tax year or **total assets** of the organization at the end of its **tax year**, whichever is greater, through an **unrelated organization** that is treated as a partnership for federal income tax purposes, and in which the organization was a partner or member at any time during the tax year. The 5% test is applied on a partnership by partnership basis, although direct ownership by the organization and indirect ownership through disregarded entities or tiered entities treated as partnerships are aggregated for this purpose. The organization need not report on Schedule R (Form 990), Part VI, either (1) the conduct of activities through an organization treated as a taxable or tax-exempt corporation for federal income tax purposes, or (2) unrelated partnerships that meet both of the following conditions.

• 95% or more of the filing organization's gross revenue from the partnership for the partnership's tax year ending with or within the organization's tax year is described in sections 512(b)(1), 512(b)(2), 512(b)(3), and 512(b)(5), such as interest, dividends, royalties, rents, and capital gains (including unrelated debt-financed income); and

• The primary purpose of the filing organization's investment in the partnership is the production of income or appreciation of property and not the conduct of a section 501(c)(3) charitable activity such as program-related investing.

**Line 38.** Answer "Yes," if the organization completed Schedule O (Form 990).

 *Schedule O (Form 990 or 990-EZ) must be completed and filed by all organizations that file Form 990. All filers must provide narrative responses to certain questions (for example, Part VI, lines 11b and 19) on Schedule O. Certain filers must provide narrative responses to other questions (for example, Part III, line 4d; Part V, line 3b; Part VI, lines 2–7b, 9, 12c, and 15a–b for "Yes" responses; Part VI, lines 8a–b and 10b for "No" responses; Part XII, line 3b for "No" response). All filers*

can supplement their answers on other Form 990 questions on Schedule O.

# Part V. Statements Regarding Other IRS Filings and Tax Compliance

Check the box in the heading of Part V if Schedule O (Form 990 or 990-EZ) contains any information pertaining to this part.

 *See Glossary for definition of terms used in the questions in this section.*

 *Some questions in this part pertain to other IRS forms. Forms are available by downloading from the IRS website at IRS.gov/OrderForms. Also see* Appendix H. Forms and Publications To File or Use.

**Line 1a.** The organization must use Form 1096, Annual Summary and Transmittal of U.S. Information Returns, to transmit to the IRS paper Forms 1099, 1098, 5498, and W-2G, which are information returns reporting certain amounts paid or received by the organization. Report all such returns filed for the calendar year ending with or within the organization's **tax year**. If the organization transmits any of these forms electronically, add this number to the total reported. Examples of payments requiring Form 1099 reporting include certain payments to **independent contractors** for services rendered. Report on this line Forms 1099, 1098, 5498, and W-2G filed by reporting agents of the filing organization, including common paymasters and payroll agents, for the calendar year ending with or within the organization's tax year. Enter -0- if the organization didn't file any such forms for the calendar year ending with or within its tax year, or if the organization is filing for a short year and no calendar year ended within its tax year.

**Line 1b.** Form W-2G pertains to certain gambling winnings.

**Line 1c.** For more information on backup withholding for missing or incorrect names or taxpayer identification numbers, see Pub. 1281, Backup Withholding for Missing and Incorrect Name/TIN(s). If backup withholding rules didn't apply to the organization because it didn't make a reportable payment to a vendor or provide reportable gaming (gambling) winnings to a prize winner, then leave line 1c blank.

**Line 2a.** Include on this line the number of the organization's employees (not the number of Forms W-2) reported on a Form W-3 by both the filing organization and reporting agents of the filing organization, including common paymasters and payroll agents, for the calendar year ending with or within the filing organization's **tax year**. Enter -0- if the organization didn't have any employees during the calendar year ending with or within its tax year, or if the organization is filing for a short year and no calendar year ended within its tax year.

**Line 2b.** If the organization reported at least one employee on line 2a, answer whether the organization or reporting agents of the organization filed all required federal employment tax returns (which include Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, and Form 941, Employer's QUARTERLY Federal Tax Return) relating to such employees. For more information, see the discussion of employment taxes in Pub. 557. The organization may leave line 2b blank if it didn't report any employees on line 2a.

**Line 3a.** Check "Yes" on line 3a if the organization's total gross income from all of its **unrelated trades or businesses** is $1,000 or more for the tax year. See Pub. 598, Tax on Unrelated Business Income of Exempt Organizations, for a description of **unrelated business income** and the Form 990-T filing requirements for organizations having such income.

 *Neither Form 990-T nor Form 990 is a substitute for the other. Report on Form 990 items of income and expense that are also required to be reported on Form 990-T when the organization is required to file both forms.*

**Line 3b.** Answer "Yes," if the organization checked "Yes" on line 3a and filed Form 990-T by the time this Form 990 is filed. Check "No" if the organization answered "Yes" on line 3a but hasn't filed Form 990-T by the time this Form 990 is filed, even if the organization has applied for an extension to file Form 990-T. If "No" on line 3b, provide an explanation on Schedule O (Form 990 or 990-EZ).

 *All tax-exempt organizations must pay estimated taxes for their **unrelated business income** if they expect their tax liability to be $500 or more. Use Form 990-W, Estimated Tax on Unrelated Business Taxable Income for Tax-Exempt Organizations, to compute these amounts.*

**Line 4a.** Answer "Yes," if either (1) or (2) below applies.

1. At any time during the calendar year ending with or within the organization's **tax year**, the organization had an interest in, or signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account); and

a. The combined value of all such accounts was more than $10,000 at any time during the calendar year; and

b. The accounts weren't with a U.S. military banking facility operated by a U.S. financial institution.

2. The organization owns more than 50% of the stock in any corporation that would answer "Yes" to item 1 above.

If "Yes," electronically file FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR) with the Department of the Treasury using the FinCEN's BSA E-Filing System. Because FinCEN isn't a tax form, don't file it with Form 990.

See *www.fincen.gov* for more information.

**Line 4b.** Enter the name of each foreign country in which a foreign account described on line 4a is located. Use Schedule O if more space is needed.

**Line 5.** Answer "Yes" on line 5a if the organization was party to a prohibited tax shelter transaction as described in section 4965(e) at any time during the organization's **tax year**. A prohibited tax shelter transaction is any listed transaction, within the meaning of section 6707A(c)(2), and any prohibited reportable transaction. A prohibited reportable transaction is a confidential transaction within the meaning of Regulations section 1.6011-4(b)(3), and a transaction with contractual protection within the meaning of Regulations section 1.6011-4(b)(4). For more information on prohibited tax shelter transactions, see *IRS.gov*.

An organization that files Form 990 (other than a section 527 political organization) and that is a party to a prohibited tax shelter transaction must file Form 8886-T, Disclosure by Tax-Exempt Entity Regarding Prohibited Tax Shelter Transaction, and also may have to file Form 4720, Return of Certain Excise Taxes Under Chapters 41 and 42 of the Internal Revenue Code, and pay an excise tax imposed by section 4965. For more information, see the Instructions for Forms 8886-T and 4720.

**Line 6.** Answer "Yes" on line 6a only if the organization has annual gross receipts that are normally greater than $100,000 and if it solicited contributions not deductible under section 170 during the tax year.

Any fundraising solicitation (including solicitation of member dues) by or on behalf of any section 501(c) or 527 organization that isn't eligible to receive **contributions** deductible as charitable contributions for federal income tax purposes must include an explicit statement that contributions or gifts to it aren't deductible as charitable contributions. The statement must be in an easily recognizable format whether the solicitation is made in written or printed form, by television or radio, or by telephone.

Failure to disclose that contributions aren't deductible could result in a penalty of $1,000 for each day on which a failure occurs. The maximum penalty for failures by any organization, during any calendar year, shall not exceed $10,000. See section 6710 for details. In cases where the failure to make the disclosure is due to intentional disregard of the law, more severe penalties apply. No penalty will be imposed if the failure is due to reasonable cause.

All organizations that qualify under section 170(c) to receive **contributions** that are deductible as charitable contributions for federal income tax purposes (such as domestic section 501(c)(3) organizations other than organizations that test for public safety) should answer "No" on line 6a.

**Line 7.** Line 7 is directed only to organizations that can receive deductible charitable **contributions** under section 170(c). See Pub. 526, Charitable Contributions, for a description of such organizations. All other organizations should leave lines 7a through 7h blank and go to line 8.

*Lines 7a and 7b.* If a donor makes a payment in excess of $75 partly as a contribution and partly in consideration for goods or services provided by the organization, the organization generally must notify the donor of the value of goods and services provided.

*Example.* A donor gives a charity $100 in consideration for a concert ticket valued at $40 (a quid pro quo **contribution**). In this example, $60 would be deductible. Because the donor's payment exceeds $75, the organization must furnish a disclosure statement even though the taxpayer's deductible amount doesn't exceed $75. Separate payments of $75 or less made at different times of the year for separate fundraising events won't be aggregated for purposes of the $75 threshold.

 *See section 6113 and Notice 88-120, 1988-2 C.B. 454.*

*Lines 7c and 7d.* If the organization is required to file Form 8282, Donee Information Return, to report information to the IRS and to donors about dispositions of certain donated property made within 3 years after the donor contributed the property, it must answer "Yes" and indicate the number of Forms 8282 filed.

*Lines 7e and 7f.* If, in connection with a transfer to or for the use of the organization, the organization directly or indirectly pays premiums on any personal benefit contract, or there is an understanding or expectation that any person will directly or indirectly pay such premiums, the organization must report on Form 8870, Information Return for Transfers Associated With Certain Personal Benefit Contracts, the premiums it paid, and the premiums paid by others but treated as paid by the organization. The organization must report and pay an excise tax, equal to premiums paid, on Form 4720. A personal benefit contract generally is any life insurance, annuity, or endowment contract that benefits, directly or indirectly, the transferor, a member of the transferor's family, or any other person designated by the transferor (other than an organization described in section 170(c)).

*Line 7g.* Form 8899, Notice of Income From Donated Intellectual Property, must be filed by certain organizations that received a charitable gift of qualified intellectual property that produces net income. The organization should check "Yes," if it provided all required Forms 8899 for the year for net income produced by donated qualified intellectual property. *Qualified intellectual property* is any patent, copyright (other than certain self-created copyrights), trademark, trade name, trade secret,

know-how, software (other than certain "canned" or "off-the-shelf" software or self-created software), or similar property, or applications or registrations of such property. If the organization didn't receive a contribution of qualified intellectual property, leave line 7g blank.

*Line 7h.* A donor of (1) a motor vehicle for use on public roads, (2) a boat, or (3) an airplane can't claim a charitable **contribution** deduction in excess of $500 unless the donee organization provides the donor with a Form 1098-C, Contributions of Motor Vehicles, Boats, and Airplanes, for the donation (or a written acknowledgment with the same information). See the Instructions for Form 1098-C for more information. If the organization didn't receive a contribution of a car, boat, airplane, or other vehicle, leave line 7h blank.

**Line 8.** A **sponsoring organization** of a **donor advised fund** must answer "Yes" if any one of its donor advised funds had excess business holdings at any time during the organization's **tax year**. All other organizations should leave this line blank and go to line 9. If "Yes," see the Instructions for Schedule C of Form 4720 to determine whether the organization is subject to the excess business holdings tax under section 4943 and is required to file Form 4720.

For purposes of the excise tax on excess business holdings under section 4943, a donor advised fund is treated as a **private foundation**.

**Line 9.** Line 9 is required to be completed by **sponsoring organizations** maintaining a **donor advised fund**. All other organizations can leave this line blank and go to line 10.

*Line 9a.* Answer "Yes," if the organization made any taxable distributions under section 4966 during the organization's **tax year**. If "Yes," complete and file Form 4720, Schedule K, to calculate and pay the tax.

Under section 4966, a taxable distribution includes a distribution from a **donor advised fund** to an individual. A taxable distribution also includes a distribution from a donor advised fund to an estate, partnership, association, company, or corporation unless:
• The distribution is for a charitable purpose (for example, a purpose described in section 170(c)(2)(B)), and
• The organization exercises expenditure responsibility for the distribution.

The above doesn't apply to distributions to any organization described in section 170(b)(1)(A) (other than a disqualified **supporting organization**, defined in section 4966(d)(4)), to the sponsoring organization of such donor advised fund, or to any other donor advised fund.

*Line 9b.* Answer "Yes," if the organization made a distribution from a **donor advised fund** to a donor, **donor advisor**, or related person during the organization's **tax year**. For purposes of this question, a *related person* is any **family member** of the donor or donor advisor and any **35% controlled entity** (as defined in section 4958(f)) of the donor or donor advisor. If "Yes," complete and file Form 4720, Schedule L.

 *If an organization makes a distribution from a donor advised fund resulting from the advice of a donor, donor advisor, family member, or a 35% controlled entity of any of these persons, which distribution directly or indirectly provides a more than incidental benefit to one of such persons, section 4967 imposes a tax on (1) the person upon whose advice the distribution was made, (2) the beneficiary of the distribution, and (3) the fund manager for knowingly agreeing to make the distribution. The persons liable for the section 4967 tax must file Form 4720 to pay the tax. No section 4967 tax will be imposed on a distribution if a tax has been imposed for the distribution under section 4958.*

*If an organization makes a distribution from a donor advised fund to a donor, donor advisor, family member, or 35% controlled entity of these persons, then the transaction might be a section 4958 transaction. Such transactions include any grant, loan, compensation, or other similar payment to these persons, as well as any other payment resulting in excess benefit.*

**Line 10.** Answer lines 10a and 10b only if the organization is exempt under section 501(c)(7).

 *A section 501(c)(7) organization isn't exempt from income tax if any written policy statement, including the governing instrument and bylaws, allows discrimination on the basis of race, color, or religion.*

However, section 501(i) allows social clubs to retain their exemption under section 501(c)(7) even though their membership is limited (in writing) to members of a particular religion if the social club:

1. Is an auxiliary of a fraternal beneficiary society exempt under section 501(c)(8), and

2. Limits its membership to the members of a particular religion; or the membership limitation is:

a. A good-faith attempt to further the teachings or principles of that religion, and

b. Not intended to exclude individuals of a particular race or color.

*Line 10a.* Enter the amount of initiation fees, capital contributions, and unusual amounts of income included in Part VIII. *Statement of Revenue*, line 12, *Total Revenue*, but not included in the definition of **gross receipts** for section 501(c)(7) exemption purposes as discussed in *Appendix C*. However, if the organization is a college fraternity or sorority that charges membership initiation fees but not annual dues, don't include such initiation fees.

*Line 10b.* Enter the amount of **gross receipts** included in Part VIII. *Statement of Revenue*, line 12, *Total Revenue*, derived from the general public for use of the organization's facilities, that is, from persons other than members or their spouses, dependents, or guests.

 *Include the amount entered on line 10b of Form 990 on the club's Form 990-T if required to be filed. Investment income earned by a section 501(c)(7) organization isn't tax-exempt income unless set aside for the following purposes: religious, charitable, scientific, literary, educational, or prevention of cruelty to children or animals.*

If the combined amount of an organization's gross investment income, and other gross income from unrelated trades or businesses, is $1,000 or more for the tax year, the organization must report the investment income, and other unrelated business income, on Form 990-T.

**Line 11.** Answer lines 11a and 11b only if the organization is exempt under section 501(c)(12).

One of the requirements that an organization must meet to qualify under section 501(c)(12) is that at least 85% of its gross income consists of amounts collected from members for the sole purpose of meeting losses and expenses. For purposes of section 501(c)(12), the term *gross income* means **gross receipts** without reduction for any cost of goods sold.

Member income for purposes of this 85% Member Income Test is income derived directly from the members to pay for services that form the basis for tax exemption under section 501(c)(12), and includes payments for purchases of water, electricity, and telephone service. Member income doesn't include interest income, gains from asset or security sales, or

dividends from another cooperative (unless that cooperative also is a member).

Members are those individuals or entities that have the right to elect the governing board of the organization, are involved in the operations of the organization, and receive a share of its excess operating revenues.

When calculating the member income percentage to determine whether an organization meets the 85% Member Income Test, the organization may exclude specific sources of income from both the numerator and the denominator of the fraction. For example, if an organization is a corporation and it receives an amount that qualifies as a contribution to capital under section 118, then that amount isn't included in either the numerator or the denominator because it isn't considered to be income for tax purposes. However, the payment must meet the following conditions (see Rev. Rul. 93-16, 1993-1 C.B. 26) to qualify as a contribution to capital:

- It must become a permanent part of the organization's working capital;
- It must not be compensation for specific quantifiable services;
- It must be bargained for;
- It must benefit the organization commensurately with its value; and
- It must ordinarily be used in or contribute to the production of additional income.

Gross income for mutual or cooperative electric companies is figured by excluding any income received or accrued from the following.

1. Qualified pole rentals.

2. Any provision or sale of electric energy transmission services or ancillary services if the services are provided on a nondiscriminatory, open access basis under an open access transmission tariff; approved or accepted by the Federal Energy Regulatory Commission (FERC) or under an independent transmission provider agreement approved or accepted by FERC (other than income received or accrued directly or indirectly from a member).

3. The provision or sale of electric energy distribution services or ancillary services, if the services are provided on a nondiscriminatory, open-access basis to distribute electric energy not owned by the mutual or electric cooperative company:

a. To end-users who are served by distribution facilities not owned by the company or any of its members (other than income received or accrued directly or indirectly from a member), or

b. Generated by a generation facility not owned or leased by the company or any of its members and which is directly connected to distribution facilities owned by such company or any of its members (other than income received or accrued directly or indirectly from a member).

4. From any nuclear decommissioning transaction.

5. From any asset exchange or conversion transaction.

For a mutual or cooperative telephone company, *gross income* doesn't include amounts received or accrued either from another telephone company for completing long distance calls to or from or between the telephone company's members, from qualified pole rentals, from the sale of display listings in a directory furnished to the telephone company's members, or from prepayment of a loan under section 306A, section 306B, or section 311 of the Rural Electrification Act of 1936 (as in effect on January 1, 1987).

 *If the calculated member income percentage for a section 501(c)(12) organization is less than 85% for the tax year, then the organization fails to qualify for tax-exempt status for that year, and it must file Form 1120, U.S.* *Corporation Income Tax Return, in lieu of Form 990 or 990-EZ for the year. However, failing the 85% Member Income Test in one year doesn't cause permanent loss of tax-exempt status under section 501(c)(12). So long as the organization's member income percentage is equal to or greater than 85% in any subsequent tax year, the organization may file Form 990 or Form 990-EZ for that year, even if Form 1120 was filed in a prior year.*

**Line 12.** All organizations that aren't section 4947(a)(1) trusts are to leave line 12 blank.

If a section 4947(a)(1) **nonexempt charitable trust** has no taxable income under Subtitle A, its filing of Form 990 can be used to meet its income tax return filing requirement under section 6012. Such a trust must, if it answers "Yes" on line 12a, report its tax-exempt interest received or accrued (if reporting under the accrual method) during the **tax year** on line b.

Section 4947(a)(1) trusts must complete all sections of the Form 990 and schedules that section 501(c)(3) organizations must complete. All references to a section 501(c)(3) organization on the Form 990, schedules, and instructions shall include a section 4947(a)(1) trust (for instance, such a trust must complete Schedule A (Form 990 or 990-EZ), unless expressly excepted).

**Line 13.** Answer lines 13a, 13b, and 13c only if the organization has received a loan or grant under the Department of Health and Human Services CO-OP program.

*Line 13a.* If the organization is licensed to issue qualified health plans in more than one state, check "Yes." If the organization is licensed to issue qualified health plans in only one state, check "No." In either case, report on Schedule O (Form 990 or 990-EZ) each state in which the organization is licensed to issue qualified health plans, the dollar amount of reserves each state requires the organization to maintain, and the dollar amount of reserves the organization maintains and reports to each state.

*Line 13b.* Report the highest dollar amount of reserves the organization is required to maintain by any of the states in which the organization is licensed to issue qualified health plans.

*Line 13c.* Report the highest dollar amount of reserves the organization maintains on hand and reports to a state in which the organization is licensed to issue qualified health plans.

*Line 14a.* Answer line 14a "Yes" if the organization received any payments during the year for indoor tanning services. "Indoor tanning services" are services employing any electronic product designed to incorporate one or more ultraviolet lamps and intended for the irradiation of an individual by ultraviolet radiation, with wavelengths in air between 200 and 400 nanometers, to induce skin tanning.

*Line 14b.* If an organization received a payment for services for indoor tanning services during the year, it must collect from the recipient of the services a tax equal to 10% of the amount paid for such service, whether paid by insurance or otherwise, and remit such tax quarterly to the IRS by filing Form 720. If the organization filed Form 720 during the year, it should check "Yes" on line 14b. If it answers "No" on line 14b, it should explain on Schedule O (Form 990 or 990-EZ) why it didn't file Form 720.

*Line 15.* See the Instructions for Form 4720, Schedule N, to determine if you paid to any covered employee more than $1 million in remuneration or paid an excess parachute payment during the year. Remuneration paid to a covered employee includes any remuneration paid by a related organization.

*Line 16.* Line 16 applies to private colleges and universities subject to the excise tax on net investment income under section 4968. All other organizations, including state colleges and universities described in the first sentence of section 511(a)(2)(B) are not subject to this tax, and therefore check the "No" box on line 16, and go to Part VI. A private college or university will be subject to the excise tax on net investment income under section 4968 only if four threshold tests are met.

1. The organization must be an eligible educational institution as defined in section 25A(f)(2). Section 25A(f)(2) defines "eligible educational institution" as an institution that is described in section 481 of the Higher Education Act of 1965 (20 USC 1088), as in effect on August 5, 1997, and is eligible to participate in a program under Title IV of such Act (20 USCS sections 1070 et seq.).

2. The organization must have had at least 500 tuition-paying students, based upon a daily average student count, during the preceding tax year.

3. More than 50% of those students must have been located in the United States.

4. The aggregate fair market value, at the end of the preceding tax year, of the assets not used directly in carrying out the organization's exempt purpose, held by the organization and related organizations, must be at least $500,000 per student.

Use the worksheet below to determine whether the organization meets the last three threshold tests above. Save this worksheet with the organization's records.

## Threshold Tests for Section 4968

| | | |
|---|---|---|
| 1. Enter the daily average number of FTE tuition-paying students in all locations. If fewer than 500, check "No" in box 16. If 500 or more, go to line 2. | | |
| 2. Enter the daily average number of FTE tuition-paying students in U.S. | | |
| 3. Divide line 2 by line 1. If 50% or less, check "No" on box 16. If greater than 50%, go to line 4. | | |
| 4. Enter the FMV of assets held by organization but not used directly in carrying out the organization's exempt purpose. | $ | |
| 5. Enter FMV of assets held by one or more related organizations. | $ | |
| 6. Total. Add lines 4 and 5. | | $ |
| 7. Divide line 6 by daily average number of FTE students. If less than $500,000, check "No" in box 16. If $500,000 or more, check "Yes" in box 16. | | $ |

**Worksheet Line 1.** To calculate the number of tuition-paying students during the preceding tax year (including for purposes of determining the number of students at a particular location), enter the daily average number of full-time equivalent (FTE) tuition-paying students attending the institution, taking part-time tuition-paying students into account on a full-time student equivalent basis.

If Worksheet line 1 is fewer than 500, the organization is not subject to the section 4968 excise tax on net investment income. The organization should answer "No," on line 16. If Worksheet line 1 is 500 or more, continue to line 2.

**Worksheet Line 2.** Enter the number of FTE tuition-paying students included in line 1 who were located in the United States during the preceding tax year and enter it on line 2.

**Worksheet Line 3.** Divide line 2 by line 1. If 50% or less, the organization is not subject to the section 4968 excise tax and the organization should answer "No" on line 16. If greater than 50%, continue to Line 4.

**Worksheet Line 4.** Calculate the fair market value (FMV) of the organization's assets not used directly in carrying out the organization's exempt purpose as of the end of the preceding tax year. To determine which assets are used directly in carrying out the organization's exempt purpose, under these instructions, follow the principles of section 4942(e)(1)(A) and Regulations section 53.4942(a)-2(c)(3). To determine the fair market value of the assets, use any reasonable method as long as such method is consistently used. Under these instructions, the principles of Regulation section 53.4942(a)-2(c)(4) will be considered to provide a reasonable method.

 *Assets held for the production of income or for investment aren't considered to be used directly for charitable functions even though the income from the assets is used for charitable functions. It is a factual question whether an asset is held for the production of income or for investment rather than used directly by the organization for charitable purposes. For example, an office building used to provide offices for employees engaged in managing endowment funds for the organization isn't considered an asset used for charitable purposes.*

**Worksheet Line 5.** Calculate the fair market value of the assets of related organizations (as defined below) using the fair market value of assets as of the end of the preceding tax year

that ends with or within the preceding tax year of the organization.

Section 4968 defines "related organization" to include only the following organizations:
- Organizations that control or are controlled by the educational institution;
- Organizations that are controlled by one or more of the same persons who control the educational institution;
- Supported organizations (as defined in section 509(f)(3)); and
- Supporting organizations described in section 509(a)(3) that support the educational institution during the tax year.

When calculating the fair market value of such assets of a related organization, **exclude** (1) assets of any related organization to the extent that such assets are taken into account with respect to another educational institution, and (2) unless the related organization is controlled by the educational institution, or unless the related organization is a supporting organization of the educational institution, omit assets that are not intended, or are not available, for the use or benefit of the educational institution.

**Worksheet Line 6.** Add lines 4 and 5.

**Worksheet Line 7.** Divide line 6 by the daily average number of FTE students.

If line 7 is less than $500,000, the organization is not subject to the section 4968 excise tax on net investment income and the organization should answer "No" on line 16. If line 7 is $500,000 or more, the organization is subject to section 4968 excise tax on net investment income and the organization should answer "Yes" on line 16.

# Part VI. Governance, Management, and Disclosure

Check the box in the heading of Part VI if Schedule O (Form 990 or 990-EZ) contains any information pertaining to this part. All organizations must complete Part VI. Use Schedule O (Form 990 or 990-EZ) to provide required supplemental information as described in this part, and to provide any additional information that the organization considers relevant to this part.

Part VI requests information regarding an organization's **governing body** and management, governance policies, and disclosure practices. Although federal tax law generally doesn't mandate particular management structures, operational policies,

or administrative practices, every organization is required to answer each question in Part VI. For example, all organizations must answer lines 11a and 11b, which ask about the organization's process, if any, it uses to review Form 990, even though the governing body isn't required by federal tax law to review Form 990.

Even though the information on policies and procedures requested in Section B generally isn't required under the Code, the IRS considers such policies and procedures to generally improve tax compliance. The absence of appropriate policies and procedures can lead to opportunities for **excess benefit transactions**, inurement, operation for non-exempt purposes, or other activities inconsistent with exempt status. Whether a particular policy, procedure, or practice should be adopted by an organization depends on the organization's size, type, and culture. Accordingly, it is important that each organization consider the governance policies and practices that are most appropriate for that organization in assuring sound operations and compliance with tax law. For more governance information relating to charities, see *IRS.gov/Charities* and click on *Life Cycle of an Exempt Organization*.

## Section A. Governing Body and Management

**Line 1a.** The **governing body** is the group of one or more persons authorized under state law to make governance decisions on behalf of the organization and its shareholders or members, if applicable. The governing body is, generally speaking, the board of **directors** (sometimes referred to as board of **trustees**) of a corporation or association, or the trustee or trustees of a trust (sometimes referred to as the board of trustees).

Enter the number, as of the end of the organization's tax year, of **members of the governing body** of the organization with power to vote on all matters that come before the governing body (other than when a conflict of interest disqualifies the member from voting). If members of the governing body don't all have the same voting rights, explain material differences on Schedule O (Form 990 or 990-EZ).

If the organization's governing body or governing documents delegated authority to act on its behalf to an executive committee or similar committee with broad authority to act on behalf of the governing body, and the committee held such authority at any time during the organization's **tax year**, describe on Schedule O (Form 990 or 990-EZ) the composition of the committee, whether any of the committee's members aren't on the governing body, and the scope of the committee's authority. The organization need not describe on Schedule O (Form 990 or 990-EZ) delegations of authority that are limited in scope to particular areas or matters, such as delegations to an audit committee, investment committee, or compensation committee of the governing body.

*Example.* A voluntary employees' beneficiary association (VEBA) is a trust under state law. Bank B is the sole trustee of the trust. In completing line 1a, the VEBA will report one voting member of the governing body.

**Line 1b.** Enter the number of **independent voting members of the governing body** as of the end of the organization's tax year. A member of the governing body is considered "independent" only if all four of the following circumstances applied at all times during the organization's tax year.

1. The member wasn't compensated as an **officer** or other employee of the organization or of a **related organization** (see the Instructions for Schedule R (Form 990)) except as provided in the religious exception discussed below. Nor was the member compensated by an unrelated organization or individual for services provided to the filing organization or to a related

organization, if such compensation is required to be reported in Part VII, Section A.

2. The member didn't receive total **compensation** exceeding $10,000 during the organization's tax year (including a short year, regardless of whether such compensation is reported in Part VII) from the organization and related organizations as an **independent contractor**, other than **reasonable compensation** for services provided in the capacity as a member of the governing body. For example, a person who receives reasonable expense reimbursements and reasonable compensation as a director of the organization doesn't cease to be independent merely because he or she also receives payments of $7,500 from the organization for other arrangements.

3. Neither the member, nor any **family member** of the member, was involved in a transaction with the organization (whether directly or indirectly through affiliation with another organization) that is required to be reported on Schedule L (Form 990 or 990-EZ) for the organization's tax year.

4. Neither the member, nor any family member of the member, was involved in a transaction with a taxable or tax-exempt related organization (whether directly or indirectly through affiliation with another organization) of a type and amount that would be reportable on Schedule L (Form 990 or 990-EZ) if required to be filed by the related organization.

**Note.** The independence standard for purposes of Part VI isn't the same as the "absence of conflict of interest" standard for purposes of the rebuttable presumption under Regulations section 53.4958-6, which focuses on conflicts with respect to a particular transaction.

A member of the governing body isn't considered to lack independence merely because of the following circumstances.

1. The member is a donor to the organization, regardless of the amount of the contribution.

2. Religious exception: The member has taken a *bona fide* vow of poverty and either (a) receives **compensation** as an agent of a **religious order** or a section 501(d) religious or apostolic organization, but only under circumstances in which the member doesn't receive taxable income (see Rev. Rul. 77-290, 1977-2 C.B. 26 and Rev. Rul. 80-332, 1980-2 C.B. 34) or (b) belongs to a religious order that receives sponsorship or payments from the organization or a related organization that don't constitute taxable income to the member.

3. The member receives financial benefits from the organization solely in the capacity of being a member of the charitable or other class served by the organization in the exercise of its exempt function, such as being a member of a section 501(c)(6) organization, so long as the financial benefits comply with the organization's terms of membership.

*Example 1.* B is a voting member of the organization's board of directors. B is also a partner with a profits and capital interest greater than 35% in a law firm, C, that charged $120,000 to the organization for legal services in a court case. The transaction between C and the organization must be reported on Schedule L (Form 990 or 990-EZ) because it is a transaction between the organization and an entity of which B is a more-than-35% owner, and because the payment to C from the organization exceeded $100,000 (see the instructions for Schedule L (Form 990 or 990-EZ), Part IV, regarding both factors). Accordingly, B isn't an independent member of the governing body because the $120,000 payment must be reported on Schedule L (Form 990 or 990-EZ) as an indirect business transaction with B. If B were an associate attorney (an employee) rather than a partner with a greater-than-35% interest, and not an officer, director, trustee, or owner of the law firm, the transaction wouldn't affect B's status

as an independent member of the organization's governing body.

**Example 2.** D is a voting member of both the organization's governing body and the governing body of C, a related organization. D's daughter, E, received $40,000 in taxable compensation as a part-time employee of C. D isn't an independent member of the governing body, because E received compensation from C, a related organization to D, and the compensation was of a type (compensation to a family member of a member of C's governing body) and amount (over $10,000) that would be reportable on Schedule L (Form 990 or 990-EZ) if the related organization, C, were required to file Schedule L (Form 990 or 990-EZ).

**Example 3.** C was Board Chair of X school during the tax year. X's bylaws designate the following as officer positions: Board Chair, Secretary, and Treasurer. C set the agenda for board of directors meetings, officiated board meetings, coordinated development of board policy and procedure, was an ex-officio member of all committees of the board, conducted weekly staff meetings, and performed teacher and staff evaluations. X compensated C during the tax year for C's services. This compensation was attributable to C's board and committee activities, and to C's non-director activities involving staff meetings and evaluations. Because X compensated C for services as an officer/employee, C isn't an independent member of the governing body. See Rev. Rul. 68-597 and Rev. Rul. 57-246 for a description of the distinction between director services and officer services.

**Example 4.** Same facts as in *Example 3*, except that the Board Chair position wasn't designated as an officer position under X's bylaws, board resolutions, or state law. Nevertheless, because X compensated C for non-director activities involving staff meetings and evaluations during the tax year, C is deemed to have received compensation as an employee—not as a governing body member— for those activities. Therefore, C isn't an independent member of the governing body.

**Example 5.** Same facts as in *Example 3*, except that: (1) C conducted only director and committee activities during the tax year; (2) C didn't conduct staff meetings and evaluations; and (3) X compensated C a reasonable amount for C's Board Chair services during the tax year, but didn't provide any other compensation to C in any other capacity. C's independence as a Board member isn't compromised by receiving compensation from X as a Board member (and not as an officer or employee). Also see *Examples 2* and *3* in the instructions for Part VII, Section A, line 5, later.

**Reasonable effort.** The organization need not engage in more than a **reasonable effort** to obtain the necessary information to determine the number of **independent voting members of its governing body** and can rely on information provided by such members. For instance, the organization can rely on information it obtains in response to a questionnaire sent annually to each member of the governing body that includes the member's name and title, blank lines for the member's signature and signature date, and the pertinent instructions and definitions for line 1b, to determine whether the member is or isn't independent.

**Line 2.** Answer "Yes," if any of the organization's current **officers**, **directors**, **trustees**, or **key employees**, as reported in Part VII, Section A, had a **family relationship** or business relationship with another of the organization's current officers, directors, trustees, or key employees, as reported in Part VII, Section A, at any time during the organization's **tax year**. For each family and business relationship, identify the persons and describe their relationship on Schedule O (Form 990 or 990-EZ). It is sufficient to enter "family relationship" or "business relationship" without greater detail.

**Business relationship.** Business relationships between two persons include any of the following.

1. One person is employed by the other in a sole proprietorship or by an organization with which the other is associated as a **trustee**, **director**, **officer**, or greater-than-35% owner, even if that organization is tax-exempt. However, don't report a person's employment by the filing organization as a business relationship.

2. One person is transacting business with the other (other than in the ordinary course of either party's business on the same terms as are generally offered to the public), directly or indirectly, in one or more contracts of sale, lease, license, loan, performance of services, or other transaction involving transfers of cash or property valued in excess of $10,000 in the aggregate during the organization's tax year. *Indirect transactions* are transactions with an organization with which the one person is associated as a trustee, director, officer, or greater-than-35% owner. Such transactions don't include charitable contributions to tax-exempt organizations.

3. The two persons are each a director, trustee, officer, or greater-than-10% owner in the same business or investment entity (but not in the same tax-exempt organization).

Ownership is measured by stock ownership (either voting power or value, whichever is greater) of a corporation, profits or capital interest in a partnership or limited liability company (whichever is greater), membership interest in a nonprofit organization, or beneficial interest in a trust. Ownership includes indirect ownership (for example, ownership in an entity that has ownership in the entity in question); there may be ownership through multiple tiers of entities.

**Privileged relationship exception.** For purposes of line 2, a "business relationship" doesn't include a relationship between an attorney and client, a medical professional (including psychologist) and patient, or a priest/clergy and penitent/communicant.

**Example 1.** B is an officer of the organization, and C is a member of the organization's governing body. B is C's sister's spouse. The organization must report that B and C have a family relationship.

**Example 2.** D and E are officers of the organization. D is also a partner in an accounting firm with 300 partners (with a $1/300$ interest in the firm's profits and capital) but isn't an officer, director, or trustee of the accounting firm. D's accounting firm provides services to D in the ordinary course of the accounting firm's business, on terms generally offered to the public, and receives $100,000 in fees during the year. The relationship between D and E isn't a reportable business relationship, either because (1) it is in the ordinary course of business on terms generally offered to the public, or (2) D doesn't hold a greater-than-35% interest in the accounting firm's profits or capital.

**Example 3.** F and G are trustees of the organization. F is the owner and CEO of an automobile dealership. G purchased a $45,000 car from the dealership during the organization's tax year in the ordinary course of the dealership's business, on terms generally offered to the public. The relationship between F and G isn't a reportable business relationship because the transaction was in the ordinary course of business on terms generally offered to the public.

**Example 4.** H and J are members of the organization's board of directors. Both are CEOs of publicly traded corporations and serve on each other's boards. The relationship between H and J is a reportable business relationship because each is a director or officer in the same business entity.

**Example 5.** K is an officer of the organization, and L is on its board of directors. L is a greater-than-35% partner of a law firm

that charged $60,000 during the organization's tax year for legal services provided to K that were worth $600,000 at the law firm's ordinary rates. Thus, the ordinary course of business exception doesn't apply. However, the relationship between K and L isn't a reportable business relationship because of the privileged relationship of attorney and client.

***Reasonable effort.*** The organization isn't required to provide information about a family or business relationship between two **officers**, **directors**, **trustees**, or **key employees** if it is unable to secure the information after making a **reasonable effort** to obtain it. An example of a reasonable effort would be for the organization to distribute a questionnaire annually to each such person that includes the name and title of each person reporting information, blank lines for those persons' signatures and signature dates, and the pertinent instructions and definitions for line 2.

**Line 3.** Answer "Yes," if at any time during the organization's tax year the organization used a management company or other person (other than persons acting in their capacities as **officers, directors, trustees,** or **key employees**) to perform any management duties customarily performed by or under the direct supervision of **officers**, **directors**, **trustees**, or **key employees**. Such management duties include, but aren't limited to, hiring, firing, and supervising personnel, planning or executing budgets or financial operations, or supervising exempt operations or unrelated trades or businesses of the organization. Management duties don't include administrative services (such as payroll processing) that don't involve significant managerial decision making. Management duties also don't include investment management unless the filing organization conducts investment management services for others.

If "Yes," on Schedule O list the name(s) of the management company or companies or other person(s) performing management duties; describe the services they provided to the organization; list any of the organization's current or former officers, directors, trustees, key employees, and **highest compensated employees** listed in Part VII, Section A, who were compensated by the management company or companies or other person(s) during the calendar year ending with or within the organization's tax year; and list the amounts of reportable and other compensation they received from the management company or companies or other person(s) for services provided to the filing organization and related organizations during that year.

**Line 4.** The organization must report significant changes to its organizing or enabling document by which it was created (articles of incorporation, association, or organization; trust instrument; constitution; or similar document), and to its rules governing its affairs commonly known as bylaws (or regulations, operating agreement, or similar document). Report significant changes that weren't reported on any prior Form 990, and that were made before the end of the **tax year**. Don't report changes to policies described or established outside of the organizing or enabling document and bylaws (or similar documents), such as adoption of, or change to, a policy adopted by resolution of the **governing body** that doesn't entail a change to the organizing document or bylaws.

Examples of significant changes to the organizing or enabling document or bylaws include changes to:
• The organization's exempt purposes or mission;
• The organization's name (also see the instructions for *Specific Instructions, Heading, Item B*);
• The number, composition, qualifications, authority, or duties of the governing body's voting members;
• The number, composition, qualifications, authority, or duties of the organization's **officers** or **key employees**;
• The role of the stockholders or membership in governance;
• The distribution of assets upon dissolution;

• The provisions to amend the organizing or enabling document or bylaws;
• The quorum, voting rights, or voting approval requirements of the governing body members or the organization's stockholders or membership;
• The policies or procedures contained within the organizing documents or bylaws regarding **compensation** of officers, directors, trustees, or key employees, conflicts of interest, whistleblowers, or document retention and destruction; and
• The composition or procedures contained within the organizing document or bylaws of an audit committee.

***Example.*** Organization X has a written conflicts of interest policy that isn't contained within the organizing document or bylaws. The policy is changed by board resolution. The policy change doesn't need to be reported on line 4.

Examples of insignificant changes made to organizing or enabling documents or bylaws that aren't required to be reported here include changes to the organization's registered agent with the state and to the required or permitted number or frequency of governing body or member meetings.

Describe significant changes on Schedule O (Form 990 or 990-EZ), but don't attach a copy of the amendments or amended document to Form 990 (or recite the entire amended document verbatim), unless such amended documents reflect a change in the organization's name. See *Specific Instructions, Heading, Item B*, regarding attachments required in the event of a change in the organization's name.

 *An organization must report significant changes to its organizational documents on Form 990, Part VI, rather than in a letter to EO Determinations. EO Determinations no longer issues letters confirming the tax-exempt status of organizations that report significant changes to their organizational documents, though it will, on request, issue an affirmation letter confirming an organization's name change. The IRS will no longer require a new exemption application from a domestic section 501(c) organization that undergoes certain changes of form or place of organization described in Rev. Proc. 2018-15, 2018-9 I.R.B. 379.*

**Line 5.** Answer "Yes," if the organization became aware during the organization's **tax year** of a significant diversion of its assets, whether or not the diversion occurred during the year. If "Yes," explain the nature of the diversion, dollar amounts and/or other property involved, corrective actions taken to address the matter, and pertinent circumstances on Schedule O (Form 990 or 990-EZ), although the person or persons who diverted the assets shouldn't be identified by name.

A *diversion of assets* includes any unauthorized conversion or use of the organization's assets other than for the organization's authorized purposes, including but not limited to embezzlement or theft. Report diversions by the organization's **officers**, **directors**, **trustees**, **employees**, **volunteers**, **independent contractors**, grantees (diverting grant funds), or any other person, even if not associated with the organization other than by the diversion. A diversion of assets doesn't include an authorized transfer of assets for **FMV** consideration, such as to a **joint venture** or for-profit subsidiary in exchange for an interest in the joint venture or subsidiary. For this purpose, a diversion is considered significant if the gross value of all diversions (not taking into account restitution, insurance, or similar recoveries) discovered during the organization's tax year exceeds the lesser of (1) 5% of the organization's gross receipts for its tax year, (2) 5% of the organization's total assets as of the end of its tax year, or (3) $250,000.

**Note.** A diversion of assets can in some cases be inurement of the organization's net earnings. In the case of section 501(c)(3), 501(c)(4), and 501(c)(29) organizations, it can also be an

**excess benefit transaction** taxable under section 4958 and reportable on Schedule L (Form 990 or 990-EZ).

**Line 6.** Answer "Yes," if the organization is organized as a stock corporation, a joint-stock company, a partnership, a **joint venture**, or a limited liability company. Also answer "Yes," if the organization is organized as a non-stock, nonprofit, or not-for-profit corporation or association with members. For purposes of Form 990, Part VI, *member* means (without regard to what a person, including a corporation or other legal entity, is called in the governing documents) any person who, pursuant to a provision of the organization's governing documents or applicable state law, has the right to participate in the organization's governance or to receive distributions of income or assets from the organization. Members don't include governing body members. For purposes of Part VI, a membership organization includes members with the following kinds of rights.

1. The members elect the members of the **governing body** (but not if the persons on the governing body are the organization's only members) or their delegates.

2. The members approve significant decisions of the governing body.

3. The members can receive a share of the organization's profits or excess dues or a share of the organization's net assets upon the organization's dissolution.

Describe on Schedule O (Form 990 or 990-EZ) the classes of members or stockholders with the rights described above.

**Line 7a.** Answer "Yes" on line 7a if at any time during the organization's tax year there were one or more persons (other than the organization's **governing body** itself, acting in such capacity) that had the right to elect or appoint one or more members of the organization's governing body, whether periodically, or as vacancies arise, or otherwise. If "Yes," describe on Schedule O (Form 990 or 990-EZ) the class or classes of such persons and the nature of their rights.

**Line 7b.** Answer "Yes" on line 7b if at any time during the organization's tax year any governance decisions of the organization were reserved to (or subject to approval by) members, stockholders, or persons other than the **governing body**, whether or not any such governance decisions were made during the tax year, such as approval of the governing body's election or removal of members of the governing body, or approval of the governing body's decision to dissolve the organization. If "Yes," describe on Schedule O (Form 990 or 990-EZ) the class or classes of such persons, the decisions that require their approval, and the nature of their voting rights.

**Line 8.** Answer "Yes" on lines 8a and 8b if the organization contemporaneously documented by any means permitted by state law every meeting held and written action taken during the organization's tax year by its **governing body** and committees with authority to act on behalf of the governing body (which ordinarily don't include advisory boards). Documentation permitted by state law can include approved minutes, email, or similar writings that explain the action taken, when it was taken, and who made the decision. For this purpose, *contemporaneous* means by the later of (1) the next meeting of the governing body or committee (such as approving the minutes of the prior meeting) or (2) 60 days after the date of the meeting or written action. If the answer to either line 8a or 8b is "No," explain on Schedule O (Form 990 or 990-EZ) the organization's practices or policies, if any, regarding documentation of meetings and written actions of its governing body and committees with authority to act on its behalf. If the organization had no committees, answer "No" to line 8b.

**Line 9.** The IRS needs a current mailing address to contact the organization's **officers, directors, trustees,** or key **employees.** The organization can use its official mailing address stated on the first page of Form 990 as the mailing address for such persons. Otherwise, enter on Schedule O (Form 990 or 990-EZ) the mailing addresses for such persons that are to be contacted at a different address. Such information will be available to the public.

## Section B. Policies

Answer "Yes" to any question in this section that asks whether the organization had a particular policy or practice only if the organization's governing body (or a committee of the governing body, if the governing body delegated authority to that committee to adopt the policy) adopted the policy by the end of its **tax year**, and if the policy applied to the organization as a whole. If the policy applied only on a division-wide or department-wide level, answer "No." The organization may explain the scope of such policy on Schedule O.

**Line 10a.** Answer "Yes," if the organization had during its tax year any local chapters, local branches, local lodges, or other similar local units or affiliates over which the organization had the legal authority to exercise direct or indirect supervision and control (whether or not in a **group exemption**) and local units that aren't separate legal entities under state law over which the organization had such authority. An affiliate or unit is considered "local" for this purpose if it is responsible for a smaller geographical area than the filing organization is responsible for. Thus, a regional organization would be considered local for a national organization.

*Example 1.* X is a national organization dedicated to the reform of K. X has affiliates in 15 states that conduct activities to carry out the purposes of X at the state level. X has the authority to approve the annual budget of each affiliate. X must answer "Yes" on line 10a.

*Example 2.* Y is a section 170(b)(1)(A)(iii) hospital located in M City. Y appoints a majority of the board of directors of Z, a section 509(a)(3) supporting organization that invests funds and makes grants for the benefit of Y. Although Y controls Z, Z isn't a local affiliate of Y that would require Y to answer "Yes" on line 10a.

**Line 10b.** Written policies and procedures governing the activities of local chapters, branches, and affiliates to ensure their operations are consistent with the organization's tax-exempt purposes are documents used by the organization and its local units to address the policies, practices, and activities of the local unit. Such policies and procedures can include policies and procedures similar to those described in lines 11–16 of this section, whether separate or included as required provisions in the chapter's articles of organization or bylaws, a manual provided to chapters, a constitution, or similar documents. If "No," explain on Schedule O (Form 990 or 990-EZ) how the organization ensures that the local unit's activities are consistent with the organization's tax-exempt purposes.

**Note.** The **central organization** (parent organization) named in a **group exemption** letter is required to have general supervision or control over its **subordinate organizations** as a condition of the group exemption.

**Line 11a.** Answer "Yes" only if a complete copy of the organization's final Form 990 (including all required schedules), as ultimately filed with the IRS, was provided to each person who was a **voting member of the governing body** at the time the Form 990 was provided, whether in paper or electronic form, before its filing with the IRS. The organization can answer "Yes" if it emailed all of its governing body members a link to a password-protected website on which the entire Form 990 can be viewed, and noted in the email that the Form 990 is available

for review on that site. However, answer "No" if the organization merely informed its governing body members that a copy of the Form 990 is available upon request. Answer "No" if the organization redacted or removed any information from the copy of its final Form 990 that it provided to its governing body members before filing the form. For example, answer "No" if the organization, at the request of a donor, redacted the name and address of that donor from the copy of its Form 990, Schedule B, that it provided to its governing body members. Under those circumstances, the organization may explain on Schedule O why it answered "No" to line 11a.

**Line 11b.** Describe on Schedule O (Form 990 or 990-EZ) the process, if any, by which any of the organization's **officers, directors, trustees,** board committee members, or management reviewed the prepared Form 990, whether before or after it was filed with the IRS, including specifics about who conducted the review, when they conducted it, and the extent of any such review. If no review was or will be conducted, enter "No review was or will be conducted."

*Example.* The return preparer emails a copy of the final version of Form 990 to each Board member before it was filed. However, no Board member undertakes any review of the form either before or after filing. Because such a copy of the final version of the form was provided to each voting member of the organization's governing body before it was filed, the organization can answer "Yes" even though no review took place. The organization must describe its Form 990 review process (or lack thereof) on Schedule O (Form 990 or 990-EZ).

**Line 12a.** Answer "Yes," if as of the end of the organization's tax year the organization had a written **conflict of interest policy**. A conflict of interest policy defines conflicts of interest, identifies the classes of individuals within the organization covered by the policy, facilitates disclosure of information that can help identify conflicts of interest, and specifies procedures to be followed in managing conflicts of interest. A *conflict of interest* arises when a person in a position of authority over an organization, such as an **officer**, **director**, manager, or **key employee** can benefit financially from a decision he or she could make in such capacity, including indirect benefits such as to family members or businesses with which the person is closely associated. For this purpose, a conflict of interest doesn't include questions involving a person's competing or respective duties to the organization and to another organization, such as by serving on the boards of both organizations, that don't involve a material financial interest of, or benefit to, such person.

*Example.* B is a member of the governing body of X Charity and of Y Charity, both of which are section 501(c)(3) public charities with different charitable purposes. X Charity has taken a public stand in opposition to a specific legislative proposal. At an upcoming board meeting, Y Charity will consider whether to publicly endorse the same specific legislative proposal. While B may have a conflict of interest in this decision, the conflict doesn't involve a material financial interest of B's merely as a result of Y Charity's position on the legislation.

**Line b.** Answer "Yes," if the organization's **officers**, **directors**, **trustees**, and **key employees** are required to disclose or update annually (or more frequently) information regarding their interests and those of their **family members** that could give rise to conflicts of interest, such as a list of family members, substantial business or investment holdings, and other transactions or affiliations with businesses and other organizations and those of family members.

**Line 12c.** If "Yes" on line 12c, describe on Schedule O (Form 990 or 990-EZ) the organization's practices for monitoring proposed or ongoing transactions for conflicts of interest and dealing with potential or actual conflicts, whether discovered before or after the transaction has occurred. The description

should include an explanation of which persons are covered under the policy, the level at which determinations of whether a conflict exists are made, and the level at which actual conflicts are reviewed. Also explain any restrictions imposed on persons with a conflict, such as prohibiting them from participating in the **governing body**'s deliberations and decisions in the transaction.

**Lines 13 and 14.** A whistleblower policy encourages staff and volunteers to come forward with credible information on illegal practices or violations of adopted policies of the organization, specifies that the organization will protect the individual from retaliation, and identifies those staff or board members or outside parties to whom such information can be reported. A document retention and destruction policy identifies the record retention responsibilities of staff, **volunteers**, board members, and outsiders for maintaining and documenting the storage and destruction of the organization's documents and records.

 *Certain federal or state laws provide protection against whistleblower retaliation and prohibit destruction of certain documents. For instance, while the federal Sarbanes-Oxley legislation generally doesn't pertain to tax-exempt organizations, it does impose criminal liability on tax-exempt as well as other organizations for (1) retaliation against whistleblowers that report federal offenses, and (2) for destruction of records with the intent to obstruct a federal investigation. See 18 U.S.C. sections 1513(e) and 1519. Also note that an organization is required to keep books and records relevant to its tax exemption and its filings with the IRS. Some states provide additional protection for whistleblowers.*

**Line 15.** Answer "Yes" on line 15a if, during the tax year, the organization (not a **related organization** or other third party) used a process for determining **compensation** (reported on Part VII or Schedule J (Form 990)) of the CEO, executive director, or other person who is the **top management official**, that included all of the following elements.

- Review and approval by a **governing body** or compensation committee, provided that persons with a *conflict of interest* regarding the compensation arrangement at issue weren't involved. For purposes of this question, a member of the governing body or compensation committee has a *conflict of interest* regarding a compensation arrangement if any of the following circumstances apply.

1. The member (or a family member of the member) is participating in or economically benefitting from the compensation arrangement.

2. The member is in an employment relationship subject to the direction or control of any person participating in or economically benefitting from the compensation arrangement.

3. The member receives compensation or other payments subject to approval by any person participating in or economically benefitting from the compensation arrangement.

4. The member has a material financial interest affected by the compensation arrangement.

5. The member approves a transaction providing economic benefits to any person participating in the compensation arrangement, who in turn has approved or will approve a transaction providing economic benefits to the member. See Regulations section 53.4958-6(c)(1)(iii).
- Use of data as to comparable compensation for similarly qualified persons in functionally comparable positions at similarly situated organizations.
- Contemporaneous documentation and recordkeeping for deliberations and decisions regarding the compensation arrangement.

Answer "Yes" on line 15b if the process for determining compensation of one or more **officers** or **key employees** other than the **top management official** included all of the elements listed above.

If the answer was "Yes" on line 15a or 15b, describe the process on Schedule O (Form 990 or 990-EZ), identify the offices or positions for which the process was used to establish compensation of the persons who served in those offices or positions, and enter the year in which this process was last undertaken for each such person.

If the organization didn't compensate its CEO, executive director, or top management official during the **tax year**, answer "No" to line 15a. If the organization didn't compensate any of its other officers or key employees during the tax year, even if such employees were compensated by a related organization, answer "No" to line 15b.

**Line 16.** Answer "Yes" on line 16a if at any time during its tax year the organization invested in, contributed assets to, or otherwise participated in a joint venture or similar arrangement with one or more taxable persons. For purposes of line 16, a joint venture or similar arrangement (or a "venture or arrangement") means any joint ownership or contractual arrangement through which there is an agreement to jointly undertake a specific business enterprise, investment, or exempt-purpose activity without regard to (1) whether the organization controls the venture or arrangement, (2) the legal structure of the venture or arrangement, or (3) whether the venture or arrangement is treated as a partnership for federal income tax purposes, or as an association, or corporation for federal income tax purposes. Disregard ventures or arrangements that meet both of the following conditions.

1. 95% or more of the venture's or arrangement's income for its tax year ending with or within the organization's **tax year** is described in section 512(b)(1)–(5) (including unrelated debt-financed income).

2. The primary purpose of the organization's contribution to, or investment or participation in, the venture or arrangement is the production of income or appreciation of property.

Answer "Yes" on line 16b if, as of the end of the organization's tax year, the organization had both:

1. Followed a written policy or procedure that required the organization to negotiate, in its transactions and arrangements with other members of the venture or arrangement, such terms and safeguards as are adequate to ensure that the organization's exempt status is protected, and

2. Taken steps to safeguard the organization's exempt status for the venture or arrangement.

Some examples of safeguards include the following.
• Control over the venture or arrangement sufficient to ensure that the venture furthers the exempt purpose of the organization.
• Requirements that the venture or arrangement give priority to exempt purposes over maximizing profits for the other participants.
• The venture or arrangement not engage in activities that would jeopardize the organization's exemption (such as political intervention or substantial lobbying for a section 501(c)(3) organization).
• All contracts entered into with the organization be on terms that are at arm's length or more favorable to the organization.

## Section C. Disclosure

**Line 17.** List the states with which a copy of this Form 990 is required to be filed, even if the organization hasn't yet filed Form 990 with that state. Use Schedule O (Form 990 or 990-EZ) if additional space is necessary.

 *Some states require or permit the filing of Form 990 to fulfill state exempt organization or charitable solicitation reporting requirements.*

**Line 18.** Check the box for "Own website" only if the organization posted an exact reproduction (other than for information permitted by law to be withheld from public disclosure, such as the names and addresses of contributors listed on Form 990, Schedule B) of its Form 990, Form 990-T (for section 501(c)(3) organizations), or application for recognition of exemption (Form 1023, 1023-EZ, 1024, or 1024-A) on its website during its **tax year**. Check the box for "Another's website" only if the organization provided to another individual or organization and that other individual or organization posted on its website, an exact reproduction (other than for information permitted by law to be withheld from public disclosure, such as the names and addresses of contributors listed on Form 990, Schedule B) of any such forms during the tax year.

If "Other" is checked, explain on Schedule O (Form 990 or 990-EZ). Also explain on Schedule O (Form 990 or 990-EZ) if the organization didn't make publicly available upon request any of Forms 1023, 1023-EZ, 1024, 1024-A, 990, or 990-T that are subject to public inspection requirements. Exempt organizations must make available for public inspection their Form 1023, 1023-EZ, 1024, or 1024-A application for recognition of exemption. Applications filed before July 15, 1987, need not be made publicly available unless the organization had a copy on July 15, 1987. Organizations that file Form 990 must make it publicly available for a period of three years from the date it is required to be filed (including extensions) or, if later, is actually filed. Organizations aren't required to make publicly available the names and addresses of contributors (as set forth on Schedule B (Form 990, 990-EZ, or 990-PF), and on Form 1023, 1023-EZ, 1024, or 1024-A). Section 501(c)(3) organizations that file Form 990-T are also required to make their Form 990-T publicly available for the corresponding three-year period for forms filed after August 17, 2006 (unless the form was filed solely to request a refund of telephone excise taxes). See *Appendix D* for more information on public inspection requirements.

**Line 19.** Explain on Schedule O (Form 990 or 990-EZ) whether the organization made its governing documents (for example, articles of incorporation, constitution, bylaws, trust instrument), **conflict of interest policy**, and **financial statements** (whether or not audited) available to the general public during the tax year, and if so, how it made them available to the public (for example, posting on the organization's website, posting on another website, providing copies on request, inspection at an office of the organization, etc.). If the organization didn't make any of these documents available to the public, enter "No documents available to the public."

Federal tax law doesn't require that such documents be made publicly available unless they were included on a form that is publicly available (such as Form 1023, 1023-EZ, 1024, or 1024-A).

**Line 20.** Provide the name of the person who possesses the organization's books and records, and the business address and telephone number of such person (or of the organization if the books and records are kept by such person at a personal residence). If the books and records are kept at more than one location, provide the name, business address, and telephone number of the person responsible for coordinating the maintenance of the books and records. The organization isn't required to provide the address or telephone number of a personal residence of an individual. If provided, however, such information will be available to the public.

# Part VII. Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors

Check the box in the heading of Part VII if Schedule O (Form 990 or 990-EZ) contains any information pertaining to this part. **Overview.** Form 990, Part VII, requires the listing of the organization's current or former **officers**, **directors**, **trustees**, **key employees**, and **highest compensated employees**, and current **independent contractors**, and reporting of certain **compensation** information relating to such persons.

All organizations are required to complete Part VII, and when applicable, Schedule J (Form 990), for certain persons. Compensation must be reported for the calendar year ending with or within the organization's **tax year**. In some cases, persons are reported in Part VII or Schedule J (Form 990) only if their **reportable compensation** (as explained below) and "other compensation" (as explained below) from the organization and **related organizations** (as explained in the *Glossary* and in the Instructions for Schedule R (Form 990)) exceeds certain thresholds. In some cases, compensation from an **unrelated organization** must be reported on Form 990. See the instructions for Part VII, Section A, line 5, later. The amount of compensation reported on Form 990, Part VII, for a listed person may differ from the amount reported on Form 990, Part IX, line 5, for that person due to factors such as a different accounting period (calendar vs. **fiscal year**) or a different accounting method.

Form 990, Part VII, relies on definitions of reportable compensation and other compensation. *Reportable compensation* generally refers to compensation reported on Form W-2, box 1 or 5 (whichever amount is greater); and Form 1099-MISC, boxes 6 and 7. Organizations must also report other compensation in Part VII, as discussed in the instructions to Part VII, Section A, column (F), later.

Organizations must report compensation for both current and former officers, directors, trustees, key employees, and highest compensated employees. The distinction between current and former such persons is discussed below. The determination of "former" uses a 5-year look-back period.

Organizations must report compensation from themselves and from related organizations, which generally consist of parents, subsidiaries, brother/sister organizations, supporting organizations, supported organizations, sponsoring organizations of voluntary employees' beneficiary associations (VEBAs), and contributing employers to VEBAs. See the Instructions for Schedule R (Form 990) for a fuller discussion of related organizations.

Part VII, Section A, requires reporting of officers, directors, trustees, key employees, and up to five of the organization's highest compensated employees. Compensation from related organizations must also be taken into account in determining a person's compensation and reported in Part VII, Section A, columns (E) and (F).

Up to 25 persons can be reported on the Form 990, Part VII, Section A table. If more space is needed to enter additional persons, use as many duplicates of the Section A table as are needed, and change the numbering to reflect additional persons. (For example, if five additional persons are reported on a duplicate Section A table, change the numbers along the left hand margin of the table from 1–5 to 26–30.)

Section B requires reporting of the five highest compensated independent contractors. Section B doesn't require reporting of compensation from related organizations.

## Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees

**Overview.** Organizations are required to enter in Part VII, Section A, the following **officers**, **directors**, **trustees**, and **employees** of the organization whose **reportable compensation** from the organization and **related organizations** (as explained in the *Glossary* and the Instructions for Schedule R (Form 990)), exceeded the following thresholds for the tax year.

- Current officers, directors, and trustees (no minimum compensation threshold).
- Current **key employees** (over $150,000 of reportable compensation).
- Current five highest compensated employees other than officers, directors, trustees, or listed key employees (over $100,000 of reportable compensation).
- Former officers, key employees, and **highest compensated employees** (over $100,000 of reportable compensation, with special rules for former highest compensated employees).
- Former directors and trustees (over $10,000 of reportable compensation in the capacity as a former director or trustee).

Special rules apply to **disregarded entities** of which the organization is the sole member. See instructions for *Disregarded Entities*, later.

To determine which persons are current or former officers, directors, trustees, key employees, or highest compensated employees, see the instructions for Part VII, Section A, column (C), later.

**Order of Reporting.** List the persons required to be included in Part VII, Section A, in order from highest to lowest compensation based on the sum of columns (D), (E), and (F) for each person. [When the amount of total compensation is the same, list the person in the following order: individual trustees or directors, institutional trustees, officers, key employees, highest compensated employees, and former such persons.

**Fiscal year filers.** To determine which persons are listed in Part VII, Section A, the organization must use the calendar year ending with or within the organization's **fiscal year** for some (those whose **compensation** must exceed minimum thresholds in order to be reported) and the fiscal year for others. Report officers, directors, and trustees that served at any time during the fiscal year as "current" **officers**, **directors**, and **trustees**. Report the following persons based on **reportable compensation** and status for the calendar year ending within the fiscal year.

- Current **key employees** (over $150,000 of **reportable compensation** from the organization and **related organizations**).
- Current five **highest compensated employees** (over $100,000 of reportable compensation from the organization and related organizations), other than current officers, directors, trustees, and key employees.
- Former officers, key employees, and five highest compensated employees (over $100,000 of reportable compensation from the organization and related organizations, with special rules for former highest compensated employees).
- Former directors and trustees (over $10,000 of reportable compensation for services in the capacity as director or trustee of the organization, from the organization and related organizations).

Report compensation on Form 990, Part VII, for the calendar year ending within the organization's **fiscal year**, including that of current officers, directors, and trustees, even if the fiscal year is used to determine which such persons must be listed in Part VII.

**Director or trustee.** A "director or trustee" is a member of the organization's **governing body**, but only if the member has voting rights. A director or trustee that served at any time during the organization's **tax year** is deemed a current director or trustee. Members of advisory boards that don't exercise any governance authority over the organization aren't considered directors or trustees.

An "institutional trustee" is a trustee that isn't an individual or natural person but an organization. For instance, a bank or trust company serving as the trustee of a trust is an institutional trustee.

**Officer.** An **officer** is a person elected or appointed to manage the organization's daily operations. An officer that served at any time during the organization's **tax year** is deemed a current officer. The officers of an organization are determined by reference to its organizing document, bylaws, or resolutions of its **governing body**, or as otherwise designated consistent with state law, but, at a minimum, include those officers required by applicable state law. Officers can include a president, vice-president, secretary, treasurer and, in some cases, a Board Chair. In addition, for purposes of Form 990, including Part VII, Section A, and Schedule J (Form 990), treat as an officer the following persons, regardless of their titles.

1. *Top management official.* The person who has ultimate responsibility for implementing the decisions of the governing body or for supervising the management, administration, or operation of the organization; for example, the organization's president, CEO, or executive director.

2. *Top financial official.* The person who has ultimate responsibility for managing the organization's finances; for example, the organization's treasurer or chief financial officer.

If ultimate responsibility resides with two or more individuals (for example, co-presidents or co-treasurers), who can exercise such responsibility in concert or individually, then treat all such individuals as officers.

**Key employee.** For purposes of Form 990, a current **key employee** is an **employee** of the organization (other than an **officer**, **director**, or **trustee**) who meets all three of the following tests, applied in the following order:

1. *$150,000 Test:* Receives **reportable compensation** from the organization and all **related organizations** in excess of $150,000 for the **calendar year** ending with or within the organization's **tax year**.

2. *Responsibility Test:* At any time during the calendar year ending with or within the organization's **tax year**:

a. Has responsibilities, powers, or influence over the organization as a whole that is similar to those of officers, directors, or trustees;

b. Manages a discrete segment or activity of the organization that represents 10% or more of the activities, assets, income, or expenses of the organization, as compared to the organization as a whole; or

c. Has or shares authority to control or determine 10% or more of the organization's capital expenditures, operating budget, or compensation for **employees**.

3. *Top 20 Test:* Is one of the 20 employees other than officers, directors, and trustees who satisfy the *$150,000 Test* and *Responsibility Test* with the highest reportable compensation from the organization and **related organizations** for the calendar year ending with or within the organization's **tax year**.

If the organization has more than 20 individuals who meet the *$150,000 Test* and *Responsibility Test*, report as **key employees** only the 20 individuals that have the highest reportable compensation from the organization and related

organizations. Note that any others, up to five, might be reportable as current **highest compensated employees**, with over $100,000 in reportable compensation. Use the calendar year ending with or within the organization's tax year for determining the organization's current key employees.

An individual that isn't an employee of the organization (or of a **disregarded entity** of the organization) is nonetheless treated as a key employee if he or she serves as an officer or director of a disregarded entity of the organization and otherwise meets the standards of a key employee set forth above. See *Disregarded Entities*, later, for treatment of certain employees of a disregarded entity as a key employee of the organization.

If an employee is a key employee of the organization for only a portion of the year, that person's entire compensation for the calendar year ending with or within the organization's tax year, from both the filing organization and related organizations, should be reported in Part VII, Section A.

**Management companies** and similar entities that are **independent contractors** shouldn't be reported as key employees. The organization's **top management official** and **top financial official** are deemed officers rather than key employees.

In the examples set forth below, assume the individual involved is an employee that satisfies the *$150,000 Test* and *Top 20 Test* and isn't an **officer**, **director**, or **trustee**.

*Example 1.* T is a large section 501(c)(3) university. L is the dean of the law school of T, which generates more than 10% of the revenue of T, including contributions from alumni and foundations. Although L doesn't have ultimate responsibility for managing the university as a whole, L meets the *Responsibility Test* and is reportable as a key employee of T.

*Example 2.* S chairs a small academic department in the College of Arts and Sciences of the same university, T, described above. As department chair, S supervises faculty in the department, approves the course curriculum, and oversees the operating budget for the department. The department represents less than 10% of the university's activities, assets, income, expenses, capital expenditures, operating budget, and employee compensation. Under these facts and circumstances, S doesn't meet the *Responsibility Test* and isn't a key employee of T.

*Example 3.* U is a large acute-care section 501(c)(3) hospital. U employs X as a radiologist. X gives instructions to staff for the radiology work X conducts, but X doesn't supervise other U employees, manage the radiology department, or have or share authority to control or determine 10% or more of U's capital expenditures, operating budget, or employee compensation. Under these facts and circumstances, X doesn't meet the *Responsibility Test* and isn't a key employee of U.

*Example 4.* W is a cardiologist and head of the cardiology department of the same hospital U described above. The cardiology department is a major source of patients admitted to U and consequently represents more than 10% of U's income, as compared to U as a whole. As department head, W manages the cardiology department. Under these facts and circumstances, W meets the *Responsibility Test* and is a key employee of U.

**Five highest compensated employees.** The organization is required to enter its current five **highest compensated employees** whose **reportable compensation** combined from the organization and **related organizations** is greater than $100,000 for the calendar year ending with or within the organization's **tax year** and who aren't also current **officers**, **directors**, **trustees**, or **key employees** of the organization. Such individuals are the "current" five highest compensated employees. These can include persons who meet some but not

all of the tests for key employee status. The organization isn't required to enter more than the top five such persons, ranked by amount of reportable compensation. Use the calendar year ending with or within the organization's tax year for determining the organization's current five highest compensated employees.

**Example.** X is an employee of Y University and isn't an officer, director, or trustee. X's reportable compensation for the calendar year exceeds $150,000, and X meets the *Responsibility Test*. X would qualify as a key employee of Y, except that 20 employees had higher reportable compensation and otherwise qualify as key employees. Therefore, those 20 are listed as the organization's key employees. X has the highest reportable compensation from the organization and related organizations of all employees other than the 20 key employees. X must be listed as one of the organization's five highest compensated employees.

**$10,000 exceptions for reporting compensation.** Report compensation paid or accrued by the filing organization and **related organizations**. Special rules apply for reporting **reportable compensation** and other compensation.

All reportable compensation paid by the filing organization must be reported. Reportable compensation paid by a related organization isn't required to be reported unless (1) it is $10,000 or more for the calendar year ending with or within the organization's tax year (the "$10,000-per-related-organization exception") or (2) it is paid for past services to the filing organization in the person's capacity as a former director or trustee.

A particular item of other compensation (such as listed in the compensation table, later) paid or accrued by the filing organization isn't required to be reported unless (1) it is $10,000 or more for the calendar year ending with or within the organization's tax year (the "$10,000-per-item exception") or (2) it is one of the five types of compensation (generally constituting deferred compensation (including retirement plan benefits) and health benefits) that must be reported regardless of amount (see the instructions for column (F)). The same principles apply to items of other compensation paid or accrued by a related organization (applied separately to each related organization).

 *The $10,000 exceptions don't apply to reporting compensation on Schedule J (Form 990), Part II.*

**Reportable compensation.** Reportable compensation consists of:
• For **officers** and other **employees**, amounts required to be reported on Form W-2, box 1 or 5 (whichever amount is greater) (as well as Form 1099-MISC, boxes 6 and 7 if the officer or employee is also compensated as an independent contractor of the filing organization or a related organization);
• For **directors** and individual **trustees**, amounts required to be reported on Form 1099-MISC, boxes 6 and 7 for director and other independent contractor services to the organization or a related organization, plus amounts required to be reported on Form W-2, box 1 or 5 (whichever amount is greater) if also compensated as an officer or employee of the filing organization or a related organization; and
• For **institutional trustees**, fees for services paid pursuant to a contractual agreement or statutory entitlement. While the compensation of institutional trustees must be reported on Form 990, Part VII, it need not be reported on Schedule J (Form 990).

If the organization didn't file a Form 1099-MISC because the amounts paid were below the threshold reporting requirement, then include and report the amount actually paid. For a full definition of **reportable compensation**, see *Glossary*.

 *Corporate **officers** are considered **employees** for purposes of Form W-2 reporting, unless they perform no services as officers, or perform only minor services and neither receive nor are entitled to receive, directly or indirectly, any **compensation**. Corporate **directors** are considered **independent contractors**, not employees, and director compensation, if any, generally is required to be reported on Form 1099-MISC. See Regulations section 31.3401(c)-1(f).*

For certain kinds of employees and for retirees, the amount in box 5 of Form W-2 can be zero or less than the amount in Form W-2, box 1. For instance, recipients of disability pay, certain members of the clergy, and religious workers who aren't subject to social security and Medicare taxes as employees can receive compensation that isn't reported in box 5. In that case, the amount required to be reported on Form W-2, box 1, must be reported as reportable compensation.

If an officer, director, trustee, key employee, or highest compensated employee of the organization is a foreign person who received U.S. source income during the calendar year ending with or within the organization's **tax year** from the filing organization or a **related organization**, and if such income was reported on Form 1042-S, Foreign Person's U.S. Source Income Subject to Withholding, box 2, then treat this income as **reportable compensation** and report it in Part VII, Section A, column (D) or (E). For foreign persons for whom compensation reporting on Form W-2, Form 1099-MISC, or Form 1042-S isn't required, treat as reportable compensation in column (D) or (E) the total value of the compensation paid in the form of cash or property during the calendar year ending with or within the organization's tax year. Report other compensation from foreign organizations as "other compensation" in column (F).

To determine whether an individual received more than $100,000 (or $150,000) in reportable compensation in the aggregate from the filing organization (and, as discussed later, certain third parties such as common paymasters, payroll/reporting agents, and certain **unrelated organizations**, compensation from which is considered compensation from the filing organization) and **related organizations**, add the following amounts.
• The amount reported on Form W-2, box 1 or 5 (whichever amount is greater), and/or Form 1099-MISC, boxes 6 and 7, issued to the individual by the organization.
• Amounts reported on Form W-2, box 1 or 5 (whichever amount is greater), or Form 1099-MISC, boxes 6 and 7, issued to the individual by each related organization that reported $10,000 or more.

To determine whether an individual received solely in his or her capacity as a former trustee or director of the organization more than $10,000 in reportable compensation for the calendar year ending with or within the organization's **tax year**, in the aggregate, from the organization and all related organizations (and thus must be reported on Form 990, Part VII and Schedule J (Form 990), Part II), add the amounts reported on all Forms 1099-MISC, boxes 6 and 7, and, if relevant, all Forms W-2, box 1 or 5 (whichever amount is greater) issued to the individual by the organization and all related organizations for the calendar year ending with or within the organization's tax year. Report such amounts only to the extent that such amounts relate to the individual's past services as a trustee or director of the organization, and don't disregard any payments from a related organization if below $10,000, for such purpose.

**Other compensation.** Other compensation includes **compensation** other than **reportable compensation**, including **deferred compensation** not currently reportable on Form W-2, box 1 or 5 or Form 1099-MISC, boxes 6 and 7, and certain nontaxable benefits, as discussed in detail in the instructions for Schedule J, (Form 990), Part II. See the instructions for other compensation reported in column (F), later, which includes a

table to show where and how to report certain types of compensation in Part VII, Section A, and Schedule J (Form 990).

**Note.**  Don't report the same item of compensation in more than one column of Part VII, Section A, for the tax year.

**Disregarded entities.  Disregarded entities** (such as a limited liability company that is wholly owned by the organization and not treated as a separate entity for federal tax purposes) are generally treated as part of the organization rather than as **related organizations** for purposes of Form 990, including Part VII and Schedule J (Form 990). A person isn't considered an **officer** or **director** of the organization by virtue of being an officer or director of a disregarded entity, but he or she can qualify as a **key employee** or **highest compensated employee** of the organization. An officer, director, or employee of a disregarded entity is a key employee of the organization if he or she meets the *$150,000 Test* and *Top 20 Test* for the filing organization as a whole, and if, for the *Responsibility Test*, the person has responsibilities, powers, or influence over a discrete segment or activity of the disregarded entity that represents at least 10 percent of the activities, assets, income, or expenses of the filing organization as a whole, or has or shares authority to control or determine the disregarded entity's capital expenditures, operating budget, or compensation for employees that is at least 10 percent of the filing organization's respective items as a whole. If an officer or director of a disregarded entity also serves as an officer, director, trustee, or key employee of the organization, report this individual as an officer, director, trustee, or key employee, as applicable, of the organization, and add the compensation, if any, paid by the disregarded entity to this individual to the compensation, if any, paid directly by the organization to this individual. Report the total aggregate amount in column (D).

 *A disregarded entity generally must use the **EIN** of its sole member. An exception applies to employment taxes: for wages paid to **employees** of a disregarded entity, the disregarded entity must file separate employment tax returns and use its own EIN on such returns. See Regulations sections 301.6109-1(h) and 301.7701-2(c)(2)(iv).*

**Management companies.  Management companies**, as **independent contractors**, are reported on Form 990, Part VII (if at all) only in Section B. *Independent Contractors*, and aren't reported on (Form 990), Part II. If a current or former **officer, director, trustee**, or **key employee** has a relationship with a management company that provides services to the organization, then the relationship may be reportable on Schedule L (Form 990 or 990-EZ), Part IV. A key employee of a management company should be reported as a current officer of the filing organization if he or she is the filing organization's **top management official** or **top financial official** or is designated as an officer of the filing organization. However, that person doesn't qualify as a key employee of the filing organization solely on the basis of being a key employee of the management company. If a current or former officer, director, trustee, key employee, or **highest compensated employee** received **compensation** from a management company that provided services to the organization and was a **related organization** during the **tax year**, then the individual's compensation from the management company must be reported on Form 990, Part VII, Section A, columns (E) and (F). If the management company wasn't a related organization during the tax year, the individual's compensation from the management company isn't reportable in Part VII, Section A. Questions pertaining to management companies also appear on Form 990, Part VI, line 3, and Schedule H (Form 990), Part IV.

**Employee leasing companies and professional employer organizations.**  In some cases, instead of hiring a management

company, an exempt organization "leases" one or more employees from another company, which may be in the business of leasing employees. Alternatively, the organization may enter into an agreement with a professional employer organization to perform some or all of the federal employment tax withholding, reporting, and payment functions related to workers performing services for the organization. The organization should treat employees of an employee leasing company, a professional employer organization (whether or not certified under the new *Certified Professional Employer Organization*, or a management company as the organization's own employees if such persons are common law employees of the filing organization under state law. Otherwise, the compensation paid to leasing companies and professional employer organizations should be treated like compensation to a management company for purposes of Form 990 compensation reporting.

Compensation from common paymasters, payroll/reporting agents, and unrelated organizations or individuals (except for compensation from **management companies** or leasing companies, and compensation described in *Taxable organization employee exception*, later) must be treated as reportable compensation in determining whether the dollar thresholds are met for reporting (1) current or former employees as current or former key employees or highest compensated employees, or (2) former officers, directors, or trustees, on Form 990, Part VII, Section A. If the Form 990, Part VII thresholds for reporting are met, then the compensation from the common paymaster, payroll/reporting agent, or unrelated organization or individual must be reported as compensation from the filing organization in Part VII. The compensation may also need to be reported on Form 990, Part II (see the instructions for Form 990, Part VII, Section A, line 5).

 *The use of a leasing company, common paymaster, payroll/reporting agent, or other payroll service provider doesn't relieve an employer of its obligation for employment tax liabilities. The IRS strongly suggests that the organization doesn't change its address to that of its payroll service provider or other third party payer. Doing so could limit the organization's ability to stay informed of tax matters, because the IRS sends correspondence regarding problems with an employer's account to the employer's address of record. Alternatively, an employer may grant permission for a third party payer to receive copies of IRS correspondence by using Form 8822-B, Form 2848, or Form 8655, as appropriate.*

**Compensation from unrelated organizations or individuals.** If a current or former **officer, director, trustee, key employee,** or **highest compensated employee** received or accrued compensation or payments from an **unrelated organization** (other than from **management companies** or leasing companies, as discussed above) or an individual for services rendered to the filing organization in that person's capacity as an officer, director, trustee, or employee of the filing organization, then the filing organization must report (subject to the *Taxable organization employee exception*, next) such amounts as **compensation** from the filing organization if it has knowledge of the arrangement, whether or not the unrelated organization or the individual treats the amounts as compensation, grants, contributions, or otherwise. Report such compensation from unrelated organizations in Section A, columns (D) and (F), as appropriate. If the organization can't distinguish between reportable compensation and other compensation from the unrelated organization, report all such compensation in column (D).

*Taxable organization employee exception.*  Don't report as compensation any payments from an unrelated taxable organization that employs the individual and continues to pay the

individual's regular compensation while the individual provides services without charge to the filing organization, but only if the unrelated organization doesn't treat the payments as a charitable contribution to the filing organization.

**Column (A).**  For each person required to be listed, enter the name on the top of each row and the person's title or position with the organization on the bottom of the row. If more than one title or position, list all. List persons in the following order: individual **trustees** or **directors**, **institutional trustees**, **officers**, **key employees**, **highest compensated employees**, and former such persons. List each person on only one line.

**Column (B).**  For each person listed in column (A), estimate the average hours per week devoted to the organization during the year. Entry of a specific number is required for a complete answer. Enter "-0-" if applicable. Don't include statements such as "as needed," "as required," or "40+." If the average is less than one hour per week, then the organization can enter a decimal rounded to the nearest tenth (for example, 0.2 hours per week).

For each person listed in column (A), list below the dotted line an estimate of the average hours per week (if any) devoted to related organizations.

**Column (C).**  For each person listed in column (A), check the box that reflects the person's position with the organization during the tax year. Don't check more than one box, unless the person was both an officer and a director/trustee of the organization during the tax year. For a former **officer, director, trustee, key employee,** or **highest compensated employee,** check only the "Former" box and indicate the former status in the person's title.

*"Current" officers, directors, trustees, key employees, and highest compensated employees.*  A "current" **officer, director,** or **trustee** is a person that was an officer, director, or trustee at any time during the organization's **tax year.** A "current" **key employee** or **highest compensated employee** is a person who was an employee at any time during the calendar year ending with or within the organization's tax year, and was a key employee or highest compensated employee for such calendar year.

If the organization files Form 990 based on a **fiscal year,** use the fiscal year to determine the organization's "current" officers, directors, and trustees. Whether or not the organization files Form 990 based on a **fiscal year,** use the calendar year ending with or within the organization's **tax year** to determine the organization's "current" **key employees** and five highest compensated employees.

Don't check the "Former" box if the person was a current officer, director, or trustee at any time during the organization's tax year, or a current key employee or among the five highest compensated employees for the calendar year ending with or within the organization's tax year. A current employee (other than a current officer, director, trustee, key employee, or highest compensated employee) can be reported on Form 990, Part VII, and Schedule J (Form 990), Part II: (1) as a former director or trustee because he or she served as a director or trustee within the last 5 years; and received more than $10,000 in **reportable compensation** for the calendar year ending with or within the organization's tax year in his or her capacity as a former director or trustee, or (2) a former officer or key employee (but not as a former highest compensated employee) because he or she served as an officer or key employee within the last 5 years and received more than $100,000 of reportable compensation for the calendar year ending with or within the organization's tax year. In such a case, indicate the individual's former position in his or her titles (for example, "former president").

*"Former" officers, directors, trustees, key employees, and highest compensated employees.*  Check the "Former"

box for former officers, directors, trustees, and key employees only if both conditions below apply.

• The organization reported (or should have reported, applying the instructions in effect for such years) an individual on any of the organization's Form 990, 990-EZ or 990-PF, for any one or more of the 5 prior years in one or more of the following capacities: officer, director, trustee, or key employee.

• The individual received **reportable compensation,** from the organization and/or **related organizations,** in the calendar year ending with or within the organization's current **tax year** in excess of the threshold amount ($100,000 for former officers and key employees, $10,000 paid to former directors and trustees for services rendered in their former capacity as directors or trustees).

If a person was reported (or should have been reported) as an officer, director, trustee, or key employee on any of the organization's prior five Form 990, 990-EZ, or 990-PF, and if the person was still employed at any time during the organization's tax year either: (1) by the organization in a lesser capacity other than as an officer, director, trustee, key employee, or highest compensated employee, or (2) by a related organization in any capacity, but not by the filing organization, and if the person received reportable compensation that exceeded the threshold amount described above, then check only the "Former" box. For example, don't check both the "Former" and "Officer" boxes for a former president of the organization who wasn't an officer of the organization during the tax year.

Whether or not the organization files Form 990 based on a **fiscal year,** use the calendar year ending within the organization's tax year to determine all "former" officers, directors, trustees, key employees, and five highest compensated employees (because their status depends on their reportable compensation, which is reported for the calendar year).

Check the "Former" box for the former five highest compensated employees only if all four conditions below apply.

1.   The individual wasn't an **employee** of the organization at any time during the calendar year ending with or within the organization's tax year.

2.   The individual was reported (or should have been reported, under the instructions in effect for such years) on any of the organization's Form 990, 990-EZ, or 990-PF for one or more of the 5 prior years as one of the five highest compensated employees.

3.   The individual's reportable compensation exceeded $100,000 for the calendar year ending with or within the organization's tax year.

4.   The amount of the individual's reportable compensation for such year would place him or her among the organization's current five highest compensated employees if the individual were an employee during the calendar year ending with or within the organization's tax year.

*Example 1.*  X was reported as one of Y Charity's five highest compensated employees on one of Y's Form 990, 990-EZ, or 990-PF from one of its 5 prior tax years. During Y's **tax year,** X wasn't a current officer, director, trustee, key employee, or highest compensated employee of Y. X wasn't an employee of Y during the calendar year ending with or within Y's tax year. During this calendar year, X received reportable compensation in excess of $100,000 from Y for past services and would be among Y's five highest compensated employees if X were a current employee. Y must report X as a former highest compensated employee on Y's Form 990, Part VII, Section A, for Y's tax year.

*Example 2.*  T was reported as one of Y Charity's five highest compensated employees on one of Y's Form 990, 990-EZ, or

990-PF from one of its 5 prior tax years. During Y's **tax year**, T wasn't a current officer, director, trustee, key employee, or highest compensated employee of Y, although T was still an employee of Y during the calendar year ending with or within Y's tax year. T received reportable compensation in excess of $100,000 from Y and related organizations for such calendar year. T isn't reportable as a former highest compensated employee on Y's Form 990, Part VII, Section A, for Y's tax year because T was an employee of Y during the calendar year ending with or within Y's tax year.

*Example 3.* Z was reported as one of Y Charity's key employees on Y's Form 990 filed for one of its 5 prior **tax years**. During Y's tax year, Z wasn't a current officer, director, trustee, key employee, or highest compensated employee of Y. For the calendar year ending with or within Y's tax year, Z received reportable compensation of $90,000 from Y as an employee (and no reportable compensation from related organizations). Because Z received less than $100,000 reportable compensation for the calendar year ending with or within Y's tax year from Y and its related organizations, Y isn't required to report Z as a former key employee on Y's Form 990, Part VII, Section A, for Y's tax year.

**Columns (D) and (E).** Enter the amounts required to be reported (whether or not actually reported) on Form W-2, box 1 or 5 (whichever is greater), and/or Form 1099-MISC, boxes 6 and 7, issued to the person for the calendar year ending with or within the organization's **tax year**. Enter an amount for each person in each of columns (D) and (E). Enter "-0-" if the person received no **reportable compensation**. For **institutional trustees** that don't receive a Form 1099-MISC, enter the amount that the organization would have reported in box 7 if a Form 1099-MISC had been required.

Reportable compensation paid to the person by a **related organization** at any time during the entire calendar year ending with or within the filing organization's tax year should be reported in column (E). If the related organization was related to the filing organization for only a portion of the tax year, then the filing organization may choose to report only compensation paid or accrued by the related organization during the time it was actually related. If the filing organization reports compensation on this basis, it must explain in Schedule O (Form 990 or 990-EZ) and state the period during which the related organization was related.

*$10,000-per-related-organization exception.* For purposes of column (E), the organization need not include payments from a single related organization if it is less than $10,000 for the calendar year ending with or within the organization's tax year, except to the extent paid to a former **director** or former **trustee** of the filing organization for services as a director or trustee of the organization. For example, if an officer of the organization received **compensation** of $6,000, $15,000, and $50,000 from three separate related organizations for services provided to those organizations, the organization needs to report only $65,000 in column (E) for the officer.

*Volunteer exception.* The organization need not report in column (E) or (F) compensation from a related organization paid to a **volunteer officer**, **director**, or **trustee** of the filing organization if the related organization is a for-profit organization, isn't owned or controlled, directly or indirectly, by the organization or one or more related tax-exempt organizations, and doesn't provide management services for a fee to the organization.

*Bank or financial institution trustee.* If the organization is a trust with a bank or financial institution trustee that is also a trustee of another trust, it need not report in column (E) or (F) compensation from the other trust for services provided as the trustee to the other trust, because the other trust isn't a related organization (see *Glossary* definition of **related organization**).

*Reasonable effort.* The organization isn't required to report compensation from a **related organization** to a person listed on Form 990, Part VII, Section A, if the organization is unable to secure the information on compensation paid by the related organization after making a **reasonable effort** to obtain it, and if it is unable to make a reasonable estimate of such compensation. If the organization makes reasonable efforts but is unable to obtain the information or provide a reasonable estimate of compensation from a related organization in column (E) or (F), then it must report the efforts undertaken on Schedule O (Form 990 or 990-EZ). An example of a reasonable effort is for the organization to distribute a questionnaire annually to each of its current and former officers, directors, trustees, key employees, and highest compensated employees that includes the name and title of each person reporting information, blank lines for those persons' signatures and signature dates, and the pertinent instructions and definitions for Form 990, Part VII, Section A, columns (E) and (F).

*Short year and final returns.* For a short year return in which there is no calendar year that ends with or within the short year, leave columns (D) and (E) blank, and don't report any **key employees, highest compensated employees,** or **highest compensated independent contractors** (because such persons are determined according to compensation received in the calendar year ending with or within the tax year for which the return is filed), unless the return is a final return. If the return is a final return, report the compensation that is reportable compensation on Forms W-2 and 1099 for the short year, from both the filing organization and related organizations, whether or not Forms W-2 or 1099 have been filed yet to report such compensation.

**Column (F). Other compensation** generally includes compensation not currently reportable on Form W-2, box 1 or 5, or Form 1099-MISC, boxes 6 and 7, including nontaxable benefits other than disregarded benefits, as discussed in **disregarded benefits** and in the instructions for Schedule J (Form 990), Part II. Treat amounts paid or accrued under a **deferred compensation** plan, or held by a deferred compensation trust, that is established, sponsored, or maintained by the organization (or a **related organization**) as paid, accrued, or held directly by the organization (or the related organization). Deferred compensation to be reported in column (F) includes compensation that is earned or accrued in one year and deferred to a future year, whether or not funded, vested, qualified or nonqualified, or subject to a substantial risk of forfeiture. But don't report in column (F) a deferral of compensation that causes an amount to be deferred from the calendar year ending with or within the tax year to a date that isn't more than 2 ½ months after the end of the calendar year ending with or within the tax year if such compensation is currently reportable as reportable compensation.

Enter an amount in column (F) for each person listed in Part VII, Section A. (Enter "-0-" if applicable.) Report a reasonable estimate if actual numbers aren't readily available.

Other compensation paid to the person by a **related organization** at any time during the calendar year ending with or within the filing organization's tax year should be reported in column (F). If the related organization was related to the filing organization for only a portion of the tax year, then the filing organization may choose to report only other compensation paid or accrued by the related organization during the time it was actually related. If the filing organization reports compensation on this basis, it must explain on Schedule O (Form 990 or 990-EZ) and state the period during which the related organization was related.

The following items of compensation provided by the filing organization and related organizations must be reported as

"other compensation" in column (F) in all cases regardless of the amount, to the extent they aren't included in column (D).

1. Tax-deferred contributions by the employer to a qualified defined contribution retirement plan.

2. The annual increase or decrease in actuarial value of a qualified defined benefit plan, whether or not funded or vested.

3. The value of health benefits provided by the employer, or paid by the employee with pre-tax dollars, that aren't included in reportable compensation. For this purpose, health benefits include: (1) payments of health benefit plan premiums, (2) medical reimbursement and flexible spending programs, and (3) the value of health coverage (rather than actual benefits paid) provided by an employer's self-insured or self-funded arrangement. Health benefits include dental, optical, drug, and medical equipment benefits. They don't include disability or long-term care insurance premiums or allocated benefits for this purpose.

4. Tax-deferred contributions by the employer and employee to a funded nonqualified defined contribution plan, and deferrals under an unfunded nonqualified defined contribution plan, whether or not such plans are vested or subject to a substantial risk of forfeiture. See examples on Schedule J (Form 990), Part II instructions.

5. The annual increase or decrease in actuarial value of a nonqualified defined benefit plan, whether or not funded, vested, or subject to a substantial risk of forfeiture.

**$10,000-per-item exception.** Except for the five items listed above, neither the organization nor a **related organization** is required to report on Form 990, Part VII, Section A, any item of "other compensation" (as set forth in the compensation table beginning later) if its total value is less than $10,000 for the calendar year ending with or within the organization's tax year.

Amounts excluded under the two separate $10,000 exceptions (the $10,000-per-related-organization and $10,000-per-item exceptions) are to be excluded from **compensation** in determining whether an individual's total **reportable compensation** and other compensation exceeds the thresholds set forth on Form 990, Part VII, Section A, line 4. If the individual's total compensation exceeds the relevant threshold, then the amounts excluded under the $10,000 exceptions are included in the individual's compensation reported on Schedule J (Form 990). Thus, the total amount of compensation reported on Schedule J (Form 990) can be higher than the amount reported on Form 990, Part VII, Section A.

The $10,000-per-item exception applies separately for each item of other compensation from the organization and from each related organization.

**Example 1.** Organization X provides the following compensation to its current officer:

| | |
|---|---|
| $110,000 | Reportable compensation (including pre-tax employee contributions of $5,000 to a qualified defined contribution retirement plan and $2,500 to a qualified health benefit plan) |
| 5,000 | Tax-deferred employer contribution to qualified defined contribution retirement plan |
| 5,000 | Nontaxable employer contributions to health benefit plan |
| 4,000 | Nontaxable dependent care assistance |
| 500 | Nontaxable group life insurance premium |

Organization Y, a related organization, also provides compensation to the officer as follows:

| | |
|---|---|
| $21,000 | Reportable compensation (including $1,000 pre-tax employee contribution to qualified defined contribution retirement plan) |
| 1,000 | Tax-deferred employer contribution to qualified defined contribution retirement plan |
| 5,000 | Nontaxable tuition assistance |

The officer receives no compensation in the capacity as a former director or trustee of X, and no unrelated organization pays the officer for services provided to X. The organization can disregard as other compensation the (a) $4,500 in dependent care and group life insurance payments from the organization (under the $10,000-per-item exception), and (b) the $5,000 in tuition assistance from the related organization (under the $10,000-per-item exception) in determining whether the officer's total reportable and other compensation from the organization and related organizations exceeds $150,000. In this case, total reportable compensation is $131,000, and total other compensation (excluding the excludible items below $10,000) is $11,000. Under these circumstances, the officer's dependent care, group life, and tuition assistance items need not be reported as other compensation on Form 990, Part VII, Section A, column (F), and the officer's total reportable and other compensation ($142,000) isn't reportable on Schedule J (Form 990). If instead, the officer's reportable compensation from Y were $30,000 rather than $21,000, then the officer's total reportable and other compensation ($151,000) would be reportable on Schedule J (Form 990), including the dependent care, group life, and tuition assistance items, even though these items wouldn't have to be reported as other compensation on Form 990, Part VII.

**Example 2.** Organization S provides health benefits to B (its CEO) under a self-insured medical reimbursement plan. The value of the plan benefits for the tax year is $10,000, which represents the estimated cost of providing coverage for the year if the employer paid a third-party insurer for similar benefits, as determined on an actuarial basis. The actual benefits paid for B and B's family for the year are $30,000. If the benefits aren't reportable compensation to B, then Organization S must report the $10,000 value of plan benefits as other compensation to B on Form 990, Part VII, Section A, column (F).

**Disregarded benefits.** Disregarded benefits under Regulations section 53.4958-4(a)(4) need not be reported in column (F). Disregarded benefits generally include fringe benefits excluded from gross income under section 132. These benefits include the following:

- No-additional-cost service,
- Qualified employee discount,
- Working condition fringe,
- De minimis fringe,
- Qualified transportation fringe,
- Qualified retirement planning services, and
- Qualified military base realignment and closure fringe.

For descriptions of each of these disregarded benefits, see Instructions for Schedule J (Form 990 and 990-EZ), Compensation Information.

**Short year and final returns.** For a short year return in which there is no calendar year that ends with or within the short year, leave column (F) blank, unless the return is a final return. If the return is a final return, report the other compensation for the short year from both the filing organization and related organizations.

**Compensation table for reporting in Part VII, Section A, or Schedule J (Form 990), Part II.** The following table may be useful in determining how and where to report items of **compensation** on Form 990, Part VII, Section A, and on

Schedule J (Form 990), Part II. The list isn't comprehensive but covers most items for most organizations. Many items of compensation may or may not be taxable or currently taxable, depending on the plan or arrangement adopted by the organization and other circumstances. The list attempts to take into account these varying facts and circumstances. The list is merely a guideline to report amounts for those persons required to be listed. In all cases, items included on Form W-2, box 1 or 5 (whichever is greater), and/or Form 1099-MISC, boxes 6 and 7, are required to be reported on Part VII, Section A and, for applicable persons, Schedule J (Form 990), Part II, column (B). Items listed as "taxable" or "taxable in current year" are currently includible in reportable compensation, but aren't necessarily subject to federal income tax in the current year.

Any item listed in the following compensation table that isn't followed by a star (x) or asterisk (*) in any column shouldn't be reported on Part VII, Section A or in Schedule J, Part II (Form 990).

| Type of Compensation | Where to Report | | | | |
| --- | --- | --- | --- | --- | --- |
| | Form 990, Part VII, Section A, column (D) or (E) | | | Form 990, Part VII, Section A, column (F) | |
| | Schedule J (Form 990), Part II, column B(i) | Schedule J (Form 990), Part II, column B(ii) | Schedule J (Form 990), Part II, column B(iii) | Schedule J (Form 990), Part II, column C | Schedule J (Form 990), Part II, column D |
| Base salary/wages/fees paid | x | | | | |
| Base salary/wages/fees deferred (taxable) | x | | | | |
| Base salary/wages/fees deferred (nontaxable) | | | | x | |
| Bonus paid (including signing bonus) | | x | | | |
| Bonus deferred (taxable in current year) | | x | | | |
| Bonus deferred (not taxable in current year) | | | | x | |
| Incentive compensation paid | | x | | | |
| Incentive compensation deferred (taxable in current year) | | x | | | |
| Incentive compensation deferred (not taxable in current year) | | | | x | |
| Severance or change of control payments made | | | x | | |
| Sick pay paid by employer | x | | | | |
| Third-party sick pay | | | x | | |
| Other compensation amounts deferred (taxable in current year) | | x | | | |
| Other compensation amounts deferred (not taxable in current year) | | | | x | |
| Tax gross-ups paid | | | x | | |
| Vacation/sick leave cashed out | | | x | | |
| Stock options at time of grant | | | | x | |
| Stock options at time of exercise | | | x | | |
| Stock awards paid by taxable organizations substantially vested | | | x | | |
| Stock awards paid by taxable organizations not substantially vested | | | | x | |
| Stock equivalents paid by taxable organizations substantially vested | | | x | | |
| Stock equivalents paid by taxable organizations not substantially vested | | | | x | |
| Loans—forgone interest or debt forgiveness | | | x | | |
| Contributions (employer) to qualified retirement plan | | | | x | |
| Contributions (employee deferrals) to section 401(k) plan | x | | | | |
| Contributions (employee deferrals) to section 403(b) plan | x | | | | |
| Qualified or nonqualified retirement plan defined benefit accruals (reasonable estimate of increase or decrease in actuarial value) | | | | x | |
| Qualified retirement (defined contribution) plan investment earnings or losses (not reportable or other compensation) | | | | | |
| Taxable distributions from qualified retirement plan, including section 457(b) eligible governmental plan (reported on Form 1099-R but not reportable or other compensation on Form 990) | | | | | |

Instructions for Form 990

| Type of Compensation | Where to Report | | | | |
|---|---|---|---|---|---|
| | Form 990, Part VII, Section A, column (D) or (E) | | | Form 990, Part VII, Section A, column (F) | |
| | Schedule J (Form 990), Part II, column B(i) | Schedule J (Form 990), Part II, column B(ii) | Schedule J (Form 990), Part II, column B(iii) | Schedule J (Form 990), Part II, column C | Schedule J (Form 990), Part II, column D |
| Distributions from nongovernmental section 457(b) plan | | | x | | |
| Amounts includible in income under section 457(f) | | | x | | |
| Amounts deferred by employer or employee (plus earnings) under section 457(b) plan (substantially vested) | | | x | | |
| Amounts deferred by employer or employee under section 457(b) or 457(f) plan (not substantially vested) | | | | x | |
| Amounts deferred under nonqualified defined contribution plans (substantially vested) | | | x | | |
| Amounts deferred under nonqualified defined contribution plans (not substantially vested) | | | | x | |
| Earnings or losses of nonqualified defined contribution plan (substantially vested) | | | x | | |
| Earnings or losses of nonqualified defined contribution plan (not substantially vested) | | | | | |
| Scholarships and fellowship grants (taxable) | | | x | | |
| Health benefit plan premiums paid by employer (taxable) | x | | | | |
| Health benefit plan premiums paid by the employee (taxable) | x | | | | |
| Health benefit plan premiums (nontaxable) | | | | | x |
| Medical reimbursement and flexible spending programs (taxable) | | | x | | |
| Medical reimbursement and flexible spending programs (nontaxable) | | | | | x |
| Other health benefits (taxable) | | | x | | |
| Other health benefits (nontaxable) | | | | | x |
| Life, disability, or long-term-care insurance (taxable) | | | x | | |
| Life, disability, or long-term-care insurance (nontaxable) | | | | | * |
| Split-dollar life insurance (see Notice 2002-8, 2002-1 C.B. 398) | | | x | | |
| Housing provided by employer or ministerial housing allowance (taxable) | | | x | | |
| Housing provided by employer or ministerial housing allowance (nontaxable) (but see Schedule J instructions regarding working condition fringes) | | | | | * |
| Personal legal services (taxable) | | | x | | |
| Personal legal services (nontaxable) | | | | | * |
| Personal financial services (taxable) | | | x | | |
| Personal financial services (nontaxable) | | | | | * |
| Dependent care assistance (taxable) | | | x | | |
| Dependent care assistance (nontaxable) | | | | | * |
| Adoption assistance (taxable) | | | x | | |
| Adoption assistance (nontaxable) | | | | | * |
| Tuition assistance for family (taxable) | | | x | | |

**Instructions for Form 990**                    -35-

| Type of Compensation | Where to Report | | | | |
|---|---|---|---|---|---|
| | Form 990, Part VII, Section A, column (D) or (E) | | | Form 990, Part VII, Section A, column (F) | |
| | Schedule J (Form 990), Part II, column B(i) | Schedule J (Form 990), Part II, column B(ii) | Schedule J (Form 990), Part II, column B(iii) | Schedule J (Form 990), Part II, column C | Schedule J (Form 990), Part II, column D |
| Tuition assistance for family (nontaxable) | | | | | * |
| Cafeteria plans (nontaxable health benefit) | | | | | x |
| Cafeteria plans (nontaxable benefit other than health) | | | | | * |
| Liability insurance (taxable) | | | x | | |
| Employer-provided automobile (taxable) | | | x | | |
| Employer-subsidized parking (taxable) | | | x | | |
| Travel (taxable) | | | x | | |
| Moving (taxable) | | | x | | |
| Meals and entertainment (taxable) | | | x | | |
| Social club dues (taxable) | | | x | | |
| Spending account (taxable) | | | x | | |
| Gift cards | | | x | | |
| Disregarded benefits under Regulations section 53.4958-4(a)(4) (see Schedule J, Part II instructions) | | | | | |

**Note.** Items marked with an asterisk (*) instead of a star (x) are excludible from Form 990, Part VII, Section A, column (F), if below $10,000.

**Line 1b.** Report the subtotals of compensation from the Section A, line 1a table in line 1b, columns (D), (E), and (F).

**Line 1c.** Report the subtotals of compensation from continuation sheets (duplicate Section A tables for filers that report more than 25 persons in Section A, line 1a table) in line 1c, columns (D), (E), and (F).

**Line 1d.** Add the totals of lines 1b and 1c in line 1d for columns (D), (E), and (F).

**Line 2.** Report the total number of individuals, both those listed in the Part VII, Section A table, and those not listed, to whom the filing organization (not **related organizations**) paid over $100,000 in **reportable compensation** during the **tax year**.

**Line 3.** Complete Schedule J (Form 990) for each of the following persons.

• Each individual listed in Part VII, Section A, as a former **officer**, former **key employee**, or a former **highest compensated employee**. To determine whether an individual received more than $100,000 in **reportable compensation** in the aggregate from the organization and **related organizations**, add the amounts reported on all Forms W-2, box 1 or 5 (whichever is greater), and/or Forms 1099-MISC, box 7, issued to the individual by the organization and all related organizations (disregarding amounts from a related organization if below $10,000) for the **calendar year** ending with or within the organization's **tax year**.

• Each individual that received, solely in the capacity as a former **director** or former **trustee** of the organization, more than $10,000 of reportable compensation (Part VII, Section A, columns (D) and (E)) during the year from the organization or related organizations. To determine whether an individual received or accrued more than $10,000 in reportable compensation solely in the capacity as a former trustee or director of the organization, add the amounts reported on all Forms 1099-MISC, box 7, and, if applicable, Forms W-2, box 1 or 5 (whichever is greater), and/or issued to the individual by the organization and all related organizations, to the extent that such amounts relate to the individual's past services as a trustee or director of the organization and not of a related organization. The $10,000-per-related-organization exception doesn't apply for this purpose.

**Line 4.** Complete Schedule J (Form 990) for each individual listed in Section A who received or accrued more than $150,000 of reportable and other compensation from the organization and related organizations. To determine whether any listed individual received or accrued more than $150,000 of reportable and other compensation, add all **compensation** included in Part VII, Section A, columns (D), (E), and (F), but disregard any decreases in the actuarial value of defined benefit plans.

The following chart explains which **officers**, **directors**, **trustees**, **key employees**, and **highest compensated employees** must be reported on Form 990, Part VII, Section A, and on Schedule J (Form 990). See also line 5 for additional individuals who must be reported on Schedule J (Form 990), Part II.

**Matrix for Part VII, Section A, Lines 3 and 4**

| Position | Current or former | Enter on Form 990, Part VII, Section A . . . | Enter on Schedule J (Form 990), Part II . . . |
|---|---|---|---|
| Directors and Trustees | Current | All | If reportable and other compensation is greater than $150,000 in the aggregate from organization and related organizations (don't report institutional trustees) |
| | Former | If reportable compensation in capacity as former director or trustee is greater than $10,000 in the aggregate from organization and related organizations | If listed on Form 990, Part VII, Section A (don't report institutional trustees) |
| Officers | Current | All | If reportable and other compensation is greater than $150,000 in the aggregate from organization and related organizations |
| | Former | If reportable compensation is greater than $100,000 in the aggregate from organization and related organizations | If listed on Form 990, Part VII, Section A |
| Key employees | Current | All | All |
| | Former | If reportable compensation is greater than $100,000 in the aggregate from organization and related organizations | If listed on Form 990, Part VII, Section A |
| Other Five Highest Compensated Employees | Current | If reportable compensation is greater than $100,000 in the aggregate from organization and related organizations | If reportable and other compensation is greater than $150,000 in the aggregate from organization and related organizations |
| | Former | If reportable compensation is greater than $100,000 in the aggregate from organization and related organizations | If listed on Form 990, Part VII, Section A |

**Line 5.** Complete Schedule J (Form 990) for any individual listed on Form 990, Part VII, Section A, if the person receives or accrues **compensation** from an **unrelated organization** (other than from management companies and leasing companies, as discussed earlier) for services rendered to the filing organization in the person's capacity as an **officer**, **director**, **trustee**, or **employee** of the filing organization. Also, specify on Schedule J (Form 990), Part III, the name of the unrelated organization, the type and amount of compensation it paid or accrued, and the person receiving or accruing such compensation. See *Compensation from unrelated organizations*, earlier.

For purposes of line 5, disregard:

1. Payments from a **deferred compensation** trust or plan established, sponsored, or maintained by the organization (or a related organization), and deferred compensation held by such trust or plan;

2. Payments from a common paymaster for services provided to the organization (or to a related organization) (see instructions for **Common paymaster or payroll/reporting agent**, earlier); or

3. Payments from an unrelated taxable organization that employs the individual and continues to pay the individual's regular compensation while the individual provides services without charge to the filing organization, but only if the unrelated organization doesn't treat the payments as a charitable contribution to the filing organization.

*Example 1.* A is the CEO (and the **top management official**) of the organization. In addition to compensation paid by the organization to A, A receives payments from B, an unrelated corporation (using the definition of relatedness on Schedule R (Form 990)), for services provided by A to the organization. B also makes rent payments for A's personal residence. The organization is aware of the compensation arrangement between A and B, and doesn't treat the payments as paid by the organization for Form W-2 reporting purposes. A, as the top management official of the organization, must be listed as an officer of the organization in Part VII, Section A. However, the amounts paid by B to A require that the organization answer "Yes" on line 5 and complete Schedule J (Form 990) about A.

*Example 2.* C is an attorney employed by a law firm that isn't a related organization to the organization. The organization and the law firm enter into an arrangement where C serves the organization, a section 501(c)(3) legal aid society pro bono, on a full-time basis as its vice-president and as a board member while continuing to receive her regular compensation from the law firm. The organization doesn't provide any compensation to C for the services provided by C to the organization, and doesn't report C's compensation on Form W-2 or Form 1099-MISC. The law firm doesn't treat any part of C's compensation as a charitable contribution to the legal aid society. Under these circumstances, the amounts paid by the law firm to C don't require that the organization answer "Yes" on line 5, about C. Also, nothing in these facts would prevent C from qualifying as an independent member of the organization's governing body for purposes of Form 990, Part VI, line 1b.

*Example 3.* D, a volunteer director of the organization, is also the sole owner and CEO of M management company (an unrelated organization), which provides management services to the organization. The organization pays M an annual fee of $150,000 for management services. Under the circumstances, the amounts paid by M to D (in the capacity as owner and CEO of M) don't require that the organization answer "Yes" on line 5, regarding D. However, the organization must report the transaction with M, including the relationship between D and M, on Schedule L (Form 990 or 990-EZ), Part IV. Also, D doesn't qualify as an independent member of the organization's governing body because D receives indirect financial benefits from the organization through M that are reportable on Schedule L (Form 990 or 990-EZ), Part IV.

# Section B. Five Highest Compensated Independent Contractors

Complete this table for the five highest compensated **independent contractors** that received more than $100,000 in compensation for services, whether professional or other services, from the organization. Independent contractors include organizations as well as individuals and can include professional fundraisers, law firms, accounting firms, publishing companies, **management companies**, and investment management companies. Don't report public utilities or insurance providers as independent contractors. See Pub. 1779, Independent Contractor or Employee, and Pub. 15-A, Employer's Supplemental Tax Guide, for distinguishing **employees** from independent contractors.

**Column (C).** Enter the amount the organization paid, whether reported on Form 1099-MISC, boxes 6 and 7, or paid under the parties' agreement or applicable state law, for the calendar year ending with or within the organization's tax year.

For a short year return in which there is no calendar year that ends with or within the short year, don't report any information in columns (A) through (C), unless the return is a final return. If the return is a final return, report the compensation paid to the independent contractor(s) under the parties' agreement during the short year or the compensation that is reportable compensation on Form 1099 for the short year, whether or not Form 1099 has been filed yet to report such compensation.

**Compensation** includes fees and similar payments to independent contractors but not reimbursement of expenses unless incidental to providing the service. However, for this purpose, the organization must report gross payments to the **independent contractor** that include expenses and fees if the expenses aren't separately reported to the organization.

 *Form 1099-MISC may be required to be issued for payments to an independent contractor, with compensation reported in boxes 6 and/or 7.*

# Part VIII. Statement of Revenue

Check the box in the heading of Part VIII if Schedule O (Form 990 or 990-EZ) contains any information pertaining to this part.

**Column (A).**
All organizations must complete column (A), reporting their **gross receipts** for all sources of revenue. All organizations (except section 527 political organizations) must complete columns (B) through (D), which must add up to the amount in column (A) for each line in Part VIII. Refer to specific instructions in this part for completing each column.

 *If the organization enters an amount in column (A) for lines 2a through 2e or lines 11a through 11c, it must also enter a corresponding business activity code from Business Activity Codes. If none of the listed codes, or other 6-digit codes listed on the NAICS website at NAICS 2017 Census Chart, accurately describe the activity, enter "900099." Use of these codes doesn't imply that the business activity is unrelated to the organization's exempt purpose.*

**Column (B).**
In column (B), report all revenue from activities substantially related to the organization's exempt purposes. Use of revenue for the organization's exempt purposes doesn't make the activity that produced the income (for example, fundraising activity) substantially related to the organization's exempt purposes. Also report here any revenue that is excludable from gross income other than by section 512, 513, or 514, such as interest on state and local bonds that is excluded from tax by section 103.

**Column (C).**

In column (C), report any **unrelated business** revenue received by the organization during the **tax year** from an **unrelated trade or business**, unless that revenue is reportable on Part VIII, column (D). See Pub. 598 and Instructions for Form 990-T for more information.

 *A section 501(c)(3) organization that is an S corporation shareholder must treat all allocations of income from the S corporation as **unrelated business income**. Gain on the disposition of stock is also treated as unrelated business income. See section 512(e).*

**Column (D).**
In column (D), report any revenue excludable from **unrelated business income** by section 512, 513, or 514. Examples of such revenue include receipts from the sale of donated merchandise, interest (unless debt-financed), and receipts from **bingo** games.

Neither Form 5500 nor DOL Forms LM-2 or LM-3 should be substituted for the Form 990, Parts VIII or IX.

# Line 1. In General

On lines 1a through 1f, report cash and noncash amounts received as voluntary **contributions**, gifts, grants or other similar amounts from the general public, **governmental units**, foundations, and other exempt organizations. The general public includes individuals, corporations, trusts, estates, and other entities. Voluntary contributions are payments, or the part of any payment, for which the payer (donor) doesn't receive full retail value (**fair market value**) from the recipient (donee) organization. Contributions are reported on line 1 regardless of whether they are deductible by the contributor. The noncash portion of contributions reported on lines 1a through 1f is also reported on line 1g.

Report gross amounts of contributions collected in the organization's name by fundraisers.

Report all expenses of raising contributions on Part IX, column (D), Fundraising expenses. The organization must enter on Part IX, line 11e, fees for **professional fundraising services** relating to the gross amounts of contributions collected in the organization's name by professional fundraisers.

Report on line 1 assets contributed to the organization by another entity in the course of the entity's liquidation, dissolution, or termination.

Report the value of **noncash contributions** at the time of the donation. For example, report the FMV of a donated car at the time the car was received as a donation.

Don't net losses from uncollectible pledges from prior years, refunds of contributions and service revenue from prior years, or reversal of grant expenses from prior years on line 1. Rather, report any such items as "Other changes in net assets or fund balances" on Part XI, line 9, and explain in Schedule O.

The organization must report any contributions of **conservation easements** and other **qualified conservation contributions** consistently with how it reports revenue from such contributions in its books, records, and financial statements.

Reporting on line 1 according to **ASC 958** generally is acceptable (though not required) for Form 990 purposes, but the value of donated services or use of materials, equipment, or facilities may not be reported. An organization that receives a grant to be paid in future years should, according to ASC 958, report the grant's present value on line 1. Accruals of present value increments to the unpaid grant should be reported on line 1 in future years.

**Contributions** don't include:

• Grants, fees or other support from **governmental units**, foundations, or other exempt organizations that represent a payment for a service, facility, or product that primarily gives some economic or physical benefit to the payer.

• The portion of any fundraising solicitation representing payment for goods, services, or anything else at retail value.

• Unreimbursed expenses of **officers, employees,** or **volunteers.** (See the explanations of charitable contributions and employee business expenses in Pub. 526 and Pub. 463, respectively.)

• Payments received from employers for welfare benefits under plans described in sections 501(c)(9), (17), and (18). Report these amounts on line 2, *Program Service Revenue.*

• Donations of services such as the value of donated advertising space, broadcast air time (including donated public service announcements), or discounts on services or donations of use of materials, equipment, or facilities, even though reporting donated services and facilities as items of revenue and expense is called for in certain circumstances by generally accepted accounting principles. The optional reporting of donated services and facilities is discussed in the instructions for Form 990, Part III.

*Example 1.* A hotel in a city's entertainment district donates 100 "right to use" certificates covering 15 hotel rooms a night to disaster relief organization B. B then uses these certificates as emergency housing in furtherance of its exempt purposes. B shouldn't report the value of this contribution on line 1 (or on any other line in Part VIII), because this is a donation of services and use of facilities to B. Similarly, if B were to auction off the certificates as part of a fundraising event, B shouldn't report the value of the contributed certificates on line 1 (or on any other line in Part VIII). Rather, it should report gross income from the auction on Part VIII, line 8a.

*Example 2.* Organization C purchases 100 "right to use" certificates (as described in Example 1) from the hotel, then contributes them to disaster relief organization B and designates that they be used for disaster relief purposes. B should report the FMV of these certificates on line 1. If B were to auction off the certificates as part of a fundraising event, then use the proceeds for disaster relief purposes, B should report the gross income from the auction on Part VIII, line 8a, report the FMV of the contributed certificates in line 8b, and report the difference between lines 8a and 8b on line 8c.

**Line 1a.** Enter on line 1a the total amount of **contributions** received indirectly from the public through solicitation campaigns conducted by federated fundraising agencies and similar fundraising organizations (such as from a United Way organization). Federated fundraising agencies normally conduct fundraising campaigns within a single metropolitan area or some part of a particular state, and allocate part of the net proceeds to each participating organization on the basis of the donors' individual designations and other factors.

 *Federated fundraising agencies must, like all other filers, identify the sources of contributions made to them on lines 1a through 1g.*

**Line 1b.** Report on line 1b membership dues and assessments that represent **contributions** from the public rather than payments for benefits received or payments from affiliated organizations.

*Example.* M is an organization whose primary purpose is to support the local symphony orchestra. Members have the privilege of purchasing subscriptions to the symphony's annual concert series before they go on sale to the general public, but must pay the same price as any other member of the public. They are also entitled to attend a number of rehearsals each season without charge. Under these circumstances, M's receipts from members are contributions reported on line 1b.

Membership dues that aren't contributions because they compare reasonably with available benefits are reported on line 2, *Program Service Revenue.*

Membership dues can consist of both contributions and payment for goods and services. In that case, the portion of the membership dues that is a payment for goods or services should be reported on line 2, *Program Service Revenue.* The portion that exceeds the FMV of the goods or services provided should be reported on line 1b.

The portion of membership dues attributable to certain membership benefits that are considered to be insubstantial (for example, low-cost articles, free or discounted admission to the organization's activities, discounts on purchases from the organization's gift shop, free or discounted parking) may be reported as contributions on line 1, rather than as payments for goods or services on line 2. See Pub. 1771, for more information on insubstantial membership benefits that need not be valued or reported.

**Line 1c.** Enter the total amount of **contributions** received from **fundraising events**, which includes, but isn't limited to, dinners, auctions, and other events conducted for the sole or primary purpose of raising funds for the organization's exempt activities. Report contributions received from **gaming** activities on line 1f, not on line 1c.

*Example.* An organization holds a dinner, charging $400 per person for the meal. The dinner has a retail value of $160. A person who purchases a ticket is really purchasing the dinner for $160 and making a contribution of $240. The contribution of $240, which is the difference between the buyer's payment and the retail value of the dinner, would be reported on line 1c and again on line 8a (within the parentheses). The revenue received ($160 retail value of the dinner) would be reported in the right-hand column on line 8a.

If a contributor gives more than $160, that person would be making a contribution of the difference between the dinner's retail value of $160 and the amount actually given. Rev. Rul. 67-246, 1967-2 C.B. 104, as distinguished by Rev. Rul. 74-348, 1974-2 C.B. 80, explains this principle in detail. See also the instructions for lines 8a through 8c and Pub. 526, Charitable Contributions.

Organizations that report more than $15,000 total on lines 1c and 8a must also answer "Yes" on Part IV, line 18, and complete Part II of Schedule G (Form 990 or 990-EZ).

**Line 1d.** Enter on line 1d amounts contributed to the organization by **related organizations**. Don't report amounts reportable on line 1a.

**Line 1e.** Enter the total amount of **contributions** in the form of grants or similar payments from local, state, or federal government sources, as well as foreign governments. Include grant amounts from **U.S. possessions**.

Whether a payment from a **governmental unit** is labeled a "grant" or a "contract" doesn't determine where the payment should be reported on Part VIII. Rather, a grant or other payment from a governmental unit is reported here if its primary purpose is to enable the organization to provide a service to, or maintain a facility for, the direct benefit of the public rather than to serve the direct and immediate needs of the governmental unit. In other words, the payment is recorded on line 1e if the general public receives the primary and direct benefit from the payment and any benefit to the governmental unit is indirect and insubstantial as compared to the public benefit.

The following are examples of governmental grants and other payments that are treated as contributions and reported on line 1e.

• Payments by a governmental unit for the construction or maintenance of library or museum facilities open to the public.
• Payments by a governmental unit to nursing homes to provide care to their residents (but not Medicare/Medicaid or similar payments made on behalf of the residents).
• Payments by a governmental unit to child placement or child guidance organizations under government programs to better serve children in the community.

**Line 1f.** Enter all other **contributions**, gifts, and similar amounts the organization received from sources not reported separately on lines 1a through 1e. This amount includes contributions from **donor advised funds** (unless the **sponsoring organization** is a **related organization**) and from **gaming** activities.

**Line 1g.** Enter on line 1g the value of **noncash contributions** included on lines 1a through 1f. If this amount exceeds $25,000, the organization must answer "Yes" on Part IV, line 29, and complete and attach Schedule M (Form 990).

Noncash contributions are anything other than cash, checks, money orders, credit card charges, wire transfers, and other transfers and deposits to a cash account of the organization. Value noncash donated items, like cars and **securities**, as of the time of their receipt, even if they were sold immediately after they were received.

*Example.* A charity receives a gift of stock from an unrelated donor. The stock is delivered to the charity's broker, who sells it on the same day and remits the sales proceeds, net of commissions, to the charity. The value of the stock at the time of the contribution must be reported on line 1f and also on line 1g. The sale of the stock, and the related sales expenses (including the amount reported on lines 1f and 1g), must be reported on lines 7a through 7d.

 *Museums and other organizations that elect not to capitalize their collections (according to ASC 958-360-45) shouldn't report an amount on line 1g for works of art and other collection items donated to them.*

For more information on **noncash contributions**, see the Instructions for Schedule M (Form 990).

**Line 1h.** Enter on line 1h the total of lines 1a through 1f (but not line 1g).

 *The organization may also need to attach Schedule B (Form 990, 990-EZ, or 990-PF) to report certain contributors and their contributions. See the Instructions for Schedule B (Form 990, 990-EZ, or 990-PF) for information.*

**Line 2.** On lines 2a through 2e, enter the organization's five largest sources of program service revenue. Program services are primarily those that form the basis of an organization's exemption from tax. For a more detailed description of program service revenue, refer to the instructions for Part IX, column (B).

On line 2f, enter the total received from all other sources of program service revenue not listed individually on lines 2a through 2e. On line 2g, enter the total of column (A), lines 2a through 2f.

**Program service revenue.** Program service revenue includes income earned by the organization for providing a government agency with a service, facility, or product that benefited the government agency directly rather than benefiting the public as a whole. Program service revenue also includes tuition received by a school; revenue from admissions to a concert or other performing arts event or to a museum; royalties received as author of an educational publication distributed by a commercial publisher; interest income on loans a credit union makes to its members; payments received by a section 501(c)(9)

organization from participants or employers of participants for health and welfare benefits coverage; insurance premiums received by a fraternal beneficiary society; and registration fees received in connection with a meeting or convention.

**Program-related investments.** Program service revenue also includes income from **program-related investments**. These investments are made primarily to accomplish an exempt purpose of the investing organization rather than to produce income. Examples are scholarship loans and low interest loans to charitable organizations, indigents, or victims of a disaster.

Rental income from an exempt function is another example of program-related investment income. For purposes of this return, report all rental income from an affiliated organization on line 2.

**Unrelated trade or business activities.** Unrelated trade or business activities (not including any **fundraising events** or **fundraising activities**) that generate fees for services can also be program service activities. A social club, for example, should report as program service revenue the fees it charges both members and nonmembers for the use of its tennis courts and golf course.

**Sales of inventory items by hospitals, colleges, and universities.** Books and records maintained according to generally accepted accounting principles for hospitals, colleges, and universities are more specialized than books and records maintained according to those accounting principles for other types or organizations that file Form 990. Accordingly, **hospitals**, colleges, and universities can report, as program service revenue on line 2, sales of inventory items otherwise reportable on line 10a. In that event, enter the applicable cost of goods sold as program service expense in column (B) of Part IX. No other organizations should report sales of inventory items on line 2.

**Common Types of Program Service Revenue**
• Medicare and Medicaid payments, and other government payments made to pay or reimburse the organization for medical services provided to individuals who qualify under a government program for the services provided, and who select the service provider. See Rev. Rul. 83-153, 1983-2 C.B. 48.
• Payments for medical services by patients and their guarantors.
• Fees and contracts from government agencies for a service, facility, or product that primarily benefited the government agencies.

*Example 1.* A payment by a governmental agency to a medical clinic to provide vaccinations to the general public is a contribution reported on line 1e. A payment by a governmental agency to a medical clinic to provide vaccinations to employees of the agency is program service revenue reported on line 2.

*Example 2.* A payment by a governmental agency to an organization to provide job training and placement for disabled individuals is a contribution reported on line 1e. A payment by a governmental agency to the same organization to operate the agency's internal mail delivery system is program service revenue reported on line 2.
• Income from program-related investments. Report interest, dividends, and other revenues from those investments made primarily to accomplish the organization's exempt purposes rather than to produce income. Examples of program-related investments include student loans and notes receivable from other exempt organizations that borrowed the funds to pursue the filing organization's exempt function.
• Membership dues and assessments received that compare reasonably with the membership benefits provided by the organization. Organizations described in section 501(c)(5), (6), or (7) generally provide benefits that have a reasonable relationship with dues.

Examples of membership benefits include:
- Subscriptions to publications,
- Newsletters (other than one only about the organization's activities),
- Free or reduced-rate admissions to events sponsored by the organization,
- Use of the organization's facilities, and
- Discounts on articles or services that members and nonmembers can buy.

 *For each amount entered on lines 2a through 2e, the organization must also enter a corresponding business activity code from* Business Activity Codes. *If you don't see a code for the activity you are trying to categorize, select the appropriate code from the NAICS website at* 2017 NAICS Census Chart. *Select the most specific 6-digit code available that describes the activity producing the income. Note that most codes describe more than one type of activity. Avoid using codes that describe the organization rather than the income-producing activity. For example, a credit union reporting income from consumer lending activities should use code 522291. Sales revenue from a museum gift shop should be reported with code 453220. An organization providing credit counseling services should use code 541990. If none of the listed codes accurately describe the activity, enter "900099." Use of these codes doesn't imply that the activity is unrelated to the organization's exempt purpose.*

**Line 3.** Enter the gross amount of interest income from savings and temporary cash investments, dividend and interest income from equity and debt **securities** (stocks and bonds), amounts received from payments on securities loans, as defined in section 512(a)(5), as well as interest from notes and loans receivable. Don't include unrealized gains and losses on investments carried at **fair market value**. Don't deduct investment management fees from this amount, but report these fees on Part IX, line 11f.

**Line 4.** Enter all investment income actually or constructively received from investing the **proceeds** of a tax-exempt **bond issue**, which are under the control of the organization. For this purpose, don't include any investment income received from investing proceeds that are technically under the control of the **governmental issuer**. For example, proceeds deposited into a **defeasance escrow** that is irrevocably pledged to pay the principal and interest (debt service) on a bond issue isn't under the control of the organization.

**Line 5.** Enter on line 5 royalties received by the organization from licensing the ongoing use of its property to others. Typically, royalties are received for the use of intellectual property, such as patents and trademarks. Royalties also include payments to the owner of the property for the right to exploit natural resources on the property, such as oil, natural gas, or minerals.

**Line 6a.** Enter on line 6a the rental income received for the year from investment property and any other real property rented by the organization. Allocate revenue to real property and personal property in the spaces provided. Don't include on line 6a rental income related to the filing organization's exempt function (program service). Report such income on line 2. For example, an exempt organization whose exempt purpose is to provide low-rental housing to persons with low income would report that rental income as program service revenue on line 2.

Only for purposes of completing this return, the filing organization must report any rental income received from an affiliated exempt organization as program service revenue on line 2.

Rental revenue can be from an activity that is related or unrelated to the organization's exempt purpose. In general, rents

from real property are excluded in computing **unrelated business income**, while rental income from personal property is included. There are special rules when rents are received from personal property leased with real property (a mixed lease). In general, rental revenue from real property is excluded from unrelated business revenue when:
- The determination of the amount of such rents isn't based on income or net profits derived by any person from the property leased other than an amount based on a fixed percentage of the gross receipts or sales;
- The lease doesn't include personal services other than customary ones such as trash removal and cleaning of public areas;
- Any portion attributable to personal property is 10% or less of the total rent; and
- The real property isn't debt-financed within the meaning of section 512, 513, or 514. (Rent from debt-financed real property generally is includible in unrelated business income, but there can be exceptions based on use of the property. See Pub. 598.)

Rent received from leased personal property generally is taxable except when leased with real property, and the rent attributable to the personal property doesn't exceed 10% of the total rents from all leased property.

**Line 6b.** Enter on line 6b the expenses paid or incurred for the income reported on line 6a. Include interest related to rental property and depreciation if it is recorded in the organization's books and records. If the organization reported on line 2 any rental income reportable as program service revenue, report any rental expense allocable to such activity on the applicable lines of Part IX, column (B).

**Line 6c.** Subtract line 6b from line 6a for both columns (i) and (ii) and enter on line 6c. Show any loss in parentheses.

**Line 6d.** Add line 6c, columns (i) and (ii) and enter on line 6d. Show any loss in parentheses.

**Lines 7a through 7d.** Enter on lines 7a through 7c all sales of **securities** in column (i). Use column (ii) to report sales of all other types of investments (such as real estate, royalty interests, or partnership interests) and all other non-inventory assets (such as program-related investments and fixed assets used by the organization in its related and unrelated activities).

On line 7a, for each column, enter the total gross sales price of all such assets. Total the cost or other basis (less depreciation) and selling expenses and enter the result on line 7b. On line 7c, enter the net gain or loss. Show any loss in parentheses.

On lines 7a and 7c, also report capital gains dividends, the organization's share of capital gains and losses from a **joint venture**, and capital gains distributions from trusts.

Combine the gain or loss figures reported on line 7c, columns (i) and (ii) and report that total on line 7d. Show any loss in parentheses. Don't include any unrealized gains or losses on **securities** carried at **fair market value** in the books of account.

For reporting sales of securities on Form 990, the organization can use the more convenient average cost basis method to figure the organization's gain or loss. When a security is sold, compare its sales price with the average cost basis of the particular security to determine gain or loss. However, for reporting sales of securities on Form 990-T, don't use the average cost basis to determine gain or loss.

The organization should maintain books and records to substantiate information about any securities or other assets sold for which market quotations weren't published or weren't otherwise readily available. The recorded information should include:
- A description of the asset;
- Date acquired;

- Whether acquired by donation or purchase;
- Date sold and to whom sold;
- Gross sales price;
- Cost, other basis, or, if donated, value at time acquired;
- Expense of sale and cost of improvements made after acquisition; and
- Depreciation since acquisition, if depreciable property.

**Line 8a.** Enter in the line 8a box the gross income from fundraising events, not including the amount of contributions from fundraising events reported on line 1c. Report the line 1c amount in the line 8a parenthetical. If the sum of the amounts reported on line 1c and the line 8a box exceeds $15,000, then the organization must answer "Yes" on Part IV, line 18, and complete Schedule G (Form 990 or 990-EZ), Part II. If gaming is conducted at a fundraising event, the income and expenses must be allocated between the gaming and the fundraising event on Form 990, Part VIII; report all income from gaming on line 9a.

Compute the organization's gross income from fees, ticket sales, or other revenue from **fundraising events**.

| Fundraising events include: | Fundraising events don't include: |
|---|---|
| • Dinners/dances, | • Sales or gifts of goods or services of only nominal value. |
| • Door-to-door sales of merchandise, | • Raffles or lotteries in which prizes have only nominal value, and |
| • Concerts, | • Solicitation campaigns that generate only **contributions**. |
| • Carnivals, | |
| • Sports events, and | Proceeds from these activities are considered contributions and should be reported on line 1f. |
| • Auctions. | |

Fundraising events don't include events or activities that substantially further the organization's exempt purpose even if they also raise funds. Revenue from such program service activities is reported on line 2.

*Example.* An organization formed to promote and preserve folk music and related cultural traditions holds an annual folk music festival featuring concerts, handcraft demonstrations, and similar activities. Because the festival directly furthers the organization's exempt purpose, income from ticket sales should be reported on line 2 as program service revenue.

Fundraising events sometimes generate both **contributions** and income, such as when an individual pays more than the retail value for the goods or services furnished. Report in parentheses the total amount from fundraising events that represents contributions rather than payment for goods or services. Treat the following as contributions.

- Amounts paid in excess of retail value of goods or services furnished. See *Example*, earlier, in line 1c.
- Amounts received from fundraising events when the organization gives items of only nominal value to recipients. See Pub. 1771.

*Example.* In return for a contribution of any amount, donors receive a keychain with the organization's logo. All amounts received should be reported as contributions on line 1f and all associated expenses on the appropriate lines in Part IX, column (D). In such a case, no amounts would be reported on line 8.

**Line 8b.** Enter on this line both the cost or other basis of any items sold at the events and the expenses that relate directly to the production of the revenue portion of the fundraising activity, whether incurred before, during, or after the event. In the line 1c dinner example referred to earlier, the cost of the food and beverages served and invitation to the dinner would be among the items reported on line 8b. Indirect fundraising expenses,

such as certain advertising expenses associated with raising these **contributions**, must be reported on the appropriate lines in Part IX, column (D), and not on line 8b.

**Line 8c.** Enter on line 8c the difference between lines 8a and 8b. Show any loss in parentheses. The organization must report net income from **fundraising events** as unrelated business revenue (column (C)) or as revenue excluded from tax under section 512, 513, or 514 (column (D)).

*Example 1.* If an organization receives a donation of a home theater system with a FMV of $5,000 at the time of donation; sells the system for $7,500 at an auction, after having displayed the system and its FMV (which remains $5,000) at and before auction so that its value was known to the bidders; and incurs $500 in costs related to selling the system at auction, it should report the following amounts in Part VIII:

| | |
|---|---|
| Line 1c (**contributions** from fundraising events): | $2,500 |
| Line 1f (all other contributions): | $5,000 |
| Line 1g (noncash contributions): | $5,000 |
| Line 8a (gross income from fundraising events): | $5,000 |
| Line 8a parenthetical (contributions reported on line 1c): | $2,500 |
| Line 8b (direct expenses: $5,000 FMV on donation date + $500 in auction costs): | $5,500 |
| Line 8c (net income from fundraising event, line 8a minus line 8b): | ($500) |

*Example 2.* If the home theater system in Example 1 sold at auction for $2,500 instead of $7,500, and all other facts in Example 1 remain the same, then the organization should report the following amounts in Part VIII:

| | |
|---|---|
| Line 1c (**contributions** from fundraising events): | $0 |
| Line 1f (all other contributions): | $5,000 |
| Line 1g (noncash contributions): | $5,000 |
| Line 8a (gross income from fundraising events): | $2,500 |
| Line 8a parenthetical (contributions reported on line 1c): | $0 |
| Line 8b (direct expenses: $5,000 FMV on donation date + $500 in auction costs): | $5,500 |
| Line 8c (net income from fundraising event, line 8a minus line 8b): | ($3,000) |

In both Example 1 and Example 2, the organization would need to report the $5,000 value of this contribution on Schedule M if it received over $25,000 in total noncash contributions during the **tax year**.

**Line 9a.** Line 9a should include only gross income from **gaming** activity. It shouldn't include **contributions** from gaming activity, which should be reported on line 1f. Organizations that report more than $15,000 on line 9a must also answer "Yes" on Part IV, line 19, and complete Part III of Schedule G (Form 990 or 990-EZ).

| Types of gaming include, but aren't limited to: | |
|---|---|
| - **Bingo** | - Nevada Club tickets |
| - **Pull tabs** | - Certain Casino nights |
| - **Instant bingo** | - Certain Las Vegas nights |
| - Raffles | - Coin-operated gambling devices including: |
| | • Slot machines |
| - Scratch-offs | • Electronic video slot or line games |
| - Charitable **gaming** tickets | |
| | • Video poker |
| - Break-opens | • Video blackjack |
| - Hard cards | • Video keno |
| - Banded tickets | • Video **bingo** |
| - Jar tickets | • Video **pull tab** games |
| - Pickle cards | |

Many games of chance are taxable. Income from **bingo** games generally isn't subject to the tax on unrelated business income if the games meet the legal definition of bingo. For a game to meet the legal definition of bingo, wagers must be placed, winners must be determined, and prizes or other property must be distributed in the presence of all persons placing wagers in that game.

A wagering game that doesn't meet the legal definition of bingo doesn't qualify for the exclusion, regardless of its name. For example, **instant bingo**, in which a player buys a pre-packaged bingo card with **pull tabs** that the player removes to determine if he or she is a winner, doesn't qualify. See Pub. 598.

**Line 9b.** Enter on this line the expenses that relate directly to the production of the revenue portion of the **gaming** activity.

Direct expenses of gaming include:
- Cash prizes,
- Noncash prizes,
- Compensation to **bingo** callers and workers,
- Rental of gaming equipment, and
- Cost of gaming supplies such as **pull tabs**, bingo cards, etc.

**Line 9c.** Enter the difference between line 9a and 9b. Show any loss in parentheses.

**Line 10a.** Enter the organization's gross income from sales of inventory items, less returns and allowances. Sales of inventory items reportable on line 10a are sales of items that are donated to the organization, that the organization makes to sell to others, or that it buys for resale. Sales of inventory don't, however, include the sale of goods related to a **fundraising event**, which must be reported on line 8. Sales of investments on which the organization expected to profit by appreciation and sale aren't reported here. Report sales of investments on line 7.

The organization must report the sales revenue regardless of whether the sales activity is an exempt function of the organization or an **unrelated trade or business**.

**Line 10b.** Enter the cost of goods sold related to the sales of inventory. The usual items included in cost of goods sold are direct and indirect labor, materials and supplies consumed, freight-in, and a portion of overhead expenses. Marketing and distribution costs aren't included in the cost of goods sold but are reported as expenses in Part IX. For purposes of Part VIII, the organization may include as cost of donated goods their fair market value at the time of acquisition.

**Line 10c.** Enter in the appropriate columns (A) through (D), the net income or (loss) from the sale of inventory items. Show any loss in parentheses.

**Line 11.** Enter all other types of revenue not reportable on lines 1 through 10. Enter the three largest sources on lines 11a through 11c and all other revenue on line 11d.

 *For each amount entered on lines 11a, 11b, and 11c, the organization must also enter a corresponding business activity code from Business Activity Codes. If you don't see a code for the activity you are trying to categorize, select the appropriate code from the NAICS website at 2017 NAICS Census Chart. Select the most specific 6-digit code available that describes the activity producing the income. Note that most codes describe more than one type of activity. Avoid using codes that describe the organization rather than the income-producing activity. If none of the listed codes accurately describe the activity, enter "900099." Use of these codes doesn't imply that the activity is unrelated to the organization's exempt purpose.*

**Line 12.** For column (A), add lines 1h, 2g, 3 through 5, 6d, 7d, 8c, 9c, 10c, and 11e. For columns (B) through (D), add lines 2a through 2f, 3, 4, 5, 6d, 7d, 8c, 9c, 10c, and 11a through 11d. The amounts reported on line 12 in columns (B), (C), and (D), plus the amount reported on line 1h, should equal line 12, column (A).

# Part IX. Statement of Functional Expenses

Check the box in the heading of Part IX if Schedule O (Form 990 or 990-EZ) contains any information pertaining to this part.

Use the organization's normal accounting method to complete this section. If the organization's accounting system doesn't allocate expenses, the organization can use any reasonable method of allocation. The organization must report amounts accurately and document the method of allocation in its records. Report any expense described on lines 1–23 on the appropriate line; don't report such expense on line 24. Don't report in Part IX expenses that must be reported on lines 6b, 7b, 8b, 9b, or 10b in Part VIII.

**Column (A)—Total**
Section 501(c)(3) and 501(c)(4) organizations must complete columns (A) through (D).

All other organizations must complete column (A) but can complete columns (B), (C), and (D).

 *State reporting requirements can be different from IRS reporting requirements applicable to Part IX.*

**Column (B)—Program Services**
*Program services* are mainly those activities that further the organization's exempt purposes. Fundraising expenses shouldn't be reported as program-service expenses even though one of the organization's purposes is to solicit **contributions**.

Include **lobbying** expenses in this column if the lobbying is directly related to the organization's exempt purposes.

***Example.*** Foundation M, an organization exempt under section 501(c)(3), has the exempt purpose of improving health care for senior citizens. Foundation M operates in State N. The legislature of State N is considering legislation to improve funding of health care for senior citizens. Foundation M lobbies state legislators in support of the legislation. Since this lobbying is directly related to Foundation M's exempt purpose, it would be considered an exempt function expense, and would be included under Column (B).

Program services can also include the organization's **unrelated trade or business** activities. Publishing a magazine is a program service even though the magazine contains both editorials and articles that further the organization's exempt

purpose as well as advertising, the income from which is taxable as **unrelated business income**.

Also include costs to secure a "grant," or contract, to conduct research, produce an item, or perform a program service, if the activities are conducted to meet the grantor's or other contracting party's specific needs. Don't report these costs as fundraising expenses in column (D). Costs to solicit restricted or unrestricted grants to provide services to the general public should be reported in column (D).

**Column (C)—Management and General**
Use column (C) to report expenses that relate to the organization's overall operations and management, rather than to **fundraising activities** or program services. Overall management usually includes the salaries and expenses of the organization's chief executive officer and his or her staff, unless a part of their time is spent directly supervising program services or fundraising activities. In that case, their salaries and expenses should be allocated among management, fundraising, and program services.

Expenses incurred to manage investments must be reported in column (C). **Lobbying** expenses should be reported in this column if they don't directly relate to the organization's exempt purposes.

Organizations must also report the following in column (C): costs of board of directors' meetings; committee meetings, and staff meetings (unless they involve specific program services or fundraising activities); general legal services; accounting (including patient accounting and billing); general liability insurance; office management; auditing, human resources, and other centralized services; preparation, publication, and distribution of an annual report; and management of investments.

However, report expenses related to the production of program-related income in column (B) and expenses related to the production of rental income in Part VIII, line 6b. Rental expenses incurred for the organization's office space or facilities are reported on line 16.

Don't use this column to report costs of special meetings or other activities that relate to fundraising or specific program services.

**Column (D)—Fundraising**
Fundraising expenses are the expenses incurred in soliciting cash and noncash **contributions**, gifts, and grants. Report as fundraising expenses all expenses, including allocable overhead costs, incurred in: (a) publicizing and conducting fundraising campaigns and (b) soliciting bequests and grants from individuals, foundations, other organizations, or **governmental units** that are reported on Part VIII, line 1. This includes expenses incurred in participating in federated fundraising campaigns; preparing and distributing fundraising manuals, instructions, and other materials; and preparing to solicit or receive contributions. Report direct expenses of fundraising events in Part VIII, line 8b, rather than in Part IX, column (D). However, report indirect expenses of fundraising events, such as certain advertising expenses, in Part IX, column (D) rather than in Part VIII, line 8b.

*Example.* For an employee who works on fundraising 40 percent of the time and program management 60 percent of the time, an organization must allocate that employee's salary 40 percent to fundraising and 60 percent to program service expenses. It can't report the 100 percent of salary as program expenses simply because the employee spent over 50 percent of his time on program management.

# Allocating Indirect Expenses

Direct costs are expenses that can be identified specifically with an organization's activity or project, and can be assigned to an activity or project with a high degree of accuracy. Indirect costs are costs that can't be identified specifically with an activity or project. For example, a computer bought by a university specifically for a research project is a direct cost. In contrast, the costs of software licensing for programs that run on all the university's computers are indirect costs.

Colleges, universities, hospitals, and other organizations that incur indirect expenses in various cost centers (such as organizational memberships, books and subscriptions, and regular telecommunications costs) can allocate and report such expenses in the following manner:

1. Report the expenses of all indirect cost centers in column (C), lines 5 through 24.

2. As a separate line item of line 24, enter "Allocation of [name of indirect cost center] expenses."

a. If any of the cost center's expenses are allocated to expenses listed in Part VIII such as the expenses attributable to **fundraising events** and activities, enter such expenses as a negative figure in columns (A) and (C).

b. Allocate expenses to column (B) or (D) as positive amounts.

c. Add the amounts in columns (B) and (D) and enter the sum as a negative offsetting amount in column (C). Don't make any entries in column (A) for these offsetting entries.

*Example.* An organization reports in column (C) $50,000 of its actual management and general expenses and $100,000 of expenses of an indirect cost center that are allocable in part to other functions. The total of lines 5 through 24 of column (C) would be $150,000 before the indirect cost center allocations were made. Assume that of the $100,000 total expenses of the cost center, $10,000 was allocable to fundraising; $70,000 to various program services; $15,000 to management and general functions; and $5,000 to special events and activities. To report this in Part IX under this optional method:

1. Indicate the cost center, the expenses of which are being allocated, on line 24 as "Allocation of [specify the indirect cost center] expenses;"

2. Enter a decrease of $5,000 on the same line in column (A), *Total expenses*, representing the fundraising event expenses that were already reported in Part VIII, on line 8b;

3. Enter $70,000 on the same line in column (B), *Program service expenses*;

4. Enter $10,000 on the same line in column (D), *Fundraising expenses*; and

5. Enter a decrease of $85,000 on the same line in column (C), *Management and general expenses*, to represent the allocations to functional areas other than management and general.

After making these allocations, the column (C), line 25, total functional expenses would be $65,000, consisting of the $50,000 actual management and general expense amount and the $15,000 allocation of the aggregate cost center expenses to management and general.

The above is an example of a one-step allocation that shows how to report the allocation in Part IX. This reporting method would actually be more useful to avoid multiple-step allocations involving two or more cost centers. Without this optional reporting method, the total expenses of the first cost center would be allocated to the other functions, and might include an allocation of part of these expenses to another cost center. The expenses of the second cost center would then be allocated to other functions and, perhaps, to other cost centers, and so on. The greater the number of these cost centers that are allocated out, the more difficult it is to preserve the object classification identity of the expenses of each cost center (for example, salaries, interest, supplies, etc.). Using the reporting method described above avoids this problem.

 *The intent of the above instructions is only to facilitate reporting indirect expenses by both object classification and function. These instructions don't authorize the allocation to other functions of expenses that should be reported as management and general expenses.*

# Grants and Other Assistance to Governments, Organizations, and Individuals

Organizations should report the amount of **grants and other assistance** on lines 1 through 3. Report expenses incurred in selecting recipients or monitoring compliance with the terms of a grant or award on lines 5 through 24. See the following instructions.

**Note.** Organizations can report this information according to **ASC 958** but aren't required to do so. For example, an organization that follows **ASC 958** and makes a grant during the **tax year** to be paid in future years should report the grant's present value on this year's Form 990 and report accruals of additional value increments in future years.

**Line 1.** Enter the amount that the organization, at its own discretion, paid in grants to domestic organizations and domestic governments. United Way and similar federated fundraising organizations should report grants to member or participating agencies on line 1. Organizations must report voluntary grants to state or local affiliates for specific (restricted) purposes or projects on line 1.

If the organization reported on line 1 more than $5,000 of **grants or other assistance** to any **domestic organization** or to any **domestic government**, the organization must complete Parts I and II of Schedule I (Form 990), Grants and Other Assistance to Organizations, Governments, and Individuals in the United States.

**Line 2.** Enter the amount paid by the organization to **domestic individuals** in the form of scholarships, fellowships, stipends, research grants, and similar payments and distributions.

Also include **grants and other assistance** paid to third party providers for the benefit of specified **domestic individuals**. For example, a grant payment to a **hospital** to cover the medical expenses of a specific patient must be reported on line 2. By comparison, a grant to the same hospital to provide services to the general public or to unspecified charity patients must be reported on line 1.

If line 2 exceeds $5,000, the organization must complete Parts I and III of Schedule I (Form 990).

**Line 3.** The organization must enter the total amount of **grants and other assistance** made to foreign organizations, foreign governments, and foreign individuals, and to **domestic organizations** or **domestic individuals** for the purpose of providing grants or other assistance to designated **foreign organizations** or **foreign individuals**.

If line 3 exceeds $5,000, the organization may have to complete Part II and/or Part III of Schedule F (Form 990). See Instructions for Schedule F for more information.

**Line 4.** Enter the payments made by the organization to provide benefits to members (such as payments made by an organization exempt under section 501(c)(8), 501(c)(9), or 501(c)(17) to obtain insurance benefits for members, or patronage dividends paid by section 501(c)(12) organizations to their members). Don't report on this line the cost of employment-related benefits such as health insurance, life insurance, or disability insurance provided by the organization to its **officers, directors, trustees, key employees,** and other **employees.** Report such costs for officers, directors, trustees, and key employees on Part IX, line 5; report such costs for other disqualified persons on Part IX, line 6; and report such costs for other employees on Part IX, lines 8 and 9.

**Line 5.** Enter the total **compensation** paid to current **officers, directors, trustees, and key employees** (as defined in Part VII) for the organization's **tax year.** Compensation includes all forms of income and other benefits earned or received from the filing organization, common paymasters, and payroll/reporting agents in return for services rendered to the filing organization, including compensation reported on Forms W-2 and 1099, pension plan contributions and accruals, and other employee benefits, but doesn't include non-compensatory expense reimbursements or allowances. Report all compensation amounts relating to such an individual, including those related to services performed in a capacity other than as an officer, director, trustee, or key employee.

 *Compensation for Part IX is reported based on the accounting method and **tax year** used by the organization, rather than the definitions and calendar year used to complete Part VII or Schedule J (Form 990) regarding compensation of certain **officers, directors, trustees,** and other **employees**.*

## Allocating Indirect Expenses—Example

| Line | (A) | (B) | (C) | (D) |
|---|---|---|---|---|
| 5–24a | $150,000 | - | $150,000 | - |
| 24b Allocation of $100,000 indirect cost center expenses reported in (C) | (5,000) | 70,000 | (85,000) | 10,000 |
| 25 | $145,000 | $70,000 | $65,000 | $10,000 |

**Note.** To the extent the following examples discuss allocation of expenses in columns (B), (C), and (D), they apply only to filers required to complete those columns.

**Line 6.** Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations must report the total **compensation** and other distributions provided to **disqualified persons** and persons described in section 4958(c)(3)(B) to the extent not included on line 5. See *Appendix G. Section 4958 Excess Benefit Transactions*.

Compensation includes all forms of income and other benefits earned or received from the filing organization, common paymasters, and payroll/reporting agents in return for services rendered to the filing organization, including compensation reported on Forms W-2 and 1099, pension plan contributions and accruals, and other employee benefits, but doesn't include non-compensatory expense reimbursements or allowances.

**Line 7.** Enter the total amount of **employee** salaries, wages, fees, bonuses, severance payments, and similar amounts paid or provided from the filing organization, common paymasters, and payroll/reporting agents in return for services rendered to the filing organization that aren't reported on line 5 or 6.

**Line 8.** Enter the employer's share of contributions to, or accruals under, qualified and nonqualified pension and deferred compensation plans for the year. The organization should include contributions made by the filing organization, common paymasters, and payroll/reporting agents to the filing organization's sections 401(k) and 403(b) pension plans on behalf of **employees**. However, it shouldn't include contributions to qualified pension, profit-sharing, and stock bonus plans under section 401(a) solely for the benefit of current or former **officers, directors, trustees, key employees,** or **disqualified persons**, which are reportable on line 5 or 6.

**TIP** *Complete Form 5500, Annual Return/Report of Employee Benefit Plan, for the organization's plan and file it as a separate return. If the organization has more than one pension plan, complete a Form 5500 for each plan. File the form by the last day of the 7th month after the plan year ends.*

**Line 9. Other employee benefits.** Enter contributions by the filing organization, common paymasters, and payroll/reporting agents to the filing organization's employee benefit programs (such as insurance, health, and welfare programs that aren't an incidental part of a pension plan included on line 8), and the cost of other employee benefits.

For example, report expenses for employee events such as a picnic or holiday party on line 9. Don't include **contributions** on behalf of current or former **officers, directors, trustees, key employees** or other persons that were included on line 5 or 6.

**Line 10. Payroll taxes.** Enter the amount of federal, state, and local payroll taxes for the year but only those taxes that are imposed on the organization as an employer. This includes the employer's share of social security and Medicare taxes, the federal unemployment tax (FUTA), state unemployment compensation taxes, and other state and local payroll taxes. Don't include on line 10 taxes withheld from employees' salaries and paid to various governmental units such as federal, state, and local income taxes and the employees' shares of social security and Medicare taxes. Such withheld amounts are reported as compensation.

**Line 11. Fees for services paid to nonemployees (independent contractors).** Enter on lines 11a through 11g amounts for services provided by **independent contractors** for management, legal, accounting, lobbying, **professional fundraising services**, investment management, and other services, respectively. Include amounts whether or not a Form 1099 was issued to the **independent contractor**. Don't include on line 11 amounts paid to or earned by **employees**, officers, directors, trustees, or disqualified persons for these types of services, which must be reported on lines 5 through 7.

If the organization is able to distinguish between fees paid for independent contractor services and expense payments or reimbursements to the contractor(s), report the fees paid for services on line 11 and the expense payments or reimbursements on the applicable lines in Part IX (including line 24 if no other line is applicable). If the organization is unable to distinguish between service fees and expense payments or reimbursements, report all such amounts on line 11.

**Line 11a. Management fees.** Enter the total fees charged for management services provided by outside firms and individuals.

**Line 11b. Legal fees.** Enter the total legal fees charged by outside firms and individuals. Don't include any penalties, fines, settlements, or judgments imposed against the organization as a result of legal proceedings. Report those expenses on line 24. Report any amounts for lobbying services provided by attorneys on line 11d.

**Line 11c. Accounting fees.** Enter the total accounting and auditing fees charged by outside firms and individuals.

**Line 11d. Lobbying fees.** Enter amounts for activities intended to influence foreign, national, state, or local legislation, including direct **lobbying** and grassroots lobbying.

**Line 11e. Professional fundraising fees.** Enter amounts paid for **professional fundraising services**, including solicitation campaigns and advice or other consulting services supporting in-house fundraising campaigns. If the organization is able to distinguish between fees paid for professional fundraising services and amounts paid for fundraising expenses such as printing, paper, envelopes, postage, mailing list rental, and equipment rental, then fees paid for professional fundraising services should be reported on line 11e and amounts paid for fundraising expenses should be reported on line 24 as other expenses. If the organization is unable to distinguish between these amounts, it should report all such fees and amounts on line 11e.

**Line 11f. Investment management fees.** Enter amounts for investment counseling and portfolio management. Monthly account service fees are considered portfolio management expenses, and must be reported here. Don't include transaction costs such as brokerage fees and commissions, which are considered sales expenses and are included on Part VIII, line 7b.

**Line 11g. Other fees for services.** Enter amounts for other **independent contractor** services not listed on lines 11a through 11f. For example, amounts paid to an independent contractor for advocacy services that don't constitute lobbying should be reported here. For health care organizations, payments to health care professionals who are independent contractors are reported on line 11g. Report on line 11g payments to payroll agents, common paymasters, and other third parties for services provided by those third parties to the filing organization. Report on lines 5–10, as appropriate, payments that reimburse third parties for compensation to the organization's **officers, directors, trustees, key employees,** or other **employees**. Report payments to contractors for information technology services on line 14, rather than on line 11g.

If the amount on line 11g exceeds 10% of the amount on line 25, column (A), the organization must list the type and amount of each line 11g expense on Schedule O (Form 990 or 990-EZ).

**Line 12. Advertising and promotion expenses.** Enter amounts paid for advertising. Include amounts for print and electronic media advertising. Also include Internet site link costs, signage costs, and advertising costs for the organization's in-house fundraising campaigns. Include fees paid to independent contractors for advertising, except for fees paid to **independent contractors** for conducting professional **fundraising** services or campaigns, which are reported on line 11e.

**Line 13. Office expenses.** Enter amounts for supplies (office, classroom, or other supplies); telephone (cell phones and landlines) and facsimile; postage (overnight delivery, parcel delivery, trucking, and other delivery expenses) and mailing expenses; shipping materials; equipment rental; bank fees and other similar costs. Also include printing costs of a general nature. Printing costs that relate to conferences or conventions must be reported on line 19.

**Line 14. Information technology.** Enter amounts for information technology, including hardware, software, and support services such as maintenance, help desk, and other technical support services. Also include expenses for infrastructure support, such as web site design and operations, virus protection and other information security programs and services to keep the organization's web site operational and secured against unauthorized and unwarranted intrusions, and other information technology contractor services. Report payments to information technology employees on lines 5 through 10. Report depreciation/amortization related to information technology on line 22.

**Line 15. Royalties.** Enter amounts for royalties, license fees, and similar amounts that allow the organization to use intellectual property such as patents and copyrights.

**Line 16. Occupancy.** Enter amounts for the use of office space or other facilities, including rent; heat, light, power, and other utilities expenses; property insurance; real estate taxes; mortgage interest; and similar occupancy-related expenses. Don't include on line 16 expenses reported as office expenses (such as telephone expenses) on line 13.

Don't net any rental income received from leasing or subletting rented space against the amount reported on line 16 for occupancy expenses. If the tenant's activities are related to the organization's exempt purpose, report rental income as program-service revenue on Part VIII, line 2, and allocable occupancy expenses on line 16. However, if the tenant's activities aren't program-related, report the rental income on Part VIII, line 6a, and related rental expenses on Part VIII, line 6b.

Don't include employee salaries or depreciation as occupancy expenses. These expenses are reported on lines 5 through 7 and 22, respectively.

**Line 17. Travel.** Enter the total travel expenses, including transportation costs (fares, mileage allowances, and automobile expenses), meals and lodging, and per diem payments. Travel costs include the expenses of purchasing, leasing, operating, and repairing any vehicles owned by the organization and used for the organization's activities. However, if the organization leases vehicles on behalf of its executives or other employees as part of an executive or employee compensation program, the leasing costs are considered employee compensation, and are reported on lines 5 through 7.

**Line 18. Payments of travel or entertainment expenses for any federal, state, or local public officials.** Enter total amounts for travel or entertainment expenses (including reimbursement for such costs) for any federal, state, or local public officials (as determined under section 4946(c)) and their family members (as determined under section 4946(d)). Report amounts for a particular public official only if aggregate

expenditures for the year relating to such official (including family members of such official) exceed $1,000 for the year.

For expenditures that aren't specifically identifiable to a particular individual, the organization can use any reasonable allocation method to estimate the cost of the expenditure to an individual. Amounts not described above can be included in the reported total amount for line 18 or can be reported on line 24. The organization is responsible for keeping records of all travel and entertainment expenses related to a **government official** whether or not the expenses are reported on line 18 or line 24.

**Line 19. Conferences, conventions, and meetings.** Enter the total expenses incurred by the organization in conducting meetings related to its activities. Include such expenses as facility rentals, speakers' fees and expenses, and printed materials. Include the registration fees (but not travel expenses) paid for sending any of the organization's staff to conferences, conventions, and meetings conducted by other organizations. Travel expenses incurred by **officers, directors,** and **employees** attending such conferences, conventions, and meetings must be reported on line 17.

**Line 20. Interest.** Enter the total interest expense for the year. Don't include any interest attributable to rental property (reported on Part VIII, line 6b) or any mortgage interest (reported as an occupancy expense on line 16).

**Line 21. Payments to affiliates.** Enter certain types of payments to organizations affiliated with (closely related to) the filing organization.

*Payments to affiliated state or national organizations.* Dues paid by a local organization to its affiliated state or national (parent) organization are reported on line 21. Report on this line predetermined quota support and dues (excluding membership dues of the type described below) by local agencies to their state or national organizations for unspecified purposes; that is, general use of funds for the national organization's own program and support services.

*Purchases from affiliates.* Purchases of goods or services from affiliates aren't reported on line 21 but are reported as expenses in the usual manner.

*Expenses for providing goods or services to affiliates.* In addition to payments made directly to affiliated organizations, expenses for providing goods or services to affiliates can be reported on line 21 if:
• The goods or services provided aren't related to the program services conducted by the organization furnishing them (for example, when a local organization incurs expenses in the production of a solicitation film for the state or national organization); and
• The costs involved aren't connected with the management and general or fundraising functions of the filing organization. For example, when a local organization gives a copy of its mailing list to the state or national organization, the expense of preparing the copy provided can be reported on line 21, but not the expenses of preparing and maintaining the local organization's master list.

*Voluntary awards or grants to affiliates.* Don't report on line 21 voluntary awards or grants made by the organization to its state or national organizations for specified purposes.

*Membership dues paid to other organizations.* Report membership dues paid to obtain general membership benefits from other organizations, such as regular services, publications, and other materials, on line 24. This is the case if a charitable organization pays dues to a trade association comprised of otherwise unrelated members.

 *Properly distinguishing between payments to affiliates and grants and allocations is especially important if the organization uses Form 990 for state reporting purposes. If the organization uses Form 990 only for reporting to*

*the IRS, payments to affiliated or national organizations that don't represent membership dues reportable as miscellaneous expenses on line 24 can be reported either on line 21 or line 1.*

**Line 22. Depreciation, depletion, and amortization.** If the organization records depreciation, depletion, amortization, or similar expenses, enter the total on line 22. Include any depreciation or amortization of leasehold improvements and intangible assets. An organization isn't required to use the Modified Accelerated Cost Recovery System (MACRS) to compute depreciation reported on Form 990. For an explanation of acceptable methods for computing depreciation, see Pub. 946, How to Depreciate Property. If an amount is reported on this line, the organization is required to maintain books and records to substantiate any amount reported.

**Line 23. Insurance.** Enter total insurance expenses other than insurance attributable to rental property (reported on Part VIII, line 6b). Don't report on this line payments made by organizations exempt under section 501(c)(8), (9), or (17) to obtain insurance benefits for members. Report those expenses on line 4. Don't report on this line the cost of employment-related benefits such as health insurance, life insurance, or disability insurance provided by the organization to or for its **officers, directors, trustees, key employees,** and other **employees**. Report the costs for officers, directors, trustees, and key employees on Part IX, line 5; report the costs for other disqualified persons on Part IX, line 6; and report the costs for other employees on Part IX, line 9. Report the costs for members on Part IX, line 4, not on Part IX, line 23. Don't report on this line property or occupancy-related insurance. Report those expenses on line 16.

**Line 24. Other expenses.** Enter the types and amounts of expenses which weren't reported on lines 1 through 23. Include expenses for medical supplies incurred by health care/medical organizations. Include payments by the organization to professional fundraisers of fundraising expenses such as printing, paper, envelopes, postage, mailing list rental, and equipment rental, if the organization is able to distinguish these expense amounts from fees for professional fundraising services reportable on line 11e. Enter the four largest dollar amounts on lines 24a through 24d and the total of all remaining miscellaneous expenses on line 24e. Don't include a separate entry for "miscellaneous expenses," "program expenses," "other expenses," or a similar general category on lines 24a–d. If the amount on line 24e exceeds 10% of the amount on line 25, column (A), the organization must list the type and amount of each line 24 expense on Schedule O (Form 990 or 990-EZ).

The organization must separately report the amount, if any, of **unrelated business income** taxes that it paid or accrued during the **tax year** on line 24.

**Line 25. Total functional expenses. Section 501(c)(3) and 501(c)(4) organizations.** Add lines 1 through 24e and enter the totals on line 25 in columns (A), (B), (C), and (D).

**All other organizations.** Add lines 1 through 24e and enter the total on line 25 in column (A).

**Line 26. Joint costs.** Organizations that included in program service expenses (column (B) of Part IX) any joint costs from a combined educational campaign and fundraising solicitation must disclose how the total joint costs of all such combined activities were allocated in Part IX between education and fundraising. For instance, if the organization spent $100,000 on joint costs and allocated 10% to education, it would report $100,000 on line 26, column (A), $10,000 in column (B), and $90,000 in column (D). Any costs reported here aren't to be deducted from the other lines in Part IX on which they are reported. Don't check the box unless the organization followed SOP 98-2 (FASB ASC 958-720) in allocating such costs.

An organization conducts a combined educational campaign and fundraising solicitation when it solicits **contributions** (by mail, telephone, broadcast media, or any other means) and includes, with the solicitation, educational material or other information that furthers a bona fide non-fundraising exempt purpose of the organization.

Expenses attributable to providing information regarding the organization itself, its use of past contributions, or its planned use of contributions received, are fundraising expenses and must be reported in column (D). Don't report such expenses as program service expenses in column (B).

Any method of allocating joint costs between columns (B) and (D) must be reasonable under the facts and circumstances of each case. Most states with reporting requirements for charitable organizations and other organizations that solicit contributions either require or allow reporting of joint costs under AICPA Statement of Position 98-2 (SOP 98-2), *Accounting for Costs of Activities of Not-for-Profit Organizations and State and Local Governmental Entities that Include Fundraising*, now codified in FASB Accounting Standards Codification 958-720, Not-for-Profit Entities-Other Expenses (FASB ASC 958-720).

# Part X. Balance Sheet

Check the box in the heading of Part X if Schedule O (Form 990 or 990-EZ) contains any information pertaining to this part.

All organizations must complete Part X. No substitute balance sheet will be accepted. All references to Schedule D are to Schedule D (Form 990), Supplemental Financial Statements.

**Column (A)— Beginning of year.** In column (A), enter the amount from the preceding year's Form 990, column (B). If the organization was excepted from filing Form 990 for the preceding year, enter amounts the organization would have entered in column (B) for that year. If this is the organization's first year of existence, enter zeros on lines 16, 26, 33, and 34 in column (A).

**Column (B)— End of year.** When Schedule D (Form 990) reporting is required for any item in Part X, it is only for the end-of-year balance sheet figure reported in column (B). If this is the organization's final return, enter zeros on lines 16, 26, 33, and 34 in column (B).

**Line 1. Cash (non-interest-bearing).** Enter the total funds that the organization has in cash, including amounts held as "petty cash" at its offices or other facilities, and amounts held in banks in non-interest-bearing accounts. Don't include cash balances held in an investment account with a financial institution and reported on lines 11 through 13.

**Line 2. Savings and temporary cash investments.** Enter the combined total of amounts held in interest-bearing checking and savings accounts, deposits in transit, temporary cash investments (such as money market funds, commercial paper, and certificates of deposit), and U.S. Treasury bills or other governmental obligations that mature in less than a year. Don't include cash balances held in an investment account with a financial institution and reported on lines 11 through 13. Don't include advances to **employees** or **officers** or refundable deposits paid to suppliers or other **independent contractors**. Report the income from these investments on Part VIII, line 3.

**Line 3. Pledges and grants receivable, net.** Enter the total of (a) all pledges receivable, less any amounts estimated to be uncollectible, including pledges made by **officers**, **directors**, **trustees, key employees,** and **highest compensated employees** and (b) all grants receivable.

Organizations that follow **ASC 958** can report the present value of the grants receivable as of each balance sheet date.

**Line 4. Accounts receivable, net.** Enter the organization's total accounts receivable (reduced by any allowance for doubtful accounts) from the sale of goods and the performance of services. Report claims against vendors or refundable deposits with suppliers or others here, if not significant in amount. Otherwise, report them on line 15, Other assets. Report the net amount of all receivables due from **officers, directors, trustees,** or **key employees** on line 5. Report receivables (including loans and advances) due from other disqualified persons on line 6. Receivables (including loans and advances) from **employees** who aren't current or former officers, directors, trustees, key employees, or **disqualified persons** must be reported on line 7.

**Lines 5 and 6. Loans and other receivables from current and former officers, directors, trustees, key employees, and creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons.** Report on line 5 loans and other receivables due from current or former **officers, directors, trustees, key employees,** and **creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons.** Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations must also report on line 6 receivables due from other **disqualified persons** (for purposes of section 4958, see *Appendix G*), and from persons described in section 4958(c)(3)(B). Include all amounts owed on secured and unsecured loans made to such persons. Report interest from such receivables on Part VIII, line 11. Don't report on line 5 or 6 (a) pledges or grants receivable, which are to be reported on line 3 or (b) receivables that are excepted from reporting on Schedule L (Form 990 or 990-EZ), Part II (except for **excess benefit transactions** involving receivables). If the organization must report loans and other receivables on either line 5 or 6, it must answer "Yes" on Part IV, line 26.

**Line 7. Notes and loans receivable, net.** Enter the net amount of all notes receivable and loans receivable not listed on lines 5 and 6, including receivables from unrelated third parties. The term "unrelated third parties" includes **independent contractors** providing goods or services and **employees** who aren't current or former **officers, directors, trustees, key employees, highest compensated employees,** or **disqualified persons.** Don't include the following.
- Receivables reported on line 4.
- Program-related investments reported on line 13.
- Notes receivable acquired as investments reported on line 12.

**Line 8. Inventories for sale or use.** Enter the amount of materials, goods, and supplies held for future sale or use, whether purchased, manufactured by the organization, or donated.

**Line 9. Prepaid expenses and deferred charges.** Enter the amount of short-term and long-term prepayments of expenses attributable to one or more future accounting periods. Examples include prepayments of rent, insurance, or pension costs, and expenses incurred for a solicitation campaign to be conducted in a future accounting period.

**Line 10a. Land, buildings, equipment, and leasehold improvements.** Enter the cost or other basis of all land, buildings, equipment, and leasehold improvements held at the end of the year. Include both property held for investment purposes and property used for the organization's exempt functions. If an amount is reported here, answer "Yes" on Part IV, line 11a, and complete Schedule D (Form 990), Part VI. The amount reported on line 10a must equal the total of Schedule D, Part VI, columns (a) and (b).

**Line 10b. Accumulated depreciation.** Enter the total amount of accumulated depreciation for the assets reported on line 10a.

The amount reported on line 10b must equal the total of Schedule D (Form 990), Part VI, column (c).

**Line 10c. Column (A)—Beginning of year.** Enter the cost or other basis of land, buildings, and equipment, net of any accumulated depreciation, as of the beginning of the year.

**Line 10c. Column (B)—End of year.** Enter line 10a minus line 10b. The amount reported must equal the total of Schedule D (Form 990), Part VI, column (d).

**Line 11. Investments—publicly traded securities.** Enter the total value of **publicly traded securities** held by the organization as investments. Publicly traded securities include common and preferred stocks, bonds (including governmental obligations such as bonds and Treasury bills), and mutual fund shares that are listed and regularly traded in an over-the-counter market or an established exchange and for which market quotations are published or are otherwise readily available. Report dividends and interest from these **securities** on Part VIII, line 3.

Don't report on line 11 publicly traded stock for which the organization holds 5% or more of the outstanding shares of the same class or publicly traded stock in a corporation that comprises more than 5% of the organization's **total assets.** Report these investments on line 12.

**Line 12. Investments—other securities.** Enter on this line the total value of all **securities,** partnerships, or funds that aren't publicly traded. This includes stock in a closely held company whose stock isn't available for sale to the general public or which isn't widely traded. Other securities reportable on line 12 also include publicly traded stock for which the organization holds 5% or more of the outstanding shares of the same class, and publicly traded stock in a corporation that comprises more than 5% of the organization's **total assets.** Don't include program-related investments.

If an amount is reported on this line that is 5% or more of the amount reported on Part X, line 16, answer "Yes" on Part IV, line 11b and complete Schedule D (Form 990), Part VII. The amount reported on column (B), line 12, must equal the total of Schedule D (Form 990), Part VII, column (b).

**Line 13. Program-related investments.** Report here the total book value of all investments made primarily to accomplish the organization's exempt purposes rather than to produce income. Examples of program-related investments include student loans and notes receivable from other exempt organizations that obtained the funds to pursue the filing organization's exempt function.

If the amount reported on this line is 5% or more of the amount reported on Part X, line 16, answer "Yes" on Part IV, line 11c and complete Part VIII of Schedule D (Form 990). The amount reported on Part X, column (B), line 13, must equal the total of Schedule D (Form 990), Part VIII, column (b).

**Line 14. Intangible assets.** Report on this line the total value of all non-monetary, non-physical assets such as copyrights, patents, trademarks, mailing lists, or goodwill.

**Line 15. Other assets.** Report on this line the total book value of all assets held and not reported on lines 1 through 14.

If an amount is reported on this line that is 5% or more of the amount reported on Part X, line 16, answer "Yes" on Part IV, line 11d and complete Schedule D (Form 990), Part IX. The amount reported on Part X, column (B), line 15, must equal the total of Schedule D (Form 990), Part IX, column (b).

**Line 16. Total assets.** Add the totals in columns (A) and (B), lines 1 through 15. The amounts on line 16 must equal the amounts on line 34 for both the beginning and end of the year. The organization must enter a zero or a dollar amount on this line.

**Line 17. Accounts payable and accrued expenses.** Enter the total of accounts payable to suppliers, service providers, property managers, and other **independent contractors,** plus accrued expenses such as salaries payable, accrued payroll taxes, and interest payable.

**Line 18. Grants payable.** Enter the unpaid portion of grants and awards that the organization has committed to pay other organizations or individuals, whether or not the commitments have been communicated to the grantees.

**Line 19. Deferred revenue.** Report revenue that the organization has received but not yet earned as of the balance sheet date under its method of accounting.

**Line 20. Tax-exempt bond liabilities.** Enter the amount of **tax-exempt bonds** (or other obligations) for which the organization has a direct or indirect liability that were either issued by the organization on behalf of a state or local governmental unit, or by a state or local governmental unit on behalf of the organization, and for which the organization has a direct or indirect liability. Tax-exempt bonds include state or local bonds and any obligations, including direct borrowing from a lender, or certificates of participation, the interest on which is excluded from the gross income of the recipient for federal income tax purposes under section 103.

See also Part IV, line 24a, and Schedule K (Form 990).

**Line 21. Escrow or custodial account liability.** Enter the amount of funds or other assets held in an **escrow or custodial account** for other individuals or organizations. Enter these amounts only if the related assets (such as cash) are reported on lines 1 through 15 of this part. If an amount is reported on this line, the organization must also answer "Yes" on Part IV, line 9, and complete Schedule D (Form 990), Part IV. If the organization has signature authority over, or another interest in an **escrow or custodial account** for which it doesn't report the assets or liabilities, it must also answer "Yes" on Part IV, line 9, and complete Schedule D, Part IV.

**Example.** A credit counseling organization collects amounts from debtors to remit to creditors and reports the amounts temporarily in its possession as cash on line 1 of the balance sheet. It must then report the corresponding liability (the amounts to be paid to the creditors on the debtors' behalf) on line 21.

**Lines 22–24.** Enter on line 22 the unpaid balance of loans and other payables (whether or not secured) to current and former **officers, directors, trustees, key employees, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons,** and persons described in section 4958(c)(3)(B). If the organization reports a loan payable on this line, it must answer "Yes" on Part IV, line 26. Don't report on line 22 accrued but unpaid **compensation** owed by the organization. Don't report on line 22 loans and payables excepted from reporting on Schedule L, Part II (except for **excess benefit transactions** involving receivables).

On line 23, enter the total amount of secured mortgages and notes payable to unrelated third parties that are secured by the organization's assets as of the end of the **tax year**. Report on line 25 (and not line 23) any secured mortgages and notes payable to **related organizations**.

On line 24, enter the total amount of notes and loans that are payable to unrelated third parties but aren't secured by the organization's assets. Report on line 25 (and not line 24) any unsecured payables to related organizations.

**Line 25. Other liabilities.** Enter the total amount of all liabilities not properly reportable on lines 17 through 24. Items properly reported on this line include federal income taxes payable and secured or unsecured payables to **related organizations**. The organization must also answer "Yes" on Part IV, line 11e, and complete Schedule D (Form 990), Part X.

**Line 26. Total liabilities.** Add the totals in columns (A) and (B), lines 17 through 25. The organization must enter a zero or a dollar amount on this line.

## Net Assets and Fund Balances

FASB Accounting Standards Codification 958, Not-for-Profit Entities **(ASC 958)** provides standards for external financial statements certified by an independent accountant for certain types of nonprofit organizations. ASC 958-10-15-5 doesn't apply to credit unions, voluntary employees' beneficiary associations, supplemental unemployment benefit trusts, section 501(c)(12) cooperatives, and other member benefit or mutual benefit organizations.

While some states may require reporting according to FASB ASC 958, the IRS doesn't. However, a Form 990 return prepared according to ASC 958 will be acceptable to the IRS.

**Organizations that follow ASC 958.** If the organization follows ASC 958, check the box above line 27, and complete lines 27 through 28 and lines 32 and 33. Classify and report net assets in two groups in Part X (unrestricted, donor-restricted) based on the existence or absence of donor-imposed restrictions and the nature of those restrictions. Enter the sum of the two classes of net assets on line 32. On line 33, add the amounts on lines 26 and 32 to show total liabilities and net assets. The amount on line 33 must equal the amount on line 16.

 *Effective for reporting years ending after December 15, 2017, ASC 958-205, Not-for-Profit Entities–Presentation of Financial Statements **(ASC 958),** addresses reporting of **donor-restricted endowments** and **board-designated (quasi) endowments.** Further, most states have enacted the Uniform Prudent Management of Institutional Funds Act (UPMIFA). If the organization is subject to UPMIFA or **ASC 958,** it may affect the amounts reported on lines 27 through 28.*

**Line 27. Net assets without donor restrictions.** Enter the balance per books of net assets without donor restrictions. All funds without donor-imposed restrictions must be reported on line 27, regardless of the existence of any board designations or appropriations.

**Line 28. Net assets with donor restrictions.** Enter the balance per books of **net assets with donor restrictions**. Donors' restrictions may require that resources be used after a specified date (time restrictions), or that resources be used for a specified purpose (purpose restrictions), or both. Donors may also stipulate that assets, such as land or works of art, be used for a specified purpose, be preserved, and not be sold or donated with stipulations that they be invested to provide a permanent source of income.

**Organizations that don't follow ASC 958.** If the organization doesn't follow **ASC 958,** check the box above line 29 and complete lines 29 through 33. Report capital stock, trust principal, or current funds on line 29. Report paid-in capital surplus or land, building, or equipment funds on line 30. Report retained earnings, endowment, accumulated income, or other funds on line 31.

**Line 29. Capital stock or trust principal, or current funds.** For corporations, enter the balance per books of capital stock accounts. Show par or stated value (or for stock with no par or stated value, total amount received on issuance) of all classes of stock issued and not yet canceled. For trusts, enter the amount in the trust principal or corpus. For organizations using the fund method of accounting, enter the fund balances for the organization's current restricted and unrestricted funds.

**Line 30. Paid-in or capital surplus, or land, building, and equipment fund.** Enter the balance of paid-in capital in excess of par or stated value for all stock issued and not yet canceled, as recorded on the corporation's books. If stockholders or others made donations that the organization records as paid-in capital, include them here. Enter the fund balance for the land, building, and equipment fund on this line.

**Line 31. Retained earnings, endowment, accumulated income, or other funds.** For corporations, enter the balance of retained earnings as recorded on the corporation's books, or similar account, minus the cost of any corporate treasury stock. For trusts, enter the balance in the accumulated income or similar account. For those organizations using the fund method of accounting, enter the total of the fund balances for the **net assets without donor restrictions** funds, and the **net assets with donor restrictions** funds, as well as balances of any other funds not reported on lines 29 and 30.

**Line 32. Total net assets or fund balances.** For organizations that follow **ASC 958** enter the total of lines 27 through 28. For all other organizations, enter the total of lines 29 through 31. All filers must enter a zero or a dollar amount on this line.

**Line 33. Total liabilities and net assets/fund balances.** Enter the total of line 26 and line 32. This amount must equal the amount on line 16. The organization must enter a zero or a dollar amount on this line.

# Part XI. Reconciliation of Net Assets

Check the box in the heading of Part XI if Schedule O (Form 990 or 990-EZ) contains any information pertaining to this part.

**Line 1.** Enter the amount of total revenue reported on Part VIII, line 12, column (A).

**Line 2.** Enter the amount of total expenses reported on Part IX, line 25, column (A).

**Line 3.** Enter the difference between lines 1 and 2.

**Line 4.** Enter the amount of net assets or fund balances at the beginning of year reported on Part X, line 32, column (A). This amount should be the same amount reported on Part X, line 33, column (B), for the prior year's return.

**Line 5.** Report the net unrealized gains or losses on investments reported in the organization's audited financial statements (or other financial statements). This amount represents the change in market value of investments that weren't sold or exchanged during the tax year.

**Line 6.** Report the value of services or use of facilities donated to the organization (net of services or use of facilities donated by the organization) reported as income or expense in the financial statements.

**Line 8.** Report the net prior period adjustments during the tax year reported in the financial statements. Prior period adjustments are corrections of errors in financial statements of prior years, or changes in accounting principles applied to such years. The errors may include math errors, mistakes in applying accounting principles, or oversight or misuse of facts that existed at the time the financial statements were prepared.

**Line 9.** Enter the total amount of other changes in net assets or fund balances during the year. Amounts to report here include losses on uncollectible pledges, refunds of contributions and program service revenue, reversal of grant expenses, any difference between FMV and book value of property given as an award or grant, and any other changes in net assets or fund balances not listed on lines 5–8. Itemize these changes on Schedule O (Form 990 or 990-EZ) and check the box in the heading of Part XI.

**Line 10.** Combine the amounts on lines 3 through 9. The total must equal the amount reported on Part X, line 32, column (B).

# Part XII. Financial Statements and Reporting

Check the box in the heading of Part XII if Schedule O (Form 990 or 990-EZ) contains any information pertaining to this part.

**Line 1. Accounting method.** Indicate the method of accounting used in preparing this return. See *Part D*, earlier. Provide an explanation on Schedule O (Form 990 or 990-EZ) (1) if the organization changed its method of accounting from a prior year, or (2) if the organization checked the "Other" accounting method box.

**Line 2. Financial statements and independent accountant.** Answer "Yes" or "No" to indicate on line 2a or line 2b whether the organization's **financial statements** for the **tax year** were **compiled, reviewed**, or **audited** by an independent accountant. An accountant is independent if he or she meets the standards of independence set forth by the American Institute of Certified Public Accountants (AICPA), the Public Company Accounting Oversight Board (PCAOB), or another similar body that oversees or sets standards for the accounting or auditing professions.

If "Yes" on either line 2a or 2b, answer "Yes" or "No" on line 2c to indicate whether the organization has a committee that is responsible under its governing documents or through delegation by its governing body for (i) overseeing the compilation, review, or audit of the financial statements, and (ii) the selection of an independent accountant that compiled, reviewed, or audited the statements. Answer "Yes" only if both (i) and (ii) apply. If this process has changed from the prior year, describe on Schedule O (Form 990 or 990-EZ).

**Line 3a. Single Audit Act and OMB Circular A-133.** Answer "Yes," if during the year the organization was required under the Single Audit Act of 1984, as amended in 1996, and OMB Circular A-133 to undergo an audit or audits because of its receipt of federal contract awards. The Single Audit Act requires states, local governments, and nonprofit organizations that spend $750,000 or more of federal awards in a year to obtain an annual audit according to the Act.

**Note.** The Single Audit Act of 1984 and OMB Circular A-133 are superseded by Uniform Guidance, 2 C.F.R. Part 200, Subpart F, and now requires states, local governments, and nonprofit organizations that expend $750,000 (previously was $500,000) or more of federal awards in a year to obtain an annual audit.

**Line 3b. Required audits.** If "Yes" on line 3a, indicate whether the organization has undergone the required audit or audits. Answer "Yes," if the audit was completed or in progress during the organization's tax year. If the answer to line 3b is "No," explain on Schedule O (Form 990 or 990-EZ) why the organization hasn't undergone any required audits and describe any steps taken to undergo such audits.

**Paperwork Reduction Act Notice.** We ask for the information on these forms to carry out the Internal Revenue laws of the United States. You are required to give us the information. We need it to ensure that you are complying with these laws and to allow us to figure and collect the right amount of tax. You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays

a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103. However, certain returns and return information of tax exempt organizations and trusts are subject to public disclosure and inspection, as provided by section 6104.

**Estimates of Taxpayer Burden.** These include Forms in the 990 series and attachments and 1023, 1024, 1028, 5578, 5884-C, 8038, 8038-B, 8038-CP, 8038-G, 8038-GC, 8038-R, 8038-T, 8038-TC, 8328, 8718, 8282, 8453-EO, 8453-X, 8868, 8870, 8871, 8872, 8879-EO, 8886-T, 8899 and their schedules and all the forms tax-exempt organizations attach to their information returns. Time spent and out-of-pocket costs are presented separately. Time burden includes the time spent preparing to file and to file, with recordkeeping representing the largest component. Out-of-pocket costs include any expenses incurred by tax exempt organizations to prepare and submit their tax returns. Examples include tax return preparation and submission fees, postage and photocopying costs, and tax preparation software costs. Note that these estimates don't include burden associated with post-filing activities. IRS operational data indicate that electronically prepared and filed returns have fewer arithmetic errors, implying lower post-filing burden.

Reported time and cost burdens are national averages and don't necessarily reflect a "typical" case. Most tax exempt organizations experience lower than average burden, with tax exempt organization burden varying considerably by taxpayer type. For instance, the estimated average time burden for all tax exempt organizations filing Forms 990, 990-EZ, 990-PF, 990-T, and 990-N and related forms is 32.7 hours, with an average cost of $932 per return. This average includes all associated forms and schedules, across all preparation methods and tax exempt organization activities.

## Fiscal Year 2020 Form 990 Series Tax Compliance Cost Estimates

| | Form 990 | Form 990-EZ | Form 990-PF | Form 990-T | Form 990-N |
|---|---|---|---|---|---|
| Projections of the Number of Returns to be Filed with IRS | 315,762 | 232,345 | 118,192 | 198,798 | 741,133 |
| Estimated Average Total Time (Hours) | 85 | 45 | 47 | 40 | 2 |
| Estimated Average Total Out-of-Pocket Costs | $2,600 | $500 | $2,000 | $1,500 | $10 |
| Estimated Average Total Monetized Burden | $8,000 | $1,200 | $3,900 | $4,400 | $30 |
| Estimated Total Time (Hours) | 26,760,000 | 10,500,000 | 5,510,000 | 8,040,000 | 1,630,000 |
| Estimated Total Out-of-Pocket Costs (**Note.** Totals may not add due to rounding.) | $835,700,000 | $127,500,000 | $236,200,000 | $290,300,000 | $6,800,000 |

**Note.** Amounts above are for FY2020. Reported time and cost burdens are national averages and don't necessarily reflect a "typical" case. Most taxpayers experience lower than average burden, with taxpayer burden varying considerably by taxpayer type. Detail may not add due to rounding.

### Comments and suggestions.

If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you. You can send us comments from *IRS.gov/FormComments*. Or you can write to the Internal Revenue Service, Tax Forms and Publications Division, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Don't send your return to this address. Instead, see the *General Instructions, Section E, When, Where, and How to File,* earlier, for the location for filing your return.

# Business Activity Codes

The codes listed in this section are a selection from the North American Industry Classification System (NAICS) that should be used in completing Form 990, Part VIII, lines 2 and 11. If you don't see a code for the activity you are trying to categorize, select the appropriate code from the NAICS website at *2017 NAICS Census website*. Select the most specific 6-digit code available that describes the activity producing the income being reported. Note that most codes describe more than one type of activity. Avoid using codes that describe the organization rather than the income-producing activity.

## Business Activity Codes

### Agriculture, Forestry, Hunting and Fishing
**Code**
- 110000 Agriculture, forestry, hunting and fishing
- 111000 Crop production

### Mining
**Code**
- 211120 Crude petroleum extraction
- 211130 Natural gas extraction
- 212000 Mining (except oil and gas)

### Utilities
**Code**
- 221000 Utilities

### Construction
**Code**
- 230000 Construction
- 236000 Construction of buildings

### Manufacturing
**Code**
- 310000 Manufacturing
- 323100 Printing and related support activities

### Wholesale Trade
**Code**
- 423000 Merchant wholesalers, durable goods
- 424000 Merchant wholesalers, nondurable goods

### Retail Trade
**Code**
- 441100 Automobile dealers
- 442000 Furniture and home furnishings stores
- 443142 Computer and software stores
- 444100 Building materials and supplies dealers
- 445000 Grocery stores
- 445200 Specialty food stores
- 446110 Pharmacies and drug stores
- 446199 All other health and personal care stores
- 448000 Clothing and clothing accessories stores
- 451110 Sporting goods stores
- 451211 Book stores
- 452000 General merchandise stores
- 453000 Miscellaneous store retailers
- 453220 Gift, novelty, and souvenir stores
- 453310 Used merchandise stores
- 454110 Electronic shopping and mail-order houses

### Transportation and Warehousing
**Code**
- 485000 Transit and ground passenger transportation
- 493000 Warehousing and storage

### Information
**Code**
- 511110 Newspaper publishers (except Internet)
- 511120 Periodical publishers (except Internet)
- 511130 Book publishers (except Internet)
- 511140 Directory and mailing list publishers (except Internet)
- 511190 Other publishers (except Internet)
- 512000 Motion picture and sound recording industries
- 515100 Radio and television broadcasting (except Internet)
- 517000 Telecommunications (including paging, cellular, satellite, cable, other telecommunications, and Internet service providers)
- 519100 Other information services (including news syndicates and libraries)
- 519130 Internet Publishing

### Data Processing Services
**Code**
- 518210 Data Processing, Hosting, and Related Services

### Finance and Insurance
**Code**
- 522100 Depository credit intermediation (including commercial banking, savings institutions, and credit unions)
- 522200 Nondepository credit intermediation (including credit card issuing and sales financing)
- 522210 Credit card issuing
- 522220 Sales Financing
- 522291 Consumer lending
- 522292 Real estate credit
- 522298 Other nondepository credit intermediation
- 523000 Securities, commodity contracts, and other financial investments and related activities
- 523920 Portfolio management
- 523930 Investment advice
- 524113 Direct life insurance carriers
- 524114 Direct health and medical insurance carriers
- 524126 Direct property and casualty insurance carriers
- 524130 Reinsurance carriers
- 524292 Third-party administration of insurance and pension funds
- 524298 All other insurance-related activities
- 525100 Insurance and employee benefit funds
- 525920 Trusts, estates, and agency accounts
- 525990 Other Financial vehicles (including mortgage REITs)

### Real Estate and Rental Leasing
**Code**
- 531110 Lessors of residential buildings and dwellings (including equity REITs)
- 531120 Lessors of nonresidential buildings (except minwarehouses) (including equity REITs)
- 531190 Lessors of other real estate property (including equity REITs)
- 531310 Real estate property managers
- 531390 Other activities related to real estate
- 532000 Rental and leasing services
- 532420 Office machinery and equipment rental and leasing

### 533110 Lessors of nonfinancial intangible assets (except copyrighted works)

### Professional, Scientific, and Technical Services
**Code**
- 541100 Legal services
- 541990 Consumer credit counseling services
- 541200 Accounting, tax preparation, bookkeeping, and payroll services
- 541300 Architectural, engineering, and related services
- 541380 Testing laboratories
- 541511 Custom computer programming services
- 541519 Other computer-related services
- 541610 Management consulting services
- 541700 Scientific research and development services
- 541800 Advertising and related services
- 541840 Direct mail advertising
- 541900 Other professional, scientific, and technical services

### Management of Companies and Enterprises
**Code**
- 551111 Offices of bank holding companies
- 551112 Offices of other holding companies

### Administrative and Support Services
**Code**
- 561000 Administrative and support services
- 561300 Employment services
- 561439 Other business service centers
- 561499 All other business support services
- 561500 Travel arrangement and reservation services
- 561520 Tour operators
- 561700 Services to buildings and dwellings

### Waste Management and Remediation Services
**Code**
- 562000 Waste management and remediation services (sanitary services)

### Educational Services
**Code**
- 611420 Computer training
- 611430 Professional and management development training
- 616000 Other schools and instruction (other than elementary and secondary schools or colleges and universities, which should select a code to describe their unrelated activities)
- 611710 Educational support services

### Healthcare and Social Assistance
**Code**
- 621110 Offices of physicians

- 621300 Offices of other health practitioners
- 621400 Outpatient care centers
- 621500 Medical and diagnostic laboratories
- 621610 Home health care services
- 621910 Ambulance services
- 621990 All other ambulatory health care services
- 623000 Nursing and residential care facilities
- 623990 Other residential care facilities
- 624100 Individual and family services
- 624110 Community centers (except rec. only), youth Adoption agencies
- 624200 Community food and housing, and emergency and other relief services
- 624210 Meal delivery programs, Soup kitchens, or Food banks
- 624310 Vocational rehabilitation services
- 624410 Child day care services

### Arts, Entertainment, and Recreation
**code**
- 711110 Theater companies and dinner theaters
- 711120 Dance companies
- 711130 Musical groups and artists
- 711190 Other performing art companies
- 711210 Spectator sports (including sports clubs and racetracks)
- 711300 Promoters of performing arts, sports and similar events
- 713110 Amusement and theme parks
- 713200 Gambling industries
- 713910 Golf courses and country clubs
- 713940 Fitness and recreational sports centers
- 713990 All other amusement and recreation industries (including skiing facilities, marinas, and bowling centers)

### Accommodation and Food Services
**Code**
- 721000 Accommodation
- 721110 Hotels (except casino hotels) and motels
- 721210 RV (recreational vehicle) parks and recreational camps
- 721310 Rooming and boarding houses, dormitories, and workers' camps
- 722320 Caterers
- 722410 Drinking places (alcoholic beverages)
- 722511 Full-service restaurants
- 722513 Limited-service restaurants
- 722514 Cafeterias and buffets
- 722515 Snack and non-alcoholic beverage bars

### Other Services
**Code**
- 811000 Repair and maintenance
- 812300 Drycleaning and laundry services
- 812900 Other personal services
- 812930 Parking lots and garages

| Other | | | |
|---|---|---|---|
| **Code** | | 900002 | Rental of personal property |
| | | 900003 | Passive income activities with controlled organizations |
| 900001 | Investment activities of section 501(c)(7), (9), or (17) organizations | 900004 | Exploited exempt activities |
| | | 900099 | Other activity |

# Glossary

**NOTES:**

- *Words in bold within a definition are defined elsewhere within the Glossary.*
- *All section references are to the Internal Revenue Code (Title 26 of U.S. Code) or regulations under Title 26, unless otherwise specified.*
- *Definitions are for purposes of filing Form 990 (and Schedules) only.*

**35% controlled entity**

*An entity that is owned, directly or indirectly (for example, under constructive ownership rules of section 267(c)), by a given person, such as the organization's current or former **officers, directors, trustees,** or **key employees** listed on Form 990, Part VII, Section 1, or the **family members** thereof (listed persons) as follows:*

*1.   A corporation in which listed persons own more than 35% of the total combined voting power;*

*2.   A partnership in which listed persons own more than 35% of the profits interest; or*

*3.   A trust or estate in which listed persons own more than 35% of the beneficial interest.*

**Accountable plan**

*A reimbursement or other expense allowance arrangement that satisfies the requirements of section 62(c) by meeting the requirements of business connection, substantiation, and returning amounts in excess of substantiated expenses. See Regulations section 1.62-2(c)(2).*

**Activities conducted outside the United States**

*For purposes of Schedule F (Form 990), Statement of Activities Outside the United States, include grantmaking, **fundraising, unrelated trade or business**, program services, **program-related investments,** other investments, or **maintaining offices, employees, or agents** in particular regions outside the **United States**.*

**Applicable tax-exempt organization**

*A section 501(c)(3), 501(c)(4), or 501(c)(29) organization that is tax-exempt under section 501(a), or that was such an organization at any time during the 5-year period ending on the day of the **excess benefit transaction**.*

**Art**

*See **Works of art**.*

**ASC 740**

*See **FIN 48 (ASC 740)**.*

**ASC 958**

*Financial Accounting Standards Board, Accounting Standards Codification 958 **(ASC 958)** provides standards for external financial statements certified by an independent accountant for certain types of nonprofit organizations. **ASC 958** doesn't apply to credit unions, voluntary employees' beneficiary associations, supplemental unemployment benefit trusts, section 501(c)(12) cooperatives, and other member benefit or mutual benefit organizations.*
*While some states may require reporting according to ASC 958, the IRS doesn't. However, a Form 990 return prepared according to ASC 958 will be acceptable to the IRS.*

**ASC 2016–14**

*Accounting Standards Update 2016-14 is codified in Accounting Standards Codification 958, Not-for-Profit Entities **(ASC 958)**.*

**Audit**

*A formal examination of an organization's financial records and practices by an independent, certified public accountant with the objective of issuing a report on the organization's financial statements as to whether those statements are fairly stated according to generally accepted accounting principles (or other recognized comprehensive basis of accounting).*

**Audited financial statements**

*Financial statements accompanied by a formal opinion or report prepared by an independent, certified public accountant with the objective of assessing the accuracy and reliability of the organization's **financial statements**.*

**Audit committee**

*A committee, generally established by the **governing body** of an organization, with the responsibilities to oversee the organization's financial reporting process, monitor choice of accounting policies and principles, monitor internal control processes, or oversee hiring and performance of any external auditors.*

**Bingo**

*A game of chance played with cards that are generally printed with five rows of five squares each. Participants place markers over randomly called numbers on the cards in an attempt to form a pre-selected pattern such as a horizontal, vertical, or diagonal line, or all four corners. The first participant to form the pre-selected pattern wins the game. To be a bingo game, the game must be of the type described in which wagers are placed, winners are determined, and prizes or other property are distributed in the presence of all persons placing wagers in that game. Satellite, Internet, and progressive or event bingo aren't bingo, because they are conducted in many different places simultaneously, and the winners aren't all present when the wagers are placed, the winners are determined, and the prizes are distributed. Thus, all revenue and expenses associated with satellite, Internet, and progressive or event bingo generally should be included under **pull tabs**. Certain bingo games within a hybrid gaming event (such as progressive or event bingo) can also qualify as bingo if the individual game meets the preceding definition of bingo.*

**Board-designated endowment**

*See **quasi-endowment**.*

**Bond issue**

*An issue of two or more bonds that are:*

1. *Sold at substantially the same time;*
2. *Sold under the same plan of financing; and*
3. *Payable from the same source of funds.*

*See Regulations section 1.150-1(c).*

**Business relationship**

*For purposes of Part VI, line 2, business relationships between two persons include the following.*

  1. *One person is employed by the other in a sole proprietorship or by an organization with which the other is associated as a **trustee, director, officer**, or greater-than-35% owner.*

  2. *One person is transacting business with the other (other than in the ordinary course of either party's business on the same terms as are generally offered to the public), directly or indirectly, in one or more contracts of sale, lease, license, loan, performance of services, or other transaction involving transfers of cash or property valued in excess of $10,000 in the aggregate during the organization's tax year. Indirect transactions are transactions with an organization with which the one person is associated as a trustee, director, officer, or greater-than-35% owner. Such transactions don't include charitable contributions to tax-exempt organizations.*

  3. *The two persons are each a director, trustee, officer, or greater-than-10% owner in the same business or investment entity (but not in the same tax-exempt organization).*

  *Ownership is measured by stock ownership (either voting power or value) of a corporation, profits or capital interest in a partnership or limited liability company, membership interest in a nonprofit organization, or beneficial interest in a trust. Ownership includes indirect ownership (for example, ownership in an entity that has ownership in the entity in question); there can be ownership through multiple tiers of entities.*

**Cash contributions**

***Contributions** received in the form of cash, checks, money orders, credit card charges, wire transfers, and other transfers and deposits to a cash account of the organization.*

**Central organization**

*The organization, sometimes referred to as the parent organization, that holds a **group exemption** letter for one or more **subordinate organizations** under its general supervision and control.*

**CEO, executive director, or top management official**

*See **top management official**. "CEO" stands for chief executive officer.*

**Certified historic structure**

*Any building or structure listed in the National Register of Historic Places as well as any building certified as being of historic significance to a registered historic district. See section 170(h)(4)(B) for special rules that apply to* **contributions** *made after August 17, 2006.*

**Church**

*Certain characteristics are generally attributed to churches. These attributes of a church have been developed by the IRS and by court decisions. They include: distinct legal existence; recognized creed and form of worship; definite and distinct ecclesiastical government; formal code of doctrine and discipline; distinct religious history; membership not associated with any other church or denomination; organization of ordained ministers; ordained ministers selected after completing prescribed courses of study; literature of its own; established places of worship; regular congregations; regular religious services; Sunday schools for the religious instruction of the young; schools for the preparation of its ministers. The IRS generally uses a combination of these characteristics, together with other facts and circumstances, to determine whether an organization is considered a church for federal tax purposes. A convention or association of churches is generally treated like a church for federal tax purposes. See Pub. 1828,* Tax Guide for Churches and Religious Organizations.

**Closely held stock**

*Generally, shares of stock in a closely held company that isn't available for sale to the general public or which isn't widely traded (see further explanation in the instructions for Part X, line 12, and Schedule M (Form 990), Noncash Contributions, line 10).*

**Collectibles**

*Include autographs, sports memorabilia, dolls, stamps, coins, books (other than books and publications reported on line 4 of Schedule M), gems, and jewelry (other than costume jewelry reportable on line 5 of Schedule M).*

**Collections of works of art, historical treasures, and other similar assets**

*Include collections, as described in ASC 958-360-45, of* **works of art**, **historical treasures**, *and other similar assets held for public exhibition, education, or research in furtherance of public service.*

**Compensation**

*Unless otherwise provided, all forms of cash and noncash payments or benefits provided in exchange for services, including salary and wages, bonuses, severance payments, deferred payments, retirement benefits, fringe benefits, and other financial arrangements or transactions such as personal vehicles, meals, housing, personal and family educational benefits, below-market loans, payment of personal or family travel, entertainment, and personal use of the organization's property. Compensation includes payments and other benefits provided to both* **employees** *and* **independent contractors** *in exchange for services. See also* **deferred compensation**, **nonqualified deferred compensation**, *and* **reportable compensation**.

**Compilation (compiled financial statements)**

*A compilation is a presentation of* **financial statements** *and other information that is the representation of the management or ownership of an organization and which hasn't been reviewed or audited by an independent accountant.*

**Conflict of interest policy**

*A policy that defines conflict of interest, identifies the classes of individuals within the organization covered by the policy, facilitates disclosure of information that can help identify conflicts of interest, and specifies procedures to be followed in managing conflicts of interest. A conflict of interest arises when a person in a position of authority over an organization, such as an* **officer**, **director**, *or manager, can benefit financially from a decision he or she could make in such capacity, including indirect benefits such as to* **family members** *or businesses with which the person is closely associated. For this purpose, a conflict of interest doesn't include questions involving a person's competing or respective duties to the organization and to another organization, such as by serving on the boards of both organizations, that don't involve a material financial interest of, or benefit to, such person. For a description of "conflict of interest" for purposes of determining whether* **governing body** *members who are reviewing a potential* **excess benefit transaction** *have a conflict of interest, pursuant to Regulations section 53.4958-6(c)(1)(iii), see instructions for Part VI, line 15.*

**Conservation easement**

*A restriction (granted in perpetuity) on the use that may be made of real property granted exclusively for conservation purposes. Conservation purposes include preserving land areas for outdoor recreation by, or for the education of, the general public; protecting a relatively natural habitat of fish, wildlife, or plants, or a similar ecosystem; preserving open space, including farmland and forest land, where such preservation will yield a significant public benefit and is either for the scenic enjoyment of the general public or pursuant to a clearly defined federal, state, or local governmental conservation policy; and preserving a historically important land area or a certified historic structure. For more information, see section 170(h) and Notice 2004-41, 2004-2 C.B. 31.*

**Contributions**

*Unless otherwise provided, includes donations, gifts, bequests, grants, and other transfers of money or property to the extent that adequate consideration isn't provided in exchange and that the contributor intends to make a gift, whether or not made for charitable purposes. A transaction can be partly a sale and partly a contribution, but discounts provided on sales of goods in the ordinary course of business shouldn't be reported as contributions. Neither donations of services (such as the value of donated advertising space, broadcast air time, or discounts on services) nor donations of use of materials, equipment, or facilities should be reported as contributions. For purposes of Form 990, a distribution to a section 501(c)(3) organization from a split interest trust (for example, charitable remainder trust, charitable lead trust) is reportable as a contribution. See also **cash contributions** and **noncash contributions.***

**Control**

*For purposes of determining **related organizations**:*

*Control of a nonprofit organization (or other organization without owners or persons having beneficial interests, whether the organization is taxable or tax-exempt)*
*One or more persons (whether individuals or organizations) control a nonprofit organization if they have the power to remove and replace (or to appoint, elect, or approve or veto the appointment or election of, if such power includes a continuing power to appoint, elect, or approve or veto the appointment or election of, periodically or in the event of vacancies) a majority of the nonprofit organization's directors or trustees, or a majority of members who elect a majority of the nonprofit organization's directors or trustees. Such power can be exercised directly by a (parent) organization through one or more of the (parent) organization's officers, directors, trustees, or agents, acting in their capacity as officers, directors, trustees, or agents of the (parent) organization. Also, a (parent) organization controls a (subsidiary) nonprofit organization if a majority of the subsidiary's directors or trustees are trustees, directors, officers, employees, or agents of the parent.*

*Control of a stock corporation*
*One or more persons (whether individuals or organizations) control a stock corporation if they own more than 50% of the stock (by voting power or value) of the corporation.*

*Control of a partnership or limited liability company*
*One or more persons control a partnership if they own more than 50% of the profits or capital interests in the partnership (including a limited liability company treated as a partnership or disregarded entity for federal tax purposes, regardless of the designation under state law of the ownership interests as stock, membership interests, or otherwise). A person also controls a partnership if the person is a managing partner or managing member of a partnership or limited liability company which has three or fewer managing partners or managing members (regardless of which partner or member has the most actual control), or if the person is a general partner in a limited partnership which has three or fewer general partners (regardless of which partner has the most actual control). For this purpose, a "managing partner" is a partner designated as such under the partnership agreement, or regularly engaged in the management of the partnership even though not so designated.*

*Control of a trust with beneficial interests*
*One or more persons control a trust if they own more than 50% of the beneficial interests in the trust. A person's beneficial interest in a trust shall be determined in proportion to that person's actuarial interest in the trust as of the end of the tax year. See Regulations sections 301.7701-2, 3, and 4 for more information on classification of corporations, partnerships, disregarded entities, and trusts. Control can be indirect. See the Schedule R (Form 990) instructions for a description of indirect control.*

**Controlled entity**

*An organization controlled by a **controlling organization under section 512(b)(13)**. A controlled entity may be a nonprofit organization. For the definition of control in this context, see section 512(b)(13)(D) and Regulations section 1.512(b)-1(l)(4) (substituting "more than 50%" for "at least 80%" in the regulation, for purposes of this definition). Controlled entities are a subset of **related organizations**. For purposes of Form 990, controlled entities don't include **disregarded entities** of the filing organization.*

| | |
|---|---|
| **Controlling organization under section 512(b) (13)** | *An exempt organization that controls a **controlled entity**. Section 512(b)(13) treats payments of interest, annuity, royalties, and rent from a controlled entity to a controlling organization as unrelated business taxable income under certain circumstances. Control in this context means (i) in the case of a corporation, ownership (by vote or value) of more than 50% of the stock in such corporation, (ii) in the case of a partnership, ownership of more than 50% of the profits interests or capital interests in such partnership, or (iii) in any other case, ownership of more than 50% of the beneficial interests in the entity. Section 318 (relating to constructive ownership of stock) shall apply for purposes of determining ownership of stock in a corporation. Similar principles shall apply for purposes of determining ownership of interests in any other entity.* |
| **Core form** | *The Form 990, Return of Organization Exempt From Income Tax Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except for private foundations). It doesn't include any schedules that may be attached to Form 990.* |
| **Credit counseling services** | *Include the providing of information to the general public on budgeting, personal finance, and saving and spending practices, or assisting individuals and families with financial problems by providing them with counseling. See section 501(q)(4)(A).* |
| **Current year** | *The **tax year** for which the Form 990 is being filed; see also **fiscal year**.* |
| **Debt management plan services** | *Services related to the repayment, consolidation, or restructuring of a consumer's debt, including the negotiation with creditors of lower interest rates, the waiver or reduction of fees, and the marketing and processing of debt management plans. See section 501(q)(4)(B).* |
| **Defeasance escrow** | *An irrevocable escrow established to redeem the bonds on their earliest call date in an amount that, together with investment earnings, is sufficient to pay all the principal of, and interest and call premiums on, bonds from the date the escrow is established to the earliest call date. See Regulations section 1.141-12(d)(5).* |
| **Deferred compensation** | ***Compensation** that is earned or accrued in, or is attributable to, one year and deferred to a future year for any reason, whether or not funded, vested, qualified or nonqualified, or subject to a substantial risk of forfeiture. However, a deferral of compensation that causes an amount to be deferred from the calendar year ending with or within the tax year to a date that isn't more than 2 ½ months after the end of the calendar year ending with or within the tax year isn't treated as deferred compensation for purposes of Form 990, if such compensation is currently reported as reportable compensation. Deferred compensation may or may not be included in **reportable compensation** for the **current year**.* |
| **Director** | *See **director or trustee**.* |
| **Director or trustee** | *Unless otherwise provided, a member of the organization's **governing body** at any time during the tax year, but only if the member has any voting rights. A member of an advisory board that doesn't exercise any governance authority over the organization isn't considered a director or trustee.* |
| **Disqualified person** | *A. For purposes of section 4958; Form 990, Parts IX and X; and Schedule L (Form 990 or 990-EZ), Transactions With Interested Persons, Parts I and II, any person (including an individual, corporation, or other entity) who was in a position to exercise substantial influence over the affairs of the **applicable tax-exempt organization** at any time during a 5-year period ending on the date of the transaction. If the 5-year period ended within the organization's **tax year**, the organization may treat the person as a disqualified person for the entire tax year. Persons who hold certain powers, responsibilities, or interests are among those who are in a position to exercise substantial influence over the affairs of the organization.* |

*A disqualified person includes:*
- *A disqualified person's **family member**,*
- *A **35% controlled entity** of a (1) disqualified person and/or (2) family members of the disqualified person,*
- *A donor or **donor advisor** to a **donor advised fund**, or*
- *An investment advisor of a **sponsoring organization**.*

*The **disqualified persons** of a **supported organization** include the disqualified persons of a section 509(a)(3) **supporting organization** that supports the supported organization.*

*See Appendix G for more information on **disqualified persons** and section 4958 **excess benefit transactions**.*

*B. Under section 4946, a disqualified person includes:*

*1. A substantial contributor, which is any person who gave an aggregate amount of more than $5,000, if that amount is more than 2% of the total **contributions** the foundation or organization received from its inception through the end of the year in which that person's contributions were received. If the organization is a trust, a substantial contributor includes the creator of the trust (without regard to the amount of contributions the trust received from the creator and related persons). Any person who is a substantial contributor at any time generally remains a substantial contributor for all future periods even if later contributions by others push that person's contributions below the 2% figure discussed above. Gifts from the contributor's spouse are treated as gifts from the contributor. Gifts are generally valued at FMV as of the date the organization received them.*

*2. A foundation manager, defined as an **officer**, **director**, or **trustee** of the organization or any individual having powers or responsibilities similar to those of officers, directors, or trustees.*

*3. An owner of more than 20% of the voting power of a corporation, profits interest of a partnership, or beneficial interest of a trust or an unincorporated enterprise that is a substantial contributor to the organization.*

*4. A family member of an individual in the first three categories. For this purpose, "family member" includes only the individual's spouse, ancestors, children, grandchildren, great-grandchildren, and the spouses of children, grandchildren, and great-grandchildren.*

*5. A corporation, partnership, trust, or estate in which persons described in (1) through (4) above own more than 35% of the voting power, profits interest, or beneficial interest.*

*For purposes of section 509(a)(2), as referenced in Schedule A (Form 990 or 990-EZ), Public Charity Status and Public Support, a disqualified person is defined in section 4946, except that it doesn't include an organization described in section 509(a)(1).*

*For purposes of section 509(a)(3), as referenced in Schedule A (Form 990 or 990-EZ), a disqualified person is defined in section 4946, except that it doesn't include a foundation manager or an organization described in section 509(a)(1) or 509(a)(2).*

**Disregarded entity or entities**  *An entity wholly owned by the organization that is generally not treated as a separate entity for federal tax purposes (for example, single-member limited liability company of which the organization is the sole member). See Regulations sections 301.7701-2 and 3. A disregarded entity generally must use the **EIN** of its sole member. An exception applies to employment taxes: for wages paid to **employees** of a disregarded entity, the disregarded entity must file separate employment tax returns and use its own EIN on such returns. See Regulations sections 301.6109-1(h) and 301.7701-2(c)(2)(iv).*

**Domestic government**  *See **governmental unit**.*

**Domestic individual**  *An individual who lives or resides in the **United States** and isn't a **foreign individual**.*

| | |
|---|---|
| **Domestic organization** | *A corporation or partnership is domestic if created or organized in the United States or under the law of the United States or of any state or possession. A trust is domestic if a court within the United States or a* **U.S. possession** *is able to exercise primary supervision over the administration of the trust, and one or more U.S. persons (or persons in possessions of the United States) have the authority to control all substantial decisions of the trust.* |
| **Donor advised fund** | *A fund or account:* |

*1. That is separately identified by reference to* **contributions** *of a donor or donors;*

*2. That is owned and controlled by a* **sponsoring organization**; *and*

*3. For which the donor or* **donor advisor** *has or reasonably expects to have advisory privileges in the distribution or investment of amounts held in the donor advised funds or accounts because of the donor's status as a donor.*

*A donor advised fund doesn't include any fund or account:*

*1. That makes distributions only to a single identified organization or governmental entity, or*

*2. In which a donor or donor advisor gives advice about which individuals receive grants for travel, study, or other similar purposes, if:*

*a. The donor or donor advisor's advisory privileges are performed exclusively by such person in his or her capacity as a committee member in which all of the committee members are appointed by the sponsoring organization;*

*b. No combination of donors or donor advisors (and related persons as defined below) directly or indirectly control the committee; and*

*c. All grants from the fund or account are awarded on an objective and nondiscriminatory basis following a procedure approved in advance by the board of directors of the sponsoring organization. The procedure must be designed to ensure that all grants meet the requirements of section 4945(g)(1), (2), or (3); or*

*3. That the IRS exempts from being treated as a donor advised fund because either such fund or account is advised by a committee not directly or indirectly controlled by the donor or donor advisor or such fund benefits a single identified charitable purpose. For example, see Section 5.01 of Notice 2006-109, 2006-51 I.R.B. 1121, and any future related guidance.*

| | |
|---|---|
| **Donor advisor** | *Any person appointed or designated by a donor to advise a* **sponsoring organization** *on the distribution or investment of amounts held in the donor's* **donor advised fund***.* |
| **Donor-Imposed Restriction** | *A donor stipulation (donors include other types of contributors, including makers of certain grants) that specifies a use for a contributed asset that is more specific than broad limits resulting from:* |

- *The nature of the not-for-profit entity*
- *The environment in which it operates; or*
- *The purposes specified in its articles of incorporation or bylaws or comparable documents for an unincorporated association.*

*Some donors impose restrictions that are temporary in nature, for example, stipulating that resources may be used only after a specified date, for particular programs or services, or to acquire buildings and or equipment. Other donors impose restrictions that are perpetual in nature, for example, stipulating that resources be maintained in perpetuity.*

| | |
|---|---|
| **Donor-Restricted Endowment Fund** | *An endowment fund created by a donor stipulation (donors include other types of contributors, including makers of certain grants) requiring investment of the gift in perpetuity or for a specified term. Some donors or laws may require that a portion of income, gains, or both be added to the gift and invested subject to similar restrictions.* |
| **EIN** | *Employer identification number, a nine-digit number. Use Form SS-4 to apply for an EIN.* |

**Employee**

*Any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee, and any other individual who is treated as an employee for federal employment tax purposes under section 3121(d). See Pub. 1779 for more information.*

**Endowment Fund**

*An established fund of cash, securities, or other assets to provide income for the maintenance of a not-for-profit entity. The use of the assets of the fund may be with or without donor-imposed restrictions. Endowment funds generally are established by donor-restricted gifts and bequests to provide a source of income perpetuity or for a specified period. Alternatively, a not-for-profit's governing board may earmark a portion of its net assets (see* **Quasi-endowment**).

**Escrow or custodial account**

*Refers to an account (whether a segregated account at a financial institution or a set-aside on the organization's books and records) over which the organization has signature authority, in which the funds are held for the benefit of other organizations or individuals, whether or not the funds are reported on Part X, line 21, and whether or not the account is labeled as "escrow account," "custodial account," "trust account," or some similar term. An escrow or custodial account doesn't include a split-interest trust (or the beneficial interest in such trust) described in section 4947(a)(2) for which the filing organization is a trustee, other than a trust in the trade or business of lending money, repairing credit, or providing debt management plan services, payment processing, or similar services.*

**Excess benefit transaction**

*In the case of an* **applicable tax-exempt organization**, *any transaction in which an excess benefit is provided by the organization, directly or indirectly to, or for the use of, any* **disqualified person**, *as defined in section 4958. Excess benefit generally means the excess of the economic benefit received from the applicable organization over the consideration given (including services) by a disqualified person, but see the special rules below regarding donor advised funds and supporting organizations. See* Appendix G *for more information.*

**Donor advised fund**. *For a* **donor advised fund**, *an excess benefit transaction also includes a grant, loan,* **compensation**, *or similar payment from the fund to a:*
- *Donor or* **donor advisor***;*
- **Family member** *of a donor or donor advisor;*
- **35% controlled entity** *of a donor or donor advisor; or*
- *35% controlled entity of a family member of a donor or donor advisor.*

*The excess benefit in this transaction is the amount of the grant, loan,* **compensation**, *or similar payments.*

*For additional information, see the Instructions for Form 4720.*

**Supporting organization.** *For any* **supporting organization**, *defined in section 509(a)(3), an excess benefit transaction also includes grants, loans,* **compensation**, *or similar payments provided by the supporting organization to a:*
- *Substantial contributor,*
- *Family member of a substantial contributor,*
- *35% controlled entity of a substantial contributor, or*
- *35% controlled entity of a family member of a substantial contributor.*

*For this purpose, the excess benefit is defined as the amount of the grant, loan,* **compensation**, *or similar payments. Additionally, an excess benefit transaction includes any loans provided by the supporting organization to a disqualified person (other than an organization described in section 509(a)(1), (2), or (4)).*

**Exempt bond**

*See* **tax-exempt bond**.

**Fair market value (FMV)**

*The price at which property, or the right to use property, would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy, sell, or transfer property or the right to use property, and both having reasonable knowledge of relevant facts.*

**Family member, family relationship**

*Unless specified otherwise, the family of an individual includes only his or her spouse (see Rev. Rul. 2013-17 regarding same-sex marriage), ancestors, brothers and sisters (whether whole or half blood), children (whether natural or adopted), grandchildren, great-grandchildren, and spouses of brothers, sisters, children, grandchildren, and great-grandchildren.*

**FIN 48 (FASB ASC 740)**

*Financial Accounting Standards Board (FASB) Interpretation No. 48, Accounting for Uncertainty in Income Taxes, an interpretation of FASB Statement No. 109, now codified in FASB Accounting Standards Codification 740, Income Taxes (ASC 740). The organization can be required to provide in Schedule D (Form 990), Supplemental Financial Statements, the text of the footnote to its **financial statements** regarding the organization's liability for uncertain tax positions under FIN 48 (ASC 740).*

**Financial statements**

*An organization's statements of revenue and expenses and balance sheet, or similar statements prepared regarding the financial operations of the organization.*

**Fiscal year**

*An annual accounting period ending on the last day of a month other than December. See also **tax year** and **current year**.*

**Foreign government**

*A governmental agency or entity, or a political subdivision thereof, that isn't classified as a **United States** agency or **governmental unit**, regardless of where it is located or operated.*

**Foreign individual**

*A person, including a U.S. citizen or resident, who lives or resides outside the **United States**. For purposes of Form 990, Part IX, and Schedule F (Form 990), Statement of Activities Outside the United States, a person who lives or resides outside the United States at the time the grant is paid or distributed to the individual is a **foreign individual**.*

**Foreign organization**

*An organization that isn't a **domestic organization**. A foreign organization includes an affiliate that is organized as a legal entity separate from the filing organization, but doesn't include any branch office, account, or **employee** of a domestic organization located outside the **United States**.*

**Fundraising**

*See **fundraising activities**.*

**Fundraising activities**

*Activities undertaken to induce potential donors to contribute money, securities, services, materials, facilities, other assets, or time. They include publicizing and conducting **fundraising** campaigns; maintaining donor mailing lists; conducting **fundraising events**, preparing and distributing fundraising manuals, instructions, and other materials; **professional fundraising services**; and conducting other activities involved with soliciting **contributions** from individuals, foundations, governments, and others. Fundraising activities don't include **gaming**, the conduct of any trade or business that is regularly carried on, or activities substantially related to the accomplishment of the organization's exempt purpose (other than by raising funds).*

**Instructions for Form 990**

**Fundraising events**

Include dinners and dances, door-to-door sales of merchandise, concerts, carnivals, sports events, auctions, casino nights (in which participants can play casino-style games but the only prizes or auction items provided to participants are noncash items that were donated to the organization), and similar events not regularly carried on that are conducted for the primary purpose of raising funds. Fundraising events don't include the following:

1. The conduct of a trade or business that is regularly carried on;

2. Activities substantially related to the accomplishment of the organization's exempt purposes (other than by raising funds);

3. Solicitation campaigns that generate only **contributions**, which may involve gifts of goods or services from the organization of only nominal value, or sweepstakes, lotteries, or raffles in which the names of contributors or other respondents are entered in a drawing for prizes of only nominal value; and

4. Gaming.

**GAAP**

See **generally accepted accounting principles**.

**Gaming**

Includes (but isn't limited to): **bingo, pull tabs/instant bingo** (including satellite and progressive or event bingo), Texas Hold-Em Poker, 21, and other card games involving betting, raffles, scratch-offs, charitable gaming tickets, break-opens, hard cards, banded tickets, jar tickets, pickle cards, Lucky Seven cards, Nevada Club tickets, casino nights/Las Vegas nights (other than events not regularly carried on in which participants can play casino-style games but the only prizes or auction items provided to participants are noncash items that were donated to the organization, which events are **fundraising events**), and coin-operated gambling devices. Coin-operated gambling devices include slot machines, electronic video slot or line games, video poker, video blackjack, video keno, video bingo, video pull tab games, etc. See Pub. 3079, Tax-Exempt Organizations and Gaming.

**Generally accepted accounting principles/GAAP**

The accounting principles set forth by the Financial Accounting Standards Board (FASB) and the American Institute of Certified Public Accountants (AICPA) that guide the work of accountants in reporting financial information and preparing **audited financial statements** for organizations.

**Governing body**

The group of one or more persons authorized under state law to make governance decisions on behalf of the organization and its shareholders or members, if applicable. The governing body is, generally speaking, the board of **directors** (sometimes referred to as board of **trustees**) of a corporation or association, or the trustee or trustees of a trust (sometimes referred to as the board of trustees).

**Government official**

A federal, state, or local official described within section 4946(c).

**Governmental issuer**

A state or local governmental unit that issues a **tax-exempt bond**.

**Governmental unit**

A state, a **possession of the United States**, or a **political subdivision** of a state or U.S. possession, the United States, or the District of Columbia. See section 170(c)(1).

**Grants and other assistance**

For purposes of Part IX, lines 1–3; Schedule F (Form 990); and Schedule I (Form 990), includes awards, prizes, contributions, noncash assistance, cash allocations, stipends, scholarships, fellowships, research grants, and similar payments and distributions made by the organization during the tax year. It doesn't include salaries or other **compensation** to **employees** or payments to **independent contractors** if the primary purpose is to serve the direct and immediate needs of the organization (such as legal, accounting, or fundraising services); the payment of any benefit by a section 501(c)(9) voluntary employees' beneficiary association (VEBA) to employees of a sponsoring organization or contributing employer, if such payment is made under the terms of the VEBA and in compliance with section 505; or payments or other assistance to affiliates or branch offices that aren't organized as legal entities separate from the filing organization.

| | |
|---|---|
| **Gross proceeds** | *For purposes of Schedule K (Form 990), Supplemental Information on Tax-Exempt Bonds, generally any sale **proceeds**, investment proceeds, transferred proceeds, and replacement proceeds of an issue. See Regulations sections 1.148-1(b) and 1(c).* |
| **Gross receipts** | *The total amounts the organization received from all sources during its tax year, without subtracting any costs or expenses. See* Appendix B. How to Determine Whether an Organization's Gross Receipts Are Normally $50,000 (or $5,000) or Less *and* Appendix C. Special Gross Receipts Tests for Determining Exempt Status of section 501(c)(7) and 501(c)(15) Organizations. |
| **Group exemption** | *Tax exemption of a group of organizations all exempt under the same Code section, applied for and obtained by a **central organization** on behalf of **subordinate organizations** under the central organization's general supervision or control. See Rev. Proc. 80-27, 1980-1 C.B. 677, Rev. Proc. 96-40, 1996-2 C.B. 301, and* Appendix E. Group Returns—Reporting Information on Behalf of the Group, *for more information.* |
| **Group return** | *A Form 990 filed by the **central organization** of a **group exemption** for two or more of the **subordinate organizations**. See* General Instructions, Section I. Group Return, *earlier, and* Appendix E. Group Returns—Reporting Information on Behalf of the Group, *for more information.* |
| **Highest compensated employee** | *One of the five highest compensated **employees** of the organization (including employees of a **disregarded entity** of the organization), other than current **officers, directors, trustees,** or **key employees**, whose aggregate **reportable compensation** from the organization and **related organizations** is greater than $100,000 for the calendar year ending with or within the organization's **tax year**. These employees should be reported in Part VII, Section A, of Form 990.* |
| **Historical treasure** | *A building, structure, area, or property (real or personal) with recognized cultural, aesthetic, or historical value that is significant in the history, architecture, archaeology, or culture of a country, state, or city.* |
| **Hospital/hospital facility** | *For purposes of Schedule H (Form 990), Hospitals, a hospital, or hospital facility, is a facility that is, or is required to be, licensed, registered, or similarly recognized by a state as a hospital. This includes a hospital facility that is operated through a **disregarded entity** or a **joint venture** treated as a partnership for federal income tax purposes. It doesn't include hospital facilities that are located outside the **United States**. It also doesn't include hospital facilities that are operated by entities organized as separate legal entities from the organization that are taxable as a corporation for federal tax purposes (except for members of a **group exemption** included in a **group return** filed by an organization).* |
| **Hospital organization** | *An organization which operates one or more **hospital facilities**.* |
| **Hospital (or cooperative hospital service organization)** | *For purposes of Schedule A (Form 990 or 990-EZ), Public Charity Status and Public Support, a hospital (or cooperative hospital service organization) is an organization whose main purpose is to provide hospital or medical care. For purposes of Schedule A, a rehabilitation institution or an outpatient clinic can qualify as a hospital if its principal purposes or functions are the providing of hospital or medical care, but the term doesn't include medical schools, medical research organizations, convalescent homes, homes for children or the aged, animal hospitals, or vocational training institutions for handicapped individuals.* |
| **Household goods** | *Include furniture, furnishings, electronics, appliances, linens, and other similar items. They don't include food, paintings, antiques and other objects of art, jewelry and gems (other than costume jewelry), and collections.* |
| **Independent contractor** | *An individual or organization that receives compensation for providing services to the organization but who isn't treated as an **employee**. See Pub. 1779 for more information.* |

**Independent voting member of governing body**

A **voting member of the governing body**, if all four of the following circumstances applied at all times during the organization's tax year.

1. The member wasn't compensated as an **officer** or other **employee** of the organization or of a **related organization** (see the Instructions for Schedule R (Form 990), Related Organizations and Unrelated Partnerships), except as provided in the religious exception discussed in the instructions for Form 990, Part VI.

2. The member didn't receive total **compensation** or other payments exceeding $10,000 during the organization's tax year from the organization or from related organizations as an **independent contractor**, other than **reasonable compensation** for services provided in the capacity as a **member of the governing body**. For example, a person who receives reasonable expense reimbursements and reasonable compensation as a **director** of the organization doesn't cease to be independent merely because he or she also received payments of $7,500 from the organization for other arrangements.

3. Neither the member, nor any **family member** of the member, was involved in a transaction with the organization (whether directly or indirectly through affiliation with another organization) required to be reported on Schedule L (Form 990 or 990-EZ), Transactions With Interested Persons, for the organization's tax year.

4. Neither the member, nor any family member of the member, was involved in a transaction with a taxable or tax-exempt related organization of a type and amount that would be reportable on Schedule L (Form 990 or 990-EZ) if required to be filed by the related organization.

A member of the governing body isn't considered to lack independence merely because of any of the following circumstances.

1. The member is a donor to the organization, regardless of the amount of the contribution.

2. The member has taken a bona fide vow of poverty and either:

a. Receives **compensation** as an agent of a **religious order** or a section 501(d) religious or apostolic organization, but only under circumstances in which the member doesn't receive taxable income (for example, Rev. Rul. 77-290, 1977-2 C.B. 26; Rev. Rul. 80-332, 1980-2 C.B. 34); or

b. Belongs to a religious order that receives sponsorship or payments from the organization that don't constitute taxable income to the member.

3. The member receives financial benefits from the organization solely in the capacity of being a member of the charitable or other class served by the organization in the exercise of its exempt function, such as being a member of a section 501(c)(6) organization, so long as the financial benefits comply with the organization's terms of membership.

**Initial contract**

A binding written contract between an **applicable tax-exempt organization** and a person who wasn't a **disqualified person** immediately before entering into the contract.

**Instant bingo**

See **pull tabs**.

**Institutional trustee**

A **trustee** that isn't an individual or natural person but an organization. For instance, a bank or trust company serving as the trustee of a trust is an institutional trustee.

**Joint venture**

Unless otherwise provided, a partnership, limited liability company, or other entity treated as a partnership for federal tax purposes, as described in Regulations sections 301.7701-1 through 301.7701-3.

| | |
|---|---|
| **Key employee** | For purposes of Form 990, an **employee** of an organization (other than an **officer**, **director**, or **trustee**) who meets all three of the following tests applied in the following order: |
| | 1.  $150,000 Test. Receives **reportable compensation** from the organization and all **related organizations** in excess of $150,000 for the **calendar year** ending with or within the organization's **tax year**. |
| | 2.  Responsibility Test. The employee: |
| | a. has responsibilities, powers or influence over the organization as a whole similar to those of officers, directors, or trustees; |
| | b. manages a discrete segment or activity of the organization that represents 10% or more of the activities, assets, income, or expenses of the organization, as compared to the organization as a whole; or |
| | c. has or shares authority to control or determine 10% or more of the organization's capital expenditures, operating budget, or compensation for employees. |
| | 3.  Top 20 Test. Is one of the 20 employees (that satisfy the $150,000 Test and Responsibility Test) with the highest reportable compensation from the organization and related organizations for the calendar year ending with or within the organization's tax year. |
| | See instructions for Part VII for examples of **key employees.** |
| **Legislation** | Includes action by Congress, any state legislature, any local council, or similar governing body about acts, bills, resolutions, or similar items, or action by the public in referenda, ballot initiatives, constitutional amendments, or similar procedures. It doesn't include actions by executive, judicial, or administrative bodies. |
| **Lobbying** | See **lobbying activities**. |
| **Lobbying activities** | All activities intended to influence foreign, national, state, or local **legislation**. Such activities include direct lobbying (attempting to influence the legislators) and grassroots lobbying (attempting to influence legislation by influencing the general public). |
| **Maintaining offices, employees, or agents** | For purposes of Schedule F (Form 990), Statement of Activities Outside the United States, includes principal, regional, district, or branch offices, such offices maintained by agents, independent contractors, and persons situated at those offices paid wages for services performed. "Agent" is defined under traditional agency principles (but doesn't include **volunteers**). |
| **Management company** | An organization that performs management duties for another organization customarily performed by or under the direct supervision of the other organization's **officers**, **directors**, **trustees**, or **key employees**. These management duties include, but aren't limited to, hiring, firing, and supervising personnel; planning or executing budgets or financial operations; and supervising exempt operations or **unrelated trades or businesses**. |
| **Medical research** | For purposes of a medical research organization operated in conjunction with a hospital (see Schedule A (Form 990 or 990-EZ), Public Charity Status and Public Support), medical research means investigations, studies and experiments performed to discover, develop, or verify knowledge relating to physical or mental diseases and impairments and their causes, diagnosis, prevention, treatment, or control. |
| **Member of the governing body** | A person who serves on an organization's **governing body**, including a **director** or **trustee**, but not if the person lacks voting power. |

**Net Assets with donor restrictions**

*Includes **endowment funds** established by donor-restricted gifts that are maintained to provide a source of income for either a specified period of time or until a specific event occurs (see **ASC 958-205-45**), as well as all other temporarily restricted net assets held in a donor-restricted endowment, including unappropriated income from **permanent endowments** that isn't subject to a permanent restriction. After Accounting Standards Update 2016-14, **ASC 958** uses two classifications, instead of three – net assets with donor restrictions and net assets without donor restrictions. **ASC 958** no longer uses the term "temporarily-restricted endowment."*

*The part of net assets of a not-for-profit entity that is subject to **donor-imposed restrictions**.*

**Net Assets without Donor Restrictions**

*Part of net assets of a not-for-profit entity that is not subject to **donor-imposed restrictions**.*

**Noncash contributions**

***Contributions** of property, tangible or intangible, other than money. Noncash contributions include, but aren't limited to, stocks, bonds, and other **securities**; real estate; **works of art**; stamps, coins, and other **collectibles**; clothing and **household goods**; vehicles, boats, and airplanes; inventories of food, medical equipment or supplies, books, or seeds; intellectual property, including patents, trademarks, copyrights, and trade secrets; donated items that are sold immediately after donation, such as publicly traded stock or used cars; and items donated for sale at a charity auction. Noncash contributions don't include **volunteer** services performed for the reporting organization or donated use of materials, facilities, or equipment.*

**Nonexempt charitable trust**

*A trust that meets the following conditions:*
- *Isn't exempt from tax under section 501(a),*
- *All of its unexpired interests are devoted to charitable purposes, and*
- *A charitable deduction was allowed for **contributions** to the trust under section 170, section 545(b)(2), section 642(c), section 2055, section 2106(a)(2), or section 2522, or for amounts paid by or permanently set aside by the trust under section 642(c).*

**Nonqualified deferred compensation**

***Deferred compensation** that is earned pursuant to a nonqualified plan or nongovernmental section 457 plan. Different rules can apply for purposes of identifying arrangements subject to sections 83, 409A, 457(f), and 3121(v). Earned but unpaid incentive compensation can be deferred pursuant to a nonqualified deferred compensation plan.*

**Officer**

*Unless otherwise provided (for example, Signature Block, principal officer in Heading), a person elected or appointed to manage the organization's daily operations at any time during the **tax year**, such as a president, vice-president, secretary, treasurer, and, in some cases, Board Chair. The officers of an organization are determined by reference to its organizing document, bylaws, or resolutions of its governing body, or as otherwise designated consistent with state law, but at a minimum include those officers required by applicable state law. For purposes of Form 990, treat the organization's **top management official** and **top financial official** as officers.*

**"On behalf of" issuer**

*A corporation organized under the general nonprofit corporation law of a state whose obligations are considered obligations of a state or local **governmental unit**. See Rev. Proc. 82-26, 1982-1 C.B. 476, for a description of the circumstances under which the IRS will ordinarily issue an advance ruling that the obligations of a nonprofit corporation were issued on behalf of a state or local governmental unit. See also Rev. Rul. 63-20, 1963-1 C.B. 24; Rev. Rul. 59-41, 1959-1 C.B. 13; and Rev. Rul. 54-296, 1954-2 C.B. 59. An "on behalf of" issuer also includes any corporation organized by a state or local governmental unit specifically to issue **tax-exempt bonds** to further public purposes. See Rev. Rul. 57-187, 1957-1 C.B. 65.*

**Organization manager**

*For purposes of section 4958, any **officer**, **director**, or **trustee** of an **applicable tax-exempt organization**, or any individual having powers or responsibilities similar to officers, directors, or trustees of the organization, regardless of title.*

**Political campaign activities**

*All activities that support or oppose candidates for elective federal, state, or local public office. It doesn't matter whether the candidate is elected. A candidate is one who offers himself or is proposed by others for public office. Political campaign activity doesn't include any activity to encourage participation in the electoral process, such as voter registration or voter education, provided that the activity doesn't directly or indirectly support or oppose any candidate.*

**Political subdivision**

*A division of any state or local **governmental unit** which is a municipal corporation or which has been delegated the right to exercise part of the sovereign power of the unit. Sovereign power includes the power to make and enforce laws.*

**Possession of the United States**

*Includes the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, Guam, American Samoa, and the U.S. Virgin Islands.*

**Principal officer**

*For purposes of the Heading on page 1 of Form 990 (but not for the purposes of the Signature Block or other parts of the Form 990), an officer of the organization who, regardless of title, has ultimate responsibility for implementing the decisions of the organization's **governing body**, or for supervising the management, administration, or operation of the organization.*

**Private business use**

*For purposes of Schedule K (Form 990), Supplemental Information on Tax-Exempt Bonds, use by the organization or another 501(c)(3) organization in an **unrelated trade or business**. Private business use also generally includes any use by a nongovernmental person, other than a section 501(c)(3) organization, unless otherwise permitted through an exception or safe harbor provided under the regulations or a revenue procedure.*

**Private foundation**

*An organization described in section 501(c)(3) that isn't a **public charity**. Some private foundations are classified as operating foundations (also known as private operating foundations) under section 4942(j)(3) or exempt operating foundations under section 4940(d)(2). A private foundation retains its private foundation status until such status is terminated under section 507. Thus, a tax-exempt private foundation becomes a taxable private foundation if its section 501(c)(3) status is revoked.*

**Proceeds**

*For purposes of Schedule K (Form 990), Supplemental Information on Tax-Exempt Bonds, generally the sale proceeds of an issue (other than those sale proceeds used to retire bonds of the issue that aren't deposited in a reasonably required reserve or replacement fund). Proceeds also include any investment proceeds from investments that accrue during the project period (net of rebate amounts attributable to the project period). See Regulations section 1.141-1(b).*

**Professional fundraising services**

*Services performed for the organization requiring the exercise of professional judgment or discretion consisting of planning, management, preparation of materials (such as direct mail solicitation packages and applications for grants or other assistance), provision of advice and consulting regarding solicitation of **contributions**, and direct solicitation of **contributions**, such as soliciting restricted or unrestricted grants to provide services to the general public. However, professional fundraising doesn't include services provided by the organization's **employees** in their capacity as employees (except as provided in the instructions for Part I, line 16a), nor does professional fundraising include purely ministerial tasks, such as printing, mailing services, or receiving and depositing contributions to a charity, such as services provided by a bank or caging service.*

**Program-related investment**

*Investments made primarily to accomplish the organization's exempt purposes rather than to produce income. Examples of program-related investments include student loans and notes receivable from other exempt organizations that obtained the funds to pursue the filing organization's exempt function.*

**Public charity**

*An organization described in section 501(c)(3) and that is excepted from private foundation status because it is described in section 509(a)(1) (which cross-references sections 170(b)(1)(A)(i) through (vi), and (ix)), 509(a)(2), 509(a)(3), or 509(a)(4).*

**Publicly traded securities**

*Generally, include common and preferred stocks, bonds (including governmental obligations such as bonds and Treasury bills), mutual fund shares, and other investments listed and regularly traded in an over-the-counter market or an established exchange and for which market quotations are published or are otherwise readily available. (See further explanation in the instructions for Part X, line 11, and Schedule M (Form 990), Noncash Contributions, line 9).*

**Pull tabs**

*Includes games in which an individual places a wager by purchasing preprinted cards that are covered with pull tabs. Winners are revealed when the individual pulls back the sealed tabs on the front of the card and compares the patterns under the tabs with the winning patterns preprinted on the back of the card. Included in the definition of pull tabs are "instant bingo," "mini bingo," and other similar scratch-off cards. Satellite, Internet, and progressive or event bingo are games conducted in many different places simultaneously and the winners aren't all present when the wagers are placed, the winners are determined, and the prizes are distributed. Revenue and expenses associated with satellite, Internet, and progressive bingo should be included under this category. However, certain bingo games within a hybrid gaming event (such as progressive or event bingo) can also qualify as bingo if the individual game meets the preceding definition of **bingo**.*

**Qualified 501(c)(3) bond**

*A **tax-exempt bond**, the proceeds of which are used by a section 501(c)(3) organization to advance its charitable purpose. Requirements generally applicable to a qualified section 501(c)(3) bond under section 145 include the following.*

*1. All property financed by the bond issue is to be owned by a section 501(c)(3) organization or a **governmental unit**.*

*2. At least 95% of net proceeds of the **bond issue** are used either by a **governmental unit** or a section 501(c)(3) organization in activities that aren't **unrelated trades or businesses** (determined by applying section 513).*

**Qualified conservation contribution**

*Any **contribution** of a qualified real property interest to a qualified organization exclusively for conservation purposes. A "qualified real property interest" means any of the following interests in real property:*

*1. The entire interest of the donor,*

*2. A remainder interest, or*

*3. A restriction (such as an easement), granted in perpetuity, on the use which may be made of the real property.*

*A "qualified organization" means an organization which is:*
*a. a **governmental unit** described in section 170(c)(1);*
*b. a publicly supported charitable organization described in sections 509(a)(1) and 170(b)(1)(A)(vi) or section 509(a)(2) (see the instructions for Parts II and III of Schedule A (Form 990 or 990-EZ)); or*
*c. a **supporting organization** described in sections 501(c)(3) and 509(a)(3) that is controlled by a governmental unit or a publicly supported charitable organization.*

*In addition, a qualified organization must have a commitment to protect the conservation purposes of a qualified conservation contribution, and have the resources to enforce the restrictions.*

A "conservation purpose" means:

1. The preservation of land areas for outdoor recreation by, or the education of, the general public;

2. The protection of a relatively natural habitat of fish, wildlife, plants, or similar ecosystems;

3. The preservation of open space (including farm and forest land) where such preservation will yield a significant public benefit and is for the scenic enjoyment of the general public or is pursuant to a clearly delineated federal, state, or local governmental conservation policy; or

4. The preservation of an historically important land area or a certified historic structure.

See section 170(h) for additional information, including special rules about the conservation purpose requirement for buildings in registered historic districts. See also **conservation easement**.

| | |
|---|---|
| **Qualified state or local political organization** | A type of political organization that meets the following requirements:<br>• It limits its exempt function to the selection process relating solely to any state or local public office or office in a state or local political organization;<br>• It is required under a state law to report to a state agency (and does report) information that otherwise would be required to be reported on Form 8872, Political Organization Report of Contributions and Expenditures, or it is required to report under state law (and does report) at least the following information:<br><br>1. The name and address of every person who contributes a total of $500 or more during the calendar year and the amount of each contribution;<br><br>2. The name and address of every person to whom the organization makes expenditures aggregating $800 or more during the calendar year, and the amount of each expenditure; and<br><br>3. Any additional information specified in section 527(j)(3), if state law requires the reporting of that information to the state agency.<br>• The state agency makes the reports filed by the organization publicly available;<br>• The organization makes the reports filed with the state agency publicly available in the manner described in section 6104(d); and<br>• No federal candidate or office holder controls or materially participates in the direction of the organization, solicits **contributions** to the organization, or directs any of the organization's disbursements. |
| **Quasi-endowment** | Net assets without donor restrictions designated by an entity's governing board to be invested to provide income for generally a long but not necessarily specified period. A **board-designated endowment**, which results from an internal designation, is generally not donor-restricted and is classified as net assets without donor restrictions. The governing board has the right to decide at any time to expend such funds. Also referred to as a **board-designated endowment**. |
| **Reasonable compensation** | The value that would ordinarily be paid for like services by like enterprises under like circumstances. |
| **Reasonable effort** | A reasonable amount of effort in information gathering that the organization is expected to undertake in order to provide information requested on the Form 990. See the specific instructions for Part VI, lines 1b and 2; Part VII, Section A (compensation from related organizations); and Schedule L (Form 990 or 990-EZ), Parts III and IV, for examples of reasonable efforts. |
| **Refunding escrow** | One or more funds established as part of a single transaction or a series of related transactions, containing **proceeds** of a **refunding issue** and any other amounts to provide for payment of principal or interest on one or more prior issues. See Regulations section 1.148-1(b). |

**Refunding issue**

*An issue of obligations, the **proceeds** of which are used to pay principal, interest, or redemption price on another issue (a prior issue), including the issuance costs, accrued interest, capitalized interest on the refunding issue, a reserve or replacement fund, or similar costs, if any, properly allocable to that refunding issue. A current refunding issue is a refunding issue that is issued not more than 90 days before the last expenditure of any proceeds of the refunding issue for the payment of principal or interest on the prior issue. An advance refunding issue is a refunding issue that isn't a current refunding issue. See Regulations sections 1.150-1(d)(1), 1.150-1(d)(3), and 1.150-1(d)(4).*

**Related organization**

*An organization, including a nonprofit organization, a stock corporation, a partnership or limited liability company, a trust, and a **governmental unit** or other government entity, that stands in one or more of the following relationships to the filing organization at any time during the **tax year**.*
* *Parent: an organization that **controls** the filing organization.*
* *Subsidiary: an organization **controlled** by the filing organization.*
* *Brother/Sister: an organization **controlled** by the same person or persons that control the filing organization. However, if the filing organization is a trust that has a bank or financial institution trustee that is also the trustee of another trust, the other trust isn't a Brother/Sister related organization of the filing organization on the ground of common control by the bank or financial institution trustee.*
* *Supporting/Supported: an organization that claims to be at any time during the **tax year**, or that is classified by the IRS at any time during the tax year, as (i) a **supporting organization** of the filing organization within the meaning of section 509(a)(3), if the filing organization is a **supported organization** within the meaning of section 509(f)(3); (ii) or a supported organization, if the filing organization is a supporting organization.*
* *Sponsoring Organization of a VEBA: an organization that establishes or maintains a section 501(c)(9) voluntary employees' beneficiary association (VEBA) during the tax year. A sponsoring organization of a VEBA also includes an employee organization, association, committee, joint board of trustees, or other similar group of representatives of the parties which establish or maintain a VEBA. Although a VEBA must report a sponsoring organization as a related organization, a sponsoring organization shouldn't report a VEBA as a related organization, unless the VEBA is related to the sponsoring organization in some other capacity described in this definition.*
* *Contributing Employer of a VEBA: an employer that makes a contribution or contributions to the VEBA during the tax year. Although a VEBA must report a contributing employer as a related organization, a contributing employer shouldn't report a VEBA as a related organization, unless the VEBA is related to the contributing employer in some other capacity described in this definition.*

*The organization must determine its related organizations for purposes of completing Form 990, Parts VI (Governance), VII (Compensation), VIII (Statement of Revenue), and X (Balance Sheet), Schedule D (Form 990), Schedule J (Form 990), and Schedule R (Form 990). See instructions for those parts and schedules for related organization reporting requirements.*

**Religious order**

*An organization described in Rev. Proc. 91-20, 1991-1 C.B. 524.*

**Reportable compensation**

*In general, the aggregate **compensation** that is reported (or required to be reported, if greater) on Form W-2, box 1 or 5 (whichever amount is greater); and/or Form 1099-MISC, box 7, for the calendar year ending with or within the organization's **tax year**. For foreign persons who receive U.S. source income, reportable compensation includes the amount reportable on Form 1042-S, box 2. For persons for whom compensation reporting on Form W-2, 1099-MISC, or 1042-S isn't required (certain foreign persons, institutional trustees, and persons whose compensation was below the $600 reporting threshold for Form 1099-MISC), reportable compensation includes the total value of the compensation paid in the form of cash or property during the calendar year ending with or within the organization's tax year.*

**Review of financial statement**

*An examination of an organization's financial records and practices by an independent accountant with the objective of assessing whether the **financial statements** are plausible, without the extensive testing and external validation procedures of an audit.*

**Instructions for Form 990**

| **School** | An organization, the primary function of which is the presentation of formal instruction, and which has a regular faculty, curriculum, an enrolled body of students, and a place where educational activities are regularly conducted. |
| --- | --- |
| **Security/securities** | Any bond, debenture, note, or certificate or other evidence of indebtedness issued by a corporation, government or **political subdivision**, share of stock, voting trust certificate, or any certificate of interest or participation in, certificate of deposit or receipt for, temporary or interim certificate for, or warrant or right to subscribe to or purchase, any of the foregoing. |
| **Short accounting period** | An accounting period of less than 12 months, which exists when an organization changes its annual accounting period, and which can exist in its initial or final year of existence (see **tax year**). |
| **Short period** | See **short accounting period**. |
| **Significant disposition of net assets** | A disposition of net assets, consisting of a sale, exchange, disposition or other transfer of more than 25% of the FMV of the organization's net assets during the year, whether or not the organization received full or adequate consideration. A significant disposition of net assets involves: |

1. One or more dispositions during the organization's **tax year**, amounting to more than 25% of the FMV of the organization's net assets as of the beginning of its tax year; or

2. One of a series of related dispositions or events begun in a prior year that, when combined, comprise more than 25% of the FMV of the organization's net assets as of the beginning of the tax year when the first disposition in the series was made. Whether a significant disposition of net assets occurred through a series of related dispositions depends on the facts and circumstances in each case.

Examples of the types of transactions that are "a significant disposition of net assets" required to be reported on Schedule N (Form 990 or 990-EZ), Liquidation, Termination, Dissolution or Significant Disposition of Assets, Part II, include:
- Taxable or tax-free sales or exchanges of exempt assets for cash or other consideration (a social club described in section 501(c)(7) selling land or an exempt organization selling assets it had used to further its exempt purposes);
- Sales, **contributions** or other transfers of assets to establish or maintain a partnership, **joint venture**, or a corporation (for-profit or nonprofit) whether or not the sales or transfers are governed by section 721 or section 351, whether or not the transferor received an ownership interest in exchange for the transfer;
- Sales of assets by a partnership or joint venture in which the exempt partner has an ownership interest; and
- Transfers of assets pursuant to a reorganization in which the organization is a surviving entity.

The following types of situations aren't considered significant dispositions of net assets for purposes of Schedule N, Part II:
- The change in composition of **publicly traded securities** held in an exempt organization's passive investment portfolio;
- Asset sales made in the ordinary course of the organization's exempt activities to accomplish the organization's exempt purposes, for instance, gross sales of inventory;
- Grants or other assistance made in the ordinary course of the organization's exempt activities to accomplish the organization's exempt purposes, for instance, the regular charitable distributions of a United Way or other federated fundraising organization;
- A decrease in the value of net assets due to market fluctuation in the value of assets held by the organization; and
- Transfers to a **disregarded entity** of which the organization is the sole member.

| **Sponsoring organization** | Any organization which is all of the following: |
| --- | --- |

- Described in section 170(c), other than governmental units described in section 170(c)(1) and without regard to section 170(c)(2)(A);
- Not a **private foundation** as defined in section 509(a); and
- Maintains one or more **donor advised funds**.

| | |
|---|---|
| **State of legal domicile** | *For a corporation, the state of incorporation (country of incorporation for a foreign corporation formed outside the United States). For a trust or other entity, the state whose law governs the organization's internal affairs (the foreign country whose law governs for a foreign organization other than a corporation).* |
| **Subordinate organization** | *One of the organizations, typically local in nature, that is recognized as exempt in a **group exemption** letter and subject to the general supervision and control of a **central organization**.* |
| **Supported organization** | *A **public charity** described in section 509(a)(1) or 509(a)(2) supported by a **supporting organization** described in section 509(a)(3).* |
| **Supporting organization** | *A public charity claiming status on Form 990 or otherwise under section 509(a) (3). A supporting organization is organized and operated exclusively to support one or more **supported organizations**. A supporting organization that is operated, supervised, or controlled by one or more supported organizations is a Type I supporting organization. The relationship of a Type I supporting organization with its supported organization(s) is comparable to that of a parent-subsidiary relationship. A supporting organization supervised or controlled in connection with one or more supported organizations is a Type II supporting organization. A Type II supporting organization is controlled or managed by the same persons that control or manage its supported organization(s). A supporting organization that is operated in connection with one or more supported organizations is a Type III supporting organization. A Type III supporting organization is further considered either functionally integrated with its supported organization(s) or not functionally integrated with its supported organization(s) (Type III other). Finally, a supporting organization can't be controlled directly or indirectly by one or more **disqualified persons** (as defined in section 4946), other than foundation managers and other than one or more public charities described in section 509(a)(1) or (2).* |
| **Tax-exempt bond** | *An obligation issued by or on behalf of a **governmental issuer** on which the interest paid is excluded from the holder's gross income under section 103. For this purpose, a bond can be any form of indebtedness under federal tax law, including a bond, note, loan, or lease-purchase agreement.* |
| **Tax year** | *The annual accounting period for which the Form 990 is being filed, whether the calendar year ending December 31st or a fiscal year ending on the last day of any other month. The organization may have a short tax year in its first year of existence, in any year when it changes its annual accounting period (for example, from a December 31 year-end to a June 30 year-end), and in its last year of existence (for example, when it merges into another organization or dissolves). See also **current year**, **fiscal year**, and **short period**.* |
| **Term endowment** | *An endowment fund established to provide income for a specified period.* |
| **Top financial official** | *The person who has ultimate responsibility for managing the organization's finances, for example, the treasurer or chief financial officer.* |
| **Top management official** | *A person who has ultimate responsibility for implementing the decisions of the organization's **governing body** or for supervising the management, administration, or operation of the organization (for example, the organization's president, CEO, or executive director).* |
| **Total assets** | *The amount reported on Form 990, Part X, line 16, column (B).* |
| **Trustee** | *See **director or trustee**.* |
| **United States** | *Unless otherwise provided, includes the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, Guam, American Samoa, and the United States Virgin Islands.* |
| **Unrelated business** | *See **unrelated trade or business**.* |
| **Unrelated business income** | *Income from an **unrelated trade or business** as defined in section 513.* |
| **Unrelated business gross income** | *Gross income from an **unrelated trade or business** as defined in section 513.* |
| **Unrelated organization** | *An organization that isn't a **related organization** to the filing organization.* |

| | |
|---|---|
| **Unrelated trade or business** | *Any trade or business, the conduct of which isn't substantially related to the exercise or performance by the organization of its charitable, educational, or other purpose or function constituting the basis for its exemption. See Pub. 598 and the Instructions for Form 990-T for a discussion of what is an unrelated trade or business.* |
| **U.S. possession** | *See **possession of the United States**.* |
| **Volunteer** | *A person who serves the organization without compensation, for instance, a member of the organization's governing body who serves the organization without compensation. "Compensation" for this purpose includes tips and noncash benefits, except for:*<br>• *Reimbursement of expenses under a reimbursement or other expense allowance arrangement in which there is adequate accounting to the organization,*<br>• *Working condition fringe benefits described in section 132,*<br>• *Liability insurance coverage for acts performed on behalf of the exempt organization, and*<br>• *De minimis fringe benefits.* |
| **Voting member of the governing body** | *A member of the organization's **governing body** with power to vote on all matters that may come before the governing body (other than a conflict of interest that disqualifies the member from voting).* |
| **Works of art** | *Include paintings, sculptures, prints, drawings, ceramics, antiques, decorative arts, textiles, carpets, silver, photography, film, video, installation and multimedia arts, rare books and manuscripts, historical memorabilia, and other similar objects. Art doesn't include **collectibles**.* |
| **Year of formation** | *The year in which the organization was created or formed under applicable state law (if a corporation, the year of incorporation).* |

# Appendix of Special Instructions to Form 990

## Contents

A    Exempt Organizations Reference Chart
B    How To Determine Whether an Organization's Gross Receipts Are Normally $50,000 (or $5,000) or Less
C    Special Gross Receipts Tests for Determining Exempt Status of Section 501(c)(7) and Section 501(c)(15) Organizations
D    Public Inspection of Returns
E    Group Returns—Reporting Information on Behalf of the Group
F    Disregarded Entities and Joint Ventures—Inclusion of Activities and Items
G    Section 4958 Excess Benefit Transactions
H    Forms and Publications To File or Use
I    Use of Form 990 or 990-EZ To Satisfy State Reporting Requirements
J    Contributions

# Appendix A. Exempt Organizations Reference Chart

| Type of Organization | I.R.C. Section |
|---|---|
| Corporations Organized Under Act of Congress | 501(c)(1) |
| Title Holding Corporations | 501(c)(2) |
| Charitable, Religious, Educational, Scientific, etc., Organizations | 501(c)(3) |
| Civic Leagues and Social Welfare Organizations | 501(c)(4) |
| Labor, Agricultural, and Horticultural Organizations | 501(c)(5) |
| Business Leagues, etc. | 501(c)(6) |
| Social and Recreation Clubs | 501(c)(7) |
| Fraternal Beneficiary and Domestic Fraternal Societies and Associations | 501(c)(8) & c(10) |
| Voluntary Employees' Beneficiary Associations | 501(c)(9) |
| Teachers' Retirement Fund Associations | 501(c)(11) |
| Benevolent Life Insurance Associations, Mutual Ditch or Irrigation Companies, Mutual or Cooperative Telephone Companies, etc. | 501(c)(12) |
| Cemetery Companies | 501(c)(13) |
| State Chartered Credit Unions, Mutual Reserve Funds | 501(c)(14) |
| Insurance Companies or Associations Other than Life | 501(c)(15) |
| Cooperative Organizations to Finance Crop Operations | 501(c)(16) |
| Supplemental Unemployment Benefit Trusts | 501(c)(17) |
| Employee Funded Pension Trusts (created before 6/25/1959) | 501(c)(18) |
| Organizations of Past or Present Members of the Armed Forces | 501(c)(19) & c(23) |
| Black Lung Benefit Trusts | 501(c)(21) |
| Withdrawal Liability Payment Funds | 501(c)(22) |
| Trusts described in section 4049 of the Employer Retirement Income Security Act | 501(c)(24) |
| Title Holding Corporations or Trusts | 501(c)(25) |
| State-Sponsored Organizations Providing Health Coverage for High-Risk Individuals | 501(c)(26) |
| State-Sponsored Workmen's Compensation and Insurance and Reinsurance Organizations | 501(c)(27) |
| National Railroad Retirement Investment Trust | 501(c)(28) |
| Qualified Nonprofit Health Insurance Issuers | 501(c)(29) |
| Religious and Apostolic Associations | 501(d) |
| Cooperative Hospital Service Organizations | 501(e) |

| | |
|---|---|
| Cooperative Service Organizations of Operating Educational Organizations | 501(f) |
| Amateur Sports Organizations | 501(j) |
| Child Care Organizations | 501(k) |
| Charitable Risk Pools | 501(n) |
| Political Organizations | 527 |

# Appendix B. How To Determine Whether an Organization's Gross Receipts Are Normally $50,000 (or $5,000) or Less

To figure whether an organization has to file Form 990-EZ (or Form 990), apply the $50,000 (or $5,000) gross receipts test (below) using the following definition of gross receipts and information in *Figuring Gross Receipts* below.

## Gross Receipts

Gross receipts are the total amounts the organization received from all sources during its annual tax year (including short years) without subtracting any costs or expenses.

 *Don't use the definition of gross receipts described in* Appendix C. Special Gross Receipts Tests for Determining Exempt Status of Section 501(c)(7) and 501(c)(15) Organizations, *to figure gross receipts for this purpose. Those tests are limited to determining the exempt status of section 501(c)(7) and 501(c)(15) organizations.*

**Gross receipts when acting as an agent.** If a local chapter of a section 501(c)(8) fraternal organization collects insurance premiums for its parent lodge and merely sends those premiums to the parent without asserting any right to use the funds or otherwise deriving any benefit from them, the local chapter doesn't include the premiums in its gross receipts. The parent lodge reports them instead. The same treatment applies in other situations in which one organization collects funds merely as an agent for another.

## Figuring Gross Receipts

Figure gross receipts for Form 990 and 990-EZ as follows.

**Form 990.** Gross receipts are the sum of lines 6b(i), 6b(ii), 7b(i), 7b(ii), 8b, 9b, 10b, and 12 (column (A)) of Form 990, Part VIII.

**Form 990-EZ.** Gross receipts are the sum of lines 5b, 6c, 7b, and 9 of Form 990-EZ, Part I.

*Example.* Organization M reported $50,000 as total revenue on line 9 of its Form 990-EZ. M added back the costs and expenses it had deducted on lines 5b ($2,000); 6b ($1,500); and 7b ($500) to its total revenue of $50,000 and determined that its gross receipts for the tax year were $54,000.

## $50,000 Gross Receipts Test

To determine whether an organization's gross receipts are normally $50,000 or less, apply the following test. An organization's gross receipts are considered normally to be $50,000 or less if the organization is:

1. Up to a year old and has received, or donors have pledged to give, $75,000 or less during its first tax year;

2. Between 1 and 3 years old and averaged $60,000 or less in gross receipts during each of its first 2 tax years; or

3. Three years old or more and averaged $50,000 or less in gross receipts for the immediately preceding 3 tax years (including the year for which the return would be filed).

If the organization's gross receipts are normally $50,000 or less, it must submit Form 990-N, Electronic Notice (e-Postcard) for Tax-Exempt Organizations Not Required to File Form 990 or 990-EZ, if it chooses not to file Form 990 or 990-EZ. In general, organizations excepted from filing Form 990 or 990-EZ because of low gross receipts must submit Form 990-N. See filing exceptions described in *General Instructions, Section B. Organizations Not Required To File Form 990 or 990-EZ,* earlier.

## $5,000 Gross Receipts Test

To determine whether an organization's gross receipts are normally $5,000 or less, apply the following test. An organization's gross receipts are

considered normally to be $5,000 or less if the organization is:

1. Up to a year old and has received, or donors have pledged to give, $7,500 or less during its first tax year;

2. Between 1 and 3 years old and averaged $6,000 or less in gross receipts during each of its first 2 tax years; or

3. Three years old or more and averaged $5,000 or less in gross receipts for the immediately preceding 3 tax years (including the year for which the return would be filed).

# Appendix C. Special Gross Receipts Tests for Determining Exempt Status of Section 501(c)(7) and 501(c)(15) Organizations

Section 501(c)(7) organizations (social clubs) and section 501(c)(15) organizations (insurance companies) apply the same gross receipts test as other organizations to determine whether they must file Form 990 or 990-EZ. However, section 501(c)(7) and section 501(c)(15) organizations also are subject to separate gross receipts tests to determine whether they qualify as tax-exempt for the tax year. The following tests use a special definition of gross receipts for purposes of determining whether these organizations are exempt for a particular tax year.

**Section 501(c)(7).** A section 501(c)(7) organization can receive up to 35% of its gross receipts, including investment income, from sources outside its membership and remain tax-exempt. Part of the 35% (up to 15% of gross receipts) can be from public use of a social club's facilities.

*Gross receipts*, for purposes of determining the tax-exempt status of section 501(c)(7) organizations, are the club's income from its usual activities and include:

- Charges,
- Admissions,
- Membership fees,
- Dues, and
- Assessments, and

• Investment income (dividends, rents, and similar receipts), and normal recurring capital gains on investments.

Gross receipts for this purpose don't include capital contributions (see Regulations section 1.118-1), initiation fees, or unusual amounts of income (the sale of the clubhouse).

 *College fraternities or sororities or other organizations that charge membership initiation fees, but not annual dues, must include initiation fees in their gross receipts.*

**Section 501(c)(15).** If any section 501(c)(15) insurance company (other than life insurance) meets both parts of the following test, then the company can file Form 990 (or Form 990-EZ, if applicable).

1. The company's gross receipts must be equal to or less than $600,000, and

2. The company's premiums must be more than 50% of its gross receipts.

If the company didn't meet this test and the company is a mutual insurance company, then it must meet the *Alternate test* to qualify to file Form 990 (or Form 990-EZ, if applicable). Insurance companies that don't qualify as tax-exempt must file Form 1120-PC, U.S. Property and Casualty Insurance Company Income Tax Return, or Form 1120, U.S. Corporation Income Tax Return, as taxable entities for the year. See Notice 2006-42, 2006-19 I.R.B. 878.

**Alternate test.** If any section 501(c)(15) insurance company (other than life insurance) is a mutual insurance company and it didn't meet the above test, then the company must meet both parts of the following alternate test.

1. The company's gross receipts must be equal to or less than $150,000.

2. The company's premiums must be more than 35% of its gross receipts.

If the company doesn't meet either test, then it must file Form 1120-PC or Form 1120 (if the company isn't entitled to insurance reserves) instead of Form 990 or 990-EZ.

 *The alternate test doesn't apply if any employee of the mutual insurance company or a member of the employee's family is an employee of another company that is exempt under section 501(c)(15) (or would be exempt if this provision didn't apply).*

**Gross receipts.** To determine whether a section 501(c)(15) organization satisfies either of the above tests described in Appendix C, figure gross receipts by adding:

1. Premiums (including deposits and assessments) without reduction for return premiums or premiums paid for reinsurance;

2. Gross investment income of a non-life insurance company (as described in section 834(b)); and

3. Other items that are included in the filer's gross income under Subchapter B, Chapter 1, Subtitle A of the Code.

This definition doesn't, however, include contributions to capital. For more information, see Notice 2006-42.

**Premiums.** Premiums consist of all amounts received as a result of entering into an insurance contract. They are reported on Form 990, Part VIII (Statement of Revenue), line 2, or on Form 990-EZ, Part I, line 2.

**Anti-abuse rule.** The anti-abuse rule, found in section 501(c)(15)(C), explains how gross receipts (including premiums) from all members of a controlled group are aggregated in figuring the above tests described in Appendix C.

# Appendix D. Public Inspection of Returns

Some members of the public rely on Form 990, or 990-EZ, as the primary or sole source of information about a particular organization. How the public perceives an organization in those cases may be determined by the information presented on its returns.

An organization's completed Form 990 or 990-EZ is available for public inspection as required by section 6104. Schedule B (Form 990, 990-EZ, or 990-PF), Schedule of Contributors, is open for public inspection for section 527 organizations filing Form 990 or 990-EZ. For other organizations that file Form 990 or 990-EZ, the names and addresses of contributors listed on Schedule B aren't required to be made available for public inspection. All other information reported on Schedule B, including the amount of contributions, the description of noncash contributions, and any other information, is required to be made available for public inspection unless it clearly identifies the contributor. Form 990-T filed after August 17, 2006, by a section 501(c)(3) organization to report any unrelated business income, is also available for public inspection and disclosure.

## Through the IRS

Use Form 4506-A, Request for Public Inspection or Copy of Exempt or Political Organization IRS Form, to request:
• A copy of an exempt or political organization's return, report, notice, or exemption application; or

• An inspection of a return, report, notice, or exemption application at an IRS office.

The IRS can provide copies of exempt organization returns on DVD. Requesters can order the complete set (for example, all Forms 990 and 990-EZ or all Forms 990-PF filed for a year) or a partial set by state or by month. If you are ordering a partial set on DVD, indicate the format (Alchemy or raw), state(s), and month(s) you are ordering. Sample DVD requests aren't available for individual states. DVDs and sample DVDs aren't available for individual exempt organizations. Complete information, including the cost, is available on the IRS website. Search Copies of Scanned EO Returns Available at *IRS.gov/Charities & Non-Profits/ Copies of Scanned Returns Available*.

The IRS can't disclose portions of an exemption application relating to any trade secrets, etc. Additionally, the IRS generally can't disclose the names and addresses of contributors. See the Instructions for Schedule B (Form 990, 990-EZ, or 990-PF) for more information about the disclosure of that schedule.

Notice 2008-49, 2008-20 I.R.B. 979, provides interim guidance regarding the requirement that section 501(c)(3) organizations and the IRS make available for public inspection Form 990-T.

Forms 990 or 990-EZ can only be requested for section 527 organizations for tax years beginning after June 30, 2000.

A return, report, notice, or exemption application can be inspected at an IRS office free of charge. Copies of these items can also be obtained through the organization as discussed in the following section.

## Through the Organization

**Public inspection and distribution of certain returns of unrelated business income.** Section 501(c)(3) organizations that are required to file Form 990-T after August 17, 2006, must make Form 990-T available for public inspection under section 6104(d)(1)(A)(ii).

**Public inspection and distribution of returns and reports for a political organization.** Section 527 political organizations required to file Form 990 or 990-EZ must, in general, make their Forms 8871, 8872, 990, or 990-EZ available for public inspection in the same manner as annual information returns of section 501(c) organizations are made available. See *Public inspection and distribution of applications for tax exemption and annual information*

returns of tax-exempt organizations, later. Generally, Form 8871 and Form 8872 are available for inspection and printing at IRS.gov under the *Charities & Nonprofits* tab.

 Note that a section 527 political organization (and an organization filing Form 990-PF) must disclose their *Schedule B (Form 990, 990-EZ, or 990-PF). See the Instructions for Schedule B. The penalties discussed in* General Instructions, Section H, Failure-to-File Penalties, *earlier, also apply to section 527 political organizations (Rev. Rul. 2003-49, 2003-20 I.R.B. 903).*

**Public inspection and distribution of applications for tax exemption and annual information returns of tax-exempt organizations.** Under Regulations sections 301.6104(d)-1 through 3, a tax-exempt organization must:

• Make its application for recognition of exemption and its annual information returns available for public inspection without charge at its principal, regional, and district offices during regular business hours;

• Make each annual information return available for a period of 3 years beginning on the date the return is required to be filed (determined with regard to any extension of time for filing) or is actually filed, whichever is later; and

• Provide a copy without charge for Form 990-T, this requirement applies only to Forms 990-T filed after August 17, 2006), other than a reasonable fee for reproduction and actual postage costs, of all or any part of any application or return required to be made available for public inspection to any individual who makes a request for a copy in person or in writing (except as provided in Regulations sections 301.6104(d)-2 and -3).

## Definitions

*Tax-exempt organization* is any organization that is described in section 501(c) or (d) and is exempt from taxation under section 501(a). The term tax-exempt organization also includes any section 4947(a)(1) nonexempt charitable trust or nonexempt private foundation that is subject to the reporting requirements of section 6033.

*Application for tax exemption* includes:

• Any prescribed application form (Form 1023, 1023-EZ, Form 1024, or 1024-A),

• All documents and statements the IRS requires an applicant to file with the form,

• Any statement or other supporting document submitted in support of the application, and

• Any letter or other document issued by the IRS concerning the application.

*Application for tax exemption* doesn't include:

• Any application for tax exemption filed before July 15, 1987, unless the organization filing the application had a copy of the application on July 15, 1987;

• In the case of a tax-exempt organization other than a private foundation, the name and address of any contributor to the organization; or

• Any material that isn't available for public inspection under section 6104.

 If there is no prescribed application form, see Regulations section 301.6104(d)-1(b)(3)(ii).

*Annual information return* includes:

• An exact copy of the Form 990 or Form 990-EZ filed by a tax-exempt organization as required by section 6033.

• Any amended return the organization files with the IRS after the date the original return is filed (both the original and amended return are subject to the public inspection requirements).

• An exact copy of Form 990-T if one is filed by a section 501(c)(3) organization.

The copy must include all information furnished to the IRS on Form 990, 990-EZ, or 990-T as well as all statements, attachments, and supporting documents, except for the name and address of any contributor to the organization. See the Instructions for Schedule B (Form 990, 990-EZ, or 990-PF). However, statements, attachments, and supporting documents filed with Form 990-T that don't relate to the imposition of unrelated business income tax aren't required to be made available for public inspection and copying. See Notice 2008-49.

*Annual returns more than 3 years old.* An annual information return doesn't include any return after the expiration of 3 years from the date the return is required to be filed (including any extension of time that has been granted for filing the return) or is actually filed, whichever is later.

If an organization files an amended return, however, the amended return must be made available for a period of 3 years beginning on the date it is filed with the IRS.

*Local or subordinate organizations.* For rules relating to annual information returns of local or subordinate organizations, see Regulations section 301.6104(d)-1(f)(2).

*Regional or district offices.* A regional or district office is any office of a tax-exempt organization, other than its principal office, that has paid employees, whether part-time or full-time, whose aggregate number of paid hours a week are normally at least 120.

A site isn't considered a regional or district office, however, if:

• The only services provided at the site further exempt purposes (daycare, health care, scientific or medical research); and

• The site doesn't serve as an office for management staff, other than managers who are involved solely in managing the exempt function activities at the site.

## Special Rules Relating to Public Inspection

*Permissible conditions on public inspection.* A tax-exempt organization:

• Can have an employee present in the room during an inspection,

• Must allow the individual conducting the inspection to take notes freely during the inspection, and

• Must allow the individual to photocopy the document at no charge, if the individual provides photocopying equipment at the place of inspection.

*Organizations that don't maintain permanent offices.* A tax-exempt organization with no permanent office:

• Must make its application for tax exemption and its annual information returns available for inspection at a reasonable location of its choice;

• Must permit public inspection within a reasonable amount of time after receiving a request for inspection (normally not more than 2 weeks) and at a reasonable time of day;

• Can mail, within 2 weeks of receiving the request, a copy of its application for tax exemption and annual information returns to the requester instead of allowing an inspection; and

• Can charge the requester for copying and actual postage costs only if the requester consents to the charge.

An organization that has a permanent office, but has no office hours, or very limited hours during certain times of the year, must make its documents available during those periods when office hours are limited, or not available, as though it were an organization without a permanent office.

## Special Rules Relating to Copies

*Time and place for providing copies in response to requests made in person.* A tax-exempt organization must:

• Provide copies of required documents under section 6104(d) in response to a request made in person at its principal, regional, and district offices during regular business hours, and

• Provide copies to a requester on the day the request is made, except for unusual circumstances (explained next).

**Unusual circumstances.** In the case of an in-person request, where unusual circumstances exist so that fulfilling the request on the same business day causes an unreasonable burden to the tax-exempt organization, the organization must provide the copies no later than the next business day following the day that the unusual circumstances cease to exist, or the 5th business day after the date of the request, whichever occurs first.

Unusual circumstances include:
• Requests received that exceed the organization's daily capacity to make copies;

• Requests received shortly before the end of regular business hours that require an extensive amount of copying; or

• Requests received on a day when the organization's managerial staff capable of fulfilling the request is conducting special duties (student registration or attending an off-site meeting or convention, rather than its regular administrative duties).

**Agents for providing copies.** For rules relating to use of agents to provide copies, see Regulations sections 301.6104(d)-1(d)(1)(iii) and -1(d)(2)(ii) (C).

**Request for copies in writing.** A tax-exempt organization must honor a written request for a copy of documents (or the requested part) required under section 6104(d) if the request:

1. Is addressed to (and delivered by mail, electronic mail, facsimile, or a private delivery service, as defined in section 7502(f)) a principal, regional, or district office of the organization; and

2. Sets forth the address to which the copy of the documents should be sent.

### Time and Manner of Fulfilling Written Requests

| IF the organization... | THEN the organization... |
|---|---|
| Receives a written request for a copy, | Must mail the copy of the requested documents (or the requested parts) within 30 days from the date it receives the request. |
| Mails the copy of the requested document, | Is deemed to have provided the copy on the postmark date or private delivery mark (if sent by certified or registered mail, the date of registration or the date of the postmark on the sender's receipt). |
| Requires payment in advance, | Is required to provide the copies within 30 days from the date it receives payment. |
| Receives a request or payment by mail, | Is deemed to have received it 7 days after the date of the postmark, absent evidence to the contrary. |
| Receives a request transmitted by electronic mail or facsimile, | Is deemed to have received it the day the request is transmitted successfully. |
| Receives a written request without payment or with an insufficient payment, when payment in advance is required, | Must notify the requester of the prepayment policy and the amount due within 7 days from the date of the request's receipt. |
| Receives consent from an individual making a request, | Can provide a copy of the requested document exclusively by electronic mail (the material is provided on the date the organization successfully transmits the electronic mail). |

**Request for a copy of parts of a document.** A tax-exempt organization must fulfill a request for a copy of the organization's entire application for tax exemption or annual information return or any specific part or schedule of its application or return. A request for a copy of less than the entire application or less than the entire return must specifically identify the requested part or schedule.

**Fees for copies.** A tax-exempt organization can charge a reasonable fee for providing copies. Before the organization provides the documents, it can require that the individual requesting copies of the documents pay the fee. If the organization has provided an individual making a request with notice of the fee, and the individual doesn't pay the fee within 30 days, or if the individual pays the fee by check and the check doesn't clear upon deposit, the organization can disregard the request.

**Form of payment.**
**a. Request made in person.** If a tax-exempt organization charges a fee for copying, it must accept payment by cash and money order for requests made in person. The organization can accept other forms of payment, such as credit cards and personal checks.

**b. Request made in writing.** If a tax-exempt organization charges a fee for copying and postage, it must accept payment by certified check, money order, and either personal check or credit card for requests made in writing. The organization can accept other forms of payment.

**Avoidance of unexpected fees.** Where a tax-exempt organization doesn't require prepayment and a requester doesn't enclose payment with a request, an organization must receive consent from a requester before providing copies for which the fee charged for copying and postage exceeds $20.

**Documents to be provided by regional and district offices.** Except as otherwise provided, a regional or district office of a tax-exempt organization must satisfy the same rules as the principal office for allowing public inspection and providing copies of its application for tax exemption and annual information returns.

A regional or district office isn't required, however, to make its annual information return available for inspection or to provide copies until 30 days after the date the return is required to be filed (including any extension of time that is

granted for filing the return) or is actually filed, whichever is later.

## Documents Provided by Local and Subordinate Organizations

**Applications for tax exemption.** Except as otherwise provided, a tax-exempt organization that didn't file its own application for tax exemption (because it is a local or subordinate organization covered by a group exemption letter) must, upon request, make available for public inspection, or provide copies of, the application submitted to the IRS by the central or parent organization to obtain the group exemption letter and those documents which were submitted by the central or parent organization to include the local or subordinate organization in the group exemption letter.

However, if the central or parent organization submits to the IRS a list or directory of local or subordinate organizations covered by the group exemption letter, the local or subordinate organization is required to provide only the application for the group exemption ruling and the pages of the list or directory that specifically refer to it. The

local or subordinate organization must permit public inspection, or comply with a request for copies made in person, within a reasonable amount of time (normally not more than 2 weeks) after receiving a request made in person for public inspection or copies and at a reasonable time of day. See Regulations section 301.6104(d)-1(f) for further information.

***Annual information returns.*** A local or subordinate organization that doesn't file its own annual information return (because it is affiliated with a central or parent organization that files a group return) must, upon request, make available for public inspection, or provide copies of, the group returns filed by the central or parent organization.

However, if the group return includes separate statements for each local or subordinate organization included in the group return, the local or subordinate organization receiving the request can omit any statements relating only to other organizations included in the group return.

The local or subordinate organization must permit public inspection, or comply with a request for copies made in person, within a reasonable amount of time (normally not more than 2 weeks) after receiving a request made in person for public inspection or copies and at a reasonable time of day.

When a requester seeks inspection, the local or subordinate organization can:
• Mail a copy of the applicable documents to the requester within the same time period instead of allowing an inspection, and
• Charge the requester for copying and actual postage costs, if the requester consents to the charge.

If the local or subordinate organization receives a written request for a copy of its annual information return, it must fulfill the request by providing a copy of the group return in the time and manner specified in *Request for copies in writing*, earlier.

The requester has the option of requesting from the central or parent organization, at its principal office, inspection or copies of group returns filed by the central or parent organization. The central or parent organization must fulfill the requests in the time and manner specified in *Special Rules Relating to Public Inspection* and *Special Rules Relating to Copies*, earlier.

***Failure to comply.*** Any person who doesn't comply with the public inspection requirements will be assessed a penalty of $20 for each day that inspection wasn't permitted, up to a maximum of $10,000 for each return. Organizations with gross receipts exceeding $1 million will be assessed a penalty of $100 for each day,

not to exceed $50,000 for each return. The penalties for failure to comply with the public inspection requirements for applications are the same as those for annual returns, except that the $10,000 limitation doesn't apply (sections 6652(c)(1)(C) and (D)). Any person who willfully fails to comply with the public inspection requirements for annual returns or exemption applications will be subject to an additional penalty of $5,000 (section 6685).

## Making Applications and Returns Widely Available

A tax-exempt organization isn't required to comply with a request for a copy of its application for tax exemption or an annual information return if the organization has made the requested document widely available (see below).

An organization that makes its application for tax exemption and/or annual information return widely available must also make the document available for public inspection as required under Regulations section 301.6104(d)-1(a).

A tax-exempt organization makes its application for tax exemption and/or an annual information return widely available if the organization complies with the Internet posting requirements and the notice requirements given below.

***Internet posting.*** A tax-exempt organization can make its application for tax exemption and/or an annual information return widely available by posting the document on a Web page that the tax-exempt organization establishes and maintains, or by having the document posted, as part of a database of similar documents of other tax-exempt organizations, on a Web page established and maintained by another entity. The document will be considered widely available only if:
• The Web page through which it is available clearly informs readers that the document is available and provides instructions for downloading it;
• The document is posted in a format that, when accessed, downloaded, viewed, and printed in hard copy, exactly reproduces the image of the application for tax exemption or annual information return as it was originally filed with the IRS, except for any information permitted by statute to be withheld from public disclosure; and
• Any individual with access to the Internet can access, download, view, and print the document without special computer hardware or software required for that format (other than software that is readily available to members of the public without payment of any fee) and without payment of a fee to the tax-exempt

organization or to another entity maintaining the Web page.

***Reliability and accuracy.*** In order for the document to be widely available through an Internet posting, the entity maintaining the Web page must have procedures for ensuring the reliability and accuracy of the document that it posts on the page and must take reasonable precautions to prevent alteration, destruction, or accidental loss of the document when posted on its page. In the event that a posted document is altered, destroyed, or lost, the entity must correct or replace the document.

***Notice requirement.*** If a tax-exempt organization has made its application for tax exemption and/or an annual information return widely available, it must notify any individual requesting a copy where the documents are available (including the address on the Web, if applicable). If the request is made in person, the organization must provide the notice to the individual immediately. If the request is made in writing, the notice must be provided within 7 days of receiving the request.

## Tax-Exempt Organization Subject to Harassment Campaign

Under section 6104(d)(4), if the Office of Associate Chief Counsel (Tax Exempt and Government Entities) determines that the organization is being harassed, a tax-exempt organization isn't required to comply with any request for copies that it reasonably believes is part of a harassment campaign.

Whether a group of requests is a harassment campaign depends on the relevant facts and circumstances such as:
• A sudden increase in requests;
• An extraordinary number of requests by form letters or similarly worded correspondence;
• Hostile requests;
• Evidence showing bad faith or deterrence of the organization's exempt purpose;
• Prior provision of the requested documents to the purported harassing group; and
• A demonstration that the organization routinely provides copies of its documents upon request.

A tax-exempt organization can disregard any request for copies of all or part of any document beyond the first two received within any 30-day period or the first four received within any 1-year period from the same individual or the same address, whether or not the Office of Associate Chief Counsel (Tax Exempt and Government Entities) has

**Instructions for Form 990**

determined that the organization is subject to a harassment campaign.

A tax-exempt organization can apply for a determination that it is the subject of a harassment campaign and that compliance with requests that are part of the campaign wouldn't be in the public interest by submitting a signed application to the Office of Associate Chief Counsel (Tax Exempt and Government Entities). See Rev. Proc. 2018-1, 2018-1 I.R.B. 1, or as updated annually.

In addition, the organization can suspend compliance with any request it reasonably believes to be part of the harassment campaign until it receives a response to its application for a harassment campaign determination. However, if the Office of Associate Chief Counsel (Tax Exempt and Government Entities) determines that the organization didn't have a reasonable basis for requesting a determination that it was subject to a harassment campaign or reasonable belief that a request was part of the campaign, the officer, director, trustee, employee, or other responsible individual of the organization remains liable for any penalties for not providing the copies in a timely fashion. See Regulations section 301.6104(d)-3.

# Appendix E. Group Returns—Reporting Information on Behalf of the Group

Except where otherwise instructed, where a line calls for a dollar amount or numerical data, the **central organization** filing the **group return** must aggregate the data from all the **subordinate organizations** included in the group return and report the aggregate number. For example, in answering Form 990, Part I, line 6, the total number of volunteers for all of the subordinate organizations would be reported.

For purposes of Form 990, Part III, summarize the mission and activities of all of the subordinate organizations as if all of the subordinate organizations were one entity.

In general, if a line requires a Yes/No answer and the answer isn't the same for all subordinate organizations to which the line applies, then check "Yes," and explain the answer in the schedule's supplemental information section (if applicable) or in Schedule O (Form 990 or 990-EZ). For the following lines, however, check "No" if the answer is "No" for any of the subordinates to which the line applies, and explain in Schedule O.
• Form 990, Part V, lines 1c, 2b, 3b, 5c, 6b, 7b, 7g, and 7h.

• Form 990, Part VI, lines 8a, 8b, 10b, b, and 12c.
• Form 990, Schedule C (Political Campaign and Lobbying Activities), Part I-B, lines 3 and 4a.
• Form 990, Schedule C, Part I-C, line 4.
• Form 990, Schedule C, Part II-A, line 1j.
• Form 990, Schedule C, Part II-B, line 2d.
• Form 990, Schedule C, Part III-A, lines 1–3.
• Form 990, Schedule D (Supplemental Financial Statements), Part I, lines 5 and 6.
• Form 990, Schedule D, Part II, lines 5 and 8.
• Form 990, Schedule E (Schools), lines 1–4d and 7.
• Form 990, Schedule F (Statement of Activities Outside the United States), Part I, line 1.
• Form 990, Schedule G (Supplemental Information Regarding Fundraising or Gaming Activities), Part III, line 9a.
• Form 990, Schedule I (Grants and Other Assistance to Organizations, Governments, and Individuals in the United States), Part I, line 1.
• Form 990, Schedule J (Compensation Information), Part I, lines 1b and 2.
• Form 990, Schedule M (Noncash Contributions), Part I, line 31.
• Form 990, Schedule N (Liquidation, Termination, Dissolution, or Significant Disposition of Assets), Part I, lines 3, 4a-b, 5, and 6a-c.

The following is a list of other special instructions for group returns:

1. **Header Item B. Final return/ terminated.** If the **central organization** is terminating its **group exemption** and filing its final **group return**, don't check the Final return/terminated box. Refer to Rev. Proc. 80-27, 1980-1 C.B. 677, as modified, for procedures for terminating the group exemption.

2. **Header Item C. Name.** Enter the name of the group exemption. Note that the group exemption may have a different name than the central organization's name.

3. **Header Item D. EIN.** Use the special **EIN** (separate from the central organization's EIN) that is issued solely for the purposes of the group return. The central organization must have received a group exemption letter before it can file a group ruling.

4. **Header Items E, F, J.** Enter information for the central organization only.

5. **Header Item H. Group returns.** If the organization answers "Yes" on line H(a) but "No" to line H(b) (not all subordinate organizations are included in the group return), then attach a list (not in Schedule O) showing the name, address,

and EIN of each subordinate organization included in the group return. Additionally, attach a list (not on Schedule O) showing the name, address, and EIN of each subordinate organization not included in the group return. See Regulations section 1.6033-2(d)(2)(ii).

6. **Header Item K. Form of organization.** Check "other" if the group has more than one form of organization.

7. **Header Item L. Year of formation.** Leave blank for group return.

8. **Header Item M. State of legal domicile.** Leave blank for group return.

9. **Part IV, lines 14b–19, 21–22, and 29, dollar thresholds.** Apply the dollar thresholds for the aggregate data for the group as a whole, not subordinate by subordinate.

10. **Part IV, line 20. Hospitals.** Answer "Yes," if any affiliate included within the group return operated a hospital facility.

11. **Part VI, line 2. Relationships among officers, directors, trustees, and key employees.** Describe on Schedule O (Form 990 or 990-EZ) only relationships between **officers, directors, trustees,** and **key employees** of the same **subordinate organization**, not relationships between officers, directors, trustees, and key employees of one subordinate and officers, directors, trustees, and key employees of another subordinate.

12. **Part VI, line 4. Significant changes to organizational documents.** Report only changes to standardized organizational documents maintained by the central organization that subordinates are required to adopt.

13. **Part VI, line 5. Significant diversion of assets.** In determining whether a diversion of a subordinate's assets meets the 5%/$250,000 reporting threshold, consider only the total assets and gross receipts of that subordinate, not of the parent or other subordinates.

14. **Part VI, line 20. Person who possesses books and records.** Identify the person who possesses the information furnished by the subordinate organizations used in compiling the group return.

15. **Part VII. Compensation of officers, directors, trustees, key employees, and highest compensated employees.** File a single consolidated Form 990, Part VII, showing the officers, directors, trustees, and key employees of each subordinate included in the group return, and a single consolidated Schedule J (Form 990), Compensation Information, Part II, for all officers, directors, trustees, and key employees above the compensation thresholds. Report the five **highest**

**compensated employees** and **independent contractors** above $100,000 for the whole group of subordinates, not for each subordinate. If one or more officers, directors, trustees, key employees, or highest compensated employees received compensation from more than one organization in the group, the person's compensation from the several organizations must be reported in column (D).

16. **Part VII. Compensation for related organizations.** Report compensation from an organization that is included in the group ruling but that isn't among the subordinates included in the group return as compensation from a related organization in column (E), even if the related organization isn't required to be reported on Schedule R (Form 990), Related Organizations and Unrelated Partnerships.

17. **Part XII, lines 2a-2b. Compiled, reviewed, or audited financial statements.** Answer "Yes" only if all the subordinates in the group had their financial statements compiled, reviewed, or audited individually (rather than on a consolidated basis).

18. **Schedule A (Form 990 or 990-EZ). Part I. Reason for public charity status.** If the subordinates don't all have the same public charity status, then check the public charity status box for the largest number of subordinates in the group, and explain on Schedule A (Form 990 or 990-EZ), Public Charity Status and Public Support, Part IV. However, if any section 509(a)(3) organizations are among the subordinates in the group return, also answer lines 11e through 11g.

19. **Schedule A (Form 990 or 990-EZ). Parts II and III. Support statements.** Report aggregate data for all subordinates with the public charity status corresponding to Parts II or III.

20. **Schedule A (Form 990 or 990-EZ). Parts IV through VI.** In addition to Part I in paragraph 18 above, if any section 509(a)(3) organizations are among the subordinates in the group return, also complete the relevant sections of Parts IV and V. If an answer in Part IV requires more information with respect to any section 509(a)(3) organizations, then answer with respect to those organizations and provide that additional information in Part VI. For instance, if the group includes 50 section 509(a)(3) organizations, and one of them doesn't list all of its supported organizations by name in its governing documents, then answer "No," to Part IV, Section A, line 1, and explain in Part VI. If the group includes more than one Type III non-functionally-integrated supporting

organization, then provide aggregate data in Part V.

21. **Schedule B (Form 990, 990-EZ, or 990-PF). Contributors.** Report a consolidated Schedule B (Form 990, 990-EZ, or 990-PF) for all subordinates included in the group return. Apply the dollar and percentage thresholds (including the greater of $5,000 or 2% threshold for section 501(c)(3) organizations described in sections 509(a)(1) and 170(b)(1)(A)(vi)) subordinate by subordinate, not on a group basis.

22. **Schedule C (Form 990 or 990-EZ). Part II-A. Lobbying expenditures and affiliated groups.** Complete Part II-A, column (b) for the group as a whole. In column (a), except on lines 1g and 1h, include the amounts that apply to all electing members of the group if they are included in the group return. If the group return includes organizations that belong to more than one affiliated group, enter in column (b) the totals for all the groups.

23. **Schedule D (Form 990). Part X. Other liabilities.** The filing organization can summarize that portion, if any, of the **FIN 48** (ASC 740) footnote that applies to the liability of multiple organizations including the organization (for example, as a member of a group with consolidated financial statements), to describe the filing organization's share of the liability.

24. **Schedule H (Form 990). Hospitals.** Complete one Schedule H for all of the hospitals operated by subordinates in the group, and report aggregate data from all the hospitals. In Part V, Section A, list each of the organization's **hospital facilities** separately. List in Section A the name and EIN of the subordinate hospital organization that operates the hospital facility. Complete separate Sections B and C for each of the hospital facilities or facility reporting groups listed in Section A.

25. **Schedule J (Form 990). Compensation from related organizations.** See the *Appendix E,* Part VII instructions, earlier.

26. **Schedule L (Form 990 or 990-EZ). Transactions with Interested Persons.** On Schedule L (Form 990 or 990-EZ), Part IV, report only transactions between a subordinate organization and its interested persons—not transactions between a subordinate organization and the interested persons of other subordinates. In determining whether a transaction between the subordinate and its interested persons meets the financial reporting thresholds of Schedule L, Part IV, consider only the payments between the subordinate and its interested

persons, not payments between interested persons and the parent or other subordinates.

27. **Schedule N (Form 990 or 990-EZ). Liquidation or significant disposition of assets.** Explain on Schedule N (Form 990 or 990-EZ), Part III, which of the subordinates have undergone a liquidation, termination, dissolution, or significant disposition of assets during the tax year.

28. **Schedule R (Form 990). Related organizations.** See the instructions for Schedule R (Form 990) to determine when related organizations of a member of a group exemption must be included on Schedule R (Form 990). In general, **central organizations** and **subordinate organizations** of a **group exemption** aren't required to be listed as **related organizations** on Schedule R (Form 990), Part II; and all other related organizations of the central organization or of a subordinate organization are required to be listed on Schedule R (Form 990) in the applicable part. Even if a related organization isn't required to be listed in Part II of Schedule R (Form 990), the organization must report its transactions with the related organization in Part V, as described in the instructions for that Part.

# Appendix F. Disregarded Entities and Joint Ventures—Inclusion of Activities and Items

## Disregarded Entities

A **disregarded entity**, as described in Regulations sections 301.7701-1 through 301.7701-3, is generally treated as a branch or division of its parent organization for federal tax purposes (but see **TIP** below for treatment of disregarded entities as separate entities for employment tax purposes). Therefore, financial and other information applicable to the parent organization must be reported as the parent organization's information, except on Form 990, Part VI, lines 10a and 10b, and on Schedule R (Form 990), in which disregarded entities must be separately reported.

An organization must report on its Form 990, including Parts VIII through X, all of the revenues, expenses, assets, liabilities, and net assets or funds of a disregarded entity of which it is the sole member. The disregarded entity is deemed to have the same accounting period as its parent for federal tax purposes. The organization must also report the activities of a disregarded entity in the appropriate parts (including

**Instructions for Form 990**

Schedules) of the Form 990. For example, support of a disregarded entity must be taken into account by the filing organization for purposes of the public support tests set forth on Schedule A (Form 990 or 990-EZ). Similarly, **political campaign activity** or **lobbying activity** conducted by a disregarded entity of which the organization is the sole member must be reported on Schedule C (Form 990 or 990-EZ), Political Campaign and Lobbying Activities.

 *A disregarded entity is treated as a separate entity for purposes of employment tax and certain excise taxes. For wages paid after January 1, 2009, a disregarded entity is required to use its name and employer identification number (EIN) for reporting and payment of employment taxes.*

 *A single-member LLC is treated generally as a disregarded entity of its sole member/owner unless it elects to be treated as a separate association. It may elect to be treated separately by filing Form 8832, Entity Classification Election, or by claiming tax-exempt status in its own right (by filing a Form 1023, 1023-EZ, 1024, or 1024-A, application for recognition of tax-exempt status or a Form 990, 990-EZ, 990-N, or 990-T using its own name and EIN). Once the IRS determines a single-member LLC to be exempt, it is no longer eligible to be treated as a disregarded entity until the determination of exemption is revoked and the LLC subsequently files a Form 8832 electing disregarded entity status. Similarly, a single-member LLC that claims exemption but hasn't been determined to be exempt isn't eligible to be treated as disregarded until the claim is withdrawn or rejected and the LLC files a Form 8832 electing disregarded entity status. See Regulations section 301.7701-3(c)(1)(v) (A).*

The following is a list of special instructions for the Form and Schedules regarding the reporting of a disregarded entity of which the organization is the sole member. These items are described to illustrate special applications of the rule described above that a disregarded entity's activities and items must be reported on the organization's Form 990 and applicable schedules.

1. **Part I, line 5. Number of employees.** See instructions for Part V, lines 1 and 2 below.

2. **Part I, line 6. Number of volunteers.** The total number of **volunteers** to be reported can, but isn't required to, include **volunteers** of any disregarded entity.

3. **Part III. Program service accomplishments.** Consider activities

and accomplishments of all disregarded entities when answering this part.

4. **Part IV, line 12. Audited financial statements.** The organization shouldn't answer "Yes," to this question merely because it received audited financial statements of one or more disregarded entities, if the audited financial statements of the organization weren't audited.

5. **Part IV, lines 31–32. Liquidation or significant disposition of assets.** See the *Appendix F* instructions for Schedule N (Form 990 or 990-EZ) in this Appendix, later.

6. **Part IV, lines 35–36. Transactions with related organizations.** See *Appendix F* instructions for Schedule R (Form 990) in this Appendix, later.

7. **Part V, lines 1–2. Forms 1096 and W-3.** The total number of information returns and **employees** to be reported, and compliance with backup withholding rules, includes all backup withholding, information returns and employees of any disregarded entity, whether or not the disregarded entity has a separate **EIN** for employment tax and information reporting purposes.

8. **Part V, line 7. Organizations that can receive deductible contributions.** For purposes of Form 990 reporting, lines 7a through 7h are to be answered by taking into account any contributions made to a disregarded entity.

9. **Part VI, lines 1a–9.** Members of the governing body, officers, directors, trustees, and employees of a disregarded entity won't be treated as **governing body members, officers, directors,** or **trustees** of the filing organization, but a person can be a **key employee** or **highest compensated employee** of the filing organization by virtue of **compensation** paid by the disregarded entity, or the person's responsibilities and authority over operations of the disregarded entity when compared to the filing organization as a whole. See the instructions for Form 990, Part VII, Section A, *Disregarded entities*, earlier.

10. **Part VI, Section B, lines 10a–16b. Policies.** The organization should check "Yes," or "No," based on the filing organization's policies, but for each "Yes" response they must report on Schedule O (Form 990 or 990-EZ) whether the policy applies to all of the organization's disregarded entities (if any).

11. **Part VII, line 1a. Definitions of key employee and highest compensated employee.** An officer, director, trustee, and employee of a disregarded entity can constitute a key

employee or highest compensated employee of the filing organization by virtue of compensation paid by the disregarded entity, or the person's responsibilities and authority over operations of the disregarded entity when compared to the filing organization as a whole. See the instructions for Form 990, Part VII, Section A.

12. **Part XII, lines 2a–2b. Financial statements.** If the organization included financial information from its disregarded entity or entities in its financial statements, but didn't consolidate any other entity's information in its financial statements, it should check the box for "Separate basis" but not the box for "Consolidated basis" or "Both consolidated and separate basis."

13. **Part XII, line 3. Uniform Guidance, 2 C.F.R. Part 200, Subpart F.** The organization must check "Yes" if a disregarded entity was required to undergo an audit or audits.

**Note.** The Single Audit Act of 1984 and OMB Circular A-133 are superseded by Uniform Guidance, 2 C.F.R. Part 200, Subpart F, and now requires states, local governments, and nonprofit organizations that spend $750,000 (previously $500,000) or more of federal awards in a year to obtain an annual audit.

14. **Schedule L (Form 990 or 990-EZ). Transactions with interested persons.** Reportable transactions include transactions involving interested persons who have such status because of their relationship with a disregarded entity (such as an employee of the disregarded entity who qualifies as a key employee of the organization as a whole). A transaction between an interested person and a disregarded entity of the organization is reportable on Schedule L.

15. **Schedule N (Form 990 or 990-EZ). Liquidation or significant disposition of assets.** The organization shouldn't prepare Part I to report a termination, liquidation, or dissolution of a disregarded entity if the filing organization continues to operate. Transfers to (or by) a filing organization by (or to) its disregarded entity aren't to be reported in Part II, but transfers by or contractions of a disregarded entity are to be taken into account to determine whether a reportable event (based on 25% of the filing organization's net assets, including those of its disregarded entities) has occurred.

16. **Schedule R (Form 990), Part V, line 2. Transactions with related organizations.** Specified payments to a disregarded entity by a **controlled entity** of the filing organization, and transfers by

a disregarded entity to an exempt non-charitable entity, are to be reported on Schedule R (Form 990), Part V, line 2.

# Joint Ventures Treated as a Partnership for Federal Income Tax Purposes

If the organization participates as a partner or member of a **joint venture**, partnership, LLC, or other entity treated as a partnership for federal tax purposes (referred to here as a "joint venture"), as described in Regulations sections 301.7701-1 through 301.7701-3, then the organization in general must report the activities of the joint venture as its own activities, and report the joint venture's revenue, expenses, and assets, to the extent of the organization's proportionate interest in the joint venture. For example, a proportionate share of the **political campaign activity** or **lobbying activity** conducted by a joint venture of which the organization is a member must be reported on Schedule C (Form 990 or 990-EZ), Political Campaign and Lobbying Activities. If the joint venture is a member of a second joint venture, which is a member of a third joint venture, etc., the activities similarly pass through all joint ventures to the organization, according to the organization's proportionate share in each of the joint ventures.

The following is a list of special instructions for the Form and Schedules regarding the reporting of a joint venture of which the organization is a member.

1. **Part I, line 2. Disposition of 25% of assets.** See instructions for Schedule N in this Appendix, later.

2. **Part I, lines 7a–7b. Unrelated business income.** Include the organization's distributive share (whether or not distributed) of income or loss of the joint venture that is unrelated business income in determining the organization's gross and net unrelated business income.

3. **Part IV, lines 3–5. Political campaign and lobbying activities.** See instructions for Schedule C in this Appendix, later.

4. **Part IV, line 7. Conservation easements.** See instructions for Schedule D in this Appendix, later.

5. **Part IV, lines 14–16. Activities outside the United States.** See instructions for Schedule F in this Appendix, later.

6. **Part IV, lines 17–19. Fundraising and gaming.** See instructions for Schedule G in this Appendix, later.

7. **Part IV, line 20. Hospitals.** See instructions for Schedule H in this Appendix, later.

8. **Part IV, lines 21–22. Grants in the United States.** See instructions for Schedule I in this Appendix, later.

9. **Part IV, lines 26–28. Loans, grants, and business transactions involving interested persons.** See instructions for Schedule L in this Appendix, later.

10. **Part IV, line 32. Disposition of 25% of assets.** See instructions for Schedule N in this Appendix, later.

11. **Part IV, lines 34–37. Related organizations and unrelated partnerships.** See instructions for Schedule R in this Appendix, later.

12. **Part V, line 3a. Unrelated business income.** Include the organization's distributive share (whether or not distributed) of income or loss of the joint venture that is **unrelated business income** in determining the organization's gross unrelated business income.

13. **Part VI. Governance, management, and disclosure.** Don't take into account a joint venture for purposes of Part VI (except for lines 16a and 16b).

14. **Part VII. Compensation.** See instructions for Schedule J in this Appendix, later.

15. **Parts VIII, IX, and X. Financial statements.** Report in accordance with the organization's books and records.

16. **Part XII. Financial statements and reporting.** Disregard a joint venture.

17. **Schedule C (Form 990 or 990-EZ). Political campaign and lobbying activities.** Report the organization's share of political campaign or lobbying activities conducted by a joint venture.

18. **Schedule D (Form 990), Part II. Conservation easements.** Include conservation easements held by a joint venture formed for the purpose of holding the easements.

19. **Schedule F (Form 990). Activities outside the United States.** Include activities of a joint venture, including grants to organizations or individuals outside the United States.

20. **Schedule G (Form 990 or 990-EZ). Fundraising and gaming.** Include activities of a joint venture and the organization's share of revenues and expenses. On Part III, line 12, check "Yes" if the joint venture was formed to administer charitable gaming.

21. **Schedule H (Form 990). Hospitals.** Report activities, expenses, and revenue of **hospital facilities** and other programs operated by any joint

venture, to the extent of the organization's proportionate interest in the joint venture. See the instructions for Schedule H, Part IV, to determine how to report an organization's interest in joint ventures and management companies.

22. **Schedule I (Form 990). Grants in the United States.** Include grants from a joint venture to organizations, governments, or individuals in the United States.

23. **Schedule J (Form 990). Compensation.** If an **officer, director, trustee,** or **employee** of the organization receives compensation from a joint venture, the **compensation** isn't treated as paid pro rata by the organization. The compensation may need to be reported, however, as compensation from a related organization if the joint venture is a related organization.

24. **Schedule K (Form 990), Part III, line 1. Private business use.** Report certain joint ventures that owned property financed by **tax-exempt bonds.**

25. **Schedule L (Form 990 or 990-EZ), Parts II–IV. Loans, grants, and business transactions involving interested persons.** Report loans, grants, and business transactions between the organization and a joint venture, if the joint venture is an interested person for purposes of Schedule L, and if the transaction meets the applicable reporting thresholds described in the Schedule L instructions. Also report certain joint ventures with interested persons as provided in the Schedule L, Part IV, instructions, as business transactions themselves.

26. **Schedule N (Form 990 or 990-EZ), Part II. Disposition of 25% of assets.** In determining whether the organization made a disposition of more than 25% of its assets, take into account its share of dispositions by a joint venture.

27. **Schedule R (Form 990). Related organizations.** Report relationships with certain joint ventures in Parts III and VI, and certain transactions with joint ventures in Part V.

# Appendix G. Section 4958 Excess Benefit Transactions

The intermediate sanction regulations are important to the exempt organization community as a whole, and for ensuring compliance in this area. The rules provide a roadmap by which an organization can steer clear of situations that may give rise to inurement.

Under section 4958, any **disqualified person** who benefits from an **excess benefit transaction** with an **applicable**

**tax-exempt organization** is liable for a 25% tax on the excess benefit. The disqualified person is also liable for a 200% tax on the excess benefit if the excess benefit isn't corrected by a certain date. Also, organization managers who participate in an excess benefit transaction knowingly, willfully, and without reasonable cause are liable for a 10% tax on the excess benefit, not to exceed $20,000 for all participating managers on each transaction.

# Applicable Tax-Exempt Organization

These rules only apply to certain applicable section 501(c)(3), 501(c)(4), and 501(c)(29) organizations. An **applicable tax-exempt organization** is a section 501(c)(3), 501(c)(4), or 501(c)(29) organization that is tax exempt under section 501(a), or was an organization at any time during a 5-year period ending on the day of the **excess benefit transaction**.

An **applicable tax-exempt organization** doesn't include:
• A **private foundation** as defined in section 509(a),
• A governmental entity that is exempt from (or not subject to) taxation without regard to section 501(a) or relieved from filing an annual return under Regulations section 1.6033-2(g)(6), and
• Certain **foreign organizations**.

An organization isn't treated as a section 501(c)(3), 501(c)(4), or 501(c)(29) organization for any period covered by a final determination that the organization wasn't tax exempt under section 501(a), so long as the determination wasn't based on private inurement or one or more excess benefit transactions.

# Disqualified Person

Most section 501(c)(3), 501(c)(4), or 501(c)(29) organization **employees** and **independent contractors** won't be affected by these rules. Only the few influential persons within these organizations are covered by these rules when they receive benefits, such as **compensation,** fringe benefits, or contract payments. The IRS calls this class of covered individuals **disqualified persons**.

A *disqualified person*, regarding any transaction, is any person who was in a position to exercise substantial influence over the affairs of the applicable tax-exempt organization at any time during a 5-year period ending on the date of the transaction. Persons who hold certain powers, responsibilities, or interests are among those who are in a position to exercise substantial influence

over the affairs of the organization. This would include, for example, **voting members of the governing body**, and persons holding the power of:
• Presidents, **chief executive officers**, or chief operating officers.
• Treasurers and chief financial officers. A disqualified person also includes certain family members of a disqualified person, and **35% controlled entities** of a disqualified person.

The following persons are considered disqualified persons for the following organizations, along with certain family members and 35% controlled entities associated with them:
• For a transaction involving a **donor advised fund**, a donor or **donor advisor** of that donor advised fund,
• For a **donor advised fund** sponsoring organization, an investment advisor of the **sponsoring organization**, and
• For a **supported organization** of a section 509(a)(3) supporting organization, the disqualified persons of the section 509(a)(3) **supporting organization**.

See the Instructions for Form 4720, Schedule I, for more information regarding these disqualified persons.

**Who isn't a disqualified person?** The rules also clarify which persons aren't considered to be in a position to exercise substantial influence over the affairs of an organization. They include:
• An employee who receives benefits that total less than the highly compensated amount ($120,000 in 2015–2018, and $125,000 in 2019) and who doesn't hold the executive or voting powers just mentioned; isn't a family member of a disqualified person; and isn't a substantial contributor;
• Tax-exempt organizations described in section 501(c)(3); and
• Section 501(c)(4) organizations for transactions engaged in with other section 501(c)(4) organizations.

**Who else can be considered a disqualified person?** Other persons not described above also can be considered disqualified persons, depending on all the relevant facts and circumstances.

*Facts and circumstances tending to show substantial influence.*
• The person founded the organization.
• The person is a substantial contributor to the organization under the section 507(d)(2)(A) definition, only taking into account contributions to the organization for the past 5 years.
• The person's compensation is primarily based on revenues derived from the activities of the organization that the person controls.
• The person has or shares authority to control or determine a substantial portion of the organization's capital expenditures,

operating budget, or compensation for employees.
• The person manages a discrete segment or activity of the organization that represents a substantial portion of the activities, assets, income, or expenses of the organization, as compared to the organization as a whole.
• The person owns a controlling interest (measured by either vote or value) in a corporation, partnership, or trust that is a disqualified person.
• The person is a nonstock organization controlled directly or indirectly by one or more disqualified persons.

*Facts and circumstances tending to show no substantial influence.*
• The person is an independent contractor whose sole relationship to the organization is providing professional advice (without having decision-making authority) for transactions from which the independent contractor won't economically benefit.
• The person has taken a vow of poverty.
• Any preferential treatment the person receives based on the size of the person's donation is also offered to others making comparable widely solicited donations.
• The direct supervisor of the person isn't a disqualified person.
• The person doesn't participate in any management decisions affecting the organization as a whole or a discrete segment of the organization that represents a substantial portion of the activities, assets, income, or expenses of the organization, as compared to the organization as a whole.

**What about persons who staff affiliated organizations?** In the case of multiple affiliated organizations, the determination of whether a person has substantial influence is made separately for each applicable tax-exempt organization. A person may be a disqualified person for more than one organization in the same transaction.

# Excess Benefit Transaction

An **excess benefit transaction** generally is a transaction in which an economic benefit is provided by an **applicable tax-exempt organization**, directly or indirectly, to or for the use of any **disqualified person**, and the value of the economic benefit provided by the applicable tax-exempt organization exceeds the value of the consideration (including the performance of services) received for providing the benefit, but see the special rules below for **donor advised funds** and **supporting organizations**. An excess benefit transaction also can occur when a

disqualified person embezzles from the exempt organization.

To determine whether an excess benefit transaction has occurred, all consideration and benefits exchanged between a disqualified person and the applicable tax-exempt organization, and all entities it controls, are taken into account.

For purposes of determining the value of economic benefits, the value of property, including the right to use property, is the **fair market value (FMV)**. **FMV** is the price at which property, or the right to use property, would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy, sell, or transfer property or the right to use property, and both having reasonable knowledge of relevant facts.

**Donor advised funds.**  For a **donor advised fund**, an excess benefit transaction includes a grant, loan, **compensation**, or similar payment from the fund to a:
- Donor or **donor advisor**,
- Family member of a donor or **donor advisor**,
- **35% controlled entity** of a donor or donor advisor, or
- 35% controlled entity of a family member of a donor or donor advisor.

For these transactions, the excess benefit is defined as the amount of the grant, loan, compensation, or similar payment. For additional information, see the Instructions for Form 4720.

**Supporting organizations.**  For any supporting organization defined in section 509(a)(3), an excess benefit transaction includes grants, loans, compensation, or similar payment provided by the supporting organization to a:
- Substantial contributor,
- Family member of a substantial contributor,
- 35% controlled entity of a substantial contributor, or
- 35% controlled entity of a family member of a substantial contributor. Additionally, an excess benefit transaction includes any loans provided by the supporting organization to a disqualified person (other than an organization described in section 509(a)(1), (2), or (4)).

A substantial contributor is any person who contributed or bequeathed an aggregate of more than $5,000 to the organization, if that amount is more than 2% of the total contributions and bequests received by the organization before the end of the tax year of the organization in which the contribution or bequest is received by the organization

from the person. A substantial contributor includes the grantor of a trust.

The excess benefit for substantial contributors and parties related to those contributors includes the amount of the grant, loan, compensation, or similar payment. For additional information, see the Instructions for Form 4720.

**When does an excess benefit transaction usually occur?**  For federal income tax purposes, an excess benefit transaction occurs on the date the disqualified person receives the economic benefit from the organization. However, when a single contractual arrangement provides for a series of compensation payments or other payments to a disqualified person during the disqualified person's tax year, any excess benefit transaction for these payments occurs on the last day of the disqualified person's tax year.

In the case of the transfer of property subject to a substantial risk of forfeiture, or in the case of rights to future compensation or property, the transaction occurs on the date the property, or the rights to future compensation or property, isn't subject to a substantial risk of forfeiture. Where the disqualified person elects to include an amount in gross income in the tax year of transfer under section 83(b), the excess benefit transaction occurs on the date the disqualified person receives the economic benefit for federal income tax purposes.

**Section 4958 applies only to post-September 1995 transactions.**  Section 4958 applies the general rules to excess benefit transactions occurring on or after September 14, 1995. Section 4958 doesn't apply to any transaction occurring pursuant to a written contract that was binding on September 13, 1995, and at all times thereafter before the transaction occurs. The special rules relevant to transactions with donor advised funds and supporting organizations apply to transactions occurring after August 17, 2006, except that taxes on certain transactions between supporting organizations and their substantial contributors apply to transactions occurring on or after July 25, 2006.

# What Is Reasonable Compensation?

**Reasonable compensation** is the valuation standard that is used to determine if there is an excess benefit in the exchange of a **disqualified person's** services for **compensation**. *Reasonable compensation* is the value that would ordinarily be paid for like services by like enterprises under like circumstances.

This is the section 162 standard that will apply in determining the reasonableness of compensation. The fact that a bonus or revenue-sharing arrangement is subject to a cap is a relevant factor in determining the reasonableness of compensation.

For determining the reasonableness of compensation, all items of compensation provided by an applicable tax-exempt organization in exchange for the performance of services are taken into account in determining the value of compensation (except for certain economic benefits that are disregarded, as discussed in *What benefits are disregarded?* in this Appendix, later). Items of compensation include:
- All forms of cash and noncash compensation, including salary, fees, bonuses, severance payments, and deferred and noncash compensation;
- The payment of liability insurance premiums for, or the payment or reimbursement by the organization of taxes or certain expenses under section 4958, unless excludable from income as a de minimis fringe benefit under section 132(a)(4). (A similar rule applies in the private foundation area.) Inclusion in compensation for purposes of determining reasonableness under section 4958 doesn't control inclusion in income for income tax purposes;
- All other compensatory benefits, whether or not included in gross income for income tax purposes;
- Taxable and nontaxable fringe benefits, except fringe benefits described in section 132; and
- Foregone interest on loans.

**Written intent required to treat benefits as compensation.**  An economic benefit isn't treated as consideration for the performance of services unless the organization providing the benefit clearly indicates its intent to treat the benefit as compensation when the benefit is paid.

An applicable tax-exempt organization (or entity that it controls) is treated as clearly indicating its intent to provide an economic benefit as compensation for services only if the organization provides written substantiation that is contemporaneous with the transfer of the economic benefits under consideration. Ways to provide contemporaneous written substantiation of its intent to provide an economic benefit as compensation include:
- The organization produces a signed written employment contract;
- The organization reports the benefit as compensation on an original Form W-2, Form 1099, or Form 990, or on an amended form filed before the start of an IRS examination; or
- The disqualified person reports the benefit as income on the person's original

Form 1040 or Form 1040-SR or on an amended form filed before the start of an IRS examination.

**Exception.** To the extent the economic benefit is excluded from the disqualified person's gross income for income tax purposes, the applicable tax-exempt organization isn't required to indicate its intent to provide an economic benefit as compensation for services. (For example: employer-provided health benefits and contributions to qualified plans under section 401(a).)

**What benefits are disregarded?** The following economic benefits are disregarded for purposes of section 4958.

• Nontaxable fringe benefits. An economic benefit that is excluded from income under section 132.

• Benefits to volunteers. An economic benefit provided to a volunteer for the organization if the benefit is provided to the general public in exchange for a membership fee or contribution of $75 or less per year.

• Benefits to members or donors. An economic benefit provided to a member of an organization due to the payment of a membership fee, or to a donor as a result of a deductible contribution, if a significant number of nondisqualified persons make similar payments or contributions and are offered a similar economic benefit.

• Benefits to a charitable beneficiary. An economic benefit provided to a person solely as a member of a charitable class that the applicable tax-exempt organization intends to benefit as part of the accomplishment of its exempt purpose.

• Benefits to a governmental unit. A transfer of an economic benefit to or for the use of a governmental unit, as defined in section 170(c)(1), if exclusively for public purposes.

**Is there an exception for initial contracts?** Section 4958 doesn't apply to any fixed payment made to a person pursuant to an **initial contract**. This is a very important exception, since it would potentially apply, for example, to all initial contracts with new, previously unrelated officers and contractors.

An *initial contract* is a binding written contract between an applicable tax-exempt organization and a person who wasn't a disqualified person immediately before entering into the contract.

A *fixed payment* is an amount of cash or other property specified in the contract, or determined by a fixed formula that is specified in the contract, which is to be paid or transferred in

exchange for the provision of specified services or property.

A *fixed formula* can, in general, incorporate an amount that depends upon future specified events or contingencies, as long as no one has discretion when calculating the amount of a payment or deciding whether to make a payment (such as a bonus).

**Treatment as new contract.** A binding written contract providing that it can be terminated or canceled by the applicable tax-exempt organization without the other party's consent (except as a result of substantial nonperformance) and without substantial penalty, is treated as a new contract, as of the earliest date that any termination or cancellation would be effective. Also, a contract in which there is a material change, which includes an extension or renewal of the contract (except for an extension or renewal resulting from the exercise of an option by the disqualified person), or a more than incidental change to the amount payable under the contract, is treated as a new contract as of the effective date of the material change. Treatment as a new contract can cause the contract to fall outside the initial contract exception, and it thus would be tested under the FMV standards of section 4958.

# Rebuttable Presumption of Reasonableness

Payments under a **compensation** arrangement are presumed to be reasonable and the transfer of property (or right to use property) is presumed to be at **FMV**, if the following three conditions are met.

1. The transaction is approved by an authorized body of the organization (or an entity it controls), which is composed of individuals who don't have a conflict of interest concerning the transaction.

2. Before making its determination, the authorized body obtained and relied upon appropriate data as to comparability. There is a special safe harbor for small organizations. If the organization has gross receipts of less than $1 million, appropriate comparability data includes data on compensation paid by three comparable organizations in the same or similar communities for similar services.

3. The authorized body adequately documents the basis for its determination concurrently with making that determination. The documentation should include:

a. The terms of the approved transaction and the date approved;

b. The members of the authorized body who were present during debate on

the transaction that was approved and those who voted on it;

c. The comparability data obtained and relied upon by the authorized body and how the data was obtained;

d. Any actions by a member of the authorized body having a conflict of interest; and

e. Documentation of the basis for the determination before the later of the next meeting of the authorized body or 60 days after the final actions of the authorized body are taken, and approval of records as reasonable, accurate, and complete within a reasonable time thereafter.

**Special rebuttable presumption rule for nonfixed payments.** As a general rule, in the case of a nonfixed payment, no rebuttable presumption arises until the exact amount of the payment is determined, or a fixed formula for calculating the payment is specified, and the three requirements creating the presumption have been satisfied. However, if the authorized body approves an employment contract with a disqualified person that includes a nonfixed payment (for example, discretionary bonus) with a specified cap on the amount, the authorized body can establish a rebuttable presumption as to the nonfixed payment when the employment contract is entered into by, in effect, assuming that the maximum amount payable under the contract will be paid, and satisfying the requirements giving rise to the rebuttable presumption for that maximum amount.

**An IRS challenge to the presumption of reasonableness.** The IRS can refute the presumption of reasonableness only if it develops sufficient contrary evidence to rebut the probative value of the comparability data relied upon by the authorized body. This provision gives taxpayers added protection if they faithfully find and use contemporaneous persuasive comparability data when they provide the benefits.

**Organizations that don't establish a presumption of reasonableness.** An organization can still comply with section 4958 even if it didn't establish a presumption of reasonableness. In some cases, an organization may find it impossible or impracticable to fully implement each step of the rebuttable presumption process. In those cases, the organization should try to implement as many steps as possible, in whole or in part, in order to substantiate the reasonableness of benefits as timely and as well as possible. If an organization doesn't satisfy the requirements of the rebuttable presumption of reasonableness, a facts and

circumstances approach will be followed, using established rules for determining reasonableness of compensation and benefit deductions in a manner similar to the established procedures for section 162 business expenses.

## Section 4958 Taxes

**Tax on disqualified persons.** An excise tax equal to 25% of the excess benefit is imposed on each excess benefit transaction between an **applicable tax-exempt organization** and a **disqualified person**. The disqualified person who benefited from the transaction is liable for the tax. If the 25% tax is imposed and the excess benefit transaction isn't corrected within the taxable period, an additional excise tax equal to 200% of the excess benefit is imposed.

If a disqualified person makes a payment of less than the full correction amount, the 200% tax is imposed only on the unpaid portion of the correction amount. If more than one disqualified person received an excess benefit from an excess benefit transaction, all the disqualified persons are jointly and severally liable for the taxes.

To avoid the imposition of the 200% tax, a disqualified person must correct the excess benefit transaction during the taxable period. The taxable period begins on the date the transaction occurs and ends on the earlier of the date the statutory notice of deficiency is issued or the section 4958 taxes are assessed. This 200% tax can be abated if the excess benefit transaction subsequently is corrected during a 90-day correction period.

**Tax on organization managers.** An excise tax equal to 10% of the excess benefit can be imposed on the participation of an organization manager in an excess benefit transaction between an applicable tax-exempt organization and a disqualified person. This tax, which can't exceed $20,000 for any single transaction, is only imposed if the 25% tax is imposed on the disqualified person, the organization manager knowingly participated in the transaction, and the manager's participation was willful and not due to reasonable cause. There is also joint and several liability for this tax. An organization manager can be liable for both the tax on disqualified persons and on organization managers in appropriate circumstances.

An *organization manager* is any officer, director, or trustee of an applicable tax-exempt organization, or any individual having powers or responsibilities similar to officers, directors, or trustees of the organization, regardless of title. An organization

manager isn't considered to have participated in an excess benefit transaction where the manager has opposed the transaction in a manner consistent with the fulfillment of the manager's responsibilities to the organization. For example, a director who votes against giving an excess benefit would ordinarily not be subject to this tax.

A person participates in a transaction knowingly if the person has actual knowledge of sufficient facts so that, based solely upon the facts, the transaction would be an excess benefit transaction. Knowing doesn't mean having reason to know. The organization manager ordinarily won't be considered knowing if, after full disclosure of the factual situation to an appropriate professional, the organization manager relied on the professional's reasoned written opinion on matters within the professional's expertise or if the manager relied on the fact that the requirements for the rebuttable presumption of reasonableness have been satisfied. Participation by an organization manager is willful if it is voluntary, conscious, and intentional. An organization manager's participation is due to reasonable cause if the manager has exercised responsibility on behalf of the organization with ordinary business care and prudence.

## Correcting an Excess Benefit Transaction

A **disqualified person** corrects an **excess benefit transaction** by undoing the excess benefit to the extent possible, and by taking any additional measures necessary to place the organization in a financial position not worse than that in which it would be if the disqualified person were dealing under the highest fiduciary standards. The organization isn't required to rescind the underlying agreement; however, the parties may need to modify an ongoing contract for future payments.

A disqualified person corrects an excess benefit by making a payment in cash or cash equivalents equal to the correction amount to the applicable tax-exempt organization. The correction amount equals the excess benefit plus the interest on the excess benefit; the interest rate can be no lower than the applicable federal rate. There is an anti-abuse rule to prevent the disqualified person from effectively transferring property other than cash or cash equivalents.

**Exception.** For a correction of an excess benefit transaction described in *Donor advised funds* (discussed earlier), no amount repaid in a manner prescribed

by the IRS can be held in a donor advised fund.

**Property.** With the agreement of the applicable tax-exempt organization, a disqualified person can make a payment by returning the specific property previously transferred in the excess benefit transaction. The return of the property is considered a payment of cash (or cash equivalent) equal to the lesser of:

• The FMV of the property on the date the property is returned to the organization, or
• The FMV of the property on the date the excess benefit transaction occurred.

**Insufficient payment.** If the payment resulting from the return of the property is less than the correction amount, the disqualified person must make an additional cash payment to the organization equal to the difference.

**Excess payment.** If the payment resulting from the return of the property exceeds the correction amount described above, the organization can make a cash payment to the disqualified person equal to that difference.

## Churches and Section 4958

The regulations make it clear that the IRS will apply the procedures of section 7611 when initiating and conducting any inquiry or examination into whether an excess benefit transaction has occurred between a **church** and a **disqualified person**.

## Revenue-Sharing Transactions

Proposed intermediate sanction regulations were issued in 1998. The proposed regulations had special provisions covering "any transaction in which the amount of any economic benefit provided to or for the use of a **disqualified person** is determined in whole or in part by the revenues of one or more activities of the organization." — so-called revenue-sharing transactions. Rather than setting forth additional rules on revenue-sharing transactions, the final regulations reserve this section. Consequently, until the IRS issues new regulations for this reserved section on revenue-sharing transactions, these transactions will be evaluated under the general rules (for example, the **fair market value** standards) that apply to all contractual arrangements between **applicable tax-exempt organizations** and their disqualified persons.

Instructions for Form 990

# Revocation of Exemption and Section 4958

Section 4958 doesn't affect the substantive standards for tax exemption under section 501(c)(3), 501(c)(4), or 501(c)(29), including the requirements that the organization be organized and operated exclusively for exempt purposes, and that no part of its net earnings inure to the benefit of any private shareholder or individual. The legislative history indicates that in most instances, the imposition of this intermediate sanction will be in lieu of revocation. The IRS has indicated that the following factors will be considered (among other facts and circumstances) in determining whether to revoke an applicable tax-exempt organization's exemption status where an **excess benefit transaction** has occurred:

• The size and scope of the organization's regular and ongoing activities that further exempt purposes before and after the excess benefit transaction or transactions occurred;

• The size and scope of the excess benefit transaction or transactions (collectively, if more than one) in relation to the size and scope of the organization's regular and ongoing activities that further exempt purposes;

• Whether the organization has been involved in multiple excess benefit transactions with one or more persons;

• Whether the organization has implemented safeguards that are reasonably calculated to prevent excess benefit transactions; and

• Whether the excess benefit transaction has been corrected, or the organization has made good faith efforts to seek correction from the disqualified person(s) who benefited from the excess benefit transaction.

# Appendix H. Forms and Publications To File or Use

## How To Get Forms and Publications

 **Internet.** You can access the IRS website at IRS.gov 24 hours a day, 7 days a week to:

• Download forms, including talking tax forms, instructions, and publications.
• Order IRS products online.
• Research your tax questions online.
• Search publications online by topic or keyword.
• Use the online Internal Revenue Code, Regulations, or other official guidance.

• View Internal Revenue Bulletins (IRBs) published in the last few years.
• Sign up to receive local and national tax news by email.

 ***Ordering forms, instructions, and publications.***

• *You can download items from the IRS website at IRS.gov/OrderForms to order current-year forms, instructions, and publications, and prior-year forms and instructions. You should receive your order within 10 days.*

## How to Get Tax Help

**Tax reform.** Major tax reform legislation impacting individuals, businesses, and tax-exempt entities was approved by Congress in the Tax Cuts and Jobs Act on December 22, 2017. Go to *IRS.gov/ TaxReform* for information and updates on how this legislation affects your taxes.

**Getting answers to your tax law questions.** On IRS.gov, get answers to your tax questions anytime, anywhere.
• Go to *IRS.gov/Help* or *IRS.gov/ LetUsHelp* pages for a variety of tools that will help you get answers to some of the most common tax questions.
• Go to *IRS.gov/Ita* for the Interactive Tax Assistant, a tool that will ask you questions on a number of tax law topics and provide answers. You can print the entire interview and the final response for your records.
• Access tax law information in your electronic filing software.
• Apply for an **Employer Identification Number (EIN).** Go to IRS.gov and enter *Apply for an EIN* in the search box.
• Read the Internal Revenue Code, Regulations, or other official guidance.
• Read Internal Revenue Bulletins.

**Getting tax forms and publications.** Go to *IRS.gov/Forms* to view, download, or print all of the forms and publications you may need. You can also download and view popular tax publications and instructions on mobile devices as an eBook at no charge. Or, you can go to *IRS.gov/OrderForms* to place an order and have forms mailed to you within 10 business days.

**Phone.** If you have questions and/or need help completing Form 990 or Form 990-EZ, please call 877-829-5500. This toll-free telephone service is available Monday through Friday.

## Other Forms That May Be Required

**Schedule A (Form 990 or 990-EZ).** Public Charity Status and Public Support.

**Schedule B (Form 990, 990-EZ, or 990-PF).** Schedule of Contributors.

**Schedule C (Form 990 or 990-EZ).** Political Campaign and Lobbying Activities.

**Schedule D (Form 990).** Supplemental Financial Statements.

**Schedule E (Form 990 or 990-EZ).** Schools.

**Schedule F (Form 990).** Statement of Activities Outside the United States.

**Schedule G (Form 990 or 990-EZ).** Supplemental Information Regarding Fundraising or Gaming Activities.

**Schedule H (Form 990).** Hospitals.

**Schedule I (Form 990).** Grants and Other Assistance to Organizations, Governments, and Individuals in the United States.

**Schedule J (Form 990).** Compensation Information.

**Schedule K (Form 990).** Supplemental Information on Tax-Exempt Bonds.

**Schedule L (Form 990 or 990-EZ).** Transactions With Interested Persons.

**Schedule M (Form 990).** Noncash Contributions.

**Schedule N (Form 990 or 990-EZ).** Liquidation, Termination, Dissolution, or Significant Disposition of Assets.

**Schedule O (Form 990 or 990-EZ).** Supplemental Information to Form 990 or 990-EZ.

**Schedule R (Form 990).** Related Organizations and Unrelated Partnerships.

**Forms W-2 and W-3.** Wage and Tax Statement; and Transmittal of Wage and Tax Statements.

**Form W-9.** Request for Taxpayer Identification Number and Certification.

**Form 720.** Quarterly Federal Excise Tax Return.

 *The Patient-Centered Outcomes Research fee is imposed on issuers of specified health insurance policies (section 4375) and plan sponsors of applicable self-insured health plans (section 4376) for policy and plan years ending on or after October 1, 2012. See Form 720 and section 4376 for more information.*

*In addition to various federal excise taxes that are paid with the filing of Form 720, the Patient-Centered Outcomes Research fee is imposed on issuers of specified health insurance policies and plan sponsors of applicable self-insured health plans is payable annually and reported on the Form 720 that is filed for*

*the second quarter of each year, which is due no later than July 31 of the calendar year immediately following the last day of the policy year or plan year to which the fee applies.*

**Form 926.** Return by a U.S. Transferor of Property to a Foreign Corporation.

**Form 940.** Employer's Annual Federal Unemployment (FUTA) Tax Return.

**Form 941.** Employer's QUARTERLY Federal Tax Return. Used to report social security, Medicare, and income taxes withheld by an employer and social security and Medicare taxes paid by an employer.

**Form 943.** Employer's Annual Federal Tax Return for Agricultural Employees.

**Form 990-T.** Exempt Organization Business Income Tax Return. Filed separately for organizations subject to UBTI that have total gross income from all of their **unrelated trades or businesses** of $1,000 or more for the tax year. The Form 990-T is also filed to pay the section 6033(e)(2) proxy tax. For Form 990, see Part V, line 3, and its instructions; for Form 990-EZ, see Part V, line 35, and its instructions.

**Form 990-W.** Estimated Tax on Unrelated Business Taxable Income for Tax-Exempt Organizations.

**Form 1023.** Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code.

**Form 1023-EZ.** Streamlined Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code.

**Form 1024.** Application for Recognition of Exemption Under Section 501(a).

**Form 1024-A.** Application for Recognition of Exemption Under Section 501(c)(4) of the Internal Revenue Code.

**Form 1040.** U.S. Individual Income Tax Return.

**Form 1040-SR.** U.S. Income Tax Return for Seniors.

**Form 1041.** U.S. Income Tax Return for Estates and Trusts. Required of section 4947(a)(1) nonexempt charitable trusts that also file Form 990 or 990-EZ. However, if the trust doesn't have any taxable income under Subtitle A of the Code, it can file Form 990 or 990-EZ, and doesn't have to file Form 1041 to meet its section 6012 filing requirement. If this condition is met, complete Form 990 or 990-EZ, and don't file Form 1041.

**Form 1096.** Annual Summary and Transmittal of U.S. Information Returns.

**Form 1098 series.** Information returns to report mortgage interest, student loan interest, qualified tuition and related expenses received, and a contribution of a qualified vehicle that has a claimed value of more than $500.

**Form 1099 series.** Information returns to report acquisitions or abandonments of secured property, proceeds from broker and barter exchange transactions, cancellation of debt, dividends and distributions, certain government and state qualified tuition program payments, taxable distributions from cooperatives, interest payments, payments of long-term care and accelerated death benefits, miscellaneous income payments, distributions from an HSA, Archer MSA or Medicare Advantage MSA, original issue discount, distributions from pensions, annuities, retirement or profit-sharing plans, IRAs, insurance contracts, etc., and proceeds from real estate transactions. Also, use certain of these returns to report amounts that were received as a nominee on behalf of another person.

**Form 1120-POL.** U.S. Income Tax Return for Certain Political Organizations.

**Form 1128.** Application To Adopt, Change, or Retain a Tax Year.

**Form 2848.** Power of Attorney and Declaration of Representative.

**Form 3115.** Application for Change in Accounting Method.

**Form 3520.** Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts.

**Form 4506.** Request for Copy of Tax Return.

**Form 4506-A.** Request for Public Inspection or Copy of Exempt or Political Organization IRS Form.

**Form 4562.** Depreciation and Amortization.

**Form 4720.** Return of Certain Excise Taxes Under Chapters 41 and 42 of the Internal Revenue Code.

**Form 5471.** Information Return of U.S. Persons With Respect to Certain Foreign Corporations.

**Form 5500.** Annual Return/Report of Employee Benefit Plan. Employers who maintain pension, profit-sharing, or other funded deferred compensation plans generally are required to file the Form 5500. This requirement applies whether or not the plan is qualified under the Internal Revenue Code and whether or not a deduction is claimed for the current tax year.

**Form 5578.** Annual Certification of Racial Nondiscrimination for a Private School Exempt From Federal Income Tax.

**Form 5768.** Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation.

**Form 7004.** Application for Automatic Extension of Time To File Certain Business Income Tax, Information, and Other Returns.

**Form 8038 series.** Tax-exempt bonds.

**Form 8274.** Certification by Churches and Qualified Church-Controlled Organizations Electing Exemption From Employer Social Security and Medicare Taxes.

**Form 8282.** Donee Information Return. Required of the donee of charitable deduction property who sells, exchanges, or otherwise disposes of donated property within 3 years after receiving it. The form is also required of any successor donee who disposes of the charitable deduction property within 3 years after the date that the donor gave the property to the original donee. It doesn't matter who gave the property to the successor donee. It may have been the original donee or another successor donee.

**Form 8283.** Noncash Charitable Contributions.

**Form 8300.** Report of Cash Payments Over $10,000 Received in a Trade or Business. Used to report cash amounts in excess of $10,000 that were received in a single transaction (or in two or more related transactions) in the course of a trade or business (as defined in section 162).

However, if the organization receives a charitable cash contribution in excess of $10,000, it isn't subject to the reporting requirement since the funds weren't received in the course of a trade or business.

**Form 8328.** Carryforward Election of Unused Private Activity Bond Volume Cap.

**Form 8718.** User Fee for Exempt Organization Determination Letter Request.

**Form 8821.** Tax Information Authorization.

**Form 8822-B.** Change of Address or Responsible Party—Business. Used to notify the IRS of a change in mailing address that occurs after the return is filed.

**Form 8868.** Application for Automatic Extension of Time To File an Exempt Organization Return.

**Form 8870.** Information Return for Transfers Associated With Certain Personal Benefit Contracts. Used to

identify those personal benefit contracts for which funds were transferred to the organization, directly or indirectly, as well as the transferors for, and beneficiaries of, those contracts.

**Form 8871.** Political Organization Notice of Section 527 Status.

**Form 8872.** Political Organization Report of Contributions and Expenditures.

**Form 8886.** Reportable Transaction Disclosure Statement.

**Form 8886-T.** Disclosure by Tax-Exempt Entity Regarding Prohibited Tax Shelter Transaction.

**Form 8899.** Notice of Income From Donated Intellectual Property. Used to report net income from qualified intellectual property to the IRS and the donor.

**Form 8940.** Request for Miscellaneous Determination, Under Section 507, 509(a), 4940, 4942, 4945, and 6033 of the Internal Revenue Code.

**Form 8963.** Report of Health Insurance Provider Information.

**Form 8976.** Notice of Intent to Operate Under Section 501(c)(4).

**Form SS-4.** Application for Employer Identification Number.

**FinCEN Form 114.** Report of Foreign Bank and Financial Accounts.

## Helpful Publications

**Pub. 15.** (Circular E), Employer's Tax Guide.

 **Trust Fund Recovery Penalty.** *If certain excise, income, social security, and Medicare taxes that must be collected or withheld aren't collected or withheld, or these taxes aren't paid to the IRS, the trust fund recovery penalty can apply. The trust fund recovery penalty can be imposed on all persons (including volunteers) who the IRS determines are responsible for collecting, accounting for, and paying over these taxes, and who acted willfully in not doing so.*

*This penalty doesn't apply to volunteer unpaid members of any board of trustees or directors of a tax-exempt organization, if these members are solely serving in an honorary capacity, don't participate in the day-to-day or financial activities of the organization, and don't have actual knowledge of the failure to collect, account for, and pay over these taxes. However, the preceding sentence doesn't apply if it results in no person being liable for the penalty.*

*The penalty is equal to the unpaid trust fund tax. See Pub. 15 (Circular E) for*

*more details, including the definition of responsible persons.*

**Pub. 15-A.** Employer's Supplemental Tax Guide.

**Pub. 463.** Travel, Entertainment, Gift, and Car Expenses.

**Pub. 525.** Taxable and Nontaxable Income.

**Pub. 526.** Charitable Contributions.

**Pub. 538.** Accounting Periods and Methods.

**Pub. 557.** Tax-Exempt Status for Your Organization.

**Pub. 561.** Determining the Value of Donated Property.

**Pub. 598.** Tax on Unrelated Business Income of Exempt Organizations.

**Pub. 892.** How To Appeal an IRS Decision on Tax-Exempt Status.

**Pub. 946.** How To Depreciate Property.

**Pub. 1771.** Charitable Contributions—Substantiation and Disclosure Requirements.

**Pub. 1828.** Tax Guide for Churches and Religious Organizations.

**Pub. 3079.** Tax-Exempt Organizations and Gaming.

**Pub. 3386.** Tax Guide for Veterans' Organizations.

**Pub. 3833.** Disaster Relief, Providing Assistance Through Charitable Organizations.

**Pub. 4220.** Applying for 501(c)(3) Tax-Exempt Status.

**Pub. 4221-PC.** Compliance Guide for 501(c)(3) Public Charities.

**Pub. 4221-PF.** Compliance Guide for 501(c)(3) Private Foundations.

**Pub. 4302.** A Charity's Guide to Vehicle Donations.

**Pub. 4303.** A Donor's Guide to Vehicle Donations.

**Pub. 4386.** Compliance Checks.

**Pub. 4573.** Group Exemptions.

**Pub. 4630.** Exempt Organizations Products & Services Navigator.

# Appendix I. Use of Form 990 or 990-EZ To Satisfy State Reporting Requirements

Some states and local **governmental units** will accept a copy of Form 990 or 990-EZ in place of all or part of their own financial report forms. The substitution applies primarily to section 501(c)(3)

organizations, but some other types of section 501(c) organizations are also affected. If the organization uses Form 990 or 990-EZ to satisfy state or local filing requirements, such as those under state charitable solicitation acts, note the following discussions.

**Determine state filing requirement.** The organization can consult the appropriate officials of all states and other jurisdictions in which it does business to determine their specific filing requirements. Doing business in a jurisdiction can include any of the following:

• Soliciting **contributions** or grants by mail or otherwise from individuals, businesses, or other charitable organizations;
• Conducting programs;
• Having **employees** within that jurisdiction;
• Maintaining a checking account; or
• Owning or renting property there.

**Monetary tests can differ.** Some or all of the dollar limitations applicable to Form 990 or 990-EZ when filed with the IRS may not apply when using Form 990 or 990-EZ in place of state or local report forms. Examples of the IRS dollar limitations that don't meet some state requirements are the normally $50,000 gross receipts minimum that creates an obligation to file with the IRS and the $100,000 minimum for listing independent contractors on Form 990, Part VII, Section B.

**Additional information may be required.** State or local filing requirements can require the organization to attach to Form 990 or 990-EZ one or more of the following:

• Additional financial statements, such as a complete analysis of functional expenses or a statement of changes in net assets;
• Notes to financial statements;
• Additional financial statements;
• A report on the financial statements by an independent accountant; and
• Answers to additional questions and other information.

Each jurisdiction can require the additional material to be presented on forms they provide. The additional information shouldn't be submitted with the Form 990 or 990-EZ filed with the IRS, unless included in Schedule O (Form 990 or 990-EZ).

Even if the Form 990 or 990-EZ that the organization files with the IRS is accepted by the IRS as complete, a copy of the same return filed with a state won't fully satisfy that state's filing requirement if (1) required information isn't provided, including any of the additional information discussed in this Appendix, or (2) the state determines that the form wasn't

completed by following the applicable Form 990 or 990-EZ instructions or supplemental state instructions. In that case, the state may ask the organization to provide the missing information or to submit an amended return.

**Use of audit guides may be required.** To ensure that all organizations report similar transactions uniformly, many states require that contributions, gifts, grants, similar amounts, and functional expenses be reported according to the AICPA Audit and Accounting Guide, Not-for-Profit Entities (2018), supplemented, as applicable, by the Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations issued jointly by the National Health Council, Inc., the National Assembly of Voluntary Health and Social Welfare Organizations, and the United Way of America (1998).

**Donated services and facilities.** Even though donated services and facilities may be reported as items of revenue and expense in certain circumstances, many states and the IRS don't permit the inclusion of those amounts in Parts VIII and IX of Form 990, Part I of Form 990-EZ, or (except for donations by a governmental unit) in Schedule A (Forms 990 and 990-EZ). The optional reporting of donated services and facilities is discussed in the instructions for Part III for Form 990.

**Amended returns.** If the organization submits supplemental information or files an amended Form 990 or 990-EZ with the IRS, it must also send a copy of the information or amended return to any state with which it filed a copy of Form 990 or 990-EZ originally to meet that state's filing requirement. If a state requires the organization to file an amended Form 990 or 990-EZ to correct conflicts with the Form 990 or 990-EZ instructions, the organization must also file an amended return with the IRS.

**Method of accounting.** Most states require that all amounts be reported based on the accrual method of accounting. See also *General Instruction D.*

**Time for filing can differ.** The deadline for filing Form 990 or 990-EZ with the IRS differs from the time for filing reports with some states.

**Public inspection.** The Form 990 or 990-EZ information made available for public inspection by the IRS can differ from that made available by the states.

# Appendix J. Contributions

This Appendix discusses certain federal tax rules that apply to exempt

organizations and donors for contributions. See also Pub. 526, Charitable Contributions, and Pub. 1771, Charitable Contributions—Substantiation and Disclosure Requirements.

**Schedule B (Form 990, 990-EZ, or 990-PF).** Many organizations that file Form 990, 990-EZ, or 990-PF must file Schedule B to report on tax-deductible and non-tax-deductible contributions. See Schedule B and its instructions to determine whether Schedule B must be filed, and for the public inspection rules applicable to that form.

**Solicitation of nondeductible contribution.** See the instructions to Form 990, Part V, line 6a and 6b, for rules on public notice of non-deductibility when soliciting nondeductible contributions.

**Keeping fundraising records for tax-deductible contributions.** A section 501(c) organization that is eligible to receive tax-deductible contributions under section 170(c) must keep sample copies of its fundraising materials, such as:

- Dues statements,
- Fundraising solicitations,
- Tickets,
- Receipts, or
- Other evidence of payments received in connection with fundraising activities.

| IF.... | THEN.... |
| --- | --- |
| The organization advertises its fundraising events, | It must keep samples of the advertising copy. |
| The organization uses radio, television, or Internet to solicit contributions, | It must keep samples of scripts, transcripts, printouts of emails and Web pages, or other evidence of solicitations in the media. |
| The organization uses outside fundraisers, | It must keep samples of the fundraising materials used by the outside fundraisers. |

For each fundraising event, the organization must keep records to show the portion of any payment received from patrons that isn't deductible; that is, the retail value of the goods or services received by the patrons. See *Disclosure statement for quid pro quo contributions,* later.

**Noncash contributions.**
*Form 990 Schedules.* An organization may be required to file Schedule M to report certain noncash (property) contributions; see the instructions for Schedule M on who must file. Also, an organization that files Schedule B must

report certain information on noncash contributions.

*Dispositions of donated property.* If an organization receives a charitable contribution of property and within 3 years sells, exchanges, or otherwise disposes of the property, the organization may need to file Form 8282, Donee Information Return. See Form 990, Part V, lines 7c and 7d.

*Donated property over $5,000.* If the organization received from a donor a partially completed Form 8283, Noncash Charitable Contributions, the donee organization generally should complete the Form 8283 and return it so the donor can get a charitable contribution deduction. The organization should keep a copy for its records. See Form 8283 for more details.

*Qualified intellectual property.* An organization described in section 170(c) (except a private foundation) that receives or accrues net income from a qualified intellectual property contribution must file Form 8899, Notice of Income From Donated Intellectual Property. See Form 990, Part V, line 7g. The organization must file Form 8899 for any tax year that includes any part of the 10-year period beginning on the date of contribution but not for any tax years in which the legal life of the qualified intellectual property has expired or the property failed to produce net income.

A donee organization reports all income from donated qualified intellectual property as income other than contributions (for example, royalty income from a patent). A donee isn't required to report as contributions on Form 990 (including statements) any of the additional deductions claimed by donors under section 170(m)(1). See Pub. 526, Charitable Contributions.

*Motor vehicles, boats, and airplanes.* Special rules apply to charitable contributions of motor vehicles, boats, or airplanes with a claimed value of more than $500. See Form 990, Part V, line 7h; section 170(f) (12); Pub. 4302, A Charity's Guide to Vehicle Donations; and the Instructions for Form 1098-C, Contributions of Motor Vehicles, Boats, and Airplanes.

**Substantiation and disclosure requirements for charitable contributions.**

*Recordkeeping for cash, check, or other monetary charitable gifts.* To deduct a contribution of a cash, check, or other monetary gift (regardless of the amount), a donor must maintain a bank record or a written communication from the donee organization showing the donee's name, date, and amount of the contribution. See section 170(f)(17) and Regulations section 1.170A-15 for more

information. In the case of a text message contribution, the donor's phone bill meets the section 170(f)(17) recordkeeping requirement of a reliable written record if it shows the name of the donee organization and the date and amount of contribution.

**Acknowledgment to substantiate charitable contributions.** A donee organization should be aware that a donor of a charitable contribution of $250 or more (including a contribution of unreimbursed expenses) can't take an income tax deduction unless the donor obtains the organization's acknowledgment to substantiate the charitable contribution. See section 170(f)(8) and Regulations section 1.170A-13(f). A charitable organization that receives a payment made as a contribution is treated as the donee organization for this purpose even if the organization (according to the donor's instructions or otherwise) distributes the amount received to one or more charities.

The organization's acknowledgment must:

1. Be written.

2. Be contemporaneous.

3. State the amount of any cash it received.

4. State:

a. Whether the organization gave the donor any intangible religious benefits (no valuation needed).

b. Whether the organization gave the donor any goods or services in return for the donor's contribution (a quid pro quo contribution).

5. Describe goods or services the organization:

a. Received (no valuation needed).

b. Gave (good faith estimate of value needed).

If the organization accepts a contribution in the name of one of its activities or programs, then indicate the organization's name in the acknowledgment as well as the program's name. For example: "Thank you for your contribution of $300 to (organization's name) made in the name of our Special Relief Fund program. No goods or services were provided in exchange for your contribution."

Similarly, if a domestic organization owns and controls a domestic disregarded entity, and the disregarded entity receives a contribution, then indicate the organization's name in the acknowledgment as well as the relationship with the disregarded entity. For example: "Thank you for your contribution of $300 to (organization's name) made in the name of (name of

disregarded entity), which is treated as a disregarded entity of (organization's name) for federal tax purposes. No goods or services were provided in exchange for your contribution." See Notice 2012-52, 2012-35 I.R.B. 317.

**Exception.** The written acknowledgment need not include a good faith estimate of value for goods or services given to the donor if they are:

1. Goods or services with insubstantial value.

2. Certain membership benefits.

3. Goods or services described in (1) or (2) given to the employees of a donor organization or the partners of a donor partnership.

4. Intangible religious benefits.

These exceptions are defined below.

**Disclosure statement for *quid pro quo* contributions.** If the organization receives a *quid pro quo* contribution of more than $75, the organization must provide a disclosure statement to the donor. See section 6115.

The organization's disclosure statement must:

1. Be written.

2. Estimate in good faith the value of the organization's goods or services given in return for the donor's contribution.

3. Describe, but need not value, certain goods or services given to the donor's employees or partners.

4. Inform the donor that a charitable contribution deduction is limited as follows:

Donor's contribution
**Less**
The organization's money, goods, and services given in return
**Equals**
Donor's deductible charitable contribution.

**Exceptions:** No disclosure statement is required if the organization gave only the following:

1. Goods or services with insubstantial value,

2. Certain membership benefits,

3. Goods or services described in (1) or (2) given to the employees of a donor organization or the partners of a donor partnership, or

4. Intangible religious benefits.

These exceptions are defined below. See also Regulations sections 1.170A-1, 1.170A-13, and 1.6115-1.

**Certain goods or services disregarded for substantiation and disclosure purposes.**

**Goods or services with insubstantial value.** Generally, under section 170, the deductible amount of a contribution is determined by taking into account the **fair market value (FMV)**, not the cost to the charity, of any benefits that the donor received in return. However, the cost to the charity may be used in determining whether the benefits are insubstantial. See below.

**Cost basis.** If a taxpayer makes a payment of $55.50 or more to a charity and receives only token items in return, the items have insubstantial value if they:
• Bear the charity's name or logo, and
• Have an aggregate cost to the charity of $11.10 or less (low-cost article amount of section 513(h)(2)).

**Fair market value basis.** If a taxpayer makes a payment to a charitable organization in a fundraising campaign and receives benefits with a **FMV** of not more than 2% of the amount of the payment, or $111, whichever is less, the benefits received have insubstantial value in determining the taxpayer's contribution.

 *The dollar amounts given above are applicable to tax year 2019 under Rev. Proc. 2018-57, sec. 3.34, 2018-49 I.R.B. 827. They are adjusted annually for inflation.*

When a donee organization provides a donor only with goods or services having insubstantial value under Rev. Procs. 2018-57, 2018-18 (and any successor documents), the contemporaneous written acknowledgment may indicate that no goods or services were provided in exchange for the donor's payment.

**Certain membership benefits.** Other goods or services that are disregarded for substantiation and disclosure purposes are annual membership benefits offered to a taxpayer in exchange for a payment of $75 or less per year that consist of:

1. Any rights or privileges that the taxpayer can exercise frequently during the membership period such as:

a. Free or discounted admission to the organization's facilities or events,

b. Free or discounted parking.

2. Admission to events that are:

a. Open only to members, and

b. Within the *low-cost article* limitation, per person.

**Example 1.** E offers a basic membership benefits package for $75. The package gives members the right to buy tickets in advance, free parking, and a gift shop discount of 10%. E's $150 preferred membership benefits package also includes a $20 poster. Both the

basic and preferred membership packages are for a 12-month period and include about 50 productions. E offers F, a patron of the arts, the preferred membership benefits in return for a payment of $150 or more. F accepts the preferred membership benefits package for $300. E's written acknowledgment satisfies the substantiation requirement if it describes the poster, gives a good faith estimate of its FMV ($20), and disregards the remaining membership benefits.

*Example 2.* In Example 1, if F received only the basic membership package for its $300 payment, E's acknowledgment need state only that no goods or services were provided.

*Example 3.* G Theater Group performs four plays. Each play is performed twice. Non-members can purchase a ticket for $15. For a $60 membership fee, however, members are offered free admission to any of the performances. H makes a payment of $350 and accepts this membership benefit. Because of the limited number of performances, the membership privilege can't be exercised frequently. Therefore, G's acknowledgment must describe the free admission benefit and estimate its value in good faith.

***Certain goods or services provided to donor's employees or partners.*** Certain goods or services provided to employees of donor organizations or partners of donor partnerships may be disregarded for substantiation and disclosure purposes. Nevertheless, the donee organization's disclosure statement must describe the goods or services. A good faith estimate of value isn't needed.

*Example.* Museum J offers a basic membership benefits package for $40. It includes free admission and a 10% gift shop discount. Corporation K makes a $50,000 payment to J and in return, J offers K's employees free admission, a t-shirt with J's logo that costs J $4.50, and a 25% gift shop discount. Because the free admission is a privilege that can be exercised frequently and is offered in both benefit packages, and the value of the t-shirts is insubstantial, Museum J's disclosure statement need not value or mention the free admission benefit or the t-shirts. However, because the 25% gift shop discount to K's employees differs from the 10% discount offered in the basic membership benefits package, J's disclosure statement must describe the 25% discount, but need not estimate its value.

## Definitions

*Substantiation.* It is the responsibility of the donor:

• To value a donation, and

• To obtain an organization's written acknowledgment substantiating the donation.

There is no prescribed format for the organization's written acknowledgment of a donation. Letters, postcards, or computer-generated forms may be acceptable. The acknowledgment must, however, provide sufficient information to substantiate the amount of the deductible contribution. The organization may either:

• Provide separate statements for each contribution of $250 or more, or

• Furnish periodic statements substantiating contributions of $250 or more.

Separate contributions of less than $250 aren't subject to the requirements of section 170(f)(8), whether or not the sum of the contributions made by a taxpayer to a donee organization during a tax year equals $250 or more.

*Contemporaneous.* A written acknowledgment is contemporaneous if the donor obtains it on or before the earlier of:

• The date the donor files the original return for the tax year in which the contribution was made; or

• The due date (including extensions) for filing the donor's original return for that year.

*Substantiation of payroll contributions.* An organization may substantiate an employee's contribution by deduction from its payroll by:

• A pay stub, Form W-2, or other document showing a contribution to a donee organization, together with

• A pledge card or other document from the donee organization that shows its name. For contributions of $250 or more, the document must state that the donee organization provides no goods or services for any payroll contributions. The amount withheld from each payment of wages to a taxpayer is treated as a separate contribution.

*Substantiation of matched payments.* If a taxpayer's payment to a donee organization is matched by another payor, and the taxpayer receives goods or services in consideration for its payment and some or all of the matching payment, those goods or services will be treated as provided in consideration for the taxpayer's payment and not in consideration for the matching payment.

*Disclosure statement.* An organization must provide a written disclosure statement to donors who make a "*quid pro quo contribution*" in excess of $75 (section 6115). This requirement is separate from the written substantiation acknowledgment a donor needs for deductibility purposes. While, in certain circumstances, an organization may be able to meet both requirements with the same written document, an organization must be careful to satisfy the section 6115 written disclosure statement requirement in a timely manner because of the penalties involved.

***Quid pro quo contribution.*** A *quid pro quo contribution* is a payment that is made both as a contribution and as a payment for goods or services provided by the donee organization.

***Example.*** A donor gives a charity $100 in consideration for a concert ticket valued at $40 (a *quid pro quo contribution*). In this example, $60 would be deductible. Because the donor's payment exceeds $75, the organization must furnish a disclosure statement even though the taxpayer's deductible amount doesn't exceed $75. Separate payments of $75 or less made at different times of the year for separate fundraising events won't be aggregated for purposes of the $75 threshold.

***Good faith estimate.*** An organization may use any reasonable method in making a good faith estimate of the value of goods or services provided by that organization in consideration for a taxpayer's payment to that organization. A good faith estimate of the value of goods or services that aren't generally available in a commercial transaction may be determined by reference to the **FMV** of similar or comparable goods or services. Goods or services may be similar or comparable even though they don't have the unique qualities of the goods or services that are being valued.

***Goods or services.*** Goods or services include:

• Cash,

• Property,

• Services,

• Benefits, and

• Privileges.

***In consideration for.*** A donee organization provides goods or services in consideration for a taxpayer's payment if, at the time the taxpayer makes the payment to the donee organization, the taxpayer receives, or expects to receive, goods or services in exchange for that payment.

Goods or services a donee organization provides in consideration for a payment by a taxpayer include goods or services provided in a year other than the year in which the donor makes the payment to the donee organization.

***Intangible religious benefits.*** Intangible religious benefits are provided only by organizations organized exclusively for religious purposes. Examples include:

• Admission to a religious ceremony, and

• *De minimis* tangible benefits, such as wine provided in connection with a religious ceremony.

**Penalties.**   A charity that knowingly provides a false substantiation acknowledgment to a donor may be subject to the penalties under section 6701 and/or section 7206(2) for aiding and abetting an understatement of tax liability.

Charities that fail to provide the required disclosure statement for a *quid pro quo contribution* of more than $75 will incur a penalty of $10 per contribution, not to exceed $5,000 per fundraising event or mailing. The charity may avoid the penalty if it can show that the failure was due to reasonable cause (section 6714).

# Photographs of Missing Children

The Internal Revenue Service is a proud partner with the *National Center for Missing & Exploited Children ® (NCMEC)*. Photographs of missing children selected by the Center may appear in instructions on pages that would otherwise be blank. You can help bring these children home by looking at the photographs and calling 1-800-THE-LOST (1-800-843-5678) if you recognize a child.

# Index

$10,000–per-item exception 28
$10,000–per-related organization
   exception 28
35% controlled entity 17, 54

**A**

Accountable plan 20, 54
Accountant 51
Accounting:
   Fees 46
   Period 5
Accounting fees 46
Accounting method 51
Accounting period 3, 8
Accounts payable 50
Accounts receivable 49
Accrual 5
Activities 11
Activities conducted outside the United
   States 54
Activities outside the United States 54
Address:
   Change in 9
   Website 10
Address Change 8
Administrative 20
Advance ruling period 4
Advertising 47
Affiliate/affiliates 47, 86
   Expenses 47
   Payments 47
   Purchases 47
   State or national organizations 47
Affiliated organizations 87
Allocations:
   Grants, and 11
Alternate test 79
Amended Return 9
   Description of amendment 6
   Name change amendment 6
Annual information return 80
Anti-abuse rule 79
Appendix:
   Appendix A, Exempt Organizations
      Reference Chart 77
   Appendix B, How to Determine
      Whether an Organization's Gross
      Receipts Are Normally $50,000 (or
      $5,000) or Less 78
   Appendix C, Special Gross Receipts
      Tests for Determining Exempt
      Status of Section 501(c)(7) and
      501(c)(15) Organizations 78
   Appendix D, Public Inspection of
      Returns 79

Appendix E, Group Returns—
   Reporting Information on Behalf of
   the Group 83
Appendix F, Disregarded Entities and
   Joint Ventures—Inclusion of
   Activities and Items 84
Appendix G, Section 4958 Excess
   Benefit Transactions 86
Appendix H, Forms and Publications
   to File or Use 91
Appendix I, Use of Form 990 or
   990-EZ To Satisfy State Reporting
   Requirements 93
Appendix J, Contributions 94
Applicable tax-exempt organization 54,
   87
Application for recognition of
   exemption 92
Application pending 9
Art 12, 54
Articles of incorporation 22
ASC 2016–14 54
ASC 740 54
ASC 958 13, 54
Assessments 39
Asset(s):
   Net 50
   Total 50
Assistance to individuals 45
Attachments 8
Attorney 11
Audit 54, 85
Audit committee 20, 55
Audited financial statements 13, 54
Audit guides 94
Automatic revocation 7

**B**

Backup withholding 15
Balance sheet 48
Bank account 16
Bank or financial institution trustee
   Exception 31
Benefits:
   Disregarded 31
   Employee 46
   Members 45, 89
   Membership 40
Bingo 43, 55
Black lung benefit trust 4
Board-designated endowment 55
Board designated endowment (quasi) 13
Bond issue 41, 55
Bonds, tax-exempt 50
Bonus 89
Books and records 5
Books of account 5
Book value 49

Business activities 40
Business Activity Codes 53
Business code 41
Business relationship 21, 55

**C**

Calendar year 5
Capital contributions 17
Capital gains 41
Capital stock accounts 50
Capital surplus 51
Cash 48
Cash contributions 55
Cash receipts and disbursements 5
Central organization 7, 55
CEO 21
CEO, executive director, or top
   management official 55
Certified historic structure 56
Change of address 9
Changes in net assets 93
Charitable risk pools 3
Child care organizations 3
Children 97
Church 3, 55
Church-affiliated organization 4
Closely held stock 56
Club 17
Code(s) 3
Collectibles 56
Collections of works of art, historical
   treasures, and other similar assets 56
College 79
Committee 4
Compensation 14, 26, 37, 56, 83
   Current officers 45
   Disqualified persons 26, 46
   Former officers 26
   Other persons 26
   Reasonable 88
   Reportable 28
   Table 32
Compilation (compiled financial
   statements) 13, 56
Completing the heading 8
Conflict of interest policy 56
Conflicts of interest policy 22, 24
Conservation easement 12, 57
Consolidated financial statement 13, 84
Contemporaneous 88
Contracts 89
Contributing employer 64, 72
Contributions 12, 38, 40, 57
   Disclosure statement 16
   Donation of services 39
   Donor advised funds 88
   Government 39
   Government grants 39

Instructions for Form 990

Membership dues 11, 39
Noncash 40
Nondeductible 16
Quid pro quo 16
Contributor 2
Contributors, Schedule of 40
Control 15, 58
Controlled entity 15, 58
Controlling organization:
Section 512(b)(13) 3
Controlling organization under section 512(b)(13) 59
Cooperative service organizations 3
Copies 8
Core form 59
Corporation 10
Credit counseling services 59
Current year 59

D
Debt management plan services 59
Defeasance escrow 41, 59
Deferred charges 49
Deferred compensation 59
Deferred revenue 50
Defined benefit plan 32
Nonqualified 32
Qualified 32
Defined contribution plan:
Qualified 32
De minimis fringe benefit 88
Dependent care assistance 33
Depreciation 48
Determination letter 3
Direct expenses 42
Director 14, 59
Director or trustee 27, 59
Disclosure 16
Conflict of interest 24
Disqualified person(s) 21
Excess business holdings 17
Statement 16
Disclosure of excess business holdings 17
Disqualified person 59
Disqualified persons 87
Disregarded benefits 31, 32
Disregarded entities 8, 29, 84
Disregarded entity or entities 60
Dissolution 85
Distributions 46
Dividends 40
Document retention and destruction policy 24
Domestic government 60
Domestic individual 60
Domestic organization 61
Donations 39
Of services 39
Of use of materials, equipment or facilities 39

Of vehicles 17
Donor advised fund 61
Donor advised fund(s):
Disqualified person 87
Donor advisor 17
Exceptions 90
Excess benefit transaction 88
Grants 88
Sponsoring organization 3
Donor advisor 61
Donor contributions:
Acknowledgment 17
Donor-Imposed Restriction 61
Donor-Restricted Endowment fund 61
Dues 39
Club 33
Membership 40, 47
Paid to affiliates 47

E
Economic benefit 87
Disregarded 89
Nontaxable fringe benefits 89
EIN 61
Electronic filing 6
Email subscription 2
Employee 62
Employee(s) 27
Employee benefit plan 4
Employee benefits 46
Employees, key 27
Employer identification number (EIN):
Disregarded entities 85
Section 501(c)(9) organizations 9
Employment tax return 6
Endowment fund 13, 62
Endowment funds 13
EO Determinations 11
e-Postcard (see also Form 990–N) 78
Equipment 49
Escrow or custodial account 50, 62
Estates 38
Estimate, reasonable 10
Excess benefit transaction 62, 86–88
Churches 90
Correction 90
Donor advised funds 90
Excess payment 90
Excise tax 90
Insufficient payment 90
Revenue sharing transactions 90
Revocation of exemption 91
Section 4958 86
Excess business holdings 17
Excise taxes 90
Executive director 24
Exempt bond 62
Exempt function 40
Exempt organizations, types of 77
Exempt purposes 11, 22, 43

Expenses 41
Allocating indirect 44
Direct 42
Functional 43
Fundraising 42, 44
Indirect expenses 44
Management and general 44
Occupancy 47
Political 12
Postage 47
Printing 47
Program service 43, 48
Shipping 47
Supplies 47
Telephone 47
Extension of time to file 6

F
Facility/facilities 11
Facts and circumstances 82
Fair market value 88
Fair market value (FMV) 63
Family:
Family member 87
Family member, family relationship 63
FASB ASC 958 38, 50
Federal unemployment tax (FUTA) 92
Federated fundraising agencies 39
Federated fundraising organizations 45
Fees 46
Accounting 46
Copies 81
Fundraising 46
Government agencies 40
Initiation 79
Legal 46
Membership 78
Registration 40
Figuring gross receipts 78
FIN 48 84
FIN 48 (ASC 740) 63
Final return 6, 9
Financial account 16
Financial statements 51, 63
Fiscal year 5, 63
Five highest compensated employees 26
Fixed payment 89
Foreign 16
Accounts 16
Organization 4
Foreign government 63
Foreign individual 63
Foreign organization 63
Form 8963, Report of Health Insurance Provider Information 93
Form 8976. Notice of Intent to Operate Under Section 501(c)(4) 93
Forms:
FinCEN Form 114 93

Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) 92

Form 1023-EZ, Streamlined Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code. 92

Form 1024, Application for Recognition of Exemption Under Section 501(a) 92

Form 1024-A, Application for Recognition of Exemption under Section 501(c)(4) of the Internal Revenue Code 92

Form 1040, U.S. Individual Income Tax Return 92

Form 1040-SR, U.S.Income Tax Return for Seniors 92

Form 1041, U.S. Income Tax Return for Estates and Trusts 92

Form 1065, U.S. Return of Partnership Income 4

Form 1096, Annual Summary and Transmittal of U.S. Information Returns 92

Form 1098 series 92

Form 1120-POL, U.S. Income Tax Return for Certain Political Organizations 92

Form 1128, Application To Adopt, Change or Retain a Tax Year 92

Form 2848, Power of Attorney and Declaration of Representative 92

Form 3115, Application for Change in Accounting Method 92

Form 3520, Annual Return To Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts 92

Form 4506, Request for Copy of Tax Return 92

Form 4506–A, Request for Public Inspection or Copy of Exempt or Political Organization IRS Form 92

Form 4562, Depreciation and Amortization 92

Form 4720, Return of Certain Excise Taxes Under Chapters 41 and 42 of the Internal Revenue Code 92

Form 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations 92

Form 5500, Annual Return/Report of Employee Benefit Plan 92

Form 5578, Annual Certification of Racial Nondiscrimination for a Private School Exempt From Federal income Tax. 92

Form 5768, Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make

Expenditures To Influence Legislation 92

Form 7004, Application for Automatic Extension of Time to File Certain Business Income Tax, Information, and Other Returns 92

Form 720, Quarterly Federal Excise Tax Return 91

Form 8038 series, Tax Exempt Bonds 92

Form 8274, Certification by Churches and Qualified Church-Controlled Organizations Electing Exemption from Employer Social Security and Medicare Taxes 92

Form 8282, Donee Information Return 92

Form 8283, Noncash Charitable Contributions 92

Form 8300, Report of Cash Payments Over $10,000 Received in a Trade or Business 92

Form 8328, Carryforward Election of Unused Private Activity Bond Volume Cap 92

Form 8718, User Fee for Exempt Organization Determination Letter Request 92

Form 8821, Tax Information Authorization 92

Form 8822-B, Change of Address or Responsible Party—Business 92

Form 8868, Application for Automatic Extension of Time to File an Exempt Organization Return 92

Form 8870, Information Return for Transfers Associated With Certain Personal Benefit Contracts 92

Form 8871, Political Organization Notice of Section 527 Status 93

Form 8872, Political Organization Report of Contributions and Expenditures 93

Form 8886, Reportable Transaction Disclosure Statement 93

Form 8886–T, Disclosure by Tax-Exempt Entity Regarding Prohibited Tax Shelter Transaction 93

Form 8899, Notice of Income From Donated Intellectual Property 93

Form 8940, Request for Miscellaneous Determination, Request for Miscellaneous Determination, under Section 507, 509(a), 4940, 4942, 4945, and 6033 of the Internal Revenue Code 93

Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation 92

Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return 92

Form 941, Employer's Quarterly Federal Tax Return 92

Form 943, Employer's Annual Tax Return for Agricultural Employees 92

Form 990–BL, Information and Initial Excise Tax Return for Black Lung Benefit Trusts and Certain Related Persons 4

Form 990–EZ, Short Form Return of Organization Exempt From Income Tax 10

Form 990–N, Electronic Notice (e-Postcard) for Tax-Exempt Organizations Not Required To File Form 990 or 990–EZ 3

Form 990–PF, Return of Private Foundation or Section 4947(a)(1) Nonexempt Charitable Trust Treated as a Private Foundation 4

Form 990–T, Exempt Organization Business Income Tax Return 92

Form 990–W, Estimated Tax on Unrelated Business Taxable Income for Tax-Exempt Organizations 92

Form SS-4, Application for Employer Identification Number 93

Form W-2, Wage and Tax Statement 91

Forms and publications 15

Foundations 27

Fringe benefits 89
  De minimis 88
  Nontaxable 89

Functional expenses 43
  Allocating indirect 44
  Fundraising 44
  Management and general 44
  Program service 43

Fund Balances 50, 51

Fundraising 39, 63
  Activities 13
  Events 39
  Expenses 44
  Fees 46
  Records for tax deductible contributions 7

Fundraising activities 63

Fundraising events 42, 64

Funds 50

## G

GAAP 64

Gaming 42, 64

GEN (Group exemption number) 10

Generally accepted accounting principles 12

Generally accepted accounting
    principles/GAAP 64
Gifts 38, 40
Goods 42
    Goods or services 42
    Goods sold, cost of 43
Governance 86
Governing body 64, 85
Governing documents 23
Government:
    Agency 40
    Contracts 40
    Contributions 39
    Fees 40
    Grants 39, 44
    Official 47
    Organization 4
Governmental issuer 41, 64
Governmental unit 50, 64
Governmental Unit 64
Government official 64
Grants 11, 38, 45
    Allocations, and 11
    Contributions 11
    Government contributors 39
    Payable 50
    Receivable 48
Grants and other assistance 64
Grants and other assistance outside the
    United States 13
Gross proceeds 65
Gross receipts 65, 78
    $50,000 or less 78
    Acting as agent 78
    Figuring 78
Gross receipts test:
    $5,000 78
    $50,000 78
Gross rents 41
Gross revenue 15
Gross sales price 41
Group exemption 65, 81
    Central/parent organization 81
Group return 65, 83

H
Heading 8
Health benefits 32
Helpful hints 2
Highest compensated employee 65, 85
Historical treasure 12, 65
Hospital 84
Hospital/hospital facility 65
Hospital (or cooperative hospital service
    organization) 65
Hospital organization 65
Hours per week 30
Household goods 65

I
Income:
    Exempt function 11
    Investment 41
    Rental 40
    Unrelated business 15
Incomplete return 7
Independent contractor 38, 65
Independent voting member of governing
    body 20, 66
Indoor tanning services 18
Information return 80
Information technology 46, 47
Initial contract 66, 89
Instant bingo 43, 66
Institutional trustee 27, 66
Insurance 48
Insurance contract 79
Integrated auxiliary 3
Intellectual property 16
Interest 41, 47
    Mortgage 47
    Tax-exempt 18
Interested persons 85
Interest income 40, 41
    Notes and loans receivable 41
    Securities 41
Inventory 43
Investment 41
    Committee 20
    Dividend 41
    Income 79
    Interest 41
    Management 22
    Program-related 41
    Rents 41
    Savings and temporary cash 48
Investments 49

J
Joint costs 48
Joint venture 66, 86

K
Key employee 27, 67

L
Land 49
Late filing 7
Legal fees 46
Legislation 67
Liabilities, total 50
Liquidation 84
List of states 5
Loans:
    Receivable 49
Lobbying 67
    Activity/Activities 12
    Expenses 84

Grassroots 46
    In-house expenditures 46
    Joint ventures 86
Lobbying activities 67
Lobbying expenditures 84
Local governmental unit 50
Lotteries 42

M
Maintaining offices, employees, or
    agents 67
Management 85
Management and general expenses 44
Management company 22, 67
Medicaid 40
Medical research 67, 80
Medicare 92
Meetings 47
Member of the governing body 20, 67
Membership 47
    Assessments 39
    Benefits 41
    Dues 39, 47
Merger, articles of 8
Miscellaneous 5
    Expenses 48
Mission 4
Mission society 4
Money market funds 48
Mutual or cooperative electric
    companies 18

N
Net assets 50
Net Assets with donor restrictions 68
Net Assets without Donor Restrictions 68
Noncash contribution 40
Noncash contributions 68
Nonexempt charitable trust 68
Nonfixed payments 89
Nonprofit health insurance issuer 4
Nonqualified deferred compensation 68
Nonqualified defined benefit plan 32
Nonqualified defined contribution
    plan 32, 35
Nontaxable fringe benefit 89
Notes receivable 49
Number of employees 85
Nursing homes 40

O
Occupancy 47
    Expense 47
Officer 26, 68
Offices 80
OMB Circular A-133 51
"On behalf of" issuer 68
Ordinary course of business 21
Organization(s) 4, 90
    Affiliated 87

Form of  10
   Not required to file  4
Organizational documents  83
Organization manager  68, 90
Organizations:
   Foreign countries, in  4
Other assets  49
Other compensation  28
Ownership  15

**P**

Paid-in capital  51
Paid preparer  10
Paperwork Reduction Act Notice  51
Partnership  86
Payables  50
Payments:
   Cash  92
   Compensation  88
   Nonfixed  89
   Severance  46
   To affiliates  47
Payroll taxes  46
Penalties  7, 16
   Failure to file  7
   Perjury  7
Pension plan contributions  46
Personal benefit contracts  16
Phone help  2
Photographs of Missing Children  97
Pledges receivable  48
Policies:
   Conflicts of interest  22
   Document retention and
      destruction  24
   Joint venture  25
   Nondiscrimination  92
   Whistleblower  24
Political:
   Expenses  85
Political campaign activities  69
Political organization  4
   Penalties  80
   Public inspection  79
   Section 527  3
   State or local  3
Political subdivision  69
Possession of the United States  69
Postage cost  80
Power of attorney  92
Premiums  79
Prepaid expenses  49
Principal officer  69
Printing  47
Private business use  69, 86
Private delivery services  6
Private foundation  69, 87
Privileged relationship  21
Proceeds  41, 69
Professional fundraising services  46, 69
Program-related investment  40, 69

Program service  11
Program service accomplishments,
   statement of  11
Program service expenses  43
Program service revenue  40
   Government agency  40
   Insurance premiums  40
   Interest income  40
   Medicaid  40
   Medicare  40
   Membership fees  40
   Program-related investments  40
   Rental income  40
   Section 501(c)(9) organization  40
   Unrelated trade or business
      activities  40
Prohibited tax shelter transactions  16
Proxy tax  12
PTIN  10, 11
Pub. 3079, Tax-Exempt Organizations
   and Gaming  64
Publications  15
   Compliance Checks  93
   Group Exemptions  93
   Pub. 15, (Circular E) Employer's Tax
      Guide  93
   Pub. 15–A, Employer's Supplemental
      Tax Guide (Fringe Benefits)  93
   Pub. 1771, Charitable Contributions–
      Substantiation and Disclosure
      Requirements  93
   Pub. 1779, Independent Contractor or
      Employee  38
   Pub. 1828, Tax Guide for Churches
      and Religious Organizations  93
   Pub. 3079, Tax-Exempt Organizations
      and Gaming  93
   Pub. 3386, Tax Guide for Veterans
      Organizations  93
   Pub. 3833, Disaster Relief, Providing
      Assistance Through Charitable
      Organizations  93
   Pub. 4220, Applying for 501(c)(3)
      Tax-Exempt Status  93
   Pub. 4221–PC, Compliance Guide for
      501(c)(3) Public Charities  93
   Pub. 4221–PF, Compliance Guide for
      501(c)(3) Private Foundations  93
   Pub. 4302, A Charity's Guide to
      Vehicle Donations  93
   Pub. 4303, A Donor's Guide to Vehicle
      Donations  93
   Pub. 463, Travel, Entertainment, Gift,
      and Car Expenses  93
   Pub. 4630, Exempt Organizations
      Products and Services
      Navigator  93
   Pub. 525, Taxable and Nontaxable
      Income  93
   Pub. 526, Charitable Contributions  93
   Pub. 538, Accounting Periods and
      Methods  93

Pub. 557, Tax-Exempt Status for Your
   Organization  93
Pub. 561, Determining the Value of
   Donated Property  93
Pub. 598, Tax on Unrelated Business
   Income of Exempt
   Organizations  93
Pub. 892, How to Appeal an IRS
   Decision on Tax Exempt Status  93
Pub. 946, How To Depreciate
   Property  93
Pub. 947, Practice Before the IRS and
   Power of Attorney  11
Public charity  70, 84
Public Inspection  79
Public interest law firm  12
Publicly traded securities  49, 70
Public support  91
Pull tabs  70
Pull-tabs  43
Purchases from affiliates  47
Purpose of Form  2

**Q**

Qualified 501(c)(3) bond  70
Qualified conservation contribution  70
Qualified defined benefit plan  32
Qualified defined contribution plan  32
Qualified intellectual property  16
Qualified state or local political
   organization  3, 71
Quasi-endowment  71
Quid pro quo contribution:
   Disclosure statement  16

**R**

Racial nondiscrimination  92
Raffles  42
Reasonable:
   Amount  80
   Belief  83
   Burden  81
   Cause  7
   Compensation  20
   Effort  21, 22, 31
   Estimate  10
   Fee  80
   Knowledge  88
   Relationship  40
Reasonable compensation  71
Reasonable effort  71
Reasonableness, rebuttable presumption
   of  89
Receivable  14
   Account  48
   Grants  48
   Pledges  48
Reconciliation  5
Reconciliation of net assets  51
Recordkeeping  7

Refunding escrow  14, 71
Refunding issue  72
Reimbursement:
    Of expenses  20
    Of taxes  88
Related organization  20, 26, 72
Religious order  20, 72
Rent/rental  41
    Expense  41
    Income  40
Reportable compensation  14, 72
Reporting information from third
    parties  8
Required electronic filing by exempt
    organizations  1
Requirements for a properly completed
    Form 990  7
Research  44
Retained earnings  51
Returns and allowances  43
Revenue  43, 50
    Deferred  50
    Gross  15
    Program service  40
    Special events  42
    Sweepstakes, raffles, and lotteries  42
Revenue-sharing transactions  90
Review of financial statement  72
Review of financial statements  13
Revocation of exemption  91
Rounding off to whole dollars  8
Royalties  41

**S**

Salaries  46
Sales  43
    Of inventory  40
Sarbanes-Oxley  24
Savings  48
Savings accounts  48
Schedule of contributors  12
Scholarships  13
School  73
Section 4947(a)(1) trusts  11, 18
Section 4958  86, 90, 91
Section 4958, excise taxes:
    Disqualified persons  87
    Organization managers  90
Section 4960  2
Section 4968  2, 18, 19
Section 501(c)(12)  17
Section 501(c)(15)  3, 78
Section 501(c)(3)  3
    Applicable organization  87
    Disclosure of transactions and
        relationships  19
Section 501(c)(4):
    Applicable organization  87
Section 501(c)(5):
    Lobbying expenses  12

Membership dues  40
Section 501(c)(6):
    Lobbying expenses  12
    Membership dues  40
Section 501(c)(7)  17, 86
Section 501(c)(9)  9
Section 6033(e)  12
Securities  49
Security/Securities  41
Security/securities  73
Sequencing list to complete the form and
    schedules  4
Severance payments  46
Shipping  47
Short accounting period  5, 73
Short period  73
Short year and final returns  31
Short year and final returns.  32
Signature  10
Signature block  10
Significant disposition of assets  85
Significant disposition of net assets  73
Social club  17
Social security:
    Tax  46
Solicitations of nondeductible
    contributions  16
SOP 98-2  48
Special events  42
Specific instructions for Form 990  8
Sponsoring organization  3, 73
State:
    Filing requirement  93
    Reporting requirements  5
Statement(s)  93
    Activities outside of United States  13
    Audited financial  84
    Financial  51
    Functional expenses  43
    Position 98–2  48
    Program service accomplishments  11
    Revenue  38
State of legal domicile  10, 74
Subordinate organization  74, 81
Substantial contributor  62, 87
Substantial influence  87
Supported organization  74, 87
Supporting organization  74, 88
Sweepstakes  42

**T**

Tax-exempt bond  74
Tax shelter transaction  16
Tax year  27, 74
TE/GE EO Determinations  79
Telephone number  9
Term endowment  74
Terminated  9
Text message contribution  95
Top financial official  27, 74

Top management official  27, 74
Total assets  49, 74
Total liabilities  50
Transfers  15
    Personal benefit contracts  16
    To controlled entities  15
Travel expense  47
Trust  9
Trustee  74
Trustee(s)  10, 14, 20, 27
    Institutional  27
Trust fund recovery penalty:
    Penalties  93
Tuition assistance  32

**U**

U.S. possession  3, 75
U.S. Treasury bills  48
Uncollectible pledges  38
Uniform Prudent Management of
    Institutional Funds Act (UPMIFA)  50
Unincorporated association  9
United States  10, 74
University/universities  13
Unrelated business  15, 74
    Income  38
    Income tax  80
    Revenue  41
Unrelated business gross income  74
Unrelated business income  44, 74
Unrelated organization  14, 74
Unrelated trade or business  75
    Activities  40
    Gross income  86

**V**

Vehicle donations  94
Voluntary employees' beneficiary
    association  9
Volunteer  10, 75
Volunteer exception  31
Voting member of the governing body  75
Voting member of the governing body/
    board  20

**W**

Wages  46
Website address  10
Whistleblower policy  24
Widely available  82
Withholding:
    Backup  15
Works of art  12, 75

**Y**

Year of formation  10, 75

EXHIBIT C

**2022**

Department of the Treasury
**Internal Revenue Service**

# Instructions for Form 990
# Return of Organization
# Exempt From Income Tax

## Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code
## (except private foundations)

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about developments related to Form 990 and its instructions, such as legislation enacted after they were published, go to *IRS.gov/Form990*.

## What's New

**Ann. 2021-18 revoked Ann. 2001-33.** Ann. 2001-33, 2001-17 I.R.B. 1137, provided tax-exempt organizations with reasonable cause for purposes of relief from the penalty imposed under section 6652(c)(1)(A)(ii) if they reported compensation on their annual information returns in the manner described in Ann. 2001-33 instead of in accordance with certain form instructions. Ann. 2021-18, 2021-52 I.R.B. 910, revoked Ann. 2001-33 and instructs affected tax-exempt organizations to follow the specific instructions for Form 990, Form 990-EZ, and Form 990-PF, effective for annual information returns required for tax years beginning on or after January 1, 2022.

## Reminders

**Section 501(c)(21) trusts.** Form 990-BL, Information and Initial Excise Tax Return for Black Lung Benefit Trusts and Certain Related Persons, has been a historical form since tax year 2021. Section 501(c)(21) trusts can no longer file Form 990-BL and will file Form 990 (or submit Form 990-N, Electronic Notice (e-Postcard) for Tax-Exempt Organizations Not Required To File Form 990 or 990-EZ, if eligible) to meet their annual filing obligations under section 6033. Some section 501(c)(21) trusts may also be required to file Form 6069, Return of Certain Excise Taxes on Mine Operators, Black Lung Trusts, and Other Persons Under Sections 4951, 4952, and 4953.

**Form 1099-NEC and nonemployee compensation reporting.** Beginning with tax year 2020, Form 1099-NEC, Nonemployee Compensation, is used to report nonemployee compensation. Accordingly, where the Form 990 references reporting amounts of compensation from Form 1099-MISC, Miscellaneous Income, be sure to include nonemployee compensation from box 1 of Form 1099-NEC. See the instructions for additional information.

## Purpose of Form

Forms 990 and 990-EZ are used by tax-exempt organizations, nonexempt charitable trusts, and section 527 political organizations to provide the IRS with the information required by section 6033.

An organization's completed Form 990 or 990-EZ, and a section 501(c)(3) organization's Form 990-T, Exempt Organization Business Income Tax Return, are generally available for public inspection as required by section 6104. Schedule B (Form 990), Schedule of Contributors, is available

for public inspection for section 527 organizations filing Form 990 or 990-EZ. For other organizations that file Form 990 or 990-EZ, parts of Schedule B (Form 990) can be open to public inspection. See *Appendix D, Public Inspection of Returns*, and the Instructions for Schedule B (Form 990) for more details.

Some members of the public rely on Form 990 or Form 990-EZ as their primary or sole source of information about a particular organization. How the public perceives an organization in such cases can be determined by information presented on its return.

## Phone Help

If you have questions and/or need help completing Form 990, please call 877-829-5500. This toll-free telephone service is available Monday through Friday.

## Email Subscription

The IRS has established a subscription-based email service for tax professionals and representatives of tax-exempt organizations. Subscribers will receive periodic updates from the IRS regarding exempt organization tax law and regulations, available services, and other information. To subscribe, go to *IRS.gov/Charities-&-Non-Profits/Subscribe-to-Exempt-Organization-Update*.

# General Instructions

## Overview of Form 990

**Note.** Terms in **bold** are defined in the *Glossary* of the Instructions for Form 990.

Form 990 is an annual information return required to be filed with the IRS by most organizations exempt from income tax under section 501(a), and certain political organizations and **nonexempt charitable trusts**. Parts I through XII of the form must be completed by all filing organizations and require reporting on the organization's exempt and other activities, finances, governance, compliance with certain federal tax filings and requirements, and **compensation** paid to certain persons. Additional schedules are required to be completed depending upon the activities and type of the organization. By completing Part IV, the organization determines which schedules are required. The entire completed Form 990 filed with the IRS, except for certain contributor information on Schedule B (Form 990), is required to be made available to the public by the IRS and the filing organization (see *Appendix D*), and can be required to be filed with state governments to satisfy state reporting requirements. See *Appendix I. Use of Form 990 or 990-EZ To Satisfy State Reporting Requirements*.

 **Reminder: Don't Include Social Security Numbers on Publicly Disclosed Forms.** *Because the filing organization and the IRS are required to publicly disclose the organization's annual information returns, social*

Cat. No. 11283J

security numbers (SSNs) shouldn't be included on this form. By law, with limited exceptions, neither the organization nor the IRS may remove that information before making the form publicly available. Documents subject to disclosure include statements and attachments filed with the form. For more information, see Appendix D.

**Helpful hints.** The following hints can help you more efficiently review these instructions and complete the form.
• See *General Instructions, Section C. Sequencing List To Complete the Form and Schedules,* later, which provides guidance on the recommended order for completing the form and applicable statements.
• Throughout these instructions, "the organization" and the "filing organization" both refer to the organization filing Form 990.
• Unless otherwise specified, information should be provided for the organization's tax year. For instance, an organization should answer "Yes" to a question asking whether it conducted a certain type of activity only if it conducted that activity during the tax year.
• The examples appearing throughout the Instructions for Form 990 are illustrative only. They are for the purpose of completing this form and aren't all-inclusive.
• Instructions for the Form 990 schedules are published separately from these instructions.

 *Organizations that have $1,000 or more for the tax year of total gross income from all* **unrelated trades or businesses** *must file Form 990-T to report and pay tax on the resulting unrelated business taxable income (UBTI), in addition to any required Form 990, 990-EZ, or 990-N.*

# A. Who Must File

Most organizations exempt from income tax under section 501(a) must file an annual information return (Form 990 or 990-EZ) or submit an annual electronic notice (Form 990-N), depending upon the organization's **gross receipts** and **total assets**.

 *An organization may not file a "consolidated" Form 990 to aggregate information from another organization that has a different* **EIN**, *unless it is filing a* **group return** *and reporting information from a* **subordinate organization** *or organizations, reporting information from a* **joint venture** *or* **disregarded entity** *(see* Appendix E. Group Returns—Reporting Information on Behalf of the Group, *and* Appendix F. Disregarded Entities and Joint Ventures—Inclusion of Activities and Items, *later), or as otherwise provided for in the Code, regulations, or official IRS guidance. A parent-exempt organization of a section 501(c)(2) title-holding company may file a consolidated Form 990-T with the section 501(c)(2) organization, but not a consolidated Form 990.*

Form 990 must be filed by an organization exempt from income tax under section 501(a) (including an organization that hasn't applied for recognition of exemption) if it has either (1) gross receipts greater than or equal to $200,000, or (2) total assets greater than or equal to $500,000 at the end of the tax year (with exceptions described below for organizations eligible to submit Form 990-N and for certain organizations described in *Section B. Organizations Not Required To File Form 990 or 990-EZ,* later). This includes:
• Organizations described in section 501(c)(3) (other than **private foundations**), and
• Organizations described in other 501(c) subsections.

Gross receipts are the total amounts the organization received from all sources during its tax year, without subtracting any costs or expenses. See *Appendix B. How To Determine Whether an Organization's Gross Receipts Are Normally $50,000 (or $5,000) or Less,* for a discussion of gross receipts.

For purposes of Form 990 reporting, the term "section 501(c)(3)" includes organizations exempt under sections 501(e) and (f) (cooperative service organizations), 501(j) (amateur sports organizations), 501(k) (childcare organizations), and 501(n) (charitable risk pools). In addition, any organization described in one of these sections is also subject to section 4958 if it obtains a determination letter from the IRS stating that it is described in section 501(c)(3).

**Form 990-N.** If an organization normally has gross receipts of $50,000 or less, it must submit Form 990-N, if it chooses not to file Form 990 or Form 990-EZ (with exceptions described below for certain section 509(a)(3) **supporting organizations** and for certain organizations described in *Section B,* later). See *Appendix B* for a discussion of gross receipts.

**Form 990-EZ.** If an organization has **gross receipts** less than $200,000 and **total assets** at the end of the tax year less than $500,000, it can choose to file Form 990-EZ, Short Form Return of Organization Exempt From Income Tax, instead of Form 990. See the Instructions for Form 990-EZ for more information. See the special rules below regarding **section 501(c)(21) black lung trusts, controlling organizations** under section 512(b)(13), and **sponsoring organizations** of **donor advised funds.**

If an organization eligible to submit Form 990-N or file the Form 990-EZ chooses to file the Form 990, it must file a complete return.

**Foreign and U.S. possession organizations. Foreign organizations** and **U.S. possession** organizations as well as **domestic organizations** must file Form 990 or 990-EZ unless specifically excepted under *Section B,* later. Report amounts in U.S. dollars and state what conversion rate the organization uses. Combine amounts from inside and outside the United States and report the total for each item. All information must be written in English.

**Section 501(c)(21) black lung trusts.** The trustee of a trust exempt from tax under section 501(a) and described in section 501(c)(21) must file Form 990 and not Form 990-EZ, unless the trust normally has gross receipts in each tax year of not more than $50,000 and can file Form 990-N.

**Sponsoring organizations of donor advised funds.** If required to file an annual information return for the year, **sponsoring organizations** of **donor advised funds** must file Form 990 and not Form 990-EZ.

**Controlling organizations described in section 512(b)(13).** A **controlling organization** of one or more **controlled entities,** as described in section 512(b)(13), must file Form 990 and not Form 990-EZ if it is required to file an annual information return for the year and if there was any transfer of funds between the controlling organization and any controlled entity during the year.

**Section 509(a)(3) supporting organizations.** A section 509(a)(3) **supporting organization** must file Form 990 or 990-EZ, even if its gross receipts are normally $50,000 or less, and even if it is described in Rev. Proc. 96-10, 1996-1 C.B. 577, or is an affiliate of a governmental unit described in Rev. Proc. 95-48,1995-2 C.B. 418, unless it qualifies as:

1. An integrated auxiliary of a **church** described in Regulations section 1.6033-2(h);

2. The exclusively religious activities of a **religious order**; or

3. An organization, the gross receipts of which are normally not more than $5,000, that supports a section 501(c)(3) religious organization.

If the organization is described in (3) but not in (1) or (2), then it must submit Form 990-N unless it voluntarily files Form 990 or 990-EZ.

**Section 501(c)(7) and 501(c)(15) organizations.** Section 501(c)(7) and 501(c)(15) organizations apply the same **gross receipts** test as other organizations to determine whether they must file Form 990, but use a different definition of gross receipts to determine whether they qualify as tax exempt for the tax year. See *Appendix C. Special Gross Receipts Tests for Determining Exempt Status of Section 501(c)(7) and 501(c)(15) Organizations* for more information.

**Section 527 political organizations.** A tax-exempt political organization must file Form 990 or 990-EZ if it had $25,000 or more in gross receipts during its tax year, even if its gross receipts are normally $50,000 or less, unless it meets one of the exceptions for *certain political organizations* under *Section B*, later. A qualified state or local political organization must file Form 990 or 990-EZ only if it has gross receipts of $100,000 or more. Political organizations aren't required to submit Form 990-N.

**Section 4947(a)(1) nonexempt charitable trusts.** A **nonexempt charitable trust** described under section 4947(a)(1) (if it isn't treated as a private foundation) is required to file Form 990 or 990-EZ, unless excepted under *Section B*, later. Such a trust is treated like an exempt section 501(c)(3) organization for purposes of completing the form. Section 4947(a)(1) trusts must complete all sections of the Form 990 and schedules that section 501(c)(3) organizations must complete. All references to a section 501(c)(3) organization in the Form 990, schedules, and instructions include a section 4947(a)(1) trust (for instance, such a trust must complete Schedule A (Form 990), Public Charity Status and Public Support, unless otherwise specified). If such a trust doesn't have any taxable income under subtitle A of the Code, it can file Form 990 or 990-EZ to meet its section 6012 filing requirement and doesn't have to file Form 1041, U.S. Income Tax Return for Estates and Trusts.

**Returns when exempt status not yet established.** An organization is required to file Form 990 under these instructions if the organization claims exempt status under section 501(a) but hasn't established such exempt status by filing Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code; Form 1023-EZ, Streamlined Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code; Form 1024, Application for Recognition of Exemption Under Section 501(a); or Form 1024-A, Application for Recognition of Exemption Under Section 501(c)(4) of the Internal Revenue Code, and receiving an IRS determination letter recognizing tax-exempt status. In such a case, the organization must check the "Application pending" checkbox on Form 990, Item B, page 1 (whether or not a Form 1023, 1023-EZ, 1024, or 1024-A has been filed) to indicate that Form 990 is being filed in the belief that the organization is exempt under section 501(a), but that the IRS hasn't yet recognized such exemption.

To be recognized as exempt retroactive to the date of its organization or formation, an organization claiming tax-exempt status under section 501(c) (other than 501(c)(29)) must generally file an application for recognition of exemption (Form 1023, 1023-EZ, 1024, or 1024-A) within 27 months of the end of the month in which it was legally organized or formed.

 *An organization that has filed a letter application for recognition of exemption as a qualified nonprofit health insurance issuer under section 501(c)(29), or plans to do so, but hasn't yet received an IRS determination letter recognizing exempt status, must check the "Application pending" checkbox on the Form 990, Item B, page 1.*

# B. Organizations Not Required To File Form 990 or 990-EZ

An organization doesn't have to file Form 990 or 990-EZ even if it has at least $200,000 of **gross receipts** for the tax year or $500,000 of **total assets** at the end of the tax year if it is described below (except for section 509(a)(3) supporting organizations, which are described earlier). See *Section A. Who Must File* to determine if the organization can file Form 990-EZ instead of Form 990. An organization described in paragraph 10, 11, or 13 of this *Section B* is required to submit Form 990-N unless it voluntarily files Form 990, 990-EZ, or 990-BL, as applicable.

**Certain religious organizations.**

1. A **church**, an interchurch organization of local units of a church, a convention or association of churches, or an integrated auxiliary of a church as described in Regulations section 1.6033-2(h) (such as a men's or women's organization, religious school, mission society, or youth group).

2. A church-affiliated organization that is exclusively engaged in managing funds or maintaining retirement programs and is described in Rev. Proc. 96-10. But see the filing requirements for section 509(a)(3) supporting organizations in *Section A*.

3. A school below college level affiliated with a church or operated by a **religious order** described in Regulations section 1.6033-2(g)(1)(vii).

4. A mission society sponsored by, or affiliated with, one or more churches or church denominations, if more than half of the society's activities are conducted in, or directed at, persons in foreign countries.

5. An exclusively religious activity of any **religious order** described in Rev. Proc. 91-20, 1991-1 C.B. 524.

**Certain governmental organizations.**

6. A state institution whose income is excluded from gross income under section 115.

7. A **governmental unit** or affiliate of a governmental unit described in Rev. Proc. 95-48. But see the filing requirements for section 509(a)(3) supporting organizations in *Section A*.

8. An organization described in section 501(c)(1). A section 501(c)(1) organization is a corporation organized under an Act of Congress that is an instrumentality of the United States, and exempt from federal income taxes.

**Certain political organizations.**

9. A political organization that is:
- A state or local committee of a political party,
- A political committee of a state or local candidate,
- A caucus or association of state or local officials, or
- Required to report under the Federal Election Campaign Act of 1971 as a political committee (as defined in section 301(4) of such Act).

**Certain organizations with limited gross receipts.**

10. An organization whose **gross receipts** are normally $50,000 or less. Such organizations are generally required to submit Form 990-N if they choose not to file Form 990 or Form 990-EZ. To determine what an organization's gross receipts "normally" are, see *Appendix B*.

11. **Foreign organizations** and organizations located in **U.S. possessions**, whose **gross receipts** from sources within the United States are normally $50,000 or less and which didn't engage in significant activity in the United States (other than investment activity). Such organizations, if they claim U.S. tax exemption or are recognized by the IRS as tax exempt, are generally required to submit Form 990-N if they choose not to file Form 990 or 990-EZ.

If a foreign organization or U.S. possession organization is required to file Form 990 or Form 990-EZ, then its worldwide gross receipts, as well as assets, are taken into account in determining whether it qualifies to file Form 990-EZ.

**Certain organizations that file different kinds of annual information returns.**

12. A private foundation (including a private operating foundation) exempt under section 501(c)(3) and described in section 509(a). Use Form 990-PF, Return of Private Foundation. Also use Form 990-PF for a taxable private foundation, a section 4947(a)(1) **nonexempt charitable trust** treated as a private foundation, and a private foundation terminating its status by becoming a **public charity** under section 507(b)(1)(B) (for tax years within its 60-month termination period). If the organization successfully terminates, then it files Form 990 or 990-EZ in its final year of termination.

13. A religious or apostolic organization described in section 501(d). Use Form 1065, U.S. Return of Partnership Income.

14. A stock bonus, pension, or profit-sharing trust that qualifies under section 401. Use Form 5500, Annual Return/ Report of Employee Benefit Plan.

 *Subordinate organizations* in a *group exemption* which are included in a *group return* filed by the *central organization* for the *tax year* shouldn't file a separate Form 990, Form 990-EZ, or Form 990-N for the tax year.

# C. Sequencing List To Complete the Form and Schedules

You may find the following list helpful. It limits jumping from one part of the form to another to make a calculation or determination needed to complete an earlier part. Certain later parts of the form must first be completed in order to complete earlier parts. In general, first complete the **core form**, and then complete alphabetically Schedules A–N and Schedule R, except as provided below. Schedule O (Form 990), Supplemental Information to Form 990 or 990-EZ, should be completed as the core form and schedules are completed. Note that all organizations filing Form 990 must file Schedule O.

 A *public charity* described in section 170(b)(1)(A)(iv), 170(b)(1)(A)(vi), or 509(a)(2) that isn't within its initial 5 years of existence should first complete Part II or III of Schedule A (Form 990) to ensure that it continues to qualify as a public charity for the tax year. If it fails to qualify as a public charity, then it must file Form 990-PF rather than Form 990 or Form 990-EZ, and check the box for "Initial return of a former public charity" on page 1 of Form 990-PF.

1. Complete Items A through F and H(a) through M in the heading of Form 990, on page 1.

2. See the instructions for definitions of **related organization** and **control** and determine the organization's related organizations required to be listed on Schedule R (Form 990), Related Organizations and Unrelated Partnerships.

3. Determine the organization's officers, directors, trustees, key employees, and five highest compensated employees required to be listed on Form 990, Part VII, Section A.

4. Complete Parts VIII, IX, and X of Form 990.

5. Complete Item G in the heading section of Form 990, on page 1.

6. Complete Parts III, V, VII, XI, and XII of Form 990.

7. See the Instructions for Schedule L (Form 990), Transactions With Interested Persons, and complete Schedule L (Form 990) (if required).

8. Complete Part VI of Form 990. Transactions reported on Schedule L (Form 990) are relevant to determining independence of **members of the governing body** under Form 990, Part VI, line 1b.

9. Complete Part I of Form 990 based on information derived from other parts of the form.

10. Complete Part IV of Form 990 to determine which schedules must be completed by the organization.

11. Complete Schedule O (Form 990) and any other applicable schedules (for "Yes" boxes that were checked in Part IV). Use Schedule O (Form 990) to provide required supplemental information and other narrative explanations for questions on the core Form 990. For questions on Form 990 schedules, use the narrative part of each schedule to provide supplemental narrative.

12. Complete Part II, *Signature Block*, of Form 990.

# D. Accounting Periods and Methods

These are the accounting periods covered under the law.

## Accounting Periods

**Calendar year.** Use the 2022 Form 990 to report on the 2022 calendar year accounting period. A calendar year accounting period begins on January 1 and ends on December 31.

**Fiscal year.** If the organization has established a fiscal year accounting period, use the 2022 Form 990 to report on the organization's fiscal year that began in 2022 and ended 12 months later. A fiscal year accounting period should normally coincide with the natural operating cycle of the organization. Be certain to indicate in Item A of Form 990, page 1, the date the organization's fiscal year began in 2022 and the date the fiscal year ended in 2023.

**Short period.** A short accounting period is a period of less than 12 months, which exists when an organization first commences operations, changes its accounting period, or terminates. If the organization's short year began in 2022, and ended before December 31, 2022 (not on or after December 31, 2022), it may use either 2021 Form 990 or 2022 Form 990 to file for the short year. If using the 2021 return, provide the information for designated years listed on the return, other than the tax year being reported, as if the years shown in the form text and headings were updated. For example, if filing for a short period beginning in 2022 on the 2021 Form 990, provide the information on Schedule A, Part II, for the tax years 2018–2022, rather than for tax years 2017–2021. Check the "Initial return" box or the "Final return/terminated" box in Item B of the Heading if either of those situations applies.

**Accounting period change.** If the organization changes its accounting period, it must file a Form 990 for the short period resulting from the change. If you are filing a short period return because you changed your accounting period, use software with a change of accounting period field to file. Also, include the reason for the change, either "Form 1128 was approved" or "Revenue Procedure 85-58 rules apply."

If the organization has previously changed its annual accounting period at any time within the 10-calendar-year period that includes the beginning of the **short period** resulting from the current change in accounting period, and it had a Form 990-series filing requirement or income tax return filing requirement at any time during that 10-year period, it must also file a Form 1128, Application To Adopt, Change, or Retain a Tax Year, with the short-period return. See Rev. Proc. 85-58, 1985-2 C.B. 740.

If an organization that submits Form 990-N changes its accounting period, it must report this change on Form 990, Form

990-EZ, or Form 1128, or by sending a letter to Internal Revenue Service, 1973 Rulon White Blvd., Ogden, UT 84201.

## Accounting Methods

An "accounting method," for federal income tax purposes, is a practice a taxpayer follows to determine the tax year in which to report revenue and expenses for federal income tax purposes. An accounting method includes not only the overall plan of accounting for gross income or deductions (for example, an accrual method or the cash receipts and disbursement method), but also the treatment of any item that involves the proper time for the inclusion of an item in income or the taking of an item as a deduction, or both. However, a practice that does not affect the timing for reporting an item of income or deduction for purposes of determining taxable income is not an accounting method. A taxpayer, including a tax-exempt entity, generally adopts any permissible accounting method in the first year in which it uses the method in determining its taxable income. See Rev. Proc. 2015-13, 2015-5 I.R.B. 419.

 *An exempt organization may adopt an accounting method not only for purposes of calculating taxable income, but also for purposes of determining whether taxable income will be subject to federal income tax. For example, a tax-exempt entity may adopt an accounting method for an item of income from an unrelated trade or business activity even if the gross income from such activity is less than $1,000 and is therefore not taxed for federal income tax purposes pursuant to Regulations section 1.6012-2(e).*

An accounting method for an item of income or deduction may generally be adopted separately for each of the taxpayer's trades or businesses. However, in order to be permissible, an accounting method must clearly reflect the taxpayer's income. Unless instructed otherwise, the organization should generally use the same accounting method on the return (including the Form 990 and all schedules) to report revenue and expenses that it regularly uses to keep its books and records.

**Accounting method change.** Once a taxpayer, including a tax-exempt entity, adopts an accounting method for federal income tax purposes, the taxpayer must generally request the IRS's consent before it can change its accounting method (even if the year in which the taxpayer seeks to make the change is a year in which it generates only tax-exempt income or is otherwise not taxed on its taxable income). In most cases, a taxpayer requests consent to change an accounting method by filing a Form 3115, Application for Change in Accounting Method. See Rev. Proc. 2015-13, or any successor, for general procedures for obtaining consent to change an accounting method.

 *Depending on the specific accounting method change being requested, the taxpayer may be able to request "automatic" consent. This means that as long as the taxpayer follows the applicable procedures, the taxpayer does not have to wait for formal approval by the IRS before applying the new accounting method. See Rev. Proc. 2022-14, 2022-7 I.R.B. 502, or its successor, for a list of accounting method changes that generally qualify for automatic consent.*

For example, a tax-exempt entity that has adopted an accounting method for an item of income from an unrelated trade or business would generally request consent before it can change its method of accounting for that item in any subsequent year. This is true regardless of whether gross income from the unrelated trade or business is greater than or equal to $1,000 in such subsequent year.

Alternatively, if a taxpayer, including a tax-exempt entity, has not yet adopted an accounting method for an item of income or deduction, a change in how the entity reports the item is not a

change in accounting method. In this case, the procedures applicable to requests for accounting method changes (for example, the requirement to file a Form 3115) are not applicable.

Thus, a tax-exempt entity that has never taken into account an item of income or deduction in determining taxable income does not have to request consent to change its method of reporting that item on Form 990. Additionally, a tax-exempt entity that has never been subject to federal income tax on an item of income or deduction but that is required to file a Form 990-T solely due to owing a section 6033(e)(2) proxy tax does not have to request consent to change its method for reporting the item.

**Adjustments required when changing an accounting method.** A taxpayer, including a tax-exempt entity, that changes its accounting method must generally calculate and report an adjustment to ensure that no portion of the item being changed is permanently omitted or duplicated (see section 481(a)). However, depending on the specific method change, the IRS may provide that an adjustment is not required or permitted. An organization must report any adjustment required by section 481(a) in Parts VIII through XI and on Schedule D (Form 990), Parts XI and XII, as applicable, and provide an explanation for the change on Schedule O (Form 990).

 *Generally, a taxpayer, including a tax-exempt entity, will recognize a positive section 481(a) adjustment (such as an increase to income) ratably over 4 tax years and will recognize a negative section 481(a) adjustment in full in the year of change. See Rev. Proc. 2015-13, or its successor.*

However, as discussed above, if a tax-exempt entity has not yet adopted an accounting method for an item, a change in how the entity reports the item for purposes of the Form 990 is not a change in accounting method. In this case, an adjustment under section 481(a) is not required or permitted.

**State reporting.** Many states that accept Form 990 in place of their own forms require that all amounts be reported based on the accrual method of accounting. If the organization prepares Form 990 for state reporting purposes, it can file an identical return with the IRS even though the return doesn't agree with the books of account, unless the way one or more items are reported on the state return conflicts with the instructions for preparing Form 990 for filing with the IRS.

***Example 1.*** The organization maintains its books on the cash receipts and disbursements method of accounting but prepares a Form 990 return for the state based on the accrual method. It could use that return for reporting to the IRS.

***Example 2.*** A state reporting requirement requires the organization to report certain revenue, expense, or balance sheet items differently from the way it normally accounts for them on its books. A Form 990 prepared for that state is acceptable for IRS reporting purposes if the state reporting requirement doesn't conflict with the Instructions for Form 990.

An organization should keep a reconciliation of any differences between its books of account and the Form 990 that is filed. Organizations with audited financial statements are required to provide such reconciliations on Schedule D (Form 990), Parts XI through XII.

 *See Pub. 538, Accounting Periods and Methods, and the instructions for Forms 1128 and 3115, about reporting changes to accounting periods and methods.*

## E. When, Where, and How To File

File Form 990 by the 15th day of the 5th month after the organization's accounting period ends (May 15th for a calendar-year filer). If the due date falls on a Saturday, Sunday, or legal holiday, file on the next business day. A business day is any day that isn't a Saturday, Sunday, or legal holiday.

If the organization is liquidated, dissolved, or terminated, file the return by the 15th day of the 5th month after liquidation, dissolution, or termination.

If the return isn't filed by the due date (including any extension granted), provide a reasonable-cause explanation giving the reasons for not filing on time.

**Required electronic filing.** If you are filing a 2022 Form 990, you are required to file electronically.

For additional information on the electronic filing requirement, go to *IRS.gov/E-file*.

# F. Extension of Time To File

Use Form 8868, Application for Automatic Extension of Time To File an Exempt Organization Return, to request an automatic extension of time to file.

# G. Amended Return/Final Return

To amend the organization's return for any year, file a new return including any required schedules. Use the version of Form 990 applicable to the year being amended. The amended return must provide all the information called for by the form and instructions, not just the new or corrected information. Check the "Amended return" box in Item B in the heading area of the form. Also, enter on Schedule O (Form 990) which parts and schedules of the Form 990 were amended and describe the amendments.

The organization can file an amended return at any time to change or add to the information reported on a previously filed return for the same period. It must make the amended return available for inspection for 3 years from the date of filing or 3 years from the date the original return was due, whichever is later.

If the organization needs a complete copy of its previously filed return, it can file Form 4506, Request for Copy of Tax Return.

If the return is a final return, the organization must check the "Final return/terminated" box in Item B in the heading area of the form, and complete Schedule N (Form 990), Liquidation, Termination, Dissolution, or Significant Disposition of Assets.

**Amended returns and state filing considerations.** State law may require that the organization send a copy of an amended Form 990 return (or information provided to the IRS supplementing the return) to the state with which it filed a copy of Form 990 to meet that state's reporting requirement. A state may require an organization to file an amended Form 990 to satisfy state reporting requirements, even if the original return was accepted by the IRS.

# H. Failure-To-File Penalties

**Against the organization.** Under section 6652(c)(1)(A), a penalty of $20 a day, not to exceed the lesser of $11,000 or 5% of the **gross receipts** of the organization for the year, can be charged when a return is filed late, unless the organization shows that the late filing was due to reasonable cause. Organizations with annual **gross receipts** exceeding $1,129,000 are subject to a penalty of $110 for each day failure continues (with a maximum penalty for any one return of $56,000). The penalty applies on each day after the due date that the return isn't filed.

Tax-exempt organizations that are required to file electronically but don't are deemed to have failed to file the return. This is true even if a paper return is submitted.

The penalty can also be charged if the organization files an incomplete return, such as by failing to complete a required line item or a required part of a schedule. To avoid penalties and having to supply missing information later:

- Complete all applicable line items;
- Unless instructed to skip a line, answer each question on the return;
- Make an entry (including a zero when appropriate) on all lines requiring an amount or other information to be reported; and
- Provide required explanations as instructed.

Also, this penalty can be imposed if the organization's return contains incorrect information. For example, an organization that reports contributions net of related fundraising expenses can be subject to this penalty.

Use of a paid preparer doesn't relieve the organization of its responsibility to file a complete and accurate return.

**Against responsible person(s).** If the organization doesn't file a complete return or doesn't furnish correct information, the IRS will send the organization a letter that includes a fixed time to fulfill these requirements. After that period expires, the person failing to comply will be charged a penalty of $10 a day. The maximum penalty on all persons for failures for any one return shall not exceed $5,500.

There are also penalties (fines and imprisonment) for willfully not filing returns and for filing fraudulent returns and statements with the IRS (see sections 7203, 7206, and 7207). States can impose additional penalties for failure to meet their separate filing requirements.

**Automatic revocation for nonfiling for 3 consecutive years.** The law requires most tax-exempt organizations to file an annual Form 990, 990-EZ, or 990-PF with the IRS, or to submit a Form 990-N e-Postcard to the IRS. For information on exceptions to this requirement, go to *Annual Exempt Organization Return: Who Must File*. If an organization fails to file an annual return or submit a notice as required for 3 consecutive years, its tax-exempt status is automatically revoked on and after the due date for filing its third annual return or notice. Organizations that lose their tax-exempt status may need to file income tax returns and pay income tax, but may apply for reinstatement of exemption. For details, go to *IRS.gov/EO*.

# I. Group Return

A central, parent, or similar organization can file a **group return** on Form 990 for two or more subordinate or local organizations that are:

- Affiliated with the central organization at the time its tax year ends,
- Subject to the central organization's general supervision or control,
- Exempt from tax under a **group exemption** letter that is still in effect, and
- Using the same tax year as the central organization.

The central organization can't use a Form 990-EZ for the group return.

A **subordinate organization** may choose to file a separate annual information return instead of being included in the group return.

If the **central organization** is required to file a return for itself, it must file a separate return and can't be included in the group return. See Regulations section 1.6033-2(d)(1). See *Section B,* earlier, for a list of organizations not required to file.

Every year, each subordinate organization must authorize the central organization in writing to include it in the group return and must declare, under penalties of perjury, that the authorization and the information it submits to be included in the group return are true and complete.

The central organization should send the annual information update required to maintain a group exemption ruling (a separate requirement from the annual return) to:

Department of the Treasury
Internal Revenue Service Center
Ogden, UT 84201-0027

For special instructions regarding answering certain Form 990 questions about parts or schedules in the context of a group return, see *Appendix E.*

## J. Requirements for a Properly Completed Form 990

All organizations filing Form 990 must complete Parts I through XII, Schedule O (Form 990), and any schedules for which a "Yes" response is indicated in Part IV. If an organization isn't required to file Form 990 but chooses to do so, it must file a complete return and provide all of the information requested, including the required schedules.

**Public inspection.** In general, all information the organization reports on or with its Form 990, including schedules and attachments, will be available for public inspection. Note, however, the special rules for Schedule B (Form 990), a required schedule for certain organizations that file Form 990. Make sure PDF attachments (if any) are clear and legible. For more information on public inspection requirements, see *Appendix D,* and Pub. 557, Tax-Exempt Status for Your Organization.

**Signature.** A Form 990 isn't complete without a proper signature. For details, see the instructions for *Part II, Signature Block,* later.

**Recordkeeping.** The organization's records should be kept for as long as they may be needed for the administration of any provision of the Internal Revenue Code. Usually, records that support an item of income, deduction, or credit must be kept for a minimum of 3 years from the date the return is due or filed, whichever is later. Keep records that verify the organization's basis in property as long as they are needed to figure the basis of the original or replacement property. Applicable law and an organization's policies can require that the organization retain records longer than 3 years. Form 990, Part VI, line 14, asks whether the organization has a document retention and destruction policy.

The organization should also keep copies of any returns it has filed. They help in preparing future returns and in making computations when filing an amended return.

**Rounding off to whole dollars.** The organization must round off cents to whole dollars on the returns and schedules, unless otherwise noted for particular questions. To round, drop amounts under 50 cents and increase amounts from 50 to 99 cents to the next dollar. For example, $1.49 becomes $1 and $2.50 becomes $3. If the organization has to add two or more amounts to figure the amount to enter on a line, include cents when adding the amounts and round off only the total.

**Completing all lines.** Make an entry (including -0- when appropriate) on all lines requiring an amount or other information to be reported. Don't leave any applicable lines blank, unless expressly instructed to skip that line. If answering a line is predicated on a "Yes" answer to the preceding line, and if the organization's answer to the preceding line was "No," then leave the "If Yes" line blank.

All filers must file Schedule O (Form 990). Certain questions require all filers to provide an explanation in Schedule O (Form 990). In general, answers can be explained or supplemented in Schedule O (Form 990) if the allotted space on the form or other schedule is insufficient, or if a "Yes" or "No" answer is required but the organization wishes to explain its answer.

Missing or incomplete parts of the form and/or required schedules may result in the IRS contacting you to obtain the missing information. Failure to supply the information may result in a penalty being assessed to your account. For tips on filing complete returns, go to *IRS.gov/Charities.*

**Reporting proper amounts.** Some lines request information reported on other forms filed by the organization (such as Forms W-2, 1099, and 990-T). If the organization is aware that the amount actually reported on the other form is incorrect, it must report on Form 990 the information that should have been reported on the other form (in addition to filing an amended form with the proper amount).

In general, don't report negative numbers, but use -0- instead of a negative number, unless the instructions otherwise provide. Report revenue and expenses separately and don't net items, unless otherwise provided.

**Inclusion of activities and items of disregarded entities and joint ventures.** An organization must report on its Form 990 all of the revenues, expenses, assets, liabilities, and net assets or funds of a **disregarded entity** of which it is the sole member, and must report on its Form 990 its share of all such items of a **joint venture** or other investment or arrangement treated as a partnership for federal income tax purposes. This includes passive investments. In addition, the organization must generally report activities of a disregarded entity or a **joint venture** on the appropriate parts or schedules of Form 990. For special instructions about the treatment of disregarded entities and joint ventures for various parts of the form, see *Appendix F.*

**Reporting information from third parties.** Some lines request information that the organization may need to obtain from third parties, such as compensation paid by **related organizations**; family and business relationships between **officers, directors, trustees, key employees,** and certain businesses they own or control; the organization's share of the income and assets of a partnership or joint venture in which it has an ownership interest; and certain transactions between the organization and interested persons. The organization should make reasonable efforts to obtain this information. If it is unable to obtain certain information by the due date for filing the return, it should file Form(s) 8868 to request a filing extension. See *Section F. Extension of Time To File,* earlier. If the organization is unable to obtain this information by the extended due date after making reasonable efforts, and isn't certain of the answer to a particular question, it may make a reasonable estimate, where applicable, and explain in Schedule O.

### Assembling Form 990, Schedules, and Attachments

Before filing Form 990, assemble the package of forms, schedules, and attachments in the following order.

1. **Core form** with Parts I through XII completed, filed in numerical order.

2. Schedules, completed as applicable, filed in alphabetical order (see Form 990, Part IV, for required schedules).

3. Attachments, completed as applicable. These include (a) name change amendment to organizing document required by Item B on page 1; (b) list of **subordinate organizations** included in a **group return** required by Item H on page 1; (c) articles of merger or dissolution, resolutions, and plans of liquidation or merger required by Schedule N (Form 990); and (d) for **hospital organizations** only, a copy of the most recent **audited financial statements**.

Don't attach materials not authorized in the instructions or not otherwise authorized by the IRS.

 *To facilitate the processing of your return, don't password protect or encrypt PDF attachments. Password protecting or encrypting a PDF file that is attached to an e-filed return prevents the IRS from opening the attachment.*

# Specific Instructions

## Heading. Items A–M

Complete items A through M.

**Item A. Accounting period.** File the 2022 return for calendar year 2022 and fiscal years that began in 2022 and ended in 2023. For a fiscal year return, fill in the tax year space at the top of page 1. See *General Instructions, Section D. Accounting Periods and Methods,* earlier, for additional information about accounting periods.

**Item B. Checkboxes.** The following checkboxes are under **Item B**.

*Address change.* Check this box if the organization changed its address and hasn't reported the change on its most recently filed Form 990, 990-EZ, 990-N, or 8822-B, Change of Address or Responsible Party—Business, or in correspondence to the IRS.

**TIP** *If a change in address occurs after the return is filed, use Form 8822-B to notify the IRS of the new address.*

*Name change.* Check this box if the organization changed its legal name (not its "doing business as" name) and if the organization hasn't reported the change on its most recently filed Form 990 or 990-EZ or in correspondence to the IRS. If the organization changed its name, attach the following documents:

| IF the organization is . . . | THEN attach . . . |
|---|---|
| a corporation | a copy of the amendment to the articles of incorporation and proof of filing with the appropriate state authority. |
| a trust | a copy of the amendment to the trust instrument, or a resolution to amend the trust instrument, showing the effective date of the change of name and signed by at least one trustee. |
| an unincorporated association | a copy of the amendment to the articles of association, constitution, or other organizing document, showing the effective date of the change of name and signed by at least two officers, trustees, or members. |

*Initial return.* Check this box if this is the first time the organization is filing a Form 990 and it hasn't previously filed a Form 990-EZ, 990-PF, 990-T, or 990-N.

*Final return/terminated.* Check this box if the organization has terminated its existence or ceased to be a section 501(a) or section 527 organization and is filing its final return as an exempt organization or section 4947(a)(1) trust. For example, an organization should check this box when it has ceased operations and dissolved, merged into another organization, or has had its exemption revoked by the IRS. An organization that checks this box because it has liquidated, terminated, or dissolved during the tax year must also attach Schedule N (Form 990).

 *An organization must support any claim to have liquidated, terminated, dissolved, or merged by attaching a certified copy of its articles of dissolution or merger approved by the appropriate state authority. If a certified copy of its articles of dissolution or merger isn't available, the organization must submit a copy of a resolution or resolutions of its governing body approving plans of liquidation, termination, dissolution, or merger.*

*Amended return.* Check this box if the organization previously filed a return with the IRS for a tax year and is now filing another return for the same tax year to amend the previously filed return. Enter on Schedule O (Form 990) the parts and schedules of the Form 990 that were amended and describe the amendments. See *General Instructions, Section G. Amended Return/Final Return,* earlier, for more information.

*Application pending.* Check this box if the organization either has filed a Form 1023, 1023-EZ, 1024, or 1024-A with the IRS and is awaiting a response, or claims tax-exempt status under section 501(a) but hasn't filed Form 1023, 1023-EZ, 1024, or 1024-A to be recognized by the IRS as tax exempt. If this box is checked, the organization must complete all parts of Form 990 and any required schedules. An organization that is required to file an annual information return (Form 990 or Form 990-EZ) or submit an annual electronic notice (Form 990-N) for a tax year (see *General Instructions, Section A,* earlier) must do so even if it hasn't yet filed a Form 1023, 1023-EZ, 1024, or 1024-A with the IRS, if it claims tax-exempt status.

To qualify for tax exemption retroactive to the date of its organization or formation, an organization claiming tax-exempt status under section 501(c) (other than 501(c)(29)) must generally file an application for recognition of exemption (Form 1023, 1023-EZ, 1024, or 1024-A) within 27 months of the end of the month in which it was legally organized or formed.

**Item C. Name and address.** Enter the organization's legal name on the "Name of organization" line. If the organization operates under a name different from its legal name, enter the alternate name on the "Doing Business As" (DBA) line. If multiple DBA names won't fit on the line, enter one on the line and enter the others on Schedule O (Form 990).

If the organization receives its mail in care of a third party (such as an accountant or an attorney), enter on the street address line "C/O" followed by the third party's name and street address or P.O. box.

Include the suite, room, or other unit number after the street address. If the post office doesn't deliver mail to the street address and the organization has a P.O. box, enter the box number instead of the street address.

For foreign addresses, enter the information in the following order: city or town, state or province, the name of the country, and the postal code. Don't abbreviate the country name.

If a change of address occurs after the return is filed, use Form 8822-B to notify the IRS of the new address.

**Item D. Employer identification number (EIN).** Each organization (including a subordinate of a central organization) must have its own EIN. Use the **EIN** provided to the organization for filing its Form 990 and federal tax returns. An organization should never use the EIN issued to another organization, even if the organizations are related. The organization must have only one EIN. If it has more than one and hasn't been advised which to use, notify the:

Department of the Treasury
Internal Revenue Service Center
Ogden, UT 84201-0027

State the numbers the organization has, the name and address to which each EIN was assigned, and the address of the organization's principal office. The IRS will advise the organization which number to use.

 *A **subordinate organization** that files a separate Form 990 instead of being included in a group return must use its own EIN, and not that of the **central organization**.*

 *A section 501(c)(9) voluntary employees' beneficiary association must use its own EIN and not the EIN of its sponsor.*

**Item E. Telephone number.** Enter a telephone number of the organization that members of the public and government personnel can use during normal business hours to obtain information about the organization's finances and activities. If the organization doesn't have a telephone number, enter the telephone number of an organization official who can provide such information.

**Item F. Name and address of principal officer.** The address provided must be a complete mailing address to enable the IRS to communicate with the organization's current (as of the date this return is filed) **principal officer**, if necessary. If the officer prefers to be contacted at the organization's address listed in Item C, enter "same as C above." For purposes of this item, "principal officer" means an **officer** of the organization who, regardless of title, has ultimate responsibility for implementing the decisions of the organization's **governing body**, or for supervising the management, administration, or operation of the organization.

 *If a change in responsible party occurs after the return is filed, use Form 8822-B to notify the IRS of the new responsible party.*

**Item G. Gross receipts.** On Form 990, Part VIII, column A, add line 6b (both columns (i) and (ii)), line 7b (both columns (i) and (ii)), line 8b, line 9b, line 10b, and line 12, and enter the total here. The exceptions from filing Form 990 based on **gross receipts** and **total assets** as described in *General Instructions, Sections A and B,* earlier.

**Item H. Group returns.** If the organization answers "No" to Item H(a), it shouldn't check a box in Item H(b). If the organization answers "Yes" to Item H(a) but "No" to Item H(b), attach a list (not on Schedule O (Form 990)) showing the name, address, and **EIN** of each local or **subordinate organization** included in the **group return**. Additionally, attach a list (not on Schedule O) showing the name, address, and EIN of each subordinate organization not included in the group return. If the organization answers "Yes" to Item H(a) and "Yes" to Item H(b), attach a list (not on Schedule O) showing the name, address, and EIN of each subordinate organization included in the group return. See Regulations section 1.6033-2(d)(2)(ii). A central or subordinate organization filing an individual return should not attach such a list. Enter in Item H(c) the four-digit group exemption number (GEN) if the organization is filing a group return, or if the organization is a central or subordinate organization in a **group exemption** and is filing a separate return. Don't confuse the four-digit GEN with the nine-digit EIN reported on Item D of the form's heading. A **central organization** filing a group return must not report its own EIN in Item D, but report the special EIN issued for use with the group return.

If attaching a list:
- Enter the form number ("Form 990") and tax year,
- Enter the group exemption name and **EIN**, and
- Enter the four-digit GEN.

**Item I. Tax-exempt status.** Check the applicable box. If the organization is exempt under section 501(c) (other than section 501(c)(3)), check the second box and insert the appropriate subsection number within the parentheses (for example, "4" for a section 501(c)(4) organization).

**Item J. Website.** Enter the organization's current address for its primary website, as of the date of filing this return. If the organization doesn't maintain a website, enter "N/A" (not applicable).

**Item K. Form of organization.** Check the box describing the organization's legal entity form or status under state law in its state of legal domicile. These include corporations, trusts, unincorporated associations, and other entities (for example, partnerships and limited liability companies (LLCs)).

**Item L. Year of formation.** Enter the year in which the organization was legally created under state or foreign law. If a corporation, enter the year of incorporation.

**Item M. State of legal domicile.** For a corporation, enter the state of incorporation (country of incorporation for a foreign corporation formed outside the United States). For a trust or other entity, enter the state whose law governs the organization's internal affairs (or the foreign country whose law governs for a foreign organization other than a corporation).

# Part I. Summary

 *Because Part I generally reports information reported elsewhere on the form, **complete Part I after the other parts of the form are completed.** See* General Instructions, Section C, *earlier.*

Complete lines 3–5 and 7–22 by using applicable references made in Part I to other items.

**Line 1.** Describe the organization's mission or its most significant activities for the year, whichever the organization wishes to highlight, on the summary page.

**Line 2.** Check this box if the organization answered "Yes" on Part IV, line 31 or 32, and complete Schedule N (Form 990), Part I or Part II.

**Line 6.** Enter the number of **volunteers**, full-time and part-time, including volunteer members of the organization's governing body, who provided volunteer services to the organization during the reporting year. Organizations that don't keep track of this information in their books and records or report this information elsewhere (such as in annual reports or grant proposals) can provide a reasonable estimate, and can use any reasonable basis for determining this estimate. Organizations can, but aren't required to, provide an explanation on Schedule O (Form 990) of how this number was determined, the number of hours those volunteers served during the tax year, and the types of services or benefits provided by the organization's volunteers.

**Line 7b.** If the organization isn't required to file a Form 990-T for the tax year, enter "0." If the organization hasn't yet filed Form 990-T for the tax year, provide an estimate of the amount it expects to report on Form 990-T, Part I, line 11, when it is filed.

**Lines 8–19.** If this is an initial return, or if the organization filed Form 990-EZ or 990-PF in the prior year, leave the "Prior Year" column blank. Use the same lines from the 2021 Form 990 to determine what to report for prior year revenue and expense amounts.

**Line 16a.** Enter the total of (i) the fees for professional fundraising services reported in Part IX, column (A), line 11e; and (ii) the portion of the amount reported in Part IX, column (A), lines 5 and 6, that comprises fees for professional fundraising services paid to officers, directors, trustees, key employees, and

disqualified persons, whether or not such persons are employees of the organization. Exclude the latter amount from Part I, line 15.

## Part II. Signature Block

The return must be signed by the current president, vice president, treasurer, assistant treasurer, chief accounting officer, or other corporate officer (such as a tax officer) who is authorized to sign as of the date this return is filed. A receiver, trustee, or assignee must sign any return he or she files for a corporation or association. See Regulations section 1.6012-3(b)(4). For a trust, the authorized trustee(s) must sign. The definition of "officer" for purposes of Part II is different from the definition of **officer** (see *Glossary*) used to determine which officers to report elsewhere on the form and schedules, and from the definition of **principal officer** for purposes of the Form 990 *heading* (see *Glossary*).

### Paid Preparer

Generally, anyone who is paid to prepare the return must sign the return, list the preparer taxpayer identification number (PTIN), and fill in the other blanks in the *Paid Preparer Use Only* area. An employee of the filing organization isn't a paid preparer.

The paid preparer must:
- Sign the return in the space provided for the preparer's signature;
- Enter the preparer information, including the preparer's PTIN; and
- Give a copy of the return to the organization.

Any paid preparer can apply for and obtain a PTIN online at *IRS.gov/PTIN* or by filing Form W-12, IRS Paid Preparer Tax Identification Number (PTIN) Application and Renewal.

 *Enter the paid preparer's PTIN, not his or her social security number (SSN), in the "PTIN" box in the paid preparer's block. The IRS won't redact the paid preparer's SSN if such SSN is entered on the paid preparer's block. Because Form 990 is a publicly disclosable document, any information entered in this block will be publicly disclosed (see Appendix D). For more information about applying for a PTIN online, go to the IRS website at IRS.gov/TaxPros.*

**Note.** A paid preparer may sign original or amended returns by rubber stamp, mechanical device, or computer software program.

### Paid Preparer Authorization

On the last line of Part II, check "Yes" if the IRS can contact the paid preparer who signed the return to discuss the return. This authorization applies only to the individual whose signature appears in the *Paid Preparer Use Only* section of Form 990. It doesn't apply to the firm, if any, shown in that section.

By checking "Yes," the organization is authorizing the IRS to contact the paid preparer to answer any questions that arise during the processing of the return. The organization is also authorizing the paid preparer to:
- Give the IRS any information missing from the return;
- Call the IRS for information about processing the return; and
- Respond to certain IRS notices about math errors, offsets, and return preparation.

The organization isn't authorizing the paid preparer to bind the organization to anything or otherwise represent the organization before the IRS.

The authorization will automatically end no later than the due date (excluding extensions) for filing of the organization's 2023 Form 990. If the organization wants to expand the paid preparer's authorization or revoke it before it ends, see Pub. 947, Practice Before the IRS and Power of Attorney.

Check "No" if the IRS should contact the organization or its principal officer listed in Item F of the heading on page 1, rather than the paid preparer.

## Part III. Statement of Program Service Accomplishments

Check the box in the heading of Part III if Schedule O (Form 990) contains any information pertaining to this part. Part III requires reporting regarding the organization's program service accomplishments. A program service is an activity of an organization that accomplishes its exempt purpose. Examples of program service accomplishments can include:
- A section 501(c)(3) organization's charitable activities such as a hospital's provision of charity care under its charity care policy, a college's provision of higher education to students under a degree program, a disaster relief organization's provision of grants or assistance to victims of a natural disaster, or a nursing home's provision of rehabilitation services to residents;
- A section 501(c)(5) labor union's conduct of collective bargaining on behalf of its members;
- A section 501(c)(6) business league's conduct of meetings for members to discuss business issues; or
- A section 501(c)(7) social club's operation of recreational and dining facilities for its members.

Don't report a fundraising activity as a program service accomplishment unless it is substantially related to the accomplishment of the organization's exempt purposes (other than by raising funds).

**Line 1.** Describe the organization's mission as articulated in its mission statement or as otherwise adopted by the organization's **governing body**, if applicable. If the organization doesn't have a mission that has been adopted or ratified by its **governing body**, enter "None."

**Line 2.** Answer "Yes" if the organization undertook any new significant program services prior to the end of the **tax year** that it didn't describe in a prior year's Form 990 or 990-EZ. Describe these items on Schedule O (Form 990). If any are among the activities described on Form 990, Part III, line 4, the organization can reference the detailed description on line 4. If the organization has never filed a Form 990 or 990-EZ, answer "No."

**Line 3.** Answer "Yes" if the organization made any significant changes prior to the end of the **tax year** in how it conducts its program services to further its exempt purposes, or if the organization ceased conducting significant program services that had been conducted in a prior year. Describe these items on Schedule O (Form 990).

 *An organization must report new, significant program services, or significant changes in how it conducts program services on its Form 990, Part III, rather than in a letter to IRS Exempt Organizations Determinations ("EO Determinations"). EO Determinations no longer issues letters confirming the tax-exempt status of organizations that report such new services or significant changes.*

**Lines 4a–4c.** All organizations must describe their accomplishments for each of their three largest program services, as measured by total expenses incurred (not including donated services or the donated use of materials, equipment, or facilities). If there were three or fewer of such activities, describe each program service activity. The organization can report on Schedule O (Form 990) additional activities that it considers of comparable or greater importance, although smaller in terms of expenses incurred (such as activities conducted with **volunteer** labor).

**Code.** For the 2022 tax year, leave this blank.

**Expenses and grants.** For each program service reported on lines 4a–4c, section 501(c)(3) and 501(c)(4) organizations must enter total expenses included on Part IX, line 25, column (B), and total grants and allocations (if any) included within such total expenses that were reported on Part IX, lines 1–3, column (B). For all other organizations, entering these amounts is optional.

**Revenue.** For each program service, section 501(c)(3) and 501(c)(4) organizations must report any revenue derived directly from the activity, such as fees for services or from the sale of goods that directly relate to the listed activity. This revenue includes program service revenue reported on Part VIII, line 2, column (A), and includes other amounts reported on Part VIII, lines 3–11, as related or exempt function revenue. Also include **unrelated business income** from a business that exploits an exempt function, such as advertising in a journal. For this purpose, charitable contributions and grants (including the charitable contribution portion, if any, of membership dues) reported on Part VIII, line 1, aren't considered revenue derived from program services. For organizations other than section 501(c)(3) and 501(c)(4) organizations, entering these amounts is optional.

**Description of program services.** For each program service reported, include the following.

• Describe program service accomplishments through specific measurements such as clients served, days of care provided, number of sessions or events held, or publications issued.

• Describe the activity's objective, for both this time period and the longer-term goal, if the output is intangible, such as in a research activity.

• Give reasonable estimates for any statistical information if exact figures aren't readily available. Indicate that this information is estimated.

• Be clear, concise, and complete in the description. Use Schedule O (Form 990) if additional space is needed.

**Donated services or use of equipment, materials, or facilities.** The organization can report the amount of any donated services, or use of materials, equipment, or facilities it received or used in connection with a specific program service, on the lines for the narrative description of the appropriate program service. However, don't include these amounts in revenue, expenses, or grants reported on Part III, lines 4a–4e, even if prepared according to **generally accepted accounting principles**.

**Public interest law firm.** A public interest law firm exempt under section 501(c)(3) or section 501(c)(4) must include a list of all the cases in litigation or that have been litigated during the year. For each case:

• Describe the matter in dispute,

• Explain how the litigation will benefit the public generally, and

• Enter the fees sought and recovered.

See Rev. Proc. 92-59, 1992-2 C.B. 411.

**Line 4d. Other program services.** Enter on Schedule O (Form 990) the organization's other program services. The detailed description required for the three largest program services need not be provided for these other program services. Section 501(c)(3) and 501(c)(4) organizations must report on line 4d their total revenues reported on Part VIII, line 2, column (A), and their total expenses (including grants) reported on Part IX, column (B), that are attributable to these other program services, and must report on Part III, line 4e, their total program service expenses from Part III, lines 4a–4d. For all other organizations, entering these amounts is optional. The organization may report the non-contribution portion of membership dues on line 4d or allocate that portion among lines 4a–4c.

# Part IV. Checklist of Required Schedules

For each "Yes" answer to a question on Form 990, Part IV, complete the applicable schedule (or part or line of the schedule). See the *Glossary* and instructions for the pertinent schedules for definitions of terms and explanations that are relevant to questions in this part.

The organization isn't required to answer "Yes" to a question on Form 990, Part IV, or complete the schedule (or part of a schedule) to which the question is directed if the organization isn't required to provide any information in the schedule (or part of the schedule). Thus, a minimum dollar threshold for reporting information on a schedule may be relevant in determining whether the organization must answer "Yes" on a question on Form 990, Part IV.

**Line 1.** Answer "Yes" if the organization is a section 501(c)(3) organization that isn't a **private foundation**. Answer "Yes" if the organization claims section 501(c)(3) status but hasn't yet filed a Form 1023 or Form 1023-EZ application or received a determination letter recognizing its section 501(c)(3) status. All other organizations answer "No."

**Line 2.** Answer "Yes" if any of the following are satisfied.

• A section 501(c)(3) organization met the 33 1/3% support test of the regulations under sections 509(a)(1) and 170(b)(1)(A)(vi); checks the box on Schedule A (Form 990), Part II, line 13, 16a, or 16b; and received from any one contributor, during the year, **contributions** of the greater of $5,000 (in money or property) or 2% of the amount on Form 990, Part VIII, line 1h. An organization filing Schedule B (Form 990) can limit the contributors it reports to Schedule B (Form 990) using this greater-than-$5,000/2% threshold only if it checks the box on Schedule A (Form 990), Part II, line 13, 16a, or 16b.

• A section 501(c)(3) organization didn't meet the 33 1/3% support test of the regulations under sections 509(a)(1) and 170(b)(1)(A)(vi), and received during the year **contributions** of $5,000 or more from any one contributor.

• A section 501(c)(7), 501(c)(8), or 501(c)(10) organization received, during the year, (a) **contributions** of any amount for use *exclusively* for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals; or (b) contributions of $5,000 or more not exclusively for such purposes from any one contributor.

• Any other organization that received, during the year, contributions of $5,000 or more from any one contributor.

 *Don't attach substitutes for Schedule B (Form 990).*

**Line 3.** All organizations must answer this question, even if they aren't subject to a prohibition against **political campaign activities**. Answer "Yes" whether the activity was conducted directly or indirectly through a **disregarded entity** or a **joint venture** or other arrangement treated as a partnership for federal income tax purposes and in which the organization is an owner.

**Line 4.** Complete only if the organization is a section 501(c)(3) organization. Other organizations leave this line blank. Answer "Yes" if the organization engaged in **lobbying activities** or had a section 501(h) election in effect during the **tax year**. All section 501(c)(3) organizations that had a section 501(h) election in effect during the tax year must complete Schedule C (Form 990), Part II-A, whether or not they engaged in lobbying activities during the tax year.

**Line 5.** Answer "Yes" only if the organization is a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined

in Rev. Proc. 98-19, 1998-1 C.B. 547. Other organizations answer "No."

**Line 6.** Answer "Yes" if the organization maintained at any time during the organization's tax year a **donor advised fund** or another similar fund or account (that is, any account over which the donor or a person appointed by the donor had advisory privileges over the use or investment of any portion of the account, but which isn't a **donor advised fund**). Examples of other similar funds or accounts include, but aren't limited to, the types of funds or accounts described as exceptions to the *Glossary* definition of a **donor advised fund**.

**Line 7.** Answer "Yes" if the organization received or held any **conservation easement** at any time during the year, regardless of how the organization acquired the easement or whether a charitable deduction was claimed by a donor of the easement.

**Line 8.** Answer "Yes" if, at any time during the year, the organization maintained **collections of works of art, historical treasures, and other similar assets** as described in ASC 958-360-45, whether or not the organization reported revenue and assets related to such collections in its financial statements.

 *Organizations that answer "Yes" on line 8 will often answer "Yes" on Part IV, line 30, which addresses current-year **noncash contributions** of such items.*

**Line 9.** Answer "Yes" if, at any time during the organization's tax year, the organization (1) had an **escrow or custodial account**; (2) provided **credit counseling services** and/or **debt management plan services**, such as credit repair or debt negotiations; or (3) acted as an agent, trustee, custodian, or other intermediary for contributions or other assets not included in Part X.

**Line 10.** Answer "Yes" if the organization, a **related organization**, or an organization formed and maintained exclusively to further one or more exempt purposes of the organization (such as a foundation formed and maintained exclusively to hold **endowment funds** to provide scholarships and other funds for a college or university described within section 501(c)(3)) held assets in **donor-restricted endowment funds**, **board designated (quasi)**, or endowment funds at any time during the year, whether or not the organization follows **ASC 958**, or reports endowment funds in Part X, line 31. See the instructions for Schedule D (Form 990), Part V, for the definitions of these types of endowment funds.

**Line 11.** Answer "Yes" if the organization reported an amount for land, buildings, equipment, or leasehold improvements on Part X, line 10; an amount for other liabilities on Part X, line 25; or if its financial statements for the tax year included a footnote that addresses its liability for uncertain tax positions under FIN 48 (FASB ASC 740) (including a statement that the organization had no liability for uncertain tax positions). Also, answer "Yes" if the organization reported in Part X an amount for investments-other securities, investments-program related, or other assets, on any of line 12, 13, or 15, that is 5% or more of the total assets reported on Part X, line 16.

**Line 12a.** Answer "Yes" if the organization received separate, independent **audited financial statements** for the year for which it is completing this return, or if the organization is reporting for a short year that is included in, but not identical to, the period for which the audited financial statements were obtained. All other organizations answer "No." Answer "No" if the organization was included in consolidated audited financial statements, unless the organization also received separate audited financial statements.

An accountant's **compilation** or **review of financial statements** isn't considered to be an audit and doesn't produce audited financial statements. If the organization answers "No,"

but has prepared, for the year for which it is completing this return, a financial statement that wasn't audited, the organization can (but isn't required to) provide the reconciliations contained on Schedule D (Form 990), Parts XI–XII.

**Line 12b.** Answer "Yes" if the organization was included in consolidated, independent **audited financial statements** for the year for which it is completing this return. All other organizations answer "No." Answer "Yes" if the organization is reporting for a short year that is included in, but not identical to, the period for which the audited financial statements were obtained.

**Line 13.** Answer "Yes" if the organization checked the box on Schedule A (Form 990), Part I, line 2, indicating that it is a **school**.

**Lines 14a–14b.** Answer "Yes" on line 14a if the organization maintained an office, or had employees or agents, or independent contractors outside the **United States**. Answer "Yes" on line 14b if the organization had aggregate revenue or expenses of more than $10,000 from or attributable to grantmaking, **fundraising activities**, business, investment, and program service activities outside the **United States**, or if the book value of the organization's aggregate investments in foreign partnerships, foreign corporations, and other foreign entities was $100,000 or more at any time during the **tax year**.

In the case of indirect investments made through investment entities, the extent to which revenue or expenses are taken into account in determining whether the $10,000 threshold is exceeded will depend upon whether the investment entity is treated as a partnership or corporation for U.S. tax purposes. For example, an organization with an interest in a foreign partnership would need to take into account its share of the partnership's revenue and expenses in determining whether the $10,000 threshold is exceeded. An organization with an investment in a foreign corporation would need to take into account dividends it receives from the corporation, but wouldn't need to take into account or report any portion of the revenues, expenses, or expenditures of a foreign corporation in which it holds an investment, provided that the corporation is treated as a separate corporation for U.S. tax purposes.

**Line 15.** Answer "Yes" if the organization reported on Part IX, line 3, column (A), more than $5,000 of **grants and other assistance** to any **foreign organization** or entity (including a **foreign government**), or to a **domestic organization** or **domestic individual** for the purpose of providing grants or other assistance to a designated **foreign organization** or organizations.

**Line 16.** Answer "Yes" if the organization reported on Part IX, line 3, column (A), more than $5,000 of aggregate **grants and other assistance** to **foreign individuals**, or to **domestic organizations** or **domestic individuals** for the purpose of providing grants or other assistance to a designated foreign individual or individuals.

**Lines 17–18.** Answer "Yes" on line 17 if the total amount reported for **professional fundraising services** in Part IX (line 11e, plus the portion of the line 6 amount attributable to professional fundraising services) exceeds $15,000.

Answer "Yes" on line 18 if the sum of the amounts reported on lines 1c and 8a of Form 990, Part VIII, exceeds $15,000. An organization that answers "No" should consider whether to complete Schedule G (Form 990) in order to report its **fundraising activities** or **gaming** activities for state or other reporting purposes.

**Line 20a.** Answer "Yes" if the organization, directly or indirectly through a **disregarded entity** or **joint venture** treated as a partnership for federal income tax purposes, operated one or more **hospital facilities** at any time during the **tax year**. Except

in the case of a **group return**, don't include hospital facilities operated by another organization that is treated as a separate taxable or tax-exempt corporation for federal income tax purposes. For group returns, answer "Yes" if any subordinate included in the group return operated such a hospital facility.

**Line 20b.** If the organization operated one or more **hospital facilities** at any time during the **tax year**, then it must attach a copy of its most recent **audited financial statements**. If the organization was included in consolidated audited financial statements but not separate audited financial statements for the tax year, then it must attach a copy of the consolidated financial statements, including details of consolidation (whether or not audited).

**Line 21.** Answer "Yes" if the organization reported on Part IX, line 1, column (A), more than $5,000 of **grants and other assistance** to any **domestic organization,** or to any domestic government. For instance, answer "No" if the organization made a $4,000 grant to each of two domestic organizations and no other grants. Don't report grants or other assistance provided to domestic organizations or domestic governments for the purpose of providing grants or other assistance to designated **foreign organizations** or **foreign individuals**.

*Section 501(c)(21) trusts.* Use Schedule I (Form 990) to report amounts over $5,000 paid by the trust (1) to the Federal Black Lung Disability Trust Fund pursuant to section 3(b)(3) of Public Law 95-227, or (2) for insurance exclusively covering liabilities under sections 501(c)(21)(A)(i)(I) and 501(c)(21)(A)(i)(IV). For details, see Regulations section 1.501(c)(21)-1(d).

**Line 22.** Answer "Yes" if the organization reported on Part IX, line 2, column (A), more than $5,000 of aggregate **grants and other assistance** to or for **domestic individuals**. Don't report grants or other assistance provided to or for domestic individuals for the purpose of providing grants or other assistance to designated **foreign organizations** or **foreign individuals**.

*Section 501(c)(21) trusts.* Use Schedule I (Form 990) to report amounts over $5,000 paid by the black lung trust to or for the benefit of miners or their beneficiaries other than amounts included on line 21. Such payments could include direct payment of medical bills, etc., authorized by the Act and accident and health benefits for retired miners and their spouses and dependents.

**Line 23.** Answer "Yes" if the organization:
• Listed in Part VII a *former* **officer**, **director**, **trustee**, **key employee**, or **highest compensated employee**; or
• Reported for any person listed in Part VII more than $150,000 of **reportable compensation** and other **compensation**.

Also answer "Yes" if, under the circumstances described in the instructions for Part VII, Section A, line 5, the filing organization had knowledge that any person listed in Part VII, Section A, received or accrued **compensation** from an **unrelated organization** for services rendered to the filing organization.

**Line 24.** Lines 24a–24d involve questions regarding **tax-exempt bonds**. All organizations must answer "Yes" or "No" on line 24a. Those organizations that answer "Yes" on line 24a must also answer lines 24b through 24d and complete Schedule K (Form 990), Supplemental Information on Tax-Exempt Bonds. Those that answer "No" to line 24a can skip to line 25a.

*Line 24a.* Answer "Yes" and complete Schedule K (Form 990) for each **tax-exempt bond** issued by or for the benefit of the organization after December 31, 2002 (including refunding bonds) with an outstanding principal amount of more than $100,000 as of the last day of the organization's tax year. For this purpose, bonds that have been legally defeased, and as a result are no longer treated as a liability of the organization, aren't considered outstanding.

*Line 24b.* For purposes of line 24b, the organization need not include the following as investments of proceeds.
• Any investment of proceeds relating to a reasonably required reserve or replacement fund as described in section 148(d).
• Any investment of proceeds properly characterized as replacement proceeds as defined in Regulations section 1.148-1(c).
• Any investment of net proceeds relating to a **refunding escrow** as defined in Regulations section 1.148-1(b). Temporary period exceptions are described in section 148(c) and Regulations section 1.148-2(e). For example, there is a 3-year temporary period applicable to proceeds spent on expenditures for capital projects and a 13-month temporary period applicable to proceeds spent on working capital expenditures.

*Line 24c.* For purposes of line 24c, the organization is treated as maintaining an escrow account if such account is maintained by a trustee for **tax-exempt bonds** issued for the benefit of the organization.

*Line 24d.* Answer "Yes" if the organization has received a letter ruling that its obligations were issued on behalf of a state or local **governmental unit**; meets the conditions for issuing **tax-exempt bonds** as set forth in Rev. Rul. 63-20, 1963-1 C.B. 24 (see Rev. Proc. 82-26, 1982-1 C.B. 476); or is a constituted authority organized by a state or local governmental unit to issue tax-exempt bonds in order to further public purposes (see Rev. Rul. 57-187, 1957-1 C.B. 65). Also answer "Yes" if the organization has outstanding qualified scholarship funding bonds under section 150(d) or bonds of a qualified volunteer fire department under section 150(e).

**Lines 25a–25b.** Complete lines 25a and 25b only if the organization is a section 501(c)(3), 501(c)(4), or 501(c)(29) organization. If the organization isn't described in section 501(c)(3), 501(c)(4), or 501(c)(29), skip lines 25a and 25b and leave them blank. On line 25b, answer "Yes" if the organization became aware, prior to filing this return, that it engaged in an **excess benefit transaction** with a **disqualified person** in a prior year, and if the transaction hasn't been reported on any of the organization's prior Forms 990 or 990-EZ.

 *An **excess benefit transaction** can have serious implications for the **disqualified person** that entered into the transaction with the organization, any **organization managers** that knowingly approved of the transaction, and the organization itself. A section 501(c)(3), 501(c)(4), or 501(c)(29) organization that becomes aware that it may have engaged in an **excess benefit transaction** should obtain competent advice regarding section 4958, pursue correction of any excess benefit, and take other appropriate steps to protect its interests with regard to such transaction and the potential impact it could have on the organization's continued exempt status. See Appendix G. Section 4958 Excess Benefit Transactions, later, for a discussion of section 4958; Schedule L (Form 990), Transactions With Interested Persons, Part I; and Form 4720, Schedule I, regarding reporting of excess benefit transactions.*

**Lines 26–28.** Lines 26 through 28 ask questions about loans and other receivables and payables between the organization and certain interested persons, and certain direct and indirect business transactions between the organization and management officials of the organization or their associated businesses or **family members**. All organizations must answer these questions. The organization should review carefully the instructions for Schedule L (Form 990), Parts II–IV, before answering these questions and completing Schedule L (Form 990).

**Line 29.** The organization is required to answer "Yes" on line 29 if it received during the year more than $25,000 in **fair market**

**value (FMV)** of donations, gifts, grants, or other **contributions** of property other than cash, regardless of the manner received (such as for use in a charity auction). Don't include **contributions** of services or use of facilities.

**Line 30.** The organization is required to answer "Yes" on line 30 if during the year it received as a donation, gift, grant, or other **contribution**:
• Any **work of art**, **historical treasure**, historical artifact, scientific specimen, archaeological artifact, or similar asset, including a fractional interest, regardless of amount or whether the organization maintains collections of such items; or
• Any **qualified conservation contributions** regardless of whether the contributor claimed a charitable contribution deduction for such **contribution**.

See the instructions for Schedule M (Form 990), Noncash Contributions, for definitions of these terms.

**Lines 31–32.** The organization must answer "Yes" if it liquidated, terminated, dissolved, ceased operations, or engaged in a **significant disposition of net assets** during the year. See the instructions for Schedule N (Form 990) for definitions and explanations of these terms and transactions or events, and a description of articles of dissolution and other information that must be filed with Form 990.

Note that a significant disposition of net assets may result from either an expansion or contraction of operations. Organizations that answer "Yes" on either of these questions must also check the box in Part I, line 2, and complete Schedule N (Form 990), Part I or Part II.

**Lines 33–34.** The organization is required to report on Schedule R (Form 990) certain information regarding ownership or control of, and transactions with, its **disregarded entities** and tax-exempt and taxable **related organizations**. An organization that answers "Yes" on line 33 or 34 must enter its disregarded entities and related organizations on Schedule R (Form 990) and provide detailed information regarding such organizations.

Report disregarded entities on Schedule R (Form 990), Part I; related tax-exempt organizations on Part II; related organizations taxable as partnerships on Part III; and any related organizations taxable as C or S corporations or trusts on Part IV.

**Lines 35a–35b.** If an organization was a **controlled entity** of the filing organization under section 512(b)(13) during the **tax year**, the filing organization must answer "Yes" on line 35a. It must answer "Yes" on line 35b and complete Schedule R (Form 990), Part V, line 2, if it either (1) received or accrued from its controlled entity any interest, annuities, royalties, or rent, regardless of amount, during the tax year; or (2) engaged in another type of transaction (see Schedule R (Form 990) for a list of transactions) with the controlled entity, if the amounts involved during the tax year for that type of transaction exceeded $50,000. See the *Glossary* and the Instructions for Schedule R (Form 990).

Controlled entities are a subset of **related organizations**. Answer "No" to line 35a if the organization had no related organizations during the tax year. If the answer to line 35a is "No," leave line 35b blank.

**Line 36.** Complete line 36 only if the organization is a section 501(c)(3) organization and engaged in a transaction over $50,000 during the **tax year** with a **related organization** that was tax exempt under a section other than section 501(c)(3). All other organizations leave this line blank and go to line 37. See the Instructions for Schedule R (Form 990) for more information on what needs to be reported on Schedule R (Form 990), Part V, line 2.

**Line 37.** Answer "Yes" if, at any time during the year, the organization conducted more than 5% of its activities, measured by total gross revenue for the tax year or **total assets** of the organization at the end of its **tax year**, whichever is greater, through an **unrelated organization** that is treated as a partnership for federal income tax purposes, and in which the organization was a partner or member at any time during the tax year. The 5% test is applied on a partnership-by-partnership basis, although direct ownership by the organization and indirect ownership through disregarded entities or tiered entities treated as partnerships are aggregated for this purpose. The organization need not report on Schedule R (Form 990), Part VI, either (1) the conduct of activities through an organization treated as a taxable or tax-exempt corporation for federal income tax purposes, or (2) unrelated partnerships that meet both of the following conditions.
• 95% or more of the filing organization's gross revenue from the partnership for the partnership's tax year ending with or within the organization's tax year is described in sections 512(b)(1), 512(b)(2), 512(b)(3), and 512(b)(5), such as interest, dividends, royalties, rents, and capital gains (including unrelated debt-financed income).
• The primary purpose of the filing organization's investment in the partnership is the production of income or appreciation of property and not the conduct of a section 501(c)(3) charitable activity such as program-related investing.

**Line 38.** Answer "Yes" if the organization completed Schedule O (Form 990).

 *Schedule O (Form 990) must be completed and filed by all organizations that file Form 990. All filers must provide narrative responses to certain questions (for example, Part VI, lines 11b and 19) on Schedule O (Form 990). Certain filers must provide narrative responses to other questions (for example, Part III, line 4d; Part V, line 3b; Part VI, lines 2–7b, 9, 12c, and 15a–b, for "Yes" responses; Part VI, lines 8a–b and 10b, for "No" responses; and Part XII, line 3b, for a "No" response). All filers can supplement their answers to other Form 990 questions on Schedule O (Form 990).*

# Part V. Statements Regarding Other IRS Filings and Tax Compliance

Check the box in the heading of Part V if Schedule O (Form 990) contains any information pertaining to this part.

 *See* Glossary *for definitions of terms used in the questions in this section.*

 *Some questions in this part pertain to other IRS forms. Forms are available by downloading from the IRS website at IRS.gov/OrderForms. Also see* Appendix H. Forms and Publications To File or Use*.*

**Line 1a.** The organization must use Form 1096, Annual Summary and Transmittal of U.S. Information Returns, to transmit to the IRS paper Forms 1099, 1098, 5498, and W-2G, which are information returns reporting certain amounts paid or received by the organization. Report all such returns filed for the calendar year ending with or within the organization's **tax year**. If the organization transmits any of these forms electronically, add this number to the total reported. Examples of payments requiring Form 1099 reporting include certain payments to **independent contractors** for services rendered. Report on this line Forms 1099, 1098, 5498, and W-2G filed by reporting agents of the filing organization, including common paymasters and payroll agents, for the calendar year ending with or within the organization's tax year. Enter -0- if the organization didn't file any such forms for the calendar year ending with or within its tax

year, or if the organization is filing for a short year and no calendar year ended within its tax year.

**Line 1b.** Form W-2G pertains to certain gambling winnings.

**Line 1c.** For more information on backup withholding for missing or incorrect names or taxpayer identification numbers, see Pub. 1281, Backup Withholding for Missing and Incorrect Name/TIN(s). If backup withholding rules didn't apply to the organization because it didn't make a reportable payment to a vendor or provide reportable gaming (gambling) winnings to a prize winner, then leave line 1c blank.

**Line 2a.** Include on this line the number of the organization's employees (not the number of Forms W-2) reported on a Form W-3, Transmittal of Wage and Tax Statements, by both the filing organization and reporting agents of the filing organization, including common paymasters and payroll agents, for the calendar year ending with or within the filing organization's **tax year**. Enter -0- if the organization didn't have any employees during the calendar year ending with or within its tax year, or if the organization is filing for a short year and no calendar year ended within its tax year.

**Line 2b.** If the organization reported at least one employee on line 2a, answer whether the organization or reporting agents of the organization filed all required federal employment tax returns (which include Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return; and Form 941, Employer's QUARTERLY Federal Tax Return) relating to such employees. For more information, see the discussion of employment taxes in Pub. 557. The organization may leave line 2b blank if it didn't report any employees on line 2a.

**Line 3a.** Check "Yes" on line 3a if the organization's total gross income from all of its **unrelated trades or businesses** is $1,000 or more for the tax year. See Pub. 598, Tax on Unrelated Business Income of Exempt Organizations, for a description of **unrelated business income** and the Form 990-T filing requirements for organizations having such income.

 *Neither Form 990-T nor Form 990 is a substitute for the other. Report on Form 990 items of income and expense that are also required to be reported on Form 990-T when the organization is required to file both forms.*

**Line 3b.** Answer "Yes" if the organization checked "Yes" on line 3a and filed Form 990-T by the time this Form 990 is filed. Check "No" if the organization answered "Yes" on line 3a but hasn't filed Form 990-T by the time this Form 990 is filed, even if the organization has applied for an extension to file Form 990-T. If "No" on line 3b, provide an explanation on Schedule O (Form 990).

 *All tax-exempt organizations must pay estimated taxes for their **unrelated business income** if they expect their tax liability to be $500 or more. Use Form 990-W, Estimated Tax on Unrelated Business Taxable Income for Tax-Exempt Organizations, to compute these amounts.*

**Line 4a.** Answer "Yes" if either (1) or (2) below applies.

1. At any time during the calendar year ending with or within the organization's **tax year**, the organization had an interest in, or signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account); and

a. The combined value of all such accounts was more than $10,000 at any time during the calendar year; and

b. The accounts weren't with a U.S. military banking facility operated by a U.S. financial institution.

2. The organization owns more than 50% of the stock in any corporation that would answer "Yes" to item 1 above.

If "Yes," electronically file FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR), with the Department of the Treasury using FinCEN's BSA E-Filing System. Because FinCEN Form 114 isn't a tax form, don't file it with Form 990.

See *FINCEN.gov* for more information.

**Line 4b.** Enter the name of each foreign country in which a foreign account described on line 4a is located. Use Schedule O (Form 990) if more space is needed.

**Line 5.** Answer "Yes" on line 5a if the organization was party to a prohibited tax shelter transaction as described in section 4965(e) at any time during the organization's **tax year**. A prohibited tax shelter transaction is any listed transaction, within the meaning of section 6707A(c)(2), and any prohibited reportable transaction. A prohibited reportable transaction is a confidential transaction within the meaning of Regulations section 1.6011-4(b)(3), and a transaction with contractual protection within the meaning of Regulations section 1.6011-4(b)(4). For more information on prohibited tax shelter transactions, go to *IRS.gov*.

An organization that files Form 990 (other than a section 527 political organization) and that is a party to a prohibited tax shelter transaction must file Form 8886-T, Disclosure by Tax-Exempt Entity Regarding Prohibited Tax Shelter Transaction, and may also have to file Form 4720, Return of Certain Excise Taxes Under Chapters 41 and 42 of the Internal Revenue Code, and pay an excise tax imposed by section 4965. For more information, see the instructions for Forms 8886-T and 4720.

**Line 6.** Answer "Yes" on line 6a only if the organization has annual gross receipts that are normally greater than $100,000 and if it solicited contributions not deductible under section 170 during the tax year.

Any fundraising solicitation (including solicitation of member dues) by or on behalf of any section 501(c) or 527 organization that isn't eligible to receive **contributions** deductible as charitable contributions for federal income tax purposes must include an explicit statement that contributions or gifts to it aren't deductible as charitable contributions. The statement must be in an easily recognizable format whether the solicitation is made in written or printed form, by television or radio, or by telephone.

Failure to disclose that contributions aren't deductible could result in a penalty of $1,000 for each day on which a failure occurs. The maximum penalty for failures by any organization, during any calendar year, shall not exceed $10,000. See section 6710 for details. In cases where the failure to make the disclosure is due to intentional disregard of the law, more severe penalties apply. No penalty will be imposed if the failure is due to reasonable cause.

All organizations that qualify under section 170(c) to receive **contributions** that are deductible as charitable contributions for federal income tax purposes (such as domestic section 501(c)(3) organizations other than organizations that test for public safety) should answer "No" on line 6a.

**Line 7.** Line 7 is directed only to organizations that can receive deductible charitable **contributions** under section 170(c). See Pub. 526, Charitable Contributions, for a description of such organizations. All other organizations should leave lines 7a through 7h blank and go to line 8.

*Lines 7a and 7b.* If a donor makes a payment in excess of $75 partly as a contribution and partly in consideration for goods or services provided by the organization, the organization must generally notify the donor of the value of goods and services provided.

*Example.* A donor gives a charity $100 in consideration for a concert ticket valued at $40 (a quid pro quo **contribution**). In this example, $60 would be deductible. Because the donor's

payment exceeds $75, the organization must furnish a disclosure statement even though the taxpayer's deductible amount doesn't exceed $75. Separate payments of $75 or less made at different times of the year for separate fundraising events won't be aggregated for purposes of the $75 threshold.

 *See section 6113 and Notice 88-120, 1988-2 C.B. 454.*

***Lines 7c and 7d.*** If the organization is required to file Form 8282, Donee Information Return, to report information to the IRS and to donors about dispositions of certain donated property made within 3 years after the donor contributed the property, it must answer "Yes" and indicate the number of Forms 8282 filed.

***Lines 7e and 7f.*** If, in connection with a transfer to or for the use of the organization, the organization directly or indirectly pays premiums on any personal benefit contract, or there is an understanding or expectation that any person will directly or indirectly pay such premiums, the organization must report on Form 8870, Information Return for Transfers Associated With Certain Personal Benefit Contracts, the premiums it paid, and the premiums paid by others but treated as paid by the organization. The organization must report and pay an excise tax, equal to premiums paid, on Form 4720. A personal benefit contract is generally any life insurance, annuity, or endowment contract that benefits, directly or indirectly, the transferor, a member of the transferor's family, or any other person designated by the transferor (other than an organization described in section 170(c)).

***Line 7g.*** Form 8899, Notice of Income From Donated Intellectual Property, must be filed by certain organizations that received a charitable gift of qualified intellectual property that produces net income. The organization should check "Yes" if it provided all required Forms 8899 for the year for net income produced by donated qualified intellectual property. *Qualified intellectual property* is any patent, copyright (other than certain self-created copyrights), trademark, trade name, trade secret, know-how, software (other than certain "canned" or "off-the-shelf" software or self-created software), or similar property, or applications or registrations of such property. If the organization didn't receive a contribution of qualified intellectual property, leave line 7g blank.

***Line 7h.*** A donor of (1) a motor vehicle for use on public roads, (2) a boat, or (3) an airplane can't claim a charitable **contribution** deduction in excess of $500 unless the donee organization provides the donor with a Form 1098-C, Contributions of Motor Vehicles, Boats, and Airplanes, for the donation (or a written acknowledgment with the same information). See the Instructions for Form 1098-C for more information. If the organization didn't receive a contribution of a car, boat, airplane, or other vehicle, leave line 7h blank.

**Line 8.** A **sponsoring organization** of a **donor advised fund** must answer "Yes" if any one of its donor advised funds had excess business holdings at any time during the organization's **tax year**. All other organizations should leave this line blank and go to line 9. If "Yes," see the instructions for Schedule C of Form 4720 to determine whether the organization is subject to the excess business holdings tax under section 4943 and is required to file Form 4720.

For purposes of the excise tax on excess business holdings under section 4943, a donor advised fund is treated as a **private foundation**.

**Line 9.** Line 9 is required to be completed by **sponsoring organizations** maintaining a **donor advised fund**. All other organizations can leave this line blank and go to line 10.

***Line 9a.*** Answer "Yes" if the organization made any taxable distributions under section 4966 during the organization's **tax**

**year**. If "Yes," complete and file Form 4720, Schedule K, to calculate and pay the tax.

Under section 4966, a taxable distribution includes a distribution from a **donor advised fund** to an individual. A taxable distribution also includes a distribution from a donor advised fund to an estate, partnership, association, company, or corporation unless:
- The distribution is for a charitable purpose (for example, a purpose described in section 170(c)(2)(B)), and
- The organization exercises expenditure responsibility for the distribution.

The above doesn't apply to distributions to any organization described in section 170(b)(1)(A) (other than a disqualified **supporting organization**, defined in section 4966(d)(4)), to the sponsoring organization of such donor advised fund, or to any other donor advised fund.

***Line 9b.*** Answer "Yes" if the organization made a distribution from a **donor advised fund** to a donor, **donor advisor**, or related person during the organization's **tax year**. For purposes of this question, a *related person* is any **family member** of the donor or donor advisor and any **35% controlled entity** (as defined in section 4958(f)) of the donor or donor advisor. If "Yes," complete and file Form 4720, Schedule L (Form 990).

 ***If an organization makes a distribution from a donor advised fund resulting from the advice of a donor, donor advisor, family member, or 35% controlled entity of any of these persons, which distribution directly or indirectly provides a more than incidental benefit to one of such persons, section 4967 imposes a tax on (1) the person upon whose advice the distribution was made, (2) the beneficiary of the distribution, and (3) the fund manager for knowingly agreeing to make the distribution. The persons liable for the section 4967 tax must file Form 4720 to pay the tax. No section 4967 tax will be imposed on a distribution if a tax has been imposed for the distribution under section 4958.***

***If an organization makes a distribution from a donor advised fund to a donor, donor advisor, family member, or 35% controlled entity of these persons, then the transaction might be a section 4958 transaction. Such transactions include any grant, loan, compensation, or other similar payment to these persons, as well as any other payment resulting in excess benefit.***

**Line 10.** Answer lines 10a and 10b only if the organization is exempt under section 501(c)(7).

 *A section 501(c)(7) organization isn't exempt from income tax if any written policy statement, including the governing instrument and bylaws, allows discrimination on the basis of race, color, or religion.*

However, section 501(i) allows social clubs to retain their exemption under section 501(c)(7) even though their membership is limited (in writing) to members of a particular religion if the social club:

1. Is an auxiliary of a fraternal beneficiary society exempt under section 501(c)(8); and

2. Limits its membership to the members of a particular religion, or the membership limitation is:

a. A good-faith attempt to further the teachings or principles of that religion, and

b. Not intended to exclude individuals of a particular race or color.

***Line 10a.*** Enter the amount of initiation fees, capital contributions, and unusual amounts of income included in Part VIII. *Statement of Revenue*, line 12, *Total revenue*, but not

included in the definition of **gross receipts** for section 501(c)(7) exemption purposes as discussed in *Appendix C*. However, if the organization is a college fraternity or sorority that charges membership initiation fees but not annual dues, don't include such initiation fees.

*Line 10b.* Enter the amount of **gross receipts** included in Part VIII. *Statement of Revenue*, line 12, *Total Revenue*, derived from the general public for use of the organization's facilities, that is, from persons other than members or their spouses, dependents, or guests.

 *Include the amount entered on line 10b of Form 990 on the club's Form 990-T if required to be filed. Investment income earned by a section 501(c)(7) organization isn't tax-exempt income unless set aside for the following purposes: religious, charitable, scientific, literary, educational, or prevention of cruelty to children or animals.*

*If the combined amount of an organization's gross investment income, and other gross income from unrelated trades or businesses, is $1,000 or more for the tax year, the organization must report the investment income, and other unrelated business income, on Form 990-T.*

**Line 11.** Answer lines 11a and 11b only if the organization is exempt under section 501(c)(12).

One of the requirements that an organization must meet to qualify under section 501(c)(12) is that at least 85% of its gross income consists of amounts collected from members for the sole purpose of meeting losses and expenses. For purposes of section 501(c)(12), the term "gross income" means **gross receipts** without reduction for any cost of goods sold.

Member income for purposes of this 85% Member Income Test is income derived directly from the members to pay for services that form the basis for tax exemption under section 501(c)(12), and includes payments for purchases of water, electricity, and telephone service. Member income doesn't include interest income, gains from asset or security sales, or dividends from another cooperative (unless that cooperative is also a member).

Members are those individuals or entities that have the right to elect the governing board of the organization, are involved in the operations of the organization, and receive a share of its excess operating revenues.

When calculating the member income percentage to determine whether an organization meets the 85% Member Income Test, the organization may exclude specific sources of income from both the numerator and the denominator of the fraction. For example, if an organization is a corporation and it receives an amount that qualifies as a contribution to capital under section 118, then that amount isn't included in either the numerator or the denominator because it isn't considered to be income for tax purposes. However, the payment must meet the following conditions (see Rev. Rul. 93-16, 1993-1 C.B. 26) to qualify as a contribution to capital.
• It must become a permanent part of the organization's working capital.
• It must not be compensation for specific quantifiable services.
• It must be bargained for.
• It must benefit the organization commensurately with its value.
• It must ordinarily be used in or contribute to the production of additional income.

Gross income for mutual or cooperative electric companies is figured by excluding any income received or accrued from the following.

1. Qualified pole rentals.

2. Any provision or sale of electric energy transmission services or ancillary services if the services are provided on a nondiscriminatory, open-access basis under an open-access

transmission tariff; approved or accepted by the Federal Energy Regulatory Commission (FERC) or under an independent transmission provider agreement approved or accepted by FERC (other than income received or accrued directly or indirectly from a member).

3. The provision or sale of electric energy distribution services or ancillary services, if the services are provided on a nondiscriminatory, open-access basis to distribute electric energy not owned by the mutual or electric cooperative company:

a. To end-users who are served by distribution facilities not owned by the company or any of its members (other than income received or accrued directly or indirectly from a member), or

b. Generated by a generation facility not owned or leased by the company or any of its members and which is directly connected to distribution facilities owned by such company or any of its members (other than income received or accrued directly or indirectly from a member).

4. From any nuclear decommissioning transaction.

5. From any asset exchange or conversion transaction.

For a mutual or cooperative telephone company, *gross income* doesn't include amounts received or accrued either from another telephone company for completing long distance calls to or from or between the telephone company's members, from qualified pole rentals, from the sale of display listings in a directory furnished to the telephone company's members, or from prepayment of a loan under section 306A, section 306B, or section 311 of the Rural Electrification Act of 1936 (as in effect on January 1, 1987).

 *If the calculated member income percentage for a section 501(c)(12) organization is less than 85% for the tax year, then the organization fails to qualify for tax-exempt status for that year, and it must file Form 1120, U.S. Corporation Income Tax Return, in lieu of Form 990 or 990-EZ for the year. However, failing the 85% Member Income Test in one year doesn't cause permanent loss of tax-exempt status under section 501(c)(12). So long as the organization's member income percentage is equal to or greater than 85% in any subsequent tax year, the organization may file Form 990 or 990-EZ for that year, even if Form 1120 was filed in a prior year.*

**Line 12.** All organizations that aren't section 4947(a)(1) trusts are to leave line 12 blank.

If a section 4947(a)(1) **nonexempt charitable trust** has no taxable income under subtitle A, its filing of Form 990 can be used to meet its income tax return filing requirement under section 6012. Such a trust must, if it answers "Yes" on line 12a, report its tax-exempt interest received or accrued (if reporting under the accrual method) during the **tax year** on line 12b.

Section 4947(a)(1) trusts must complete all sections of the Form 990 and schedules that section 501(c)(3) organizations must complete. All references to a section 501(c)(3) organization on the Form 990, schedules, and instructions shall include a section 4947(a)(1) trust (for instance, such a trust must complete Schedule A (Form 990), unless expressly excepted).

**Line 13.** Answer lines 13a, 13b, and 13c only if the organization has received a loan or grant under the Department of Health and Human Services CO-OP program.

*Line 13a.* If the organization is licensed to issue qualified health plans in more than one state, check "Yes." If the organization is licensed to issue qualified health plans in only one state, check "No." In either case, report on Schedule O (Form 990) each state in which the organization is licensed to issue qualified health plans, the dollar amount of reserves each state requires the organization to maintain, and the dollar

amount of reserves the organization maintains and reports to each state.

**Line 13b.** Report the highest dollar amount of reserves the organization is required to maintain by any of the states in which the organization is licensed to issue qualified health plans.

**Line 13c.** Report the highest dollar amount of reserves the organization maintains on hand and reports to a state in which the organization is licensed to issue qualified health plans.

**Line 14a.** Answer "Yes" on line 14a if the organization received any payments during the year for indoor tanning services. "Indoor tanning services" are services employing any electronic product designed to incorporate one or more ultraviolet lamps and intended for the irradiation of an individual by ultraviolet radiation, with wavelengths in air between 200 and 400 nanometers, to induce skin tanning.

**Line 14b.** If an organization received a payment for services for indoor tanning services during the year, it must collect from the recipient of the services a tax equal to 10% of the amount paid for such service, whether paid by insurance or otherwise, and remit such tax quarterly to the IRS by filing Form 720, Quarterly Federal Excise Tax Return. If the organization filed Form 720 during the year, it should check "Yes" on line 14b. If it answers "No" on line 14b, it should explain on Schedule O (Form 990) why it didn't file Form 720.

**Line 15.** See the instructions for Form 4720, Schedule N, to determine if you paid to any covered employee more than $1 million in remuneration or paid an excess parachute payment during the year. Remuneration paid to a covered employee includes any remuneration paid by a related organization.

**Line 16.** Line 16 applies to private colleges and universities subject to the excise tax on net investment income under section 4968. All other organizations, including state colleges and universities described in the first sentence of section 511(a)(2)(B), are not subject to this tax, and therefore check the "No" box on line 16, and go to Part VI. A private college or university will be subject to the excise tax on net investment income under section 4968 only if four threshold tests are met.

1. The organization must be an eligible educational institution as defined in section 25A(f)(2). Section 25A(f)(2) defines "eligible educational institution" as an institution that is described in section 481 of the Higher Education Act of 1965 (20 USC 1088), as in effect on August 5, 1997, and is eligible to participate in a program under title IV of such Act (20 USCS sections 1070 et seq.).

2. The organization must have had at least 500 tuition-paying students, based upon a daily average student count, during the preceding tax year.

3. More than 50% of those students must have been located in the United States.

4. The aggregate **FMV**, at the end of the preceding tax year, of the assets not used directly in carrying out the organization's exempt purpose, held by the organization and related organizations, must be at least $500,000 per student.

Use the worksheet below to determine whether the organization meets the last three threshold tests above. Save this worksheet with the organization's records.

## Threshold Tests for Section 4968

| | | |
|---|---|---|
| 1. Enter the daily average number of FTE tuition-paying students in all locations. If fewer than 500, check "No" on line 16. If 500 or more, go to line 2. | | |
| 2. Enter the daily average number of FTE tuition-paying students in the United States. | | |
| 3. Divide line 2 by line 1. If 50% or less, check "No" on line 16. If greater than 50%, go to line 4. | | |
| 4. Enter the **FMV** of assets held by the organization but not used directly in carrying out the organization's exempt purpose. | $ | |
| 5. Enter the **FMV** of assets held by one or more related organizations. | $ | |
| 6. Total. Add lines 4 and 5. | | $ |
| 7. Divide line 6 by the daily average number of FTE students. If less than $500,000, check "No" on line 16. If $500,000 or more, check "Yes" on line 16. | | $ |

**Worksheet line 1.** To calculate the number of tuition-paying students during the preceding tax year (including for purposes of determining the number of students at a particular location), enter the daily average number of full-time equivalent (FTE) tuition-paying students attending the institution, taking part-time tuition-paying students into account on a full-time student equivalent basis.

If worksheet line 1 is fewer than 500, the organization is not subject to the section 4968 excise tax on net investment income. The organization should answer "No" on line 16. If worksheet line 1 is 500 or more, continue to line 2.

**Worksheet line 2.** Enter the number of FTE tuition-paying students included on line 1 who were located in the United States during the preceding tax year and enter it on line 2.

**Worksheet line 3.** Divide line 2 by line 1. If 50% or less, the organization is not subject to the section 4968 excise tax and the organization should answer "No" on line 16. If greater than 50%, continue to line 4.

**Worksheet line 4.** Calculate the **FMV** of the organization's assets not used directly in carrying out the organization's exempt purpose as of the end of the preceding tax year. To determine which assets are used directly in carrying out the organization's exempt purpose, under these instructions, follow the principles

of section 4942(e)(1)(A) and Regulations section 53.4942(a)-2(c)(3). To determine the FMV of the assets, use any reasonable method as long as such method is consistently used. Under these instructions, the principles of Regulations section 53.4942(a)-2(c)(4) will be considered to provide a reasonable method.

 *Assets held for the production of income or for investment aren't considered to be used directly for charitable functions even though the income from the assets is used for charitable functions. It is a factual question whether an asset is held for the production of income or for investment rather than used directly by the organization for charitable purposes. For example, an office building used to provide offices for employees engaged in managing endowment funds for the organization isn't considered an asset used for charitable purposes.*

**Worksheet line 5.** Calculate the **FMV** of the assets of related organizations (as defined below) using the FMV of assets as of the end of the preceding tax year that ends with or within the preceding tax year of the organization.

Section 4968 defines "related organization" to include only:
• Organizations that control or are controlled by the educational institution,

- Organizations that are controlled by one or more of the same persons who control the educational institution,
- Supported organizations (as defined in section 509(f)(3)), and
- Supporting organizations described in section 509(a)(3) that support the educational institution during the tax year.

When calculating the **FMV** of such assets of a related organization, **exclude** (1) assets of any related organization to the extent that such assets are taken into account with respect to another educational institution; and (2) unless the related organization is controlled by the educational institution, or unless the related organization is a supporting organization of the educational institution, omit assets that are not intended, or are not available, for the use or benefit of the educational institution.

**Worksheet line 6.** Add lines 4 and 5.

**Worksheet line 7.** Divide line 6 by the daily average number of FTE students.

If line 7 is less than $500,000, the organization is not subject to the section 4968 excise tax on net investment income and the organization should answer "No" on line 16. If line 7 is $500,000 or more, the organization is subject to the section 4968 excise tax on net investment income and the organization should answer "Yes" on line 16.

**Line 17.** Did the trust, or any disqualified or other person engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? See the Instructions for Form 6069. If "Yes," complete Form 6069.

# Part VI. Governance, Management, and Disclosure

Check the box in the heading of Part VI if Schedule O (Form 990) contains any information pertaining to this part. All organizations must complete Part VI. Use Schedule O (Form 990) to provide required supplemental information as described in this part, and to provide any additional information that the organization considers relevant to this part.

Part VI requests information regarding an organization's **governing body** and management, governance policies, and disclosure practices. Although federal tax law generally doesn't mandate particular management structures, operational policies, or administrative practices, every organization is required to answer each question in Part VI. For example, all organizations must answer lines 11a and 11b, which ask about the organization's process, if any, it uses to review Form 990, even though the governing body isn't required by federal tax law to review Form 990.

Even though the information on policies and procedures requested in Section B generally isn't required under the Code, the IRS considers such policies and procedures to generally improve tax compliance. The absence of appropriate policies and procedures can lead to opportunities for **excess benefit transactions**, inurement, operation for nonexempt purposes, or other activities inconsistent with exempt status. Whether a particular policy, procedure, or practice should be adopted by an organization depends on the organization's size, type, and culture. Accordingly, it is important that each organization consider the governance policies and practices that are most appropriate for that organization in assuring sound operations and compliance with tax law. For more governance information relating to charities, go to *IRS.gov/Charities* and click on *Lifecycle of an Exempt Organization.*

## Section A. Governing Body and Management

**Line 1a.** The **governing body** is the group of one or more persons authorized under state law to make governance decisions on behalf of the organization and its shareholders or members, if applicable. The governing body is, generally speaking, the board of **directors** (sometimes referred to as "board of **trustees**") of a corporation or association, or the trustee or trustees of a trust (sometimes referred to as the "board of **trustees**").

Enter the number, as of the end of the organization's tax year, of **members of the governing body** of the organization with power to vote on all matters that come before the governing body (other than when a conflict of interest disqualifies the member from voting). If members of the governing body don't all have the same voting rights, explain material differences on Schedule O (Form 990).

If the organization's governing body or governing documents delegated authority to act on its behalf to an executive committee or similar committee with broad authority to act on behalf of the governing body, and the committee held such authority at any time during the organization's **tax year**, describe on Schedule O (Form 990) the composition of the committee, whether any of the committee's members aren't on the governing body, and the scope of the committee's authority. The organization need not describe on Schedule O (Form 990) delegations of authority that are limited in scope to particular areas or matters, such as delegations to an audit committee, investment committee, or compensation committee of the governing body.

*Example.* A voluntary employees' beneficiary association (VEBA) is a trust under state law. Bank B is the sole trustee of the trust. In completing line 1a, the VEBA will report one voting member of the governing body.

**Line 1b.** Enter the number of **independent voting members of the governing body** as of the end of the organization's tax year. A member of the governing body is considered "independent" only if all four of the following circumstances applied at all times during the organization's tax year.

1.  The member wasn't compensated as an **officer** or other employee of the organization or of a **related organization** (see the Instructions for Schedule R (Form 990)) except as provided in the religious exception discussed below. Nor was the member compensated by an unrelated organization or individual for services provided to the filing organization or to a related organization, if such compensation is required to be reported in Part VII, Section A.

2.  The member didn't receive total **compensation** exceeding $10,000 during the organization's tax year (including a short year, regardless of whether such compensation is reported in Part VII) from the organization and related organizations as an **independent contractor**, other than **reasonable compensation** for services provided in the capacity as a member of the governing body. For example, a person who receives reasonable expense reimbursements and reasonable compensation as a director of the organization doesn't cease to be independent merely because she or he also receives payments of $7,500 from the organization for other arrangements.

3.  Neither the member, nor any **family member** of the member, was involved in a transaction with the organization (whether directly or indirectly through affiliation with another organization) that is required to be reported on Schedule L (Form 990) for the organization's tax year.

4.  Neither the member, nor any family member of the member, was involved in a transaction with a taxable or tax-exempt related organization (whether directly or indirectly through affiliation with another organization) of a type and amount that would be reportable on Schedule L (Form 990) if required to be filed by the related organization.

**Note.** The independence standard for purposes of Part VI isn't the same as the "absence of conflict of interest" standard for

purposes of the rebuttable presumption under Regulations section 53.4958-6, which focuses on conflicts with respect to a particular transaction.

A member of the governing body isn't considered to lack independence merely because of the following circumstances.

1. The member is a donor to the organization, regardless of the amount of the contribution.

2. Religious exception: The member has taken a bona fide vow of poverty and either (a) receives **compensation** as an agent of a **religious order** or a section 501(d) religious or apostolic organization, but only under circumstances in which the member doesn't receive taxable income (see Rev. Rul. 77-290, 1977-2 C.B. 26; and Rev. Rul. 80-332, 1980-2 C.B. 34); or (b) belongs to a religious order that receives sponsorship or payments from the organization or a related organization that don't constitute taxable income to the member.

3. The member receives financial benefits from the organization solely in the capacity of being a member of the charitable or other class served by the organization in the exercise of its exempt function, such as being a member of a section 501(c)(6) organization, so long as the financial benefits comply with the organization's terms of membership.

*Example 1.* B is a voting member of the organization's board of directors. B is also a partner with a profits and capital interest greater than 35% in a law firm, C, that charged $120,000 to the organization for legal services in a court case. The transaction between C and the organization must be reported on Schedule L (Form 990) because it is a transaction between the organization and an entity of which B is a more-than-35% owner, and because the payment to C from the organization exceeded $100,000 (see the instructions for Schedule L (Form 990), Part IV, regarding both factors). Accordingly, B isn't an independent member of the governing body because the $120,000 payment must be reported on Schedule L (Form 990) as an indirect business transaction with B. If B were an associate attorney (an employee) rather than a partner with a greater-than-35% interest, and not an officer, director, trustee, or owner of the law firm, the transaction wouldn't affect B's status as an independent member of the organization's governing body.

*Example 2.* D is a voting member of both the organization's governing body and the governing body of C, a related organization. D's child, E, received $40,000 in taxable compensation as a part-time employee of C. D isn't an independent member of the governing body, because E received compensation from C, a related organization to D, and the compensation was of a type (compensation to a family member of a member of C's governing body) and amount (over $10,000) that would be reportable on Schedule L (Form 990) if the related organization, C, were required to file Schedule L (Form 990).

*Example 3.* C was Board Chair of X school during the tax year. X's bylaws designate the following as officer positions: Board Chair, Secretary, and Treasurer. C set the agenda for board of directors meetings, officiated board meetings, coordinated development of board policy and procedure, was an ex-officio member of all committees of the board, conducted weekly staff meetings, and performed teacher and staff evaluations. X compensated C during the tax year for C's services. This compensation was attributable to C's board and committee activities, and to C's non-director activities involving staff meetings and evaluations. Because X compensated C for services as an officer/employee, C isn't an independent member of the governing body. See Rev. Rul. 68-597 and Rev. Rul. 57-246 for a description of the distinction between director services and officer services.

*Example 4.* The facts are the same as in *Example 3*, except that the Board Chair position wasn't designated as an officer

position under X's bylaws, board resolutions, or state law. Nevertheless, because X compensated C for non-director activities involving staff meetings and evaluations during the tax year, C is deemed to have received compensation as an employee—not as a governing body member—for those activities. Therefore, C isn't an independent member of the governing body.

*Example 5.* The facts are the same as in *Example 3*, except that (1) C conducted only director and committee activities during the tax year; (2) C didn't conduct staff meetings and evaluations; and (3) X compensated C a reasonable amount for C's Board Chair services during the tax year, but didn't provide any other compensation to C in any other capacity. C's independence as a Board member isn't compromised by receiving compensation from X as a Board member (and not as an officer or employee).

Also see *Examples 2* and *3* in the instructions for Part VII, Section A, line 5, later.

*Reasonable effort.* The organization need not engage in more than a **reasonable effort** to obtain the necessary information to determine the number of **independent voting members of its governing body** and can rely on information provided by such members. For instance, the organization can rely on information it obtains in response to a questionnaire sent annually to each member of the governing body that includes the member's name and title, blank lines for the member's signature and signature date, and the pertinent instructions and definitions for line 1b, to determine whether the member is or isn't independent.

**Line 2.** Answer "Yes" if any of the organization's current **officers**, **directors**, **trustees**, or **key employees**, as reported in Part VII, Section A, had a **family relationship** or business relationship with another of the organization's current officers, directors, trustees, or key employees, as reported in Part VII, Section A, at any time during the organization's **tax year**. For each family and business relationship, identify the persons and describe their relationship on Schedule O (Form 990). It is sufficient to enter "family relationship" or "business relationship" without greater detail.

*Business relationship.* Business relationships between two persons include any of the following.

1. One person is employed by the other in a sole proprietorship or by an organization with which the other is associated as a **trustee**, **director**, **officer**, or greater-than-35% owner, even if that organization is tax exempt. However, don't report a person's employment by the filing organization as a business relationship.

2. One person is transacting business with the other (other than in the ordinary course of either party's business on the same terms as are generally offered to the public), directly or indirectly, in one or more contracts of sale, lease, license, loan, performance of services, or other transaction involving transfers of cash or property valued in excess of $10,000 in the aggregate during the organization's tax year. *Indirect transactions* are transactions with an organization with which the one person is associated as a trustee, director, officer, or greater-than-35% owner. Such transactions don't include charitable contributions to tax-exempt organizations.

3. The two persons are each a director, trustee, officer, or greater-than-10% owner in the same business or investment entity (but not in the same tax-exempt organization).

Ownership is measured by stock ownership (either voting power or value, whichever is greater) of a corporation, profits or capital interest in a partnership or an LLC(whichever is greater), membership interest in a nonprofit organization, or beneficial interest in a trust. Ownership includes indirect ownership (for example, ownership in an entity that has ownership in the entity

in question); there may be ownership through multiple tiers of entities.

***Privileged relationship exception.*** For purposes of line 2, a "business relationship" doesn't include a relationship between an attorney and client, a medical professional (including psychologist) and patient, or a priest/clergy and penitent/communicant.

***Example 1.*** B is an officer of the organization, and C is a member of the organization's governing body. B is C's sister's spouse. The organization must report that B and C have a family relationship.

***Example 2.*** D and E are officers of the organization. D is also a partner in an accounting firm with 300 partners (with a $1/300$ interest in the firm's profits and capital) but isn't an officer, director, or trustee of the accounting firm. D's accounting firm provides services to E in the ordinary course of the accounting firm's business, on terms generally offered to the public, and receives $100,000 in fees during the year. The relationship between D and E isn't a reportable business relationship, either because (1) it is in the ordinary course of business on terms generally offered to the public, or (2) D doesn't hold a greater-than-35% interest in the accounting firm's profits or capital.

***Example 3.*** F and G are trustees of the organization. F is the owner and CEO of an automobile dealership. G purchased a $45,000 car from the dealership during the organization's tax year in the ordinary course of the dealership's business, on terms generally offered to the public. The relationship between F and G isn't a reportable business relationship because the transaction was in the ordinary course of business on terms generally offered to the public.

***Example 4.*** H and J are members of the organization's board of directors. Both are CEOs of publicly traded corporations and serve on each other's boards. The relationship between H and J is a reportable business relationship because each is a director or officer in the same business entity.

***Example 5.*** K is an officer of the organization, and L is on its board of directors. L is a greater-than-35% partner of a law firm that charged $60,000 during the organization's tax year for legal services provided to K that were worth $600,000 at the law firm's ordinary rates. Thus, the ordinary course of business exception doesn't apply. However, the relationship between K and L isn't a reportable business relationship because of the privileged relationship of attorney and client.

***Reasonable effort.*** The organization isn't required to provide information about a family or business relationship between two **officers**, **directors**, **trustees**, or **key employees** if it is unable to secure the information after making a **reasonable effort** to obtain it. An example of a reasonable effort would be for the organization to distribute a questionnaire annually to each such person that includes the name and title of each person reporting information, blank lines for those persons' signatures and signature dates, and the pertinent instructions and definitions for line 2.

**Line 3.** Answer "Yes" if, at any time during the organization's tax year, the organization used a management company or other person (other than persons acting in their capacities as **officers, directors, trustees,** or **key employees**) to perform any management duties customarily performed by or under the direct supervision of **officers**, **directors**, **trustees**, or **key employees**. Such management duties include, but aren't limited to, hiring, firing, and supervising personnel; planning or executing budgets or financial operations; or supervising exempt operations or unrelated trades or businesses of the organization. Management duties don't include administrative services (such as payroll processing) that don't involve significant managerial decision making. Management duties also don't include

investment management unless the filing organization conducts investment management services for others.

If "Yes," on Schedule O (Form 990), list the name(s) of the management company or companies or other person(s) performing management duties; describe the services they provided to the organization; list any of the organization's current or former officers, directors, trustees, key employees, and **highest compensated employees** listed in Part VII, Section A, who were compensated by the management company or companies or other person(s) during the calendar year ending with or within the organization's tax year; and list the amounts of reportable and other compensation they received from the management company or companies or other person(s) for services provided to the filing organization and related organizations during that year.

**Line 4.** The organization must report significant changes to its organizing or enabling document by which it was created (articles of incorporation, association, or organization; trust instrument; constitution; or similar document), and to its rules governing its affairs commonly known as bylaws (or regulations, operating agreement, or similar document). Report significant changes that weren't reported on any prior Form 990, and that were made before the end of the **tax year**. Don't report changes to policies described or established outside of the organizing or enabling document and bylaws (or similar documents), such as adoption of, or change to, a policy adopted by resolution of the **governing body** that doesn't entail a change to the organizing document or bylaws.

Examples of significant changes to the organizing or enabling document or bylaws include changes to:

- The organization's exempt purposes or mission;
- The organization's name (also see the instructions for *Specific Instructions, Item B*, earlier);
- The number, composition, qualifications, authority, or duties of the governing body's voting members;
- The number, composition, qualifications, authority, or duties of the organization's **officers** or **key employees**;
- The role of the stockholders or membership in governance;
- The distribution of assets upon dissolution;
- The provisions to amend the organizing or enabling document or bylaws;
- The quorum, voting rights, or voting approval requirements of the governing body members or the organization's stockholders or membership;
- The policies or procedures contained within the organizing documents or bylaws regarding **compensation** of officers, directors, trustees, or key employees, conflicts of interest, whistleblowers, or document retention and destruction; and
- The composition or procedures contained within the organizing document or bylaws of an audit committee.

***Example.*** Organization X has a written conflicts of interest policy that isn't contained within the organizing document or bylaws. The policy is changed by board resolution. The policy change doesn't need to be reported on line 4.

Examples of insignificant changes made to organizing or enabling documents or bylaws that aren't required to be reported here include changes to the organization's registered agent with the state and to the required or permitted number or frequency of governing body or member meetings.

Describe significant changes on Schedule O (Form 990), but don't attach a copy of the amendments or amended document to Form 990 (or recite the entire amended document verbatim), unless such amended documents reflect a change in the organization's name. See *Specific Instructions, Item B*, earlier, regarding attachments required in the event of a change in the organization's name.

 *An organization must report significant changes to its organizational documents on Form 990, Part VI, rather than in a letter to EO Determinations. EO Determinations no longer issues letters confirming the tax-exempt status of organizations that report significant changes to their organizational documents, though it will, on request, issue an affirmation letter confirming an organization's name change. The IRS will no longer require a new exemption application from a domestic section 501(c) organization that undergoes certain changes of form or place of organization described in Rev. Proc. 2018-15, 2018-9 I.R.B. 379.*

**Line 5.** Answer "Yes" if the organization became aware during the organization's **tax year** of a significant diversion of its assets, whether or not the diversion occurred during the year. If "Yes," explain the nature of the diversion, dollar amounts and/or other property involved, corrective actions taken to address the matter, and pertinent circumstances on Schedule O (Form 990), although the person or persons who diverted the assets shouldn't be identified by name.

A *diversion of assets* includes any unauthorized conversion or use of the organization's assets other than for the organization's authorized purposes, including but not limited to embezzlement or theft. Report diversions by the organization's **officers**, **directors**, **trustees**, **employees**, **volunteers**, **independent contractors**, grantees (diverting grant funds), or any other person, even if not associated with the organization other than by the diversion. A diversion of assets doesn't include an authorized transfer of assets for **FMV** consideration, such as to a **joint venture** or for-profit subsidiary in exchange for an interest in the joint venture or subsidiary. For this purpose, a diversion is considered significant if the gross value of all diversions (not taking into account restitution, insurance, or similar recoveries) discovered during the organization's tax year exceeds the lesser of (1) 5% of the organization's gross receipts for its tax year, (2) 5% of the organization's total assets as of the end of its tax year, or (3) $250,000.

**Note.** A diversion of assets can in some cases be inurement of the organization's net earnings. In the case of section 501(c)(3), 501(c)(4), and 501(c)(29) organizations, it can also be an **excess benefit transaction** taxable under section 4958 and reportable on Schedule L (Form 990).

**Line 6.** Answer "Yes" if the organization is organized as a stock corporation, a joint-stock company, a partnership, a **joint venture**, or an LLC. Also answer "Yes" if the organization is organized as a non-stock, nonprofit, or not-for-profit corporation or association with members. For purposes of Form 990, Part VI, *member* means (without regard to what a person, including a corporation or other legal entity, is called in the governing documents) any person who, pursuant to a provision of the organization's governing documents or applicable state law, has the right to participate in the organization's governance or to receive distributions of income or assets from the organization. Members don't include governing body members. For purposes of Part VI, a membership organization includes members with the following kinds of rights.

1.  The members elect the members of the **governing body** (but not if the persons on the governing body are the organization's only members) or their delegates.

2.  The members approve significant decisions of the governing body.

3.  The members can receive a share of the organization's profits or excess dues or a share of the organization's net assets upon the organization's dissolution.

Describe on Schedule O (Form 990) the classes of members or stockholders with the rights described above.

**Line 7a.** Answer "Yes" on line 7a if at any time during the organization's tax year there were one or more persons (other than the organization's **governing body** itself, acting in such capacity) that had the right to elect or appoint one or more members of the organization's governing body, whether periodically, or as vacancies arise, or otherwise. If "Yes," describe on Schedule O (Form 990) the class or classes of such persons and the nature of their rights.

**Line 7b.** Answer "Yes" on line 7b if at any time during the organization's tax year any governance decisions of the organization were reserved to (or subject to approval by) members, stockholders, or persons other than the **governing body**, whether or not any such governance decisions were made during the tax year, such as approval of the governing body's election or removal of members of the governing body, or approval of the governing body's decision to dissolve the organization. If "Yes," describe on Schedule O (Form 990) the class or classes of such persons, the decisions that require their approval, and the nature of their voting rights.

**Line 8.** Answer "Yes" on lines 8a and 8b if the organization contemporaneously documented by any means permitted by state law every meeting held and written action taken during the organization's tax year by its **governing body** and committees with authority to act on behalf of the governing body (which ordinarily don't include advisory boards). Documentation permitted by state law can include approved minutes, email, or similar writings that explain the action taken, when it was taken, and who made the decision. For this purpose, *contemporaneous* means by the later of (1) the next meeting of the governing body or committee (such as approving the minutes of the prior meeting), or (2) 60 days after the date of the meeting or written action. If the answer to either line 8a or 8b is "No," explain on Schedule O (Form 990) the organization's practices or policies, if any, regarding documentation of meetings and written actions of its governing body and committees with authority to act on its behalf. If the organization had no committees, answer "No" to line 8b.

**Line 9.** The IRS needs a current mailing address to contact the organization's **officers, directors, trustees,** or **key employees.** The organization can use its official mailing address stated on the first page of Form 990 as the mailing address for such persons. Otherwise, enter on Schedule O (Form 990) the mailing addresses for such persons who are to be contacted at a different address. Such information will be available to the public.

## Section B. Policies

Answer "Yes" to any question in this section that asks whether the organization had a particular policy or practice only if the organization's governing body (or a committee of the governing body, if the governing body delegated authority to that committee to adopt the policy) adopted the policy by the end of its **tax year**, and if the policy applied to the organization as a whole. If the policy applied only on a division-wide or department-wide level, answer "No." The organization may explain the scope of such policy on Schedule O (Form 990).

**Line 10a.** Answer "Yes" if the organization had during its tax year any local chapters, local branches, local lodges, or other similar local units or affiliates over which the organization had the legal authority to exercise direct or indirect supervision and control (whether or not in a **group exemption**) and local units that aren't separate legal entities under state law over which the organization had such authority. An affiliate or unit is considered "local" for this purpose if it is responsible for a smaller geographical area than the filing organization is responsible for.

Thus, a regional organization would be considered local for a national organization.

**Example 1.** X is a national organization dedicated to the reform of K. X has affiliates in 15 states that conduct activities to carry out the purposes of X at the state level. X has the authority to approve the annual budget of each affiliate. X must answer "Yes" on line 10a.

**Example 2.** Y is a section 170(b)(1)(A)(iii) hospital located in M City. Y appoints a majority of the board of directors of Z, a section 509(a)(3) supporting organization that invests funds and makes grants for the benefit of Y. Although Y controls Z, Z isn't a local affiliate of Y that would require Y to answer "Yes" on line 10a.

**Line 10b.** Written policies and procedures governing the activities of local chapters, branches, and affiliates to ensure their operations are consistent with the organization's tax-exempt purposes are documents used by the organization and its local units to address the policies, practices, and activities of the local unit. Such policies and procedures can include policies and procedures similar to those described in lines 11–16 of this section, whether separate or included as required provisions in the chapter's articles of organization or bylaws, a manual provided to chapters, a constitution, or similar documents. If "No," explain on Schedule O (Form 990) how the organization ensures that the local unit's activities are consistent with the organization's tax-exempt purposes.

**Note.** The **central organization** (parent organization) named in a **group exemption** letter is required to have general supervision or control over its **subordinate organizations** as a condition of the group exemption.

**Line 11a.** Answer "Yes" only if a complete copy of the organization's final Form 990 (including all required schedules), as ultimately filed with the IRS, was provided to each person who was a **voting member of the governing body** at the time the Form 990 was provided, whether in paper or electronic form, before its filing with the IRS. The organization can answer "Yes" if it emailed all of its governing body members a link to a password-protected website on which the entire Form 990 can be viewed, and noted in the email that the Form 990 is available for review on that site. However, answer "No" if the organization merely informed its governing body members that a copy of the Form 990 is available upon request. Answer "No" if the organization redacted or removed any information from the copy of its final Form 990 that it provided to its governing body members before filing the form. For example, answer "No" if the organization, at the request of a donor, redacted the name and address of that donor from the copy of its Schedule B (Form 990), that it provided to its governing body members. Under those circumstances, the organization may explain on Schedule O (Form 990) why it answered "No" to line 11a.

**Line 11b.** Describe on Schedule O (Form 990) the process, if any, by which any of the organization's **officers, directors, trustees,** board committee members, or management reviewed the prepared Form 990, whether before or after it was filed with the IRS, including specifics about who conducted the review, when they conducted it, and the extent of any such review. If no review was or will be conducted, enter "No review was or will be conducted."

**Example.** The return preparer emails a copy of the final version of Form 990 to each Board member before it was filed. However, no Board member undertakes any review of the form either before or after filing. Because such a copy of the final version of the form was provided to each voting member of the organization's governing body before it was filed, the organization can answer "Yes" even though no review took place. The organization must describe its Form 990 review process (or lack thereof) on Schedule O (Form 990).

**Line 12a.** Answer "Yes" if, as of the end of the organization's tax year, the organization had a written **conflict of interest policy**. A conflict of interest policy defines conflicts of interest, identifies the classes of individuals within the organization covered by the policy, facilitates disclosure of information that can help identify conflicts of interest, and specifies procedures to be followed in managing conflicts of interest. A *conflict of interest* arises when a person in a position of authority over an organization, such as an **officer**, **director**, manager, or **key employee** can benefit financially from a decision he or she could make in such capacity, including indirect benefits such as to family members or businesses with which the person is closely associated. For this purpose, a conflict of interest doesn't include questions involving a person's competing or respective duties to the organization and to another organization, such as by serving on the boards of both organizations, that don't involve a material financial interest of, or benefit to, such person.

**Example.** B is a member of the governing body of X Charity and of Y Charity, both of which are section 501(c)(3) public charities with different charitable purposes. X Charity has taken a public stand in opposition to a specific legislative proposal. At an upcoming board meeting, Y Charity will consider whether to publicly endorse the same specific legislative proposal. While B may have a conflict of interest in this decision, the conflict doesn't involve a material financial interest of B's merely as a result of Y Charity's position on the legislation.

**Line 12b.** Answer "Yes" if the organization's **officers, directors, trustees,** and **key employees** are required to disclose or update annually (or more frequently) information regarding their interests and those of their **family members** that could give rise to conflicts of interest, such as a list of family members, substantial business or investment holdings, and other transactions or affiliations with businesses and other organizations and those of family members.

**Line 12c.** If "Yes," describe on Schedule O (Form 990) the organization's practices for monitoring proposed or ongoing transactions for conflicts of interest and dealing with potential or actual conflicts, whether discovered before or after the transaction has occurred. The description should include an explanation of which persons are covered under the policy, the level at which determinations of whether a conflict exists are made, and the level at which actual conflicts are reviewed. Also explain any restrictions imposed on persons with a conflict, such as prohibiting them from participating in the **governing body**'s deliberations and decisions in the transaction.

**Lines 13 and 14.** A whistleblower policy encourages staff and volunteers to come forward with credible information on illegal practices or violations of adopted policies of the organization, specifies that the organization will protect the individual from retaliation, and identifies those staff or board members or outside parties to whom such information can be reported. A document retention and destruction policy identifies the record retention responsibilities of staff, **volunteers**, board members, and outsiders for maintaining and documenting the storage and destruction of the organization's documents and records.

 *Certain federal or state laws provide protection against whistleblower retaliation and prohibit destruction of certain documents. For instance, while the federal Sarbanes-Oxley legislation generally doesn't pertain to tax-exempt as well as other organizations for (1) retaliation against whistleblowers that report federal offenses, and (2) for destruction of records with the intent to obstruct a federal investigation. See 18 U.S.C. sections 1513(e) and 1519. Also*

note that an organization is required to keep books and records relevant to its tax exemption and its filings with the IRS. Some states provide additional protection for whistleblowers.

**Line 15.** Answer "Yes" on line 15a if, during the tax year, the organization (not a **related organization** or other third party) used a process for determining **compensation** (reported on Part II or Schedule J (Form 990), Compensation Information) of the CEO, executive director, or other person who is the **top management official**, that included all of the following elements.

• Review and approval by a **governing body** or compensation committee, provided that persons with a *conflict of interest* regarding the compensation arrangement at issue weren't involved. For purposes of this question, a member of the governing body or compensation committee has a *conflict of interest* regarding a compensation arrangement if any of the following circumstances apply.

1.   The member (or a family member of the member) is participating in or economically benefitting from the compensation arrangement.

2.   The member is in an employment relationship subject to the direction or control of any person participating in or economically benefitting from the compensation arrangement.

3.   The member receives compensation or other payments subject to approval by any person participating in or economically benefitting from the compensation arrangement.

4.   The member has a material financial interest affected by the compensation arrangement.

5.   The member approves a transaction providing economic benefits to any person participating in the compensation arrangement, who in turn has approved or will approve a transaction providing economic benefits to the member. See Regulations section 53.4958-6(c)(1)(iii).
• Use of data as to comparable compensation for similarly qualified persons in functionally comparable positions at similarly situated organizations.
• Contemporaneous documentation and recordkeeping for deliberations and decisions regarding the compensation arrangement.

Answer "Yes" on line 15b if the process for determining compensation of one or more **officers** or **key employees** other than the **top management official** included all of the elements listed above.

If the answer was "Yes" on line 15a or 15b, describe the process on Schedule O (Form 990), identify the offices or positions for which the process was used to establish compensation of the persons who served in those offices or positions, and enter the year in which this process was last undertaken for each such person.

If the organization didn't compensate its CEO, executive director, or top management official during the **tax year**, answer "No" to line 15a. If the organization didn't compensate any of its other officers or key employees during the tax year, even if such employees were compensated by a related organization, answer "No" to line 15b.

**Line 16.** Answer "Yes" on line 16a if, at any time during its tax year, the organization invested in, contributed assets to, or otherwise participated in a joint venture or similar arrangement with one or more taxable persons. For purposes of line 16, a joint venture or similar arrangement (or a "venture or arrangement") means any joint ownership or contractual arrangement through which there is an agreement to jointly undertake a specific business enterprise, investment, or exempt-purpose activity without regard to (1) whether the organization controls the venture or arrangement, (2) the legal structure of the venture or arrangement, or (3) whether the venture or arrangement is

treated as a partnership for federal income tax purposes, or as an association, or corporation for federal income tax purposes. Disregard ventures or arrangements that meet both of the following conditions.

1.   95% or more of the venture's or arrangement's income for its tax year ending with or within the organization's **tax year** is described in section 512(b)(1)–(5) (including unrelated debt-financed income).

2.   The primary purpose of the organization's contribution to, or investment or participation in, the venture or arrangement is the production of income or appreciation of property.

Answer "Yes" on line 16b if, as of the end of the organization's tax year, the organization had both:

1.   Followed a written policy or procedure that required the organization to negotiate, in its transactions and arrangements with other members of the venture or arrangement, such terms and safeguards as are adequate to ensure that the organization's exempt status is protected; and

2.   Taken steps to safeguard the organization's exempt status for the venture or arrangement.

Some examples of safeguards include the following.
• Control over the venture or arrangement sufficient to ensure that the venture furthers the exempt purpose of the organization.
• Requirements that the venture or arrangement give priority to exempt purposes over maximizing profits for the other participants.
• The venture or arrangement not engage in activities that would jeopardize the organization's exemption (such as political intervention or substantial lobbying for a section 501(c)(3) organization).
• All contracts entered into with the organization be on terms that are at arm's length or more favorable to the organization.

## Section C. Disclosure

**Line 17.** List the states with which a copy of this Form 990 is required to be filed, even if the organization hasn't yet filed Form 990 with that state. Use Schedule O (Form 990) if additional space is necessary.

 *Some states require or permit the filing of Form 990 to fulfill state exempt organization or charitable solicitation reporting requirements.*

**Line 18.** Check the box for "Own website" only if the organization posted an exact reproduction (other than for information permitted by law to be withheld from public disclosure, such as the names and addresses of contributors listed on Schedule B (Form 990)) of its Form 990, Form 990-T (for section 501(c)(3) organizations), or application for recognition of exemption (Form 1023, 1023-EZ, 1024, or 1024-A) on its website during its **tax year**. Check the box for "Another's website" only if the organization provided to another individual or organization and that other individual or organization posted on its website, an exact reproduction (other than for information permitted by law to be withheld from public disclosure, such as the names and addresses of contributors listed on Schedule B (Form 990)) of any such forms during the tax year.

If "Other" is checked, explain on Schedule O (Form 990). Also explain on Schedule O (Form 990) if the organization didn't make publicly available upon request any of Forms 1023, 1023-EZ, 1024, 1024-A, 990, or 990-T that are subject to public inspection requirements. Exempt organizations must make available for public inspection their Form 990, 1023-EZ, 1024, or 1024-A application for recognition of exemption. Applications filed before July 15, 1987, need not be made publicly available unless the organization had a copy on July 15, 1987.

Organizations that file Form 990 must make it publicly available for a period of 3 years from the date it is required to be filed (including extensions) or, if later, is actually filed. Organizations aren't required to make publicly available the names and addresses of contributors (as set forth on Schedule B (Form 990), and on Form 1023, 1023-EZ, 1024, or 1024-A). Section 501(c)(3) organizations that file Form 990-T are also required to make their Forms 990-T publicly available for the corresponding 3-year period for forms filed after August 17, 2006 (unless the form was filed solely to request a refund of telephone excise taxes). See *Appendix D* for more information on public inspection requirements.

**Line 19.** Explain on Schedule O (Form 990) whether the organization made its governing documents (for example, articles of incorporation, constitution, bylaws, trust instrument), **conflict of interest policy**, and **financial statements** (whether or not audited) available to the general public during the tax year, and if so, how it made them available to the public (for example, posting on the organization's website, posting on another website, providing copies on request, inspection at an office of the organization, etc.). If the organization didn't make any of these documents available to the public, enter "No documents available to the public."

Federal tax law doesn't require that such documents be made publicly available unless they were included on a form that is publicly available (such as Form 1023, 1023-EZ, 1024, or 1024-A).

**Line 20.** Provide the name of the person who possesses the organization's books and records, and the business address and telephone number of such person (or of the organization if the books and records are kept by such person at a personal residence). If the books and records are kept at more than one location, provide the name, business address, and telephone number of the person responsible for coordinating the maintenance of the books and records. The organization isn't required to provide the address or telephone number of a personal residence of an individual. If provided, however, such information will be available to the public.

# Part VII. Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors

Check the box in the heading of Part VII if Schedule O (Form 990) contains any information pertaining to this part.

**Overview.** Form 990, Part VII, requires the listing of the organization's current or former **officers**, **directors**, **trustees**, **key employees**, and **highest compensated employees**, and current **independent contractors**, and reporting of certain **compensation** information relating to such persons.

All organizations are required to complete Part VII, and when applicable, Schedule J (Form 990), for certain persons. Compensation must be reported for the calendar year ending with or within the organization's **tax year**. In some cases, persons are reported in Part VII or Schedule J (Form 990) only if their **reportable compensation** (as explained below) and "other compensation" (as explained below) from the organization and **related organizations** (as explained in the *Glossary* and in the Instructions for Schedule R (Form 990)) exceeds certain thresholds. In some cases, compensation from an **unrelated organization** must be reported on Form 990. See the instructions for Part VII, Section A, line 5, later. The amount of compensation reported on Form 990, Part VII, for a listed person may differ from the amount reported on Form 990, Part IX, line 5, for that person due to factors such as a different accounting period (calendar vs. **fiscal year**) or a different accounting method.

Form 990, Part VII, relies on definitions of reportable compensation and other compensation. *Reportable compensation* generally refers to compensation reported in box 1 or 5 (whichever amount is greater) of Form W-2, Wage and Tax Statement; box 1 of Form 1099-NEC; and box 6 of Form 1099-MISC. Organizations must also report other compensation in Part VII, as discussed in the instructions for Part VII, Section A, column (F), later.

Organizations must report compensation for both current and former officers, directors, trustees, key employees, and highest compensated employees. The distinction between current and former such persons is discussed below. The determination of "former" uses a 5-year lookback period.

Organizations must report compensation from themselves and from related organizations, which generally consist of parents, subsidiaries, brother/sister organizations, supporting organizations, supported organizations, sponsoring organizations of VEBAs, and contributing employers to VEBAs. See the Instructions for Schedule R (Form 990) for a fuller discussion of related organizations.

Part VII, Section A, requires reporting of officers, directors, trustees, key employees, and up to five of the organization's highest compensated employees. Compensation from related organizations must also be taken into account in determining a person's compensation and reported in Part VII, Section A, columns (E) and (F).

Section B requires reporting of the five highest compensated independent contractors. Section B doesn't require reporting of compensation from related organizations.

## Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees

**Overview.** Organizations are required to enter in Part VII, Section A, the following **officers**, **directors**, **trustees**, and **employees** of the organization whose **reportable compensation** from the organization and **related organizations** (as explained in the *Glossary* and the Instructions for Schedule R (Form 990)) exceeded the following thresholds for the tax year.

- Current officers, directors, and trustees (no minimum compensation threshold).
- Current **key employees** (over $150,000 of reportable compensation).
- Current five highest compensated employees other than officers, directors, trustees, or listed key employees (over $100,000 of reportable compensation).
- Former officers, key employees, and **highest compensated employees** (over $100,000 of reportable compensation, with special rules for former highest compensated employees).
- Former directors and trustees (over $10,000 of reportable compensation in the capacity as a former director or trustee).

Special rules apply to **disregarded entities** of which the organization is the sole member. See *Disregarded Entities*, later.

To determine which persons are current or former officers, directors, trustees, key employees, or highest compensated employees, see the instructions for Part VII, Section A, column (C), later.

**Order of reporting.** List the persons required to be included in Part VII, Section A, in order from highest to lowest compensation based on the sum of columns (D), (E), and (F) for each person. When the amount of total compensation is the same, list the persons in the following order: individual trustees or directors,

institutional trustees, officers, key employees, highest compensated employees, and former such persons.

**Fiscal year filers.** To determine which persons are listed in Part VII, Section A, the organization must use the calendar year ending with or within the organization's **fiscal year** for some (those whose **compensation** must exceed minimum thresholds in order to be reported) and the fiscal year for others. Report officers, directors, and trustees that served at any time during the fiscal year as "current" **officers**, **directors**, and **trustees**. Report the following persons based on **reportable compensation** and status for the calendar year ending within the fiscal year.

• Current **key employees** (over $150,000 of **reportable compensation** from the organization and **related organizations**).

• Current five **highest compensated employees** (over $100,000 of reportable compensation from the organization and related organizations), other than current officers, directors, trustees, and key employees.

• Former officers, key employees, and five highest compensated employees (over $100,000 of reportable compensation from the organization and related organizations, with special rules for former highest compensated employees).

• Former directors and trustees (over $10,000 of reportable compensation for services in the capacity as director or trustee of the organization, from the organization and related organizations).

Report compensation on Form 990, Part VII, for the calendar year ending within the organization's **fiscal year**, including that of current officers, directors, and trustees, even if the fiscal year is used to determine which such persons must be listed in Part VII.

**Director or trustee.** A director or trustee is a member of the organization's **governing body**, but only if the member has voting rights. A director or trustee that served at any time during the organization's **tax year** is deemed a current director or trustee. Members of advisory boards that don't exercise any governance authority over the organization aren't considered directors or trustees.

An "institutional trustee" is a trustee that isn't an individual or natural person but an organization. For instance, a bank or trust company serving as the trustee of a trust is an institutional trustee.

**Officer.** An **officer** is a person elected or appointed to manage the organization's daily operations. An officer that served at any time during the organization's **tax year** is deemed a current officer. The officers of an organization are determined by reference to its organizing document, bylaws, or resolutions of its **governing body**, or as otherwise designated consistent with state law, but, at a minimum, include those officers required by applicable state law. Officers can include a president, vice president, secretary, treasurer, and, in some cases, a Board Chair. In addition, for purposes of Form 990, including Part VII, Section A, and Schedule J (Form 990), treat as an officer the following persons, regardless of their titles.

1. *Top management official.* The person who has ultimate responsibility for implementing the decisions of the governing body or for supervising the management, administration, or operation of the organization, for example, the organization's president, CEO, or executive director.

2. *Top financial official.* The person who has ultimate responsibility for managing the organization's finances, for example, the organization's treasurer or chief financial officer.

If ultimate responsibility resides with two or more individuals (for example, co-presidents or co-treasurers), who can exercise such responsibility in concert or individually, then treat all such individuals as officers.

**Key employee.** For purposes of Form 990, a current **key employee** is an **employee** of the organization (other than an **officer**, **director**, or **trustee**) who meets all three of the following tests, applied in the following order.

1. *$150,000 Test:* Receives **reportable compensation** from the organization and **all related organizations** in excess of $150,000 for the **calendar year** ending with or within the organization's **tax year**.

2. *Responsibility Test:* At any time during the calendar year ending with or within the organization's **tax year**:

a. Has responsibilities, powers, or influence over the organization as a whole that is similar to those of officers, directors, or trustees;

b. Manages a discrete segment or activity of the organization that represents 10% or more of the activities, assets, income, or expenses of the organization, as compared to the organization as a whole; or

c. Has or shares authority to control or determine 10% or more of the organization's capital expenditures, operating budget, or compensation for **employees**.

3. *Top 20 Test:* Is one of the 20 employees other than officers, directors, and trustees who satisfy the *$150,000 Test* and *Responsibility Test* with the highest reportable compensation from the organization and **related organizations** for the calendar year ending with or within the organization's **tax year**.

If the organization has more than 20 individuals who meet the *$150,000 Test* and *Responsibility Test*, report as **key employees** only the 20 individuals who have the highest reportable compensation from the organization and related organizations. Note that any others, up to five, might be reportable as current **highest compensated employees**, with over $100,000 in reportable compensation. Use the calendar year ending with or within the organization's tax year for determining the organization's current key employees.

An individual that isn't an employee of the organization (or of a **disregarded entity** of the organization) is nonetheless treated as a key employee if she or he serves as an officer or director of a disregarded entity of the organization and otherwise meets the standards of a key employee set forth above. See *Disregarded Entities*, later, for treatment of certain employees of a disregarded entity as key employees of the organization.

If an employee is a key employee of the organization for only a portion of the year, that person's entire compensation for the calendar year ending with or within the organization's tax year, from both the filing organization and related organizations, should be reported in Part VII, Section A.

**Management companies** and similar entities that are **independent contractors** shouldn't be reported as key employees. The organization's **top management official** and **top financial official** are deemed officers rather than key employees.

In the examples set forth below, assume the individual involved is an employee that satisfies the *$150,000 Test* and *Top 20 Test* and isn't an **officer**, **director**, or **trustee**.

*Example 1.* T is a large section 501(c)(3) university. L is the dean of the law school of T, which generates more than 10% of the revenue of T, including contributions from alumni and foundations. Although L doesn't have ultimate responsibility for managing the university as a whole, L meets the *Responsibility Test* and is reportable as a key employee of T.

*Example 2.* S chairs a small academic department in the College of Arts and Sciences of the same university, T,

described above. As department chair, S supervises faculty in the department, approves the course curriculum, and oversees the operating budget for the department. The department represents less than 10% of the university's activities, assets, income, expenses, capital expenditures, operating budget, and employee compensation. Under these facts and circumstances, S doesn't meet the *Responsibility Test* and isn't a key employee of T.

**Example 3.** U is a large acute-care section 501(c)(3) hospital. U employs X as a radiologist. X gives instructions to staff for the radiology work X conducts, but X doesn't supervise other U employees, manage the radiology department, or have or share authority to control or determine 10% or more of U's capital expenditures, operating budget, or employee compensation. Under these facts and circumstances, X doesn't meet the *Responsibility Test* and isn't a key employee of U.

**Example 4.** W is a cardiologist and head of the cardiology department of the same hospital U, described above. The cardiology department is a major source of patients admitted to U and consequently represents more than 10% of U's income, as compared to U as a whole. As department head, W manages the cardiology department. Under these facts and circumstances, W meets the *Responsibility Test* and is a key employee of U.

**Five highest compensated employees.** The organization is required to enter its current five **highest compensated employees** whose **reportable compensation** combined from the organization and **related organizations** is greater than $100,000 for the calendar year ending with or within the organization's **tax year** and who aren't also current **officers**, **directors**, **trustees**, or **key employees** of the organization. Such individuals are the "current" five highest compensated employees. These can include persons who meet some but not all of the tests for key employee status. The organization isn't required to enter more than the top five such persons, ranked by amount of reportable compensation. Use the calendar year ending with or within the organization's tax year for determining the organization's current five highest compensated employees.

**Example.** X is an employee of Y University and isn't an officer, director, or trustee. X's reportable compensation for the calendar year exceeds $150,000, and X meets the *Responsibility Test*. X would qualify as a key employee of Y, except that 20 employees had higher reportable compensation and otherwise qualify as key employees. Therefore, those 20 are listed as the organization's key employees. X has the highest reportable compensation from the organization and related organizations of all employees other than the 20 key employees. X must be listed as one of the organization's five highest compensated employees.

**$10,000 exceptions for reporting compensation.** Report compensation paid or accrued by the filing organization and **related organizations**. Special rules apply for reporting **reportable compensation** and other compensation.

All reportable compensation paid by the filing organization must be reported. Reportable compensation paid by a related organization isn't required to be reported unless (1) it is $10,000 or more for the calendar year ending with or within the organization's tax year (the "$10,000-per-related-organization exception"), or (2) it is paid for past services to the filing organization in the person's capacity as a former director or trustee.

A particular item of other compensation (such as listed in the compensation table, later) paid or accrued by the filing organization isn't required to be reported unless (1) it is $10,000 or more for the calendar year ending with or within the organization's tax year (the "$10,000-per-item exception"), or (2) it is one of the five types of compensation (generally constituting

deferred compensation (including retirement plan benefits) and health benefits) that must be reported regardless of amount (see the instructions for column (F)). The same principles apply to items of other compensation paid or accrued by a related organization (applied separately to each related organization).

 *The $10,000 exceptions don't apply to reporting compensation on Schedule J (Form 990), Part II.*

**Reportable compensation.** Reportable compensation consists of:

• For **officers** and other **employees**, amounts required to be reported in box 1 or 5 of Form W-2 (whichever amount is greater) (as well as in box 1 of Form 1099-NEC, and/or in box 6 of Form 1099-MISC if the officer or employee is also compensated as an independent contractor of the filing organization or a related organization);

• For **directors** and individual **trustees**, amounts required to be reported in box 1 of Form 1099-NEC; and/or in box 6 of Form 1099-MISC for director and other independent contractor services to the organization or a related organization, plus amounts required to be reported in box 1 or 5 of Form W-2 (whichever amount is greater) if also compensated as an officer or employee of the filing organization or a related organization; and

• For **institutional trustees**, fees for services paid pursuant to a contractual agreement or statutory entitlement. While the compensation of institutional trustees must be reported on Form 990, Part VII, it need not be reported on Schedule J (Form 990).

If the organization didn't file a Form 1099-NEC or Form 1099-MISC because the amounts paid were below the threshold reporting requirement, then include and report the amount actually paid. For a full definition of **reportable compensation**, see *Glossary*.

 *Corporate **officers** are considered **employees** for purposes of Form W-2 reporting, unless they perform no services as officers, or perform only minor services and neither receive nor are entitled to receive, directly or indirectly, any **compensation**. Corporate **directors** are considered **independent contractors**, not employees, and director compensation, if any, is generally required to be reported on Form 1099-NEC. See Regulations section 31.3401(c)-1(f).*

For certain kinds of employees and for retirees, the amount in box 5 of Form W-2 can be zero or less than the amount in box 1 of Form W-2. For instance, recipients of disability pay, certain members of the clergy, and religious workers who aren't subject to social security and Medicare taxes as employees can receive compensation that isn't reported in box 5. In that case, the amount required to be reported in box 1 of Form W-2 must be reported as reportable compensation.

If an officer, director, trustee, key employee, or highest compensated employee of the organization is a foreign person who received U.S. source income during the calendar year ending with or within the organization's **tax year** from the filing organization or a **related organization**, and if such income was reported in box 2 of Form 1042-S, Foreign Person's U.S. Source Income Subject to Withholding, then treat this income as **reportable compensation** and report it in Part VII, Section A, column (D) or (E). For foreign persons for whom compensation reporting on Form W-2, Form 1099-NEC, Form 1099-MISC, or Form 1042-S isn't required, treat as reportable compensation in column (D) or (E) the total value of the compensation paid in the form of cash or property during the calendar year ending with or within the organization's tax year. Report other compensation from foreign organizations as "other compensation" in column (F).

To determine whether an individual received more than $100,000 (or $150,000) in reportable compensation in the aggregate from the filing organization (and, as discussed later, certain third parties such as common paymasters, payroll/reporting agents, and certain **unrelated organizations**, compensation from which is considered compensation from the filing organization) and **related organizations**, add the following amounts.

• The amount reported in box 1 or 5 of Form W-2 (whichever amount is greater), in box 1 of Form 1099-NEC, and/or in box 6 of Form 1099-MISC, issued to the individual by the organization.

• Amounts reported in box 1 or 5 of Form W-2 (whichever amount is greater), in box 1 of Form 1099-NEC, or in box 6 of Form 1099-MISC, issued to the individual by each related organization that reported $10,000 or more.

To determine whether an individual received solely in his or her capacity as a former trustee or director of the organization more than $10,000 in reportable compensation for the calendar year ending with or within the organization's **tax year**, in the aggregate, from the organization and all related organizations (and thus must be reported on Form 990, Part VII, and Schedule J (Form 990), Part II), add the amounts reported in box 1 of all Forms 1099-NEC, box 6 of all Forms 1099-MISC, and, if relevant, box 1 or 5 of all Forms W-2 (whichever amount is greater) issued to the individual by the organization and all related organizations for the calendar year ending with or within the organization's tax year. Report such amounts only to the extent that such amounts relate to the individual's past services as a trustee or director of the organization, and don't disregard any payments from a related organization if below $10,000, for such purpose.

**Other compensation.**  Other compensation includes **compensation** other than **reportable compensation**, including **deferred compensation** not currently reportable in box 1 or 5 of Form W-2, box 1 of Form 1099-NEC, or box 6 of Form 1099-MISC, and certain nontaxable benefits, as discussed in detail in the instructions for Schedule J (Form 990), Part II. See the instructions for other compensation reported in column (F), later, which includes a table to show where and how to report certain types of compensation in Part VII, Section A, and Schedule J (Form 990).

**Note.**  Don't report the same item of compensation in more than one column of Part VII, Section A, for the tax year.

**Disregarded entities.  Disregarded entities** (such as an LLC that is wholly owned by the organization and not treated as a separate entity for federal tax purposes) are generally treated as part of the organization rather than as **related organizations** for purposes of Form 990, including Part VII and Schedule J (Form 990). A person isn't considered an **officer** or **director** of the organization by virtue of being an officer or director of a disregarded entity, but he or she can qualify as a **key employee** or **highest compensated employee** of the organization. An officer, director, or employee of a disregarded entity is a key employee of the organization if she or he meets the *$150,000 Test* and *Top 20 Test* for the filing organization as a whole, and if, for the *Responsibility Test*, the person has responsibilities, powers, or influence over a discrete segment or activity of the disregarded entity that represents at least 10% of the activities, assets, income, or expenses of the filing organization as a whole, or has or shares authority to control or determine the disregarded entity's capital expenditures, operating budget, or compensation for employees that is at least 10% of the filing organization's respective items as a whole. If an officer or director of a disregarded entity also serves as an officer, director, trustee, or key employee of the organization, report this individual as an officer, director, trustee, or key employee, as applicable, of the organization, and add the compensation, if any, paid by the disregarded entity to this individual to the compensation, if any, paid by the organization to this individual. Report the total aggregate amount in column (D).

 *A disregarded entity must generally use the **EIN** of its sole member. An exception applies to employment taxes: for wages paid to **employees** of a disregarded entity, the disregarded entity must file separate employment tax returns and use its own EIN on such returns. See Regulations sections 301.6109-1(h) and 301.7701-2(c)(2)(iv).*

**Management companies.  Management companies**, as **independent contractors**, are reported on Form 990, Part VII (if at all) only in Section B. Independent Contractors, and aren't reported on Schedule J (Form 990), Part II. If a current or former **officer, director, trustee,** or **key employee** has a relationship with a management company that provides services to the organization, then the relationship may be reportable on Schedule L (Form 990), Part IV. A key employee of a management company must be reported as a current officer of the filing organization if he or she is the filing organization's **top management official** or **top financial official** or is designated as an officer of the filing organization. However, that person doesn't qualify as a key employee of the filing organization solely on the basis of being a key employee of the management company. If a current or former officer, director, trustee, key employee, or **highest compensated employee** received **compensation** from a management company that provided services to the organization and was a **related organization** during the **tax year**, then the individual's compensation from the management company must be reported on Form 990, Part VII, Section A, columns (E) and (F). If the management company wasn't a related organization during the tax year, the individual's compensation from the management company isn't reportable in Part VII, Section A. Questions pertaining to management companies also appear on Form 990, Part VI, line 3, and Schedule H (Form 990), Part IV.

**Employee leasing companies and professional employer organizations.**  In some cases, instead of hiring a management company, an exempt organization "leases" one or more employees from another company, which may be in the business of leasing employees. Alternatively, the organization may enter into an agreement with a professional employer organization to perform some or all of the federal employment tax withholding, reporting, and payment functions related to workers performing services for the organization. The organization should treat employees of an employee leasing company, a professional employer organization (whether or not certified under the new *Certified Professional Employer Organization*), or a management company as the organization's own employees if such persons have the status of employees of the filing organization under the usual common law rules applicable in determining the employer-employee relationship or who are treated as employees of the filing organization for federal employment tax purposes under section 3121(d). See Pub. 1779, Independent Contractor or Employee, for more information. Otherwise, the compensation paid to leasing companies and professional employer organizations should be treated like compensation to a management company for purposes of Form 990 compensation reporting.

Compensation from common paymasters, payroll/reporting agents, and unrelated organizations or individuals (except for compensation from **management companies** or leasing companies, and compensation described in *Taxable organization employee exception*, later) must be treated as reportable compensation in determining whether the dollar thresholds are met for reporting (1) current or former employees as current or former key employees or highest compensated employees; or (2) former officers, directors, or trustees, on Form

990, Part VII, Section A. If the Form 990, Part VII, thresholds for reporting are met, then the compensation from the common paymaster, payroll/reporting agent, or unrelated organization or individual must be reported as compensation from the filing organization in Part VII. The compensation may also need to be reported on Schedule J (Form 990), Part II (see the instructions for Form 990, Part VII, Section A, line 5).

 *The use of a leasing company, common paymaster, payroll/reporting agent, or other payroll service provider doesn't relieve an employer of its obligation for employment tax liabilities. The IRS strongly suggests that the organization doesn't change its address to that of its payroll service provider or other third-party payer. Doing so could limit the organization's ability to stay informed of tax matters, because the IRS sends correspondence regarding problems with an employer's account to the employer's address of record. Alternatively, an employer may grant permission for a third-party payer to receive copies of IRS correspondence by using Form 8822-B; Form 2848, Power of Attorney and Declaration of Representative; or Form 8655, Reporting Agent Authorization, as appropriate.*

**Compensation from unrelated organizations or individuals.** If a current or former **officer, director, trustee, key employee,** or **highest compensated employee** received or accrued compensation or payments from an **unrelated organization** (other than from **management companies** or leasing companies, as discussed above) or an individual for services rendered to the filing organization in that person's capacity as an officer, director, trustee, or employee of the filing organization, then the filing organization must report (subject to the *Taxable organization employee exception* next) such amounts as **compensation** from the filing organization if it has knowledge of the arrangement, whether or not the unrelated organization or the individual treats the amounts as compensation, grants, contributions, or otherwise. Report such compensation from unrelated organizations in Section A, columns (D) and (F), as appropriate. If the organization can't distinguish between reportable compensation and other compensation from the unrelated organization, report all such compensation in column (D).

*Taxable organization employee exception.* Don't report as compensation any payments from an unrelated taxable organization that employs the individual and continues to pay the individual's regular compensation while the individual provides services without charge to the filing organization, but only if the unrelated organization doesn't treat the payments as a charitable contribution to the filing organization.

**Column (A).** For each person required to be listed, enter the name on the top of each row and the person's title or position with the organization on the bottom of the row. If more than one title or position, list all. List persons in the order described under *Order of reporting*, earlier. List each person on only one line.

**Column (B).** For each person listed in column (A), estimate the average hours per week devoted to the organization during the year. Entry of a specific number is required for a complete answer. Enter "-0-" if applicable. Don't include statements such as "as needed," "as required," or "40+." If the average is less than 1 hour per week, then the organization can enter a decimal rounded to the nearest tenth (for example, 0.2 hours per week).

For each person listed in column (A), list below the dotted line an estimate of the average hours per week (if any) devoted to related organizations.

**Column (C).** For each person listed in column (A), check the box that reflects the person's position with the organization during the tax year. Don't check more than one box, unless the person was both an officer and a director/trustee of the

organization during the tax year. For a former **officer, director, trustee, key employee,** or **highest compensated employee,** check only the "Former" box and indicate the former status in the person's title.

*"Current" officers, directors, trustees, key employees, and highest compensated employees.* A "current" **officer, director,** or **trustee** is a person that was an officer, director, or trustee at any time during the organization's **tax year.** A "current" **key employee** or **highest compensated employee** is a person who was an employee at any time during the calendar year ending with or within the organization's tax year, and was a key employee or highest compensated employee for such calendar year.

If the organization files Form 990 based on a **fiscal year,** use the fiscal year to determine the organization's "current" officers, directors, and trustees. Whether or not the organization files Form 990 based on a **fiscal year,** use the calendar year ending with or within the organization's **tax year** to determine the organization's "current" **key employees** and five highest compensated employees.

Don't check the "Former" box if the person was a current officer, director, or trustee at any time during the organization's tax year, or a current key employee or among the five highest compensated employees for the calendar year ending with or within the organization's tax year. A current employee (other than a current officer, director, trustee, key employee, or highest compensated employee) can be reported on Form 990, Part VII, and Schedule J (Form 990), Part II, as (1) a former director or trustee because she or he served as a director or trustee within the last 5 years, and received more than $10,000 in **reportable compensation** for the calendar year ending with or within the organization's tax year in his or her capacity as a former director or trustee; or (2) a former officer or key employee (but not as a former highest compensated employee) because he or she served as an officer or key employee within the last 5 years and received more than $100,000 of reportable compensation for the calendar year ending with or within the organization's tax year. In such a case, indicate the individual's former position in his or her title (for example, "former president").

*"Former" officers, directors, trustees, key employees, and highest compensated employees.* Check the "Former" box for former officers, directors, trustees, and key employees only if both conditions below apply.
• The organization reported (or should have reported), applying the instructions in effect for such years) an individual on any of the organization's Forms 990, 990-EZ, or 990-PF for any one or more of the 5 prior years in one or more of the following capacities: officer, director, trustee, or key employee.
• The individual received **reportable compensation,** from the organization and/or **related organizations,** in the calendar year ending with or within the organization's current **tax year** in excess of the threshold amount ($100,000 for former officers and key employees; $10,000 paid to former directors and trustees for services rendered in their former capacity as directors or trustees).

If a person was reported (or should have been reported) as an officer, director, trustee, or key employee on any of the organization's prior five Forms 990, 990-EZ, or 990-PF, and if the person was still employed at any time during the organization's tax year either (1) by the organization in a lesser capacity other than as an officer, director, trustee, key employee, or highest compensated employee; or (2) by a related organization in any capacity, but not by the filing organization, and if the person received reportable compensation that exceeded the threshold amount described above, then check only the "Former" box. For example, don't check both the "Former" and "Officer" boxes for a former president of the organization who wasn't an officer of the organization during the tax year.

Whether or not the organization files Form 990 based on a **fiscal year**, use the calendar year ending within the organization's tax year to determine all "former" officers, directors, trustees, key employees, and five highest compensated employees (because their status depends on their reportable compensation, which is reported for the calendar year).

Check the "Former" box for the former five highest compensated employees only if all four conditions below apply.

1. The individual wasn't an **employee** of the organization at any time during the calendar year ending with or within the organization's tax year.

2. The individual was reported (or should have been reported, under the instructions for such years) on any of the organization's Forms 990, 990-EZ, or 990-PF for one or more of the 5 prior years as one of the five highest compensated employees.

3. The individual's reportable compensation exceeded $100,000 for the calendar year ending with or within the organization's tax year.

4. The amount of the individual's reportable compensation for such year would place him or her among the organization's current five highest compensated employees if the individual were an employee during the calendar year ending with or within the organization's tax year.

**Example 1.** X was reported as one of Y Charity's five highest compensated employees on one of Y's Forms 990, 990-EZ, or 990-PF from 1 of its 5 prior tax years. During Y's **tax year**, X wasn't a current officer, director, trustee, key employee, or highest compensated employee of Y. X wasn't an employee of Y during the calendar year ending with or within Y's tax year. During this calendar year, X received reportable compensation in excess of $100,000 from Y for past services and would be among Y's five highest compensated employees if X were a current employee. Y must report X as a former highest compensated employee on Y's Form 990, Part VII, Section A, for Y's tax year.

**Example 2.** T was reported as one of Y Charity's five highest compensated employees on one of Y's Forms 990, 990-EZ, or 990-PF from one of its 5 prior tax years. During Y's **tax year**, T wasn't a current officer, director, trustee, key employee, or highest compensated employee of Y, although T was still an employee of Y during the calendar year ending with or within Y's tax year. T received reportable compensation in excess of $100,000 from Y and related organizations for such calendar year. T isn't reportable as a former highest compensated employee on Y's Form 990, Part VII, Section A, for Y's tax year because T was an employee of Y during the calendar year ending with or within Y's tax year.

**Example 3.** Z was reported as one of Y Charity's key employees on Y's Form 990 filed for one of its 5 prior **tax years**. During Y's tax year, Z wasn't a current officer, director, trustee, key employee, or highest compensated employee of Y. For the calendar year ending with or within Y's tax year, Z received reportable compensation of $90,000 from Y as an employee (and no reportable compensation from related organizations). Because Z received less than $100,000 reportable compensation for the calendar year ending with or within Y's tax year from Y and its related organizations, Y isn't required to report Z as a former key employee on Y's Form 990, Part VII, Section A, for Y's tax year.

**Columns (D) and (E).** Enter the amounts required to be reported (whether or not actually reported) in box 1 or 5 of Form W-2 (whichever is greater), box 1 of Form 1099-NEC, and/or box 6 of Form 1099-MISC, issued to the person for the calendar year ending with or within the organization's **tax year**. Enter an

amount for each person in each of columns (D) and (E). Enter "-0-" if the person received no **reportable compensation**. For **institutional trustees** that don't receive a Form 1099-NEC or 1099-MISC, enter the amount that the organization would have reported in box 1 of Form 1099-NEC or box 6 of Form 1099-MISC if the form(s) had been required.

Reportable compensation paid to the person by a **related organization** at any time during the entire calendar year ending with or within the filing organization's tax year should be reported in column (E). If the related organization was related to the filing organization for only a portion of the tax year, then the filing organization may choose to report only compensation paid or accrued by the related organization during the time it was actually related. If the filing organization reports compensation on this basis, it must explain in Schedule O (Form 990) and state the period during which the related organization was related.

**$10,000-per-related-organization exception.** For purposes of column (E), the organization need not include payments from a single related organization if it is less than $10,000 for the calendar year ending with or within the organization's tax year, except to the extent paid to a former **director** or former **trustee** of the filing organization for services as a director or trustee of the organization. For example, if an officer of the organization received **compensation** of $6,000, $15,000, and $50,000 from three separate related organizations for services provided to those organizations, the organization needs to report only $65,000 in column (E) for the officer.

**Volunteer exception.** The organization need not report in column (E) or (F) compensation from a related organization paid to a **volunteer officer, director,** or **trustee** of the filing organization if the related organization is a for-profit organization; isn't owned or controlled, directly or indirectly, by the organization or one or more related tax-exempt organizations; and doesn't provide management services for a fee to the organization.

**Bank or financial institution trustee.** If the organization is a trust with a bank or financial institution trustee that is also a trustee of another trust, it need not report in column (E) or (F) compensation from the other trust for services provided as the trustee to the other trust, because the other trust isn't a related organization (see the *Glossary* definition of **related organization**).

**Reasonable effort.** The organization isn't required to report compensation from a **related organization** to a person listed on Form 990, Part VII, Section A, if the organization is unable to secure the information on compensation paid by the related organization after making a **reasonable effort** to obtain it, and if it is unable to make a reasonable estimate of such compensation. If the organization makes reasonable efforts but is unable to obtain the information or provide a reasonable estimate of compensation from a related organization in column (E) or (F), then it must report the efforts undertaken on Schedule O (Form 990). An example of a reasonable effort is for the organization to distribute a questionnaire annually to each of its current and former officers, directors, trustees, key employees, and highest compensated employees that includes the name and title of each person reporting information, blank lines for those persons' signatures and signature dates, and the pertinent instructions and definitions for Form 990, Part VII, Section A, columns (E) and (F).

**Short year and final returns.** For a short year return in which there is no calendar year that ends with or within the short year, leave columns (D) and (E) blank, and don't report any **key employees, highest compensated employees,** or **highest compensated independent contractors** (because such persons are determined according to compensation received in the calendar year ending with or within the tax year for which the return is filed), unless the return is a final return. If the return is a final return, report the compensation that is reportable

compensation on Forms W-2 and 1099 for the short year, from both the filing organization and related organizations, whether or not Forms W-2 or 1099 have been filed yet to report such compensation.

**Column (F). Other compensation** generally includes compensation not currently reportable in box 1 or 5 of Form W-2, in box 1 of Form 1099-NEC, or in box 6 of Form 1099-MISC, including nontaxable benefits other than disregarded benefits, as discussed under *Disregarded benefits*, later, and in the instructions for Schedule J (Form 990), Part II. Treat amounts paid or accrued under a **deferred compensation** plan, or held by a deferred compensation trust, that is established, sponsored, or maintained by the organization (or a **related organization**) as paid, accrued, or held directly by the organization (or the related organization). Deferred compensation to be reported in column (F) includes compensation that is earned or accrued in one year and deferred to a future year, whether or not funded, vested, qualified or nonqualified, or subject to a substantial risk of forfeiture. But don't report in column (F) a deferral of compensation that causes an amount to be deferred from the calendar year ending with or within the tax year to a date that isn't more than 2$^1/_2$ months after the end of the calendar year ending with or within the tax year if such compensation is currently reported as reportable compensation.

Enter an amount in column (F) for each person listed in Part VII, Section A. (Enter "-0-" if applicable.) Report a reasonable estimate if actual numbers aren't readily available.

Other compensation paid to the person by a **related organization** at any time during the calendar year ending with or within the filing organization's tax year should be reported in column (F). If the related organization was related to the filing organization for only a portion of the tax year, then the filing organization may choose to report only other compensation paid or accrued by the related organization during the time it was actually related. If the filing organization reports compensation on this basis, it must explain on Schedule O (Form 990) and state the period during which the related organization was related.

The following items of compensation provided by the filing organization and related organizations must be reported as "other compensation" in column (F) in all cases regardless of the amount, to the extent they aren't included in column (D).

1. Tax-deferred contributions by the employer to a qualified defined contribution retirement plan.

2. The annual increase or decrease in actuarial value of a qualified defined benefit plan, whether or not funded or vested.

3. The value of health benefits provided by the employer, or paid by the employee with pre-tax dollars, that aren't included in reportable compensation. For this purpose, health benefits include (1) payments of health benefit plan premiums, (2) medical reimbursement and flexible spending programs, and (3) the value of health coverage (rather than actual benefits paid) provided by an employer's self-insured or self-funded arrangement. Health benefits may include dental, optical, drug, and medical equipment benefits. They don't include disability or long-term care insurance premiums or allocated benefits for this purpose.

4. Tax-deferred contributions by the employer and employee to a funded nonqualified defined contribution plan, and deferrals under an unfunded nonqualified defined contribution plan, whether or not such plans are vested or subject to a substantial risk of forfeiture. See the examples in the Schedule J (Form 990), Part II, instructions.

5. The annual increase or decrease in actuarial value of a nonqualified defined benefit plan, whether or not funded, vested, or subject to a substantial risk of forfeiture.

**$10,000-per-item exception.** Except for the five items listed above, neither the organization nor a **related organization** is required to report on Form 990, Part VII, Section A, any item of "other compensation" (as set forth in the compensation table beginning later) if its total value is less than $10,000 for the calendar year ending with or within the organization's tax year.

Amounts excluded under the two separate $10,000 exceptions (the $10,000-per-related-organization and $10,000-per-item exceptions) are to be excluded from **compensation** in determining whether an individual's total **reportable compensation** and other compensation exceeds the thresholds set forth on Form 990, Part VII, Section A, line 4. If the individual's total compensation exceeds the relevant threshold, then the amounts excluded under the $10,000 exceptions are included in the individual's compensation reported on Schedule J (Form 990). Thus, the total amount of compensation reported on Schedule J (Form 990) can be higher than the amount reported on Form 990, Part VII, Section A.

The $10,000-per-item exception applies separately for each item of other compensation from the organization and from each related organization.

***Example 1.*** Organization X provides the following compensation to its current officer:

| $110,000 | Reportable compensation (including pre-tax employee contributions of $5,000 to a qualified defined contribution retirement plan and $2,500 to a qualified health benefit plan) |
| 5,000 | Tax-deferred employer contribution to qualified defined contribution retirement plan |
| 5,000 | Nontaxable employer contributions to health benefit plan |
| 4,000 | Nontaxable dependent care assistance |
| 500 | Nontaxable group life insurance premium |

Organization Y, a related organization, also provides compensation to the officer as follows:

| $21,000 | Reportable compensation (including $1,000 pre-tax employee contribution to qualified defined contribution retirement plan) |
| 1,000 | Tax-deferred employer contribution to qualified defined contribution retirement plan |
| 5,000 | Nontaxable tuition assistance |

The officer receives no compensation in the capacity as a former director or trustee of X, and no unrelated organization pays the officer for services provided to X. The organization can disregard as other compensation (a) the $4,500 in dependent care and group life insurance payments from the organization (under the $10,000-per-item exception), and (b) the $5,000 in tuition assistance from the related organization (under the $10,000-per-item exception) in determining whether the officer's total reportable and other compensation from the organization and related organizations exceeds $150,000. In this case, total reportable compensation is $131,000, and total other compensation (excluding the excludable items below $10,000) is $11,000. Under these circumstances, the officer's dependent care, group life, and tuition assistance items need not be reported as other compensation on Form 990, Part VII, Section A, column (F), and the officer's total reportable and other compensation ($142,000) isn't reportable on Schedule J (Form 990). If, instead, the officer's reportable compensation from Y were $30,000 rather than $21,000, then the officer's total reportable and other compensation ($151,000) would be reportable on Schedule J (Form 990), including the dependent care, group life, and tuition assistance items, even though these

items wouldn't have to be reported as other compensation on Form 990, Part VII.

**Example 2.** Organization S provides health benefits to B (its CEO) under a self-insured medical reimbursement plan. The value of the plan benefits for the tax year is $10,000, which represents the estimated cost of providing coverage for the year if the employer paid a third-party insurer for similar benefits, as determined on an actuarial basis. The actual benefits paid for B and B's family for the year are $30,000. If the benefits aren't reportable compensation to B, then Organization S must report the $10,000 value of plan benefits as other compensation to B on Form 990, Part VII, Section A, column (F).

**Disregarded benefits.** Disregarded benefits under Regulations section 53.4958-4(a)(4) need not be reported in column (F). Disregarded benefits generally include fringe benefits excluded from gross income under section 132. These benefits include:
- No-additional cost service,
- Qualified employee discount,
- Working condition fringe,
- De minimis fringe,
- Qualified transportation fringe,
- Qualified retirement planning services, and
- Qualified military base realignment and closure fringe.

For descriptions of each of these disregarded benefits, see the Instructions for Schedule J (Form 990).

**Short year and final returns.** For a short year return in which there is no calendar year that ends with or within the short year, leave column (F) blank, unless the return is a final return. If the return is a final return, report the other compensation for the short year from both the filing organization and related organizations.

**Compensation table for reporting in Part VII, Section A, or Schedule J (Form 990), Part II.** The following table may be useful in determining how and where to report items of **compensation** on Form 990, Part VII, Section A, and on Schedule J (Form 990), Part II. The list isn't comprehensive but covers most items for most organizations. Many items of compensation may or may not be taxable or currently taxable, depending on the plan or arrangement adopted by the organization and other circumstances. The list attempts to take into account these varying facts and circumstances. The list is merely a guideline to report amounts for those persons required to be listed. In all cases, items included in box 1 or 5 of Form W-2 (whichever is greater), in box 1 of Form 1099-NEC, and/or in box 6 of Form 1099-MISC are required to be reported on Part VII, Section A, and, for applicable persons, Schedule J (Form 990), Part II, column (B). Items listed as "taxable" or "taxable in current year" are currently includible in reportable compensation, but aren't necessarily subject to federal income tax in the current year.

Any item listed in the following compensation table that isn't followed by a star (✕) or asterisk (*) in any column shouldn't be reported on Part VII, Section A; or in Schedule J (Form 990), Part II.

| Type of Compensation | Where To Report | | | | |
| --- | --- | --- | --- | --- | --- |
| | Form 990, Part VII, Section A, column (D) or (E) | | | Form 990, Part VII, Section A, column (F) | |
| | Schedule J (Form 990), Part II, column B(i) | Schedule J (Form 990), Part II, column B(ii) | Schedule J (Form 990), Part II, column B(iii) | Schedule J (Form 990), Part II, column C | Schedule J (Form 990), Part II, column D |
| Base salary/wages/fees paid | x | | | | |
| Base salary/wages/fees deferred (taxable) | x | | | | |
| Base salary/wages/fees deferred (nontaxable) | | | | x | |
| Bonus paid (including signing bonus) | | x | | | |
| Bonus deferred (taxable in current year) | | x | | | |
| Bonus deferred (not taxable in current year) | | | | x | |
| Incentive compensation paid | | x | | | |
| Incentive compensation deferred (taxable in current year) | | x | | | |
| Incentive compensation deferred (not taxable in current year) | | | | x | |
| Severance or change of control payments made | | | x | | |
| Sick pay paid by employer | x | | | | |
| Third-party sick pay | | | x | | |
| Other compensation amounts deferred (taxable in current year) | | x | | | |
| Other compensation amounts deferred (not taxable in current year) | | | | x | |
| Tax gross-ups paid | | | x | | |
| Vacation/sick leave cashed out | | | x | | |
| Stock options at time of grant | | | | x | |
| Stock options at time of exercise | | | x | | |
| Stock awards paid by taxable organizations substantially vested | | | x | | |
| Stock awards paid by taxable organizations not substantially vested | | | | x | |
| Stock equivalents paid by taxable organizations substantially vested | | | x | | |
| Stock equivalents paid by taxable organizations not substantially vested | | | | x | |
| Loans—forgone interest or debt forgiveness | | | x | | |
| Contributions (employer) to qualified retirement plan | | | | x | |
| Contributions (employee deferrals) to section 401(k) plan | x | | | | |
| Contributions (employee deferrals) to section 403(b) plan | x | | | | |
| Qualified or nonqualified retirement plan defined benefit accruals (reasonable estimate of increase or decrease in actuarial value) | | | | x | |
| Qualified retirement (defined contribution) plan investment earnings or losses (not reportable or other compensation) | | | | | |
| Taxable distributions from qualified retirement plan, including section 457(b) eligible governmental plan (reported on Form 1099-R but not reportable or other compensation on Form 990) | | | | | |

| Type of Compensation | Where To Report | | | | |
|---|---|---|---|---|---|
| | Form 990, Part VII, Section A, column (D) or (E) | | | Form 990, Part VII, Section A, column (F) | |
| | Schedule J (Form 990), Part II, column B(i) | Schedule J (Form 990), Part II, column B(ii) | Schedule J (Form 990), Part II, column B(iii) | Schedule J (Form 990), Part II, column C | Schedule J (Form 990), Part II, column D |
| Distributions from nongovernmental section 457(b) plan | | | x | | |
| Amounts includible in income under section 457(f) | | | x | | |
| Amounts deferred by employer or employee (plus earnings) under section 457(b) plan (substantially vested) | | | x | | |
| Amounts deferred by employer or employee under section 457(b) or 457(f) plan (not substantially vested) | | | | x | |
| Amounts deferred under nonqualified defined contribution plans (substantially vested) | | | x | | |
| Amounts deferred under nonqualified defined contribution plans (not substantially vested) | | | | x | |
| Earnings or losses of nonqualified defined contribution plan (substantially vested) | | | x | | |
| Earnings or losses of nonqualified defined contribution plan (not substantially vested) | | | | | |
| Scholarships and fellowship grants (taxable) | | | x | | |
| Health benefit plan premiums paid by employer (taxable) | x | | | | |
| Health benefit plan premiums paid by the employee (taxable) | x | | | | |
| Health benefit plan premiums (nontaxable) | | | | | x |
| Medical reimbursement and flexible spending programs (taxable) | | | x | | |
| Medical reimbursement and flexible spending programs (nontaxable) | | | | | x |
| Other health benefits (taxable) | | | x | | |
| Other health benefits (nontaxable) | | | | | x |
| Life, disability, or long-term-care insurance (taxable) | | | x | | |
| Life, disability, or long-term-care insurance (nontaxable) | | | | | * |
| Split-dollar life insurance (see Notice 2002-8, 2002-1 C.B. 398) | | | x | | |
| Housing provided by employer or ministerial housing allowance (taxable) | | | x | | |
| Housing provided by employer or ministerial housing allowance (nontaxable) (but see Schedule J instructions regarding working condition fringes) | | | | | * |
| Personal legal services (taxable) | | | x | | |
| Personal legal services (nontaxable) | | | | | * |
| Personal financial services (taxable) | | | x | | |
| Personal financial services (nontaxable) | | | | | * |
| Dependent care assistance (taxable) | | | x | | |
| Dependent care assistance (nontaxable) | | | | | * |
| Adoption assistance (taxable) | | | x | | |
| Adoption assistance (nontaxable) | | | | | * |
| Tuition assistance for family (taxable) | | | x | | |

| Type of Compensation | Where To Report | | | | |
|---|---|---|---|---|---|
| | Form 990, Part VII, Section A, column (D) or (E) | | | Form 990, Part VII, Section A, column (F) | |
| | Schedule J (Form 990), Part II, column B(i) | Schedule J (Form 990), Part II, column B(ii) | Schedule J (Form 990), Part II, column B(iii) | Schedule J (Form 990), Part II, column C | Schedule J (Form 990), Part II, column D |
| Tuition assistance for family (nontaxable) | | | | | * |
| Cafeteria plans (nontaxable health benefit) | | | | | x |
| Cafeteria plans (nontaxable benefit other than health) | | | | | * |
| Liability insurance (taxable) | | | x | | |
| Employer-provided automobile (taxable) | | | x | | |
| Employer-subsidized parking (taxable) | | | x | | |
| Travel (taxable) | | | x | | |
| Moving (taxable) | | | x | | |
| Meals and entertainment (taxable) | | | x | | |
| Social club dues (taxable) | | | x | | |
| Spending account (taxable) | | | x | | |
| Gift cards | | | x | | |
| Disregarded benefits under Regulations section 53.4958-4(a)(4) (see Schedule J, Part II, instructions) | | | | | |

**Note.** Items marked with an asterisk (*) instead of a star (x) are excludable from Form 990, Part VII, Section A, column (F), if below $10,000.

**Line 1b.** Report the subtotals of compensation from the Section A, line 1a, table in line 1b, columns (D), (E), and (F).

**Line 1c.** Report the subtotals of compensation from duplicate Section A tables for filers that report more than 25 persons in the Section A, line 1a, table in line 1c, columns (D), (E), and (F).

**Line 1d.** Add the totals of lines 1b and 1c in line 1d for columns (D), (E), and (F).

**Line 2.** Report the total number of individuals, both those listed in the Part VII, Section A, table, and those not listed, to whom the filing organization (not **related organizations**) paid over $100,000 in **reportable compensation** during the **tax year**.

**Line 3.** Complete Schedule J (Form 990) for each of the following persons.
• Each individual listed in Part VII, Section A, as a former **officer**, former **key employee**, or former **highest compensated employee**. To determine whether an individual received more than $100,000 in **reportable compensation** in the aggregate from the organization and **related organizations**, add the amounts reported in box 1 or 5 of all Forms W-2 (whichever is greater), in box 1 of all Forms 1099-NEC, and/or in box 6 of all Forms 1099-MISC, issued to the individual by the organization and all related organizations (disregarding amounts from a related organization if below $10,000) for the **calendar year** ending with or within the organization's **tax year**.
• Each individual that received, solely in the capacity as a former **director** or former **trustee** of the organization, more than

$10,000 of reportable compensation (Part VII, Section A, columns (D) and (E)) during the year from the organization or related organizations. To determine whether an individual received or accrued more than $10,000 in reportable compensation solely in the capacity as a former trustee or director of the organization, add the amounts reported in box 1 of all Forms 1099-NEC, and, if applicable, box 1 or 5 of all Forms W-2 (whichever is greater), and/or issued to the individual by the organization and all related organizations, to the extent that such amounts relate to the individual's past services as a trustee or director of the organization and not of a related organization. The $10,000-per-related-organization exception doesn't apply for this purpose.

**Line 4.** Complete Schedule J (Form 990) for each individual listed in Section A who received or accrued more than $150,000 of reportable compensation and other compensation from the organization and related organizations. To determine whether any listed individual received or accrued more than $150,000 of reportable and other compensation, add all **compensation** included in Part VII, Section A, columns (D), (E), and (F), but disregard any decreases in the actuarial value of defined benefit plans.

The following chart explains which **officers**, **directors**, **trustees**, **key employees**, and **highest compensated employees** must be reported on Form 990, Part VII, Section A, and on Schedule J (Form 990). See also *Line 5*, later, for additional individuals who must be reported on Schedule J (Form 990), Part II.

**Matrix for Part VII, Section A, Lines 3 and 4**

| Position | Current or former | Enter on Form 990, Part VII, Section A . . . | Enter on Schedule J (Form 990), Part II . . . |
|---|---|---|---|
| Directors and Trustees | Current | All | If reportable and other compensation is greater than $150,000 in the aggregate from organization and related organizations (don't report institutional trustees) |
| | Former | If reportable compensation in capacity as former director or trustee is greater than $10,000 in the aggregate from organization and related organizations | If listed on Form 990, Part VII, Section A (don't report institutional trustees) |
| Officers | Current | All | If reportable and other compensation is greater than $150,000 in the aggregate from organization and related organizations |
| | Former | If reportable compensation is greater than $100,000 in the aggregate from organization and related organizations | If listed on Form 990, Part VII, Section A |
| Key Employees | Current | All | All |
| | Former | If reportable compensation is greater than $100,000 in the aggregate from organization and related organizations | If listed on Form 990, Part VII, Section A |
| Other Five Highest Compensated Employees | Current | If reportable compensation is greater than $100,000 in the aggregate from organization and related organizations | If reportable and other compensation is greater than $150,000 in the aggregate from organization and related organizations |
| | Former | If reportable compensation is greater than $100,000 in the aggregate from organization and related organizations | If listed on Form 990, Part VII, Section A |

**Line 5.** Complete Schedule J (Form 990) for any individual listed on Form 990, Part VII, Section A, if the person receives or accrues **compensation** from an **unrelated organization** (other than from management companies and leasing companies, as discussed earlier) for services rendered to the filing organization in the person's capacity as an **officer**, **director**, **trustee**, or **employee** of the filing organization. Also, specify on Schedule J (Form 990), Part III, the name of the unrelated organization, the type and amount of compensation it paid or accrued, and the person receiving or accruing such compensation. See *Compensation from unrelated organizations or individuals*, earlier.

For purposes of line 5, disregard:

1.  Payments from a **deferred compensation** trust or plan established, sponsored, or maintained by the organization (or a related organization), and deferred compensation held by such trust or plan;

2.  Payments from a common paymaster for services provided to the organization (or to a related organization); or

3.  Payments from an unrelated taxable organization that employs the individual and continues to pay the individual's regular compensation while the individual provides services without charge to the filing organization, but only if the unrelated organization doesn't treat the payments as a charitable contribution to the filing organization.

*Example 1.* A is the CEO (and the **top management official**) of the organization. In addition to compensation paid by the organization to A, A receives payments from B, an unrelated corporation (using the definition of relatedness on Schedule R (Form 990)), for services provided by A to the organization. B also makes rent payments for A's personal residence. The organization is aware of the compensation arrangement between A and B, and doesn't treat the payments as paid by the organization for Form W-2 reporting purposes. A, as the top

management official of the organization, must be listed as an officer of the organization in Part VII, Section A. However, the amounts paid by B to A require that the organization answer "Yes" on line 5 and complete Schedule J (Form 990) about A.

*Example 2.* C is an attorney employed by a law firm that isn't a related organization to the organization. The organization and the law firm enter into an arrangement where C serves the organization, a section 501(c)(3) legal aid society pro bono, on a full-time basis as its vice president and as a board member while continuing to receive her regular compensation from the law firm. The organization doesn't provide any compensation to C for the services provided by C to the organization, and doesn't report C's compensation on Form W-2, Form 1099-NEC, or Form 1099-MISC. The law firm doesn't treat any part of C's compensation as a charitable contribution to the legal aid society. Under these circumstances, the amounts paid by the law firm to C don't require that the organization answer "Yes" on line 5, about C. Also, nothing in these facts would prevent C from qualifying as an independent member of the organization's governing body for purposes of Form 990, Part VI, line 1b.

*Example 3.* D, a volunteer director of the organization, is also the sole owner and CEO of M management company (an unrelated organization), which provides management services to the organization. The organization pays M an annual fee of $150,000 for management services. Under the circumstances, the amounts paid by M to D (in the capacity as owner and CEO of M) don't require that the organization answer "Yes" on line 5, regarding D. However, the organization must report the transaction with M, including the relationship between D and M, on Schedule L (Form 990), Part IV. Also, D doesn't qualify as an independent member of the organization's governing body because D receives indirect financial benefits from the organization through M that are reportable on Schedule L (Form 990), Part IV.

## Section B. Five Highest Compensated Independent Contractors

Complete this table for the five highest compensated **independent contractors** that received more than $100,000 in compensation for services, whether professional or other services, from the organization. Independent contractors include organizations as well as individuals and can include professional fundraisers, law firms, accounting firms, publishing companies, **management companies**, and investment management companies. Don't report public utilities or insurance providers as independent contractors. See Pub. 1779, and Pub. 15-A, Employer's Supplemental Tax Guide, for distinguishing **employees** from independent contractors.

**Column (C).**  Enter the amount the organization paid, whether reported in box 1 of Form 1099-NEC, in box 6 of Form 1099-MISC, or paid under the parties' agreement or applicable state law, for the calendar year ending with or within the organization's tax year.

For a short year return in which there is no calendar year that ends with or within the short year, don't report any information in columns (A) through (C), unless the return is a final return. If the return is a final return, report the compensation paid to the independent contractor(s) under the parties' agreement during the short year or the compensation that is reportable compensation on Form 1099 for the short year, whether or not Form 1099 has been filed yet to report such compensation.

**Compensation** includes fees and similar payments to independent contractors but not reimbursement of expenses unless incidental to providing the service. However, for this purpose, the organization must report gross payments to the **independent contractor** that include expenses and fees if the expenses aren't separately reported to the organization.

 *Form 1099-NEC and/or Form 1099-MISC may be required to be issued for payments to an independent contractor, with compensation reported in box 1 of Form 1099-NEC and/or box 6 of Form 1099-MISC.*

# Part VIII. Statement of Revenue

Check the box in the heading of Part VIII if Schedule O (Form 990) contains any information pertaining to this part.

**Column (A).**  All organizations must complete column (A), reporting their **gross receipts** for all sources of revenue. All organizations (except section 527 political organizations) must complete columns (B) through (D), which must add up to the amount in column (A) for each line in Part VIII. Refer to specific instructions in this part for completing each column.

 *If the organization enters an amount in column (A) for lines 2a through 2e or lines 11a through 11c, it must also enter a corresponding business activity code from Business Activity Codes, later. If none of the listed codes, or other 6-digit codes listed on the NAICS website at 2022 NAICS Census Chart, accurately describe the activity, enter "900099." Use of these codes doesn't imply that the business activity is unrelated to the organization's exempt purpose. For nonstore retailers, select the PBA code by the primary product that your establishment sells. For example, establishments primarily selling prescription and non-prescription drugs, select PBA code 456110 Pharmacies and drug retailers.*

**Column (B).**  In column (B), report all revenue from activities substantially related to the organization's exempt purposes. Use of revenue for the organization's exempt purposes doesn't make the activity that produced the income (for example, fundraising activity) substantially related to the organization's exempt purposes. Also report here any revenue that is excludable from gross income other than by section 512, 513, or 514, such as

interest on state and local bonds that is excluded from tax by section 103.

**Column (C).**  In column (C), report any **unrelated business** revenue received by the organization during the **tax year** from an **unrelated trade or business**, unless that revenue is reportable in Part VIII, column (D). See Pub. 598 and the Instructions for Form 990-T for more information.

 *A section 501(c)(3) organization that is an S corporation shareholder must treat all allocations of income from the S corporation as **unrelated business income**. Gain on the disposition of stock is also treated as unrelated business income. See section 512(e).*

**Column (D).**  In column (D), report any revenue excludable from **unrelated business income** by section 512, 513, or 514. Examples of such revenue include receipts from the sale of donated merchandise, interest (unless debt-financed), and receipts from **bingo** games.

Neither Form 5500 nor DOL Forms LM-2 or LM-3, Labor Organization Annual Report, should be substituted for the Form 990, Part VIII or IX.

## Line 1. In General

On lines 1a through 1f, report cash and noncash amounts received as voluntary **contributions**, gifts, grants, or other similar amounts from the general public, **governmental units**, foundations, and other exempt organizations. The general public includes individuals, corporations, trusts, estates, and other entities. Voluntary contributions are payments, or the part of any payment, for which the payer (donor) doesn't receive full retail value (**FMV**) from the recipient (donee) organization. Contributions are reported on line 1 regardless of whether they are deductible by the contributor. The noncash portion of contributions reported on lines 1a through 1f is also reported on line 1g.

Report gross amounts of contributions collected in the organization's name by fundraisers.

Report all expenses of raising contributions on Part IX, column (D), *Fundraising expenses*. The organization must enter on Part IX, line 11e, fees for **professional fundraising services** relating to the gross amounts of contributions collected in the organization's name by professional fundraisers.

Report on line 1 assets contributed to the organization by another entity in the course of the entity's liquidation, dissolution, or termination.

Report the value of **noncash contributions** at the time of the donation. For example, report the **FMV** of a donated car at the time the car was received as a donation.

Don't net losses from uncollectible pledges from prior years, refunds of contributions and service revenue from prior years, or reversal of grant expenses from prior years on line 1. Rather, report any such items as "Other changes in net assets or fund balances" on Part XI, line 9, and explain on Schedule O (Form 990).

The organization must report any contributions of **conservation easements** and other **qualified conservation contributions** consistently with how it reports revenue from such contributions in its books, records, and financial statements.

Reporting on line 1 according to **ASC 958** is generally acceptable (though not required) for Form 990 purposes, but the value of donated services or use of materials, equipment, or facilities may not be reported. An organization that receives a grant to be paid in future years should, according to ASC 958, report the grant's present value on line 1. Accruals of present

value increments to the unpaid grant should be reported on line 1 in future years.

**Contributions** don't include the following.

- Grants, fees, or other support from **governmental units**, foundations, or other exempt organizations that represent a payment for a service, facility, or product that primarily gives some economic or physical benefit to the payer.
- The portion of any fundraising solicitation representing payment for goods, services, or anything else at retail value.
- Unreimbursed expenses of **officers, employees,** or **volunteers.** (See the explanations of charitable contributions and employee business expenses in Pub. 526 and Pub. 463, respectively.)
- Payments received from employers for welfare benefits under plans described in sections 501(c)(9), (17), and (18). Report these amounts on line 2, *Program Service Revenue.*
- Donations of services such as the value of donated advertising space, broadcast air time (including donated public service announcements), or discounts on services or donations of use of materials, equipment, or facilities, even though reporting donated services and facilities as items of revenue and expense is called for in certain circumstances by generally accepted accounting principles. The optional reporting of donated services and facilities is discussed in the instructions for Form 990, Part III.

*Example 1.* A hotel in a city's entertainment district donates 100 "right to use" certificates covering 15 hotel rooms a night to disaster relief organization B. B then uses these certificates as emergency housing in furtherance of its exempt purposes. B shouldn't report the value of this contribution on line 1 (or on any other line in Part VIII), because this is a donation of services and use of facilities to B. Similarly, if B were to auction off the certificates as part of a fundraising event, B shouldn't report the value of the contributed certificates on line 1 (or on any other line in Part VIII). Rather, it should report gross income from the auction on Part VIII, line 8a.

*Example 2.* Organization C purchases 100 "right to use" certificates (as described in *Example 1* above) from the hotel, then contributes them to disaster relief organization B and designates that they be used for disaster relief purposes. B should report the **FMV** of these certificates on line 1. If B were to auction off the certificates as part of a fundraising event, then use the proceeds for disaster relief purposes, B should report the gross income from the auction on Part VIII, line 8a; report the FMV of the contributed certificates on line 8b; and report the difference between lines 8a and 8b on line 8c.

**Line 1a.** Enter on line 1a the total amount of **contributions** received indirectly from the public through solicitation campaigns conducted by federated fundraising agencies and similar fundraising organizations (such as from a United Way organization). Federated fundraising agencies normally conduct fundraising campaigns within a single metropolitan area or some part of a particular state, and allocate part of the net proceeds to each participating organization on the basis of the donors' individual designations and other factors.

 *Federated fundraising agencies must, like all other filers, identify the sources of contributions made to them on lines 1a through 1g.*

**Line 1b.** Report on line 1b membership dues and assessments that represent **contributions** from the public rather than payments for benefits received or payments from affiliated organizations.

*Example.* M is an organization whose primary purpose is to support the local symphony orchestra. Members have the privilege of purchasing subscriptions to the symphony's annual concert series before they go on sale to the general public, but

must pay the same price as any other member of the public. They are also entitled to attend a number of rehearsals each season without charge. Under these circumstances, M's receipts from members are contributions reported on line 1b. Membership dues that aren't contributions because they compare reasonably with available benefits are reported on line 2, *Program Service Revenue.*

Membership dues can consist of both contributions and payment for goods and services. In that case, the portion of the membership dues that is a payment for goods or services should be reported on line 2, *Program Service Revenue.* The portion that exceeds the **FMV** of the goods or services provided should be reported on line 1b.

The portion of membership dues attributable to certain membership benefits that are considered to be insubstantial (for example, low-cost articles, free or discounted admission to the organization's activities, discounts on purchases from the organization's gift shop, free or discounted parking) may be reported as contributions on line 1, rather than as payments for goods or services on line 2. See Pub. 1771, Charitable Contributions—Substantiation and Disclosure Requirements, for more information on insubstantial membership benefits that need not be valued or reported.

**Line 1c.** Enter the total amount of **contributions** received from **fundraising events**, which includes, but isn't limited to, dinners, auctions, and other events conducted for the sole or primary purpose of raising funds for the organization's exempt activities. Report contributions received from **gaming** activities on line 1f, not on line 1c.

*Example.* An organization holds a dinner, charging $400 per person for the meal. The dinner has a retail value of $160. A person who purchases a ticket is really purchasing the dinner for $160 and making a contribution of $240. The contribution of $240, which is the difference between the buyer's payment and the retail value of the dinner, would be reported on line 1c and again on line 8a (within parentheses). The revenue received ($160 retail value of the dinner) would be reported in the right-hand column on line 8a.

If a contributor gives more than $160, that person would be making a contribution of the difference between the dinner's retail value of $160 and the amount actually given. Rev. Rul. 67-246, 1967-2 C.B. 104, as distinguished by Rev. Rul. 74-348, 1974-2 C.B. 80, explains this principle in detail. See also the instructions for lines 8a through 8c and Pub. 526.

Organizations that report more than $15,000 total on lines 1c and 8a must also answer "Yes" on Part IV, line 18, and complete Part II of Schedule G (Form 990).

**Line 1d.** Enter on line 1d amounts contributed to the organization by **related organizations**. Don't report amounts reportable on line 1a.

**Line 1e.** Enter the total amount of **contributions** in the form of grants or similar payments from local, state, or federal government sources, as well as foreign governments. Include grant amounts from **U.S. possessions**.

Whether a payment from a **governmental unit** is labeled a "grant" or a "contract" doesn't determine where the payment should be reported on Part VIII. Rather, a grant or other payment from a governmental unit is reported here if its primary purpose is to enable the organization to provide a service to, or maintain a facility for, the direct benefit of the public rather than to serve the direct and immediate needs of the governmental unit. In other words, the payment is recorded on line 1e if the general public receives the primary and direct benefit from the payment and any benefit to the governmental unit is indirect and insubstantial as compared to the public benefit.

The following are examples of governmental grants and other payments that are treated as contributions and reported on line 1e.

• Payments by a governmental unit for the construction or maintenance of library or museum facilities open to the public.

• Payments by a governmental unit to nursing homes to provide care to their residents (but not Medicare/Medicaid or similar payments made on behalf of the residents).

• Payments by a governmental unit to child placement or child guidance organizations under government programs to better serve children in the community.

**Line 1f.** Enter all other **contributions**, gifts, and similar amounts the organization received from sources not reported separately on lines 1a through 1e. This amount includes contributions from **donor advised funds** (unless the **sponsoring organization** is a **related organization**) and from **gaming** activities. For a section 501(c)(21) trust, enter the total contributions received under section 192 from the coal mine operator who established the trust. Contributions to the trust must be in cash or property of the type in which the trust is permitted to invest (for example, public debt securities of the United States, obligations of a state or local government that are not in default as to principal or interest, or time and demand deposits in a bank or insured credit union as described in section 501(c)(21)(D)(ii)).

**Line 1g.** Enter on line 1g the value of **noncash contributions** included on lines 1a through 1f. If this amount exceeds $25,000, the organization must answer "Yes" on Part IV, line 29, and complete and attach Schedule M (Form 990).

Noncash contributions are anything other than cash, checks, money orders, credit card charges, wire transfers, and other transfers and deposits to a cash account of the organization. Value noncash donated items, like cars and **securities**, as of the time of their receipt, even if they were sold immediately after they were received.

*Example.* A charity receives a gift of stock from an unrelated donor. The stock is delivered to the charity's broker, who sells it on the same day and remits the sales proceeds, net of commissions, to the charity. The value of the stock at the time of the contribution must be reported on line 1f and also on line 1g. The sale of the stock, and the related sales expenses (including the amounts reported on lines 1f and 1g), must be reported on lines 7a through 7d.

 *Museums and other organizations that elect not to capitalize their collections (according to ASC 958-360-45) shouldn't report an amount on line 1g for works of art and other collection items donated to them.*

For more information on **noncash contributions**, see the instructions for Schedule M (Form 990).

**Line 1h.** Enter on line 1h the total of lines 1a through 1f (but not line 1g).

 *The organization may also need to attach Schedule B (Form 990) to report certain contributors and their contributions. See the Instructions for Schedule B (Form 990) for more information.*

**Line 2.** On lines 2a through 2e, enter the organization's five largest sources of program service revenue. Program services are primarily those that form the basis of an organization's exemption from tax. For a more detailed description of program service revenue, refer to the instructions for Part IX, column (B).

On line 2f, enter the total received from all other sources of program service revenue not listed individually on lines 2a through 2e. On line 2g, enter the total of column (A), lines 2a through 2f.

**Program service revenue.** Program service revenue includes income earned by the organization for providing a government agency with a service, facility, or product that benefited that government agency directly rather than benefiting the public as a whole. Program service revenue also includes tuition received by a school; revenue from admissions to a concert or other performing arts event or to a museum; royalties received as author of an educational publication distributed by a commercial publisher; interest income on loans a credit union makes to its members; payments received by a section 501(c)(9) organization from participants or employers of participants for health and welfare benefits coverage; insurance premiums received by a fraternal beneficiary society; and registration fees received in connection with a meeting or convention.

**Program-related investments.** Program service revenue also includes income from **program-related investments**. These investments are made primarily to accomplish an exempt purpose of the investing organization rather than to produce income. Examples are scholarship loans and low-interest loans to charitable organizations, indigents, or victims of a disaster.

Rental income from an exempt function is another example of program-related investment income. For purposes of this return, report all rental income from an affiliated organization on line 2.

**Unrelated trade or business activities.** Unrelated trade or business activities (not including any **fundraising events** or **fundraising activities**) that generate fees for services can also be program service activities. A social club, for example, should report as program service revenue the fees it charges both members and nonmembers for the use of its tennis courts and golf course.

**Sales of inventory items by hospitals, colleges, and universities.** Books and records maintained according to generally accepted accounting principles for hospitals, colleges, and universities are more specialized than books and records maintained according to those accounting principles for other types of organizations that file Form 990. Accordingly, **hospitals**, colleges, and universities can report, as program service revenue on line 2, sales of inventory items otherwise reportable on line 10a. In that event, enter the applicable cost of goods sold as program service expense in column (B) of Part IX. No other organizations should report sales of inventory items on line 2.

**Common types of program service revenue.**

• Medicare and Medicaid payments, and other government payments made to pay or reimburse the organization for medical services provided to individuals who qualify under a government program for the services provided, and who select the service provider. See Rev. Rul. 83-153, 1983-2 C.B. 48.

• Payments for medical services by patients and their guarantors.

• Fees and contracts from government agencies for a service, facility, or product that primarily benefited the government agencies.

*Example 1.* A payment by a governmental agency to a medical clinic to provide vaccinations to the general public is a contribution reported on line 1e. A payment by a governmental agency to a medical clinic to provide vaccinations to employees of the agency is program service revenue reported on line 2.

*Example 2.* A payment by a governmental agency to an organization to provide job training and placement for disabled individuals is a contribution reported on line 1e. A payment by a governmental agency to the same organization to operate the agency's internal mail delivery system is program service revenue reported on line 2.

• Income from program-related investments. Report interest, dividends, and other revenues from those investments made

primarily to accomplish the organization's exempt purposes rather than to produce income. Examples of program-related investments include student loans and notes receivable from other exempt organizations that borrowed the funds to pursue the filing organization's exempt function.

• Membership dues and assessments received that compare reasonably with the membership benefits provided by the organization. Organizations described in section 501(c)(5), (6), or (7) generally provide benefits that have a reasonable relationship with dues.

Examples of membership benefits include:
• Subscriptions to publications,
• Newsletters (other than one only about the organization's activities),
• Free or reduced-rate admissions to events sponsored by the organization,
• Use of the organization's facilities, and
• Discounts on articles or services that members and nonmembers can buy.

 *For each amount entered on lines 2a through 2e, the organization must also enter a corresponding business activity code from Business Activity Codes, later. If you don't see a code for the activity you are trying to categorize, select the appropriate code from the NAICS website at 2022 NAICS Census Chart. Select the most specific 6-digit code available that describes the activity producing the income. Note that most codes describe more than one type of activity. Avoid using codes that describe the organization rather than the income-producing activity. For example, a credit union reporting income from consumer lending activities should use code 522291. Sales revenue from a museum gift shop should be reported with code 459420. An organization providing credit counseling services should use code 541990. If none of the listed codes accurately describe the activity, enter "900099." Use of these codes doesn't imply that the activity is unrelated to the organization's exempt purpose.*

**Line 3.** Enter the gross amount of interest income from savings and temporary cash investments, dividend and interest income from equity and debt **securities** (stocks and bonds), and amounts received from payments on securities loans, as defined in section 512(a)(5), as well as interest from notes and loans receivable. Don't include unrealized gains and losses on investments carried at **FMV**. Don't deduct investment management fees from this amount, but report these fees on Part IX, line 11f.

*Section 501(c)(21) trusts.* Use line 3 to report income from "qualified investments" as defined in section 501(c)(21)(D)(ii) (public debt securities of the United States; obligations of a state or local government which are not in default as to principal or interest; and time or demand deposits in a bank (as defined in section 581) or an insured credit union (within the meaning of section 1107(7) of the Federal Credit Union Act, 12 U.S.C. 1752(7)) located in the United States).

**Line 4.** Enter all investment income actually or constructively received from investing the **proceeds** of a tax-exempt **bond issue**, which are under the control of the organization. For this purpose, don't include any investment income received from investing proceeds that are technically under the control of the **governmental issuer**. For example, proceeds deposited into a **defeasance escrow** that is irrevocably pledged to pay the principal and interest (debt service) on a bond issue isn't under the control of the organization.

**Line 5.** Enter on line 5 royalties received by the organization from licensing the ongoing use of its property to others. Typically, royalties are received for the use of intellectual property, such as patents and trademarks. Royalties also include payments to the owner of the property for the right to

exploit natural resources on the property, such as oil, natural gas, or minerals.

**Line 6a.** Enter on line 6a the rental income received for the year from investment property and any other real property rented by the organization. Allocate revenue to real property and personal property in the spaces provided. Don't include on line 6a rental income related to the filing organization's exempt function (program service). Report such income on line 2. For example, an exempt organization whose exempt purpose is to provide low-rental housing to persons with low income would report that rental income as program service revenue on line 2.

Only for purposes of completing this return, the filing organization must report any rental income received from an affiliated exempt organization as program service revenue on line 2.

Rental revenue can be from an activity that is related or unrelated to the organization's exempt purpose. In general, rents from real property are excluded in computing **unrelated business income**, while rental income from personal property is included. There are special rules when rents are received from personal property leased with real property (a mixed lease). In general, rental revenue from real property is excluded from unrelated business revenue when:

• The determination of the amount of such rents isn't based on income or net profits derived by any person from the property leased other than an amount based on a fixed percentage of the gross receipts or sales;
• The lease doesn't include personal services other than customary ones such as trash removal and cleaning of public areas;
• Any portion attributable to personal property is 10% or less of the total rent; and
• The real property isn't debt-financed within the meaning of section 512, 513, or 514. (Rent from debt-financed real property is generally includible in unrelated business income, but there can be exceptions based on use of the property. See Pub. 598.)

Rent received from leased personal property is generally taxable except when leased with real property, and the rent attributable to the personal property doesn't exceed 10% of the total rents from all leased property.

**Line 6b.** Enter on line 6b the expenses paid or incurred for the income reported on line 6a. Include interest related to rental property and depreciation if it is recorded in the organization's books and records. If the organization reported on line 2 any rental income reportable as program service revenue, report any rental expense allocable to such activity on the applicable lines of Part IX, column (B).

**Line 6c.** Subtract line 6b from line 6a for both columns (i) and (ii) and enter on line 6c. Show any loss in parentheses.

**Line 6d.** Add line 6c, columns (i) and (ii), and enter on line 6d. Show any loss in parentheses.

**Lines 7a through 7d.** Enter on lines 7a through 7c all sales of **securities** in column (i). Use column (ii) to report sales of all other types of investments (such as real estate, royalty interests, or partnership interests) and all other non-inventory assets (such as program-related investments and fixed assets used by the organization in its related and unrelated activities).

On line 7a, for each column, enter the total gross sales price of all such assets. Total the cost or other basis (less depreciation) and selling expenses and enter the result on line 7b. On line 7c, enter the gain or loss. Show any loss in parentheses.

On lines 7a and 7c, also report capital gains dividends, the organization's share of capital gains and losses from a **joint venture**, and capital gains distributions from trusts.

Combine the gain or loss figures reported on line 7c, columns (i) and (ii), and report that total on line 7d. Show any loss in parentheses. Don't include any unrealized gains or losses on **securities** carried at **FMV** in the books of account.

For reporting sales of securities on Form 990, the organization can use the more convenient average cost basis method to figure the organization's gain or loss. When a security is sold, compare its sales price with the average cost basis of the particular security to determine gain or loss. However, for reporting sales of securities on Form 990-T, don't use the average cost basis to determine gain or loss.

The organization should maintain books and records to substantiate information about any securities or other assets sold for which market quotations weren't published or weren't otherwise readily available. The recorded information should include:

- A description of the asset;
- Date acquired;
- Whether acquired by donation or purchase;
- Date sold and to whom sold;
- Gross sales price;
- Cost, other basis, or, if donated, value at time acquired;
- Expense of sale and cost of improvements made after acquisition; and
- Depreciation since acquisition, if depreciable property.

**Line 8a.** Enter in the line 8a box the gross income from fundraising events, not including the amount of contributions from fundraising events reported on line 1c. Report the line 1c amount in the line 8a parenthetical. If the sum of the amounts reported on line 1c and the line 8a box exceeds $15,000, then the organization must answer "Yes" on Part IV, line 18, and complete Schedule G (Form 990), Part II. If gaming is conducted at a fundraising event, the income and expenses must be allocated between the gaming and the fundraising event on Form 990, Part VIII; report all income from gaming on line 9a.

Compute the organization's gross income from fees, ticket sales, or other revenue from **fundraising events**.

| Fundraising events include: | Fundraising events don't include: |
|---|---|
| • Dinners/dances, | • Sales or gifts of goods or services of only nominal value, |
| • Door-to-door sales of merchandise, | • Raffles or lotteries in which prizes have only nominal value, and |
| • Concerts, | • Solicitation campaigns that generate only **contributions**. |
| • Carnivals, | |
| • Sports events, and | Proceeds from these activities are considered contributions and should be reported on line 1f. |
| • Auctions. | |

Fundraising events don't include events or activities that substantially further the organization's exempt purpose even if they also raise funds. Revenue from such program service activities is reported on line 2.

**Example.** An organization formed to promote and preserve folk music and related cultural traditions holds an annual folk music festival featuring concerts, handcraft demonstrations, and similar activities. Because the festival directly furthers the organization's exempt purpose, income from ticket sales should be reported on line 2 as program service revenue.

Fundraising events sometimes generate both **contributions** and income, such as when an individual pays more than the retail value for the goods or services furnished. Report in parentheses the total amount from fundraising events that

represents contributions rather than payment for goods or services. Treat the following as contributions.

- Amounts paid in excess of retail value of goods or services furnished. See *Example*, earlier, under *Line 1c*.
- Amounts received from fundraising events when the organization gives items of only nominal value to recipients. See Pub. 1771.

**Example.** In return for a contribution of any amount, donors receive a keychain with the organization's logo. All amounts received should be reported as contributions on line 1f and all associated expenses on the appropriate lines in Part IX, column (D). In such a case, no amounts would be reported on line 8.

**Line 8b.** Enter on this line both the cost or other basis of any items sold at the events and the expenses that relate directly to the production of the revenue portion of the fundraising activity, whether incurred before, during, or after the event. In the line 1c dinner example referred to earlier, the cost of the food and beverages served and invitation to the dinner would be among the items reported on line 8b. Indirect fundraising expenses, such as certain advertising expenses associated with raising these **contributions**, must be reported on the appropriate lines in Part IX, column (D), and not on line 8b.

**Line 8c.** Enter on line 8c the difference between lines 8a and 8b. Show any loss in parentheses. The organization must report net income from **fundraising events** as unrelated business revenue (column (C)) or as revenue excluded from tax under section 512, 513, or 514 (column (D)).

**Example 1.** If an organization receives a donation of a home theater system with an **FMV** of $5,000 at the time of donation; sells the system for $7,500 at an auction, after having displayed the system and its FMV (which remains $5,000) at and before auction so that its value was known to the bidders; and incurs $500 in costs related to selling the system at auction, it should report the following amounts in Part VIII:

| | |
|---|---|
| Line 1c (**contributions** from fundraising events): | $2,500 |
| Line 1f (all other contributions): | $5,000 |
| Line 1g (noncash contributions): | $5,000 |
| Line 8a (gross income from fundraising events): | $5,000 |
| Line 8a parenthetical (contributions reported on line 1c): | $2,500 |
| Line 8b (direct expenses: $5,000 **FMV** on donation date + $500 in auction costs): | $5,500 |
| Line 8c (net income from fundraising event, line 8a minus line 8b): | ($500) |

**Example 2.** If the home theater system in *Example 1* sold at auction for $2,500 instead of $7,500, and all other facts in *Example 1* remain the same, then the organization should report the following amounts in Part VIII:

| Line 1c (contributions from fundraising events): | $0 |
| Line 1f (all other contributions): | $5,000 |
| Line 1g (noncash contributions): | $5,000 |
| Line 8a (gross income from fundraising events): | $2,500 |
| Line 8a parenthetical (contributions reported on line 1c): | $0 |
| Line 8b (direct expenses: $5,000 FMV on donation date + $500 in auction costs): | $5,500 |
| Line 8c (net income from fundraising event, line 8a minus line 8b): | ($3,000) |

In both *Example 1* and *Example 2*, the organization would need to report the $5,000 value of this contribution on Schedule M (Form 990) if it received over $25,000 in total noncash contributions during the **tax year**.

**Line 9a.** Line 9a should include only gross income from **gaming** activities. It shouldn't include **contributions** from gaming activities, which should be reported on line 1f. Organizations that report more than $15,000 on line 9a must also answer "Yes" on Part IV, line 19, and complete Part III of Schedule G (Form 990).

| Types of gaming include, but aren't limited to: | |
| --- | --- |
| - **Bingo** | - Nevada Club tickets |
| - **Pull tabs** | - Certain Casino nights |
| - **Instant bingo** | - Certain Las Vegas nights |
| - Raffles | - Coin-operated gambling devices including: |
| - Scratch-offs | • Slot machines |
| - Charitable **gaming tickets** | • Electronic video slot or line games |
| - Break-opens | • Video poker |
| - Hard cards | • Video blackjack |
| - Banded tickets | • Video keno |
| - Jar tickets | • Video **bingo** |
| - Pickle cards | • Video **pull tab** games |

Many games of chance are taxable. Income from **bingo** games isn't generally subject to the tax on unrelated business income if the games meet the legal definition of bingo. For a game to meet the legal definition of bingo, wagers must be placed, winners must be determined, and prizes or other property must be distributed in the presence of all persons placing wagers in that game.

A wagering game that doesn't meet the legal definition of bingo doesn't qualify for the exclusion, regardless of its name. For example, **instant bingo**, in which a player buys a pre-packaged bingo card with **pull tabs** that the player removes to determine if she or he is a winner, doesn't qualify. See Pub. 598.

**Line 9b.** Enter on this line the expenses that relate directly to the production of the revenue portion of the **gaming** activity.

Direct expenses of gaming include:
- Cash prizes;
- Noncash prizes;
- Compensation to **bingo** callers and workers;
- Rental of gaming equipment; and
- Cost of gaming supplies such as **pull tabs**, bingo cards, etc.

**Line 9c.** Enter the difference between lines 9a and 9b. Show any loss in parentheses.

**Line 10a.** Enter the organization's gross income from sales of inventory items, less returns and allowances. Sales of inventory items reportable on line 10a are sales of items that are donated to the organization, that the organization makes to sell to others, or that it buys for resale. Sales of inventory don't, however, include the sale of goods related to a **fundraising event**, which must be reported on line 8. Sales of investments on which the organization expected to profit by appreciation and sale aren't reported here. Report sales of investments on line 7.

The organization must report the sales revenue regardless of whether the sales activity is an exempt function of the organization or an **unrelated trade or business**.

**Line 10b.** Enter the cost of goods sold related to the sales of inventory. The usual items included in cost of goods sold are direct and indirect labor, materials and supplies consumed, freight-in, and a portion of overhead expenses. Marketing and distribution costs aren't included in the cost of goods sold but are reported as expenses in Part IX. For purposes of Part VIII, the organization may include as cost of donated goods their **FMVs** at the time of acquisition.

**Line 10c.** Enter in the appropriate columns (A) through (D) the net income or (loss) from the sale of inventory items. Show any loss in parentheses.

**Line 11.** Enter all other types of revenue not reportable on lines 1 through 10. Enter the three largest sources on lines 11a through 11c and all other revenue on line 11d.

 *For each amount entered on lines 11a, 11b, and 11c, the organization must also enter a corresponding business activity code from* Business Activity Codes, *later. If you don't see a code for the activity you are trying to categorize, select the appropriate code from the NAICS website at 2022 NAICS Census Chart. Select the most specific 6-digit code available that describes the activity producing the income. Note that most codes describe more than one type of activity. Avoid using codes that describe the organization rather than the income-producing activity. If none of the listed codes accurately describe the activity, enter "900099." Use of these codes doesn't imply that the activity is unrelated to the organization's exempt purpose.*

**Line 12.** For column (A), add lines 1h, 2g, 3 through 5, 6d, 7d, 8c, 9c, 10c, and 11e. For columns (B) through (D), add lines 2a through 2f, 3, 4, 5, 6d, 7d, 8c, 9c, 10c, and 11a through 11d. The amounts reported on line 12 in columns (B), (C), and (D), plus the amount reported on line 1h, should equal line 12, column (A).

# Part IX. Statement of Functional Expenses

Check the box in the heading of Part IX if Schedule O (Form 990) contains any information pertaining to this part.

Use the organization's normal accounting method to complete this section. If the organization's accounting system doesn't allocate expenses, the organization can use any reasonable method of allocation. The organization must report amounts accurately and document the method of allocation in its records. Report any expense described on lines 1–23 on the appropriate line; don't report such expense on line 24. Don't report in Part IX expenses that must be reported on line 6b, 7b, 8b, 9b, or 10b in Part VIII.

**Column (A)—Total**
Section 501(c)(3) and 501(c)(4) organizations must complete columns (A) through (D).

All other organizations must complete column (A) but can complete columns (B), (C), and (D).

 *State reporting requirements can be different from IRS reporting requirements applicable to Part IX.*

**Column (B)—Program Services**

*Program services* are mainly those activities that further the organization's exempt purposes. Fundraising expenses shouldn't be reported as program service expenses even though one of the organization's purposes is to solicit **contributions**.

Include **lobbying** expenses in this column if the lobbying is directly related to the organization's exempt purposes.

***Example.*** Foundation M, an organization exempt under section 501(c)(3), has the exempt purpose of improving health care for senior citizens. Foundation M operates in State N. The legislature of State N is considering legislation to improve funding of health care for senior citizens. Foundation M lobbies state legislators in support of the legislation. Since this lobbying is directly related to Foundation M's exempt purpose, it would be considered an exempt function expense, and would be included under column (B).

Program services can also include the organization's **unrelated trade or business** activities. Publishing a magazine is a program service even though the magazine contains both editorials and articles that further the organization's exempt purpose as well as advertising, the income from which is taxable as **unrelated business income**.

Also include costs to secure a grant, or contract, to conduct research, produce an item, or perform a program service, if the activities are conducted to meet the grantor's or other contracting party's specific needs. Don't report these costs as fundraising expenses in column (D). Costs to solicit restricted or unrestricted grants to provide services to the general public should be reported in column (D).

**Column (C)—Management and General**

Use column (C) to report expenses that relate to the organization's overall operations and management, rather than to **fundraising activities** or program services. Overall management usually includes the salaries and expenses of the organization's CEO and his or her staff, unless a part of their time is spent directly supervising program services or fundraising activities. In that case, their salaries and expenses should be allocated among management, fundraising, and program services.

Expenses incurred to manage investments must be reported in column (C). **Lobbying** expenses should be reported in this column if they don't directly relate to the organization's exempt purposes.

Organizations must also report the following in column (C): costs of board of directors' meetings; committee meetings and staff meetings (unless they involve specific program services or fundraising activities); general legal services; accounting (including patient accounting and billing); general liability insurance; office management; auditing, human resources, and other centralized services; preparation, publication, and distribution of an annual report; and management of investments.

However, report expenses related to the production of program-related income in column (B) and expenses related to the production of rental income on Part VIII, line 6b. Rental expenses incurred for the organization's office space or facilities are reported on line 16.

Don't use this column to report costs of special meetings or other activities that relate to fundraising or specific program services.

**Column (D)—Fundraising**

Fundraising expenses are the expenses incurred in soliciting cash and noncash **contributions**, gifts, and grants. Report as fundraising expenses all expenses, including allocable overhead costs, incurred in (a) publicizing and conducting fundraising campaigns; and (b) soliciting bequests and grants from individuals, foundations, other organizations, or **governmental units** that are reported on Part VIII, line 1. This includes expenses incurred in participating in federated fundraising campaigns; preparing and distributing fundraising manuals, instructions, and other materials; and preparing to solicit or receive contributions. Report direct expenses of fundraising events on Part VIII, line 8b, rather than in Part IX, column (D). However, report indirect expenses of fundraising events, such as certain advertising expenses, in Part IX, column (D), rather than on Part VIII, line 8b.

***Example.*** For an employee who works on fundraising 40% of the time and program management 60% of the time, an organization must allocate that employee's salary 40% to fundraising and 60% to program service expenses. It can't report the 100% of salary as program expenses simply because the employee spent over 50% of his time on program management.

## Allocating Indirect Expenses

Direct costs are expenses that can be identified specifically with an organization's activity or project, and can be assigned to an activity or project with a high degree of accuracy. Indirect costs are costs that can't be identified specifically with an activity or project. For example, a computer bought by a university specifically for a research project is a direct cost. In contrast, the costs of software licensing for programs that run on all the university's computers are indirect costs.

Colleges, universities, hospitals, and other organizations that incur indirect expenses in various cost centers (such as organizational memberships, books and subscriptions, and regular telecommunications costs) can allocate and report such expenses in the following manner.

1. Report the expenses of all indirect cost centers in column (C), lines 5 through 24.

2. As a separate line item of line 24, enter "Allocation of [name of indirect cost center] expenses."

a. If any of the cost center's expenses are allocated to expenses listed in Part VIII such as the expenses attributable to **fundraising events** and activities, enter such expenses as a negative figure in columns (A) and (C).

b. Allocate expenses to column (B) or (D) as positive amounts.

c. Add the amounts in columns (B) and (D) and enter the sum as a negative offsetting amount in column (C). Don't make any entries in column (A) for these offsetting entries.

***Example.*** An organization reports in column (C) $50,000 of its actual management and general expenses and $100,000 of expenses of an indirect cost center that are allocable in part to other functions. The total of lines 5 through 24 of column (C) would be $150,000 before the indirect cost center allocations were made. Assume that of the $100,000 total expenses of the cost center, $10,000 was allocable to fundraising; $70,000 to various program services; $15,000 to management and general functions; and $5,000 to special events and activities. To report this in Part IX under this optional method:

1. Indicate the cost center, the expenses of which are being allocated, on line 24 as "Allocation of [specify the indirect cost center] expenses";

2. Enter a decrease of $5,000 on the same line in column (A), *Total expenses*, representing the fundraising event expenses that were already reported in Part VIII, line 8b;

3. Enter $70,000 on the same line in column (B), *Program service expenses*;

4. Enter $10,000 on the same line in column (D), *Fundraising expenses*; and

5. Enter a decrease of $85,000 on the same line in column (C), *Management and general expenses*, to represent the allocations to functional areas other than management and general.

After making these allocations, the column (C), line 25, total functional expenses would be $65,000, consisting of the $50,000 actual management and general expense amount and the $15,000 allocation of the aggregate cost center expenses to management and general.

The above is an example of a one-step allocation that shows how to report the allocation in Part IX. This reporting method would actually be more useful to avoid multiple-step allocations involving two or more cost centers. Without this optional reporting method, the total expenses of the first cost center would be allocated to the other functions, and might include an allocation of part of these expenses to another cost center. The expenses of the second cost center would then be allocated to other functions and, perhaps, to other cost centers, and so on. The greater the number of these cost centers that are allocated out, the more difficult it is to preserve the object classification identity of the expenses of each cost center (for example, salaries, interest, supplies, etc.). Using the reporting method described above avoids this problem.

 *The intent of the above instructions is only to facilitate reporting indirect expenses by both object classification and function. These instructions don't authorize the allocation to other functions of expenses that should be reported as management and general expenses.*

# Grants and Other Assistance to Governments, Organizations, and Individuals

Organizations should report the amount of **grants and other assistance** on lines 1 through 3. Report expenses incurred in selecting recipients or monitoring compliance with the terms of a grant or award on lines 5 through 24. See the following instructions.

**Note.** Organizations can report this information according to **ASC 958** but aren't required to do so. For example, an organization that follows **ASC 958** and makes a grant during the **tax year** to be paid in future years should report the grant's present value on this year's Form 990 and report accruals of additional value increments in future years.

**Line 1.** Enter the amount that the organization, at its own discretion, paid in grants to domestic organizations and domestic governments. United Way and similar federated fundraising organizations should report grants to member or participating agencies on line 1. Organizations must report

voluntary grants to state or local affiliates for specific (restricted) purposes or projects on line 1.

If the organization reported on line 1 more than $5,000 of **grants or other assistance** to any **domestic organization** or to any **domestic government**, the organization must complete Parts I and II of Schedule I (Form 990), Grants and Other Assistance to Organizations, Governments, and Individuals in the United States.

*Section 501(c)(21) trusts.* Use line 1 to report amounts paid by the trust to:
• The Federal Black Lung Disability Trust Fund pursuant to section 3(b)(3) of Public Law 95-227, or
• For insurance exclusively covering liabilities under sections 501(c)(21)(A)(i)(I) and 501(c)(21)(A)(i)(IV). For details, see Regulations section 1.501(c)(21)-1(d).

**Line 2.** Enter the amount paid by the organization to **domestic individuals** in the form of scholarships, fellowships, stipends, research grants, and similar payments and distributions.

Also include **grants and other assistance** paid to third-party providers for the benefit of specified **domestic individuals**. For example, a grant payment to a **hospital** to cover the medical expenses of a specific patient must be reported on line 2. By comparison, a grant to the same hospital to provide services to the general public or to unspecified charity patients must be reported on line 1.

If line 2 exceeds $5,000, the organization must complete Parts I and III of Schedule I (Form 990).

*Section 501(c)(21) trusts.* Use line 2 to report amounts paid by the trust to or for the benefit of miners or their beneficiaries.

**Line 3.** The organization must enter the total amount of **grants and other assistance** made to foreign organizations, foreign governments, and foreign individuals, and to **domestic organizations** or **domestic individuals** for the purpose of providing grants or other assistance to designated **foreign organizations** or **foreign individuals**.

If line 3 exceeds $5,000, the organization may have to complete Part II and/or Part III of Schedule F (Form 990), Statement of Activities Outside the United States. See the Instructions for Schedule F (Form 990) for more information.

**Line 4.** Enter the payments made by the organization to provide benefits to members (such as payments made by an organization exempt under section 501(c)(8), 501(c)(9), or 501(c)(17) to obtain insurance benefits for members, or patronage dividends paid by section 501(c)(12) organizations to their members). Don't report on this line the cost of employment-related benefits such as health insurance, life insurance, or disability insurance provided by the organization to its **officers, directors, trustees, key employees,** and other **employees**. Report such costs for officers, directors, trustees, and key employees on Part IX, line 5; report such costs for other disqualified persons on Part IX, line 6; and report such costs for other employees on Part IX, lines 8 and 9.

**Line 5.** Enter the total **compensation** paid to current **officers, directors, trustees,** and **key employees** (as defined in Part VII, earlier) for the organization's **tax year**. Compensation includes all forms of income and other benefits earned or

## Allocating Indirect Expenses—Example

| Line | (A) | (B) | (C) | (D) |
|---|---|---|---|---|
| 5–24a | $150,000 | - | $150,000 | - |
| 24b Allocation of $100,000 indirect cost center expenses reported in (C) | (5,000) | 70,000 | (85,000) | 10,000 |
| 25 | $145,000 | $70,000 | $65,000 | $10,000 |

received from the filing organization, common paymasters, and payroll/reporting agents in return for services rendered to the filing organization, including compensation reported on Forms W-2 and 1099, pension plan contributions and accruals, and other employee benefits, but doesn't include non-compensatory expense reimbursements or allowances. Report all compensation amounts relating to such an individual, including those related to services performed in a capacity other than as an officer, director, trustee, or key employee.

 *Compensation* for Part IX is reported based on the accounting method and *tax year* used by the organization, rather than the definitions and calendar year used to complete Part VII or Schedule J (Form 990) regarding compensation of certain *officers, directors, trustees,* and other *employees*.

**Note.** To the extent the following examples discuss allocation of expenses in columns (B), (C), and (D), they apply only to filers required to complete those columns.

**Line 6.** Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations must report the total **compensation** and other distributions provided to **disqualified persons** and persons described in section 4958(c)(3)(B) to the extent not included on line 5. See *Appendix G*.

Compensation includes all forms of income and other benefits earned or received from the filing organization, common paymasters, and payroll/reporting agents in return for services rendered to the filing organization, including compensation reported on Forms W-2 and 1099, pension plan contributions and accruals, and other employee benefits, but doesn't include non-compensatory expense reimbursements or allowances.

**Line 7.** Enter the total amount of **employee** salaries, wages, fees, bonuses, severance payments, and similar amounts paid or provided from the filing organization, common paymasters, and payroll/reporting agents in return for services rendered to the filing organization that aren't reported on line 5 or 6.

**Line 8.** Enter the employer's share of contributions to, or accruals under, qualified and nonqualified pension and deferred compensation plans for the year. The organization should include contributions made by the filing organization, common paymasters, and payroll/reporting agents to the filing organization's sections 401(k) and 403(b) pension plans on behalf of **employees**. However, it shouldn't include contributions to qualified pension, profit-sharing, and stock bonus plans under section 401(a) solely for the benefit of current or former **officers, directors, trustees, key employees,** or **disqualified persons**, which are reportable on line 5 or 6.

 *Complete Form 5500 for the organization's plan and file it as a separate return. If the organization has more than one pension plan, complete a Form 5500 for each plan. File the form by the last day of the 7th month after the plan year ends.*

**Line 9. Other employee benefits.** Enter contributions by the filing organization, common paymasters, and payroll/reporting agents to the filing organization's employee benefit programs (such as insurance, health, and welfare programs that aren't an incidental part of a pension plan included on line 8), and the cost of other employee benefits.

For example, report expenses for employee events such as a picnic or holiday party on line 9. Don't include **contributions** on behalf of current or former **officers, directors, trustees, key employees,** or other persons that were included on line 5 or 6.

**Line 10. Payroll taxes.** Enter the amount of federal, state, and local payroll taxes for the year but only those taxes that are imposed on the organization as an employer. This includes the

employer's share of social security and Medicare taxes, the federal unemployment tax (FUTA), state unemployment compensation taxes, and other state and local payroll taxes. Don't include on line 10 taxes withheld from employees' salaries and paid to various governmental units such as federal, state, and local income taxes and the employees' shares of social security and Medicare taxes. Such withheld amounts are reported as compensation.

**Line 11. Fees for services paid to nonemployees (independent contractors).** Enter on lines 11a through 11g amounts for services provided by **independent contractors** for management, legal, accounting, lobbying, **professional fundraising services**, investment management, and other services, respectively. Include amounts whether or not a Form 1099 was issued to the **independent contractor**. Don't include on line 11 amounts paid to or earned by **employees**, officers, directors, trustees, or disqualified persons for these types of services, which must be reported on lines 5 through 7.

If the organization is able to distinguish between fees paid for independent contractor services and expense payments or reimbursements to the contractor(s), report the fees paid for services on line 11 and the expense payments or reimbursements on the applicable lines in Part IX (including line 24 if no other line is applicable). If the organization is unable to distinguish between service fees and expense payments or reimbursements, report all such amounts on line 11.

**Line 11a. Management fees.** Enter the total fees charged for management services provided by outside firms and individuals.

**Line 11b. Legal fees.** Enter the total legal fees charged by outside firms and individuals. Don't include any penalties, fines, settlements, or judgments imposed against the organization as a result of legal proceedings. Report those expenses on line 24. Report any amounts for lobbying services provided by attorneys on line 11d.

**Line 11c. Accounting fees.** Enter the total accounting and auditing fees charged by outside firms and individuals.

**Line 11d. Lobbying fees.** Enter amounts for activities intended to influence foreign, national, state, or local legislation, including direct **lobbying** and grassroots lobbying.

**Line 11e. Professional fundraising fees.** Enter amounts paid for **professional fundraising services**, including solicitation campaigns and advice or other consulting services supporting in-house fundraising campaigns. If the organization is able to distinguish between fees paid for professional fundraising services and amounts paid for fundraising expenses such as printing, paper, envelopes, postage, mailing list rental, and equipment rental, then fees paid for professional fundraising services should be reported on line 11e and amounts paid for fundraising expenses should be reported on line 24 as other expenses. If the organization is unable to distinguish between these amounts, it should report all such fees and amounts on line 11e.

**Line 11f. Investment management fees.** Enter amounts for investment counseling and portfolio management. Monthly account service fees are considered portfolio management expenses, and must be reported here. Don't include transaction costs such as brokerage fees and commissions, which are considered sales expenses and are included on Part VIII, line 7b.

**Line 11g. Other fees for services.** Enter amounts for other **independent contractor** services not listed on lines 11a through 11f. For example, amounts paid to an independent contractor for advocacy services that don't constitute lobbying should be reported here. For health care organizations, payments to health care professionals who are independent

contractors are reported on line 11g. Report on line 11g payments to payroll agents, common paymasters, and other third parties for services provided by those third parties to the filing organization. Report on lines 5–10, as appropriate, payments that reimburse third parties for compensation to the organization's **officers, directors, trustees, key employees,** or other **employees**. Report payments to contractors for information technology services on line 14, rather than on line 11g.

If the amount on line 11g exceeds 10% of the amount on line 25, column (A), the organization must list the type and amount of each line 11g expense on Schedule O (Form 990).

**Line 12. Advertising and promotion expenses.** Enter amounts paid for advertising. Include amounts for print and electronic media advertising. Also include Internet site link costs, signage costs, and advertising costs for the organization's in-house fundraising campaigns. Include fees paid to independent contractors for advertising, except for fees paid to **independent contractors** for conducting professional **fundraising** services or campaigns, which are reported on line 11e.

**Line 13. Office expenses.** Enter amounts for supplies (office, classroom, or other supplies); telephone (cell phones and landlines) and facsimile; postage (overnight delivery, parcel delivery, trucking, and other delivery expenses) and mailing expenses; shipping materials; equipment rental; bank fees; and other similar costs. Also include printing costs of a general nature. Printing costs that relate to conferences or conventions must be reported on line 19.

**Line 14. Information technology.** Enter amounts for information technology, including hardware, software, and support services such as maintenance, help desk, and other technical support services. Also include expenses for infrastructure support, such as website design and operations, virus protection and other information security programs and services to keep the organization's website operational and secured against unauthorized and unwarranted intrusions, and other information technology contractor services. Report payments to information technology employees on lines 5 through 10. Report depreciation/amortization related to information technology on line 22.

**Line 15. Royalties.** Enter amounts for royalties, license fees, and similar amounts that allow the organization to use intellectual property such as patents and copyrights.

**Line 16. Occupancy.** Enter amounts for the use of office space or other facilities, including rent; heat, light, power, and other utilities expenses; property insurance; real estate taxes; mortgage interest; and similar occupancy-related expenses. Don't include on line 16 expenses reported as office expenses (such as telephone expenses) on line 13.

Don't net any rental income received from leasing or subletting rented space against the amount reported on line 16 for occupancy expenses. If the tenant's activities are related to the organization's exempt purpose, report rental income as program service revenue on Part VIII, line 2, and allocable occupancy expenses on line 16. However, if the tenant's activities aren't program related, report the rental income on Part VIII, line 6a, and related rental expenses on Part VIII, line 6b.

Don't include employee salaries or depreciation as occupancy expenses. These expenses are reported on lines 5 through 7 and 22, respectively.

**Line 17. Travel.** Enter the total travel expenses, including transportation costs (fares, mileage allowances, and automobile expenses), meals and lodging, and per diem payments. Travel costs include the expenses of purchasing, leasing, operating, and repairing any vehicles owned by the organization and used

for the organization's activities. However, if the organization leases vehicles on behalf of its executives or other employees as part of an executive or employee compensation program the leasing costs are considered employee compensation and are reported on lines 5 through 7.

**Line 18. Payments of travel or entertainment expenses for any federal, state, or local public officials.** Enter total amounts for travel or entertainment expenses (including reimbursement for such costs) for any federal, state, or local public officials (as determined under section 4946(c)) and their family members (as determined under section 4946(d)). Report amounts for a particular public official only if aggregate expenditures for the year relating to such official (including family members of such official) exceed $1,000 for the year.

For expenditures that aren't specifically identifiable to a particular individual, the organization can use any reasonable allocation method to estimate the cost of the expenditure to an individual. Amounts not described above can be included in the reported total amount for line 18 or can be reported on line 24. The organization is responsible for keeping records of all travel and entertainment expenses related to a **government official** whether or not the expenses are reported on line 18 or line 24.

**Line 19. Conferences, conventions, and meetings.** Enter the total expenses incurred by the organization in conducting meetings related to its activities. Include such expenses as facility rentals, speakers' fees and expenses, and printed materials. Include the registration fees (but not travel expenses) paid for sending any of the organization's staff to conferences, conventions, and meetings conducted by other organizations. Travel expenses incurred by **officers, directors,** and **employees** attending such conferences, conventions, and meetings must be reported on line 17.

**Line 20. Interest.** Enter the total interest expense for the year. Don't include any interest attributable to rental property (reported on Part VIII, line 6b) or any mortgage interest (reported as an occupancy expense on line 16).

**Line 21. Payments to affiliates.** Enter certain types of payments to organizations affiliated with (closely related to) the filing organization.

*Payments to affiliated state or national organizations.* Dues paid by a local organization to its affiliated state or national (parent) organization are reported on line 21. Report on this line predetermined quota support and dues (excluding membership dues of the type described below) by local agencies to their state or national organizations for unspecified purposes, that is, general use of funds for the national organization's own program and support services.

*Purchases from affiliates.* Purchases of goods or services from affiliates aren't reported on line 21 but are reported as expenses in the usual manner.

*Expenses for providing goods or services to affiliates.* In addition to payments made directly to affiliated organizations, expenses for providing goods or services to affiliates can be reported on line 21 if:

• The goods or services provided aren't related to the program services conducted by the organization furnishing them (for example, when a local organization incurs expenses in the production of a solicitation film for the state or national organization); and

• The costs involved aren't connected with the management and general or fundraising functions of the filing organization. For example, when a local organization gives a copy of its mailing list to the state or national organization, the expense of preparing the copy provided can be reported on line 21, but not the expenses of preparing and maintaining the local organization's master list.

*Voluntary awards or grants to affiliates.* Don't report on line 21 voluntary awards or grants made by the organization to its state or national organizations for specified purposes.

*Membership dues paid to other organizations.* Report membership dues paid to obtain general membership benefits from other organizations, such as regular services, publications, and other materials, on line 24. This is the case if a charitable organization pays dues to a trade association comprised of otherwise unrelated members.

 *Properly distinguishing between payments to affiliates and grants and allocations is especially important if the organization uses Form 990 for state reporting purposes. If the organization uses Form 990 only for reporting to the IRS, payments to affiliated or national organizations that don't represent membership dues reportable as miscellaneous expenses on line 24 can be reported on either line 21 or line 1.*

**Line 22. Depreciation, depletion, and amortization.** If the organization records depreciation, depletion, amortization, or similar expenses, enter the total on line 22. Include any depreciation or amortization of leasehold improvements and intangible assets. An organization isn't required to use the Modified Accelerated Cost Recovery System (MACRS) to compute depreciation reported on Form 990. For an explanation of acceptable methods for computing depreciation, see Pub. 946, How To Depreciate Property. If an amount is reported on this line, the organization is required to maintain books and records to substantiate any amount reported.

**Line 23. Insurance.** Enter total insurance expenses other than insurance attributable to rental property (reported on Part VIII, line 6b). Don't report on this line payments made by organizations exempt under section 501(c)(8), (9), or (17) to obtain insurance benefits for members. Report those expenses on line 4. Don't report on this line the cost of employment-related benefits such as health insurance, life insurance, or disability insurance provided by the organization to or for its **officers, directors, trustees, key employees,** and other **employees**. Report the costs for officers, directors, trustees, and key employees on Part IX, line 5; report the costs for other disqualified persons on Part IX, line 6; and report the costs for other employees on Part IX, line 9. Report the costs for members on Part IX, line 4, not on Part IX, line 23. Don't report on this line property or occupancy-related insurance. Report those expenses on line 16.

**Line 24. Other expenses.** Enter the types and amounts of expenses that weren't reported on lines 1 through 23. Include expenses for medical supplies incurred by health care/medical organizations. Include payments to the organization to professional fundraisers of fundraising expenses such as printing, paper, envelopes, postage, mailing list rental, and equipment rental, if the organization is able to distinguish these expense amounts from fees for professional fundraising services reportable on line 11e. Enter the four largest dollar amounts on lines 24a through 24d and the total of all remaining miscellaneous expenses on line 24e. Don't include a separate entry for "miscellaneous expenses," "program expenses," "other expenses," or a similar general category on lines 24a–d. If the amount on line 24e exceeds 10% of the amount on line 25, column (A), the organization must list the type and amount of each line 24e expense on Schedule O (Form 990).

The organization must separately report the amount, if any, of **unrelated business income** taxes that it paid or accrued during the **tax year** on line 24.

**Line 25. Total functional expenses. Section 501(c)(3) and 501(c)(4) organizations.** Add lines 1 through 24e and enter the totals on line 25 in columns (A), (B), (C), and (D).

**All other organizations.** Add lines 1 through 24e and enter the total on line 25 in column (A).

**Line 26. Joint costs.** Organizations that included in program service expenses (column (B) of Part IX) any joint costs from a combined educational campaign and fundraising solicitation must disclose how the total joint costs of all such combined activities were allocated in Part IX between education and fundraising. For instance, if the organization spent $100,000 on joint costs and allocated 10% to education, it would report $100,000 on line 26, column (A); $10,000 in column (B); and $90,000 in column (D). Any costs reported here aren't to be deducted from the other lines in Part IX on which they are reported. Don't check the box unless the organization followed SOP 98-2 (FASB ASC 958-720) in allocating such costs.

An organization conducts a combined educational campaign and fundraising solicitation when it solicits **contributions** (by mail, telephone, broadcast media, or any other means) and includes, with the solicitation, educational material or other information that furthers a bona fide non-fundraising exempt purpose of the organization.

Expenses attributable to providing information regarding the organization itself, its use of past contributions, or its planned use of contributions received are fundraising expenses and must be reported in column (D). Don't report such expenses as program service expenses in column (B).

Any method of allocating joint costs between columns (B) and (D) must be reasonable under the facts and circumstances of each case. Most states with reporting requirements for charitable organizations and other organizations that solicit contributions either require or allow reporting of joint costs under AICPA Statement of Position 98-2 (SOP 98-2), Accounting for Costs of Activities of Not-for-Profit Organizations and State and Local Governmental Entities That Include Fundraising, now codified in FASB Accounting Standards Codification 958-720, Not-for-Profit Entities—Other Expenses (FASB ASC 958-720).

## Part X. Balance Sheet

Check the box in the heading of Part X if Schedule O (Form 990) contains any information pertaining to this part.

*Section 501(c)(21) trusts.* Use Schedule O (Form 990) to report the **FMV** of the trust's assets at the beginning of the mine operator's tax year within which the trust's tax year begins.

All organizations must complete Part X. No substitute balance sheet will be accepted. All references to Schedule D are to Schedule D (Form 990).

**Column (A)—Beginning of year.** In column (A), enter the amount from the preceding year's Form 990, column (B). If the organization was excepted from filing Form 990 for the preceding year, enter amounts the organization would have entered in column (B) for that year. If this is the organization's first year of existence, enter zeros on lines 16, 26, 32, and 33 in column (A).

**Column (B)—End of year.** When Schedule D (Form 990) reporting is required for any item in Part X, it is only for the end-of-year balance sheet figure reported in column (B). If this is the organization's final return, enter zeros on lines 16, 26, 32, and 33 in column (B).

**Line 1. Cash (non-interest-bearing).** Enter the total funds that the organization has in cash, including amounts held as "petty cash" at its offices or other facilities, and amounts held in banks in non-interest-bearing accounts. Don't include cash balances held in an investment account with a financial institution and reported on lines 11 through 13.

**Line 2. Savings and temporary cash investments.** Enter the combined total of amounts held in interest-bearing checking and

savings accounts, deposits in transit, temporary cash investments (such as money market funds, commercial paper, and certificates of deposit), and U.S. Treasury bills or other governmental obligations that mature in less than a year. Don't include cash balances held in an investment account with a financial institution and reported on lines 11 through 13. Don't include advances to **employees** or **officers** or refundable deposits paid to suppliers or other **independent contractors**. Report the income from these investments on Part VIII, line 3.

**Line 3. Pledges and grants receivable, net.** Enter the total of (a) all pledges receivable, less any amounts estimated to be uncollectible, including pledges made by **officers**, **directors**, **trustees**, **key employees**, and **highest compensated employees**; and (b) all grants receivable.

Organizations that follow **ASC 958** can report the present value of the grants receivable as of each balance sheet date.

**Line 4. Accounts receivable, net.** Enter the organization's total accounts receivable (reduced by any allowance for doubtful accounts) from the sale of goods and the performance of services. Report claims against vendors or refundable deposits with suppliers or others here, if not significant in amount. Otherwise, report them on line 15, Other assets. Report the net amount of all receivables due from **officers, directors, trustees,** or **key employees** on line 5. Report receivables (including loans and advances) due from other disqualified persons on line 6. Receivables (including loans and advances) from **employees** who aren't current or former officers, directors, trustees, key employees, or **disqualified persons** must be reported on line 7.

**Lines 5 and 6. Loans and other receivables from current and former officers, directors, trustees, key employees, and creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons.** Report on line 5 loans and other receivables due from current or former **officers, directors, trustees, key employees,** and **creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons**. Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations must also report on line 6 receivables due from other **disqualified persons** (for purposes of section 4958, see *Appendix G*), and from persons described in section 4958(c)(3)(B). Include all amounts owed on secured and unsecured loans made to such persons. Report interest from such receivables on Part VIII, line 11. Don't report on line 5 or 6 (a) pledges or grants receivable, which are to be reported on line 3; or (b) receivables that are excepted from reporting on Schedule L (Form 990), Part II (except for **excess benefit transactions** involving receivables). If the organization must report loans and other receivables on either line 5 or 6, it must answer "Yes" on Part IV, line 26.

**Line 7. Notes and loans receivable, net.** Enter the net amount of all notes receivable and loans receivable not listed on lines 5 and 6, including receivables from unrelated third parties. The term "unrelated third parties" includes **independent contractors** providing goods or services and **employees** who aren't current or former **officers, directors, trustees, key employees, highest compensated employees,** or **disqualified persons**. Don't include the following.

- Receivables reported on line 4.
- Program-related investments reported on line 13.
- Notes receivable acquired as investments reported on line 12.

**Line 8. Inventories for sale or use.** Enter the amount of materials, goods, and supplies held for future sale or use, whether purchased, manufactured by the organization, or donated.

**Line 9. Prepaid expenses and deferred charges.** Enter the amount of short-term and long-term prepayments of expenses attributable to one or more future accounting periods. Examples include prepayments of rent, insurance, or pension costs, and expenses incurred for a solicitation campaign to be conducted in a future accounting period.

**Line 10a. Land, buildings, equipment, and leasehold improvements.** Enter the cost or other basis of all land, buildings, equipment, and leasehold improvements held at the end of the year. Include both property held for investment purposes and property used for the organization's exempt functions. If an amount is reported here, answer "Yes" on Part IV, line 11a, and complete Schedule D (Form 990), Part VI. The amount reported on line 10a must equal the total of Schedule D, Part VI, columns (a) and (b).

**Line 10b. Accumulated depreciation.** Enter the total amount of accumulated depreciation for the assets reported on line 10a. The amount reported on line 10b must equal the total of Schedule D (Form 990), Part VI, column (c).

**Line 10c. Column (A)—Beginning of year.** Enter the cost or other basis of land, buildings, and equipment, net of any accumulated depreciation, as of the beginning of the year.

**Line 10c. Column (B)—End of year.** Enter line 10a minus line 10b. The amount reported must equal the total of Schedule D (Form 990), Part VI, column (d).

**Line 11. Investments—publicly traded securities.** Enter the total value of **publicly traded securities** held by the organization as investments. Publicly traded securities include common and preferred stocks, bonds (including governmental obligations such as bonds and Treasury bills), and mutual fund shares that are listed and regularly traded in an over-the-counter market or an established exchange and for which market quotations are published or are otherwise readily available. Report dividends and interest from these **securities** on Part VIII, line 3.

Don't report on line 11 publicly traded stock for which the organization holds 5% or more of the outstanding shares of the same class or publicly traded stock in a corporation that comprises more than 5% of the organization's **total assets**. Report these investments on line 12.

**Line 12. Investments—other securities.** Enter on this line the total value of all **securities**, partnerships, or funds that aren't publicly traded. This includes stock in a closely held company whose stock isn't available for sale to the general public or which isn't widely traded. Other securities reportable on line 12 also include publicly traded stock for which the organization holds 5% or more of the outstanding shares of the same class, and publicly traded stock in a corporation that comprises more than 5% of the organization's **total assets**. Don't include program-related investments.

If an amount is reported on this line that is 5% or more of the amount reported on Part X, line 16, answer "Yes" on Part IV, line 11b, and complete Schedule D (Form 990), Part VII. The amount reported in Part X, line 12, column (B), must equal the total of Schedule D (Form 990), Part VII, column (b).

**Line 13. Program-related investments.** Report here the total book value of all investments made primarily to accomplish the organization's exempt purposes rather than to produce income. Examples of program-related investments include student loans and notes receivable from other exempt organizations that obtained the funds to pursue the filing organization's exempt function.

If the amount reported on this line is 5% or more of the amount reported on Part X, line 16, answer "Yes" on Part IV, line 11c, and complete Part VIII of Schedule D (Form 990). The

amount reported in Part X, line 13, column (B), must equal the total of Schedule D (Form 990), Part VIII, column (b).

**Line 14. Intangible assets.** Report on this line the total value of all non-monetary, non-physical assets such as copyrights, patents, trademarks, mailing lists, or goodwill.

**Line 15. Other assets.** Report on this line the total book value of all assets held and not reported on lines 1 through 14.

If an amount is reported on this line that is 5% or more of the amount reported on Part X, line 16, answer "Yes" on Part IV, line 11d, and complete Schedule D (Form 990), Part IX. The amount reported in Part X, line 15, column (B), must equal the total of Schedule D, Part IX, column (b).

**Line 16. Total assets.** Add the totals in columns (A) and (B) of lines 1 through 15. The amounts on line 16 must equal the amounts on line 33 for both the beginning and end of the year. The organization must enter a zero or a dollar amount on this line.

**Line 17. Accounts payable and accrued expenses.** Enter the total of accounts payable to suppliers, service providers, property managers, and other **independent contractors,** plus accrued expenses such as salaries payable, accrued payroll taxes, and interest payable.

*Section 501(c)(21) trusts.* Include accrued trustee fees, etc. Do not include the present value of payments for approved claims, or the estimated liability for future claims.

**Line 18. Grants payable.** Enter the unpaid portion of grants and awards that the organization has committed to pay other organizations or individuals, whether or not the commitments have been communicated to the grantees.

*Section 501(c)(21) trusts.* Include payments for approved black lung claims that are due but not paid. Do not include amounts for black lung claims being contested.

**Line 19. Deferred revenue.** Report revenue that the organization has received but not yet earned as of the balance sheet date under its method of accounting.

**Line 20. Tax-exempt bond liabilities.** Enter the amount of **tax-exempt bonds** (or other obligations) for which the organization has a direct or indirect liability that were either issued by the organization on behalf of a state or local governmental unit, or by a state or local governmental unit on behalf of the organization, and for which the organization has a direct or indirect liability. Tax-exempt bonds include state or local bonds and any obligations, including direct borrowing from a lender, or certificates of participation, the interest on which is excluded from the gross income of the recipient for federal income tax purposes under section 103.

See also Part IV, line 24a, and Schedule K (Form 990).

**Line 21. Escrow or custodial account liability.** Enter the amount of funds or other assets held in an **escrow or custodial account** for other individuals or organizations. Enter these amounts only if the related assets (such as cash) are reported on lines 1 through 15 of this part. If an amount is reported on this line, the organization must also answer "Yes" on Part IV, line 9, and complete Schedule D (Form 990), Part IV. If the organization has signature authority over, or another interest in, an **escrow or custodial account** but that it doesn't report the assets or liabilities, it must also answer "Yes" on Part IV, line 9, and complete Schedule D, Part IV.

*Example.* A credit counseling organization collects amounts from debtors to remit to creditors and reports the amounts temporarily in its possession as cash on line 1 of the balance sheet. It must then report the corresponding liability (the amounts to be paid to the creditors on the debtors' behalf) on line 21.

**Lines 22–24.** Enter on line 22 the unpaid balance of loans and other payables (whether or not secured) to current and former **officers, directors, trustees, key employees, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons,** and persons described in section 4958(c)(3)(B). If the organization reports a loan payable on this line, it must answer "Yes" on Part IV, line 26. Don't report on line 22 accrued but unpaid **compensation** owed by the organization. Don't report on line 22 loans and payables excepted from reporting on Schedule L (Form 990), Part II (except for **excess benefit transactions** involving receivables).

On line 23, enter the total amount of secured mortgages and notes payable to unrelated third parties that are secured by the organization's assets as of the end of the **tax year.** Report on line 25 (and not line 23) any secured mortgages and notes payable to **related organizations.**

On line 24, enter the total amount of notes and loans that are payable to unrelated third parties but aren't secured by the organization's assets. Report on line 25 (and not line 24) any unsecured payables to related organizations.

**Line 25. Other liabilities.** Enter the total amount of all liabilities not properly reportable on lines 17 through 24. Items properly reported on this line include federal income taxes payable and secured or unsecured payables to **related organizations.** The organization must also answer "Yes" on Part IV, line 11e, and complete Schedule D (Form 990), Part X.

**Line 26. Total liabilities.** Add the totals in columns (A) and (B), lines 17 through 25. The organization must enter a zero or a dollar amount on this line.

## Net Assets and Fund Balances

FASB Accounting Standards Codification 958, Not-for-Profit Entities **(ASC 958)** provides standards for external financial statements certified by an independent accountant for certain types of nonprofit organizations. ASC 958-10-15-5 doesn't apply to credit unions, VEBAs, supplemental unemployment benefit trusts, section 501(c)(12) cooperatives, and other member benefit or mutual benefit organizations.

While some states may require reporting according to FASB ASC 958, the IRS doesn't. However, a Form 990 return prepared according to ASC 958 will be acceptable to the IRS.

**Organizations that follow ASC 958.** If the organization follows ASC 958, check the box above line 27, and complete lines 27 through 28 and lines 32 and 33. Classify and report net assets in two groups in Part X (unrestricted, donor-restricted) based on the existence or absence of donor-imposed restrictions and the nature of those restrictions. Enter the sum of the two classes of net assets on line 32. On line 33, add the amounts on lines 26 and 32 to show total liabilities and net assets. The amount on line 33 must equal the amount on line 16.

 *Effective for reporting years ending after December 15, 2017, ASC 958-205, Not-for-Profit Entities—Presentation of Financial Statements **(ASC 958),** addresses reporting of **donor-restricted endowments** and **board-designated (quasi) endowments**. Further, most states have enacted the Uniform Prudent Management of Institutional Funds Act (UPMIFA). If the organization is subject to UPMIFA or **ASC 958**, it may affect the amounts reported on lines 27 through 28.*

**Line 27. Net assets without donor restrictions.** Enter the balance per books of net assets without donor restrictions. All funds without donor-imposed restrictions must be reported on line 27, regardless of the existence of any board designations or appropriations.

**Line 28. Net assets with donor restrictions.** Enter the balance per books of **net assets with donor restrictions**. Donors' restrictions may require that resources be used after a specified date (time restrictions), or that resources be used for a specified purpose (purpose restrictions), or both. Donors may also stipulate that assets, such as land or works of art, be used for a specified purpose, be preserved, and not be sold or donated with stipulations that they be invested to provide a permanent source of income.

**Organizations that don't follow ASC 958.** If the organization doesn't follow **ASC 958**, check the box above line 29 and complete lines 29 through 33. Report capital stock, trust principal, or current funds on line 29. Report paid-in capital surplus or land, building, or equipment funds on line 30. Report retained earnings, endowment, accumulated income, or other funds on line 31.

**Line 29. Capital stock or trust principal, or current funds.** For corporations, enter the balance per books of capital stock accounts. Show par or stated value (or for stock with no par or stated value, total amount received on issuance) of all classes of stock issued and not yet canceled. For trusts, enter the amount in the trust principal or corpus. For organizations using the fund method of accounting, enter the fund balances for the organization's current restricted and unrestricted funds.

**Line 30. Paid-in or capital surplus, or land, building, and equipment fund.** Enter the balance of paid-in capital in excess of par or stated value for all stock issued and not yet canceled, as recorded on the corporation's books. If stockholders or others made donations that the organization records as paid-in capital, include them here. Enter the fund balance for the land, building, and equipment fund on this line.

**Line 31. Retained earnings, endowment, accumulated income, or other funds.** For corporations, enter the balance of retained earnings as recorded on the corporation's books, or similar account, minus the cost of any corporate treasury stock. For trusts, enter the balance in the accumulated income or similar account. For those organizations using the fund method of accounting, enter the total of the fund balances for the **net assets without donor restrictions** funds, and the **net assets with donor restrictions** funds, as well as balances of any other funds not reported on lines 29 and 30.

**Line 32. Total net assets or fund balances.** For organizations that follow **ASC 958**, enter the total of lines 27 through 28. For all other organizations, enter the total of lines 29 through 31. All filers must enter a zero or a dollar amount on this line.

**Line 33. Total liabilities and net assets/fund balances.** Enter the total of line 26 and line 32. This amount must equal the amount on line 16. The organization must enter a zero or a dollar amount on this line.

# Part XI. Reconciliation of Net Assets

Check the box in the heading of Part XI if Schedule O (Form 990) contains any information pertaining to this part.

**Line 1.** Enter the amount of total revenue reported in Part VIII, line 12, column (A).

**Line 2.** Enter the amount of total expenses reported in Part IX, line 25, column (A).

**Line 3.** Enter the difference between lines 1 and 2.

**Line 4.** Enter the amount of net assets or fund balances at the beginning of year reported in Part X, line 32, column (A). This amount should be the same amount reported in Part X, line 33, column (B), for the prior year's return.

**Line 5.** Report the net unrealized gains or losses on investments reported in the organization's audited financial statements (or other financial statements). This amount represents the change in market value of investments that weren't sold or exchanged during the tax year.

**Line 6.** Report the value of services or use of facilities donated to the organization (net of services or use of facilities donated by the organization) reported as income or expense in the financial statements.

**Line 8.** Report the net prior period adjustments during the tax year reported in the financial statements. Prior period adjustments are corrections of errors in financial statements of prior years, or changes in accounting principles applied to such years. The errors may include math errors, mistakes in applying accounting principles, or oversight or misuse of facts that existed at the time the financial statements were prepared.

**Line 9.** Enter the total amount of other changes in net assets or fund balances during the year. Amounts to report here include losses on uncollectible pledges, refunds of contributions and program service revenue, reversal of grant expenses, any difference between **FMV** and book value of property given as an award or grant, and any other changes in net assets or fund balances not listed on lines 5–8. Itemize these changes on Schedule O (Form 990) and check the box in the heading of Part XI.

**Line 10.** Combine the amounts on lines 3 through 9. The total must equal the amount reported in Part X, line 32, column (B).

# Part XII. Financial Statements and Reporting

Check the box in the heading of Part XII if Schedule O (Form 990) contains any information pertaining to this part.

**Line 1. Accounting method.** Indicate the method of accounting used in preparing this return. See *Part D*, earlier. Provide an explanation on Schedule O (Form 990) (1) if the organization changed its method of accounting from a prior year, or (2) if the organization checked the "Other" accounting method box.

**Line 2. Financial statements and independent accountant.** Answer "Yes" or "No" to indicate on line 2a or line 2b whether the organization's **financial statements** for the **tax year** were **compiled, reviewed**, or **audited** by an independent accountant. An accountant is independent if he or she meets the standards of independence set forth by the American Institute of Certified Public Accountants (AICPA), the Public Company Accounting Oversight Board (PCAOB), or another similar body that oversees or sets standards for the accounting or auditing professions.

If "Yes" on either line 2a or 2b, answer "Yes" or "No" on line 2c to indicate whether the organization has a committee that is responsible under its governing documents or through delegation by its governing body for (i) overseeing the compilation, review, or audit of the financial statements; and (ii) the selection of an independent accountant that compiled, reviewed, or audited the statements. Answer "Yes" only if both (i) and (ii) apply. If this process has changed from the prior year, describe on Schedule O (Form 990).

**Line 3a. Uniform Guidance, 2 C.F.R. Part 200, Subpart F.** Answer "Yes" if, during the year, the organization was required under the Uniform Guidance, 2 C.F.R. Part 200, Subpart F, to

undergo an audit or audits because of its receipt of federal contract awards. The Uniform Guidance, 2 C.F.R. Part 200, Subpart F, requires states, local governments, and nonprofit organizations that spend $750,000 or more of federal awards in a year to obtain an annual audit.

**Line 3b. Required audits.** If "Yes" on line 3a, indicate whether the organization has undergone the required audit or audits. Answer "Yes" if the audit was completed or in progress during the organization's tax year. If the answer to line 3b is "No," explain on Schedule O (Form 990) why the organization hasn't undergone any required audits and describe any steps taken to undergo such audits.

**Paperwork Reduction Act Notice.** We ask for the information on these forms to carry out the Internal Revenue laws of the United States. You are required to give us the information. We need it to ensure that you are complying with these laws and to allow us to figure and collect the right amount of tax. You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103. However, certain returns and return information of tax-exempt organizations and trusts are subject to public disclosure and inspection, as provided by section 6104.

   **Estimates of Taxpayer Burden.** These include forms in the 990 series and attachments and Forms 1023, 1024, 1028, 5578, 5884-C, 8038, 8038-B, 8038-CP, 8038-G, 8038-GC, 8038-R, 8038-T, 8038-TC, 8328, 8718, 8282, 8453-TE, 8453-X, 8868, 8870, 8871, 8872, 8879-TE, 8886-T, and 8899 and their schedules and all the forms tax-exempt organizations attach to their tax returns. Time spent and out-of-pocket costs are presented separately. Time burden includes the time spent preparing to file and to file, with recordkeeping representing the largest component. Out-of-pocket costs include any expenses incurred by taxpayers to prepare and submit their tax returns. Examples include tax return preparation and submission fees, postage and photocopying costs, and tax preparation software costs. Note that these estimates don't include burden associated with post-filing activities. IRS operational data indicate that electronically prepared and filed returns have fewer arithmetic errors, implying lower post-filing burden.

   Reported time and out-of-pocket cost burdens are national averages and include all associated forms and schedules, across all preparation methods and taxpayer activities. As a result, the averages don't necessarily reflect a "typical" case. Most taxpayers experience lower-than-average burden, with taxpayer burden varying considerably by taxpayer type.

## Fiscal Year 2023 Form 990 Series Tax Compliance Cost Estimates

| Table 1—Fiscal Year 2023 Form 990 Series Tax Compliance Cost Estimates | | | | | |
|---|---|---|---|---|---|
| | Type of Return | | | | |
| | Form 990 | Form 990-EZ | Form 990-PF | Form 990-T | Form 990-N |
| Projections of the Number of Returns to be Filed with IRS | 333,400 | 245,200 | 122,700 | 239,600 | 743,800 |
| Estimated Average Total Time (Hours) | 107 | 64 | 53 | 46 | 5 |
| Estimated Average Total Out-of-Pocket Costs | $2,600 | $500 | $1,900 | $2,100 | $20 |
| Estimated Average Total Monetized Burden | $8,700 | $1,400 | $4,100 | $5,600 | $90 |
| Estimated Total Time (Hours) | 35,780,000 | 15,770,000 | 6,510,000 | 10,940,000 | 3,720,000 |
| Estimated Total Out-of-Pocket Costs | $867,200,000 | $118,600,000 | $237,200,000 | $512,700,000 | $13,800,000 |
| Estimated Total Monetized Burden | $2,916,100,000 | $335,200,000 | $501,300,000 | $1,346,200,000 | $64,800,000 |

**Note.** Amounts above are for FY2023. Reported time and cost burdens are national averages and do not necessarily reflect a "typical" case. Most taxpayers experience lower-than-average burden, with taxpayer burden varying considerably by taxpayer type. Detail may not add due to rounding.

   **Comments and suggestions.** We welcome your comments concerning the accuracy of these time estimates or suggestions for future editions. You can send us comments through *IRS.gov/FormComments*. Or you can write to the Internal Revenue Service, Tax Forms and Publications Division, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224.

   Although we can't respond individually to each comment received, we do appreciate your feedback and will consider your comments as we revise our tax forms, instructions, and publications. **Don't** send your return to this address. Instead, see *General Instructions, Section E, When, Where, and How To File,* earlier, for the location for filing your return.

# Business Activity Codes

The codes listed in this section are a selection from the North American Industry Classification System (NAICS) that should be used in completing Form 990, Part VIII, lines 2 and 11. If you don't see a code for the activity you are trying to categorize, select the appropriate code from the NAICS website at *2022 NAICS Census Chart*. Select the most specific 6-digit code available that describes the activity producing the income being reported. Note that most codes describe more than one type of activity. Avoid using codes that describe the organization rather than the income-producing activity.

## Business Activity Codes

### Agriculture, Forestry, Fishing and Hunting

**Code**
| | |
|---|---|
| 110000 | Agriculture, forestry, fishing and hunting |
| 111000 | Crop production |

### Mining

**Code**
| | |
|---|---|
| 211110 | Oil and gas extraction |
| 211120 | Crude petroleum extraction |
| 211130 | Natural gas extraction |
| 212000 | Mining (except oil and gas) |

### Utilities

**Code**
| | |
|---|---|
| 221000 | Utilities |

### Construction

**Code**
| | |
|---|---|
| 230000 | Construction |
| 236000 | Construction of buildings |

### Manufacturing

**Code**
| | |
|---|---|
| 310000 | Manufacturing |
| 323100 | Printing and related support activities |
| 339110 | Medical equipment and supplies manufacturing |

### Wholesale Trade

**Code**
| | |
|---|---|
| 423000 | Merchant wholesalers, durable goods |
| 424000 | Merchant wholesalers, nondurable goods |

### Retail Trade

**Code**
| | |
|---|---|
| 441100 | Automobile dealers |
| 444100 | Building material and supplies dealers |
| 445100 | Grocery and convenience retailers |
| 445200 | Specialty food retailers |
| 449100 | Furniture and home furnishings retailers |
| 449210 | Electronics and appliance retailers (including computers) |
| 455000 | General merchandise retailers |
| 456110 | Pharmacies and drug retailers |
| 456199 | All other health and personal care retailers |
| 458000 | Clothing, clothing accessories, shoe, and jewelry retailers |
| 459110 | Sporting goods retailers |
| 459120 | Hobby, toy, and game retailers |
| 459130 | Sewing, needlework, and piece goods retailers |
| 459140 | Musical instrument and supplies retailers |
| 459210 | Book retailers and news dealers (including newsstands) |
| 459310 | Florists |
| 459410 | Office supplies and stationery retailers |
| 459420 | Gift, novelty, and souvenir retailers |
| 459510 | Used merchandise retailers |
| 459900 | Other miscellaneous retailers |

### Note

**Note for Nonstore Retailers**
Nonstore retailers sell all types of merchandise using such methods as Internet, mail-order catalogs, interactive television, or direct sales. These types of retailers should select the PBA associated with their primary line of products sold. For example, establishments primarily selling prescription and non-prescription drugs, select PBA code *456110 Pharmacies and drug retailers*.

### Transportation and Warehousing

**Code**
| | |
|---|---|
| 480000 | Transportation |
| 485000 | Transit and ground passenger transportation |
| 493000 | Warehousing and storage |

### Information

**Code**
| | |
|---|---|
| 512000 | Motion picture and sound recording industries |
| 513110 | Newspaper publishers |
| 513120 | Periodical publishers |
| 513130 | Book publishers |
| 513140 | Directory and mailing list publishers |
| 513190 | Other publishers |
| 516100 | Radio and television broadcasting stations |
| 516210 | Media streaming, social networks, and other content providers |
| 517000 | Telecommunications (including wired, wireless, satellite, cable and other program distribution, resellers, agents, other telecommunications, and internet service providers) |

### Data Processing, Web Search Portals, and Other Information Services

**Code**
| | |
|---|---|
| 518210 | Computing infrastructure providers, data processing, web hosting, and related services |
| 519000 | Web search portals, libraries, archives, and other information services |

### Finance and Insurance

**Code**
| | |
|---|---|
| 522100 | Depository credit intermediation (including commercial banking, savings institutions, and credit unions) |
| 522200 | Nondepository credit intermediation |
| 522210 | Credit card issuing |
| 522220 | Sales financing |
| 522291 | Consumer lending |
| 522292 | Real estate credit |
| 522299 | International, secondary market, and all other nondepository credit intermediation |
| 523000 | Securities, commodity contracts, and other financial investments and related activities |
| 523940 | Portfolio management and investment advice |

| | |
|---|---|
| 524113 | Direct life insurance carriers |
| 524114 | Direct health and medical insurance carriers |
| 524126 | Direct property and casualty insurance carriers |
| 524130 | Reinsurance carriers |
| 524292 | Pharmacy benefit management and other third party administration of insurance and pension funds |
| 524298 | All other insurance-related activities |
| 525100 | Insurance and employee benefit funds |
| 525920 | Trusts, estates, and agency accounts |
| 525990 | Other financial vehicles (including mortgage REITs) |

### Real Estate and Rental and Leasing

**Code**
| | |
|---|---|
| 531110 | Lessors of residential buildings and dwellings (including equity REITs) |
| 531120 | Lessors of nonresidential buildings (except miniwarehouses) (including equity REITs) |
| 531130 | Lessors of miniwarehouses and self-storage units (including equity REITs) |
| 531190 | Lessors of other real estate property (including equity REITs) |
| 531310 | Real estate property managers |
| 531320 | Offices of real estate appraisers |
| 531390 | Other activities related to real estate |
| 532000 | Rental and leasing services |
| 532289 | All other consumer goods rental |
| 532420 | Office machinery and equipment rental and leasing |
| 533110 | Lessors of nonfinancial intangible assets (except copyrighted works) |

### Professional, Scientific, and Technical Services

**Code**
| | |
|---|---|
| 541100 | Legal services |
| 541200 | Accounting, tax preparation, bookkeeping, and payroll services |
| 541300 | Architectural, engineering, and related services |
| 541380 | Testing laboratories and services |
| 541511 | Custom computer programming services |
| 541519 | Other computer-related services |
| 541610 | Management consulting services |
| 541700 | Scientific research and development services |
| 541800 | Advertising, public relations, and related services |
| 541860 | Direct mail advertising |
| 541900 | Other professional, scientific, and technical services |
| 541990 | Consumer credit counseling services |

### Management of Companies and Enterprises

**Code**
| | |
|---|---|
| 551111 | Offices of bank holding companies |

| | |
|---|---|
| 551112 | Offices of other holding companies |

### Administrative and Support Services

**Code**
| | |
|---|---|
| 561000 | Administrative and support services |
| 561300 | Employment services |
| 561439 | Other business service centers (including copy shops) |
| 561499 | All other business support services |
| 561500 | Travel arrangement and reservation services |
| 561520 | Tour operators |
| 561700 | Services to buildings and dwellings |

### Waste Management and Remediation Services

**Code**
| | |
|---|---|
| 562000 | Waste management and remediation services (sanitary services) |

### Educational Services

**Code**
| | |
|---|---|
| 611420 | Computer training |
| 611430 | Professional and management development training |
| 611600 | Other schools and instruction (other than elementary and secondary schools or colleges and universities, which should select a code to describe their unrelated activities) |
| 611710 | Educational support services |

### Health Care and Social Assistance

**Code**
| | |
|---|---|
| 621110 | Offices of physicians |
| 621300 | Offices of other health practitioners |
| 621400 | Outpatient care centers |
| 621500 | Medical and diagnostic laboratories |
| 621610 | Home health care services |
| 621910 | Ambulance services |
| 621990 | All other ambulatory health care services |
| 623000 | Nursing and residential care facilities |
| 623990 | Other residential care facilities |
| 624100 | Individual and family services |
| 624110 | Child and youth services |
| 624200 | Community food and housing, and emergency and other relief services |
| 624210 | Meal delivery programs, soup kitchens, or food banks |
| 624310 | Vocational rehabilitation services |
| 624410 | Childcare services |

### Arts, Entertainment, and Recreation

**code**
| | |
|---|---|
| 711110 | Theater companies and dinner theaters |
| 711120 | Dance companies |
| 711130 | Musical groups and artists |
| 711190 | Other performing arts companies |
| 711210 | Spectator sports (including sports clubs and racetracks) |

| Code | | Code | | Other Services | | 900004 | Exploited exempt activities |
|------|--|------|--|----------------|--|--------|----------------------------|
| 711300 | Promoters of performing arts, sports, and similar events | 721110 | Hotels (except casino hotels) and motels | **Code** | | 900099 | Other activity |
| 713110 | Amusement and theme parks | 721210 | RV (recreational vehicle) parks and recreational camps | 811000 | Repair and maintenance | | |
| 713200 | Gambling industries | 721310 | Rooming and boarding houses, dormitories, and workers' camps | 812300 | Drycleaning and laundry services | | |
| 713910 | Golf courses and country clubs | 722320 | Caterers | 812900 | Other personal services | | |
| 713940 | Fitness and recreational sports centers | 722410 | Drinking places (alcoholic beverages) | 812930 | Parking lots and garages | | |
| 713990 | All other amusement and recreation industries (including skiing facilities, marinas, and bowling centers) | 722511 | Full-service restaurants | **Other** | | | |
| | | 722513 | Limited-service restaurants | **Code** | | | |
| **Accommodation and Food Services** | | 722514 | Cafeterias, grill buffets, and buffets | 900001 | Investment activities of section 501(c)(7), (9), or (17) organizations | | |
| **Code** | | 722515 | Snack and non-alcoholic beverage bars | 900002 | Rental of personal property | | |
| 721000 | Accommodation | | | 900003 | Passive income activities with controlled organizations | | |

# Glossary

**NOTES:**

- Words in bold within a definition are defined elsewhere within the Glossary.
- All section references are to the Internal Revenue Code (title 26 of U.S. Code) or regulations under title 26, unless otherwise specified.
- Definitions are for purposes of filing Form 990 (and schedules) only.

**35% controlled entity**

An entity that is owned, directly or indirectly (for example, under constructive ownership rules of section 267(c)), by a given person, such as the organization's current or former **officers, directors, trustees,** or **key employees** listed on Form 990, Part VII, Section 1, or the **family members** thereof (listed persons) as follows.

    1.  A corporation in which listed persons own more than 35% of the total combined voting power.

    2.  A partnership in which listed persons own more than 35% of the profits interest.

    3.  A trust or estate in which listed persons own more than 35% of the beneficial interest.

**Accountable plan**

A reimbursement or other expense allowance arrangement that satisfies the requirements of section 62(c) by meeting the requirements of business connection, substantiation, and returning amounts in excess of substantiated expenses. See Regulations section 1.62-2(c)(2).

**Activities conducted outside the United States**

For purposes of Schedule F (Form 990), Statement of Activities Outside the United States, include grantmaking, **fundraising, unrelated trade or business,** program services, **program-related investments,** other investments, or **maintaining offices, employees, or agents** in particular regions outside the **United States.**

**Applicable tax-exempt organization**

A section 501(c)(3), 501(c)(4), or 501(c)(29) organization that is tax exempt under section 501(a), or that was such an organization at any time during the 5-year period ending on the day of the **excess benefit transaction.**

**Art**

See **Works of art.**

**ASC 740**

See **FIN 48 (ASC 740).**

**ASC 958**

Financial Accounting Standards Board, Accounting Standards Codification 958 **(ASC 958)** provides standards for external financial statements certified by an independent accountant for certain types of nonprofit organizations. **ASC 958** doesn't apply to credit unions, voluntary employees' beneficiary associations, supplemental unemployment benefit trusts, section 501(c)(12) cooperatives, and other member benefit or mutual benefit organizations.

While some states may require reporting according to ASC 958, the IRS doesn't. However, a Form 990 return prepared according to ASC 958 will be acceptable to the IRS.

**ASC 2016-14**

Accounting Standards Update 2016-14 is codified in Accounting Standards Codification 958, Not-for-Profit Entities **(ASC 958).**

**Audit**

*A formal examination of an organization's financial records and practices by an independent, certified public accountant with the objective of issuing a report on the organization's financial statements as to whether those statements are fairly stated according to generally accepted accounting principles (or other recognized comprehensive basis of accounting).*

**Audited financial statements**

*Financial statements accompanied by a formal opinion or report prepared by an independent, certified public accountant with the objective of assessing the accuracy and reliability of the organization's **financial statements.***

**Audit committee**

*A committee, generally established by the **governing body** of an organization, with the responsibilities to oversee the organization's financial reporting process, monitor choice of accounting policies and principles, monitor internal control processes, or oversee hiring and performance of any external auditors.*

**Bingo**

*A game of chance played with cards that are generally printed with five rows of five squares each. Participants place markers over randomly called numbers on the cards in an attempt to form a pre-selected pattern such as a horizontal, vertical, or diagonal line, or all four corners. The first participant to form the pre-selected pattern wins the game. To be a bingo game, the game must be of the type described in which wagers are placed, winners are determined, and prizes or other property are distributed in the presence of all persons placing wagers in that game. Satellite, Internet, and progressive or event bingo aren't bingo, because they are conducted in many different places simultaneously, and the winners aren't all present when the wagers are placed, the winners are determined, and the prizes are distributed. Thus, all revenue and expenses associated with satellite, Internet, and progressive or event bingo should generally be included under **pull tabs**. Certain bingo games within a hybrid gaming event (such as progressive or event bingo) can also qualify as bingo if the individual game meets the preceding definition of bingo.*

**Board-designated endowment**

*See **Quasi-endowment**.*

**Bond issue**

*An issue of two or more bonds that are:*

1. *Sold at substantially the same time,*
2. *Sold under the same plan of financing, and*
3. *Payable from the same source of funds.*

*See Regulations section 1.150-1(c).*

**Business relationship**

*For purposes of Part VI, line 2, business relationships between two persons include the following.*

*1. One person is employed by the other in a sole proprietorship or by an organization with which the other is associated as a **trustee, director, officer**, or greater-than-35% owner.*

*2. One person is transacting business with the other (other than in the ordinary course of either party's business on the same terms as are generally offered to the public), directly or indirectly, in one or more contracts of sale, lease, license, loan, performance of services, or other transaction involving transfers of cash or property valued in excess of $10,000 in the aggregate during the organization's tax year. Indirect transactions are transactions with an organization with which the one person is associated as a trustee, director, officer, or greater-than-35% owner. Such transactions don't include charitable contributions to tax-exempt organizations.*

*3. The two persons are each a director, trustee, officer, or greater-than-10% owner in the same business or investment entity (but not in the same tax-exempt organization).*

*Ownership is measured by stock ownership (either voting power or value) of a corporation, profits or capital interest in a partnership or limited liability company, membership interest in a nonprofit organization, or beneficial interest in a trust. Ownership includes indirect ownership (for example, ownership in an entity that has ownership in the entity in question); there can be ownership through multiple tiers of entities.*

**Cash contributions**

***Contributions** received in the form of cash, checks, money orders, credit card charges, wire transfers, and other transfers and deposits to a cash account of the organization.*

| | |
|---|---|
| **Central organization** | The organization, sometimes referred to as the "parent organization", that holds a **group exemption** letter for one or more **subordinate organizations** under its general supervision and control. |
| **CEO, executive director, or top management official** | See **Top management official**. "CEO" stands for chief executive officer. |
| **Certified historic structure** | Any building or structure listed in the National Register of Historic Places as well as any building certified as being of historic significance to a registered historic district. See section 170(h)(4)(B) for special rules that apply to **contributions** made after August 17, 2006. |
| **Church** | Certain characteristics are generally attributed to churches. These attributes of a church have been developed by the IRS and by court decisions. They include distinct legal existence; recognized creed and form of worship; definite and distinct ecclesiastical government; formal code of doctrine and discipline; distinct religious history; membership not associated with any other church or denomination; organization of ordained ministers; ordained ministers selected after completing prescribed courses of study; literature of its own; established places of worship; regular congregations; regular religious services; Sunday schools for the religious instruction of the young; and schools for the preparation of its ministers. The IRS generally uses a combination of these characteristics, together with other facts and circumstances, to determine whether an organization is considered a church for federal tax purposes. A convention or association of churches is generally treated like a church for federal tax purposes. See Pub. 1828, Tax Guide for Churches and Religious Organizations. |
| **Closely held stock** | Generally, shares of stock in a closely held company that isn't available for sale to the general public or which isn't widely traded (see further explanation in the instructions for Part X, line 12, and Schedule M (Form 990), Noncash Contributions, line 10). |
| **Collectibles** | Include autographs, sports memorabilia, dolls, stamps, coins, books (other than books and publications reported on line 4 of Schedule M (Form990)), gems, and jewelry (other than costume jewelry reportable on line 5 of Schedule M (Form 990)). |
| **Collections of works of art, historical treasures, and other similar assets** | Include collections, as described in ASC 958-360-45, of **works of art**, **historical treasures**, and other similar assets held for public exhibition, education, or research in furtherance of public service. |
| **Compensation** | Unless otherwise provided, all forms of cash and noncash payments or benefits provided in exchange for services, including salary and wages, bonuses, severance payments, deferred payments, retirement benefits, fringe benefits, and other financial arrangements or transactions such as personal vehicles, meals, housing, personal and family educational benefits, below-market loans, payment of personal or family travel, entertainment, and personal use of the organization's property. Compensation includes payments and other benefits provided to both **employees** and **independent contractors** in exchange for services. See also **Deferred compensation**, **Nonqualified deferred compensation**, and **Reportable compensation**. |
| **Compilation (compiled financial statements)** | A compilation is a presentation of **financial statements** and other information that is the representation of the management or ownership of an organization and which hasn't been reviewed or audited by an independent accountant. |

**Conflict of interest policy**

*A policy that defines conflict of interest, identifies the classes of individuals within the organization covered by the policy, facilitates disclosure of information that can help identify conflicts of interest, and specifies procedures to be followed in managing conflicts of interest. A conflict of interest arises when a person in a position of authority over an organization, such as an* **officer**, **director**, *or manager, can benefit financially from a decision she or he could make in such capacity, including indirect benefits such as to* **family members** *or businesses with which the person is closely associated. For this purpose, a conflict of interest doesn't include questions involving a person's competing or respective duties to the organization and to another organization, such as by serving on the boards of both organizations, that don't involve a material financial interest of, or benefit to, such person. For a description of "conflict of interest" for purposes of determining whether* **governing body** *members who are reviewing a potential* **excess benefit transaction** *have a conflict of interest, pursuant to Regulations section 53.4958-6(c)(1)(iii), see the instructions for Part VI, line 15.*

**Conservation easement**

*A restriction (granted in perpetuity) on the use that may be made of real property granted exclusively for conservation purposes. Conservation purposes include preserving land areas for outdoor recreation by, or for the education of, the general public; protecting a relatively natural habitat of fish, wildlife, or plants, or a similar ecosystem; preserving open space, including farmland and forest land, where such preservation will yield a significant public benefit and is either for the scenic enjoyment of the general public or pursuant to a clearly defined federal, state, or local governmental conservation policy; and preserving a historically important land area or a certified historic structure. For more information, see section 170(h) and Notice 2004-41, 2004-1 C.B. 31.*

**Contributions**

*Unless otherwise provided, includes donations, gifts, bequests, grants, and other transfers of money or property to the extent that adequate consideration isn't provided in exchange and that the contributor intends to make a gift, whether or not made for charitable purposes. A transaction can be partly a sale and partly a contribution, but discounts provided on sales of goods in the ordinary course of business shouldn't be reported as contributions. Neither donations of services (such as the value of donated advertising space, broadcast air time, or discounts on services) nor donations of use of materials, equipment, or facilities should be reported as contributions. For purposes of Form 990, a distribution to a section 501(c)(3) organization from a split-interest trust (for example, charitable remainder trust, charitable lead trust) is reportable as a contribution. See also* **Cash contributions** *and* **Noncash contributions.**

**Control**

For purposes of determining **related organizations**:

*Control of a nonprofit organization (or other organization without owners or persons having beneficial interests, whether the organization is taxable or tax exempt)*

One or more persons (whether individuals or organizations) control a nonprofit organization if they have the power to remove and replace (or to appoint, elect, or approve or veto the appointment or election of, if such power includes a continuing power to appoint, elect, or approve or veto the appointment or election of, periodically or in the event of vacancies) a majority of the nonprofit organization's directors or trustees, or a majority of members who elect a majority of the nonprofit organization's directors or trustees. Such power can be exercised directly by a (parent) organization through one or more of the (parent) organization's officers, directors, trustees, or agents, acting in their capacities as officers, directors, trustees, or agents of the (parent) organization. Also, a (parent) organization controls a (subsidiary) nonprofit organization if a majority of the subsidiary's directors or trustees are trustees, directors, officers, employees, or agents of the parent.

*Control of a stock corporation*

One or more persons (whether individuals or organizations) control a stock corporation if they own more than 50% of the stock (by voting power or value) of the corporation.

*Control of a partnership or limited liability company*

One or more persons control a partnership if they own more than 50% of the profits or capital interests in the partnership (including a limited liability company treated as a partnership or disregarded entity for federal tax purposes, regardless of the designation under state law of the ownership interests as stock, membership interests, or otherwise). A person also controls a partnership if the person is a managing partner or managing member of a partnership or limited liability company which has three or fewer managing partners or managing members (regardless of which partner or member has the most actual control), or if the person is a general partner in a limited partnership which has three or fewer general partners (regardless of which partner has the most actual control). For this purpose, a "managing partner" is a partner designated as such under the partnership agreement, or regularly engaged in the management of the partnership even though not so designated.

*Control of a trust with beneficial interests*

One or more persons control a trust if they own more than 50% of the beneficial interests in the trust. A person's beneficial interest in a trust shall be determined in proportion to that person's actuarial interest in the trust as of the end of the tax year. See Regulations sections 301.7701-2, -3, and -4 for more information on classification of corporations, partnerships, disregarded entities, and trusts. Control can be indirect. See the Schedule R (Form 990) instructions for a description of indirect control.

**Controlled entity**

An organization controlled by a **controlling organization under section 512(b)(13)**. A controlled entity may be a nonprofit organization. For the definition of control in this context, see section 512(b)(13)(D) and Regulations section 1.512(b)-1(l)(4) (substituting "more than 50%" for "at least 80%" in the regulation, for purposes of this definition). Controlled entities are a subset of **related organizations**. For purposes of Form 990, controlled entities don't include **disregarded entities** of the filing organization.

| | |
|---|---|
| **Controlling organization under section 512(b) (13)** | *An exempt organization that controls a **controlled entity**. Section 512(b)(13) treats payments of interest, annuity, royalties, and rent from a controlled entity to a controlling organization as unrelated business taxable income under certain circumstances. Control in this context means (i) in the case of a corporation, ownership (by vote or value) of more than 50% of the stock in such corporation; (ii) in the case of a partnership, ownership of more than 50% of the profits interests or capital interests in such partnership; or (iii) in any other case, ownership of more than 50% of the beneficial interests in the entity. Section 318 (relating to constructive ownership of stock) shall apply for purposes of determining ownership of stock in a corporation. Similar principles shall apply for purposes of determining ownership of interests in any other entity.* |
| **Core form** | *The Form 990, Return of Organization Exempt From Income Tax. It doesn't include any schedules that may be attached to Form 990.* |
| **Credit counseling services** | *Include the providing of information to the general public on budgeting, personal finance, and saving and spending practices, or assisting individuals and families with financial problems by providing them with counseling. See section 501(q)(4)(A).* |
| **Current year** | *The **tax year** for which the Form 990 is being filed; see also **Fiscal year**.* |
| **Debt management plan services** | *Services related to the repayment, consolidation, or restructuring of a consumer's debt, including the negotiation with creditors of lower interest rates, the waiver or reduction of fees, and the marketing and processing of debt management plans. See section 501(q)(4)(B).* |
| **Defeasance escrow** | *An irrevocable escrow established to redeem the bonds on their earliest call date in an amount that, together with investment earnings, is sufficient to pay all the principal of, and interest and call premiums on, bonds from the date the escrow is established to the earliest call date. See Regulations section 1.141-12(d)(5).* |
| **Deferred compensation** | ***Compensation** that is earned or accrued in, or is attributable to, one year and deferred to a future year for any reason, whether or not funded, vested, qualified or nonqualified, or subject to a substantial risk of forfeiture. However, a deferral of compensation that causes an amount to be deferred from the calendar year ending with or within the tax year to a date that isn't more than $2\frac{1}{2}$ months after the end of the calendar year ending with or within the tax year isn't treated as deferred compensation for purposes of Form 990, if such compensation is currently reported as reportable compensation. Deferred compensation may or may not be included in **reportable compensation** for the **current year**.* |
| **Director** | *See **Director or trustee**.* |
| **Director or trustee** | *Unless otherwise provided, a member of the organization's **governing body** at any time during the tax year, but only if the member has any voting rights. A member of an advisory board that doesn't exercise any governance authority over the organization isn't considered a director or trustee.* |
| **Disqualified person** | *A. For purposes of section 4958; Form 990, Parts IX and X; and Schedule L (Form 990), Transactions With Interested Persons, Parts I and II, any person (including an individual, corporation, or other entity) who was in a position to exercise substantial influence over the affairs of the **applicable tax-exempt organization** at any time during a 5-year period ending on the date of the transaction. If the 5-year period ended within the organization's **tax year**, the organization may treat the person as a disqualified person for the entire tax year. Persons who hold certain powers, responsibilities, or interests are among those who are in positions to exercise substantial influence over the affairs of the organization.* |

2022 Instructions for Form 990

*A disqualified person includes:*

- *A disqualified person's **family member**;*
- *A **35% controlled entity** of a (1) disqualified person, and/or (2) family members of the disqualified person;*
- *A donor or **donor advisor** to a **donor advised fund**; or*
- *An investment advisor of a **sponsoring organization**.*

*The **disqualified persons** of a **supported organization** include the disqualified persons of a section 509(a)(3) **supporting organization** that supports the supported organization.*

*See Appendix G for more information on **disqualified persons** and section 4958 **excess benefit transactions**.*

*B. Under section 4946, a disqualified person includes the following.*

*1.   A substantial contributor, which is any person who gave an aggregate amount of more than $5,000, if that amount is more than 2% of the total **contributions** the foundation or organization received from its inception through the end of the year in which that person's contributions were received. If the organization is a trust, a substantial contributor includes the creator of the trust (without regard to the amount of contributions the trust received from the creator and related persons). Any person who is a substantial contributor at any time generally remains a substantial contributor for all future periods even if later contributions by others push that person's contributions below the 2% figure discussed above. Gifts from the contributor's spouse are treated as gifts from the contributor. Gifts are generally valued at **FMV** as of the date the organization received them.*

*2.   A foundation manager, defined as an **officer**, **director**, or **trustee** of the organization or any individual having powers or responsibilities similar to those of officers, directors, or trustees.*

*3.   An owner of more than 20% of the voting power of a corporation, profits interest of a partnership, or beneficial interest of a trust or an unincorporated enterprise that is a substantial contributor to the organization.*

*4.   A family member of an individual in the first three categories. For this purpose, "family member" includes only the individual's spouse, ancestors, children, grandchildren, and great-grandchildren, and the spouses of children, grandchildren, and great-grandchildren.*

*5.   A corporation, partnership, trust, or estate in which persons described in (1) through (4) above own more than 35% of the voting power, profits interest, or beneficial interest.*

*For purposes of section 509(a)(2), as referenced in Schedule A (Form 990), Public Charity Status and Public Support, a disqualified person is defined in section 4946, except that it doesn't include an organization described in section 509(a)(1).*

*For purposes of section 509(a)(3), as referenced in Schedule A (Form 990), a disqualified person is defined in section 4946, except that it doesn't include a foundation manager or an organization described in section 509(a)(1) or 509(a)(2).*

| | |
|---|---|
| **Disregarded entity or entities** | *An entity wholly owned by the organization that is generally not treated as a separate entity for federal tax purposes (for example, single-member limited liability company of which the organization is the sole member). See Regulations sections 301.7701-2 and -3. A disregarded entity must generally use the **EIN** of its sole member. An exception applies to employment taxes: for wages paid to **employees** of a disregarded entity, the disregarded entity must file separate employment tax returns and use its own EIN on such returns. See Regulations sections 301.6109-1(h) and 301.7701-2(c)(2)(iv).* |
| **Domestic government** | *See **Governmental unit**.* |
| **Domestic individual** | *An individual who lives or resides in the **United States** and isn't a **foreign individual**.* |

| | |
|---|---|
| **Domestic organization** | *A corporation or partnership is domestic if created or organized in the United States or under the law of the United States or of any state or possession. A trust is domestic if a court within the United States or a **U.S. possession** is able to exercise primary supervision over the administration of the trust, and one or more U.S. persons (or persons in possessions of the United States) have the authority to control all substantial decisions of the trust.* |
| **Donor advised fund** | *A fund or account:* |
| | *1.  That is separately identified by reference to **contributions** of a donor or donors,* |
| | *2.  That is owned and controlled by a **sponsoring organization**, and* |
| | *3.  For which the donor or **donor advisor** has or reasonably expects to have advisory privileges in the distribution or investment of amounts held in the donor advised funds or accounts because of the donor's status as a donor.* |
| | *A donor advised fund doesn't include any fund or account:* |
| | *1.  That makes distributions only to a single identified organization or governmental entity; or* |
| | *2.  In which a donor or donor advisor gives advice about which individuals receive grants for travel, study, or other similar purposes, if:* |
| | *a.  The donor or donor advisor's advisory privileges are performed exclusively by such person in his or her capacity as a committee member in which all of the committee members are appointed by the sponsoring organization;* |
| | *b.  No combination of donors or donor advisors (and related persons as defined below) directly or indirectly controls the committee; and* |
| | *c.  All grants from the fund or account are awarded on an objective and nondiscriminatory basis following a procedure approved in advance by the board of directors of the sponsoring organization. The procedure must be designed to ensure that all grants meet the requirements of section 4945(g)(1), (2), or (3); or* |
| | *3.  That the IRS exempts from being treated as a donor advised fund because either such fund or account is advised by a committee not directly or indirectly controlled by the donor or donor advisor or such fund benefits a single identified charitable purpose. For example, see section 5.01 of Notice 2006-109, 2006-51 I.R.B. 1121, and any future related guidance.* |
| **Donor advisor** | *Any person appointed or designated by a donor to advise a **sponsoring organization** on the distribution or investment of amounts held in the donor's **donor advised fund**.* |
| **Donor-Imposed Restriction** | *A donor stipulation (donors include other types of contributors, including makers of certain grants) that specifies a use for a contributed asset that is more specific than broad limits resulting from:*<br>• *The nature of the not-for-profit entity,*<br>• *The environment in which it operates, or*<br>• *The purposes specified in its articles of incorporation or bylaws or comparable documents for an unincorporated association.*<br>*Some donors impose restrictions that are temporary in nature, for example, stipulating that resources may be used only after a specified date, for particular programs or services, or to acquire buildings and/or equipment. Other donors impose restrictions that are perpetual in nature, for example, stipulating that resources be maintained in perpetuity.* |
| **Donor-Restricted Endowment Fund** | *An endowment fund created by a donor stipulation (donors include other types of contributors, including makers of certain grants) requiring investment of the gift in perpetuity or for a specified term. Some donors or laws may require that a portion of income, gains, or both be added to the gift and invested subject to similar restrictions.* |
| **EIN** | *Employer identification number, a nine-digit number. Use Form SS-4 to apply for an EIN.* |

**Employee**

*Any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee, and any other individual who is treated as an employee for federal employment tax purposes under section 3121(d). See Pub. 1779 for more information.*

**Endowment fund**

*An established fund of cash, securities, or other assets to provide income for the maintenance of a not-for-profit entity. The use of the assets of the fund may be with or without donor-imposed restrictions. Endowment funds are generally established by donor-restricted gifts and bequests to provide a source of income perpetuity or for a specified period. Alternatively, a not-for-profit's governing board may earmark a portion of its net assets (see* **Quasi-endowment**).

**Escrow or custodial account**

*Refers to an account (whether a segregated account at a financial institution or a set-aside on the organization's books and records) over which the organization has signature authority, in which the funds are held for the benefit of other organizations or individuals, whether or not the funds are reported on Part X, line 21, and whether or not the account is labeled as "escrow account," "custodial account," "trust account," or some similar term. An escrow or custodial account doesn't include a split-interest trust (or the beneficial interest in such trust) described in section 4947(a)(2) for which the filing organization is a trustee, other than a trust in the trade or business of lending money, repairing credit, or providing debt management plan services, payment processing, or similar services.*

**Excess benefit transaction**

*In the case of an* **applicable tax-exempt organization***, any transaction in which an excess benefit is provided by the organization, directly or indirectly to, or for the use of, any* **disqualified person***, as defined in section 4958. Excess benefit generally means the excess of the economic benefit received from the applicable organization over the consideration given (including services) by a disqualified person, but see the special rules below regarding donor advised funds and supporting organizations. See Appendix G for more information.*

**Donor advised fund***. For a* **donor advised fund***, an excess benefit transaction also includes a grant, loan,* **compensation***, or similar payment from the fund to a:*
- *Donor or* **donor advisor***,*
- **Family member** *of a donor or donor advisor,*
- **35% controlled entity** *of a donor or donor advisor, or*
- *35% controlled entity of a family member of a donor or donor advisor.*

*The excess benefit in this transaction is the amount of the grant, loan,* **compensation***, or similar payments.*

*For additional information, see the Instructions for Form 4720.*

**Supporting organization.** *For any* **supporting organization***, defined in section 509(a)(3), an excess benefit transaction also includes grants, loans,* **compensation***, or similar payments provided by the supporting organization to a:*
- *Substantial contributor,*
- *Family member of a substantial contributor,*
- *35% controlled entity of a substantial contributor, or*
- *35% controlled entity of a family member of a substantial contributor.*

*For this purpose, the excess benefit is defined as the amount of the grant, loan,* **compensation***, or similar payments. Additionally, an excess benefit transaction includes any loans provided by the supporting organization to a disqualified person (other than an organization described in section 509(a)(1), (2), or (4)).*

**Exempt bond**

*See* **Tax-exempt bond***.*

| | |
|---|---|
| **Fair market value (FMV)** | *The price at which property, or the right to use property, would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy, sell, or transfer property or the right to use property, and both having reasonable knowledge of relevant facts.* |
| **Family member, family relationship** | *Unless specified otherwise, the family of an individual includes only his or her spouse (see Rev. Rul. 2013-17 regarding same-sex marriage), ancestors, brothers and sisters (whether whole or half blood), children (whether natural or adopted), grandchildren, great-grandchildren, and spouses of brothers, sisters, children, grandchildren, and great-grandchildren.* |
| **FIN 48 (FASB ASC 740)** | *Financial Accounting Standards Board (FASB) Interpretation No. 48, Accounting for Uncertainty in Income Taxes, an interpretation of FASB Statement No. 109, now codified in FASB Accounting Standards Codification 740, Income Taxes (ASC 740). The organization can be required to provide in Schedule D (Form 990), Supplemental Financial Statements, the text of the footnote to its* **financial statements** *regarding the organization's liability for uncertain tax positions under FIN 48 (ASC 740).* |
| **Financial statements** | *An organization's statements of revenue and expenses and balance sheet, or similar statements prepared regarding the financial operations of the organization.* |
| **Fiscal year** | *An annual accounting period ending on the last day of a month other than December. See* **Tax year** *and* **Current year***.* |
| **Foreign government** | *A governmental agency or entity, or a political subdivision thereof, that isn't classified as a* **United States** *agency or* **governmental unit***, regardless of where it is located or operated.* |
| **Foreign individual** | *A person, including a U.S. citizen or resident, who lives or resides outside the* **United States***. For purposes of Form 990, Part IX, and Schedule F (Form 990), Statement of Activities Outside the United States, a person who lives or resides outside the United States at the time the grant is paid or distributed to the individual is a* **foreign individual***.* |
| **Foreign organization** | *An organization that isn't a* **domestic organization***. A foreign organization includes an affiliate that is organized as a legal entity separate from the filing organization, but doesn't include any branch office, account, or* **employee** *of a domestic organization located outside the* **United States***.* |
| **Fundraising** | *See* **Fundraising activities***.* |
| **Fundraising activities** | *Activities undertaken to induce potential donors to contribute money, securities, services, materials, facilities, other assets, or time. They include publicizing and conducting* **fundraising** *campaigns; maintaining donor mailing lists; conducting* **fundraising events***; preparing and distributing fundraising manuals, instructions, and other materials;* **professional fundraising services***; and conducting other activities involved with soliciting* **contributions** *from individuals, foundations, governments, and others. Fundraising activities don't include* **gaming***, the conduct of any trade or business that is regularly carried on, or activities substantially related to the accomplishment of the organization's exempt purpose (other than by raising funds).* |

**Fundraising events**

*Include dinners and dances, door-to-door sales of merchandise, concerts, carnivals, sports events, auctions, casino nights (in which participants can play casino-style games but the only prizes or auction items provided to participants are noncash items that were donated to the organization), and similar events not regularly carried on that are conducted for the primary purpose of raising funds. Fundraising events don't include:*

*1. The conduct of a trade or business that is regularly carried on;*

*2. Activities substantially related to the accomplishment of the organization's exempt purposes (other than by raising funds);*

*3. Solicitation campaigns that generate only **contributions**, which may involve gifts of goods or services from the organization of only nominal value, or sweepstakes, lotteries, or raffles in which the names of contributors or other respondents are entered in a drawing for prizes of only nominal value; and*

*4. Gaming.*

**GAAP**

*See **Generally accepted accounting principles**.*

**Gaming**

*Includes (but isn't limited to) **bingo**, **pull tabs/instant bingo** (including satellite and progressive or event bingo), Texas Hold-Em Poker, 21, and other card games involving betting, raffles, scratch-offs, charitable gaming tickets, break-opens, hard cards, banded tickets, jar tickets, pickle cards, Lucky Seven cards, Nevada Club tickets, casino nights/Las Vegas nights (other than events not regularly carried on in which participants can play casino-style games but the only prizes or auction items provided to participants are noncash items that were donated to the organization, which events are **fundraising events**), and coin-operated gambling devices. Coin-operated gambling devices include slot machines, electronic video slot or line games, video poker, video blackjack, video keno, video bingo, video pull tab games, etc. See Pub. 3079, Tax-Exempt Organizations and Gaming.*

**Generally accepted accounting principles/ GAAP**

*The accounting principles set forth by the Financial Accounting Standards Board (FASB) and the American Institute of Certified Public Accountants (AICPA) that guide the work of accountants in reporting financial information and preparing **audited financial statements** for organizations.*

**Governing body**

*The group of one or more persons authorized under state law to make governance decisions on behalf of the organization and its shareholders or members, if applicable. The governing body is, generally speaking, the board of **directors** (sometimes referred to as "board of **trustees**") of a corporation or association, or the trustee or trustees of a trust (sometimes referred to as the "board of **trustees**").*

**Government official**

*A federal, state, or local official described within section 4946(c).*

**Governmental issuer**

*A state or local governmental unit that issues a **tax-exempt bond**.*

**Governmental unit**

*A state, a **possession of the United States**, or a **political subdivision** of a state or U.S. possession, the United States, or the District of Columbia. See section 170(c)(1).*

**Grants and other assistance**

*For purposes of Part IX, lines 1–3; Schedule F (Form 990); and Schedule I (Form 990), includes awards, prizes, contributions, noncash assistance, cash allocations, stipends, scholarships, fellowships, research grants, and similar payments and distributions made by the organization during the tax year. It doesn't include salaries or other **compensation** to **employees** or payments to **independent contractors** if the primary purpose is to serve the direct and immediate needs of the organization (such as legal, accounting, or fundraising services); the payment of any benefit by a section 501(c)(9) voluntary employees' beneficiary association (VEBA) to employees of a sponsoring organization or contributing employer, if such payment is made under the terms of the VEBA and in compliance with section 505; or payments or other assistance to affiliates or branch offices that aren't organized as legal entities separate from the filing organization.*

| | |
|---|---|
| **Gross proceeds** | *For purposes of Schedule K (Form 990), Supplemental Information on Tax-Exempt Bonds, generally any sale **proceeds**, investment proceeds, transferred proceeds, and replacement proceeds of an issue. See Regulations sections 1.148-1(b) and -1(c).* |
| **Gross receipts** | *The total amounts the organization received from all sources during its tax year, without subtracting any costs or expenses. See* Appendix B. How To Determine Whether an Organization's Gross Receipts Are Normally $50,000 (or $5,000) or Less *and* Appendix C. Special Gross Receipts Tests for Determining Exempt Status of Section 501(c)(7) and 501(c)(15) Organizations. |
| **Group exemption** | *Tax exemption of a group of organizations all exempt under the same Code section, applied for and obtained by a **central organization** on behalf of **subordinate organizations** under the central organization's general supervision or control. See Rev. Proc. 80-27, 1980-1 C.B. 677; Rev. Proc. 96-40, 1996-2 C.B. 301; and* Appendix E. Group Returns—Reporting Information on Behalf of the Group, *for more information.* |
| **Group return** | *A Form 990 filed by the **central organization** of a **group exemption** for two or more of the **subordinate organizations**. See* General Instructions, Section I. Group Return, *earlier, and* Appendix E. Group Returns—Reporting Information on Behalf of the Group, *for more information.* |
| **Highest compensated employee** | *One of the five highest compensated **employees** of the organization (including employees of a **disregarded entity** of the organization), other than current **officers, directors, trustees,** or **key employees**, whose aggregate **reportable compensation** from the organization and **related organizations** is greater than $100,000 for the calendar year ending with or within the organization's **tax year**. These employees should be reported in Part VII, Section A, of Form 990.* |
| **Historical treasure** | *A building, structure, area, or property (real or personal) with recognized cultural, aesthetic, or historical value that is significant in the history, architecture, archaeology, or culture of a country, state, or city.* |
| **Hospital/hospital facility** | *For purposes of Schedule H (Form 990), Hospitals, a hospital, or hospital facility, is a facility that is, or is required to be, licensed, registered, or similarly recognized by a state as a hospital. This includes a hospital facility that is operated through a **disregarded entity** or a **joint venture** treated as a partnership for federal income tax purposes. It doesn't include hospital facilities that are located outside the **United States**. It also doesn't include hospital facilities that are operated by entities organized as separate legal entities from the organization that are taxable as a corporation for federal tax purposes (except for members of a **group exemption** included in a **group return** filed by an organization).* |
| **Hospital organization** | *An organization which operates one or more **hospital facilities**.* |
| **Hospital (or cooperative hospital service organization)** | *For purposes of Schedule A (Form 990), Public Charity Status and Public Support, a hospital (or cooperative hospital service organization) is an organization whose main purpose is to provide hospital or medical care. For purposes of Schedule A, a rehabilitation institution or an outpatient clinic can qualify as a hospital if its principal purposes or functions are the providing of hospital or medical care, but the term doesn't include medical schools, medical research organizations, convalescent homes, homes for children or the aged, animal hospitals, or vocational training institutions for handicapped individuals.* |
| **Household goods** | *Include furniture, furnishings, electronics, appliances, linens, and other similar items. They don't include food, paintings, antiques and other objects of art, jewelry and gems (other than costume jewelry), and collections.* |
| **Independent contractor** | *An individual or organization that receives compensation for providing services to the organization but who isn't treated as an **employee**. See Pub. 1779 for more information.* |

| | |
|---|---|
| **Independent voting member of governing body** | A **voting member of the governing body**, if all four of the following circumstances applied at all times during the organization's tax year. |

1. The member wasn't compensated as an **officer** or other **employee** of the organization or of a **related organization** (see the Instructions for Schedule R (Form 990), Related Organizations and Unrelated Partnerships), except as provided in the religious exception discussed in the instructions for Form 990, Part VI.

2. The member didn't receive total **compensation** or other payments exceeding $10,000 during the organization's tax year from the organization or from related organizations as an **independent contractor**, other than **reasonable compensation** for services provided in the capacity as a **member of the governing body**. For example, a person who receives reasonable expense reimbursements and reasonable compensation as a **director** of the organization doesn't cease to be independent merely because he or she also received payments of $7,500 from the organization for other arrangements.

3. Neither the member, nor any **family member** of the member, was involved in a transaction with the organization (whether directly or indirectly through affiliation with another organization) required to be reported on Schedule L (Form 990), Transactions With Interested Persons, for the organization's tax year.

4. Neither the member, nor any family member of the member, was involved in a transaction with a taxable or tax-exempt related organization of a type and amount that would be reportable on Schedule L (Form 990) if required to be filed by the related organization.

A member of the governing body isn't considered to lack independence merely because of any of the following circumstances.

1. The member is a donor to the organization, regardless of the amount of the contribution.

2. The member has taken a bona fide vow of poverty and either:

a. Receives **compensation** as an agent of a **religious order** or a section 501(d) religious or apostolic organization, but only under circumstances in which the member doesn't receive taxable income (for example, Rev. Rul. 77-290, 1977-2 C.B. 26; and Rev. Rul. 80-332, 1980-2 C.B. 34); or

b. Belongs to a religious order that receives sponsorship or payments from the organization that don't constitute taxable income to the member.

3. The member receives financial benefits from the organization solely in the capacity of being a member of the charitable or other class served by the organization in the exercise of its exempt function, such as being a member of a section 501(c)(6) organization, so long as the financial benefits comply with the organization's terms of membership.

| | |
|---|---|
| **Initial contract** | A binding written contract between an **applicable tax-exempt organization** and a person who wasn't a **disqualified person** immediately before entering into the contract. |
| **Instant bingo** | See **Pull tabs**. |
| **Institutional trustee** | A **trustee** that isn't an individual or natural person but an organization. For instance, a bank or trust company serving as the trustee of a trust is an institutional trustee. |
| **Joint venture** | Unless otherwise provided, a partnership, limited liability company, or other entity treated as a partnership for federal tax purposes, as described in Regulations sections 301.7701-1 through 301.7701-3. |

**Key employee**

*For purposes of Form 990, an **employee** of an organization (other than an **officer**, **director**, or **trustee**) who meets all three of the following tests applied in the following order.*

*1.  $150,000 Test. Receives **reportable compensation** from the organization and all **related organizations** in excess of $150,000 for the **calendar year** ending with or within the organization's **tax year**.*

*2.  Responsibility Test. The employee:*

*a. Has responsibilities, powers or influence over the organization as a whole similar to those of officers, directors, or trustees;*

*b. Manages a discrete segment or activity of the organization that represents 10% or more of the activities, assets, income, or expenses of the organization, as compared to the organization as a whole; or*

*c. Has or shares authority to control or determine 10% or more of the organization's capital expenditures, operating budget, or compensation for employees.*

*3.  Top 20 Test. Is one of the 20 employees (that satisfy the $150,000 Test and Responsibility Test) with the highest reportable compensation from the organization and related organizations for the calendar year ending with or within the organization's tax year.*

*See the instructions for Part VII for examples of **key employees**.*

**Legislation**

*Includes action by Congress, any state legislature, any local council, or similar governing body about acts, bills, resolutions, or similar items, or action by the public in referenda, ballot initiatives, constitutional amendments, or similar procedures. It doesn't include actions by executive, judicial, or administrative bodies.*

**Lobbying**

*See **Lobbying activities**.*

**Lobbying activities**

*All activities intended to influence foreign, national, state, or local **legislation**. Such activities include direct lobbying (attempting to influence the legislators) and grassroots lobbying (attempting to influence legislation by influencing the general public).*

**Maintaining offices, employees, or agents**

*For purposes of Schedule F (Form 990), Statement of Activities Outside the United States, includes principal, regional, district, or branch offices, such offices maintained by agents, independent contractors, and persons situated at those offices paid wages for services performed. "Agent" is defined under traditional agency principles (but doesn't include **volunteers**).*

**Management company**

*An organization that performs management duties for another organization customarily performed by or under the direct supervision of the other organization's **officers**, **directors**, **trustees**, or **key employees**. These management duties include, but aren't limited to, hiring, firing, and supervising personnel; planning or executing budgets or financial operations; and supervising exempt operations or **unrelated trades or businesses**. When a management company is used, the employees may be employed by either the management company or the exempt organization. Whether the management company or the exempt organization is the employer will be determined by the facts and circumstances.*

**Medical research**

*For purposes of a medical research organization operated in conjunction with a hospital (see Schedule A (Form 990), Public Charity Status and Public Support), medical research means investigations, studies, and experiments performed to discover, develop, or verify knowledge relating to physical or mental diseases and impairments and their causes, diagnoses, prevention, treatments, or control.*

**Member of the governing body**

*A person who serves on an organization's **governing body**, including a **director** or **trustee**, but not if the person lacks voting power.*

**Net assets with donor restrictions**

*Includes **endowment funds** established by donor-restricted gifts that are maintained to provide a source of income for either a specified period of time or until a specific event occurs (see **ASC 958-205-45**), as well as all other temporarily restricted net assets held in a donor-restricted endowment, including unappropriated income from **permanent endowments** that isn't subject to a permanent restriction. After Accounting Standards Update 2016-14, **ASC 958** uses two classifications, instead of three—net assets with donor restrictions and net assets without donor restrictions. **ASC 958** no longer uses the term "temporarily-restricted endowment."*

*The part of net assets of a not-for-profit entity that is subject to **donor-imposed restrictions**.*

**Net assets without donor restrictions**

*Part of net assets of a not-for-profit entity that is not subject to **donor-imposed restrictions**.*

**Noncash contributions**

***Contributions** of property, tangible or intangible, other than money. Noncash contributions include, but aren't limited to, stocks, bonds, and other **securities**; real estate; **works of art**; stamps, coins, and other **collectibles**; clothing and **household goods**; vehicles, boats, and airplanes; inventories of food, medical equipment or supplies, books, or seeds; intellectual property, including patents, trademarks, copyrights, and trade secrets; donated items that are sold immediately after donation, such as publicly traded stock or used cars; and items donated for sale at a charity auction. Noncash contributions don't include **volunteer** services performed for the reporting organization or donated use of materials, facilities, or equipment.*

**Nonexempt charitable trust**

*A trust that meets the following conditions.*
- *Isn't exempt from tax under section 501(a).*
- *All of its unexpired interests are devoted to charitable purposes.*
- *A charitable deduction was allowed for **contributions** to the trust under section 170, section 545(b)(2), section 642(c), section 2055, section 2106(a)(2), or section 2522, or for amounts paid by or permanently set aside by the trust under section 642(c).*

**Nonqualified deferred compensation**

***Deferred compensation** that is earned pursuant to a nonqualified plan or nongovernmental section 457 plan. Different rules can apply for purposes of identifying arrangements subject to sections 83, 409A, 457(f), and 3121(v). Earned but unpaid incentive compensation can be deferred pursuant to a nonqualified deferred compensation plan.*

**Officer**

*Unless otherwise provided (for example, Signature Block, principal officer in Heading), a person elected or appointed to manage the organization's daily operations at any time during the **tax year**, such as a president, vice president, secretary, treasurer, and, in some cases, Board Chair. The officers of an organization are determined by reference to its organizing document, bylaws, or resolutions of its governing body, or as otherwise designated consistent with state law, but at a minimum include those officers required by applicable state law. For purposes of Form 990, treat the organization's **top management official** and **top financial official** as officers.*

**"On behalf of" issuer**

*A corporation organized under the general nonprofit corporation law of a state whose obligations are considered obligations of a state or local **governmental unit**. See Rev. Proc. 82-26, 1982-1 C.B. 476, for a description of the circumstances under which the IRS will ordinarily issue an advance ruling that the obligations of a nonprofit corporation were issued on behalf of a state or local governmental unit. See also Rev. Rul. 63-20, 1963-1 C.B. 24; Rev. Rul. 59-41, 1959-1 C.B. 13; and Rev. Rul. 54-296, 1954-2 C.B. 59. An "on behalf of" issuer also includes any corporation organized by a state or local governmental unit specifically to issue **tax-exempt bonds** to further public purposes. See Rev. Rul. 57-187, 1957-1 C.B. 65.*

**Organization manager**

*For purposes of section 4958, any **officer**, **director**, or **trustee** of an **applicable tax-exempt organization**, or any individual having powers or responsibilities similar to officers, directors, or trustees of the organization, regardless of title.*

| | |
|---|---|
| **Political campaign activities** | *All activities that support or oppose candidates for elective federal, state, or local public office. It doesn't matter whether the candidate is elected. A candidate is one who offers himself or herself or is proposed by others for public office. Political campaign activity doesn't include any activity to encourage participation in the electoral process, such as voter registration or voter education, provided that the activity doesn't directly or indirectly support or oppose any candidate.* |
| **Political subdivision** | *A division of any state or local **governmental unit** which is a municipal corporation or which has been delegated the right to exercise part of the sovereign power of the unit. Sovereign power includes the power to make and enforce laws.* |
| **Possession of the United States** | *Includes the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, Guam, American Samoa, and the U.S. Virgin Islands.* |
| **Principal officer** | *For purposes of the Heading on page 1 of Form 990 (but not for the purposes of the Signature Block or other parts of the Form 990), an officer of the organization who, regardless of title, has ultimate responsibility for implementing the decisions of the organization's **governing body**, or for supervising the management, administration, or operation of the organization.* |
| **Private business use** | *For purposes of Schedule K (Form 990), Supplemental Information on Tax-Exempt Bonds, use by the organization or another 501(c)(3) organization in an **unrelated trade or business**. Private business use also generally includes any use by a nongovernmental person, other than a section 501(c)(3) organization, unless otherwise permitted through an exception or safe harbor provided under the regulations or a revenue procedure.* |
| **Private foundation** | *An organization described in section 501(c)(3) that isn't a **public charity**. Some private foundations are classified as operating foundations (also known as private operating foundations) under section 4942(j)(3) or exempt operating foundations under section 4940(d)(2). A private foundation retains its private foundation status until such status is terminated under section 507. Thus, a tax-exempt private foundation becomes a taxable private foundation if its section 501(c)(3) status is revoked.* |
| **Proceeds** | *For purposes of Schedule K (Form 990), Supplemental Information on Tax-Exempt Bonds, generally the sale proceeds of an issue (other than those sale proceeds used to retire bonds of the issue that aren't deposited in a reasonably required reserve or replacement fund). Proceeds also include any investment proceeds from investments that accrue during the project period (net of rebate amounts attributable to the project period). See Regulations section 1.141-1(b).* |
| **Professional fundraising services** | *Services performed for the organization requiring the exercise of professional judgment or discretion consisting of planning, management, preparation of materials (such as direct mail solicitation packages and applications for grants or other assistance), provision of advice and consulting regarding solicitation of **contributions**, and direct solicitation of **contributions**, such as soliciting restricted or unrestricted grants to provide services to the general public. However, professional fundraising doesn't include services provided by the organization's **employees** in their capacity as employees (except as provided in the instructions for Part I, line 16a), nor does professional fundraising include purely ministerial tasks, such as printing, mailing services, or receiving and depositing contributions to a charity, such as services provided by a bank or caging service.* |
| **Program-related investment** | *Investments made primarily to accomplish the organization's exempt purposes rather than to produce income. Examples of program-related investments include student loans and notes receivable from other exempt organizations that obtained the funds to pursue the filing organization's exempt function.* |

**Public charity**

*An organization described in section 501(c)(3) and that is excepted from private foundation status because it is described in section 509(a)(1) (which cross-references sections 170(b)(1)(A)(i) through (vi), and (ix)), 509(a)(2), 509(a)(3), or 509(a)(4).*

**Publicly traded securities**

*Generally, include common and preferred stocks, bonds (including governmental obligations such as bonds and Treasury bills), mutual fund shares, and other investments listed and regularly traded in an over-the-counter market or an established exchange and for which market quotations are published or are otherwise readily available. (See further explanation in the instructions for Part X, line 11; and Schedule M (Form 990), Noncash Contributions, line 9).*

**Pull tabs**

*Includes games in which an individual places a wager by purchasing preprinted cards that are covered with pull tabs. Winners are revealed when the individual pulls back the sealed tabs on the front of the card and compares the patterns under the tabs with the winning patterns preprinted on the back of the card. Included in the definition of pull tabs are "instant bingo," "mini bingo," and other similar scratch-off cards. Satellite, Internet, and progressive or event bingo are games conducted in many different places simultaneously and the winners aren't all present when the wagers are placed, the winners are determined, and the prizes are distributed. Revenue and expenses associated with satellite, Internet, and progressive bingo should be included under this category. However, certain bingo games within a hybrid gaming event (such as progressive or event bingo) can also qualify as bingo if the individual game meets the preceding definition of **bingo**.*

**Qualified 501(c)(3) bond**

*A **tax-exempt bond**, the proceeds of which are used by a section 501(c)(3) organization to advance its charitable purpose. Requirements generally applicable to a qualified section 501(c)(3) bond under section 145 include the following.*

   *1. All property financed by the bond issue is to be owned by a section 501(c)(3) organization or a **governmental unit**.*

   *2. At least 95% of net proceeds of the **bond issue** are used either by a **governmental unit** or a section 501(c)(3) organization in activities that aren't **unrelated trades or businesses** (determined by applying section 513).*

**Qualified conservation contribution**

*Any **contribution** of a qualified real property interest to a qualified organization exclusively for conservation purposes. A "qualified real property interest" means any of the following interests in real property.*

   *1. The entire interest of the donor.*

   *2. A remainder interest.*

   *3. A restriction (such as an easement), granted in perpetuity, on the use which may be made of the real property.*

*A "qualified organization" means an organization which is:*
*a. A **governmental unit** described in section 170(c)(1);*
*b. A publicly supported charitable organization described in sections 509(a)(1) and 170(b)(1)(A)(vi) or section 509(a)(2) (see the instructions for Parts II and III of Schedule A (Form 990)); or*
*c. A **supporting organization** described in sections 501(c)(3) and 509(a)(3) that is controlled by a governmental unit or a publicly supported charitable organization.*

*In addition, a qualified organization must have a commitment to protect the conservation purposes of a qualified conservation contribution, and have the resources to enforce the restrictions.*

A *"conservation purpose"* means:

1. The preservation of land areas for outdoor recreation by, or the education of, the general public;

2. The protection of a relatively natural habitat of fish, wildlife, plants, or similar ecosystems;

3. The preservation of open space (including farm and forest land) where such preservation will yield a significant public benefit and is for the scenic enjoyment of the general public or is pursuant to a clearly delineated federal, state, or local governmental conservation policy; or

4. The preservation of a historically important land area or a certified historic structure.

See section 170(h) for additional information, including special rules about the conservation purpose requirement for buildings in registered historic districts. See also **Conservation easement**.

**Qualified state or local political organization**

A type of political organization that meets the following requirements.
- It limits its exempt function to the selection process relating solely to any state or local public office or office in a state or local political organization.
- It is required under a state law to report to a state agency (and does report) information that would otherwise be required to be reported on Form 8872, Political Organization Report of Contributions and Expenditures, or it is required to report under state law (and does report) at least the following information.

1. The name and address of every person who contributes a total of $500 or more during the calendar year and the amount of each contribution.

2. The name and address of every person to whom the organization makes expenditures aggregating $800 or more during the calendar year, and the amount of each expenditure.

3. Any additional information specified in section 527(j)(3), if state law requires the reporting of that information to the state agency.
- The state agency makes the reports filed by the organization publicly available.
- The organization makes the reports filed with the state agency publicly available in the manner described in section 6104(d).
- No federal candidate or office holder controls or materially participates in the direction of the organization, solicits **contributions** to the organization, or directs any of the organization's disbursements.

**Quasi-endowment**

Net assets without donor restrictions designated by an entity's governing board to be invested to provide income for generally a long but not necessarily specified period. A **board-designated endowment**, which results from an internal designation, is generally not donor-restricted and is classified as net assets without donor restrictions. The governing board has the right to decide at any time to expend such funds. Also referred to as a **"board-designated endowment."**

**Reasonable compensation**

The value that would ordinarily be paid for like services by like enterprises under like circumstances.

**Reasonable effort**

A reasonable amount of effort in information gathering that the organization is expected to undertake in order to provide information requested on Form 990. See the specific instructions for Part VI, lines 1b and 2; Part VII, Section A (compensation from related organizations); and Schedule L (Form 990), Parts III and IV, for examples of reasonable efforts.

**Refunding escrow**

One or more funds established as part of a single transaction or a series of related transactions, containing **proceeds** of a **refunding issue** and any other amounts to provide for payment of principal or interest on one or more prior issues. See Regulations section 1.148-1(b).

**Refunding issue**

An issue of obligations, the **proceeds** of which are used to pay principal, interest, or redemption price on another issue (a prior issue), including the issuance costs, accrued interest, capitalized interest on the refunding issue, a reserve or replacement fund, or similar costs, if any, properly allocable to that refunding issue. A current refunding issue is a refunding issue that is issued not more than 90 days before the last expenditure of any proceeds of the refunding issue for the payment of principal or interest on the prior issue. An advance refunding issue is a refunding issue that isn't a current refunding issue. See Regulations sections 1.150-1(d)(1), 1.150-1(d)(3), and 1.150-1(d)(4).

**Related organization**

An organization, including a nonprofit organization, a stock corporation, a partnership or limited liability company, a trust, and a **governmental unit** or other government entity, that stands in one or more of the following relationships to the filing organization at any time during the **tax year**.

• Parent: an organization that **controls** the filing organization.
• Subsidiary: an organization **controlled** by the filing organization.
• Brother/Sister: an organization **controlled** by the same person or persons that control the filing organization. However, if the filing organization is a trust that has a bank or financial institution trustee that is also the trustee of another trust, the other trust isn't a Brother/Sister related organization of the filing organization on the ground of common control by the bank or financial institution trustee.
• Supporting/Supported: an organization that claims to be at any time during the **tax year**, or that is classified by the IRS at any time during the tax year, as (i) a **supporting organization** of the filing organization within the meaning of section 509(a)(3), if the filing organization is a **supported organization** within the meaning of section 509(f)(3); or (ii) a supported organization, if the filing organization is a supporting organization.
• Sponsoring Organization of a VEBA: an organization that establishes or maintains a section 501(c)(9) voluntary employees' beneficiary association (VEBA) during the tax year. A sponsoring organization of a VEBA also includes an employee organization, association, committee, joint board of trustees, or other similar group of representatives of the parties which establish or maintain a VEBA. Although a VEBA must report a sponsoring organization as a related organization, a sponsoring organization shouldn't report a VEBA as a related organization, unless the VEBA is related to the sponsoring organization in some other capacity described in this definition.
• Contributing Employer of a VEBA: an employer that makes a contribution or contributions to the VEBA during the tax year. Although a VEBA must report a contributing employer as a related organization, a contributing employer shouldn't report a VEBA as a related organization, unless the VEBA is related to the contributing employer in some other capacity described in this definition.

The organization must determine its related organizations for purposes of completing Form 990, Parts VI (Governance), VII (Compensation), VIII (Statement of Revenue), and X (Balance Sheet); Schedule D (Form 990); Schedule J (Form 990); and Schedule R (Form 990). See the instructions for those parts and schedules for related organization reporting requirements.

**Religious order**

An organization described in Rev. Proc. 91-20, 1991-1 C.B. 524.

**Reportable compensation**

In general, the aggregate **compensation** that is reported (or required to be reported, if greater) in box 1 or 5 of Form W-2 (whichever amount is greater); box 1 of Form 1099-NEC; and/or in box 6 of Form 1099-MISC, for the calendar year ending with or within the organization's **tax year**. For foreign persons who receive U.S. source income, reportable compensation includes the amount reportable in box 2 of Form 1042-S. For persons for whom compensation reporting on Form W-2, 1099-NEC, 1099-MISC, or 1042-S isn't required (certain foreign persons, institutional trustees, and persons whose compensation was below the $600 reporting threshold for Form 1099-NEC or 1099-MISC), reportable compensation includes the total value of the compensation paid in the form of cash or property during the calendar year ending with or within the organization's tax year.

**Review of financial statement**

An examination of an organization's financial records and practices by an independent accountant with the objective of assessing whether the **financial statements** are plausible, without the extensive testing and external validation procedures of an audit.

| | |
|---|---|
| **School** | An organization, the primary function of which is the presentation of formal instruction, and which has a regular faculty, a curriculum, an enrolled body of students, and a place where educational activities are regularly conducted. |
| **Security/securities** | Any bond, debenture, note, or certificate or other evidence of indebtedness issued by a corporation, government or **political subdivision**, share of stock, voting trust certificate, or any certificate of interest or participation in, certificate of deposit or receipt for, temporary or interim certificate for, or warrant or right to subscribe to or purchase, any of the foregoing. |
| **Short accounting period** | An accounting period of less than 12 months, which exists when an organization changes its annual accounting period, and which can exist in its initial or final year of existence (see **Tax year**). |
| **Short period** | See **Short accounting period**. |
| **Significant disposition of net assets** | A disposition of net assets, consisting of a sale, exchange, disposition, or other transfer of more than 25% of the **FMV** of the organization's net assets during the year, whether or not the organization received full or adequate consideration. A significant disposition of net assets involves: |

1. One or more dispositions during the organization's **tax year**, amounting to more than 25% of the FMV of the organization's net assets as of the beginning of its tax year; or

2. One of a series of related dispositions or events begun in a prior year that, when combined, comprise more than 25% of the FMV of the organization's net assets as of the beginning of the tax year when the first disposition in the series was made. Whether a significant disposition of net assets occurred through a series of related dispositions depends on the facts and circumstances in each case.

Examples of the types of transactions that are "a significant disposition of net assets" required to be reported on Schedule N (Form 990), Liquidation, Termination, Dissolution, or Significant Disposition of Assets, Part II, include:
- Taxable or tax-free sales or exchanges of exempt assets for cash or other consideration (a social club described in section 501(c)(7) selling land or an exempt organization selling assets it had used to further its exempt purposes);
- Sales, **contributions**, or other transfers of assets to establish or maintain a partnership, **joint venture**, or corporation (for-profit or nonprofit) whether or not the sales or transfers are governed by section 721 or section 351, whether or not the transferor received an ownership interest in exchange for the transfer;
- Sales of assets by a partnership or joint venture in which the exempt partner has an ownership interest; and
- Transfers of assets pursuant to a reorganization in which the organization is a surviving entity.

The following types of situations aren't considered significant dispositions of net assets for purposes of Schedule N, Part II.
- The change in composition of **publicly traded securities** held in an exempt organization's passive investment portfolio.
- Asset sales made in the ordinary course of the organization's exempt activities to accomplish the organization's exempt purposes, for example, gross sales of inventory.
- Grants or other assistance made in the ordinary course of the organization's exempt activities to accomplish the organization's exempt purposes, for example, the regular charitable distributions of a United Way or other federated fundraising organization.
- A decrease in the value of net assets due to market fluctuation in the value of assets held by the organization.
- Transfers to a **disregarded entity** of which the organization is the sole member.

| | |
|---|---|
| **Sponsoring organization** | Any organization which is all of the following. |

- Described in section 170(c), other than governmental units described in section 170(c)(1) and without regard to section 170(c)(2)(A).
- Not a **private foundation** as defined in section 509(a).
- Maintains one or more **donor advised funds**.

| | |
|---|---|
| **State of legal domicile** | *For a corporation, the state of incorporation (country of incorporation for a foreign corporation formed outside the United States). For a trust or other entity, the state whose law governs the organization's internal affairs (the foreign country whose law governs for a foreign organization other than a corporation).* |
| **Subordinate organization** | *One of the organizations, typically local in nature, that is recognized as exempt in a **group exemption** letter and subject to the general supervision and control of a **central organization**.* |
| **Supported organization** | *A **public charity** described in section 509(a)(1) or 509(a)(2) supported by a **supporting organization** described in section 509(a)(3).* |
| **Supporting organization** | *A public charity claiming status on Form 990 or otherwise under section 509(a) (3). A supporting organization is organized and operated exclusively to support one or more **supported organizations**. A supporting organization that is operated, supervised, or controlled by one or more supported organizations is a Type I supporting organization. The relationship of a Type I supporting organization with its supported organization(s) is comparable to that of a parent-subsidiary relationship. A supporting organization supervised or controlled in connection with one or more supported organizations is a Type II supporting organization. A Type II supporting organization is controlled or managed by the same persons that control or manage its supported organization(s). A supporting organization that is operated in connection with one or more supported organizations is a Type III supporting organization. A Type III supporting organization is further considered either functionally integrated with its supported organization(s) or not functionally integrated with its supported organization(s) (Type III other). Finally, a supporting organization can't be controlled directly or indirectly by one or more **disqualified persons** (as defined in section 4946), other than foundation managers and other than one or more public charities described in section 509(a)(1) or (2).* |
| **Tax-exempt bond** | *An obligation issued by or on behalf of a **governmental issuer** on which the interest paid is excluded from the holder's gross income under section 103. For this purpose, a bond can be any form of indebtedness under federal tax law, including a bond, note, loan, or lease-purchase agreement.* |
| **Tax year** | *The annual accounting period for which the Form 990 is being filed, whether the calendar year ending December 31 or a fiscal year ending on the last day of any other month. The organization may have a short tax year in its first year of existence, in any year when it changes its annual accounting period (for example, from a December 31 year-end to a June 30 year-end), and in its last year of existence (for example, when it merges into another organization or dissolves). See also **Current year**, **Fiscal year**, and **Short period**.* |
| **Term endowment** | *An endowment fund established to provide income for a specified period.* |
| **Top financial official** | *The person who has ultimate responsibility for managing the organization's finances, for example, the treasurer or chief financial officer.* |
| **Top management official** | *A person who has ultimate responsibility for implementing the decisions of the organization's **governing body** or for supervising the management, administration, or operation of the organization (for example, the organization's president, CEO, or executive director).* |
| **Total assets** | *The amount reported on Form 990, Part X, line 16, column (B).* |
| **Trustee** | *See **Director or trustee**.* |
| **United States** | *Unless otherwise provided, includes the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, Guam, American Samoa, and the U.S. Virgin Islands.* |
| **Unrelated business** | *See **Unrelated trade or business**.* |
| **Unrelated business income** | *Income from an **unrelated trade or business** as defined in section 513.* |
| **Unrelated business gross income** | *Gross income from an **unrelated trade or business** as defined in section 513.* |
| **Unrelated organization** | *An organization that isn't a **related organization** to the filing organization.* |

**Unrelated trade or business**

*Any trade or business, the conduct of which isn't substantially related to the exercise or performance by the organization of its charitable, educational, or other purpose or function constituting the basis for its exemption. See Pub. 598 and the Instructions for Form 990-T for a discussion of what is an unrelated trade or business.*

**U.S. possession**

*See **Possession of the United States**.*

**Volunteer**

*A person who serves the organization without compensation, for example, a member of the organization's governing body who serves the organization without compensation. "Compensation" for this purpose includes tips and noncash benefits, except for:*
- *Reimbursement of expenses under a reimbursement or other expense allowance arrangement in which there is adequate accounting to the organization,*
- *Working condition fringe benefits described in section 132,*
- *Liability insurance coverage for acts performed on behalf of the exempt organization, and*
- *De minimis fringe benefits.*

**Voting member of the governing body**

*A member of the organization's **governing body** with power to vote on all matters that may come before the governing body (other than a conflict of interest that disqualifies the member from voting).*

**Works of art**

*Include paintings, sculptures, prints, drawings, ceramics, antiques, decorative arts, textiles, carpets, silver, photography, film, video, installation and multimedia arts, rare books and manuscripts, historical memorabilia, and other similar objects. Art doesn't include **collectibles**.*

**Year of formation**

*The year in which the organization was created or formed under applicable state law (if a corporation, the year of incorporation).*

# Appendix of Special Instructions to Form 990

## Contents

| | |
|---|---|
| A | Exempt Organizations Reference Chart |
| B | How To Determine Whether an Organization's Gross Receipts Are Normally $50,000 (or $5,000) or Less |
| C | Special Gross Receipts Tests for Determining Exempt Status of Section 501(c)(7) and Section 501(c)(15) Organizations |
| D | Public Inspection of Returns |
| E | Group Returns—Reporting Information on Behalf of the Group |
| F | Disregarded Entities and Joint Ventures—Inclusion of Activities and Items |
| G | Section 4958 Excess Benefit Transactions |
| H | Forms and Publications To File or Use |
| I | Use of Form 990 or 990-EZ To Satisfy State Reporting Requirements |
| J | Contributions |

# Appendix A. Exempt Organizations Reference Chart

| Type of Organization | Internal Revenue Code Section |
|---|---|
| Corporations Organized Under Act of Congress | 501(c)(1) |
| Title Holding Corporations | 501(c)(2) |
| Charitable, Religious, Educational, Scientific, etc., Organizations | 501(c)(3) |
| Civic Leagues and Social Welfare Organizations | 501(c)(4) |
| Labor, Agricultural, and Horticultural Organizations | 501(c)(5) |
| Business Leagues, etc. | 501(c)(6) |
| Social and Recreation Clubs | 501(c)(7) |
| Fraternal Beneficiary and Domestic Fraternal Societies and Associations | 501(c)(8) & (c)(10) |
| Voluntary Employees' Beneficiary Associations | 501(c)(9) |
| Teachers' Retirement Fund Associations | 501(c)(11) |
| Benevolent Life Insurance Associations, Mutual Ditch or Irrigation Companies, Mutual or Cooperative Telephone Companies, etc. | 501(c)(12) |
| Cemetery Companies | 501(c)(13) |
| State-Chartered Credit Unions, Mutual Reserve Funds | 501(c)(14) |
| Insurance Companies or Associations Other Than Life | 501(c)(15) |
| Cooperative Organizations to Finance Crop Operations | 501(c)(16) |
| Supplemental Unemployment Benefit Trusts | 501(c)(17) |
| Employee Funded Pension Trusts (created before June 25, 1959) | 501(c)(18) |
| Organizations of Past or Present Members of the Armed Forces | 501(c)(19) & (c)(23) |
| Black Lung Benefit Trusts | 501(c)(21) |
| Withdrawal Liability Payment Funds | 501(c)(22) |
| Trusts described in section 4049 of the Employer Retirement Income Security Act | 501(c)(24) |
| Title Holding Corporations or Trusts | 501(c)(25) |
| State-Sponsored Organizations Providing Health Coverage for High-Risk Individuals | 501(c)(26) |
| State-Sponsored Workmen's Compensation and Insurance and Reinsurance Organizations | 501(c)(27) |
| National Railroad Retirement Investment Trust | 501(c)(28) |
| Qualified Nonprofit Health Insurance Issuers | 501(c)(29) |
| Religious and Apostolic Associations | 501(d) |
| Cooperative Hospital Service Organizations | 501(e) |

| | |
|---|---|
| Cooperative Service Organizations of Operating Educational Organizations | 501(f) |
| Amateur Sports Organizations | 501(j) |
| Child Care Organizations | 501(k) |
| Charitable Risk Pools | 501(n) |
| Political Organizations | 527 |

# Appendix B. How To Determine Whether an Organization's Gross Receipts Are Normally $50,000 (or $5,000) or Less

To figure whether an organization has to file Form 990-EZ (or Form 990), apply the $50,000 (or $5,000) gross receipts test (below) using the following definition of gross receipts and information in *Figuring Gross Receipts* below.

## Gross Receipts

Gross receipts are the total amounts the organization received from all sources during its annual tax year (including short years) without subtracting any costs or expenses.

 *Don't use the definition of gross receipts described in Appendix C. Special Gross Receipts Tests for Determining Exempt Status of Section 501(c)(7) and 501(c)(15) Organizations to figure gross receipts for this purpose. Those tests are limited to determining the exempt status of section 501(c)(7) and 501(c)(15) organizations.*

**Gross receipts when acting as an agent.** If a local chapter of a section 501(c)(8) fraternal organization collects insurance premiums for its parent lodge and merely sends those premiums to the parent without asserting any right to use the funds or otherwise deriving any benefit from them, the local chapter doesn't include the premiums in its gross receipts. The parent lodge reports them instead. The same treatment applies in other situations in which one organization collects funds merely as an agent for another.

## Figuring Gross Receipts

Figure gross receipts for Form 990 and 990-EZ as follows.

**Form 990.** Gross receipts are the sum of lines 6b(i), 6b(ii), 7b(i), 7b(ii), 8b, 9b, 10b, and 12 (column (A)) of Form 990, Part VIII.

**Form 990-EZ.** Gross receipts are the sum of lines 5b, 6c, 7b, and 9 of Form 990-EZ, Part I.

*Example.* Organization M reported $50,000 as total revenue on line 9 of its Form 990-EZ. M added back the costs and expenses it had deducted on lines 5b ($2,000), 6c ($1,500), and 7b ($500) to its total revenue of $50,000 and determined that its gross receipts for the tax year were $54,000.

## $50,000 Gross Receipts Test

To determine whether an organization's gross receipts are normally $50,000 or less, apply the following test. An organization's gross receipts are considered to be normally $50,000 or less if the organization is:

1. Up to a year old and has received, or donors have pledged to give, $75,000 or less during its first tax year;

2. Between 1 and 3 years old and averaged $60,000 or less in gross receipts during each of its first 2 tax years; or

3. Three years old or more and averaged $50,000 or less in gross receipts for the immediately preceding 3 tax years (including the year for which the return would be filed).

If the organization's gross receipts are normally $50,000 or less, it must submit Form 990-N, Electronic Notice (e-Postcard) for Tax-Exempt Organizations Not Required to File Form 990 or 990-EZ, if it chooses not to file Form 990 or 990-EZ. In general, organizations excepted from filing Form 990 or 990-EZ because of low gross receipts must submit Form 990-N. See filing exceptions described under *General Instructions, Section B,* earlier.

## $5,000 Gross Receipts Test

To determine whether an organization's gross receipts are normally $5,000 or less, apply the following test. An organization's gross receipts are considered to be normally $5,000 or less if the organization is:

1. Up to a year old and has received, or donors have pledged to give, $7,500 or less during its first tax year;

2. Between 1 and 3 years old and averaged $6,000 or less in gross receipts during each of its first 2 tax years; or

3. Three years old or more and averaged $5,000 or less in gross receipts for the immediately preceding 3 tax years (including the year for which the return would be filed).

# Appendix C. Special Gross Receipts Tests for Determining Exempt Status of Section 501(c)(7) and 501(c)(15) Organizations

Section 501(c)(7) organizations (social clubs) and section 501(c)(15) organizations (insurance companies) apply the same gross receipts test as other organizations to determine whether they must file Form 990 or 990-EZ. However, section 501(c)(7) and section 501(c)(15) organizations are also subject to separate gross receipts tests to determine whether they qualify as tax exempt for the tax year. The following tests use a special definition of gross receipts for purposes of determining whether these organizations are exempt for a particular tax year.

**Section 501(c)(7).** A section 501(c)(7) organization can receive up to 35% of its gross receipts, including investment income, from sources outside its membership and remain tax exempt. Part of the 35% (up to 15% of gross receipts) can be from public use of a social club's facilities.

*Gross receipts*, for purposes of determining the tax-exempt status of section 501(c)(7) organizations, are the club's income from its usual activities and include:
- Charges;
- Admissions;
- Membership fees;
- Dues;
- Assessments; and

• Investment income (dividends, rents, and similar receipts), and normal recurring capital gains on investments.

Gross receipts for this purpose don't include capital contributions (see Regulations section 1.118-1), initiation fees, or unusual amounts of income (the sale of the clubhouse).

 *College fraternities or sororities or other organizations that charge membership initiation fees, but not annual dues, must include initiation fees in their gross receipts.*

**Section 501(c)(15).** If any section 501(c)(15) insurance company (other than life insurance) meets both parts of the following test, then the company can file Form 990 (or Form 990-EZ, if applicable).

1. The company's gross receipts must be equal to or less than $600,000.

2. The company's premiums must be more than 50% of its gross receipts.

If the company didn't meet this test and the company is a mutual insurance company, then it must meet the *Alternate test* next to qualify to file Form 990 (or Form 990-EZ, if applicable). Insurance companies that don't qualify as tax exempt must file Form 1120-PC, U.S. Property and Casualty Insurance Company Income Tax Return, or Form 1120, U.S. Corporation Income Tax Return, as taxable entities for the year. See Notice 2006-42, 2006-19 I.R.B. 878.

**Alternate test.** If any section 501(c) (15) insurance company (other than life insurance) is a mutual insurance company and it didn't meet the above test, then the company must meet both parts of the following alternate test.

1. The company's gross receipts must be equal to or less than $150,000.

2. The company's premiums must be more than 35% of its gross receipts.

If the company doesn't meet either test, then it must file Form 1120-PC or Form 1120 (if the company isn't entitled to insurance reserves) instead of Form 990 or 990-EZ.

 *The alternate test doesn't apply if any employee of the mutual insurance company or a member of the employee's family is an employee of another company that is exempt under section 501(c)(15) (or would be exempt if this provision didn't apply).*

**Gross receipts.** To determine whether a section 501(c)(15) organization satisfies either of the above tests described in *Appendix C*, figure gross receipts by adding:

1. Premiums (including deposits and assessments) without reduction for return premiums or premiums paid for reinsurance;

2. Gross investment income of a non-life insurance company (as described in section 834(b)); and

3. Other items that are included in the filer's gross income under subchapter B, chapter 1, subtitle A, of the Code.

This definition doesn't, however, include contributions to capital. For more information, see Notice 2006-42.

**Premiums.** Premiums consist of all amounts received as a result of entering into an insurance contract. They are reported on Form 990, Part VIII, line 2, or on Form 990-EZ, Part I, line 2.

**Anti-abuse rule.** The anti-abuse rule, found in section 501(c)(15)(C), explains how gross receipts (including premiums) from all members of a controlled group are aggregated in figuring the above tests.

# Appendix D. Public Inspection of Returns

Some members of the public rely on Form 990, or 990-EZ, as the primary or sole source of information about a particular organization. How the public perceives an organization in those cases may be determined by the information presented on its returns.

An organization's completed Form 990 or 990-EZ is available for public inspection as required by section 6104. Schedule B (Form 990), Schedule of Contributors, is open for public inspection for section 527 organizations filing Form 990 or 990-EZ. For other organizations that file Form 990 or 990-EZ, the names and addresses of contributors listed on Schedule B aren't required to be made available for public inspection. All other information reported on Schedule B, including the amount of contributions, the description of noncash contributions, and any other information, is required to be made available for public inspection unless it clearly identifies the contributor. Form 990-T filed after August 17, 2006, by a section 501(c)(3) organization to report any unrelated business income is also available for public inspection and disclosure.

## Through the IRS

Use Form 4506-A, Request for a Copy of Exempt or Political Organization IRS Form, to request:

• A copy of an exempt or political organization's return, report, notice, or exemption application; or

• An inspection of a return, report, notice, or exemption application at an IRS office.

The IRS can provide copies of exempt organization returns on DVD. Requesters can order the complete set (for example, all Forms 990 and 990-EZ or all Forms 990-PF filed for a year) or a partial set by state or by month. If you are ordering a partial set on DVD, indicate the format (Alchemy or raw), state(s), and month(s) you are ordering. Sample DVD requests aren't available for individual states. DVDs and sample DVDs aren't available for individual exempt organizations. Complete information, including the cost, is available on the IRS website. Search Copies of EO Returns Available at *IRS.gov/Charities-Non-Profits/Copies-of-EO-Returns-Available*.

The IRS can't disclose portions of an exemption application relating to any trade secrets, etc. Additionally, the IRS generally can't disclose the names and addresses of contributors. See the Instructions for Schedule B (Form 990) for more information about the disclosure of that information.

Notice 2008-49, 2008-20 I.R.B. 979, provides interim guidance regarding the requirement that section 501(c)(3) organizations and the IRS make available for public inspection Form 990-T.

Form 990 or 990-EZ can only be requested for section 527 organizations for tax years beginning after June 30, 2000.

A return, report, notice, or exemption application can be inspected at an IRS office free of charge. Copies of these items can also be obtained through the organization as discussed in the following section.

# Through the Organization

**Public inspection and distribution of certain returns of unrelated business income.** Section 501(c)(3) organizations that are required to file Form 990-T after August 17, 2006, must make Form 990-T available for public inspection under section 6104(d)(1)(A)(ii).

**Public inspection and distribution of returns and reports for a political organization.** Section 527 political organizations required to file Form 990 or 990-EZ must, in general, make their Forms 8871, 8872, 990, or 990-EZ available for public inspection in the same manner as annual information returns of section 501(c) organizations are made available. See *Public inspection and distribution of applications for tax exemption and annual information returns of tax-exempt organizations,* later. Generally, Form 8871 and Form 8872 are available for inspection and printing at *IRS.gov/Charities-and-Nonprofits*.



Note that a *section 527 political organization (and an organization filing Form 990-PF)* must disclose their *Schedule B (Form 990). See the Instructions for Schedule B. The penalties discussed in* General Instructions, Section H, Failure-To-File Penalties, *earlier, also apply to section 527 political organizations (Rev. Rul. 2003-49, 2003-20 I.R.B. 903).*

**Public inspection and distribution of applications for tax exemption and annual information returns of tax-exempt organizations.** Under Regulations sections 301.6104(d)-1 through -3, a tax-exempt organization must:

• Make its application for recognition of exemption and its annual information returns available for public inspection without charge at its principal, regional, and district offices during regular business hours;

• Make each annual information return available for a period of 3 years beginning on the date the return is required to be filed (determined with regard to any extension of time for filing) or is actually filed, whichever is later; and

• Provide a copy without charge (for Form 990-T, this requirement applies only to Forms 990-T filed after August 17, 2006), other than a reasonable fee for reproduction and actual postage costs, of all or any part of any application or return required to be made available for public inspection to any individual who makes a request for a copy in person or in writing (except as provided in Regulations sections 301.6104(d)-2 and -3).

# Definitions

**Tax-exempt organization** is any organization that is described in section 501(c) or (d) and is exempt from taxation under section 501(a). The term "tax-exempt organization" also includes any section 4947(a)(1) nonexempt charitable trust or nonexempt private foundation that is subject to the reporting requirements of section 6033.

**Application for tax exemption** includes:

• Any prescribed application form (Form 1023, 1023-EZ, 1024, or 1024-A),

• All documents and statements the IRS requires an applicant to file with the form,

• Any statement or other supporting document submitted in support of the application, and

• Any letter or other document issued by the IRS concerning the application.

**Application for tax exemption** doesn't include:

• Any application for tax exemption filed before July 15, 1987, unless the organization filing the application had a copy of the application on July 15, 1987;

• In the case of a tax-exempt organization other than a private foundation, the name and address of any contributor to the organization; or

• Any material that isn't available for public inspection under section 6104.



*If there is no prescribed application form, see Regulations section 301.6104(1)(b)(3)(ii).*

**Annual information return** includes:

• An exact copy of the Form 990 or Form 990-EZ filed by a tax-exempt organization as required by section 6033,

• Any amended return the organization files with the IRS after the date the original return is filed (both the original and amended return are subject to the public inspection requirements), or

• An exact copy of Form 990-T if one is filed by a section 501(c)(3) organization.

The copy must include all information furnished to the IRS on Form 990, 990-EZ, or 990-T as well as all statements, attachments, and supporting documents, except for the name and address of any contributor to the organization. See the Instructions for Schedule B (Form 990). However, statements, attachments, and supporting documents filed with Form 990-T that don't relate to the imposition of unrelated business income tax aren't required to be made available for public inspection and copying. See Notice 2008-49.

**Annual returns more than 3 years old.** An annual information return doesn't include any return after the expiration of 3 years from the date the return is required to be filed (including any extension of time that has been granted for filing the return) or is actually filed, whichever is later.

If an organization files an amended return, however, the amended return must be made available for a period of 3 years beginning on the date it is filed with the IRS.

**Local or subordinate organizations.** For rules relating to annual information returns of local or subordinate organizations, see Regulations section 301.6104(d)-1(f)(2).

**Regional or district offices.** A regional or district office is any office of a tax-exempt organization, other than its principal office, that has paid employees, whether part-time or full-time, whose aggregate number of paid hours a week is normally at least 120.

A site isn't considered a regional or district office, however, if:

• The only services provided at the site further exempt purposes (daycare, health care, scientific or medical research); and

• The site doesn't serve as an office for management staff, other than managers who are involved solely in managing the exempt function activities at the site.

# Special Rules Relating to Public Inspection

**Permissible conditions on public inspection.** A tax-exempt organization:

• Can have an employee present in the room during an inspection;

• Must allow the individual conducting the inspection to take notes freely during the inspection; and

• Must allow the individual to photocopy the document at no charge, if the individual provides photocopying equipment at the place of inspection.

**Organizations that don't maintain permanent offices.** A tax-exempt organization with no permanent office:

• Must make its application for tax exemption and its annual information returns available for inspection at a reasonable location of its choice;

• Must permit public inspection within a reasonable amount of time after receiving a request for inspection (normally not more than 2 weeks) and at a reasonable time of day;

• Can mail, within 2 weeks of receiving the request, a copy of its application for tax exemption and annual information returns to the requester instead of allowing an inspection; and

• Can charge the requester for copying and actual postage costs only if the requester consents to the charge.

An organization that has a permanent office, but has no office hours, or very limited hours during certain times of the year, must make its documents available during those periods when office hours are limited, or not available, as though it were an organization without a permanent office.

# Special Rules Relating to Copies

**Time and place for providing copies in response to requests made in person.** A tax-exempt organization must:

• Provide copies of required documents under section 6104(d) in response to a request made in person at its principal, regional, and district offices during regular business hours; and

• Provide copies to a requester on the day the request is made, except for unusual circumstances (explained next).

**Unusual circumstances.** In the case of an in-person request, where unusual circumstances exist so that fulfilling the request on the same business day causes an unreasonable burden to the tax-exempt organization, the organization must provide the copies no later than the next business day following the day that

the unusual circumstances cease to exist, or the 5th business day after the date of the request, whichever occurs first.

Unusual circumstances include:
• Requests received that exceed the organization's daily capacity to make copies;
• Requests received shortly before the end of regular business hours that require an extensive amount of copying; or

• Requests received on a day when the organization's managerial staff capable of fulfilling the request is conducting special duties (student registration or attending an off-site meeting or convention), rather than its regular administrative duties.

**Agents for providing copies.** For rules relating to use of agents to provide copies, see Regulations sections 301.6104(d)-1(d)(1)(iii) and -1(d)(2)(ii) (C).

**Request for copies in writing.** A tax-exempt organization must honor a written request for a copy of documents (or the requested part) required under section 6104(d) if the request:

1. Is addressed to (and delivered by mail, electronic mail, facsimile, or a private delivery service, as defined in section 7502(f)) a principal, regional, or district office of the organization; and

2. Sets forth the address to which the copy of the documents should be sent.

## Time and Manner of Fulfilling Written Requests

| IF the organization... | THEN the organization... |
|---|---|
| receives a written request for a copy | must mail the copy of the requested documents (or the requested parts) within 30 days from the date it receives the request. |
| mails the copy of the requested document | is deemed to have provided the copy on the postmark date or private delivery mark (if sent by certified or registered mail, the date of registration or the date of the postmark on the sender's receipt). |
| requires payment in advance | is required to provide the copies within 30 days from the date it receives payment. |
| receives a request or payment by mail | is deemed to have received it 7 days after the date of the postmark, absent evidence to the contrary. |
| receives a request transmitted by email or facsimile | is deemed to have received it the day the request is transmitted successfully. |
| receives a written request without payment or with an insufficient payment, when payment in advance is required | must notify the requester of the prepayment policy and the amount due within 7 days from the date of the request's receipt. |
| receives consent from an individual making a request | can provide a copy of the requested document exclusively by email (the material is provided on the date the organization successfully transmits the email). |

**Request for a copy of parts of a document.** A tax-exempt organization must fulfill a request for a copy of the organization's entire application for tax exemption or annual information return or any specific part or schedule of its application or return. A request for a copy of less than the entire application or less than the entire return must specifically identify the requested part or schedule.

**Fees for copies.** A tax-exempt organization can charge a reasonable fee for providing copies. Before the organization provides the documents, it can require that the individual requesting copies of the documents pay the fee. If the organization has provided an individual making a request with notice of the fee, and the individual doesn't pay the fee within 30 days, or if the individual pays the fee by check and the check doesn't clear upon deposit, the organization can disregard the request.

**Form of payment.**
a. **Request made in person.** If a tax-exempt organization charges a fee for copying, it must accept payment by cash and money order for requests made in person. The organization can accept other forms of payment, such as credit cards and personal checks.

b. **Request made in writing.** If a tax-exempt organization charges a fee for copying and postage, it must accept payment by certified check, money order, and either personal check or credit card for requests made in writing. The

organization can accept other forms of payment.

**Avoidance of unexpected fees.** Where a tax-exempt organization doesn't require prepayment and a requester doesn't enclose payment with a request, an organization must receive consent from a requester before providing copies for which the fee charged for copying and postage exceeds $20.

**Documents to be provided by regional and district offices.** Except as otherwise provided, a regional or district office of a tax-exempt organization must satisfy the same rules as the principal office for allowing public inspection and providing copies of its application for tax exemption and annual information returns.

A regional or district office isn't required, however, to make its annual information return available for inspection or to provide copies until 30 days after the date the return is required to be filed (including any extension of time that is granted for filing the return) or is actually filed, whichever is later.

# Documents Provided by Local and Subordinate Organizations

**Applications for tax exemption.** Except as otherwise provided, a tax-exempt organization that didn't file its own application for tax exemption

(because it is a local or subordinate organization covered by a group exemption letter) must, upon request, make available for public inspection, or provide copies of, the application submitted to the IRS by the central or parent organization to obtain the group exemption letter and those documents which were submitted by the central or parent organization to include the local or subordinate organization in the group exemption letter.

However, if the central or parent organization submits to the IRS a list or directory of local or subordinate organizations covered by the group exemption letter, the local or subordinate organization is required to provide only the application for the group exemption ruling and the pages of the list or directory that specifically refer to it. The local or subordinate organization must permit public inspection, or comply with a request for copies made in person, within a reasonable amount of time (normally not more than 2 weeks) after receiving a request made in person for public inspection or copies and at a reasonable time of day. See Regulations section 301.6104(d)-1(f) for further information.

**Annual information returns.** A local or subordinate organization that doesn't file its own annual information return (because it is affiliated with a central or parent organization that files a group return) must, upon request, make available for public inspection, or provide

copies of, the group returns filed by the central or parent organization.

However, if the group return includes separate statements for each local or subordinate organization included in the group return, the local or subordinate organization receiving the request can omit any statements relating only to other organizations included in the group return.

The local or subordinate organization must permit public inspection, or comply with a request for copies made in person, within a reasonable amount of time (normally not more than 2 weeks) after receiving a request made in person for public inspection or copies and at a reasonable time of day.

When a requester seeks inspection, the local or subordinate organization can:
• Mail a copy of the applicable documents to the requester within the same time period instead of allowing an inspection; and
• Charge the requester for copying and actual postage costs, if the requester consents to the charge.

If the local or subordinate organization receives a written request for a copy of its annual information return, it must fulfill the request by providing a copy of the group return in the time and manner specified in *Request for copies in writing*, earlier.

The requester has the option of requesting from the central or parent organization, at its principal office, inspection or copies of group returns filed by the central or parent organization. The central or parent organization must fulfill the requests in the time and manner specified in *Special Rules Relating to Public Inspection* and *Special Rules Relating to Copies*, earlier.

*Failure to comply.* Any person who doesn't comply with the public inspection requirements will be assessed a penalty of $20 for each day that inspection wasn't permitted, up to a maximum of $10,000 for each return. Organizations with gross receipts exceeding $1 million will be assessed a penalty of $100 for each day, not to exceed $50,000 for each return. The penalties for failure to comply with the public inspection requirements for applications are the same as those for annual returns, except that the $10,000 limitation doesn't apply (sections 6652(c)(1)(C) and (D)). Any person who willfully fails to comply with the public inspection requirements for annual returns or exemption applications will be subject to an additional penalty of $5,000 (section 6685).

## Making Applications and Returns Widely Available

A tax-exempt organization isn't required to comply with a request for a copy of its application for tax exemption or an annual information return if the organization has made the requested document widely available (see below).

An organization that makes its application for tax exemption and/or annual information return widely available must also make the document available for public inspection, as required under Regulations section 301.6104(d)-1(a).

A tax-exempt organization makes its application for tax exemption and/or an annual information return widely available if the organization complies with the Internet posting requirements and the notice requirements given below.

*Internet posting.* A tax-exempt organization can make its application for tax exemption and/or an annual information return widely available by posting the document on a web page that the tax-exempt organization establishes and maintains, or by having the document posted, as part of a database of similar documents of other tax-exempt organizations, on a web page established and maintained by another entity. The document will be considered widely available only if:
• The web page through which it is available clearly informs readers that the document is available and provides instructions for downloading it;
• The document is posted in a format that, when accessed, downloaded, viewed, and printed in hard copy, exactly reproduces the image of the application for tax exemption or annual information return as it was originally filed with the IRS, except for any information permitted by statute to be withheld from public disclosure; and
• Any individual with access to the Internet can access, download, view, and print the document without special computer hardware or software required for that format (other than software that is readily available to members of the public without payment of any fee) and without payment of a fee to the tax-exempt organization or to another entity maintaining the web page.

*Reliability and accuracy.* In order for the document to be widely available through an Internet posting, the entity maintaining the web page must have procedures for ensuring the reliability and accuracy of the document that it posts on the page and must take reasonable precautions to prevent alteration, destruction, or accidental loss of the document when posted on its page. In the event that a posted document is altered, destroyed, or lost, the entity must correct or replace the document.

*Notice requirement.* If a tax-exempt organization has made its application for tax exemption and/or an annual information return widely available, it must notify any individual requesting a copy where the documents are available (including the address on the Internet, if applicable). If the request is made in person, the organization must provide the notice to the individual immediately. If the request is made in writing, the notice must be provided within 7 days of receiving the request.

## Tax-Exempt Organization Subject to Harassment Campaign

Under section 6104(d)(4), if the Office of Associate Chief Counsel (Tax Exempt and Government Entities) determines that the organization is being harassed, a tax-exempt organization isn't required to comply with any request for copies that it reasonably believes is part of a harassment campaign.

Whether a group of requests is a harassment campaign depends on the relevant facts and circumstances such as:
• A sudden increase in requests,
• An extraordinary number of requests by form letters or similarly worded correspondence,
• Hostile requests,
• Evidence showing bad faith or deterrence of the organization's exempt purpose,
• Prior provision of the requested documents to the purported harassing group, and
• A demonstration that the organization routinely provides copies of its documents upon request.

A tax-exempt organization can disregard any request for copies of all or part of any document beyond the first two received within any 30-day period or the first four received within any 1-year period from the same individual or the same address, whether or not the Office of Associate Chief Counsel (Tax Exempt and Government Entities) has determined that the organization is subject to a harassment campaign.

A tax-exempt organization can apply for a determination that it is the subject of a harassment campaign and that compliance with requests that are part of the campaign wouldn't be in the public interest by submitting a signed application to the Office of Associate Chief Counsel (Tax Exempt and Government Entities). See Rev. Proc. 2022-1, 2022-1 I.R.B. 1, or as updated annually.

In addition, the organization can suspend compliance with any request it reasonably believes to be part of the harassment campaign until it receives a response to its application for a harassment campaign determination. However, if the Office of Associate Chief Counsel (Tax Exempt and Government Entities) determines that the organization didn't have a reasonable basis for requesting a determination that it was subject to a harassment campaign or reasonable belief that a request was part of the campaign, the officer, director, trustee, employee, or other responsible individual of the organization remains liable for any penalties for not providing the copies in a timely fashion. See Regulations section 301.6104(d)-3.

# Appendix E. Group Returns—Reporting Information on Behalf of the Group

Except where otherwise instructed, where a line calls for a dollar amount or numerical data, the **central organization** filing the **group return** must aggregate the data from all the **subordinate organizations** included in the group return and report the aggregate number. For example, in answering Form 990, Part I, line 6, the total number of volunteers for all of the subordinate organizations would be reported.

For purposes of Form 990, Part III, summarize the mission and activities of all of the subordinate organizations as if all of the subordinate organizations were one entity.

In general, if a line requires a "Yes" or "No" answer and the answer isn't the same for all subordinate organizations to which the line applies, then check "Yes," and explain the answer in the schedule's supplemental instruction section (if applicable) or on Schedule O (Form 990). For the following lines, however, check "No" if the answer is "No" for any of the subordinates to which the line applies, and explain on Schedule O.
• Form 990, Part V, lines 1c, 2b, 3b, 5c, 6b, 7b, 7g, and 7h.
• Form 990, Part VI, lines 8a, 8b, 10b, 12b, and 12c.
• Schedule C (Form 990) (Political Campaign and Lobbying Activities), Part I-B, lines 3 and 4a.
• Schedule C (Form 990), Part I-C, line 4.
• Schedule C (Form 990), Part II-A, line 1j.
• Schedule C (Form 990), Part II-B, line 2d.
• Schedule C (Form 990), Part III-A, lines 1–3.

• Schedule D (Form 990) (Supplemental Financial Statements), Part I, lines 5 and 6.
• Schedule D (Form 990), Part II, lines 5 and 8.
• Schedule E (Form 990) (Schools), lines 1–4d and 7.
• Schedule F (Form 990) (Statement of Activities Outside the United States), Part I, line 1.
• Schedule G (Form 990) (Supplemental Information Regarding Fundraising or Gaming Activities), Part III, line 9a.
• Schedule I (Form 990) (Grants and Other Assistance to Organizations, Governments, and Individuals in the United States), Part I, line 1.
• Schedule J (Form 990) (Compensation Information), Part I, lines 1b and 2.
• Schedule M (Form 990) (Noncash Contributions), Part I, line 31.
• Schedule N (Form 990) (Liquidation, Termination, Dissolution, or Significant Disposition of Assets), Part I, lines 3, 4a–b, 5, and 6a–c.

The following is a list of other special instructions for group returns.

1. **Item B. Final return/terminated.** If the **central organization** is terminating its group exemption and filing its final **group return**, don't check the "Final return/terminated" box. Refer to Rev. Proc. 80-27, 1980-1 C.B. 677, as modified, for procedures for terminating the group exemption.

2. **Item C. Name.** Enter the name of the group return. Note that the group exemption may have a different name than the central organization's name.

3. **Item D. EIN.** Use the special **EIN** (separate from the central organization's EIN) that is issued solely for the purposes of the group return. The central organization must have received a group exemption letter before it can file a group ruling.

4. **Items E, F, and J.** Enter information for the central organization only.

5. **Item H. Group returns.** If the organization answers "Yes" to Item H(a) but "No" to Item H(b) (not all subordinate organizations are included in the group return), then attach a list (not on Schedule O (Form 990)) showing the name, address, and EIN of each subordinate organization included in the group return. Additionally, attach a list (not on Schedule O (Form 990)) showing the name, address, and EIN of each subordinate organization not included in the group return. See Regulations section 1.6033-2(d)(2)(ii).

6. **Item K. Form of organization.** Check "Other" if the group has more than one form of organization.

7. **Item L. Year of formation.** Leave blank for group return.

8. **Item M. State of legal domicile.** Leave blank for group return.

9. **Part IV, lines 14b–19, 21–22, and 29, dollar thresholds.** Apply the dollar thresholds for the aggregate data for the group as a whole, not subordinate by subordinate.

10. **Part IV, line 20. Hospitals.** Answer "Yes" if any affiliate included within the group return operated a hospital facility.

11. **Part VI, line 2. Relationships among officers, directors, trustees, and key employees.** Describe on Schedule O (Form 990) only relationships between **officers, directors, trustees,** and **key employees** of the same **subordinate organization**, not relationships between officers, directors, trustees, and key employees of one subordinate and officers, directors, trustees, and key employees of another subordinate.

12. **Part VI, line 4. Significant changes to organizational documents.** Report only changes to standardized organizational documents maintained by the central organization that subordinates are required to adopt.

13. **Part VI, line 5. Significant diversion of assets.** In determining whether a diversion of a subordinate's assets meets the 5%/$250,000 reporting threshold, consider only the total assets and gross receipts of that subordinate, not of the parent or other subordinates.

14. **Part VI, line 20. Person who possesses books and records.** Identify the person who possesses the information furnished by the subordinate organizations used in compiling the group return.

15. **Part VII. Compensation of officers, directors, trustees, key employees, and highest compensated employees.** File a single consolidated Form 990, Part VII, showing the officers, directors, trustees, and key employees of each subordinate included in the group return, and a single consolidated Schedule J (Form 990), Compensation Information, Part II, for all officers, directors, trustees, and key employees above the compensation thresholds. Report the five **highest compensated employees** and **independent contractors** above $100,000 for the whole group of subordinates, not for each subordinate. If one or more officers, directors, trustees, key employees, or highest compensated employees received compensation from more than one organization in the group, the person's compensation from the

several organizations must be reported in column (D).

**16. Part VII. Compensation from related organizations.** Report compensation from an organization that is included in the group ruling but that isn't among the subordinates included in the group return as compensation from a related organization in column (E), even if the related organization isn't required to be reported on Schedule R (Form 990), Related Organizations and Unrelated Partnerships.

**17. Part XII, lines 2a–2b. Compiled, reviewed, or audited financial statements.** Answer "Yes" only if all the subordinates in the group had their financial statements compiled, reviewed, or audited individually (rather than on a consolidated basis).

**18. Schedule A (Form 990), Part I. Reason for public charity status.** If the subordinates don't all have the same public charity status, then check the public charity status box for the largest number of subordinates in the group, and explain on Schedule A (Form 990), Public Charity Status and Public Support, Part IV. However, if any section 509(a)(3) organizations are among the subordinates in the group return, also answer lines 12e through 12g.

**19. Schedule A (Form 990), Parts II and III. Support statements.** Report aggregate data for all subordinates with the public charity status corresponding to Part II or III.

**20. Schedule A (Form 990), Parts IV through VI.** In addition to Part I in paragraph 18 above, if any section 509(a)(3) organizations are among the subordinates in the group return, also complete the relevant sections of Parts IV and V. If an answer in Part IV requires more information with respect to any section 509(a)(3) organizations, then answer with respect to those organizations and provide that additional information in Part VI. For instance, if the group includes 50 section 509(a)(3) organizations, and one of them doesn't list all of its supported organizations by name in its governing documents, then answer "No" to Part IV, Section A, line 1, and explain in Part VI. If the group includes more than one Type III non-functionally-integrated supporting organization, then provide aggregate data in Part V.

**21. Schedule B (Form 990). Contributors.** Report a consolidated Schedule B (Form 990) for all subordinates included in the group return. Apply the dollar and percentage thresholds (including the greater of $5,000 or 2% threshold for section 501(c)(3) organizations described in sections 509(a)(1) and 170(b)(1)(A)(vi)) on a

subordinate by subordinate, not on a group basis.

**22. Schedule C (Form 990), Part II-A. Lobbying expenditures and affiliated groups.** Complete Part II-A, column (b), for the group as a whole. In column (a), except on lines 1g and 1h, include the amounts that apply to all electing members of the group if they are included in the group return. If the group return includes organizations that belong to more than one affiliated group, enter in column (b) the totals for all the groups.

**23. Schedule D (Form 990), Part X. Other liabilities.** The filing organization can summarize that portion, if any, of the **FIN 48** (ASC 740) footnote that applies to the liability of multiple organizations including the organization (for example, as a member of a group with consolidated financial statements), to describe the filing organization's share of the liability.

**24. Schedule H (Form 990). Hospitals.** Complete one Schedule H for all of the hospitals operated by subordinates in the group, and report aggregate data from all the hospitals. In Part V, Section A, list each of the organization's **hospital facilities** separately. List in Section A the name and EIN of the subordinate hospital organization that operates the hospital facility. Complete separate Sections B and C for each of the hospital facilities or facility reporting groups listed in Section A.

**25. Schedule J (Form 990). Compensation from related organizations.** See the *Appendix E,* Part VII instructions, earlier.

**26. Schedule L (Form 990). Transactions with interested persons.** On Schedule L (Form 990), Part IV, report only transactions between a subordinate organization and its interested persons—not transactions between a subordinate organization and the interested persons of other subordinates. In determining whether a transaction between the subordinate and its interested persons meets the financial reporting thresholds of Schedule L, Part IV, consider only the payments between the subordinate and its interested persons, not payments between interested persons and the parent or other subordinates.

**27. Schedule N (Form 990). Liquidation or significant disposition of assets.** Explain on Schedule N (Form 990), Part III, which of the subordinates have undergone a liquidation, termination, dissolution, or significant disposition of assets during the tax year.

**28. Schedule R (Form 990). Related organizations.** See the Instructions for Schedule R (Form 990) to determine

when related organizations of a member of a group exemption must be included on Schedule R (Form 990). In general, **central organizations** and **subordinate organizations** of a **group exemption** aren't required to be listed as **related organizations** on Schedule R (Form 990), Part II; and all other related organizations of the central organization or of a subordinate organization are required to be listed on Schedule R (Form 990) in the applicable part. Even if a related organization isn't required to be listed in Part II of Schedule R (Form 990), the organization must report its transactions with the related organization in Part V, as described in the instructions for that Part.

# Appendix F. Disregarded Entities and Joint Ventures—Inclusion of Activities and Items

## Disregarded Entities

A **disregarded entity**, as described in Regulations sections 301.7701-1 through 301.7701-3, is generally treated as a branch or division of its parent organization for federal tax purposes (but see the *TIP* next for treatment of disregarded entities as separate entities for employment tax purposes). Therefore, financial and other information applicable to a disregarded entity must be reported as the parent organization's information, except on Form 990, Part VI, lines 10a and 10b, and on Schedule R (Form 990), in which disregarded entities must be separately reported.

An organization must report on its Form 990, including Parts VIII through X, all of the revenues, expenses, assets, liabilities, and net assets or funds of a disregarded entity of which it is the sole member. The disregarded entity is deemed to have the same accounting period as its parent for federal tax purposes. The organization must also report the activities of a disregarded entity in the appropriate parts (including schedules) of the Form 990. For example, support of a disregarded entity must be taken into account by the filing organization for purposes of the public support tests set forth on Schedule A (Form 990). Similarly, **political campaign activity** or **lobbying activity** conducted by a disregarded entity of which the organization is the sole member must be reported on Schedule C (Form 990), Political Campaign and Lobbying Activities.



**TIP** *A disregarded entity is treated as a separate entity for purposes of employment tax and certain excise taxes. For wages paid after January 1, 2009, a disregarded entity is required to use its name and EIN for reporting and payment of employment taxes.*



**CAUTION** *A single-member LLC is treated generally as a disregarded entity of its sole member/owner unless it elects to be treated as a separate association. It may elect to be treated separately by filing Form 8832, Entity Classification Election, or by claiming tax-exempt status in its own right (by filing a Form 1023, 1023-EZ, 1024, or 1024-A, application for recognition of tax-exempt status, or a Form 990, 990-EZ, 990-N, or 990-T, using its own name and EIN). Once the IRS determines a single-member LLC to be exempt, it is no longer eligible to be treated as a disregarded entity until the determination of exemption is revoked and the LLC subsequently files a Form 8832 electing disregarded entity status. Similarly, a single-member LLC that claims exemption but hasn't been determined to be exempt isn't eligible to be treated as disregarded until the claim is withdrawn or rejected and the LLC files a Form 8832 electing disregarded entity status. See Regulations section 301.7701-3(c)(1)(v) (A).*

The following is a list of special instructions for the form and schedules regarding the reporting of a disregarded entity of which the organization is the sole member. These items are described to illustrate special applications of the rule described above that a disregarded entity's activities and items must be reported on the organization's Form 990 and applicable schedules.

1. **Part I, line 5. Number of employees.** See the instructions for Part V, lines 1 and 2, below.

2. **Part I, line 6. Number of volunteers.** The total number of **volunteers** to be reported can, but isn't required to, include **volunteers** of any disregarded entity.

3. **Part III. Program service accomplishments.** Consider activities and accomplishments of all disregarded entities when answering this part.

4. **Part IV, line 12. Audited financial statements.** The organization shouldn't answer "Yes" to this question merely because it received audited financial statements of one or more disregarded entities, if the audited financial statements of the organization weren't audited.

5. **Part IV, lines 31–32. Liquidation or significant disposition of assets.** See the instructions for Schedule N (Form 990) in this Appendix, later.

6. **Part IV, lines 35–36. Transactions with related organizations.** See the instructions for Schedule R (Form 990) in this Appendix, later.

7. **Part V, lines 1–2. Forms 1096 and W-3.** The total number of information returns and **employees** to be reported, and compliance with backup withholding rules, includes all backup withholding, information returns, and employees of any disregarded entity, whether or not the disregarded entity has a separate **EIN** for employment tax and information reporting purposes.

8. **Part V, line 7. Organizations that can receive deductible contributions.** For purposes of Form 990 reporting, lines 7a through 7h are to be answered by taking into account any contributions made to a disregarded entity.

9. **Part VI, lines 1a–9.** Members of the governing body, officers, directors, trustees, and employees of a disregarded entity won't be treated as **governing body members, officers, directors,** or **trustees** of the filing organization, but a person can be a **key employee** or **highest compensated employee** of the filing organization by virtue of **compensation** paid by the disregarded entity, or the person's responsibilities and authority over operations of the disregarded entity when compared to the filing organization as a whole. See *Disregarded entities* under Part VII, Section A, earlier.

10. **Part VI, Section B, lines 10a–16b. Policies.** The organization should check "Yes" or "No" based on the filing organization's policies, but for each "Yes" response, they must report on Schedule O (Form 990) whether the policy applies to all of the organization's disregarded entities (if any).

11. **Part VII, line 1a. Definitions of key employee and highest compensated employee.** An officer, director, trustee, and employee of a disregarded entity can constitute a key employee or highest compensated employee of the filing organization by virtue of compensation paid by the disregarded entity, or the person's responsibilities and authority over operations of the disregarded entity when compared to the filing organization as a whole. See the instructions for Form 990, Part VII, Section A.

12. **Part XII, lines 2a–2b. Financial statements.** If the organization included financial information from its disregarded entity or entities in its financial statements, but didn't consolidate any other entity's information in its financial statements, it should check the box for "Separate basis" but not the box for "Consolidated basis" or "Both consolidated and separate basis."

13. **Part XII, line 3. Uniform Guidance, 2 C.F.R. Part 200, Subpart F.** The organization must check "Yes" if a disregarded entity was required to undergo an audit or audits.

**Note.** The Single Audit Act of 1984 and OMB Circular A-133 are superseded by Uniform Guidance, 2 C.F.R. Part 200, Subpart F, and now requires states, local governments, and nonprofit organizations that spend $750,000 (previously $500,000) or more of federal awards in a year to obtain an annual audit.

14. **Schedule L (Form 990). Transactions with interested persons.** Reportable transactions include transactions involving interested persons who have such status because of their relationship with a disregarded entity (such as an employee of the disregarded entity who qualifies as a key employee of the organization as a whole). A transaction between an interested person and a disregarded entity of the organization is reportable on Schedule L.

15. **Schedule N (Form 990). Liquidation or significant disposition of assets.** The organization shouldn't prepare Part I to report a termination, liquidation, or dissolution of a disregarded entity if the filing organization continues to operate. Transfers to (or by) a filing organization by (or to) its disregarded entity aren't to be reported in Part II, but transfers by or contractions of a disregarded entity are to be taken into account to determine whether a reportable event (based on 25% of the filing organization's net assets, including those of its disregarded entities) has occurred.

16. **Schedule R (Form 990), Part V, line 2. Transactions with related organizations.** Specified payments to a disregarded entity by a **controlled entity** of the filing organization, and transfers by a disregarded entity to an exempt noncharitable entity, are to be reported on Schedule R (Form 990), Part V, line 2.

# Joint Ventures Treated as a Partnership for Federal Income Tax Purposes

If the organization participates as a partner or member of a **joint venture**, partnership, LLC, or other entity treated as a partnership for federal tax purposes

(referred to here as a "joint venture"), as described in Regulations sections 301.7701-1 through 301.7701-3, then the organization in general must report the activities of the joint venture as its own activities, and report the joint venture's revenue, expenses, and assets, to the extent of the organization's proportionate interest in the joint venture. For example, a proportionate share of the **political campaign activity** or **lobbying activity** conducted by a joint venture of which the organization is a member must be reported on Schedule C (Form 990). If the joint venture is a member of a second joint venture, which is a member of a third joint venture, etc., the activities similarly pass through all joint ventures to the organization, according to the organization's proportionate share in each of the joint ventures.

The following is a list of special instructions for the form and schedules regarding the reporting of a joint venture of which the organization is a member.

1. **Part I, line 2. Disposition of 25% of assets.** See the instructions for Schedule N in this Appendix, later.

2. **Part I, lines 7a–7b. Unrelated business income.** Include the organization's distributive share (whether or not distributed) of income or loss of the joint venture that is unrelated business income in determining the organization's gross and net unrelated business income.

3. **Part IV, lines 3–5. Political campaign and lobbying activities.** See the instructions for Schedule C in this Appendix, later.

4. **Part IV, line 7. Conservation easements.** See the instructions for Schedule D in this Appendix, later.

5. **Part IV, lines 14–16. Activities outside the United States.** See the instructions for Schedule F in this Appendix, later.

6. **Part IV, lines 17–19. Fundraising and gaming.** See the instructions for Schedule G in this Appendix, later.

7. **Part IV, line 20. Hospitals.** See the instructions for Schedule H in this Appendix, later.

8. **Part IV, lines 21–22. Grants in the United States.** See the instructions for Schedule I in this Appendix, later.

9. **Part IV, lines 26–33. Loans, grants, and business transactions involving interested persons.** See the instructions for Schedule L in this Appendix, later.

10. **Part IV, line 32. Disposition of 25% of assets.** See the instructions for Schedule N in this Appendix, later.

11. **Part IV, lines 34–37. Related organizations and unrelated partnerships.** See the instructions for Schedule R in this Appendix, later.

12. **Part V, line 3a. Unrelated business income.** Include the organization's distributive share (whether or not distributed) of income or loss of the joint venture that is **unrelated business income** in determining the organization's gross unrelated business income.

13. **Part VI. Governance, management, and disclosure.** Don't take into account a joint venture for purposes of Part VI (except for lines 16a and 16b).

14. **Part VII. Compensation.** See the instructions for Schedule J in this Appendix, later.

15. **Parts VIII, IX, and X. Financial statements.** Report in accordance with the organization's books and records.

16. **Part XII. Financial statements and reporting.** Disregard a joint venture.

17. **Schedule C (Form 990). Political campaign and lobbying activities.** Report the organization's share of political campaign or lobbying activities conducted by a joint venture.

18. **Schedule D (Form 990), Part II. Conservation easements.** Include conservation easements held by a joint venture formed for the purpose of holding the easements.

19. **Schedule F (Form 990). Activities outside the United States.** Include activities of a joint venture, including grants to organizations or individuals outside the United States.

20. **Schedule G (Form 990). Fundraising and gaming.** Include activities of a joint venture and the organization's share of revenues and expenses. On Part III, line 12, check "Yes" if the joint venture was formed to administer charitable gaming.

21. **Schedule H (Form 990). Hospitals.** Report activities, expenses, and revenue of **hospital facilities** and other programs operated by any joint venture, to the extent of the organization's proportionate interest in the joint venture. See the instructions for Schedule H, Part IV, to determine how to report an organization's interest in joint ventures and management companies.

22. **Schedule I (Form 990). Grants in the United States.** Include grants from a joint venture to organizations, governments, or individuals in the United States.

23. **Schedule J (Form 990). Compensation.** If an **officer, director, trustee,** or **employee** of the organization receives compensation from a joint venture, the **compensation** isn't treated

as paid pro rata by the organization. The compensation may need to be reported, however, as compensation from a related organization if the joint venture is a related organization.

24. **Schedule K (Form 990), Part III, line 1. Private business use.** Report certain joint ventures that owned property financed by **tax-exempt bonds.**

25. **Schedule L (Form 990), Parts II–IV. Loans, grants, and business transactions involving interested persons.** Report loans, grants, and business transactions between the organization and a joint venture, if the joint venture is an interested person for purposes of Schedule L, and if the transaction meets the applicable reporting thresholds described in the Schedule L instructions. Also report certain joint ventures with interested persons as provided in the Schedule L, Part IV, instructions as business transactions themselves.

26. **Schedule N (Form 990), Part II. Disposition of 25% of assets.** In determining whether the organization made a disposition of more than 25% of its assets, take into account its share of dispositions by a joint venture.

27. **Schedule R (Form 990). Related organizations.** Report relationships with certain joint ventures in Parts III and VI, and certain transactions with joint ventures in Part V.

# Appendix G. Section 4958 Excess Benefit Transactions

The intermediate sanction regulations are important to the exempt organization community as a whole, and for ensuring compliance in this area. The rules provide a roadmap by which an organization can steer clear of situations that may give rise to inurement.

Under section 4958, any **disqualified person** who benefits from an **excess benefit transaction** with an **applicable tax-exempt organization** is liable for a 25% tax on the excess benefit. The disqualified person is also liable for a 200% tax on the excess benefit if the excess benefit isn't corrected by a certain date. Also, organization managers who participate in an excess benefit transaction knowingly, willfully, and without reasonable cause are liable for a 10% tax on the excess benefit, not to exceed $20,000 for all participating managers on each transaction.

## Applicable Tax-Exempt Organization

These rules only apply to certain applicable section 501(c)(3), 501(c)(4),

and 501(c)(29) organizations. An **applicable tax-exempt organization** is a section 501(c)(3), 501(c)(4), or 501(c)(29) organization that is tax exempt under section 501(a), or was an organization at any time during a 5-year period ending on the day of the **excess benefit transaction**.

An **applicable tax-exempt organization** doesn't include:
• A **private foundation**, as defined in section 509(a);
• A governmental entity that is exempt from (or not subject to) taxation without regard to section 501(a) or relieved from filing an annual return under Regulations section 1.6033-2(g)(6); and
• Certain **foreign organizations**.

An organization isn't treated as a section 501(c)(3), 501(c)(4), or 501(c)(29) organization for any period covered by a final determination that the organization wasn't tax exempt under section 501(a), so long as the determination wasn't based on private inurement or one or more excess benefit transactions.

## Disqualified Person

Most section 501(c)(3), 501(c)(4), or 501(c)(29) organization **employees** and **independent contractors** won't be affected by these rules. Only the few influential persons within these organizations are covered by these rules when they receive benefits, such as **compensation**, fringe benefits, or contract payments. The IRS calls this class of covered individuals **disqualified persons**.

A *disqualified person*, regarding any transaction, is any person who was in a position to exercise substantial influence over the affairs of the applicable tax-exempt organization at any time during a 5-year period ending on the date of the transaction. Persons who hold certain powers, responsibilities, or interests are among those who are in a position to exercise substantial influence over the affairs of the organization. This would include, for example, **voting members of the governing body**, and persons holding the power of the following.
• Presidents, **CEOs**, or chief operating officers.
• Treasurers and chief financial officers. A disqualified person also includes certain family members of a disqualified person, and **35% controlled entities** of a disqualified person.

The following persons are considered disqualified persons for the following organizations, along with certain family members and 35% controlled entities associated with them.

• For a transaction involving a **donor advised fund**, a donor or **donor advisor** of that donor advised fund.
• For a **donor advised fund** sponsoring organization, an investment advisor of the **sponsoring organization**.
• For a **supported organization** of a section 509(a)(3) supporting organization, the disqualified persons of the section 509(a)(3) **supporting organization**.

See the instructions for Form 4720, Schedule I, for more information regarding these disqualified persons.

**Who isn't a disqualified person?** The rules also clarify which persons aren't considered to be in a position to exercise substantial influence over the affairs of an organization. They include:
• An employee who receives benefits that total less than the highly compensated amount ($120,000 in 2015–2018, $125,000 in 2019, $130,000 in 2020–2021, and $135,000 in 2022) and who doesn't hold the executive or voting powers just mentioned, isn't a family member of a disqualified person, and isn't a substantial contributor;
• Tax-exempt organizations described in section 501(c)(3); and
• Section 501(c)(4) organizations for transactions engaged in with other section 501(c)(4) organizations.

**Who else can be considered a disqualified person?** Other persons not described above can also be considered disqualified persons, depending on all the relevant facts and circumstances.

*Facts and circumstances tending to show substantial influence.*
• The person founded the organization.
• The person is a substantial contributor to the organization under the section 507(d)(2)(A) definition, only taking into account contributions to the organization for the past 5 years.
• The person's compensation is primarily based on revenues derived from the activities of the organization that the person controls.
• The person has or shares authority to control or determine a substantial portion of the organization's capital expenditures, operating budget, or compensation for employees.
• The person manages a discrete segment or activity of the organization that represents a substantial portion of the activities, assets, income, or expenses of the organization, as compared to the organization as a whole.
• The person owns a controlling interest (measured by either vote or value) in a corporation, partnership, or trust that is a disqualified person.
• The person is a nonstock organization controlled directly or indirectly by one or more disqualified persons.

*Facts and circumstances tending to show no substantial influence.*
• The person is an independent contractor whose sole relationship to the organization is providing professional advice (without having decision-making authority) for transactions from which the independent contractor won't economically benefit.
• The person has taken a vow of poverty.
• Any preferential treatment the person receives based on the size of the person's donation is also offered to others making comparable widely solicited donations.
• The direct supervisor of the person isn't a disqualified person.
• The person doesn't participate in any management decisions affecting the organization as a whole or a discrete segment of the organization that represents a substantial portion of the activities, assets, income, or expenses of the organization, as compared to the organization as a whole.

**What about persons who staff affiliated organizations?** In the case of multiple affiliated organizations, the determination of whether a person has substantial influence is made separately for each applicable tax-exempt organization. A person may be a disqualified person for more than one organization in the same transaction.

## Excess Benefit Transaction

An **excess benefit transaction** is generally a transaction in which an economic benefit is provided by an **applicable tax-exempt organization**, directly or indirectly, to or for the use of any **disqualified person**, and the value of the economic benefit provided by the applicable tax-exempt organization exceeds the value of the consideration (including the performance of services) received for providing the benefit, but see the special rules below for **donor advised funds** and **supporting organizations**. An excess benefit transaction can also occur when a disqualified person embezzles from the exempt organization.

To determine whether an excess benefit transaction has occurred, all consideration and benefits exchanged between a disqualified person and the applicable tax-exempt organization, and all entities it controls, are taken into account.

For purposes of determining the value of economic benefits, the value of property, including the right to use property, is the **FMV**. **FMV** is the price at which property, or the right to use property, would change hands between a

**2022 Instructions for Form 990**

willing buyer and a willing seller, neither being under any compulsion to buy, sell, or transfer property or the right to use property, and both having reasonable knowledge of relevant facts.

**Donor advised funds.** For a **donor advised fund**, an excess benefit transaction includes a grant, loan, **compensation**, or similar payment from the fund to a:

- Donor or **donor advisor**,
- Family member of a donor or **donor advisor**,
- **35% controlled entity** of a donor or donor advisor, or
- 35% controlled entity of a family member of a donor or donor advisor.

For these transactions, the excess benefit is defined as the amount of the grant, loan, compensation, or similar payment. For additional information, see the Instructions for Form 4720.

**Supporting organizations.** For any supporting organization defined in section 509(a)(3), an excess benefit transaction includes grants, loans, compensation, or similar payment provided by the supporting organization to a:

- Substantial contributor,
- Family member of a substantial contributor,
- 35% controlled entity of a substantial contributor, or
- 35% controlled entity of a family member of a substantial contributor. Additionally, an excess benefit transaction includes any loans provided by the supporting organization to a disqualified person (other than an organization described in section 509(a)(1), (2), or (4)).

A substantial contributor is any person who contributed or bequeathed an aggregate of more than $5,000 to the organization, if that amount is more than 2% of the total contributions and bequests received by the organization before the end of the tax year of the organization in which the contribution or bequest is received by the organization from the person. A substantial contributor includes the grantor of a trust.

The excess benefit for substantial contributors and parties related to those contributors includes the amount of the grant, loan, compensation, or similar payment. For additional information, see the Instructions for Form 4720.

**When does an excess benefit transaction usually occur?** For federal income tax purposes, an excess benefit transaction occurs on the date the disqualified person receives the economic benefit from the organization. However, when a single contractual arrangement provides for a series of

compensation payments or other payments to a disqualified person during the disqualified person's tax year, any excess benefit transaction for these payments occurs on the last day of the disqualified person's tax year.

In the case of the transfer of property subject to a substantial risk of forfeiture, or in the case of rights to future compensation or property, the transaction occurs on the date the property, or the rights to future compensation or property, isn't subject to a substantial risk of forfeiture. Where the disqualified person elects to include an amount in gross income in the tax year of transfer under section 83(b), the excess benefit transaction occurs on the date the disqualified person receives the economic benefit for federal income tax purposes.

**Section 4958 applies only to post-September 1995 transactions.** Section 4958 applies the general rules to excess benefit transactions occurring on or after September 14, 1995. Section 4958 doesn't apply to any transaction occurring pursuant to a written contract that was binding on September 13, 1995, and at all times thereafter before the transaction occurs. The special rules relevant to transactions with donor advised funds and supporting organizations apply to transactions occurring after August 17, 2006, except that taxes on certain transactions between supporting organizations and their substantial contributors apply to transactions occurring on or after July 25, 2006.

# What Is Reasonable Compensation?

**Reasonable compensation** is the valuation standard that is used to determine if there is an excess benefit in the exchange of a **disqualified person's** services for **compensation**. *Reasonable compensation* is the value that would ordinarily be paid for like services by like enterprises under like circumstances. This is the section 162 standard that will apply in determining the reasonableness of compensation. The fact that a bonus or revenue-sharing arrangement is subject to a cap is a relevant factor in determining the reasonableness of compensation.

For determining the reasonableness of compensation, all items of compensation provided by an applicable tax-exempt organization in exchange for the performance of services are taken into account in determining the value of compensation (except for certain economic benefits that are disregarded, as discussed in *What benefits are disregarded?* in this Appendix, later).

Items of compensation include the following.

- All forms of cash and noncash compensation, including salary, fees, bonuses, severance payments, and deferred and noncash compensation.
- The payment of liability insurance premiums for, or the payment or reimbursement by the organization of taxes or certain expenses under section 4958, unless excludable from income as a de minimis fringe benefit under section 132(a)(4). (A similar rule applies in the private foundation area.) Inclusion in compensation for purposes of determining reasonableness under section 4958 doesn't control inclusion in income for income tax purposes.
- All other compensatory benefits, whether or not included in gross income for income tax purposes.
- Taxable and nontaxable fringe benefits, except fringe benefits described in section 132.
- Foregone interest on loans.

**Written intent required to treat benefits as compensation.** An economic benefit isn't treated as consideration for the performance of services unless the organization providing the benefit clearly indicates its intent to treat the benefit as compensation when the benefit is paid.

An applicable tax-exempt organization (or entity that it controls) is treated as clearly indicating its intent to provide an economic benefit as compensation for services only if the organization provides written substantiation that is contemporaneous with the transfer of the economic benefits under consideration. Ways to provide contemporaneous written substantiation of its intent to provide an economic benefit as compensation include the following.

- The organization produces a signed written employment contract.
- The organization reports the benefit as compensation on an original Form W-2, Form 1099, or Form 990, or on an amended form filed before the start of an IRS examination.
- The disqualified person reports the benefit as income on the person's original Form 1040 or 1040-SR or on an amended form filed before the start of an IRS examination.

**Exception.** To the extent the economic benefit is excluded from the disqualified person's gross income for income tax purposes, the applicable tax-exempt organization isn't required to indicate its intent to provide an economic benefit as compensation for services, for example, employer-provided health benefits and contributions to qualified plans under section 401(a).

**What benefits are disregarded?** The following economic benefits are disregarded for purposes of section 4958.

• Nontaxable fringe benefits. An economic benefit that is excluded from income under section 132.

• Benefits to volunteers. An economic benefit provided to a volunteer for the organization if the benefit is provided to the general public in exchange for a membership fee or contribution of $75 or less per year.

• Benefits to members or donors. An economic benefit provided to a member of an organization due to the payment of a membership fee, or to a donor as a result of a deductible contribution, if a significant number of nondisqualified persons make similar payments or contributions and are offered a similar economic benefit.

• Benefits to a charitable beneficiary. An economic benefit provided to a person solely as a member of a charitable class that the applicable tax-exempt organization intends to benefit as part of the accomplishment of its exempt purpose.

• Benefits to a governmental unit. A transfer of an economic benefit to or for the use of a governmental unit, as defined in section 170(c)(1), if exclusively for public purposes.

**Is there an exception for initial contracts?** Section 4958 doesn't apply to any fixed payment made to a person pursuant to an **initial contract**. This is a very important exception, because it would potentially apply, for example, to all initial contracts with new, previously unrelated officers and contractors.

An *initial contract* is a binding written contract between an applicable tax-exempt organization and a person who wasn't a disqualified person immediately before entering into the contract.

A *fixed payment* is an amount of cash or other property specified in the contract, or determined by a fixed formula that is specified in the contract, which is to be paid or transferred in exchange for the provision of specified services or property.

A *fixed formula* can, in general, incorporate an amount that depends upon future specified events or contingencies, as long as no one has discretion when calculating the amount of a payment or deciding whether to make a payment (such as a bonus).

**Treatment as new contract.** A binding written contract, providing that it can be terminated or canceled by the applicable tax-exempt organization without the other party's consent (except as a result of

substantial nonperformance) and without substantial penalty, is treated as a new contract, as of the earliest date that any termination or cancellation would be effective. Also, a contract in which there is a material change, which includes an extension or renewal of the contract (except for an extension or renewal resulting from the exercise of an option by the disqualified person), or a more than incidental change to the amount payable under the contract, is treated as a new contract as of the effective date of the material change. Treatment as a new contract can cause the contract to fall outside the initial contract exception, and it would thus be tested under the FMV standards of section 4958.

# Rebuttable Presumption of Reasonableness

Payments under a **compensation** arrangement are presumed to be reasonable and the transfer of property (or right to use property) is presumed to be at **FMV**, if the following three conditions are met.

1. The transaction is approved by an authorized body of the organization (or an entity it controls), which is composed of individuals who don't have a conflict of interest concerning the transaction.

2. Before making its determination, the authorized body obtained and relied upon appropriate data as to comparability. There is a special safe harbor for small organizations. If the organization has gross receipts of less than $1 million, appropriate comparability data includes data on compensation paid by three comparable organizations in the same or similar communities for similar services.

3. The authorized body adequately documents the basis for its determination concurrently with making that determination. The documentation should include:

a. The terms of the approved transaction and the date approved;

b. The members of the authorized body who were present during debate on the transaction that was approved and those who voted on it;

c. The comparability data obtained and relied upon by the authorized body and how the data was obtained;

d. Any actions by a member of the authorized body having a conflict of interest; and

e. Documentation of the basis for the determination before the later of the next meeting of the authorized body or 60 days after the final actions of the authorized body are taken, and approval of records as reasonable, accurate, and

complete within a reasonable time thereafter.

**Special rebuttable presumption rule for nonfixed payments.** As a general rule, in the case of a nonfixed payment, no rebuttable presumption arises until the exact amount of the payment is determined, or a fixed formula for calculating the payment is specified, and the three requirements creating the presumption have been satisfied. However, if the authorized body approves an employment contract with a disqualified person that includes a nonfixed payment (for example, discretionary bonus) with a specified cap on the amount, the authorized body can establish a rebuttable presumption as to the nonfixed payment when the employment contract is entered into by, in effect, assuming that the maximum amount payable under the contract will be paid, and satisfying the requirements giving rise to the rebuttable presumption for that maximum amount.

**An IRS challenge to the presumption of reasonableness.** The IRS can refute the presumption of reasonableness only if it develops sufficient contrary evidence to rebut the probative value of the comparability data relied upon by the authorized body. This provision gives taxpayers added protection if they faithfully find and use contemporaneous persuasive comparability data when they provide the benefits.

**Organizations that don't establish a presumption of reasonableness.** An organization can still comply with section 4958 even if it didn't establish a presumption of reasonableness. In some cases, an organization may find it impossible or impracticable to fully implement each step of the rebuttable presumption process. In those cases, the organization should try to implement as many steps as possible, in whole or in part, in order to substantiate the reasonableness of benefits as timely and as well as possible. If an organization doesn't satisfy the requirements of the rebuttable presumption of reasonableness, a facts and circumstances approach will be followed, using established rules for determining reasonableness of compensation and benefit deductions in a manner similar to the established procedures for section 162 business expenses.

# Section 4958 Taxes

**Tax on disqualified persons.** An excise tax equal to 25% of the excess benefit is imposed on each excess benefit transaction between an **applicable tax-exempt organization** and a **disqualified person**. The

disqualified person who benefited from the transaction is liable for the tax. If the 25% tax is imposed and the excess benefit transaction isn't corrected within the tax period, an additional excise tax equal to 200% of the excess benefit is imposed.

If a disqualified person makes a payment of less than the full correction amount, the 200% tax is imposed only on the unpaid portion of the correction amount. If more than one disqualified person received an excess benefit from an excess benefit transaction, all the disqualified persons are jointly and severally liable for the taxes.

To avoid the imposition of the 200% tax, a disqualified person must correct the excess benefit transaction during the tax period. The tax period begins on the date the transaction occurs and ends on the earlier of the date the statutory notice of deficiency is issued or the section 4958 taxes are assessed. This 200% tax can be abated if the excess benefit transaction is subsequently corrected during a 90-day correction period.

**Tax on organization managers.** An excise tax equal to 10% of the excess benefit can be imposed on the participation of an organization manager in an excess benefit transaction between an applicable tax-exempt organization and a disqualified person. This tax, which can't exceed $20,000 for any single transaction, is only imposed if the 25% tax is imposed on the disqualified person, the organization manager knowingly participated in the transaction, and the manager's participation was willful and not due to reasonable cause. There is also joint and several liability for this tax. An organization manager can be liable for both the tax on disqualified persons and on organization managers in appropriate circumstances.

An *organization manager* is any officer, director, or trustee of an applicable tax-exempt organization, or any individual having powers or responsibilities similar to officers, directors, or trustees of the organization, regardless of title. An organization manager isn't considered to have participated in an excess benefit transaction where the manager has opposed the transaction in a manner consistent with the fulfillment of the manager's responsibilities to the organization. For example, a director who votes against giving an excess benefit would ordinarily not be subject to this tax.

A person participates in a transaction knowingly if the person has actual knowledge of sufficient facts so that, based solely upon the facts, the transaction would be an excess benefit transaction. Knowing doesn't mean having reason to know. The organization manager won't ordinarily be considered knowing if, after full disclosure of the factual situation to an appropriate professional, the organization manager relied on the professional's reasoned written opinion on matters within the professional's expertise or if the manager relied on the fact that the requirements for the rebuttable presumption of reasonableness have been satisfied. Participation by an organization manager is willful if it is voluntary, conscious, and intentional. An organization manager's participation is due to reasonable cause if the manager has exercised responsibility on behalf of the organization with ordinary business care and prudence.

## Correcting an Excess Benefit Transaction

A **disqualified person** corrects an **excess benefit transaction** by undoing the excess benefit to the extent possible, and by taking any additional measures necessary to place the organization in a financial position no worse than that in which it would be if the disqualified person were dealing under the highest fiduciary standards. The organization isn't required to rescind the underlying agreement; however, the parties may need to modify an ongoing contract for future payments.

A disqualified person corrects an excess benefit by making a payment in cash or cash equivalents equal to the correction amount to the applicable tax-exempt organization. The correction amount equals the excess benefit plus the interest on the excess benefit; the interest rate can be no lower than the applicable federal rate. There is an anti-abuse rule to prevent the disqualified person from effectively transferring property other than cash or cash equivalents.

**Exception.** For a correction of an excess benefit transaction described under *Donor advised funds*, earlier, no amount repaid in a manner prescribed by the IRS can be held in a donor advised fund.

**Property.** With the agreement of the applicable tax-exempt organization, a disqualified person can make a payment by returning the specific property previously transferred in the excess benefit transaction. The return of the property is considered a payment of cash (or cash equivalent) equal to the lesser of:
• The **FMV** of the property on the date the property is returned to the organization, or
• The FMV of the property on the date the excess benefit transaction occurred.

**Insufficient payment.** If the payment resulting from the return of the property is less than the correction amount, the disqualified person must make an additional cash payment to the organization equal to the difference.

**Excess payment.** If the payment resulting from the return of the property exceeds the correction amount described above, the organization can make a cash payment to the disqualified person equal to that difference.

## Churches and Section 4958

The regulations make it clear that the IRS will apply the procedures of section 7611 when initiating and conducting any inquiry or examination into whether an excess benefit transaction has occurred between a **church** and a **disqualified person**.

## Revenue-Sharing Transactions

Proposed intermediate sanction regulations were issued in 1998. The proposed regulations had special provisions covering "any transaction in which the amount of any economic benefit provided to or for the use of a **disqualified person** is determined in whole or in part by the revenues of one or more activities of the organization" — so-called revenue-sharing transactions. Rather than setting forth additional rules on revenue-sharing transactions, the final regulations reserve this section. Consequently, until the IRS issues new regulations for this reserved section on revenue-sharing transactions, these transactions will be evaluated under the general rules (for example, the **FMV** standards) that apply to all contractual arrangements between **applicable tax-exempt organizations** and their disqualified persons.

## Revocation of Exemption and Section 4958

Section 4958 doesn't affect the substantive standards for tax exemption under section 501(c)(3), 501(c)(4), or 501(c)(29), including the requirements that the organization be organized and operated exclusively for exempt purposes, and that no part of its net earnings inure to the benefit of any private shareholder or individual. The legislative history indicates that in most instances, the imposition of this intermediate sanction will be in lieu of revocation. The IRS has indicated that the following factors will be considered (among other facts and circumstances) in

determining whether to revoke an applicable tax-exempt organization's exemption status where an **excess benefit transaction** has occurred.

• The size and scope of the organization's regular and ongoing activities that further exempt purposes before and after the excess benefit transaction or transactions occurred.

• The size and scope of the excess benefit transaction or transactions (collectively, if more than one) in relation to the size and scope of the organization's regular and ongoing activities that further exempt purposes.

• Whether the organization has been involved in multiple excess benefit transactions with one or more persons.

• Whether the organization has implemented safeguards that are reasonably calculated to prevent excess benefit transactions.

• Whether the excess benefit transaction has been corrected, or the organization has made good faith efforts to seek correction from the disqualified person(s) who benefited from the excess benefit transaction.

# Appendix H. Forms and Publications To File or Use

## How To Get Forms and Publications

 **Internet.** You can access the IRS website at IRS.gov 24 hours a day, 7 days a week to:

• Download forms, including talking tax forms, instructions, and publications;
• Order IRS products online;
• Research your tax questions online;
• Search publications online by topic or keyword;
• Use the online Internal Revenue Code, regulations, or other official guidance;
• View Internal Revenue Bulletins (IRBs) published in the last few years; and
• Sign up to receive local and national tax news by email.

## How To Get Tax Help

**Coronavirus.** Go to *IRS.gov/Coronavirus* for links to information on the impact of the coronavirus, as well as tax relief available for individuals and families, small and large businesses, and tax-exempt organizations.

**Getting answers to your tax questions.** On IRS.gov, you can get up-to-date information on current events and changes in tax law.

• *IRS.gov/Help*: A variety of tools to help you get answers to some of the most common tax questions.

• *IRS.gov/ITA*: The Interactive Tax Assistant, a tool that will ask you questions and, based on your input, provide answers on a number of tax law topics.

• *IRS.gov/Forms*: Find forms, instructions, and publications. You will find details on the most recent tax changes and interactive links to help you find answers to your questions.

• The *Online EIN Application* (*IRS.gov/EIN*) helps you get an employer identification number (EIN) at no cost.

• You may also be able to access tax law information in your electronic filing software.

**Getting tax forms and publications.** Go to *IRS.gov/Forms* to view, download, or print all of the forms, instructions, and publications you may need. Or, you can go to *IRS.gov/OrderForms* to place an order.

**Getting tax publications and instructions in eBook format.** You can also download and view popular tax publications and instructions (including the Instructions for Form 1040) on mobile devices as eBooks at *IRS.gov/eBooks*.

**Note.** IRS eBooks have been tested using Apple's iBooks for iPad. Our eBooks haven't been tested on other dedicated eBook readers, and eBook functionality may not operate as intended.

**Phone.** If you have questions and/or need help completing Form 990 or Form 990-EZ, call 877-829-5500. This toll-free telephone service is available Monday through Friday.

## Other Forms That May Be Required

**Schedule A (Form 990).** Public Charity Status and Public Support.

**Schedule B (Form 990).** Schedule of Contributors.

**Schedule C (Form 990).** Political Campaign and Lobbying Activities.

**Schedule D (Form 990).** Supplemental Financial Statements.

**Schedule E (Form 990).** Schools.

**Schedule F (Form 990).** Statement of Activities Outside the United States.

**Schedule G (Form 990).** Supplemental Information Regarding Fundraising or Gaming Activities.

**Schedule H (Form 990).** Hospitals.

**Schedule I (Form 990).** Grants and Other Assistance to Organizations, Governments, and Individuals in the United States.

**Schedule J (Form 990).** Compensation Information.

**Schedule K (Form 990).** Supplemental Information on Tax-Exempt Bonds.

**Schedule L (Form 990).** Transactions With Interested Persons.

**Schedule M (Form 990).** Noncash Contributions.

**Schedule N (Form 990).** Liquidation, Termination, Dissolution, or Significant Disposition of Assets.

**Schedule O (Form 990).** Supplemental Information to Form 990 or 990-EZ.

**Schedule R (Form 990).** Related Organizations and Unrelated Partnerships.

**Forms W-2 and W-3.** Wage and Tax Statement; and Transmittal of Wage and Tax Statements.

**Form W-9.** Request for Taxpayer Identification Number and Certification.

**Form 720.** Quarterly Federal Excise Tax Return.

 *The Patient-Centered Outcomes Research fee is imposed on issuers of specified health insurance policies (section 4375) and plan sponsors of applicable self-insured health plans (section 4376) for policy and plan years ending on or after October 1, 2012. See Form 720 and section 4376 for more information.*

*In addition to various federal excise taxes that are paid with the filing of Form 720, the Patient-Centered Outcomes Research fee that is imposed on issuers of specified health insurance policies and plan sponsors of applicable self-insured health plans is payable annually and reported on the Form 720 that is filed for the second quarter of each year, which is due no later than July 31 of the calendar year immediately following the last day of the policy year or plan year to which the fee applies.*

**Form 926.** Return by a U.S. Transferor of Property to a Foreign Corporation.

**Form 940.** Employer's Annual Federal Unemployment (FUTA) Tax Return.

**Form 941.** Employer's QUARTERLY Federal Tax Return. Used to report social security, Medicare, and income taxes withheld by an employer and social security and Medicare taxes paid by an employer.

**Form 943.** Employer's Annual Federal Tax Return for Agricultural Employees.

**Form 990-T.** Exempt Organization Business Income Tax Return. Filed separately for organizations subject to UBTI that have total gross income from

all of their **unrelated trades or businesses** of $1,000 or more for the tax year. The Form 990-T is also filed to pay the section 6033(e)(2) proxy tax. For Form 990, see Part V, line 3, and its instructions; for Form 990-EZ, see Part V, line 35, and its instructions.

**Form 990-W.** Estimated Tax on Unrelated Business Taxable Income for Tax-Exempt Organizations.

**Form 1023.** Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code.

**Form 1023-EZ.** Streamlined Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code.

**Form 1024.** Application for Recognition of Exemption Under Section 501(a).

**Form 1024-A.** Application for Recognition of Exemption Under Section 501(c)(4) of the Internal Revenue Code.

**Form 1040.** U.S. Individual Income Tax Return.

**Form 1040-SR.** U.S. Tax Return for Seniors.

**Form 1041.** U.S. Income Tax Return for Estates and Trusts. Required of section 4947(a)(1) nonexempt charitable trusts that also file Form 990 or 990-EZ. However, if the trust doesn't have any taxable income under subtitle A of the Code, it can file Form 990 or 990-EZ, and doesn't have to file Form 1041 to meet its section 6012 filing requirement. If this condition is met, complete Form 990 or 990-EZ, and don't file Form 1041.

**Form 1096.** Annual Summary and Transmittal of U.S. Information Returns.

**Form 1098 series.** Information returns to report mortgage interest, student loan interest, qualified tuition and related expenses received, and a contribution of a qualified vehicle that has a claimed value of more than $500.

**Form 1099 series.** Information returns to report acquisitions or abandonments of secured property; proceeds from broker and barter exchange transactions; cancellation of debt; dividends and distributions; certain government and state qualified tuition program payments; taxable distributions from cooperatives; interest payments; payments of long-term care and accelerated death benefits; miscellaneous income payments; distributions from an HSA, Archer MSA, or Medicare Advantage MSA; original issue discount; distributions from pensions, annuities, retirement or profit-sharing plans, IRAs, insurance contracts, etc.; and proceeds from real estate transactions. Also, use certain of these returns to report amounts that were received as a nominee on behalf of another person.

**Form 1120-POL.** U.S. Income Tax Return for Certain Political Organizations.

**Form 1128.** Application to Adopt, Change, or Retain a Tax Year.

**Form 2848.** Power of Attorney and Declaration of Representative.

**Form 3115.** Application for Change in Accounting Method.

**Form 3520.** Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts.

**Form 4506.** Request for Copy of Tax Return.

**Form 4506-A.** Request for a Copy of Exempt or Political Organization IRS Form.

**Form 4562.** Depreciation and Amortization.

**Form 4720.** Return of Certain Excise Taxes Under Chapters 41 and 42 of the Internal Revenue Code.

**Form 5471.** Information Return of U.S. Persons With Respect to Certain Foreign Corporations.

**Form 5500.** Annual Return/Report of Employee Benefit Plan. Employers who maintain pension, profit-sharing, or other funded deferred compensation plans are generally required to file Form 5500. This requirement applies whether or not the plan is qualified under the Internal Revenue Code and whether or not a deduction is claimed for the current tax year.

**Form 5578.** Annual Certification of Racial Nondiscrimination for a Private School Exempt From Federal Income Tax.

**Form 5768.** Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation.

**Form 7004.** Application for Automatic Extension of Time To File Certain Business Income Tax, Information, and Other Returns.

**Form 8038 series.** Tax-exempt bonds.

**Form 8274.** Certification by Churches and Qualified Church-Controlled Organizations Electing Exemption From Employer Social Security and Medicare Taxes.

**Form 8282.** Donee Information Return. Required of the donee of charitable deduction property who sells, exchanges, or otherwise disposes of donated property within 3 years after receiving it. The form is also required of any successor donee who disposes of the charitable deduction property within 3 years after the date that the donor gave the property to the original donee. It doesn't matter who gave the property to the successor donee. It may have been the original donee or another successor donee.

**Form 8283.** Noncash Charitable Contributions.

**Form 8300.** Report of Cash Payments Over $10,000 Received in a Trade or Business. Used to report cash amounts in excess of $10,000 that were received in a single transaction (or in two or more related transactions) in the course of a trade or business (as defined in section 162).

However, if the organization receives a charitable cash contribution in excess of $10,000, it isn't subject to the reporting requirement since the funds weren't received in the course of a trade or business.

**Form 8328.** Carryforward Election of Unused Private Activity Bond Volume Cap.

**Form 8718.** User Fee for Exempt Organization Determination Letter Request.

**Form 8821.** Tax Information Authorization.

**Form 8822-B.** Change of Address or Responsible Party—Business. Used to notify the IRS of a change in mailing address that occurs after the return is filed.

**Form 8868.** Application for Automatic Extension of Time To File an Exempt Organization Return.

**Form 8870.** Information Return for Transfers Associated With Certain Personal Benefit Contracts. Used to identify those personal benefit contracts for which funds were transferred to the organization, directly or indirectly, as well as the transferors for, and beneficiaries of, those contracts.

**Form 8871.** Political Organization Notice of Section 527 Status.

**Form 8872.** Political Organization Report of Contributions and Expenditures.

**Form 8886.** Reportable Transaction Disclosure Statement.

**Form 8886-T.** Disclosure by Tax-Exempt Entity Regarding Prohibited Tax Shelter Transaction.

**Form 8899.** Notice of Income From Donated Intellectual Property. Used to report net income from qualified intellectual property to the IRS and the donor.

**Form 8940.** Request for Miscellaneous Determination.

**Form 8963.** Report of Health Insurance Provider Information.

**Form 8976.** Notice of Intent to Operate Under Section 501(c)(4).

**Form SS-4.** Application for Employer Identification Number.

**FinCEN Form 114.** Report of Foreign Bank and Financial Accounts.

## Helpful Publications

**Pub. 15.** (Circular E), Employer's Tax Guide.

 ***Trust Fund Recovery Penalty.*** *If certain excise, income, social security, and Medicare taxes that must be collected or withheld aren't collected or withheld, or these taxes aren't paid to the IRS, the trust fund recovery penalty can apply. The trust fund recovery penalty can be imposed on all persons (including volunteers) who the IRS determines were responsible for collecting, accounting for, and paying over these taxes, and who acted willfully in not doing so.*

*This penalty doesn't apply to volunteer unpaid members of any board of trustees or directors of a tax-exempt organization, if these members are solely serving in an honorary capacity, don't participate in the day-to-day or financial activities of the organization, and don't have actual knowledge of the failure to collect, account for, and pay over these taxes. However, the preceding sentence doesn't apply if it results in no person being liable for the penalty.*

*The penalty is equal to the unpaid trust fund tax. See Pub. 15 (Circular E) for more details, including the definition of responsible persons.*

**Pub. 15-A.** Employer's Supplemental Tax Guide.

**Pub. 463.** Travel, Gift, and Car Expenses.

**Pub. 525.** Taxable and Nontaxable Income.

**Pub. 526.** Charitable Contributions.

**Pub. 538.** Accounting Periods and Methods.

**Pub. 557.** Tax-Exempt Status for Your Organization.

**Pub. 561.** Determining the Value of Donated Property.

**Pub. 598.** Tax on Unrelated Business Income of Exempt Organizations.

**Pub. 892.** How to Appeal an IRS Decision on Tax-Exempt Status.

**Pub. 946.** How To Depreciate Property.

**Pub. 1771.** Charitable Contributions—Substantiation and Disclosure Requirements.

**Pub. 1828.** Tax Guide for Churches and Religious Organizations.

**Pub. 3079.** Tax-Exempt Organizations and Gaming.

**Pub. 3386.** Tax Guide for Veterans' Organizations.

**Pub. 3833.** Disaster Relief, Providing Assistance Through Charitable Organizations.

**Pub. 4220.** Applying for 501(c)(3) Tax-Exempt Status.

**Pub. 4221-PC.** Compliance Guide for 501(c)(3) Public Charities.

**Pub. 4221-PF.** Compliance Guide for 501(c)(3) Private Foundations.

**Pub. 4302.** A Charity's Guide to Vehicle Donation.

**Pub. 4303.** A Donor's Guide to Vehicle Donation.

**Pub. 4386.** Compliance Checks.

**Pub. 4573.** Group Exemptions.

# Appendix I. Use of Form 990 or 990-EZ To Satisfy State Reporting Requirements

Some states and local **governmental units** will accept a copy of Form 990 or 990-EZ in place of all or part of their own financial report forms. The substitution applies primarily to section 501(c)(3) organizations, but some other types of section 501(c) organizations are also affected. If the organization uses Form 990 or 990-EZ to satisfy state or local filing requirements, such as those under state charitable solicitation acts, note the following discussions.

**Determine state filing requirement.** The organization can consult the appropriate officials of all states and other jurisdictions in which it does business to determine their specific filing requirements. Doing business in a jurisdiction can include:
• Soliciting **contributions** or grants by mail or otherwise from individuals, businesses, or other charitable organizations;
• Conducting programs;
• Having **employees** within that jurisdiction;
• Maintaining a checking account; or
• Owning or renting property there.

**Monetary tests can differ.** Some or all of the dollar limitations applicable to Form 990 or 990-EZ when filed with the IRS may not apply when using Form 990 or 990-EZ in place of state or local report forms. Examples of the IRS dollar limitations that don't meet some state requirements are the normally $50,000 gross receipts minimum that creates an obligation to file with the IRS and the $100,000 minimum for listing independent contractors on Form 990, Part VII, Section B.

**Additional information may be required.** State or local filing requirements can require the organization to attach to Form 990 or 990-EZ one or more of the following.
• Additional financial statements, such as a complete analysis of functional expenses or a statement of changes in net assets.
• Notes to financial statements.
• Additional financial statements.
• A report on the financial statements by an independent accountant.
• Answers to additional questions and other information.

Each jurisdiction can require the additional material to be presented on forms they provide. The additional information shouldn't be submitted with the Form 990 or 990-EZ filed with the IRS, unless included on Schedule O (Form 990).

Even if the Form 990 or 990-EZ that the organization files with the IRS is accepted by the IRS as complete, a copy of the same return filed with a state won't fully satisfy that state's filing requirement if (1) required information isn't provided, including any of the additional information discussed in this Appendix; or (2) the state determines that the form wasn't completed by following the applicable Form 990 or 990-EZ instructions or supplemental state instructions. In that case, the state may ask the organization to provide the missing information or to submit an amended return.

**Use of audit guides may be required.** To ensure that all organizations report similar transactions uniformly, many states require that contributions, gifts, grants, similar amounts, and functional expenses be reported according to the AICPA Audit and Accounting Guide, Not-for-Profit Entities (2018), supplemented, as applicable, by the Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations issued jointly by the National Health Council, Inc., the National Assembly of Voluntary Health and Social Welfare Organizations, and the United Way of America (1998).

**Donated services and facilities.** Even though donated services and facilities may be reported as items of revenue and expense in certain circumstances, many

states and the IRS don't permit the inclusion of those amounts in Parts VIII and IX of Form 990, Part I of Form 990-EZ, or (except for donations by a governmental unit) in Schedule A (Form 990). The optional reporting of donated services and facilities is discussed in the instructions for Part III of Form 990.

**Amended returns.** If the organization submits supplemental information or files an amended Form 990 or 990-EZ with the IRS, it must also send a copy of the information or amended return to any state with which it filed a copy of Form 990 or 990-EZ originally to meet that state's filing requirement. If a state requires the organization to file an amended Form 990 or 990-EZ to correct conflicts with the Form 990 or 990-EZ instructions, the organization must also file an amended return with the IRS.

**Method of accounting.** Most states require that all amounts be reported based on the accrual method of accounting. See also *General Instruction D*, earlier.

**Time for filing can differ.** The deadline for filing Form 990 or 990-EZ with the IRS differs from the time for filing reports with some states.

**Public inspection.** The Form 990 or 990-EZ information made available for public inspection by the IRS can differ from that made available by the states.

# Appendix J. Contributions

This Appendix discusses certain federal tax rules that apply to exempt organizations and donors for contributions. See also Pub. 526, Charitable Contributions; and Pub. 1771, Charitable Contributions—Substantiation and Disclosure Requirements.

**Schedule B (Form 990).** Many organizations that file Form 990, 990-EZ, or 990-PF must file Schedule B to report on tax-deductible and non-tax-deductible contributions. See Schedule B and its instructions to determine whether Schedule B must be filed, and for the public inspection rules applicable to that form.

**Solicitation of nondeductible contribution.** See the instructions for Form 990, Part V, lines 6a and 6b, for rules on public notice of nondeductibility when soliciting nondeductible contributions.

**Keeping fundraising records for tax-deductible contributions.** A section 501(c) organization that is eligible to receive tax-deductible contributions under section 170(c) must keep sample copies of its fundraising materials, such as:

- Dues statements,
- Fundraising solicitations,
- Tickets,
- Receipts, or
- Other evidence of payments received in connection with fundraising activities.

| IF... | THEN... |
| --- | --- |
| the organization advertises its fundraising events | it must keep samples of the advertising copy. |
| the organization uses radio, television, or Internet to solicit contributions | it must keep samples of scripts, transcripts, printouts of emails and web pages, or other evidence of solicitations in the media. |
| the organization uses outside fundraisers | it must keep samples of the fundraising materials used by the outside fundraisers. |

For each fundraising event, the organization must keep records to show the portion of any payment received from patrons that isn't deductible; that is, the retail value of the goods or services received by the patrons. See *Disclosure statement for quid pro quo contributions*, later.

**Noncash contributions.** *Form 990 schedules.* An organization may be required to file Schedule M to report certain noncash (property) contributions; see the instructions for Schedule M on who must file. Also, an organization that files Schedule B must report certain information on noncash contributions.

*Dispositions of donated property.* If an organization receives a charitable contribution of property and within 3 years sells, exchanges, or otherwise disposes of the property, the organization may need to file Form 8282, Donee Information Return. See Form 990, Part V, lines 7c and 7d.

*Donated property over $5,000.* If the organization received from a donor a partially completed Form 8283, Noncash Charitable Contributions, the donee organization should generally complete the Form 8283 and return it so the donor can get a charitable contribution deduction. The organization should keep a copy for its records. See Form 8283 for more details.

*Qualified intellectual property.* An organization described in section 170(c) (except a private foundation) that receives or accrues net income from a qualified intellectual property contribution must file Form 8899, Notice of Income From Donated Intellectual Property. See Form 990, Part V, line 7g. The

organization must file Form 8899 for any tax year that includes any part of the 10-year period beginning on the date of contribution but not for any tax years in which the legal life of the qualified intellectual property has expired or the property failed to produce net income.

A donee organization reports all income from donated qualified intellectual property as income other than contributions (for example, royalty income from a patent). A donee isn't required to report as contributions on Form 990 (including statements) any of the additional deductions claimed by donors under section 170(m)(1). See Pub. 526.

*Motor vehicles, boats, and airplanes.* Special rules apply to charitable contributions of motor vehicles, boats, or airplanes with a claimed value of more than $500. See Form 990, Part V, line 7h; section 170(f) (12); Pub. 4302, A Charity's Guide to Vehicle Donation; and the Instructions for Form 1098-C, Contributions of Motor Vehicles, Boats, and Airplanes.

**Substantiation and disclosure requirements for charitable contributions.**

*Recordkeeping for cash, check, or other monetary charitable gifts.* To deduct a contribution of a cash, check, or other monetary gift (regardless of the amount), a donor must maintain a bank record or a written communication from the donee organization showing the donee's name, date, and amount of the contribution. See section 170(f)(17) and Regulations section 1.170A-15 for more information. In the case of a text message contribution, the donor's phone bill meets the section 170(f)(17) recordkeeping requirement of a reliable written record if it shows the name of the donee organization and the date and amount of contribution.

*Acknowledgment to substantiate charitable contributions.* A donee organization should be aware that a donor of a charitable contribution of $250 or more (including a contribution of unreimbursed expenses) can't take an income tax deduction unless the donor obtains the organization's acknowledgment to substantiate the charitable contribution. See section 170(f)(8) and Regulations section 1.170A-13(f). A charitable organization that receives a payment made as a contribution is treated as the donee organization for this purpose even if the organization (according to the donor's instructions or otherwise) distributes the amount received to one or more charities.

The organization's acknowledgment must:

1. Be written;

2. Be contemporaneous;

3. State the amount of any cash it received;

4. State:

a. Whether the organization gave the donor any intangible religious benefits (no valuation needed), and

b. Whether the organization gave the donor any goods or services in return for the donor's contribution (a quid pro quo contribution); and

5. Describe goods or services the organization:

a. Received (no valuation needed), and

b. Gave (good faith estimate of value needed).

If the organization accepts a contribution in the name of one of its activities or programs, then indicate the organization's name in the acknowledgment as well as the program's name. For example: "Thank you for your contribution of $300 to (organization's name) made in the name of our Special Relief Fund program. No goods or services were provided in exchange for your contribution."

Similarly, if a domestic organization owns and controls a domestic disregarded entity, and the disregarded entity receives a contribution, then indicate the organization's name in the acknowledgment as well as the relationship with the disregarded entity. For example: "Thank you for your contribution of $300 to (organization's name) made in the name of (name of disregarded entity), which is treated as a disregarded entity of (organization's name) for federal tax purposes. No goods or services were provided in exchange for your contribution." See Notice 2012-52, 2012-35 I.R.B. 317.

**Exception.** The written acknowledgment need not include a good faith estimate of value for goods or services given to the donor if they are:

1. Goods or services with insubstantial value,

2. Certain membership benefits,

3. Goods or services described in (1) or (2) given to the employees of a donor organization or the partners of a donor partnership, or

4. Intangible religious benefits.

These exceptions are defined below.

**Disclosure statement for quid pro quo contributions.** If the organization receives a quid pro quo contribution of more than $75, the organization must provide a disclosure statement to the donor. See section 6115.

The organization's disclosure statement must:

1. Be written;

2. Estimate in good faith the value of the organization's goods or services given in return for the donor's contribution;

3. Describe, but need not value, certain goods or services given to the donor's employees or partners; and

4. Inform the donor that a charitable contribution deduction is limited as follows.

Donor's contribution
**Less**
The organization's money, goods, and services given in return
**Equals**
Donor's deductible charitable contribution.

**Exceptions.** No disclosure statement is required if the organization gave only:

1. Goods or services with insubstantial value,

2. Certain membership benefits,

3. Goods or services described in (1) or (2) given to the employees of a donor organization or the partners of a donor partnership, or

4. Intangible religious benefits.

These exceptions are defined below. See also Regulations sections 1.170A-1, 1.170A-13, and 1.6115-1.

**Certain goods or services disregarded for substantiation and disclosure purposes.**

**Goods or services with insubstantial value.** Generally, under section 170, the deductible amount of a contribution is determined by taking into account the **FMV**, not the cost to the charity, of any benefits that the donor received in return. However, the cost to the charity may be used in determining whether the benefits are insubstantial. See *Cost basis* next.

**Cost basis.** If a taxpayer makes a payment of $58.50 or more to a charity and receives only token items in return, the items have insubstantial value if they:
• Bear the charity's name or logo, and
• Have an aggregate cost to the charity of $11.70 or less (low-cost article amount of section 513(h)(2)).

**FMV basis.** If a taxpayer makes a payment to a charitable organization in a fundraising campaign and receives benefits with an **FMV** of not more than 2% of the amount of the payment, or $117, whichever is less, the benefits received have insubstantial value in determining the taxpayer's contribution.

 *The dollar amounts given above are applicable to tax year 2022 under Rev. Proc. 2021-45, 2021-48 I.R.B.764, section 3.34. They are adjusted annually for inflation.*

When a donee organization provides a donor only with goods or services having insubstantial value under Rev. Proc. 2021-45 (and any successor documents), the contemporaneous written acknowledgment may indicate that no goods or services were provided in exchange for the donor's payment.

**Certain membership benefits.** Other goods or services that are disregarded for substantiation and disclosure purposes are annual membership benefits offered to a taxpayer in exchange for a payment of $75 or less per year that consist of:

1. Any rights or privileges that the taxpayer can exercise frequently during the membership period such as:

a. Free or discounted admission to the organization's facilities or events, or

b. Free or discounted parking; or

2. Admission to events that are:

a. Open only to members, and

b. Within the low-cost article limitation, per person.

**Example 1.** E offers a basic membership benefits package for $75. The package gives members the right to buy tickets in advance, free parking, and a gift shop discount of 10%. E's $150 preferred membership benefits package also includes a $20 poster. Both the basic and preferred membership packages are for a 12-month period and include about 50 productions. E offers F, a patron of the arts, the preferred membership benefits in return for a payment of $150 or more. F accepts the preferred membership benefits package for $300. E's written acknowledgment satisfies the substantiation requirement if it describes the poster, gives a good faith estimate of its **FMV** ($20), and disregards the remaining membership benefits.

**Example 2.** In *Example 1*, if F received only the basic membership package for its $300 payment, E's acknowledgment need state only that no goods or services were provided.

**Example 3.** G Theater Group performs four plays. Each play is performed twice. Nonmembers can purchase a ticket for $15. For a $60 membership fee, however, members are offered free admission to any of the performances. H makes a payment of $350 and accepts this membership benefit. Because of the limited number of performances, the membership privilege can't be exercised frequently. Therefore, G's acknowledgment must describe the

2022 Instructions for Form 990

free admission benefit and estimate its value in good faith.

***Certain goods or services provided to donor's employees or partners.*** Certain goods or services provided to employees of donor organizations or partners of donor partnerships may be disregarded for substantiation and disclosure purposes. Nevertheless, the donee organization's disclosure statement must describe the goods or services. A good faith estimate of value isn't needed.

***Example.*** Museum J offers a basic membership benefits package for $40. It includes free admission and a 10% gift shop discount. Corporation K makes a $50,000 payment to J and in return, J offers K's employees free admission, a t-shirt with J's logo that costs J $4.50, and a 25% gift shop discount. Because the free admission is a privilege that can be exercised frequently and is offered in both benefit packages, and the value of the t-shirts is insubstantial, Museum J's disclosure statement need not value or mention the free admission benefit or the t-shirts. However, because the 25% gift shop discount to K's employees differs from the 10% discount offered in the basic membership benefits package, J's disclosure statement must describe the 25% discount, but need not estimate its value.

## Definitions

***Substantiation.*** It is the responsibility of the donor:
• To value a donation, and
• To obtain an organization's written acknowledgment substantiating the donation.

There is no prescribed format for the organization's written acknowledgment of a donation. Letters, postcards, or computer-generated forms may be acceptable. The acknowledgment must, however, provide sufficient information to substantiate the amount of the deductible contribution. The organization may either:
• Provide separate statements for each contribution of $250 or more, or
• Furnish periodic statements substantiating contributions of $250 or more.

Separate contributions of less than $250 aren't subject to the requirements of section 170(f)(8), whether or not the sum of the contributions made by a taxpayer to a donee organization during a tax year equals $250 or more.

***Contemporaneous.*** A written acknowledgment is contemporaneous if the donor obtains it on or before the earlier of:
• The date the donor files the original return for the tax year in which the contribution was made, or

• The due date (including extensions) for filing the donor's original return for that year.

***Substantiation of payroll contributions.*** An organization may substantiate an employee's contribution by deduction from its payroll by:
• A pay stub, Form W-2, or other document showing a contribution to a donee organization, together with
• A pledge card or other document from the donee organization that shows its name. For contributions of $250 or more, the document must state that the donee organization provides no goods or services for any payroll contributions. The amount withheld from each payment of wages to a taxpayer is treated as a separate contribution.

***Substantiation of matched payments.*** If a taxpayer's payment to a donee organization is matched by another payor, and the taxpayer receives goods or services in consideration for its payment and some or all of the matching payment, those goods or services will be treated as provided in consideration for the taxpayer's payment and not in consideration for the matching payment.

***Disclosure statement.*** An organization must provide a written disclosure statement to donors who make a quid pro quo contribution in excess of $75 (section 6115). This requirement is separate from the written substantiation acknowledgment a donor needs for deductibility purposes. While, in certain circumstances, an organization may be able to meet both requirements with the same written document, an organization must be careful to satisfy the section 6115 written disclosure statement requirement in a timely manner because of the penalties involved.

***Quid pro quo contribution.*** A quid pro quo contribution is a payment that is made both as a contribution and as a payment for goods or services provided by the donee organization.

***Example.*** A donor gives a charity $100 in consideration for a concert ticket valued at $40 (a quid pro quo contribution). In this example, $60 would be deductible. Because the donor's payment exceeds $75, the organization must furnish a disclosure statement even though the taxpayer's deductible amount doesn't exceed $75. Separate payments of $75 or less made at different times of the year for separate fundraising events won't be aggregated for purposes of the $75 threshold.

***Good faith estimate.*** An organization may use any reasonable method in making a good faith estimate of the value of goods or services provided by that organization in consideration for a taxpayer's payment to that organization. A good faith estimate of the value of

goods or services that aren't generally available in a commercial transaction may be determined by reference to the **FMV** of similar or comparable goods or services. Goods or services may be similar or comparable even though they don't have the unique qualities of the goods or services that are being valued.

***Goods or services.*** Goods or services include:
• Cash,
• Property,
• Services,
• Benefits, and
• Privileges.

***In consideration for.*** A donee organization provides goods or services in consideration for a taxpayer's payment if, at the time the taxpayer makes the payment to the donee organization, the taxpayer receives, or expects to receive, goods or services in exchange for that payment.

Goods or services a donee organization provides in consideration for a payment by a taxpayer include goods or services provided in a year other than the year in which the donor makes the payment to the donee organization.

***Intangible religious benefits.*** Intangible religious benefits are provided only by organizations organized exclusively for religious purposes. Examples include:
• Admission to a religious ceremony; and
• De minimis tangible benefits, such as wine provided in connection with a religious ceremony.

***Penalties.*** A charity that knowingly provides a false substantiation acknowledgment to a donor may be subject to the penalties under section 6701 and/or section 7206(2) for aiding and abetting an understatement of tax liability.

Charities that fail to provide the required disclosure statement for a quid pro quo contribution of more than $75 will incur a penalty of $10 per contribution, not to exceed $5,000 per fundraising event or mailing. The charity may avoid the penalty if it can show that the failure was due to reasonable cause (section 6714).

# Appendix K. Reporting Information for Section 501(c)(21) Black Lung Trusts

For tax years beginning before January 1, 2021, section 501(c)(21) black lung trusts that could not use Form 990-N, e-Postcard (see *Who Must File*, earlier), used Form 990-BL to meet the reporting requirements of section 6033. A section

501(c)(21) black lung trust, trustee, or disqualified person liable for section 4951 or 4952 excise taxes also used Form 990-BL to report and pay those taxes.

For tax years beginning after December 31, 2020, section 501(c)(21) trusts will use Form 990 instead of Form 990-BL to meet section 6033 reporting requirements. A section 501(c)(21) black lung trust, trustee, or disqualified person liable for section 4951 or 4952 excise taxes will use Form 6069 to report and pay sections 4951 and 4952 excise taxes.

In general, a section 501(c)(21) trust will complete Form 990 in the same manner as any other organization required to file Form 990, including (without limitation) schedules or forms identified upon completion of Part IV, Checklist of Required Schedules; or Part V, Statements Regarding Other IRS Filings and Tax Compliance.

The following chart is intended to help section 501(c)(21) black lung trusts identify some of the key lines on Form 990 that correspond with certain lines of Form 990-BL, especially a heading block item and in Part I.

## Section 501(c)(21) Black Lung Trusts

| Form 990-BL | | Form 990 | |
|---|---|---|---|
| Heading Area | **FMV** of the trust's assets at the beginning of the operator's tax year within which the trust's tax year begins. | Part X, Balance Sheet | Check the box at the top of Part X and include a note on Schedule O (Form 990) providing the FMV at the beginning of the operator's year within which the trust's year begins. |
| Part I, Analysis of Revenue and Expenses, Line 1 | Contributions received under section 192 from the coal mine operator who established the trust. | Part VIII, Statement of Revenue, Line 1f | Enter the total contributions received under section 192 from the coal mine operator who established the trust. |
| Part I, Analysis of Revenue and Expenses, Lines 2a and 2b | Interest on securities of the U.S., state, and local governments, described in section 501(c)(21)(D)(ii). | Part VIII, Statement of Revenue, Line 3 | Investment income (including dividends, interest, and other similar amounts). |
| Part I, Analysis of Revenue and Expenses, Line 4 | Contributions to the Federal Black Lung Disability Trust Fund. | Part IX, Statement of Functional Expenses, Line 1 | Grants and other assistance to domestic organizations and domestic governments. (Detail reported on Schedule I (Form 990).) |
| Part I, Analysis of Revenue and Expenses, Line 5 | Premiums for insurance to cover liabilities described in section 501(c)(21)(A)(i)(I). | | |
| Part I, Analysis of Revenue and Expenses, Line 6 | Other payments to or for the benefit of eligible coal miners, retired miners, or beneficiaries. | Part IX, Statement of Functional Expenses, Line 2 | Grants and other assistance to domestic individuals. (Detail reported on Schedule I (Form 990).) |

# Photographs of Missing Children

The Internal Revenue Service is a proud partner with the *National Center for Missing & Exploited Children® (NCMEC)*. Photographs of missing children selected by the Center may appear in instructions on pages that would otherwise be blank. You can help bring these children home by looking at the photographs and calling 1-800-THE-LOST (1-800-843-5678) if you recognize a child.

**Index**

**$10,000–per-item exception** 27
**$10,000–per-related organization exception** 27
**35% controlled entity** 16, 53

**A**

**Accountable plan** 19, 53
**Accountant** 50
**Accounting:**
  Fees 45
  Period 4
**Accounting fees** 45
**Accounting period** 4, 8
**Accounts payable** 49
**Accounts receivable** 48
**Accrual** 5
**Activities** 10
**Activities conducted outside the United States** 53
**Activities outside the United States** 53
**Address:**
  Change in 8
  Website 9
**Address Change** 8
**Administrative** 19
**Advance ruling period** 4
**Advertising** 46
**Affiliate/affiliates** 47, 84
  Expenses 46
  Payments 46
  Purchases 46
  State or national organizations 46
**Affiliated organizations** 86
**Allocations:**
  Grants, and 11
**Alternate test** 78
**Amended Return** 8
  Description of amendment 6
  Name change amendment 6
**Annual information return** 79
**Anti-abuse rule** 78
**Appendix:**
  Appendix A, Exempt Organizations Reference Chart 76
  Appendix B, How to Determine Whether an Organization's Gross Receipts Are Normally $50,000 (or $5,000) or Less 77
  Appendix C, Special Gross Receipts Tests for Determining Exempt Status of Section 501(c)(7) and 501(c)(15) Organizations 77
  Appendix D, Public Inspection of Returns 78
  Appendix E, Group Returns—Reporting Information on Behalf of the Group 82
  Appendix F, Disregarded Entities and Joint Ventures—Inclusion of Activities and Items 83
  Appendix G, Section 4958 Excess Benefit Transactions 85
  Appendix H, Forms and Publications to File or Use 90

  Appendix I, Use of Form 990 or 990-EZ To Satisfy State Reporting Requirements 92
  Appendix J, Contributions 93
  Appendix K, Reporting Information for Section 501(c)(21) Black Lung Trusts 95
**Applicable tax-exempt organization** 53, 85
**Application for recognition of exemption** 91
**Application pending** 8
**Art** 12, 53
**Articles of incorporation** 21
**ASC 2016–14** 53
**ASC 740** 53
**ASC 958** 12, 53
**Assessments** 38
**Asset(s):**
  Net 49
  Total 49
**Assistance to individuals** 44
**Attachments** 7
**Attorney** 10
**Audit** 54, 84
**Audit committee** 19, 54
**Audit guides** 92
**Audited financial statements** 12, 54
**Automatic revocation** 6

**B**

**Backup withholding** 15
**Balance sheet** 47
**Bank account** 15
**Bank or financial institution trustee Exception** 30
**Benefits:**
  Disregarded 31
  Employee 45
  Members 44, 88
  Membership 40
**Bingo** 12, 54
**Board designated endowment (quasi)** 12
**Board-designated endowment** 54
**Bond issue** 40, 54
**Bonds, tax-exempt** 49
**Bonus** 88
**Book value** 48
**Books of account** 5
**Business activities** 39
**Business Activity Codes** 52
**Business code** 40
**Business relationship** 21, 54

**C**

**Calendar year** 4
**Capital contributions** 16
**Capital gains** 40
**Capital stock accounts** 50
**Capital surplus** 50
**Cash** 47
**Cash contributions** 54
**Cash receipts and disbursements** 5
**Central organization** 6, 55

**CEO** 21
**CEO, executive director, or top management official** 55
**Certified historic structure** 55
**Change of address** 91
**Changes in net assets** 92
**Charitable risk pools** 2
**Child care organizations** 2
**Children** 96
**Church** 2, 55
**Church-affiliated organization** 3
**Closely held stock** 55
**Club** 16
**Code(s)** 3
**Collectibles** 55
**Collections of works of art, historical treasures, and other similar assets** 55
**College** 78
**Committee** 3
**Compensation** 13, 25, 36, 55, 82
  Current officers 45
  Disqualified persons 25, 45
  Former officers 25
  Other persons 25
  Reasonable 87
  Reportable 27
  Table 32
**Compilation (compiled financial statements)** 12, 55
**Completing the heading** 8
**Conflict of interest policy** 56
**Conflicts of interest policy** 21, 23
**Conservation easement** 12, 56
**Consolidated financial statement** 12, 83
**Contemporaneous** 87
**Contracts** 88
**Contributing employer** 63, 71
**Contributions** 11, 37, 39, 56
  Disclosure statement 15
  Donation of services 38
  Donor advised funds 87
  Government 38
  Government grants 38
  Membership dues 11, 38
  Noncash 39
  Nondeductible 15
  Quid pro quo 15
**Contributor** 1
**Contributors, Schedule of** 39
**Control** 14, 57
**Controlled entity** 14, 57
**Controlling organization:**
  Section 512(b)(13) 2
**Controlling organization under section 512(b)(13)** 58
**Cooperative service organizations** 2
**Copies** 7
**Core form** 58
**Corporation** 9
**Credit counseling services** 58
**Current year** 58

## D

De minimis fringe benefit 87
Debt management plan services 58
Defeasance escrow 40, 58
Deferred charges 48
Deferred compensation 58
Deferred revenue 49
Defined benefit plan 31
  Nonqualified 31
  Qualified 31
Defined contribution plan:
  Qualified 31
Dependent care assistance 32
Depreciation 47
Determination letter 3
Direct expenses 41
Director 13, 58
Director or trustee 26, 58
Disclosure 15
  Conflict of interest 23
  Disqualified person(s) 20
  Excess business holdings 16
  Statement 16
Disclosure of excess business
  holdings 16
Disqualified person 58
Disqualified persons 86
Disregarded benefits 31, 32
Disregarded entities 7, 28, 83
Disregarded entity or entities 59
Dissolution 84
Distributions 45
Dividends 39
Document retention and destruction
  policy 23
Domestic government 59
Domestic individual 59
Domestic organization 60
Donations 38
  Of services 38
  Of use of materials, equipment or
    facilities 38
  Of vehicles 16
Donor advised fund 60
Donor advised fund(s):
  Disqualified person 86
  Donor advisor 16
  Exceptions 89
  Excess benefit transaction 87
  Grants 87
  Sponsoring organization 2
Donor advisor 60
Donor contributions:
  Acknowledgment 16
Donor-Imposed Restriction 60
Donor-Restricted Endowment
  fund 60
Dues 38
  Club 32
  Membership 40, 47
  Paid to affiliates 46

## E

e-Postcard (see also Form 990-N) 77
Economic benefit 86
  Disregarded 88
  Nontaxable fringe benefits 88

EIN 60
Email subscription 1
Employee 61
Employee benefit plan 4
Employee benefits 45
Employee(s) 26
Employees, key 26
Employer identification number (EIN):
  Disregarded entities 84
  Section 501(c)(9) organizations 9
Endowment fund 12, 61
Endowment funds 12
EO Determinations 10
Equipment 48
Escrow or custodial account 49, 61
Estates 37
Estimate, reasonable 9
Excess benefit transaction 61, 85-87
  Churches 89
  Correction 89
  Donor advised funds 89
  Excess payment 89
  Excise tax 88
  Insufficient payment 89
  Revenue sharing transactions 89
  Revocation of exemption 89
  Section 4958 85
Excess business holdings 16
Excise taxes 88
Executive director 24
Exempt bond 61
Exempt function 39
Exempt organizations, types of 76
Exempt purposes 10, 21, 43
Expenses 40
  Allocating indirect 43
  Direct 41
  Functional 42
  Fundraising 41
  Indirect expenses 43
  Management and general 43
  Occupancy 46
  Political 11
  Postage 46
  Printing 46
  Program service 43, 47
  Shipping 46
  Supplies 46
  Telephone 46
Extension of time to file 6

## F

Facility/facilities 10
Facts and circumstances 81
Fair market value (FMV) 62
Family:
  Family member 86
Family member, family
  relationship 62
FASB ASC 958 37, 49
Federal unemployment tax (FUTA) 90
Federated fundraising agencies 38
Federated fundraising
  organizations 44
Fees 45
  Accounting 45
  Copies 80
  Fundraising 45

Government agencies 39
  Initiation 78
  Legal 45
  Membership 77
  Registration 39
Figuring gross receipts 77
FIN 48 83
FIN 48 (ASC 740) 62
Final return 6, 8
Financial account 15
Financial statements 62
Fiscal year 4, 62
Five highest compensated
  employees 25
Fixed payment 88
FMV 14, 18, 19, 22, 37, 38, 40-42, 47,
  50, 59, 72, 86, 88, 89, 94-96
Foreign 15
  Accounts 15
  Organization 3
Foreign government 62
Foreign individual 62
Foreign organization 62
Form 8963, Report of Health
  Insurance Provider Information 92
Form 8976, Notice of Intent to
  Operate Under Section 501(c)
  (4) 92
Forms:
  FinCEN Form 114 92
  Form 1023-EZ, Streamlined
    Application for Recognition of
    Exemption Under Section 501(c)(3)
    of the Internal Revenue Code. 91
  Form 1023, Application for
    Recognition of Exemption Under
    Section 501(c)(3) 91
  Form 1024-A, Application for
    Recognition of Exemption under
    Section 501(c)(4) of the Internal
    Revenue Code 91
  Form 1024, Application for
    Recognition of Exemption Under
    Section 501(a) 91
  Form 1040-SR, U.S.Income Tax
    Return for Seniors 91
  Form 1040, U.S. Individual Income
    Tax Return 91
  Form 1041, U.S. Income Tax Return
    for Estates and Trusts 91
  Form 1065, U.S. Return of Partnership
    Income 4
  Form 1096, Annual Summary and
    Transmittal of U.S. Information
    Returns 91
  Form 1098 series 91
  Form 1120-POL, U.S. Income Tax
    Return for Certain Political
    Organizations 91
  Form 1128, Application To Adopt,
    Change or Retain a Tax Year 91
  Form 2848, Power of Attorney and
    Declaration of Representative 91
  Form 3115, Application for Change in
    Accounting Method 91
  Form 3520, Annual Return To Report
    Transactions with Foreign Trusts
    and Receipt of Certain Foreign
    Gifts 91
  Form 4506–A, Request for a Copy of
    Exempt or Political Organization
    IRS Form 91

Form 4506, Request for Copy of Tax Return  91
Form 4562, Depreciation and Amortization  91
Form 4720, Return of Certain Excise Taxes Under Chapters 41 and 42 of the Internal Revenue Code  91
Form 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations  90
Form 5500, Annual Return/Report of Employee Benefit Plan  91
Form 5578, Annual Certification of Racial Nondiscrimination for a Private School Exempt From Federal income Tax.  91
Form 5768, Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation  91
Form 7004, Application for Automatic Extension of Time to File Certain Business Income Tax, Information, and Other Returns  91
Form 720, Quarterly Federal Excise Tax Return  90
Form 8038 series, Tax Exempt Bonds  91
Form 8274, Certification by Churches and Qualified Church-Controlled Organizations Electing Exemption from Employer Social Security and Medicare Taxes  91
Form 8282, Donee Information Return  91
Form 8283, Noncash Charitable Contributions  91
Form 8300, Report of Cash Payments Over $10,000 Received in a Trade or Business  91
Form 8328, Carryfoward Election of Unused Private Activity Bond Volume Cap  91
Form 8718, User Fee for Exempt Organization Determination Letter Request  91
Form 8821, Tax Information Authorization  91
Form 8822-B, Change of Address or Responsible Party—Business  91
Form 8868, Application for Automatic Extension of Time to File an Exempt Organization Return  91
Form 8870, Information Return for Transfers Associated With Certain Personal Benefit Contracts  91
Form 8871, Political Organization Notice of Section 527 Status  91
Form 8872, Political Organization Report of Contributions and Expenditures  91
Form 8886–T, Disclosure by Tax-Exempt Entity Regarding Prohibited Tax Shelter Transaction  91
Form 8886, Reportable Transaction Disclosure Statement  91
Form 8899, Notice of Income From Donated Intellectual Property  91

Form 8940, Request for Miscellaneous Determination, Request for Miscellaneous Determination, under Section 507, 509(a), 4940, 4942, 4945, and 6033 of the Internal Revenue Code  92
Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation  90
Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return  90
Form 941, Employer's Quarterly Federal Tax Return  90
Form 943, Employer's Annual Tax Return for Agricultural Employees  90
Form 990-PF, Return of Private Foundation or Section 4947(a)(1) Nonexempt Charitable Trust Treated as a Private Foundation  4
Form 990-T, Exempt Organization Business Income Tax Return  90
Form 990-W, Estimated Tax on Unrelated Business Taxable Income for Tax-Exempt Organizations  91
Form 990–EZ, Short Form Return of Organization Exempt From Income Tax  9
Form 990–N, Electronic Notice (e-Postcard) for Tax-Exempt Organizations Not Required to File Form 990 or 990–EZ  2
Form SS-4, Application for Employer Identification Number  92
Form W-2, Wage and Tax Statement  90
Forms and publications  14
Foundations  26
Fringe benefits  88
  De minimis  87
  Nontaxable  88
Functional expenses  42
  Allocating indirect  43
  Fundraising  43
  Management and general  43
  Program service  43
Fund Balances  49, 50
Fundraising  38, 62
  Activities  12
  Events  38
  Expenses  43
  Fees  45
  Records for tax deductible contributions  7
Fundraising activities  62
Fundraising events  41, 63
Funds  50

**G**

GAAP  63
Gaming  42, 63
GEN (Group exemption number)  9
Generally accepted accounting principles  11
Generally accepted accounting principles/GAAP  63
Gifts  37, 39
Goods  41
  Goods or services  41

Goods sold, cost of  42
Governance  85
Governing body  63, 84
Governing documents  22
Government:
  Agency  39
  Contracts  39
  Contributions  38
  Fees  39
  Grants  38, 43
  Official  46
  Organization  3
Government official  63
Governmental issuer  40, 63
Governmental unit  49, 63
Governmental Unit  63
Grants  11, 37, 44
  Allocations, and  11
  Contributions  11
  Government contributors  38
  Payable  49
  Receivable  48
Grants and other assistance  63
Grants and other assistance outside the United States  12, 13
Gross proceeds  64
Gross receipts  64, 77
  $50,000 or less  77
  Acting as agent  77
  Figuring  77
Gross receipts test:
  $5,000  77
  $50,000  77
Gross rents  40
Gross revenue  14
Gross sales price  40
Group exemption  64, 80
  Central/parent organization  80
Group return  64, 82

**H**

Heading  8
Health benefits  31
Helpful hints  2
Highest compensated employee  64, 84
Historical treasure  12, 64
Hospital  83
Hospital (or cooperative hospital service organization)  64
Hospital organization  64
Hospital/hospital facility  64
Hours per week  29
Household goods  64

**I**

Income:
  Exempt function  11
  Investment  40
  Rental  39
  Unrelated business  15
Incomplete return  6
Independent contractor  37, 64
Independent voting member of governing body  19, 65
Indoor tanning services  18
Information return  79
Information technology  46

**Initial contract**  65, 88
**Instant bingo**  42, 65
**Institutional trustee**  26, 65
**Insurance**  47
**Insurance contract**  78
**Integrated auxiliary**  2
**Intellectual property**  16
**Interest**  40, 46
  Mortgage  46
  Tax-exempt  17
**Interest income**  39, 40
  Notes and loans receivable  40
  Securities  40
**Interested persons**  84
**Inventory**  42
**Investment**  40
  Committee  19
  Dividend  40
  Income  78
  Interest  40
  Management  21
  Program-related  40
  Rents  40
  Savings and temporary cash  47
**Investments**  48

**J**

**Joint costs**  47
**Joint venture**  65, 84

**K**

**Key employee**  26, 66

**L**

**Land**  48
**Late filing**  6
**Legal fees**  45
**Legislation**  66
**Liabilities, total**  49
**Liquidation**  83
**List of states**  5
**Loans:**
  Receivable  48
**Lobbying**  66
  Activity/Activities  11
  Expenses  83
  Grassroots  45
  In-house expenditures  45
  Joint ventures  85
**Lobbying activities**  66
**Lobbying expenditures**  83
**Local governmental unit**  49
**Lotteries**  41

**M**

**Maintaining offices, employees, or agents**  66
**Management**  84
**Management and general expenses**  43
**Management company**  21, 66
**Medicaid**  39
**Medical research**  66, 79
**Medicare**  90
**Meetings**  46
**Member of the governing body**  19, 66
**Membership**  47

Assessments  38
  Benefits  40
  Dues  38, 47
**Merger, articles of**  7
**Miscellaneous**  5
  Expenses  47
**Mission**  3
**Mission society**  3
**Money market funds**  48
**Mutual or cooperative electric companies**  17

**N**

**Net assets**  49, 50
**Net Assets with donor restrictions**  67
**Net Assets without Donor Restrictions**  67
**Noncash contributions**  39
**Noncash contributions**  67
**Nonexempt charitable trust**  67
**Nonfixed payments**  88
**Nonprofit health insurance issuer**  3
**Nonqualified deferred compensation**  67
**Nonqualified defined benefit plan**  31
**Nonqualified defined contribution plan**  31, 34
**Nontaxable fringe benefit**  88
**Notes receivable**  48
**Number of employees**  84
**Nursing homes**  39

**O**

**Occupancy**  46
  Expense  46
**Officer**  25, 67
**Offices**  79
**"On behalf of" issuer**  67
**Ordinary course of business**  21
**Organization manager**  67, 89
**Organization(s)**  4, 89
  Affiliated  86
  Form of  9
  Not required to file  3
**Organizational documents**  82
**Organizations:**
  Foreign countries, in  3
**Other assets**  49
**Other compensation**  27
**Ownership**  14

**P**

**Paid preparer**  10
**Paid-in capital**  50
**Paperwork Reduction Act Notice**  51
**Partnership**  84
**Payables**  49
**Payments:**
  Cash  91
  Compensation  87
  Nonfixed  88
  Severance  45
  To affiliates  46
**Payroll taxes**  45
**Penalties**  6, 15
  Failure to file  6
  Perjury  6

**Pension plan contributions**  45
**Personal benefit contracts**  16
**Phone help**  1
**Photographs of Missing Children**  96
**Pledges receivable**  48
**Policies:**
  Conflicts of interest  21
  Document retention and destruction  23
  Joint venture  24
  Nondiscrimination  91
  Whistleblower  23
**Political:**
  Expenses  83
**Political campaign activities**  68
**Political organization**  3
  Penalties  79
  Public inspection  78
  Section 527  3
  State or local  3
**Political subdivision**  68
**Possession of the United States**  68
**Postage cost**  79
**Power of attorney**  91
**Premiums**  78
**Prepaid expenses**  48
**Principal officer**  68
**Printing**  46
**Private business use**  68, 85
**Private foundation**  68, 86
**Privileged relationship**  21
**Proceeds**  40, 68
**Professional fundraising services**  45, 68
**Program service**  11
**Program service accomplishments, statement of**  10
**Program service expenses**  42, 43
**Program service revenue**  39
  Government agency  39
  Insurance premiums  39
  Interest income  40
  Medicaid  39
  Medicare  39
  Membership fees  40
  Program-related investments  39
  Rental income  39
  Section 501(c)(9) organization  39
  Unrelated trade or business activities  39
**Program-related investment**  39, 68
**Prohibited tax shelter transactions**  15
**Proxy tax**  11
**PTIN**  10
**Pub. 3079, Tax-Exempt Organizations and Gaming**  63
**Public charity**  69, 83
**Public Inspection**  78
**Public interest law firm**  11
**Public support**  90
**Publications**  14
  Compliance Checks  92
  Group Exemptions  92
  Pub. 15-A, Employer's Supplemental Tax Guide (Fringe Benefits)  92
  Pub. 15, (Circular E) Employer's Tax Guide  92

Pub. 1771, Charitable Contributions–Substantiation and Disclosure Requirements 92
Pub. 1779, Independent Contractor or Employee 37
Pub. 1828, Tax Guide for Churches and Religious Organizations 92
Pub. 3079, Tax-Exempt Organizations and Gaming 92
Pub. 3386, Tax Guide for Veterans Organizations 92
Pub. 3833, Disaster Relief, Providing Assistance Through Charitable Organizations 92
Pub. 4220, Applying for 501(c)(3) Tax-Exempt Status 92
Pub. 4221–PC, Compliance Guide for 501(c)(3) Public Charities 92
Pub. 4221–PF, Compliance Guide for 501(c)(3) Private Foundations 92
Pub. 4302, A Charity's Guide to Vehicle Donation 92
Pub. 4303, A Donor's Guide to Vehicle Donation 92
Pub. 463, Travel, Entertainment, Gift, and Car Expenses 92
Pub. 525, Taxable and Nontaxable Income 92
Pub. 526, Charitable Contributions 92
Pub. 538, Accounting Periods and Methods 92
Pub. 557, Tax-Exempt Status for Your Organization 92
Pub. 561, Determining the Value of Donated Property 92
Pub. 598, Tax on Unrelated Business Income of Exempt Organizations 92
Pub. 892, How to Appeal an IRS Decision on Tax Exempt Status 92
Pub. 946, How To Depreciate Property 92
Pub. 947, Practice Before the IRS and Power of Attorney 10
**Publicly traded securities** 48, 69
**Pull tabs** 69
**Pull-tabs** 42
**Purchases from affiliates** 46
**Purpose of Form** 1

**Q**

**Qualified 501(c)(3) bond** 69
**Qualified conservation contribution** 69
**Qualified defined benefit plan** 31
**Qualified defined contribution plan** 31
**Qualified intellectual property** 16
**Qualified state or local political organization** 3, 70
**Quasi-endowment** 70
**Quid pro quo contribution**:
  Disclosure statement 15

**R**

**Racial nondiscrimination** 91
**Raffles** 41
**Reasonable**:
  Amount 79
  Belief 82
  Burden 79

Cause 6
Compensation 19
Effort 20, 21, 30
Estimate 9
Fee 79
Knowledge 87
Relationship 40
**Reasonable compensation** 70
**Reasonable effort** 70
**Reasonableness, rebuttable presumption of** 88
**Receivable** 13
  Account 48
  Grants 48
  Pledges 48
**Reconciliation** 5
**Reconciliation of net assets** 50
**Recordkeeping** 7
**Refunding escrow** 13, 70
**Refunding issue** 71
**Reimbursement**:
  Of expenses 19
  Of taxes 87
**Related organization** 19, 25, 71
**Religious order** 20, 71
**Rent/rental** 40
  Expense 40
  Income 39
**Reportable compensation** 13, 71
**Reporting information from third parties** 7
**Requirements for a properly completed Form 990** 7
**Research** 43
**Retained earnings** 50
**Returns and allowances** 42
**Revenue** 42, 49
  Deferred 49
  Gross 14
  Program service 39
  Special events 41
  Sweepstakes, raffles, and lotteries 41
**Revenue-sharing transactions** 89
**Review of financial statement** 71
**Review of financial statements** 12
**Revocation of exemption** 89
**Rounding off to whole dollars** 7
**Royalties** 40

**S**

**Salaries** 45
**Sales** 42
  Of inventory 39
**Sarbanes-Oxley** 23
**Savings** 47
**Savings accounts** 48
**Schedule of contributors** 11
**Scholarships** 12
**School** 72
**Section 4947(a)(1) trusts** 11, 17
**Section 4958** 85, 88, 89
**Section 4958, excise taxes**:
  Disqualified persons 86
  Organization managers 89
**Section 4968** 18
**Section 501(c)(12)** 17
**Section 501(c)(15)** 3, 77

**Section 501(c)(21)**:
  black lung trusts 2
  black-lung trust 95
  trust 1, 13, 39, 40, 44, 47, 49
**Section 501(c)(3)** 2
  Applicable organization 85
  Disclosure of transactions and relationships 19
**Section 501(c)(4)**:
  Applicable organization 86
**Section 501(c)(5)**:
  Lobbying expenses 11
  Membership dues 40
**Section 501(c)(6)**:
  Lobbying expenses 11
  Membership dues 40
**Section 501(c)(7)** 16, 84
**Section 501(c)(9)** 9
**Section 6033(e)** 11
**Securities** 72
**Security/securities** 72
**Security/Securities** 41
**Sequencing list to complete the form and schedules** 4
**Severance payments** 45
**Shipping** 46
**Short accounting period** 4, 72
**Short period** 72
**Short year and final returns** 30
**Short year and final returns.** 32
**Signature** 10
**Signature block** 10
**Significant disposition of assets** 84
**Significant disposition of net assets** 72
**Social club** 16
**Social security**:
  Tax 45
**Solicitations of nondeductible contributions** 15
**SOP 98-2** 47
**Special events** 41
**Specific instructions for Form 990** 8
**Sponsoring organization** 2, 72
**State**:
  Filing requirement 92
  Reporting requirements 5
**State of legal domicile** 9, 73
**Statement(s)** 92
  Activities outside of United States 12
  Audited financial 83
  Functional expenses 42
  Position 98–2 47
  Program service accomplishments 10
  Revenue 37
**Subordinate organization** 73, 80
**Substantial contributor** 61, 86
**Substantial influence** 86
**Supported organization** 73, 86
**Supporting organization** 73, 87
**Sweepstakes** 41

**T**

**Tax shelter transaction** 15
**Tax year** 26, 73
**Tax-exempt bond** 73
**TE/GE EO Determinations** 78
**Telephone number** 9

Term endowment  73
Terminated  8
Text message contribution  93
Top financial official  26, 73
Top management official  26, 73
Total assets  49, 73
Total liabilities  49
Transfers  14
   Personal benefit contracts  16
   To controlled entities  14
Travel expense  46
Trust  8
Trust fund recovery penalty:
   Penalties  92
Trustee  73
Trustee(s)  10, 13, 19, 26
   Institutional  26
Tuition assistance  31

**U**

U.S. possession  2, 74
U.S. Treasury bills  48

Uncollectible pledges  37
Uniform Guidance, 2 C.F.R. Part 200, Subpart F  50, 84
Uniform Prudent Management of Institutional Funds Act (UPMIFA)  49
Unincorporated association  8
United States  9, 73
University/universities  12
Unrelated business  15, 73
   Income  37
   Income tax  79
   Revenue  40
Unrelated business gross income  73
Unrelated business income  43, 73
Unrelated organization  13, 73
Unrelated trade or business  74
   Activities  39
   Gross income  85

**V**

Vehicle donations  93

Voluntary employees' beneficiary association  9
Volunteer  9, 74
Volunteer exception  30
Voting member of the governing body  74
Voting member of the governing body/board  20

**W**

Wages  45
Website address  9
Whistleblower policy  23
Widely available  81
Withholding:
   Backup  15
Works of art  12, 74

**Y**

Year of formation  9, 74