UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDU AMERICAN FOUNDATION, INC., | No.  2:22-cv-01656-DAD-JDP |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| KEVIN KISH, | (Doc. No. 8) |
| Defendant. | |

This matter is before the court on defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) on the grounds that plaintiff lacks standing and under Federal Rule of Civil Procedure 12(b)(6) on the grounds that plaintiff's complaint fails to state a claim upon which relief can be granted.  (Doc. No. 8.)  On August 24, 2023, the court took the matter under submission pursuant to Local Rule 230(g).  (Doc. No. 19.)  For the reasons explained below, the court will grant defendant's motion to dismiss, in part.

**BACKGROUND**

On September 20, 2022, plaintiff Hindu American Foundation, Inc. initiated this action seeking declaratory and injunctive relief against Kevin Kish, in his official capacity as the director of the California Civil Rights Department ("Department"), for allegedly violating the constitutional rights of all Hindu Americans.  (Doc. No. 1.)

/////

1

In its complaint, plaintiff alleges as follows.  The Department is pursuing enforcement actions brought under the California Fair Employment and Housing Act ("FEHA") that are wrongly asserting "that a caste system and caste-based discrimination are integral parts of Hindu teachings and practices."  (*Id.* at 2.)  In those enforcement actions, the Department purportedly "alleges that a caste system is 'a strict Hindu social and religious hierarchy,' which requires discrimination by 'social custom and legal mandate' and that Hindu Americans, therefore, adhere to this strict and discriminatory religious hierarchy in violation of the FEHA."  (*Id.*)  According to plaintiff, it is "the largest and most respected Hindu educational and advocacy institution in North America" and it has consistently maintained throughout its history that a caste system or discrimination based on caste is not a legitimate part of Hindu beliefs, teachings, or practices; vehemently opposes all types of discrimination; and "takes great exception to the State of California defaming and demeaning all of Hinduism by attempting to conflate a discriminatory caste system with the Hindu religion."  (*Id.*)  Plaintiff specifically identifies only one enforcement action that the Department initiated in the Santa Clara County Superior Court.[1]  (*Id.* at ¶ 9.)

Plaintiff also alleges that through its enforcement action the Department is seeking to "adopt a legal definition of Hinduism that incorrectly includes caste, a caste system and caste-based discrimination."  (*Id.* at ¶ 13.)  In doing so, the Department is "attempting to define Hinduism against the beliefs of an overwhelming number of its own adherents" and "in direct violation of the constitutional right[s] . . . of all Hindu Americans."  (*Id.* at ¶¶ 14–15.)  In fact, according to plaintiff, by wrongly seeking to define Hinduism to include a caste system, the Department is encouraging discrimination on the basis of caste because employers could be required, in accordance with state and federal law, to accommodate a religious belief that

---

[1]  Plaintiff purports to attach a copy of the Department's complaint filed in the Santa Clara County Superior Court as Exhibit A to its complaint in this action, but the Exhibit A attached is actually a complaint filed by the Department in the United States District Court for the Northern District of California.  (Doc. Nos. 1 at ¶ 9; 1-1.)  The attached federal complaint was brought against Cisco Systems, Inc. ("Cisco") as well as two individual supervisors and alleges unlawful employment practices on the bases of religion, ancestry, national origin/ethnicity, and race/color.  (Doc. No. 1-1 at ¶ 1.)  The correct complaint that was filed in Santa Clara County Superior Court is included in defendant's unopposed request for judicial notice, addressed below.  (Doc. No. 10.)

1    embraces caste discrimination.  (*Id.* at ¶¶ 16–22.)  The result, plaintiff alleges, is that employers

2    "might arguably be required to accommodate" employee requests to avoid working with, being

3    supervised by, or supervising a person perceived to be of the "wrong" caste.  (*Id.* at ¶¶ 21–22.)

4    Thus, according to plaintiff, by "wrongly tying Hindu beliefs and practices to the abhorrent

5    practice of caste-discrimination" the Department is undermining the laudable goal of stopping

6    caste-based discrimination while also violating the constitutional rights of all Hindu Americans.

7    (*Id.* at 3.)

8          Based on these allegations, plaintiff brings three claims against defendant under 42 U.S.C.

9    § 1983 for:  (1) violation of the Free Exercise Clause of the First Amendment; (2) denial of

10    procedural due process (without reference to a provision of the U.S. Constitution); and (3)

11    violation of the Equal Protection Clause of the Fourteenth Amendment.  (Doc. No. 1 at ¶¶ 23–47.)

12    As to each of its three claims, plaintiff alleges that it has "associational standing to bring this

13    claim on behalf of its Hindu American members."  (*Id.* at ¶¶ 24, 32, 43.)  In terms of relief,

14    plaintiff seeks an order (i) declaring that the Department's actions, as described in its complaint,

15    violate the First Amendment, due process, and equal protection rights of Hindu Americans, and

16    (ii) enjoining the Department from:  (a) "engaging in any act or practice that seeks to define

17    Hinduism as including a caste system or any other belief or practice"; (b) "bringing any religious

18    discrimination action based on the premise that Hindu belief and practice includes a caste

19    system"; and (c) "ascribing religious or moral beliefs or practices to persons or groups who

20    expressly disclaim any such beliefs or practices."  (*Id.* at 12.)

