ROB BONTA, State Bar No. 202668
Attorney General of California
MICHAEL NEWMAN, State Bar No. 222993
Senior Assistant Attorney General
WILLIAM H. DOWNER, State Bar No. 257644
Supervising Deputy Attorney General
*CARLY J. MUNSON, State Bar No. 254598
JENNIFER M. SOLIMAN, State Bar No. 332519
Deputy Attorneys General
  1300 I Street
  Sacramento, CA  95814
  Telephone:  (916) 210-7845
  Fax:  (916) 731-2129
  E-mail:  Carly.Munson@doj.ca.gov
*Attorneys for Defendant Kevin Kish, Director of
the California Civil Rights Department*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HINDU AMERICAN FOUNDATION, INC., a Florida Not-For-Profit Corporation; SAMIR KALRA; MIHIR MEGHANI; SANGEETHA SHANKAR; DILIP AMIN, SUNDAR IYER, RAMANA KOMPELLA as individuals; and DOE PLAINTIFFS ONE TO THREE,**<br><br>Plaintiffs,<br><br>v.<br><br>**KEVIN KISH, an individual, in his official capacity as Director of the California Civil Rights Department; and DOES 1-50, inclusive,**<br><br>Defendants. | Case No. 2:22-CV-01656-DAD-JDP<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO *YOUNGER* ABSTENTION DOCTRINE, RULE 12(b)(1), AND RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:          August 20, 2024<br>Time:          1:30 p.m.<br>Judge:        Hon. Dale A. Drozd<br><br>Action Filed:  September 20, 2022<br>First Am. Compl Filed: September 21, 2023 |

(2:22-CV-01656)

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................. 3

Background ................................................................................................................... 5

    I.    The Parties ................................................................................................... 5

    II.   The Department's Ongoing Efforts to Remedy Workplace Discrimination and Harassment Against Dalit Workers at Cisco ................................... 6

Legal Standard ............................................................................................................. 8

Argument ...................................................................................................................... 9

    I.    The *Younger* Abstention Doctrine Requires that the Court Abstain from Hearing Plaintiffs' Claims and Dismiss the Suit .................................. 9

        A.   The Department's Pending Enforcement Action Against Cisco in State Court is the Civil Equivalent of a Criminal Prosecution and, Therefore, Falls Under the Second *NOPSI* Category .............................. 10

        B.   The Four Additional Factors for *Younger* Abstention Are Also Satisfied ......................................................................................... 11

        C.   As Plaintiffs Seek Only Injunctive and Declaratory Relief, *Younger* Abstention Warrants Dismissal .............................................. 12

    II.   Plaintiffs' First Amended Complaint Must Be Dismissed Because They Lack Standing to Pursue this Litigation .......................................... 13

        A.   Plaintiffs Do Not Have Direct Standing to Pursue this Litigation ........... 13

            1.    Plaintiffs have not demonstrated that they have suffered cognizable injuries-in-fact as a result of *CRD v. Cisco* .............. 13

                a.    Individual Plaintiffs' alleged psychological and spiritual harms are not a cognizable injuries-in-fact under any claim presented ....................................... 14

                b.    HAF has not demonstrated that it has been forced to take action to avoid other injury as a result of *CRD v. Cisco* ..................................................................... 20

            2.    Plaintiffs' generalized grievances are not redressable .................. 22

        B.   HAF Does Not Have Associational Standing to Pursue this Litigation ......................................................................................... 23

            1.    HAF has not identified a clear constituency, let alone one that has suffered the requisite injury and whose interests HAF can represent in this suit ......................................... 23

            2.    On amendment, HAF has not satisfied the *Hunt* factors for associational standing ................................................ 24

    III.  In the Alternative, Plaintiffs Iyer's and Kompella's Equal Protection Clause Claims Must Be Dismissed as Moot ........................................ 27

    IV.  Plaintiffs' First Amended Complaint Must Be Dismissed Because It Fails to State a Claim Upon Which Relief Can Be Granted ............................. 29

i

**TABLE OF CONTENTS**
**(continued)**

Page

A.   Plaintiffs Fail to State a Claim for Relief Under the Establishment
     Clause ................................................................................................ 29

B.   Plaintiffs Fail to State a Claim for Relief Under the Free Exercise
     Clause ................................................................................................ 30

C.   Plaintiffs Fail to State a Claim for Relief Under the Due Process
     Clause ................................................................................................ 33

D.   Plaintiffs Fail to State a Claim for Relief Under the Equal
     Protection Clause for Either Religious or National Origin
     Discrimination .................................................................................. 35

     1.   All Plaintiffs fail to state a claim for discrimination on the
          basis of religion ........................................................................ 36

     2.   Mr. Iyer and Mr. Kompella fail to state a claim for
          discrimination on the basis of national origin .............................. 37

Conclusion ........................................................................................................ 39

ii

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Abington School Dist. v. Schempp*
    374 U.S. 203 (1963) ................................................................................ 30

5

6

*Adarand Constructors, Inc. v. Slater*
    528 U.S. 216 (2000) ................................................................................ 28

7

*Am. Unites for Kids v. Rousseau*
    985 F.3d 1075 (9th Cir. 2021) ............................................................... 23

8

9

*Arlington Heights v. Metro. Hous. Dev. Corp.*
    429 U.S. 252 (1977) ................................................................................ 36

10

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .........................................................................*passim*

11

12

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990) ................................................................. 35

13

*Bankshot Billiards, Inc. v. City of Ocala*
    634 F.3d 1340 (11th Cir. 2011) ....................................................... 17, 35

14

15

*Barren v. Harrington*
    152 F.3d 1193 (9th Cir. 1998) ......................................................... 18, 35

16

*Bd. of Educ. of Cent. Sch. Dist. v. Allen*
    392 U.S. 236 (1968) ................................................................................ 15

17

18

*Bd. of Regents of State Colls. v. Roth*
    408 U.S. 564 (1972) ................................................................................ 34

19

20

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ................................................................................ 32

21

*Brown v. Stored Value Cards, Inc.*
    953 F.3d 567 (9th Cir. 2020) ................................................................. 39

22

23

*Cal. Parents for the Equalization of Educ. Materials v. Torlakson*
    973 F.3d 1010 (9th Cir. 2020) ............................................................... 29

24

25

*Cal. v. Tex.*
    593 U.S. 659 (2021) ................................................................................ 22

26

*Carpenter v. OneWest Bank, FSB*
    No. 12-cv-00895-MMM-OP, 2012 WL 13012420 (C.D. Cal. Apr. 25, 2012) ........................ 8

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Carrico v. City & Cnty. of S.F.*
656 F.3d 1002 (9th Cir. 2011)..............................................................39

*Catholic League for Religious & C.R. v. City & Cnty. of S.F.*
624 F.3d 1043 (9th Cir. 2010).............................................16, 17, 24, 29

*Christian Legal Soc'y Chapter of the Univ. of Cal. Hastings Coll. of Law v.*
*Martinez*
561 U.S. 661 (2010)...........................................................................31

*Citizens for Fair Representation v. Padilla*
815 F. App'x 120 (9th Cir. 2020) ........................................................18

*City of Erie v. Pap's A.M.*
529 U.S. 277 (2000)......................................................................27, 28

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013) ..........................................................................18

*Dep't of Fair Emp. & Hous. v. Law Sch. Admission Council, Inc.*
941 F. Supp. 2d 1159 (N.D. Cal. 2013) ...........................10, 34, 38

*DHX, Inc. v. Allianz AGF MAT, Ltd.*
425 F.3d 1169 (9th Cir. 2005).............................................................28

*Dubinka v. Judges of Super. Ct. of State of Cal. for Cnty. of L.A.*
23 F.3d 218 (9th Cir. 1994)................................................................11

*E. Bay Sanctuary Covenant v. Biden*
993 F.3d 640 (9th Cir. 2021)..............................................................20

*Espinoza v. Mont. Dep't of Revenue*
591 U.S. 464 (2020)......................................................................16, 32

*Fed. Commc'ns Comm'n v. Fox TV Stations, Inc.*
567 U.S. 239 (2012)...........................................................................34

*Fields v. Palmdale Sch. Dist.*
447 F.3d 1187 (9th Cir. 2006).............................................................34

*Foman v. Davis*
371 U.S. 178 (1962)...........................................................................39

*Gillette v. United States*
401 U.S. 437 (1971)...........................................................................30

**TABLE OF AUTHORITIES**
(continued)

Page

*Graham v. C.I.R.*
    822 F.2d 844 (9th Cir. 1987)............................................................... 30

*Harris v. City of Santa Monica*
    56 Cal. 4th 203 (2013) ..................................................................... 10

*Harris v. McRae*
    448 U.S. 297 (1980)....................................................... 26, 27, 30, 31

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982) ........................................................................ 20

*Heckler v. Chaney*
    470 U.S. 821 (1985) ........................................................................ 38

*Herrera v. City of Palmdale*
    918 F.3d 1037 (9th Cir. 2019)........................................................ 12

*Hirsh v. Justices of the Sup. Ct. of State of Cal.*
    67 F.3d 708 (9th Cir. 1995)............................................................... 9

*Huffman v. Pursue, Ltd.*
    420 U.S. 592 (1975) ........................................................................ 10

*Hunt v. Wash. State Apple Advert. Comm'n*
    432 U.S. 333 (1977)....................................................... 23, 24, 25, 27

*In Def. of Animals v. Sanderson Farms, Inc.*
    No. 3:20-cv-05293-RS, 2021 WL 4243391 (N.D. Cal. Sept. 17, 2021)............................... 20

*Jones v. Williams*
    791 F.3d 1023 (9th Cir. 2015)................................................... 30, 31

*Juidice v. Vail*
    430 U.S. 327 (1977)......................................................................... 11

*Kennedy v. Bremerton School Dist.*
    597 U.S. 507 (2022)......................................................................... 29

*Kokkonen v. Guardian Life Ins. Co.*
    511 U.S. 375 (1994)........................................................................... 8

*Kumar v. Koester*
    683 F. Supp. 3d 1108 (C.D. Cal. 2023).................................... 15, 31

## TABLE OF AUTHORITIES
### (continued)

Page

*La Asociacion de Trabajadores de Lake Forest v. Lake Forest*
    624 F.3d 1083 (9th Cir. 2010)...........................................................................20, 21

*Lam v. City & Cnty. of S.F.*
    868 F. Supp. 2d 928 (N.D. Cal. 2012) ......................................................35, 36, 37

*Lebbos v. Judges of the Super. Ct.*
    883 F.2d 810 (9th Cir. 1989)...................................................................................9, 12

*Leite v. Crane Co.*
    749 F.3d 1117 (9th Cir. 2014)...................................................................................8

*Lemon v. Kurtzman*
    403 U.S. 602 (1971) ........................................................................................29, 30

*Liner v. Jafco, Inc.*
    375 U.S. 301 (1964) ................................................................................................27

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)...................................................................................13, 22, 25

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*
    457 U.S. 423 (1982) ................................................................................................9

*Montclair Police Officers' Ass'n v. City of Montclair*
    No. 2:12-cv-06444-PSG-PLA, 2012 WL 12888427 (C.D. Cal. Oct. 24, 2012)..............17, 35

*Moore v. Sims*
    442 U.S. 415 (1979) ........................................................................................9, 11

*N. Coast Women's Care Med. Grp., Inc. v. Super. Ct.*
    44 Cal.4th 1145 (Cal. Sup. 2008)..........................................................................30

*Namisnak v. Uber Techs., Inc.*
    971 F.3d 1088 (9th Cir. 2020)................................................................................14

*New Hampshire Motor Transp. Ass'n v. Rowe*
    448 F.3d 66 (1st Cir. 2006) ...................................................................................27

*New Orleans Pub. Serv., Inc. v. Council of New Orleans (NOPSI)*
    491 U.S. 350 (1989) ...................................................................................9, 10, 11

*North Carolina v. Rice*
    404 U.S. 244 (1971) ................................................................................................27

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*
  477 U.S. 619 (1986) ............................................................................... 10, 11

*Ohno v. Yasuma*
  723 F.3d 984 (9th Cir. 2013) ............................................................................. 31

*Or. Advoc. Ctr. v. Mink*
  322 F.3d 1101 (9th Cir. 2003) ..................................................................... 23, 24

*Or. Prescription Drug Monitoring Program v. United States Drug Enf't Admin.*
  860 F.3d 1228 (9th Cir. 2017) .......................................................................... 15

*Our Watch with Tim Thompson, v. Bonta*
  682 F. Supp. 3d 838 (E.D. Cal. 2023) ........................................................ 20, 33

*Pennzoil Co. v. Texaco, Inc.*
  481 U.S. 1 (1987) ............................................................................................. 12

*Pers. Adm'r of Mass. v. Feeney*
  442 U.S. 256 (1979) ................................................................................... 35, 36

*Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*
  219 F.3d 895 (9th Cir. 2000) ........................................................................... 13

*Phillips v. United States Customs & Border Prot.*
  74 F.4th 986 (9th Cir. 2023) ............................................................................ 19

*Portman v. Cnty. of Santa Clara*
  995 F.2d 898 (9th Cir. 1993) ........................................................................... 33

*Potrero Hills Landfill, Inc. v. Cnty. of Solano*
  657 F.3d 876 (9th Cir. 2011) ........................................................................ 9, 11

*Rogers v. Lodge*
  458 U.S. 613 (1982) ........................................................................................ 36

