# Exhibit C

JAMIE CROOK Chief Counsel (#245757)
Jamie.crook@calcivilrights.ca.gov
RUMDUOL VUONG, Assistant Chief Counsel (#264392)
Rumduol.vuong@CalCivilRights.ca.gov
BRETT WATSON, Associate Chief Counsel (#327669)
Brett.watson@calcivilrights.ca.gov
DYLAN COLBERT, Staff Counsel (#341424)
Dylan.colbert@calcivilrights.ca.gov
ELIANA MATA, Staff Counsel (#327845)
Eliana.mata@calcivilrights.ca.gov
CALIFORNIA CIVIL RIGHTS DEPARTMENT
2218 Kausen Drive, Suite 100
Elk Grove, CA  95758
Telephone:  (916) 478-7251
Facsimile:   (888) 382-5293

Attorneys for Plaintiff,
California Civil Rights Department   (Fee Exempt, Gov. Code, § 6103)

Electronically Filed
by Superior Court of CA,
County of Santa Clara,
3-18-24
Reviewed By: A. Floresca
Case #20CV372366
Envelope: 14830810

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| CALIFORNIA CIVIL RIGHTS DEPARTMENT, an agency of the State of California,<br><br>                                    Plaintiff,<br><br>            v.<br><br>CISCO SYSTEMS, INC., a California Corporation,<br><br>                                    Defendant. | **Case No. 20CV372366**<br><br>**CIVIL RIGHTS – SECOND AMENDED COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

The California Civil Rights Department (CRD) brings this action against Cisco Systems, Inc. (Cisco) to remedy workplace discrimination, harassment, and retaliation violations at its San Jose, California corporate headquarters under the California Fair Employment and Housing Act, Cal. Gov't Code § 12900, *et seq*. (FEHA). Specifically, Cisco engaged in unlawful employment practices on the bases of religion, ancestry, national origin/ethnicity, and race/color against. Complainant Chetan Narsude ("Complainant"), and after Complainant opposed such unlawful practices, Cisco retaliated against him. Cisco also failed to take all reasonable steps to prevent such unlawful practices in its workplace, as required under FEHA.

## INTRODUCTION

1. Complainant is Dalit Indian, a population once known as the "Untouchables," who are the most disadvantaged people under India's centuries-old caste system.[1] At the bottom of the Indian hierarchy is the Dalit, typically the darkest complexion caste, who were traditionally subject to untouchability practices which segregated them by social custom and legal mandate. Although *de jure* segregation ended in India, lower caste persons like Dalits continue to face *de facto* segregation and discrimination in all spheres.[2] Not only do Dalits endure the most severe inequality and unfair treatment in both the public and private sectors, they are often targets of hate violence and torture. Of India s approximately 1.3 billion people, about 200 million are Dalits.[3]

2. Unlike Complainant, most Indian immigrants in the United States are from upper castes. For example, in 2003, only 1.5 percent of Indian immigrants in the United States were Dalits or members of lower castes.[4] More than 90 percent were from high or dominant castes. Similarly, upon information and belief, the same is true of the Indian employees in Cisco's workforce in San Jose, California.

3. As alleged below, at Cisco's San Jose headquarters, Complainant worked with a team of entirely Indian employees. The team members grew-up in India and immigrated as adults to the United States. Except for Complainant, the entire team are also from the high castes in India. As beneficiaries of the caste system, Complainant's higher caste supervisors and co-workers imported the discriminatory system's practices into their team and Cisco's workplace.

4. Complainant's supervisors and co-workers, Sundar Iyer ("Iyer") and Ramana Kompella ("Kompella"), are from India's highest castes. Because both knew Complainant is Dalit,

---

[1] Complainant is Dalit because of his religion, ancestry, national origin/ethnicity, and race/color. The caste to which someone belongs is immutable and determines their social status in traditional Indian culture. Social stratification and discrimination based on caste persists in India and among those living outside India, including in America. Encyclopedia Britannica, *India: Caste* (June 24, 2020), https://www.britannica.com/place/India/Caste (last visited June 29, 2020).

