Timothy C. Travelstead, Esq. (SBN 215260)
  t.travelstead@narayantravelstead.com
Scott C. Ku, Esq. (SBN 314970)
  s.ku@narayantravelstead.com
NARAYAN TRAVELSTEAD P.C.
7901 Stoneridge Drive, Suite 230
Pleasanton, CA 94588
Telephone: (650) 403-0150

Attorneys for Plaintiffs
HINDU AMERICAN FOUNDATION;
SAMIR KALRA; MIHIR MEGHANI;
SANGEETHA SHANKAR; DILIP AMIN; SUNDAR IYER;
RAMANA KOMPELLA; AND DOES ONE TO THREE

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDU AMERICAN FOUNDATION, INC., a Florida Not For Profit Corporation; Samir Kalra Mihir Meghani; Sangeetha Shankar; Dilip Amin, Sundar Iyer, Ramana Kompella as individuals; and Doe Plaintiffs One to Three<br><br>Plaintiffs,<br><br>vs.<br><br>KEVIN KISH, an individual, in his official capacity as Director of the California Civil Rights Department; and DOES 1 - 50, inclusive,<br><br>Defendants. | Case No. 2-22-CV-01656-DAD-JDP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**<br><br>Date:   August 20, 2024<br>Time:   1:30 p.m.<br>Judge:  Hon. Dale A. Drodz<br><br>Date Action Filed:   September 20, 2022<br>FAC Filed: September 21, 2023 |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**                    Case No. 2-22-CV-01656-DAD-JDP

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................. 1

II.  PROCEDURAL HISTORY ................................................................................................. 2

III. DISCUSSION ....................................................................................................................... 3

    A.   The *Younger* Abstention Doctrine Does Not Apply Because There Is No Criminal Proceeding in State Court .................................................................... 3

    B.   The Hindu American Foundation Has Standing To Bring These Claims. ....... 6

        *1.   The Hindu American Foundation Has Direct Standing to Bring First and Fourteenth Amendment Claims Based On Its Own Injury.* ............. 7

        *2.   The Hindu American Foundation Has Associational Standing to Bring First and Fourteenth Amendment Claims Based Injury to Its Members* 9

    C.   Plaintiffs' FAC States Sufficient Claims for Relief .......................................... 11

IV.  CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Allison v. California Adult Authority*, 419 F. 2d 822 (9th Cir. 1969) ........................................... 15

*Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021) ............................................ 7, 10

*AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143 (9th Cir. 2007) ......................................... 4, 5

*Applied Underwriters, Inc. v. Lara,* 37 F.4th 579 (2022) ............................................................... 4

*Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018) ....................................................................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 14

*Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557 (1987) ................................................. 14

*Balderas v. Countrywide Bank N.A.*, 664 F. 3d 787 (9th Cir. 2011) ........................................... 15

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 14

*Benavidez v. Eu*, 34 F.3d 825 (9th Cir. 1994) ................................................................................ 5

*Betschart v. Oregon*, 103 F.4th 607 (9th Cir. 2024) ...................................................................... 6

*Catholic League for Religious & Civ. Rights v. City & County of San Francisco,* 624 F.3d 1043
    (9th Cir. 2009) ............................................................................................................................ 7

*Cent. Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002) ................................. 12

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) .................................................................... 14

*Conley v. Gibson*, 355 U.S. 41 (1957) ......................................................................................... 13

*Epos Tech. v. Pegasus Tech,* 636 F. Supp.2d 57 (D.D.C. 2009) .................................................. 14

*Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160 (CD Cal. 2002) ....................................................... 13

*Gilligan v. Jamco Development Corp.*, F. 3d 246 (9th Cir. 1997) ............................................... 13

*Guerrero v. Gates*, 357 F. 3d 911 (9th Cir. 2004) ....................................................................... 13

*Hunt v.Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ................................................. 7

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ............................................................... 8, 10

*Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423 (1982) ................. 4

