UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDU AMERICAN FOUNDATION, INC., et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>KEVIN KISH,<br><br>        Defendant. | No. 2:22-cv-01656-DAD-JDP<br><br>ORDER DENYING PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYMS AND DENYING MOTION TO DISMISS AS MOOT<br><br>(Doc. Nos. 24, 41) |

    This matter is before the court on the motion to proceed pseudonymously filed by plaintiffs Hindu American Foundation, Inc. ("HAF"); Sundar Iyer; and Does 1–3. (Doc. No. 24.) On October 10, 2023, the pending motion was taken under submission to be decided on the papers. (Doc. No. 26.) For the reasons explained below, the court will deny the motion and direct plaintiffs to file a second amended complaint that either identifies the Doe plaintiffs by name or removes them as plaintiffs in this action. Consequently, the court will also deny defendant's pending motion to dismiss (Doc. No. 41) as having been rendered moot by this order.

## BACKGROUND

    On September 20, 2022, plaintiff HAF initiated this action seeking declaratory and injunctive relief against defendant Kevin Kish, in his official capacity as the director of the California Civil Rights Department (the "Department"), for allegedly violating the constitutional rights of all Hindu Americans by initiating a Fair Employment and Housing Act ("FEHA")

1   enforcement action in state court against Cisco Systems, Inc. ("Cisco") for discrimination,
2   harassment, and retaliation against an employee based on his caste status.  (Doc. No. 1.)  Plaintiff
3   HAF alleges that the Department's discrimination suit brought against Cisco (the "Cisco Action")
4   violated the U.S. Constitution's Free Exercise Clause of the First Amendment and the Due
5   Process and Equal Protection Clauses of the Fourteenth Amendment by linking the practice of
6   caste discrimination to Hinduism.  (*Id.*)

7   On February 6, 2023, defendant filed a motion to dismiss the original complaint, which
8   the court granted on August 31, 2023, with leave to amend.  (Doc. Nos. 8, 20.)  On September 21,
9   2023, plaintiff HAF filed the operative first amended complaint ("FAC"), adding nine new
10  individual plaintiffs, including the three Doe plaintiffs.  (Doc. No. 21).  The crux of plaintiffs'
11  FAC—disagreement with the Department's efforts to enforce FEHA and remedy caste-based
12  discrimination through the Cisco Action—remains the same as in the original complaint.  (*See*
13  *id.*)

14  On October 6, 2023, plaintiffs HAF, Sundar Iyer, and the Doe plaintiffs filed the pending
15  motion to allow the three Doe plaintiffs to proceed under pseudonyms.  (Doc. No. 24).  On May
16  20, 2024, defendant filed an opposition to the pending motion, as well as a motion to dismiss the
17  FAC.  (Doc. Nos. 40, 41.)  On July 3, 2024, plaintiffs filed a reply in support of their motion to
18  allow the Does plaintiffs to proceed pseudonymously in this action.  (Doc. No. 46.)  The pending
19  motion to dismiss has also been fully briefed.  (Doc. Nos. 45, 48.)

20  **LEGAL STANDARD**

21  "[M]any federal courts, including the Ninth Circuit, have permitted parties to proceed
22  anonymously when special circumstances justify secrecy."  *Does I thru XXIII v. Advanced Textile*
23  *Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000).  "In this circuit, . . . parties [may] use pseudonyms in
24  the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person
25  from harassment, injury, ridicule or personal embarrassment.'"  *Id.* at 1067–68 (quoting *United*
26  *States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).  "[A] district court must balance the need
27  for anonymity against the general presumption that parties' identities are public information and
28  the risk of unfairness to the opposing party."  *Id.* at 1068.

1       The Ninth Circuit has identified three situations in which parties have been allowed to
2 proceed under pseudonyms: "(1) when identification creates a risk of retaliatory physical or
3 mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and
4 highly personal nature; and (3) when the anonymous party is compelled to admit [his or her]
5 intention to engage in illegal conduct, thereby risking criminal prosecution . . . ." *Id.* (citations
6 and internal quotation marks omitted).  A party requesting to proceed pseudonymously has the
7 burden of showing that their "need for anonymity outweighs prejudice to the opposing party and
8 the public's interest in knowing the party's identity." *Id.* at 1068–69.

