1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Timothy C. Travelstead, Esq. (SBN 215260)
  *t.travelstead@narayantravelstead.com*
Scott C. Ku, Esq. (SBN 314970)
  *s.ku@narayantravelstead.com*
NARAYAN TRAVELSTEAD P.C.
7901 Stoneridge Drive, Suite 230
Pleasanton, CA 94588
Telephone: (650) 403-0150

Attorneys for Plaintiffs
HINDU AMERICAN FOUNDATION;
SAMIR KALRA; MIHIR MEGHANI;
SANGEETHA SHANKAR; DILIP AMIN; SUNDAR IYER;
RAMANA KOMPELLA; SHAISHAV DESAI; AND SRIVATS IYER

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDU AMERICAN FOUNDATION, INC., a Florida Not For Profit Corporation; Samir Kalra Mihir Meghani; Sangeetha Shankar; Dilip Amin, Sundar Iyer, Ramana Kompella, Shaishav Desai, and Srivats Iyer, as individuals,<br><br><div align="center">Plaintiffs,</div><br>vs.<br><br>KEVIN KISH, an individual, in his official capacity as Director of the California Civil Rights Department; and DOES 1 - 50, inclusive,<br><br><div align="center">Defendants.</div> | Case No. 2-22-CV-01656-DAD-JDP<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1. **Civil Rights Violations – Denial of Religious Freedom – Establishment Clause**<br><br>2. **Civil Rights Violations – Denial of Religious Freedom – Free Exercise Clause**<br><br>3. **Civil Rights Violations – Denial of Procedural Due Process – Vagueness**<br><br>4. **Civil Rights Violations – Denial of Equal Protection – Religion**<br><br>5. **Civil Rights Violations – Denial of Equal Protection – National Origin** |

The Hindu American Foundation, Inc. (HAF), and Plaintiff Samir Kalra, Plaintiff Mihir

Meghani, Plaintiff Sangeetha Shankar, Plaintiff Dilip Amin, Plaintiff Sundar Iyer, Plaintiff

Ramana Kompella, Plaintiff Shaishav Desai, and Plaintiff Srivats Iyer (the "Individual Plaintiffs") hereby bring this action for declaratory and injunctive relief against Kevin Kish, sued in his official capacity only, the Director of the California Civil Rights Department (CRD) (formerly known as the Department of Fair Employment and Housing) for violating the First Amendment, Equal Protection, and Due Process rights of Hindu Americans.

## INTRODUCTION

The Hindu American Foundation (HAF), the largest and most respected Hindu educational and advocacy institution in North America, acts to protect the religious freedoms of Hindu Americans from the unconstitutional efforts of the State of California to decide the scope and nature of Hindu religious teachings and practices.  The California Civil Rights Department (CRD) is pursuing enforcement actions under the California Fair Employment and Housing Act (FEHA) that wrongly asserts that a caste system and caste-based discrimination are integral parts of Hindu teachings and practices by declaring the caste system to be "a strict Hindu social and religious hierarchy," having a "centuries-old hierarchy," the doctrine for which mandates "untouchability," by "social custom and legal mandate."  The CRD specified caste as "immutable," and "something which they are born and remain until death," associated with "social exclusion" and "ritual purity".

The CRD also defines the beliefs and practices of Hindus by first attributing caste identity to Indian and/or Hindu workers at Cisco, i.e. "Brahmin" and "Dalit," and then interpreting and assigning religious status of "highest" or "lowest."  The CRD further attributes a caste system to Hinduism by stating that, "John Doe is Dalit because of his religion, …," and that "Doe's religion is Hindu," and further defines Dalits as "at the bottom of the caste hierarchy."

In addition to defining Hinduism as having a strict and discriminatory religious hierarchy, the CRD supports its disfavorable view by submitting declarations, from individuals who are not Hindu, which make numerous false and disparaging statements about Hindus and Hinduism,

including but not limited to, "Caste is a structure of oppression that affects over 1 billion people across the world.  It is a system of religiously codified exclusion that derives from Hindu scripture.  At birth, every child inherits his or her ancestor's caste, which determines social status and assigns spiritual purity and their deeds in past lives"; "Brahmins [Hindu priests], who founded India's caste system, are at the top of the caste system and have benefited from centuries of privilege, access, and power because of it"; "Caste Apartheid is the system of religiously codified exclusion that was established in Hindu scripture. Hindu origin myths state that different people were created from different parts of God Brahma's body and were to be ranked hierarchically according to ritual status, purity, and occupation"; "India's caste system is a complex yet stratified hierarchical order…It emanates from the Hindu alias Brahminical books of rule that have provided certain qualifiers—such as one's ancestry— to ascribe caste status and religion"; and "Religion is another significant factor in deciding one's caste status because it provides the origin of caste values. In India's Hindu-based caste system to which the Complainant belongs, the ancient Hindu texts, especially Vedas, amplify the distinction of humans based on their qualities of hierarchy"; "caste and untouchability are constructions of Hinduism";

The CRD also compares Hinduism disfavorably with Buddhism – "Of the reformers of Brahmanism [Hinduism], Buddhism is seen today as the most promising for a theology of liberation for India."  The CRD also treats Hinduism and Hindus in a manner that it does not treat any other religion or its adherents.

As HAF has consistently maintained throughout its history, a caste system or discrimination on its basis are in no way a legitimate part of Hindu beliefs, teachings, or practices.  The individual plaintiffs who join this action share this belief and feel their religious and cultural identification as Hindu Americans is under threat from the State of California's attempts to illegally disparage their beliefs and background.

HAF and the Individual Plaintiffs vehemently oppose all types of discrimination; and take great exception to the State of California defaming and demeaning all of Hinduism by attempting to conflate a discriminatory caste system with the Hindu religion, and treating it differently than any other religion.

Worse, California defames Hinduism by doing what the U.S. Constitution says it cannot, assert a government right to resolve questions of religious doctrine.  Preventing the government from establishing religious doctrines or interfering with religious practices is as old a principle as the Republic itself.  As American courts have recognized since the earliest days of our Constitution, those principles require a clear and unambiguous prohibition on any "civil determination of religious doctrine."  *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708-09, 96 S. Ct. 2372, 2380 (1976).

The wisdom of that principle is reinforced by the complete lack of any objective evidence, law or context in the CRD's assertion.  Caste has no legal, social, or cultural definition in the United States, and is not an observable or objectively determinable trait or characteristic. California law and regulations provide no definition or workable method to determine anyone's caste other than its assumption that Hindus of South Asian, in particular Indian, descent must all necessarily identify as part of a specific caste and must engage in discrimination based on caste as an inherent or mandated part of their religious beliefs and practices.

As a result, the CRD's violation of the First Amendment rights of all Hindu Americans also leads to a violation of their due process rights and would lead employers to actively discriminate against Hindu and South Asian Americans in order to avoid the undefined maze of legal uncertainty that would be California's caste-discrimination bar.  Hindus would effectively lose their due process rights by a state government wrongly labeling part of their religion and ethnic culture as inherently abhorrent, illegal and discriminatory, regardless of the actual tenets of Hinduism and regardless of the evidence or facts of a particular case.

