1   Rob Bonta, State Bar No. 202668
    Attorney General of California
2   Michael Newman, State Bar No. 222993
    Senior Assistant Attorney General
3   William H. Downer, State Bar No. 257644
    Supervising Deputy Attorney General
4   *Carly J. Munson, State Bar No. 254598
    Jennifer M. Soliman, State Bar No. 332519
5   Deputy Attorneys General
       1300 I Street
6      Sacramento, CA  95814
       Telephone:  (916) 210-7845
7      Fax:  (916) 731-2129
       E-mail:  Carly.Munson@doj.ca.gov
8   *Attorneys for Defendant Kevin Kish, Director of
    the California Civil Rights Department*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HINDU AMERICAN FOUNDATION, INC.,** a Florida Not-For-Profit Corporation; **SAMIR KALRA; MIHIR MEGHANI; SANGEETHA SHANKAR; DILIP AMIN, SUNDAR IYER, RAMANA KOMPELLA, SHAISHAV DESAI, and SRIVATS IYER,** as individuals;<br><br>Plaintiffs,<br><br>v.<br><br>**KEVIN KISH, an individual, in his official capacity as Director of the California Civil Rights Department; and DOES 1-50, inclusive,**<br><br>Defendants. | Case No. 2:22-CV-01656-DAD-JDP<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO *YOUNGER* ABSTENTION DOCTRINE, RULE 12(b)(1), AND RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:           December 3, 2024<br>Time:          1:30 p.m.<br>Judge:         Hon. Dale A. Drozd<br><br>Action Filed:  September 20, 2022<br>Second Am. Compl Filed: August 27, 2024 |

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................. 1

Background ............................................................................................................. 3

    I.     The Parties ................................................................................................ 3

    II.    The Department's Ongoing Efforts to Remedy Workplace Discrimination
          and Harassment Against Dalit Workers at Cisco ...................................... 4

Legal Standard ....................................................................................................... 6

Argument ............................................................................................................... 7

    I.     The *Younger* Abstention Doctrine Requires that the Court Abstain from
        Hearing Plaintiffs' Claims and Dismiss the Suit .................................... 7

        A.    The Department's Pending Enforcement Action Against Cisco in
              State Court is the Civil Equivalent of a Criminal Prosecution and,
              Therefore, Falls Under the Second *NOPSI* Category ................................ 8

        B.    The Four Additional Factors for *Younger* Abstention Are Also
              Satisfied ........................................................................................ 9

        C.    As Plaintiffs Seek Only Injunctive and Declaratory Relief, *Younger*
              Abstention Warrants Dismissal .................................................... 11

    II.    Plaintiffs' Second Amended Complaint Must Be Dismissed Because They
        Lack Standing to Pursue this Litigation ................................................ 11

        A.    Plaintiffs Do Not Have Direct Standing to Pursue this Litigation ............ 12

            1.    Plaintiffs have not demonstrated that they have suffered
                   cognizable injuries-in-fact as a result of *CRD v. Cisco* ............... 12

                 a.    Individual Plaintiffs' alleged psychological and
                        spiritual harms are not a cognizable injuries-in-fact
                        under any claim presented ............................................ 12

                 b.    HAF has not demonstrated that it has been forced to
                        take action to avoid other injury as a result of *CRD
                        v. Cisco* ........................................................................ 18

            2.    Plaintiffs' generalized grievances are not redressable ................. 20

        B.    HAF Does Not Have Associational Standing to Pursue this
              Litigation ...................................................................................... 21

            1.    HAF has not identified a clear constituency, let alone one
                   that has suffered the requisite injury and whose interests
                   HAF can represent in this suit ...................................... 21

            2.    On amendment, HAF has not satisfied the *Hunt* factors for
                   associational standing ................................................... 23

    III.   In the Alternative, Mr. Sundar Iyer's and Mr. Kompella's Equal Protection
        Clause Claims Must Be Dismissed as Moot ......................................... 25

    IV.   Plaintiffs' Second Amended Complaint Must Be Dismissed Because It
        Fails to State a Claim Upon Which Relief Can Be Granted ...................... 27

i

**TABLE OF CONTENTS**
**(continued)**

Page

A.   Plaintiffs Fail to State a Claim for Relief Under the Establishment Clause ................................................................................................ 27

B.   Plaintiffs Fail to State a Claim for Relief Under the Free Exercise Clause ................................................................................................ 31

C.   Plaintiffs Fail to State a Claim for Relief Under the Due Process Clause ................................................................................................ 34

D.   Plaintiffs Fail to State a Claim for Relief Under the Equal Protection Clause for Either Religious or National Origin Discrimination ......................................................................................... 36

1.   All Plaintiffs fail to state a claim for discrimination on the basis of religion ................................................................................ 37

2.   Mr. Sundar Iyer and Mr. Kompella fail to state a claim for discrimination on the basis of national origin .............................. 38

Conclusion ................................................................................................................ 40

# TABLE OF AUTHORITIES

**Page**

CASES

Adarand Constructors, Inc. v. Slater
    528 U.S. 216 (2000) ........................................................................................... 27

Am. Unites for Kids v. Rousseau
    985 F.3d 1075 (9th Cir. 2021) ......................................................................... 21, 22

Arlington Heights v. Metro. Hous. Dev. Corp.
    429 U.S. 252 (1977) ........................................................................................... 37

Ashcroft v. Iqbal
    556 U.S. 662 (2009) ................................................................................... passim

Balistreri v. Pacifica Police Dep't
    901 F.2d 696 (9th Cir. 1990) ............................................................................. 36

Bankshot Billiards, Inc. v. City of Ocala
    634 F.3d 1340 (11th Cir. 2011) ..................................................................... 16, 35

Barren v. Harrington
    152 F.3d 1193 (9th Cir. 1998) ....................................................................... 16, 36

Bd. of Educ. of Cent. Sch. Dist. v. Allen
    392 U.S. 236 (1968) ........................................................................................... 13

Bd. of Regents of State Colls. v. Roth
    408 U.S. 564 (1972) ........................................................................................... 34

Bell Atl. Corp. v. Twombly
    550 U.S. 544 (2007) ........................................................................................... 32

Brown v. Stored Value Cards, Inc.
    953 F.3d 567 (9th Cir. 2020) ............................................................................. 40

Cal. Parents for the Equalization of Educ. Materials v. Torlakson
    973 F.3d 1010 (9th Cir. 2020) ....................................................................... 28, 29

Cal. v. Tex.
    593 U.S. 659 (2021) ........................................................................................... 20

Carpenter v. OneWest Bank, FSB
    No. 12-cv-00895-MMM-OP, 2012 WL 13012420 (C.D. Cal. Apr. 25, 2012) ........................ 6

Carrico v. City & Cnty. of S.F.
    656 F.3d 1002 (9th Cir. 2011) ........................................................................... 40

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Catholic League for Religious & C.R. v. City & Cnty. of S.F.*
   624 F.3d 1043 (9th Cir. 2010) ........................................................ 14, 15, 22, 28, 30

4

5

*Christian Legal Soc'y Chapter of the Univ. of Cal. Hastings Coll. of Law v.*
   *Martinez*

6

   561 U.S. 661 (2010) ...................................................................................... 31

7

*Citizens for Fair Representation v. Padilla*
   815 F. App'x 120 (9th Cir. 2020) ............................................................. 16

8

9

*City of Erie v. Pap's A.M.*
   529 U.S. 277 (2000) ...................................................................................... 26

10

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013) ...................................................................................... 18

11

12

*Dep't of Fair Emp. & Hous. v. Law Sch. Admission Council, Inc.*
   941 F. Supp. 2d 1159 (N.D. Cal. 2013) .............................................. 8, 39

13

*DHX, Inc. v. Allianz AGF MAT, Ltd.*
   425 F.3d 1169 (9th Cir. 2005) ................................................................. 26

14

15

*Dubinka v. Judges of Super. Ct. of State of Cal. for Cnty. of L.A.*
   23 F.3d 218 (9th Cir. 1994) ...................................................................... 10

16

*E. Bay Sanctuary Covenant v. Biden*
   993 F.3d 640 (9th Cir. 2021) ................................................................... 18

17

18

*Espinoza v. Mont. Dep't of Revenue*
   591 U.S. 464 (2020) ................................................................................ 14, 32

19

20

*Fed. Commc'ns Comm'n v. Fox TV Stations, Inc.*
   567 U.S. 239 (2012) ...................................................................................... 35

21

22

*Foman v. Davis*
   371 U.S. 178 (1962) ...................................................................................... 40

23

*Gillette v. United States*
   401 U.S. 437 (1971) ...................................................................................... 31

24

25

*Graham v. C.I.R.*
   822 F.2d 844 (9th Cir. 1987) ..................................................................... 31

26

27

*Harris v. City of Santa Monica*
   56 Cal. 4th 203 (2013) ................................................................................... 8

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Harris v. McRae*
4      448 U.S. 297 (1980) ........................................................................... 24, 25, 31

5      *Havens Realty Corp. v. Coleman*
       455 U.S. 363 (1982) ........................................................................................... 18

6
       *Heckler v. Chaney*
7      470 U.S. 821 (1985) ........................................................................................... 39

8      *Herrera v. City of Palmdale*
       918 F.3d 1037 (9th Cir. 2019) ........................................................................... 11
9

10     *Hirsh v. Justices of the Sup. Ct. of State of Cal.*
       67 F.3d 708 (9th Cir. 1995) ................................................................................. 7

11
       *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. Equal Employment &*
12        *Opportunity Commission*
          565 U.S. 171 (2012) ....................................................................................... 28
13

14     *Huffman v. Pursue, Ltd.*
       420 U.S. 592 (1975) ............................................................................................. 8

15     *Hunt v. Wash. State Apple Advert. Comm'n*
       432 U.S. 333 (1977) .................................................................... 21, 23, 24, 25
16

17     *In Def. of Animals v. Sanderson Farms, Inc.*
       No. 3:20-cv-05293-RS, 2021 WL 4243391 (N.D. Cal. Sept. 17, 2021) ................ 18
18

19     *Jones v. Williams*
       791 F.3d 1023 (9th Cir. 2015) ........................................................................... 31

20     *Juidice v. Vail*
21     430 U.S. 327 (1977) ............................................................................................. 9

22     *Kennedy v. Bremerton School Dist.*
       597 U.S. 507 (2022) ........................................................................................... 28
23

24     *Kokkonen v. Guardian Life Ins. Co.*
       511 U.S. 375 (1994) ............................................................................................. 6

25     *Kumar v. Koester*
       683 F. Supp. 3d 1108 (C.D. Cal. 2023) .............................................. 13, 28, 29, 32
26

27     *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*
       624 F.3d 1083 (9th Cir. 2010) ..................................................................... 18, 19

28

v

# TABLE OF AUTHORITIES
### (continued)

Page

*Lam v. City & Cnty. of S.F.*
  868 F. Supp. 2d 928 (N.D. Cal. 2012) ...................................................... 36, 37, 38

*Lebbos v. Judges of the Super. Ct.*
  883 F.2d 810 (9th Cir. 1989)............................................................................... 7, 10

*Leite v. Crane Co.*
  749 F.3d 1117 (9th Cir. 2014)...................................................................................... 6

*Liner v. Jafco, Inc.*
  375 U.S. 301 (1964)..................................................................................................... 25

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) ........................................................................................ 11, 20, 23

*McCreary Cnty., Ky. v. ACLU of Ky.*
  545 U.S. 844 (2005) ..................................................................................................... 28

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*
  457 U.S. 423 (1982) ...................................................................................................... 7, 8

*Montclair Police Officers' Ass'n v. City of Montclair*
  No. 2:12-cv-06444-PSG-PLA, 2012 WL 12888427 (C.D. Cal. Oct. 24, 2012).............. 15, 35

*Moore v. Sims*
  442 U.S. 415 (1979) ..................................................................................................... 8, 9

*N. Coast Women's Care Med. Grp., Inc. v. Super. Ct.*
  44 Cal.4th 1145 (Cal. Sup. 2008)............................................................................. 30

*Namisnak v. Uber Techs., Inc.*
  971 F.3d 1088 (9th Cir. 2020)...................................................................................... 13

*New Hampshire Motor Transp. Ass'n v. Rowe*
  448 F.3d 66 (1st Cir. 2006) .......................................................................................... 25

*New Orleans Pub. Serv., Inc. v. Council of New Orleans (NOPSI)*
  491 U.S. 350 (1989).................................................................................................... 7, 8, 9

*North Carolina v. Rice*
  404 U.S. 244 (1971) ..................................................................................................... 25

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*
  477 U.S. 619 (1986)..................................................................................................... 8, 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Ohno v. Yasuma*
   723 F.3d 984 (9th Cir. 2013).......................................................................................... 31

*Or. Advocacy Ctr. v. Mink*
   322 F.3d 1101 (9th Cir. 2003)................................................................................... 21, 22

*Or. Prescription Drug Monitoring Program v. United States Drug Enf't Admin.*
   860 F.3d 1228 (9th Cir. 2017)....................................................................................... 13

*Our Watch with Tim Thompson, v. Bonta*
   682 F. Supp. 3d 838 (E.D. Cal. 2023)............................................................................ 18

*Pennzoil Co. v. Texaco, Inc.*
   481 U.S. 1 (1987)........................................................................................................... 10

*Pers. Adm'r of Mass. v. Feeney*
   442 U.S. 256 (1979)................................................................................................. 36, 37

*Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*
   219 F.3d 895 (9th Cir. 2000).......................................................................................... 11

*Phillips v. United States Customs & Border Prot.*
   74 F.4th 986 (9th Cir. 2023)........................................................................................... 17

*Portman v. Cnty. of Santa Clara*
   995 F.2d 898 (9th Cir. 1993).......................................................................................... 34

*Potrero Hills Landfill, Inc. v. Cnty. of Solano*
   657 F.3d 876 (9th Cir. 2011)........................................................................................ 7, 9

*Rogers v. Lodge*
   458 U.S. 613 (1982)....................................................................................................... 37

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*
   44 F.4th 867 (9th Cir. 2022).................................................................................... 13, 32

*Safe Air for Everyone v. Meyer*
   373 F.3d 1035 (9th Cir. 2004).......................................................................................... 6

*Sch. Dist. of Abington Township, Pa. v. Schempp*
   374 U.S. 203 (1963)................................................................................................. 28, 31

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*
   806 F.2d 1393 (9th Cir. 1986)....................................................................................... 40

Motion to Dismiss Second Amended Complaint (2:22-CV-01656)

