# Exhibit D

Timothy C. Travelstead, Esq. (SBN 215260)
S.D. Narayan, Esq. (SBN 130964)
Scott C. Ku, Esq. (SBN 314970)
NARAYAN TRAVELSTEAD P.C.
7901 Stoneridge Dr., Suite 230
Pleasanton, CA 94588
Telephone: (650) 403-0150

Attorneys for HINDU AMERICAN FOUNDATION

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 11/6/2023 4:36 PM
Reviewed By: R. Burciaga
Case #20CV372366
Envelope: 13520683**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA, UNLIMITED JURISDICTION

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING, an agency of the State of California,<br><br>Plaintiff,<br><br>vs.<br><br>CISCO SYSTEMS, INC., a California Corporation; SUNDAR IYER, an individual; RAMANA KOMPELLA, an individual.<br><br>Defendants. | Case No. 20CV372366<br><br>**REPLY IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**<br><br>Date: November 16, 2023<br>Time: 9:00 a.m.<br>Dept.: 16<br><br>Date Action Filed: October 16, 2020<br>Trial Date: None |

## I. INTRODUCTION

The California Civil Rights Department (CRD) claims that its Complaint makes only two mentions of Hinduism, and that therefore the Hindu American Foundation (HAF) does not have a sufficient interest to justify intervention in the case. The CRD ignores the fact that *every* aspect of its claims stem from its assertion that the Indian caste system is a "strict Hindu social and religious hierarchy." Its defamatory assertion that Hinduism is the source of the Indian caste system, and that Hindu practices still include a caste system, are the sole motive it offers for the discrimination it claims John Doe suffered at Cisco. The Complaint further *expressly* includes a claim of religious discrimination based on this assertion.

Conspicuously, the CRD does not walk back from any of this in its Opposition. Rather, its deafening silence makes clear that it is pursuing a claim of religious discrimination based on its defamatory belief that Hindus necessarily discriminate based on caste, that Hindus emigrating to the United States imported caste discrimination, and that a strict social and ***religious*** hierarchy requires Hindus to discriminate based on caste. Nothing is further from the truth. Many South Asian Hindus move to the United States to live in a society free from caste and other social dynamics, where they can more readily follow actual Hindu teachings that abhor caste.

Rather, than admit their defamation and disfavor of Hinduism and amend the Complaint to remove the offending allegations, the CRD instead argues HAF has no protectable interest here, based on federal proceedings in HAF's federal case. But the CRD argues from the *superseded* Original Complaint while almost completely ignoring the detailed allegations in the First Amended Complaint that clearly establishes its standing to raise the constitutional issues at the core of this case and that clearly articulates the harm that the CRD has caused to HAF directly and to its members. The CRD is well aware of the First Amended Complaint, but chooses to completely ignore its contents, the fact that numerous individual plaintiffs have joined the action, and that it specifically lays out the real and damaging harm that the CRD's stance has caused. HAF filed it on September 21st, yet other than a simple acknowledgement of this fact, the CRD completely ignored it in the Opposition it filed more than a month later.

As was laid out in its initial motion here, and detailed more in the First Amended Complaint in the federal action, the CRD's willful defamation of Hinduism has caused and continues to cause real harm to HAF, the individual plaintiffs in the federal action, and all HAF

1
**REPLY ISO HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE** (HA-001)

constituents. Where the CRD seeks to take enforcement actions based on a violation of Hindu Californian's constitutional rights, those Californians deserve a seat at the table. And under the California Code of Civil Procedure, they are entitled to one.

