Timothy C. Travelstead, Esq. (SBN 215260)
*t.travelstead@narayantravelstead.com*
Scott C. Ku, Esq. (SBN 314970)
*s.ku@narayantravelstead.com*
NARAYAN TRAVELSTEAD P.C.
7901 Stoneridge Drive, Suite 230
Pleasanton, CA 94588
Telephone: (650) 403-0150

Attorneys for Plaintiffs
HINDU AMERICAN FOUNDATION;
SAMIR KALRA; MIHIR MEGHANI;
SANGEETHA SHANKAR; DILIP AMIN; SUNDAR IYER;
RAMANA KOMPELLA; SHAISHAV DESAI; AND SRIVATS IYER

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDU AMERICAN FOUNDATION, INC., a Florida Not For Profit Corporation; Samir Kalra; Mihir Meghani; Sangeetha Shankar; Dilip Amin, Sundar Iyer, Ramana Kompella; Shaishav Desai; and Srivats Iyer as individuals;<br><br>Plaintiffs,<br><br>vs.<br><br>KEVIN KISH, an individual, in his official capacity as Director of the California Civil Rights Department; and DOES 1 - 50, inclusive,<br><br>Defendants. | Case No. 2-22-CV-01656-DAD-JDP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**<br><br>Date:    December 3, 2024<br>Time:    1:30 p.m.<br>Judge:   Hon. Dale A. Drodz<br><br>Date Action Filed:    September 20, 2022<br>SAC Filed:    August 27, 2024 |

## <u>TABLE OF CONTENTS</u>

**I.    INTRODUCTION** ................................................................................................ **1**

**II.   PROCEDURAL HISTORY** ................................................................................. **3**

**III.  DISCUSSION** ..................................................................................................... **4**

    **A.   The *Younger* Abstention Doctrine Does Not Apply Because There Is No Criminal or State Civil Enforcement Proceeding Involving the State Parties as Needed to Qualify for *Younger* Abstention** ................................................................ **4**

    **B.   Individual Plaintiffs Have Direct Standing To Bring These Claims.** ....................... **8**

    **C.   The Hindu American Foundation Has Direct and Associational Standing To Bring These Claims.** ................................................................................. **11**

        1.   The Hindu American Foundation Has Direct Standing to Bring First and Fourteenth Amendment Claims Based On Its Own Injury. ............................... 13

        2.   The Hindu American Foundation Has Associational Standing to Bring First and Fourteenth Amendment Claims Based Injury to Its Members .............................. 15

    **D.   Mr. Iyer and Mr. Kompella Claims Under The Equal Protection and Due Process Clauses Are Not Moot** ................................................................. **17**

    **E.   Plaintiffs' SAC States Sufficient Claims for Relief** ................................................. **18**

**IV.  CONCLUSION** ................................................................................................ **20**

- i -

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION**
**TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**          Case No. 2-22-CV-01656-DAD-JDP

1
2

## **<u>TABLE OF AUTHORITIES</u>**

3

**<u>Cases</u>**

4

*Allison v. California Adult Authority*, 419 F. 2d 822 (9th Cir. 1969) ........................................... 19

5

*Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021).......................................... 12, 15

6

*AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143 (9th Cir. 2007) ......................................... 5, 6

7

*Applied Underwriters, Inc. v. Lara,* 37 F.4th 579 (2022).......................................................... 4, 5

8

*Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018)...................................................................... 8

9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 19

*Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557 (1987) ............................................... 18

10

*Balderas v. Countrywide Bank N.A.*, 664 F. 3d 787 (9th Cir. 2011) ......................................... 19

11

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 19

12

*Benavidez v. Eu*, 34 F.3d 825 (9th Cir. 1994).............................................................................. 7

13

*Betschart v. Oregon*, 103 F.4th 607 (9th Cir. 2024) ................................................................... 8

14

*Catholic League for Religious & Civ. Rights v. City & County of San Francisco,* 624 F.3d 1043
   (9th Cir. 2009)............................................................................................ 8, 9, 12, 14

15

*Cent. Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002) ................................ 16

16

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) ................................................................... 19

17

*Conley v. Gibson*, 355 U.S. 41 (1957) ....................................................................................... 18

18

*Epos Tech. v. Pegasus Tech,* 636 F. Supp.2d 57 (D.D.C. 2009) ................................................ 19

19

*Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160 (CD Cal. 2002) ..................................................... 18

20

*Gilligan v. Jamco Development Corp.*, F. 3d 246 (9th Cir. 1997).............................................. 18

21

*Guerrero v. Gates*, 357 F. 3d 911 (9th Cir. 2004) ..................................................................... 18

22

*Hunt v.Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) .............................................. 12

23

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ....................................................... 8, 13, 14

24

*Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423 (1982) ................ 5

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ........................................ 20

*Nami v. Fauver*, 82 F. 3d 63 (3rd Cir. 1996) ........................................ 19

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989).......................... 5

*Nielsen v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (CD Cal. 2003) ........................ 18

*Ohio Civil Rights Comm'n, Inc. v. Dayton Christian Schools, Inc.,* 477 U.S. 619 (1986) ............ 7

*Or. Advoc. Ctr. v. Mink, 322 F.3d 1101 (9th Cir. 2003)* ........................................ 15, 16

*Peterson v. Grisham*, 594 F. 3d 723 (10th Cir. 2010) ........................................ 19

*Potrero Hills Landfill, Inc. v. Cty. of Solano,* 657 F.3d 876 (9th Cir. 2011)..................... 6

*Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).................................................. 19

*Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584 (2013) ........................................ 4, 5

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).............................................. 18

*United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544 (1996)......... 16

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ................................... 12

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S.
464  (1982)................................................................................ 8, 13, 14

