1 | ROB BONTA, State Bar No. 202668
Attorney General of California
2 | MICHAEL NEWMAN, State Bar No. 222993
Senior Assistant Attorney General
3 | WILLIAM H. DOWNER, State Bar No. 257644
Supervising Deputy Attorney General
4 | *CARLY J. MUNSON, State Bar No. 254598
JENNIFER M. SOLIMAN, State Bar No. 332519
5 | Deputy Attorneys General
    1300 I Street
6 | Sacramento, CA  95814
    Telephone: (916) 210-7845
7 | Fax: (916) 731-2129
    E-mail: Carly.Munson@doj.ca.gov
8 | *Attorneys for Defendant Kevin Kish, Director of the California Civil Rights Department*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HINDU AMERICAN FOUNDATION, INC.,** a Florida Not-For-Profit Corporation; and **SAMIR KALRA; MIHIR MEGHANI; SANGEETHA SHANKAR; DILIP AMIN; SUNDAR IYER; RAMANA KOMPELLA; SHAISHAV DESAI; and SRIVATS IYER;** as individuals;<br><br>Plaintiffs,<br><br>v.<br><br>**KEVIN KISH, an individual, in his official capacity as Director of the California Civil Rights Department; and DOES 1-50, inclusive,**<br><br>Defendants. | Case No. 2:22-CV-01656-DAD-JDP<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO *YOUNGER* ABSTENTION DOCTRINE, RULE 12(b)(1), AND RULE 12(b)(6)**<br><br>Date: December 3, 2024<br>Time: 1:30 p.m.<br>Judge: Hon. Dale A. Drozd<br><br>Action Filed: September 20, 2022<br>Second Am. Compl. Filed: August 27, 2024 |

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................................................... 1

Argument .......................................................................................................................................... 2

    I.    The *Younger* Abstention Doctrine Requires that the Court Abstain from Hearing Plaintiffs' Claims and Dismiss the Suit ....................................................... 2

        A.    Plaintiffs Seek to Interfere with the Ongoing State Action, Which Is the Civil Equivalent to a Criminal Prosecution Under *NOPSI* ................... 3

        B.    The State Action Implicates Important State Interests and Provides or Has Provided the Requisite Opportunity Under *Younger* ....................... 6

        C.    Plaintiffs Have Not Demonstrated that "Extraordinary Circumstances" Justify the Court's Declining to Abstain Under *Younger* ......................................................................................................... 9

    II.    Plaintiffs Lack Standing to Pursue this Litigation ................................................. 10

    III.    Plaintiffs Iyer's and Kompella's Equal Protection Claims Are Moot................... 13

    IV.    The SAC Fails to State a Claim Upon Which Relief Can Be Granted ................. 14

    V.    Any Further Amendment Would Be Futile............................................................ 14

Conclusion ..................................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allee v. Medrano*
  416 U.S. 802 (1974) ................................................................................................. 5

*Am. Unites for Kids v. Rousseau*
  985 F.3d 1075 (9th Cir. 2021) ................................................................................ 11

*Applied Underwriters, Inc. v. Lara*
  37 F.4th 579 (9th Cir. 2022) .................................................................................... 4

*Arevalo v. Hennessy*
  882 F.3d 763 (9th Cir. 2018) .................................................................................. 10

*Arizona Alliance for Retired Americans v. Mayes*
  117 F.4th 1165 (9th Cir. 2024) ............................................................................... 10

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................... 14

*Barren v. Harrington*
  152 F.3d 1193 (9th Cir. 1998) ................................................................................ 13

*Bd. of Educ. of Cent. Sch. Dist. v. Allen*
  392 U.S. 236 (1968) ............................................................................................... 13

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................................... 14

*Benavidez v. Eu*
  34 F.3d 825 (9th Cir. 1994) ............................................................................ 7, 8, 9

*Brown v. Stored Value Cards, Inc.*
  953 F.3d 567 (9th Cir. 2020) .................................................................................. 15

*Canatella v. California*
  404 F.3d 1106 (9th Cir. 2005) .................................................................................. 5

*Carrico v. City & Cnty. of S.F.*
  656 F.3d 1002 (9th Cir. 2011) ................................................................................ 15

*Catholic League for Religious & C.R. v. City & Cnty. of S.F.*
  624 F.3d 1043 (9th Cir. 2010) ................................................................... 11, 12, 13

*Dep't of Fair Emp. & Hous. v. Law Sch. Admission Council, Inc.*
  941 F. Supp. 2d 1159 (N.D. Cal. 2013) ................................................................... 6

**TABLE OF AUTHORITIES**
(continued)

Page

*Dep't of Fair Emp. & Hous. v. Cisco Systems, Inc.*
  82 Cal. App. 5th 93 (Cal. Ct. App. 2022) .................................................................. 3, 4

*Dubinka v. Judges of Super. Ct. of State of Cal. for Cnty. of L.A.*
  23 F.3d 218 (9th Cir. 1994) ...................................................................................... 8, 10

*E. Bay Sanctuary Covenant v. Biden*
  993 F.3d 640 (9th Cir. 2021) ......................................................................................... 10

*Foman v. Davis*
  371 U.S. 178 (1962) ........................................................................................................ 15

*Hicks v. Miranda*
  422 U.S. 332 (1975) ..................................................................................................... 4, 5

*Hirsh v. Justices of the Sup. Ct. of State of Cal.*
  67 F.3d 708 (9th Cir. 1995) ............................................................................................. 2

*Huffman v. Pursue, Ltd.*
  420 U.S. 592 (1975) ..................................................................................................... 4, 9

