1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    HINDU AMERICAN FOUNDATION,              No.  2:22-cv-01656-DAD-JDP
      INC., et al.,
12
                     Plaintiffs,
13                                            ORDER GRANTING DEFENDANT'S
          v.                                  MOTION TO DISMISS PLAINTIFFS'
14                                            SECOND AMENDED COMPLAINT
      KEVIN KISH,                             WITHOUT LEAVE TO AMEND
15
                     Defendant.               (Doc. No. 55)
16

17

18           This matter is before the court on defendant's motion to dismiss plaintiffs' second

19    amended complaint ("SAC") on the grounds that plaintiffs lack standing and have failed to state a

20    claim upon which relief can be granted.  (Doc. No. 55.)  On September 10, 2024, the court took

21    the matter under submission pursuant to Local Rule 230(g).  (Doc. No. 57.)  For the reasons

22    below, the court will grant defendant's motion to dismiss plaintiffs' second amended complaint

23    without further leave to amend.

24                                        **BACKGROUND**

25           On August 27, 2024, plaintiffs Hindu American Foundation, Inc. ("the Foundation");

26    Ramana Kompella, Sundar Iyer (collectively "plaintiffs Kompella and Iyer"); and Samir Kalra,

27    Dilip Amin, Mihir Megan, Sangeetha Shankar, Shaishav Desai, and Srivats Iyer (collectively the

28    "Individual Plaintiffs") filed their SAC seeking declaratory and injunctive relief against Kevin

                                                    1

1    Kish, in his official capacity as the Director of the California Civil Rights Department

2    ("Department"), for allegedly violating the constitutional rights of all Hindu Americans.  (Doc.

3    No. 50.)  In their SAC, plaintiffs allege as follows.

4         The Department is pursuing enforcement actions brought under the California Fair

5    Employment and Housing Act ("FEHA") in which it is wrongly asserting "that a caste system and

6    caste-based discrimination are integral parts of Hindu teachings and practices[.]"  (*Id.* at 2.)  In

7    those enforcement actions, the Department purportedly "alleges that a caste system is 'a strict

8    Hindu social and religious hierarchy,' which requires discrimination by 'social custom and legal

9    mandate' and that Hindu Americans, therefore, adhere to this strict and discriminatory religious

10   hierarchy in violation of the FEHA."  (*Id.*)  According to plaintiffs, the Foundation is "the largest

11   and most respected Hindu educational and advocacy institution in North America[.]"  (*Id.* at 4.)

12   The Foundation has consistently maintained throughout its history that a caste system or

13   discrimination based on caste is not a legitimate part of Hindu beliefs, teachings, or practices;

14   vehemently opposes all types of discrimination; and "takes great exception to the State of

15   California defaming and demeaning all of Hinduism by attempting to conflate a discriminatory

16   caste system with the Hindu religion."  (*Id.* at 4.)  In their SAC, however, plaintiffs appear to refer

17   to only one enforcement action—filed in the Santa Clara Superior Court with Case No. 20-cv-

18   372366—pursued by the Department against an entity referred to as "Cisco" ("the State Action").

19   (*Id.* at ¶¶ 4, 57.)[1]

20   

21   [1]  Defendant requests that the court take judicial notice of several documents filed in *CRD v.*
     *Cisco*, No. 20-cv-372366, Santa Clara County Superior Court.  (Doc. Nos 56, 60.)  These

22   documents include various motions, accompanying memoranda, the second amended complaint
     filed in the State Action, a court order denying the Foundation's motion for leave to intervene, the

23   notice of appeal as to that order, abandonment of that appeal, the voluntary request for dismissal
     of plaintiffs Sundar Iyer and Ramana Kompella as defendants in the State Action, and the entry of

24   dismissal as to those parties.  (Doc. Nos. 56 at 2–3; 60 at 2.)  Pursuant to Federal Rule of
     Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute

25   because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be
     accurately and readily determined from sources whose accuracy cannot reasonably be

26   questioned."  Fed. R. Evid. 201(b).  Courts "may take judicial notice of undisputed matters of
     public record, including documents on file in federal or state courts."  *Harris v. Cnty. of Orange*,

27   682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).  Accordingly, the court will grant

28   defendant's request for judicial notice of the requested documents.  (Doc. Nos. 56, 60.)

Plaintiffs allege that the Department is seeking to "adopt a legal definition of Hinduism that incorrectly includes caste, a caste system, caste hierarchies, and caste-based discrimination." (*Id.* at ¶ 60.)  In doing so, the Department is "attempting to define Hinduism against the beliefs of an overwhelming number of its own adherents, in direct violation of the constitutional right[s] . . . of all Hindu Americans."  (*Id.* at ¶ 61.)  Plaintiff Samir Kalra, a managing director at the Foundation, has "spent hundreds of hours, in spite of limited time and resources" developing educational materials and responding to media inquiries to defend against the Department's portrayal of Hinduism.  (*Id.* at ¶ 4.)  The effect of the Department's conduct has taken a "deep psychological and spiritual toll on Mr. Kalra and all of the Individual Plaintiffs."  (*Id.* at ¶ 7.) The Individual Plaintiffs have been confronted by questions about the Department's "case against Cisco" at social and religious events, causing the Individual Plaintiffs to experience emotional distress and fear to openly practice Hinduism.  (*Id.* at ¶¶ 8–22.)

According to the allegations of the SAC, plaintiffs Kompella and Iyer were employees of Cisco Systems when the Department filed its enforcement action in the Santa Clara Superior Court.  (*Id.* at ¶¶ 15–20.)  Plaintiffs Kompella and Iyer were also originally named as defendants in that enforcement action.  (*Id.*)  It appears that the State Action is still pending against Cisco, but that plaintiff Foundation and plaintiffs Kompella and Iyer are no longer parties to that action. (*See* Doc. No. 56-7) (state court order denying the plaintiff Foundation's motion to intervene in the State Action); (Doc. No. 56-9) (voluntary dismissal of Kompella and Iyer from the State Action).

Based on these allegations, plaintiffs assert five claims against defendant under 42 U.S.C. § 1983 for:  (1) violation of the Establishment Clause of the First Amendment, brought by all plaintiffs; (2) violation of the Free Exercise Clause of the First Amendment, brought by all plaintiffs; (3) denial of procedural due process due to vagueness (without reference to a provision of the U.S. Constitution), brought by all plaintiffs; (4) denial of equal protection based on religious classifications in violation of the Equal Protection Clause of the Fourteenth Amendment, brought by all plaintiffs; and, (5) denial of equal protection based on national origin in violation of the Equal Protection Clause of the Fourteenth Amendment, brought by plaintiffs Kompella and

Iyer.  (*Id.* at ¶¶ 75–135.)  In terms of relief, plaintiffs seek declaratory and injunctive relief in the form of a court order which:  (1) declares that the Department has violated the "First Amendment, Due Process, and Equal Protection rights of Hindu Americans"; (2) enjoins the Department from "engaging in any act or practice that seeks to define Hinduism as including a caste system or any other belief or practice"; (3) enjoins the Department from "bringing any religious discrimination action based on the premise that Hindu belief and practice includes a caste system"; (4) enjoins the Department from "ascribing religious or moral beliefs or practices to persons or groups who expressly disclaim any such beliefs or practices"; (5) enjoins the Department from "ascribing caste-ist beliefs or practices to persons of Indian [sic] or Indian Americans based on their national origin"; and, (6) enjoins the Department from "ascribing religious beliefs to Indian [sic] or Indian Americans based on their national origin."  (*Id.* at 35.)

On August 31, 2023, the court granted defendant's motion to dismiss the plaintiff Foundation's complaint, as well as the parties' requests for judicial notice.  (Doc. Nos. 10, 16, 20.)  Plaintiffs filed the operative SAC on August 27, 2024.  (Doc. No. 50.)  On September 10, 2024, defendant filed the pending motion to dismiss plaintiffs' SAC pursuant to Rules 12(b)(1) and 12(b)(6) and a request for judicial notice.  (Doc. Nos. 55, 56.)  On October 18, 2024, plaintiffs filed their opposition to defendant's motion.  (Doc. No. 58.)  Defendant filed a reply and a supplemental request for judicial notice on November 18, 2024.  (Doc. Nos. 59, 60.)

Below the court first sets out the applicable legal standards to be employed in resolving the pending motion to dismiss before turning to the arguments of the parties.