21          On February 2, 2023, defendant filed a motion to dismiss plaintiff's complaint pursuant to

22    Rules 12(b)(1) and 12(b)(6) and a request for judicial notice.  (Doc. Nos. 8, 10.)  On June 29,

23    2023, plaintiff filed its opposition to defendant's pending motion and its own request for judicial

24    notice.  (Doc. No. 15, 16.)  Defendant filed his reply on August 4, 2023.  (Doc. No. 18.)

25                      **REQUESTS FOR JUDICIAL NOTICE**

26          Both defendant and plaintiff filed unopposed requests for judicial notice in support of their

27    motion to dismiss and opposition brief, respectively.  (Doc. Nos. 10, 16.)

28    /////

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)–(2)). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

In defendant's unopposed request for judicial notice, he requests that the court take notice of the following five documents: (1) the Department's state court complaint against Cisco Systems, Inc., and of its two supervisors (collectively "Cisco"), which was filed in the Santa Clara County Superior Court on October 16, 2020 (*CRD v. Cisco Systems, Inc., et al.*, Case No. 20-cv-372366) ("Santa Clara action"), and is referenced in plaintiff's complaint (Doc. No. 1 at ¶ 9); (2) plaintiff's motion to intervene and its proposed complaint in intervention, which were filed in the Santa Clara action on January 7, 2021; (3) plaintiff's filed IRS Form 990 for Tax Year 2019 as published by the IRS (retrieved from the IRS's website on January 16, 2023); (4) plaintiff's filed IRS Form 990 for Tax Year 2020 as published by the IRS (retrieved from the IRS's website on January 16, 2023); and (5) plaintiff's filed IRS Form 990 for Tax Year 2021 as published by the IRS (retrieved from the IRS's website on January 16, 2023). (Doc. No. 10.)

In plaintiff's unopposed request for judicial notice, it requests that the court take notice of the following three documents: (1) non-party Catholic League's filed IRS Form 990 for Tax Year 2019 as published by the IRS (retrieved from the IRS's website on June 28, 2023); (2) the IRS's instructions for Form 990 Return of Organization Exempt Form Income Tax for Tax Year 2019, which are posted on the IRS's website (retrieved from the IRS's website on June 28, 2023); and (3) the IRS's instructions for Form 990 Return of Organization Exempt Form Income Tax for Tax Year 2022, which are posted on the IRS's website (retrieved from the IRS's website on June 28, 2023). (Doc. No. 16.)

The court will grant both defendant's and plaintiff's unopposed requests to notice all of the documents described above, which are properly the subject of judicial notice as public

records, court documents, and government documents obtained from the IRS's official public website.  *See Lemoon v. Cal. Forensic Med. Grp., Inc.*, 575 F. Supp. 3d 1212, 1230 (N.D. Cal. 2021) ("[A] court may judicially notice court documents that are already in the public record or have been filed in other courts.") (citing *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002)); *Full Circle of Living & Dying v. Sanchez*, No. 2:20-cv-01306-KJM-KJN, 2023 WL 373681, at *2 (E.D. Cal. Jan. 24, 2023) (taking judicial notice of handbook obtained from a state government website because it fell "within the realm of public records and government documents available from reliable sources on the Internet, which includes websites run by governmental agencies") (citations, internal quotation marks, and brackets omitted); *Africare, Inc. v. Xerox Complete Document Sols. Maryland, LLC*, 436 F. Supp. 3d 17, 45 n.21 (D.D.C. 2020) (taking judicial notice of revenue statements from a party's IRS Tax Form 990).

In addition to its request for judicial notice, defendant contends that the complaint filed in the Santa Clara action should be considered as incorporated by reference into plaintiff's complaint.  (Doc. No. 10 at 3.)  "The doctrine of incorporation by reference is distinct from judicial notice."  *Al -Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 866 (N.D. Cal. 2022).  "[T]he requirements for the documents that are relied on by the complaint to be incorporated is that:  '(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.'"  *Id.* (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).  Documents that are incorporated by reference "may be considered as 'part of the complaint,' without converting the Rule 12(b)(6) motion into one for summary judgment . . . [and] may be assumed to be true for purposes of deciding a Rule 12(b)(6) motion."  *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

Here, the state court complaint filed in the Santa Clara action is directly referenced in plaintiff's complaint by its case number; it is central to plaintiff's action because the allegations contained within that state court complaint purportedly caused plaintiff to initiate the present action; and defendant's request to deem that document incorporated by reference into plaintiff's complaint is unopposed, nor is there any other reason to doubt the authenticity of the publicly

1  filed court document.  (Doc. Nos. 1 at ¶¶ 9–10; 10-1 at 5–23.)  Accordingly, defendant's request

2  is granted.  The court will consider the complaint filed by the Department in the Santa Clara

3  action as incorporated by reference into plaintiff's complaint filed in this action.