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*
  44 F.4th 867 (9th Cir. 2022) ...................................................................... 15, 32

*Safe Air for Everyone v. Meyer*
  373 F.3d 1035 (9th Cir. 2004) ........................................................................... 8

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*
  806 F.2d 1393 (9th Cir. 1986) ......................................................................... 39

Notice of Motion and Motion to Dismiss First Amended Complaint (2:22-CV-01656)

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Serbian E. Orthodox Diocese for United States & Canada v. Milivojevich*
    426 U.S. 696 (1976) ............................................................................. 31, 32

*Simon v. E. Ky. Welfare Rights Org.*
    426 U.S. 26 (1976) .................................................................................... 22

*Skilstaf, Inc. v. CVS Caremark Corp.*
    669 F.3d 1005 (9th Cir. 2012) ...................................................................... 8

*Sossamon v. Lone Star State of Tex.*
    560 F.3d 316 (5th Cir. 2009) ...................................................................... 29

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016) ............................................................................. 14, 25

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) ................................................................. 20, 32

*Sprint Commc'ns, Inc. v. Jacobs*
    571 U.S. 69 (2013) .................................................................................... 10

*State Pers. Bd. v. Fair Emp. & Hous. Comm'n*
    39 Cal. 3d 422 (1985) ...................................................................... 10, 34, 38

*Steel Co. v. Citizens for Better Env't*
    523 U.S. 83 (1998) ...................................................................................... 9

*Summers v. Earth Island Inst.*
    555 U.S. 488 (2009) .................................................................................. 18

*Tenet v. Doe*
    544 U.S. 1 (2005) ....................................................................................... 9

*TransUnion LLC v. Ramirez*
    594 U.S. 413 (2021) .................................................................................. 19

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*
    517 U.S. 544 (1996) ............................................................................. 25, 26

*United States v. Armstrong*
    517 U.S. 456 (1996) ............................................................................. 36, 38

*United States v. Bourgeois*
    964 F.2d 935 (9th Cir. 1992) ...................................................................... 38

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*United States v. Chem. Found., Inc.*

4     272 U.S. 1 (1926) ................................................................. 38

5

*United States v. Ritchie*

6     342 F.3d 903 (9th Cir. 2003) .................................................. 9

*United States v. Williams*

7     553 U.S. 285 (2008) ............................................................. 34

8

*Valle del Sol Inc. v. Whiting*
9     732 F.3d 1006 (9th Cir. 2013) .............................................. 20

10

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*
      454 U.S. 464 (1982) ...................................................... 13, 16

11

*Warren v. Fox Family Worldwide, Inc.*
12     328 F.3d 1136 (9th Cir. 2003) ................................................ 8

13

*Washington v. Davis*
14     426 U.S. 229 (1976) ................................................. 18, 35, 37

15

*Wayte v. United States*
      470 U.S. 598 (1985) ...................................................... 36, 38

16

*West v. Atkins*
17     487 U.S. 42 (1988) .............................................................. 34

18

*West v. Secretary of Dep't of Transp.*
19     206 F.3d 920 (9th Cir. 2000) ................................................ 28

20

*White v. Lee*
      227 F.3d 1214 (9th Cir. 2000) .......................................... 8, 27

21

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*
22     62 F.4th 517 (9th Cir. 2023) ................................................ 14

23

*Younger v. Harris*
      401 U.S. 37 (1971) ....................................................... *passim*

24

**STATUTES**

25

United States Code, Title 42
26     § 1983 ........................................................................... 3, 35

27

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Gov't Code
  § 11135 ........................................................................................... 10
  §§ 12900-12999 ........................................................................... *passim*
  § 12920 ........................................................................... 5, 10, 11, 38
  § 12921 ........................................................................................... 10
  § 12926(t) .......................................................................................... 6
  § 12930 ........................................................................................... 10
  § 12930(f) ............................................................................... 3, 5, 10
  § 12940(j) ........................................................................................... 6
  § 12948 ........................................................................................... 10
  § 12963.7 ......................................................................................... 34
  § 12965 ................................................................................... 3, 5, 11
  § 12965(a)(5)(A) ............................................................................. 34
  § 12965(d) ....................................................................................... 34

Ralph Civil Rights Act, Cal. Civ. Code §51.7 ..................................... 10

Unruh Civil Rights Act, Cal. Civ. Code §51 ................................. 10, 30

**CONSTITUTIONAL PROVISIONS**

U.S. Const.
  amend. I ................................................................................... *passim*
  amend. V ..................................................................................... 37, 38
  amend. XIV ............................................................................. *passim*
  art. III, § 2 ................................................................................. 14, 27

**COURT RULES**

Federal Rules of Civil Procedure
  Rule 12(b)(1) ......................................................................... *passim*
  Rule 12(b)(6) ......................................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE COURT AND TO THE PLAINTIFFS' COUNSEL OF RECORD:**

     **PLEASE TAKE NOTICE** that on August 20, 2024, at 1:30 p.m., or as soon thereafter as the Court may hear this matter, Defendant Kevin Kish, Director of the California Civil Rights Department, will and hereby does move to dismiss this action pursuant to the *Younger* abstention doctrine or, in the alternative, under Federal Rule of Civil Procedure 12(b)(1) because no Plaintiff has standing to pursue this matter and any Equal Protection Clause claims Plaintiffs Iyer and Kompella may have had are moot, and Rule 12(b)(6) on the grounds that the complaint fails to state a claim upon which relief can be granted.  Pursuant to the Court's Standing Order in Civil Cases (ECF No. 3-1), the hearing will be held by Zoom.

     Counsel for the parties met and conferred by phone and videoconference on December 12, 2023, and January 30, May 16, and May 17, 2024 for a combined total of approximately three hours to discuss Plaintiffs' claims and the substance of this motion.  (Declaration of Carly J. Munson in Support of Motion to Dismiss First Amended Complaint and Request for Judicial Notice ¶¶ 5-9).  Counsel have also communicated by email and have been unable to reach an agreement as to the issues presented herein.  (*Id.* ¶¶ 8-9).  Defendant Kish certifies, through counsel, that meet and confer efforts have been exhausted and accordingly refers this matter to the Court for resolution.  (*Id.* ¶¶ 5-9).

     This motion is based on this Notice of Motion and Motion to Dismiss; the accompanying Memorandum of Points and Authorities; the accompanying Request for Judicial Notice; the accompanying Declaration of Carly J. Munson, counsel for Defendant Kish, and the exhibits thereto; all pleadings and papers on file in this action; and such other matters as the Court may deem appropriate.

/

/

/

/

/

1   Dated:  May 20, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

ROB BONTA
Attorney General of California
MICHAEL NEWMAN
Senior Assistant Attorney General
WILLIAM H. DOWNER
Supervising Deputy Attorney General

/s/ Carly J. Munson

CARLY J. MUNSON
JENNIFER M. SOLIMAN
Deputy Attorneys General
*Attorneys for Defendant Kevin Kish,*
*Director of the California Civil Rights*
*Department*

2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3   In October 2020, the California Civil Rights Department ("CRD" or "the Department")

4 exercised its statutory authority under the Fair Employment and Housing Act ("FEHA") to

5 initiate an enforcement action in state court on behalf of Mr. Chetan Narsude against his

6 employer Cisco Systems, Inc. ("Cisco") and two of its supervisors, now-Plaintiffs Sundar Iyer

7 and Ramana Kompella.  The Department's state court action alleges that Mr. Narsude has

8 suffered discrimination, harassment, and retaliation based on his Dalit caste, in violation of the

9 FEHA's prohibition against discrimination and harassment based on national origin/ethnicity,

10 ancestry, race/color, and religion.  (*See* ECF No. 21, Exhibit ("Exh.") A, CRD Employment

11 Discrimination Complaint Against Cisco Systems[1]; *see also* Cal. Gov't Code § 12965).[2]  Nearly

12 two years after the Department filed its suit against Cisco (referred to hereinafter as the "State

13 Action" or "*CRD v. Cisco*"), Plaintiff Hindu American Foundation ("HAF") filed this federal

14 action against the Department's Director, Kevin Kish, under section 1983 of Title 42 of the

15 United States Code ("Section 1983"), alleging that the Department's efforts to remedy caste-

16 based discrimination at Cisco violate the United States Constitution's Free Exercise Clause of the

17 First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth

18 Amendment by linking the practice of caste discrimination to Hinduism.  Through this suit, HAF

19 sought to have this Court declare the Department's state suit against Cisco unconstitutional and

20 enjoin the Department from pursuing certain types of future employment discrimination actions,

21 in contravention of its statutory mandate.  *See, e.g.*, Gov't Code § 12930(f)(1).

22   Director Kish filed a motion to dismiss this action under Federal Rule of Civil Procedure

23 12(b)(1) and (b)(6) because HAF failed to plead facts showing that it had standing to bring this

24 lawsuit and failed to state a claim.  (ECF No. 8).  On August 31, 2023, this Court granted

25   [1] Plaintiffs' Exhibit A to its First Amended Complaint (ECF No. 21 at 37-56) is the original
complaint filed by the Department against Cisco in Santa Clara County Superior Court in October 2020.

26 However, the Department has since amended its complaint twice.  (*See* Declaration of Carly J. Munson in
Support of Motion to Dismiss First Amended Complaint and Request for Judicial Notice ("Munson

27 Decl.") ¶ 10).  For the Court's convenience, Defendant Kish has provided the operative complaint in *CRD
v. Cisco* with his concurrently filed Request for Judicial Notice.  (Munson Decl., Exh. C).

28   [2] Unless otherwise noted, all references are to current California state laws and regulations.

1    Defendant Kish's motion based on HAF's lack of standing and dismissed HAF's suit in its

2    entirety pursuant to Rule 12(b)(1) but granted HAF an opportunity to amend its complaint to

3    correct the deficiencies.  (ECF No. 20 at 20).

4         On September 21, 2023, HAF filed its First Amended Complaint ("FAC"), adding nine

5    new individual plaintiffs (collectively the "Individual Plaintiffs")—including three unnamed

6    "Doe" plaintiffs whose identities are unknown to the Department and Director Kish—and two

7    new claims under the United States Constitution's Establishment Clause of the First Amendment

8    and Equal Protection Clause of the Fourteenth Amendment.  (ECF No. 21).  However, the crux of

9    Plaintiffs' complaint—disagreement with the Department's efforts to enforce the FEHA and

10   remedy caste-based discrimination through the State Action—remains the same.  HAF's amended

11   complaint, which offers generalizations and conclusory assertions instead of factual allegations

12   supporting its theories of standing and claims, fails to cure the fatal defects in its suit.  This action

13   continues to lack merit and should be dismissed without further leave for opportunity to amend.

14        First, *Younger v. Harris*, 401 U.S. 37, 54 (1971), requires that this Court abstain from

15   hearing Plaintiffs' constitutional claims because Plaintiffs have had an opportunity to raise their

16   claims—and indeed have raised their constitutional claims in a motion to intervene—in the

17   ongoing State Action.  And since Plaintiffs seek only declaratory and injunctive relief, such

18   abstention warrants dismissal.  Second, Plaintiffs' claims must be dismissed pursuant to Rule

19   12(b)(1) because not one Plaintiff has standing to pursue this matter.  None of the Plaintiffs have

20   suffered or face imminent threat of a real and concrete injury-in-fact, let alone one reasonably

21   traceable to *CRD v. Cisco* and redressable by this suit.  And HAF has failed to cure its

22   organizational standing deficiencies previously addressed by this Court.  Third, Plaintiffs Iyer's

23   and Kompella's Equal Protection Clause claims must be dismissed pursuant to Rule 12(b)(1)

24   because they are moot.  Both Plaintiffs were dismissed with prejudice from *CRD v. Cisco* prior to

25   their joining this suit, leaving no other relief the Court could hypothetically grant for these claims.

26   Fourth, even if Plaintiffs could establish standing—and they cannot—the lawsuit must be

27   dismissed under Rule 12(b)(6) because, despite HAF having had an opportunity to amend, and in

28   doing so joined the Individual Plaintiffs, all Plaintiffs have failed to state a viable claim for relief.

1   Plaintiffs again omit key elements and raise claims that lack any cognizable legal theory.

2   Moreover, Plaintiffs' claims are supported by vague, hypothetical, and speculative allegations

3   insufficient to meet the pleading standard.  And even if Plaintiffs could plead facts sufficient to

4   give rise to viable claims—they cannot—the crux of their complaint falls within matters properly

5   subject to prosecutorial discretion and not well-suited for judicial review.  Accordingly,

6   Plaintiffs' suit must be dismissed and without leave to amend, as any further opportunities to

7   amend would be futile.

8                                      **BACKGROUND**

9   **I.    THE PARTIES**

10          Defendant Kevin Kish is the Department's Director.  The Department is a state agency

11  charged with enforcing California's civil rights laws, including the FEHA, which the Legislature

12  has declared to be "an exercise of the police power of the state for the protection of the welfare,

13  health, and peace of the people of [California]."  Gov't Code § 12920.  The FEHA empowers the

14  Department to receive, investigate, conciliate, and litigate complaints that allege violations of the

15  laws that are within the broad scope of its jurisdiction.  Gov't Code §§ 12930(f), 12965.