[2] Human Rights Watch & Center for Human Rights and Global Justice at New York University School of Law, *Hidden Apartheid: Caste Discrimination against India's "Untouchables,"* at 45 (2007), https://www.hrw.org/reports/2007/india0207/india0207webwcover.pdf

[3] Office of the Registrar General & Census Commissioner, India, Ministry of Home Affairs, Government of India, *2011 Primary Census Abstract*, https://censusindia.gov.in/pca/default.aspx.

[4] Tinku Ray, *The US isn't safe from the trauma of caste bias,* The World (Mar. 08, 2019, 9:00 AM), https://www.pri.org/stories/2019-03-08/us-isn-t-safe-trauma-caste-bias.

they had certain expectations for him at Cisco. Complainant was expected to accept a caste hierarchy within the workplace where Complainant held the lowest status within the team and, as a result, received less pay, fewer opportunities, and other inferior terms and conditions of employment because of his religion, ancestry, national origin/ethnicity, and race/color. They also expected him to endure a hostile work environment. When Complainant unexpectedly opposed the unlawful practices, contrary to the traditional order between the Dalit and higher castes, Defendants retaliated against him. Worse yet, Cisco failed to even acknowledge the unlawful nature of the conduct, nor did it take any steps necessary to prevent such discrimination, harassment, and retaliation from continuing in its workplace.

5.      Not only did Cisco disregard Complainant, but also its own workforce. For decades, similar to Complainant's team, Cisco s technical workforce has been and continues to be predominantly South Asian Indian. According to the 2017 EEO-1 Establishment Report (EEO-1 Report), for example, Cisco has a significant overrepresentation of Asian employees compared to other companies in the communications, equipment and manufacturing industry (NAICS 3342) in the same geographic area, which is statistically significant at nearly 30 standard deviations.[5] Such overrepresentation is also present in management and professional job categories. In addition to Cisco's direct workforce, Cisco also employs a significant number of South Asian Indian workers through Indian-owned consulting firms. Outside of San Jose, Cisco's second largest workforce in India.

6.      Although Cisco has employed a predominantly South Asian Indian workforce for decades, Cisco was and continues to be wholly unprepared to prevent, remedy, or deter the unlawful conduct against Complainant or similarly situated lower caste workers. Cisco failed to take any steps whatsoever to prevent " . . . inequalities associated with [c]aste status, ritual purity, and social exclusion [from] becom[ing] embedded . . . " into its workplace, which is a documented

---

[5] 2017 EEO-1 Report for Cisco Systems, Inc. at 170 West Tasman Drive in San Jose, California. Because Cisco is a federal contractor and employs 50 or more employees in California and the United States, Cisco is required to file an Employer Information Report EEO-1, also known as the EEO-1 Report. The EEO-1 Report requires employers to report employment data for all employees categorized by sex, race/ethnicity, and job category. EEOC, *EEO-1 Instruction Booklet*, https://www.eeoc.gov/ employers/eeo-1-survey/eeo-1-instruction-booklet (last visited June 23, 2020).

problem for "… American mainstream institutions that have significant South Asian immigrant populations."[6] A 2018 survey of South Asians in the U.S. found that 67% of Dalits reported being treated unfairly at their American workplaces because of their caste and related characteristics.[7] However, few South Asian employees raised concerns to their American employers, because they believe "their concerns will not be given weight or will lead to negative consequences to their career."[8] This is precisely what happened to Complainant at Cisco.

### JURISDICTION AND VENUE

8.      This action is authorized and instituted pursuant to California Government Code sections 12930 (f) and (h), and 12965(a).

9.      The employment practices alleged to be unlawful were and are now being committed within the County of Santa Clara in the State of California, which is within the jurisdiction of the Superior Court of the County of Santa Clara. (Cal. Gov't Code § 12965, subd. (a).)

10.     Plaintiff has standing to bring this suit and has complied with all statutory prerequisites to maintain FEHA claims.

11.     Complainant filed a pre-complaint inquiry with CRD on or about April 20, 2018, and a verified administrative complaint against Defendant Cisco on or about July 30, 2018. The charge was dually filed with the Equal Employment Opportunity Commission (EEOC). CRD properly served the administrative complaint on Defendant Cisco on or about August 7, 2018. On or around October 9, 2018, Complainant filed an amended administrative complaint against Cisco, Iyer, and Kompella. The amended administrative complaint was properly served on all named responding parties on or about October 9, 2018.