- ii -

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**            Case No. 2-22-CV-01656-DAD-JDP
**TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) .............................................................. 16

*Nami v. Fauver*, 82 F. 3d 63 (3rd Cir. 1996) ................................................................................ 15

*Nielsen v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (CD Cal. 2003) ............................... 13

*Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003) ........................................................ 11, 12

*Peterson v. Grisham*, 594 F. 3d 723 (10th Cir. 2010) .................................................................. 15

*Potrero Hills Landfill, Inc. v. Cty. of Solano,* 657 F.3d 876 (9th Cir. 2011) .................................. 5

*Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584 (2013) ............................................................ 4, 5

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)..................................................................... 13

*United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544 (1996)......... 12

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ......................................................... 7

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982) ................................................................................................................................ 8, 10

*Vasquez v. Los Angeles Cnty*, 487 F.3d 1246 (9th Cir. 2007) ........................................................ 9

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977)*.............................. 11

*Younger v. Harris,* 401 U.S. 37 (1971)....................................................................................... 3, 5

**Statutes**

Fed. Rules of Civil Procedure, Rule 8 .......................................................................................... 12

Fed. Rules of Civil Procedure, Rule 12 ........................................................................................ 12

## I. INTRODUCTION

Defendant's current Motion to Dismiss is yet another unconscionable attempt by a "Civil Rights Agency" to deny Plaintiffs their civil rights and to be heard on the merits of this case. Reading his description of the enforcement action the California Civil Rights Department ("CRD") filed in Santa Clara County Superior Court (Case No. 20-CV-372366, the "State Action"), you would be hard-pressed to believe the case had any connection to religion. It characterizes its efforts as a normal part of its mandate to "safeguard the right and opportunity of all persons to seek…employment without discrimination or abridgement on account of race, religious creed" or any of the other categories listed in the Fair Employment and Housing Act ("FEHA").

The State Action engages in the very discrimination the CRD is charged with preventing, discrimination based on religious creed. Worse, it engages in that discrimination based on a wrong and misguided fallacy about Hinduism, thereby promoting the very misinformation that leads to anti-Hindu discrimination in society generally. Defendant's Motion suggests that the CRD has filed a cause of action for caste discrimination against Cisco. But it has not. Rather, it has brought a claim for discrimination and harassment "on the Basis of Religion, Ancestry, National Origin/Ethnicity, and Race/Color" on behalf of a single individual, Mr. Chetan Narsude.

And that is the crux of the entire case. The CRD included a claim that caste discrimination was a form of religious discrimination based on its wrongheaded contention that caste is "a strict Hindu social and religious hierarchy," that the individual defendants and other employees of Indian origin "imported the discriminatory system's practices into their team and Cisco's workplace," and that Cisco was liable for caste-based discrimination because it "failed to recognize casteism as a form of unlawful religion-, ancestry-, national-origin/ethnicity- and recognize casteism as a form of unlawful religion-, ancestry-, national-origin/ethnicity- and race/color-based discrimination." (See, Civil Rights – Second Amended Complaint ("Complaint").)

The Hindu American Foundation ("HAF") has not filed this action to decide whether or not caste discrimination, properly understood as having nothing to do with Hindu religious teachings, is or is not prohibited by FEHA. HAF does not claim that FEHA is unconstitutional

- 1 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION                Case No. 2-22-CV-01656-DAD-JDP
TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)

on its face, and has not filed this action to determine whether or not applying it to prohibit caste discrimination is unconstitutional, but it *does* contest that the CRD's enforcement position, as revealed in the State Action, is an unconstitutional application of FEHA to the extent it relies on the wrong and defamatory assertion that Hindu religious beliefs require adherence to a "strict social and religious hierarchy" and that, therefore, caste discrimination is religious discrimination based on a misrepresentation of Hindu beliefs.