9       If a party seeks to sue pseudonymously based on retaliatory harm, courts apply a five-
10 factor balancing test that weighs: "'(1) the severity of the threatened harm, (2) the reasonableness
11 of the anonymous party's fears, . . . (3) the anonymous party's vulnerability to such retaliation,'
12 (4) the prejudice to the opposing party, and (5) the public interest." *Doe v. Kamehameha
13 Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010) (quoting *Advanced
14 Textile*, 214 F.3d at 1068).  The first two factors are the most important. *Id.* at 1043.

## ANALYSIS

16       In plaintiffs' pending motion, they argue that the first two scenarios identified in the Ninth
17 Circuit's decision in *Advanced Textile* apply, i.e., that the Doe plaintiffs here would face
18 retaliatory harm and that the issues in this litigation are highly sensitive and personal in nature.
19 (Doc. No. 24 at 3.)  The court will address each of these arguments in turn.
20 /////
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////
27 /////
28 /////

3

**A.     Retaliation**

Since the Doe plaintiffs seek to proceed under pseudonyms based, in part, on retaliatory harm, the court will apply the Ninth Circuit five-factor balancing test. *See Kamehameha Schs.*, 596 F.3d at 1042 (citing *Advanced Textile*, 214 F.3d at 1068).[1]

       1.      <u>The Severity of the Threatened Harm and Reasonableness of Fear</u>

The first two *Advanced Textile* factors—severity of the threatened harm and the reasonableness of the plaintiffs' fear—"are intricately related and should be addressed together." *Kamehameha Schs.*, 596 F.3d at 1043. To proceed under pseudonyms, "a plaintiff must show both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Id.*

Here, the Doe plaintiffs argue that, as Hindus who reside or work in California, "they are vulnerable . . . to being individually sued by the [Department] in retaliation for participating in this action;" and they may experience "physical, mental, and economical harm from those around them, including but not limited to prospective employers, co-workers, and persons they interact with on a daily basis." (Doc. No. 24 at 5.) However, the evidence presented by the Doe plaintiffs in the declarations they have filed in support of their motion falls short of persuading the court that consideration of these factors weigh in their favor.

/////

---

[1] Plaintiffs contend that their challenge to a government action is a consideration which supports the Doe plaintiffs' request to proceed pseudonymously. (Doc. No. 24 at 4.) To support this contention, they reference out-of-circuit cases such as *Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016), in which the district court stated that "[w]hen a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." (Doc. No. 24 at 4) (citing *Alger*, 317 F.R.D. at 41). Notably, the court in *Alger* stated that one of the key factors in the Fourth Circuit's five-factor analysis is "whether the action is against a governmental or private party," *Alger*, 317 F.R.D. at 39—a consideration absent from the Ninth Circuit's balancing test. Moreover, courts in other circuits have acknowledged that the public's interest is often "heightened" when the defendants are public officials or government bodies. *See Doe v. Megless*, 654 F.3d 404, 411 (3d Cir. 2011) (citation omitted); *Doe v. Pub. Citizen*, 749 F.3d 246, 274 (4th Cir. 2014) ("As we have explained, the public interest in the underlying litigation is especially compelling given that Company Doe sued a federal agency."). Therefore, even if this out-of-circuit authority identifying the nature of the defendant was relevant here, this court would find consideration of that factor to be neutral at best. *See Doe v. Pittsylvania Cnty.*, 844 F. Supp. 2d 724, 731 (W.D. Va. 2012) (according "neutral weight" to the government defendant factor after examining the relevant authority on both sides of the issue); *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-cv-00016, 2018 WL 1594805, at *3 (W.D. Va. Apr. 2, 2018) (stating that "this factor is, at best, neutral and does not weigh in favor of permitting the plaintiff to proceed under a pseudonym").