The CRD and the State of California's false and disparaging definition of Hinduism treats it and Hindus in a manner that is unequal and different from the manner in which the CRD treats other religions or their adherents. The CRD also makes false and blanket claims about workers of Indian descent at Cisco, blanketly assigning "high" caste status and claiming that they are all beneficiaries of a Hindu social and religious hierarchy or caste system and have imported the discriminatory system's practices into their team and workplace. The CRD's  false statements about these individuals' religious and caste identity and alleging unlawful conduct simply on the basis of their national origin or ethnicity treats Indians in a manner that is unequal and different from the manner in which the CRD treats other nationalities.  In doing so, the State of California is violating the First Amendment, due process, and equal protection rights of all Hindu and Indian Americans.

Stopping caste-based discrimination is a worthy goal that directly furthers Hinduism's teachings about the equal and divine essence of all people.  But wrongly tying Hindu beliefs and practices to the abhorrent practice of caste-discrimination undermines that goal, violates the First Amendment rights of all Hindu-Americans, and can only lead to a denial of due process and equal protection to Americans based on their religious affiliation and national origin.

## **PARTIES**

1.      Plaintiff Hindu American Foundation is the largest and most respected Hindu educational and advocacy institution in North America.

2.      Plaintiff Samir Kalra, Esq. is a United States citizen of Indian descent and an attorney and Managing Director at the Hindu American Foundation.  He was born in Santa Clara, California and works and resides in the state.  He is a practicing Hindu and knows that Hinduism promotes the idea that every person has divinity inherent to them and therefore must be treated with equal regard.

3.     In his capacity as Managing Director, Mr. Kalra co-wrote a letter on behalf of Hindu American Foundation to Janette Wipper, then Chief Counsel of the Department of Fair Employment and Housing (CRD), on July 10, 2020, to express his concerns about the blatantly racist and anti-immigrant statements the CRD made about Asians and Indians as well as the false and dangerous stereotypes the CRD had perpetuated in its attempts to define Hinduism in its complaint.  Rather than acknowledge or address their concerns, the CRD repeated the same impermissible and xenophobic claims after refiling its case in state court.

4.     From the time the CRD falsely defined Hinduism as having inherent to it a discriminatory caste system associated with people of Indian descent, Mr. Kalra has spent hundreds of hours, in spite of limited time and resources, responding to media inquiries, including reporters asking intrusive and racist questions about the caste identities and statuses of his and other HAF staff and leaders, and developing educational materials for a variety of stakeholders to defend against the CRD's demeaning portrayal of Hinduism and Hindus.  He has also had to expend time and resources to provide counsel and advice to a number of Hindu tech workers of Indian origin who have reached out to the Foundation about concerns of increased hostility resulting from xenophobic comments and questions by non-Indian origin colleagues or supervisors at their places of work about their religion, caste identities and/or caste practices.  He has had to respond to tech workers of Indian origin dealing with the Diversity, Equity, and Inclusion (DEI) departments at two Fortune 500 companies who have spread damaging misinformation about Hinduism via "training" provided by an outside entity, Equality Labs, that the CRD extensively relied upon when bringing its claims against Cisco.  HAF and Mr. Kalra never had such inquiries prior to July 2020.

5.     The CRD supports its disfavorable view of Hinduism and Hindus through its submissions, and reliance and collaboration with Equality Labs.  In addition to disparaging statements made about Hinduism in Equality Labs' founder's declaration and the Equality Labs

report extensively cited and submitted by the CRD, Equality Labs has also stated in its publicly available trainings, speaking engagements, and resources that: "[Hinduism is] filled with violent, violent scriptures;" or "Every act of Hindu scripture has done nothing but bring violence and pain;" or "The Nazis aren't Germans in f***king Europe, they're actually upper caste Indians."

6.     The CRD was made aware of Equality Labs' past anti-Hindu activities in the letter Mr. Kalra wrote on July 10, 2020. It stated, "In addition, this group, Equality Labs, has a long track record of engaging in anti-Hindu hate through its attacks on Hindu festivals, demeaning Hindu practices and beliefs, calling for the destruction of Hinduism, and heckling Hindu children testifying about their experiences being bullied in the classroom at the State Board of Education."

7.     The resulting toll from the CRD's conduct has been both financial and operational for HAF, and it has taken a deep psychological and spiritual toll on Mr. Kalra, and all of the Individual Plaintiffs.  The CRD's conduct has made it clear that the CRD views Hindus, and even non-Hindu Indian Americans, "like second-class citizens" and that "their participation in the political community will be chilled" by the State of California labeling them as inherently discriminatory and caste-ist, in direct contradiction to Hinduism's actual teaching.  *Catholic League for Religious & Civ. Rights v. City & County of San Francisco,* 624 F.3d 1043, 1049 (9th Cir. 2009).  Mr. Kalra and all of the Individual Plaintiffs suffered the "spiritual or psychological harm" sufficient to establish standing here.  *Id.* at 1050.

8.     Plaintiff Dr. Mihir Meghani is a US citizen of Indian descent and works as an Emergency Room physician in the State of California.  He was born in Philadelphia, Pennsylvania and moved to the State of California in 2000.  He co-founded the Hindu American Foundation and is an active member of various Hindu American and Indian American religious, cultural and civil organizations based in California.  Dr. Meghani identifies as a practicing Hindu and believes that Hinduism teaches that not only all people, but all living things must be treated

with mutual respect and dignity.  He also believes that the conflation of caste and caste discrimination with Hinduism contradicts Hindu teachings and his beliefs as a Hindu.

9.      A physician colleague questioned Dr. Meghani in front of a group of coworkers about his "terrible caste system" after reading about CRD's case against Cisco.  Another colleague of Dr. Meghani concluded that caste discrimination was central to Hinduism after reading about the CRD's case and its position.  Several interfaith leaders and elected officials, with whom Dr. Meghani has worked with for almost two decades, asked him to clarify whether he and Hindus in America believed in and practiced discrimination.  Dr. Meghani finds it unbelievable that in 2023, in a state where Hindu Americans are contributing so positively to every sector in the state, that the CRD could disparage his ethnic community and show such disfavor towards his religion.  The CRD's position has resulted in professional and social stigma and animosity, and personal anxiety about his reputation as a Hindu in the workplace and in his civic engagement work.

10.     Plaintiff Sangeetha Shankar is a United States citizen of Indian origin and works as the California based regional director for the Hindu American Foundation.  She has resided in the State of California since 2014 and identifies as a devout Hindu.  She is an active member of her religious community and has volunteered in a number of capacities, including teaching religion, classical Indian dance, and Sanskrit.  She understands her faith to teach that all are equal, which is the lens through which she views the world and how she interacts with it.  As a Hindu, she strongly believes that there is indwelling divinity in each living being and hence treats others with respect and love.