## TABLE OF AUTHORITIES
### (continued)

Page

*Schwartzmiller v. Gardner*
  752 F.2d 1341 (9th Cir. 1984) ................................................................. 34

*Serbian E. Orthodox Diocese for United States & Canada v. Milivojevich*
  426 U.S. 696 (1976) ............................................................................... 32

*Simon v. E. Ky. Welfare Rights Org.*
  426 U.S. 26 (1976) ................................................................................. 20

*Skilstaf, Inc. v. CVS Caremark Corp.*
  669 F.3d 1005 (9th Cir. 2012) ................................................................... 6

*Sossamon v. Lone Star State of Tex.*
  560 F.3d 316 (5th Cir. 2009) .................................................................. 27

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016) ......................................................................... 13, 23

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ............................................................. 18, 33

*Sprint Commc'ns, Inc. v. Jacobs*
  571 U.S. 69 (2013) ................................................................................... 8

*State Pers. Bd. v. Fair Emp. & Hous. Comm'n*
  39 Cal. 3d 422 (1985) ....................................................................... 8, 39

*Steel Co. v. Citizens for Better Env't*
  523 U.S. 83 (1998) ................................................................................... 7

*Summers v. Earth Island Inst.*
  555 U.S. 488 (2009) ......................................................................... 16, 36

*Tenet v. Doe*
  544 U.S. 1 (2005) ..................................................................................... 7

*Town of Greece, N.Y. v. Galloway*
  572 U.S. 565 (2014) ............................................................................... 28

*TransUnion LLC v. Ramirez*
  594 U.S. 413 (2021) ............................................................................... 17

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*
  517 U.S. 544 (1996) ......................................................................... 23, 24

**TABLE OF AUTHORITIES**
(continued)

**Page**

*United States v. Armstrong*
517 U.S. 456 (1996) ............................................................................................ 36, 38

*United States v. Bourgeois*
964 F.2d 935 (9th Cir. 1992) .................................................................................... 39

*United States v. Chem. Found., Inc.*
272 U.S. 1 (1926) ...................................................................................................... 39

*United States v. Ritchie*
342 F.3d 903 (9th Cir. 2003) ...................................................................................... 7

*United States v. Williams*
553 U.S. 285 (2008) .................................................................................................. 35

*Valle del Sol Inc. v. Whiting*
732 F.3d 1006 (9th Cir. 2013) .................................................................................. 18

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*
454 U.S. 464 (1982) ............................................................................................ 11, 14

*Van Orden v. Perry*
545 U.S. 677 (2005) ............................................................................................ 27, 28

*Warren v. Fox Family Worldwide, Inc.*
328 F.3d 1136 (9th Cir. 2003) .................................................................................... 6

*Washington v. Davis*
426 U.S. 229 (1976) ...................................................................................... 16, 36, 37

*Wayte v. United States*
470 U.S. 598 (1985) ...................................................................................... 36, 38, 39

*West v. Atkins*
487 U.S. 42 (1988) .................................................................................................... 34

*West v. Secretary of Dep't of Transp.*
206 F.3d 920 (9th Cir. 2000) .................................................................................... 26

*White v. Lee*
227 F.3d 1214 (9th Cir. 2000) ............................................................................ 6, 26

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*
62 F.4th 517 (9th Cir. 2023) .................................................................................... 12

ix

# TABLE OF AUTHORITIES
## (continued)

Page

*Younger v. Harris*
401 U.S. 37 (1971) ................................................................................... *passim*

**STATUTES**

United States Code, Title 42
§ 1983 ......................................................................................... 1, 34, 36

Cal. Gov't Code
§ 11135 ................................................................................................. 8
§§ 12900-12999 .................................................................................. 30
§ 12920 ................................................................... 3, 8, 9, 30, 35, 39
§ 12921 ................................................................................................. 8
§ 12926(t) ............................................................................................ 4
§ 12930 ................................................................................................. 8
§ 12930(f) ................................................................................... 1, 3, 8
§ 12940(j) ............................................................................................ 4
§ 12948 ................................................................................................. 8
§ 12965 ...................................................................................... 1, 3, 9

Ralph Civil Rights Act, Cal. Civ. Code §51.7 ...................................... 8

Unruh Civil Rights Act, Cal. Civ. Code §51 .................................. 8, 30

**CONSTITUTIONAL PROVISIONS**

U.S. Const.
amend. I .................................................................................. *passim*
amend. XIV ............................................................................ *passim*
art. III, § 2 ......................................................................... 13, 25

**COURT RULES**

Federal Rules of Civil Procedure
Rule 12(b)(1) ......................................................................... *passim*
Rule 12(b)(6) ......................................................................... *passim*

1  **TO THE COURT AND TO THE PLAINTIFFS' COUNSEL OF RECORD:**

2        **PLEASE TAKE NOTICE** that on December 3, 2024, at 1:30 p.m., or as soon thereafter as

3  the Court may hear this matter, Defendant Kevin Kish, Director of the California Civil Rights

4  Department, will and hereby does move to dismiss this action pursuant to the *Younger* abstention

5  doctrine or, in the alternative, under Federal Rule of Civil Procedure 12(b)(1) because no Plaintiff

6  has standing to pursue this matter and any Equal Protection Clause claims Plaintiffs Sundar Iyer

7  and Ramana Kompella may have had are moot, and Rule 12(b)(6) on the grounds that the

8  complaint fails to state a claim upon which relief can be granted.  Pursuant to the Court's

9  Standing Order in Civil Cases (ECF No. 3-1), the hearing will be held by Zoom.

10        Counsel for the parties met and conferred by phone and videoconference regarding Director

11  Kish's earlier Motion to Dismiss Plaintiffs' First Amended Complaint on December 12, 2023,

12  and January 30, May 16, and May 17, 2024 for a combined total of approximately three hours to

13  discuss Plaintiffs' claims and the substance of that motion.  (Declaration of Carly J. Munson in

14  Support of Motion to Dismiss Second Amended Complaint and Request for Judicial Notice

15  ("Munson Decl.") ¶¶ 5-9).  Counsel also communicated by email and were unable to reach an

16  agreement as to the issues presented therein.  (*Id.* ¶¶ 8-9).  Director Kish's Motion to Dismiss

17  Plaintiffs' First Amended Complaint was denied as moot on August 13, 2024.  (ECF No. 49).

18  The Court ordered Plaintiffs to file a Second Amended Complaint within 14 days and allowed

19  Direct Kish to renew his motion thereafter.  (*Id.*)

20        Plaintiffs filed their Second Amended Complaint on August 27, 2024.  (ECF No. 50).  The

21  parties met and conferred by videoconference on September 5, 2024 to discuss the instant Motion

22  to Dismiss Plaintiffs' Second Amended Complaint.  (Munson Decl. ¶ 13).  This motion is

23  substantively the same as Director Kish's earlier motion, about which the parties previously

24  exhausted meet and confer efforts.  (*See id.* ¶¶ 5-9, 13).  Defendant Kish certifies, through

25  counsel, that meet and confer efforts have been exhausted and accordingly refers this matter to

26  the Court for resolution.  (*Id.*)  The parties have stipulated to a proposed briefing schedule for this

27  motion, which has been presented to the Court for consideration.  (ECF No. 54).

28

1    This motion is based on this Notice of Motion and Motion to Dismiss; the accompanying

2    Memorandum of Points and Authorities; the accompanying Request for Judicial Notice; the

3    accompanying Declaration of Carly J. Munson, counsel for Defendant Kish, and the exhibits

4    thereto; all pleadings and papers on file in this action; and such other matters as the Court may

5    deem appropriate.  The Court has granted Defendant up to 15 additional pages—for a total of 40

6    pages—for his memorandum of points and authorities in support of this motion.  (ECF No. 53).

7

Dated:  September 10, 2024                    Respectfully submitted,
8

ROB BONTA
9                                              Attorney General of California
                                               MICHAEL NEWMAN
10                                             Senior Assistant Attorney General
                                               WILLIAM H. DOWNER
11                                             Supervising Deputy Attorney General

12

/s/ Carly J. Munson
13

CARLY J. MUNSON
14                                             JENNIFER M. SOLIMAN
                                               Deputy Attorneys General
15                                             *Attorneys for Defendant Kevin Kish,*
                                               *Director of the California Civil Rights*
16                                             *Department*

17

18

19

20

21

22

23

24

25

26

27

28

2

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**INTRODUCTION**

3    In October 2020, the California Civil Rights Department ("CRD" or "the Department")

4   exercised its statutory authority under the Fair Employment and Housing Act ("FEHA") to

5   initiate an enforcement action in state court on behalf of Mr. Chetan Narsude against his

6   employer Cisco Systems, Inc. ("Cisco") and two of its supervisors, now-Plaintiffs Sundar Iyer

7   and Ramana Kompella.  The Department's state court action alleges that Mr. Narsude has

8   suffered discrimination, harassment, and retaliation based on his caste designation as a Dalit, in

9   violation of the FEHA's prohibition against discrimination and harassment based on national

10   origin/ethnicity, ancestry, race/color, and religion.  (*See* ECF No. 51, CRD Employment

11   Discrimination Complaint Against Cisco Systems[1]; *see also* Cal. Gov't Code § 12965).[2]  Nearly

12   two years after the Department filed its suit against Cisco (referred to hereinafter as the "State

13   Action" or "*CRD v. Cisco*"), Plaintiff Hindu American Foundation ("HAF") filed this federal

14   action against the Department's Director, Kevin Kish, under section 1983 of Title 42 of the

15   United States Code ("Section 1983"), alleging that the Department's efforts to remedy caste-

16   based discrimination at Cisco violate the United States Constitution's Free Exercise Clause of the

17   First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth

18   Amendment by linking the practice of caste discrimination to Hinduism.  Through this suit, HAF

19   sought to have this Court declare the Department's state suit against Cisco unconstitutional and

20   enjoin the Department from pursuing certain types of future employment discrimination actions,

21   in contravention of its statutory mandate.  *See, e.g.*, Gov't Code § 12930(f)(1).

22    Director Kish filed a motion to dismiss this action under Federal Rule of Civil Procedure

23   12(b)(1) and (b)(6) because HAF failed to plead facts showing that it had standing to bring this

24   lawsuit and failed to state a claim.  (ECF No. 8)  On August 31, 2023, this Court granted

---

25    [1] Plaintiffs' Exhibit A to its Second Amended Complaint (ECF No. 51) is the original complaint
filed by the Department against Cisco in Santa Clara County Superior Court in October 2020.  However,

26   the Department has since amended its complaint twice.  (*See* Declaration of Carly J. Munson in Support of
Motion to Dismiss Second Amended Complaint and Request for Judicial Notice ("Munson Decl.") ¶ 14).

27   For the Court's convenience, Defendant Kish has provided the operative complaint in *CRD v. Cisco* with
his concurrently filed Request for Judicial Notice.  (Munson Decl., Exh. C).

28    [2] Unless otherwise noted, all references are to current California state laws and regulations.

Defendant Kish's motion based on HAF's lack of standing and dismissed HAF's suit in its entirety pursuant to Rule 12(b)(1) but granted HAF an opportunity to amend its complaint to correct the deficiencies.  (ECF No. 20 at 20).

On September 21, 2023, HAF filed its First Amended Complaint ("FAC"), adding nine new individual plaintiffs (collectively the "Individual Plaintiffs")—including three unnamed "Doe" Plaintiffs whose identities are unknown to the Department and Director Kish—and two new claims under the United States Constitution's Establishment Clause of the First Amendment and Equal Protection Clause of the Fourteenth Amendment.  (ECF No. 21).  On August 13, 2024, the Court denied the Doe Plaintiffs' motion to proceed under pseudonyms, and ordered Plaintiffs to amend their complaint identify or dismiss the Doe plaintiffs within 14 days.  (ECF No. 49).

On August 27, 2024, Plaintiffs filed their Second Amended Complaint ("SAC"), which names two of the "Doe" plaintiffs and removes the third, leaving eight Individual Plaintiffs.  (ECF No. 50).  As with the FAC, the crux of Plaintiffs' complaint—disagreement with the Department's efforts to enforce the FEHA and remedy caste-based discrimination through the State Action—remains the same.  Plaintiffs' SAC, which offers generalizations and conclusory assertions instead of factual allegations supporting its theories of standing and claims, fails to cure the fatal defects present in HAF's original suit.  This action continues to lack merit and should be dismissed without further leave for opportunity to amend.

First, under *Younger v. Harris*, 401 U.S. 37, 54 (1971), the Court should abstain from hearing Plaintiffs' constitutional claims because they have had an opportunity to raise their claims—and indeed have raised their constitutional claims in a motion to intervene—in the ongoing State Action.  And since Plaintiffs seek only declaratory and injunctive relief, such abstention warrants dismissal.  Second, Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(1) because not one Plaintiff has standing to pursue this matter.  None of the Plaintiffs have suffered or face imminent threat of a real and concrete injury-in-fact, let alone one reasonably traceable to *CRD v. Cisco* and redressable by this suit.  And HAF has failed to cure its organizational standing deficiencies previously addressed by this Court.  Third, Plaintiffs Iyer's and Kompella's Equal Protection Clause claims must be dismissed pursuant to Rule 12(b)(1)

2

because they are moot.  Both Plaintiffs were dismissed with prejudice from *CRD v. Cisco* prior to their joining this suit, leaving no other relief the Court could hypothetically grant for these claims. Fourth, the SAC fails to state a claim upon which relief could be granted.  Plaintiffs' claim under the Establishment Clause fails as a matter of law because the State Action does not disparage Hinduism, treat it differently than any other religion, or otherwise dictate religious doctrine. Plaintiffs' Free Exercise Clause claim fails because CRD's caste discrimination lawsuit against Cisco does not substantially burden or coerce religious practice.  Plaintiffs' Due Process Clause "void for vagueness" claim fails because the FEHA's prohibition against discrimination based on religion, ancestry, national origin/ethnicity, and race/color provides adequate notice that discrimination based on caste is prohibited under the law, and because the SAC fails to advance facts showing that CRD's application of the FEHA to redress caste discrimination chilled them from engaging in constitutionally protected activity.  And Plaintiffs' Equal Protection Clause claims fail because they have not shown that they were treated differently based on their religion or national origin as compared to anyone else similarly situated.  Accordingly, Plaintiffs' suit must be dismissed and without leave to amend, as any further opportunities to amend would be futile.