## II. DISCUSSION

Contrary to the CRD's hollow assertions in the Opposition, HAF has a concrete and protectable interest justifying *both* mandatory and permissive intervention here. The CRD has chosen to file an enforcement action against Cisco that is legally based on an unconstitutional violation of Hindu Californian's constitutional rights under the Establishment, Equal Protection, Due Process and Equal Protection clauses of the U.S. Constitution. As the First Amended Complaint in the federal action makes clear, those claims are based on the clear and concrete injury suffered by HAF and its constituents, including the former defendants in this action, Sundar Iyer and Ramana Kompella, who have joined that case as individual-named plaintiffs. (See Request for Judicial Notice, Exh. A.) The CRD, not HAF, has chosen to place those constitutional rights at the center of this case, and a judgment in the CRD's favor here would fundamentally impair and impede HAF and its constituents by significantly undermining those rights. Cisco, as the sole remaining defendant, has no religious identity and cannot represent the interests of the Hindu American community in California threatened by the CRD's defamatory and unconstitutional attack on Hinduism. And giving Hindu's the seat at the table that the California Code of Civil Procedure provides them would not enlarge the scope of the case; the CRD established the scope of the case when it chose this unconstitutional and unconscionable attack on Hindu beliefs.

### A. **HAF and Its Constituents' Constitutional Rights Are Sufficient to Support Both Mandatory and Permissive Intervention.**

The CRD argues that HAF has not identified a protected interest and that its interests are not sufficiently direct enough to support intervention. Neither has merit. The Constitutional Rights of Hindu Americans in California is a very substantial interest, and the CRD's decision to attack those rights is very direct, with far-reaching harms to Hindu adherents across the state.

The CRD claims that HAF has not identified a protectable Free Exercise claim because it "does not allege any facts showing that CRD coerced anyone into doing something inimical to their religious convictions or otherwise prevented them from being able to practice their

2
REPLY ISO HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE (HA-001)

religion." (Opp. p. 6:16-19.) The CRD has labeled each and every Hindu practitioner as an inherently discriminatory person, subject to suit by the State of California for violations of the Unruh Civil Rights Act and the Fair Employment and Housing Act (FEHA). Through its claims in this case, it has announced to the world that caste discrimination is a "strict Hindu social and religious hierarchy" that violates California law. Nowhere in their Complaint in this action does the CRD identify any other source for this purported Hindu and Indian caste system. Given the CRD's views, to even identify yourself as a practicing Hindu would be to subject yourself to scrutiny and baseless enforcement actions by the CRD.

Indeed, we have seen those very enforcement actions in this very case. The CRD sued two individual defendants, Sundar Iyer and Ramana Kompella, based merely on the assertion that they are Hindus, and must therefore follow the caste system. The fact that Iyer does not identify as Hindu and does not believe in any form of a caste system was not relevant to the CRD. And the fact that Sundar Iyer had long had a public website clearly stating he was not Hindu and did not believe in caste was not relevant to the CRD. Rather, the CRD labeled simply labeled them as practicing Hindus, assigned them, and any of their colleagues of Indian origin for that matter, "highest" caste status, and subjected them to baseless enforcement actions and the public opprobrium that came with it, based purely on their assertions that Hinduism requires illegal caste discrimination.

The CRD claims HAF does not have a protectable interest here because it is not seeking a broad ruling about Hindu beliefs. (Opp. p. 7: 18-8:10.) It does not seek such a ruling because the CRD's *entire* lawsuit simply presumes its defamatory statements about Hinduism are true, that those defamatory statements render all Hindus as engaging in illegal discrimination as part of their religion, and that such discrimination violates the FEHA. It has taken action against individuals it presumed where Hindu based on this harmful assertion, and all such individuals remain at risk of illegal and unconstitutional enforcement actions by the CRD as a result.