*Vasquez v. Los Angeles Cnty*, 487 F.3d 1246 (9th Cir. 2007) ................................... 8, 14

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (1977)*...................... 15

*Younger v. Harris,* 401 U.S. 37 (1971)......................................................... 4


**<u>Statutes</u>**

42 U.S.C. § 1983............................................................................... 20

Fed. Rules of Civil Procedure 12............................................................... 19

Fed. Rules of Civil Procedure, Rule 8 ......................................................... 18

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION**          Case No. 2-22-CV-01656-DAD-JDP
**TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**

## I.     <u>INTRODUCTION</u>

It is undisputed here that the California Civil Rights Department filed a civil action in Santa Clara County Superior Court claiming that the caste system constituted "a strict Hindu social and religious hierarchy" and that this caste system requires illegal discrimination.  It is undisputed that Individual Plaintiffs Sundar Iyer and Ramana Kompella continue to be identified in the Cisco action as engaging in illegal discrimination, even after the CRD dismissed them from the action, preventing them from defending themselves against these allegations in the State Court.  It is undisputed that the currently active complaint in the Cisco action continues to claim Mr. Iyer and Mr. Kompella are practicing high-caste Hindus, when the CRD knew neither identified as religious Hindus and neither believed in or identified as a member of any caste.  It is undisputed that the currently operative complaint asserts a cause of action for religious discrimination in violation of the Fair Employment and Housing Act based on the actions they allege Mr. Iyer and Mr. Kompella took based on their wrongly ascribed Hindu and caste affiliation, again after dismissing both of them as defendants, preventing them from defending themselves from the allegations.

All this shows that Defendant's current Motion to Dismiss is yet another unconscionable attempt by a "Civil Rights Agency" to deny Plaintiffs their civil rights and deny them and other Hindu Americans from being heard on the merits of this case.  Reading his description of the enforcement action the California Civil Rights Department ("CRD") filed in Santa Clara County Superior Court (Case No. 20-CV-372366, the "State Action"), you would be hard-pressed to believe the case had any connection to religion.  It characterizes its efforts as a normal part of its mandate to "safeguard the right and opportunity of all persons to seek…employment without discrimination or abridgement on account of race, religious creed" or any of the other categories listed in the Fair Employment and Housing Act ("FEHA").

But it is exactly the opposite.  It is a patent attempt by the CRD to malign an entire religious community with a malignant falsehood that Hinduism believes and even requires caste discrimination, and to declare the Hindu faith and all practicing Hindu Americans as inherently discriminatory.  The State Action engages in the very discrimination the CRD is charged with preventing, discrimination based on religious creed.  Worse, it engages in that

- 1 -

discrimination based on a wrong and misguided fallacy about Hinduism, thereby promoting the very misinformation that leads to anti-Hindu discrimination in society generally. Defendant's Motion suggests that the CRD has filed a cause of action for caste discrimination against Cisco. But it has not. Rather, it has brought a claim for discrimination and harassment "on the Basis of Religion, Ancestry, National Origin/Ethnicity, and Race/Color" on behalf of a single individual, Mr. Chetan Narsude.

And that is the crux of the entire case. The CRD included a claim that caste discrimination was a form of religious discrimination based on its wrongheaded contention that caste is "a strict Hindu social and religious hierarchy," that the individual defendants and other employees of Indian origin "imported the discriminatory system's practices into their team and Cisco's workplace," and that Cisco was liable for caste-based discrimination because it "failed to recognize casteism as a form of unlawful religion-, ancestry-, national-origin/ethnicity- and recognize casteism as a form of unlawful religion-, ancestry-, national-origin/ethnicity- and race/color-based discrimination." (See, Civil Rights – Second Amended Complaint ("Complaint").)

The Hindu American Foundation ("HAF") has not filed this action to decide whether or not caste discrimination, properly understood as having nothing to do with Hindu religious teachings, is or is not prohibited by FEHA. HAF does not claim that FEHA is unconstitutional on its face, and has not filed this action to determine whether or not applying it to prohibit caste discrimination is unconstitutional, but it *does* contest that the CRD's enforcement position, as revealed in the State Action, is an unconstitutional application of FEHA to the extent it relies on the wrong and defamatory assertion that Hindu religious beliefs require adherence to a "strict social and religious hierarchy" and that, therefore, caste discrimination is religious discrimination based on a misrepresentation of Hindu beliefs.

HAF objects to the CRD's gross mischaracterization of Hinduism as requiring caste discrimination, and very much objects to adopting enforcement positions based on this gross and unconstitutional misrepresentation that perpetuates damaging stereotypes about Hindu teachings. HAF objects to the CRD's enforcement position as a violation of its Free Exercise, Due Process, and Equal Protection rights under the First and Fourteenth Amendments to the U.S. Constitution.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**          Case No. 2-22-CV-01656-DAD-JDP

HAF has actively defended the rights of Hindu Americans throughout the country, is directly harmed by the CRD's unconstitutional actions, and has standing to assert those claims under its Second Amended Complaint ("SAC") completely and accurately states those claims, and Defendant's attempts to avoid that reality by simply ignoring the clear and concise statement of those claims in the SAC is without merit.

HAF has both direct and associational standing to assert these claims and has included all the allegations to establish its claims here.  It, therefore, respectfully asks the Court to deny the Motion and order Defendant to respond to these claims rather than trying to avoid answering for its unconstitutional conduct through meritless jurisdictional arguments.

## II.     PROCEDURAL HISTORY

In October 2020, the California Civil Rights Department ("CRD") initiated an action in state court on behalf of Mr. Narsude against his employer Cisco Systems, Inc. ("Cisco") and two of its supervisors, now-Plaintiffs Sundar Iyer and Ramana Kompella.  The CRD's state court action alleges that Mr. Narsude has suffered discrimination, harassment, and retaliation based on his Dalit caste, in violation of the FEHA's prohibition against discrimination and harassment based on national origin/ethnicity, ancestry, race/color, and religion (referred to herein as the "State Action" or "*CRD v. Cisco*").