*Hunt v. Wash. State Apple Advert. Comm'n*
  432 U.S. 333 (1977) ........................................................................................................ 12

*Juidice v. Vail*
  430 U.S. 327 (1977) .......................................................................................................... 7

*La Asociacion de Trabajadores de Lake Forest v. Lake Forest*
  624 F.3d 1083 (9th Cir. 2010) ....................................................................................... 11

*Lebbos v. Judges of the Super. Ct.*
  883 F.2d 810 (9th Cir. 1989) ...................................................................................... 7, 8

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*
  457 U.S. 423 (1982) .......................................................................................................... 8

*Montclair Police Officers' Ass'n v. City of Montclair*
  No. 2:12-cv-06444-PSG-PLA, 2012 WL 12888427 (C.D. Cal. Oct. 24, 2012) ...................... 13

*Moore v. Sims*
  442 U.S. 415 (1979) .......................................................................................................... 7

*New Orleans Pub. Serv., Inc. v. Council of New Orleans (NOPSI)*
  491 U.S. 350 (1989) ...................................................................................................... 2, 3

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*
  477 U.S. 619 (1986) ............................................................................................ 4, 6

*Or. Advoc. Ctr. v. Mink*
  322 F.3d 1101 (9th Cir. 2003) ................................................................................ 11

*Our Watch with Tim Thompson, v. Bonta*
  682 F. Supp. 3d 838 (E.D. Cal. 2023) .................................................................... 10

*Pennzoil Co. v. Texaco, Inc.*
  481 U.S. 1 (1987) ................................................................................................ 7, 9

*Potrero Hills Landfill, Inc. v. Cnty. of Solano*
  657 F.3d 876 (9th Cir. 2011) .................................................................................... 6

*Valle del Sol Inc. v. Whiting*
  732 F.3d 1006 (9th Cir. 2013) ................................................................................ 10

*Wood v. Super. Ct.*
  46 Cal. App. 5th 562 (Cal. Ct. App. 2020) .............................................................. 4

*World Famous Drinking Emporium, Inc. v. City of Tempe*
  820 F.2d 1079 (9th Cir. 1987) ............................................................................ 9, 10

*Younger v. Harris*
  401 U.S. 37 (1971) ........................................................................................ *passim*

**STATUTES**

Cal. Gov't Code
  § 12920 ..................................................................................................................... 6
  § 12930 (o) ............................................................................................................... 6
  § 12965 ................................................................................................................. 1, 3

**CONSTITUTIONAL PROVISIONS**

U.S. Const.
  art. III ................................................................................................................ 10, 13

**COURT RULES**

Federal Rules of Civil Procedure
  Rule 12(b)(1) .................................................................................................. *passim*
  Rule 12(b)(6) .................................................................................................. *passim*

**INTRODUCTION**

Plaintiff Hindu American Foundation ("HAF") and the eight new Individual Plaintiffs (collectively "Plaintiffs") allege in their Second Amended Complaint ("SAC," *see* ECF No. 50) that the Civil Rights Department's ("CRD" or "the Department") pending workplace discrimination suit against Cisco Systems, Inc. ("Cisco") violates the Free Exercise Clause and Establishment Clauses of the First Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, by incorrectly describing India's caste system as a "strict Hindu social and religious hierarchy." (ECF No. 50 at 2:15-16, ¶¶ 16, 19, 49, 57). The SAC suffers from four fatal defects: one prudential, two jurisdictional, and one on the merits. As Plaintiffs ask this Court to intrude on an ongoing civil prosecution in state court and the *Younger* doctrine applies, the Court should abstain from hearing Plaintiffs' claims and dismiss their suit. In the alternative, as this matter is neither justiciable nor states a claim upon which relief can be granted, Plaintiffs' SAC must be dismissed under Rule 12.

First, Plaintiffs' suit violates principles of comity and federalism as recognized in *Younger v. Harris*, 401 U.S. 37, 54 (1971), by asking this Court to directly interfere in CRD's ongoing enforcement action under the California Fair Employment and Housing Act ("FEHA") against Cisco (referred to hereinafter as the "State Action" or "*CRD v. Cisco*"). (*See* ECF Nos. 51, 56-4; *see also* Cal. Gov't Code § 12965).[1] Second, Plaintiffs have failed to demonstrate facts sufficient to show that any Plaintiff—or, in HAF's case, any member or constituent—has suffered or is at imminent risk of suffering an alleged deprivation of their First or Fourteenth Amendment rights, let alone one reasonably traceable to the State Action and redressable by this suit. Third, Plaintiffs Sundar Iyer and Ramana Kompella lack standing to pursue injunctive relief under the Equal Protection Clause because they have been dismissed with prejudice from the State Action.[2] Finally, even if Plaintiffs could establish standing—they cannot—Plaintiffs have failed to allege facts showing that CRD's State Action: (1) substantially burdens HAF's members or the Individual Plaintiffs' ability to practice their faith in violation of the Free Exercise Clause; (2)

---

[1] Unless otherwise noted, all references are to current California state laws and regulations.
[2] Unless otherwise noted, all references to "Plaintiff Iyer" or "Mr. Iyer" refer to Sundar Iyer.

1

dictates religious doctrine or coerces anyone's religious beliefs or practices in violation of the Establishment Clause; (3) deprives HAF's members or the Individual Plaintiffs of fair notice of the conduct that is prohibited under the FEHA in violation of the Due Process Clause; or (4) targets or discriminates against HAF's members or the Individual Plaintiffs in violation of the Equal Protection Clause.