**APPLICABLE LEGAL STANDARDS**

"Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions."  *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021).  Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  Subject matter jurisdiction is required; it cannot be forfeited or waived.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at

1156.  Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may "challenge a federal court's jurisdiction over the subject matter of the complaint."  *Nat'l Photo Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014).  "A motion to dismiss on *Younger* abstention grounds is also properly brought under Rule 12(b)(1)."  *Applied Underwriters, Inc. v. Lara*, 530 F. Supp. 3d 914, 923 (E.D. Cal. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998) and *Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1058 (9th Cir. 2016)).

## A.    *Younger* Abstention

"*Younger* abstention is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism."  *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (quoting *San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091 (9th Cir. 2008)).  In *Younger*, the Supreme Court held that "absent extraordinary circumstances, a federal court may not interfere with a pending state criminal prosecution."  *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011) (citing *Younger v. Harris*, 401 U.S. 37, 54 (1971)).  The Supreme Court has since extended *Younger* abstention to additional categories of civil proceedings identified in its decision in *New Orleans Pub. Serv., Inc. v. Council of New Orleans* ("*NOPSI*"), 491 U.S. 350, 367–68 (1989).  These additional categories have been recognized as including "'state civil proceedings that are akin to criminal prosecutions, and . . . state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts.'"  *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014)); *see also Potrero Hills Landfill, Inc.*, 657 F.3d at 882 ("[T]he Supreme Court has extended *Younger* abstention to the civil context on numerous occasions.").  These three categories of cases to which *Younger* abstention has been extended are known as the *NOPSI* categories.  *Herrera*, 918 F.3d at 1044.

/////

"To warrant *Younger* abstention, a state civil action must fall into one of the *NOPSI* categories, and must also satisfy a three-part inquiry:  the state proceeding must be (1) 'ongoing,' (2) 'implicate important state interests,' and (3) provide 'an adequate opportunity . . . to raise constitutional challenges.'"  *Id.* (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).  In addition, the Ninth Circuit has "articulated an implied fourth requirement that (4) the federal court action would 'enjoin the proceeding, or have the practical effect of doing so.'"  *Potrero Hills Landfill, Inc.*, 657 F.3d at 882 (quoting *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148–49 (9th Cir. 2007)).  "For *Younger* to apply, all four requirements must be 'strictly satisfied.'"  *Barra v. City of Kerman*, No. 1:08-cv-01909-OWW-GSA, 2009 WL 1706451, at *5 (E.D. Cal. June 9, 2009) (citing *AmerisourceBergen Corp.*, 495 F.3d at 1149).

**B.    Standing**

"A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  A party making a facial attack does not submit supporting evidence with the motion because jurisdiction is challenged based solely on the pleadings.  *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do not consider evidence outside the pleadings when deciding a facial attack.") (citation omitted).  Important for purposes of resolving the pending motion, it has been recognized that "[t]he district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):  [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  However, in doing so the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

/////

6

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In ruling on a party's factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* The movant may "rely on affidavits or any other evidence properly before the court," and the party opposing the motion must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979)).

Here, defendant moves to dismiss contending that the allegations of plaintiff's SAC are insufficient for purposes of Article III standing. (Doc. No. 55 at 25–38.) The pending motion therefore poses a facial attack under Rule 12(b)(1). Although defendant does rely on documents outside of the SAC, the only such documents have either been judicially noticed or are the subject of defendant's pending requests for judicial notice (Doc. Nos. 10, 56, 60), which are ordinarily properly considered by the court when analyzing the face of a complaint. *See Carpenter v. OneWest Bank, FSB*, No. 12-cv-00895-MMM-OP, 2012 WL 13012420, at *2 (C.D. Cal. Apr. 25, 2012) ("Even when deciding a facial attack, however, a court can look beyond the complaint to consider documents that are proper subjects of judicial notice.") (collecting cases); *see also Leite*, 749 F.3d at 1121 ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)."); *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (explaining that matters properly the subject of judicial notice may be considered along with the complaint in deciding a Rule 12(b)(6) motion).

/////

/////

/////

/////

/////

/////

7

**DISCUSSION**

**A.      Plaintiffs Kompella and Iyer**

Defendant first argues that plaintiffs' SAC should be dismissed in its entirety pursuant to the *Younger* abstention doctrine.[2]  (Doc. No. 55 at 20.)  Defendant contends that allowing this action to proceed would effectively enjoin the State Action.  (*Id.* at 23.)  Plaintiffs counter that the *Younger* abstention doctrine does not apply here because:  (1) the State Action is not a state criminal proceeding and does not fall within any of the *NOPSI* categories; (2) none of plaintiffs in this action are parties to the State Action; (3) the State Action seeks relief on behalf of a single individual and is not a matter involving any important state interest; and, (4) plaintiffs Kompella and Iyer were not able to litigate their claims presented in this case in the State Action.  (Doc. No. 58 at 8.)

1.      Whether the State Action Falls into One of the *NOPSI* Categories

As noted above, "[a] federal court may abstain under *Younger* in three categories of cases: (1) parallel, pending state criminal proceedings, (2) state civil proceedings that are akin to criminal prosecutions, and (3) state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts. . . . [T]hese three categories are known as the *NOPSI* categories."  *Herrera*, 918 F.3d at 1043–44 (internal quotation marks omitted) (quoting *ReadyLink Healthcare, Inc.*, 754 F.3d at 759)  The second category listed above encompasses

---

[2]  Defendant also argues that plaintiffs Kompella and Iyer lack standing to bring this action. (Doc. No. 55 at 25.)  However, because the court will grant defendant's motion to dismiss plaintiffs Kompella and Iyer on *Younger* abstention grounds, it need not consider this argument. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("Thus, as the Court observed in *Steel Co.*, district courts do not overstep Article III limits when they . . . abstain under *Younger v. Harris*, . . . without deciding whether the parties present a case or controversy[.]")  Defendant also moves to dismiss the claims of the Individual Plaintiffs and the plaintiff Foundation on *Younger* abstention grounds.  (Doc. No. 55 at 20.)  However, as will be explained below, the dismissal of the Individual Plaintiffs is appropriate based on their lack of standing to bring their claims.  *See Ashmore v. Regents of the Univ. of Cal.*, No. 10-cv-09050-AHM-AGR, 2011 WL 6258460, at *4–7 (C.D. Cal. Dec. 15, 2011) (abstaining from hearing the claims of some plaintiffs on *Younger* abstention grounds but declining to abstain as to a plaintiff who was not involved in the underlying state court criminal action).  Accordingly, the question of whether *Younger* abstention applies in this case will be addressed by the court only with respect to plaintiffs Kompella and Iyer.

1   enforcement actions which are "characteristically initiated to sanction the federal plaintiff, *i.e.*,

2   the party challenging the state action for some wrongful act." *Sprint Comm'ns v. Jacob*, 571 U.S.

3   69, 79 (2013).  "In cases [falling within the second *NOPSI* category], a state actor is routinely a

4   party to the state proceeding and often initiates the action." *Id.*

5           Defendant argues that the State Action is a civil enforcement proceeding which in

6   important respects is akin to a criminal prosecution such that it falls into this second *NOPSI*

7   category of cases.  (Doc. No. 55 at 21.)  Specifically, defendant contends that the State Action

8   was brought by the Department in its role as a public prosecutor to pursue violations of FEHA.

9   (*Id.* at 21–22.)  Plaintiffs in response assert that the Department is instead "acting as the attorney

10  for the plaintiff in the State Action," bringing claims that the State Action complainant could have

11  brought as an individual.  (Doc. No. 58 at 9.)

12          A review of the second amended complaint filed in the State Action reflects that there the

13  Department alleges as follows.  It has investigated a claim made by an employee of Cisco

14  regarding discrimination, pursuant to the authority conferred to it under California Government

15  Code §§ 12930(f) and 12963.  (Doc. No. 56-4 at ¶ 12); *see also Wood v. Super. Ct. of San Diego*

16  *Cnty.*, 46 Cal. App. 5th 562, 579 (2020) ("Under FEHA, [the Department][3] is tasked with, among

17  other things, receiving, investigation, conciliating, mediating, and prosecuting complaints of

18  unlawful discrimination.") (citing Cal. Gov't Code § 12960), *as modified* (Apr. 8, 2020).