### LEGAL STANDARD[2]

5      "Federal courts are courts of limited jurisdiction and are presumptively without

6  jurisdiction over civil actions."  *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav.*

7  *Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins.*

8  *Co.,* 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021).  Federal courts "possess only

9  that power authorized by Constitution and statute, which is not to be expanded by judicial

10  decree."  *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  Subject matter jurisdiction is

11  required; it cannot be forfeited or waived.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at

12  1156.  Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the

13  court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

14      Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may

15  "challenge a federal court's jurisdiction over the subject matter of the complaint."  *Nat'l Photo*

16  *Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24,

17  2014).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the

18  challenger asserts that the allegations contained in a complaint are insufficient on their face to

19  invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)

20  (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  A party making a facial attack does

21  not submit supporting evidence with the motion because jurisdiction is challenged based solely on

22  the pleadings.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva*

23  *Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do

24  not consider evidence outside the pleadings when deciding a facial attack.") (citation omitted).

25  Important for purposes of resolving the pending motion, it has been recognized that "[t]he district

26

27  ────────────────

[2]  This order does not address the legal standard governing consideration of motions to dismiss brought under Rule 12(b)(6) because, as explained below, the court does not reach defendant's 12(b)(6) arguments.

28

court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  In ruling on a party's factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.* The movant may "rely on affidavits or any other evidence properly before the court," and the party opposing the motion must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."  *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979)).

Here, the court construes defendant's motion as posing a facial attack under Rule 12(b)(1) because in it defendant contends that the allegations of plaintiff's complaint are insufficient for purposes of Article III standing.  (Doc. No. 8 at 15–24.)  Although defendant does rely on documents outside of the complaint, the only such documents are the subject of defendant's request for judicial notice (Doc. No. 10), which are ordinarily considered by the court when it is analyzing the face of the complaint.  *See Carpenter v. OneWest Bank, FSB*, No. 12-cv-00895-MMM-OP, 2012 WL 13012420, at *2 (C.D. Cal. Apr. 25, 2012) ("Even when deciding a facial attack, however, a court can look beyond the complaint to consider documents that are proper subjects of judicial notice.") (collecting cases); *see also Leite*, 749 F.3d at 1121 ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)."); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (explaining that matters properly the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion).

1   **ANALYSIS**

2       As noted, defendant brings the pending motion to dismiss pursuant to Rules 12(b)(1) and

3   12(b)(6), arguing that plaintiff's entire complaint is subject to dismissal.  (Doc. No. 8 at 10–11.)

4   Because the portion of defendant's motion to dismiss brought under Rule 12(b)(1) raises

5   questions with respect to this court's subject matter jurisdiction over this action, the court will

6   first address that aspect of defendant's motion.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court

7   determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

8   action.").

9   **A.      Motion to Dismiss Pursuant to Rule 12(b)(1):  Article III Standing**

10          "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

11  threshold requirement imposed by Article III of the Constitution by alleging an actual case or

12  controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also Matter of E. Coast*

13  *Foods, Inc.,* 66 F.4th 1214, 1218 (9th Cir. 2023) (explaining that "standing is an 'essential and

14  unchanging' requirement . . . [thus] a party must establish an Article III case or controversy

15  before we exert subject matter jurisdiction") (citations omitted); *City of Oakland v. Lynch*, 798

16  F.3d 1159, 1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III standing is not

17  a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction

18  over the suit.") (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)).  An

19  actual case or controversy will be held to exist when a plaintiff establishes standing.  *Lujan v.*

20  *Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

21          Standing, in turn, "requires that (1) the plaintiff suffered an injury in fact, i.e., one that is

22  sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or

23  hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is

24  'likely' to be 'redressed by a favorable decision.'"  *Bates v. United Parcel Serv., Inc.*, 511 F.3d

25  974, 985 (9th Cir. 2007) (*en banc*) (citing *Lujan*, 504 U.S. at 560–61).  "Standing must be shown

26  with respect to each form of relief sought, whether it be injunctive relief, damages or civil

27  penalties."  *Id*.  "[T]o establish standing to pursue injunctive relief . . . [plaintiff] must

28  demonstrate a real and immediate threat of repeated injury in the future."  *Chapman v. Pier 1*

*Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation and internal quotations omitted).

"To determine whether organizational standing requirements have been satisfied, [courts] 'conduct the same inquiry as in the case of an individual:  Has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction?'"  *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)).  "[W]here the plaintiff is an organization, the standing requirements of Article III can be satisfied in two ways.  Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'"  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, ___ U.S. ___, 143 S. Ct. 2141, 2157 (2023) (citation omitted); *see also E. Bay Sanctuary Covenant*, 993 F.3d at 662 ("Organizations can assert standing on behalf of their own members, or in their own right.") (internal citations omitted): *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019) ("[A]bsent a member with standing, . . . an organizational plaintiff 'may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'") (citation omitted).

Here, plaintiff alleges in its complaint that it has organizational standing on behalf of its members and argues in its opposition to the pending motion that it also has standing to bring this action based on an injury to itself.  (Doc. Nos. 1 at ¶¶ 24, 32, 43; 15 at 7–10.)  Accordingly, the court will address both of plaintiff's theories as to its standing to bring this action.