16          Plaintiff HAF describes itself as the largest Hindu "educational and advocacy institution" in

17  the nation.  (ECF No. 21 ¶¶ 1, 30).  HAF alleges that it has various "members," "supporters," and

18  "constituents," some of whom reside or work in California.  (*Id.* ¶¶ 33-38, 40, 44).

19          In addition to HAF, nine Individual Plaintiffs have been added to this lawsuit since the

20  Court dismissed HAF's original complaint with leave to amend.  Plaintiffs Samir Kalra and

21  Sangeetha Shankar practicing Hindu Americans of Indian descent who reside in California and

22  work for HAF.  (*Id.* ¶¶ 2, 10).

23          Plaintiff Dr. Mihir Meghani is a co-founder of HAF and is a practicing Hindu American of

24  Indian descent who works as an emergency room physician in California.  (*Id.* ¶ 8).  Plaintiff

25  Dilip Amin states is a practicing Hindu American of Indian descent who lives in California.  (*Id.*

26  ¶ 12).  Doe Plaintiffs One, Two, and Three (collectively, the "Doe Plaintiffs;" individually "Doe

27  One," "Doe Two" and "Doe Three") allege that they are Hindu Americans of South Asian

28

1  descent who work in the "technology sector" and reside in California.  (ECF No. 21 ¶¶ 21-23).[3]

2        Plaintiffs Sundar Iyer and Ramana Kompella are former defendants in *CRD v. Cisco*.  (ECF

3  No. 21, Exh. A; Munson Decl., Exhs. H, I).  Mr. Iyer is an American of Indian descent who

4  resides in California, but no longer works at Cisco, and does not practice Hinduism or any other

5  organized religion.  (ECF No. 21 ¶¶ 15, 20).  Mr. Kompella is a practicing Hindu American of

6  Indian descent who resides in California and continues to work at Cisco.  (ECF No. 21 ¶¶ 17, 20).

7        HAF alleges that the nine new Individual Plaintiffs are "typical members" of HAF.  (*Id.* ¶

8  42).  However, none of the Individual Plaintiffs provide facts regarding their "membership."  (*Id.*

9  ¶¶ 1-20).  Similarly, other than Ms. Shankar and Mr. Kalra who are HAF employees (*id.* ¶¶ 2,

10  20), the remaining seven Individual Plaintiffs do not provide any information about their current,

11  specific connections to, or any roles within, the organization.  (*Id.* ¶¶ 8-9, 12-23).

12  **II.  THE DEPARTMENT'S ONGOING EFFORTS TO REMEDY WORKPLACE DISCRIMINATION AND HARASSMENT AGAINST DALIT WORKERS AT CISCO**

13

14        After receiving and investigating a complaint by one of Cisco's workers, Mr. Narsude, the

15  Department filed an employment discrimination action against Cisco and two of its supervisors—

16  Mr. Iyer and Mr. Kompella—in Santa Clara County Superior Court in October 2020.[4]  (*See*

17  Munson Decl., Exh. C, ¶¶ 11-17, 28; ECF No. 21, Exh. A).  The Department's pending lawsuit

18  against Cisco alleges that Cisco subjected Mr. Narsude to discrimination, harassment, and

19  retaliation based on his status as a Dalit Indian in violation of the FEHA.  (*See, e.g.*, Munson

20  Decl., Exh. C, ¶¶ 1, 4, 28, 48, 53-54, 62-64).

21        The Department seeks compensatory and punitive damages for Mr. Narsude, including

22  back pay, as well as injunctive relief to eradicate "discrimination and harassment based on

23  religion, ancestry, national origin/ethnicity, and race/color" against Dalit Indians at Cisco.  (*Id.* at

24  18-19).  The Department also seeks changes to Cisco's "policies, practices, and programs that

25      [3] As discussed in the Department's concurrently filed Opposition to Doe Plaintiffs' Motion to Proceed Under Pseudonyms, Doe Plaintiffs have not disclosed their identities to Director Kish or his

26  counsel, and have not met and conferred regarding their request to proceed under pseudonyms.  (*See* ECF Nos. 40, 40-1).  Accordingly, like the Court, Director Kish has very limited information regarding the Doe

27  Plaintiffs.  (*See* ECF No. 21 ¶¶ 21-23).
    [4] Supervisors can be held individually liable for harassment under the FEHA.  *See* Gov't Code §§

28  12926(t), 12940(j).

1    provide equal employment opportunities for individuals regardless of their religion, ancestry,

2    national origin/ethnicity, and race/color" to eradicate the effects of Cisco's "past and present

3    unlawful employment practices."  (*Id.*)

4         The two Cisco supervisors, Mr. Iyer and Mr. Kompella, sought to be dismissed from the

5    Department's state suit.  Pursuant to a settlement with Mr. Iyer and Mr. Kompella, the

6    Department voluntarily dismissed its claims against the two supervisors on April 11, 2023.

7    (Munson Decl., Exhs. A at 2:11-13, 5:8-10, H, I).

8         On January 7, 2021, HAF filed a motion to intervene in the Department's State Action.

9    (*See* ECF No. 10-1, Exh. B, HAF Mot. to Intervene and Complaint in Intervention).  The

10   allegations raised in this federal complaint—that the Department conflates or improperly

11   attributes the caste system to Hinduism—are virtually identical to those HAF raised in its motion

12   for leave to intervene.  (*See id.* at 1-9).  After hearing argument in November 2023, the Superior

13   Court denied HAF's motion for leave to intervene on January 31, 2024.  (Munson Decl., Exh. E).

14   HAF filed a notice of appeal, but abandoned its appeal on May 1, 2024.  (*Id.*, Exhs. F, G).

15        Following the Superior Court's denial of HAF's motion for leave to intervene and denial of

16   the Department's motion to use a fictitious name to refer to Mr. Narsude, and with the permission

17   of the court, the Department amended its state complaint to: (1) remove all claims against Mr.

18   Iyer and Mr. Kompella; (2) identify the Department's complainant, Mr. Narsude, by name; and

19   (3) remove the statement "As a strict Hindu social and religious hierarchy, India's caste system

20   defines a person's status based on their religion, ancestry, national origin/ethnicity, and

21   race/color—or the caste into which they are born—and will remain until death" as well as the

22   corresponding citation to the Human Rights Watch report.  (*Id.*, Exhs. A-C).  This 20-page second

23   amended complaint, which is the operative complaint in the State Action, references Hinduism

24   only once – noting that Mr. Narsude identifies as Hindu.  (*Id.*, Exh. C, ¶ 29).  As before, the

25   Department's complaint links Mr. Narsude's own caste to multiple identity vectors, not just his

26   religion.  (*Id.* at 2 fn. 1, ¶¶ 1, 48, 53-54, 62-64).

27

28

1    On April 26, 2024, Cisco—the only remaining defendant in the State Action—filed its

2 answer to the Department's Second Amended Complaint.  (Munson Decl. ¶ 10).  This matter is

3 ongoing in the Santa Clara County Superior Court.  (*Id.* ¶¶ 4, 10).

4                                    **LEGAL STANDARD**

5    Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of

6 subject matter jurisdiction."  A Rule 12(b)(1) motion can challenge the sufficiency of the

7 pleadings to establish jurisdiction (facial attack), or a lack of any factual support for the subject

8 matter jurisdiction regardless of the pleading's sufficiency (factual attack).  *Safe Air for Everyone*

9 *v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing to *White v. Lee*, 227 F.3d 1214, 1242 (9th

10 Cir. 2000).  Although the Court generally resolves a facial attack on the pleadings under Rule

11 12(b)(1) by "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in

12 the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to

13 invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

14 Moreover, the Court need not assume the truth of legal conclusions cast in the form of factual

15 allegations.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  And

16 the Court may look beyond the complaint to consider documents, such as relevant pleadings in

17 *CRD v. Cisco*, that are proper subjects of judicial notice.  *See Carpenter v. OneWest Bank, FSB*,

18 No. 12-cv-00895-MMM-OP, 2012 WL 13012420, at *2 (C.D. Cal. Apr. 25, 2012); *see also Leite*,

19 749 F.3d at 1121; *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

20 Plaintiffs, rather than the moving party, have the burden of establishing jurisdiction.  *See*

21 *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

22    Rule 12(b)(6), in turn, requires a complaint to be dismissed if it fails to state a claim upon

23 which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient

24 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

25 *v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is "plausible" if a plaintiff pleads facts which

26 "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

27 alleged."  *Id.* at 678.  A "threadbare recital[] of the elements of a cause of action, supported by

28 mere conclusory statements, do[es] not suffice."  *Id.*  In ruling on a motion to dismiss, the court

8

1    may consider documents referenced in the complaint as well as matters subject to judicial notice.

2    *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

3                                          **ARGUMENT**

4    **I.    THE *YOUNGER* ABSTENTION DOCTRINE REQUIRES THAT THE COURT ABSTAIN
           FROM HEARING PLAINTIFFS' CLAIMS AND DISMISS THE SUIT**

5

6           The *Younger* abstention doctrine directs federal courts to abstain from granting injunctive

7    or declaratory relief that would interfere with pending state judicial proceedings.  *Hirsh v.*

8    *Justices of the Sup. Ct. of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995) (citing *Younger v.*

9    *Harris*, 401 U.S. 37, 40–41 (1971)).  Absent "extraordinary circumstances," abstention in favor of

10   state judicial proceedings is required if the state proceedings take the form of a criminal

11   prosecution or civil proceedings that are akin to prosecutions, *New Orleans Pub. Serv., Inc. v.*

12   *Council of New Orleans (NOPSI)*, 491 U.S. 350, 367-68 (1989), and: (1) are ongoing, (2)

13   implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate

14   federal claims.  *Hirsh*, 67 F.3d at 712 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar*

15   *Ass'n*, 457 U.S. 423, 432 (1982)).  In addition, the Ninth Circuit has "articulated an implied

16   fourth requirement that: (4) the federal court action would 'enjoin the proceeding, or have the

17   practical effect of doing so.'"  *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 882

18   (9th Cir. 2011) (citation omitted).  Courts may resolve threshold issues such as *Younger*

19   abstention before addressing jurisdictional questions under Rule 12(b).  *See, e.g., Steel Co. v.*

20   *Citizens for Better Env't*, 523 U.S. 83, 100 n.3 (1998); *Tenet v. Doe*, 544 U.S. 1, 6-7 n.4 (2005).

21          Abstention is appropriate based on "interests of comity and federalism [that] counsel

22   federal courts to abstain from jurisdiction whenever federal claims could have been or could be

23   presented in ongoing state judicial proceedings that concern important state interests."  *Lebbos v.*

24   *Judges of the Super. Ct.*, 883 F.2d 810, 813 (9th Cir. 1989).  "Where vital state interests are

25   involved, a federal court should abstain 'unless state law clearly bars the interposition of the

26   constitutional claims.'"  *Middlesex*, 457 U.S. at 432 (quoting *Moore v. Sims*, 442 U.S. 415, 426

27   (1979)).  This case meets each of the criteria warranting abstention.

28

                                                   9

**A.    The Department's Pending Enforcement Action Against Cisco in State Court is the Civil Equivalent of a Criminal Prosecution and, Therefore, Falls Under the Second *NOPSI* Category**

The Department's ongoing State Action is a "civil enforcement proceeding" akin to a criminal prosecution in "important respects" and warrants *Younger* abstention.  *NOPSI*, 491 U.S. at 368 (citing, e.g., *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).  Such proceedings are characteristically formal complaints or charges filed by a state sovereign or actor following an investigation to challenge some wrongful act.  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79-80 (2013) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.* 477 U.S. 619, 624 (1986); *Middlesex*, 457 U.S. at 433-34).

*CRD v. Cisco* is such a civil proceeding that is akin to a criminal prosecution under *NOPSI*.  As discussed above, the Department is charged with enforcing California's civil rights laws, including the FEHA, which the Legislature has declared to be "an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of [California]."  Gov't Code § 12920.  The central purpose of the FEHA is to prevent, eliminate, and remedy discrimination in employment, housing, and other aspects of daily living.  Gov't Code §§ 12920-21, 12930 & 12948 (incorporating the Unruh Civil Rights Act, the Ralph Civil Rights Act, and Government Code § 11135 into the FEHA and CRD's enforcement authority); *see also Harris v. City of Santa Monica*, 56 Cal. 4th 203, 223-24 (2013).  Accordingly, courts have acknowledged that, like criminal prosecutors, the Department "'is a public prosecutor testing a public right,' when it pursues civil litigation to enforce statutes within its jurisdiction."  *Dep't of Fair Emp. & Hous. v. Law Sch. Admission Council, Inc.*, 941 F. Supp. 2d 1159, 1168 (N.D. Cal. 2013) (quoting *State Pers. Bd. v. Fair Emp. & Hous. Comm'n*, 39 Cal. 3d 422, 444 (1985)).

In this case, the Department received a complaint from Mr. Narsude that alleged his employer, Cisco, was discriminating against him in violation of state laws.  (*See* Munson Decl., Exh. C ¶ 11; *see also* Gov't Code § 12930(f)(1)).  After investigating Mr. Narsude's complaint, the Department exercised its authority as a public prosecutor when it initiated the pending state enforcement, *CRD v. Cisco*, to remedy Cisco's alleged discrimination, harassment, and retaliation against Mr. Narsude based on his status as a Dalit Indian in violation of the FEHA.  (*See* Munson

10

1    Decl., Exh. C ¶¶ 12-16; *see also* Gov't Code § 12965).  This is *precisely* the type of civil

2    enforcement proceeding that resembles a criminal prosecution under *NOPSI* and warrants

3    *Younger* abstention.