12.     CRD investigated Complainant's dually filed EEOC-CRD charge and complaint pursuant to California Government Code sections 12930(f) and 12963.

---

[6] Maari Zwick-Maitreyi et al., Equality Labs, *Caste in the United States: A Survey of Caste Among South Asian Americans*, 16 (2018) https://static1.squarespace.com/static/58347d04bebafbb1e66df84c/t/5d9b4f9afbaef569c0a5c132/1570459664518/Caste_report_2018.pdf.
[7] *Id.* at 20.
[8] *Ibid.*

13. Pursuant to Cal. Gov't Code § 12965(a), the CRD convened a mandatory dispute resolution session on or about February 11, 2020. Settlement discussions were unsuccessful. The CRD and Defendants entered consecutive tolling agreements to toll the statutory deadline for CRD to file a civil action to June 30, 2020.

14. On or about June 30, 2020, CRD filed a civil rights complaint in the United States District Court for the Northern District of California. On or about October 16, 2020, CRD voluntarily dismissed the federal civil rights action pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.

15. CRD files this state court action pursuant to the FEHA, California Government Code sections 12930, subdivisions (f)(1), (h), and 12965, subdivision (a), and 28 U.S.C. section 1367, subdivision (d). All conditions precedent to the institution of this lawsuit have been fulfilled. The amount of damages sought by this complaint exceeds the minimum jurisdictional limits of this Court.

## **PARTIES**

**Plaintiff California Civil Rights Department**

16. Plaintiff CRD is the agency of the State of California charged with the administration, interpretation, investigation, and enforcement of the FEHA, and is expressly authorized to bring this action by California Government Code sections 12930, subdivisions (f), (h), and 12965, subdivision (a).

17. Complainant is the person claiming to be aggrieved on whose behalf the CRD files this civil action. (Cal. Gov't Code, §§ 12965, subd. (a), 12930, subd. (f), (h).)

18. At all relevant times, Complainant was, and remains, an "employee" of Defendant Cisco within the meaning of FEHA. (Cal. Gov't Code, §§ 12926, subd. (c)-(d), 12940, subd. (a), (j), (k).) On or around October 2015 to November 2018, Complainant worked as a Principal Engineer with Cisco in Santa Clara County, California. Since on or about December 2018, Complainant has worked as a Principal Engineer with Cisco in Santa Clara County, California.

19. At all relevant times, Complainant was, and remains, a "person" within the meaning of the FEHA. (Cal. Gov't Code, §§ 12925, subd. (d), 12940, subd. (h).)

**Defendant Cisco Systems, Inc.**

20.     Defendant Cisco (EEO-1 reporting number N14137) is a leading global high-tech firm founded in 1984. The company designs, manufactures, sells, and supports equipment for internet-based networking. It has approximately 75,900 employees worldwide and is publicly traded on NASDAQ. The firm's EEO-1 reports places it in the communications equipment manufacturing industry (NAICS 3342). Within California, Cisco employs at least 18,281 employees at 19 establishments in 6 different metropolitan areas, including the corporate headquarters in San Jose.

21.     At all relevant times, Defendant Cisco has continuously been and is now a California Corporation doing business in the State of California and the Cities of San Jose and Milpitas in Santa Clara County and has continuously had at least fifteen employees.

22.     At all relevant times, Defendant Cisco has continuously been an employer engaged in an industry affecting commerce within the meaning of California Government Code, section 12926, subdivision (d).

23.     At all relevant times, Cisco contracted with and received federal and state funds from the United States and California governments.

## STATEMENT OF CLAIMS

28.     Beginning in the November 1, 2016, Defendant Cisco engaged in unlawful employment practices, in violation of California Government Code, section § 12940 subdivisions (a), (j), (h), and (k). These practices include but are not limited to the practices described below.

29.     Complainant's ancestry, national origin/ethnicity, and race/color is Dalit Indian. Complainant has a darker complexion relative to other persons of non-Dalit Indian descent. Complainant's religion is Hindu. As a Dalit, he also is known as from the Untouchable or Scheduled Caste.