HAF objects to the CRD's gross mischaracterization of Hinduism as requiring caste discrimination, and very much objects to adopting enforcement positions based on this gross and unconstitutional misrepresentation that perpetuates damaging stereotypes about Hindu teachings. HAF objects to the CRD's enforcement position as a violation of its Free Exercise, Due Process, and Equal Protection rights under the First and Fourteenth Amendments to the U.S. Constitution.

HAF has actively defended the rights of Hindu Americans throughout the country, is directly harmed by the CRD's unconstitutional actions, and has standing to assert those claims under its First Amended Complaint ("FAC") completely and accurately states those claims, and Defendant's attempts to avoid that reality by simply ignoring the clear and concise statement of those claims in the FAC is without merit.

HAF has both direct and associational standing to assert these claims and has included all the allegations to establish its claims here. It, therefore, respectfully asks the Court to deny the Motion and order Defendant to respond to these claims rather than trying to avoid answering for its unconstitutional conduct through meritless jurisdictional arguments.

## II.    PROCEDURAL HISTORY

In October 2020, the California Civil Rights Department ("CRD") initiated an action in state court on behalf of Mr. Narsude against his employer Cisco Systems, Inc. ("Cisco") and two of its supervisors, now-Plaintiffs Sundar Iyer and Ramana Kompella. The CRD's state court action alleges that Mr. Narsude has suffered discrimination, harassment, and retaliation based on his Dalit caste, in violation of the FEHA's prohibition against discrimination and harassment based on national origin/ethnicity, ancestry, race/color, and religion (referred to herein as the "State Action" or "*CRD v. Cisco*").

Subsequently, HAF filed this federal action against the Department's Director, Kevin Kish, under section 1983 of Title 42 of the United States Code ("Section 1983"), alleging that the CRD's efforts to remedy caste- based discrimination at Cisco violate the United States Constitution's Free Exercise Clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment by linking the practice of caste discrimination to Hinduism.  Through this suit, HAF seeks to have this Court declare the CRD's state suit against Cisco unconstitutional and enjoin the CRD from pursuing certain types of future employment discrimination actions.

After Defendant filed and the Court granted a motion to dismiss HAF's original complaint, on September 21, 2023, HAF filed its First Amended Complaint ("FAC"), adding nine new individual plaintiffs (collectively the "Individual Plaintiffs")—including three unnamed "Doe" plaintiffs and two new claims under the United States Constitution's Establishment Clause of the First Amendment and Equal Protection Clause of the Fourteenth Amendment. Defendant has now filed a motion to dismiss the FAC.  Defendant asserts several bases for its motion to dismiss, including the abstention doctrine under *Younger v. Harris,* 401 U.S. 37, 41 (1971), that HAF lacks standing to pursue the FAC, and that the FAC fails to state claims for which relief can be granted.

### III.     DISCUSSION

#### A.     The *Younger* Abstention Doctrine Does Not Apply Because There Is No Criminal Proceeding in State Court

Defendant argues this Court should refrain from hearing this case because there is an on–going state proceeding akin to a criminal proceeding that implicates important state interests and provides Plaintiffs with an appropriate forum to raise their constitutional rights claims.  The *Younger* Abstention Doctrine <u>does not apply</u> because not all of its requirements are met.

The Supreme Court has held there is a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris,* 401 U.S. 37, 41 (1971).  In "exceptional circumstances," the *Younger* abstention doctrine instructs federal courts to decline to hear a case when a parallel state criminal proceeding is ongoing.  *Applied Underwriters, Inc. v. Lara,* 37 F.4th 579, 588 (2022); see also *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013).  However, *Younger* abstention is not