In a declaration submitted by plaintiff, Doe One states that the Department's "actions have caused [them][2] embarrassment and has made [them] feel that others are judging [them] and undermining [their] religion because of how [they] look and what [their] religious beliefs are." (Doc. No. 24-3 at ¶ 8.) Similarly, in Doe Two's declaration, it is stated that "people around [them] . . . believe that Hindus are inherently discriminatory" and "[they] feel, that if [they] practice Hindu, [they] will be seen as a discriminatory person." (Doc. No. 24-4 at ¶¶ 3, 4.) Doe Two also explains that people they "interact with on a daily basis and/or side by side" have "expressed hateful bias towards [them] and persons of South Asian descent practicing Hinduism," and that they "have been ostracized by many people who simply do not understand caste and Hinduism." (*Id.* at ¶ 6.) In Doe Three's declaration, it is stated that they, too, has been "ostracized" at work and received "express hate on internal company social media channels," which they "expect [] to continue." (Doc. No. 24-5 at ¶¶ 8, 9.) Doe Three also states that they have been asked questions about Hinduism and caste and that they "feel embarrassment and anger each time" they are approached. (*Id.* at ¶ 10.)

In opposing plaintiffs' motion, defendant persuasively argues that the Doe plaintiffs' assertions are insufficient to demonstrate that the Doe plaintiffs face any of the situations that courts have previously found warrant anonymity. (Doc. No. 40 at 9.) The court agrees. Doe One describes personal discomfort with the Department's Cisco Action, but not a plausible likelihood of threats or harm. Does Two and Three allege mistreatment at work but do not state whether their co-workers have made any actual threats of harm against them or that the mistreatment would likely increase due to their participation as plaintiffs in this litigation. As defendant notes, and as has been recognized by another district court, merely expressing fear of disagreement or disapproval by community members is insufficient to support a pseudonymous lawsuit. (Doc. No. 40 at 8); *see also Roe v. San Jose Unified Sch. Dist. Bd.*, No. 20-cv-02798-LHK, 2021 WL 292035, at *9 (N.D. Cal. Jan. 28, 2021) ("Community disagreement and any resulting

/////

---

[2] The use of "them," "they," and "their" in this context refers to the individual declarant.

'embarrassment or economic harm is not enough' to support a pseudonymous lawsuit.") (quoting *Doe v. Rostker*, 89 F.R.D. 158, 161–62 (N.D. Cal. 1981)).

Furthermore, the Doe plaintiffs' alleged fears about retaliation from community members are vague and conclusory. Each Doe plaintiff asserts that: "if people know [their] personal information, [they] fear that they will try to harm or retaliate against [them] or [their] family, either physically or in some other way." (Doc. Nos. 24-3 at ¶ 11; 24-4 at ¶ 8; 24-5 at ¶ 12.) Does One and Three express concern that if they speak up for persons of South Asian descent, they will receive "retribution in return." (Doc. Nos. 24-3 at ¶ 4; 24-5 at ¶ 3.) Doe Two states that they have "witnessed" an unnamed Hindu non-profit "being targeted" because it was a Hindu faith-based charity, (Doc. No. 24-4 at ¶ 9), but Doe Two provides no specifics in this regard whatsoever. Consequently, these conclusory assertions provide no plausible basis for finding a real risk of future harassment or harm, and they lack specifics on *who* would pose the threat or what form it would take. *See Roe v. Skillz, Inc.*, 858 F. App'x 240, 241–42 (9th Cir. 2021)[3] (affirming the denial of pseudonym motion where the plaintiff offered only "conclusory and general statements without explanation or support"); *Roe v. State Bar of Cal.*, No. 22-cv-00983-DFM, 2023 WL 6193023, at *2 (C.D. Cal. Mar. 17, 2023) (in denying pseudonym motion, noting that the "[p]laintiffs' declarations [which] assert[ed] that they have 'become fearful' about who has their information, what the information contained, and the possibility of retaliation" were "vague and conclusory statements" and were "insufficient to demonstrate a specific threat"); *Day v. Cal. Lutheran Univ.*, No. 8:21-cv-01286-JLS-DFM, 2022 WL 2965769, at *4–5 (C.D. Cal. June 9, 2022) (finding that the plaintiffs' general desire to avoid retaliation did not establish a severe harm); *San Jose Unified*, 2021 WL 292035, at *9 (denying a pseudonym motion where the plaintiffs' allegations of future harassment were "vague and conclusory" and did "not aver any actual threat or any specific people who would pose a threat").