11.     The CRD's case against Cisco has become a central topic of discussion at social and religious events, which has adversely impacted Mrs. Shankar's ability to feel she can practice her religion without fear or inhibition.  She feels she has to constantly explain herself and cannot just be left to celebrate her faith and identity.  She and her children have been asked

**SECOND AMENDED COMPLAINT**

uncomfortable questions in the past about their faith, and such questions have only increased after the CRD's disparaging definition of Hinduism.  The CRD's claims about Hinduism, Hindus and Indians has caused her immense mental health issues ranging from anger, anxiety, sleeplessness and incessant worrying, especially as a mother.  Mrs. Shankar does not feel the same openness about being Hindu anymore.  She feels fear, anxiety and even angered that she feels the need to hide her true identity and her faith as a Hindu American.

12.     Plaintiff Dilip Amin is a United States citizen of Indian origin and has lived in the State of California since 2011.  He identifies as a devout, practicing Hindu and is actively involved in several religious and cultural Hindu and Indian organizations throughout the San Francisco Bay Area.  He also participates in a number of interfaith activities.  He believes that prejudice or bigotry against anyone contradicts his understanding of Hindu teachings about God's presence in all of existence.  He believes this teaching imposes a duty on everyone to treat people for their inherent and equal worth.

13.     Dr. Amin learned about the CRD's case against Cisco in an interfaith email group he was a member of.  He states that he felt depressed for several days after reading about it and didn't know how or where to start in defending his faith.  As a founder of the Hindu Speakers Bureau, Dr. Amin speaks at different venues and events about Hinduism.  While he would feel some nervousness about getting a question about common stereotypes about India and Hinduism, he now has serious anxiety because a state agency like the CRD, which is tasked with ensuring that everyone is treated fairly and equally, has broadly portrayed Hinduism as mandating discriminatory practices as a matter of religious belief.  The public speaking that he used to enjoy has become a demoralizing and painful experience psychologically and spiritually over the last two years because of the volumes of media coverage the CRD generated over its case.

14.     He fears that his adult sons could become the target of the CRD, much in the way the two Indian origin engineers at Cisco Systems did, and a caste assigned to them because of

their Indian and Hindu heritage.  He also worries about his future grandchildren and great-grandchildren, who may feel the need to turn their backs on their heritage because of shame or disgust.  He worries that they too could also be presumed as being casteists because of their Indian ancestry because the CRD claims they are active participants of an oppressive religious and cultural system because they are of Indian descent and Hindu.

15.     Plaintiff Sundar Iyer is a United States citizen of Indian origin and resident of the State of California.  He does not believe or practice any organized religion and does not identify with any caste.  He believes in treating everyone fairly and on the basis of their humanity with respect and equal regard, and has publicly decried all forms of discrimination.  Mr. Iyer maintained a publicly-available personal website[1] for over two decades where his lack of any practice in organized religion was clearly discussed.  Iyer writes, "The below is not about religion (I don't profess knowledge of, and have never practiced any."  During the course of the CRD's investigation, it uncovered clear evidence that Mr. Iyer had worked to promote self-identified Dalit employees at Cisco to positions of leadership **prior** to any complaints of caste discrimination, including positions where those Dalit employees would supervise other Indian employees who self-identified as being from backgrounds different than these employees.  Indeed, the CRD had clear evidence that Mr. Iyer offered a self-identifying Dalit employee, on merit, **every** top leadership position in his group.

16.     Despite this public information, and despite Mr. Iyer specifically informing the CRD of these facts before it initiated any litigation, the CRD nonetheless filed suit against Mr. Iyer claiming that he was a practicing Hindu of the 'Brahmin' caste, one of the 'highest' castes in India, and that he discriminated against other Cisco employees who identified as 'Dalit', a 'lower' caste.  CRD named Mr. Iyer as a defendant, alleging that he engaged in religious discrimination against a self-identified Dalit Cisco employee based on the false allegation that

---

[1] http://yuba.stanford.edu/~sundaes/serious.html

**SECOND AMENDED COMPLAINT**

Mr. Iyer, as a Hindu of the Brahmin caste, necessarily followed "a strict Hindu social and religious hierarchy" based on caste. The CRD filed this action despite being made aware that Mr. Iyer was irreligious or an agnostic and did not identify with any caste, and in fact, publicly rejected such social identities.

17.    Ramana Kompella is a United States citizen of Indian origin and resident of the State of California. He identifies as Hindu and rejects the idea of caste hierarchies. Over the entirety of his career, he has worked with different races, ethnicities, religions, and cultures and has neither condoned or participated in any type of discrimination. He believes in embracing diversity and has done so for over 20 years.

18.    The CRD claimed that Mr. Kompella engaged in caste-based harassment because he required weekly status reports from CRD's Plaintiff, John Doe, because of Doe's 'Dalit' caste. However, Mr. Kompella did not assign these reports. Mr. Tom Edsall, who is not of Indian origin or Hindu, assigned them.

19.    The CRD nonetheless filed suit against Mr. Kompella claiming that he was a Hindu 'Brahmin' or "at least of a higher caste than Dalit", and therefore discriminated against another Cisco employee who identified as 'Dalit'. The CRD named Mr. Kompella as a defendant, alleging that he engaged in religious discrimination against this self-identified Dalit Cisco employee based on the presumption that he, as a Hindu of the Brahmin caste, necessarily followed "a strict Hindu social and religious hierarchy" or discriminatory caste system.

20.    As a result of the CRD's unconstitutional attack on Mr. Iyer and Mr. Kompella based on their presumed adherence to Hindu beliefs and practices, presumed ancestry or self-identity as being of the "highest" Hindu Brahmin caste, and Indian national origin, they have suffered significant harm. Mr. Iyer no longer works for Cisco Systems, his reputation is now forever associated with a religious tradition he does not follow based on assertions about that religion which are false, and he is forever associated with the CRD's false accusation that he

engaged in caste discrimination, conduct which he abhors based on his own beliefs and past public statements.  Mr. Kompella continues to work for Cisco Systems, but his reputation is now forever associated with the CRD's false accusation that he engaged in caste discrimination, conduct which he too abhors based on his own beliefs, and a religion the CRD disfavors and has deemed inherently discriminatory on the basis of caste.

21.     Shaishav Desai is of South Asian descent, is a practicing Hindu working in the technology sector, and resides in California.  The CRD's actions have led to significant animosity directed at himself and other employees of South Asian descent, again based on the false representations by the CRD's actions against Cisco Systems leading people to believe that Hindus are inherently discriminatory.  As a result, he feels significant mental and spiritual turmoil, and the express hatred he has received on internal company social media channels makes him fear for his safety.

22.     Srivats Iyer is of South Asian descent, is Hindu, works in the technology sector, and resides in California.  In response to the CRD's actions, his employer and fellow employees have been addressing questions about caste and issues that never arose before, and he has felt significant animosity directed at him based on the CRD's legally-endorsed false presumption that he is a Hindu practicing caste-based discrimination as a part of his religious beliefs.  At work, he has been ostracized by those who simply feel that they should stay away from anyone who looks like they are South Asian and/or practice Hindu because they do not understand the difference and do not want to risk getting accused of harassment or discrimination.  As a result of these false representations, he feels significant mental and spiritual turmoil, and the express hatred he has received on internal company communication channels based on the false narrative creates significant mental, emotional, and spiritual anxiety.

23.     Defendant Kevin Kish, sued in his official capacity only, is the Director of the California Civil Rights Department.[2]  In his official capacity, Mr. Kish is charged with enforcing California's civil rights, employment and housing laws.  The main office of the California Civil Rights Department is located in Elk Grove, California, within the Eastern District of California.