## BACKGROUND

### I.   THE PARTIES

Defendant Kevin Kish is the Department's Director.  The Department is a state agency charged with enforcing California's civil rights laws, including the FEHA, which the Legislature has declared to be "an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of [California]."  Gov't Code § 12920.  The FEHA empowers the Department to receive, investigate, conciliate, and litigate complaints that allege violations of the laws that are within the broad scope of its jurisdiction.  Gov't Code §§ 12930(f), 12965.

Plaintiff HAF describes itself as the largest Hindu "educational and advocacy institution" in the nation.  (ECF No. 50 ¶¶ 1, 29).  HAF alleges that it has various "members," "supporters," and "constituents," some of whom reside or work in California.  (*Id.* ¶¶ 32-37, 39, 43).

In addition to HAF, eight Individual Plaintiffs have been added to this lawsuit since the

1    Court dismissed HAF's original complaint with leave to amend.  Plaintiffs Samir Kalra and

2    Sangeetha Shankar state they are practicing Hindu Americans of Indian descent who reside in

3    California and work for HAF.  (*Id.* ¶¶ 2, 10).

4          Plaintiff Dr. Mihir Meghani states he is a co-founder of HAF and is a practicing Hindu

5    American of Indian descent who works as an emergency room physician in California.  (*Id.* ¶ 8).

6    Plaintiff Dilip Amin states is a practicing Hindu American of Indian descent who lives in

7    California.  (*Id.* ¶ 12).  Plaintiffs Shaishav Desai and Srivats Iyer state that they are Hindu

8    Americans of South Asian descent who work in the "technology sector" and reside in California.

9    (*Id.* ¶¶ 21-22).

10         Plaintiffs Sundar Iyer and Ramana Kompella are former defendants in *CRD v. Cisco*.  (ECF

11   No. 51; Munson Decl. ¶ 18, Exhs. H, I).  Mr. Sundar Iyer states he is an American of Indian

12   descent who resides in California, but no longer works at Cisco, and does not practice Hinduism

13   or any other organized religion.  (ECF No. 50 ¶¶ 15, 20).  Mr. Kompella states he is a practicing

14   Hindu American of Indian descent who resides in California and continues to work at Cisco.  (*Id.*

15   ¶¶ 17, 20).

16         HAF alleges that the eight new Individual Plaintiffs are "typical members" of HAF.  (*Id.* ¶

17   41).  However, none of the Individual Plaintiffs provide facts regarding their "membership."  (*Id.*

18   ¶¶ 2-22).  Similarly, other than Ms. Shankar and Mr. Kalra, who state they are HAF employees

19   (*id.* ¶¶ 2, 10), the remaining seven Individual Plaintiffs do not provide any information about their

20   current, specific connections to, or any roles within, the organization.  (*Id.* ¶¶ 8-9, 12-22).

21   **II.    THE DEPARTMENT'S ONGOING EFFORTS TO REMEDY WORKPLACE**
22          **DISCRIMINATION AND HARASSMENT AGAINST DALIT WORKERS AT CISCO**

23         After receiving and investigating a complaint by one of Cisco's workers, Mr. Narsude, the

24   Department filed an employment discrimination action against Cisco and two of its supervisors—

25   Mr. Sundar Iyer and Mr. Kompella—in Santa Clara County Superior Court in October 2020.[3]

26   (*See* Munson Decl., Exh. C, ¶¶ 11-17, 28; ECF No. 51).  The Department's pending lawsuit

27

28   _____
     [3] Supervisors can be held individually liable for harassment under the FEHA.  *See* Gov't Code §§
     12926(t), 12940(j).

against Cisco alleges that Cisco subjected Mr. Narsude to discrimination, harassment, and

retaliation based on his status as a Dalit Indian in violation of the FEHA.  (*See, e.g.*, Munson

Decl., Exh. C, ¶¶ 1, 4, 28, 48, 53-54, 62-64).

The Department seeks compensatory and punitive damages for Mr. Narsude, including

back pay, as well as injunctive relief to eradicate "discrimination and harassment based on

religion, ancestry, national origin/ethnicity, and race/color" against Dalit Indians at Cisco.  (*Id.* at

18-19).  The Department also seeks changes to Cisco's "policies, practices, and programs that

provide equal employment opportunities for individuals regardless of their religion, ancestry,

national origin/ethnicity, and race/color" to eradicate the effects of Cisco's "past and present

unlawful employment practices."  (*Id.*)

The two Cisco supervisors, Mr. Sundar Iyer and Mr. Kompella, sought to be dismissed

from the Department's state suit.  Pursuant to a settlement, the Department voluntarily dismissed

its claims against the two supervisors on April 11, 2023.  (Munson Decl., Exhs. A at 2:11-13, 5:8-

10, H, & I).

On January 7, 2021, HAF filed a motion to intervene in the Department's State Action.

(*See* ECF No. 10-1, Exh. B, HAF Mot. to Intervene and Complaint in Intervention).  The

allegations raised in this federal complaint—that the Department conflates or improperly

attributes the caste system to Hinduism—are virtually identical to those HAF raised in its motion

for leave to intervene.  (*See id.* at 1-9).  After hearing argument in November 2023, the Superior

Court denied HAF's motion for leave to intervene on January 31, 2024.  (Munson Decl., Exh. E).

HAF filed a notice of appeal, but abandoned its appeal on May 1, 2024.  (*Id.*, Exhs. F & G).

Following the Superior Court's denial of HAF's motion for leave to intervene and denial of

the Department's motion to use a fictitious name to refer to Mr. Narsude, and with the permission

of the court, the Department amended its state complaint to: (1) remove all claims against Mr.

Sundar Iyer and Mr. Kompella; (2) identify the Department's complainant, Mr. Narsude, by

name; and (3) remove the statement "As a strict Hindu social and religious hierarchy, India's

caste system defines a person's status based on their religion, ancestry, national origin/ethnicity,

and race/color—or the caste into which they are born—and will remain until death" as well as the

1   corresponding citation to the Human Rights Watch report.  (*Id.*, Exhs. A-C).  This 20-page second

2   amended complaint, which is the operative complaint in the State Action, references Hinduism

3   only once – noting that Mr. Narsude identifies as Hindu.  (*Id.*, Exh. C, ¶ 29).  As before, the

4   Department's complaint links Mr. Narsude's own caste to multiple identity vectors, not just his

5   religion.  (*Id.*, Exh. C at 2 fn. 1, ¶¶ 1, 48, 53-54, 62-64).

6       On April 26, 2024, Cisco—the only remaining defendant in the State Action—filed its

7   answer to the Department's Second Amended Complaint.  (Munson Decl. ¶ 14).  This matter is

8   ongoing in the Santa Clara County Superior Court.  (*Id.* ¶¶ 4, 14).

9                               **LEGAL STANDARD**

10      Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of

11  subject matter jurisdiction."  A Rule 12(b)(1) motion can challenge the sufficiency of the

12  pleadings to establish jurisdiction (facial attack), or a lack of any factual support for the subject

13  matter jurisdiction regardless of the pleading's sufficiency (factual attack).  *Safe Air for Everyone*

14  *v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing to *White v. Lee*, 227 F.3d 1214, 1242 (9th

15  Cir. 2000).  Although the Court generally resolves a facial attack on the pleadings under Rule

16  12(b)(1) by "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in

17  the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to

18  invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

19  Moreover, the Court need not assume the truth of legal conclusions cast in the form of factual

20  allegations.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  And

21  the Court may look beyond the complaint to consider documents, such as relevant pleadings in

22  *CRD v. Cisco*, that are proper subjects of judicial notice.  *See Carpenter v. OneWest Bank, FSB*,

23  No. 12-cv-00895-MMM-OP, 2012 WL 13012420, at *2 (C.D. Cal. Apr. 25, 2012); *see also Leite*,

24  749 F.3d at 1121; *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

25  Plaintiffs, rather than the moving party, have the burden of establishing jurisdiction.  *See*

26  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

27      Rule 12(b)(6), in turn, requires a complaint to be dismissed if it fails to state a claim upon

28  which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient

1   factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

2   *v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is "plausible" if a plaintiff pleads facts which

3   "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

4   alleged." *Id.* at 678.  A "threadbare recital[] of the elements of a cause of action, supported by

5   mere conclusory statements, do[es] not suffice." *Id.*  In ruling on a motion to dismiss, the court

6   may consider documents referenced in the complaint as well as matters subject to judicial notice.

7   *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

8                                                    **ARGUMENT**

9   **I.    THE *YOUNGER* ABSTENTION DOCTRINE REQUIRES THAT THE COURT ABSTAIN
            FROM HEARING PLAINTIFFS' CLAIMS AND DISMISS THE SUIT**

10

11        The *Younger* abstention doctrine directs federal courts to abstain from granting injunctive

12   or declaratory relief that would interfere with pending state judicial proceedings.  *Hirsh v.*

13   *Justices of the Sup. Ct. of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995) (citing *Younger v.*

14   *Harris*, 401 U.S. 37, 40–41 (1971)).  Absent "extraordinary circumstances," abstention in favor of

15   state judicial proceedings is required if the state proceedings take the form of a criminal

16   prosecution or civil proceedings that are akin to prosecutions, *New Orleans Pub. Serv., Inc. v.*

17   *Council of New Orleans (NOPSI)*, 491 U.S. 350, 367-68 (1989), and: (1) are ongoing, (2)

18   implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate

19   federal claims.  *Hirsh*, 67 F.3d at 712 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar*

20   *Ass'n*, 457 U.S. 423, 432 (1982)).  In addition, the Ninth Circuit has "articulated an implied

21   fourth requirement that: (4) the federal court action would 'enjoin the proceeding, or have the

22   practical effect of doing so.'" *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 882

23   (9th Cir. 2011) (citation omitted).  Courts may resolve threshold issues such as *Younger*

24   abstention before addressing jurisdictional questions under Rule 12(b).  *See, e.g., Steel Co. v.*

25   *Citizens for Better Env't*, 523 U.S. 83, 100 n.3 (1998); *Tenet v. Doe*, 544 U.S. 1, 6-7 n.4 (2005).

26        Abstention is appropriate based on "interests of comity and federalism [that] counsel

27   federal courts to abstain from jurisdiction whenever federal claims could have been or could be

28   presented in ongoing state judicial proceedings that concern important state interests." *Lebbos v.*

1    *Judges of the Super. Ct.*, 883 F.2d 810, 813 (9th Cir. 1989).  "Where vital state interests are

2    involved, a federal court should abstain 'unless state law clearly bars the interposition of the

3    constitutional claims.'"  *Middlesex*, 457 U.S. at 432 (quoting *Moore v. Sims*, 442 U.S. 415, 426

4    (1979)).  This case meets each of the criteria warranting abstention.

5           **A.    The Department's Pending Enforcement Action Against Cisco in State
              Court is the Civil Equivalent of a Criminal Prosecution and, Therefore,
6             Falls Under the Second *NOPSI* Category**

7           The Department's ongoing State Action is a "civil enforcement proceeding" akin to a

8    criminal prosecution in "important respects" and warrants *Younger* abstention.  *NOPSI*, 491 U.S.

9    at 368 (citing, e.g., *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).  Such proceedings are

10   characteristically formal complaints or charges filed by a state sovereign or actor following an

11   investigation to challenge some wrongful act.  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79-

12   80 (2013) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.* 477 U.S. 619, 624

13   (1986); *Middlesex*, 457 U.S. at 433-34).

14          *CRD v. Cisco* is such a civil proceeding that is akin to a criminal prosecution under *NOPSI*.

15   As discussed above, the Department is charged with enforcing California's civil rights laws,

16   including the FEHA, which the Legislature has declared to be "an exercise of the police power of

17   the state for the protection of the welfare, health, and peace of the people of [California]."  Gov't

18   Code § 12920.  The central purpose of the FEHA is to prevent, eliminate, and remedy

19   discrimination in employment, housing, and other aspects of daily living.  Gov't Code §§ 12920-

20   21, 12930 & 12948 (incorporating the Unruh Civil Rights Act, the Ralph Civil Rights Act, and

21   Government Code § 11135 into the FEHA and CRD's enforcement authority); *see also Harris v.*

22   *City of Santa Monica*, 56 Cal. 4th 203, 223-24 (2013).  Accordingly, courts have acknowledged

23   that, like criminal prosecutors, the Department "'is a public prosecutor testing a public right,'

24   when it pursues civil litigation to enforce statutes within its jurisdiction."  *Dep't of Fair Emp. &*

25   *Hous. v. Law Sch. Admission Council, Inc.*, 941 F. Supp. 2d 1159, 1168 (N.D. Cal. 2013)

26   (quoting *State Pers. Bd. v. Fair Emp. & Hous. Comm'n*, 39 Cal. 3d 422, 444 (1985)).

27          In this case, the Department received a complaint from Mr. Narsude that alleged his

28   employer, Cisco, was discriminating against him in violation of state laws.  (*See* Munson Decl.,

8

1   Exh. C ¶ 11; *see also* Gov't Code § 12930(f)(1)).  After investigating Mr. Narsude's complaint,

2   the Department exercised its authority as a public prosecutor when it initiated the pending state

3   enforcement, *CRD v. Cisco*, to remedy Cisco's alleged discrimination, harassment, and retaliation

4   against Mr. Narsude based on his status as a Dalit Indian in violation of the FEHA.  (*See* Munson

5   Decl., Exh. C ¶¶ 12-16; *see also* Gov't Code § 12965).  This is *precisely* the type of civil

6   enforcement proceeding that resembles a criminal prosecution under *NOPSI* and warrants

7   *Younger* abstention.

8        **B.    The Four Additional Factors for *Younger* Abstention Are Also Satisfied**

9        The four additional factors for *Younger* abstention are also satisfied here.  First, *CRD v.*

10  *Cisco* was initiated prior to this federal action and remains active and ongoing in Santa Clara

11  County Superior Court.  (*See* ECF No. 51; *CRD v. Cisco*, Case No. 20-cv-3722366 (Santa Clara

12  Cnty. Super. Ct.)).

13       Second, *CRD v. Cisco* implicates the important state interest of eliminating discrimination

14  within the State.  *See Dayton Christian Schools,* 477 U.S. at 628 (recognizing "the elimination of

15  prohibited sex discrimination is a sufficiently important state interest").  Indeed, California has its

16  own anti-discrimination statute to interpret and enforce in its action against Cisco.  *See,*

17  *e.g.*, Gov't Code § 12920, et seq. (it is "the public policy of [California] that it is necessary to

18  protect and safeguard the right and opportunity of all persons to seek, obtain, and hold

19  employment without discrimination or abridgement on account of race, religious creed, color,

20  national origin, [or] ancestry," among other characteristics.)  Moreover, where—as here—"the

21  state is in an enforcement posture in the state proceedings, the 'important state interest'

22  requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is

23  presumptively at stake."  *Potrero Hills Landfill, Inc.*, 657 F.3d at 883-84.