The CRD points to *City and County of San Francisco v. State of California* (2005) 128 Cal.App.4th 1030 to support its position. In fact, it does the exact opposite. That case involved whether an outside group could intervene in cases challenging the legality of Proposition 22, the Voter Initiative passed in 2000 that limited marriage to opposite-sex couples. The Proposition 22 Legal Defense and Education Fund (the Fund) formed after the passage of the initiative and

sought to intervene in the litigation to defend the Proposition. The Court rejected the effort because the Fund had no role in passing the initiative, and its members' rights would not be affected in any way by the outcome of the litigation. The California Supreme Court upheld the trial court's decision to deny intervention because there was no claim that "a ruling about the constitutionality of denying marriage licenses to same-sex couples will impair or invalidate the existing marriages of its members." Central to intervention here, the Court went on to note that the Fund had not "identified any diminution in legal rights, property rights or freedoms that an unfavorable judgment might impose" on its members. In short, the Court noted that "the Fund has not alleged its members will suffer any tangible harm absent intervention." (*City & Cty. of S.F. v. State of Cal.* (2005) 128 Cal. App. 4th 1030, 1038-39.)

Here, HAF has satisfied *both* elements the Supreme Court held in the Proposition 22 case as dispositive. HAF's constituents are directly harmed by this action and the harm is concrete. It is difficult to imagine a more direct and concrete harm than the State of California claiming your fundamental religious beliefs require you to violate California law, especially when the State is willfully misrepresenting the tenants of your own religion to do so. Indeed, the CRD sued two HAF constituents in this very case before they were dismissed, and it *continues* to claim that the religiously motivated actions of those persons are the basis for the suit here.

The CRD cites a string of cases to argue that it "strains credulity to suggest" that a judgment in this case would not affect HAF's constituents any differently than any other member of the public because it is simply an enforcement action against a single company. (Opp. p. 8, 13-17.) The CRD has wrongly claimed that the Indian Caste system is a strict **Hindu** social and religious hierarchy. It submits a disfavorable view of Hinduism through declarations, from individuals who are not Hindu, making numerous false and disparaging statements about Hindus and Hinduism, such as, "Caste is a structure of oppression that affects over 1 billion people across the world. It is a system of religiously codified exclusion that derives from Hindu scripture. At birth, every child inherits his or her ancestor's caste, which determines social status and assigns spiritual purity and their deeds in past lives"; "Brahmins [Hindu priests], who founded India's caste system, are at the top of the caste system and have benefited from centuries of privilege, access, and power because of it"; "Caste Apartheid is the system of religiously codified exclusion that was established in Hindu scripture. Hindu origin myths state that different

people were created from different parts of God Brahma's body and were to be ranked hierarchically according to ritual status, purity, and occupation"; "India's caste system is a complex yet stratified hierarchical order…It emanates from the Hindu alias Brahminical books of rule that have provided certain qualifiers—such as one's ancestry— to ascribe caste status and religion"; and "Religion is another significant factor in deciding one's caste status because it provides the origin of caste values. In India's Hindu-based caste system to which the Complainant belongs, the ancient Hindu texts… amplify the distinction of humans based on their qualities of hierarchy"; "caste and untouchability are constructions of Hinduism".

The CRD also extensively quotes a survey, "Caste in the United States: A Survey of Caste Among South Asian Americans," in multiple court venues and motions (including appeals court), whose cover includes its disfavorable view of Hindus, "If Hindus migrate to other regions on earth, Caste would become a world problem."  The CRD further submits declarations with book chapters that compare Hinduism disfavorably with other religions —  "Jainism broke away from Hinduism's structure of caste", and Sikhism, "founded the Sikh faith … distinct from Hinduism, that believed in the life-long striving for social justice … , abolished caste inequality. The CRD has demonstrated a disparaging view of Hinduism and claimed that Hindus uniquely engage in illegal caste discrimination, therefore this case uniquely affects Hindus in a way it cannot affect any other members of the general public.  And now, the CRD is trying to deny those very Hindus the right to correct that defamatory assertion in this Court.

The CRD's entire argument rests on the federal court's decision to grant the CRD's Motion to Dismiss with leave to amend in order for HAF to provide the additional detail the Court requested.  The Federal Court sought additional allegations about how the CRD's actions have harmed HAF and its constituents, and HAF has provided that information in the First Amended Complaint.  Additional individual plaintiffs have further joined the action, including the former individual defendants here – Sundar Iyer and Ramana Kompella.  The First Amended Complaint makes clear, the CRD's actions have directly violated HAF and its constituents' rights under the U.S. Constitution, including its Establishment and Free Exercise rights under the First Amendment and its Due Process and Equal Protection rights under the Fourteenth Amendment.