Subsequently, HAF filed this federal action against the Department's Director, Kevin Kish, under section 1983 of Title 42 of the United States Code ("Section 1983"), alleging that the CRD's efforts to remedy caste- based discrimination at Cisco violate the United States Constitution's Free Exercise Clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment by linking the practice of caste discrimination to Hinduism.  Through this suit, HAF seeks to have this Court declare the CRD's state suit against Cisco unconstitutional and enjoin the CRD from pursuing certain types of future employment discrimination actions.

After Defendant filed and the Court granted a motion to dismiss HAF's original complaint, on September 21, 2023, HAF filed its First Amended Complaint ("FAC"), adding nine new individual plaintiffs (collectively the "Individual Plaintiffs")—including three unnamed

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**          Case No. 2-22-CV-01656-DAD-JDP

"Doe" plaintiffs and two new claims under the United States Constitution's Establishment Clause of the First Amendment and Equal Protection Clause of the Fourteenth Amendment.

Defendant filed a motion to dismiss HAF's First Amended Complaint, and opposed the Doe plaintiffs' motion to proceed under pseudonym.  The Court ordered that the Doe plaintiffs could not proceed under pseudonym and that Plaintiffs file a Second Amended Complaint ("SAC"), thereby mooting Defendant's motion to dismiss.

Plaintiffs filed its Second Amended Complaint on August 27, 2024.  Defendant has now filed a motion to dismiss the SAC.  Defendant asserts several bases for its motion to dismiss, including the abstention doctrine under *Younger v. Harris,* 401 U.S. 37, 41 (1971), that HAF lacks standing to pursue the SAC, and that the SAC fails to state claims for which relief can be granted.

## III.   DISCUSSION

### A.   The *Younger* Abstention Doctrine Does Not Apply Because There Is No Criminal or State Civil Enforcement Proceeding Involving the State Parties as Needed to Qualify for *Younger* Abstention

Defendant argues this Court should refrain from hearing this case because there is an on–going state proceeding akin to a criminal proceeding that implicates important state interests and provides Plaintiffs with an appropriate forum to raise their constitutional rights claims.  The *Younger* Abstention Doctrine does not apply because its requirements are met.  There is no state *criminal* proceeding, none of the Plaintiffs here are parties to the State Action, the State Action seeks relief for a single individual, not a broad State interest, and none of the Plaintiffs here are able to litigation their claims in the State action.  Therefore, *Younger* abstention is simply not applicable here.

The Supreme Court has held there is a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances."  *Younger v. Harris,* 401 U.S. 37, 41 (1971).  In "exceptional circumstances," the *Younger* abstention doctrine instructs federal courts to decline to hear a case when a parallel state criminal proceeding is ongoing.  *Applied Underwriters, Inc. v. Lara,* 37 F.4th 579, 588 (2022); see also *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013).

But, *Younger* abstention is not justified simply because there happens to be parallel state and federal proceedings; a federal court's obligation to hear and decide a case is still "virtually unflagging." *Id*. at 590–91.  It is only proper for a federal court to abstain from that "unflagging" obligation when three elements are met: (1) there must be ongoing state criminal or state civil enforcement proceeding; (2) the proceedings must implicate important state interests; and (3) the federal plaintiff must be able to litigate its federal claims in the state proceedings.  *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 433 (1982).

Each of these elements must be satisfied to justify abstention; that is, abstention cannot be based on "weighing" or "balancing" these elements. *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007).  It is also vital that the policies behind the *Younger* doctrine be implicated by the actions requested of the federal court.  *Id*. at 1149.  Put another way, if the three *Younger* elements set out in *Middlesex* are satisfied, "the court does not automatically abstain, but abstains only if there is a *Younger*–based reason to abstain—i.e., if the court's action would enjoin, or have the practical effect of enjoining, ongoing state court proceedings." *Id.*

The first requirement for *Younger* abstention is that there must be parallel state proceeding akin to a criminal trial or state civil enforcement action.  There is nothing akin to a criminal matter or state civil enforcement action here.  Rather, the CRD is simply acting as the attorney for the plaintiff in the State Action, bringing claims he could raise himself through a private attorney with no involvement from the State at all.  It seeks remedies only between the parties, remedies that again the Plaintiff himself could obtain without any involvement from the State.  *Younger* abstention simply does not apply where the state proceeding is "to settle a civil dispute between two private parties." *Sprint Communs., Inc. v. Jacobs,* 571 U.S. 69, 80 (2013).

Moreover, "the hallmark of the civil enforcement proceeding category for *Younger* purposes" is when a defendant in the state action initiates the federal action to challenge the state action.  *Applied Underwriters, Inc. v. Lara,* 37 F.4th 579, 588 (2022).  Had Cisco initiated this federal action, *Younger* abstention may apply.  It did not, and there is no "parallel action" here because none of the Plaintiffs here are a part of the State Action.

The CRD tries to avoid that reality by pointing to *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989).  That case involved Louisiana's police powers to set utility rates, not civil litigation, and the U.S. Supreme Court ultimately ruled that *Younger*

abstention did not apply to that circumstance because rate setting matters are not judicial or quasi-judicial in nature.  Indeed, the Supreme Court in that very case noted the critical role that federal courts continue to play despite ongoing state actions.  "But there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts."  *Id.* at 373.  The pendency of the State Action, a mere civil case that the plaintiff in the State Action could have brought himself, and where none of the parties to this action are parties in the State Action, in no way implicates the concerns of *Younger* abstention.