Plaintiffs' Opposition does not refute these grounds for dismissal or address the deficiencies in its pleadings. Plaintiffs similarly fail to identify any facts that would cure their pleading deficiencies. Rather than address their lack of standing and failure to state any viable claims, Plaintiffs offer rhetoric about CRD and its actions that is misleading and, in some cases, patently false. For example, as in their SAC, Plaintiffs entirely disregard the operative complaint in the State Action, which lacks the very phrase to which Plaintiffs tie the genesis of their alleged injury. They claim that CRD has made racist statements about Indian Americans, maligned Hinduism, and called Hindu Americans "second-class citizens," but do not—and cannot—offer even a single citation to support these incorrect assertions. And Plaintiffs HAF, Iyer, and Kompella again omit or misstate key facts about their involvement in the State Action. These arguments underscore the futility of any further opportunity to amend.

**ARGUMENT**

**I.   THE *YOUNGER* ABSTENTION DOCTRINE REQUIRES THAT THE COURT ABSTAIN FROM HEARING PLAINTIFFS' CLAIMS AND DISMISS THE SUIT**

The *Younger* abstention doctrine applies to lawsuits, such as this one, where the plaintiffs seek to use the federal courts to interfere with pending state enforcement actions that are akin to criminal prosecutions, such as the State Action. *See Hirsh v. Justices of the Sup. Ct. of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995) (citing *Younger v. Harris*, 401 U.S. 37, 40–41 (1971); *New Orleans Pub. Serv., Inc. v. Council of New Orleans (NOPSI)*, 491 U.S. 350, 367-68 (1989). Plaintiffs do not contest that the State Action was initiated prior to this federal action and remains ongoing to date. (*See* ECF No. 58 at 4-8; *see also* ECF No. 55 at 7-9). As to the remaining *Younger* factors, Plaintiffs contend the State Action: (1) is not akin to a criminal proceeding under *NOPSI*; (2) does not implicate important state interests because it only benefits one person; (3)

has not actually provided the Plaintiffs a forum for their federal claims; and (4) would not be affected by the relief sought in this federal action. (ECF No. 58 at 4-8). Plaintiffs also contend that, even if the *Younger* factors applied, the Court should not abstain because they will suffer "irreparable harm" if their claims are not heard. (ECF No. 58 at 8). Plaintiffs are wrong.

### A. Plaintiffs Seek to Interfere with the Ongoing State Action, Which Is the Civil Equivalent to a Criminal Prosecution Under *NOPSI*

Plaintiffs contend that *Younger* cannot apply because the State Action—a civil rights enforcement action brought by a state agency within its statutory mandates to redress alleged employment discrimination—is not equivalent to a criminal proceeding under *NOPSI*. This relies on incorrect premises about CRD's role and the nature of relief it seeks in the public interest.

Specifically, Plaintiffs claim that *Younger* does not apply because Department is allegedly "acting as the attorney for the plaintiff in the State Action," raising claims [the plaintiff] could raise himself through a private attorney," and seeking "remedies only between the parties." (ECF No. 58 at 5:14-17). This reflects a fundamental misunderstanding of CRD's role in the State Action. CRD brought the State Action pursuant to Government Code section 12965, subdivision (a)(1), and *is itself the plaintiff*. (*See* ECF No. 56-4). As the plaintiff, and consistent with its legislative mandate, CRD is "acting in the public interest" (Gov't Code § 12965(a)(1)) and is not a "private party" as Plaintiffs contend (*see* ECF No. 58 at 17-18). In that role, CRD seeks more than just individual relief for Mr. Narsude. (*See* ECF No. 56-4 at 19-20). Rather, the Department seeks declaratory and injunctive relief that will benefit all individuals at Cisco now or in the future to be free from similar discrimination. (*Id.*) Indeed, in resolving an earlier appeal in the State Action in which Plaintiffs Iyer and Kompella were among the appellees, the California Court of Appeal explained that CRD is "the public arm of [FEHA's] enforcement procedure," "acts independently when it sues for FEHA actions," and "can seek remedies beyond those brought by an employee." *DFEH v. Cisco Systems, Inc.*, 82 Cal. App. 5th 93, 100–01 (Cal. Ct. App. 2022). By contrast, as the complainant, Mr. Narsude is named as a Real Party in Interest to the State Action. (*See* ECF Nos. 51, 56-4). He has the discretion to choose whether to participate as a party and be represented by counsel in the State Action. Gov't Code § 12965(a)(3).

Contrary to Plaintiffs' claims, CRD is *not* acting as Mr. Narsude's counsel. (*See* ECF No. 58 at 5:14-15). There is no attorney-client relationship between CRD and a complainant like Mr. Narsude. *Wood v. Super. Ct.*, 46 Cal. App. 5th 562, 571, 581–82 (Cal. Ct. App. 2020). And CRD is not acting as a proxy for Mr. Narsude. *DFEH v. Cisco*, 82 Cal. App. 5th at 101.