19  Following its investigation, the Department convened a mandatory dispute resolution session and

20  later filed the State Action pursuant to FEHA.  (Doc. No. 56-4 at ¶¶ 13–15.)  Because the

21  Department is a state actor which conducted an initial investigation and then filed a formal

22  complaint seeking to enforce a state statute, the court finds that the State Action is akin to a

23  criminal prosecution and thus comes within the second *NOPSI* category.  *Sprint Commc'ns* 571

24  U.S. at 79 (holding that *Younger* abstention applies to civil enforcement actions and noting that in

25  such cases "a state actor is routinely a party to the state proceeding and often initiates the

26

27  _____

    [3]  Prior to 2022, the Civil Rights Department was known as the Department of Fair Employment
    and Housing.  *See* CA LEGIS 48 (2022), 2022 Cal. Legis. Serv. Ch. 48 (S.B. 189) (WEST)
28  ("This bill would change the name of the department to the Civil Rights Department.").

1  action."); *see also Morning Hill Foods, LLC v. Hoshijo*, 259 F. Supp. 3d 1113, 1122 (D. Haw.

2  2017) (concluding that an enforcement action brought by the Hawaii Civil Rights Commission

3  alleging age discrimination was the type of proceeding that appropriately triggers application of

4  *Younger* abstention); *Dickten Masch Plastics, LLC v. Williams*, 199 F. Supp. 3d 1207, 1224 n.11

5  (S.D. Iowa 2016) ("State administrative proceedings aimed at identifying and remedying

6  unlawful employment discrimination, such as the [Iowa Civil Rights Commission] investigation

7  at issue here, often qualify for *Younger* abstention.").

8      Plaintiffs' contention that the Department was acting as the attorney for the complainant

9  in the State Action is simply incorrect.  The Department itself was the plaintiff in the State

10  Action.  (Doc. No. 56-4 at ¶ 16.)  The Department plainly sought relief to benefit multiple Cisco

11  employees as evidenced by the fact that it sought a permanent injunction to ensure compliance

12  with FEHA.  (*Id.* at 19–20); *see Dep't of Fair Emp. & Hous. v. Cisco Sys., Inc.*, 82 Cal. App. 5th

13  93, 100 (2022) ("As the public arm of the enforcement procedure, the Department acts

14  independently when it sues for FEHA violations. . . . [U]nder the relevant legislation, the

15  Department has discretion to decide whether to file suit . . . and it can seek remedies beyond those

16  available in a suit brought by an employee[.]") (citing Cal. Gov't Code § 12965).  That the

17  Department's investigation was initiated because of an employee complaint has no impact upon

18  the quasi-criminal nature of the State Action.  Plaintiffs have provided no authority that would

19  even suggest otherwise.

20      2.  Whether the Additional Factors for *Younger* Abstention Are Satisfied

21      Defendant also asserts that the four remaining factors identified by the Ninth Circuit as

22  appropriately considered in determining whether *Younger* abstention applies are satisfied here.

23  (Doc. No. 55 at 22.)  Plaintiffs appear to concede that the State Action remains pending and is

24  ongoing.  Rather, plaintiffs contest whether the State Action implicates important state interests,

25  whether plaintiffs Kompella and Iyer have had an adequate opportunity to raise their

26  constitutional challenges in the State Action, and whether granting the requested injunctive relief

27  would have the practical effect of enjoining the state proceeding.  (Doc. No. 58 at 10–11.)  The

28  court will consider each of these arguments in turn below.

10

a.     *Whether the State Action Implicates Important State Interests*

Defendant argues that the State Action implicates the important state interest in eliminating discrimination in California.  (Doc. No. 55 at 22) (citing *Ohio Civil Rights Comm'n*, 477 U.S. at 628 ("We have no doubt that the elimination of prohibited sex discrimination is a sufficiently important state interest[.]").  Plaintiffs respond that preventing the Department "from violating the religious, equal protection, and due process rights of Hindu Americans in no way interferes with a state's ability to carry out its judicial, legislative, or executive functions[,]" and again claims that the Department is acting as the attorney for a private party in pursuing the State Action.  (Doc. No. 58 at 10.)  Both of these contentions are entirely unpersuasive:  The elimination of prohibited discrimination is an important state interest which satisfies the requirements of *Younger*.  *Morning Hill Foods, LLC*, 259 F. Supp. 3d at 1122 ("[T]he Supreme Court expressly held that there is 'no doubt' that the elimination of prohibited discrimination 'is a sufficiently important state interest' to satisfy the requirements of *Younger*.") (citing *Ohio Civil Rights Comm'n*, 477 U.S. at 628).  Above, the court has already rejected plaintiffs' contention that the Department is serving as the attorney for the complainant in the State Action as being simply incorrect.

Accordingly, the court concludes that the State Action implicates important state interests.

b.     *Whether the State Action Provided an Adequate Opportunity for Plaintiffs to Litigate Their Constitutional Claims*

Defendant argues that Kompella and Iyer, plaintiffs in this case, had an adequate opportunity to raise their federal constitutional claims prior to their voluntary dismissal from the State Action.  (Doc. No. 55 at 22.)  Plaintiffs contend that they had no such opportunity because Kompella and Iyer were dismissed as defendants in the State Action prior to being able to raise their federal constitutional challenges.  (Doc. No. 58 at 11.)  Plaintiffs further claim, without

/////

/////

/////

/////

1    citation to authority, that it is the defendant who bears the burden of demonstrating that plaintiffs

2    had an adequate opportunity to litigate their constitutional claims in the State Action. [4]  (*Id.*)

3         "[U]sually, federal plaintiffs who are not also parties to pending litigation in state court

4    may proceed with their federal litigation."  *Green v. City of Tucson*, 255 F.3d 1086, 1099 (9th Cir.

5    2001), *overruled on other grounds*, *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004).  The

6    Ninth Circuit has previously found that *Younger* abstention does not apply to federal plaintiffs

7    who were "unilaterally dismissed" from a pending state action before they had an opportunity to

8    present a defense.  *Vasquez v. Rackauckas*, 734 F.3d 1025, 1035 (9th Cir. 2013).  Defendant's

9    argument appears to be that plaintiffs Kompella and Iyer were given a sufficient opportunity to

10   raise their federal constitutional claims prior to their dismissal from the State Action.  (Doc. No.

11   59 at 13) (arguing that plaintiffs Kompella and Iyer could have raised claims during the "nearly

12   three years that they were defendants" and that they were not quickly or unilaterally dismissed).

13   However, because the court concludes that the interests of plaintiffs Kompella and Iyer are

14   sufficiently intertwined with those of the remaining defendant in the State Action, Cisco, the

15   court need not address this argument in finding that *Younger* abstention applies.

16        In its decision in *Green*, the Ninth Circuit discussed the circumstances under which a

17   federal plaintiff who is not a party to an ongoing state action may nonetheless have their federal

18   claims barred by *Younger*:

19             Early in the development of the *Younger* doctrine, the [Supreme
             Court] in two paradigmatic cases addressed the question whether
20           individuals who were not parties to the state litigation could proceed
             with a constitutional challenge to the statute involved in the state
21           litigation in federal court.  *Hicks v. Miranda*, 422 U.S. 332, 95 S. Ct.
             2281, 45 L. Ed. 2d 223 (1975); *Doran v. Salem Inn*, 422 U.S. 922,
22           95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975).  In *Hicks*, after two of their
             employees were charged under the state obscenity statute for
23           showing a film and four copies of the film were seized, owners of an
             adult movie theater sued in federal court for return of their film
24           copies and an injunction against the enforcement of the statute.  The
             Court explained that, under the particular circumstances of that case,
25           *Younger* barred the federal suit:  The owners' "interests and those of

26   ───────────────────────
     [4]  The court notes it has been recognized that "[t]he burden on this point rests on the federal
27   plaintiff to show that state procedural law barred presentation of its claims."  *Herrera*, 918 F.3d at
     1046 (internal quotation marks omitted) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14
28   (1987)).

> their employees were intertwined," given the fact that the seized films belong to the owners but were central to the pending prosecutions. . . . Shortly thereafter [in *Doran*], the Court clarified that when the federal plaintiff is not a party to the state court action, a mere commonality of interest with a party to the state litigation is not sufficient to justify abstention.
>
> * * *
>
> Together, then, *Hicks* and *Doran* circumscribe the quite limited circumstances under which *Younger* may oust a district court of jurisdiction over a case where the plaintiff is not a party to an ongoing state proceeding:  Congruence of interests is not enough, nor is identity of counsel, but a party whose interest is so intertwined with those [sic] of the state court party that direct interference with the state court proceeding is inevitable may, under *Younger*, not proceed.

*Green*, 255 F.3d at 1100.