      1.    <u>Whether Plaintiff Has Organizational Standing on Behalf of its Members</u>

To invoke organizational standing on behalf of its members, the plaintiff must allege facts demonstrating that:  "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

/////

"Implicit in the first prong of this test is the requirement that an organization must generally have 'members' to bring suit on their behalf." *Or. Moms Union v. Brown*, 540 F. Supp. 3d 1008, 1013 (D. Or. May 20, 2021). However, a formal membership is not always required for organizational standing: a plaintiff-organization that does not allow for membership may have standing, "so long as 'the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a personal stake in the outcome of the controversy.'" *Am. Unites for Kids*, 985 F.3d at 1096 (internal citations omitted) (quoting *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003)). "Courts look at whether the individuals the organization purports to represent possess 'the indicia of membership' to satisfy the purposes undergirding the concept of associational standing." *Or. Moms Union*, 540 F. Supp. 3d at 1013 (quoting *Or. Advoc. Ctr.*, 322 F.3d at 1111). For example, the Ninth Circuit has found that a non-membership organization had standing because it "serve[d] a specialized segment of Oregon's community: the disabled in general, including the mentally ill and, more specifically, incapacitated criminal defendants. Those groups [were] the primary beneficiaries of [plaintiff's] activities, 'including the prosecution of this kind of litigation,'" which sought to expedite the transfer of mentally incapacitated defendants from jails to state hospitals for evaluation and treatment. *Or. Advoc. Ctr.*, 322 F.3d at 1111–12 (quoting *Hunt*, 432 U.S. at 344).

In defendant's pending motion, he argues that plaintiff lacks standing because it has no members, pointing to a dearth of allegations discussing its members in the complaint and plaintiff's tax records that have been judicially noticed. (Doc. No. 8 at 16–17.) In its opposition, plaintiff argues that formal membership is not required for standing and that it "represents the interest of Hindu Americans throughout the United States, including those working at Cisco" as well as its "board members, employees, leadership and advisory council members, donors, newsletter readers and scholars residing in California. . . ." (Doc. No. 15 at 10–12.) In his reply, defendant concedes that the Ninth Circuit has found organizational standing in cases even where the organization in question had no formal membership, but contends that plaintiff has not alleged facts indicating that it is "sufficiently identified with and subject to the influence of" a non-

/////

1  member constituency, nor has it even identified an individual belonging to that constituency.

2  (Doc. No. 18 at 8–9.)

3       In its complaint, plaintiff alleges that it is "the largest and most respected Hindu

4  educational and advocacy institution in North America," "acts to protect the religious freedoms of

5  Hindu Americans, and all Americans of faith," "is not affiliated with any other religious or

6  political organization," and "works with a wide range of people and groups that are committed to

7  promoting dignity, mutual respect, and pluralism, working across all sampradaya (Hindu religious

8  traditions) regardless of race, color, national origin, citizenship, ancestry, gender, sexual

9  orientation, age and/or disability."  (Doc. No. 1 at 2, ¶ 5.)  In this regard, plaintiff appears to

10  allege that it represents "all Hindu Americans" and "all Americans of faith" (*id.* at 3, ¶ 15), yet

11  there are no allegations in the complaint indicating that plaintiff represents Hindus (or anyone

12  else) employed at Cisco, nor are there any allegations describing or identifying plaintiff's "board

13  members, employees, leadership and advisory council members, donors, newsletter readers and

14  scholars residing in California."[3]

15       Due to these pleading deficiencies, the court concludes that plaintiff's complaint fails to

16  allege facts that, if proven, would show that plaintiff is "sufficiently identified with and subject to

17  the influence" of the individuals it seeks to represent in this lawsuit.  *Or. Advoc. Ctr.*, 322 F.3d at

18  1112.  Indeed, it is unclear even which specific individuals plaintiff seeks to represent in this

19  action because its complaint merely alleges that it seeks to protect the constitutional rights of "all

20  Hindu Americans" and "all Americans of faith."  However, "all Hindu Americans" or "all

21  Americans of faith" would amount to a constituency that is significantly larger and more diffuse

22

23  [3]  The board members, employees, advisory council members, donors, and newsletter-readers that
   plaintiff seeks to represent are mentioned in the declaration of Suhag A. Shukla, a co-founder,
24  and the executive director of plaintiff, that was attached to plaintiff's opposition brief.  (Doc. No.
   15-1.)  However, because this Rule 12(b)(1) motion is a facial attack on the pleadings, that
25  declaration must be disregarded.  *See Timboe v. Clark*, No. 3:20-cv-08719-WHO, 2022 WL
   991721, at *2 (N.D. Cal. Mar. 31, 2022) (disregarding a declaration attached to an opposition
26  brief "on a 12(b)(6) motion because it is not part of the complaint or subject to judicial notice").
   Even if such categories of individuals were described and identified in plaintiff's complaint, the
27  court remains somewhat skeptical that such allegations would remedy the remainder of the
   pleading deficiencies identified below.
28

than those found appropriate for purposes of organizational standing in the cases relied upon by plaintiff.  *See Or. Advoc. Ctr.*, 322 F.3d at 1111–12 (the plaintiff's constituency defined as mentally incapacitated criminal defendants in Oregon); *Am. Unites for Kids*, 985 F.3d at 1096–97 (the plaintiff's constituency defined as public employees, in particular teachers, at the Malibu campuses of a school district); *Cath. League for Religious & C.R. v. City & Cnty. of San Francisco*, 624 F.3d 1043, 1048, 1063–64 (9th Cir. 2010) (*en banc*) ("*Catholic League*") (the plaintiff's constituency defined as being devout Catholics in San Francisco, which purportedly was comprised of 6,000 individuals).