4         **B.    The Four Additional Factors for *Younger* Abstention Are Also Satisfied**

5         The four additional factors for *Younger* abstention are also satisfied here.  First, *CRD v.*

6    *Cisco* was initiated prior to this federal action and remains active and ongoing in Santa Clara

7    County Superior Court.  (*See* ECF No. 21, Exh. A; *CRD v. Cisco*, Case No. 20-cv-3722366

8    (Santa Clara Cnty. Super. Ct.)).

9         Second, *CRD v. Cisco* implicates the important state interest of eliminating discrimination

10   within the State.  *See Dayton Christian Schools,* 477 U.S. at 628 (recognizing "the elimination of

11   prohibited sex discrimination is a sufficiently important state interest").  Indeed, California has its

12   own anti-discrimination statute to interpret and enforce in its action against Cisco.  *See,*

13   *e.g.*, Gov't Code § 12920, et seq. (it is "the public policy of [California] that it is necessary to

14   protect and safeguard the right and opportunity of all persons to seek, obtain, and hold

15   employment without discrimination or abridgement on account of race, religious creed, color,

16   national origin, [or] ancestry," among other characteristics.)  Moreover, where—as here—"the

17   state is in an enforcement posture in the state proceedings, the 'important state interest'

18   requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is

19   presumptively at stake."  *Potrero Hills Landfill, Inc.*, 657 F.3d at 883-84.

20        Third, *all* Plaintiffs have had an adequate opportunity to raise their constitutional claims in

21   the State Action, which has been pending for three and-a-half years.  Under *Younger*, federal

22   litigants such as Plaintiffs need only be afforded an *opportunity* to fairly pursue their

23   constitutional claims in the ongoing state proceedings.  *Moore*, 442 U.S. at 430 & n. 12 (quoting

24   *Juidice v. Vail*, 430 U.S. 327, 337 (1977).  Success on the merits of those claims is immaterial; it

25   matters only that litigants have an opportunity to make their argument.  *See Dubinka v. Judges of*

26   *Super. Ct. of State of Cal. for Cnty. of L.A.*, 23 F.3d 218 (9th Cir. 1994).

27        Plaintiffs—not the Department—bear the burden of demonstrating that California law

28   procedurally bars or prevents them from presenting their constitutional claims in the pending state

court matter.  *Id.* at 14-16; *see also Lebbos*, 883 F.2d at 815.  Here, Plaintiff HAF brought its

constitutional challenges to the Department's State Action in state court via a motion to intervene

in the State Action.  (ECF No. 10-1, Exh. B (HAF Motion to Intervene and Complaint in

Intervention); Munson Decl., Exh. D (Reply in Support of HAF's Motion to Intervene)).  When

the trial court denied HAF's request to intervene on the merits (Munson Decl., Exh. E), HAF had

the opportunity to appeal and it initiated such an appeal in March 2024 (*id*., Exh. F).  HAF then

elected to *voluntarily abandon* its efforts to intervene to have the constitutional claims presented

here heard in the State Action (*id.*, Exh. G) once it became clear that the Second Amended

Complaint had been accepted (*see* ECF No. 33 ¶ 9).

   As to the Individual Plaintiffs, the Court should presume that they, like HAF, had an

opportunity to present their claims in the State Action.  The Individual Plaintiffs all claim to be

aligned with, or members of, proposed-intervenor HAF.  Moreover, "when a litigant has not

attempted to present his federal claims in related state-court proceedings, a federal court should

assume that state procedures will afford an adequate remedy, in the absence of unambiguous

authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

   Fourth, *Younger* abstention is appropriate because allowing this action to proceed would

interfere with and effectively enjoin *CRD v. Cisco*.  In their FAC, Plaintiffs specifically ask to

have the Department's actions in *CRD v. Cisco* declared unconstitutional under the First and

Fourteenth Amendments and enjoin further action.  (ECF No. 21 at 35:9-13).  Such an order

would directly intrude on the Superior Court's jurisdiction over the ongoing State Action.  This

Court should refrain from interfering with or enjoining the ongoing State Action.

   **C.    As Plaintiffs Seek Only Injunctive and Declaratory Relief, *Younger* Abstention Warrants Dismissal**

   When a court abstains under *Younger*, claims for injunctive and declaratory relief are

typically dismissed, whereas claims for damages are stayed.  *Herrera v. City of Palmdale*, 918

F.3d 1037, 1042 (9th Cir. 2019).  Here, Plaintiffs seek only injunctive and declaratory relief.  (*See*

ECF No. 21 at 35).  Accordingly, the Court should abstain under *Younger* and dismiss all of

Plaintiffs' claims.

**II.    PLAINTIFFS' FIRST AMENDED COMPLAINT MUST BE DISMISSED BECAUSE THEY LACK STANDING TO PURSUE THIS LITIGATION**

Standing is a jurisdictional requirement that the party invoking federal jurisdiction has the burden of establishing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 560 (citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court.'" *Id.* (citations and ellipsis omitted, alterations in original). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id.* at 561 (citations omitted). These constitutional requirements are "rigorous." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982).

Here, Plaintiffs fail the standing requirement at every step of the inquiry. No matter how liberally the Court construes it, the FAC is devoid of any allegations that the Individual Plaintiffs have suffered a "concrete and particularized" injury that could be traced to anything the Department did or failed to do. And HAF has neither demonstrated that it has suffered the kind of forced redeployment of resources required to have standing in its own right, nor clearly articulated a "constituency" on whose behalf it can fairly speak in this matter, let alone that HAF is experiencing the requisite direct harm caused by the Department's State Action. The Court therefore lacks subject-matter jurisdiction over Plaintiffs' claims. *See Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000) (stating that standing is a jurisdictional issue).

**A.    Plaintiffs Do Not Have Direct Standing to Pursue this Litigation**

**1.    Plaintiffs have not demonstrated that they have suffered cognizable injuries-in-fact as a result of *CRD v. Cisco***

Plaintiffs allege that they have suffered three types of injuries as a result of the Department's actions in *CRD v. Cisco*. First, the Individual Plaintiffs allege that they have standing to challenge *CRD v. Cisco* because they have experienced various psychological and

13

1   spiritual harms as a result of their knowledge of the suit or discussions with third-parties.  Second,

2   Mr. Iyer and Kompella further allege that they have suffered reputational harm as a result of

3   being former defendants in the State Action.  Third, HAF alleges that it has suffered direct injury

4   because its staff have allegedly been maligned by the State Action and it has had to spend time

5   and resources educating people about Hinduism since the State Action was filed.  None of these

6   alleged injuries rise to the level of a cognizable injury-in-fact—let alone one redressable through

7   any relief the Court could order through this lawsuit—thus no Plaintiff has established direct

8   standing to bring this suit.

9                    **a.    Individual Plaintiffs' alleged psychological and spiritual harms**
                              **are not a cognizable injuries-in-fact under any claim presented**
10

11          The FAC alleges that the Department is pursuing enforcement actions under the FEHA that

12   "wrongly assert" that "a caste system and caste-based discrimination are integral parts of Hindu

13   teachings and practices."  (ECF No. 21 at 2).  As a result of their awareness of *CRD v. Cisco* and

14   resulting conversations with third-parties, the Individual Plaintiffs allege that they have generally

15   experienced psychological and spiritual discomforts, including fears about the future.  (*See, e.g.,*

16   *id.* ¶¶ 9, 11, 13-14, 21-23).

17          Yet apart from conclusory allegations, conjecture, and expressions of personal offense—

18   which the Court need not accept as true—the FAC offers no plausible factual basis showing they

19   suffered injury under the Free Exercise, Establishment, Due Process, or Equal Protection Clauses

20   connected to the Department's actions such that they would have standing to maintain this action

21   in federal court.  *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523–25 (9th

22   Cir. 2023) (holding that, under *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), "[a]t the

23   pleading stage, plaintiffs must clearly allege facts demonstrating each element" of Article III

24   standing and that the *Iqbal*, 556 U.S. 662, pleading standards therefore apply in assessing the

25   facial adequacy of allegations of standing); *see also Namisnak v. Uber Techs., Inc.*, 971 F.3d

26   1088, 1092 (9th Cir. 2020).  Moreover, psychological and spiritual harms alone—allegedly

27   arising out of the Department's actions or engaging in conversations with other third-parties

28   outside of the Department's control—are insufficient to convey standing under the claims

                                                   14

1  asserted.  *See Or. Prescription Drug Monitoring Program v. United States Drug Enf't Admin.*,

2  860 F.3d 1228, 1233 (9th Cir. 2017) ("'[T]he standing inquiry requires careful judicial

3  examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to

4  an adjudication of the *particular claims* asserted.'" (emphasis in original, citation omitted)).

5  First, to establish a violation of the Free Exercise Clause, a plaintiff must prove that a

6  government action had a coercive effect on their practice of religion.  *See, e.g.*, *Bd. of Educ. of*

7  *Cent. Sch. Dist. v. Allen*, 392 U.S. 236, 249 (1968) (finding no free exercise violation since the

8  plaintiffs had "not contended that the [statute in question] in any way coerce[d] them as

9  individuals in the practice of their religion."); *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th

10  867, 890 (9th Cir. 2022) (requiring when the challenged government action is neither regulatory,

11  proscriptive or compulsory, alleging a subjective chilling effect on free exercise rights is not

12  sufficient to constitute a substantial burden).  Yet Plaintiffs' FAC is devoid of allegations that the

13  Department's State Action has constrained *any* Individual Plaintiffs' ability to practice—or not

14  practice—their religion.[5]  And all of the Individual Plaintiffs state that they disavow the very

15  activity CRD seeks to redress in *CRD v. Cisco*: caste-based discrimination.  (*Id.* at 3:24-26).

16  Accordingly, the State Action poses no plausible imminent threat of harm to the Individual

17  Plaintiffs' religious practice, a practice that they themselves allege does not involve the conduct

18  that the Department seeks to stop.  *See Kumar v. Koester*, 683 F. Supp. 3d 1108, 1115-16 (C.D.

19  Cal. 2023) (finding that Hindu plaintiffs who were university professors lacked standing to assert

20  a Free Exercise Clause challenge to the use of "caste" in the university's anti-discrimination

21  policy because the plaintiffs "emphatically denounce[d] the caste system and reject[ed] the notion

22  that it is part of their religion" and thus the policy did "not threaten any of [p]laintiffs' rights to

23  practice their religion").  This Court has already indicated in dismissing HAF's original complaint

24  that there is no standing to bring a free exercise claim based on the challenged conduct (wrongly

25  defining Hinduism "to include an abhorrent practice of discrimination") absent an allegation that

26  this mis-definition "burdens, operates against, or otherwise infringes on the practice of Hinduism

---

27  [5] Moreover, Mr. Iyer states that he does not believe or practice any religion and for that reason

28  alone has no standing to bring a free exercise claim.  (ECF No. 21 ¶ 15).  By contrast, the other Individual Plaintiffs state that they practice Hinduism.  (*Id.* ¶¶ 2, 8, 10, 12, 17, 21-23).

by any individual." (ECF No. 20 at 15-16 (quoting ECF No. 1 ¶ 29)). Thus, Plaintiffs lack standing to bring free exercise claims.

Plaintiffs also allege in conclusory fashion that the Department has somehow "imposed special disabilities on Hindu Americans" by wrongly associating a caste system with Hinduism. (ECF No. 21 ¶¶ 95-96). Laws that target religious observers and subject them to different treatment based on their religious status—creating so-called "special disabilities"—may violate the Free Exercise Clause. *See Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 473-76 (2020). However, Plaintiffs have alleged no specific facts showing that the Department has or is treating the eight Individual Plaintiffs who practice Hinduism differently from others who do not practice a religion. On the contrary, the Department's suit seeks to ensure that Cisco's workers are afforded their rights as guaranteed by the FEHA *regardless* of their religion, ancestry, national origin/ethnicity, and race/color. (*See, e.g.*, Munson Decl., Exh. C at 18-19).

Second, to establish a claim under the Establishment Clause, plaintiffs who rely on psychological and spiritual harms must show that those harms are tied to real consequences in their particular political community. *Catholic League for Religious & C.R. v. City & Cnty. of S.F.*, 624 F.3d 1043, 1051-53 (9th Cir. 2010). Psychological consequences produced by mere observation of or disagreement with a government's actions are not injuries sufficient to confer standing under the Establishment Clause. *Id.*; *see also Valley Forge Christian Coll.*, 454 U.S. at 485-86.

Relying on *Catholic League*, the Individual Plaintiffs contend that the psychological and spiritual injuries they have sustained from *CRD v. Cisco* suffice to confer standing in this case. (ECF No. 21 ¶¶ 7, 40 (citing *Catholic League*, 624 F.3d at 1049)). Yet *Catholic League* is unavailing. In that case, a Catholic civil rights organization had standing to challenge a Board of Supervisors' resolution because the specific psychological harm its members or constituents allegedly suffered as a result—"exclusion or denigration on a religious basis"—was both within their own "political community" of San Francisco and supported by extensive and detailed factual

allegations, including supporting declarations. *Id.* at 1051-53.[6]  Here, by contrast, the FAC is devoid of facts demonstrating that Individual Plaintiffs belong to an analog "political community" or that their access to and inclusion in that "political community" has been chilled or curtailed in any way, let alone chilled due to the Department's actions in *CRD v. Cisco*.[7]  Although the Plaintiffs allege in conclusory form that they have been "denigrated" and treated like "second-class citizens," the FAC provides no concrete examples of such denigrating treatment nor how it is fairly traceable to Director Kish and the Department.[8]  The Individual Plaintiffs are thus distinctly unlike the plaintiffs in *Catholic League*—a discrete group of devout Catholics who lived in San Francisco and thus were directly affected by the San Francisco government's resolution about their religion—and have not demonstrated the requisite concrete harm for standing under the Establishment Clause.