30.     Complainant has over 20 years of experience in the software development lifecycle process at startups and established companies. In or around September 2015, Iyer recruited and hired Complainant as a Principal Engineer for Cisco because of his expertise and experience. As the head of the Cisco team, Iyer hired and supervised Complainant, having the authority to control

-6-

his day-to-day assignments, discipline, discharge, direct, and transfer Complainant. Upon information and belief, Iyer is Brahmin.

31.    In or around October 2016, two of Complainant's colleagues told Complainant that Iyer informed them that Complainant was from the "Scheduled Caste" (Dalit) and enrolled in the Indian Institute of Technology (IIT) through affirmative action. Iyer was aware of Complainant's caste because they attended IIT at the same time.

32.    In or around November 1, 2016, Complainant confronted Iyer about disclosing Complainant's Caste to other Cisco employees. Iyer asked Complainant who claimed he made such a comment. After Complainant shared the names of his colleagues, Iyer denied the comment and stated Complainant's colleagues were not telling the truth.

33.    In or around November 21, 2016, Complainant contacted Cisco's human resources (HR) and Employee Relations to file a discrimination complaint against Iyer.

34.    Six days after Complainant's first contact with Cisco's HR and employee relations, Iyer told Complainant he was taking away Complainant's role as lead on two technologies.

35.    On or around November 28, 2016, Iyer promoted two of Complainant's colleagues to head engineering roles, one of whom was Kompella. Kompella was made Head of Southbound Engineering. Upon information and belief, Kompella is Brahmin or at least of a higher caste than Dalit. With this new title, Kompella received a raise of approximately 15% or more. As the Head of Southbound Engineering, Kompella had the ability to direct the day-to-day assignments and recommend employment actions for those on his team, including Complainant.

36.    On or around November 28, 2016, Iyer also removed team members from the third technology Complainant was working on and did not formally integrate the third technology into either team headed by the two new Heads of Engineering. As a result of these changes, Complainant's role was reduced to that of a system architect as an independent contributor, and he was isolated from all his colleagues.

37.    On or around December 8, 2016, Complainant submitted a written complaint about Iyer's disclosure of Complainant's caste, Complainant's complaint to Iyer, and Iyer's retaliatory employment actions, including the sudden changes to Complainant's job duties. He also

complained that Iyer made discriminatory comments to a colleague and about a job applicant because of the applicant's religion (Muslim).

38.     Cisco's Employee Relations Manager, Brenda Davis, conducted the investigation into Complainant's December 2016 complaint. Davis' internal investigation notes revealed that Iyer admitted that he told Complainant's colleagues that Complainant was not on the "main list." Among those from India, it is commonly known that students not on the main list are admitted to IIT through an affirmative action program designed for those from the "Scheduled Castes" or those outside the caste system. Therefore, stating that someone is not on the "main list" effectively reveals their caste. Despite this, Davis took no further action and failed to even contact relevant witnesses or Complainant.

39.     Cisco Employee Relations staff, including Davis, also indicated that caste discrimination was not unlawful. As a result, Davis did not recommend any corrective action against Iyer. Iyer also admitted that he made a joke about Complainant's co worker's religion and talked about an applicant's Muslim-related appearance. Still, Davis did not recommend any corrective action. On or around February 2, 2017, Davis closed her investigation finding all of Complainant's complaints were unsubstantiated.

40.     Iyer's retaliatory efforts continued. He further isolated Complainant from the team when he disparaged Complainant to other employees, misrepresented that Complainant did not perform his job adequately, and told Complainant's team members that they should avoid working with him.

41.     On or around March 2, 2017, Complainant sought review of Davis' investigation findings. After repeated attempts to have Cisco review Davis' findings, HR official Tara Powell finally reopened the investigation on or around April 25, 2017. Powell re-interviewed one of the employees to whom Iyer made the comment about Complainant's caste in or around October 2015. The employee stated that he learned about Complainant's caste but refused to tell Powell how he knew, noting that he did not want to say anything about Iyer because they had known each other for a long time. He also stated that he thought Complainant was being treated unfairly and that he was very technically able but was being excluded at work. Powell did not attempt to contact for an

interview the other employee who witnessed Iyer's disclosure of Complainant's caste. Two additional witnesses told Powell that they feared losing their jobs or otherwise being retaliated against for speaking out against Iyer. One of those employees also told Powell that he thought Complainant was very competent and asked appropriate questions, but that Iyer was setting Complainant up to push him out of the company.