- 3 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION         Case No. 2-22-CV-01656-DAD-JDP
TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)

justified simply because there happens to be parallel state and federal proceedings; a federal court's obligation to hear and decide a case is still "virtually unflagging." *Id*. at 590–91.  It is only proper for a federal court to abstain from that "unflagging" obligation when three elements are met: (1) there must be ongoing state proceedings; (2) the proceedings must implicate important state interests; and (3) the federal plaintiff must be able to litigate its federal claims in the state proceedings. *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 433 (1982).  Each of these elements must be satisfied to justify abstention; that is, abstention cannot be based on "weighing" or "balancing" these elements. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007).  It is also vital that the policies behind the *Younger* doctrine be implicated by the actions requested of the federal court. *Id*. at 1149.  Put another way, if the three *Younger* elements set out in *Middlesex* are satisfied, "the court does not automatically abstain, but abstains only if there is a *Younger*–based reason to abstain—i.e., if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." *Id.*

The first requirement for *Younger* abstention is that there must be parallel state *criminal* proceedings.  There are no criminal proceedings involved herein.  *CRD v. Cisco* is not a criminal proceeding nor "akin" to a criminal proceeding.  There are monetary remedies available to the CRD and Mr. Narsude should they prevail in their action against Cisco.  For that reason alone, the action cannot be deemed "criminal" or "akin to a criminal prosecution."  Moreover, "the hallmark of the civil enforcement proceeding category for *Younger* purposes" is when a defendant in the state action initiates the federal action to challenge the state action. *Applied Underwriters, Inc. v. Lara,* 37 F.4th 579, 588 (2022).  Had Cisco initiated this federal action, *Younger* abstention may apply.  However, none of the Plaintiffs here are a part of the state action.  Since Defendant will be unable to establish each of the *Younger* factors, abstention is not warranted herein.  The *Younger* doctrine simply does not apply to this case.

Further, the *CRD v. Cisco* case does not implicate important state interests.  The interests in that case are personal to Mr. Narsude and not to the State of California.  The case is not a class or representative action but is simply a single plaintiff case wherein the remedies will only benefit one person. *Sprint Communs., Inc. v. Jacobs,* 571 U.S. 69 (2013) (holding *Younger* did not apply in part because the proceeding was intended "to settle a civil dispute between two

- 4 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION                          Case No. 2-22-CV-01656-DAD-JDP
TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)

private parties"). When assessing the importance of a state's asserted interest, courts are to consider "its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case." *AmerisourceBergen*, 495 F.3d at 1150. "The key to determining whether comity concerns are implicated in an ongoing state proceeding—and thus whether the second *Younger* requirement is met—is to ask whether federal court adjudication would interfere with the state's ability to carry out its basic executive, judicial, or legislative functions. Unless interests 'vital to the operation of state government' are at stake, federal district courts must fulfill their 'unflagging obligation' to exercise the jurisdiction given them." *Potrero Hills Landfill, Inc. v. Cty. of Solano,* 657 F.3d 876, 883 (9th Cir. 2011).

Here, Defendant has not communicated clearly and precisely how vital the asserted "criminal law enforcement" interest is in this case. Although Plaintiffs recognize the importance in protecting the public from discrimination, characterizing the state interest as "the general welfare" or "public safety" is meaningless. Moreover, were the Court to abstain from hearing any matter concerning the constitutionality of a state law, policy or action, federal court jurisdiction would be restricted in a profound way. Thus, the fact that the instant action involves a state policy does not by itself usher this case under the umbrella of *Younger* abstention.

Moreover, Plaintiffs have *not* had a full and fair opportunity to litigate their federal claims during the ongoing state proceedings. *Benavidez v. Eu*, 34 F.3d 825, 831 (9th Cir. 1994) (citing *Ohio Civil Rights Comm'n, Inc. v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 627). When individual Plaintiffs Sundar Iyer and Ramana Kompella raised the issue and sought for sanctions against the CRD, the CRD quickly withdrew their claims and dismissed them from the case. And the state court further declined HAF's attempt to intervene. Thus, Defendant has not met the burden of showing that the federal claims in this action can be litigated in the specific state court proceeding.