Each Doe plaintiff asserts that "they fear that [the Department] will come after [them] and/or interfere with [their] employer, resulting in permanent negative reputational and economic

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

6

harm to [them] or those in [their] family." (Doc. Nos. 24-3 at ¶ 11; 24-4 at ¶ 8; 24-5 at ¶ 12.) Plaintiffs argue that these fears "are very reasonable" because the Department "has already sued two individual defendants in the [Cisco Action] based on the [the Department]'s representations that, as Hindus, caste discrimination was inherently part of their religious beliefs and who they are." (Doc. No. 24 at 5–6.) However, as defendant argues, these speculative concerns about the Department are similarly unavailing. (*See* Doc. No. 40 at 10.) As defendant explains, "[t]he Department brought charges under FEHA against now-plaintiffs Iyer and Kompella due to their specific, alleged actions in their roles as supervisors at Cisco." (*Id.* at 10 n.6.) None of the Doe plaintiffs have established how the Department would have the ability to retaliate in the manner they purportedly fear. For example, as defendant points out, none of the Doe plaintiffs claim to be employers who could plausibly face future enforcement actions. (*See id.* at 10); *see also Reno v. Baird*, 18 Cal. 4th 640, 663 (1998) ("[W]e conclude that individuals who do not themselves qualify as employers may not be sued under the FEHA for alleged discriminatory acts.").

While "plaintiffs are not required to prove that the defendants intend to carry out the threatened retaliation," they must demonstrate "that a reasonable person would believe that the threat might actually be carried out." *Advanced Textile*, 214 F.3d at 1071. Here, for the reasons discussed above, plaintiffs have failed to do so.

2.  The Doe Plaintiffs' Vulnerability to Retaliation

The third factor considers the "plaintiffs' vulnerability to retaliation." *Advanced Textile*, 214 F.3d at 1072. Anonymity is more likely to be justified where the plaintiffs "face greater threat[s] of retaliation than the typical . . . plaintiff" bringing that type of suit. *Id.* at 1070–71 (internal quotation marks omitted).

The Doe plaintiffs in this case have not alleged or established that they face greater threats than the other named plaintiffs who do not seek anonymity. *Cf. id.* (finding "greater threat[s] of retaliation than the typical . . . plaintiff" because the plaintiffs in that case faced "deportation, arrest, and imprisonment"). In addition, the court agrees with defendant's argument that consideration of the fact that six named plaintiffs, including five practicing Hindus in California, are proceeding under their real names weighs against allowing the Doe plaintiffs to use

7

pseudonyms in bringing this action. (*See* Doc. No. 21 at ¶¶ 2–20; 40 at 11.)

### 3. Prejudice to Defendant

The fourth factor considers the prejudice to defendant. As noted in *Advanced Textile*, anonymity can hinder a defendant's ability to mount a meaningful defense. 214 F.3d at 1069.

Although the parties briefed this factor (Doc. Nos. 24 at 6; 40 at 11; 46 at 6–7), the court need not delve into those arguments, given its finding that the Doe plaintiffs have failed to establish a severe threat, that their fears are reasonable, or that they are vulnerable to a threat of retaliation. Consequently, the court concludes that the risk of retaliatory physical or mental harm to the Doe plaintiffs does "not outweigh possible prejudice to defendant[]," *Kamehameha Schs.*, 596 F.3d at 1045; *see also State Bar*, 2023 WL 6193023, at *2 (declining to address this factor after determining that the plaintiffs' fears were unreasonable).