## JURISDICTION

24.     Plaintiffs bring this action under 42 U.S.C. Section 1983, which provides that "[e]very person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  Therefore, this Court has jurisdiction over this matter under 28 U.S.C. Section 1331.

### HAF Organizational Standing

25.     The judicial power of the United States is limited to cases or controversies.  (U.S. Const. Art. III.).  "To state a case or controversy under Article III, a plaintiff must establish standing."  *Arizona Christian School Tuition Organization v. Winn*, 563 U. S. 125, 133 (2011).  Plaintiffs have standing to invoke the judicial power of the United States where they demonstrate they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U. S. 330, 338 (2016).

26.     Where the plaintiff is an organization, Article III's standing requirements are satisfied either where the organization itself suffered an injury or, alternatively, where it represents the injuries suffered by its members.  *Warth v. Seldin*, 422 U. S. 490, 511 (1975).  "The latter approach is known as representational or organizational standing."  *Students for Fair*

---

[2] Formerly known as the California Department of Fair Employment and Housing (DFEH).

**SECOND AMENDED COMPLAINT**

*Admissions, Inc. v. President & Fellows of Harv. Coll.*, ___U.S.___ ; 143 S.Ct. 2141, 2157, 216 L.Ed.2d 857, 875-876 (2023).  "To invoke it, an organization must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"  *Id.*; *quoting Hunt v. Wash. State Apple Adver. Comm'n*, 432 U. S. 333, 343 (1977).

27.     Technical membership structures are not required.  "Rather, an organization satisfies the Hunt requirements for associational standing where 'the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'"  *Students for Fair Admissions, supra*; *citing Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (quoting *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003)).

28.     Where the plaintiff organization clearly represents a defined interest of its voluntary membership, "[t]he indicia of membership analysis employed in *Hunt* has no applicability."  *Students for Fair Admissions*, *supra*, 143 S.Ct. at 2158, 216 L.Ed.2d at 876.  "Where, as here, an organization has identified members and represents them in good faith, our cases do not require further scrutiny into how the organization operates."  *Id.*

### HAF Mission

29.     The Hindu American Foundation is an educational and advocacy organization established in 2003.  Its mission focuses on advancing the understanding of Hinduism to secure the rights and dignity of Hindu Americans now and for generations to come.  It works with state boards of education and publishers to ensure Hinduism is portrayed accurately and fairly in public school textbooks.

30.     It educates policymakers and channels the concerns of the community on key issues such as non-discrimination, free speech, religious freedom, amongst others.  And it

pursues impact litigation and participates as *amicus curiae* when the civil rights of Hindu Americans are at risk.

31.     Inspired by our guiding principles and Hindu teachings, HAF promotes dignity, freedom, equality and justice.  HAF is a non-partisan, non-profit, tax-exempt public charity pursuant to Internal Revenue Code Section 501(c)3.

### *HAF Presence in California*

32.     HAF has a significant presence in the State of California, both the organization itself and the constituency it represents.  Three of its seven current board members, one of whom is a cofounder, reside and/or work in the State of California.  It has four paid staff members that also work and reside in California.

33.     HAF's Ten-Person National Leadership Council is a diverse group of core volunteers who collectively serve as a sounding board.  They lend their respective professional and personal expertise, contribute to HAF's development needs and assist in select programs, services and projects.  Three members of the National Leadership Council reside and/or work in California.

34.     HAF also has an Advisory Committee, a diverse group of recognized community leaders, to provide strategic guidance, to offer their personal and professional expertise, and to contribute to HAF's development needs.  Four of the seventeen Advisory Committee members reside and/or work in the State of California.

### *Representation of the Hindu Community in California*

35.     In Fiscal Year 2022-2023, 815 people residing and/or working in California donated to HAF.

36.     HAF provides action alert broadcasts on VoterVoice, an advocacy platform that connects advocates to lawmakers to advocate on issues impacting Hindu Americans.  5,000

people, the overwhelming majority of whom identify as Hindu, reside and/or work in California and subscribe to the alert broadcasts.

37.    As part of its educational and advocacy mission, HAF works with scholars or scholar-practitioners of Hinduism and Hindu spiritual leaders for their expertise in Hinduism.  At least half a dozen of those scholars and scholar-practitioners reside and/or work in California.

38.    HAF also represents the interests of people of Indian and South Asian descent who, while not Hindu, suffer from discrimination and prejudice based on the assumption that they are Hindu and based on the very type of hurtful and harmful misrepresentations promulgated by the CRD that are the central issue of this litigation.

39.    The Individual Plaintiffs are all California-based supporters, members, or constituents of the Hindu American Foundation.  They have all suffered concrete injury, including Sundar Iyer and Ramana Kompella, individual defendants named by the CRD in the Cisco matter based on its hurtful, harmful and impermissible misrepresentations about Hinduism. Each has an injury traceable to the conduct of the CRD falsely claiming that Hinduism is an inherently discriminatory religion.  And that injury is likely to be redressed by the injunctive relief sought here.  Each of the Individual Defendants have suffered a deep mental, psychological and spiritual injury based on the CRD's conduct.  The CRD has labeled all Hindus, and all Indian Americans, as adhering to a discriminatory caste system that Hinduism and the overwhelming majority of Indian Americans reject.  The CRD labels Hindus and Indian Americans, "second-class citizens" and that "their participation in the political community will be chilled" by the State of California labeling them as inherently caste-ist.  *Catholic League for Religious & Civ. Rights v. City & County of San Francisco,* 624 F.3d 1043, 1049 (9th Cir. 2009). The Individual Plaintiffs suffered the "spiritual or psychological harm" sufficient to establish standing here. *Id.* at 1050.

*HAF Legal Advocacy for the Hindu American Community*

40.     HAF has a long history of defending the rights of Hindu, Indian, and South Asian Americans.  It has twice sued to defend those rights in its own name, with the courts permitting organizational standing in both cases.  *See In re Hindu Am. Found., et al. v. Cal. State Bd. of Educ.*, Case no. 06 CS 00386 (Cal. Super. Ct. 2006) and *Summers, et al v. Adams*, 669 F. Supp. 2d 637 (D.S.C. 2009).  And the courts have welcomed amicus briefs from HAF on dozens of occasions where HAF has defended the religious and national origin rights of Hindu and South Asian, and Indian Americans.

41.     Because each of the Individual Plaintiffs have standing, and because they are all typical members of HAF, HAF has associational/organizational standing to bring this action as well.  The interests HAF seeks to protect are directly germane to its purpose, and neither the claims nor the relief require participation of the individual members.

42.     Therefore, HAF and the Individual Plaintiffs all have standing to bring the claims asserted here.  *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, ___U.S.___ ; 143 S.Ct. 2141, 2157, 216 L.Ed.2d 857, 875-876 (2023).

*HAF's Predominantly Indian-American Membership*

43.     Because Hinduism originated in India, and because the overwhelming majority of Hindu Americans are of Indian ancestry, HAF's membership, supporters, and constituents are overwhelmingly Indian.

44.     Moreover, because most people assume Indian Americans are practicing Hindus, a substantial part of HAF's mission and work is protecting the Indian American community in America from the same negative and hurtful stereotypes about Hinduism, as even non-Hindus of Indian origin like individual plaintiff Mr. Iyer suffer the same types of discrimination, stigma, and hate.

***HAF Direct Standing***

45.     HAF has been directly injured by the CRD's actions here, and therefore has direct standing to bring these claims.  Plaintiffs have standing to invoke the judicial power of the United States directly on their own behalf where they demonstrate they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U. S. 330, 338 (2016).

46.     HAF has suffered an injury because of CRD's wrongfully identifying caste as an inherent part of Hinduism.  HAF has Hindu staff members in California who the CRD has maligned with its defamatory claims.  HAF has extensive Hindu donors and supporters throughout the state, and HAF itself has had to expend considerable time and resources defending the integrity of Hinduism against this unjust and unconstitutional attack by the CRD.

47.     The CRD's decision to falsely label Hinduism as caste-ist as part of its litigation against Cisco directly and negatively affected HAF.  Before the CISCO case, HAF focused on other areas of advocacy, including ensuring Hinduism is properly reflected in California public schools.  After the CRD's actions, HAF faced a barrage of calls and concerns from Hindu Americans living in California because of the false claims about Hinduism, with the concern particularly intense in technology-related workplaces where Hindus and Indians faced hateful reactions from coworkers who now saw them as agents of religiously and culturally mandated discrimination because of the CRD's position.

48.      Because of the nature of the religious rights embodied in the Free Exercise clause, injury in religious freedom cases does not need to involve physical or financial injuries; spiritual and mental suffering that government denial of that religious freedom involves are sufficient to establish standing in such cases.  *Catholic League for Religious & Civ. Rights v.*

*City & County of San Francisco*, 624 F.3d 1043 (9th Cir. 2009) (en banc); *Vasquez v. Los Angeles Cnty*, 487 F.3d 1246, 1250 (9th Cir. 2007).

49.     The CRD declares the caste system to be "a strict Hindu social and religious hierarchy," which requires discrimination by "social custom and legal mandate," when, in fact, a caste system or discrimination on its basis are in no way a legitimate part of Hindu beliefs, teachings, or practices.  HAF and Hinduism are vehemently opposed to all types of discrimination.

50.     The CRD is causing the acute mental and spiritual suffering that the First Amendment protects against.  The CRD is knowingly and maliciously misrepresenting Hinduism, labeling Hindus and people of Indian descent throughout California as representing the very discrimination and casteism that they abhor, forcing HAF to fend off an attack on their faith and people from the very state government that is charged with protecting their religious freedoms.

51.     Because of the CRD's false and malicious attack, HAF has suffered concrete injury, caused by the CRD's actions, that can be redressed through injunctive relief ordered by this Court.  HAF, therefore, has direct standing to bring the claims it raises here.

## **VENUE**

52.     Venue is proper in this judicial district under 28 U.S.C. Section 1391(b)(1), which provides that "[a] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  Defendant Kevin Kish, sued in his official capacity as the Director of the California Civil Rights Department, resides in this district and is a resident of the State of California, specifically located in Elk Grove, California, Sacramento County.

## FACTUAL BACKGROUND

53.     Established in 2003, the Hindu American Foundation is the nation's largest Hindu education and advocacy organization.  As a non-partisan group that is not affiliated with any other religious or political organization, HAF works with a wide range of people and groups that are committed to promoting dignity, freedom, equality and justice, working across all sampradaya (Hindu religious traditions) regardless of race, color, national origin, citizenship, ancestry, gender, sexual orientation, age and/or disability.

### *Hinduism Teaches the Inherent Equal Worth of All Persons*

54.     As the world's oldest religion with over 1.2 billion adherents, Hinduism represents a broad, pluralistic family of traditions.  Its diversity is bound together by certain ancient, core teachings, not a single spiritual founder, authority or book.

55.     It is the sincerely held belief of the Hindu American Foundation and Hindus they represent that core of Hinduism lies in its assertion that the divine is equally present in all, and that this divinity is the ultimate, eternal, omnipresent reality and reflected through the immortal, individual Self or Pure Consciousness, which takes form through a cycle of birth and rebirth or reincarnation.  This inherent divinity leads Hindus to understand the purpose of human life and means to flourishing as a quest for: (i) goodness or societal well-being (Dharma); (ii) material prosperity and security (Artha); (iii) mental and physical happiness (Kama); and (iv) wholeness or spiritual freedom (Moksha).

56.     Moreover, as a result of this shared divinity, Hinduism asserts a moral obligation (Dharma) to ensure that one's thoughts, words, and actions (Karma) uphold values like truth, non-injury, compassion, equanimity, generosity, and equal regard in order to honor the divine in all.  Developed over millennia through the meditations, experiences, and spiritual practices of its sages, teachers, lay leaders, and practitioners, Hinduism represents a broad and diverse faith,

with each of the over 1.2 billion Hindus' understanding its wisdom based on their own study, practice, and experience of its precepts.

57. The CRD is actively pursuing religious discrimination enforcement actions against Hindu Americans in California State Court based on the inaccurate, colonial assertion that Hindu beliefs and practices include a discriminatory caste system.  In its enforcement action filed in California Superior Court for the County of Santa Clara, Case No. 20CV372366, the CRD alleges that a caste system is "a strict Hindu social and religious hierarchy," which requires discrimination by "social custom and legal mandate" and that Hindu Americans, therefore, adhere to this strict and discriminatory religious hierarchy in violation of the California Fair Employment and Housing Act.  (Exhibit A – CRD/DFEH State Complaint, ¶¶ 1-4.)

58. The CRD has relied upon individuals who are not Hindu to support and endorse its false, misinformed, and disparaging views about Hinduism and Hindus.  These individuals publicly perpetuate hateful, misinformed and misrepresentative assertions about Hinduism and Hindus and through declarations submitted by the CRD.

59. The CRD's depiction of the caste system is not based on any universal or widely held understandings among Hindus about their own beliefs and traditions, nor the actual ways in which Indian communities functioned historically or today.

### *The CRD Has No Role in Defining Hinduism*

60. Regardless of the source of the CRD's misunderstandings about Hindu beliefs and practices, the CRD and the State of California cannot define or act upon assertions of Hindu beliefs and practices that Hinduism itself disclaims.  Just as Catholics are free to define Catholicism and Muslims are free to define Islam, it is for Hindus alone to define Hinduism, and the CRD and the State of California cannot, as it seeks to here, adopt a legal definition of Hinduism that incorrectly includes caste, a caste system, caste hierarchies, and caste-based discrimination.

61.     The CRD and the State of California are attempting to define Hinduism against the beliefs of an overwhelming number of its own adherents, in direct violation of the constitutional right to religious freedom.  It is attempting to chain Hinduism to discriminatory practices abhorred by and rejected by the vast majority of Hindu Americans and therefore just as much a violation of Hindu American's religious rights as it would violate Christian American's rights if the government declared a belief in slavery as inherently Christian teachings.

62.     The CRD and the State of California have treated Hinduism and Hindus disfavorably and in an unequal manner and different than the manner in which it treats other religions or their adherents.

63.     And in doing so, the State of California is violating the First Amendment's Establishment and Free Exercise clauses as well as the 14th Amendment's equal protection and due process rights of all Hindu Americans.

### *The CRD's Approach Undermines Efforts to End Caste-Based Discrimination*

64.     By wrongly attempting to define Hinduism to include caste, a caste hierarchy and caste discrimination or "untouchability practices" which are socially and legally mandated segregation practices, the CRD would require the very discrimination that it seeks to ban. (Exhibit A – CRD/DFEH State Complaint, ¶¶ 1-4.)

65.     The Religious Freedom Restoration Act prohibits the federal government from taking any action that would "substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the government can show a compelling government interest in doing so.  42 U.S.C. § 2000bb-1.  Title VII requires an employer to reasonably accommodate the religious beliefs of its employees unless the employer can demonstrate that doing so would impose an undue hardship.  42 U.S.C. § 2000e(j).  The California Fair Employment and Housing Act, likewise, requires employers to accommodate religious beliefs.  Cal. Gov. Code § 12940(l)(1).

66.     The CRD's enforcement actions assert, as a legally binding principle of law necessary to their religious discrimination claim, that caste discrimination is a religious belief and practice under Hinduism.  Must an employer then accommodate requests for 'untouchability practices" or caste discrimination from employees as a religious accommodation?

67.     California would doubtless answer no, because FEHA states that employers are not required to accommodate religious beliefs "under this subdivision if it would result in a violation of this part or any other law prohibiting discrimination or protecting civil rights."  Cal. Gov. Code § 12940 subd. (l)(3).

68.     But caste discrimination is not barred by any part of any other California law or regulation.  The Fair Employment and Housing Act prohibits discrimination based on: "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status."  Cal. Gov. Code § 12940 subd. (a). Similar facially neutral and generally applicable categories are listed in California's other civil rights statutes.  See Cal. Gov. Code §§ 11135, 12940; Civ. Code § 51.  Nowhere does Title VII or FEHA, their regulations, or any other provision of federal or California law bar caste discrimination.

69.     In seeking to declare caste an inherent part of Hindu religious beliefs, teachings, and practices, employers might arguably be required to accommodate an employee's request not to work with someone the employee believes to be of the "wrong"or different caste.  An employer might also arguably have to accommodate an employee's request not to be supervised by, or to supervise, persons perceived to be of the "wrong" or different caste, even where no other employee identifies with that or any caste or has any personal belief in or understanding of a caste system or where other employees lack the ability to recognize or identify different castes.

70. By wrongly claiming that caste, a caste system and caste-based discrimination are an inherent part of Hindu religious belief and practice, the CRD would actually seem to encourage and possibly even require employers to engage in the very discrimination that they purportedly seek to bar.

71. The CRD and the State of California's false and disparaging definition of Hinduism treats it and Hindus in a manner that is unequal and different from the manner in which the CRD treats other religions or their adherents.

72. The CRD's false and blanket claims about workers of Indian descent at Cisco, assigning "high" caste status and claiming that they are all beneficiaries of a Hindu social and religious hierarchy or caste system and have imported the discriminatory system's practices into their team and workplace treats Indians in a manner that is unequal and different from the manner in which the CRD treats other nationalities and ethnicities.

73. The CRD's false claim that Ramana Kompella required required weekly status reports from CRD's Plaintiff, John Doe, because of Doe's 'Dalit' caste, when in fact the directive came from, Mr. Tom Edsall, a white Caucasian male, treats Mr. Kompella disparately on the basis of his national origin and religion.

74. In doing so, the State of California is violating the First Amendment, due process, and equal protection rights of all Hindu and Indian Americans.

**FIRST CLAIM FOR RELIEF**
**Civil Rights Violations – Religious Freedom**
**Establishment Clause**

42 U.S.C. § 1983
(HAF and All Individual Plaintiffs)

75. Plaintiffs incorporate the preceding paragraphs as if they were repeated in full herein.

76.     Plaintiff HAF has standing to bring this claim on behalf of itself and the Hindu Americans it represents.

77.     The Individual Plaintiffs have direct standing to bring these claims based on the harm caused to them by the CRD's actions in violation of their First Amendment rights to religious freedom as guaranteed by the Establishment Clause.

78.     Plaintiffs seek relief under 42 U.S.C. § 1983, which prohibits any person, under color of law, from depriving others of their rights, privileges or immunities secured by the Constitution of the United States.

79.     In filing enforcement actions based on the inaccurate assertion that caste, a caste system and caste-based discrimination are an inherent part of Hindu religious belief and practice, the California Civil Rights Department has acted under color of state law.

80.     Under the First Amendment to the United States Constitution, "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. Const., 1st Amend.

81.     State actions violate the Establishment Clause when they "'dictate or even to influence such matters [of faith and doctrine],'" *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S.Ct. 2049 (2020); citing *Hosanna-Tabor*, 565 U. S., at 186 (quoting Kedroff, 344 U. S., at 116).

82.     By acting under color of state law to wrongly define Hindu beliefs, teachings and practices to include an abhorrent practice of discrimination, the California Civil Rights Department has violated the religious freedom rights of Hindu Americans by seeking to legally define their religious beliefs and declaring those inaccurate beliefs and practices as illegal conduct under state law.

83.     By acting under the color of state law to declare that caste discrimination is already barred under the California Fair Employment and Housing Act, and by falsely declaring

that caste-discrimination is a fundamental practice of Hinduism, the CRD is declaring Hindus as inherently discriminatory, and subject to state censure, including personal civil actions against them simply because of their status as practicing Hindus.

84.      That this is a real and substantial harm is clear from the fact that the CRD named two individual defendants in the Cisco action based on the CRD's representations that, as Hindus, caste discrimination was inherently part of their religious and cultural beliefs.  The CRD expressly did what the Establishment Clause prohibits, it attempted to define matters of Hindu doctrine and faith against the express teachings of Hinduism.  *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S.Ct. 2049 (2020); citing *Hosanna-Tabor*, 565 U. S., at 186 (quoting Kedroff, 344 U. S., at 116).

85.      HAF and the Individual Plaintiffs have suffered justiciable injury as a direct result of the CRD's actions, as alleged above.

86.      As a result, Plaintiffs pray for the judgment and relief set forth below.

## SECOND CLAIM FOR RELIEF
### Civil Rights Violations – Religious Freedom
### Free Exercise Clause

42 U.S.C. § 1983
(HAF and All Individual Plaintiffs)

87.      Plaintiffs incorporate the preceding paragraphs as if they were repeated in full herein.

88.      Plaintiff HAF has standing to bring this claim on behalf of itself and the Hindu Americans it represents.

89.      The Individual Plaintiffs have direct standing to bring these claims based on the harm caused to them by the CRD's actions in violation of their First Amendment rights to religious freedom as guaranteed by the Free Exercise Clause.

90.    Plaintiffs seek relief under 42 U.S.C. § 1983, which prohibits any person, under color of law, from depriving others of their rights, privileges or immunities secured by the Constitution of the United States.

91.    In filing enforcement actions based on the inaccurate assertion that caste, a caste system and caste-based discrimination are an inherent part of Hindu religious belief and practice, the California Civil Rights Department has acted under color of state law.

92.    Under the First Amendment to the United States Constitution, "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. Const., 1st Amend.

93.    "To be sure, the Free Exercise Clause bars 'governmental regulation of religious beliefs.'" *Gillette v. United States*, 401 U.S. 437, 462, 91 S. Ct. 828, 842 (1971); *quoting Sherbert v. Verner*, 374 U.S. 398, 402 (1963).  "If the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect." *Braunfeld v. Brown*, 366 U.S. 599, 607 (1961) (opinion of Warren, C. J.); *quoted in Sherbert, supra*, 374 U.S. at 402.  Neither federal nor state governments can interfere with Americans' free-exercise rights.  *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

94.    Laws violate the Free-Exercise Clause when they "impose special disabilities on the basis of religious status." *Espinoza v. Mont. Dep't of Revenue*, ___U.S.___ [140 S.Ct. 2246, 2254-2255, 207 L.Ed.2d 679, 689-690] (2020); *citing Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S.___ [137 S.Ct. 2012, 2016, 198 L.Ed.2d 551, 555] (2017); *see also Cantwell v. Connecticut*, 310 U. S. 296, 303 (1940).

95.    The CRD has imposed special disabilities on Hindu Americans by acting under color of state law to wrongly define Hindu beliefs, teachings and practices to include an abhorrent practice of discrimination.  The CRD has violated the free exercise rights of Hindu

Americans imposing special disabilities based on religion by wrongly claiming that Hindus believe in and participate in a discriminatory caste system and declaring that this abhorrent practice leads them to illegally discriminate on the basis of caste.

96.    By acting under the color of state law to declare that caste discrimination is already barred under the California Fair Employment and Housing Act, and by falsely declaring that caste-discrimination is a fundamental practice of Hinduism, the CRD is declaring Hindus as inherently discriminatory, and subject to state censure, including personal civil actions against them simply because of their status as practicing Hindus.

97.    That this is a real and substantial harm is clear from the fact that the CRD named two individual defendants in the Cisco action based on the CRD's representations that, as Hindus, caste discrimination was inherently part of their religious beliefs and practices.  The CRD expressly did what the Constitution's Equal Protection clause prohibits, it used "religion as a basis of classification for the imposition of duties, penalties, privileges or benefits."  (*McDaniel v. Paty*, 435 U. S. 618, 639, 98 S. Ct. 1322, 55 L. Ed. 2d 593 (1978) (J. Brennan, opinion concurring in judgment), and did so with the knowledge that at least one of the defendants was "irreligious" or Agnostic, yet portrayed him as Hindu.

98.    HAF and the Individual Plaintiffs have suffered justiciable injury as a direct result of the CRD's actions, as alleged above.

99.    As a result, Plaintiffs pray for the judgment and relief set forth below.

### THIRD CLAIM FOR RELIEF
**Civil Rights Violations - Denial of Procedural Due Process**
**Vagueness**

42 U.S.C. § 1983
(HAF and All Individual Plaintiffs)

100.    Plaintiffs incorporate the preceding paragraphs as if they were repeated in full herein.

101.    Plaintiff HAF has standing to bring this claim on behalf of itself and the Hindu Americans it represents.

102.    The Individual Plaintiffs have direct standing to bring these claims based on the harm caused to them by the CRD's actions in violation of their Constitutional Right to Due Process.

103.    "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012). A statute or regulation violates procedural due-process rights where it "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U. S. 285, 304 (2008). A law qualifies as unconstitutionally vague not because it is difficult to prove, but where "it is unclear as to what fact must be proved." *Id.*, at 306.

104.    The CRD's position in wrongly seeking to legally define Hinduism to include belief and practice in caste and a hierarchical caste system is so standardless that it would actually require the very discrimination that it seeks to prevent.

105.    FEHA requires employers to accommodate religious beliefs.  Cal. Gov. Code § 12940 subd. (l)(1).  The CRD wants to establish, as a legally-binding principle of law, that caste discrimination is a religious belief and practice under Hinduism.  The DFEH's position would both require and prohibit use of and consideration of caste beliefs in employment as a religious accommodation to Hindu employees.

106.    This is true despite the language of FEHA that does not require religious accommodation "if it would result in a violation of this part or any other law prohibiting discrimination or protecting civil rights."  Cal. Gov. Code § 12940 subd. (l)(3).

107.    But caste discrimination is not barred by any part of any other California law or regulation.  The FEHA prohibits discrimination based on: "race, religious creed, color, national

origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status."  Cal. Gov. Code § 12940 subd. (a).  Similar facially neutral and generally applicable categories are listed in California's other civil rights statutes.  See Gov. Code §§ 11135, 12940; Civ. Code § 51.  Nowhere does FEHA, its regulations, or any other provision of California law bar caste discrimination.

108.    In seeking to declare caste an inherent part of Hindu beliefs and practices, employers would be required to accommodate an employee's request not to work with someone the employee believes to be of the "wrong" or different caste.  An employer would have to accommodate an employee's request not to be supervised by, or to supervise, persons perceived to be of the "wrong" or different caste, even where no other employee identifies with that or any caste or has any personal belief in a caste system or where other employees lack the ability to recognize or identify different castes.  California would require employers to engage in the very discrimination that it seeks to prevent.

109.    In fact, the only consistent factor the CRD seeks to identify with caste is that it is an inherent part of Hinduism.  That this "authorizes or encourages seriously discriminatory enforcement" against Hindus and Americans of South Asian descent is self-evident.  Without any context outside of its asserted connection to Hinduism, the CRD has provided no meaning or definition of caste and would set up a legal structure that requires the discrimination it seeks to prevent.

110.    By acting under color of state law to enforce a state non-discrimination law in a way that both requires and prevents caste-based discrimination, all based on an inaccurate, colonial view that Hindu religious belief includes a discriminatory caste system, the CRD has violated the procedural due-process rights of all Americans by adopting the interpretation and

enforcement of the California Fair Employment and Housing Act that is so standardless that it would authorize or encourage seriously discriminatory enforcement.

111.    As a result, Plaintiffs pray for the judgment and relief set forth below.

**FOURTH CLAIM FOR RELIEF**
**Civil Rights Violations – Denial of Equal Protection**
**Religion**

42 U.S.C. § 1983
(HAF and All Individual Plaintiffs)

112.    Plaintiffs incorporate the preceding paragraphs as if they were repeated in full herein.

113.    Plaintiff HAF has standing to bring this claim on behalf of itself and the Hindu Americans it represents.

114.    The Individual Plaintiffs have direct standing to bring these claims based on the harm caused to them by the CRD's actions in violation of their Constitutional Right to Equal Protection.

115.    Under the Fourteenth Amendment to the United States Constitution, no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

116.    The "government may not use religion as a basis of classification for the imposition of duties, penalties, privileges or benefits."  *McDaniel v. Paty*, 435 U. S. 618, 639, 98 S. Ct. 1322, 55 L. Ed. 2d 593 (1978) (J. Brennan, opinion concurring in judgment).

117.    Religion is therefore a suspect class under the 14th Amendment's Equal Protection Clause.  *Saud v. Days,* 36 F.4th 949, 953 (9th Cir. 2022).  The CRD's actions targeting Hindu Americans and Indian Americans it believes are Hindu are, therefore, subject to strict scrutiny.

118.    By wrongly claiming that Hinduism includes a belief in a discriminatory caste system, by adopting an enforcement position that caste discrimination violates the California Fair

Employment and Housing Act, and by filing enforcement actions against some of the Individual Defendant seeking to enshrine its wrong and defamatory view of Hindu beliefs in state law, the CRD as acted under color of state law against Hindu Americans based on religion.

119.   By falsely claiming that Hindu Americans inherently hold discriminatory beliefs in a caste system, and that such beliefs and practices are an inherent and mandated part of the Hindu religion, and by seeking to enforce the California Fair Employment and Housing Act against Hindu Americans based on these false claims, the CRD has applied the Fair Employment and Housing Act in a discriminatory manner against Hindu Americans and fundamentally interfered with Hindu American's religious freedom.

120.   By falsely claiming that Indian Americans, who have expressly informed the CRD that they are not Hindu, are still Hindu and that these non-Hindu Indian Americans therefore engage in caste discrimination as an inherent or mandated part of the Hindu religion, and by seeking to enforce the California Fair Employment and Housing Act against Indian Americans based on these false claims, the CRD has applied the Fair Employment and Housing Act in a discriminatory manner against non-Hindu Indian Americans based on national origin.

121.   The CRD and State of California have already violated the rights of the Hindu Americans that HAF represents when they named two individual defendants in the Cisco action based on the CRD's representations that, as Hindus, caste discrimination was inherently part of their religious beliefs that subjected them to liability under California's Fair Employment and Housing Act.  The CRD expressly did what the Constitution's Equal Protection clause prohibits, it used "religion as a basis of classification for the imposition of duties, penalties, privileges or benefits."  *McDaniel v. Paty*, 435 U. S. 618, 639, 98 S. Ct. 1322, 55 L. Ed. 2d 593 (1978) (J. Brennan, opinion concurring in judgment).

122.   HAF and the Individual Plaintiffs have suffered justiciable injury as a direct result of the CRD's actions, as alleged above.

123.    As a result, Plaintiffs pray for the judgment and relief set forth below.

**FIFTH CLAIM FOR RELIEF**
**Civil Rights Violations – Denial of Equal Protection**
**National Origin**

42 U.S.C. § 1983
(Plaintiffs Iyer and Kompella)

124.    Plaintiffs incorporate the preceding paragraphs as if they were repeated in full herein.

125.    Plaintiffs Iyer and Kompella have direct standing to bring these claims based on the harm caused to them by the CRD's actions in violation of their Constitutional Right to Equal Protection.

126.    Under the Fourteenth Amendment to the United States Constitution, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

127.    National origin is a suspect class under the 14th Amendment's Equal Protection Clause. *Saud v. Days,* 36 F.4th 949, 953 (9th Cir. 2022).

128.    By intentionally and maliciously identifying Plaintiffs Iyer as Hindus, even when the CRD has direct knowledge that they are not, in fact, Hindu, the CRD has acted under the color of state law against Indian Americans based on national origin.

129.    By intentionally and maliciously claiming Plaintiff Kompella took actions against a co-worker, when in fact the CRD knew or should have known that Kompella's non-Indian supervisor took those actions, the CRD has acted under the color of state law against Indian Americans based on national origin.

130.    By falsely claiming that Indian Americans, who have expressly informed the CRD that they are not Hindu, are still Hindu and that these non-Hindu Indian Americans therefore engage in caste discrimination as an inherent or mandated part of the Hindu religion,

and by seeking to enforce the California Fair Employment and Housing Act against Indian Americans based on these false claims, the CRD has applied the Fair Employment and Housing Act in a discriminatory manner against non-Hindu Indian Americans based on national origin.

131.     By falsely claiming that every Indian American supervisor or co-worker at Cisco were "beneficiaries of the caste system" who "imported the discriminatory system's practices into their team and Cisco's workplace," and by seeking to enforce the California Fair Employment and Housing Act against Indian Americans based on these false claims, the CRD has applied the Fair Employment and Housing Act in a discriminatory manner against Hindu and non-Hindu Indian Americans based on national origin.

132.     By falsely claiming Mr. Kompella engaged in caste-based harassment because he required weekly status reports from CRD's Plaintiff, John Doe, because of Doe's 'Dalit' caste, when in fact, Mr. Kompella did not assign these reports, but Mr. Tom Edsall, who is not of Indian origin or Hindu, assigned them, the CRD has applied the Fair Employment and Housing Act in a discriminatory manner against an Indian American based on national origin.

133.     The CRD and State of California have already violated the rights of the Hindu Americans and Indian Americans that HAF represents when they named two individual defendants in the Cisco action based on the CRD's representations that, as Hindus, caste discrimination was inherently part of their religious beliefs and practices that subjected them to liability under California's Fair Employment and Housing Act.  The CRD expressly did what the Constitution's Equal Protection clause prohibits, it used "religion as a basis of classification for the imposition of duties, penalties, privileges or benefits." *McDaniel v. Paty*, 435 U. S. 618, 639, 98 S. Ct. 1322, 55 L. Ed. 2d 593 (1978) (J. Brennan, opinion concurring in judgment).

134.     Plaintiffs Iyer and Kompella have suffered justiciable injury as a direct result of the CRD's actions, as alleged above.

135.     As a result, Plaintiffs pray for the judgment and relief set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment that:

1.      Declares that the CRD, through the actions described above, has violated the First Amendment, Due Process, and Equal Protection rights of Hindu Americans.

2.      Declares that the CRD, through the actions described above, has violated the First Amendment, Due Process, and Equal Protection rights of Hindu Americans.

3.      Enjoins the CRD from engaging in any act or practice that seeks to define Hinduism as including a caste system or any other belief or practice.

4.      Enjoins the CRD from bringing any religious discrimination action based on the premise that Hindu belief and practice includes a caste system.

5.      Enjoins the CRD from ascribing religious or moral beliefs or practices to persons or groups who expressly disclaim any such beliefs or practices.

6.      Enjoins the CRD from ascribing caste-ist beliefs or practices to persons of Indian or Indian Americans based on their national origin.

7.      Enjoins the CRD from ascribing religious beliefs to Indian or Indian Americans based on their national origin.

8.      Awards attorneys' fees and costs incurred for the prosecution of this matter as provided by law.

9.      Grants such other additional relief as the Court deems just and proper.

Dated: August 27, 2024                 NARAYAN TRAVELSTEAD P.C.

<u>/s/ Timothy C. Travelstead</u>
Timothy C. Travelstead, Esq.
Scott C. Ku, Esq.
Attorneys for Plaintiff s
HINDU AMERICAN FOUNDATION;
SAMIR KALRA; MIHIR MEGHANI;
SANGEETHA SHANKAR; DILIP AMIN;
SUNDAR IYER; RAMANA KOMPELLA;
SHAISHAV DESAI; AND SRIVATS IYER