24       Third, *all* Plaintiffs have had an adequate opportunity to raise their constitutional claims in

25  the State Action, which has been pending for nearly four years.  Under *Younger*, federal litigants

26  such as Plaintiffs need only be afforded an *opportunity* to fairly pursue their constitutional claims

27  in the ongoing state proceedings.  *Moore*, 442 U.S. at 430 & n. 12 (quoting *Juidice v. Vail*, 430

28  U.S. 327, 337 (1977).  Success on the merits of those claims is immaterial; it matters only that

9

1  litigants have an opportunity to make their argument.  *See Dubinka v. Judges of Super. Ct. of*

2  *State of Cal. for Cnty. of L.A.*, 23 F.3d 218 (9th Cir. 1994).

3     Plaintiffs—not the Department—bear the burden of demonstrating that California law

4  procedurally bars or prevents them from presenting their constitutional claims in the pending state

5  court matter.  *Id.* at 14-16; *see also Lebbos*, 883 F.2d at 815.  Here, Plaintiff HAF brought its

6  constitutional challenges to the Department's State Action in state court via a motion to intervene

7  in the State Action.  (ECF No. 10-1, Exh. B (HAF Motion to Intervene and Complaint in

8  Intervention); Munson Decl., Exh. D (Reply in Support of HAF's Motion to Intervene)).  When

9  the trial court denied HAF's request to intervene on the merits (Munson Decl., Exh. E), HAF had

10  the opportunity to appeal and it initiated such an appeal in March 2024 (*id*., Exh. F).  HAF then

11  elected to *voluntarily abandon* its efforts to intervene to have the constitutional claims presented

12  here heard in the State Action (*id.*, Exh. G) once it became clear that the Second Amended

13  Complaint had been accepted (*see* ECF No. 33 ¶ 9).

14     As to the Individual Plaintiffs, the Court should presume that they, like HAF, have had an

15  opportunity to present their claims in the State Action.  The Individual Plaintiffs all claim to be

16  aligned with, or members of, proposed-intervenor HAF.  Moreover, "when a litigant has not

17  attempted to present his federal claims in related state-court proceedings, a federal court should

18  assume that state procedures will afford an adequate remedy, in the absence of unambiguous

19  authority to the contrary."  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

20     <u>Fourth</u>, *Younger* abstention is appropriate because allowing this action to proceed would

21  interfere with and effectively enjoin *CRD v. Cisco*.  In their SAC, Plaintiffs specifically ask to

22  have the Department's actions in *CRD v. Cisco* declared unconstitutional under the First and

23  Fourteenth Amendments and enjoin further action.  (ECF No. 50 at 35).  Such an order would

24  directly intrude on the Superior Court's jurisdiction over the ongoing State Action.  This Court

25  should refrain from interfering with or enjoining the ongoing State Action.

26

27

28

1

2

### C.   As Plaintiffs Seek Only Injunctive and Declaratory Relief, *Younger* Abstention Warrants Dismissal

When a court abstains under *Younger*, claims for injunctive and declaratory relief are

typically dismissed, whereas claims for damages are stayed.  *Herrera v. City of Palmdale*, 918

F.3d 1037, 1042 (9th Cir. 2019).  Here, Plaintiffs seek only injunctive and declaratory relief.  (*See*

ECF No. 50 at 35).  Accordingly, the Court should abstain under *Younger* and dismiss all of

Plaintiffs' claims.

### II.   PLAINTIFFS' SECOND AMENDED COMPLAINT MUST BE DISMISSED BECAUSE THEY LACK STANDING TO PURSUE THIS LITIGATION

Standing is a jurisdictional requirement that the party invoking federal jurisdiction has the

burden of establishing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  "First, the

plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which

is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'"

*Id.* at 560 (citations omitted).  "Second, there must be a causal connection between the injury and

the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the

defendant, and not th[e] result [of] the independent action of some third party not before the

court.'"  *Id.* (citations and ellipsis omitted, alterations in original).  "Third, it must be 'likely,' as

opposed to merely 'speculative,' that the injury will be redressed by a favorable decision."  *Id.* at

561 (citations omitted).  These constitutional requirements are "rigorous."  *Valley Forge*

*Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982).

Here, Plaintiffs fail the standing requirement at every step of the inquiry.  No matter how

liberally the Court construes it, the SAC is devoid of any allegations that the Individual Plaintiffs

have suffered a "concrete and particularized" injury that could be traced to anything the

Department did or failed to do.  And HAF has neither demonstrated that it has suffered the kind

of forced redeployment of resources required to have standing in its own right, nor clearly

articulated a "constituency" on whose behalf it can fairly speak in this matter, let alone that HAF

is experiencing the requisite direct harm caused by the Department's State Action.  The Court

therefore lacks subject-matter jurisdiction over Plaintiffs' claims.  *See Pershing Park Villas*

*Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000) (stating that

11

1    standing is a jurisdictional issue).

2        **A.    Plaintiffs Do Not Have Direct Standing to Pursue this Litigation**

3            **1.    Plaintiffs have not demonstrated that they have suffered cognizable
                injuries-in-fact as a result of *CRD v. Cisco***

4        Plaintiffs allege that they have suffered three types of injuries as a result of the

5    Department's actions in *CRD v. Cisco*.  First, the Individual Plaintiffs allege that they have

6    standing to challenge *CRD v. Cisco* because they have experienced various psychological and

7    spiritual harms as a result of their knowledge of the suit or discussions with third-parties.  Second,

8    Mr. Sundar Iyer and Mr. Kompella further allege that they have suffered reputational harm as a

9    result of being former defendants in the State Action.  Third, HAF alleges that it has suffered

10   direct injury because its staff have allegedly been maligned by the State Action and it has had to

11   spend time and resources educating people about Hinduism since the State Action was filed.

12   None of these alleged injuries rise to the level of a cognizable injury-in-fact—let alone one

13   redressable through any relief the Court could order through this lawsuit—thus no Plaintiff has

14   established direct standing to bring this suit.

15           **a.    Individual Plaintiffs' alleged psychological and spiritual harms
                are not a cognizable injuries-in-fact under any claim presented**

16
17       The SAC alleges that the Department is pursuing enforcement actions under the FEHA that

18   "wrongly assert" that "a caste system and caste-based discrimination are integral parts of Hindu

19   teachings and practices."  (ECF No. 50 at 2).  As a result of their awareness of *CRD v. Cisco* and

20   resulting conversations with third parties, the Individual Plaintiffs allege that they have generally

21   experienced psychological and spiritual discomforts, including fears about the future.  (*See, e.g.,*

22   *id.* ¶¶ 9, 11, 13-14, 21-22).

23       Yet apart from conclusory allegations, conjecture, and expressions of personal offense—

24   which the Court need not accept as true—the SAC offers no plausible factual basis showing the

25   Individual Plaintiffs have suffered injury under the Free Exercise, Establishment, Due Process, or

26   Equal Protection Clauses connected to the Department's actions such that they would have

27   standing to maintain this action in federal court.  *See Winsor v. Sequoia Benefits & Ins. Servs.,*

28

1  *LLC*, 62 F.4th 517, 523–25 (9th Cir. 2023) (holding that, under *Spokeo, Inc. v. Robins*, 578 U.S.

2  330, 338 (2016), "[a]t the pleading stage, plaintiffs must clearly allege facts demonstrating each

3  element" of Article III standing and that the *Iqbal*, 556 U.S. 662, pleading standards therefore

4  apply in assessing the facial adequacy of allegations of standing); *see also Namisnak v. Uber*

5  *Techs., Inc.*, 971 F.3d 1088, 1092 (9th Cir. 2020).  Moreover, psychological and spiritual harms

6  alone—allegedly arising out of the Department's actions or engaging in conversations with other

7  third-parties outside of the Department's control—are insufficient to convey standing under the

8  claims asserted.  *See Or. Prescription Drug Monitoring Program v. United States Drug Enf't*

9  *Admin.*, 860 F.3d 1228, 1233 (9th Cir. 2017) ("'[T]he standing inquiry requires careful judicial

10  examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to

11  an adjudication of the *particular claims* asserted.'" (emphasis in original, citation omitted)).

12  　　　First, to establish a violation of the Free Exercise Clause, a plaintiff must prove that a

13  government action had a coercive effect on their practice of religion.  *See, e.g.*, *Bd. of Educ. of*

14  *Cent. Sch. Dist. v. Allen*, 392 U.S. 236, 249 (1968) (finding no free exercise violation since the

15  plaintiffs had "not contended that the [statute in question] in any way coerce[d] them as

16  individuals in the practice of their religion."); *Sabra v. Maricopa Cnty. Cmty. Coll. Dist*., 44 F.4th

17  867, 890 (9th Cir. 2022) (requiring when the challenged government action is neither regulatory,

18  proscriptive or compulsory, alleging a subjective chilling effect on free exercise rights is not

19  sufficient to constitute a substantial burden).  Yet Plaintiffs' SAC is devoid of allegations that the

20  Department's State Action has constrained *any* Individual Plaintiffs' ability to practice—or not

21  practice—their religion.[4]  (*See* ECF No. 50 ¶¶ 2-22, 75-86).  And all of the Individual Plaintiffs

22  state that they disavow the very activity CRD seeks to redress in *CRD v. Cisco*: caste-based

23  discrimination.  (*Id.* at 3:24-26).  Accordingly, the State Action poses no plausible imminent

24  threat of harm to the Individual Plaintiffs' religious practice, a practice that they themselves

25  allege does not involve the conduct that the Department seeks to stop.  *See Kumar v. Koester*, 683

26  F. Supp. 3d 1108, 1115-16 (C.D. Cal. 2023) (finding that Hindu plaintiffs who were university

---

27  　　　[4] Moreover, Mr. Sundar Iyer states that he does not believe or practice any religion and for that
reason alone has no standing to bring a free exercise claim.  (ECF No. 50 ¶ 15).  By contrast, the other
28  Individual Plaintiffs state that they practice Hinduism.  (*Id.* ¶¶ 2, 8, 10, 12, 17, 21-22).

professors lacked standing to assert a Free Exercise Clause challenge to the use of "caste" in the university's anti-discrimination policy because the plaintiffs "emphatically denounce[d] the caste system and reject[ed] the notion that it is part of their religion" and thus the policy did "not threaten any of [p]laintiffs' rights to practice their religion").  This Court has already indicated in dismissing HAF's original complaint that there is no standing to bring a free exercise claim based on the challenged conduct (wrongly defining Hinduism "to include an abhorrent practice of discrimination") absent an allegation that this mis-definition "burdens, operates against, or otherwise infringes on the practice of Hinduism by any individual."  (ECF No. 20 at 15-16 (quoting ECF No. 1 ¶ 29)).  Thus, Plaintiffs lack standing to bring free exercise claims.

Plaintiffs also allege in conclusory fashion that the Department has somehow "imposed special disabilities on Hindu Americans" by wrongly associating a caste system with Hinduism.  (ECF No. 50 ¶¶ 94-95.  Laws that target religious observers and subject them to different treatment based on their religious status—creating so-called "special disabilities"—may violate the Free Exercise Clause.  *See Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 473-76 (2020).  However, Plaintiffs have alleged no specific facts showing that the Department has or is treating the eight Individual Plaintiffs who practice Hinduism differently from others who do not practice a religion.  On the contrary, the Department's suit seeks to ensure that Cisco's workers are afforded their rights as guaranteed by the FEHA *regardless* of their religion, ancestry, national origin/ethnicity, and race/color.  (*See, e.g.*, Munson Decl., Exh. C at 18-19).

Second, to establish a claim under the Establishment Clause, plaintiffs who rely on psychological and spiritual harms must show that those harms are tied to real consequences in their particular political community.  *Catholic League for Religious & C.R. v. City & Cnty. of S.F.*, 624 F.3d 1043, 1051-53 (9th Cir. 2010).  Psychological consequences produced by mere observation of or disagreement with a government's actions are not injuries sufficient to confer standing under the Establishment Clause.  *Id.*; *see also Valley Forge Christian Coll.*, 454 U.S. at 485-86.

Relying on *Catholic League*, the Individual Plaintiffs contend that the psychological and spiritual injuries they have sustained from *CRD v. Cisco* suffice to confer standing in this case.

14

1  (ECF No. 50 ¶¶ 7, 39 (citing *Catholic League*, 624 F.3d at 1049)).  Yet *Catholic League* is

2  unavailing.  In that case, a Catholic civil rights organization had standing to challenge a Board of

3  Supervisors' resolution because the specific psychological harm its members or constituents

4  allegedly suffered as a result—"exclusion or denigration on a religious basis"—was both within

5  their own "political community" of San Francisco and supported by extensive and detailed factual

6  allegations, including supporting declarations.  *Catholic League*, 624 F.3d at 1051-53.[5]  Here, by

7  contrast, the SAC is devoid of facts demonstrating that Individual Plaintiffs belong to an analog

8  "political community" or that their access to and inclusion in that "political community" has been

9  chilled or curtailed in any way, let alone chilled due to the Department's actions in *CRD v.

10  Cisco*.[6]  Although the Plaintiffs allege in conclusory form that they have been "denigrated" and

11  treated like "second-class citizens," the SAC provides no concrete examples of such denigrating

12  treatment nor how it is fairly traceable to Director Kish and the Department.[7]  The Individual

13  Plaintiffs are thus distinctly unlike the plaintiffs in *Catholic League*—a discrete group of devout

14  Catholics who lived in San Francisco and thus were directly affected by the San Francisco

15  government's resolution about their religion—and have not demonstrated the requisite concrete

16  harm for standing under the Establishment Clause.

17      Third, to bring a pre-enforcement void for vagueness challenge under the Due Process

18  Clause, a plaintiff must show that the law being challenged has "'chilled [their ability to]

19  engag[e] in constitutionally protected activity.'"  *Montclair Police Officers' Ass'n v. City of

20  Montclair*, No. 2:12-cv-06444-PSG-PLA, 2012 WL 12888427, at *4 (C.D. Cal. Oct. 24, 2012)

---

21      [5] Nevertheless, though a split panel held the organization had standing, as discussed below, there
    was no Establishment Clause violation.  *Catholic League*, 624 F.3d at 1048, 1051-53.

22      [6] At most, Individual Plaintiffs all allege that they are Californians.  (*See* ECF No. 50 ¶¶ 2, 8, 10,
23  12, 15, 17, 21-22).  But the entire state of California is not a discrete "political community" as
    contemplated under *Catholic League*.  *See Catholic League*, 624 F.3d at 1048, 1051-53 ("Had a Protestant
24  in Pasadena brought this suit [regarding the San Francisco Board of Supervisor's resolution about the
    Catholic Church], he would not have had standing.").  And, in any case, Plaintiffs do not—and cannot
25  plausibly—allege that the State Action has had any direct consequences on the entire state of California;
    Cisco is the only entity in California that is subject to the State Action.

26      [7] A few Individual Plaintiffs allege that they have been "ostracized" or treated poorly by their
    peers at their workplaces, and that they blame *CRD v. Cisco* for this treatment by third parties.  (ECF No.
27  50 ¶¶ 9, 21, 22).  But these experiences, too, if substantiated, are not a parallel to the type of harm in
    *Catholic Charities*, where it was the government's own actions—not those of third parties outside of the
28  government's control—that allegedly directly denigrated Catholics within the discrete San Francisco
    community.  *Catholic Charities*, 624 F.3d at 1051-1053.

1   (quoting *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1350 (11th Cir. 2011)).  Thus,

2   to have standing, a plaintiff must allege injury in the form of a chilling effect.  Yet the Individual

3   Plaintiffs have failed to allege *any* activity that has been chilled by the Department's efforts in the

4   State Action, let alone a constitutionally protected activity.  (*See* ECF No. 50 ¶¶ 100-111).

5          Moreover, the only injury to which the Individual Plaintiffs allude in their void for

6   vagueness claim is hypothetical and speculative: that the State Action might have the opposite

7   effect and encourage caste-based discrimination.  (*Id*. ¶¶ 108-110).  For example, Plaintiffs

8   continue to speculate that the Department's action against a single California employer—Cisco—

9   will somehow sweepingly "require" all employers "to accommodate an employee's request not to

10  work with someone the employee believes to be of the 'wrong' or different caste" or a "request

11  not to be supervised by, or to supervise, persons perceived to be of the 'wrong' or different

12  caste."  (*Id.* ¶ 108).  The Court has already rejected this hypothetical injury:

13          [T]he notion that the Department's allegations in the state court complaint—a civil rights
           enforcement lawsuit seeking to stop and prevent caste-based discrimination—would
14          somehow lead other Hindu Americans to make religious accommodation requests to
           discriminate against co-workers based on their perceived caste and that employers might
15          then actually grant those requests due to their interpretation of the Department's allegations
           in the Santa Clara action is both highly speculative and seemingly implausible.  Such an
16          attenuated chain of events without connection any individual facing this purported and
           speculative harm is plainly insufficient to establish standing.
17

18  (ECF No. 20 at 14-15, citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 495-96 (2009);

19  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-11 (2013)).  Thus, the Individual Plaintiffs do

20  not have standing to challenge *CRD v. Cisco* under the Due Process Clause.

21          <u>Fourth</u>, to state a claim under the Equal Protection Clause, a plaintiff "must show that the

22  defendants acted with an intent or purpose to discriminate against the plaintiff based upon

23  membership in a protected class," and that the plaintiff was treated differently from persons

24  similarly situated.  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *Washington*

25  *v. Davis*, 426 U.S. 229, 239-40 (1976)); *see Citizens for Fair Representation v. Padilla*, 815 F.

26  App'x 120, 123 (9th Cir. 2020) (holding that the plaintiff lacked standing to assert an equal

27  protection challenge to California's constitutional cap on the number of its state legislative

28

districts as racially discriminatory because "they have not adequately alleged that some votes are weighted less than others based on race").  Plaintiffs' SAC raises two claims under the Equal Protection Clause.  The first alleges that the Department has discriminated against all Individual Plaintiffs on the basis of religion.[8]  The second alleges that the Department has discriminated against Mr. Sundar Iyer and Mr. Kompella on the basis of national origin.  Plaintiffs have not pled facts sufficient to have standing under either theory.

With regard to religion, the SAC does not allege *any* facts that plausibly suggest that the Department has applied the FEHA in a discriminatory manner against the Individual Plaintiffs— but not as to others—because of their faith and identify the concrete injuries they have suffered as a result.  (*See, e.g.*, ECF No. 50 ¶¶ 100-111).  With regard to national origin, neither Mr. Sundar Iyer nor Mr. Kompella have pled facts sufficient to establish standing under the Equal Protection Clause.  Mr. Iyer claims that the Department discriminated against him on the basis of national origin by identifying him as Hindu.  (ECF 50 ¶ 128).  First, based on the facts as alleged, it is unclear how incorrectly identifying a person as Hindu causes injury based on that person's national origin.  Second, this allegation lacks a basis in fact: the Department did *not* allege that Mr. Iyer was Hindu in *CRD v. Cisco* while he was a defendant.  (*See* ECF No. 51).  Regardless, Mr. Iyer does not allege that the Department has treated anyone of any other national origin differently and thus does not have standing to raise a claim for national origin discrimination under the Equal Protection Clause.  (*See* ECF No. 50 ¶¶ 124-135).

Although Mr. Sundar Iyer and Mr. Kompella also allege in bare terms that they have experienced vague reputational harm, the SAC contains insufficient facts to substantiate such injuries.  (*See* ECF No. 50, ¶¶ 15-20).  Simply claiming one's reputation has been harmed is insufficient to establish an injury-in-fact for standing.  *See, e.g.*, *Phillips v. United States Customs & Border Prot.*, 74 F.4th 986, 992 (9th Cir. 2023) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 438-39 (2021)) (holding no injury where plaintiffs did not demonstrate that the inaccurate

---

[8] Within the context of their discrimination claim based on religion, the Individual Plaintiffs also claim that the Department has wrongly identified some Indian Americans as Hindu even though the Department allegedly knows they are not Hindu, and that this constitutes discrimination "against non-Hindu Indian Americans *based on national origin*."  (ECF No. 50 ¶ 120).  These allegations do not state a cognizable claim for religious discrimination under the Equal Protection Clause.

1    credit information allegedly created in violation of federal law posed a tangible harm to the

2    plaintiffs' finances in the future).  And, in any case, the Court need not take Plaintiffs' conclusory

3    allegations of reputational harm at face value.  *See Iqbal*, 556 U.S. at 678; *Sprewell v. Golden*

4    *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

5                    **b.    HAF has not demonstrated that it has been forced to take
                        action to avoid other injury as a result of *CRD v. Cisco***
6

7            On amendment, HAF asserts that it has direct standing.  (ECF No. 50 ¶¶ 45-51).  An

8    organization that seeks to establish standing in its own right must show that: (1) the defendant's

9    actions have frustrated its mission; and (2) it has spent resources counteracting that frustration.

10   *Our Watch with Tim Thompson, v. Bonta*, 682 F. Supp. 3d 838, 847 (E.D. Cal. 2023) (citing *Valle*

11   *del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013); *see also E. Bay Sanctuary Covenant*

12   *v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021).  "Frustration of mission cannot just be a setback to an

13   organization's values or interests, it must result in 'an actual impediment to the organization's

14   real-world efforts on behalf of such principles.'"  *Our Watch with Tim Thompson*, 682 F. Supp.

15   3d at 848 (citing *In Def. of Animals v. Sanderson Farms, Inc.*, No. 3:20-cv-05293-RS, 2021 WL

16   4243391, at *3 (N.D. Cal. Sept. 17, 2021)); *cf. Havens Realty Corp. v. Coleman*, 455 U.S. 363,

17   379 (1982) (organization suffered injury-in-fact where the defendant's practices *"perceptibly*

18   *impaired* [the organization's] ability to provide counseling and referral services") (emphasis

19   added).  Relatedly, "organizations cannot 'manufacture the injury by incurring litigation costs or

20   simply choosing to spend money fixing a problem that otherwise would not affect the

21   organization at all[.]'"  *E. Bay Sanctuary Covenant*, 993 F.3d at 663 (quoting *La Asociacion de*

22   *Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)).  Rather, an

23   organizational plaintiff must show they "would have suffered some other injury" had they "not

24   diverted resources to counteracting the problem."  *La Asociacion*, 624 F.3d at 1088.  Thus, "[a]n

25   organization may sue only if it was *forced* to choose between suffering an injury and diverting

26   resources to counteract the injury."  *Id.* at 1088 n.4 (emphasis added).

27           HAF has not pled facts showing that the Department's State Action has frustrated its

28   mission.  (*See* ECF No. 50 ¶¶ 29-31, 45-51).  In its SAC, HAF makes only vague references to its

                                                18

broad mission and to its alleged ordinary activities.  HAF states that it is "an educational and advocacy organization" whose "mission focuses on advancing the understanding of Hinduism to secure the rights and dignity of Hindu Americans now and for generations to come."  (*Id.* ¶ 29). Its ordinary activities include "work[ing] with state boards of education and publishers to ensure Hinduism is portrayed accurately . . . in textbooks," "educat[ing] policymakers," and "pursu[ing] impact litigation and participa[ting] as *amicus curiae* when the civil rights of Hindu Americans are at risk."  (*Id.*  ¶¶ 29-30).  Yet the SAC lacks the requisite allegations demonstrating that the Department's State Action has specifically impacted HAF's regular functioning and frustrated its mission.  In fact, the advocacy and educational outreach HAF alleges it has undertaken in response to third-party inquiries about *CRD v. Cisco* as well as HAF's instant federal action appear to fall squarely *within* HAF's stated mission and ordinary activities.  (*See* ECF No. 50 ¶¶ 29-31, 36-37, 40).  And HAF concedes that the Department's own goal of "[s]topping caste-based discrimination is a worthy goal that directly furthers Hinduism's teachings[.]"  (*Id.* at 5:13-14).

Even if HAF had adequately alleged cognizable frustration of its mission (it has not), it has still failed the second requirement by failing to allege *any* facts to "show [it] 'would have suffered some other injury' had [it] 'not diverted [] resources to counteracting" the Department's State Action, let alone what that other injury would have been.  *See La Asociacion*, 624 F.3d at 1088.  HAF is not subject to the Department's efforts to remedy caste-based discrimination at Cisco.  In fact, the Department has taken no action at all against HAF or its staff.  Further, HAF has not described with any specificity how it has been forced to reallocate resources from its core activities, nor what activities it was prevented from undertaking as a result.  HAF alleges that it has had to spend "considerable time and resources" to "defend the integrity of Hinduism" since the Department filed its State Action (ECF No. 50 ¶ 46), but provides no details as to what this has entailed, other than to state that Mr. Kalra, its Managing Director, has allegedly "spent hundreds of hours . . . responding to media inquiries . . . and developing educational materials for a variety of stakeholders" (*id.* ¶ 4) and that HAF has "faced a barrage of calls and concerns from Hindu Americans living in California" (*id.* ¶ 47).

These allegations are insufficient to establish that HAF has only been able to avert injury

1   to itself from the State Action by redirecting its resources, in the manner it has alleged, to

2   counteract that injury.  And, as discussed above, even if it is true that HAF has received calls

3   about *CRD v. Cisco* and spent time creating resource materials about Hinduism as a result, these

4   actions appear to fall within—rather than outside of—their stated ordinary activities.  (*See id.* ¶¶

5   29-31, 36-37, 40).

6            **2.      Plaintiffs' generalized grievances are not redressable**

7       To establish standing, "it must be 'likely,' as opposed to merely 'speculative,' that the

8   [plaintiff's] injury will be 'redressed by a favorable decision.'"  *Lujan*, 504 U.S. at 560-61 (citing

9   *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).  A remedy must "operate with

10  respect to specific parties," not "in the abstract" giving way to a highly attenuated chain of

11  possibilities.  *Cal. v. Tex.*, 593 U.S. 659, 671-72 (2021).  Plaintiffs have not met this standard.

12      Plaintiffs do not allege any facts that establish that a favorable decision is likely to remedy

13  the psychological, spiritual, or reputational harm they allege that they have experienced.  And

14  even if this Court agreed with Plaintiffs' premise that the Department has erred in some way in

15  the State Action, the relief that Plaintiffs seek here would not operate to change the minds of third

16  parties regarding either Hinduism or caste-based systems.  Instead, without identifying a single,

17  tangible injury, Plaintiffs seek sweeping declaratory and injunctive relief that would effectively

18  halt not only the Department's State Action, but *any* future enforcement action by the Department

19  related to discrimination based on caste status and *all* civil rights enforcement actions concerning

20  a religious or sociological feature.  (*See* ECF No. 50 at 35).  Yet none of the Plaintiffs are parties

21  to *CRD v. Cisco*, nor allege that they are facing an imminent threat of the type of anti-

22  discrimination action they seek to prevent.  Moreover, even if successful in the State Action, the

23  Department does not seek and could not obtain relief that would affect or change the conditions

24  of any non-party individual Hindu American, Indian American, or South Asian American, let

25  alone all such individuals in the United States or California.  (*See* Munson Decl., Exh. C at 18-

26  19).  The state court does not have the jurisdiction to order relief against entities and individuals

27  who are not party to the State Action, such as Plaintiffs.  Accordingly, Plaintiffs have not

28

1   established that their alleged harm is likely to be redressed by a favorable decision from this

2   Court.

3       **B.    HAF Does Not Have Associational Standing to Pursue this Litigation**

4       HAF also asserts that it has associational standing to bring this lawsuit.  (ECF No. 50 ¶¶ 25-

5   28).  To invoke associational standing, an organization must allege facts demonstrating that: "(1)

6   its members would otherwise have standing to sue in their own right; (2) the interests it seeks to

7   protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief

8   requested requires the participation of individual members in the lawsuit."  *Am. Unites for Kids v.*

9   *Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (citing *Hunt v. Wash. State Apple Advert.*

10  *Comm'n*, 432 U.S. 333, 343 (1977)).  Although formal membership is not always required for

11  organizational standing, a plaintiff-organization that lacks membership must nonetheless establish

12  that it "'is sufficiently identified with and subject to the influence of those it seeks to represent as

13  to have a personal stake in the outcome of the controversy.'"  *Id.* at 1096 (internal citations

14  omitted) (quoting *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003)).  HAF has

15  again failed to meet its burden.  The SAC fails to: (1) identify a clear constituency whose interests

16  HAF can appropriately represent in this suit; and (2) otherwise satisfy the three *Hunt* factors.

17      **1.    HAF has not identified a clear constituency, let alone one that has
            suffered the requisite injury and whose interests HAF can represent
18          in this suit**

19      As in its original complaint, HAF alleges that it is the "largest and most respected Hindu

20  educational and advocacy institution in North America."  (ECF No. 50 ¶ 1).  Although HAF has

21  added allegations that vaguely describe its mission and "guiding principles" (*id.* ¶¶ 29, 31) as well

22  as some of its educational and advocacy activities (*see, e.g., id.* ¶¶ 29-30, 36-37, 40), it again has

23  not provided sufficient detail to establish the constituency it purports to represent.  Viewed in the

24  most generous light, HAF appears to allege that it represents all Hindu Americans, Indian

25  Americans (both Hindu and non-Hindu), and South Asian Americans (both Hindu and non-

26  Hindu).  (*Id.* ¶¶ 29, 38, 40, 43-44).  If so, HAF's purported constituency is significantly larger and

27  more diffuse than those that courts have found appropriate for purposes of associational standing.

28  *See Or. Advocacy Ctr.*, 322 F.3d at 1111-12 (plaintiff's constituency defined as criminal

21

defendants with intellectual disabilities in Oregon); *Am. Unites for Kids*, 985 F.3d at 1096-97 (plaintiff's constituency defined as public school teachers at the Malibu campuses of a school district); *Catholic League*, 624 F.3d at 1048, 1063-64 (plaintiff's constituency defined as approximately 6,000 devout Catholics in San Francisco).  In each of these cases, the plaintiffs alleged specific facts to show that they served the clearly defined, specialized group that had been or would be directly affected by the government's actions.  HAF has identified no such clear, specialized segment of Hindu Americans, Indian Americans, or South Asian Americans who have cognizable injuries from *CRD v. Cisco*.

Moreover, as in its original complaint, HAF fails to explain how it is "sufficiently identified with and subject to the influence" of the very broad and diffuse range of constituents it seeks to represent in this lawsuit.  *Or. Advocacy Ctr.*, 322 F.3d at 1112.  HAF does not explain, for example, how it is funded, how it is organized, or what interaction it has with its purported constituency beyond accepting donations, conducting largely unspecified education activities, and interacting with select individuals such as "scholars" and "scholar-practitioners."  (*See* ECF No. 50 ¶¶ 29-44).  HAF alleges that it receives guidance from a ten-person "National Leadership Council" and a 17-person "Advisory Committee," some of whom "reside and/or work in California," but it provides no information regarding how contact with these unspecified individuals—or any of its other activities—adequately enables HAF to speak on behalf of an alleged constituency as large as all Hindu Americans, Indian Americans, and South Asian Americans.  (*Id.* ¶¶ 33-34).  HAF also alleges that the Individual Plaintiffs are all "supporters, members, or constituents," but provides no detail to support this allegation.  (*Id.* ¶ 39).[9]  For example, HAF provides no information about which Individual Plaintiffs fall into which category, when or how any of the Individual Plaintiffs became HAF's "members[] or constituents," or how HAF engages with them such that it can represent their interests in this lawsuit.

---

[9] And HAF provides no legal authority for the proposition that having undefined "supporters" satisfies the indicia of membership in order to convey organizational standing.  (*See* ECF No. 50).

### 2.   On amendment, HAF has not satisfied the *Hunt* factors for associational standing

Even if HAF had pled facts sufficient to establish that it has a clear constituency on whose behalf it can fairly and adequately speak—it did not—HAF's associational standing fails because it has not satisfied the other necessary factors.  *See Hunt*, 432 U.S. at 342-43.

First, associational standing requires that HAF's individual members or constituents have suffered "injury in fact"—an invasion of a legally protected interest that is: (a) concrete and particularized; and (b) actual or imminent, and not conjectural or hypothetical—that is caused by the Department's conduct and redressable by a favorable decision.  *Lujan*, 504 U.S. at 560-561. Yet HAF again fails to explain how its constituents have been or are imminently in danger of being harmed by *CRD v. Cisco* such that those constituents would have standing to bring any of the claims asserted.  (*See* ECF No. 50).  Although HAF alleges without evidence that each of the Individual Plaintiffs are "members" or "constituents," as discussed above (*see* Section II.A.1.a, *supra* at 12-18), none of them have suffered a cognizable injury—that is, a "concrete" and "particularized" injury that is "real and not abstract"—as is required to have standing.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Accordingly, the Individual Plaintiffs cannot convey associational standing to HAF.

Second, as discussed above, Plaintiffs' generalized grievances are not redressable through this lawsuit.  (*See* Section II.A.2, *supra* at 20).

Third, HAF has not shown that representing its "members" or "constituents" in this suit is germane to its organizational purpose.  *Hunt*, 432 U.S. at 342-43.  Germaneness can be demonstrated by showing that the association or organization is "the defendant's natural adversary."  *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.,* 517 U.S. 544, 556 (1996).  However, the facts as pled in Plaintiffs' complaint show that, far from being natural adversaries, Plaintiff and the Department share objectives, including opposing discrimination. Plaintiff describes itself as a Hindu education and advocacy organization that "works with a wide range of people and groups that are committed to promoting dignity, mutual respect, and pluralism, working across all sampradaya (Hindu religious traditions) regardless of race, color,

23

1   national origin, citizenship, ancestry, gender, sexual orientation, age, and/or disability."  (ECF

2   No. 50 ¶ 53).[10]  In addition, HAF avers that it "vehemently oppose[s] all types of discrimination"

3   (*id.* at 4:1) and that "stopping caste-based discrimination is a worthy goal that directly furthers

4   Hinduism's belief in the equal and divine essence of all people" (*id.* at 5:13-14).  The

5   Department's goals are similar.  It is a state agency charged with advancing the rights of all

6   Californians to be free from discrimination.  (*See* Munson Decl., Exh. C ¶¶ 16, 51-52, 61-62, 72-

7   73, 82-83, 94-95).  The Department's lawsuit, which is aimed at ending discrimination against

8   Dalit workers at Cisco, shares these same objectives rather than contravenes them.  (*See id.*)

9         In determining germaneness, courts also consider whether the civil action will address the

10   needs of the plaintiff's members.  *See United Food & Com. Workers Union Loc. 751*, 517 U.S. at

11   555-56 ("*Hunt's* second prong . . . demand[s] that an association plaintiff be organized for a

12   purpose germane to the subject of its member's claim raises an assurance that the association's

13   litigators will themselves have a stake in the resolution of the dispute[.]").  HAF cannot

14   demonstrate such a stake.  At least some Hindu Americans residing in California—for example,

15   Mr. Narsude and others who believe they have been the victims of caste-based discrimination at

16   Cisco—may have interests that conflict with HAF's purpose in this lawsuit as they may stand to

17   benefit from the Department's efforts to prevent and redress discrimination against workers based

18   on their perceived or actual status as victims of caste discrimination.

19         When evaluating germaneness, courts also look to the unity or diversity of views within an

20   organization.  A diversity of opinion within an organization's own members destroys

21   associational standing.  *See, e.g.*, *Harris v. McRae*, 448 U.S. 297, 321 (1980) (rejecting a religious

22   group's associational standing challenge to the Hyde Amendment because the group held a

23   diversity of views on abortion).   HAF previously admitted that "Hinduism represents a broad and

24   diverse faith, with each of the over 1.2 billion Hindus' [sic] understanding its wisdom based on

25   their own study, practice, and experience of its precepts."  (ECF No. 1 ¶ 8).  Although HAF has

26   amended this allegation to instead describe Hinduism as "a broad, pluralistic family of traditions,"

27   ───────────────

            [10] Although HAF purports to advocate more broadly on behalf of Indian Americans and South
28   Asian Americans (including non-Hindus), this is reflected neither in its stated mission (ECF No. 50 ¶ 29)
     nor in the vague descriptions of its advocacy activities (*id.* ¶¶ 29-37).

it nonetheless still concedes that it is a "divers[e]" religion not "bound together . . . by a single spiritual founder, authority or book."  (ECF No. 50 ¶ 54).  Thus, even assuming HAF could represent all Hindu Americans, by its own admission, its membership would naturally include a diversity of viewpoints on caste discrimination in the United States.  Indeed, it was one such individual's complaint to the Department that catalyzed the pending suit in the first instance.  (*See* Munson Decl., Exh. C ¶¶ 1-6, 11-15, 17).  Accordingly, HAF's action against the Department does not benefit all Hindu Americans—or all Indian Americans or South Asian Americans—and is not germane to its stated mission and purpose.

Finally, HAF's assertion of associational standing fails because its claims and requested relief require individual participation by its members or constituents.  *See, e.g.*, *McRae*, 448 U.S. at 321 ("'[I]t is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion'" (citation omitted)); *New Hampshire Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006), aff'd, 552 U.S. 364, 128 S. Ct. 989 (2008) (Fourteenth Amendment claims require individual members' participation where a complaint is so vague as to require a "sufficiently fact-intensive inquiry" into individualized member's situations to establish the claims).  Accordingly, HAF cannot proceed with this action under an associational standing theory in the absence of identifiable individual members or constituents who have experienced the requisite injury-in-fact and would themselves have standing to bring the claims HAF seeks to assert.

Because HAF has not identified a cognizable constituency or satisfied the *Hunt* factors, it lacks associational standing to bring this suit.

## III.   IN THE ALTERNATIVE, MR. SUNDAR IYER'S AND MR. KOMPELLA'S EQUAL PROTECTION CLAUSE CLAIMS MUST BE DISMISSED AS MOOT

Federal courts "are without power to decide questions that cannot affect the rights of litigants in the case before them."  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971); *see also* U.S. Const. art. III, § 2.  The federal court's inability "to review moot cases derives from the requirement that Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy."  *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3

25

(1964).  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *City of Erie v. Pap's A.M.* 529 U.S. 277, 287 (2000). Motions to dismiss on mootness grounds are properly brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *White*, 227 F.3d at 1242.

The central issue in any mootness challenge is whether the federal court can afford the plaintiffs any meaningful, effective relief.  *West v. Secretary of Dep't of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000).  Unless the plaintiff can obtain such relief if they prevail, any opinion as to the legality of the challenged action would be advisory.  *City of Erie*, 529 U.S. at 287.  And "[i]t has long been settled that [federal courts lack] authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [the court]."  *DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1174 (9th Cir. 2005).

Here, Mr. Sundar Iyer and Mr. Kompella complain that the Department was wrong to bring charges against them under the FEHA for their actions while acting as supervisors at Cisco.  (ECF No. 50 ¶¶ 15-20).  Mr. Iyer alleges that he should not have been named as a defendant in *CRD v. Cisco* because the Department was "aware that [he] was irreligious or an agnostic and did not identify with any caste[.]"  (*Id.* ¶ 16).  Mr. Kompella alleges that he should not have been named as a defendant because the Department was factually mistaken about actions he took in his role as Mr. Narsude's supervisor.  (*Id.* ¶ 18).  Even if Mr. Iyer's and Mr. Kompella's allegations are taken as true for purposes of this motion, any claims premised on their involvement in the ongoing State Action are moot.

In April 2023—five months before HAF amended its complaint to include Mr. Iyer and Mr. Kompella as Individual Plaintiffs—the Department dismissed all claims against Mr. Iyer and Mr. Kompella with prejudice.  (*See* Munson Decl., Exhs. H, I).  Accordingly, Mr. Iyer and Mr. Kompella cannot—and do not—plausibly allege that there is any ongoing conduct as to their status as defendants in *CRD v. Cisco* for this Court to enjoin.

Nor is there any possibility that the alleged wrongdoing by CRD giving rise to Mr. Iyer and Mr. Kompella's Equal Protection Clause claims will recur, given their dismissal with prejudice.

Although a defendant's voluntary cessation of challenged conduct does not always moot a case, it will do so if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater* 528 U.S. 216, 221 (2000); *see also Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) (holding that a public entity's cessation is given greater weight than that of private entities).

Absent a live case or controversy, Mr. Iyer and Mr. Kompella, at most, seek an advisory opinion about the constitutionality of the Department's prosecutorial charging decisions, which this Court cannot provide.[11]  Mr. Iyer's and Mr. Kompella's Equal Protection Clause claims must be dismissed as moot.

## IV.   PLAINTIFFS' SECOND AMENDED COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.   Plaintiffs Fail to State a Claim for Relief Under the Establishment Clause

In their SAC, Plaintiffs allege that the Department's State Action violates the Establishment Clause because it "inaccurate[ly] assert[s] that caste, a caste system, and caste-based discrimination are an inherent part of Hindu religious belief and practice, and thus seeks to "legally define," "censure," and declare unlawful the religious beliefs of all Hindus or Hindu Americans under the FEHA.  (ECF No. 50 ¶¶ 79, 82-83).  Plaintiffs are wrong.  When a government acts in a manner that disparages a religion, treats religions differently, or dictates religious doctrine, such actions may violate the Establishment Clause.  Here, however, the State Action does not disparage Hinduism, treat it differently than other religions, or dictate Hindu religious doctrine.  Plaintiffs have not alleged a viable claim under the Establishment Clause.

The Establishment Clause provides that the government "shall make no law respecting an establishment of religion."  U.S. Const. amend. I.  Accordingly, the government "may not exercise a preference for one religious faith over another."  *Van Orden v. Perry*, 545 U.S. 677, 709 (2005)).  When evaluating whether government actions violate the Establishment Clause, courts must strive to "faithfully reflect the understanding of the Founding Fathers" by

---

[11] Even if Mr. Iyer's and Mr. Kompella's claims were not moot, courts are hesitant to review such prosecutorial charging decisions.  (*See* Section IV.D.2, *infra* at 37-39).

1    "referenc[ing] . . . historical practices and understandings." *Kennedy v. Bremerton Sch. Dist.*, 597

2    U.S. 507, 536-537 (2022) (quoting *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 576 (2014)).

3    Put differently, courts must consider whether a challenged action "comports with the Founding

4    Fathers' First Amendment policy goals and considerations." *Kumar*, 703 F. Supp. 3d at 1149.

5    For purposes of determining whether there is a violation of the Establishment Clause, courts view

6    the challenged actions objectively and from the perspective of a reasonable person. *Cal. Parents*

7    *for the Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1021 (9th Cir. 2020).

8         The First Amendment was enacted to "protect the integrity of individual conscience in

9    religious matters" and "guard against the civic divisiveness that follows when the government

10   weighs in on one side of a religious debate." *McCreary Cnty., Ky. v. ACLU of Ky.*, 545 U.S. 844,

11   876 (2005).  Thus, government policies favoring a particular religion or favoring religion over

12   nonreligion have been struck down as unconstitutional.  *See, e.g.*, *Sch. Dist. of Abington*

13   *Township, Pa. v. Schempp*, 374 U.S. 203, 223 (1963) (holding that daily reading and recitation of

14   Bible verses at a public elementary school violated the Establishment Clause).  Similarly, the

15   government may not involve itself in internal church affairs.  *See, e.g.*, *Hosanna-Tabor*

16   *Evangelical Lutheran Church & Sch. v. Equal Employment & Opportunity Commission*, 565 U.S.

17   171, 181 (2012) (holding that the government could not interfere with a church's decision to fire

18   one of its ministers).  And the government generally cannot prohibit or coerce attendance at

19   religious institutions or engagement in formal religious exercises, nor otherwise prohibit or make

20   religious observance compulsory.  *Kennedy*, 597 U.S. at 536-37.

21        However, as history demonstrates, "the Establishment Clause does not compel government

22   to purge from the public sphere all that in any way partakes of the religious." *Van Orden*, 545

23   U.S. at 699.  For example, "legislative prayer, while religious in nature, has long been understood

24   as compatible with the Establishment Clause." *Town of Greece*, 572 U.S. at 575; *see also*

25   *Kennedy*, 597 U.S. at 536-37 (holding that the Establishment Clause did not require government

26   to prevent a teacher from individually praying before a public school sporting event).  And

27   governments may, in some circumstances, express concern about religious institution's positions

28   regarding civil rights recognized by the state. *See Catholic League*, 624 F.3d at 1057-58, 1060-61

28

(holding that San Francisco's resolution protesting the Catholic Church's refusal to allow same-sex parents to adopt did not violate the Establishment Clause). Further, governments may adopt anti-discrimination policies, including those that prohibit caste-based discrimination (*see Kumar*, 703 F. Supp. 3d at 1151-52) and education curriculum and materials that describe caste as "a social and cultural structure as well as a religious belief" (*Torlakson*, 973 F.3d at 1021) without violation the Establishment Clause.

This historical understanding of the First Amendment suggests that government actions that disparage a religion, treat religions differently, or dictate religious doctrine may violate the Establishment Clause. Here, however, the Department's conduct in connection with the State Action does none of these things. The State Action does not disparage Hinduism, treat it differently than other religions, or dictate Hindu religious doctrine (*see* Munson Decl., Exh. C), and Plaintiffs have not alleged a plausible basis to find otherwise (*see* ECF No. 50 ¶¶ 75-86).

First, contrary to Plaintiffs' assertions, the Department's State Action does not define or dictate any religious doctrine or practice, including Hinduism. (*See* Munson Decl., Exh. C). It does not assert that adherence to a caste-based system or participation in caste-based discrimination are inherently part of Hinduism. (*See id.*). And it does not assert that every person of Hindu faith adheres to such beliefs or practices. (*See id.*) In fact, the State Action mentions Hinduism only once: it states that the complainant, Mr. Narsude, is Hindu. (*Id.* ¶ 29). Thus, no reasonable reader would conclude that the State Action defines Hinduism to inherently include a caste system, let alone that the State Action declares that Plaintiffs themselves—who are not parties to the State Action—believe in or adhere to a caste system. *See Kumar*, 703 F. Supp. 3d at 1152.

Moreover, the explicit principal and primary purpose of the State Action is to end discrimination against and promote the equality of Cisco's workers—*not* to advance or inhibit any religion, or define anyone's religious beliefs.[12] (*See, e.g.*, ECF No. 51 at 19-20; Munson Decl., Exh. C at 18-19). And Plaintiffs universally state that the conduct the State Action seeks to

---

[12] Although the State Action is limited to the employment context, the FEHA also applies in other spaces, such as the housing context.

1    redress—alleged caste-based discrimination by an employer—is *not* part of their religion or

2    religious practice, or in the case of Mr. Sundar Iyer his non-religious practice.  (ECF No. 50 at

3    3:23-26, ¶¶ 2, 8, 10, 12, 15, 17).  Plaintiffs thus have not shown that the State Action

4    impermissibly defines or proscribes their religious doctrine in violation of the Establishment

5    Clause.

6          Second, contrary to Plaintiffs' assertions, the Department's State Action does not disparage

7    or malign Hinduism.  (*See* Munson Decl., Exh. C).  In fact, Plaintiffs have not alleged facts to

8    show that the Department itself has made any anti-Hindu statements.  (*See id.*)  Instead, Plaintiffs

9    rely on various inflammatory statements by third parties.  (*See, e.g.*, ECF No. 50 ¶¶ 5 (impliedly

10   misattributing statements by Equality Labs to the Department) & 7 (quoting *Catholic League*, 624

11   F.3d at 1049, to inaccurately imply that the Department has called Hindus "second-class citizens"

12   or "labeled" Hindus "discriminatory and caste-ist").

13         The Department's State Action is an enforcement action against a single, non-religious

14   employer, Cisco.  (*See id.*)  It was brought to effectuate the Department's statutory duties under

15   the FEHA, which is a law with the secular purpose of preventing and redressing discrimination on

16   the basis of protected characteristics, such as race, religion, ancestry, gender, and sexual

17   orientation.  *See* Gov't Code §§ 12900-12999; *see also N. Coast Women's Care Med. Grp., Inc. v.

18   Super. Ct.*, 44 Cal.4th 1145, 1156 (Cal. Sup. 2008) (holding that a parallel anti-discrimination

19   law, the Unruh Civil Rights Act, is similarly a valid law of general applicability).  Indeed, there

20   can be no doubt that the FEHA prohibits discrimination on the basis of the characteristics

21   described in the State Action—Mr. Narsude's ancestry, race/color, national origin/ethnicity, and

22   religion.  *See* Gov't Code § 12920.  (*See also* Munson Decl., Exh. C at 2 fn. 1, ¶¶ 1, 48, 53-54,

23   62-64).  As alleged in the Department's State Action, Mr. Narsude's *own* caste identity as a Dalit

24   Indian is linked to these multiple vectors protected by the FEHA.  (*See, e.g.*, Munson Decl., Exh.

25   C at 2 fn. 1, ¶¶ 1, 48, 53-54, 62-64).  Thus, employment discrimination on the basis of any one or

26   combination of these identity vectors could certainly violate the FEHA.  Plaintiffs have not shown

27   that Department's case-specific allegations in legal documents relating to their complainant's own

28   religious beliefs and caste identity are in any way equivalent to the Department issuing a

1  sweeping condemnation of the Hindu religion or its practitioners that might implicate the

2  Establishment Clause.

3         The "critical weakness" of Plaintiffs' claim, therefore, is that the Department's State

4  Action, "on its face, simply does not discriminate on the basis of religious affiliation or religious

5  belief." *Gillette v. United States*, 401 U.S. 437, 450 (1971).  Plaintiffs' Establishment Clause

6  claim must be dismissed.

7         **B.     Plaintiffs Fail to State a Claim for Relief Under the Free Exercise Clause**

8         Plaintiffs claim that the Department has violated their rights under the Free Exercise Clause

9  of the First Amendment.  (ECF No. 50 ¶¶ 87-99).  To establish a viable free exercise claim a

10  plaintiff must show that a government action substantially burdened or had a coercive effect on

11  their practice of religion.  *See McRae*, 448 U.S. at 321 (quoting *Schempp*, 374 U.S. at 223

12  (organizational plaintiff must demonstrate coercive effect against the practice of individual

13  member's religions); *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (citing *Graham*

14  *v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680,

15  699 (1989) (plaintiff must show that the government action in question substantially burdens the

16  person's practice of their religion).  "'A substantial burden . . . place[s] more than an

17  inconvenience on religious exercise; it must have a tendency to coerce individuals into acting

18  contrary to their religious beliefs or exert substantial pressure on an adherent to modify his

19  behavior and to violate his beliefs.'"  *Jones*, 791 F.3d at 1031-32 (quoting *Ohno v. Yasuma*, 723

20  F.3d 984, 1011 (9th Cir. 2013) (ellipsis and alteration in original).  However, "the Free Exercise

21  Clause does not inhibit enforcement of otherwise valid regulations of general application that

22  incidentally burden religious conduct." *Christian Legal Soc'y Chapter of the Univ. of Cal.*

23  *Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 697 n.27 (2010).  Moreover, plaintiffs seeking

24  relief under the Free Exercise Clause must describe specific experiences and injuries caused by

25  the government's actions, particularly where an organization attempts to bring those claims on

26  behalf of a membership with potentially diverse viewpoints.  *McRae*, 448 U.S. at 321.  Plaintiffs

27  have not pled a viable claim under the Free Exercise Clause for multiple reasons.

28         First, the SAC does not allege any facts showing that the Department's actions have

coerced anyone into doing something inimical to their religious convictions or otherwise prevented them from being able to practice their religion.  Indeed, it is implausible that a lawsuit seeking to end caste-based discrimination at Cisco could prevent any individuals—let alone all Hindu Americans, Indian Americans, and/or South Asian Americans in California—from practicing their chosen religion.  And if—as Plaintiffs plead (ECF No. 50 at 3:24-26, 5:13-14)—Plaintiffs denounce the caste system and reject it as part of their religion, then an enforcement action that seeks to prevent caste-based and other discrimination "does not threaten any of [the] Plaintiffs' rights to practice their religion."  *Kumar*, 638 F. Supp. 3d at 1115-16.  Accordingly, Plaintiffs have not pled facts sufficient to show that the Department's State Action have coerced or substantially burdened its members' ability to practice their religion.

Second, the SAC provides no legal authority for its assertion that a state action that "defines" a religion or inaccurately describes that religion's doctrine violates the Free Exercise Clause.  (*See* ECF No. 50 ¶¶ 87-99).[13]  To the contrary, erroneously defining or characterizing a religion in a pleading is not regulatory, proscriptive, or compulsory, and thus does not have an unlawful coercive effect on an adherent's ability to practice their religion.  *See, e.g.*, *Sabra*, 44 F.4th at 890 (when the challenged government action is neither regulatory, proscriptive or compulsory, alleging a subjective chilling effect on free exercise rights is not sufficient to constitute a substantial burden).[14]

Third, any allegations Plaintiffs do make are clearly cast in hypothetical and speculative terms that are insufficient to meet the pleading standard.  *See, e.g.*, *Bell Atl. Corp. v. Twombly*,

[13] Plaintiffs again cite to *Serbian E. Orthodox Diocese for United States & Canada v. Milivojevich*, 426 U.S. 696 (1976) for the principle that the United States Constitution prohibits "*any* 'civil determination of religious doctrine.'"  (ECF No. 50 at 4:10-12, emphasis added).  This overstates the case's reach.  In *Serbian E. Orthodox Diocese*, the Supreme Court overturned the Illinois Supreme Court's attempt to reinstate a bishop who had been suspended from the church, holding that civil courts could not substitute their judgments for those espoused by a religious tribunal in such matters.  426 U.S. at 709 ("[T]he First . . . Amendment[] mandate[s] that civil courts shall not disturb the *decisions of the highest ecclesiastical tribunal within a church of hierarchical polity*, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them.") (emphasis added).  This matter involves no such tribunal or determination and does not seek to compel anyone to observe Hinduism in any particular way.

[14] Although Plaintiffs again cite to *Espinoza* for the proposition that laws violate the Free Exercise Clause when they "impose special disabilities on the basis of religious status" (ECF No. 50 ¶ 94), they provide no factual allegations that plausibly establish that the Department's State Action creates such a burden.  *See Espinoza*, 591 U.S. at 473-76.  (*See supra* at 14).

1  550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above a

2  speculative level[.]").  Although facts are typically accepted as true for the purposes of

3  determining plausibility under Rule 12(b)(6), the plausibility standard is a "context-specific task

4  that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*,

5  556 U.S. at 679.  This Court need not blindly accept conclusory allegations, unwarranted

6  deductions of fact, and unreasonable inferences (*see Sprewell*, 266 F.3d at 988) and should

7  therefore reject such allegations in Plaintiffs' complaint (*see*, *e.g.*, ECF No. 50 ¶¶ 14 (speculating

8  that other third parties could be the subject of future enforcement actions by the Department);

9  105-108 (speculating that hypothetical employers will be forced to "accommodate" future caste-

10  based discrimination requests from hypothetical employees)).  As this Court has already noted,

11  Plaintiffs' allegations are "both highly speculative and seemingly implausible" (ECF No. 20 at

12  14-15), and they remain so despite having had an opportunity to amend.

13        Finally, Plaintiffs' conclusory statements about the purpose or outcome of the

14  Department's enforcement action against Cisco cannot be used to reasonably infer that the

15  Department has substantially burdened anyone's exercise of their religion.  *See Iqbal*, 556 U.S. at

16  678.  As discussed above and contrary to Plaintiffs' assertion, the Department does not seek or

17  attempt to legally define Hinduism in its State Action, nor to make any "declar[ations] that caste-

18  based discrimination is a fundamental practice of Hinduism[.]"  (*Compare* ECF No. 50 at 2-3, ¶¶

19  60-61, 64, 66, 69-70 *with* Munson Decl., Exh. C).  Rather, the Department seeks to prevent Cisco

20  from engaging in caste-based employment discrimination and to remediate any harms caused by

21  such unlawful practices.  (*See* Munson Decl., Exh. C at 18-19; *see also* ECF No. 20 at 14-15).

22  Apart from noting that Mr. Narsude is Hindu, the Department's operative complaint contains no

23  other allegations about Hinduism.  (*See* Munson Decl., Exh. C ¶ 29).  And as the Department has

24  previously addressed, it alleges that the caste-based discrimination against *Mr. Narsude* was

25  discrimination on the basis of several protected characteristics, including *his own* ancestry,

26  national origin, race/color, and/or religion.  (*See id.* at 2 n.1).[15]

27        [15] Plaintiffs also allege that the Department used "religion as a basis of classification" when it
   brought *CRD v. Cisco* against an "'irreligious' or Agnostic" defendant, presumably Mr. Sundar Iyer.

28                                                                          (continued...)

Plaintiffs have not alleged that the Department's actions have substantially burdened or had a coercive effect upon any individual's practice of their religion, and have not pled a viable claim under the Free Exercise Clause.

## C. Plaintiffs Fail to State a Claim for Relief Under the Due Process Clause

Plaintiffs also fail to state a viable claim for relief under the Due Process Clause. The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const., amend. XIV. "A [S]ection 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972); *West v. Atkins*, 487 U.S. 42 (1988). A statute violates the Due Process Clause and "is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it incites arbitrary and discriminatory enforcement." *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1345 (9th Cir. 1984) (citations omitted). As nearly "any law *allows* [arbitrary enforcement]," courts must exercise judgment to determine "the degree of vagueness that the Constitution tolerates" based on the "nature of the enactment." *Id.* at 1345-46.

As in HAF's original complaint, Plaintiffs' SAC again asserts that the Department's State Action "seek[s] to legally define Hinduism to include belief and practice in caste" and that this alleged "definition" is so standardless as to be void for vagueness under the Due Process Clause. (ECF No. 50 ¶ 104). Plaintiffs further allege that, because the FEHA requires employers to accommodate religious beliefs, the Department's State Action against Cisco will somehow perpetuate caste-based employment discrimination statewide. (*Id.* ¶¶ 105-110). This is insufficient to state a "void for vagueness" claim under the Due Process Clause.

---

(ECF No. 50 ¶ 97). This, too, is unavailing. The Department has never alleged that Mr. Iyer subscribed to any particular religion or that he acted in a discriminatory manner because he has a particular religious identity. (*See* ECF No. 51; Munson Decl., Exh. C). Rather, the Department alleged that Mr. Iyer discriminated against Mr. Narsude on the basis of *Mr. Narsude's caste status, which includes Mr. Narsude's own religion.* And, in any case, Plaintiffs do not allege that Mr. Iyer's non-religious beliefs have been coerced or burdened in any way by the State Action. (*See* ECF No. 50 ¶¶ 15-16, 20, 87-99).

First, Plaintiffs have again failed to provide any authority for the proposition that a state agency's initiation of a lawsuit in accordance with its statutory authority could itself be the basis of a void for vagueness challenge. (*See id.* ¶¶ 100-111.) And the State Action does not seek to "legally define" Hinduism at all. (*See* Munson Decl., Exh. C.)

Second, Plaintiffs have not identified any statute that they claim is void for vagueness. (*See* ECF No. 50 ¶¶ 100-111.) And although Plaintiffs allege that laws "must give fair notice of conduct that is forbidden or required, they have not identified a law that does not do so. (ECF No. 50 ¶ 103, citing *Fed. Commc'ns Comm'n v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012)).[16] In fact, Plaintiffs appear to concede that the FEHA itself—the only law cited within this claim—is clear on its face. (*See id.* ¶¶ 105-07.) Indeed, the FEHA plainly prohibits employment discrimination based on protected characteristics such as an employee's ancestry, national origin/ethnicity, race/color, and religion. Gov't Code § 12920. And, as outlined in the State Action, Mr. Narsude's own caste identity is linked to such protected characteristics. (Munson Decl., Exh. C at 2 fn. 1, ¶¶ 1, 48, 53-54, 62-64.) However, even if Plaintiffs are attempting to assert that the FEHA itself is void for vagueness—a theory they have previously disclaimed (*see, e.g.,* ECF No. 45 at 1:23-2:2)—then Plaintiffs' claim must still be dismissed as they have alleged insufficient facts to state that claim and, in any case, Defendant Kish does not enact or amend the FEHA.

Finally, regardless of Plaintiffs' legal theory, they cannot state a viable void for vagueness claim in the absence of standing. As this Court previously explained, "[a] plaintiff has standing to bring a pre-enforcement challenge to a vague law on due process grounds where 'the litigant is chilled from engaging in constitutionally protected activity.'" (ECF No. 20, citing *Montclair Police Officers' Ass'n*, 2012 WL 12888427, at *4 (quoting *Bankshot Billiards, Inc.*, 634 F.3d at 1350). Here, however, Plaintiffs have again failed to identify any activity that they allege has been chilled by the Department's State Action, let alone a constitutionally protected activity. (*See* ECF No. 50 ¶¶ 100-111.) As discussed above, the only injury to which Plaintiffs even allude—

---

[16] Plaintiff also alleges that laws and regulations cannot be "so standardless that [they] authorize[] or encourage[] seriously discriminatory enforcement," but again points to no law or regulation lacking sufficient standards. (ECF No. 50 ¶ 103, citing *United States v. Williams*, 553 U.S. 285, 304 (2008)).

1   that the State Action might encourage future discrimination by requiring employers to

2   accommodate caste-based accommodation requests—is hypothetical and speculative, and has

3   already been rejected by this Court.  (*See* Section II.A.1.a., *supra* at 15-16; ECF No. 20 at 14-15,

4   citing *Summers*, 555 U.S. at 495-96).  Thus, the SAC does not state a viable claim for relief under

5   the Due Process Clause.

6       Dismissal under Rule 12(b)(6) is appropriate where, as here, a complaint lacks a cognizable

7   legal theory or facts sufficient to support a cognizable legal theory.  *Balistreri v. Pacifica Police*

8   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

9

      **D.**     **Plaintiffs Fail to State a Claim for Relief Under the Equal Protection**
             **Clause for Either Religious or National Origin Discrimination**

10

11       To state a Section 1983 claim for a violation of the Equal Protection Clause, a plaintiff

12   "must show that the defendants acted with an intent or purpose to discriminate against the

13   plaintiff based upon membership in a protected class," and that plaintiff was treated differently

14   from persons similarly situated.  *Barren*, 152 F.3d at 1194 (citing *Washington*, 426 U.S. at 239-

15   40).  A plaintiff may satisfy this showing by alleging four separate elements: (1) the plaintiff was

16   treated differently from persons similarly situated; (2) this unequal treatment was based on an

17   impermissible classification; (3) the defendant acted with discriminatory intent in applying this

18   classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification.

19   *Lam v. City & Cnty. of S.F.*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 F. App'x 641

20   (9th Cir. 2014) (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).  Plaintiffs do

21   not sufficiently allege any of the four required elements to plead a viable equal protection claim

22   for discrimination based on either religion or national origin.  Moreover, even if Mr. Sundar Iyer

23   and Mr. Kompella could plead a cognizable equal protection claim—they cannot—the crux of

24   their complaint is that they should not have been charged as defendants in *CRD v. Cisco*, which is

25   not a matter well-suited for judicial review.  *See United States v. Armstrong*, 517 U.S. 456, 465

26   (1996) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

27

28

1       **1.**      **All Plaintiffs fail to state a claim for discrimination on the basis of**
2                **religion**

3       As addressed above, none of the Individual Plaintiffs have pled facts sufficient to establish

4 that the Department has treated them differently from other similarly situated persons on the basis

5 of their religion, nor that they have suffered a cognizable injury-in-fact as a result. (*See supra* at

6 16-18). In fact, the only two Individual Plaintiffs who have ever been subject to the Department's

7 efforts to enforce the FEHA—former *CRD v. Cisco* defendants, Mr. Sundar Iyer and Mr.

8 Kompella—allege they are of different faiths. Mr. Iyer alleges that he does not practice an

9 organized religion and Mr. Kompella alleges that he practices Hinduism. (ECF No. 50 ¶¶ 15, 17).

10 And, as an organization, HAF cannot plead a cognizable claim for discrimination on the basis of

11 religion absent evidence that its individual members have faced such discrimination. (*See* Section

12 II.B.2, *supra* at 23-25). For example, Plaintiffs' SAC does not identify *any* similarly situated

13 individuals who have been treated differently from them on the basis of religion, nor what that

14 treatment might be. This is insufficient to establish a claim under the Equal Protection Clause.

15       Critically, Plaintiffs also have not demonstrated that Defendant Kish, acting in his official

16 capacity as the Department's Director, has acted with discriminatory intent or purpose in any

17 way. (*See supra* at 16-18). In the equal protection context, this is the "fundamental question."

18 *Lam*, 868 F. Supp. 2d at 951. Discriminatory purpose "implies more than intent as volition or . . .

19 awareness of consequences. It implies that the decision-maker . . . selected or reaffirmed a

20 particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects

21 upon an identifiable group." *Pers. Adm'r of Mass.*, 442 U.S. at 279 (internal citation omitted).

22 "[D]etermining the existence of a discriminatory purpose 'demands a sensitive inquiry into such

23 circumstantial and direct evidence of intent as may be available.'" *Rogers v. Lodge*, 458 U.S.

24 613, 618 (1982) (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266,

25 (1977); citing *Washington*, 426 U.S. at 242). As evidenced by the Department's State Action, its

26 actions are—and have always been—intended to *stop* and to remedy unlawful discrimination

27 against Cisco's workers. (*See* ECF No. 51; Munson Decl., Exh. C). Plaintiffs simply cannot

28 establish the required discriminatory intent.

### 2. Mr. Sundar Iyer and Mr. Kompella fail to state a claim for discrimination on the basis of national origin

To establish a claim for discrimination on the basis of national origin, the plaintiff must show that similarly situated individuals of a different national origin were *not* prosecuted, and that the defendant's actions were motivated by a discriminatory purpose. *See Lam*, 868 F. Supp. 2d at 951. As discussed above, Mr. Sundar Iyer has not alleged that he has been treated differently to anyone who is similarly situated on the basis of their national origin. (*See supra* at 17-18; *see also* ECF No. 50 ¶¶ 15-16, 20). Mr. Kompella has complained, in conclusory fashion, that the Department named him in the State Action instead of a non-Indian supervisor. (ECF No. 50 ¶ 18). But even this does not state a claim under the Equal Protection Clause.

Mr. Kompella contends that the Department erred factually in alleging that he required weekly reports from Mr. Narsude when, according to Mr. Kompella, it was Mr. Edwall who did this. (*Id.*) At most, however, this is an allegation that Department's factual allegation in the State Action is wrong. And, even accepting Mr. Kompella's allegation as true for purposes of this motion, he has not alleged that the Department made this factual error based on any discriminatory animus against Mr. Kompella's national origin, nor that he and Mr. Edsall were similarly situated. Thus, Mr. Kompella, like Mr. Iyer, has failed to allege a cognizable equal protection claim based on national origin. Indeed, neither Mr. Iyer nor Mr. Kompella have alleged facts that show Director Kish has acted with discriminatory intent or purpose in any way with regard to their national origin. (*See* ECF No. 50 ¶¶ 128-129). Such a "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Iqbal*, 556 U.S. at 678.

Further, the crux of Mr. Iyer's and Mr. Kompella's claim is a complaint about the Department's charging strategy in *CRD v. Cisco*. But courts are properly hesitant to review such matters that fall within prosecutorial discretion. *See Armstrong*, 517 U.S. at 465 (citing *Wayte*, 470 U.S. at 608 (1985)). For example, in reviewing selective prosecution claims under the Fifth Amendment, courts require criminal defendants to provide clear evidence that a "prosecutorial policy 'had a discriminatory effect and was motivated by a discriminatory purpose.'" *Id.* (quoting

38

*Wayte*, 470 U.S. at 608).  And courts are particularly disinclined to review such matters where, as here, plaintiffs "ask[] a court to exercise judicial power over a 'special province'" of the executive branch.  *Armstrong*, 517 U.S. at 464 (quoting *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)).  Prosecutors enjoy the "presum[ption] that they have properly discharged their official duties," absent "clear evidence to the contrary" because they are acting under constitutional authority.  *Id.* (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)).  And courts are ill-equipped to review prosecutorial charging decisions.  *Id.* at 465 (quoting *Wayte*, 470 U.S. at 607) ("Such factors as the strength of the case, the prosecution's general deterrence value, the [g]overnment's enforcement priorities, and the case's relationship to the [g]overnment's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."); *accord United States v. Bourgeois*, 964 F.2d 935, 939-40 (9th Cir. 1992).  Moreover, examining prosecutorial decisions risks "delay[ing] . . . proceeding[s]," "chill[ing] . . . enforcement," and "undermin[ing] prosecutorial effectiveness."  *Id.*  These policy considerations are equally present here.

    As discussed above, the Department is charged with enforcing California's civil rights laws, including the FEHA, which the Legislature has declared to be "an exercise of the police power of the state for the protection of the welfare, health, and peace of the people of [California]."  Gov't Code § 12920.  Accordingly, courts have acknowledged that, like criminal prosecutors, the Department "'is a public prosecutor testing a public right,' when it pursues civil litigation to enforce statutes within its jurisdiction."  *Law Sch. Admission Council, Inc.*, 941 F. Supp. 2d at 1168 (quoting *State Pers. Bd.*, 39 Cal. 3d at 444).  Thus, even if any of the Plaintiffs could craft plausible equal protection allegations—and they cannot—this matter and the remedy that Plaintiffs seek are not well-suited for judicial review.

    In sum, Plaintiffs have not stated a viable claim for relief under the Equal Protection Clause for discrimination based on religion or national origin, a defect that cannot be reasonably remedied.

**CONCLUSION**

For the reasons discussed above, Defendant Kish respectfully asks that this Court dismiss Plaintiffs' complaint in its entirety and without prejudice pursuant to the *Younger* abstention doctrine or Rule 12(b)(1) or, in the alternative, dismiss Plaintiffs' complaint with prejudice pursuant to Rule 12(b)(6).

Plaintiffs need not be afforded another opportunity to amend their complaint. Plaintiffs were given leave to amend their complaint in August 2023 and failed to cure their pleading deficiencies, demonstrating the futility of any further amendment. *See Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts should dismiss a party's claim without leave to amend where amendment would be futile. *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011); *see also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (Court should deny a party leave to amend when it can allege no "other facts consistent with the challenged pleading" that could "cure the deficiency.").[17]

Dated:  September 10, 2024                    Respectfully submitted,

ROB BONTA
Attorney General of California
MICHAEL NEWMAN
Senior Assistant Attorney General
WILLIAM H. DOWNER
Supervising Deputy Attorney General

/s/ Carly J. Munson

CARLY J. MUNSON
JENNIFER M. SOLIMAN
Deputy Attorneys General
*Attorneys for Director Kevin Kish*

---

[17] Although Plaintiffs' SAC is nearly identical to their FAC, in addition to amending their "Doe" plaintiff allegations as instructed by the Court, Plaintiffs amended their allegations pertaining to Mr. Sundar Iyer to include a statement that Mr. Iyer worked to promote Dalit employees before any complaints of caste-based discrimination arose and that CRD was aware that Mr. Iyer offered a Dalit employee promotions based on merit. (*Compare* ECF Nos. 21 ¶ 15 *with* 50 ¶ 15). Although this arguably exceeded the scope of the Court's August 13, 2024 order (*see* ECF No. 49; *see also* Fed. R. Civ. P. 15(a)(2)), these additions fail to refute any ground for dismissal and therefore underscore that additional opportunities to amend are futile.

40