The CRD relies on *Sabra v. Maricopa County Community College District* (9th Cir. 2022) 44 F.4th 867, to argue that HAF is simply complaining about the "chilling effect" of its

actions. HAF is making no such argument. Rather, it is seeking to vindicate its establishment, free exercise, due process and equal protection rights from direct assault by the State of California. But even if it were, *Sabra* is inappropriate in any case, for two reasons. First, that case involved whether or not students are required to provide answers on exam questions that conflict with their religious beliefs. It did *not* involve the State of California declaring the religion's adherents to be inherently discriminatory in violation of the Fair Employment and Housing Act. It also did not involve the State of California actually *suing* two individuals based on that defamatory declaration.

Second, the Free Exercise rights at issue in *Sabra* arose only in the context of qualified immunity. Qualified immunity shields public employees from liability where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (*Sabra, supra,* 44 F.4th at 886.) Because of this, the divided *Sabra* court determined that the question had no clearly established answer under the law, qualified immunity applied; it did not need to determine whether, conclusively, being required to answer quiz questions violates the Free Exercise or Establishment Clauses.

But again, the issues here are entirely different than in *Sabra*. Here, the question is not over quizzes, but whether the CRD can subject Mr. Iyer and Mr. Kompella, as well other South Asians who actually consider themselves practicing Hindus, to legal enforcement actions over its wrongful belief that Hindu religious teachings are inherently discriminatory, forcing Hindus into a proverbial closet to avoid subjecting them to enforcement actions and public scorn.

The CRD's position amounts to this - it is free to attack Hinduism and subject Hindus, and those perceived to be Hindu, to the legal and social opprobrium that those attacks entail, and no one can stop it unless and until they actually target you. And when those targets fight back, the CRD can simply dismiss them from the litigation to avoid being held to account for its conduct, as it did with Sundar Iyer and Ramana Kompella. That is not the law. The CRD's unconstitutional attack on the rights of Hindus across the state is a sufficient interest under law, and the Code of Civil Procedure's mandatory and permissive intervention statutes give HAF and its members a seat at the table in this litigation where those rights are under attack.[1]

---

[1] In a footnote, the CRD notes that HAF cannot base an action against the CRD under the Unruh Civil Rights Act because that Act only applies to government entities when they act in a business

**B.     HAF And Its Members Interests Are Directly Implicated By The CRD's Unconstitutional and Defamatory Attack on Hinduism.**

The CRD argues that HAF does not have interests sufficiently related to the subject matter of the lawsuit[2], but makes no attempt to address the actual legal standards that guide this analysis.  "Consistent with the approach courts take to construction of the statute generally, the standard is a practical one, requiring that we look to whether 'the intervener will either gain or lose by the direct legal operation and effect of the judgment.'" (*Accurso v. In-N-Out Burgers* (2023) 94 Cal.App.5th 1128, 1137, citing *Jersey Maid Milk Products Co. v. Brock* (1939) 13 Cal.2d 661, 663 and *Elliott v. Superior Court* (1914) 168 Cal. 727, 734.)  Under this practical test, consistent with federal law, a prospective intervening party has a protectable interest where "[a] judicial decision … would 'as a practical matter 'foreclose the would-be intervenor's interest." (*SEC v. Navin* (N.D. Cal. 1995) 166 F.R.D. 435, 440; citing *Sierra Club v. United States EPA* (9th Cir. 1993) 995 F.2d 1478, 1486; *SEC v. Flight Transportation Corp*. (8th Cir. 1983) 699 F.2d 943, 948.)

As a practical matter, the CRD's claims against Cisco foreclose fundamental constitutional rights of Hindu Americans.  They declare them to inherently engage in illegal conduct and necessarily engage in abhorrent discrimination based on caste, and they subject them to enforcement actions by the CRD based on this defamatory view of Hindu teachings.  Indeed, Mr. Iyer and Mr. Kompella already suffered that very fate.  The CRD's Complaint identifies Hinduism as the sole source of an oppressive caste system, "a religious hierarchy," and therefore the sole source of the wrongful conduct in this case.  Short of actually seeking a court order declaring Hindu beliefs to be illegal under the FEHA, it is hard to imagine a case where the practical effect of the CRD's actions would be more profound.  All the more galling as the CRD

---

capacity.  (Opp. p. 7, fn. 7.)  That is the entire point of HAF's intervention.  The CRD, as the agency charged with enforcing the Unruh Civil Rights Act, claims that it does not have to follow the principles of that Act when it does so.  It is arguing that it is free to engage in discriminatory enforcement actions based on a wrong and defamatory claim about Hindu beliefs because the very act it seeks to enforce does not apply to it.
     That is precisely why intervention is critical here.  HAF and its members cannot sue the CRD under the Unruh Civil Rights Act to stop its religious discrimination against Hindus, because the Act cannot be enforced against the CRD.  It remains free, under the statute, to engage in the very conduct it is charged to prevent.  HAF does not believe the CRD has accurately stated the law in the context of this case, but nonetheless, regardless of the scope of the Unruh Civil Rights Act, the CRD is not free to violate the U.S. Constitution.

[2] The Opposition cites to Code of Civil Procedure 387 subd. (a)(1)(B).  The language it quotes actually comes from Section 387 subd. (d)(1)(B).

willfully misrepresents Hindu teachings that directly oppose caste discrimination.

That the CRD's claims to the contrary are disingenuous is clear from their opposition. Not only do they claim that the Unruh Civil Rights Act does not apply to them, and that they therefore remain free to engage in discriminatory enforcement actions against Hindus, but they further claim that "CRD does not allege that Hindu religious teachings and practices…require anyone to discriminate in this manner." (Opp. p. 10:23-25.) Their own complaint is entirely based on exactly the opposite of that sentence. The Complaint identifies only a single source for the Indian caste system, Hinduism. It claims that it is a "strict social and religious hierarchy" and that Cisco's managers acted to discriminate against the Plaintiff based on their association with that strict social and religious hierarchy.

### C. Judgment for the CRD Would Significantly Impair and Impede HAF and Its Members' Interest By Denying Them Their Constitutional Rights, Subjecting Them to Unconstitutional Attacks by the CRD, and Giving Them No Outlet to Fight the CRD's Defamatory Stance on Hinduism.

The CRD claims that a judgment in this case will not impair or impede HAF or its members because it will be limited to a judgment about whether Cisco violated Plaintiff's FEHA rights. But that judgment would necessarily impair all Hindus' religious rights under the constitution because of the legal arguments on which it would be based. The Complaint identifies only one motive for the allegedly wrongful conduct, caste-based discrimination against the Plaintiff by Cisco managers Iyer and Kompella. It identifies only one source of the caste system, a strict Hindu social and "religious hierarchy" that requires that discrimination.

The inescapable conclusion that must be drawn from any judgment against Cisco is that Mr. Iyer and Mr. Kompella followed the strict Hindu social and religious hierarchy to wrongfully discriminate against Plaintiff, a conclusion made all the more damaging because it is connected directly to the CRD's fundamental misrepresentation of actual Hindu teachings. Which, according to the CRD, is the source of the Indian caste system. And what would be the natural result of such a judgment? Employers would have to avoid hiring Hindus because a California judgment exists premised on the fact that caste discrimination is prohibited by the FEHA, and Hinduism requires caste discrimination. But in avoiding Hindu employees because the CRD says they inherently must follow the strict Hindu social and religious hierarchy, would require employers to engage in religious discrimination. Employers would face a truly impossible

choice. Hire Hindus and face enforcement actions by the CRD for caste discrimination, or don't hire Hindus and face lawsuits for religious discrimination.

But a judgment for the CRD in this case would actually set up a defense to permit employers to engage in wholesale discrimination against Hindus. Because the CRD's complaint, coupled with a judgment, would establish, as a legal principle, that caste discrimination is both an inherent part of Hindu teachings and that caste discrimination is implicitly barred by the Fair Employment and Housing Act, employers could freely discriminate against Hindus. Employers' duty to accommodate religious practices does not include any practice that violates the FEHA. Since Hindu teachings require the very caste discrimination that the FEHA prohibits, employers arguably would have a free pass to discriminate against Hindus, an outcome that, we hope we can all agree, is the exact opposite of what everyone in this litigation intends.

### D. Cisco As A Publicly Listed, For-Profit Corporation, Is Not Hindu and Cannot Represent the Interests of Hindus Living in California

The CRD argues, almost in passing, that HAF's interests are somehow represented by the parties to the case. They are not. The CRD is attempting to defame all Hindu Americans by associating them with the caste system that Hindu teachings abhor. And Cisco is a public company without any religious affiliation or beliefs. CRD argues that Cisco has an interest in preventing the CRD from defining Hinduism. It does not. Its only interest in the case is to show its employment actions did not violate the Fair Employment and Housing Act. It could not and has not raised the religious rights of Hindu Americans at any point in the case to date.

Indeed, Cisco lacks the proper standing to do so. It is a public for-profit company with no religious affiliation or belief. It cannot assert the Establishment, Free Exercise, Due Process and Equal Protection rights of Hindu Americans because it is not Hindu and is not organized to represent the interests of Hindu American members. As a for-profit company faced with civil litigation, its only interest is to resolve the matter in the best economic and commercial interests of Cisco and its shareholders.

### E. Intervention Does Not Expand Scope of this Case Because CRD Chose to Launch an Unconstitutional Attack on Hinduism, Rather Than Focus on Caste Discrimination.

Finally, the CRD makes only one argument against permissive intervention here, that

including HAF in the case would expand the scope of the litigation.[3]  On the contrary, the HAF's intervention addresses only issues squarely raised by the CRD's Complaint.  It was the CRD that wrongfully identified Hinduism as the sole source of the Indian caste system in its Complaint, and it was the CRD that brought a religious discrimination claim based on that assertion.  It is the CRD that decided to sue individual defendants based on the willful mischaracterization of their Hindu beliefs, only to be forced to dismiss them from the action.  And it is the CRD's unconstitutional conduct that it has placed at the center of this case, actions that could have widespread, unintended consequences if not addressed.

The CRD has filed this action publicly blaming Hindu teachings for caste discrimination.  The Hindu Americans who object to that rank defamation, and who have consistently followed actual Hindu teachings and raised their voices against the colonial-era construct that is the caste system have a right to a seat at the table.  The CRD tries to avoid this reality by claiming that allowing intervention here would "open the floodgates of intervention for all government enforcement actions."  (Opp. p. 14:19-20.)  It would only do so where enforcement actions themselves violate the constitutional rights of the citizens.  And where intervention is, as it is here, the only way to stop the government from engaging in unconstitutional enforcement actions, the Code of Civil Procedure has already opened the floodgates.

But the CRD has the power to close those floodgates here any time it chooses.  If the CRD believes, as it seems to imply in its Opposition, that it no longer believes that the Indian caste system is a strict Hindu social and religious hierarchy, it can say so by amending the Complaint in this action to remove all references to Hinduism and religion.  The CRD could file an amended complaint that focuses on the wrong it claims to be fighting, caste discrimination, rather than attack a natural ally in that fight, Hindu Americans.  But until it does so, it is the CRD that established the scope of this litigation, a scope which clearly jeopardizes the rights of Hindu Americans throughout California.  And Hindu Americans are entitled to a seat at the table where government enforcement actions are premised on a violation of their constitutional rights.

---

[3] The CRD's Opposition actually phrases its argument by saying that courts deny permissive intervention where "the reasons for intervention outweigh opposition by the parties."  We agree the reasons for HAF to be permitted to intervene outweigh opposition by the CRD, but the CRD likely meant that the reasons for intervention are *outweighed by* opposition by the parties."

Dated:  November 6, 2023            NARAYAN TRAVELSTEAD P.C.

_____
Timothy C. Travelstead
S.D. Narayan
Scott C. Ku
Attorneys for HINDU AMERICAN FOUNDATION

**PROOF OF SERVICE BY EMAIL, MAIL AND/OR HAND DELIVERY**
**STATE OF CALIFORNIA, COUNTY OF ALAMEDA**

I am a resident of the United States and employed in the aforesaid county; I am over the age of eighteen years and not a party to the within entitled action; my business address is 7901 Stoneridge Drive, Suite 230, Pleasanton, California:

*Case Name:*   *CA DFEH v. Cisco Systems, Inc., et al.*
Case Number:   20CV372366
Our File No.:   HA-001

On **November 6, 2023**, I served the within:

- **REPLY IN SUPPORT OF HINDU AMERICAN FOUNDATION'S MOTION FOR LEAVE TO INTERVENE**

on the interested parties to said action at the address(es) stated below.

| | |
|---|---|
| Jamie Crook, Esq.<br>Rumie Vuong, Esq.<br>Roya Massoumi, Esq.<br>Dylan Colbert, Esq.<br>Mackenzie Anderson, Esq.<br>California Civil Rights Department<br>2218 Kausen Drive, #100<br>Elk Grove, CA 95758<br>*Tel: (916) 478-7251*<br>*Fax: (888) 382-5293*<br>*[Counsel for Plaintiff DFEH]* | Lynne C. Hermle, Esq.<br>Joseph C. Liburt, Esq.<br>Nicholas J. Horton<br>Orrick, Herrington & Sutcliffe LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025-1015<br>*Tel: (650) 614-7400*<br>*Fax: (650) 614-7401*<br>*(Counsel for Defendant Cisco Systems, Inc.)* |

**[XX] BY EMAIL:** By electronically transmitting the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list from the email address m.mallam@narayantravelstead.com. To my knowledge, the transmission was reported as complete and without error. Service by email was made **[XX]** pursuant to Emergency Rule 12 & CCP section 1010.6; [ ] pursuant to agreement of the parties, confirmed in writing, [ ] as an additional method of service or as a courtesy to the parties, or [ ] pursuant to Court Order:

Jamie Crook, Esq. – Email: *Jamie.Crook@calcivilrights.ca.gov*
Rumie Vuong, Esq. – Email: *rumduol.vuong@calcivilrights.ca.gov*
Roya Massoumi, Esq. – Email: *Roya.Massoumi@CalCivilRights.ca.gov*
Dylan Colbert, Esq. – Email: *Dylan.colbert@calcivilrights.ca.gov*
Mackenzie Anderson, Esq. - *Mackenzie.Anderson@calcivilrights.ca.gov*
Step Newton, Legal Analyst – Email: *step.newton@calcivilrights.ca.gov*
Salina Powell – Email: *salina.powell@calcivilrights.ca.gov*
Lynne C. Hermle, Esq. – Email: *lchermle@orrick.com*
Joseph C. Liburt, Esq. – Email: *jliburt@orrick.com*
Nicholas J. Horton, Esq. – Email: *nhorton@orrick.com*
Karen Vasquez – Email: *kvasquez@orrick.com*
Helena Bursik – Email: *hbursik@orrick.com*
Tina McBride – Email: *tmcbride@orrick.com*

**[X] STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **November 6, 2023**, at Pleasanton, California.

By_____