Were the Court to abstain from hearing any matter concerning the constitutionality of a state law, policy or action, federal court jurisdiction would be restricted in a profound way.  Thus, the fact that the instant action involves a state policy does not by itself usher this case under the umbrella of *Younger* abstention.

The CRD's arguments on the other aspects of *Younger* abstention fair no better.  The CRD claims that preventing discrimination is an "important state interest."  Putting aside the observation that the CRD's malignant mischaracterization of Hinduism is the very discriminatory behavior it is supposed to prevent, acting as a private party's attorney in a civil dispute between two private entities is not sufficient.

When assessing the importance of a state's asserted interest, courts are to consider "its significance broadly, rather than by focusing on the state's interest in the resolution of an individual case."  *AmerisourceBergen*, 495 F.3d at 1150.  "The key to determining whether comity concerns are implicated in an ongoing state proceeding—and thus whether the second *Younger* requirement is met—is to ask whether federal court adjudication would interfere with the state's ability to carry out its basic executive, judicial, or legislative functions.  Unless interests 'vital to the operation of state government' are at stake, federal district courts must fulfill their 'unflagging obligation' to exercise the jurisdiction given them."  *Potrero Hills Landfill, Inc. v. Cty. of Solano,* 657 F.3d 876, 883 (9th Cir. 2011).

Relief preventing the CRD and the State of California from violating the religious, equal protection, and due process rights of Hindu Americans in no way interferes with a state's ability to carry out its judicial, legislative, or executive functions.  The U.S. Constitution, through the 14th Amendment, expressly prevents state governments from having any legitimate function that would violate these rights.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**                    Case No. 2-22-CV-01656-DAD-JDP

The CRD cannot establish the third prong of *Younger* abstention either, Plaintiffs have *not* had a full and fair opportunity to litigate their federal claims during the ongoing state proceedings. *Benavidez v. Eu*, 34 F.3d 825, 831 (9th Cir. 1994) (citing *Ohio Civil Rights Comm'n, Inc. v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 627 (1986). When individual Plaintiffs Sundar Iyer and Ramana Kompella raised the issue and sought for sanctions against the CRD, the CRD quickly withdrew their claims and dismissed them from the case. And the state court further declined HAF's attempt to intervene. Thus, Defendant has not met the burden of showing that the federal claims in this action can be litigated in the specific state court proceeding. And none of the other Individual Plaintiffs in this case have ever been a party to or had the opportunity to vindicate their rights in state court. To hold that Plaintiffs can only vindicate their rights by attempting to intervene in every state court action filed by the CRD based on its unconstitutional theory would require Plaintiffs to continually chase shadows, and would forever deny Plaintiffs the federal forum that Congress passed the Civil Rights Act expressly to provide.

The CRD then goes on to argue abstention should be granted here because this matter would enjoin the State Action. It would not. Plaintiffs are not seeking an injunction against the State Action, and are in no way arguing whether or not caste discrimination is or is not prohibited under FEHA. Nor are Plaintiffs arguing whether or not Cisco is liable for illegal discrimination.

On the contrary, Plaintiffs here argue something that is expressly not raised and not part of the State Action, the constitutional rights of Hindu Americans to be free of government oppression, mischaracterization, and state action in violation of their federal constitutional rights. As a public corporation with no religious affiliation, Cisco does not and cannot have a stake in that dispute, and its defense against the State Action claims cannot and will not address those rights.

And an injunction against the CRD violating Hindu American's constitutional rights in no way interferes or prevents the CRD from pursuing the State Action. The CRD claims Cisco discriminated based on caste, and that caste discrimination is a protected activity under FEHA. Nothing in this case would prevent them from asserting those claims; they would simply be required to pursue them in ways constituent with the U.S. Constitution.

Finally, even where the *Younger* factors are satisfied, 'federal courts do not invoke it if there is some extraordinary circumstance that would make abstention inappropriate. *Betschart v. Oregon*, 103 F.4th 607, 618 (9th Cir. 2024). The extraordinary circumstances exception constitutes an independent basis for federal intervention, regardless of whether the *Younger* factors were met. *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). The *Younger* abstention doctrine does not apply where it would result in irreparable harm. *Id.* at 766. Here, Plaintiffs would be irreparably harmed if this Court abstains and the CRD is permitted to define and denigrate the Hindu religion and characterize it as a caste system, and pursue religious discrimination claims on its definition of religious doctrine.

## B.   Individual Plaintiffs Have Direct Standing To Bring These Claims.

Perhaps realizing that its *Younger* abstention argument might be a bridge too far, the CRD then argues that neither the individuals nor HAF have direct standing to bring the claims. Taking each in turn, the Individual Plaintiffs clearly have standing here.

The constitutional requirement of standing has three elements: (1) the plaintiff must have suffered an injury-in-fact – that is, a concrete and particularized invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical; (2) the injury must be causally connected - that is, fairly traceable - to the challenged action of the defendant and not the result of the independent action of a third party not before the court; and (3) it must be likely and not merely speculative that the injury will be redressed by a favorable decision by the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-476 (1982).

Because of the nature of the religious rights embodied in the Free Exercise clause, injury in religious freedom cases does not need to involve physical or financial injuries, but rather the freedom the amendment grants the people to be free from the spiritual and mental suffering that government denial of that religious freedom involves. *Vasquez v. Los Angeles Cnty*, 487 F.3d 1246, 1250 (9th Cir. 2007).

The Ninth Circuit has clearly described this very standard in *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 624 F.3d 1043 (9th Cir. 2009) (en banc). The Court found the psychological consequence produced by the government's

- 8 -

condemnation of a person's religion is a concrete harm sufficient to establish standing to sue for an Establishment Clause claim. *Id*. at 1053. The *Catholic League* Court reasoned that its decision was consistent with prior United States Supreme Court decisions where standing was established in cases involving prayer at a football game, a creche in a county courthouse or public parks, the Ten Commandments displayed on the grounds of a state capital or at a courthouse, a cross display at a national park, school prayer, a moment of silence at school, Bible reading at public school and a religious invocation at a graduation. *Id*. at 1049-1050 (citations omitted).

The allegations in the SAC clearly satisfy this standard. Each have specifically identified the psychological, spiritual, and emotional injuries to their religious beliefs suffered because of the CRD's illegal actions. Each has directly tied those injuries to the CRD's intentional decision to fraudulently malign Hinduism as engaging in caste-based discrimination. And each of their injuries can be redressed by an injunction precluding the CRD from wrongfully condemning Hindus and Hinduism based on the false and pernicious claim that it requires or supports a caste system.

The CRD's Motion simply ignores the allegations in the Complaint and argues through that ignorance, that the Individual Plaintiffs' "psychological and spiritual harms" are not harms for standing purposes. There are two problems with this argument. First, such harms are sufficient for standing in religious freedom cases. *Catholic League, supra* 624 F.3d 1043. Second, the cases relied upon by the CRD are outside of the religious freedom context, and therefore inapplicable here.

Most of the CRD's discussion of individual standing then goes off on an irrelevant tangent, confusing the proof required to be entitled to relief from the allegations in the pleadings required to have standing to raise the claims at all. The very quotation of the elements from the CRD's own brief show this.

They acknowledge that one has standing where "government action had a coercive effect on their practice or religion." (Motion, p. 13:12-13.) Filing a civil action claiming Hindu's inherently believe in caste discrimination, and seeking to hold individual plaintiffs liable based on that assertion certainly has a coercive effect on practicing Hinduism. The State of California has labeled Hinduism as inherently illegal, and labeled anyone who claims to be a practicing

Hindu as necessarily engaging in illegal and abhorrent discriminatory practices.  The risk of joining Mr. Iyer and Mr. Kompella as defendants based on this mischaracterization, and the effect of the public believing the slander spread by the CRD clearly have a negative coercive effect on practicing Hinduism.

The CRD acknowledges that the Individual Plaintiffs have standing where the harm is "real consequences in their particular political community." (Motion p. 14:20-21.)  The Second Amended Complaint does exactly that. The CRD's filing of the Cisco complaint, and its false representations of Hinduism, were the direct and concrete cause of the harms alleged in the Second Amended Complaint.  And the Individual Plaintiffs have faced consequences in their political community, the community of American and California citizens entitled to their free exercise, due process, and equal protection rights without state-sanctioned condemnation based on false representations of Hindu beliefs.

The CRD acknowledges that the Individual Plaintiffs have standing to bring a due process claim where the CRD's actions "chilled [their ability to] engag[e] in constitutionally protected activity." (Motion, p. 15:18-19 (brackets in Motion)).  The free exercise of their religious beliefs, without government condemnation, is a constitutionally protected activity.  The right to due process and equal protection of the law as guaranteed by the 14th Amendment is a protected activity.  By wrongly labeling Hindu beliefs as inherently violative of California law, and labeling all Hindus as caste-based discriminators, the CRD has certainly chilled Hindu American's constitutionally protected activity.

The CRD argues that Plaintiffs do not have standing to bring a due-process challenge on the vagueness grounds because the Court rejected this argument in its prior order.  The prior order was not based on the allegations now contained in the Second Amended Complaint that particularize, for the Individual Plaintiffs as well as HAF, the detailed basis for those claims.  And where a statutory interpretation would subject persons to conflicting legal obligations, it is proper for the Court to set aside the laws, regulations, or legal interpretations of the state that creates those conflicting obligations.  Moreover, the CRD is claiming that the Fair Employment and Housing Act prohibits caste discrimination without ever mentioning or defining caste discrimination, and that despite that fact, employers are allowed to ignore what the CRD itself falsely claims are the core teachings of Hinduism when the law legally requires employers to

- 10 -

accommodate such core teachings.  The CRD claims employers must prevent caste discrimination even though there is no legal definition of caste under California law, and without any ability to understand or know a person's self-identified caste, much less the caste other people may presume someone to have.

To abide by the obligations the CRD claims California employers have, the CRD, would require employers to ask every employee about their self-identified and perceived caste, a patent violation of every California citizens' religious and privacy rights.

The CRD claims that to have standing to pursue an equal protection claim the Individual Plaintiffs must show that the CRD acted with intent or purpose, and that they were treated differently.  The SAC is replete with concrete factual allegations to establish intent.  Mr. Kalra wrote to the CRD to inform them directly of their racist and anti-immigrant conduct.  He and the others spent hundreds of hours working to dispel the CRD's demeaning characterization of Hinduism and Hindu Americans.  The SAC further states how the CRD was told that the racist and anti-Hindu propaganda that they were being fed by Equality Labs was wrong and harmful to the Hindu community.  (SAC ¶ 2-6.)

The CRD was made aware that Mr. Iyer does not identify with any caste, and is not a practicing religious Hindu.  Public information readily available to the CRD made these positions abundantly clear before the CRD filed the State Action.

But despite all of these warnings, and despite all of this information readily available to the CRD, they nonetheless proceeded to file the State Action, falsely claiming Hinduism requires "a strict Hindu social and religious hierarchy."

The allegations clearly establish that the CRD acted knowingly, with full awareness, and intentionally, despite being informed by HAF and others of the wrongfulness, illegality, and harm their actions would cause.  And they filed the State Action anyway, knowingly and intentionally infringing upon the constitutional rights of Hindu Americans.

### C.   **The Hindu American Foundation Has Direct and Associational Standing To Bring These Claims.**

Defendant's argument that HAF lacks associational standing to bring this action lacks merit.  HAF has direct and associational standing to bring the claims.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**         Case No. 2-22-CV-01656-DAD-JDP

The California Civil Rights Department's ("CRD") denigration of the Hindu religion and blanketly racist statements about people of Indian origin and to the corresponding psychologically damaging and spiritually deflating impact on HAF's leadership, staff and membership represents the precise type of concrete injury which gives HAF standing to bring the claims here.  HAF has standing both directly because of the injury to itself as an association and based on the injuries it inflicts on its members and the Hindu American community.

To invoke organizational standing on behalf of its members, the plaintiff must allege facts demonstrating that: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (citing *Hunt v.Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

As set forth in the SAC, the Individual Plaintiffs are all California-based supporters, members, or constituents of HAF.  They have all suffered concrete injury, based on the CRD's hurtful, harmful and impermissible misrepresentations about Hinduism.  Each has an injury traceable to the conduct of the CRD falsely claiming that Hinduism is an inherently discriminatory religion.  And that injury is likely to be redressed by the injunctive relief sought here.  Each of the Individual Plaintiffs have suffered a deep mental, psychological and spiritual injury based on the CRD's conduct.  The CRD has labeled all Hindus, and all Indian Americans, as adhering to a discriminatory caste system that Hinduism and the overwhelming majority of Indian Americans reject.  The CRD labels Hindus and Indian Americans, "second-class citizens" and that "their participation in the political community will be chilled" by the State of California labeling them as inherently caste-ist.  *Catholic League for Religious & Civ. Rights v. City & County of San Francisco,* 624 F.3d 1043, 1049 (9th Cir. 2009).  The Individual Plaintiffs suffered the "spiritual or psychological harm" sufficient to establish standing here. *Id.* at 1050.

An organization has standing on its own behalf if it can show: (1) that the defendant's actions have frustrated its mission; and (2) that it has spent resources counteracting that frustration of mission.  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013).  As alleged in the SAC, HAF has suffered an injury because of the CRD's wrongfully identifying

- 12 -

caste as an inherent part of Hinduism.  HAF has Hindu staff members in California who the CRD has maligned with its defamatory claims.  HAF has extensive Hindu donors and supporters throughout the state, and HAF itself has had to expend considerable time and resources defending the integrity of Hinduism against this unjust and unconstitutional attack by the CRD. The CRD's decision to falsely label Hinduism as caste-ist as part of its litigation against Cisco directly and negatively affected HAF.  Before the CISCO case, HAF focused on other areas of advocacy, including ensuring Hinduism is properly reflected in California public schools.  After the CRD's actions, HAF faced a barrage of calls and concerns from Hindu Americans living in California because of the false claims about Hinduism, with the concern particularly intense in technology-related workplaces where Hindus and Indians faced hateful reactions from coworkers who now see them as agents of religiously and culturally mandated discrimination because of the CRD's position.

The CRD has treated Hinduism and Hindus disfavorably, and in an unequal manner and different than the manner in which it treats other religions or their adherents.  In doing so, the CRD is violating the First Amendment's Establishment and Free Exercise clauses as well as the 14th Amendment's equal protection and due process rights of all Hindu Americans.

### 1. *The Hindu American Foundation Has Direct Standing to Bring First and Fourteenth Amendment Claims Based On Its Own Injury.*

The constitutional requirement of standing has three elements: (1) the plaintiff must have suffered an injury-in-fact – that is, a concrete and particularized invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical; (2) the injury must be causally connected - that is, fairly traceable - to the challenged action of the defendant and not the result of the independent action of a third party not before the court; and (3) it must be likely and not merely speculative that the injury will be redressed by a favorable decision by the court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-476 (1982).

Because of the nature of the religious rights embodied in the Free Exercise clause, injury in religious freedom cases does not need to involve physical or financial injuries, but rather the freedom the amendment grants the people to be free from the spiritual and mental suffering that

government denial of that religious freedom involves. *Vasquez v. Los Angeles Cnty*, 487 F.3d 1246, 1250 (9th Cir. 2007).

The Ninth Circuit has clearly described this very standard in *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 624 F.3d 1043 (9th Cir. 2009) (en banc). The Court found the psychological consequence produced by the government's condemnation of a person's religion is a concrete harm sufficient to establish standing to sue for an Establishment Clause claim. *Id*. at 1053. The *Catholic League* Court reasoned that its decision was consistent with prior United States Supreme Court decisions where standing was established in cases involving prayer at a football game, a creche in a county courthouse or public parks, the Ten Commandments displayed on the grounds of a state capital or at a courthouse, a cross display at a national park, school prayer, a moment of silence at school, Bible reading at public school and a religious invocation at a graduation. *Id*. at 1049-1050 (citations omitted).

This is precisely the concrete harm present here. HAF alleges the CRD is both defining and denigrating its Hindu religion by pursuing enforcement actions under the California Fair Employment and Housing Act ("FEHA") based on the defamatory assertion that a caste system and caste-based discrimination are integral parts of Hindu teachings and practices. HAF alleges further that it has consistently maintained throughout its history, a caste system or discrimination on its basis are in no way a legitimate part of Hindu beliefs, teachings, or practices. Perhaps most importantly HAF alleges that it vehemently opposes all types of discrimination; and takes great exception to the State of California defining, defaming and demeaning all of Hinduism by attempting to conflate a discriminatory caste system with the Hindu religion.

HAF also satisfies the two remaining elements required to establish direct standing, e.g. the injury must be causally connected - that is, fairly traceable - to the challenged action of the defendant and not the result of the independent action of a third party not before the court; and it must be likely and not merely speculative that the injury will be redressed by a favorable decision by the court. *Lujan, supra,* 504 U.S. 555, 560-61; *Valley Forge Christian Coll., supra*, 454 U.S. 464, 475-76.

HAF is directly harmed by the CRD's actions. The CRD's defamatory and unconstitutional actions against Hindu teachings and practices have directly affected HAF and

the three board members, four staff members, three National Leadership Council members, four Advisory Committee members, 815 donors, 5,000 HAF newsletter recipients, and half dozen Hindu scholars that work with HAF and live and work in California.

These harms, and the harms inflicted on all Hindu Americans and people of South Asian decent that are presumed to be practicing Hindus, is clearly traceable to CRD's denigration of the Hindu Religion, the enforcement actions it is currently prosecuting against a California employer (Cisco) and California residents based on the CRD's defamatory assertions that Hindu employees followed a "Hindu strict social and religious hierarchy."

Finally, because HAF seeks declaratory and injunctive relief as remedies for the Defendant's wrongdoing (State Action Complaint – Prayer at ¶¶ 1-4), the injury will be redressed by a favorable decision of the Court.

### 2. The Hindu American Foundation Has Associational Standing to Bring First and Fourteenth Amendment Claims Based Injury to Its Members

Defendant spends much of the motion arguing that HAF does not have associational standing to bring the claim. Technical membership structures are not required to satisfy the requirements for associational standing. Rather, an organization satisfies the *Hunt* requirements for associational standing where "the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th Cir. 2021) (*quoting Or. Advoc. Ctr. v. Mink, 322 F.3d 1101, 1111 (9th Cir. 2003); further quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 261 (1977)).* "The ultimate consideration when determining whether an organization has associational standing is whether it has a 'personal stake in the outcome of the controversy.'" *Id.; quoting Oregon Advocacy*, 322 F.3d at 1111 (citation omitted).

HAF represents the interests of Hindu Americans throughout the United States, including those working at Cisco, as alleged in the State Action by the CRD itself. By filing the State Action, the CRD has harmed those interests, directly affecting the California-based Hindu Americans that HAF represents. It has a clear and undeniable "personal stake" in the outcome of the controversy, and therefore has standing to assert these claims here. HAF Board members, employees, Leadership and Advisory Council members, donors, newsletter readers and scholars

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**                    Case No. 2-22-CV-01656-DAD-JDP

residing in California have been directly harmed by the CRD's actions, requiring significant redeployment of HAF resources and personally subjecting them to the emotional and spiritual injuries of CRD's gross mischaracterization of Hindu teachings.  HAF represents the interests of Hindu Americans in California and across the nation, and Defendant's standing arguments simply have no merit.

Defendant argues that HAF lacks standing because the lawsuit is not germane to its purpose.  Nothing could be further from the truth.  Preventing governmental attacks on the religious freedoms of Hindu Americans, and establishing the right to all faiths to define for themselves the scope of their own religious beliefs, is central to the Hindu American Foundation's mission and purpose, as is ensuring that ethnic minorities enjoy equal protection under the law.

Defendant argues that associational standing is not appropriate here under *Hunt* because participation of individual members is necessary to the adjudication of the claims.  The claims here are not based on an individual decision or practice affecting certain members or interfering with a subset of the Hindu American community in California.  Rather, it is based on a blanket mischaracterization and slander against Hindu beliefs, followed by a legal assertion by the government that those beliefs require all Hindus to violate FEHA.

"The third prong of *Hunt*, which requires that associations have standing only when neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit,' [citation], is one such prudential, as opposed to constitutional, requirement of standing." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1113 (9th Cir. 2003) *quoting Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *and citing United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 557 (1996).  "[T]he third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution."  *United Food, supra*, 517 U.S. at 557; *see also Cent. Delta Water Agency v. United States*, 306 F.3d 938, 951 n.9 (9th Cir. 2002) (noting that unlike the first two *Hunt* factors, "the third factor is 'merely prudential,' and designed to promote efficiency in adjudication").

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**          Case No. 2-22-CV-01656-DAD-JDP

Here, there is no prudential need for the participation of individual members. In this case, the CRD has mischaracterized Hindu beliefs as requiring a strict caste hierarchy and caste-based oppression and then declared that that strict caste hierarchy and oppression violates the Fair Employment and Housing Act. No participation of individual members is needed to show whether labeling all Hindus as inherently guilty of violating the Fair Employment and Housing Act constitutes a violation of the Free Exercise Clause.

In this case, the CRD has taken a blanket position that mischaracterizes Hindu belief and practice and then labels all Hindus, especially those employees of Indian origin at Cisco, as inherently discriminatory in violation of FEHA based on that mischaracterization. No involvement of individual members is needed to determine whether these actions violate the Free Exercise Clause.

### D. Mr. Iyer and Mr. Kompella Claims Under The Equal Protection and Due Process Clauses Are Not Moot

In the alternative, the CRD argues that Mr. Iyer and Mr. Kompella's due process and equal protection claims are moot because they could not receive any relief from this action. The claims are not moot, and relief is available to them.

The operative Complaint in the State Action continues to identify Mr. Iyer and Mr. Kompella as the wrongful actors that the CRD claims engaged in illegal religious discrimination based on caste. It continues to claim that they are high-caste Hindu "Brahmin" when both have publicly condemned the caste system and made it known to the CRD and the world that they do not have a caste. The operative complaint continues to claim Mr. Iyer and Mr. Kompella engaged in religious discrimination because of religious beliefs wrongly ascribed to them, and to all Hindu Americans.

Injunctive relief in this case would preclude the CRD from engaging in such conduct, singling out Indian Americans under the wrongful assertion that they are practicing Hindu, have a caste that requires them to discriminate, and that they engage in religious discrimination based on that case. The CRD would remain free to pursue claims without these unconstitutional mischaracterizations, and Mr. Iyer and Mr. Kompella would get relief by not being singled out for state-actor slander based on their national heritage.

Because of this, the CRD's arguments are themselves moot, and based on a false premise. The premise that the harm involved here is the risk they will be sued again in the State Action is not the harm.  It is the unconstitutional attacks on them that continue in that case, in their absence as parties able to defend themselves in the action, that is the harm being redressed.

## E.  Plaintiffs' SAC States Sufficient Claims for Relief

The purpose of a motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure (FRCP), Rule 12(b)(6) ("Rule 12(b)(6)") is to test the formal sufficiency of the plaintiff's statement of the claim for relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Navarro v. Block*, 250 F. 3d 729, 732 (9th Cir 2001).  A motion for failure to state a claim is not a procedure for resolving a contest about the merits of the case.  *Nielsen v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1151 (CD Cal. 2003).  Dismissal for failure to state a claim is appropriate only when the plaintiff can prove no set of facts supporting relief.  *Guerrero v. Gates*, 357 F. 3d 911, 916 (9th Cir. 2004).  Thus, the motion is viewed with disfavor and is rarely granted.  *Gilligan v. Jamco Development Corp.*, F. 3d 246, 249 (9th Cir. 1997); *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1164-1165 (CD Cal. 2002).

The legal sufficiency of a complaint is measured by whether it meets the pleading standards set forth in FRCP Rule 8.  The party bringing a motion to dismiss for failure to state a claim bears the burden of demonstrating that the plaintiff has not met the pleading requirements of Rule 8(a)(2) in stating a claim. *Gallardo*, *supra* at 1165.  Rule 8(a)(2) requires parties seeking relief in federal court a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief.  FRCP Rule 8(a)(2).  Each allegation must be simple, concise and direct. FRCP Rule 8(d)(1).

A complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); accord *Atchison, Topeka & Santa Fe Ry. v. Buell*, 480 U.S. 557, 568 n.15 (1987) (under Federal Rule 8, claimant has "no duty to set out all of the relevant facts in his complaint").  "Specific facts are not necessary in a Complaint; instead, the statement need only 'give the defendant fair notice of

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)**          Case No. 2-22-CV-01656-DAD-JDP

what the . . . claim is and the grounds upon which it rests.'" *Epos Tech*. *v. Pegasus Tech,* 636 F. Supp.2d 57, 63 (D.D.C. 2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

Thus, the Federal Rules embody notice pleading and require only a concise statement of the claim, rather than evidentiary facts.  Factual allegations must be enough to raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This plausibility standard does not require heightened fact pleading of specifics.  Rather it requires enough facts to state a claim to relief that is plausible on its face. *Id*. at 555-556.

When considering a motion to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must assume as true all allegations contained in the complaint.  *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).  On FRCP 12(b)(6) motions, the court must assess the legal feasibility of the complaint and whether a plaintiff has pled claims for which he or she is entitled to discovery.  *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000); Chance, 143 F.3d at 701 (1998).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court held that courts should entertain a motion to dismiss by following a two-pronged approach:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

A complaint containing allegations that, if proven, present a winning case is not subject to dismissal under Rule 12(b)(6) "no matter how unlikely such winning outcome may appear" to the district court.  *Balderas v. Countrywide Bank N.A*., 664 F. 3d 787, 791 (9th Cir. 2011). Plaintiff's ability to prove his or her allegations, or possible difficulties in making such proof, is generally of no concern in ruling on Rule 12(b)(6) motions: "In considering a 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims.  *Nami v. Fauver*, 82 F. 3d 63, 65 (3rd Cir. 1996); see *Allison v. California Adult Authority*, 419 F. 2d 822, 823 (9th Cir. 1969); *Peterson v. Grisham*, 594 F. 3d 723, 727 (10th Cir. 2010) – court does not weigh potential evidence parties may present at trial.

- 19 -

Because Plaintiffs' SAC satisfies the pleading requirements of Rule 8, and sets forth a plausible claim for relief under the Establishment Clause, the Free Exercise Clause, the Due Process Clause, and the Equal Protection Clause, this Motion to Dismiss should be denied in its entirety. This is not the stage of the pleadings to test the veracity of the allegations of the SAC. As noted above, the relevant inquiry is not whether the Plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims. Plaintiffs are entitled to offer evidence to support their claims and any argument to the contrary is specious.

## IV.   <u>CONCLUSION</u>

This court should not abstain from proceeding on Plaintiffs' SAC. Plaintiffs have standing to bring these claims and Plaintiffs have clearly stated causes of action under 42 U.S.C. § 1983 based on the CRD's violation of the Establishment Clause, Free Exercise, Due Process, and Equal Protection clauses of the First and Fourteenth Amendments to the U.S. Constitution.

Accordingly, Plaintiffs respectfully ask the Court to deny this Motion to Dismiss. Alternatively, Plaintiffs request leave to amend their SAC. "Courts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (citations omitted).


Dated: October 18, 2024                     NARAYAN TRAVELSTEAD P.C.



                                            /s/ Timothy C. Travelstead
                                            Timothy C. Travelstead, Esq.
                                            Scott C. Ku, Esq.
                                            Attorneys for Plaintiff
                                            HINDU AMERICAN FOUNDATION;
                                            SAMIR KALRA; MIHIR MEGHANI;
                                            SANGEETHA SHANKAR; DILIP AMIN;
                                            SUNDAR IYER; RAMANA KOMPELLA;
                                            SHAISHAV DESAI; AND SRIVATS IYER