Plaintiffs also contend that *Younger* cannot apply because none of the Plaintiffs are parties to the State Action. (ECF No. 58 at 5:19-6:9). But Plaintiffs' reliance on *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579 (9th Cir. 2022), is misplaced because—unlike here—that suit was not aimed at redressing a public offense. *Applied Underwriters*, 37 F.4th at 590. The Ninth Circuit distinguished the insurance conservatorship at issue there from other enforcement proceedings where abstention *is* warranted because the parallel proceedings are either "in aid of" a criminal statute or "aimed at punishing some wrongful acts through a penalty of sanction"—aims that were not pursued in the conservatorship. *Id.* at 589-90 (citing, *e.g.*, *Ohio Civ. Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 629 (1986) (abstention warranted by state-initiated administrative proceedings to enforce state civil rights laws, noting "potential sanctions for the alleged sex discrimination"); *Huffman*, 420 U.S. at 596-98 (state-initiated proceeding to enforce public nuisance laws, which provided penalties for violations, triggered *Younger*)). Here, as in *Dayton Christian Schools* and *Huffman*, CRD brought the State Action to redress a public offense: Cisco's alleged violations of FEHA. (*See* ECF No. 56-4 at 19-20). Plaintiffs' reliance on *Applied Underwriters* is further misplaced because the decision reiterates the *typical*—but not requisite or exclusive—characteristics of a civil enforcement proceeding akin to a criminal prosecution, and does not cabin *Younger*'s application to only cases with those characteristics.[3]

Indeed, the Supreme Court has recognized that there are circumstances—such as these—in which *Younger* should apply even when the federal plaintiffs and state defendants are not one and the same. For example, in *Hicks v. Miranda*, 422 U.S. 332 (1975), the Supreme Court considered a federal challenge brought by a theater, its owner, and its employees to an ongoing state enforcement proceeding of a California obscenity statute. Although some of the federal plaintiffs

---

[3] *See Applied Underwriters*, 37 F.4th at 588 ("Such enforcement actions are *characteristically* initiated to sanction the federal plaintiff . . . [and] a state actor is *routinely* a party . . . and *often* initiates the action.") (emphasis added) (citation omitted).

were not parties to the state enforcement proceeding at the time the federal action was filed, the Supreme Court nonetheless held that the district court erred by not invoking abstention. *Hicks*, 422 U.S. at 348. The Court explained that, because the claims of the federal plaintiffs would interfere with the state case, the "same comity considerations appl[ied]" to warrant abstention, notwithstanding that the parties did not entirely overlap. *Id.* at 349 (quoting *Allee v. Medrano*, 416 U.S. 802, 831 (1974) (Burger, C.J., conc.)). Likewise, the Ninth Circuit has held that there are circumstances in which the principles underlying abstention are advanced even when federal and state parties differ, such as when the parties are "closely related" or have "sufficiently intertwined interests." *Canatella v. California*, 404 F.3d 1106, 1116 (9th Cir. 2005).

This case demands the same result. As in *Hicks*, at least some of the Plaintiffs were parties to the parallel state enforcement action to enforce the FEHA at Cisco at the time the federal suit was initiated. Indeed, Plaintiffs HAF, Iyer, and Kompella were all involved in the State Action at the time that HAF filed its federal complaint in September 2022—HAF as a proposed plaintiff-intervenor and Mr. Iyer and Mr. Kompella as defendants charged by CRD. (*See* ECF Nos. 10-1, Exh. B, 20 & 21, Exh. A). In fact, HAF was *still* part of the State Action at the time it amended its complaint to add the Individual Plaintiffs a year later in September 2023. (*See* ECF No. 42-6). HAF purports to represent the interests of the Individual Plaintiffs, and claims it can speak on their behalf in this suit under an associational standing theory. (*See* ECF No. 50 ¶ 41). As in *Canatella*, HAF's interests are sufficiently intertwined with the Individual Plaintiffs such that HAF's involvement in the State Action warrants abstention under *Younger* as to all Plaintiffs.

Moreover, as in *Hicks*, here the Plaintiffs expressly seek to have this Court interfere with an ongoing state proceeding. Plaintiffs inaccurately contend that the relief sought from this Court will "in no way interfere[]" with the State Action. (*Id.* at 7:21-22). The crux of Plaintiffs' legal theory is that the ongoing State Action violates their constitutional rights. (*Id.* at 7:16-20). In their SAC, Plaintiffs specifically ask to have the Department's actions in *CRD v. Cisco* declared unconstitutional under the First and Fourteenth Amendments and enjoin further action. (ECF No. 50 at 35; *see also* ECF No. 58 at 3:19-20). It is difficult to imagine a plaintiff seeking any more direct interference. This is precisely the type of case that requires abstention under *Younger*.

**B. The State Action Implicates Important State Interests and Provides or Has Provided the Requisite Opportunity Under *Younger***

Plaintiffs further contend that *Younger* abstention is not warranted because: (1) the State Action does not implicate important state interests; and (2) Director Kish has not met "his" burden of showing the state proceeding has provided a full and fair opportunity for Plaintiffs to litigate their federal claims. (ECF No. 58 at 6-7). Plaintiffs are wrong on both counts.

First, Plaintiffs erroneously assert that the State Action does not implicate important state interests because it is "acting as a private party's attorney in a civil dispute between two private entities." (*Id.* at 6:12-13). As discussed above, this is incorrect. (*See supra* at 3-4). On the contrary, CRD is "a public prosecutor testing a public right when it pursues civil litigation to enforce statutes within its jurisdiction," including the FEHA. *Dep't of Fair Emp. & Hous. v. Law Sch. Admission Council, Inc.*, 941 F. Supp. 2d 1159, 1168 (N.D. Cal. 2013) (internal citation omitted); *see also* Gov't Code § 12930(*o*). It is not a private party.

Plaintiffs also mistakenly contend that the state's interests in ensuring that the people of California are free from discrimination and that businesses comply with anti-discrimination laws are not "vital" enough to warrant abstention under *Younger* or, in the alternative, that an order declaring the State Action unconstitutional will not interfere with CRD's legislatively mandated activities. (ECF No. 58 at 6). In fact, these are exactly the state interests that courts have recognized as sufficiently important to warrant federal abstention under *Younger*. *See, e.g.*, *Dayton Christian Schools,* 477 U.S. at 628 (recognizing "the elimination of prohibited sex discrimination is a sufficiently important state interest"). Indeed, where—as here—"the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake." *Potrero Hills Landfill, Inc.*, 657 F.3d at 883-84. *see also* Gov't Code § 12920 (in enacting FEHA, the Legislature "declared as the public policy of this state that it is necessary to protect and safeguard the right of all persons to seek, obtain, and hold employment without discrimination" and CRD exercises the state's "police power" to "protect[] . . . the welfare, health, and peace of the people of the state" by enforcing FEHA).

Second, Plaintiffs claim that Director Kish has not met "[his] burden" of showing that they have had "a full and fair opportunity to litigate their federal claims during the ongoing state proceedings." (ECF No. 58 at 7). But *Plaintiffs*—not Director Kish—bear the burden of demonstrating that California law procedurally bars or prevents them from presenting their constitutional claims in the pending state court matter. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Moreover, state court proceedings are presumed to be adequate to raise federal claims "in the absence of unambiguous authority to the contrary." *Id*. Here, Plaintiffs have failed to demonstrate that they had no opportunity to pursue their claims in the ongoing state proceedings, and without that showing they cannot meet their burden. (*See* ECF No. 58 at 7; *see also* ECF No. 50 at 5-12). Under *Younger*, federal litigants such as Plaintiffs need only be afforded an *opportunity* to fairly pursue their constitutional claims in the ongoing state proceedings. *Moore v. Sims*, 442 U.S. 415, 430 & n.12 (1979) (quoting *Juidice v. Vail*, 430 U.S. 327, 337 (1977). Thus, "abstention is appropriate based on 'interests of comity and federalism [that] counsel federal courts to abstain from jurisdiction whenever federal claims *have been or could be* presented in ongoing state judicial proceedings that concern important state interests." *Lebbos v. Judges of the Super. Ct.*, 883 F.2d 810, 813 (9th Cir. 1989) (emphasis added, internal citations omitted).

In their Opposition, Plaintiffs do not address this standard or the cases raised in Director Kish's Motion. (*See* ECF No. 58 at 7:1-11). Instead, Plaintiffs rely on *Benavidez v. Eu*, 34 F.3d 825 (9th Cir. 1994), to argue that they have not had the requisite opportunity because Plaintiffs Iyer and Kompella were dismissed from the State Action and because HAF lost its motion to intervene. (ECF No. 58 at 7). In *Benavidez*, the Ninth Circuit considered whether parties who had been granted the ability to intervene in a federal case about redistricting under the California Voting Rights Act could continue to litigate their complaint in intervention after the original suit had been dismissed under *Younger*. *Benavidez*, 34 F.3d at 829-31. In reaching the conclusion that *Younger* could not apply, the Ninth Circuit noted that—but for a five-minute presentation by one intervenor before the special master—the *Benavidez* intervenors had not been involved at all in the parallel state action. *Id.* at 831. And there was no avenue for them to be heard in the state court matter at the time they filed their federal suit because the California Supreme Court had

*already peremptorily denied all requests for intervention in the parallel state action. Id.* Thus, at the time when the intervenors filed their federal suit, they could not file a motion to intervene in the ongoing state action to present their federal claims. The Court's peremptory denial of intervenors in the parallel state action acted as the requisite procedural bar. *See Lebbos*, 883 F.2d at 813; *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Unlike the *Benavidez* intervenors, Plaintiffs HAF, Iyer, and Kompella have *all* been involved in the State Action. (*See, e.g.*, ECF Nos. 10-1, 21, Exh. A & 45 at 5:16-17). They have filed briefs, presented arguments, and appeared in court. *Cf. Benavidez*, 34 F.3d at 831 (listing litigation hallmarks *not* afforded to those peremptorily denied intervention by the California Supreme Court). And they were all involved in State Action *at the time that HAF filed its federal suit* in September 2022. (*See, e.g.*, ECF Nos. 10-1, 21, Exh. A & 45 at 5:16-17). Thus, at the time this suit was filed, each had an avenue to be heard in state court.

Moreover, unlike the *Benavidez* intervenors, Plaintiffs HAF, Iyer, and Kompella were not procedurally "barred" from raising their federal claims in the State Action prior to bringing their federal suit. Unlike in *Benavidez*, HAF was able to file and have its motion to intervene, which raised its federal claims, heard by the state court. (*See* ECF Nos. 10-1, Exh. B, 42-5 & 42-6). That HAF was unsuccessful on the merits of that motion—and, indeed, cemented this loss by voluntarily abandoning its appeal of the trial court's ruling after CRD amended its complaint in the State Action (*see* ECF No. 33 ¶¶ 6-15)—is immaterial. *See Dubinka v. Judges of Super. Ct. of State of Cal. for Cnty. of L.A.*, 23 F.3d 218, 225-26 (9th Cir. 1994) ("The fact that state . . . courts may reject (or have rejected) arguments on the merits, however, does not mean those courts have deprived a plaintiff of the *opportunity* to make the argument[.]"). On the contrary, it demonstrates that HAF has had an opportunity and, in fact, has been heard. Similarly, Mr. Iyer and Mr. Kompella were not precluded by CRD or any court from raising their claims during the nearly *three years* that they were defendants. And, contrary to Plaintiffs' assertions (*see* ECF No. 58 at 1:4-6, 1:11-12, 7:4-5), they were not quickly or unilaterally dismissed from the State Action in an attempt by CRD to circumvent or deprive them of their rights to defend themselves. In fact, they first sought to be dismissed from the State Action as early as December 2020. (Declaration

of Carly J. Munson in Support of Supplemental Request for Judicial Notice ("Munson Decl."), Exh. A). When CRD did not dismiss them, Mr. Iyer and Mr. Kompella moved for sanctions. (Munson Decl., Exh. B & C). Mr. Iyer and Mr. Kompella ultimately negotiated with CRD to be dismissed from the State Action in 2023 by virtue of a mutual settlement and release. (*See* ECF Nos. 56-2 at 2:11-13 & 5:8-10, 56-9 & 56-10). It is therefore disingenuous for Plaintiffs HAF, Iyer, and Kompella to claim they have not had a full and fair opportunity or are like the *Benavidez* intervenors who were barred from presenting their claims by the California Supreme Court *before* they filed suit in federal court.

As to the remaining Individual Plaintiffs—who all claim to be aligned with or members of HAF—Plaintiffs make no argument about why they have not attempted or could not attempt to raise their claims in the State Action. (*See* ECF No. 58 at 7:7-11).[4] "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co.*, 481 U.S. at 15. Accordingly, the Court should presume that they, like Plaintiffs HAF, Iyer, and Kompella, had or have an opportunity to present their claims in the ongoing State Action.

**C.   Plaintiffs Have Not Demonstrated that "Extraordinary Circumstances" Justify the Court's Declining to Abstain Under *Younger***

Finally, the "extraordinary circumstances" exception does not apply here. Federal courts may decline to abstain and enjoin pending state court proceedings in those "extraordinary circumstances" where the court "properly finds that the state proceeding was motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" *Huffman*, 420 U.S. at 611 (citing *Younger*, 401 U.S. at 53-54). The "danger of irreparable loss" must be "both great and immediate." *Younger*, 401 U.S. at 46; *see also World Famous Drinking*

---

[4] Any argument that the remaining Individual Plaintiffs were not afforded the same opportunity as HAF to raise claims in the State Action undermines HAF's alleged basis for associational standing.

9

*Emporium, Inc. v. City of Tempe*, 820 F.2d 1079 (9th Cir. 1987).  The "extraordinary circumstances" exception to *Younger* abstention is "very narrow."  *Dubinka*, 23 F.3d at 225.

Here, Plaintiffs claim that they fit within the "extraordinary circumstances" exception because they will face "irreparabl[e] harm" if the Court abstains.  (ECF No. 58 at 8:5:7).  However, Plaintiffs have failed to identify *any* facts—let alone facts alleged in the SAC—showing that they will face irreparable harm if this lawsuit is dismissed under the *Younger* abstention doctrine.  (*See id.*)  And Plaintiffs offer no legal support for their argument that their suit, which neither challenges a statute nor alleges that the State Action was brought for the purposes of harassment, otherwise falls within the narrow "extraordinary circumstances" exception.  (*See id.*)[5]  Plaintiffs offer no substantiated basis—let alone an extraordinary one—for the Court to decline to abstain under *Younger*.

## II.  PLAINTIFFS LACK STANDING TO PURSUE THIS LITIGATION

Plaintiffs contend that the Individual Plaintiffs have direct standing and that HAF has both direct and associational standing to raise claims under the Free Exercise, Establishment, Due Process, and Equal Protection Clauses.  (ECF No. 58 at 8-17).  Yet, as discussed in Defendant's Motion, Plaintiffs have failed to plead facts sufficient to show that HAF or any Individual Plaintiff has standing under either theory for any claim asserted.  (*See* ECF No. 55 at 11-23).

HAF lacks direct standing: it has not satisfied Article III's requirements (*see Arizona Alliance for Retired Americans v. Mayes*, 117 F.4th 1165, 1173-81 (9th Cir. 2024) (*petition for reh'g en banc pending*)) or demonstrated that CRD's actions have frustrated its mission and forced it to expend resources and take action to avoid other injury as a result of the State Action. *See Our Watch with Tim Thompson v. Bonta*, 682 F. Supp. 3d 838, 847 (E.D. Cal. 2023) (citing *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021).  In their Opposition, Plaintiffs claim that HAF has

---

[5] Plaintiffs further rely on *Arevalo v. Hennessy*, 882 F.3d 763 (9th Cir. 2018), in arguing that the "extraordinary circumstances exception constitutes an independent basis for federal intervention regardless of whether the *Younger* factors are met."  (ECF No. 58 at 8).  *Arevalo* held that a deprivation of *physical* liberty—being detained in jail—may constitute irreparable harm that "requires intervention" by the federal court "before trial" in the state court under *Younger*'s narrow exception.  *Arevalo*, 882 F.3d at 767. Plaintiffs have alleged no such deprivation of physical liberties or other tangible harm.  (*See* ECF No. 50).

direct standing because knowledge of and disagreement with CRD's State Action has caused unspecified "spiritual and mental suffering" (*id.* at 13:22-14:2) for various individuals ranging from staff to newsletter recipients who live and work in California (ECF No. 58 at 14:24-15:3). HAF also alleges it has had to "expend considerable time and resources defending the integrity of Hinduism" and has faced a "barrage of calls and concerns" since CRD filed its State Action. (*Id.* at 13:2-3 & 13:6-7). Even if Plaintiffs' statements are accepted as true for purposes of this Motion, they are insufficient for standing. As in their original complaint, Plaintiffs have not shown—nor even alleged—that HAF would have suffered *any* "other injury" nor that it avoided such injury by "divert[ing] resources to counteracting" the State Action. *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d at 1083, 1088 (9th Cir. 2010). Nor have they shown how the State Action has frustrated HAF's mission. (*See* ECF Nos. 58 at 13-15 & 50 ¶¶ 29-31, 45-51). In fact, the advocacy and educational outreach HAF alleges it has undertaken in response to third-party inquiries about *CRD v. Cisco* appear to fall squarely *within* HAF's stated mission and ordinary activities. (*See* ECF No. 55 at 18-20; *see also* ECF No. 50 ¶¶ 29-31, 36-37, 40).

HAF also lacks associational standing. First, as in their original complaint, HAF has failed to identify a clear constituency, let alone one that has suffered the requisite injury under any of the claims asserted and whose interests HAF can represent in this suit. (*See* ECF No. 55 at 21-22). Plaintiffs again refer to diverse groups such as "Hindu Americans throughout the United States" (ECF No. 58 at 15:20), "Hindu Americans in California" (*id.* at 16:3), and "the community of American and California citizens entitled to [constitutional rights]" (*id.* at 10:8-9), but those are significantly larger and more diffuse than those that courts have found appropriate for the purposes of associational standing.[6] *See, e.g., Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111-12 (9th Cir. 2003); *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096-97 (9th Cir. 2021); *Catholic League for Religious & C.R. v. City & Cnty. of S.F.*, 624 F.3d 1043, 1048, 1063-

---

[6] In their SAC, Plaintiffs also allege that HAF represents all Indian Americans and South Asian Americans. (*See* ECF No. 50 ¶¶ 38, 43-44). In their Opposition, Plaintiffs refer to such groups in passing (*see, e.g.,* ECF No. 58 at 17:6 (referring to "employees of Indian origin at Cisco"), but again fail to address how HAF can properly represent such expansive and diverse groups in this suit. (*See* ECF Nos. 55 at 21-22, 58 at 15-17).

11

64 (9th Cir. 2010). Plaintiffs also claim that HAF represents the interests of Hindu Americans who work at Cisco. (ECF No. 58 at 15:20-21). Yet they have not alleged facts to this effect in their SAC. (*See* ECF No. 50). Moreover, it is doubtful that HAF could establish that it represents the interests of all such individuals; indeed, CRD initiated its State Action after receiving a complaint from a Hindu American then and now employed by Cisco who alleged caste-based discrimination. (*See* ECF 56-4 ¶¶ 10-15).

Second, Plaintiffs have not demonstrated that HAF satisfies any of the factors required for associational standing under *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342-43 (1977). Plaintiffs claim that their suit satisfies the *Hunt* factors but fail to include even a single citation to the SAC to demonstrate how their allegations satisfy the rigorous standing test. (ECF No. 58 at 16-17). And they again misstate and mischaracterize CRD's pleadings and actions in the State Action. (*See* ECF No. 58 at 1-3, 6-16; *see also* ECF Nos. 55 at 29-31 & 56-4). In particular, the SAC patently disregards that CRD has amended its complaint in *CRD v. Cisco* to remove the language about which Plaintiffs complain in their SAC. (*Compare* ECF No. 50 *with* ECF No. 56-4). Further, HAF critically fails to show how its alleged members or constituents—including the Individual Plaintiffs—would have standing in their own right to bring these claims, claiming instead that CRD's arguments on this point are "irrelevant tangents." (ECF No. 58 at 9:18-20, 6-16).

Instead, Plaintiffs erroneously contend that, under *Catholic League*, HAF and the Individual Plaintiffs have standing in any type of "religious freedom case" simply because they have alleged injuries that are "mental, psychological, and spiritual" in nature caused by their awareness of and disagreement with the State Action. (ECF No. 58 at 8:18-9:16, 12-17). As a practical matter, an organization cannot experience "psychological harms," nor has HAF cited any cases recognizing an organization's standing on that basis. (*See id.* at 12-17). Individual Plaintiffs' reliance on *Catholic League* is equally misplaced. Under *Catholic League*, plaintiffs asserting psychological and spiritual harms must show that those harms are tied to real consequences in their particular political community to have standing to bring an Establishment Clause claim. *Catholic League*, 624 F.3d at 1051-53. Plaintiffs have failed to do so here. The SAC fails to allege facts that: (1)

12

identify a discernable political community to which the Individual Plaintiffs belong; and (2) show that the Individual Plaintiffs have been ostracized from or suffered some other tangible harm similar to that demonstrated by the plaintiffs in *Catholic League* as a result of the State Action. (*See* ECF No. 50 at 2-26; *see also* ECF No. 55 at 14-15, 27-31).[7]

Further, as Director Kish addressed in his Motion, alleged psychological injuries alone, even if accepted as true for purposes of this Motion, are insufficient to give HAF—or any Individual Plaintiff—standing under Article III to maintain Free Exercise, Due Process, or Equal Protection Clause claims. (*See* ECF No. 55 at 12-20). *See Bd. of Educ. of Cent. Sch. Dist. v. Allen*, 392 U.S. 236, 249 (1968) (Free Exercise Clause requires coercive effect on plaintiffs' practice of religion);[8] *Montclair Police Officers' Ass'n v. City of Montclair*, No. 2:12-cv-06444-PSG-PLA, 2012 WL 12888427, at *4 (C.D. Cal. Oct. 24, 2012) (Due Process Clause requires plaintiffs to show government's actions have chilled their ability to engage in a constitutionally protected activity); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (Equal Protection Clause requires plaintiffs to show intentional discrimination based on a protected characteristic and that those similarly situated were treated differently).

### III. PLAINTIFFS IYER'S AND KOMPELLA'S EQUAL PROTECTION CLAIMS ARE MOOT

As discussed in Defendant's Motion, Plaintiffs Iyer's and Kompella's claims under the Equal Protection Clause are moot because they were dismissed with prejudice from the State Action five months *before* they attempted to join this case as Individual Plaintiffs. (ECF No. 55 at 25-27; *see also* ECF Nos. 56-9 & 56-10). In their Opposition, Plaintiffs contend that Mr. Iyer's and Mr. Kompella's equal protection claims are not moot because the operative complaint in the State Action describes actions CRD alleges they took in their roles as supervisors at Cisco. (*See*

---

[7] In their Opposition, Plaintiffs claim for the first time that they belong to the political community of all "American and California citizens entitled to their free exercise, due process, and equal protection rights" without condemnation. (ECF No. 58 at 10:8-9). *Catholic League* involved the discrete and discernible political community of one city, where Catholic citizens alleged that a local government proclamation had chilled their participation in local political processes. *Catholic League*, 624 F.3d at 1051-53. A "community" as vast as the entire nation or state could not constitute a "political community" under *Catholic League*. And the SAC lacks allegations to this effect. (*See* ECF No. 50 at 2-26).

[8] And, contrary to Plaintiffs' assertions, the operative State Action neither seeks to hold any individuals liable for being Hindu nor alleges that caste discrimination is an inherent part of Hinduism or that Hinduism or practicing Hinduism is "inherently illegal." (*Compare* ECF No. 56-4 *with* ECF No. 58 at 9:22-10:1).

ECF No. 58 at 17-18). They contend that this action will provide relief from this "slander." (*Id.*)[9]

Mr. Iyer and Mr. Kompella's claims overstretch the allegations in the State Action. The State Action alleges that Mr. Narsude's own caste is Dalit Indian, that his caste identity comprises religion, race/ethnicity, national origin, and ancestry, and that he suffered employment discrimination on these bases. (*See* ECF No. 56-4 ¶¶ 1, 28-50). Even assuming *arguendo* that CRD is ultimately unable to prove its factual allegations about Mr. Iyer's and Mr. Kompella's motivations in how they formerly supervised Mr. Narsude, this does not revive moot claims—to the extent such claims ever existed. (*See* ECF No. 55 at 25-27). And Plaintiffs do not seek any relief for alleged "slander." (*See* ECF No. 50 at 35). Moreover, even if this Court agreed with Plaintiffs' premise that CRD has erred in some way in the State Action, the relief that Plaintiffs seek here would neither afford Mr. Iyer and Mr. Kompella the ability "to defend themselves in the [State Action]" (*see* ECF No. 58 at 18) nor operate to change the minds of third parties regarding either Hinduism or caste-based systems (*see* ECF No. 58 at 10:2-3).

Furthermore, as discussed in Director Kish's Motion, Plaintiffs have not pled facts sufficient to establish equal protection claims here. (*See* ECF Nos. 50 ¶¶ 15-20, 112-135 & 58 at 17-18; *see also* ECF No. 55 at 37-39). The fact remains that the crux of Mr. Iyer's and Mr. Kompella's alleged claims under the Equal Protection Clause as stated in the SAC is their disagreement with CRD's charging decisions in the State Action. (ECF No. 50 ¶¶ 15-20, 112-135). Mr. Iyer and Mr. Kompella have been dismissed with prejudice from that suit. (ECF Nos. 56-9 & 56-10). And, in any case, courts are properly hesitant to review such matters that fall within prosecutorial discretion. *See United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)). (*See also* ECF No. 55 at 38-39).

IV. **THE SAC FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In his Motion, Director Kish detailed how Plaintiffs have failed to state any constitutional claim upon which relief can be granted. (*See* ECF No. 55 at 27-40). In their Opposition,

---

[9] Plaintiffs' argument that the injunctive relief sought here will remedy this alleged "slander" in the operative complaint of the State Action undermines their contention that this federal action will not intrude on or interfere with the State Action under *Younger*. (*See* Section I.A., *supra* at 5).

14

Plaintiffs fail to address or rebut *any* of Director Kish's arguments or demonstrate how they have alleged sufficient facts to state each of their five claims. (*See* ECF No. 58 at 18-20). Instead, Plaintiffs recite the pleading standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and then state in conclusory fashion that their FAC "satisfies the pleading requirements" and "sets forth [] plausible claim[s] for relief." (*Id.* at 19-20). As Director Kish has explained, they have not. (*See* ECF No. 55 at 27-40).

## V. ANY FURTHER AMENDMENT WOULD BE FUTILE

Plaintiffs have requested that, in the event that the Court grants the Motion, the Court afford them an additional opportunity to amend their complaint. (ECF No. 58 at 20:11-13). Courts should dismiss a party's claim without leave to amend where amendment would be futile. *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011). Such futility has been demonstrated here. HAF was given leave to amend its complaint in August 2023 and failed to cure its pleading deficiencies. *See Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). And Plaintiffs' Opposition—which lacks any viable legal argument and fails to demonstrate how any Plaintiff has the ability to maintain this suit—further demonstrates that any additional leave to amend would be futile. (*See* ECF No. 58). Plaintiffs need not be afforded another opportunity to amend.

## CONCLUSION

For the reasons discussed above, Defendant Kish respectfully asks that this Court dismiss Plaintiffs' complaint in its entirety pursuant to the *Younger* abstention doctrine or, in the alternative, Rule 12(b)(1) or (b)(6).

Respectfully submitted,

ROB BONTA
Attorney General of California
MICHAEL NEWMAN
Senior Assistant Attorney General
WILLIAM H. DOWNER
Supervising Deputy Attorney General

/s/ Carly J. Munson
CARLY J. MUNSON
Deputy Attorney General
*Attorneys for Director Kevin Kish*

Dated: November 18, 2024