The court also finds the Ninth Circuit's decision in *Herrera v. City of Palmdale* instructive in this regard.  In that decision, the Ninth Circuit applied the "intertwined interests" test to the adequacy of opportunity prong in considering *Younger* abstention.  *Herrera*, 918 F.3d at 1046–47.  The court affirmed the district court's abstention from exercising jurisdiction over the plaintiffs' civil rights claims which arose out of a state enforcement action brought against the plaintiffs' motel:

> The Herreras are all related to the same corporation, Palmdale Lodging.  In fact, Mona—though not a named defendant in the state action—is a co-founder of state-defendant Palmdale Lodging.  And the children, with their parents, reside at the motel which is the subject of the state action.  Furthermore, the federal claims arise from a single proceeding to abate code violations at Palmdale Lodging's motel and the corresponding investigation.  Such relationship goes beyond identity of interests; rather, the family members were allegedly deprived of their civil rights collectively during the investigation, and the ongoing nuisance proceeding related to the motel which Bill and Mona operate and at which the family resides. The federal claims of Mona and her children present the same risk of interference in the state proceeding as do the federal claims of Bill and Palmdale Lodging—indeed, all the federal plaintiffs seek the same relief from the state court proceedings.  As in *Hicks*, the comity considerations raised by the federal claims of those not party to the state action are indistinguishable from those raised by the state defendants.  The parties' interests are therefore sufficiently intertwined. . . . [Therefore, t]he Herreras' second challenge to the adequacy of their opportunity to raise constitutional claims in the state action also fails.

/////

*Herrera*, 918 F.3d at 1047.  Similarly, in the present case, plaintiffs Kompella and Iyer's purported injuries emerge from the underlying investigation and filing of the State Action.  (Doc. No. 50 at ¶¶ 15–20) (identifying a reputational injury for being falsely accused of caste-based discrimination); *see also Wilson v. City of Moscow*, No. 3:22-cv-00421-BLW, 2023 WL 5000739, at *10 (D. Idaho Aug. 4, 2023) (finding that *Younger* abstention applied to the federal plaintiff's claims because those claims emerged from the same incident and investigation as did the ongoing state criminal proceeding).  Plaintiffs Kompella and Iyer also were employed by Cisco, the remaining defendant in the ongoing State Action.[5]  (*Id.* at ¶¶ 14–21); *see also Collins v. Kendall Cnty.*, 807 F.2d 95, 101–02 (7th Cir. 1986) (holding that *Younger* abstention applied to the federal plaintiff who was not a party in an ongoing state action because she was a coworker of the state defendants and "share[d] the same interest in contesting [] the state litigation."); *Brandy Found. Animal Sanctuary v. San Bernardino Cnty.*, No. 08-cv-02292-DDP-PLA, 2008 WL 11409512, at *5–6 (C.D. Cal. June 20, 2008) (finding that the employment relationship closely intertwined the federal plaintiff employer's interests with those of its state defendant employees).  Further, plaintiffs' claims asserted in this case pose a risk of direct interference with the State Action: Plaintiffs Kompella and Iyer are requesting declaratory and injunctive relief in the form of an order finding that by bringing the State Action defendant violated their First Amendment, Due Process, and Equal Protection rights.  (Doc. No. 50 at 35.)  By doing so, plaintiffs seek relief from this federal court that would directly interfere with the ongoing State Action.  *Gilbertson*, 381 F.3d at 975 ("[F]ederal courts should also refrain from exercising jurisdiction in actions for declaratory relief because declaratory relief has the same practical impact as injunctive relief on a pending state proceeding as a result of the preclusive effect of the federal court judgment[.]").

The Ninth Circuit and other federal circuit and district courts have consistently recognized that a serious risk of direct interference with state court proceedings warrants *Younger* abstention even as to federal plaintiffs who are not currently parties in the state court action.  *Green*, 255 F.3d at 1100 ("[B]ut a party whose interest is so intertwined with those of the state court party

---

[5]  Plaintiffs allege that plaintiff Kompella continues to work for Cisco while plaintiff Iyer no longer does.  (Doc. No. 50 at ¶ 20.)

that direct interference with the state court proceeding is inevitable may, under *Younger*, not proceed."); *see also Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 85 (2d Cir. 2003) (finding that *Younger* abstention applied where the plaintiffs, who were not subject to a disciplinary proceeding, sought relief to "permanently enjoin defendants from pursuing the disciplinary proceeding" against another person); *Cedar Rapids Cellular Telephone, L.P. v. Miller*, 280 F.3d 874, 882 (8th Cir. 2002) ("If these two appellants obtain a federal injunction against action by the Attorney General, they could use that injunction to obstruct the Attorney General's attempts to enforce any remedy granted by the state courts. This serious possibility of interference warrants abstention[.]"); *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1326–27 (M.D. Ala. 2004) (finding that *Younger* abstention applied where the plaintiffs sought relief in the form of a declaration that the state disciplinary action brought against a non-party judge violated their constitutional rights, stating that "[w]hen third parties' claims directly affect the prosecution in the state court, abstention is required") (collecting cases); *cf. Culture of Life Fam. Servs. v. Bonta*, No. 3:24-cv-01338-GPC-KSC, 2025 WL 1677783, at *7–8 (S.D. Cal. June 13, 2025) (finding *Younger* abstention did not apply where the plaintiff allegedly observed a state enforcement action brought by the Attorney General defendant, feared that a similar enforcement action would be brought against itself, and sought injunctive relief only as to itself to prevent a future enforcement action being brought against it). As discussed above, such direct interference with a state court enforcement action would occur here where plaintiffs Kompella and Iyer seek declaratory judgment and an order from this federal court that the State Action violated their, and all Hindu Americans', constitutional rights and also seek an injunction prohibiting the State Action from proceeding. (Doc. No. 50 at 35, ¶¶ 1, 4.)

The court therefore concludes that plaintiffs Kompella and Iyer's interests are sufficiently intertwined with those of Cisco. This conclusion is based upon plaintiffs' employment by Cisco, the fact that their injuries alleged in this action arise from defendant's investigation of Cisco, and because the relief plaintiffs seek poses a risk of direct interference with the ongoing State Action. Because of the intertwined nature of interests, plaintiffs Kompella and Iyer's argument that they were not provided with an adequate opportunity to raise their constitutional claim fails. *See*

*Herrera*, 918 F.3d at 1047 (concluding that the plaintiffs' challenge to adequacy of opportunity to raise constitutional claims failed because they had intertwined interests with the state action defendants).

        c.     *Whether the Federal Court Action Would Interfere with the State Court Proceeding*

Defendant argues that the granting of the relief plaintiffs request in this case would effectively enjoin the State Action because it would require the court to declare the Department's actions in bringing the State Action to be unconstitutional. (Doc. No. 55 at 23.) Plaintiffs claim that they are not seeking an injunction prohibiting the prosecution of the State Action. (Doc. No. 58 at 11.) Despite this disavowal, in their SAC plaintiffs plainly request injunctive relief to prevent the Department from "engaging in any act or practice that seeks to define Hinduism as including a caste system" which is how plaintiffs characterize the State Action, as well as declaratory relief as described above. (Doc. No. 50 at 35, ¶ 57.) Accordingly, the court easily concludes that the relief requested by plaintiffs from this federal court would have the practical effect of enjoining the ongoing State Action. *Herrera*, 918 F.3d at 1048 (finding injunctive and declaratory relief would interfere with state court proceedings).

Because all of the relevant factors for *Younger* abstention are satisfied as to plaintiffs Kompella and Iyer, the court concludes that it must abstain from exercising jurisdiction over their claims brought in this case.[6] Accordingly, the court will grant defendant's motion to dismiss the claims asserted by plaintiffs Kompella and Iyer in this case.

---

[6] Plaintiffs argue without elaboration that there are extraordinary circumstances rendering abstention inappropriate in this case because they would be irreparably harmed were this court to abstain from considering their claims. (Doc. No. 58 at 12); *see also Betschart v. Oregon*, 103 F.4th 607, 617 (9th Cir. 2024) (finding that *Younger* abstention was not warranted in the extraordinary circumstance that defendants were wrongfully being detained pretrial without the ability to consult with counsel). Plaintiffs have not satisfied their burden of establishing that this narrow exception to *Younger* abstention applies here because they have not even alleged any facts suggesting irreparable harm in the absence of this court exercising jurisdiction, much less the very significant harm of the loss of physical liberty found by the court in *Betschart*. *Wilson v. City of Moscow*, No. 3:22-cv-00421-BLW, 2023 WL 5000739, at *7 (D. Idaho Aug. 4, 2023) (holding that a plaintiff seeking to prevent abstention carries the burden of showing an exception applies) (citing *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)).

1    **B.    Individual Plaintiffs**

2         Defendant next argues that the Individual Plaintiffs lack standing to pursue this action in

3    federal court.  (Doc. No. 55 at 25.)  In particular, defendant contends that plaintiffs have not

4    alleged cognizable injuries-in-fact or demonstrated that their claimed harms are redressable

5    through a favorable decision by this court.  (*Id.* at 25, 33.)  Plaintiffs contend that they have

6    alleged that they suffered spiritual and psychological harms resulting in concrete injuries caused

7    by the Department's conduct in the State Action, and that their injuries are redressable through

8    the granting of injunctive and declaratory relief.  (Doc. No. 58 at 12.)

9         "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

10   threshold requirement imposed by Article III of the Constitution by alleging an actual case or

11   controversy."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also Matter of E. Coast*

12   *Foods, Inc.,* 80 F.4th 901, 905–06 (9th Cir. 2023) (explaining that "standing is an 'essential and

13   unchanging' requirement . . . [thus] a party must establish an Article III case or controversy

14   before we exert subject matter jurisdiction") (citations omitted); *City of Oakland v. Lynch*, 798

15   F.3d 1159, 1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III standing is not

16   a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction

17   over the suit.") (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)).  An

18   actual case or controversy will be held to exist when a plaintiff establishes standing.  *Lujan v.*

19   *Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

20        Standing, in turn, "requires that (1) the plaintiff suffered an injury in fact, i.e., one that is

21   sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or

22   hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is

23   'likely' to be 'redressed by a favorable decision.'"  *Bates v. United Parcel Serv., Inc.*, 511 F.3d

24   974, 985 (9th Cir. 2007) (*en banc*) (citing *Lujan*, 504 U.S. at 560–61).  "Standing must be shown

25   with respect to each form of relief sought, whether it be injunctive relief, damages or civil

26   penalties."  *Id.*  "[T]o establish standing to pursue injunctive relief . . . [a plaintiff] must

27   demonstrate a real and immediate threat of repeated injury in the future."  *Chapman v. Pier 1*

28   *Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation and internal quotations omitted).

1    Below, the court will address whether the Individual Plaintiffs have adequately alleged

2    standing with respect to of their claims asserted in the SAC.

3    　　1.    Establishment Clause

4    In moving to dismiss plaintiffs' Establishment Clause claim, defendant argues that,

5    although plaintiffs have alleged specific psychological and spiritual harms, they have failed to

6    allege that those harms are tied to consequences in their particular political community as is

7    required to allege an injury-in-fact under the Establishment Clause.  (Doc. No. 55 at 27–28.)

8    Plaintiffs counter that the Individual Plaintiffs have faced consequences in their political

9    community, a community they claim in conclusory fashion is made up of all American and

10   California citizens.  (Doc. No. 58 at 14.)

11   It has been recognized that, "[t]he concept of a 'concrete' injury is particularly elusive in

12   the Establishment Clause context. . . . This is because the Establishment Clause is primarily

13   aimed at protecting non-economic interests of a spiritual, as opposed to a physical or pecuniary

14   nature." *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1250–51 (9th Cir. 2007).  The alleged

15   injury stemming from a claimed violation of the Establishment clause must have a plausible

16   connection to the plaintiff.  *Kumar v. Koester*, 131 F.4th 746, 755 (9th Cir. 2025).  "In a case

17   arising from an alleged violation of the Establishment Clause, a plaintiff must show . . . that he is

18   directly affected by the laws and practices against which [his] complaints are directed." *Citizens*

19   *for Quality Educ. San Diego v. Barrera*, 333 F. Supp. 3d 1003, 1023 (S.D. Cal. 2018) (alterations

20   in original) (internal quotation marks omitted) (quoting *Trump v. Hawaii*, 585 U.S. 667, 698

21   (2018)).  To that end, to have standing to assert such a claim a plaintiff must allege a

22   psychological, spiritual, or emotional injury that is not merely a disagreement but rather an

23   "exclusion or denigration on a religious basis within the political community." *Cath. League for*

24   *Religious & C.R. v. City and Cnty. of San Francisco* ("*Catholic League*"), 624 F.3d 1043, 1052

25   (9th Cir. 2010).

26   Plaintiffs' allegation of a spiritual harm is not sufficient to convey standing absent their

27   direct contact with the challenged conduct and exclusion from a political community.  As the

28   Ninth Circuit has explained:

18

One has to read the whole *Valley Forge* sentence quoted, and not stop at "psychological consequence," to understand it. A "psychological consequence" does not suffice as a concrete harm where it is produced merely by "observation of conduct with which one disagrees." But it does constitute concrete harm where the "psychological consequence is produced by government condemnation of one's own religion or endorsement of another's in one's own community.

\*\*\*

The concreteness of injury is sufficiently pleaded here because plaintiffs aver that: (1) they live in San Francisco; (2) they are Catholics; (3) they have come in contact with the resolution; (4) the resolution conveys a government message of disapproval and hostility toward their religious beliefs; that (5) sends a clear message that they are outsiders, not full members of the political community; (6) thereby chilling their access to the government; and (7) forcing them to curtail their political activities to lessen their contact with defendants.

*Catholic League*, 624 F.3d at 1052–53 (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.* ("*Valley Forge*"), 454 U.S. 464 (1982)).

In the present case, the Individual Plaintiffs do not allege that they were direct targets of the Department's enforcement action but instead allege that they learned of it through, among other things, conversation or reading about the State Action. (*See* Doc. No. 50 at ¶¶ 8–11, 13.) Plaintiffs contend in conclusory fashion that the Department's conduct has chilled their participation in "the political community," but do not identify what political community they refer to in this regard. (*Id.* at ¶¶ 7, 9, 11.) Instead, plaintiffs vaguely allege that the Department's conduct has led to conversations at discrete, unidentified social events. (*Id.*) In this way, plaintiffs' allegations merely state an abstract stigmatic injury, rather than an injury caused by direct contact with the Department's actions and are therefore insufficient to establish plaintiffs' standing to assert their claim under the Establishment Clause. *See Newdow v. Lefevre*, 598 F.3d 638, 643 (9th Cir. 2010) (holding that the plaintiff lacked standing to challenge the statute which made "In God We Trust" the national motto because general allegations of outsider status without direct contact is only an "abstract stigmatic injury"); *see also Barrera*, 333 F. Supp. 3d at 1023–24 (finding that the plaintiffs, who were students within the defendant school district, lacked standing to challenge the district initiative because the plaintiffs alleged only that they were

19

1    offended rather than direct contact with the initiative); *Valley Forge*, 454 U.S. at 487 (holding

2    that the out-of-state plaintiffs who learned of a transfer of property "through a news release"

3    lacked standing because "the Establishment Clause does not provide a special license to roam the

4    country in search of governmental wrongdoing and to reveal their discoveries in federal court.

5    The federal courts were simply not constituted as ombudsmen of the general welfare."); *cf. Ariz.*

6    *C.L. Union v. Dunham*, 112 F. Supp. 2d 927, 933–34 (D. Ariz. 2000) (holding that the plaintiffs

7    had standing to challenge a "Bible Week Proclamation" issued by the town in which they lived

8    because it created a particularized injury of feeling "excluded by the town wherein they reside.").[7]

9        The court therefore concludes that the allegations of Individual Plaintiffs in the SAC do

10   not adequately assert a concrete injury under the Establishment Clause. Accordingly, the court

11   concludes that the Individual Plaintiffs lack standing to assert a claim under the Establishment

12   Clause against defendant.

13        2.    <u>Free Exercise</u>

14        Plaintiffs next bring a claim against defendant for violation of the Free Exercise Clause of

15   the First Amendment. In moving to dismiss this claim, defendant argues that plaintiffs have

16   failed to establish standing to bring their free exercise claim because they have not alleged that

17   the State Action has had a coercive effect on the practice of their religion. (Doc. No. 55 at 26.)

18   Plaintiffs respond that the spiritual injuries alleged satisfy the injury-in-fact requirement for

19   standing. (Doc. No. 58 at 12.) Defendant replies that psychological and spiritual injuries alone

20   cannot confer standing under Article III to assert a Free Exercise claim. (Doc. No. 59 at 18.) The

21   court believes that all of these arguments miss the mark.

22
23   [7] The undersigned also notes that the Individual Plaintiffs' allegations as to their spiritual injuries appear to refer to the actions purportedly taken by third parties rather than those of the Department. (Doc. No. 50 at ¶¶ 5 (describing the alleged statements of a third party), 9

24   (describing alleged discrimination from coworkers), 11 (describing the alleged topic of discussion in religious and social groups that one plaintiff is part of), 21, 22 (describing employer actions).)

25   Though some of these allegations suggest some connection between the conduct of third parties and the challenged conduct of the Department, many of them do not. *Newdow*, 598 F.3d at 643

26   (finding that the actions of third parties could not confer standing to the plaintiff because he could not trace the injuries caused by those actions to the defendant); *Ariz. C.L. Union*, 112 F. Supp. 2d

27   at 935 (finding that harassment of the plaintiffs which occurred after the challenged proclamation could not be traced to the defendant and therefore could not confer standing).

28

It appears from the SAC that in their Free Exercise claim the Individual Plaintiffs are alleging that they have suffered pre-enforcement injuries.  (*See* Doc. No. 50 at ¶ 14) (alleging that one of the Individual Plaintiffs fears future targeting).  This interpretation of the allegations of the SAC is reinforced by plaintiffs' argument advanced in their opposition to the pending motion that their free exercise rights have been chilled by the threat of prosecution by the Department.  (Doc. No. 58 at 14.)  Neither plaintiffs nor defendant address the legal standard that applies to a Free Exercise pre-enforcement claim.  *Kumar*, 131 F.4th at 753–54 (employing the pre-enforcement standard identified by the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) to a Free Exercise pre-enforcement claim).[8]

"To bring a pre-enforcement challenge, a plaintiff must demonstrate:  (1) it intends to engage in a course of conduct arguably affected with a constitutional interest; (2) that such course of conduct is proscribed by a statue; and (3) there exists a credible threat of prosecution thereunder."  *Foothills Christian Church*, 2023 WL 4042580, at *13 (internal quotation marks omitted) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)) (citing *Driehaus*, 573 U.S. at 158).  Applying this standard, the Ninth Circuit has explicitly rejected a markedly similar theory of standing to plaintiffs:

> Appellants satisfied the first *Driehaus* prong because practicing their religion is a constitutionally protected activity.  But they failed to satisfy the second prong because they have not demonstrated that any of their religious practices are arguably proscribed by the policy.  *Compare* [*Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 59 (9th Cir. 2024)] (holding Christian university with employee conduct code that prevents same sex relationships met second *Driehaus* prong

---

[8]  Plaintiffs appear to alternatively suggest that spiritual injuries resulting from observing enforcement against a third party is sufficient to convey standing under the Free Exercise clause.  (Doc. No. 58 at 12.)  The court is unaware of any authority to support this broad proposition and plaintiffs cite none.  "Generally, a plaintiff does not sufficiently allege injury-in-fact for the purposes of Article III standing where the only harm is psychological injury produced by observation of conduct with which one disagrees."  *Newdow v. Cong. of U.S.A.*, 435 F. Supp. 2d 1066, 1073 (E.D. Cal. 2006) (internal quotation marks omitted) (quoting *Valley Forge*, 454 U.S. at 485), *aff'd sub nom Lefevre*, 598 F.3d 638; *see also Foothills Christian Church v. Johnson*, No. 22-cv-00950-BAS-DLL, 2023 WL 4042580, at *14 (S.D. Cal. June 15, 2023) (collecting cases and concluding that "to acquire standing to pursue a Free Exercise claim, a plaintiff still must, at a minimum, show there exists some conflict between one of its religious convictions and a challenged governmental action.").  Indeed, the Ninth Circuit has recently stated that Free Exercise claims are not subject to "relaxed justiciability requirements."  *Kumar*, 131 F.4th at 754.

because that practice was religiously based and arguably proscribed by state law barring employment discrimination based on sexual orientation).

We conclude that Appellants have alleged no injury to their ability to exercise their religion. Rather, their claims only indicate that they are offended by an alleged association of the caste system with Hinduism. This is the exact "moral, ideological, or policy objection to a particular government action" that the injury in fact requirement is meant to "screen[] out." [*FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024)]. Because Appellants failed to satisfy the *Driehaus* test to demonstrate a pre-enforcement injury, their Free Exercise claim also fails for lack of Article III standing.

*Kumar*, 131 F.4th at 754. Similarly, here plaintiffs contend that the Department's conduct involved "wrongly condemning Hindus and Hinduism based on the false and pernicious claim that it requires or supports a caste system." (Doc. Nos. 50 at 2; 58 at 13.) Plaintiffs, much like those in *Kumar*, state that they find the practice of caste discrimination "abhorrent." (Doc. No. 50 at 5); *see also Kumar*, 131 F.4th at 750. Plaintiffs cannot persuasively maintain that there "exists some conflict between one of [their] religious convictions and a challenged governmental action[]" precisely because they contend that caste discrimination is not one of their religious convictions. *Foothills Christian Church*, 2023 WL 4042580, at *14; *see also Kumar*, 131 F.4th at 753 ("Therein lies the standing conundrum. How can Appellants be injured by a policy prohibiting conduct that they have no intention to engage in?")[9]

/////

---

[9] Plaintiffs appear to raise a parallel argument that they are fearful that the Department will pursue enforcement actions against them due solely to their religious practices. (Doc. No. 58 at 10) ("The risk of joining Mr. Iyer and Mr. Kompella as defendants based on this mischaracterization . . . clearly [has] a negative coercive effect on practicing Hinduism."). Plaintiffs have provided no allegations that plausibly support this possibility and a "fear that non-discriminatory practices could be misconstrued as discriminatory, even if 'theoretically possible[,] is not reasonable or imminent' and thus is not enough to demonstrate injury in fact." *Kumar*, 131 F.4th at 753; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013) (holding that a plaintiff cannot rely on "mere conjecture about possible governmental actions" and a "subjective chill" based on such conjecture to demonstrate standing). The court has previously found this argument too speculative to demonstrate standing. (Doc. No. 20 at 13–14) ("Such an attenuated chain of events without connection to any individual facing this purported and speculative harm is plainly insufficient to establish standing."). Indeed, the court notes that it appears the Department has removed the challenged language from its complaint in the State Action, which weighs against any inference that the plaintiffs in this case may be subject to discriminatory enforcement actions. (Doc. Nos. 56-2 at 5; 56-4 at 3.)

1    Because plaintiffs have not alleged that they plan to engage in religious conduct which

2    could arguably be the target of an enforcement action brought by the Department, the court

3    concludes that they have not shown standing to bring a pre-enforcement action pursuant to the

4    Free Exercise Clause.

5         3.    Procedural Due Process

6    In moving to dismiss plaintiffs' procedural due process claim, defendant argues that

7    plaintiffs have not established their standing to bring a pre-enforcement void for vagueness

8    challenge under the Due Process Clause because they have not demonstrated that the challenged

9    action chilled their ability to participate in constitutionally-protected activities.  (Doc. No. 55 at

10   28.)  Defendant emphasizes that, as to their void for vagueness claim, plaintiffs have merely

11   alleged a hypothetical injury that the undersigned previously rejected as too speculative to

12   establish standing.  (*Id.* at 29; *see also* Doc. No. 20 at 16.)  Plaintiffs contend that they have

13   alleged that the Department's action of "labeling all Hindus as caste-based discriminators" chills

14   their ability to engage in religious practices.  (Doc. No. 58 at 14.)  Plaintiffs also argue that the

15   Department's conduct requires "employers [to] prevent caste discrimination even though there is

16   no legal definition of caste under California law" and therefore the Department's conduct has

17   denied them due process.  (*Id.* at 14–15.)

18   Due process challenges which are brought as pre-enforcement actions are subject to the

19   *Driehaus* test.  *Kumar*, 131 F.4th at 752–53.  The court's analysis in this regard mirrors its

20   analysis of plaintiff's Free Exercise claim discussed above.  As explained, plaintiffs have actively

21   disclaimed an intention to engage in caste-based discrimination, and therefore have not alleged

22   standing to bring a pre-enforcement due process challenge.  Accordingly, the court concludes that

23   plaintiffs' allegations fail to demonstrate an injury as required to meet the second *Driehaus* prong

24   and therefore have not demonstrated their standing to assert a due process claim.

25        4.    Equal Protection

26   In moving to dismiss plaintiffs' equal protection claim, defendant contends that plaintiffs

27   have alleged no facts indicating that the Department's conduct was intentionally applied against

28   them in a discriminatory manner nor what concrete injuries they have suffered as a result.  (Doc.

23

1    No. 55 at 30.)  Plaintiffs retort that the SAC contains allegations demonstrating that the

2    Department intended to discriminate because, among other things,  one of the plaintiffs wrote to

3    the Department informing it that the actions it was taking were "racist and anti-immigrant" and

4    nonetheless the Department did not cease its conduct.  (Doc. No. 58 at 15.)

5            The court finds that plaintiffs' SAC still does not allege any facts plausibly suggesting that

6    defendant "has applied the [FEHA] in a discriminatory manner against Hindu Americans"

7    because of plaintiffs' faith.  (Doc. No. 50 at ¶ 119.)  The SAC now includes allegations from the

8    Individual Plaintiffs regarding how they feel stigmatized, however, it includes no allegations that

9    the Department has pursued any discriminatory action against the Individual Plaintiffs.  (Doc. No.

10   50 at ¶ 9.)  Though stigmatizing injuries can suffice as injuries-in-fact to convey standing, such

11   injuries "accord[] a basis for standing only to those persons who are *personally denied* equal

12   treatment by the challenged discriminatory conduct[.]"  *Allen v. Wright*, 468 U.S. 737, 738 (1984)

13   (emphasis added); *see also Kumar v. Koester*, 683 F. Supp. 3d 1108, 1114–15 (C.D. Cal. 2023)

14   (finding that Hindu university professors lacked standing to assert an equal protection challenge

15   to a university's antidiscrimination policy's use of the term "caste" when the plaintiffs merely

16   alleged that "the Policy impermissibly stigmatizes individuals of South Asian descent and Hindu

17   practitioners" and that "the policy could be enforced unevenly"), *aff'd and remanded*, 131 F.4th

18   746 (9th Cir. 2025).  Here, the allegations of the SAC simply fail to plausibly support plaintiffs'

19   contention that the Department has denied equal treatment to the Individual Plaintiffs on the basis

20   of their faith.  Accordingly, the court concludes that plaintiffs have not demonstrated standing to

21   assert their Equal Protection claim.

22           Because the Individual Plaintiffs lack standing to assert any of the claims asserted in their

23   SAC, the court will grant defendant's motion to dismiss all of the Individual Plaintiffs' claims.

24   **C.      The Plaintiff Foundation**

25           In its August 31, 2023 order, the court dismissed each of the claims asserted by the

26   plaintiff Foundation in its initial complaint with leave to amend.  (Doc. No. 20 at 9–20.)  In that

27   order, the court concluded that the allegations of plaintiff's original complaint failed to

28   /////

                                                    24

1  demonstrate that it had organizational standing or associational standing as required to assert its

2  claims in federal court.  (*Id.*)

3      In their SAC, plaintiffs have now provided additional factual allegations as to the mission

4  of the plaintiff Foundation and its need to expend resources in response to the Department's

5  conduct.  In their SAC, plaintiffs characterize the mission of the Foundation as "advancing the

6  understanding of Hinduism to secure the rights and dignity of Hindu Americans now and for

7  generations to come."  (Doc. No. 50 at ¶ 29.)  Plaintiffs allege that the Foundation participates in

8  educational efforts directed at policymakers and in impact litigation to further its objectives.  (*Id.*

9  at ¶ 30.)  Plaintiffs also allege in conclusory fashion that the Foundation has been forced to

10 "expend considerable time and resources" to combat the mischaracterizations of the Department.

11 (*Id.* at ¶ 46.)  In this regard, plaintiffs allege that prior to the Department's conduct, the

12 Foundation engaged in other areas of advocacy but do not allege that they have been forced to

13 cease that advocacy.  (*Id.* at ¶ 47.)  Plaintiffs also allege that the Foundation's managing director,

14 one of the Individual Plaintiffs, had to develop educational materials to defend against the

15 Department's portrayal of Hinduism.  (*Id.* at ¶ 4.)[10]  Plaintiffs do not allege the nature of those

16 educational materials, whether the Foundation would not have developed those materials but for

17 the Department's alleged actions, and whether the Foundation diverted any resources to develop

18 those educational materials.

19     Plaintiffs also continue to allege that that the plaintiff Foundation represents "the interests

20 of Hindu Americans throughout the United States[.]"  (Doc. No. 58 at 20–21.)  In their SAC,

21 plaintiffs have added some new allegations that speak to how the Foundation engages with those

22 whom it purportedly seeks to represent:  (1) the Foundation has received donations from 815

23 people during the fiscal year of 2022-2023, though plaintiffs do not allege that all donors are part

24 of the community they seek to represent; (2) the Foundation provides "action alert broadcasts" on

25 an advocacy platform to which 5,000 people, the majority of whom are Hindu, have subscribed;

26

27 _____

[10]  The court notes that plaintiffs appear to conflate educational materials purportedly needed to

28 counter the Department's conduct and materials purportedly needed to combat the conduct of a
   third party, Equality Labs, which is not a party to this action.  (Doc. No. 50 at ¶ 4.)

1  (3) the Foundation "works with scholars or scholar-practitioners"; (4) the Foundation participates

2  in litigation to defend "the rights of Hindu, Indian, and South Asian Americans." (Doc. No. 50 at

3  ¶¶ 35–37, 40.)

4         Defendant argues that the plaintiff Foundation continues to lack both direct organizational

5  standing and associational standing to assert its claims despite the new allegations contained in

6  the SAC. (Doc. No. 55 at 31–38.) In their opposition, plaintiffs contend that that the plaintiff

7  Foundation has organizational standing (which they refer to as "direct standing") because it has

8  had to expend resources to defend the integrity of Hinduism against the Department's conduct

9  and has associational standing on the basis of injury to its members. (Doc. No. 58 at 15–21.) The

10  court will consider each of these claimed bases for the Foundation's standing below.

11         1.    <u>Organizational Standing</u>

12         "To determine whether organizational standing requirements have been satisfied, [courts]

13  'conduct the same inquiry as in the case of an individual: Has the plaintiff alleged such a

14  personal stake in the outcome of the controversy as to warrant his invocation of federal-court

15  jurisdiction?'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (quoting

16  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)). "Organizations can assert

17  standing on behalf of their own members, or in their own right." *Id.* at 662; *see also Rodriguez v.*

18  *City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019) ("[A]bsent a member with standing, . . . an

19  organizational plaintiff 'may have standing in its own right to seek judicial relief from injury to

20  itself and to vindicate whatever rights and immunities the association itself may enjoy.'")

21  (citation omitted).

22         The undersigned has previously recognized that "[a]n organization has standing on its

23  own behalf if it can show: (1) that the defendant's actions have frustrated its mission; and (2) that

24  it has spent resources counteracting that frustration." *Our Watch With Tim Thompson v. Bonta*,

25  682 F. Supp. 3d 838, 847 (E.D. Cal. 2023) (citing *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006,

26  1018 (9th Cir. 2013)). This organizational standing framework applies to claims arising under the

27  Establishment Clause and Free Exercise Clause. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44

28  /////

26

F.4th 867, 880 (9th Cir. 2022).[11] "Of course, organizations cannot 'manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all[.]'" *E. Bay Sanctuary Covenant*, 993 F.3d at 663 (quoting *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest* ("*La Asociacion*"), 624 F.3d 1083, 1088 (9th Cir. 2010)); *see also FDA*, 602 U.S. at 394 ("But an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action. An organization cannot manufacture its own standing in that way.").

In his motion, defendant contends that plaintiffs have not alleged any facts demonstrating that the State Action has frustrated the mission of the plaintiff Foundation.  (Doc. No. 55 at 31–32.)  Defendant further argues that plaintiffs have not alleged any facts showing that the plaintiff Foundation has suffered an injury as a result of being forced to divert resources to counteract a frustration of its purpose.  (*Id.* at 32.)  In opposition, plaintiffs assert that the Foundation has "had to expend considerable time and resources" that prevented it from focusing "on other areas of advocacy."  (Doc. No. 58 at 17.)[12]

The court need not consider whether plaintiffs have sufficiently pled that the Department's alleged conduct frustrated the Foundation's mission because plaintiffs' conclusory allegations do not demonstrate that the Foundation diverted resources as required for Article III standing.  *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 945 (9th Cir. 2021)

---

[11]  The Ninth Circuit has recently stated that the Supreme Court's decision in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), calls into question the organizational standing framework previously employed by the Ninth Circuit with respect to when expenditure of resources is sufficient to establish organizational standing.  *See Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1175 (9th Cir. 2024).  However, rehearing *en banc* has now been granted in that case and the panel decision has been vacated.  *Ariz. All. for Retired Ams. v. Mayes*, 130 F.4th 1177 (9th Cir. 2025).  Accordingly, the organizational standing framework set forth in *E. Bay Sanctuary Covenant* and the other cited cases remain binding Ninth Circuit precedent at this time.

[12]  Plaintiffs also appear to argue that the Foundation has suffered psychological and spiritual injuries itself which establishes its standing.  (Doc. No. 58 at 18.)  Plaintiffs have provided no support for this novel proposition that an organization can itself suffer psychological and spiritual injuries sufficient to confer Article III standing, and the court is unaware of any such authority.

1   (holding that the plaintiffs lacked standing based only on the fact that they had not demonstrated

2   that they had diverted resources).  Rather, plaintiffs have alleged only that the Foundation at some

3   point developed educational materials.  They do not allege that this involved diverting its

4   resources or incurring costs that the Foundation would not ordinarily have incurred.  *Am.*

5   *Diabetes Assoc. v. U.S. Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019) (holding that the

6   plaintiff did not have organizational standing where the plaintiff's allegations failed to show that

7   it had changed its resource allocation in response to the challenged action but was "merely going

8   about its business as usual"); *cf. Sabra*, 44 F.4th at 880 (holding that the plaintiff had standing

9   where it showed that it had gone "out of its way" to contract with an outside expert to develop

10  educational materials to counteract the harmful depiction of Islam that a college module had

11  promoted).  Plaintiffs have also failed to allege that the plaintiff Foundation has been required to

12  divert resources from its core functions to avert injury attributable to defendant's alleged conduct.

13  *La Asociacion*, 624 F.3d 1083, 1088 n.4 (9th Cir. 2010) ("An organization may sue only if it was

14  forced to choose between suffering an injury and diverting resources to counteract the injury.");

15  *FDA*, 602 U.S. at 395 (holding that direct organizational standing requires that the challenged

16  governmental action directly interfere with core activities of the organization).

17          Plaintiffs' theory appears to be that the Foundation was forced to respond to the

18  Department's actions insofar as it spent any resources responding to those actions rather than on

19  other initiatives.  The Supreme Court has explicitly rejected such a theory of standing.

20          But an organization that has not suffered a concrete injury caused by
        a defendant's action cannot spend its way into standing simply by
21      expending money to gather information and advocate against the
        defendant's action.  An organization cannot manufacture its own
22      standing in that way. . . . Indeed, that theory would mean that all the
        organizations in America would have standing to challenge almost
23      every federal policy that they dislike, provided they spend a single
        dollar opposing those policies.

24

25  *FDA*, 602 U.S. at 394.  The court therefore concludes that plaintiffs have not sufficiently alleged

26  that the Foundation was obliged to divert resources in response to defendant's actions.

27  /////

28  /////

1    Because plaintiffs have not sufficiently alleged the Foundation's diversion of resources,

2    they have failed to adequately allege an injury sufficient to establish direct organizational

3    standing.

4        2.    Associational Standing

5        To invoke associational standing on behalf of its members, the plaintiff Foundation must

6    allege facts demonstrating that: "(1) [the Foundation's] members would otherwise have standing

7    to sue in their own right; (2) the interests it seeks to protect are germane to the organization's

8    purpose; and (3) neither the claim asserted nor the relief requested requires the participation of

9    individual members in the lawsuit." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096 (9th

10   Cir. 2021) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

11       In its prior order, the court concluded that the plaintiff Foundation had not alleged facts

12   demonstrating that it was "sufficiently identified with and subject to the influence" of the

13   individuals it sought to represent as required to establish associational standing.  (Doc. No. 20 at

14   10–13.)  In particular, the court found that the plaintiff Foundation sought to represent a

15   community "significantly larger and more diffuse than those found appropriate for purposes of

16   organizational standing."  (*Id.* at 11–12.)[13]  The court also found that the plaintiff Foundation had

17   not alleged "what activities, if any, it engages in that relate to 'all Hindu Americans,' how it is

18   funded, [or] what interaction it has with the Hindu American community[.]"  (*Id.* at 12.)  The

19   court recognizes that plaintiffs' additional allegations in their SAC, as described above, provide

20   some clarity as to the plaintiff Foundation's purported activities undertaken on behalf of the

21   Hindu American community.

22

23   _____

     [13]  Notably, plaintiffs again allege that the Foundation represents "Hindu Americans throughout
     the United States" which is a constituency significantly larger and less specific than those
24   typically found appropriate for purposes of associational standing.  *See Or. Advoc. Ctr. v. Mink*,
     322 F.3d 1101, 1111–12 (9th Cir. 2003) (finding associational standing where the plaintiff's
25   constituency defined as mentally incapacitated criminal defendants in Oregon); *Am. Unites for
     Kids*, 985 F.3d at 1096–97 (finding associational standing where the plaintiff's constituency
26   defined as public employees, in particular teachers, at the Malibu campuses of a school district);
     *Hawai'i Disability Rts. Ctr. v. Kishimoto*, 122 F.4th 353 (9th Cir. 2024) (finding associational
27   standing where the statutorily created plaintiff agency represented the specialized segment of
     Hawaiians with developmental disabilities).
28

1    Nevertheless, plaintiffs' only additional allegations as to whether a member of the

2    Foundation's constituency has suffered an injury-in-fact sufficient to convey associational

3    standing pertain to the Individual Plaintiffs and plaintiffs Kompella and Iyer.  (Doc. No. 50 at ¶

4    39.)  Because the court has already concluded that the Individual Plaintiffs lack standing and that

5    it must abstain from exercising jurisdiction over the claims of plaintiffs Kompella and Iyer, the

6    court also concludes that plaintiffs have failed to show that some member of the Foundation's

7    constituency has suffered an injury-in-fact.[14]

8    In sum, plaintiffs have again failed to adequately allege facts sufficient to satisfy the

9    requirements for either organizational or associational standing as to the plaintiff Foundation.

10    Accordingly, the court will grant defendant's motion to dismiss the Foundation's claims.

11    **D.    Leave to Amend**

12    Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

13    P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

14    amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

15    Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could

16    not be saved by any amendment."  *Intri-Plex Techs. v. Crest Grp*., 499 F.3d 1048, 1056 (9th Cir.

17    2007) (citation omitted); *see also Ascon Props., Inc. v. Mobil Oil Co*., 866 F.2d 1149, 1160 (9th

18    Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an

19    exercise in futility . . . .").

20    The court finds that the granting of further leave to amend would be futile in this case.

21    Plaintiffs have already been given an opportunity to amend their complaint in an attempt to cure

22    /////

23    /////

24    _____

25    [14]  To the extent the plaintiff Foundation seeks relief based only on the injuries allegedly suffered by plaintiffs Kompella and Iyer, its claims would be barred by *Younger*.  *Tony Alamo Christian*

26    *Ministries v. Selig*, 664 F.3d 1245, 1253 (8th Cir. 2012) ("First, insofar as [the plaintiff organization] seeks relief based on the injuries of the church's individual members such as Seago

27    and Krantz, [the plaintiff organization's] claims are plainly barred by *Younger*—the same as Seago's and Krantz's own claims were barred.").

28

1    the deficiencies the court had identified in detail in its prior order and have failed to do so.[15] *See*

2    *Foman v. Davis*, 371 U.S., 178, 182 (1962) (finding that failure to cure deficiencies provides

3    reason to deny leave to amend); *see also Shetty v. SunTrust Mortg.*, No. 13-cv-00820-AG-E, 2013

4    WL 12244326, at *4 (C.D. Cal. Sept. 9, 2013) ("It would be an 'exercise in futility' to allow

5    Plaintiff to amend his Complaint for a second time because Plaintiff has already been informed of

6    deficiencies in his Complaint and failed to correct them.") (quoting *Steckman v. Hart Brewing*,

7    143 F.3d 1293, 1298 (9th Cir. 1998)), *aff'd sub nom. Shetty v. SunTrust Mortg., Inc.*, 696 F.

8    App'x 830 (9th Cir. 2017).  Accordingly, defendant's motion to dismiss will be granted, without

9    further leave to amend.

## CONCLUSION

11    For the reasons stated above,

12    1.      Defendant's requests for judicial notice (Doc. Nos. 56, 60) are granted;

13    2.      Defendant's motion to dismiss plaintiffs' second amended complaint (Doc. No.

14         55) is granted without further leave to amend;

15    3.      This action is dismissed; and

16    4.      The Clerk of the Court is directed to close this case.

17    IT IS SO ORDERED.

18    Dated:    **July 18, 2025**                        

19                          DALE A. DROZD
                         UNITED STATES DISTRICT JUDGE

---

27   [15]  In its prior order, the court noted its skepticism that plaintiff could remedy the pleading deficiencies identified therein but nonetheless granted plaintiffs leave to amend due to the lack of a clear showing that amendment would be futile at that time.  (Doc. No. 20 at 20–21.)