Moreover, even though plaintiff alleges it is "the largest and most respected Hindu educational and advocacy institution in North America," it does not allege what activities, if any, it engages in that relate to "all Hindu Americans," how it is funded, what interaction it has with the Hindu American community, or any facts indicating that it is "sufficiently identified with and subject to the influence" of all adherents of an entire faith such that it plausibly could represent them in this lawsuit.  *See Meister v. City of Hawthorne*, No. 14-cv-01096-MWF-SH, 2014 WL 3040175, at *8–9 (C.D. Cal. May 13, 2014) (dismissing an action brought by the advocacy and service organization "Greater Los Angeles Agency on Deafness, Inc." ("GLAD") for lack of standing because its complaint alleged "only that GLAD seeks to represent deaf and hearing-impaired persons, but not that any relevant persons have the requisite indicia of membership to confer standing on GLAD"); *cf. Or. Advoc. Ctr.*, 322 F.3d at 1111–12 (holding that the plaintiff-organization created and primarily funded by federal statute to advance the rights of individuals with mental health disabilities could be considered to represent the mentally incapacitated criminal defendants in Oregon whose constitutional rights the plaintiff-organization sought to vindicate).  Relatedly, plaintiff also has failed to explain how "all Hindu Americans"—or whatever constituency it seeks to represent—constitute a "specialized segment" of the community affected by the complaint filed in the Santa Clara action, nor does plaintiff's complaint identify how its purported constituency would be the "primary beneficiaries" of this lawsuit.  *Cf. Am. Unites for Kids*, 985 F.3d at 1097 (holding that the plaintiff-organization had standing when it served "a 'specialized segment' of the community:  public employees concerned about exposure

to environmental risk at work" and teachers working on defendants' school campuses "were the 'primary beneficiaries' of [the plaintiff-organization's] activities," including its lawsuit brought against the defendant school district for environmental contamination on its campuses).  Without factual allegations connecting the plaintiff organization with the particular constituency that it seeks to represent here, the court cannot plausibly infer that plaintiff is "sufficiently identified with and subject to the influence of" "all Hindu Americans."

More importantly, even if the court were to assume plaintiff could assert claims on behalf of "all Hindu Americans," plaintiff must still allege facts suggesting that a member of that constituency "suffers an injury-in-fact that is traceable to the defendant and likely to be redressed by a favorable decision." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (explaining that "the law of organizational standing . . . [has] required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm").  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  The "threatened injury must be *certainly impending* to constitute injury in fact, and [] allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and brackets omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Here, plaintiff's complaint alleges that the Department has asserted in the Santa Clara action, "that a caste system and caste-based discrimination are integral parts of Hindu teachings and practices" and "the caste system [is] 'a strict Hindu social and religious hierarchy,' which

/////

/////

/////

/////

/////

13

1   requires discrimination by 'social custom and legal mandate.'"[4]  (Doc. No. 1 at 2.)  Plaintiff

2   alleges that these assertions "wrongly [tie] Hindu beliefs and practices to the abhorrent practice of

3   caste-discrimination," thereby undermining the goal of ending caste-based discrimination and

4   violating "the First Amendment rights of all Hindu-Americans," which "can only lead to a denial

5   of due process and equal protection to Americans based on their religious affiliation and national

6   origin."  (*Id.*)  However, as defendant correctly points out in his pending motion to dismiss, there

7   are no factual allegations of actual or imminent harm to anyone resulting from the Department's

8   allegations in its state court complaint, let alone actual harm to any individuals that plaintiff seeks

9   to represent in this action.  (Doc. No. 8 at 18); *see FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215,

10  231 (1990) ("[I]t is the burden of the 'party who seeks the exercise of jurisdiction in his favor

11  clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the

12  dispute . . . . If they fail to make the necessary allegations, they have no standing.") (internal

13  citations, quotations, brackets omitted).

14       At most, plaintiff alleges a purely hypothetical theory of harm, i.e., "[b]y wrongly

15  attempting to define Hinduism to include caste, the [Department] would actually require the very

16  discrimination that it seeks to ban."  (Doc. No. 1 at ¶ 16.)  According to plaintiff's complaint,

17  "employers *might arguably* be required to accommodate an employee's request not to work with

18  someone the employee believes to be of the 'wrong' caste" as a religious accommodation under

19  state and federal law.  (*Id.* at ¶ 21) (emphasis added).  But the notion that the Department's

20  allegations in the state court complaint—a civil rights enforcement lawsuit seeking to stop and

21  /////

22  /////

23  _____

24  [4]  The portion of the complaint filed in the Santa Clara County Superior Court action that plaintiff
    is quoting from actually alleges as follows:  "As a strict Hindu social and religious hierarchy,

25  India's caste system defines a person's status based on their religion, ancestry, national
    origin/ethnicity, and race/color—or the caste into which they are born—and will remain until

26  death."  (Doc. No. 10-1 at 6) (citing Human Rights Watch & Center for Human Rights and
    Global Justice at New York University School of Law, *Hidden Apartheid: Caste Discrimination*

27  *against India's "Untouchables,"* at 45 (2007)).  "At the bottom of the Indian hierarchy is the
    Dalit, typically the darkest complexion caste, who were traditionally subject to 'untouchability'

28  practices which segregated them by social custom and legal mandate."  (*Id.*)

14

prevent caste-based discrimination[5]—would somehow lead other Hindu Americans to make religious accommodation requests to discriminate against co-workers based on their perceived caste and that employers might then actually grant those requests due to their interpretation of the Department's allegations in the Santa Clara action is both highly speculative and seemingly implausible. Such an attenuated chain of events without connection to any individual facing this purported and speculative harm is plainly insufficient to establish standing. *See Summers*, 555 U.S. at 495–96 (finding that a vague plan to visit unnamed National Forests "some day" did not establish "actual or imminent injury" for purposes of establishing the plaintiff's standing to challenge government action affecting a particular forest); *Clapper*, 568 U.S. at 410–11 (finding that the "respondents' theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending"). Here, plaintiff's alleged harm is also contrary to the premise of its own complaint, which is that the Department's "depiction of the caste system . . . is not based on any universal understanding among Hindus about their own beliefs and traditions" and is contrary to the beliefs of "an overwhelming number of [Hinduism's] own adherents." (Doc. No. 1 at ¶¶ 12, 14.)

In addition, plaintiff has failed to allege any injury that is plausibly connected to the three constitutional violations that it asserts in its complaint. (Doc. No. 1 at ¶¶ 23–48); *see Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1233 (9th Cir. 2017) ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted.") (emphasis in original). First, as to its free exercise claim, plaintiff fails to allege facts

---

[5]  The Department brought the Santa Clara action on behalf of John Doe who is "Dalit Indian, a population once known as the 'Untouchables,' who are the most disadvantaged people under India's centuries-old caste system" and in it alleges that John Doe is "Dalit because of his religion, ancestry, national origin/ethnicity, and race/color." (Doc. No. 10-1 at ¶ 1 n.2.)  The Department further alleges in that case that Cisco engaged in unlawful employment practices against John Doe by subjecting him to disparate employment conditions because of his status as a Dalit Indian in violation of the FEHA. (*Id.* at ¶¶ 51–60.)  Among other things, the suit alleges that Cisco reassigned Doe's job duties and isolated him from his other colleagues, denied him a raise, promotion, and work opportunities, and subjected him to offensive comments, including publicizing his caste to co-workers. (*Id.* at ¶¶ 53, 61–71.)

1   showing how "wrongly defin[ing] Hindu Beliefs, teachings and practices to include an abhorrent

2   practice of discrimination," (Doc. No. 1 at ¶ 29), burdens, operates against, or otherwise infringes

3   on the practice of Hinduism by any individual it seeks to represent in bringing this action. *See*

4   *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 222–23 & 224 n.9 (1963); *see also Kumar*

5   *v. Koester*, ___ F. Supp.3d ___, 2023 WL 4781492, at *4 (C.D. Cal. July 25, 2023) (finding that

6   the university professor Hindu plaintiffs lacked standing to assert a free exercise challenge to the

7   use of "caste" in the university's anti-discrimination policy because the plaintiffs' "emphatically

8   denounce[d] the caste system and reject[ed] the notion that it is part of their religion" and thus the

9   policy did "not threaten any of Plaintiffs' rights to practice their religion").

10         Second, plaintiff's mischaracterized "procedural due process" claim actually appears to be

11   a void for vagueness challenge to the Department's alleged "position" that seeks to "legally

12   define Hinduism to include belief and practice in caste and a caste system" under the Fourteenth

13   Amendment's Due Process Clause.  (Doc. No. 1 at ¶¶ 33–34.)  "A plaintiff has standing to bring a

14   pre-enforcement challenge to a vague law on due process grounds where 'the litigant is chilled

15   from engaging in constitutionally protected activity.'"  *Montclair Police Officers' Ass'n v. City of*

16   *Montclair*, No. 2:12-cv-06444-PSG-PLA, 2012 WL 12888427, at *4 (C.D. Cal. Oct. 24, 2012)

17   (quoting *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1350 (11th Cir. 2011)).  Here,

18   however, plaintiff has not identified any activity that it alleges has been chilled by the

19   Department's allegations advanced in its state court complaint against Cisco, let alone a

20   constitutionally protected activity.

21         Third, in regard to its equal protection claim, plaintiff's complaint does not allege any

22   facts plausibly suggesting that defendant "has applied the [FEHA] in a discriminatory manner

23   against Hindu Americans" but not as to Americans of other faiths because of their faith.  (Doc.

24   No. 1 at ¶ 48.)  *See Citizens for Fair Representation v. Padilla*, 815 F. App'x 120, 123 (9th Cir.

25   2020) (holding that the plaintiff lacked standing to assert an equal protection challenge to

26   California's constitutional cap on the number of its state legislative districts as racially

27   discriminatory because "they have not adequately alleged that some votes are weighted less than

28   /////

others based on race").[6]  Nor does plaintiff allege a concrete injury stemming from the alleged discriminatory enforcement of the FEHA against Hindu Americans, except for plaintiff's general disagreement with the Department's allegations in the Santa Clara complaint in which it is vaguely suggested that a caste system is related to Hinduism.  *See Kumar*, 2023 WL 4781492, at *3 (finding that Hindu university professors lacked standing to assert an equal protection challenge to a university's antidiscrimination policy's use of the term "caste" when the plaintiffs merely alleged that "the Policy impermissibly stigmatizes individuals of South Asian descent and Hindu practitioners" and that "the policy could be enforced unevenly").

Finally, plaintiff's reliance on the Ninth Circuit's decision in *Catholic League* does not serve to remedy the pleading deficiencies with respect to standing identified above.  624 F.3d at 1047–48 (holding that "a Catholic civil rights organization and two devout Catholics [members] who live in San Francisco" had standing to bring an Establishment Clause challenge to a resolution adopted by the San Francisco Board of Supervisors denouncing the Archdiocese of San Francisco's decision to not place children for adoption in homosexual households).  Unlike *Catholic League*, plaintiff is not asserting an Establishment Clause challenge here, and even if it was, the specific psychological harm the plaintiffs in *Catholic League* allegedly suffered— "exclusion or denigration on a religious basis within the political community" based upon extensive and detailed factual allegations—is absent from the allegations of plaintiff's complaint. 624 F.3d at 1052–53; *see Schempp*, 374 U.S. at 225 n.9 ("[T]he requirements for standing to challenge state action under the Establishment Clause, unlike those relating to the Free Exercise Clause, do not include proof that particular religious freedoms are infringed.").  Moreover, were plaintiff to allege a psychological injury as did the plaintiffs in *Catholic League*, it does not appear that it would be sufficiently concrete to confer standing for the type of claims that plaintiff has asserted here.  *See Kumar*, 2023 WL 4781492, at *3–4 (finding Hindu professors lacked

/////

/////

---

[6] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    standing to assert free exercise and equal protection claims where they alleged "abstract stigmatic

2    injuries" regarding an antidiscrimination policy's use of the term "caste").[7]

3              In summary, plaintiff's complaint fails to allege that:  (i) plaintiff has any members or is

4    "sufficiently identified with and subject to the influence of" a constituency from a specialized

5    segment of the community that would primarily benefit from this lawsuit; and (ii) any individual

6    members of such a constituency have suffered or will suffer an injury-in-fact.  Plaintiff has thus

7    failed to allege facts that would satisfy the first prong of organizational standing, i.e., "its

8    members would otherwise have standing to sue in their own right."  *Am. Unites for Kids*, 985

9    F.3d at 1096.  For this reason, the court need not address the second and third prongs that must

10   also be satisfied to demonstrate organizational standing.  *See Am.'s Frontline Drs. v. Wilcox*, No.

11   21-cv-01243-JGB-KK, 2022 WL 1514038, at *6 (C.D. Cal. May 5, 2022) ("Plaintiffs fail to

12   allege the first *Hunt* requirement, thus the Court declines to address the remaining two

13   requirements.").

14             Accordingly, defendant's motion to dismiss the complaint for failure to adequately allege

15   Article III standing predicated on organizational standing will be granted.

16             2.        Whether Plaintiff Has Standing on Behalf of Itself

17             An organization has standing on its own behalf if it can show:  (1) that the defendant's

18   actions have frustrated its mission; and (2) that it has spent resources counteracting that

19   frustration of mission.  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013); *see

20   also E. Bay Sanctuary Covenant*, 993 F.3d at 663.  "Of course, organizations cannot 'manufacture

21   the injury by incurring litigation costs or simply choosing to spend money fixing a problem that

22   otherwise would not affect the organization at all[.]'"  *E. Bay Sanctuary Covenant*, 993 F.3d at

23   663 (quoting *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088

24   (9th Cir. 2010)).  Rather, an organizational plaintiff must "show they 'would have suffered some

---

26   [7]  Additionally, the undersigned observes that plaintiff's complaint is clearly distinguishable from
     that before the court in *Catholic League* because the individual plaintiffs in that case were

27   members of the organizational plaintiff and resided in the "political community" affected by the
     resolution that they alleged caused them religious-based exclusion and denigration within that

28   political community.  *Cf. Catholic League*, 624 F.3d at 1048.

1   other injury' had they 'not diverted resources to counteracting the problem.'"  *Id.* at 974 (quoting

2   *La Asociacion*, 624 F.3d at 1088).  Thus, "[a]n organization may sue only if it was *forced* to

3   choose between suffering an injury and diverting resources to counteract the injury."  *La*

4   *Asociacion*, 624 F.3d at 1088 n.4 (emphasis added).

5          Although plaintiff's complaint alleges it has "associational standing" to bring its claims

6   "on behalf of its Hindu American members," plaintiff has argued in its opposition to the pending

7   motion to dismiss that it also has "direct standing" to bring its claims against defendant.  (Doc.

8   Nos. 1 at ¶ 43; 15 at 7–10.)  As defendant correctly points out in his reply brief, however,

9   plaintiff's complaint is devoid of any allegations addressing how "the Department's alleged

10  mischaracterizations in a state court pleading against a third party" have caused or threatened

11  injury to plaintiff's mission or what steps it has been forced to take to avoid such harm.  (Doc.

12  No. 18 at 12); *see also La Asociacion*, 624 F.3d at 1088 n.4.  In fact, plaintiff's complaint does

13  not even clearly allege what its mission is.  (*See* Doc. No. 1 at ¶ 5.)  At most, plaintiff argues in

14  its opposition brief that its "board members, employees, leadership and advisory council

15  members, donors, newsletter readers and scholars residing in California have been directly

16  harmed by the [Department's] actions, *requiring significant redeployment of* [*plaintiff*] *resources*

17  and personally subjecting them to the emotional and spiritous injuries of [the Department's] gross

18  mischaracterization of Hindu teachers."  (Doc. No. 15 at 11) (emphasis added).  These assertions

19  are not alleged in plaintiff's complaint, and in any event, are entirely conclusory.  *See Our Watch*

20  *With Tim Thompson, v. Bonta*, ___ F. Supp.3d ___, 2023 WL 4600117, at *6 (E.D. Cal. July 18,

21  2023) (dismissing a complaint for lack of standing where the plaintiff-organization challenging

22  the constitutionality of a state law failed to allege "what plaintiff's regular activities are and how

23  [the state law's] enactment specifically impacts the organization's functions").  Thus, plaintiff's

24  attempt to invoke an alternative theory of standing through its opposition brief is unavailing.[8]

25  /////

26  _____

27  [8]  If plaintiff intends to pursue this theory of standing in a first amended complaint, it is directed
    to review this court's decision in *Our Watch With Tim Thompson*, 2023 WL 4600117, at *5–10,
28  in which the undersigned addressed the law governing a plaintiff-organization's direct standing to
    bring suit in some detail.

1    Accordingly, defendant's motion to dismiss the complaint for failure to allege Article III

2    standing predicated on plaintiff's direct standing will also be granted.

3    Because the court concludes that plaintiff lacks Article III standing to bring this action and

4    that defendant's motion to dismiss pursuant to Rule 12(b)(1) must be granted, the court need not

5    reach defendant's arguments in support of his motion to dismiss pursuant to Rule 12(b)(6).

6    Accordingly, defendant's motion to dismiss pursuant to Rule 12(b)(6) will be denied as having

7    been rendered moot by this order.

8    **B.    Leave to Amend**

9    Plaintiff has indicated that it desires leave to file a first amended complaint in the event

10   that the court grants defendant's motion to dismiss.  (Doc. No. 15 at 10 fn.2 & 16 n.3.)  "Courts

11   are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave

12   should be granted with 'extreme liberality.'"  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th

13   Cir. 2009) (citations omitted).  There are several factors a district court considers in determining

14   whether to grant leave to amend, including undue delay, the movant's bad faith or dilatory

15   motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

16   to the opposing party, and futility.  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th

17   Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

18   Although the court is somewhat skeptical that plaintiff will be able to remedy all of the

19   pleading deficiencies described in this order, plaintiff has not yet had any opportunity to amend

20   its complaint.  Defendant—though he opposes leave to amend—has also not asserted that he

21   would be unduly prejudiced by granting plaintiff leave to file a first amended complaint.  (Doc.

22   No. 18 at 14–15.)  Rather, in his reply brief, defendant contends that permitting amendment

23   would be futile, arguing that "'a citizen lacks standing to contest the policies of the prosecuting

24   authority when he himself is neither prosecuted nor threatened with prosecution' because he

25   'lacks a judicially cognizable interest in the prosecution or non-prosecution of another.'"  (*Id.* at

26   15) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)).  However, plaintiff has not had

27   an opportunity to fully respond to this argument advanced by defendant and it is unclear whether

28   the decision in *Linda R.S.* has applicability to the claims asserted by plaintiff in this case.  For

1   these reasons, the court will grant plaintiff leave to amend.  *See Nat'l Council of La Raza v.*

2   *Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("It is black-letter law that a district court must

3   give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that

4   amendment would be futile.").

5                                            **CONCLUSION**

6          For the reasons stated above:

7   1.        Defendant's and plaintiff's requests for judicial notice (Doc. No. 10, 16) are

8            granted;

9   2.        Defendant's motion to dismiss plaintiff's complaint due to plaintiff's lack of

10           Article III standing (Doc. No. 8) is granted, with leave to amend;

11   3.        The remainder of defendant's motion to dismiss (Doc. No. 8) is denied as having

12           been rendered moot by this order;

13   4.        Plaintiff shall file its first amended complaint, or alternatively, a notice of its intent

14           not to do so, within twenty-one (21) days from the date of entry of this order; and

15   5.        Plaintiff is warned that its failure to comply with this order may result in dismissal

16           of this action due to plaintiff's failure to prosecute.

17          IT IS SO ORDERED.

18   Dated:   __**August 30, 2023**__                          _Dale A. Drozd_

19                                                    UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28