Third, to bring a pre-enforcement void for vagueness challenge under the Due Process Clause, a plaintiff must show that the law being challenged has "'chilled [their ability to] engag[e] in constitutionally protected activity.'"  *Montclair Police Officers' Ass'n v. City of Montclair*, No. 2:12-cv-06444-PSG-PLA, 2012 WL 12888427, at *4 (C.D. Cal. Oct. 24, 2012) (quoting *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1350 (11th Cir. 2011)).  Thus, to have standing, a plaintiff must allege injury in the form of a chilling effect.  Yet the Individual Plaintiffs have failed to allege *any* activity that has been chilled by the Department's efforts in the State Action, let alone a constitutionally protected activity.  (*See* ECF No. 21 ¶¶ 101-112).

Moreover, the only injury to which the Individual Plaintiffs allude in their void for

---

[6] Nevertheless, though a split panel held the organization had standing, as discussed below, there was no Establishment Clause violation. *Catholic League*, 624 F.3d at 1048, 1051-53.

[7] At most, Individual Plaintiffs all allege that they are Californians. (*See* ECF No. 21 ¶¶ 2, 8, 10, 12, 15, 17, 21-23).  But the entire state of California is not a discrete "political community" as contemplated under *Catholic League*.  *See Catholic League*, 624 F.3d at 1048, 1051-53 ("Had a Protestant in Pasadena brought this suit [regarding the San Francisco Board of Supervisor's resolution about the Catholic Church], he would not have had standing.").  And, in any case, Plaintiffs do not—and cannot plausibly—allege that the State Action has had any direct consequences on the entire state of California; Cisco is the only entity in California that is subject to the State Action.

[8] A few Individual Plaintiffs allege that they have been "ostracized" or treated poorly by their peers at their workplaces, and that they blame *CRD v. Cisco* for this treatment by third parties.  (ECF No. 21 ¶¶ 9, 22, 23).  But these experiences, too, if substantiated, are not a parallel to the type of harm in *Catholic Charities*, where it was the government's own actions—not those of third-parties outside of the government's control—that allegedly directly denigrated Catholics within the San Francisco community. *Catholic Charities*, 624 F.3d at 1051-1053.

1    vagueness claim is hypothetical and speculative: that the State Action might have the opposite

2    effect and encourage caste-based discrimination.  (ECF No. 21 ¶¶ 109-111).  For example,

3    Plaintiffs continue to speculate that the Department's action against a single California

4    employer—Cisco—will somehow sweepingly "require" all employers "to accommodate an

5    employee's request not to work with someone the employee believes to be of the 'wrong' or

6    different caste" or a "request not to be supervised by, or to supervise, persons perceived to be of

7    the 'wrong' or different caste."  (*Id.* ¶ 109).  The Court has already rejected this hypothetical

8    injury:

9        [T]he notion that the Department's allegations in the state court complaint—a civil rights
         enforcement lawsuit seeking to stop and prevent caste-based discrimination—would
10       somehow lead other Hindu Americans to make religious accommodation requests to
         discriminate against co-workers based on their perceived caste and that employers might
11       then actually grant those requests due to their interpretation of the Department's allegations
         in the Santa Clara action is both highly speculative and seemingly implausible.  Such an
12       attenuated chain of events without connection any individual facing this purported and
         speculative harm is plainly insufficient to establish standing.
13

14   (ECF No. 20 at 14-15, citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 495-96 (2009);

15   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-11 (2013)).  Thus, the Individual Plaintiffs do

16   not have standing to challenge *CRD v. Cisco* under the Due Process Clause.

17       <u>Fourth</u>, to state a claim under the Equal Protection Clause, a plaintiff "must show that the

18   defendants acted with an intent or purpose to discriminate against the plaintiff based upon

19   membership in a protected class," and that the plaintiff was treated differently from persons

20   similarly situated.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *Washington

21   v. Davis*, 426 U.S. 229, 239-40 (1976)); *see Citizens for Fair Representation v. Padilla*, 815 F.

22   App'x 120, 123 (9th Cir. 2020) (holding that the plaintiff lacked standing to assert an equal

23   protection challenge to California's constitutional cap on the number of its state legislative

24   districts as racially discriminatory because "they have not adequately alleged that some votes are

25   weighted less than others based on race").  Plaintiffs' FAC raises two claims under the Equal

26   Protection Clause.  The first alleges that the Department has discriminated against all Individual

27

28

18

1   Plaintiffs on the basis of religion.[9]  The second alleges that the Department has discriminated

2   against Mr. Iyer and Mr. Kompella on the basis of national origin.  Plaintiffs have not pled facts

3   sufficient to have standing under either theory.

4           With regard to religion, the FAC does not allege *any* facts that plausibly suggest that the

5   Department has applied the FEHA in a discriminatory manner against the Individual Plaintiffs—

6   but not as to others—because of their faith and identify the concrete injuries they have suffered as

7   a result.  (*See, e.g.*, ECF No. 21 ¶¶ 101-112).  With regard to national origin, neither Mr. Iyer nor

8   Mr. Kompella have pled facts sufficient to establish standing under the Equal Protection Clause.

9   Mr. Iyer claims that the Department discriminated against him on the basis of national origin by

10  identifying him as Hindu.  (ECF 21 ¶ 129).  First, based on the facts as alleged, it is unclear how

11  incorrectly identifying a person as Hindu causes injury based on that person's national origin.

12  Second, this allegation lacks a basis in fact: the Department did *not* allege that Mr. Iyer was

13  Hindu in *CRD v. Cisco* while he was a defendant.  (*See* ECF No. 21, Exh. A).  Regardless, Mr.

14  Iyer does not allege that the Department has treated anyone of any other national origin

15  differently and thus does not have standing to raise a claim for national origin discrimination

16  under the Equal Protection Clause.  (*See* ECF No. 21 ¶¶ 125-136).

17          Although Mr. Iyer and Mr. Kompella also allege in bare terms that they have experienced

18  vague reputational harm, the FAC contains insufficient facts to substantiate such injuries.  (*See*

19  ECF No. 21, ¶¶ 15-20).  Simply claiming one's reputation has been harmed is insufficient to

20  establish an injury-in-fact for standing.  *See, e.g.*, *Phillips v. United States Customs & Border*

21  *Prot.*, 74 F.4th 986, 992 (9th Cir. 2023) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 438-

22  39 (2021)) (holding no injury where plaintiffs did not demonstrate that the inaccurate credit

23  information allegedly created in violation of federal law posed a tangible harm to the plaintiffs'

24  finances in the future).  And, in any case, the Court need not take Mr. Iyer's and Mr. Kompella's

25

26          [9] Within the context of their discrimination claim based on religion, the Individual Plaintiffs also
    claim that the Department has wrongly identified some Indian Americans as Hindu even though the
27  Department allegedly knows they are not Hindu, and that this constitutes discrimination "against non-
    Hindu Indian Americans *based on national origin*."  (ECF No. 21 ¶ 121).  These allegations do not state a
28  cognizable claim for religious discrimination under the Equal Protection Clause.

                                                    19

1   conclusory allegations of reputational harm at face value.  *See Iqbal*, 556 U.S. at 678; *Sprewell v.*

2   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

3          **b.    HAF has not demonstrated that it has been forced to take**
              **action to avoid other injury as a result of *CRD v. Cisco***
4

5          On amendment, HAF asserts that it has direct standing.  (ECF No. 21 ¶¶ 46-52).  An

6   organization that seeks to establish standing in its own right must show that: (1) the defendant's

7   actions have frustrated its mission; and (2) it has spent resources counteracting that frustration.

8   *Our Watch with Tim Thompson, v. Bonta*, 682 F. Supp. 3d 838, 847 (E.D. Cal. 2023) (citing *Valle*

9   *del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013); *see also E. Bay Sanctuary Covenant*

10  *v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021).  "Frustration of mission cannot just be a setback to an

11  organization's values or interests, it must result in 'an actual impediment to the organization's

12  real-world efforts on behalf of such principles.'"  *Our Watch with Tim Thompson*, 682 F. Supp.

13  3d at 848 (citing *In Def. of Animals v. Sanderson Farms, Inc.*, No. 3:20-cv-05293-RS, 2021 WL

14  4243391, at *3 (N.D. Cal. Sept. 17, 2021)); *cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363,

15  379 (1982) (organization suffered injury-in-fact where the defendant's practices *"perceptibly*

16  *impaired* [the organization's] ability to provide counseling and referral services") (emphasis

17  added).  Relatedly, "organizations cannot 'manufacture the injury by incurring litigation costs or

18  simply choosing to spend money fixing a problem that otherwise would not affect the

19  organization at all[.]'"  *E. Bay Sanctuary Covenant*, 993 F.3d at 663 (quoting *La Asociacion de*

20  *Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)).  Rather, an

21  organizational plaintiff must show they "would have suffered some other injury" had they "not

22  diverted resources to counteracting the problem."  *La Asociacion*, 624 F.3d at 1088.  Thus, "[a]n

23  organization may sue only if it was *forced* to choose between suffering an injury and diverting

24  resources to counteract the injury."  *Id.* at 1088 n.4 (emphasis added).

25          HAF has not pled facts showing that the Department's State Action has frustrated its

26  mission.  (*See* ECF No. 21 ¶¶ 30-32, 46-52).  In its FAC, HAF makes only vague references to its

27  broad mission and to its alleged ordinary activities.  HAF states that it is "an educational and

28  advocacy organization" whose "mission focuses on advancing the understanding of Hinduism to

                                          20

1   secure the rights and dignity of Hindu Americans now and for generations to come." (*Id.* ¶ 30).

2   Its ordinary activities include "work[ing] with state boards of education and publishers to ensure

3   Hinduism is portrayed accurately . . . in textbooks," "educat[ing] policymakers," and "pursu[ing]

4   impact litigation and participa[ting] as *amicus curiae* when the civil rights of Hindu Americans

5   are at risk." (*Id.* ¶¶ 30-31).  Yet the FAC lacks the requisite allegations demonstrating that the

6   Department's State Action has specifically impacted HAF's regular functioning and frustrated its

7   mission.  In fact, the advocacy and educational outreach HAF alleges it has undertaken in

8   response to third-party inquiries about *CRD v. Cisco* as well as HAF's instant federal action

9   appear to fall squarely *within* HAF's stated mission and ordinary activities.  (*See* ECF No. 21 ¶¶

10  30-32, 37-38, 41).  And HAF concedes that the Department's own goal of "[s]topping caste-based

11  discrimination is a worthy goal that directly furthers Hinduism's teachings[.]" (*Id.* at 5:13-14).

12      Even if HAF had adequately alleged cognizable frustration of its mission (it has not), it

13  has still failed the second requirement by failing to allege *any* facts to "show [it] 'would have

14  suffered some other injury' had [it] 'not diverted [] resources to counteracting" the Department's

15  State Action, let alone what that other injury would have been.  *See La Asociacion*, 624 F.3d at

16  1088.  HAF is not subject to the Department's efforts to remedy caste-based discrimination at

17  Cisco.  In fact, the Department has taken no action at all against HAF or its staff.  Further, HAF

18  has not described with any specificity how it has been forced to reallocate resources from its core

19  activities, nor what activities it was prevented from undertaking as a result.  HAF alleges that it

20  has had to spend "considerable time and resources" to "defend the integrity of Hinduism" since

21  the Department filed its State Action (ECF No. 21 ¶ 47), but provides no details as to what this

22  has entailed, other than to state that Mr. Kalra, its Managing Director, has allegedly "spent

23  hundreds of hours . . . responding to media inquiries . . . and developing educational materials for

24  a variety of stakeholders" (*id.* ¶ 4) and that HAF has "faced a barrage of calls and concerns from

25  Hindu Americans living in California" (*id.* ¶ 48).

26      These allegations are insufficient to establish that HAF has only been able to avert injury

27  to itself from the State Action by redirecting its resources, in the manner it has alleged, to

28  counteract that injury.  And, as discussed above, even if it is true that HAF has received calls

1    about *CRD v. Cisco* and spent time creating resource materials about Hinduism as a result, these

2    actions appear to fall within—rather than outside of—their stated ordinary activities.   (*See id.* ¶¶

3    30-32, 37-38, 41).

4              **2.      Plaintiffs' generalized grievances are not redressable**

5             To establish standing, "it must be 'likely,' as opposed to merely 'speculative,' that the

6    [plaintiff's] injury will be 'redressed by a favorable decision.'"   *Lujan*, 504 U.S. at 560-61 (citing

7    *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).   A remedy must "operate with

8    respect to specific parties," not "in the abstract" giving way to a highly attenuated chain of

9    possibilities.  *Cal. v. Tex.*, 593 U.S. 659, 671-72 (2021).   Plaintiffs have not met this standard.

10            Plaintiffs do not allege any facts that establish that a favorable decision is likely to remedy

11   the psychological, spiritual, or reputational harm they allege that they have experienced.   And

12   even if this Court agreed with Plaintiffs' premise that the Department has erred in some way in

13   the State Action, the relief that Plaintiffs seek here would not operate to change the minds of

14   third-parties regarding either Hinduism or caste-based systems.   Instead, without identifying a

15   single, tangible injury, Plaintiffs seek sweeping declaratory and injunctive relief that would

16   effectively halt not only the Department's State Action, but *any* future enforcement action by the

17   Department related to discrimination based on caste status and *all* civil rights enforcement actions

18   concerning a religious or sociological feature.  (*See* ECF No. 21 at 35).   Yet none of the Plaintiffs

19   are parties to *CRD v. Cisco*, nor allege that they are facing an imminent threat of the type of anti-

20   discrimination action they seek to prevent.   Moreover, even if successful in the State Action, the

21   Department does not seek and could not obtain relief that would affect or change the conditions

22   of any non-party individual Hindu American, Indian American, or South Asian American, let

23   alone all such individuals in the United States or California.  (*See* Munson Decl., Exh. C at 18-

24   19).   The state court does not have the jurisdiction to order relief against entities and individuals

25   who are not party to the State Action, such as Plaintiffs.   Accordingly, Plaintiffs have not

26   established that their alleged harm is likely to be redressed by a favorable decision from this

27   Court.

28

**B. HAF Does Not Have Associational Standing to Pursue this Litigation**

HAF also asserts that it has associational standing to bring this lawsuit.  (ECF No. 21 ¶¶ 26-29).  To invoke associational standing, an organization must allege facts demonstrating that: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).  Although formal membership is not always required for organizational standing, a plaintiff-organization that lacks membership must nonetheless establish that it "'is sufficiently identified with and subject to the influence of those it seeks to represent as to have a personal stake in the outcome of the controversy.'"  *Id.* at 1096 (internal citations omitted) (quoting *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003)).  HAF has again failed to meet its burden.  The FAC fails to: (1) identify a clear constituency whose interests HAF can appropriately represent in this suit; and (2) otherwise satisfy the three *Hunt* factors.

**1. HAF has not identified a clear constituency, let alone one that has suffered the requisite injury and whose interests HAF can represent in this suit**

As in its original complaint, HAF alleges that it is the "largest and most respected Hindu educational and advocacy institution in North America."  (ECF No. 21 ¶ 1).  Although HAF has added allegations that vaguely describe its mission and "guiding principles" (*id.* ¶¶ 30, 32) as well as some of its educational and advocacy activities (*see, e.g., id.* ¶¶ 30-31, 37-38, 41), it again has not provided sufficient detail to establish the constituency it purports to represent.  Viewed in the most generous light, HAF appears to allege that it represents all Hindu Americans, Indian Americans (both Hindu and non-Hindu), and South Asian Americans (both Hindu and non-Hindu).  (*Id.* ¶¶ 30, 39, 41, 44-45).  If so, HAF's purported constituency is significantly larger and more diffuse than those that courts have found appropriate for purposes of associational standing.  *See Or. Advocacy Ctr.*, 322 F.3d at 1111-12 (plaintiff's constituency defined as criminal defendants with intellectual disabilities in Oregon); *Am. Unites for Kids*, 985 F.3d at 1096-97 (plaintiff's constituency defined as public school teachers at the Malibu campuses of a school

district); *Catholic League*, 624 F.3d at 1048, 1063-64 (plaintiff's constituency defined as approximately 6,000 devout Catholics in San Francisco).  In each of these cases, the plaintiffs alleged specific facts to show that they served the clearly defined, specialized group that had been or would be directly affected by the government's actions.  HAF has identified no such clear, specialized segment of Hindu Americans, Indian Americans, or South Asian Americans who have cognizable injuries from *CRD v. Cisco*.

Moreover, as in its original complaint, HAF fails to explain how it is "sufficiently identified with and subject to the influence" of the very broad and diffuse range of constituents it seeks to represent in this lawsuit.  *Or. Advocacy Ctr.*, 322 F.3d at 1112.  HAF does not explain, for example, how it is funded, how it is organized, or what interaction it has with its purported constituency beyond accepting donations, conducting largely unspecified education activities, and interacting with select individuals such as "scholars" and "scholar-practitioners."  (*See* ECF No. 21 ¶¶ 30-45).  HAF alleges that it receives guidance from a ten-person "National Leadership Council" and a 17-person "Advisory Committee," some of whom "reside and/or work in California," but it provides no information regarding how contact with these unspecified individuals—or any of its other activities—adequately enables HAF to speak on behalf of an alleged constituency as large as all Hindu Americans, Indian Americans, and South Asian Americans.  (*Id.* ¶¶ 34-35).  HAF also alleges that the Individual Plaintiffs are all "supporters, members, or constituents," but provides no detail to support this allegation.  (*Id.* ¶ 40).[10]  For example, HAF provides no information about which Individual Plaintiffs fall into which category, when or how any of the Individual Plaintiffs became HAF's "members[] or constituents," or how HAF engages with them such that it can represent their interests in this lawsuit.

### 2.    On amendment, HAF has not satisfied the *Hunt* factors for associational standing

Even if HAF had pled facts sufficient to establish that it has a clear constituency on whose behalf it can fairly and adequately speak—it did not—HAF's associational standing fails because

---

[10] And HAF provides no legal authority for the proposition that having undefined "supporters" satisfies the indicia of membership in order to convey organizational standing.  (*See* ECF No. 21).

1   it has not satisfied the other necessary factors.  *See Hunt*, 432 U.S. at 342-43.

2          First, associational standing requires that HAF's individual members or constituents have

3   suffered "injury in fact"—an invasion of a legally protected interest that is: (a) concrete and

4   particularized; and (b) actual or imminent, and not conjectural or hypothetical—that is caused by

5   the Department's conduct and redressable by a favorable decision.  *Lujan*, 504 U.S. at 560-561.

6   Yet HAF again fails to explain how its constituents have been or are imminently in danger of

7   being harmed by *CRD v. Cisco* such that those constituents would have standing to bring any of

8   the claims asserted.  (*See* ECF No. 21).  Although HAF alleges without evidence that each of the

9   Individual Plaintiffs are "members" or "constituents," as discussed above (*see* Section II.A.1.a,

10  *supra* at 14-20), none of them have suffered a cognizable injury—that is, a "concrete" and

11  "particularized" injury that is "real and not abstract"—as is required to have standing.  *See*

12  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Accordingly, the Individual Plaintiffs cannot

13  convey associational standing to HAF.

14         Second, as discussed above, Plaintiffs' generalized grievances are not redressable through

15  this lawsuit.  (*See* Section II.A.2, *supra* at 22).

16         Third, HAF has not shown that representing its "members" or "constituents" in this suit is

17  germane to its organizational purpose.  *Hunt*, 432 U.S. at 342-43.  Germaneness can be

18  demonstrated by showing that the association or organization is "the defendant's natural

19  adversary." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.,* 517 U.S. 544,

20  556 (1996).  However, the facts as pled in Plaintiffs' complaint show that, far from being natural

21  adversaries, Plaintiff and the Department share objectives, including opposing discrimination.

22  Plaintiff describes itself as a Hindu education and advocacy organization that "works with a wide

23  range of people and groups that are committed to promoting dignity, mutual respect, and

24  pluralism, working across all sampradaya (Hindu religious traditions) regardless of race, color,

25  national origin, citizenship, ancestry, gender, sexual orientation, age, and/or disability."  (ECF

26  No. 21 ¶ 54).[11]  In addition, HAF avers that it "vehemently opposes all types of discrimination"

27         [11] Although HAF purports to advocate more broadly on behalf of Indian Americans and South
    Asian Americans (including non-Hindus), this is reflected neither in its stated mission (ECF No. 21 ¶ 30)
28  nor in the vague descriptions of its advocacy activities (*id.* ¶¶ 30-38).

1    (*Id.* at 4:1) and that "stopping caste-based discrimination is a worthy goal that directly furthers

2    Hinduism's belief in the equal and divine essence of all people" (*Id.* at 5:13-14).  The

3    Department's goals are similar.  It is a state agency charged with advancing the rights of all

4    Californians to be free from discrimination.  (*See* Munson Decl., Exh. C ¶¶ 16, 51-52, 61-62, 72-

5    73, 82-83, 94-95).  The Department's lawsuit, which is aimed at ending discrimination against

6    Dalit workers at Cisco, shares these same objectives rather than contravenes them.  (*See id.*)

7          In determining germaneness, courts also consider whether the civil action will address the

8    needs of the plaintiff's members.  *See United Food & Com. Workers Union Loc. 751*, 517 U.S. at

9    555-56 ("*Hunt's* second prong . . . demand[s] that an association plaintiff be organized for a

10   purpose germane to the subject of its member's claim raises an assurance that the association's

11   litigators will themselves have a stake in the resolution of the dispute[.]").  HAF cannot

12   demonstrate such a stake.  At least some Hindu Americans residing in California—for example,

13   Mr. Narsude and others who believe they have been the victims of caste-based discrimination at

14   Cisco—may have interests that conflict with HAF's purpose in this lawsuit as they may stand to

15   benefit from the Department's efforts to prevent and redress discrimination against workers based

16   on their perceived or actual status as victims of caste discrimination.

17         When evaluating germaneness, courts also look to the unity or diversity of views within an

18   organization.  A diversity of opinion within an organization's own members destroys

19   associational standing.  *See, e.g.*, *Harris v. McRae*, 448 U.S. 297, 321 (1980) (rejecting a religious

20   group's associational standing challenge to the Hyde Amendment because the group held a

21   diversity of views on abortion).   HAF previously admitted that "Hinduism represents a broad and

22   diverse faith, with each of the over 1.2 billion Hindus' [sic] understanding its wisdom based on

23   their own study, practice, and experience of its precepts."  (ECF No. 1 ¶ 8).  Although HAF has

24   amended this allegation to instead describe Hinduism as "a broad, pluralistic family of traditions,"

25   it nonetheless still concedes that it is a "divers[e]" religion not "bound together . . . by a single

26   spiritual founder, authority or book."  (ECF No. 21 ¶ 55).  Thus, even assuming HAF could

27   represent all Hindu Americans, by its own admission, its membership would naturally include a

28   diversity of viewpoints on caste discrimination in the United States.  Indeed, it was one such

1    individual's complaint to the Department that catalyzed the pending suit in the first instance.  (*See*

2    Munson Decl., Ex. C ¶¶ 1-6, 11-15, 17).  Accordingly, HAF's action against the Department

3    does not benefit all Hindu Americans—or all Indian Americans or South Asian Americans—and

4    is not germane to its stated mission and purpose.

5        <u>Finally</u>, HAF's assertion of associational standing fails because its claims and requested

6    relief require individual participation by its members or constituents.  *See, e.g.*, *McRae*, 448 U.S.

7    at 321 ("'[I]t is necessary in a free exercise case for one to show the coercive effect of the

8    enactment as it operates against him in the practice of his religion'" (citation omitted)); *New*

9    *Hampshire Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006), aff'd, 552 U.S. 364,

10   128 S. Ct. 989 (2008) (Fourteenth Amendment claims require individual members' participation

11   where a complaint is so vague as to require a "sufficiently fact-intensive inquiry" into

12   individualized member's situations to establish the claims).  Accordingly, HAF cannot proceed

13   with this action under an associational standing theory in the absence of identifiable individual

14   members or constituents who have experienced the requisite injury-in-fact and would themselves

15   have standing to bring the claims HAF seeks to assert.

16       Because HAF has not identified a cognizable constituency or satisfied the *Hunt* factors, it

17   lacks associational standing to bring this suit.

18   **III.   IN THE ALTERNATIVE, PLAINTIFFS IYER'S AND KOMPELLA'S EQUAL PROTECTION
     CLAUSE CLAIMS MUST BE DISMISSED AS MOOT**

19

20       Federal courts "are without power to decide questions that cannot affect the rights of

21   litigants in the case before them."  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971); *see also*

22   U.S. Const. art. III, § 2.  The federal court's inability "to review moot cases derives from the

23   requirement that Article III of the Constitution under which the exercise of judicial power

24   depends upon the existence of a case or controversy."  *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3

25   (1964).  "A case is moot when the issues presented are no longer 'live' or the parties lack a

26   legally cognizable interest in the outcome."  *City of Erie v. Pap's A.M.* 529 U.S. 277, 287 (2000).

27   Motions to dismiss on mootness grounds are properly brought under Rule 12(b)(1) of the Federal

28   Rules of Civil Procedure.  *White*, 227 F.3d at 1242.

27

The central issue in any mootness challenge is whether the federal court can afford the plaintiffs any meaningful, effective relief. *West v. Secretary of Dep't of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000). Unless the plaintiff can obtain such relief if they prevail, any opinion as to the legality of the challenged action would be advisory. *City of Erie*, 529 U.S. at 287. And "[i]t has long been settled that [federal courts lack] authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [the court]." *DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1174 (9th Cir. 2005).

Here, Plaintiffs Iyer and Kompella complain that the Department was wrong to bring charges against them under the FEHA for their actions while acting as supervisors at Cisco. (ECF No. 21 ¶¶ 15-20). Mr. Iyer alleges that he should not have been named as a defendant in *CRD v. Cisco* because the Department was "aware that [he] was irreligious or an agnostic and did not identify with any caste[.]" (*Id.* ¶ 16). Mr. Kompella alleges that he should not have been named as a defendant because the Department was factually mistaken about actions he took in his role as Mr. Narsude's supervisor. (*Id.* ¶ 18). Even if Mr. Iyer's and Mr. Kompella's allegations are taken as true for purposes of this motion, any claims premised on their involvement in the ongoing State Action are moot.

In April 2023—five months before HAF amended its complaint to include Mr. Iyer and Mr. Kompella as Individual Plaintiffs—the Department dismissed all claims against Mr. Iyer and Mr. Kompella with prejudice. (*See* Munson Decl., Exhs. H, I). Accordingly, Mr. Iyer and Mr. Kompella cannot—and do not—plausibly allege that there is any ongoing conduct as to their status as defendants in *CRD v. Cisco* for this Court to enjoin.

Nor is there any possibility that the alleged wrongdoing by CRD giving rise to Mr. Iyer and Mr. Kompella's Equal Protection Clause claims will recur, given their dismissal with prejudice. Although a defendant's voluntary cessation of challenged conduct does not always moot a case, it will do so if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater* 528 U.S. 216, 221 (2000); *see also*

1    *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) (holding that a public

2    entity's cessation is given greater weight than that of private entities).

3        Absent a live case or controversy, Mr. Iyer and Mr. Kompella, at most, seek an advisory

4    opinion about the constitutionality of the Department's prosecutorial charging decisions, which

5    this Court cannot provide.[12]  Mr. Iyer's and Mr. Kompella's Equal Protection Clause claims must

6    be dismissed as moot.

7    **IV.   PLAINTIFFS' FIRST AMENDED COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS
          TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

8

9        **A.   Plaintiffs Fail to State a Claim for Relief Under the Establishment Clause**

10       The Establishment Clause provides that the government "shall make no law respecting an

11   establishment of religion."  U.S. Const. amend. I.  The Establishment Clause protects citizens

12   from the government coercing them into attending a religious institution, engaging in formal

13   religious exercises, or making religious observance compulsory.  *Kennedy v. Bremerton School

14   Dist.*, 597 U.S. 507, 536-37 (2022).  Under the "*Lemon* test," a government's action survives an

15   Establishment Clause challenge if: (1) it has a secular legislative purpose; (2) its principal or

16   primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive

17   government entanglement with religion.  *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971); *see

18   also Catholic League*, 624 F.3d at 1057-58, 1060-61 (holding that San Francisco's resolution

19   protesting the Catholic Church's refusal to allow same-sex parents to adopt did *not* satisfy all

20   three prongs of the *Lemon* test or violate the Establishment Clause).  For purposes of determining

21   whether there is a violation of the Establishment Clause, courts view the challenged actions

22   objectively and from the perspective of a reasonable person.  *Cal. Parents for the Equalization of

23   Educ. Materials v. Torlakson*, 973 F.3d 1010, 1021 (9th Cir. 2020).

24       Here, the Department's conduct in connection with its enforcement action against Cisco

25   easily overcomes the *Lemon* test and Plaintiffs have not alleged a plausible basis to find

26   otherwise.  (*See* ECF No. 21 ¶¶ 125-136).  The Department's State Action was brought to

27

28       [12] Even if Mr. Iyer's and Mr. Kompella's claims were not moot, courts are hesitant to review such
     prosecutorial charging decisions.  (*See* Section IV.D.2, *infra* at 37-38).

effectuate its statutory duties under the FEHA, which is a law with the secular purpose of preventing and redressing discrimination on the basis of protected characteristics, such as race, religion, ancestry, gender, and sexual orientation.  *See* Gov't Code §§ 12900-12999; *see also N. Coast Women's Care Med. Grp., Inc. v. Super. Ct.*, 44 Cal.4th 1145, 1156 (Cal. Sup. 2008) (holding that a parallel anti-discrimination law, the Unruh Civil Rights Act, is similarly a valid law of general applicability).  Plaintiffs fail to allege facts showing that the Department's State Action has the principal and primary purpose of advancing or inhibiting religion.  In any case, the explicit principal and primary purpose of the State Action is to end discrimination and promote the equality of all Californians in the workplace—*not* to advance or inhibit any religion.[13]  (*See, e.g.*, ECF No. 21, Exh. A at 18-19; Munson Decl., Exh. C at 18-19).  Finally, the State Action—which is against a single, non-religious employer entity, Cisco—does not foster *any* entanglement with religion, let alone excessive entanglement, and Plaintiffs have not alleged otherwise.

The "critical weakness" of Plaintiffs' claim, therefore, is that the Department's State Action, "on its face, simply does not discriminate on the basis of religious affiliation or religious belief."  *Gillette v. United States*, 401 U.S. 437, 450 (1971).  Plaintiffs have failed to plead facts that demonstrate that *CRD v. Cisco* violates the *Lemon* test by coercing anyone's religious beliefs or practices.  Their Establishment Clause claim must be dismissed.

**B.    Plaintiffs Fail to State a Claim for Relief Under the Free Exercise Clause**

Plaintiffs claim that the Department has violated their rights under the Free Exercise Clause of the First Amendment.  (ECF No. 21 ¶¶ 88-100).  To establish a viable free exercise claim a plaintiff must show that a government action substantially burdened or had a coercive effect on their practice of religion.  *See McRae*, 448 U.S. at 321 (quoting *Abington School Dist. v. Schempp*, 374 U.S. 203, 223 (1963) (organizational plaintiff must demonstrate coercive effect against the practice of individual member's religions); *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989) (plaintiff must show that the government action in

---

[13] Although the State Action is limited to the employment context, the FEHA also applies in other spaces, such as the housing context.

1    question substantially burdens the person's practice of their religion).  "'A substantial burden . . .

2    place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce

3    individuals into acting contrary to their religious beliefs or exert substantial pressure on an

4    adherent to modify his behavior and to violate his beliefs.'"  *Jones*, 791 F.3d at 1031-32 (quoting

5    *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (ellipsis and alteration in original).

6    However, "the Free Exercise Clause does not inhibit enforcement of otherwise valid regulations

7    of general application that incidentally burden religious conduct." *Christian Legal Soc'y Chapter*

8    *of the Univ. of Cal. Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 697 n.27 (2010).  Moreover,

9    plaintiffs seeking relief under the Free Exercise Clause must describe specific experiences and

10   injuries caused by the government's actions, particularly where an organization attempts to bring

11   those claims on behalf of a membership with potentially diverse viewpoints.  *McRae*, 448 U.S. at

12   321.  Plaintiffs have not pled a viable claim under the Free Exercise Clause for multiple reasons.

13        First, the FAC does not allege any facts showing that the Department's actions have

14   coerced anyone into doing something inimical to their religious convictions or otherwise

15   prevented them from being able to practice their religion.  Indeed, it is implausible that a lawsuit

16   seeking to end caste-based discrimination at Cisco could prevent any individuals—let alone all

17   Hindu Americans, Indian Americans, and/or South Asian Americans in California—from

18   practicing their chosen religion.  And if—as Plaintiffs plead (ECF No. 21 at 3:24-26, 5:13-14)—

19   Plaintiffs denounce the caste system and reject it as part of their religion, then an enforcement

20   action that seeks to prevent caste-based and other discrimination "does not threaten any of [the]

21   Plaintiffs' rights to practice their religion." *Kumar*, 638 F. Supp. 3d at 1115-16.  Accordingly,

22   Plaintiffs have not pled facts sufficient to show that the Department's State Action have coerced

23   or substantially burdened its members' ability to practice their religion.

24        Second, the FAC provides no legal authority for its assertion that a state action that

25   "defines" a religion or inaccurately describes that religion's doctrine violates the Free Exercise

26   Clause.  (*See* ECF No. 21 ¶¶ 88-100).[14]  To the contrary, erroneously defining or characterizing a

27        [14] Plaintiffs again cite to *Serbian E. Orthodox Diocese for United States & Canada v.
Milivojevich*, 426 U.S. 696 (1976) for the principle that the United States Constitution prohibits "*any* 'civil

28

1   religion in a pleading is not regulatory, proscriptive, or compulsory, and thus does not have an

2   unlawful coercive effect on an adherent's ability to practice their religion.  *See, e.g.*, *Sabra*, 44

3   F.4th at 890 (when the challenged government action is neither regulatory, proscriptive or

4   compulsory, alleging a subjective chilling effect on free exercise rights is not sufficient to

5   constitute a substantial burden).[15]

6        Third, any allegations Plaintiffs do make are clearly cast in hypothetical and speculative

7   terms that are insufficient to meet the pleading standard.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*,

8   550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above a

9   speculative level[.]").  Although facts are typically accepted as true for the purposes of

10  determining plausibility under Rule 12(b)(6), the plausibility standard is a "context-specific task

11  that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*,

12  556 U.S. at 679.  This Court need not blindly accept conclusory allegations, unwarranted

13  deductions of fact, and unreasonable inferences (*see Sprewell*, 266 F.3d at 988) and should

14  therefore reject such allegations in Plaintiffs' complaint (*see, e.g.*, ECF No. 21 ¶¶ 14 (speculating

15  that other third-parties could be the subject of future enforcement actions by the Department);

16  106-109 (speculating that hypothetical employers will be forced to "accommodate" future caste-

17  based discrimination requests from hypothetical employees)).  As this Court has already noted,

18  Plaintiffs' allegations are "both highly speculative and seemingly implausible" (ECF No. 20 at

19  14-15), and they remain so despite having had an opportunity to amend.

20        Finally, Plaintiffs' conclusory statements about the purpose or outcome of the

21  Department's enforcement action against Cisco cannot be used to reasonably infer that the

22  determination of religious doctrine.'" (ECF No. 21 at 4:10-12, emphasis added).  This overstates the
    case's reach.  In *Serbian E. Orthodox Diocese*, the Supreme Court overturned the Illinois Supreme Court's

23  attempt to reinstate a bishop who had been suspended from the church, holding that civil courts could not
    substitute their judgments for those espoused by a religious tribunal in such matters.  426 U.S. at 709

24  ("[T]he First . . . Amendment[] mandate[s] that civil courts shall not disturb the *decisions of the highest
    ecclesiastical tribunal within a church of hierarchical polity*, but must accept such decisions as binding on

25  them, in their application to the religious issues of doctrine or polity before them.") (emphasis added).
    This matter involves no such tribunal or determination and does not seek to compel anyone to observe

26  Hinduism in any particular way.

27      [15] Although Plaintiffs again cite to *Espinoza* for the proposition that laws violate the Free Exercise
    Clause when they "impose special disabilities on the basis of religious status" (ECF No. 21 ¶ 95), they

28  provide no factual allegations that plausibly establish that the Department's State Action creates such a
    burden.  *See Espinoza*, 591 U.S. at 473-76.  (*See supra* at 16).

1    Department has substantially burdened anyone's exercise of their religion.  *See Iqbal*, 556 U.S. at

2    678.  As discussed above and contrary to Plaintiffs' assertion, the Department does not seek or

3    attempt to legally define Hinduism in its State Action, nor to make any "declar[ations] that caste-

4    based discrimination is a fundamental practice of Hinduism[.]"  (*Compare* ECF No. 21 at 2-3, ¶¶

5    61-62, 65, 67, 70-71 *with* Munson Decl., Exh. C).  Rather, the Department seeks to prevent Cisco

6    from engaging in caste-based employment discrimination and to remediate any harms caused by

7    such unlawful practices.  (*See* Munson Decl., Exh. C at 18-19; *see also* ECF No. 20 at 14-15).

8    Apart from noting that Mr. Narsude is Hindu, the Department's operative complaint contains no

9    other allegations about Hinduism.  (*See* Munson Decl., Exh. C, ¶ 29).  And as the Department has

10   previously addressed, it alleges that the caste-based discrimination against *Mr. Narsude* was

11   discrimination on the basis of several protected characteristics, including *his own* ancestry,

12   national origin, race/color, and/or religion.  (*See id.* at 2 n.1).[16]

13        Plaintiffs have not alleged that the Department's actions have substantially burdened or had

14   a coercive effect upon any individual's practice of their religion, and have not pled a viable claim

15   under the Free Exercise Clause.

16        **C.    Plaintiffs Fail to State a Claim for Relief Under the Due Process Clause**

17        Plaintiffs also fail to state a viable claim for relief under the Due Process Clause.  The Due

18   Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of

19   life, liberty, or property, without due process of law[.]"  U.S. Const., amend. XIV.  "A [S]ection

20   1983 claim based upon procedural due process thus has three elements: (1) a liberty or property

21   interest protected by the Constitution; (2) a deprivation of the interest by the government; [and]

22   (3) lack of process."  *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *see*

23

24

25   _____

     [16] Plaintiffs also allege that the Department used "religion as a basis of classification" when it
     brought *CRD v. Cisco* against an "'irreligious' or Agnostic" defendant, presumably Mr. Iyer.  (ECF No. 21
26   ¶ 98).  This, too, is unavailing.  The Department has never alleged that Mr. Iyer subscribed to any
     particular religion or that he acted in a discriminatory manner because he has a particular religious
     identity.  (*See id.*, Exh. A; Munson Decl., Exh. C).  Rather, the Department alleged that Mr. Iyer
27   discriminated against Mr. Narsude on the basis of *Mr. Narsude's caste status, which includes Mr.
     Narsude's own religion*.  And, in any case, Plaintiffs do not allege that Mr. Iyer's non-religious beliefs
28   have been coerced or burdened in any way by the State Action.  (*See* ECF No. 21 ¶¶ 15-16, 20, 88-100).

1  *also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972); *West v. Atkins*, 487 U.S. 42

2  (1988).

3      Plaintiffs' Due Process Clause claim, however, appears to be a facial void for vagueness

4  challenge to the Department's State Action.  (*See* ECF No. 21 ¶¶ 101-112).  Yet Plaintiffs have

5  again failed to provide any authority for the proposition that a state agency's initiation of a

6  lawsuit in accordance with its statutory authority could itself be the basis of a void for vagueness

7  challenge.  And the Department's State Action is squarely within its statutory mandates.  Among

8  other things, the FEHA charges CRD with the duty to "endeavor to eliminate [] unlawful

9  employment practice[s]," including by "bring[ing] a civil action in the name of the department,

10  acting in the public interest, on behalf of the person claiming to be aggrieved."  Gov't Code §§

11  12963.7, 12965(a)(5)(A).  The Department "'is a public prosecutor testing a public right,' when it

12  pursues civil litigation to enforce statutes within its jurisdiction." *Law Sch. Admission Council,*

13  *Inc.*, 941 F. Supp. 2d at 1168 (quoting *State Pers. Bd.*, 39 Cal. 3d at 444).  It may seek a wide

14  range of relief, including remedies beyond the interests of the aggrieved party to "'vindicate'

15  what it considers to be 'the public interest in preventing . . . discrimination.'" *Id.* at 1172; see

16  also Gov't Code § 12965(d) (authorizing any other relief that, in the judgment of the court, will

17  effectuate the purposes of the FEHA).  And courts afford state agencies, such as the Department,

18  latitude when carrying out their mandated activities in the broad public interest in other contexts,

19  even where recognized liberty and property interests are implicated.  *See, e.g., Fields v. Palmdale*

20  *Sch. Dist.*, 447 F.3d 1187, 1191 (9th Cir. 2006) (holding that the due process rights of parents to

21  make decisions regarding their children's education does not entitle individual parents to enjoin

22  school boards from providing information the boards determine to be appropriate in connection

23  with the performance of their educational functions).

24      Plaintiffs also allege that laws "must give fair notice of conduct that is forbidden or

25  required, but again have failed to clearly identify a law that does not do so.  (*Id.* ¶ 104, citing *Fed.*

26  *Commc'ns Comm'n v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012)).[17]  In fact, Plaintiffs

27  _____

28  [17] Plaintiff also alleges that laws and regulations cannot be "so standardless that [they] authorize[] or encourage[] seriously discriminatory enforcement," but again points to no law or regulation lacking sufficient standards.  (ECF No. 21 ¶ 104, citing *United States v. Williams*, 553 U.S. 285, 304 (2008)).

1    appear to concede that the FEHA itself—the only law cited within this claim—is clear on its face.

2    (*See* ECF No. 21 ¶¶ 106-08).  However, even if Plaintiffs are attempting to assert that the FEHA

3    itself is void for vagueness, then Plaintiffs' claim must still be dismissed as they have alleged

4    insufficient facts to state that claim and, in any case, Defendant Kish does not enact or amend the

5    FEHA.

6         Finally, as this Court previously explained, "[a] plaintiff has standing to bring a pre-

7    enforcement challenge to a vague law on due process grounds where 'the litigant is chilled from

8    engaging in constitutionally protected activity.'"  (ECF No. 20, citing *Montclair Police Officers'*

9    *Ass'n*, 2012 WL 12888427, at *4 (quoting *Bankshot Billiards, Inc.*, 634 F.3d at 1350).  Here,

10   however, Plaintiffs have again failed to identify any activity that they allege has been chilled by

11   the Department's State Action, let alone a constitutionally protected activity.  Dismissal under

12   Rule 12(b)(6) is appropriate where, as here, a complaint lacks a cognizable legal theory or facts

13   sufficient to support a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

14   699 (9th Cir. 1990).

15        **D.   Plaintiffs Fail to State a Claim for Relief Under the Equal Protection**
         **Clause for Either Religious or National Origin Discrimination**
16

17        To state a Section 1983 claim for a violation of the Equal Protection Clause, a plaintiff

18   "must show that the defendants acted with an intent or purpose to discriminate against the

19   plaintiff based upon membership in a protected class," and that plaintiff was treated differently

20   from persons similarly situated.  *Barren*, 152 F.3d at 1194 (citing *Washington*, 426 U.S. at 239-

21   40).  A plaintiff may satisfy this showing by alleging four separate elements: (1) the plaintiff was

22   treated differently from persons similarly situated; (2) this unequal treatment was based on an

23   impermissible classification; (3) the defendant acted with discriminatory intent in applying this

24   classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification.

25   *Lam v. City & Cnty. of S.F.*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 F. App'x 641

26   (9th Cir. 2014) (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).  Plaintiffs do

27   not sufficiently allege any of the four required elements to plead a viable equal protection claim

28   for discrimination based on either religion or national origin.  Moreover, even if Mr. Iyer and Mr.

1    Kompella could plead a cognizable equal protection claim—they cannot—the crux of their

2    complaint is that they should not have been charged as defendants in *CRD v. Cisco*, which is not a

3    matter well-suited for judicial review.  *See United States v. Armstrong*, 517 U.S. 456, 465 (1996)

4    (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

5                    **1.      All Plaintiffs fail to state a claim for discrimination on the basis of**
                              **religion**
6

7            As addressed above, none of the Individual Plaintiffs have pled facts sufficient to establish

8    that the Department has treated them differently from other similarly situated persons on the basis

9    of their religion, nor that they have suffered a cognizable injury-in-fact as a result.  (*See supra* at

10   18-19).  In fact, the only two Individual Plaintiffs who have ever been subject to the Department's

11   efforts to enforce the FEHA—former *CRD v. Cisco* defendants, Mr. Iyer and Mr. Kompella—are

12   admittedly of different faiths.  Mr. Iyer does not practice an organized religion and Mr. Kompella

13   practices Hinduism.  (ECF No. 21 ¶¶ 15, 17).  And, as an organization, HAF cannot plead a

14   cognizable claim for discrimination on the basis of religion absent evidence that its individual

15   members have faced such discrimination.  (*See* Section II.B.2, *supra* at 24-27).  For example,

16   Plaintiffs' FAC does not identify *any* similarly situated individuals who have been treated

17   differently on the basis of religion, nor what that treatment might be.  This is insufficient to

18   establish a claim under the Equal Protection Clause.

19           Critically, Plaintiffs also have not demonstrated that Defendant Kish, acting in his official

20   capacity as the Department's Director, has acted with discriminatory intent or purpose in any

21   way.  (*See supra* at 18-20).  In the equal protection context, this is the "fundamental question."

22   *Lam*, 868 F. Supp. 2d at 951.  Discriminatory purpose "implies more than intent as volition or . . .

23   awareness of consequences.  It implies that the decision-maker . . . selected or reaffirmed a

24   particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects

25   upon an identifiable group."  *Pers. Adm'r of Mass.*, 442 U.S. at 279 (internal citation omitted).

26   "[D]etermining the existence of a discriminatory purpose 'demands a sensitive inquiry into such

27   circumstantial and direct evidence of intent as may be available.'"  *Rogers v. Lodge*, 458 U.S.

28   613, 618 (1982) (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266,

(1977); citing *Washington*, 426 U.S. at 242).  As evidenced by the Department's State Action, its actions are—and have always been—intended to *stop* and to remedy unlawful discrimination against Cisco's workers.  (*See* ECF No. 21, Exh. A; Munson Decl., Exh. C).  Plaintiffs simply cannot establish the required discriminatory intent.

### 2.   Mr. Iyer and Mr. Kompella fail to state a claim for discrimination on the basis of national origin

To establish a claim for discrimination on the basis of national origin, the plaintiff must show that similarly situated individuals of a different national origin were *not* prosecuted, and that the defendant's actions were motivated by a discriminatory purpose.  *See Lam*, 868 F. Supp. 2d at 951.  As discussed above, Mr. Iyer has not alleged that he has been treated differently to anyone who is similarly situated on the basis of their national origin.  (*See supra* at 19-20; *see also* ECF No. 21 ¶¶ 15-16, 20).  Mr. Kompella has complained, in conclusory fashion, that the Department named him in the State Action instead of a non-Indian supervisor.  (ECF No. 21 ¶ 18).  But even this does not state a claim under the Equal Protection Clause.

Mr. Kompella contends that the Department erred factually in alleging that Mr. Kompella required weekly reports from Mr. Narsude when, according to Mr. Kompella, it was Mr. Edwall who did this.  (*Id.*)  At most, however, this is an allegation that Department's factual allegation in the State Action is wrong.  And, even accepting Mr. Kompella's allegation as true for purposes of this motion, he has not alleged that the Department made this factual error based on any discriminatory animus against Mr. Kompella's national origin, nor that he and Mr. Edsall were similarly situated.  Thus, Mr. Kompella, like Mr. Iyer, has failed to allege a cognizable equal protection claim based on national origin.  Indeed, neither Mr. Iyer nor Mr. Kompella have alleged facts that show Director Kish has acted with discriminatory intent or purpose in any way with regard to their national origin.  (*See* ECF No. 21 ¶¶ 129-130).  Such a "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice."  *Iqbal*, 556 U.S. at 678.

Further, the crux of Mr. Iyer's and Mr. Kompella's claim is a complaint about the Department's charging strategy in *CRD v. Cisco*.  But courts are properly hesitant to review such

37

matters that fall within prosecutorial discretion. *See Armstrong*, 517 U.S. at 465 (citing *Wayte*, 470 U.S. at 608 (1985)). For example, in reviewing selective prosecution claims under the Fifth Amendment, courts require criminal defendants to provide clear evidence that a "prosecutorial policy 'had a discriminatory effect and was motivated by a discriminatory purpose.'" *Id.* (quoting *Wayte*, 470 U.S. at 608). And courts are particularly disinclined to review such matters where, as here, plaintiffs "ask[] a court to exercise judicial power over a 'special province'" of the executive branch. *Armstrong*, 517 U.S. at 464 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). Prosecutors enjoy the "presum[ption] that they have properly discharged their official duties," absent "clear evidence to the contrary" because they are acting under constitutional authority. *Id.* (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)). And courts are ill-equipped to review prosecutorial charging decisions. *Id.* at 465 (quoting *Wayte*, 470 U.S. at 607) ("Such factors as the strength of the case, the prosecution's general deterrence value, the [g]overnment's enforcement priorities, and the case's relationship to the [g]overnment's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."); *accord United States v. Bourgeois*, 964 F.2d 935, 939-40 (9th Cir. 1992). Moreover, examining prosecutorial decisions risks "delay[ing] . . . proceeding[s]," "chill[ing] . . . enforcement," and "undermin[ing] prosecutorial effectiveness." *Id.* These policy considerations are equally present here.

As discussed above, the Department is charged with enforcing California's civil rights laws, including the FEHA, which the Legislature has declared to be "an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of [California]." Gov't Code § 12920. Accordingly, courts have acknowledged that, like criminal prosecutors, the Department "'is a public prosecutor testing a public right,' when it pursues civil litigation to enforce statutes within its jurisdiction." *Law Sch. Admissions Council, Inc.*, 941 F. Supp. 2d at 1168 (quoting *State Pers. Bd.*, 39 Cal. 3d at 444). Thus, even if any of the Plaintiffs could craft plausible equal protection allegations—and they cannot—this matter and the remedy that Plaintiffs seek are not well-suited for judicial review.

1    In sum, Plaintiffs have not stated a viable claim for relief under the Equal Protection Clause

2    for discrimination based on religion or national origin, a defect that cannot be reasonably

3    remedied.

4                                         **CONCLUSION**

5        For the reasons discussed above, Defendant Kish respectfully asks that this Court dismiss

6    Plaintiffs' complaint in its entirety and without prejudice pursuant to the *Younger* abstention

7    doctrine or Rule 12(b)(1) or, in the alternative, dismiss Plaintiffs' complaint with prejudice

8    pursuant to Rule 12(b)(6).

9        Plaintiffs need not be afforded another opportunity to amend their complaint.  Plaintiffs

10   were given leave to amend their complaint in August 2023 and failed to cure their pleading

11   deficiencies, demonstrating the futility of any further amendment.  *See Brown v. Stored Value*

12   *Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

13   Courts should dismiss a party's claim without leave to amend where amendment would be futile.

14   *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011); *see also Schreiber Distrib.*

15   *Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (Court should deny a party

16   leave to amend when it can allege no "other facts consistent with the challenged pleading" that

17   could "cure the deficiency.").

18   Dated:  May 20, 2024                         Respectfully submitted,

19                                                ROB BONTA
                                                  Attorney General of California
20                                                MICHAEL NEWMAN
                                                  Senior Assistant Attorney General
21                                                WILLIAM H. DOWNER
                                                  Supervising Deputy Attorney General
22
                                                  /s/ Carly J. Munson _____
23
                                                  CARLY J. MUNSON
24                                                JENNIFER M. SOLIMAN
                                                  Deputy Attorneys General
25                                                *Attorneys for Director Kevin Kish*

26

27

28

Notice of Motion and Motion to Dismiss First Amended Complaint (2:22-CV-01656)