42.     Powell's investigation also uncovered a spreadsheet that showed anticipated yearly raises, bonuses, and restricted stock unit awards that Iyer had promised Complainant. These raises, bonuses, and awards never materialized when promised. But Powell also found that four out of the eight other team members received raises in or around October 2016.

43.     In or around August 2017, Powell concluded she could not substantiate any caste-based or related discrimination or retaliation against Complainant. Powell, however, determined that Iyer mocked another employee's religion and thus violated Cisco's Code of Conduct. Still, no immediate corrective action was taken.

44.     Despite Complainant's repeated attempts to bring the caste-based and related discrimination, harassment, and retaliation to Defendant Cisco's attention in 2016 and 2017, Cisco failed to recognize casteism as a form of unlawful religion-, ancestry-, national origin/ethnicity-, and race/color-based discrimination or harassment under state or federal law and failed to conduct a thorough investigation. While the investigation confirmed Complainant was increasingly isolated and treated unfairly by Iyer and Kompella, Cisco failed to take timely and appropriate corrective action. Moreover, Cisco's training was deficient in that it did not adequately train managerial employees on workplace discrimination, harassment, and retaliation, nor did the company prevent, deter, remedy, or monitor casteism in its workforce.

45.     On or around February 26, 2018, Kompella became the Interim Head of Engineering for Cisco's team after Iyer stepped down. In his new role, Kompella supervised Complainant and continued to discriminate, harass, and retaliate against Complainant by, for example, giving him assignments that were impossible to complete under the circumstances. Kompella also began requiring Complainant to submit weekly status reports to him and Senior Vice President/General Manager Tom Edsall.

46.     On or around May 21, 2018, Rajeev Gupta took over from Kompella and became the Director of Engineering. In that role, Gupta supervised Complainant.

47.     Two months later, in or around July 2018, Complainant applied for the position of Director of Research and Development Operations with Gupta. According to Gupta's interview notes, he ranked Complainant as "below average" in six out of eight categories and as "meeting requirements" in the remaining two categories. But Gupta's assessment of Complainant was improperly influenced by Iyer's retaliatory employment actions. Gupta specifically cited Complainant's lead role being taken away and his job reduced to that of an independent contributor in November 2016. Gupta's notes also reflected Iyer's retaliatory criticisms about Complainant's work product, social skills, and insubordination. Complainant did not get the position.

48.     The effect of the unlawful employment practices complained of above was to deprive Complainant of equal employment opportunities, and otherwise adversely affect his status as employees, because of religion, ancestry, national origin/ethnicity, and race/color.

49.     The unlawful employment practices complained of above were intentional.

50.     The unlawful employment practices complained of above were done with malice or with reckless indifference to Complainant's federally and state-protected civil rights.

## FIRST CAUSE OF ACTION
**Violation of FEHA: Discrimination on the Basis of Religion, Ancestry,
National Origin/Ethnicity, and Race/Color
(Cal. Gov't Code, § 12940, subd. (a))
Against Defendant Cisco**

51.     The CRD incorporates and realleges all previous allegations as if fully set forth herein.

52.     The FEHA guarantees all employees a workplace free from unlawful discrimination and harassment based on the employee's religion, ancestry, national origin/ethnicity, and race/color. (Cal. Gov't Code, § 12940, subd. (a).)

53.     As alleged above, Cisco discriminated against Complainant by subjecting him to disparate terms and conditions of employment based on his religion, ancestry, national

origin/ethnicity, and race/color. Among other actions, Cisco reassigned Complainant's job duties and isolated him from his colleagues, denied him a raise, denied him work opportunities that would have led to a raise, denied him a promotion to the Head of Engineering, and denied him a promotion to the Director of Research and Development Operations.

54.     Cisco subjected Complainant to discriminatory comments and conduct because of his religion, ancestry, national origin/ethnicity, and race/color

55.     The alleged discriminatory comments and conduct constitute unlawful discrimination for which Defendant Cisco is liable under California Government Code section 12940, subdivision (a). 56. As a direct result of these unlawful employment practices, Complainant suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

57.     As a direct result of these unlawful employment practices, Complainant suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

58.     Defendant Cisco' s actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Complainant and in conscious disregard of his rights.

59.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Complainant and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

60.     Plaintiff CRD lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

/ / /

/ / /

/ / /

**SECOND CAUSE OF ACTION**
**Violation of FEHA: Harassment on the Basis of Religion, Ancestry, National Origin/Ethnicity, and**
**Race/Color**
**(Cal. Gov't Code, § 12940, subd. (j))**
**Against Defendant Cisco**

61.     The CRD incorporates and realleges all previous allegations as if fully set forth herein.

62.     The FEHA prohibits harassment based on the employee's protected characteristics including, but not limited to, their caste, which includes religion, ancestry, national origin/ethnicity, and race/color. (Cal. Gov't Code, § 12940, subd. (j).) Employers are liable for the harassment of their supervisors. (*Id.*, subd. (j)(1).) Employees and supervisors are liable for their own harassing conduct. (*Id.*, subd. (j)(3).)

63.     As alleged above, as supervisors for Cisco's team, Iyer and Kompella subjected Complainant to offensive comments and other misconduct based on his caste, which includes his religion, ancestry, national origin/ethnicity, and race/color, so severe or pervasive that it created a hostile work environment. Among other things, Iyer and Kompella's comments and conduct include revealing Complainant's caste to his colleagues, disparaging him to the team, isolating him from the rest of the team, reducing his role to that of an independent contributor, giving him assignments that were impossible to complete under the circumstances, and requiring him to submit weekly status reports. Such a work environment where a stigmatizing personal characteristic such as caste is publicized and used to subjugate an individual in order to maintain a centuries-old hierarchy is hostile, intimidating, offensive, oppressive, and abusive. Other employees corroborated that Complainant was isolated from the rest of the team and that Iyer and Kompella were responsible for it. These were observations Cisco was made aware of during its internal investigations. As evidenced by Complainant's repeated internal complaints, he in fact considered the work environment to be hostile, intimidating, offensive, oppressive, and abusive.

64.     As supervisors for Cisco, Iyer and Kompella subjected Complainant to offensive comments and other misconduct based on his caste, which includes his religion, ancestry, national origin/ethnicity, and race/color, so severe or pervasive that it created a hostile work environment.

65.     Because Iyer and Kompella were supervisors within the meaning of the FEHA, Defendant Cisco is liable for their harassing conduct. Defendant Cisco knew or should have known of the conduct as a result of Complainant's internal complaints and is liable for its failure to take immediate and appropriate corrective action.

67.     As a direct result of these unlawful employment practices, Complainant suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

68.     As a direct result of these unlawful employment practices, Complainant suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

69.     Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Complainant and in conscious disregard of his rights.

70.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Complainant and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

71.     Plaintiff CRD lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

### THIRD CAUSE OF ACTION
### Violation of FEHA: Retaliation
### (Cal. Gov't Code, § 12940, subd. (h))
### Against Defendant Cisco

72.     The CRD incorporates and realleges all previous allegations as if fully set forth herein.

73.     California law also guarantees each employees' right to a workplace and business environment free from unlawful retaliation because the employee opposed discriminatory or

-13-

harassing practices that are unlawful under the FEHA. Employers are liable for the retaliatory conduct of supervisors. (Cal. Gov't Code, § 12940, subd. (h).)

74.     As alleged above, as supervisors for Cisco, Iyer and Kompella retaliated against Complainant for opposing their discriminatory and harassing conduct by confronting Iyer and filing internal discrimination complaints. Among other things, Complainant engaged in protected activity by confronting Iyer about disclosing his caste to colleagues and by repeatedly trying to bring the caste-based and related discrimination and harassment to Cisco's attention. Immediately afterwards, Iyer and Kompella subjected Complainant to adverse employment actions including reassigning his job duties, isolating him from colleagues, giving him assignments that were impossible to complete under the circumstances, denying him work opportunities that could have led to a raise, denying him a raise, and denying him promotions. Cisco aided the retaliation.

75.     As supervisors for Cisco, Iyer and Kompella retaliated against Complainant for opposing their discriminatory and harassing conduct by confronting Iyer and filing internal discrimination complaints and Cisco aided the retaliation.

76.     Defendant Cisco is liable for the retaliatory conduct of Iyer and Kompella.

77.     As a direct result of these unlawful employment practices, Complainant suffered economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

78.      As a direct result of these unlawful employment practices, Complainant suffered emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

79.     Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Complainant and in conscious disregard of his rights.

80.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing

-14-

or refusing to comply with the mandates of the FEHA, Complainant and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

81.   Plaintiff CRD lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

### FOURTH CAUSE OF ACTION
**Violation of FEHA: Failure to Take All Reasonable Steps to Prevent Discrimination, Harassment, and Retaliation**
**(Cal. Gov't Code, § 12940, subd. (k))**
**Against Defendant Cisco**

82.   The CRD incorporates and realleges all previous allegations as if fully set forth herein.

83.   California Government Code section 12940(k) provides that it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring. Employers have the affirmative duty to take all reasonable steps to prevent and promptly correct discriminatory, harassing, and retaliatory conduct. (Cal. Code Regs. tit. 2, § 11023, subd. (a).) Cisco's conduct, as described above, constitutes a failure to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation in violation of California Government Code section 12940, subdivision (k).

///

84.   An actionable claim for violation of California Government Code section 12940(k) on behalf of a complainant exists when an underlying claim of discrimination, harassment, or retaliation is established. (Cal. Code Regs. tit. 2, § 11023, subd. (a)(2).)

85.   As alleged above, Defendant Cisco failed to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring within its South Asian Indian workforce. Among other things, Defendant Cisco failed to develop anti-discrimination and anti-harassment policies and practices that recognize and prohibit caste discrimination as a form of unlawful discrimination under state and federal law. Defendant Cisco also failed to provide appropriate training to managers, supervisors employees, human resources, and employee relations

-15-

personnel on how to identify, investigate, remediate, and prevent caste-based discrimination and harassment, or retaliation against employees or persons who oppose discriminatory and harassing practices that are unlawful under the FEHA.

86.     Defendant Cisco failed to prevent discrimination and harassment by its managers and supervisors against Complainant because of his caste.

87.     Defendant Cisco failed to prevent retaliation by its managers and supervisors against Complainant because he opposed discriminatory and harassing practices that are unlawful under the FEHA.

88.     As a direct result of Cisco's failures, Complainant was subjected to unlawful discrimination, harassment, and retaliation by Cisco's managers and supervisors, suffering economic injuries including, but not limited to, lost wages and other compensation, in an amount to be proven at trial.

89.     As a direct result of Cisco's failures, Complainant was subjected to unlawful discrimination, harassment, and retaliation by Cisco's managers and supervisors, suffering emotional distress including, but not limited to, emotional pain, suffering, mental anguish, humiliation, and hopelessness, in an amount to be proven at trial.

90.     Defendant Cisco's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Complainant and in conscious disregard of his rights.

91.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Complainant and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

92.     Plaintiff CRD lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

93.    Plaintiff CRD also seeks monetary relief for Cisco's failure to take all reasonable steps to prevent harassment from occurring.

### FIFTH CAUSE OF ACTION
**Violation of FEHA: Failure to Take All Reasonable Steps to Prevent Discrimination, Harassment,**
**and Retaliation**
**(Cal. Gov't Code, § 12940, subd. (k); Cal. Code Regs. tit. 2, § 11023, subd. (a)(3))**
**On behalf of CRD; Against Defendant Cisco**

94.    The CRD incorporates and realleges all previous allegations as if fully set forth herein.

95.    In an exercise of the CRD's police powers, the CRD may independently seek additional remedies for a violation of Cal. Gov't Code § 12940(k). (Cal. Code Regs. tit. 2, § 11023, subd. (a)(3).) As the agency of the State of California charged with the administration, interpretation, investigation, and enforcement of FEHA, the CRD brings this claim in the name of the CRD on behalf of all Indian persons who are or are perceived to be Dalit, of lower castes, or who fall outside the caste system, who are employed by or may seek employment with Cisco in the future.

96.    As alleged above, Defendant Cisco failed to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring within its South Asian Indian workforce. Among other things, Defendant Cisco failed to develop anti-discrimination and anti-harassment policies and practices that recognize and prohibit caste discrimination as a form of unlawful discrimination under state and federal law. Defendant Cisco also failed to provide appropriate training to managers, supervisors employees, human resources, and employee relations personnel on how to identify, investigate, remediate, and prevent caste-based discrimination and harassment, or retaliation against employees or persons who oppose discriminatory and harassing practices that are unlawful under the FEHA.

97.    Cisco's failure to take any reasonable steps to prevent, deter, remedy, or monitor casteism and related violations in its workforce exposes a significant portion of its South Asian Indian workforce to the risk of discrimination, harassment, and retaliation on the basis of their caste and related characteristics.

98.     Defendant Cisco engaged in, and by its refusal to comply with the law, demonstrated it will continue to engage in, the unlawful employment discrimination described herein unless it is enjoined pursuant to the FEHA. Unless Defendant Cisco is enjoined from failing or refusing to comply with the mandates of the FEHA, Complainant and other persons' rights to seek or hold employment free of unlawful discrimination will continue to be violated.

99.     Plaintiff CRD lacks any plain, speedy, and adequate remedy at law to prevent such harm, injury, and loss that is the subject of this complaint and will continue until this Court enjoins the unlawful conduct and grants other injunctive relief as prayed for herein.

## **PRAYER FOR RELIEF**

WHEREFORE, the CRD respectfully requests that this Court:

1.      Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination and harassment based on religion, ancestry, national origin/ethnicity, and race/color.

2.      Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in retaliation.

3.      Order Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for individuals regardless of their religion, ancestry, national origin/ethnicity, and race/color, and that eradicate the effects of their past and present unlawful employment practices.

4.      Order Defendants to make Complainant whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other injunctive relief necessary to eradicate the effects of Defendants' unlawful employment practices.

5.      Order Defendants to make Complainant whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein, in amounts to be determined at trial.

6.      Order Defendants to make Complainant whole, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of herein, including losses such as emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

7.      Order Defendants to pay Complainant punitive damages for their malicious and/or reckless conduct described herein, in amounts to be determined at trial.

8.      Grant such further relief as the Court deems necessary and proper in the public interest.

9.      Award the CRD its costs of this action, including reasonable attorneys' fees, as provided by statute.

## JURY TRIAL DEMAND

The CRD requests a jury trial on all questions of fact raised by its complaint.

Dated: March 18, 2024                          CALIFORNIA CIVIL RIGHTS
                                               DEPARTMENT

                                               By: _____
                                               Rumduol Vuong
                                               Assistant Chief Counsel
                                               Counsel for Plaintiffs

*Cal. Civil Rights Department v. Cisco Systems, Inc., et al.* (20CV372366)
Civil Rights-Second Amended Complaint

**PROOF OF SERVICE**

I, Salina Powell, the undersigned, hereby declare:

I am over eighteen years of age and not a party to the within cause. My business address is 555 12th Street, Suite 2050, Oakland, CA 94607. My electronic service address is Carolina.Arana@calcivilrights.ca.gov.

On the date below, I served the following document(s) via Electronic Service:

- **CIVIL RIGHTS – SECOND AMENDED COMPLAINT**

In the case *DFEH v. Cisco Systems, Inc. et al.*, Santa Clara County Superior Court Case No.: 20CV372366, to the person(s) listed below at the following e-mail address(es):

| | |
|---|---|
| Lynne C. Hermle<br>lchermle@orrick.com<br>Joseph C. Liburt<br>jliburt@orrick.com<br>Nicholas J. Horton<br>nhorton@orrick.com<br>Attorneys for Defendant Cisco Systems, Inc. | |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **March 27**, at Oakland, CA.


_Carolina Arana_
Carolina Arana
CA Civil Rights Department (formerly DFEH)