Finally, even where the *Younger* factors are satisfied, 'federal courts do not invoke it if there is some extraordinary circumstance that would make abstention inappropriate. *Betschart v. Oregon*, 103 F.4th 607, 618 (9th Cir. 2024). The extraordinary circumstances exception constitutes an independent basis for federal intervention, regardless of whether the *Younger* factors were met. *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). The *Younger* abstention doctrine does not apply where it would result in irreparable harm. *Id.* at 766. Here,

- 5 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION                         Case No. 2-22-CV-01656-DAD-JDP
TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)

Plaintiffs would be irreparably harmed if this Court abstains and the CRD is permitted to define and denigrate the Hindu religion and characterize it as a caste system, and pursue religious discrimination claims on its definition of religious doctrine.

### B. The Hindu American Foundation Has Standing To Bring These Claims.

Defendant's argument that HAF lacks associational standing to bring this action lacks merit. HAF has direct and associational standing to bring the claims.

The California Civil Rights Department's ("CRD") denigration of the Hindu religion and blanketly racist statements about people of Indian origin and to the corresponding psychologically damaging and spiritually deflating impact on HAF's leadership, staff and membership represents the precise type of concrete injury which gives HAF standing to bring the claims here. HAF has standing both directly because of the injury to itself as an association and based on the injuries it inflicts on its members and the Hindu American community.

To invoke organizational standing on behalf of its members, the plaintiff must allege facts demonstrating that: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

As set forth in the FAC, the Individual Plaintiffs are all California-based supporters, members, or constituents of HAF. They have all suffered concrete injury, based on the CRD's hurtful, harmful and impermissible misrepresentations about Hinduism. Each has an injury traceable to the conduct of the CRD falsely claiming that Hinduism is an inherently discriminatory religion. And that injury is likely to be redressed by the injunctive relief sought here. Each of the Individual Plaintiffs have suffered a deep mental, psychological and spiritual injury based on the CRD's conduct. The CRD has labeled all Hindus, and all Indian Americans, as adhering to a discriminatory caste system that Hinduism and the overwhelming majority of Indian Americans reject. The CRD labels Hindus and Indian Americans, "second-class citizens" and that "their participation in the political community will be chilled" by the State of California labeling them as inherently caste-ist. *Catholic League for Religious & Civ. Rights v. City &*

*County of San Francisco,* 624 F.3d 1043, 1049 (9th Cir. 2009). The Individual Plaintiffs suffered the "spiritual or psychological harm" sufficient to establish standing here. *Id.* at 1050.

An organization has standing on its own behalf if it can show: (1) that the defendant's actions have frustrated its mission; and (2) that it has spent resources counteracting that frustration of mission. *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013). As alleged in the FAC, HAF has suffered an injury because of CRD's wrongfully identifying caste as an inherent part of Hinduism. HAF has Hindu staff members in California who the CRD has maligned with its defamatory claims. HAF has extensive Hindu donors and supporters throughout the state, and HAF itself has had to expend considerable time and resources defending the integrity of Hinduism against this unjust and unconstitutional attack by the CRD. The CRD's decision to falsely label Hinduism as caste-ist as part of its litigation against Cisco directly and negatively affected HAF. Before the CISCO case, HAF focused on other areas of advocacy, including ensuring Hinduism is properly reflected in California public schools. After the CRD's actions, HAF faced a barrage of calls and concerns from Hindu Americans living in California because of the false claims about Hinduism, with the concern particularly intense in technology-related workplaces where Hindus and Indians faced hateful reactions from coworkers who now see them as agents of religiously and culturally mandated discrimination because of the CRD's position.

The CRD has treated Hinduism and Hindus disfavorably, and in an unequal manner and different than the manner in which it treats other religions or their adherents. In doing so, the CRD is violating the First Amendment's Establishment and Free Exercise clauses as well as the 14th Amendment's equal protection and due process rights of all Hindu Americans.

### 1. The Hindu American Foundation Has Direct Standing to Bring First and Fourteenth Amendment Claims Based On Its Own Injury.

The constitutional requirement of standing has three elements: (1) the plaintiff must have suffered an injury-in-fact – that is, a concrete and particularized invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical; (2) the injury must be causally connected - that is, fairly traceable - to the challenged action of the defendant and not the result

- 7 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION                                    Case No. 2-22-CV-01656-DAD-JDP
TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)

of the independent action of a third party not before the court; and (3) it must be likely and not merely speculative that the injury will be redressed by a favorable decision by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-476 (1982).

Because of the nature of the religious rights embodied in the Free Exercise clause, injury in religious freedom cases does not need to involve physical or financial injuries, but rather the freedom the amendment grants the people to be free from the spiritual and mental suffering that government denial of that religious freedom involves. *Vasquez v. Los Angeles Cnty*, 487 F.3d 1246, 1250 (9th Cir. 2007).

The Ninth Circuit has clearly described this very standard in *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 624 F.3d 1043 (9th Cir. 2009) (en banc). The Court found the psychological consequence produced by the government's condemnation of a person's religion is a concrete harm sufficient to establish standing to sue for an Establishment Clause claim. *Id*. at 1053. The *Catholic League* Court reasoned that its decision was consistent with prior United States Supreme Court decisions where standing was established in cases involving prayer at a football game, a creche in a county courthouse or public parks, the Ten Commandments displayed on the grounds of a state capital or at a courthouse, a cross display at a national park, school prayer, a moment of silence at school, Bible reading at public school and a religious invocation at a graduation. *Id*. at 1049-1050 (citations omitted).

This is precisely the concrete harm present here. HAF alleges the CRD is both defining and denigrating its Hindu religion by pursuing enforcement actions under the California Fair Employment and Housing Act ("FEHA") based on the defamatory assertion that a caste system and caste-based discrimination are integral parts of Hindu teachings and practices. HAF alleges further that it has consistently maintained throughout its history, a caste system or discrimination on its basis are in no way a legitimate part of Hindu beliefs, teachings, or practices. Perhaps most importantly HAF alleges that it vehemently opposes all types of discrimination; and takes great exception to the State of California defining, defaming and demeaning all of Hinduism by attempting to conflate a discriminatory caste system with the Hindu religion.

HAF also satisfies the two remaining elements required to establish direct standing, e.g. the injury must be causally connected - that is, fairly traceable - to the challenged action of the defendant and not the result of the independent action of a third party not before the court; and it must be likely and not merely speculative that the injury will be redressed by a favorable decision by the court. *Lujan, supra,* 504 U.S. 555, 560-61; *Valley Forge Christian Coll., supra*, 454 U.S. 464, 475-76.

HAF is directly harmed by the CRD's actions. The CRD's defamatory and unconstitutional actions against Hindu teachings and practices have directly affected HAF and the three board members, four staff members, three National Leadership Council members, four Advisory Committee members, 815 donors, 5,000 HAF newsletter recipients, and half dozen Hindu scholars that work with HAF and live and work in California.

These harms, and the harms inflicted on all Hindu Americans and people of South Asian decent that are presumed to be practicing Hindus, is clearly traceable to CRD's denigration of the Hindu Religion, the enforcement actions it is currently prosecuting against a California employer (Cisco) and California residents based on the CRD's defamatory assertions that Hindu employees followed a "Hindu strict social and religious hierarchy."

Finally, because HAF seeks declaratory and injunctive relief as remedies for the Defendant's wrongdoing (State Action Complaint – Prayer at ¶¶ 1-4), the injury will be redressed by a favorable decision of the Court.

> 2. ***The Hindu American Foundation Has Associational Standing to Bring First and Fourteenth Amendment Claims Based Injury to Its Members***

Defendant spends much of the motion arguing that HAF does not have associational standing to bring the claim. Technical membership structures are not required to satisfy the requirements for associational standing. Rather, an organization satisfies the *Hunt* requirements for associational standing where "the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (*quoting Or. Advoc. Ctr. v. Mink, 322 F.3d 1101, 1111 (9th Cir. 2003); further quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 261 (1977))*. "The ultimate consideration when determining whether an organization has associational standing is whether it has a

'personal stake in the outcome of the controversy.'" *Id.; quoting Oregon Advocacy*, 322 F.3d at 1111 (citation omitted).

HAF represents the interests of Hindu Americans throughout the United States, including those working at Cisco, as alleged in the State Action by the CRD itself. By filing the State Action, the CRD has harmed those interests, directly affecting the California-based Hindu Americans that HAF represents. It has a clear and undeniable "personal stake" in the outcome of the controversy, and therefore has standing to assert these claims here. HAF Board members, employees, Leadership and Advisory Council members, donors, newsletter readers and scholars residing in California have been directly harmed by the CRD's actions, requiring significant redeployment of HAF resources and personally subjecting them to the emotional and spiritual injuries of CRD's gross mischaracterization of Hindu teachings. HAF represents the interests of Hindu Americans in California and across the nation, and Defendant's standing arguments simply have no merit.

Defendant argues that HAF lacks standing because the lawsuit is not germane to its purpose. Nothing could be further from the truth. Preventing governmental attacks on the religious freedoms of Hindu Americans, and establishing the right to all faiths to define for themselves the scope of their own religious beliefs, is central to the Hindu American Foundation's mission and purpose, as is ensuring that ethnic minorities enjoy equal protection under the law.

Defendant argues that associational standing is not appropriate here under *Hunt* because participation of individual members is necessary to the adjudication of the claims. The claims here are not based on an individual decision or practice affecting certain members or interfering with a subset of the Hindu American community in California. Rather, it is based on a blanket mischaracterization and slander against Hindu beliefs, followed by a legal assertion by the government that those beliefs require all Hindus to violate FEHA.

"The third prong of *Hunt*, which requires that associations have standing only when neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit,' [citation], is one such prudential, as opposed to constitutional, requirement of standing." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1113 (9th Cir. 2003) *quoting Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *and citing United*

- 10 -
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION        Case No. 2-22-CV-01656-DAD-JDP
TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)

*Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 557 (1996).  "[T]he third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution."  *United Food, supra*, 517 U.S. at 557; *see also Cent. Delta Water Agency v. United States*, 306 F.3d 938, 951 n.9 (9th Cir. 2002) (noting that unlike the first two *Hunt* factors, "the third factor is 'merely prudential,' and designed to promote efficiency in adjudication").

Here, there is no prudential need for the participation of individual members.  In this case, the CRD has mischaracterized Hindu beliefs as requiring a strict caste hierarchy and caste-based oppression and then declared that that strict caste hierarchy and oppression violates the Fair Employment and Housing Act.  No participation of individual members is needed to show whether labeling all Hindus as inherently guilty of violating the Fair Employment and Housing Act constitutes a violation of the Free Exercise Clause.

In this case, the CRD has taken a blanket position that mischaracterizes Hindu belief and practice and then labels all Hindus, especially those employees of Indian origin at Cisco, as inherently discriminatory in violation of FEHA based on that mischaracterization. No involvement of individual members is needed to determine whether these actions violate the Free Exercise Clause.

    **C.**    **Plaintiffs' FAC States Sufficient Claims for Relief**

The purpose of a motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure (FRCP), Rule 12(b)(6) ("Rule 12(b)(6)") is to test the formal sufficiency of the plaintiff's statement of the claim for relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Navarro v. Block*, 250 F. 3d 729, 732 (9th Cir 2001).  A motion for failure to state a claim is not a procedure for resolving a contest about the merits of the case.  *Nielsen v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1151 (CD Cal. 2003).  Dismissal for failure to state a claim is appropriate only when the plaintiff can prove no set of facts supporting relief.  *Guerrero v. Gates*, 357 F. 3d 911, 916 (9th Cir. 2004).  Thus, the motion is viewed with disfavor and is rarely granted.  *Gilligan v. Jamco Development Corp.*, F. 3d 246, 249 (9th Cir. 1997); *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1164-1165 (CD Cal. 2002).

The legal sufficiency of a complaint is measured by whether it meets the pleading standards set forth in FRCP Rule 8.  The party bringing a motion to dismiss for failure to state a claim bears the burden of demonstrating that the plaintiff has not met the pleading requirements of Rule 8(a)(2) in stating a claim. *Gallardo*, *supra* at 1165.  Rule 8(a)(2) requires parties seeking relief in federal court a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief.  FRCP Rule 8(a)(2).  Each allegation must be simple, concise and direct. FRCP Rule 8(d)(1).

A complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); accord *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint").  "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Epos Tech. v. Pegasus Tech,* 636 F. Supp.2d 57, 63 (D.D.C. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

Thus, the Federal Rules embody notice pleading and require only a concise statement of the claim, rather than evidentiary facts.  Factual allegations must be enough to raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This plausibility standard does not require heightened fact pleading of specifics.  Rather it requires enough facts to state a claim to relief that is plausible on its face. *Id*. at 555-556.

When considering a motion to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must assume as true all allegations contained in the complaint. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).  On FRCP 12(b)(6) motions, the court must assess the legal feasibility of the complaint and whether a plaintiff has pled claims for which he or she is entitled to discovery. *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000); Chance, 143 F.3d at 701.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court held that courts should entertain a motion to dismiss by following a two-pronged approach:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a

- 12 -

> complaint, they must be supported by factual allegations. When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

A complaint containing allegations that, if proven, present a winning case is not subject to dismissal under Rule 12(b)(6) "no matter how unlikely such winning outcome may appear" to the district court. *Balderas v. Countrywide Bank N.A.*, 664 F. 3d 787, 791 (9th Cir. 2011). Plaintiff's ability to prove his or her allegations, or possible difficulties in making such proof, is generally of no concern in ruling on Rule 12(b)(6) motions: "In considering a 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims. *Nami v. Fauver*, 82 F. 3d 63, 65 (3rd Cir. 1996); see *Allison v. California Adult Authority*, 419 F. 2d 822, 823 (9th Cir. 1969); *Peterson v. Grisham*, 594 F. 3d 723, 727 (10th Cir. 2010) – court does not weigh potential evidence parties may present at trial.

Because Plaintiffs' FAC satisfies the pleading requirements of Rule 8, and sets forth a plausible claim for relief under the Establishment Clause, the Free Exercise Clause, the Due Process Clause, and the Equal Protection Clause, this Motion to Dismiss should be denied in its entirety. This is not the stage of the pleadings to test the veracity of the allegations of the FAC. As noted above, the relevant inquiry is not whether the Plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims. Plaintiffs are entitled to offer evidence to support their claims and any argument to the contrary is specious.

### IV.   CONCLUSION

This court should not abstain from proceeding on Plaintiffs' FAC. Plaintiffs have standing to bring these claims and Plaintiffs have clearly stated causes of action under 42 U.S.C. § 1983 based on the CRD's violation of the Establishment Clause, Free Exercise, Due Process, and Equal Protection clauses of the First and Fourteenth Amendments to the U.S. Constitution.

Accordingly, Plaintiffs respectfully ask the Court to deny this Motion to Dismiss. Alternatively, Plaintiffs request leave to amend their FAC. "Courts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citations omitted).

Dated: July 3, 2024 NARAYAN TRAVELSTEAD P.C.

<u>/s/ Timothy C. Travelstead</u>
Timothy C. Travelstead, Esq.
Scott C. Ku, Esq.
Attorneys for Plaintiff
HINDU AMERICAN FOUNDATION;
SAMIR KALRA; MIHIR MEGHANI;
SANGEETHA SHANKAR; DILIP AMIN;
SUNDAR IYER; RAMANA KOMPELLA; AND
DOES ONE TO THREE