### 4. The Public Interest

The fifth factor addresses the public interest. "The normal presumption in litigation is that parties must use their real names." *Kamehameha Schs.*, 596 F.3d at 1042. This "presumption is loosely related to the public's right to open courts, and the right of private individuals to confront their accusers." *Id.* (citations omitted).

The Doe plaintiffs argue that "[t]he public's interest in having important constitutional questions decided outweighs the general interest in knowing the identifies of DOES 1 through 3." (Doc. No. 24 at 6.) In opposition, defendant has not briefed the fifth factor, citing the limited information available and the Doe plaintiffs' failure to meet the first four factors. (Doc. No. 40 at 8.) The court agrees that, given the Doe plaintiffs' insufficient evidence as described above, they have not demonstrated that their need for anonymity outweighs the presumption of openness in judicial proceedings. *See State Bar*, 2023 WL 6193023, at *2 (declining to address this factor after determining that the plaintiffs' fears were unreasonable).

**B. Privacy**

The Ninth Circuit has recognized that courts grant anonymity where it is needed to "preserve privacy in a matter of sensitive and highly personal nature." *Advanced Textile*, 214 F.3d at 1068.

The pending motion seeking to allow the Doe plaintiffs to proceed under pseudonyms is primarily based on their alleged fear of retaliatory harm. They also argue that anonymity is warranted for privacy reasons, stating that "[t]his case involves matters of the utmost intimacy, a person's religious belief or lack of belief." (Doc. No. 24 at 5.) In support of this argument, plaintiffs cite the Fifth Circuit's decision in *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981), in which the court noted that "religion is perhaps the quintessentially private matter." (Doc. No. 24 at 5) (quoting *Stegall*, 653 F.2d at 186). Beyond citation to the Fifth Circuit's decision in *Stegall*, however, plaintiffs provide no elaboration as to why the Doe plaintiffs' religious beliefs constitute "a matter of sensitive and highly personal nature." *Advanced Textile*, 214 F.3d at 1068; *see also Freedom From Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1357 (S.D. Ga. 2015) ("The fact that religion is an intensely private concern does not inevitably require that [a] . . . plaintiff be given Doe status, however. While religion is certainly an individual matter of conscience that is constitutionally shielded from government intervention, it is generally practiced openly and communally, and no court from this or any other circuit has considered a plaintiffs [sic] religious beliefs to be a matter of such sensitivity as to *automatically* entitle the plaintiff to Doe status.") (citations omitted). Therefore, the court finds that plaintiffs have not demonstrated that preserving the Doe plaintiffs' privacy warrants allowing them to proceed pseudonymously in this action.

For these reasons, the court will deny the motion to allow the Doe plaintiffs to proceed under pseudonyms and will instead direct plaintiffs to file a second amended complaint to either: (i) identify the Doe plaintiffs by name and allege any other facts needed to identify them; or (ii) remove Does 1–3 as plaintiffs in this action. Because plaintiffs' filing of the second amended complaint will supersede the FAC, the court will also deny defendant's motion to dismiss plaintiff's FAC as having been rendered moot by this order. The denial of defendant's motion in this regard is without prejudice to defendant reasserting his arguments as he deems appropriate in a motion to dismiss the forthcoming second amended complaint.

/////

/////

**CONCLUSION**

For the reasons set forth above,

1. The motion to allow the Doe plaintiffs to proceed under pseudonyms (Doc. No. 24) is denied;

2. Within fourteen (14) days from the date of entry of this order, plaintiffs shall file a second amended complaint and either: (i) identify the Doe plaintiffs by name and allege any other facts needed to identify them; or (ii) remove Does 1–3 as plaintiffs in this action; and

3. Defendant's motion to dismiss (Doc. No. 41) is denied, without prejudice to its renewal in response to the second amended complaint, as having been rendered moot by this order.

IT IS SO ORDERED.

Dated:   **August 12, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE